(101) CITATION: PETITION FOR DAMAGES;                    181213-6964-1

# 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

FREDERICK ADDISON
    versus
LOUISIANA REGIONAL LANDFILL COMPANY, IESI LA          Case: 790-369    Div: "J"
LANDFILL CORPORATION, WASTE CONNECTION               P 1 FREDERICK ADDISON
BAYOU INC, PROGREESIVE WASTE SOLUTIONS OF LA
INC, WASTE CONNECTIONS US INC

To:  WASTE CONNECTIONS US INC
THROUGH CORPORATION SERVICE COMPANY                  LA Long Arm
251 LITTLE FALLS DRIVE
WILMINGTON DE 19808                                  HAND CARRY


PARISH OF JEFFERSON


You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES of which a true and correct copy accompanies this citation, or make an appearance
either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of
Jefferson, State of Louisiana, within THIRTY (30) CALENDAR days after the return of service
hereof, under penalty of default.


This service was requested by attorney NICHOLAS V. CRESSY and was issued by the Clerk of
Court on the 13th day of December, 2018.


                */s/ Samantha A. Gambino*
                Samantha A. Gambino, Deputy Clerk of Court for
                Jon A. Gegenheimer, Clerk of Court


_____SERVICE INFORMATION_____

(101)  CITATION: PETITION FOR DAMAGES;                   181213-6964-1

Received:_____   Served:_____   Returned:_____

Service was made:
    ___ Personal          ___ Domicilary _____

Unable to serve:
    ___ Not at this address   ___ Numerous attempts _____ times
    ___ Vacant                ___ Received too late to serve
    ___ Moved                 ___ No longer works at this address
    ___ No such address        ___ Need apartment / building number
    ___ Other _____

Service: $_____    Mileage: $_____    Total: $_____

Completed by:_____ # _____
                    Deputy Sheriff
Parish of: _____

(101) CITATION: PETITION FOR DAMAGES;                    181213-6964-1

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

FREDERICK ADDISON
   versus
LOUISIANA REGIONAL LANDFILL COMPANY, IESI LA          Case: 790-369    Div: "J"
LANDFILL CORPORATION, WASTE CONNECTION              P 1 FREDERICK ADDISON
BAYOU INC, PROGREESIVE WASTE SOLUTIONS OF LA
INC, WASTE CONNECTIONS US INC

To:  WASTE CONNECTIONS US INC
THROUGH CORPORATION SERVICE COMPANY                  LA Long Arm
251 LITTLE FALLS DRIVE
WILMINGTON DE 19808                                  HAND CARRY

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES of which a true and correct copy accompanies this citation, or make an appearance
either by filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of
Jefferson, State of Louisiana, within THIRTY (30) CALENDAR days after the return of service
hereof, under penalty of default.

This service was requested by attorney NICHOLAS V. CRESSY and was issued by the Clerk of
Court on the 13th day of December, 2018.

         /s/ Samantha A. Gambino
         Samantha A. Gambino, Deputy Clerk of Court for
         Jon A. Gegenheimer, Clerk of Court

_____SERVICE INFORMATION_____

(101)  CITATION: PETITION FOR DAMAGES;                    181213-6964-1

Received:_____    Served:_____    Returned:_____

Service was made:
    ___ Personal              ___ Domiciliary _____

Unable to serve:
    ___ Not at this address      ___ Numerous attempts _____ times
    ___ Vacant                   ___ Received too late to serve
    ___ Moved                    ___ No longer works at this address
    ___ No such address          ___ Need apartment / building number
    ___ Other _____

Service: $_____    Mileage: $_____    Total: $_____

Completed by:_____ # _____
                 Deputy Sheriff
Parish of: _____

FILED FOR RECORD 12/13/2018 09:36:58
Michelle S. Bruner, DY CLERK
JEFFERSON PARISH, LA  35

400.00
150.00
95.00         95.00
95.00         95.00
95.00         106.00

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

NO.: 790-369                    DIVISION: J

**FREDERICK ADDISON; BARBARA ADDISION; PERRY ANDRAS; SHEILA BASKIN; WILLIE FAY BROOKS; ERIC BROWN; RAMONA BYRD; EDWARD CLOUDET; MONICA COLEMAN-LESTRICK, individually and on behalf of her minor child CHARLES LESTRICK III; DORIS COLLINS; LULA DARDEN; DEMONTE DETEIGE; VINCENT EATON; KIMBERLY ENGEL; ADELAINE FITZPATRICK; CARLA FORD; GERALD FORD; VERNA MAE GABRIEL; MERLENE GRANT; ETHEL GREEN; WENDY GREMILLION, individually and on behalf of her minor children ADELYN S. GREMILLION and BRAXTON C. GREMILLION; SCOTT GREMILLION; REGINA PIERRE GRIFFIN; GLENDA BUILBEAU; ALBERTINE HARGRAVE; JOWE HERNANDEZ, individually and on behalf of his minor children, MILES HERNANDEZ AND LUCIANNA HERNANDEZ; LIZ HERNANDEZ; KIMBERLY HIMEL; CORY HIMEL; ADA JACKSON; BRIDGETT JOHNSON; MARGARITE JOHNSON; MELODIE JONES; RITA JONES; JESSE KOEHL; ELIZABETH LALA; LUCINDA LIGHTELL; ELIZABETH LOWE; JOHN LOWE; GARY MEYER; RHONDA MEYER; ALEXANDER MITCHELL; REGINA MITCHELL; JOSEPH PETE, JR.; TERRY PEETE, individually and on behalf of her minor children JOSEPH PETE, III AND AUGUST PEETE; ANDREA PICKNEY; WARREN PICKNEY; PEARL PINKLEY; CAROLYN POLK; GERALD POLK; GLENDA PRIMUS; JULIANE RAYBURN; KIAN RILEY; KAREN ROSS, individually and on behalf of her minor children JARED ROSS, TYRENE ROSS and JERMAINE ROSS;  TONY ROSS; ALETHA SCOTT; DAVID SCOTT; CARI SERPAS, individually and on behalf of her minor children GRACE SERPAS AND CHASE SERPAS; STEVEN SERPAS; JOHN THOMPSON; CHANDRA TIGLER, individually and on behalf of her minor child OBRAINA TIGLER; OSCAR TIGLER; GLORIA TOLODANO; ROY TOLODANO; MELVIN URSIN; SANTANA UTHAISANG; KIRK WELLS, individually and on behalf of his minor children ADDYSON WELLS and JOSEPH WELLS; REBECCA WELLS;  KEVIN WOOD; and MARY WOOD.**

### VERSUS

**LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION; WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC; WASTE CONNECTIONS US, INC; APTIM CORP; PARISH OF JEFFERSON; ABC CORP; DEF CORP; GHI CORP; JKL CORP; and MNO CORP.**

FILED: _____          _____

                                        **DEPUTY CLERK**

### PETITION FOR DAMAGES AND REQUEST FOR INJUNCTIVE RELIEF

NOW INTO COURT, come Petitioners, who allege and aver the following in support of their Petition for Damages and Request for Injunctive Relief:



**INTRODUCTION**

This action arises from the continuing, significant and unabated harm suffered by each of the named Petitioners as a result of the ongoing – and admitted – failure of each of the Defendants to ensure that the design, operation and maintenance of the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable environmental laws and adequately protects Petitioners' human health and environment.  At all relevant times, the J.P. Landfill and has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.

These unlawful, harmful and toxic releases have caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things: difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience. These emissions also have caused diminution in the value of Petitioners' homes.

Accordingly, Petitioners seek redress from the Defendants for the direct and consequential injury and damage they have suffered and will continue to suffer as a direct result of the releases of noxious odors and chemicals from the J.P. Landfill.

**PETITIONERS**

III.

Named Petitioners herein are:

**FREDERICK ADDISON** an individual of full age of majority residing at 41 Morning Glory Lane, Waggaman, LA 70094, and owner of said immovable property.

**BARBARA ADDISON,** an individual of full age of majority residing at 41 Morning Glory Lane, Waggaman, LA 70094, and owner of said immovable property.

**PERRY ANDRAS,** an individual of full age of majority residing at 37 Morning Glory Lane, Waggaman, LA 70094, and owner of said immovable property.

**SHEILA BASKIN,** an individual of full age of majority residing at 648 Sweet Olive Lane, Waggaman, LA 70094, and owner of said immovable property.



2

**WILLIE FAYE BROOKS,** an individual of full age of majority residing at 20 Winifred St., Waggaman, LA, 70094, and owner of said immovable property.

**ERIC BROWN,** an individual of full age of majority residing at an individual of full age of majority residing at 275 Capitol Drive Avondale, LA 70094, and owner of said immovable property.

**RAMONA BYRD,** an individual of full age of majority residing at 322 Hanson Place, Kenner, LA 70062, and owner of said property.

**DORIS COLLINS,** an individual of full age of majority residing at 352 Deacon St., Avondale, LA . 70094, and owner of said immovable property.

**EDWARD CLOUDET,** an individual of full age of majority residing at 601 S. Bengal, River Ridge, LA 70123, and owner of said immovable property.

**MONICA COLEMAN-LESTRICK,** an individual of full age of majority residing at 2 Jasmine Lane, Waggaman, LA 70094, and owner of said immovable property, in her individual capacity and as parent of her minor child, **CHARLES LESTRICK III.**

**LULA DARDEN,** an individual of full age of majority residing at 408 Upland Ave., River Ridge, LA 70123 and owner of said immovable property.

**DEMONE DETEIGE,** an individual of full age of majority residing at 528 Ruth Dr., Avondale, LA 70094 and owner of said immovable property.

**VINCENT EATON,** an individual of full age of majority residing at 513 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**KIMBERLY ENGEL,** an individual of full age of majority residing at 601 Hester Ave., River Ridge LA 70123, and owner of said immovable property.

**ADELAINE FITZPATRICK,** an individual of full age of majority residing at 324 Counsel Dr., Avondale, LA 70094 and owner of said immovable property.

**CARLA FORD,** an individual of full age of majority residing at 49 Judith St., Waggaman, LA 70094, and owner of said immovable property.

**GERALD FORD,** an individual of full age of majority residing at 49 Judith St., Waggaman, LA 70094, and owner of said immovable property.



12/13/2018 10:02:46 CERTIFIED TRUE COPY - Pg:3 of 21 - Jefferson Parish Clerk of Court - ID:1882786

**VERNA MAE GABRIEL,** an individual of full age of majority residing at 512 Avondale Garden Rd., Avondale LA 70094, and owner of said immovable property.

**MERLENE GRANT,** an individual of full age of majority residing at 1811 Moisant St., Kenner, LA 70062, and owner of said immovable property.

**ETHEL GREEN,** an individual of full age of majority residing at 341 Providence Lane, Kenner LA 70062, and owner of said immovable property.

**WENDY GREMILLION,** an individual of full age of majority residing at 9701 Robin Lane, River Ridge, LA 70123, and owner of said immovable property, in her individual capacity and as parent of her minor children, **ADELYN S. GREMILLION** and **BRAXTON C. GREMILLION.**

**SCOTT GREMILLION,** an individual of full age of majority residing at 9701 Robin Lane, River Ridge, LA 70123, and owner of said immovable property.

**REGINIA PIERRE GRIFFIN,** an individual of full age of majority residing at 612 Filmore St., Kenner, La 70062 and owner of said immovable property.

**GLENDA GUILBEAU,** an individual of full age of majority residing at 600 Wilker Neal Ave., River Ridge, LA 70123, and owner of said immovable property.

**ALBERTINE HARGRAVE,** an individual of full age of majority residing at 8721 Milan St., Metairie, LA 70003, and owner of said immovable property.

**JOSE HERNANDEZ,** an individual of full age of majority residing at 721 Randolph Ave., Harahan, LA 70123, and owner of said immovable property, in his individual capacity and as parent of his minor children, **MILES HERNANDEZ** and **LUCIANNA HERNANDEZ.**

**LIZ HERNANDEZ,** an individual of full age of majority residing at 721 Randolph Ave., Harahan, LA 70123, and owner of said immovable property.

**KIMBERLY HIMEL,** an individual of full age of majority residing at 642 Grove Avenue, Harahan, LA 70123, and owner of said immovable property.

**CORY HIMEL,** an individual of full age of majority residing at 642 Grove Ave., Harahan, LA 70123, and owner of said immovable property.

**ADA JACKSON,** an individual of full age of majority residing at 513 S. Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

4



**BRIDGETTE JOHNSON,** an individual of full age of majority residing at 325 Georgetown Dr., Westwago, LA 70094, and owner of said immovable property.

**MARGARITE JOHNSON,** an individual of full age of majority residing at 112 Marie Dr., Avondale, LA 70094, and owner of said immovable property.

**MELODIE JONES,** an individual of full age of majority residing at 413 Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

**RITA JONES,** an individual of full age of majority residing at 248 Glen Della Dr., Avondale, LA 70094, and owner of said immovable property.

**ELIZABETH LALA,** an individual of full age of majority residing at 8701 Steamboat Lane, River Ridge, LA 70123, and owner of said immovable property.

**BRUCE LIGHTELL,** an individual of full age of majority residing at 51 Winifred St., Waggaman, LA 70094, and owner of said immovable property.

**LUCINDA LIGHTELL,** an individual of full age of majority residing at 51 Winifred St., Waggaman, LA 70094, and owner of said immovable property.

**ELIZABETH LOWE,** an individual of full age of majority residing at 604 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**JOHN LOWE,** an individual of full age of majority residing at 10120 St. Paul Ave., River Ridge, LA 70123, and owner of said immovable property.

**GARY MEYER,** an individual of full age of majority, residing at 612 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**RHONDA MEYER,** an individual of full age of majority residing at 612 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**ALEXANDER MITCHELL,** an individual of full age of majority residing at 204 Hanson Ave., Kenner, LA 70062, and owner of said immovable property.

**REGINA MITCHELL,** an individual of full age of majority residing at 204 Hanson Ave. Kenner, LA 70062.

**JOSEPH PETE, JR.,** an individual of full age of majority residing at 149 Southern Ct., Avondale, LA 70094, and owner of said immovable property.



5

JON A. GEGENHEIMER   12/13/2018 10:02:46 CERTIFIED TRUE COPY - Pg:5 of 21 - Jefferson Parish Clerk of Court - ID:1882786

**TERRY PETE,** an individual of full age of majority residing at 149 Southern Ct., Avondale, LA 70094 and owner of said immovable property, in her individual capacity and as parent of her minor children **JOSEPH PETE, III** and **AUGUST PETE.**

**ANDREA PICKNEY,** an individual of full age of majority residing at 657 Richard Ave., River Ridge, LA 70123, and owner of said immovable property.

**WARREN PICKNEY,** an individual of full age of majority residing at 657 Richard Ave., River Ridge, LA 70123, and owner of said immovable property.

**PEARL PINKLEY,** an individual of full age of majority residing at 511 Wilker Neal Ave., River Ridge, LA 701235, and owner of said immovable property.

**CAROLYN POLK,** an individual of full age of majority residing at 305 S. Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

**GERALD POLK,** an individual of full age of majority residing at 305 S. Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

**GLENDA PRIMUS,** an individual of full age of majority residing at 8521 Milan St., Metairie, LA 70003, and owner of said immovable property.

**JULIANE RAYBURN,** an individual of full age of majority residing at 513 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**KIAN RILEY,** an individual of full age of majority residing at 6 Jasmine Lane, Waggaman, LA 70094, and owner of said immovable property.

**KAREN ROSS,** an individual of full age of majority residing at 52 Winifred St., Waggaman, LA70094, and owner of said immovable property, in her individual capacity and on behalf of her minor children, **JARED ROSS, JERMANIE ROSS** and **TYRESE ROSS.**

**TONY ROSS,** an individual of full age of majority residing at 52 Winifred St., Waggaman, LA 70094, and owner of said immovable property.

**ALETHA SCOTT,** an individual of full age of majority residing at 629 South Cumberland St., River Ridge, LA 70123, and owner of said immovable property.

**DAVID SCOTT,** an individual of full age of majority, residing at 629 South Cumberland St., River Ridge, LA 70123, and owner of said immovable property.



6

**CARI SERPAS,** an individual of full age of majority residing at 609 Hester Ave., River Ridge, LA70123, and owner of said immovable property, in her individual capacity and as parent of her minor children, **GRACE SERPAS** and **CHASE SERPAS.**

**STEVEN SERPAS,** an individual of full age of majority residing at 609 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**JOHN THOMPSON,** an individual of full age of majority residing at 412 Wilker Neal Ave., River Ridge, LA 70123 and owner of said immovable property.

**CHANDRA TIGLER,** an individual of full age of majority residing at 29 Richelle St., Waggaman, LA 70094, and owner of said immovable property, in her individual capacity and as parent of her minor child, **OBRAINA TIGLER.**

**OSCAR TIGLER,** an individual of full age of majority residing at 29 Richelle St., Waggaman, LA 70094, and owner of said immovable property.

**GLORIA TOLODANO,** an individual of full age of majority residing at 225 Helis Dr., Waggaman, LA 70094 and owner of said immovable property.

**ROY TOLODANO,** an individual of full age of majority residing at 225 Helis Dr., Waggaman, LA 70094 and owner of said immovable property.

**MELVIN URSIN,** an individual of full age of majority residing at 500 Cumberland Str., River Ridge, LA 70123, and owner of said immovable property.

**SANTANA UTHAISANG,** an individual of full age of majority residing at 2033 Generes Dr., Harahan, LA 70123 and owner of said immovable property.

**KIRK WELLS,** an individual of full age of majority residing at 153 Rebel Ave., River Ridge, LA 70123, and owner of said immovable property, in his individual capacity and as parent of his minor children, **ADDYSON WELLS** and **JOSEPH WELLS.**

**REBECCA WELLS,** an individual of full age of majority residing at 153 Rebel Ave., River Ridge, LA 70123, and owner of said immovable property.

**KEVIN WOOD,** an individual of full age of majority, residing at 824 Colonial Club Dr., Harahan, LA 70123, and owner of said immovable property.

**MARY WOOD,** an individual of full age of majority, residing at 824 Colonial Club Dr., Harahan, LA 70123, and owner of said immovable property.

7

II.

Made Defendants herein are:

a. **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION ("IESI")**, a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State. On information and belief, LRLC is a wholly-owned subsidiary of Defendant Waste Connections Bayou, Inc., Inc., which in turn was acquired by Defendant Waste Connections US, Inc. On information and belief, Defendant LRLC is controlled by Defendants Waste Connections Bayou, Inc., and/or Waste Connections, US, Inc., and is the "alter ego" of those Defendants, operating without autonomy and only pursuant to the direction, policies and procedures of its parent corporations;

b. **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized to do and doing business in this Parish and State;

c. **WASTE CONNECTIONS US, INC.,** a foreign corporation authorized to do and doing business in this Parish and State; and

d. **APTIM CORP.,** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State;

e. **PARISH OF JEFFERSON,** a Louisiana parish in and political subdivision of the State of Louisiana (the "Parish");

f. **ABC CORPORATION,** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), F/K/A IESI LA LANDFILL CORPORATION ("IESI")**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

g. **DEF CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of



8

insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

h. **GHI CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

i. **JKL CORPORATION;** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **APTIM CORP**, that may provide coverage for acts occurrences, and/or omissions more specifically described herein;

j. **MNO CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **PARISH OF JEFFERSON,** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein.

III.

**JURISDICTION AND VENUE**

Venue is proper in accordance with La. R.S. 13:5104(B), which states, in part, that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." Venue is further proper as to all other defendants as the wrongful conduct giving rise to the Petitioner's claims occurred within the jurisdictional limits of Jefferson Parish, State of Louisiana.

IV.

**FACTS**

The Parish is the owner of the Jefferson Parish Landfill (the "J.P. Landfill"), located at 5800 Highway 90 West in Avondale, Jefferson Parish, State of Louisiana.

V.

9



At all relevant times, the J.P. Landfill has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.* (the "Act") as well as federal laws and regulations implemented by the United States Environmental Protection Agency ("USEPA").

## VI.

The J.P. Landfill is authorized to operate pursuant to and only in accordance with the terms and conditions of, among other things, Standard Permit P-0297R1(the "Standard Permit") as issued, approved, and subject to periodic review and renewal by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to the Act. The Standard Permit was most recently renewed by the LDEQ on or about January 22, 2010.

## VII.

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the J.P. Landfill (the "IESI Operating Contract"). The IESI Operating Contract provides that:

a.  Operation of the J.P. Landfill will be conducted "in strict compliance and conformity with all Federal, State and local laws, ordinances, and regulations, including the rules and regulations of the USEPA, LDEQ, and all State of Louisiana agencies, and in accordance with the Permit Documents."

b.  "IESI shall be responsible for compliance with all Federal, State and local regulations, laws and ordinances in its performance of the Service/Work associated with the operation [and maintenance] of the Landfill."

c.  IESI is required to "provide all labor, equipment, materials and incidentals to assume all daily operations of the Landfill."

d.  The Parish Engineer has the authority to "decide any and all questions as to...the manner of performance and rate of progress of the Services/Work...the interpretation of the Contract Documents, and all questions as to the acceptable Completion" of the

10


12/13/2018 10:02:46 CERTIFIED TRUE COPY - Pg:10 of 21 - Jefferson Parish Clerk of Court - ID:1882786

JON A. GEGENHEIMER

Contract "in his reasonable and good faith opinion." The Parish Engineer is further authorized to "suspend operations at any time when the Service/Work, in his good faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits."

VIII.

Defendant APTIM is and at all relevant times has been a co-operator of the gas and leachate collection system of the J.P. Landfill.

IX.

Jefferson Parish, in addition to being an owner of the J.P. Landfill, is and at all relevant times has been a co-manager and co-operator of the J.P. Landfill with IESI/LRLP and APTIM.

X.

The Parish has admitted that improper operation of the J.P. Landfill is a major source of the odors suffered by Petitioners as well as the adverse consequences thereof. At a public press conference on July 23, 2018, Parish President Mike Yenni stated that:

a. The J.P. Landfill's system designed to "contain and deodorize landfill gases" has not been in "proper working order."

b. The landfill's leachate collection system has not been operated properly.

c. "Properly operated landfills do not operate persistent off-site odors and corrective actions...are essential."

d. The Parish has notified IESI that it is in breach of its contract to properly operate the J.P. Landfill.

XI.

At the same press conference, Parish Deputy Sheriff Mark Conley stated that the J.P. Landfill gas collection system has been collecting only twenty percent of the gas emitted from landfill operations, whereas a properly operating system would collect ninety-seven to ninety-eight percent of gas emissions, "[s]o that is why the Parish president is stressing that we realize we have problems...right now, a lot of our priority, in the name of public safety and our police powers, is to address the existing system, get it operational, and to pull as much gas out of that landfill as we can."



11

**XII.**

At the same press conference, Parish Councilman Paul Johnson stated that the odor from the J.P. Landfill

"has gotten really bad in the past for our five months...we are all going to experience odors from the landfill because it's a landfill. But, not those we have been having for the past three or five months. It's been really bad. I have been woken up at night with my nose burning and couldn't breathe at three or four o'clock in the morning. This has happened to me more than one time...we know the landfill is causing problems and we know it is a big source of problems...."

**XIII.**

At the same press conference, Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to, leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[1]

**XIV.**

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which, among other things, found that the Parish has violated its Landfill Permit and applicable environmental regulations by (i) failing to provide daily cover and (ii) failing to properly operate the system that is intended to collect leachate – the liquid brew that drains from a landfill and carries with it numerous harmful chemicals.

**XV.**

The LDEQ inspectors found areas of pooled leachate and leachate flowing downhill from the pooled leachate.

**XVI.**

---

[1] A video recording of the July 23 press conference can be accessed at
https://www.facebook.com/NOLAnews/videos/10155793116437060/ (last visited Aug. 4, 2018).



12

The United States Environmental Protection Agency ("EPA") has established general screening levels for various pollutants. These screening levels are chemical-specific concentrations for individual contaminants in air that may warrant further investigation or site cleanup. https://www.epa.gov/risk/regional-screening-levels-rsls-users-guide (last visited, Nov. 21, 2018). A chronic screening level addresses potential chronic exposure to a chemical.

XVII.

Air samples collected by the LDEQ in the Jefferson Parish communities of River Ridge, Harahan, and Waggaman between July 20, 2018 through approximately July 28, 2018 were found to contain numerous chemical compounds at concentrations that exceed EPA's chronic screening levels, including acrolein, 1.2-dichloroethane, benzene, carbon tetrachloride, and naphthalene. All of these compounds are multimodal toxicants, in that they are potential or actual human carcinogens and also have other toxic effects.

XVII.

The air samples collected by LDEQ also contained hydrogen sulfide at concentrations that exceed EPA's chronic screening levels. Hydrogen sulfide is a potentially toxic compound. All of these compounds are typically found in the gases generated by landfills like the J.P. Landfill.

XVIII.

In a report dated August 15, 2018, prepared for the Parish by its environmental consultant, Carson Environmental Consulting ("CEC"), CEC made several findings, including, among other things, that there are numerous deficiencies in "the landfill gas condensate and leachate collection pumping systems[,]" and that the infrastructure for these systems requires immediate improvement "to meet the Parish's performance objectives." In addition, CEC concluded that improved operation and maintenance of the J.P. Landfill requires the Parish's "focused attention."

XIX.

On information and belief, on or about December 5, 2018 the Commissioner of the LDEQ informed the Parish that there is "no doubt" in his mind that the JP Landfill is the primary source the odors experienced by residents of the communities in which Petitioners reside.

XX.



13

On information and belief, Defendant ABC Corporation has issued a policy of insurance to Defendant Louisiana Regional Landfill Company that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify ABC Corporation once its identity is known.

### XXI.

On information and belief, Defendant DEF Corporation has issued a policy of insurance to Defendant Waste Connections Bayou, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify DEF Corporation once its identity is known.

### XXII.

On information and belief, Defendant GHI Corporation has issued a policy of insurance to Defendant Waste Connections US, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify GHI Corporation once its identity is known.

### XXIII.

On information and belief, Defendant JKL Corporation has issued a policy of insurance to Defendant Aptim Corporation that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

### XXIV.

On information and belief, Defendant MNO Corporation has issued a policy of insurance to Defendant Parish of Jefferson that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

### PROXIMATE CAUSE AND BAD ACTS

### XXV.

The Defendants' failure to properly design, operate, manage, and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals.

### XXVI.

These odors and chemicals have also caused these Petitioners to suffer physical, mental, and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes,

14

ears, noses and throats, dizziness, loss of appetite and lethargy, as well as fear, anguish, anxiety and mental pain and suffering.

## XXVII.

Defendants' actions and omissions with respect to the design, operation and maintenance of the J.P. Landfill are the direct and proximate cause of the injuries and harm suffered by each of the Petitioners as alleged above.

## XXVIII.

Defendants' actions and omissions as outlined above also have caused a diminution in the value of Petitioners' immovable property.

## XXIX.

These odors have been pervasive and persistent. They have continued to the present and are likely to continue for the foreseeable future. The emissions constitute a continuing tort.

## XXX.

Defendants' acts and omissions in owning, designing, operating and/or maintaining the J.P. Landfill as described above constitute an unreasonable interference with each of the Petitioners' comfortable use and enjoyment of their homes.

## XXXI.

Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.

## XXXII.

These physical invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, loss of enjoyment of property, as well as fear, anguish and mental pain and suffering.

## XXXIII.

The emissions of these harmful odors and chemicals have been pervasive and persistent and constitute a continuing tort.

## XXXIV.



15

The Defendants' illegal actions and omissions in owning and operating the J.P. Landfill continue to this day and, unless enjoined by this Court, will continue for the indefinite future. Accordingly, Petitioners are entitled to a permanent injunction ordering the Defendants to abate the continuing nuisance and cease the trespasses caused and created by the J.P. Landfill, including the emission of noxious odors and chemicals, and to take all necessary reasonable actions required to accomplish same.

<div align="center">XXXV.</div>

Each of the Defendants had a duty to Petitioners to exercise reasonable care in the design, ownership and/or operation of the Landfills, including without limitation the duty to comply with applicable environmental laws and regulations and otherwise to ensure that the Landfills were operated in a manner that does not jeopardize their health, immovable property, environment, and quality of life.

<div align="center">XXXVI.</div>

Each of the Defendants breached such duties of care to the Petitioners by, among other things:

    a. Failing to properly design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods;

    b. Failing to take careful and prudent precautionary measures to ensure that these releases would not occur;

    c. Failing to design, operate and maintain the J.P. Landfill in a manner that does not cause harm to others and, in particular, its neighbors;

    d. Failing to comply with applicable regulations governing the design, operation and maintenance of the J.P. Landfill;

    e. Being inattentive and careless in the overall design, operation and maintenance of the J.P. Landfill;

    f. Failing to remediate and repair the failures in design, operation and maintenance of the J.P. Landfill as they became known to the Defendants;



<div align="center">16</div>

g.  Any and all other acts of negligence which may be revealed between now and the time of trial.

## XXXV.

The Defendants' failure to comply with their duties of care to the Petitioners were and are a cause in fact and a legal cause of Petitioners' injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their immovable property and diminution in the value of said property.

## XXXVII.

The Parish's ownership and operation of the J.P. Landfill has caused substantial damage to the value of Petitioners' respective interests in their immovable property.

## XXVIII.

The Parish knew, or in the exercise of reasonable care, should have known, that its failure to properly design, operate and maintain the J.P. Landfill would cause damage to Petitioners, and such damage could have been prevented by the exercise of reasonable care.  The Parish, as owner of the J.P. Landfill, failed to exercise such reasonable care.

## XXXVIII.

In committing the acts and omissions described above, the Defendants have breached their contractual obligations, of which Petitioners are third party beneficiaries, arising under the contracts between the Parish and all other Defendants herein pertaining to the design, operation and maintenance of the J.P. Landfill.

## XXXIX.

In committing the foregoing acts and omissions, Defendants have violated, *inter alia*, Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continues to cause each of the Petitioners damages including nuisance damages; physical harm and mental fear, anguish, pain and suffering; and diminution in property value.

## XL.

Further, Petitioners' interest is their immovable property is a property right protected by the Louisiana Constitution.

17

### XLI.

Petitioners' interest in their real property has been taken and damaged by the actions of Jefferson Parish as pled herein.

### XLII.

Such taking and damage was for a public purpose – to wit, the operation of a public landfill for the purpose of handling and disposing of waste generated by the citizens of Jefferson Parish and others.

### XLIII.

The Parish is liable to the Petitioners for damages caused by the Parish's unconstitutional taking of their immovable property without paying just compensation pursuant to Article I, Section 4(B) of the Louisiana Constitution.

### XLIV.

The Parish's taking of Petitioners' property without just compensation constitutions a deprivation of their property without due process of law pursuant to Article I, Section 2 of the Louisiana Constitution.

### XLV.

The Parish is liable to the Petitioners for all damages caused by the Parish's violation of Petitioners' due process rights.

### XLVI.

**REQUEST FOR TRIAL BY JURY**

Petitioners request a jury trial to all claims triable by a jury.

### XLVII.

**PRAYER FOR RELIEF**

**WHEREFORE,** Petitioners pray that:

a. Judgment be entered declaring each of the Defendants jointly, severally and *in solido* liable to each of the Petitioners for all damages (and awarding all such damages), including physical and bodily harm, loss of use and enjoyment of their homes, diminution in property value, lost wages, medical expenses and mental pain and suffering;

18



**PLEASE SERVE:**

**LOUISIANA REGIONAL LANDFILL COMPANY**
**Through its Agent for Service**
**Corporation Service Company**
**501 Louisiana Avenue**
**Baton Rouge, LA 70802**

**WASTE CONNECTIONS BAYOU, INC.**
**Through its Agent for Service**
**Corporation Service Company.**
**501 Louisiana Ave.**
**Baton Rouge, LA 70802**                EBR 106.08    CLK # 1195

**WASTE CONNECTIONS US, INC.**
**Through its Agent for Service**
**Via long arm through its Agent**
**Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**APTIM Corp.**
**Through its Agent for Service**
**CT Corporation System**
**3867 Plaza Tower Dr.**
**Baton Rouge, LA 70816**

**PARISH OF JEFFERSON**
**Through its Agent for Service**
**Michael J. Power**
**1221 Elmwood Park Blvd., Suite 701**
**Jefferson, LA 70123**



12/13/2018 10:02:46 CERTIFIED TRUE COPY - Pg:19 of 21 - Jefferson Parish Clerk of Court - ID:1882786

b. Judgment be entered against the Parish declaring it liable for inverse condemnation, and awarding to each of the Petitioners just compensation for the unconstitutional taking of their interests in real property and/or a deprivation of due process;

c. Judgment be entered against all Defendants for all additional damages as are just and reasonable under the circumstances, including but not limited to the cost of alternative housing and medical testing;

d. The Defendants be permanently enjoined and ordered to abate the nuisances and trespasses, and to take all reasonable and necessary measures to cease the harmful emissions from the J.P. Landfill.

e. The Defendants be required to provide medical monitoring for all Petitioners as appropriate;

f. Prejudgment and post-judgment interest on all damages be awarded;

g. Petitioners be awarded all costs for prosecution of this action including attorney's fees and costs;

h. Damages be awarded for all other injuries that may be proved at trial; and

i. This Court award such other and further relief as it may deem just and proper.

Respectfully submitted,

FORREST CRESSY & JAMES, LLC

Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele: (504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com

OF COUNSEL:
Barry S. Neuman
Erik Bolog
C. Allen Foster
Adrian Sneed
**WHITEFORD      TAYLOR      PRESTON,
LLP**
1800 M Street, NW
Suite 450N

19



Washington, DC 20036
Tele: (202) 659.6800
(Applications for Admission *Pro Hac Vice*
Pending)

**SERVICE INSTRUCTIONS ON FOLLOWING PAGE.**



20

To reuse, cover or mark through any previous shipping information.

ORIGIN ID:NEWA     (504) 605-0777
ELIZA JAMES

365 CANAL STREET
SUITE 1475
NEW ORLEANS, LA 70130
UNITED STATES US

SHIP DATE: 13DEC18
ACTWGT: 0.50 LB
CAD: 113509922/INET4042

BILL SENDER

TO   **WASTE CONNECTIONS US INC**
     **THROUGH CORPORATION SERVICE COMPANY**
     **251 LITTLE FALLS DRIVE**

     **WILMINGTON DE 19808**
(504) 605-0777        REF:
INV:
PO:                              DEPT:

5S20J/E4AFDCA5



FedEx
Express

E

Reusal

TUE — 18 DEC  4:30P
EXPRESS   SAVER
                ASR
TRK#
0201  **7739 6887 4319**                19808

**SB ILGA**        DE–US  PHL



RT CLSD  16:30   4319
                 12.15
FZ

## LOUISIANA CIVIL CASE REPORTING
### Civil Case Cover Sheet - LA. R.S. 13:4688 and
### Part G, §13, Louisiana Supreme Court General Administrative Rules

This civil case cover sheet shall be completed by counsel for the petitioner, counsel's authorized representative, or by the self-represented litigant (if not represented by counsel) and submitted with the original petition filed with the court. The information should be the best available at the time of filing. This information does not constitute a discovery request, response or supplementation, and is not admissible at trial.

FILED FOR RECORD 12/13/2018 09:52:03
Michelle S. Bruner, DY CLERK
JEFFERSON PARISH, LA

**Suit Caption:**

FREDERICK ADDISON, ET AL           **vs.**  LOUISIANA REGIONAL LANFILL COMPANY, ET AL

**Court:** 24th Judicial District          **Docket Number:** 790-369 J

**Parish of Filing:** Jefferson          **Filing Date:** DEC 13, 2018

**Name of Lead Petitioner's Attorney:** NICHOLAS V CRESSY

**Name of Self-Represented Litigant:**

**Number of named petitioners:** 90          **Number of named defendants:** 5

**Type of Lawsuit: Please check the categories which most appropriately apply to this suit (no more than 3 categories should be checked):**

- ☐ Auto: Personal Injury
- ☐ Auto: Wrongful Death
- ☐ Asbestos: Property Damage
- ☐ Product Liability
- ☐ Intentional Bodily Injury
- ☐ Intentional Wrongful Death
- ☐ Business Tort
- ☐ Defamation
- ☐ Environmental Tort
- ☐ Intellectual Property
- ☐ Legal Malpractice
- ☐ Other Professional Malpractice
- ☐ Maritime
- ☐ Wrongful Death
- ☐ General Negligence

- ☐ Auto: Property Damage
- ☐ Auto: Uninsured Motorist
- ☐ Asbestos: Personal Injury/Death
- ☐ Premise Liability
- ☐ Intentional Property Damage
- ☐ Unfair Business Practice
- ☐ Fraud
- ☐ Professional Negligence
- ☐ Medical Malpractice
- ☐ Toxic Tort
- ☐ Other Tort (describe below)
- ☐ Redhibition
- ☐ Class action (nature of case)

**Please briefly describe the nature of the litigation in one sentence of additional detail:**

Following the completion of this form by counsel, counsel's representative, or by the self-represented litigant, this document will be submitted to the Office of the Judicial Administrator, Supreme Court of Louisiana, by the Clerk of Court.

Name, address and contact information of person completing form:

**Name** NICHOLAS V CRESSY          Signature

**Address** 365 CANAL STREET SUITE 1475 NEW ORLEANS LA 70130

**Phone number:** 504-605-0777          **E-mail address:**

**24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**SUIT NO.: 790-369**                                    **DIVISION: "J"**

**FREDERICK ADDISON, et. al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), et. al.**

FILED: _____                    _____
                                                                            **DEPUTY CLERK**

**_EX PARTE_ MOTION FOR ADMISSION OF BARRY NEUMAN AS CO-COUNSEL _PRO HAC VICE_**

**PETITIONERS**, through undersigned counsel, respectfully moves this Honorable Court for an order admitting Barry S. Neuman, a member in good standing of the State of New York, Maryland and District of Columbia Bar Associations, to serve as co-counsel of record in the above-captioned matter.

In accordance with Rule XVII, Section 13A3(i), mover attaches Mr. Neuman's _Pro Hac Vice_ letter of approval from the Louisiana Attorney Disciplinary Board as exhibit "A". Undersigned counsel further verifies that a trial date has not been selected in this matter, and that counsel has received no notice of any hearing scheduled within thirty days of the filing of this Motion.

**WHEREFORE**, Petitioners pray that this Honorable Court enter an order enrolling Barry S. Neuman as co-counsel pro hac vice in the above-captioned matter.

RESPECTFULLY SUBMITTED:

/s/ _S. Eliza James_
_____
**Forrest Cressy & James, LLC**
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place Office Tower
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Telephone: 210-414-1723
Facsimile: 504-322-3884
eliza@fcjlaw.com

OF COUNSEL:

24th E-Filed: 12/17/2018 16:19:56 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

Barry S. Neuman
Erik Bolog
C. Allen Foster
Adrian Snead
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
(Applications for Admission *Pro Hac Vice* Pending)

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on this17th day of December, 2018, a copy of the above and foregoing

Motion was served on the following parties by depositing a copy of same in the United States mail,

postage prepaid and properly addressed.

*/s/ S. Eliza James*

**S. Eliza James**

**LOUISIANA REGIONAL LANDFILL COMPANY**
**Through its Agent for Service**
**Corporation Service Company**
**501 Louisiana Avenue**
**Baton Rouge, LA 70802**

**WASTE CONNECTIONS BAYOU, INC.**
**Through its Agent for Service**
**Corporation Service Company**
**501 Louisiana Ave.**
**Baton Rouge, LA 70802**

**WASTE CONNECTIONS US, INC.**
**Through its Agent for Service**
**Via long arm through its Agent**
**Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**APTIM Corp.**
**Through its Agent for Service**
**CT Corporation System**
**3867 Plaza Tower Dr.**
**Baton Rouge, LA 70816**

**PARISH OF JEFFERSON**
**Through its Agent for Service**
**Parish Attorney**
**1221 Elmwood Park Blvd., Suite 701**
**Jefferson, LA 70123**

2

24th E-Filed: 12/17/2018 16:19:56 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

**24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

SUIT NO.: 790-369                                    DIVISION: "J"

**FREDERICK ADDISON, et. al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), et. al.**

FILED: _____          _____

                                                                        **DEPUTY CLERK**

**O R D E R**

Based on the foregoing *Ex Parte* Motion:

**IT IS HEREBY ORDERED** that Barry S. Neuman, duly licensed practitioner in the States

of Maryland, New York and District of Columbia, be admitted as pro hac *vice* co-counsel in this

matter.

Gretna, Louisiana, this 20 day of December ,2018

_____

~~JUDGE, DIV. "J"~~
Stephen C. Grefer

**PLEASE SERVE A COPY OF THIS SIGNED**
**ORDER ON ALL PARTIES OR COUNSEL OF RECORD**
**VIA U.S. MAIL.**

24th E-Filed: 12/17/2018 16:19:56 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

3

**24th JUDICIAL DISTRICT COUR FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

SUIT NO.: 790-369                                    DIVISION: "J"

**FREDERICK ADDISON, et al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et al.**


FILED: _____                    _____

                                                              **DEPUTY CLERK**


**PETITIONERS' REQUEST FOR EXPEDITED DISCOVERY FOR THE
PURPOSE OF ENTERING AND INSPECTING THE SUBJECT LANDFILL AND
MOTION FOR EXPEDITED HEARING AND INCORPORATED MEMORANDUM IN
SUPPORT**

**NOW INTO COURT** come Petitioners, Frederick Addison, et al., to respectfully move
this Court for an order, pursuant to LSA-C.C.P. Art 1461, allowing the Petitioners to enter, inspect
and conduct air sampling at the property known as the Jefferson Parish Landfill ("Landfill"), which
is owned by the Defendant Jefferson Parish ("Parish") and located at 5800 Highway 90 West
Avondale, State of Louisiana.  Further, Petitioners ask the Court to grant such relief on an
expedited basis and permit Petitioners to enter, inspect and sample the Landfill immediately. As
discussed below, the information that Petitioners seek to collect concerns the design, operation and
maintenance of the Landfill as well as important information concerning the nature, intensity and
chemical composition of the gases that have been released by the Landfill into the surrounding
community over the past year.  These factual issues are central to this case. Site-specific conditions
are central to determining off-site impacts.  However, as also discussed below, the Defendants are
now undertaking various measures that are intended to improve the operation of the Landfill's gas
collection system.  As a result, the most direct evidence of the conditions that existed at the Landfill
over the past year – as well as important information concerning the nature and extent of the gases
that have been emitted from the Landfill over the past year – is effectively disappearing as the
Parish continues to alter the Landfill's equipment and operations in an effort to get the situation
under control.   Consequently, absent a prompt opportunity to inspect and sample at the Landfill,
Petitioners will lose the opportunity to obtain the most pertinent site-specific information that

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

would help to establish what has transpired over the past year and how those conditions affected Petitioners.  To prevent such irreparable harm, Petitioners bring the instant motion.

## I.      FACTUAL BACKGROUND

This action arises from continuing and significant harm suffered by each of the Petitioners as a result of the ongoing and admitted failure of the Defendants to ensure the proper design, operation and maintenance of the Jefferson Parish Landfill.  As more specifically alleged in the Petition, the systems that are intended to capture the noxious and toxic brew of gases that are continually generated by the Landfill and prevent their release into the surrounding area have been so poorly designed, maintained and operated that, according to the Parish's own environmental consultant, they require "immediate improvement" and "focused attention" in order to "meet the Parish's performance standards."  Petition, ¶ XVII. (Carlson Environmental Consulting's report dated Aug. 15, 2018).  In fact, these consultants found that the Parish's Landfill fails to collect up to half the gasses generated by the landfill – which reveals a negligent and irresponsible level of control, given the common industry goal of capturing at least 90% of such gases.  Carlson Environmental Consulting (Aug. 2018).

When released into the air, these uncontrolled emissions carry foul and noxious odors, as well as a brew of toxic chemicals that have the potential to cause harm to exposed populations. Indeed, the minimal air sampling conducted in the neighboring communities by the Louisiana Department of Environmental Quality has documented the presence of certain chemical compounds in the air at concentrations that exceed screening levels established by the Environmental Protection Agency – chemicals that are typically found in landfill gases.  Petition, ¶ XVI.  But apart from the specific chemical composition of these gases, the odors themselves are so noxious that they have caused Petitioners to suffer a variety of physical symptoms including difficulty breathing, dizziness, nausea, and burning and irritation of the eyes, nose and throat, as well as fear and anguish.  Accordingly, on December 13, 2018, Petitioners filed the instant Petition seeking damages and injunctive relief.

That the Landfill's emissions are inadequately controlled and have adversely affected the surrounding communities is not only a matter of public record, but has been acknowledged by the

2

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

Parish itself and confirmed by the Louisiana Department of Environmental Quality ("DEQ") and Department of Health ("DOH").  Petition, ¶¶ IX-XIII.  Most recently, the DEQ's Commissioner reportedly told the Parish that he had "no doubt" that the Landfill is the "primary source" of the odors experienced by residents in the surrounding communities.  Id., ¶ XVIII.

The Parish, for its part, has stated that it intends to implement the recommendations of its environmental consultant to address certain deficiencies in Landfill design and operation. https://www.theadvocate.com/new_orleans/news/article_cf18693a-a710-11e8-b799-ab821f2d882e.html (last visited Dec. 19, 2018).  The Parish reportedly has begun to implement some measures, many of which are of an interim and stopgap in nature.[1]  There is, of course, no certainty as to how long it will take to complete the proposed remediation or whether those measures will bring the problems sufficiently under control.

As discussed below in the accompanying Affidavit of Paul Chrostowski, Ph.D., QEP,, submitted herewith and marked as exhibit "A 1-2", the concentration of individual chemicals and the intensity of odors emanating from the Landfill will change (and the nature of the pollutants themselves may be undergo chemical transformations) as the gases disperse into the surrounding areas. Established scientific techniques exist to calculate these changes, and thus to establish the chemical concentrations and odor strength of the gases to which individuals at specific locations have been exposed at specific times.  However, these calculations concerning the "fate and transport" of landfill gases require, as input, information as to the concentrations of chemicals and strength of the odors at their source – the Landfill site itself.  Such site-specific emissions data provides the best foundation for determining which specific compounds Petitioners and their communities have been exposed to, and at what concentrations, as the gases travel off of the Landfill site into the surrounding neighborhoods.  Likewise, source-specific data concerning the

---

[1] For example, the Parish reportedly has been adding an odor-masking agent to its gaseous emissions.  This agent may or may not actually help reduce the intensity of odors experienced by Petitioners, but it does nothing to control or reduce the amount of gases being emitted from the Landfill or the concentrations of individual toxic chemicals that are contained in those gases. Moreover, the Parish has not disclosed the chemical profile of the masking agent itself, which is now being introduced into the community as well.

3

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

strength of the odors at the Landfill site provide the best information for determining the strength of those odors by the time the travel off the Landfill site and reach the Petitioners' homes.[2]

However, neither the Parish nor anyone else has published any data establishing the exact composition of the Landfill gases, the concentrations of the chemical compounds contained in those gases, and the volume of gases that have been released from the Landfill into the community over the past year – i.e., during the period of exposure suffered by Petitioners that forms the basis of their damages.  Perhaps surprisingly, applicable regulations do not even require the Parish to collect or maintain such source specific emissions data.  Nor is there any publicly available scientific data concerning the intensity of the odors emanating from the Landfill site over the past year.

Moreover – and of central relevance to this motion –the opportunity to collect this foundational informationthat would be representative of odor strength and chemical concentrations of the Landfill gases over the past year is slipping away, as the Parish continues to alter the design and operation of the Landfill gas collection system.  Petitioners of course are not opposed to the Parish undertaking appropriate remedial measures to eliminate the harm they continue to suffer.  Indeed, that is part of the relief they seek in this case.  At the same time, however, they are also entitled to obtain the information that would be most helpful to proving the actual damages they have already suffered at the hands of Defendants.  As conditions continue to change on-site, it becomes increasingly difficult for Petitioners to collect information that would relate most closely to the Landfill conditions as they have existed in the relevant past.

And it is not just a matter of collecting air samples; equally important, it is a matter of Petitioners' ability to see first-hand the conditions, layout, and operation of the Landfill site before it becomes completely altered.  While the Parish effectively has admitted that the Landfill has been

---

[2]  Theoretically, the very best data would come from air sampling actually conducted throughout the Petitioners' communities and at their homes over a long period of time. However, in response to community complaints, the DEQ has conducted extremely limited sampling in the affected neighborhoods over the last year. Air samples have been collected literally at only at a handful of locations in the surrounding area; have consisted of very short duration (most typically, one-time "grab" samples); and have not even tested for the presence of numerous chemical compounds that typically are found in landfill gas.  See infra at 10-13.

4

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

negligently designed, maintained and operated, the Petitioners are entitled to see and evaluate for themselves the condition of the Landfill before it is completely altered.

In short, Petitioners need prompt access to the Landfill before all relevant on-site evidence substantially disappears.

## II.   ARGUMENT

### A. Expedited Discovery is Appropriate If Relevant Information Will be Lost or the Party Seeking Discovery Could be Irreparably Damaged

LSA-C.C.P. Art. 1461 permits a party to enter another party's land for inspection and testing for purposes of discovery within the scope of Articles 1422-1425.  Petitioners have found no case decided by a Louisiana state court that is directly on point.  However, the federal courts' interpretation and application of analogous Federal Civil Rules of Procedure provide relevant guidance for this Court in interpreting and applying the State's discovery rules. Casey v. Casey, 196 So.3d 748, 755, (La.App. 4 Cir.,2016), citing Guidry v. State Farm Mut. Auto. Ins. Co., 759 So.2d 95, 97 (La.App. 3 Cir. 12/8/99). This follows from the fact that LSA-C.C.P. Arts. 1421-1515 are predicated "almost exclusively upon Federal Rules 26—37," which were adopted by the Louisiana state legislature "almost verbatim excepting only certain mechanical changes necessary to adapt said Federal Rules for use in our state courts." Gaudet v. Lawes, 166 So.2d 337, 342 (La.App., 1964) (citing 'Preliminary Statement', Editorial Comment, Title 3, Chapter 3, Page 633, Volume 3, West's Louisiana Statutes Annotated, Code of Civil Procedure).  Federal court decisions interpreting the analogous federal rules of discovery make plain that under the circumstances presented here, this Court may, and should, grant petitioners' motion for expedited discovery under LSA-C.C.P. Art. 1461.

The Federal Rules of Civil Procedure allow a party to seek expedited discovery for good cause, in appropriate circumstances.  See, e.g., *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 501 (5th Cir. 1982) (affirming district court's order authorizing expedited discovery before a hearing on a preliminary injunction); Quilling v. Funding Resource Group, 227 F.3d 231, 233 (5th Cir. 2000) (affirming order of expedited discovery);  BKGTH Prods., LLC v. Doe, No. 13-5310, 2013 U.S. Dist. LEXIS 140924, at *10-11 (E.D. La. Sep. 30, 2013) See also Greenthal v. Joyce, No.

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

4:16-CV-41, 2016 WL 362312, at *1 (S.D. Tex. Jan. 29, 2016). This analysis takes into account factors including the breadth of the discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests, and how far in advance of the typical discovery process the request is made.  Magnolia Fleet, LLC v. Grey, No. 18-8363, 2018 WL 5619995 *6-7 (E.D. La. Oct. 30, 2018) (quoting Elargo Holdings, LLC v. Doe, 318 F.R.D. 58, 61 (M.D. La. 2016) (internal quotations omitted)). The burden of showing good cause is on the party seeking the expedited discovery, and the subject matter related to requests for expedited discovery should be narrowly tailored in scope. St. Louis Grp., Inc. v. Metals & Additives Corp. 275 F.R.D.236, 240 (S.D. Tex. 2011).  See also, Id; Dimension Data North America, Inc. v. Netstar-1, Inc., 225 F.R.D. 528, 531-32 (E.D.N.C. 2005), 226 F.R.D. 528, 531; Carter v. Ozoeneh, 2009 WL 1383307, at *3 (W.D.N.C. May 14, 2009) (Requests for expedited discovery are to be evaluated under a reasonableness or good cause test that takes into account the totality of the circumstances or a modified preliminary injunction test.)

A request for expedited discovery should be granted when it is narrowly tailored to "obtain information that may be lost to [the requesting party] if the discovery had not been allowed," and where the requesting party "*could be irreparably harmed by delaying the examination.*"  Tribal Cason Gaming, Enter. V.. W.G. Yates & Sons Constr. Co., Civ. No. 1:16CV30, 2016 WL 3450829, *8-10 (W.D.N.C. June 16, 2016) (emphasis added).  The Eastern District of Louisiana typically allows expedited discovery under the Federal Rules "when there is some showing of irreparable harm that can be addressed by limited, expedited discovery" or where "evidence would be lost or destroyed with time and [] the proposed discovery is narrowly tailored." Clear Skies Nev., LLC v. Doe, 2016 LEXIS 36187, *8-9 (E.D. La.) Mar. 18, 2018) (internal citations omitted) Accord, St. Louis Grp. 275 F.R.D. at 240-41 (expedited discovery allowed "when there is some showing of irreparable harm that can be addressed by limited, expedited discovery."); Magnolia Fleet, LLC, 2018 WL 5619995 at *6-7. (Courts look to whether the evidence sought through expedited discovery is at risk of being lost or destroyed.); Monsanto Co. v. Woods, 250 F.R.D. 411, 413 (E.D.Mo. 2008); Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co., 204 F.R.D. 675, 676 (D.Colo. 2002); Tracfone Wireless, Inc. v. King Trading, Inc., No. 3-08-CV-0398-B, 2008

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

6

WL 918243, at *1 (N.D. Tex. Mar. 13, 2008) (expedited discovery allowed because "there [was] a legitimate concern for the continuing existence and maintenance of the integrity of the evidence in question absent an order preserving the evidence.")

These general principles have been applied specifically to permit expedited entry upon land for purposes of inspection and testing under Fed. Civ. P. Rule 34.  See, e.g., Tribal Cason Gaming, Enter. V. W.G. Yates & Sons Constr. Co., Civ. No. 1:16CV30, 2016 WL 3450829, *8-9 (W.D.N.C. June 16, 2016) (granting motion for such expedited relief under Rule 34 In granting defendant's motion, the district court observed that, although the Federal Rules "do not set out specific standards for evaluating expedited discovery motions," they do "provide the Court with authority to direct expedited discovery in limited circumstances."  Id. (citing Dimension Data, 225 F.R.D. at 531-32, and Lewis v. *Alamance Dty. Dep't of Soc. Serv.*, No. 1:15DV298, 2015 WL 2124211, at *1 (M.D.N.C., May 6, 2015).

As discussed below, the totality of the circumstances warrants the expedited discovery sought by Petitioners.  Such discovery is necessary because Petitioners could be irreparably harmed if the requested examination is delayed as the evidence in question is at risk of being lost; the requested discovery is narrowly tailored to address

### B. Petitioners' Opportunity to Discover Important Information May be Lost, and They Could be Irreparably Injured, If They are Not Allowed Immediate Access to the Landfill Site for Purposes of Inspection and Sampling

This case is about the harm that Petitioners allege they have suffered not just today or yesterday, but in the past, as a result of conditions that have existed at the Landfill, not just today, but in the past. A central component of the case is the identity of the contaminants Petitioners have been exposed to, in the past, and in what concentrations and durations.

However, virtually no air quality data has been collected in the past on any systematic or comprehensive basis, over an extended period of time that establishes the identity and concentrations of specific pollutants emanating from the Landfill to which any Petitioner has been exposed, or the durations of exposure. Over the past year, the DEQ has collected a relative handful of air samples, at a very few locations in the community and over limited time periods; and those

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

7

samples were analyzed for an extremely limited subset of the chemical compounds that likely have been emitted from the Landfill. See the accompanying sworn Affidavit of Paul Chrostowski, Ph.D., QEP, a nationally recognized environmental expert with more than four decades of experience assessing the risks to human health and the environment posed by specific sources of pollution, including municipal solid waste landfills. ("Chrostowski"), ¶¶ 9-10.  Dr. Chrostowski explains in detail, and we will summarize below, why the existing public information is inadequate; what information is required to make these determinations; and why it is important for Petitioners to obtain prompt access to the Landfill site.

Over the past year, the DEQ has collected air samples at just two locations (the Riverside Baptist Church in River Ridge and at the intersection of Dandelion Drive and River Road in Waggaman) over the course of several days in July; and has taken one-time instantaneous "grab" samples at several other locations. Chrostowski, ¶ 9.  This sporadic sampling at a very few locations over limited time frames is not remotely sufficient to determine the actual exposures to Landfill chemicals experienced by residents throughout the community (such as Petitioners) historically and over time; those determinations would require actual sampling taken on a regular basis throughout the affected communities.  Id. ¶ 19.   Moreover, quite apart from the limited number of samples and locations where samples were taken, the DEQ did not even analyze these samples for numerous chemical compounds that are contained in landfill gas, many of which are known to be toxic and odorous.  Id. ¶ 15.

However, even the limited analyses conducted by the DEQ provide cause for concern and for further analysis.  Several toxic and carcinogenic compounds that are typically contained in landfill gas were detected in the community at concentrations that exceed screening levels established by the U.S. Environmental Protection Agency ("EPA").  These screening levels are used to help regulators and decision makers assess environmental and human health risk when there have been releases of hazardous substances into the environment.  Exceedances of screening levels mean that further action is required, be it additional investigation, remediation, or both, in order to ensure adequate protection of human health and the environment.  Chrostowski, ¶¶ 11-14. One of these compounds, hydrogen sulfide, has not only been measured in the community at levels

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

exceeding EPA screening thresholds, but has been found by the Parish's consultant to be present on the Landfill site at concentrations that are not only highly toxic, but potentially lethal.  Id. ¶ 16.

Since historical exposure data is not available to permit a determination of the actual exposures of the Petitioners to specific chemical compounds generated by the Landfill, the next best way to determine their prior exposures is to obtain the best possible information as to the nature and composition of the gaseous emissions as they have been emitted from the Landfill itself, which could then be used to calculate historical exposures in the community based on established scientific modeling and other techniques.  Id. ¶ 21. If conditions at the Landfill remained constant over time, then one could collect this "source" emissions data from the Landfill at any time, confident that the emissions data collected today is sufficiently representative of past Landfill emissions to generate reliable calculations as to the historical exposure levels in the community. Id. ¶ 22.

Critically, however, Landfill conditions do not remain constant; they are in fact changing, largely because of the Parish' activities at the Landfill.  Id.    With the passage of time, the Landfill's emissions will become increasingly less representative of the emissions that prevailed during the time when Petitioners suffered injury. Id.

In short, important evidence is effectively being destroyed on an ongoing basis – largely as the result of the Parish's remedial efforts, but destroyed nonetheless.   Consequently, this case presents the quintessential situation where expedited discovery as requested by Petitioners should be allowed.  See cases cited above.  As Dr. Chrostowski concludes, "petitioners should be allowed to obtain access to the Landfill site as promptly as possible in order to secure the most reliable source data available."  Id.

Moreover, the specific discovery that Petitioners seek to undertake is narrowly tailored to address the problems that require expedited discovery. Dr. Chrostowski has developed a sampling and analysis plan that is designed specifically to collect the site-specific information that will best allow further assessments of the nature and extent of exposure suffered by the Petitioners.  Id.  It is designed to meet these data collection needs while minimizing the amount of time required on the Landfill site itself – and therefore to minimize any burdens on the Defendants.  Id.

9

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

In short, given the "totality of the circumstances," the expedited site access requested by Petitioners is not only appropriate but necessary to ensure that they do not lose the opportunity to collect potentially important evidence before it disappears, and to avoid irreparable prejudice to Petitioners.

## C. The Court Should Expedite Briefing and Hearing on This Motion

To date, only one defendant – Waste Connections US, Inc. – has been served with the Petition (although all parties have been provided courtesy copies).   Given the importance of gaining rapid access to the Landfill, however, Petitioners respectfully ask that the Court set this motion for an expedited briefing schedule and hearing. Specifically, Petitioners ask that the Court schedule a hearing on this motion for January 24, 2019 (a date that Jessica, Division J Civil Minute Clerk indicated was a civil rule day), and to establish a commensurate briefing schedule.

## III.   CONCLUSION

For all the foregoing reasons, the instant motion should be granted, and Petitioners pray for such relief.

Respectfully submitted,

**FORREST CRESSEY & JAMES, LLC**

/s/ S. Eliza James

---
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com

OF COUNSEL:
Barry S. Neuman (Motion for Pro Hac Vice Admission pending.)
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

10

Tele: (202) 659.6800

## <u>CERTIFICATE OF SERVICE</u>

I, S. Eliza James, hereby certify that the foregoing Motion was served on the following parties via FedEx on this 20 day of December, 2018. A courtesy copy of this Motion was additionally sent by electronic mail.

/s/ S. Eliza James

_____

**LOUISIANA REGIONAL LANDFILL COMPANY**
**Through its Agent for Service**
**Corporation Service Company**
**501 Louisiana Avenue**
**Baton Rouge, LA 70802**

**WASTE CONNECTIONS BAYOU, INC.**
**Through its Agent for Service**
**Corporation Service Company**
**501 Louisiana Ave.**
**Baton Rouge, LA 70802**

**WASTE CONNECTIONS US, INC.**
**Through its Agent for Service**
**Via long arm through its Agent**
**Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**APTIM Corp.**
**Through its Agent for Service**

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

11

CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

PARISH OF JEFFERSON
Through its Agent for Service
Parish Attorney
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

<div align="center">

24th JUDICIAL DISTRICT COUR FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

</div>

SUIT NO.: 790-369                                      DIVISION: "J"

<div align="center">

FREDERICK ADDISON, et al.,

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et al.

</div>

FILED: _____

                                        _____
                                        **DEPUTY CLERK**

<div align="center">

**ORDER**

</div>

Based on the foregoing Motion for Expedited Discovery for the Purpose of Entering and Inspecting the Subject Landfill and Request for Expedited Hearing:

**IT IS HEREBY ORDERED** that Petitioners' request for expedited hearing and expedited briefing schedule is **GRANTED,** with Opposition Memoranda being filed and served on or before January 7, 2019.

**IT IS FURTHER ORDERED** that Defendants are must show cause on January 24, 2019, at _____:_____ A.M./P.M. a date previously cleared with the Courts docket, or in the alternative, the _____ day of _____, 2019 at _____:_____ A.M./P.M. as

<div align="center">

12

</div>

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

to why Petitioners' Motion for Expedited Discovery For the Purpose of Entering and Inspecting

the Subject Landfill should not be granted.

_____
**JUDGE- DIVISION "J"**

**PLEASE SERVE ALL PARTIES AND COUNSEL
OF RECORD WITH A SIGNED COPY OF THIS
ORDER BY U.S. MAIL.**

24th E-Filed: 12/20/2018 08:59:02 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

13

24th JUDICIAL DISTRICT COUR FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

SUIT NO.: 790-369                                              DIVISION: "J"

FREDERICK ADDISON, et al.,

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et al.

FILED: _____                    _____
                                                   DEPUTY CLERK

### SWORN AFFIDAVIT OF PAUL C. CHROSTOWSKI, Ph.D, QEP

STATE OF MARYLAND
COUNTY OF MONTGOMERY

      **PAUL C. CHROSTOWSKI, Ph.D., QEP**, being first duly sworn, deposes and says:

#### Professional Background

    1.    I am an environmental scientist and engineer with more than 40 years' experience in environmental work on behalf of government and private clients. My practice is currently focused on various areas of environmental impact assessment including human health and ecological risk assessment, environmental forensics, environmental chemistry and risk analyses. I have specialized experience in the scientific and technical aspects of federal, state and

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA JAMES

Exhibit "A1-2"

international regulatory programs pertaining to environmental protection, including the regulation of solid waste landfills, waste management technologies and environmental assessments. I have directed numerous projects involving environmental chemistry, regulatory affairs and risk assessment, among many other topics. My research interests include the behavior of complex mixtures in the environment, application of quantitative tools of environmental health management and evaluation, and mathematical modeling for risk management decision making. I have performed human health risk assessments, public health evaluations and epidemiologic studies at a variety of municipal solid waste management operations including landfills. This work has included assessments of odor, and exposure to products of incomplete combustion of landfill gas. I developed and taught courses on exposure assessments and risk characterization to various government agencies including the U.S. Environmental Protection Agency, the U.S. Air Force and California Department of Health Services. I have presented numerous lectures on risk assessment to various groups including at the University of California, Rutgers University, Pace University Law School and George Mason University.

2.       I earned a Bachelor of Science Degree in Chemistry from the University of California at Berkeley; a Masters in Science Degree in Environmental Science from Drexel University, and a Ph.D. in Environmental Engineering and Science from Drexel. As an Assistant Professor of Environmental Chemistry at Vassar College, I developed and taught classes in environmental chemistry. I have served in senior leadership/supervisory positions at several national recognized environmental consulting firms including as the Director of Environment, Health & Safety programs at The Weinberg Group; Vice President and Senior Science Advisor at

2

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA JAMES

ICF Clement; and Senior Scientist at EA Engineering, Science & Technology.  I am active in numerous professional societies and expert panels and have authored over 130 publications or presentations in the environmental field.  I have also served and been qualified as an expert witness to testify about a range of environmental matters.  A copy of my *curriculum vitae* is attached as Exhibit 1 hereto.

    **3.**       Any analysis of the impacts that a potential source of contamination such as the Jefferson Parish Landfill has or may have on human health and the environment, involves four stages – hazard identification, exposure assessment, dose-response quantification, and risk characterization.  A hazard is a property of a chemical substance that is associated with some type of adverse effect – toxicity, flammability, chemical reactivity, or odor.  The hazard identification component of risk assessment involves detailed knowledge of chemical properties in addition to the use of measurements and mathematical modeling to determine the identity and amount of the hazardous chemical that may be present.  Exposure assessment involves a qualitative and quantitative determination of a person's contact with a chemical hazard.  Central to the field of environmental exposure assessment is an understanding of "environmental fate and transport" of chemical compounds – *i.e.,* how chemicals are released from a source, how chemicals behave, alone and in combination with each other, as they move through an environmental medium (air, water, or soil) once released into the environment from their original source, and how they come into contact with an exposed person.  As chemicals are transported through the environment, they may undergo a variety of changes, including changes in their concentration, chemical structure

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

3

and toxicity. They may combine with other chemicals to form new compounds. They may become more or less concentrated.

4.      Thus, to understand, for example, how the emissions of gases from a landfill might affect humans or the environment at other locations, it is necessary to have an understanding of (1) what and how much is being emitted directly from the landfill – the nature, composition, and concentrations of chemical compounds – (2) the environmental fate of those chemicals as they are transported through an environmental medium ( air, soil or water)  to a particular receptor; and (3) the resulting levels of exposure and corresponding impacts/ risk of harm posed to that receptor. Human exposure to a given compound in the environment depends on a complex combination of factors including the nature of the chemical itself, the physical and chemical characteristics of the environmental medium and the complex chemical and physical interactions between the two.

### Landfill Gas

5.      Landfill gases ("LFG") may consist of hundreds, if not thousands, of components. Some of these originate within the waste itself while others are products of complex biological and chemical processes that occur in a typical municipal solid waste ("MSW") landfill like the Jefferson Parish Landfill.  Still other components may be products of incomplete combustion ("PICs") created by the flaring of landfill gases.  The major constituents of landfill gas are methane, carbon monoxide, carbon dioxide, oxygen and nitrogen fixed gases. In addition, LFG typical includes potential toxicants and odorants that may be divided into several large chemical classes – volatile organic chemicals ("VOCs"), reduced sulfur compounds, reduced nitrogen compounds,

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

4

low molecular weight carboxylic acids, carbonyl compounds (aldehydes and ketones), metals/metalloids, terpenes and siloxanes among others[1].   PICs resulting from operation of a landfill gas flare may include hydrogen chloride, oxides of nitrogen and sulfur as well as polycyclic aromatic hydrocarbons ("PAHs") and polychlorinated dibenzodioxins and furans ("dioxin/furans")[2].  Toxic constituents may be found in LFG condensate and landfill leachate including semi-volatile organic compounds ("SVOCs") such as 1,4-dioxane.  LFG condensate is formed from liquids that are carried by LFG and deposited usually due to pressure and temperature differentials. Leachate is the liquid that is generated by water in a landfill – either rainwater or water present in the waste. The Jefferson parish Landfill reportedly combines its LFG condensate and leachate.

6.      LFG can be released into the ambient air through several different mechanisms, including: (a)  directly from and across the surface of the landfill where landfill cover is either non-existent or does not completely suppress the gases; (b) pumps, piping, and related systems

[1] EPA 2007.  Field Test Measurements at Five Municipal Solid Waste Landfills with Landfill Gas Control Technology.  EPA/600/R-07/043; EPA 2008.  Background Information for Updating AP42 Section 2.4 for Estimating Emissions from Municipal Solid Waste Landfills EPA/600/R-08-116; U.S. Army Corps of Engineers 2013 Landfill Gas Collection and Treatment Systems. EM 200-1-22; B.F. Staley et al. 2006.  Release of Trace Organic Compounds during the Decomposition of Municipal Solid Waste Components.  Environ. Sci. Technol. DOI10.102/es060786m. B. Eklund et al. 1998.  Characterization of Landfill Gas Composition at the Fresh Kills Municipal Solid Waste Landfill  Environ. Sci. technol. 32:2233;  M. Schweigkofler & Reinhard Niessner. 1999.  Determination of Siloxanes and VOC in Landfill Gas and Sewage Gas by Canister Sampling and GC-MS/AES Analysis.  Environ Sci Technol. 33:3680.
[2] EPA 2007, op. cit.; EPA 2008 op. cit.;M.  Palmiotto, et al. 2014.Influence of a municipal solid waste landfill in the surrounding environment: Toxicological risk and odor nuisance effects. Environ Intl. 68:16.

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

5

designed to capture and contain LFG may be inadequately designed, maintained or operated and thus allow uncontrolled releases of LFG from those LFG collection systems; (c) landfill gas may migrate outside of the landfill through the subsurface environment either in the vapor or dissolved phase; and (d) landfills may undertake controlled burning, or flaring, or other means of disposal of landfill gases which can result in releases to the environment

7.     After its release from a landfill, and as it travels through the air, LFG will undergo changes in the concentrations, structure, identity and toxicity of its chemical constituents, as well as in its odor characteristics and strength. As noted, where the gases travel and how their composition changes over distance and time is a complex function of numerous factors including both the nature and concentration of the chemicals when they are emitted at the landfill but also atmospheric conditions including wind speed and direction, barometric pressure, precipitation, sunlight, temperature and the chemical composition of the ambient air itself.

8.     I have reviewed a number of documents and reports concerning the Jefferson Parish Landfill (the "Landfill"), as well as the results of air quality sampling that has been conducted in the communities surrounding the Landfill by the Louisiana Department of Environmental Quality ("DEQ").  These include:

   a.  Carlson Environmental Consultants ("Carlson"), Aug. 15, 2018, prepared for Jefferson Parish.

   b.  Golder Associate, Jan. 20, 2017, prepared for Jefferson Parish.

   c.  SCS Engineers, Inc., Oct. 24, 2018, prepared for counsel for Waste Connections US, Inc.)

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

6

d.  DEQ Mobile Air Monitoring (February, April and July 2018).

e.  Louisiana Department of Health (Oct. 25, 2018).

f.  Various documents publicly available on DEQ's website.

9.     From the publicly available documentation that I have been able to review, it appears there has been no comprehensive analysis of the LFG generated at the Jefferson Parish Landfill, nor of the identity, concentrations or toxicity of the chemical compounds released by the Landfill to which community residents have been exposed in the past.  In particular, I have been unable to find any measurements of chemicals in the landfill gas itself, the landfill gas condensate or leachate, or of emissions in the inlet or exhaust from the flare. The same is true with respect to the nature and intensity of odors released by the Landfill.  According to the public reports:

a.  The DEQ conducted continuous hourly air sampling of a limited subset of chemical compounds typically found in LFG at a single location, the Riverside Baptist Church in River Ridge on three occasions:   February 19 – 23, 2018; April 27-May 2, 2018; and July 20 – July 25, 2018.

b.  The DEQ collected continuous hourly air sample readings at a second location, at the corner of Dandelion Drive and River Road, in Waggaman, from July 25 – July 27, 2018, again, for a limited subset of chemicals.

c.  The DEQ also collected a total of 14 individual, one-time "grab" samples at locations in Harahan, River Ridge, Westwego, Waggaman, and inside the Jefferson parish Landfill during the period April through August 2018.  These

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

samples were likewise analyzed for a limited subset of chemical compounds typically found in LFG.

    d.  The DEQ also collected air grab samples downwind of the JP Landfill flare and at adjoining properties in October 2018.  These samples were analyzed for a limited subset of chemicals typically found in LFG.

    e.  The DEQ obtained a single air grab sample on July 20, 2018 from the levee at Wood resources.  This sample was analyzed for a small subset of common air pollutants.

    10.    This limited sampling and analysis conducted by the DEQ is not nearly sufficient to determine the historical exposures of LFG experienced by the people residing in the neighborhoods near the Landfill.  In addition to limitations associated with the parameters analyzed, the number, locations, frequency, duration and types of samples obtained by the DEQ were insufficient.  Further, the sampling was not informed by standard practice such as air dispersion meteorology or statistically-based sampling concepts.  The data do, however, provide cause for concern and further study.

    11.    The U.S. Environmental Protection Agency ("EPA") has published screening levels for numerous chemical compounds.  These screening levels are used to help the agency and decision makers assess environmental and human health risk when there have been releases of hazardous substances into the environment[3].  Exceedance of a screening level means that further

---

[3] EPA November 2018.  Risk Screening Levels—Generic Tables
https://www.epa.gov/risk/regional-screening-levels-rsls-generic-tables

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

action is required, whether additional investigation or some remedial measures (or both), in order to ensure adequate protection of human health and the environment.

12.     The limited air sampling and analysis conducted by the DEQ to date indicates that certain toxic chemicals typically found in LFG have been detected in the surrounding neighborhoods at levels exceeding EPA's chronic screening levels.  These include acrolein; 1,2-dichlorethane; benzene; carbon tetrachloride; naphthalene; and hydrogen sulfide.  Several other toxic compounds, including chloroform, are present at borderline levels and warrant confirmatory analysis.

13.     Hydrogen sulfide ("H2S") is a signature constituent of LFG. Human exposure to hydrogen sulfide is associated with a variety of health effects, depending on the concentration and dose. These include headache, nausea, nasal lesions resulting in nosebleeds, neurological effects (including reversible unconsciousness), respiratory effects (including difficulty in breathing, pulmonary edema and exacerbation of existing asthma), and ocular effects including conjunctivitis. Cardiovascular, metabolic, and reproductive effects have been observed in people exposed to hydrogen sulfide at different concentrations and for different periods of exposure. Sufficiently high concentrations have resulted in incapacitation and death.

14.     The other noted compounds are all multimodal toxicants – they are both potential human carcinogens and have other toxic effects.  For example, benzene causes leukemia (cancer) and also has a non-cancer effect of aplastic anemia.  1,2 dichloroethane causes hemangiosarcoma (cancer) and liver damage.  Further, in assessing cancer risk, it is not sufficient simply to measure the concentration of individual carcinogenic compounds.  These compounds may combine to have

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

9

aggregate impacts; thus, the toxicological and odor impacts of individual chemicals may depend not just on their individual concentrations, but how they combine with others.

15.     Of broader concern, however, is the fact that many of the chemical compounds commonly found in LFG *have not been tested for at all* at the Landfill site or in the community (based, at least, on the publicly available data that I have seen) or have not been tested adequately. These include toxic and odorous compounds as well as compounds that may act as tracers for the transport of LFG into the community.[4]

16.     In addition, we do know that hydrogen sulfide gas is present at very large concentrations from the Landfill.  Jefferson Parish's own consultant has documented releases of gases on the Landfill site that contain hydrogen sulfide at concentrations exceeding 2000 parts per million[5].  Exposure to hydrogen sulfide gas at these concentrations is highly toxic and potentially lethal[6].  Short of death, it is known to cause severe eye and lung irritation, olfactory paralysis, pulmonary edema, and sudden unconsciousness[7]  It is therefore not surprising that the consultant recommended that Jefferson Parish "train all personnel and contractors on the dangers of H2S and develop procedures and recommended equipment to ensure personnel safety working in these

---

[4] DEQ reported some of these as "tentatively identified compounds," or "TICs", but a complete analysis of TICs including confirmatory methods was not performed.
[5] The measuring equipment used by Carlson had a range of up to 2,000 ppm.  The exact upper concentration of hydrogen sulfide in this LFG has not been determined.
[6] ATSDR 2016.  Toxicological Profile for Hydrogen Sulfide and Carbonyl Sulfide.  U.S. Department of Health and Human Services, Public Health Service; National Research Council 2010.  Acute Exposure Guidelines for Selected Airborne Chemicals.  Volume 9.  National Academies Press; T.L. Guidotti 2010.  Hydrogen Sulfide: Advances in Understanding Human Toxicity.  Intl Jour Toxicology. DOI: 10.1177/1091581810384882.
[7] Guidotti, op. cit.

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

areas." [Carlson at Page 23]  Moreover, the DEQ documented concentrations of hydrogen sulfide

in the surrounding community at concentrations as high as 170 parts per billion, which is certainly

high enough to trigger concern and the need for more comprehensive sampling and analysis to

ensure protection of human health.

17.   I am aware of and have read the recent report prepared for the defendant Waste

Connections Inc., the private operator of the Landfill, by SCS Engineers[8]. This document presented

the results of a very limited survey of the Landfill and some off-site locations.  Contrary to the

Carlson and LDEQ studies, it concluded that measured concentrations of hydrogen sulfide at the

Jefferson Parish Landfill were minimal and not detectable at off-site locations. The report also

concluded  that another source of hydrogen sulfide exists in the region, that odors were well

managed at the Landfill, and that it was unlikely that the working face of the Landfill has been a

cause of any off-site nuisance odor. But SCS did not sample landfill gas, soil gas, condensate,

leachate, or flare emissions from the landfill.  In addition, SCS did not obtain any operating data

from the landfill gas collection system. Its measurements were limited to the use of a hand-held

field measuring device for hydrogen sulfide.  No samples were taken anywhere for analysis by

standard methods and protocols, which are necessary for characterizing chemical exposures and

sources. No quality assured odor sampling or measurement was performed in this survey. There

was no apparent quality assurance/quality control for this survey and the document even lacked a

detailed description of how the instrument was used.  The data collected and analyzed by SCS

---

[8] I have not been able to review the appendices to this report as of December 19, 2018.

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

have very limited utility for determining the potential for odors or health effects associated with emissions at the Landfill.  In fact, the data presented in the report even fail to substantiate the conclusions made by SCS.[9]

### Need for Immediate On-Site Data Collection

18.      I am aware that there have been numerous community complaints concerning odors suspected to emanate from the Landfill, along with reported physical and health impacts. Government authorities including the United States Agency for Toxic Substance Disease Registry ("ATSDR") have concluded that odor itself can cause a variety of health-related impacts, including the kinds of effects complained of by petitioners in this case[10].   And as noted above, there is also legitimate cause for concern that petitioners (and other community residents) may have experienced exposure to specific chemical compounds contained in the Landfill gases at concentrations and frequency that, individually or in combination, could cause harm.

19.      Theoretically, the best possible evidence to determine whether such exposures and harm have occurred would be actual air samples taken on a regular basis at each of petitioners' homes.  This would provide real-time, first hand data as to exposure levels experienced by each petitioner on an acute and chronic basis.    To determine whether the chemical exposures experienced at a given location in the community were the result of releases from the Landfill (as

---

[9] Despite these shortcomings, SCS presented data showing that 6 of 10 hydrogen sulfide measurements made in the community exceeded either a toxicological screening level, odor threshold, or both strongly indicating the need for further investigation.
[10] ATSDR 2017. "Are Environmental Odors Toxic?" Division of Community Health Investigation.  February 2017.

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

opposed to some other source), one would also ideally have collected real-time data over the same period at the Landfill site itself that would measure the identity and concentration of chemicals released by the Landfill. Established scientific methods could then be used to confirm whether the exposures to specific populations emanated from the Landfill

20.     In this case, however, we do not have comprehensive air sampling that measures the concentrations of chemicals to which petitioners and other subject populations have been exposed, nor do we have contemporaneous historical site-specific Landfill data concerning source emissions.

21.     The next best method to determine historical exposure levels in the surrounding communities would be to conduct air quality modeling using the most currently available data. This modeling requires reliable data concerning the nature and concentration of the chemicals emitted at the Landfill -- "source emissions" data – from which the fate and transport of those chemicals, and thus the exposure levels at specific locations, at specific times could be calculated.

22.     If conditions at the Landfill remained constant over time, source emissions data collected at any time would be sufficiently representative of past conditions to provide a reliable basis on which to model past exposure levels in the community. But Landfill conditions are not static; they are changing and may change significantly in the not too distant future, largely because Jefferson Parish is taking measures that are intended to remedy the uncontrolled release of LFG. The more time that elapses, the less reliable a foundation on-site source emissions data will provide to calculate exposure levels experienced by petitioners in the past. Therefore, in my opinion petitioners should be allowed to obtain access to the Landfill site as promptly as possible in order

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

13

to secure the most reliable source data available.   In addition, it goes without saying that the more improvements the Parish makes to the design, operation and maintenance of the Landfill gas collection systems, the less opportunity petitioners will have to view for themselves the state of those systems as they existed historically. In short, the most relevant and helpful evidence will, in effect, increasingly disappear over time.

### Contours of On-Site Inspection and Sampling Plan

23.     In light of what I have discussed above, I have developed the contours of a sampling and analysis plan that in my opinion should be carried out on the Landfill site as soon as possible to permit the collection of the most relevant source data presently available for purposes of determining historical exposures to Landfill gases and chemicals experienced by petitioners and other residents in the affected communities.   The plan is intended to be tailored as narrowly as possible to meet these data collection needs, while minimizing the amount of time required on the Landfill site itself and therefore the interference with day-to-day Landfill operations.   I would expect the plan would entail approximately two days on the Landfill site – the first day mainly for inspection and equipment setup, and the second to conduct sampling. The details and extent of this plan necessarily may change depending on what is discovered once access to the site is obtained and conditions are examined first-hand.   (Necessarily, this plan assumes that once on-site, petitioners will be given adequate access to inspect the Landfill operations.)   In any event, based on the publicly available information, the plan involves the following components:

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA JAMES

14

- A list of chemicals to be analyzed has been developed, and is presented in Table 1 below, based on the literature concerning typical LFG composition and the sampling previously conducted by the DEQ. These analytes have been selected as representative odorants, toxicants, and for utility in chemical fingerprinting and source tracing based on my experience and knowledge in these fields. Standard published regulatory methods or their equivalent will be used for sampling and analysis.

- In addition to these individual chemical compounds, air samples will be taken at each sampling location to analyze for odor strength and characteristics. Standard methods exist to collect and analyze for odor strength[11].

- It appears that LFG should be sampled promptly at locations in what is known as Phase IVA of the Landfill, given Carlson's findings of extremely elevated levels of hydrogen sulfide and methane in this area. [12]   The working assumption is that these locations also would yield the highest total concentrations of other LFG compounds; the highest readings will provide a

---

[11] St Croix 2003. "A Detailed Assessment of The Science and Technology of Odor Measurement". St. Croix Sensory, Inc. June 30,2003.
[12]   It is anticipated that samples would be taken from GW-524, GW-512, GW-502, GW-519 and GW-516. (Figure 1). Quality assurance samples will include a duplicate gas sample selected at random a ground level ambient air sample, and a blank. As noted, sample locations may need to be altered upon site access considering ongoing changes to the LFG collection system being implemented by the Parish. Carlson documented elevated levels of H2S and methane in other segments of the Landfill besides Phase IVA, but it is sufficient for the purposes for this narrowly tailored, preliminary investigation to focus on Phase IVA.

15

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

representative sample of LFG in Phase IVA while avoiding unnecessary duplication. A gas sample should also be taken at the inlet to the flare.

- Various operating parameters identified by Carlson will also be measured and recorded in field logs. These include field gas composition (methane, carbon dioxide, carbon monoxide, oxygen and nitrogen), gas temperature and flow rate, as well as static and system pressure. Atmospheric pressure in self-consistent units should also be recorded. Sampling personnel should also make note of any odors observed at the site, optimally including taking measurements of odor strength using established odor measurement techniques. Field logs will also include a photographic record of the sampling activities at the site.

- In addition, samples of flare gas should be taken while the flare is operating. These samples should be analyzed for dioxins/furans, polycyclic aromatic hydrocarbons, hydrogen chloride, and nitrogen oxides. If it is not possible to obtain site access while the flare is operating, the Parish should be required to conduct flare sampling and analysis for these extremely toxic compounds.

- Samples should also be taken of other media that may be components of exposure pathways. These include condensate/leachate samples from the

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA JAMES

collection system in Phase IVA. [13] Two soil gas samples should also be taken immediately outside the active Landfill area near the northwest corner of Phase IVA (Figure13).  Soil gas will be subject to the same analysis as LFG.

24.     In my professional opinion, the sampling and analysis plan outlined above is appropriate tailored to obtain the most useful and reliable source-emissions, site-specific data presently available to allow petitioners to evaluate the composition, characteristics, concentrations, frequency and duration of exposure to landfill gases to which petitioners have historically been exposed.

Paul Chrostowski, Ph.D., QEP

---

[13] Condensate will be analyzed by SW-846 methods for volatile organic chemicals (EPA 8260 + TICs), semi-volatile organic compounds (EPA 8270-TICs), metals (EPA 6020A), sulfide (EPA 9031) and cyanide (EPA 6020A).

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

The foregoing Affidavit was acknowledged, sworn to and subscribed to before me, the undersigned

notary, by Paul C. Chrostowski, Ph.D., QEP, this 19 day of December, 2018.

_____
Notary Public

> Sandy Idalia Turcios Granados
> Notary Public - Maryland
> Montgomery County
> My Commission Expires on
> August 1, 2021

My commission expires: _August 01, 2021_

[SEAL]

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

18



Sandy Idalia Turcios Granados
Notary Public - Maryland
Montgomery County
My Commission Expires on
August 1, 2021

24th E-Filed: 12/20/2018 08:59:04 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

# EXHIBIT 1

**To Affidavit of Paul C. Chrostowski, Ph.D., QEP**

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

**PAUL C. CHROSTOWSKI, Ph.D., QEP**
**Paul Chrostowski LLC**

7708 Takoma Avenue
Takoma Park, MD 20912
T: 301-585-8062
F: 301-585-2117
paul.chrostowski@icloud.com

**EDUCATION**

Ph.D. Environmental Engineering and Science, Drexel University
Philadelphia, PA (1981).

M.S. Environmental Science, Drexel University,
Philadelphia, PA (Environmental Chemistry and Health Specializations, USPHS
Traineeship) (1979).

B.S. Chemistry, University of California,
Berkeley, California (American Chemical Society Certified, Honors) (1976).

Continuing education in environmental engineering, toxicology, environmental
forensics, environmental analytical chemistry, mathematical modeling, statistics,
environmental molecular diagnostics.

**PROFESSIONAL CERTIFICATION**

Dr. Chrostowski is a Qualified Environmental Professional (QEP) (#02970014).

**AWARDS/RECOGNITION**

Recipient of 2003 Linn Enslow Memorial Award by NYWEA. Recognized for 35 years of
service to ACS Environmental Division.

**EXPERIENCE**

Dr. Chrostowski is the principal of Paul Chrostowski LLC where he assists select clients in
solutions of complex multidisciplinary problems. He is an environmental scientist and
engineer with over 40 years of experience in environmental work on behalf of both
government and private clients. Currently, Dr. Chrostowski's multidisciplinary practice areas
include human health and ecological risk assessment, environmental forensics,
environmental chemistry, environmental engineering science, and probabilistic risk analysis.
Previously, he was a founding Principal of CPF Associates, Inc, Director of Environment,
Health & Safety programs at The Weinberg Group, Vice President and Senior Science
Advisor at ICF/Clement, Senior Scientist at EA Engineering, Science & Technology,
Assistant Professor at Vassar College, a consultant in private practice and a pollution
control/industrial hygiene technician in industry. He has specialized experience in the
scientific and technical aspects of federal, state, and international regulatory programs
including the CWA, CAA, CERCLA/SARA, RCRA, TSCA, FIFRA, OSHA, California's
Proposition 65, product labeling, waste management technologies and environmental
assessment. In addition, he has directed projects involving environmental chemistry,
regulatory affairs, failure analysis, and quality assurance. Dr. Chrostowski's research

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA JAMES

interests include the behavior of complex mixtures, application of quantitative tools to environmental health management and evaluation, computational chemistry, pharmacokinetics, biomonitoring, mass transfer phenomena, applied statistics, and mathematical modeling for risk management decision making. Dr. Chrostowski is active in numerous professional societies and expert panels and has authored or co-authored over 130 publications or presentations in the environmental field. In addition to his technical work, Dr. Chrostowski has taught university-level environmental sciences and has presented expert testimony in litigation cases, regulatory, and permitting hearings and public meetings and has conducted technical negotiations on behalf of private and governmental clients. Dr. Chrostowski has provided *pro bono* consulting to local governments and non-governmental organizations and individuals. Details of his experience are shown on the subsequent pages. This is followed by Dr. Chrostowski's employment history, professional activities, and publication list.

**Human Health and Ecological Risk Analysis and Risk Management**

- Under the Environmental Protection Agency's (EPA) REM II, III, IV, TES and ARCS contracts, various state (Pennsylvania, Missouri, New Jersey, California, Colorado) Superfund contracts, and on behalf of private sector, municipal government, and federal facility clients acted as task manager or senior resource person for baseline human health and ecological risk assessments, assessments of remedial alternatives, development of cleanup goals public health, or ecological evaluations at numerous Superfund sites. To date, this has included over 350 sites. Acted as senior quality assurance reviewer for all Superfund/Resource Conservation and Recovery Act (RCRA) risk assessment work performed by Clement for EPA, Department of Defense (DOD) and the private sector. Advised clients on administrative and legislative Superfund reform issues.

- Assisted environmental and personal injury plaintiff and defense attorneys in analyzing scientific expert reports regarding causation. Applied Koch, Bradford Hill, and Susser principles to determining causation for alleged human health effects associated with endocrine disruptors, lindane, benzene, pyrethrins, and heavy metals. Authored a book chapter on causation. Applied theories from *Daubert, Joiner*, and other significant cases to evaluating the reliability of scientific evidence in litigation. Assisted in preparing technical portions of pleadings and evaluating pleadings prepared by opposing counsel. Assisted at depositions of experts in personal injury and insurance cases.

- Conducted a substantial amount of work in regulatory toxicology. Supervised laboratory toxicological research into the induction of potentially detoxifying enzymes in rats exposed to phenoxy herbicides. Reviewed the literature and developed an oral reference dose for non-radioactive strontium. Developed reference doses for non-cancer effects of dioxin (reproductive, developmental, endometriosis). Conducted a critical review of the carcinogenicity of dichloroethylene (vinylidene chloride) and 1,2-dichloroethane. Evaluated the toxicology and epidemiology of workplace and environmental exposure to sodium azide, hydrazoic acid and acrylamide. Developed IDLH for sodium azide. Researched the mode of action and dose-response relationships for DDT and congeners. Principal investigator of a re-evaluation of the human carcinogenic potential of BHCs. Critically reviewed and evaluated the application of toxicity equivalency approaches for PCBs, PAHs, and PCDD/PCDFs. Conducted in-depth analysis of weight-of-evidence for human carcinogenicity and dose-response quantification of PAH/PACs with a focus on naphthalene, dibenzofuran, and carbazole.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

- Principal investigator for an external peer review of an epidemiologic study investigating immune system dysfunction performed by a government agency in the vicinity of a multiple party Superfund site.  Taught fundamentals of epidemiology to a citizen's group.  Evaluated the quantitative aspects of the use of epidemiology in risk assessment.  Co-investigator of an epidemiologic study concerning emissions from a group of incinerators.  Over 25 years tracking epidemiologic studies regarding waste-to-energy and biomass combustion.  Reviewed and commented on ATSDR community public health studies.  Performed causation analysis regarding potential exposure to PAHs and testicular cancer.

- Reviewed proposed regulations and/or guidance documents on behalf of the regulated community.  Submitted comments and/or oral testimony on behalf of the regulated community regarding proposed EPA, OSHA, NIOSH, or ATSDR proposed rules, guidances or public communications.  Selected projects included: Great Lakes Water Quality Initiative, Risk Assessment Guidance for Superfund, Hazardous Waste Identification Rule, guidance for institutional controls, and Indirect Exposure methodology.  Monitored environmental rule-making in Florida on behalf of regulated community.

- Performed human health risk assessments, public health evaluations, and/or epidemiologic studies at a variety of municipal solid waste landfills, recycling facilities, agricultural waste management operations, and transfer stations.  Included in these are assessments of odor, pathogenic microorganisms, components of personal care products, particulate matter, volatile organic compounds in groundwater, and exposure to products of incomplete combustion of landfill gas.  Testified in proceedings involving migration of halogenated solvents in groundwater and odor emissions from landfills.

- Principal investigator of a project investigating exposure to micro-organisms, odors, and chemicals emitted from use of municipal sludge in mine reclamation.  Evaluations included chemical and microbiological risk assessments, odor analysis, and assessment of the applicability of medical monitoring.  Evaluated the potential for groundwater and surface water contamination associated with nitrogen compounds from composted sludge.  Conducted a comparative environmental impact analysis of methods of management of POTW sludge for a municipality.  Potential impacts on human health, ecological receptors, and water resources were evaluated.  On behalf of EPA, peer reviewed a report in dioxins in municipal biosolids.  Evaluated the potential for chemical-microbial toxicologic interactions following exposure to emissions from biosolids.  Assessed health and safety ramifications of application of 503 Rule to an agricultural waste.  Provided comment on EPA's draft NODA for dioxins in biosolids.  Provided expert testimony regarding pathogenicity of biosolids.  Evaluated community odor and health effect claims associated with emissions from biosolids processing and land application.  Performed quantitative microbiological risk assessments for pathogens potentially in biosolids.  Performed a comprehensive chemical and microbiological risk assessment for community exposure to a Class A biosolids thermal processing facility.  Directed a project measuring odorant emission rates from alkaline-stabilized biosolids.  Advised EPA and USDA regarding measurements of odor from biosolids operations.  Researched odor physiology and the relationship between odor and toxicity of odorants.  Performed a comprehensive review of the physiology and psychology of environmental odor perception.

- Assessment of microorganisms in processed food and the environment including prions, bacteria, protozoa, and viruses.  Evaluated survivability of organisms in food processing

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

and efficacy of disinfection protocols.

- Responsible for risk assessment, ecological assessment, epidemiological evaluation, and engineering evaluation of environmental health and safety work related to incinerators in the United States, Canada, and Australia. This has included the development of emission rates, specification of chemical analytical techniques, validation of analytical data, air dispersion modeling and developing protocols for indirect pathways. Experience includes over 30 municipal solid waste resource recovery facilities, several municipal sludge incinerators, eleven hazardous waste facilities, PCB incinerator, five cement kilns, several biomedical units, a thermal oxidizer, several thermal desorbers, and a thermal dioxin treatment unit. Consultant to industry, municipalities, and a citizens group for environmental health ramifications of waste-to-energy plants and materials recovery facilities. Assisted in developing permit requirements for a research incinerator. Evaluated permit application and developed conditions for a medical waste incinerator. Reviewed and critiqued protocols and risk assessments submitted by other consultants in support of permit applications for solid waste, hazardous waste, and medical waste incineration. Member of National Academy of Science/National Research Council committee on health effects of incineration. Directed a Monte Carlo analysis of environmental concentrations associated with hazardous waste incinerators and cement kilns using waste derived fuel on a nation-wide basis. Performed a multivariate analysis of the relationship between dioxin formation and combustion, flue gas chemistry, and air pollution control device parameters. Co-investigator in epidemiologic studies of potential exposure to incinerator emissions.

- Developed specialized expertise in quantitative areas of environmental analysis including failure analyses, geostatistics, mathematical modeling, sensitivity analysis, Monte Carlo simulation, decision theory, quantitative applications in risk management, and statistical dose-response modeling. Over the past 30 years, Dr. Chrostowski has conducted research in these areas, consulted with clients, prepared documents for submission to regulatory agencies and trained over 100 junior staff members in quantitative techniques. In addition to applying these methods to environmental problems, Dr. Chrostowski has developed and applied risk analytical tools to responses to chemical weapons incidents, food safety, occupational safety and health, and medical device safety. Project director of a research project conducted for a private client whose goal is the use of advanced statistical techniques in risk assessment. Methodologies for imputing values for chemical non-detects, a probabilistic approach to calculating exposure, and extrapolation of risk from limited sampling are goals of the program. Working knowledge of ProUCL, Statistica, EigenVector Solo, Causation Analysis Toolbox. Developed alternatives to EPA's exposure assessment methodology. Developed methods for calculating exposure to subsurface soil including three-dimensional kriging, Monte Carlo simulation, mixing theory and frequency-weighted exposures. Applied statistical techniques to sampling plan design, non-linear regression analysis, and determination of background soil concentrations through analysis of underlying probability distributions. Performed multivariate analyses for evaluation of sources of metals in groundwater. Evaluated and utilized alternative methods for numerical comparison of contaminant chemical fingerprints.

- Project director of an investigation into the status of viability of the endangered Desert Tortoise in the Las Vegas Valley. On behalf of the development community, participated in negotiations with the Fish and Wildlife Service (FWS) and Bureau of Land Management in addition to litigation involving the Desert Tortoise. Project culminated in a listing of the tortoise as threatened rather than endangered. Project manager for a task

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

involving evaluation of ecological risk models for EPA.  Developed work plans including sampling requirements and data quality objectives for ecological risk assessments and environmental toxicity testing.  Performed an ecological risk assessment for the Florida panther.  Evaluated potential ecological ramifications of converting farmlands to natural areas.  Implemented toxicity testing and macro-invertebrate surveys in support of a Triad approach to contaminated sediment management.

- Applied techniques of probabilistic risk analysis to a variety of situations and events. Techniques included hazard analysis and preliminary hazard analysis, fault tree analysis, event tree analysis, Monte Carlo/Latin hypercube simulation, reliability analysis, human reliability analysis, what-if analysis, and checklist analysis.  Applications include determining the probability and consequences of food contamination during processing, assessing the probability of failure of engineered waste management operations, conducting workplace safety analyses, determining the probability and consequences of fire and explosion while handling chemical weapons, determining the probability and consequences of explosion while disposing of waste energetic propellant, analysis of frequency of transportation accidents and human injury/death associated with accidents by truck, barge, and rail, evaluated failure modes for pollution control devices and workplace personal protection equipment.

- Conducted occupational health studies for exposure to numerous chemical substances during manufacturing.   These include exposure to sodium azide during air bag manufacturing, exposure to crystalline silica during power generation, exposure to solvents in a variety of industries including dry cleaning, machining, and photographic printing, and exposure of ground maintenance workers to particulate arsenic during lawn mowing and leaf blowing.  Monitored blood lead and urinary coproporphyins for workers in a battery manufacturing plant. Conducted an environmental health audit of workers in a high purity chromium manufacturing facility. Developed material safety data sheets for numerous substances for a variety of manufacturing clients.  Evaluated exposure of incinerator workers to heavy metals associated with waste processing.   Assessed worker exposure to chemical warfare agents.  Evaluated workplace and environmental stressors associated with chronic kidney disease.  Evaluated the potential association between worker exposure to heavy metals and autoimmune diseases. Assisted clients in developing company-wide worker health and safety policies.

- Developed specialized expertise in the assessment and risk management of contaminated estuarine and freshwater sediments.  Experience includes human health and ecological risk assessments, benthic macroinvertebrate and microorganism surveys, sediment toxicity testing, food web modeling, chemical speciation modeling, dating releases, applications of classical and geostatistics to contaminant distributions, demonstrating Monitored Natural Renovation, and liability and cost allocation.  Particular sediment expertise with PCBs, PCTs, chlorinated pesticides, PCDD/PCDFs, PAHs, petroleum, and heavy metals.

- Co-developer of a widely used mathematical model for evaluating exposure to volatile organic compounds during the use of household water (showering, bathing). Developer of a model to predict and evaluate air stripping as a remedy for VOC contaminated groundwater.  Co-developer of a mathematical model top predict uptake of dioxins and furans by plants. Developer of a theoretical model for the physico-chemical basis of volatilization.  Developer of a mathematical model for predicting volatilization of wood treatment chemicals from treated wood.

- Developed and quality assured Material Safety Data Sheets (MSDS) for a variety of

chemicals and chemical mixtures.  Performed product analysis for metals and silicate mineralogy in support of MSDS development.  Reviewed comprehensiveness of MSDS and DOT shipping requirements for a variety of reactive and explosive products. Investigated conditions for workplace and transportation reactivity of chemically reactive products.  Developed and implemented hazard communication programs for workers and the general public including chemical health and safety plans and shelter-in-place plans.  Developed, implemented and interpreted workplace air and biomonitoring programs.

- Principal investigator of a long-term project investigating human exposure to volatile organic chemicals ingested, inhaled, and dermally absorbed from water. Developed and maintained a comprehensive database of worldwide literature regarding exposures to volatiles from water. Developed and published an integrated human exposure model for these exposures. Validated the model with data collected from residential indoor air environments.  Applied the model to potential exposure at numerous Superfund sites and actual exposure alleged by toxic tort plaintiffs. Integrated human exposure model with indoor air quality and soil gas infiltration models. Conducted indoor air and vapor intrusion risk assessments at residential and commercial sites.  Critically reviewed ATSDR vapor intrusion public health assessments.

- Technical director for risk assessments at numerous pesticide sites. Performed an evaluation of the toxicological mechanism of action of DDTr, hexachlorocyclohexane, and toxaphene. Re-assessed the potential for DDT to cause human cancer. Directed a project for re-evaluation of cancer slope factors and reference doses for BHC isomers. Investigated the oncogenicity of lindane. Evaluated state-of-knowledge of toxicology of DDT and metabolites. Principal investigator of a project evaluating the potential for transboundary transport of pentachlorophenol.  Conducted risk assessments for exposure to pentachlorophenol in treated wood. Evaluated analytical protocols for low level environmental measurements at a pesticide site. Other multipesticide sites included the Kem-Pest site for EPA, McIntosh manufacturing facility, Geigy Chemical, Chemairspray, and Aberdeen pesticide dumps sites. Performed an environmental fate, transport, and exposure study on crop protection chemicals used in growing tomatoes. Senior science advisor to EPA's National Pesticide Survey. Included statistical evaluation of data, relational analysis, and review of study protocols. Project manager of a large-scale, nationwide pesticide exposure assessment conducted for termiticide application of chlordane and heptachlor according to EPA guidance. Negotiated with EPA on behalf of a private client concerning development of a monitoring and exposure study for chlordane. Evaluated the relative risk from home owner/applicator exposure to pesticides used for gypsy moth control, including acephate, carbaryl, DDVP, and integrated pest management. Provided expert testimony for evaluation of exposure to ethylene dibromide in ground water. Evaluated environmental fate and transport of isofenphos used as a termiticide. Co-principal investigator of a human health and ecological risk assessment for exposure to organochlorine pesticides and TBT from sediments to fish to consumers including humans and birds. Evaluated health effects of worker exposure to pyrethrins. Developed a technical framework for city and county ordinances regarding local regulation of residential exposure to pesticides.

- Developed a methodology for performing comparative risk assessments of implementation of remedial alternatives for Superfund and RCRA. The method, which includes and analysis of accidents and off -site hazards and risks, has been applied to three sites including one with 19 solid waste management units. Performed a risk assessment of remedial alternatives in parallel with a limited life cycle analysis of the same alternatives.  Integrated cost data and quantitative measures of engineering

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

reliability with risk data for overall remedy selection.

- Developed a methodology for calculating probabilities of occurrence and human health risks associated with <u>chemical fires and spills.</u> Directed a sensitivity analysis to determine the most significant variables in determining human exposures to materials associated with fires and spills. Applied the method to liquid and solid hazardous flammable and volatile material spills from storage tanks, tank trucks, and rail cars. Calculated human health and ecological risks associated with a spill of arsenic acid at a rail classification yard. Evaluated emergency response to a spill of carbon disulfide. Calculated the probability and consequences of detonation and explosion of a reactive substance under various disposal and use options.  Evaluated community response to a reaction incident involving sodium hydrosulfite.

- Applied mathematical models to assess community and workplace exposure and risk from <u>chemical weapons</u> releases.  Critically evaluated toxicology and environmental fate of chemical agents.  Developed parameter sets for use in chemical weapon exposure assessments. Evaluated efficacy and integrity of engineered control structures for chemical weapons and unexploded ordnance containment.  Evaluated and assisted in the development of analytical methods for legacy chemical weapons degradation products.

- Directed the preparation of a review of the fate and effects of environmental <u>mercury</u>. Participated in a debate regarding mercury regulation and disposal. Senior advisor for evaluation of numerous sites contaminated by mercury releases from measuring devices. Evaluated air pollution control technologies for controlling mercury emissions. Conducted workshops for the Gas Research Institute (GRI) and the Southern Gas Association on mercury emissions at gas metering sites. Consultant to GRI to develop a mercury risk model. Participating in workgroup to develop emission standard for mercury in New Jersey. Directed a project involving source apportionment for mercury releases in Florida. Developed and implemented a methodology for assessing risks for exposure to mercury along three natural gas transmission systems. Critically reviewed USEPA's *Mercury Report to Congress* on behalf of a regulated industry. Member of ATSDR expert panel on mercury bioavailability. Applied IEM2 model to predict and evaluate mercury environmental fate and transport.   Monitoring scientific activities regarding mercury methylation in freshwater ecosystems.

- On behalf of a private client, evaluated the probability, effects, and costs of a release predicted in association with a <u>Treatment, Storage, and Disposal Facility</u> (TSDF) expansion. The liability assessment was used to negotiate a permit and host community agreement. Evaluated the probability of a release occurring and the probability of a release not being detected in conjunction with determining financial assurance requirements for a landfill under RCRA. Project director of risk analysis in support of a major TSDF continuation. Responsibilities include multichemical multipathway human health and ecological risk assessments, risk analysis of on-site accidents and transportation accidents, communication with the public and regulatory agencies. Project director of an Environmental Impact Statement being prepared for a new landfill. Conducted multimedia risk assessment and presented expert testimony in support of a hazardous waste landfill expansion.  Evaluated RCRA financial assurance requirements for several TSDFs.

- Directed or acted as senior reviewer for risk or ecological assessment at five <u>mining/milling/smelting</u> sites. Developed new methodology for calculation of <u>lead</u>

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

cleanup objectives. Conducted regulatory analysis of options for cleanup of mining sites. Used integrated uptake/biokinetics model to predict lead exposure. Reviewed toxicology of low level lead exposure. Reviewed and contributed to field and laboratory protocols for measuring blood lead, lead in paint, and lead bioavailability . Senior advisor for risk assessment at a secondary lead smelter. Developed protocol for integration of biological and environmental monitoring of lead assessment. Performed a comprehensive evaluation of the epidemiology and dose response for human exposure to arsenic in the workplace and environment.  Designed, implemented, and interpreted a biomonitoring study for human exposure to arsenic in soil. Performed a study to measure worker exposure to soil-borne arsenic during maintenance activities. Implemented a risk management plan for residential development of an arsenic-contaminated property.

- Managed risk assessment of numerous wood-treating sites. Chemicals of concern included creosote, pentachlorophenol, copper/chromium/arsenic compounds, and chlorinated dioxins. Both human health and environmental impacts were evaluated. Of particular interest, was an analysis of the differential toxicology of components and contaminants of pentachlorophenol. In addition, Dr. Chrostowski developed a methodology for assessing dermal effects of exposure to creosote components and critically evaluated dose-response of mixtures of Polycyclic Aromatic Hydrocarbons (PAHs). Critically reviewed carcinogenicity of carbazole. Principal investigator of a multi-year project involving environmental fate and transport of wood treatment chemicals. Included development and application of a large-scale transboundary atmospheric transfer model and a mass transfer model for preservative volatilization from wood. Evaluated options for field analysis of CCA treated wood.

- Conducted a review of indoor air exposures to complex mixtures of chemicals in the workplace and residential environments.  Investigated the epidemiology and dose response of lung cancer and cardiovascular disease associated with indoor air exposure. Directed a risk assessment for workplace exposure to polyacrylamide dust. Evaluated environmental fate and exposure to acrylamide in the mineral processing industry.

- Acted as an expert witness for litigation concerning human exposure to dioxins/furans at Missouri dioxin sites. This work involved process chemistry of dioxin formation, phenoxyherbicide manufacturing, environmental fate and transport, statistical analysis of analytical data, and pharmacokinetics.  Evaluated the chemical kinetics and thermodynamics of formation of dioxin during combustion and in PCB-containing heat exchangers.  Assessed potential impacts of Agent Orange on Vietnam era veterans.

- Acted as a consultant to three private clients on the subject of human health and environmental impacts of disposal of ash from MSW incinerators. Included expert testimony and litigation support. Developed a methodology for conducting a screening risk assessment for ash disposal. Performed a full-scale risk assessment for a proposed ash monofill.  Evaluated options for beneficial re-use of ash from wood combustion.

- Supervised the development of Polychlorinated Biphenyl (PCB) cleanup goals in aquatic sediment at the ReSolve Superfund site. This project included the use of several complex mathematical models in addition to integrating field biology with exposure and toxicological concepts. Senior technical advisor to development of a technical guidance document for cleanup of PCBs from sediments for Pennsylvania Department of Environmental Resources. Advisor to State of Mississippi regarding PCB issues. Principal investigator for review of a PCB toxicology assessment. Developed mathematical models for evaluating co-mobility of PCBs and solvents in soil. Developed

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

a congener-specific risk assessment methodology for PCBs. Advisor to a project evaluating PCBs spilled from natural gas pipelines on behalf of a gas distribution company. Advisor to Department of Justice regarding PCB environmental chemistry at three sites. Evaluated types of PCB releases and remedial responses for an insurance carrier. Evaluated non-cancer systemic effects of ingested PCB exposure. Project manager of environmental assessment for proposed PCB incinerator. Conducted source apportionment of PCBs at Wide Beach and Massena sites. Traced PCBs using co-contaminant analysis at a manufacturing site. Evaluated contributions of PCBs from two landfills in New Jersey to a common surface water drainage. Advised client and interpreted results regarding sampling, chemical analysis, toxicological testing, disposal and management of dredged PCB-contaminated estuarine sediments. Evaluated environmental fate and transport, chemical analysis, source allocation and timing of releases of PCBs at the T-117 Early Action Area of the Lower Duwamish Waterway Superfund site. Evaluated industrial and environmental chemistry, fate and transport, and source allocation for PCBs and PCTs at the Slip-4 early allocation area of the Lower Duwamish Waterway Superfund site.

- Performed endangerment and/or risk assessments of four sites associated with abandoned coal-gasification facilities. Assisted in developing a protocol for rapid assessment at manufactured gas plants. Conducted remedial investigations at two gas plant sites for a utility. Evaluated the bioavailability and toxicity of cyanide wastes at gas sites. Investigated liability at a former manufactured gas plant site in conjunction with a property acquisition. Assisted legal defense team regarding a lawsuit over property transfer at an inactive manufactured gas site. Evaluated exposure from a former manufactured gas site associated with CERCLA and toxic tort claims. Evaluated the historical toxicology and state-of-regulation of by-products and wastes from manufactured gas plants and coke byproduct plants.

- Managed the development and application of a cost-effectiveness risk assessment methodology for the Electric Power Research Institute. This project included original contributions in fate and transport of unstable substances in water and developing a link between benefits, costs, and both human health and aquatic life risks.

## Environmental Chemistry and Engineering

- On behalf of Superfund Potentially Responsible Parties, traced chemical processes in a manufacturing plant to ascertain contributions to an NPL site. Performed analyses of divisibility of Superfund liability and recovery of response costs. Performed mass and materials balances of chemical production. Conducted analyses of waste streams that can be produced under various chemical manufacturing process scenarios. Evaluated historical state-of-knowledge regarding numerous chemicals, their production, and disposal methods. Chemicals evaluated included asbestos, chlorinated solvents, PCBs, chlorinated pesticides, PCDD/Fs, energetics/explosives. Evaluated the production of metal alloys and their subsequent environmental fate. Evaluated manufacturing sources producing a primary product with different byproducts to apportion environmental liability.

- Evaluated environmental fate and transport of numerous chemicals and chemical families in soil, surface water, groundwater, and atmospheric environments. Used environmental fate models to determine feasibility of natural attenuation, estimate time-to-cleanup, and allocate liability. Used complex mathematical/computer models including EXAMS, PEAC-WMD, ARCHIE, MINTEQ, SCREEN3, CAMEO/ALOHA, D2PC, ISC, TRIM, MCCEM, PHREEQC, PRZM3, AT123D, and IEM to evaluate and predict the behavior of chemicals in the environment. Conducted laboratory experiments

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

Paul Chrostowski, Ph.D., QEP                Page 10                          12/19/2018

on biodegradability, oxidation, and physicochemical parameter measurement.

- Pioneered in the application of <u>forensic techniques</u> to environmental science. Developed protocols for environmental sampling to meet strict evidentiary requirements. Developed and applied chemical fingerprinting, isotope analysis, dating, co-occurrence and other source apportionment techniques. Applied these techniques to natural gas (methane) chlorinated solvents, PCBs, PCTs, PFOAs (and related chemicals), PAHs, phthalate esters, PCDD/PCDFs, petroleum products and pesticides. Evaluated chemical manufacturing techniques and advanced mass spectrometric profiles for organochlorine pesticides to determine environmental sources of dioxins. Applications of stable isotope analysis include chlorinated solvents, perchlorate, natural gas, and lead. Assessed the sources and environmental fate of hazardous substances associated with the use of pyrite to manufacture sulfuric acid and the production of phosphate fertilizers from phosphate rock.

- Principal investigator of a project designed to <u>validate</u> over 20 years of environmental radiation measurements of a DOE site. Developed a statistical Quality Assurance/Quality Control *(QA/QC)* program to implement the validation. Developed techniques to perform second-level analytical data validation to data which had already passed the contract laboratory procedure validation. Applied technique to numerous cases resulting in major impacts on regulatory decisions.

- Developed an <u>analytical methodology</u> for rapid field detection and quantification of organophosphate pesticides. Compared results to laboratory methods using the gas chromatography/flame photometric detector. Applied methods to a multiple pesticide release incident in New York. Hands-on experience with numerous methods for sample collection, sample preparation and analysis. Sample preparation experience includes the use of Kuderna-Danish evaporators, Soxhlet extractors, continuous liquid-liquid extractors, and sonification. Analytical experience includes gas chromatography/mass spectrometry , flame ionization, electron capture, Hall, and photoionization detectors, high performance liquid chromatography, spectroscopy, electrochemistry, and wet methods. Data handling experience includes statistics, data reduction, use of electronic integrators, and chemometric pattern recognition. Directed numerous projects requiring analytical data validation using EPA functional guidelines.  Performed higher level validation at several sites.

- Directed both field and theoretical studies of speciation and migration of <u>chromium</u> in soil and ground water. Work included design of the investigation study, development of an innovative technique for measuring oxidation/reduction potential, and assessment of risks from chemicals in soil. Conducted human health and ecological risk assessments for chromium at the site. The culmination was a remedial action plan preparing the site for development. Evaluated remedial alternatives of *in-situ* chromium treatment at another site. Evaluated the status of a natural renovation chromium treatment program at a Midwest plating plant. Conducted a critical review of cleanup levels for chromium in soil.

- Developed in-depth <u>chemical fate and transport profiles</u> of chlorinated solvents, chemical warfare agents, polychlorinated aromatics (PCBs, PCDD/ PCDFs) and PAHs. Developed criteria for organic volatiles and metals in drinking water based on their effects on human health. Senior peer reviewer for exposure sections of the Agency for Toxic Substances and Disease Registry toxicological profiles. Directed laboratory

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

Paul Chrostowski, Ph.D., QEP                    Page 11                                    12/19/2018

research projects following the Toxic Substances Control Act (TSCA) protocols on environmental fate and transport of four chemicals. Modeled environmental performance and estimated properties of over 50 chemicals. Used structure-activity relationships to evaluate environmental fate of chemicals. Used quantitative structure-activity relations to predict physicochemical, chemodynamic, and toxicological properties of chemicals. Working knowledge of EPISUITES and Molecular Modeling Pro.

- Developed chromatographic methods for rapid analysis of PCBs absorbed to surfaces of vegetation and in surface films on water bodies. Applied the technique to evaluating PCB exposure at the Schatz Bearing Site, Poughkeepsie, New York. Evaluated comparative methods for PCB analyses including EPA 8082, EPA 1668, Green Bay and USACE methods. Evaluated field methods for PCB measurement and detection.

- Employed advanced GC/MS methods for the analysis of polycyclic aromatic compounds (PACs) in various matrices includ8ing coal tar, creosote, fuel oils, hydraulic fluids, and medium distillates. Compared EPA and ASTM analytical techniques. Performed comparative analysis of API PAC methods vs EPA methods for these compounds. Evaluated field methods for PAC/PAH detection and measurement including flurescence techniques.

- Developed analytical and QA/QC protocols for chemical weapons agents and their breakdown products. Agents included ricin, Lewisite, mustard, phosgene, cyanogens chloride and related materials. Simulated dispersion of agents in the environment after hypothetical detonations and releases. Applied principles of mass spectroscopy to qualitatively identify obsolete chemical weapons. Used principles of environmental fate and transport to predict survivability of formerly used chemical weapons in air water, and soil media.

- Developed a technique for rapidly assessing emissions from chemical fires based on thermodynamics, kinetics, and mass transfer .Developed mathematical models to predict the fate of wood-treating chemicals in the environment.

- During the 4 years from 1969 to 1972 performed as an industrial quality control/process control chemist. Included statistical analysis, development of sampling plans, development of control charts, and specification of raw materials. Developed a QA/QC plan for an independent contract laboratory . Audited QA/QC programs for private labs. Performed QA/QC audits on six contract laboratories and field labs in the REM lll Superfund contract. This involved several lab visits per year with inspection of QA documentation and standard operating procedures along with observation of all activities from receipt of samples of chain-of-custody to printing data reports. Audited a private laboratory for discrepancies in QA/QC program. Evaluated quality of analysis of stack gas for non-metallic elements.

- Evaluated potential for beneficial reuse of several types of materials including municipal solid waste ash, wood ash, paper waste, contaminated soil, and biosolids. Evaluations included the application of stabilization reagents and leach testing in addition to assessing physicochemical compatibility with proposed uses and determining the safety of the final product.

- Compared TCLP to the extraction procedure toxicity methods for extraction of metals from tailings at the Palmerton Zinc site. Evaluated efficiency of TCLP, EP Tox, and WET

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

Paul Chrostowski, Ph.D., QEP                Page 12                          12/19/2018

extraction fluids on various metal species.  Evaluated impact of modifications of TCLP extraction, digestion, and analytical methods for lead.  Conducted laboratory and theoretical studies on lead behavior during extraction testing.

- Conceptual design of treatment operations including stripping and activated-carbon treatment for aqueous organics and on-site chemical reaction for soil-bound PCBs. Developed and implemented laboratory and pilot plant protocols for testing of aquatic ozonation systems. Conducted treatability studies in many areas of soil, sediment, water and wastewater treatment.

- Conducted laboratory testing and advised a client on technical and regulatory basis of the FIFRA registration of a disinfectant.

- Evaluated a series of new techniques developed by a pesticide manufacturer to quantify low level analytical sensitivities. Performed data validation of applications of the method to herbicides in groundwater.

- Developed and implemented chemometric methods of environmental forensics for fingerprinting and source apportionment of complex mixtures including PCBs, dioxins/furans, toxaphene, chlordane, volatile organic compounds, metals, petroleum, and PAHs.  PCB mixtures included congener-specific, Aroclor chromatographic patterns and expanded chromatography. Integrated PCT analysis with PCB analysis to augment chemometric datasets. Distinguished gasoline mixtures from various sources. Allocated PAHs to petroleum processing, creosote manufacturing and use, and combustion sources. Distinguished between sources of petroleum in a historical release. Methods used include pattern recognition, multivariate analysis, principal components analysis, cluster analysis, factor analysis, similarity indices, and theoretical chromatography.

- Evaluated the mass migration of PCBs from a series of industrial heat exchangers. Determined the total quantity of PCBs on-site and off -site soil. Developed a method for dating a PCB release. Advised law-firm client on waste-water treatment of wastes containing PCBs. Evaluated whether PCB releases were sudden and accidental or continuous with respect to time.

- Designed and placed in a laboratory a study of the geochemistry of arsenic in a specific waste material. Integrated results from numerous different analytical methods and interpreted the results regarding ramifications to environmental mobility, human bioavailability, and ecological toxicity.  Methods included ion chromatography, sequential extraction, and electron spectroscopy.  Applied chemometric techniques to apportion arsenic in fill among soil, coal ash, and other materials.  Evaluated methodologies for real-time measurement of arsenic in a solid waste stream.

- Developed and implemented a protocol for calculating time-to-cleanup for sites undergoing natural attenuation remedies using advanced kinetic modeling and Monte Carlo techniques.

- Developed a protocol for the application of disinfectants to shock treat recreational waters focusing on the control of waterborne pathogens. Provided comment to WHO on recreational water risk assessment.  Evaluated aqueous chemistry and implemented complex equilibria models for cyanurates in water.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

Paul Chrostowski, Ph.D., QEP                Page 13                          12/19/2018

**Hazardous Materials Management**

- Developed and implemented protocols for <u>auditing contractor performance and costs</u> in association with cleanup of inactive waste sites. Evaluated contracts, proposals, invoices, and other evidence of costs. Analyzed NCP consistency, necessity for cleanup, conformance to generally accepted practices, and cost-effectiveness. Worked with accounting firms on remedial cost-control measures. Evaluated regulatory agency claims for oversight costs. Advised clients on remediation strategy and cost-control of remediation contractors. Retrospectively apportioned costs at sites among various regulatory programs. To date, these methods have been applied to sites with in excess of $1 billion in liability.  Co-author of a Superfund cost recovery handbook.

- Developed and implemented techniques for <u>source- and liability-apportionment</u> of chemical mixtures released into the environment. Applied these techniques to division of liability at several Superfund sites (including sites with up to 80 PRPs), to apportioning liability in toxic torts, and in cases involving New Jersey and Pennsylvania state laws. Also applied these techniques to investigate dating of releases. To date, these methods have been applied to petroleum, polycyclic aromatic hydrocarbons (PAHs), polychlorinated biphenyls (PCBs), toxaphene, chlordane, volatile organic compounds (VOCs) and polychlorinated dioxins and furans (PCDD/Fs). Developed and applied a method for distinguishing between two different sources of pesticide waste for cost recovery purposes.

- Participated in several cases involving <u>Superfund, RCRA corrective action, or state program liability</u>. Activities involved evaluations of divisibility, separation of municipal, mixed, and hazardous waste contributions to sites, cost allocations and recoverability on private CERCLA claims. Specific sites and/or chemicals have involved asbestos, mixed or comingled waste landfills, ink wastes, paint wastes, solvent spills, wastes associated with a contract (toll) chemical manufacturing operation, a multi-party pesticide disposal site, and a site involving co-disposal of surfactants and hazardous substances. This work included preparation of affidavits, participation in negotiations, and expert testimony in addition to technical analysis. Evaluated appropriateness of remedial actions and associated costs at Superfund sites. Evaluated compliance with the National Contingency Plan at private party Superfund sites. Evaluated costs and liabilities at a site governed by both Superfund and RCRA corrective action.  Investigated conflicting requirements of state and federal regulations at inactive and spill sites.  Audited investigative, community relations, construction management, quality assurance, and remedial contractor performance from engineering and cost standpoints. Determined if costs associated with cleanups were usual and customary or unusual in nature and extent.   Developed and applied risk-benefit and life-cycle cost analysis models (deterministic and probabilistic) to site remediation.

- Principal investigator for a project investigating EPA's development of exit criteria for the <u>Hazardous Waste Identification Rule</u> (HWIR). Constituents investigated include acrylonitrile, arsenic, beryllium, chromium, and toxaphene. Evaluated and made recommendations regarding EPA's use of quantitative structure-activity-relationships and peer review in HWIR.

- Performed an analysis of trends associated with <u>mercury</u> in the MSW stream. This included a mass balance that calculated mercury diverted into stack gas and ash from the operation of an incinerator. The analysis predicted both current and future mercury

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

Paul Chrostowski, Ph.D., QEP                  Page 14                            12/19/2018

levels.   Evaluated physico-chemical unit operations for gaseous mercury control. Determined recycling options for mercury waste.

- Performed analysis and submitted documentation to support the <u>waste classification</u> of a combustion residue as a non-hazardous waste.  Conducted waste characterization for spent sandblast material.

- Managed a project to develop a <u>remedial action plan</u> for remediation of a development site contaminated with PCBs, PAHs, asbestos and petroleum. Included technical and regulatory aspects of remediation, health and safety planning, and monitoring of the extent of remediation.

- Technical director of <u>Remedial Investigation/Feasibility Study (</u>RI/FS) activities conducted by ICF at the Hopewell Landfill Superfund site on behalf of the York County Solid Waste Authority.  Activities included preparation and implementation of workplans, QAPPs, H & S plans, community relations, supervising junior staff, developing remedial action objectives, negotiating with EPA and state regulators, remedy selection and monitoring the effectiveness of the remedy. Technical manager of RI/FS activity at two state-lead Superfund sites. This included the Wide Beach, New York, PCB site. Participated in sampling design, data analysis, risk assessment, environmental assessment, development of cleanup levels, community relations, conceptual design of alternatives, evaluation of remedial alternatives, and negotiations among interested parties.

- Advised a private client on RCRA; the Federal Insecticide, Fungicide, Rodenticide Act (FIFRA); and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) issues associated with <u>purchase of a property</u> previously contaminated with organochlorine pesticides. Activities included interpretation of the Toxicity Characteristic Leaching Procedure (TCLP) data, manifesting, conducting a risk assessment, and meeting with regulatory agencies.

- For a private client, directed oversight of contractor activities involved in remediation of a site contaminated with <u>organic arsenicals</u>. This work involved monitoring sampling, analysis, and development of remedial alternatives, including evaluation of technology and costs for treating inorganic and organic arsenic in waste, water, sediment, and soil.

- For a private client, conducted a study of <u>PCB migration</u> from an inactive sanitary landfill. This project included both field studies and mathematical modeling for passive and active vapor phase transport. The work culminated in a decision not to remediate.

- For a private client, investigated the impact of RCRA and FIFRA on <u>pentachlorophenol manufacturing</u>. The project included a review of process chemistry, an evaluation of waste minimization programs, a commercial TSDF survey, and a review of applicable treatment technologies. Performed an analysis for disposal options for F027 waste.

- Performed modeling and developed monitoring plans for air exposure analysis at hazardous waste sites. Designed and implemented an ambient <u>air monitoring</u> program for lead in response to a New Jersey Environmental Cleanup Responsibility Act action. Used air modeling to aid in design of PCB storage barn.

- For a private client, performed an evaluation of health, safety, and environmental

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

Paul Chrostowski, Ph.D., QEP                    Page 15                            12/19/2018

impacts of a proposed <u>TSDF expansion</u>. Included testimony before an administrative law judge.

- For a private client, directed studies to support a treatment program that will remove <u>dioxins/furans</u> from groundwater. These studies included locating the source of the dioxins, predicting their mobility, recommending personal protection for remedial personnel, evaluating treatment techniques, and advising on risk communications.

- For a county government <u>POTW</u> , directed a program to assess the hazards posed by aqueous chlorine emissions. Used the MERGE model and EPA's approach based on water quality criteria. This included development of a stochastic technique for evaluating exposure of aquatic life to chlorine.

- One of two authors of a <u>RCRA</u> exposure information report for a private client. Project manager for an Alternate Concentration Limit (ACL) demonstration project for the same client. Additional RCRA-related assignments have included development of a risk-based closure plan, assessing liability requirements for owner operators and advising clients on listing and categorization of wastes.  Advise clients on the impact of land disposal restrictions and anticipated revisions to RCRA. Managed activities for a RCRA closure equivalency demonstration for a private client

- Project manager of an RI/FS of an <u>oil spill</u> in Delaware Bay. Senior advisor to a team developing ACLs for service stations with groundwater contamination by petroleum. Developed a model to predict the rate of dissolution of spilled gasoline in groundwater for EPA. Senior advisor to an Underground Storage Tank (UST) investigative team. Developed and applied quantitative methods for assessing UST failure. Senior reviewer for EPA's gasoline risk assessment methodology. Assisted a building contractor in evaluating fuel oil spills that contaminated a development site. Director of field and evaluation work for litigation involving a gasoline release from a UST. Evaluated probability of failure of USTs including impact of corrosion and maintenance.  Allocated sources and determined the age of natural gas condensate releases.

- Advised local governments (Dutchess County, New York, and York County, Pennsylvania) <u>on management options for both active and inactive hazardous waste sites and solid waste disposal options</u>. Performed hazardous materials audits for a dye factory for the city of Poughkeepsie, New York, and a specialty organic chemicals facility for the town of Woodbury, New York. Performed a due diligence audit for the acquisition of a chrome plating plant in New York state by a foreign investor. Assisted in the environmental audit of a major Washington, D.C., hotel complex for a foreign investor. Formerly senior advisor to Clement's environmental audit practice.

- Performed preliminary evaluations of numerous potential Superfund sites using the <u>Hazard Ranking System (HRS)</u>. Performed QA/QC on HRS scoring conducted by others. Participated in the National Priority List (NPL) de-listing operation and audit of Superfund participation for private clients. Provided input to EPA's HRS revisions. Performed a sensitivity analysis of the HRS.  Used HRS to contest rankings performed by EPA and state agency contractors.

- Provided oversight for <u>contractor compliance</u> to remedial plans at several former hazardous waste sites undergoing development. This included negotiations with state officials in New Jersey and California.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

Paul Chrostowski, Ph.D., QEP                    Page 16                    12/19/2018

- Advised the FWS about environmental liabilities associated with purchase of property. This evaluation resulted in savings of millions of dollars.

**Environmental Education**

- Developed and taught an environmental chemistry curriculum at Vassar College. Course work at both undergraduate and graduate level and included both lecture and laboratory courses.

- Developed and taught a course on exposure assessments and risk characterization to EPA Regional Superfund personnel, U.S. Air Force, and California Department of Health Services.  Taught impact of other laws on Superfund to U.S. Air Force.

- Lectured to numerous groups on risk assessment, environmental regulation, and hazardous waste management, including the University of California, Rutgers University, Pace University Law School, and George Mason University.

**EMPLOYMENT HISTORY**

| | |
|---|---|
| 2018-present | Principal Paul Chrostowski LLC |
| 1999-2018 | President, CPF Associates, Inc. |
| 1993-1999 | Director, Environment, Safety & Health practice, The Weinberg Group Inc. |
| 1985-1993 | Vice President and Senior Science Advisor, Clement Division of ICF/Kaiser |
| 1984-1985 | Senior Scientist, EA Engineering, Science & Technology |
| 1981-1984 | Assistant Professor, Vassar College |
| 1979-1984 | Consulting scientist in private practice |
| 1976 | Information Analyst, Solar Energy Information Center |
| 1974-1976 | Research technician, University of California |
| 1970-1972 | Laboratory/industrial hygiene technician, C&D Batteries |
| 1968-1970 | Laboratory/pollution control technician, Jack Frost Sugar |
| 1964-1968 | Petty Officer, 2nd Class, U.S. Navy |

**PROFESSIONAL SOCIETIES**

Air and Waste Management Association
American College of Toxicology (Regular member)
American Conference of Governmental Industrial Hygienists
American Society for Quality (Former member)
American Public Health Association (Former member)
American Chemical Society
American Chemical Society Environmental Division
American Industrial Health Council (Exposure assessment, hazard identification and ecological risk assessment committees)
American Society for Testing and Materials (former member)
American Statistical Association (Risk Group )
Association of Environmental Health and Sciences
Hazardous Material Control Research Institute (Former member)

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA JAMES

Paul Chrostowski, Ph.D., QEP                    Page 17                              12/19/2018

International Society for Environmental Forensics
International Society for Exposure Analysis
National Environmental Health Association
Society for Environmental Toxicology and Chemistry (former member)
Society for Risk Analysis
History of Science Society (former member)
Water Environment Federation (former member)

### *PRO BONO* COMMUNITY ACTIVITIES

Montgomery County, MD Energy and Air Quality Advisory Committee
Takoma Park, MD Committee on the Environment
Science Fair Judge Environmental Science Projects
Montgomery College Community Liaison Committee
Community Center Liaison Committee advisor on green building principles
Advised Montgomery County Council on residential pesticide safety

### PROFESSIONAL ACTIVITIES

Peer reviewer for Ohio Water Environment Association

Peer reviewer ATSDR Toxicological Profile for 1,1,2,2-tetrachloroethane

Peer reviewer EPA's provisional RfD for 2-chlorobenzene

Peer reviewer EPA's provisional RfD for dibenzofuran

Peer Reviewer EPA's "Considerations for Developing Alternative Health Risk Assessment Approaches for Assessing Multiple Chemicals Exposures and Effects" May 2006.

Peer reviewer EPA's provisional RfD, RfC for 1,1,2-trichloroethane

Participant in EPA's Metals Assessment Issue Papers Workshop December 2002.

November 2001.  Presentation on Environmental Issues in Real Estate Transactions to Shulman Rogers real estate practice group.

Peer Reviewer, EPA's Workshop to Peer Review the Risk Assessment Guidance for Superfund Volume 3 Part A: Process for Conducting Probabilistic Risk Assessment. November 8-9, 2000.  Arlington, VA.

Seminar "Solving Environmental Mysteries with Forensic Science" presented to faculty and students of Drexel University School of Environmental Engineering Science and Policy, January 28, 2000.

Peer Consultant, EPA 's Workshop on Issues Associated with Dermal Exposure and Uptake. Bethesda, MD, December 10-11,1998.

Participant at 22nd Information Network for Superfund Settlements Conference, Washington DC, October 1998.

Listed in International Who's Who of Professionals.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

Paul Chrostowski, Ph.D., QEP          Page 18                    12/19/2018

Member of International Life Sciences Institute committee on bioavailability in risk assessment.

Member of Drexel University School of Environmental Science, Engineering & Policy Advisory Board.

Member of Agency for Toxic Substances Disease Registry expert panel on bioavailability of mercury.

Member of the National Academy of Sciences/National Research Council Committee on Health Effects of Waste Incineration.

Peer reviewer for several journals including *Environmental Science and Technology, Water Research, Risk Analysis, Human and Ecological Risk Assessment, Journal of Toxicology and Environmental Health, Journal of the Air and Waste Management Association,* and *Journal of the American Water Works Association.*

Participant on the AWWARF/KIWA Committee for the joint publication of "Non-Specific Analysis in Water Treatment."

American Chemical Society contact for "Science Behind the News" on subjects of PCBs, dioxin, incineration, and exposure assessment.

Session Chairperson - Permitting and Risk Assessment - 1989 Conference on Hazardous Wastes and Hazardous Materials.

EPA/Clean Sites Workshop on Standard Exposure Assumptions and Superfund Cleanup Standards participant.

EPA Workshop on Technical Issues in CERCLA Municipal Settlements, December 1991 participant.

Gas Research Institute Workshop on Mercury Contamination at natural Gas Industry Sites, January 1992.

Instructor, Virginia Bar Association continuing education course on environmental problems associated with railroad operations. 1996.

Instructor, Federal Bar Association continuing education course on regulatory toxicology. 1997.

Participant ICMA/EPA conferences on Superfund risk assessment reform, 1997, 1998.

Panel member, "Criteria for Selection of PBT Chemicals – Scientific Underpinnings". ABA Section of Environment, Energy and Resources. Nov. 15, 1999.

## PUBLICATIONS AND PRESENTATIONS

Chrostowski, P.C., Dietrich, A.M., and Suffet, I.H. 1980. Bench scale testing of an ozone system prior to pilot plant operations. Paper presented at the American Water Works Association Conference, Atlanta, Georgia. pp. 683ff.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

Paul Chrostowski, Ph.D., QEP                 Page 19                           12/19/2018

Chrostowski, P.C., Dietrich, A.M., Suffet, I.H., and Cairo, P.R. 1980. An experimental program for optimization of the application of ozone in drinking water treatment. Paper presented at the American Chemical Society's 14th Middle Atlantic Regional Meeting, King of Prussia, Pennsylvania.

Dietrich, A.M., Chrostowski, P.C., Brunker, T.M., and Suffet, I.H. 1981. Physical-chemical mechanisms of aqueous ozonation. Paper presented at the American Society of Civil Engineers National Environmental Engineering Conference, Atlanta, Georgia.

Chrostowski, P.C., Dietrich, A.M., and Suffet, I.H. 1981. Difference in physical-chemical properties of aquatic humics on treatment with ozone. Paper presented at the Symposium on Terrestrial and Aquatic Humic Materials at University of North Carolina, Chapel Hill, North Carolina.

Chrostowski, P .C. and Suffet, I.H. 1981. Ozonation of aquatic humics. Paper presented at the American Chemical Society National Meeting, New York, New York.

Crawford, J.A., Hassett, J.P., Chrostowski, P.C., and Suffet I.H. 1981. Evaluation of fractionation techniques for aquatic humic materials. Paper presented at the American Chemical Society's 15th Middle Atlantic Regional Meeting, Washington, D.C.

Chrostowski, P.C., Wright, R.L., and Suffet, I.H. 1982. Water quality factors affecting ozone demand. Paper presented at the Conference on Progress in Chemical Disinfection: New Concepts and Materials at State University of New York, Binghamton, New York.

Chrostowski, P.C. and Pearsall, L.J. 1982. Environmental fate of pesticides used in gypsy moth suppression: Data acquisition and modeling. Paper presented at the American Chemical Society's 12th Northeast Regional Meeting, Burlington, Vermont.

Chrostowski, P.C., Dietrich, A.M., Suffet, I.H., and Yohe, J. 1982. The role of mass transfer in pollutant removal by air stripping. Paper presented at the ASCE National Environmental Engineering Conference.

Chrostowski, P.C., Dietrich, A.M., and Suffet, I.H. 1982. Laboratory testing of ozonation systems as a prelude to pilot plant operations. J. Am. Water Works Assoc. 74:38-44.

Chrostowski, P.C., Pearsall, L.J., Thomas, H., and Shaw, C. 1983. The role of environmental chemistry in risk assessment at inactive landfill sites. Paper presented at the American Chemical Society National Meeting at Washington, D.C.

Chrostowski, P.C. 1983. A physical approach to undergraduate environmental chemistry. Paper presented at the American Chemical Society's 13th Northeast Regional Meeting, Hartford, Connecticut.

Neukrug, H., et al. 1983. Removing organics from Philadelphia drinking water by combined ozonation and adsorption. Prepared for the Office of Research and Development, U.S. Environmental Protection Agency. EPA 6OO/S2-83-048.

Chrostowski, P .C., Dietrich, A.M., Suffet, I.H., and Chrobak, R.S. 1983. A comparison of granular activated carbon and a carbonaceous resin for removal of halogenated organics from groundwater . In McGuire M. and Suffet I.H. ( eds. ). <u>Treatment of Water by Granular</u>

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

<u>Activated Carbon.</u> American Chemical Society Advance in Chemistry Series No.202. Washington, D.C.: American Chemical Society. Pp.481-502.

Chrostowski, P .C. 1983. Detection and elimination of an organic interference in the indigo method of aqueous ozone. Anal. Lett. 16: 1177 -1186.

Chrostowski, P.C., Dietrich, A.M., and Suffet, I.H. 1983. Ozone and oxygen induced oxidative coupling of aqueous phenolics. Water Res. 17:1427-1633.

Fava, J .A., Rue, W .R., Chrostowski, P .C., and Ferris, J .S. 1984. Management considerations in the use of chlorine and chlorination alternatives. Paper presented at the 5th Conference on Water Chlorination, Williamsburg, Virginia.

Chrostowski, P .C., Suffet, I.H., and Neukrug, H. 1984. Comparison of the effects of ozonation and combined chlorination/ozonation on organic compounds in drinking water treatment. Paper presented at the 5th Conference on Water Chlorination, Williamsburg, Virginia.

Chrostowski, P.C. and Suffet, I.H. 1984. Application of non-specific organic analyses to oxidation processes. Paper presented at the American Water Works Association Annual Conference, Dallas, Texas.

Chrostowski, P.C., Hinchee, R.E., Ferris, J.S., and Goodfellow, W. 1984. Thermal effects on bioaccumulation: A thermodynamic approach. Paper presented at the Society for Environmental Toxicology and Chemistry National Meeting, Arlington, Virginia.

Bancroft, K.L., Chrostowski, P.C., Wright, R.L., and Suffet, I.H. 1984. Ozonation and oxidation competition value: Relationship to disinfection and microorganisms regrowth. Water Res. 4:473478.

Chrostowski, P .C. 1985. Applications of risk assessment to soil contamination at hazardous waste sites. Paper presented at a meeting of the New York State Public Health Association, Bear Mountain, New York.

Chrostowski, P.C., Ferris, J.S., Rue, W.J., and Fava, J.A. 1985. Modeling the fate and transport of biocides in estuarine power plant cooling water discharges. Paper presented at the Coastal Zone ASCE, Baltimore, Maryland.

Chrostowski, P .C. 1985. Risk assessment of groundwater contamination at hazardous waste sites. Paper presented at the SETAC 9th National Meeting, St. Louis, Missouri, November.

Chrostowski, P. C. 1985. The environmental chemistry program at Vassar College. J. Chem. Educ. 60:137-138.

Chrostowski, P.C., Pearsall, L.J., and Shaw, C. 1985. Use of risk assessment in management decisions in inactive hazardous waste sites. Environ. Manage. 9:422-433.

Foster, S.A. and Chrostowski, P .C. 1986. Integrated household exposure model for the use of tap water contaminated with volatile organic chemicals. Paper presented at the 79th Annual Air Pollution Control Association Meeting, Minneapolis, Minnesota. Paper #86.12.3.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

Paul Chrostowski, Ph.D., QEP                Page 21                          12/19/2018

Norton, S.B. and Chrostowski, P.C. 1986. A conceptual model for the biouptake of xenobiotic chemicals by plants. Paper presented at the SET AC Annual Meeting, Alexandria, Virginia.

Chrostowski, P.C. and Pearsall, L.J. 1986. Risk assessment of chemical mixtures at hazardous waste sites. Paper presented at the SET AC Annual Meeting at Alexandria, Virginia.

Chrostowski, P .C. and Pearsall, L.J. 1986. Environmental behavior of polynuclear aromatic hydrocarbons at hazardous waste sites. Paper presented at the HMCRI 7th Annual Superfund Conference, Washington, D.C.

Sager, S.L. and Chrostowski, P .C. 1987. ACLs: The link between CERCLA and RCRA. Proceedings of the National Conference on Hazardous Wastes and Hazardous Materials, at Washington D.C.

Foster, S.A. and Chrostowski, P.C. 1987. Inhalation exposures to volatile organic contaminants in the shower. Paper presented at the 80th Annual Air Pollution Control Association Meeting, June, New York, New York. Paper #87-42.6.

Anderson, E.L., Chrostowski, P.C., and Vreeland, J.L. 1988. Risk assessment for use in groundwater management. Paper presented at the CSCE-ASCE National Conference on Environmental Engineering. Pp. 121-129.

Chrostowski, P.C. and Sager, S.L. 1988. Field and theoretical study of the subsurface mobility of chromium waste. Paper presented at the SET AC Annual Meeting.

Anderson, E.L., Chrostowski, P.C., and Foster, S.A. 1988. Calculating the risks. Solid Waste and Power. June.

Chrostowski, P . C. , Foster, S .A. , and Fogg, A. 1989. Assessing the risks of incinerating of dioxin contaminated soil. . Haz. Mat. Control J. 2:17-24.

Chrostowski, P.C. and Pearsall, L.J. 1989. Alternatives to the remedial investigation/feasibility study process. Paper presented at the 10th Annual Hazardous Materials Control Research Institute Superfund 1989 Conference, Washington D.C.

Chrostowski, P.C. and Foster S.A. 1989. Recent advances in asbestos assessment at Superfund sites. Paper presented at the l0th Annual Hazardous Materials Control Research Institute Superfund 1989 Conference, November 28, Washington D.C.

Chrostowski, P.C. and Shipp, A. 1990. State of the art for PCB site risk assessments. Paper presented at the PCB Forum at Houston, Texas. pp.47-61.

Foster, S.A. and Chrostowski, P.C. 1990. Estimating risks for hazardous waste incinerator emissions. Paper presented at the Incineration Conference, San Diego, California.

Anderson, E., Chrostowski, P.C., and Vreeland, J. 1990. Risk assessment issues associated with cleaning up inactive hazardous waste sites. In Kunrenther H. and Gouda M. U .R. ( eds.). Integrating Insurance and Risk Management for Hazardous Wastes. Boston: Kluner Academic Publishers. Pp. 15-40.

Paul Chrostowski, Ph.D., QEP               Page 22                    12/19/2018

Chrostowski, P .C. 1990. Measurement techniques for evaluating environmental asbestos, and risks associated with asbestos abatement activities. Paper presented at the Society for Risk Analysis Forum on Risk of Indoor Asbestos Building Materials, May 7-8, Arlington, Virginia.

Chrostowski, P .C. and Pearsall, L.J. 1990. Role of risk assessment in the selection of remedial alternatives. Presented at the 83rd Annual Meeting & Exhibition of the Air and Waste Management Association, June 24-29, Pittsburgh, Pennsylvania.

Chrostowski, P.C. 1990. Communication of risks associated with municipal solid waste management alternatives. Presented at Wastecycle 1990, October 3-4, New York, New York.

Chrostowski, P.C., Foster S.A., and Anderson, E.L. 1991. Human health risks associated with asbestos abatement. *Risk Analysis* 11 :465-481.

Draper, D., Chrostowski, P.C., and Greenberg, A. 1991. Polycyclic aromatic hydrocarbon source apportionment study for an urban development site. Paper No.91-82. 7 presented at the Air and Waste Management Association Annual Meeting.

Chrostowski, P.C., Durda, J., and Edelmann, K.C. 1991. The use of natural processes for the control of chromium migration. Remediation 1:341-351.

Durda, J. and Chrostowski, P .C. 1991. Integration of ecological risk assessment and biological risk assessment and biological assessment in risk management: The Aberdeen experience. Paper presented at 12th Annual Meeting of the Society of Environmental Toxicology & Chemistry, November 3- 7, Seattle, Washington.

Chrostowski, P .C. and Durda, J. 1991. Effects of air pollution on the desert tortoise: An ecological risk assessment. Paper presented at 12th Annual Meeting of the Society of Environmental Toxicology & Chemistry, November 3- 7, Seattle, Washington.

Chrostowski, P.C. 1991. Risk assessment methodologies for municipal solid waste management. Paper presented at ASH IV , Arlington, Virginia.

Foster, S.A., Chrostowski, P.C., and Dolan, D. 1991. The use of log-normal kriging to calculate exposure point concentrations. Paper presented at Measuring, Understanding and Prediction Exposures in the 21st Century, November 18-21, Atlanta, Georgia.

Chrostowski, P.C. and Wheeler, J.A. 1991. Actual compared to predicted chemical exposures at Superfund sites. Hazardous Materials Control/Superfund 91, December 3-5, Washington, D. C. Pp. 585-589.

Chrostowski, P.C., Foster, S.A., and Dolan, D. 1991. Monte Carlo analysis of the reasonable maximum exposure (RME) concept. Hazardous Materials Control/Superfund 91. Pp.577-584.

Chrostowski, P.C. and Sager, S.L. 1991. Management of ash from municipal solid waste combustion. In Travis and Hattemer-Frey (eds.) <u>Health Effects of Municipal Waste Incineration</u> Boca Raton, Florida: CRC Press. Chapter 13.

Chrostowski, P .C. and Wheeler, J .A. 1992. A comparison of the integrated uptake

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

Paul Chrostowski, Ph.D., QEP          Page 23                    12/19/2018

biokinetic model to traditional risk assessment approaches for environmental lead. In Hoddinott K.B. (ed.). Superfund Risk Assessment in Soil Contamination, Pennsylvania Studies. Philadelphia: ASTM. Pp. 151-166.

Chrostowski, P.C. 1993. Air toxics: Lead, mercury & other hazardous air pollutants. Lecture presented at the Environmental Issues in Utility Sitings. April 29, 1993. The Public Utilities Law Committee of the Florida Bar. Pp.5.1-5.5.

Chrostowski, P.C. 1994. Exposure assessment principles. In Patrick, D.E. (ed.). Handbook of Toxic Air Pollution. New York: Van Nostrand Reinhold Co., Inc. Pp. 133-163.

Chrostowski, P .C. 1994. A critical analysis of mathematical models used to assess exposure to lead. Paper presented at Lead Tech '94 Conference. Pp. 130-145.

Foster, S.A., Chrostowski, P.C., and Lape, J.F., Jr. 1994. Screening health risk assessment of flammable materials fires. Paper presented at 1994 International Incineration Conference, Houston, TX. pp.657-661.

Chrostowski, P.C. and Pearsall, L.J. 1989. Alternatives to the remedial investigation/feasibility study process. Paper presented at the 10th Annual Hazardous Materials Control Research Institute Superfund 1989 Conference, Washington D.C.

Osborne, C.G. and Chrostowski, P.C. 1995. Quantifying the tree. Food Quality. June/July. Pp. 32-38.

Chrostowski, P.C. 1996. Environmental Considerations in Railroad Property Transactions. Presentation to the Virginia Bar Association, Continuing Legal Education, 106th Summer Meeting, July 19, The Homestead, Hot Springs, Virginia.

Chrostowski, P.C. 1996. Risk Assessment of Polymers: Case Study of Bisphenol A. National Academy of Engineering Workshop on Polymers and the Environment. Woods Hole, MA.

Chrostowski, P.C. and Foster, S.A. 1996. A methodology for assessing congener-specific partitioning and plant uptake of dioxins and dioxin-like compounds. Chemosphere 32(11):22852304.

Chrostowski, P.C., Foster, S.A., and Kimball, H.J. 1996. Applications of Risk Management to Waste Combustion in Boilers and Industrial Furnaces. Presentation at the Air and Waste Management Conference, March 27, Kansas City, Missouri.

Chrostowski, P. C. and Huggard, J. 1996. International Considerations Regarding Product Labelling and Material Safety Data Sheets. Government Institutes Course on European Environmental Laws and Regulations, October 2, Alexandria, V A.

Chrostowski, P . C. , and Durda, J .L. 1997. Estrogenic activity: Does chemical structure provide any clues? Presented at the International Society of Regulatory Toxicology and Pharmacology, Assessing the Risks of Adverse Endocrine - Mediated Effects, 13-14 January , Research Triangle Park, North Carolina.

Chrostowski, P.C., Foster, S.A., and Lape, J.F. 1997. The impact of EPA's dioxin reassessment on waste-to-energy risk assessment. Proceedings of the 90th Annual Meeting

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

Paul Chrostowski, Ph.D., QEP                Page 24                12/19/2018

and Exhibition of Air and Waste Management Association, June 8-13, Toronto, Ontario, Canada.

Durda, J .L., Kowalski, L., Preziosi, D., and Chrostowski, P .C. 1997. Ecological risk assessment of landfill air emissions from a hazardous waste management facility in Ontario. Proceedings of the 90th Annual Meeting and Exhibition of Air and Waste Management Association, June 8-13, Toronto, Ontario, Canada.

Foster, S.A., Chrostowski, P.C., Smegal, D.C., Lape, J.F., and Preziosi, D. 1997. Stochastic odor impact analysis for a hazardous waste landfill. Proceedings of the 90th Annual Meeting and Exhibition of Air and Waste Management Association, June 8-13, Toronto, Ontario, Canada.

Foster, S.A., Pearsall, L.J., and Chrostowski, P.C. 1997. Comparative risk assessment of remedial alternatives for contaminated sludge. Proceedings of the 90th Annual Meeting and Exhibition of Air and Waste Management Association, June 8-13, Toronto, Ontario, Canada.

Huggard, J ., Chrostowski, P .C., and Weinberg, M.S. 1997. Product Policy: The Intersection of Life Cycle Assessment and Risk Management. SRA-Europe Conference, June 16, Stockholm, Sweden.

Durda, J.L., and Chrostowski, P.C. 1997. Phthalate ester estrogenic activity: Similarities, differences, and implications for risk assessment. Presented at the Estrogens in the Environment Conference on Linking Fundamental Knowledge, Risk Assessment, and Public Policy, July 20-23, Alexandria, V A.

Chrostowski, P.C. 1997. Defining Uncertainty in the Mathematics of Risk. Presented at The Challenges of Responsible Good Risk Management Practices, October 6- 7, Brussels, Belgium.

Chrostowski, P.C. and Witkin, K.B. 1997. Quantitative Integrated Risk Assessment for Medical Devices. Presented at the Medical Equipment Design and Technology Exhibition and Conference (MEDTEC), October 21-23, Amsterdam, The Netherlands.

Chrostowski, P.C. and Foster, S.A. 1997. An integrated quantitative decision approach for risk management problem solving. Proceedings of the International Conference and Workshop on Risk Analysis in Process Safety, pp. 259-272.

Chrostowski, P. C. 1997. Endocrine Modulating Chemicals as a Case Study in the Use and Misuse of Science. Presented at the American College of Toxicology 18th Annual Meeting, November 9-12, at the McLean Hilton, McLean, Virginia.

Durda, J .L. and Chrostowski, P .C. 1997. Assessment of Reproductive and Endocrine Modulation Risks from Exposure to Phthalate Esters in Food. Presented at the International Life Sciences Institute (ILSI) Conference on Human Diet and Endocrine Modulation: Estrogenic and Androgenic Effects, November 19-21, at the Hyatt Fair Lakes, Fairfax, Virginia.

Chrostowski, P.C., Weinberg, M.S., and Witkin, K.B. 1997. A Systematic Approach for Risk Analysis of Medical Devices. Presented at the Society of Risk Analysis 1997 Annual Meeting, December 9, at the Capitol Hilton, Washington, DC.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

Paul Chrostowski, Ph.D., QEP          Page 25          12/19/2018

Chrostowski, P .C. 1997. Good Bioavailability Practice. Presented at IBC's International Congress on Human Health Bioavailability , December 11-12, at The Radisson Scottsdale Resort, Scottsdale, Arizona.

Paustenbach, D.J., Bruce, G.M., and Chrostowski, P. 1997. Current views on the oral bioavailability of inorganic mercury in soil: Implications for health risk assessment. *Risk Anal.* 17(5):533-544.

Chrostowski, P .C. 1997. A Survey of Current Practice in Environmental Health Risk Assessment. Drexel/Olin workshop, Risk Assessment: Policy, Philosophy and Methods. March 13, 1997, Philadelphia, P A.

Chrostowski, P.C., Durda, J.L., Preziosi, D.V. 1998. Human Health Risks Associated with Endocrine Effects of Phthalates. Presented at IBC's Third International Congress on Endocrine Disrupters, April 14-15, Washington DC.

Chrostowski, P .C. 1998. Volatilization of Microcontaminants from Penta Treated Wood Poles. Presented at AWPA/USWAG specialty conference, Treated Wood Handling, Use, and Recycling Issues Workshop. May 15, Scottsdale, AZ.

Chrostowski, P .C. and Foster, S .A. 1998. Predicting and Averting Food Safety Crises. Food Quality Annual Conference. Chicago. Il." October 1998.

Chrostowski, P.C. 1998. Modeling Issues in Multi-Pathway Risk Assessment. NCAC-SOT Meeting, Bethesda, MD, November 1998.

Chrostowski, P.C.,Foster, S.A.,Durda, J.L., Preziosi, D. V. 1998. Good Ecological Risk Assessment Practices. SETAC Annual Meeting, Charlotte, NC, November 1998.

Woltering, D.M. and Chrostowski, P .C. 1998. Pentachlorophenol as a Case Study in the Evaluation of Chemicals as Persistent Organic Pollutants (POPs). SETAC Annual Meeting, Charlotte, NC, November 1998.

Chrostowski, P .C. and Charnley, G. 1998. Re-evaluation of the potential carcinogenicity of lindane. Society for Risk Analysis, Annual Meeting, Phoenix, AZ. December 6-9,1998.

Foster, S.A., Chrostowski, P.C., Charnley, G. 1998. Principles of good risk assessment practice. Society for Risk Analysis, Annual Meeting, Phoenix, AZ. December 6-9, 1998.

Bland, J.A., Sargent, E.V., Tyls, L., Ruby, M. V., Chrostowski, P.C., Bingman, T. 1998. Use of bioavailability data for the establishment of alternative cleanup levels for environmental media. Society for Risk Analysis, Annual Meeting, Phoenix, AZ. December 6-9, 1998.

Chrostowski, P.C. and Pearsall, L.J. 1998. Forensic environmental chemistry. *Metropolitan Corporate Counsel*, October 1998.

Foster, S.A., Chrostowski, P.C. and Preziosi, D.V. 1998. Stochastic impact analysis for a sulfuric acid spill in water. Poster presentation. 20th Annual International High Technology Safety, Industrial Hygiene, and Environmental Conference, 14-17 April, San Antonio Texas.

Chrostowski, P.C., Durda, J.L., and Estreicher, H. 1999. Endocrine-modulating chemicals as a case study of science in the courtroom. Intl. Jour. Toxicol. 18:201-207.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

Paul Chrostowski, Ph.D., QEP                Page 26                          12/19/2018

National Research Council (1999) (Committee Member) *Waste Incineration and Public Health*. National Academy Press, Washington DC.

Chrostowski, P.C., Foster, S.A., and Lape, J. 1999.  Integrated Multipathway Model for Exposure to Volatile Organic Compounds.  SRA Annual Meeting, Atlanta, GA. Dec, 8 1999.

Chrostowski, P.C., Pearsall, L.J., Foster, S.A., and Preziosi, D.V. 2000.  A Probabilistic Model of Time-to-Cleanup by Natural Attenuation.  in Wickramanayake, G.B. et al. eds, *Natural Attenuation Considerations and Case Studies: Remediation of Chlorinated and Recalcitrant Compounds*. Batelle Press, Columbus, OH.

Chrostowski, P.C. 2000.   Public perception of the evolution of the dose-response relationship in toxicology.  Fourth British-North American Joint Meeting, History of Science Society, August 3-5, 2000. St. Louis, MO.

Preziosi, D., Durda, J., Chrostowski, P. 2000.   Conceptual approaches for addressing temporal and spatial scales of wading bird populations and contaminant distribution. SETAC Annual Meeting.

Chrostowski, P.C. & Foster, S.A. 2001.   Forensic Applications of Environmental Health Sciences.  in Sullivan, P.J., Agardy, F.J., Traub, R.K., *Practical Environmental Forensics*. Wiley & Sons, NY.

Chrostowski, P.C., Foster, S.A., Preziosi, D. 2001.  The Global Dioxin Balance – Is There an Emissions Deficit?  Paper #208, AWMA 94th Annual Conference, Orlando, FL.

Foster, S.A. & Chrostowski, P.C. 2001.   Model Validation of Indoor Exposure to Volatile Organic Compounds from Showering.   Paper # 77.   AWMA 94th Annual Conference, Orlando, FL.

Chrostowski, P.C., Foster, S.A., & Preziosi, D.P. 2002.  Scientific peer review of "The Case for Caution".  New York Water Environment Association, 74th Annual Meeting, New York, February 3-6, 2002.

Chrostowski, P.C. 2002.  Health effects and risks associated with biosolids.  Proceedings Annual Residuals and Biosolids Management Conference, Water Environment Federation, Austin, TX March 3-6, 2002.

Chrostowski, P.C. and O'Dette, R. 2002.  Demystifying the great biosolids debate.  Pollution Engineering, August, pp. 28-32.

Chrostowski, P.C. and Foster, S.A. 2002.  Chemical intervention in swimming pools: A proposed definition for shock treatment.  NEHA 66th Annual Educational Conference. Minneapolis, MN, July 2002.

Chrostowski, P.C. 2002.  Recent developments in biosolids health effects analysis. WEFTEC.02.  Chicago, IL, September 29, 2002.

Chrostowski, P.C. 2003.  Health and Risk Management Issues Relevant to Biosolids.  WEF Specialty Conference, Baltimore MD, February 22, 2003.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

Paul Chrostowski, Ph.D., QEP                    Page 27                    12/19/2018

Foster, S.A., Chrostowski, P.C., Preziosi, D.V. 2003.  A Comparison of Two Mercury Environmental Fate and Transport Models in Evaluating Incinerator Emissions.  2003 Incineration Conference.  Orlando, FL May 12-16.

Chrostowski, P.C. and Foster, S.A. 2003.  Human Health Risk Assessment for Polybrominated Diphenyl Ethers in Biosolids.   23rd International Symposium on Halogenated Organic Pollutants and Persistent Organic Pollutants.  Boston, Aug 2003.

Chrostowski, P.C.  2003.  Odor Perception and Health Effects. WEFTEC. Los Angeles, CA.

Chrostowski, P.C. 2003. Emerging Pollutants in Biosolids.  AMSA Summer Conference. Boston.  July 16, 2003.

Durda, J., Chrostowski, P., Preziosi, D. 2004.  Chemometrics as a tool for sediment assessment and management: a case study of Greens Bayou, Houston, TX.  SETAC, 25th Annual Meeting. PT235.

Chrostowski, P.C. & Foster, S.A. 2004. Swimming Pool Shock Treatment.  Environ Health 66:26-27.

Langmuir,D., Chrostowski, P., Vigneault, B., and Chaney, R. 2004.  Issue Paper on the Environmental Chemistry of Metals.  Prepared for USEPA Risk Assessment Forum, Contract #68-C-98-148.

Chrostowski, P.C. 2005.  What Inhibition of Gap Junction Intercellular Communication Can Tell Us About Carcinogenic Dose-response.  Society for Risk Analysis December 4-7, Orlando, FL.

Foster, S. & Chrostowski, P.C. 2006. Methods for Addressing Public Health Concerns at Municipal Solid Waste Landfills. 21st International Conference on Solid Waste Technology and Management.  Philadelphia PA.

Foster, S. Chrostowski, P.C., Pirages, S., Nealley M. 2006.  Applications of the IEM-2M Mercury Fate and Transport Model in Hazardous Waste Combustion Facility Risk Assessment.  2006 Waste Management Meeting.  AWMA and USEPA, Arlington, VA.

Chrostowski, P.C. & Foster, S.A.2006.  Modeling exposure and risk from chemical weapons releases.  Society for Risk Analysis Annual Meeting, Baltimore, MD.

Foster, S.A., Chrostowski, P.C. & Wilsey, S. 2006. The role of landfill gas emission rate calculation methods in solid waste landfill risk assessments.  Society for Risk Analysis Annual Meeting, Baltimore, MD.

Chrostowski, P.C. & Foster, S.A. 2007.  Health effects of waste-to-energy: an update.  10th Annual Electric Utilities Environmental Conference.  Tucson, AZ.

Chrostowski, P.C. 2007.  Municipal Waste-to-Energy has very little public health impact. Natural Gas & Electricity 24:17-21.

Foster, S.A. & Chrostowski, P.C. 2008. Comprehensive human health and ecological risk assessment of a carbon reactivation facility.  SRA Annual Meeting, Boston MA.

Chrostowski, P.C. 2008.  Hill's Postulates. In Jorgensen, SE & Fath, BD (Eds) Ecotoxicology.  Vol 3 of Encyclopedia of Ecology, pp. 1858-1863.  Oxford: Elsevier.

24th E-Filed: 12/20/2018 08:59:05 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

Paul Chrostowski, Ph.D., QEP                Page 28                          12/19/2018

Foster, C., Richer, P., Lynch, G., Chrostowski, P., Hoffman, B. and Militana, L. 2008. PM2.5 Ambient Air Monitoring at a Regional Solid Waste Processing and Transfer Facility. Global Waste Management Symposium, Copper Mountain, CO. September 2008.

Foster, S.A., Chrostowski, P.C., and Porter, T.J. 2011. Ultrafine Particles in Combustion Source Emissions. 2011 Annual Society of Risk Analysis Meeting, Charleston, SC (December).

Foster, S. and Chrostowski, P.C. 2012. Human Health and Ecological Impact Analysis for a New Renewable Energy Facility in Florida. Waste-to-Energy Research and Technology Council (WTERT) 2012 Bi-Annual Conference. October 18-19, 2012. Columbia University, NY.

Foster, S.A. and Chrostowski, P.C. 2013. Public Health and Environmental Assessments of Waste-to-Energy Technologies. Energy-from-Waste: Assessments, Evolution & Opportunities. Richmond BC.

Chrostowski, P.C. and Foster, S.A. 2013. Recent Findings from Human Health and Ecological Risk Assessments of Waste to Energy Technologies. SRA Annual Meeting, Baltimore, MD.

Foster, S.A. & Chrostowski, P.C. 2014. Availability of Human Health Risk Assessments for Waste-to-Energy Technologies and Comparisons to Everyday Risks. 22nd Annual NAWTEC, Reston, VA.

Chrostowski, P.C. & Foster, S.A. 2014. Resolution of a Controversy—Do Waste-to-Energy Plants Cause Public Health Impacts? 29th Annual ICSWTM, Philadelphia, PA.

Chrostowski, P.C. 2017. Alternative Methods for Assessing Human Health Risks from Exposure to Polycyclic Aromatic Hydrocarbons. Society for Risk Analysis Annual Meeting, Arlington VA, December 11-13, 2017.

# EXHIBIT 2

**To Affidavit of Paul C. Chrostowski, Ph.D., QEP**

24th E-Filed: 12/20/2018 08:59:07 Case: 790369 Div:J Atty:035182 ELIZA   JAMES

**LIST OF CHEMICAL COMPOUNDS AND ANALYTICAL METHODS**

| Chemical Name | Source of Information | Category | Function | Method |
|---|---|---|---|---|
| acetaldehyde | DEQ | carbonyl | toxicant | EPA TO-11A |
| acetone | DEQ | VOC | tracer | EPA TO-15 |
| acetonitrile | DEQ | VOC | toxicant | EPA TO-15 |
| acrolein | DEQ | VOC | toxicant | EPA TO-15 |
| Ammonia | literature | Fixed gas | Toxicant, odorant | OSHA ID-188/OSHA ID164 |
| benzene | DEQ | VOC | toxicant | EPA TO-15 |
| 1,3-butadiene | DOH | VOC | toxicant | EPA TO-15 |
| 2-butanone | DEQ | VOC | tracer | EPA TO-15 |
| carbon disulfide | DEQ | Reduced sulfur | Toxicant, odorant | ASTM D5504/EPA 16B |
| carbon tetrachloride | DEQ | VOC | toxicant | EPA TO-15 |
| Carbonyl sulfide | Literature | Reduced sulfur | Toxicant, odorant | ASTM D5504/EPA 16B |
| chloromethane | DEQ | VOC | toxicant | EPA TO-15 |
| chloroform | DEQ | VOC | toxicant | EPA TO-15 |
| cumene | DEQ | VOC | toxicant | EPA TO-15 |
| cyclohexane | DEQ | VOC | toxicant | EPA TO-15 |
| p-dichlorobenzene | DEQ | VOC | toxicant | EPA TO-15 |
| 1,2-dichloroethane | DEQ | VOC | toxicant | EPA TO-15 |
| t-1,2-dichloroethene | DEQ | VOC | toxicant | EPA TO-15 |
| t-1,3-dichloropropene | DOH | VOC | toxicant | EPA TO-15 |
| 1,2-dichloro-1,1,2,2-tetrafluoroethane | DOH | VOC | tracer | EPA TO-15 |
| Dioxin/furan (flare) | Literature | Dioxin | Toxicant, tracer | EPA 23 |
| ethanol | DEQ | VOC | tracer | EPA TO-15 |
| ethylbenzene | DEQ | VOC | toxicant | EPA TO-15 |
| 1-ethyl-4-methylbenzene | DEQ | VOC | toxicant | EPA TO-15 |

24th E-Filed: 12/20/2018 08:59:07 Case: 790369 Div:J Atty:035182 ELIZA JAMES

| 4-ethyltoluene | DOH | VOC | toxicant | EPA TO-15 |
|---|---|---|---|---|
| formaldehyde | DEQ | carbonyl | Toxicant, odorant | EPA TO-11A |
| freon 11 | DEQ | VOC | tracer | EPA TO-15 |
| freon 113 | DEQ | VOC | tracer | EPA TO-15 |
| Freon 12 | DEQ | VOC | tracer | EPA TO-15 |
| 2-hexanone | DEQ | VOC | tracer | EPA TO-15 |
| Hydrogen chloride (flare) | Literature | Fixed gas | Toxicant | EPA 26 |
| Hydrogen cyanide | Literature | Fixed gas | Toxicant, odorant | OSHA ID-120 |
| hydrogen sulfide | DEQ | Reduced sulfur | Toxicant, odorant | ASTM 5504/EPA 16B |
| d-limonene | DEQ | terpene | Tracer, odorant | EPA TO-15 |
| Mercury | literature | metal | toxicant | EPA 30B (29) |
| Methane | DEQ | Fixed gas | tracer[1] | field |
| methylene chloride | DEQ | VOC | toxicant | EPA TO-15 |
| methylmethacrylate | DOH | VOC | toxicant | EPA TO-15 |
| naphthalene | DEQ | VOC | Toxicant, odorant | EPA TO-15 |
| Nitrogen oxides (flare) | Literature | Fixed gas | Toxicant, odorant | EPA 7 |
| n-butylacetate | DEQ | VOC | odorant | EPA TO-15 |
| n-heptane | DEQ | VOC | tracer | EPA TO-15 |
| n-hexane | DEQ | VOC | tracer | EPA TO-15 |
| 4-methyl-2-pentanone | DEQ | VOC | tracer | EPA TO-15 |
| n-nonane | DEQ | VOC | tracer | EPA TO-15 |
| n-octane | DEQ | VOC | tracer | EPA TO-15 |
| alpha-Pinene | DEQ | terpene | tracer | EPA TO-15 |
| n-propylbenzene | DEQ | VOC | toxicant | EPA TO-15 |
| 2-propanol | DEQ | VOC | tracer | EPA TO-15 |
| Propene | DEQ | VOC | tracer | EPA TO-15 |
| Sulfur dioxide | DEQ | Fixed gas | Odorant, toxicant | OSHA ID-104 |
| styrene | DEQ | VOC | toxicant | EPA TO-15 |
| tetrachloroethylene | DEQ | VOC | toxicant | EPA TO-15 |
| tetrahydrofuran | DEQ | VOC | toxicant | EPA TO-15 |

24th E-Filed: 12/20/2018 08:59:07 Case: 790369 Div:J Atty:035182 ELIZA  JAMES

[1] Methane gas can be fingerprinted using compound stable isotope analysis (CSIA) as necessary

| toluene | DEQ | VOC | Toxicant, odorant | EPA TO-15 |
| trichloroethylene | DEQ | VOC | toxicant | EPA TO-15 |
| 1,2,4-trimethylbenzene | DEQ | VOC | toxicant | EPA TO-15 |
| 1,3,5-trimethylbenzene | DEQ | VOC | toxicant | EPA TO-15 |
| vinyl chloride | DEQ | VOC | toxicant | EPA TO-15 |
| o-xylene | DEQ | VOC | Toxicant, odorant | EPA TO-15 |
| m/p xylene | DEQ | VOC | Toxicant, odorant | EPA TO-15 |

Notes:

Equivalent methods (as that term is commonly understood in environmental analysis) may be substituted as necessary. The laboratory should report all compounds detected in a method regardless of their absence on this list. TO-15 analysis should report all tentatively identified compounds (TICs). Laboratory reports should include raw mass spectra. Dioxins/furans, hydrogen chloride and oxides of nitrogen are to be measured in flare exhaust when flare is operating. Functions are intended to be illustrative not comprehensive.

DOH = Department of Health (chemicals identified as DOH were in DOH report but not in DEQ materials currently available).

DEQ = Louisiana Department of Environmental Quality

VOC = Volatile organic compound

EPA = U.S. Environmental Protection Agency

OSHA = U.S. Occupational Safety and Health Administration

ASTM = Association for Testing and Materials

24th E-Filed: 12/20/2018 08:59:07 Case: 790369 Div:J Atty:035182 ELIZA   JAMES



BRADLEYFIRM.COM

**Michael C. Mims**
*Partner*
New Orleans Office
direct: (504) 596-6136
mmims@bradleyfirm.com

December 28, 2018

***VIA FACSIMILE ONLY 504.364.3780***
Hon. Jon Gegenheimer
CLERK OF COURT
24TH JDC, PARISH OF JEFFERSON
P.O. Box 10
Gretna, Louisiana 70054

RE:     *Frederick Addison, et al v. Louisiana Regional Landfill Company, et al.*
        24th JDC, Parish of Jefferson, Case No. 790-369, Div. "J"
        Our File:  12534-180394

Dear Sir/Madam:

Attached please find a copy of Waste Connections US, Inc.'s Declinatory Exception of Lis Pendens and Reservation of Rights to Submit a Brief in Support Within the Delays Allowed by Law which I am presenting for fax filing. Please send me a return facsimile with the amount to cover the cost of filing same and I will promptly remit along with the original and three (3) copies of the notice.

Should you have any questions, please feel free to contact me.

Yours truly,

Michael C. Mims

MCM/kze
Enclosure

cc:     Byron M. Forrest

1100 Poydras St., Suite 2700  |  New Orleans, Louisiana 70163  |  T (504) 596-6300  |  F (504) 596-6301

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                                    DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**WASTE CONNECTIONS US, INC.'S DECLINATORY EXCEPTION
OF LIS PENDENS AND RESERVATION OF RIGHTS
TO SUBMIT A BRIEF IN SUPPORT WITHIN THE DELAYS ALLOWED BY LAW**

Defendant Waste Connections US, Inc. ("Waste Connections"), through undersigned counsel, and appearing herein solely for the purpose of preserving any rights as may be necessary under La. C.C.P. art. 928 and reserving all rights, hereby excepts to the Petition for Damages and Request For Injunctive Relief ("Petition") by submitting this declinatory exception of lis pendens pursuant to La. C.C.P. arts. 531, 532, and 925(A)(3).

Waste Connections reserves all rights to respond more fully to the Petition as appropriate under Louisiana law, which affords Waste Connections until January 16, 2019 to file responsive pleadings in this matter. Waste Connections will supplement this exception with a supporting brief on or before that deadline. This preliminary filing to preserve Waste Connections' rights was made necessary by Petitioners' opportunistically filed Request For Expedited Discovery For The Purpose Of Entering And Inspecting The Subject Landfill And Motion For Expedited Hearing, which Petitioners filed on December 20, 2018 and to which Waste Connections is responding contemporaneously with this filing.

As Waste Connections will set forth more fully in its forthcoming memorandum in support of this exception, the *Addison* Petition must be stayed or dismissed under the doctrine of lis pendens. Petitioners filed their Petition despite the pendency for several months of four nearly identical class action suits before the Eastern District of Louisiana (*Ictech-Bendeck v. Progressive Waste Solutions,* No. 2:18-cv-07889; *Thompson v. Louisiana Regional Landfill Company,* No. 2:18-cv-08071; *Bernard v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-08218; and *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-09312).

Whether or not these cases remain in federal court, they plainly subsume the late-filed, duplicative *Addison* action.

A court may dismiss or stay a subsequently filed action under the doctrine of lis pendens when there is an earlier-filed pending action that is based "on the same transaction or occurrence, [and] between the same parties in the same capacities[.]" La. C.C.P. art. 531 (case may be dismissed when earlier filed case pending in Louisiana state court), art. 532 (case may be stayed when earlier filed action pending in federal court); *see also Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc.*, 850 So. 2d 1027, 1031 (La. App. 2 Cir. 2003); *Aisola v. Louisiana Citizens Prop. Ins. Corp.*, 180 So. 3d 266, 269 (La. 2015). The test for deciding whether an exception of lis pendens should be granted is whether a final judgment in the first suit would be res judicata in the subsequently filed suit, which plainly will occur here because of the identity of the parties and claims. *Aisola,* 80 So. 3d at 269.

The *Addison* action obviously arises out of the same transaction or occurrence as the four class action suits because all five suits allege injuries caused by alleged odors emanating from the Jefferson Parish Landfill. Likewise, the parties are the same in all five cases: (i) the *Addison* Petitioners are all putative members of the classes that named plaintiffs in the four pending class actions seek to represent, and (ii) the defendants are the same. Louisiana courts have found a general identity of parties and claims sufficient for a lis pendens exception. *See, e.g., Holmes v. Louisiana Citizens Property Ins. Co.*, 168 So.3d 792 (La. App. 5th Cir. Feb. 25, 2015) (lis pendens applies to putative class member asserting claims in individual action that are identical to class action claims).

WHEREFORE, defendant Waste Connections US, Inc., respectfully requests that the foregoing declinatory exception of lis pendens be sustained, dismissing this matter with prejudice.

2

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: _____

David R. Taggart
(Louisiana Bar Roll No. 12626)
401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
(Louisiana Bar Roll No. 33991)
John B. Stanton
(Louisiana Bar Roll No. 36036)
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

BEVERIDGE & DIAMOND, P.C.
James B. Slaughter (*pro hac vice* to be applied for)
1350 I Street, N.W., Suite 700
Washington, DC 20005
(202) 789-6000

Michael G. Murphy (*pro hac vice* to be applied for)
Megan R. Brillault (*pro hac vice* to be applied for)
John H. Paul (*pro hac vice* to be applied for)
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400

Counsel for Defendant Waste Connections US, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above pleading on all known counsel of

record via email this 28th day of December, 2018.

_____
MICHAEL C. MIMS

3

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                                            DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**ORDER**

Considering the above and foregoing exception submitted by Waste Connections US, Inc.,

IT IS ORDERED BY THE COURT that Petitioners show cause on the _____ day of _____ at _____ a.m./p.m. why Waste Connections US, Inc.'s Declinatory Exception Of Lis Pendens should not be sustained.

Gretna, Louisiana, this _____ day of _____ 20__.


_____
DISTRICT JUDGE


**SHERIFF, PLEASE SERVE:**

Byron M. Forrest
FORREST CRESSY AND JAMES, LLC
365 Canal Street, Ste. 1475
New Orleans, Louisiana 70130

# BRADLEY MURCHISON
# KELLY & SHEA LLC

SHREVEPORT | NEW ORLEANS | BATON ROUGE

BRADLEYFIRM.COM

**Michael C. Mims**
*Partner*
New Orleans Office
direct: (504) 596-6136
mmims@bradleyfirm.com

December 28, 2018

***VIA FACSIMILE ONLY 504.364.3780***
Hon. Jon Gegenheimer
CLERK OF COURT
24TH JDC, PARISH OF JEFFERSON
P.O. Box 10
Gretna, Louisiana 70054

RE:   *Frederick Addison, et al v. Louisiana Regional Landfill Company, et al.*
       24th JDC, Parish of Jefferson, Case No. 790-369, Div. "J"
       Our File:  12534-180394

Dear Sir/Madam:

Attached please find a copy of Defendant Waste Connections US, Inc.'s Opposition to Petitioners' Motion for Expedited Briefing and Hearing which I am presenting for fax filing. Please send me a return facsimile with the amount to cover the cost of filing same and I will promptly remit along with the original and three (3) copies of the notice.

Should you have any questions, please feel free to contact me.

Yours truly,

Michael C. Mims

MCM/kze
Enclosure

cc:   Byron M. Forrest

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                          DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**DEFENDANT WASTE CONNECTIONS US, INC.'S OPPOSITION TO**
**PETITIONERS' MOTION FOR EXPEDITED BRIEFING AND HEARING**

Defendant Waste Connections US, Inc. ("Waste Connections"), through undersigned counsel, submits this memorandum in opposition to Petitioners' request for expedited briefing and hearing as set forth in their Request For Expedited Discovery For The Purpose Of Entering And Inspecting The Subject Landfill And Motion For Expedited Hearing, filed on December 20, 2018.

**I.      INTRODUCTION**

The *Addison* Petitioners' lawsuit is the fifth putative class action or mass action regarding alleged odors from the Jefferson Parish Landfill located in Waggaman, Louisiana (the "Landfill"). An exception of lis pendens has been filed on behalf of Defendant Waste Connections (and will be forthcoming by other Defendants) that under controlling Louisiana law should result in the dismissal or stay of the *Addison* action, obviating the need for any discovery. In any event, there is no exigency that requires expedited discovery at the Landfill, which has been the subject of near-daily data gathering for many months now, in addition to years of regulatory monitoring. Nor is there a basis for the expedited briefing over the holidays that the Petitioners have demanded. Waste Connections asks that the Court enter a schedule for briefing and argument on the exceptions, which if granted, will moot the request for expedited discovery.

Petitioners commenced this action asserting essentially identical nuisance claims to the four putative class actions currently pending in the United States District Court for the Eastern District of Louisiana, all of which were filed in July or August. One week after filing their Petition, on December 20, 2018, Petitioners filed a motion for expedited briefing and hearing in connection with their request for expedited discovery to inspect and conduct sampling at the

Landfill. However, under Louisiana law, the four pending putative class actions will take priority. The Court should hear Waste Connections' exception of lis pendens, which would result in a stay or dismissal of this matter, before any discovery issues are addressed, particularly where public evidence belies any suggestion of exigency.

Petitioners' claims for emergency discovery and an expedited briefing schedule misunderstand and misstate the well-known facts regarding the Landfill, and do not meet the high bar for discovery outside of the normal procedures, particularly in light of the declinatory exception of lis pendens that Waste Connections has filed. The Landfill is subject to intensive environmental compliance monitoring and reporting, as well as inspections by government and private entities, yielding significant data on the facility, all of which is publicly available. There is no need for expedited discovery of this well-studied landfill. For example, Petitioners claim that there is no historical data available on air emissions at the Landfill, and therefore, they need to conduct sampling immediately before data is lost. To the contrary, the Louisiana Department of Environmental Quality ("LDEQ"), the agency in charge of overseeing the Landfill, has inspected the Landfill on a regular basis for many years and intensified its inspections starting in April, collecting voluminous data on the leachate and landfill gas collection systems and recording on-site hydrogen sulfide concentrations and odor data. All of this data is available to Petitioners and the rest of the public on LDEQ's website.

Finally, even if the Court concludes that an expedited hearing on Petitioners' motion is appropriate at this time, there is no justification for Petitioner's request to accelerate the time for Defendants to respond on January 7, when most of the Defendants have not been served with the Petition. Defendants' experts and counsel will have to work through the holidays to prepare their defense, and there simply is no emergency regarding the evidence or its availability. Waste Connections respectfully requests that the Court deny Petitioners' request for expedited briefing and hearing on their motion and order a briefing schedule that occurs after all declinatory exceptions are filed and decided. A proposed order accompanies this Opposition.

2

## II.      PROCEDURAL AND FACTUAL BACKGROUND

### A.      Petitioners' lawsuit is a copycat of existing nuisance actions filed five months ago.

On July 25, 2018, the first of four putative class actions was filed in the 24th Judicial District Court for the Parish of Jefferson on behalf of a proposed class of persons seeking damages for alleged odors emanating from the Jefferson Parish Landfill. *See Ictech-Bendeck v. Progressive Waste Solutions,* No. 2:18-cv-07889 (E.D. La.) (filed in 24th Jud. Dist. July 25, 2018). On August 17, 2018, Defendants removed the *Ictech-Bendeck* action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Over the next month, three additional putative class actions were filed in the 24th District Court, *Thompson v. Louisiana Regional Landfill Company,* No. 2:18-cv-08071 (E.D. La.) (filed in 24th Jud. Dist. July 30, 2018), *Bernard v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-08218 (E.D. La.) (filed in 24th Jud. Dist. Aug. 10, 2018), and *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-09312 (E.D. La.) (filed in 24th Jud. Dist. Aug. 27, 2018). Defendants also removed these subsequent actions to federal court pursuant to CAFA.

Together, the four putative class actions seek damages against the owner of the Landfill, Jefferson Parish, and certain of its contractors, Louisiana Regional Landfill Company ("LRLC") f/k/a IESI LA Landfill Corporation, Waste Connections Bayou, Inc. f/k/a/ Progressive Waste Solutions of LA, Inc., Waste Connections US, Inc. (collectively the "Waste Connections Defendants"), and Aptim Corporation, on behalf of a proposed class defined as "[a]ll persons domiciled of and/or within the Parish of Jefferson" that suffered harm as a result the alleged emission of noxious odors from the Landfill. The plaintiffs allege damages from diminution in property value and personal injuries and also seek permanent injunctive relief.

Plaintiffs in all four putative class actions moved to remand the cases to state court, which Defendants opposed. Judge Morgan of the Eastern District held a hearing on the motions on October 31, 2018, and the parties are awaiting the court's decision. The Plaintiffs in those actions – represented by more than ten Louisiana lawyers with deep knowledge of the Landfill and area – have not sought any discovery to date.

<center>3</center>

The *Addison* Petitioners commenced their duplicative action on December 13, 2018, also seeking damages for alleged odors emanating from the Landfill. Petitioners consist of 86 residents of Jefferson Parish, and therefore are also members of the proposed class in the four pending complaints. Petitioners assert their claims against the same group of defendants that are named in the four putative class actions: the Waste Connections Defendants, Aptim Corporation and the Parish of Jefferson, as well as unidentified insurance companies of the various Defendants.

**B.    LDEQ, the Louisiana Department of Health, and Defendants have compiled large amounts of data regarding the Landfill and there is no exigency for data gathering.**

Contrary to Petitioners' representations, site specific data, including sampling data on the concentrations of odorous compounds in air emissions at the Landfill and agency inspection reports, are regularly prepared and made publically available. Throughout 2018, numerous inspections and assessments of the Landfill, including its landfill gas and leachate collection systems, were conducted by state agencies, such as the LDEQ, as well as by the owner and the operator of the Landfill. LDEQ regularly inspects the Landfill to ensure compliance with the applicable environmental regulations and permit requirements. Beginning on October 1, 2018, LDEQ has visited and inspected the Landfill on a near-daily basis. During their inspections, LDEQ staff prepare reports summarizing the conditions observed at the Landfill and record on-site hydrogen sulfide concentrations and odor data, using measurement instruments and personal observations. *See* LDEQ, Field Interview Forms, Site Assessment Checklists, and Monitoring Report Forms (Dec. 4, 5, & 10, 2018), attached hereto as Exhibit A. All of LDEQ's inspection reports for the landfill are publicly available on its Electronic Document Management System ("EDMS"), and large amounts of additional data are available through Louisiana FOIA requests. *See* LDEQ, EDMS, http://edms.deq.louisiana.gov/app/doc/querydef.aspx (documents regarding the Landfill are available by searching for Agency Interest (AI) No. 6961).

In addition to LDEQ's inspections, Jefferson Parish and the Waste Connections Defendants separately retained environmental consultants to assess the Landfill's operations. Carlson Environmental Consultants ("CEC") performed an assessment of the Landfill's leachate and landfill gas collection systems in the Spring of 2018 to determine the condition and

4

operation of the system. CEC issued a final report of its assessment on August 15, 2018, which was made available to the public. *See* LDEQ, EDMS, Doc. ID No. 11380843.[1] Waste Connections hired SCS Engineers ("SCS") to conduct a site inspection of the Landfill in the Fall of 2018 to identify potential odor sources and concentrations at the Landfill and at other potential offsite sources, and determine the status and condition of the Landfill's leachate and landfill gas collection systems with regard to their potential to produce fugitive odorous emissions. Between September 14 and 15, 2018, SCS collected 26 air samples (onsite) and 16 air samples (offsite). Waste Connections provided copies of SCS's report to LDEQ and the media in order to provide the public access to the report and all of the underlying data. SCS Engineers, *Jefferson Parish Site Evaluation with Respect to Odors* (Oct. 24, 2018).[2]

Finally, the Landfill is subject to federal New Source Performance Standard ("NSPS") regulations under the Clean Air Act, implemented through a Title V permit issued to the Landfill. These regulations require that the Landfill perform quarterly surface emission monitoring ("SEM"). SEM provides a true picture of a result of actual fugitive emissions released to the atmosphere from the landfill surface. The reports by SCS and CEC, which Petitioners rely on heavily, explain that the SEM data demonstrate that the Landfill is in substantial compliance with the NSPS regulations.

## ARGUMENT

Expedited briefing and hearing on a motion for expedited discovery is not warranted here, because of (i) dispositive exceptions to the Petition that have been or will be filed in the near term; (ii) the difficulty Petitioners have in showing any exigency; and (iii) the lack of any exigency to force the Defendants to scramble over the holidays to mount a technical defense to the motion before most have even been served with the Petition. As Petitioners admit, no Louisiana state court has published a decision granting expedited discovery, let alone expedited briefing and hearing on a motion for expedited discovery. Pet'rs. Mem. at 5. Although federal courts may grant expedited discovery upon a showing of good cause, "expedited discovery is not the norm." *Crutchfield v. City of New Orleans*, No. 17-08562, 2017 WL 4812408 (E.D. La. Oct.

---

[1] A copy of CEC's report is available to the public at : http://edms.deq.louisiana.gov/app/doc/querydef.aspx
[2] The SCS report is available to the public on The Advocate's website:
https://www.theadvocate.com/pdf_c36caea0-de12-11e8-9513-b3e21a4eedf7.html.

25, 2017) (no good cause for expedited discovery where motion to dismiss attacking sufficiency of complaint pending). Petitioners, as the party seeking expedited discovery, bear the burden of showing that "the need for expedited discovery outweighs the prejudice to the [Defendants]." *BKGTH Prods., LLC v. Does 1-20*, No. CIV.A. 13-5310, 2013 WL 5507297, at *5 (E.D. La. Sept. 30, 2013).

The federal court decisions cited by Petitioners actually support denial of the motion. In several of the cases cited by Petitioners, expedited discovery was denied. *See Greenthal v. Joyce*, No. 4:16-cv-41, 2016 WL 362312 (S.D. Tex. Jan 29, 2016) (expedited discovery seeking information related to proposed merger not warranted where court simultaneously denied TRO and preliminary injunction); *Magnolia Fleet, LLC v. Grey*, No. 18-8363, 2018 WL 5619995 (E.D. La. Oct. 30, 2018) (motion for early medical examination requested by defendants denied because discovery had not commenced and no surgery scheduled). Cases granting expedited discovery involved very different facts, such as a plaintiff seeking a preliminary injunction to protect trade secrets, *FMC Corp. v. Varo Int'l, Inc.*, 677 F.2d 500 (5th Cir. 1982), a plaintiff seeking information to determine the identity of "doe" defendants, *BKGTH Prods*, 2013 WL 5507297, or a defendant seeking expedited discovery after answering the complaint and where the parties had already conducted their Rule 26(f) conference, *Tribal Casino Gaming Enter. v. W.G. Yates & Sons. Contrs. Co.*, 1:16cv30, 2016 WL 3450829 (W.D.N.C. June 16, 2016).

**A.      The Court should rule on Defendants' exceptions before considering Petitioners' motion for expedited discovery.**

Petitioners filed their Petition despite the pendency for several months of four nearly identical putative class action suits before the Eastern District of Louisiana (*Ictech-Bendeck v. Progressive Waste Solutions*, No. 2:18-cv-07889; *Thompson v. Louisiana Regional Landfill Company*, No. 2:18-cv-08071; *Bernard v. Progressive Waste Solutions of LA, Inc.*, 2:18-cv-08218; and *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.*, 2:18-cv-09312). Whether or not these cases remain in federal court, they plainly subsume the late-filed, opportunistic *Addison* action, which under Louisiana law will be dismissed or stayed. Waste Connections has filed simultaneously with this opposition an exception of lis pendens based on the four previously-filed putative class actions that *Addison* merely mimics (other Defendants

6

**0105**

also intend to file exceptions of lis pendens once served with the Petitions). Waste Connections intends to submit additional briefing in support of its exception of lis pendens within the appropriate deadlines for filing responsive pleadings—but that exception clearly has merit, for the reasons briefly outlined below.

A court may dismiss or stay a subsequently filed action under the doctrine of lis pendens when there is an earlier-filed pending action that is based "on the same transaction or occurrence, [and] between the same parties in the same capacities[.]" La. C.C.P. art. 531 (case may be dismissed when earlier filed case pending in Louisiana state court), art. 532 (case may be stayed when earlier filed action pending in federal court); *see also Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc.*, 850 So. 2d 1027, 1031 (La. App. 2 Cir. 2003), *writ denied* 60 So. 2d 1157 (La. 2003); *see also Aisola v. Louisiana Citizens Prop. Ins. Corp.*, 180 So. 3d 266, 269 (La. 2015). The test for deciding whether an exception of lis pendens should be granted is whether a final judgment in the first suit would be res judicata in the subsequently filed suit, which plainly will occur here because of the identity of the parties and claims. *Aisola,* 80 So. 3d at 269.

The *Addison* action obviously arises out of the same transaction or occurrence as the four putative class action suits because all five suits allege injuries caused by alleged odors emanating from the Landfill. Likewise, the parties are the same in all five cases: (i) the *Addison* Petitioners are all putative members of the classes that named plaintiffs in the four pending putative class actions seek to represent, and (ii) the defendants are the same. Louisiana courts have found a general identity of parties and claims sufficient for a lis pendens exception. *See, e.g., Holmes v. Louisiana Citizens Property Ins. Co.*, 168 So.3d 792 (La. App. 5th Cir. Feb. 25, 2015) (lis pendens applies to putative class member asserting claims in individual action that are identical to class action claims). Because Defendants' exceptions of lis pendens will likely result in a dismissal (if one or more cases are remanded to state court) or at least a stay of this action (if cases remain in federal court), the Court should not require Defendants to respond to expedited briefing and hearing for Petitioners' request for expedited discovery until after the Court has ruled on Defendants' declinatory exceptions.

7

**B.      Petitioners have no pressing need for evidence that justifies the extraordinary remedy of expedited discovery.**

Even if the Court were inclined to allow this motion to proceed before Defendants have an opportunity to be heard on their declinatory exceptions to the Petition, the circumstances do not necessitate expedited briefing and hearing on the motion – Petitioners have not shown that good cause exists for an expedited motion schedule. Rather, Petitioners simply claim that "[g]iven the importance of gaining rapid access to the Landfill," they should be allowed to have an expedited briefing and hearing schedule. Pet'rs. Mem. at 10.

Petitioners' purported need for expedited briefing and hearing seems to be based on the same general argument they make for seeking expedited discovery: that evidence is allegedly being lost because, according to Petitioners, there has been no systematic or comprehensive sampling conducted that would show what contaminants Petitioners have been exposed to. Pet'rs. Mem. at 7.   Although Petitioners' technical arguments will require further inquiry by Defendants (which Defendants will conduct as part of their opposition to the expedited discovery request), it is already apparent that Petitioners ignored highly relevant data and have made incorrect, misleading, and hyperbolized assertions of fact that undermine the clear showing needed for this extraordinary relief.

Petitioners' statements disregard the onsite sampling data already available to them. Dr. Chrostowski states that "source emissions data collected at any time would be sufficiently representative of past conditions," Chrostowski Aff. ¶ 22, then proceeds to ignore data of on-site odors and hydrogen sulfide concentrations collected nearly daily by LDEQ, among others, and posted on LDEQ's website. *See, e.g.,* LDEQ, Field Interview Forms, Site Assessment Checklists, and Monitoring Report Forms (Dec. 4, 5, & 10, 2018).[3] Petitioners also wrongly assert that applicable regulations "do not even require the Parish to collect or maintain . . . source specific emissions data," Pet'rs. Mem. at 4, but either omit or are unaware of the fact that the Landfill conducts quarterly SEMs in compliance with federal regulations and the Landfill's Clean Air Act permit. Because there is existing historical emissions data from Jefferson Parish that "would be sufficiently representative of past conditions," Chrostowski Aff. ¶ 22, Petitioners have failed to

---

[3] Available at http://edms.deq.louisiana.gov/app/doc/querydef.aspx (AI No. 6961).

show why this available data is inadequate and why after over a year of alleged odors there is suddenly an emergency dictating briefing over the holidays.

Despite this readily available information, Petitioners also claim that they need to immediately sample air emissions at the Landfill in order to model potential historical exposure, on the premise that there is insufficient historical exposure data available to them to determine what contaminants they have been exposed to. Petitioners' statement raises the question of why they could not perform air sampling at their homes—indeed, Petitioners' own expert, Dr. Paul Chrostowski, admits that such sampling is the best evidence of Petitioners' exposure. Chrostowski Aff. ¶ 12. Petitioners seek pre-answer permission to conduct highly disruptive discovery at the Landfill but have gathered no data from their homes to even suggest a minimal causal connection to the Landfill. Petitioners simply presume throughout their motion papers that the Landfill is the only potential source of odors in the community and at their homes, despite the many other potential sources publicly identified by LDEQ, the Louisiana Department of Health, and SCS. This unsubstantiated assumption undercuts Petitioners' proposed odor survey and measurement plan and highlights the faulty assumptions underlying this action.

Finally, in a desperate and erroneous effort to create an appearance of exigency, Petitioners wrongly claim that the maintenance work being done at the Landfill is a "complete alteration" that is destroying important evidence, and that "lethal" levels of hydrogen sulfide have historically been present in air emissions at the landfill. With respect to the work being done, the Landfill is installing several landfill gas extraction wells in an active phase of the Landfill and recently completed the installation of larger leachate transmission piping; however, this work is consistent with normal improvements at an actively managed landfill, and is in no way a "complete alteration" of the existing systems. Regarding hydrogen sulfide levels, Dr. Chrostowski states that "toxic" or "lethal" concentrations of hydrogen sulfide are present on the Landfill, but omits the fact that the high concentrations of hydrogen sulfide he cites were measured inside the landfill gas collection system—not in ambient air. It is common for—and part of the purpose of—a properly operating landfill gas collection system to contain gases at those concentrations. Concentrations within the landfill gas collection system are not indicative

9

of concentrations in ambient air above the surface of the landfill (i.e., outside the collection system).

### C.   There is no basis to deviate from the default briefing deadlines under Louisiana rules.

Even if this Court is inclined to hear Petitioners' motion for expedited discovery on January 24, 2019 – which it should not, given that most of the Defendants have not yet been served the Petition – Waste Connections respectfully requests that the Court order opposition and reply memoranda deadlines that conform to the timing set forth in the Rule 9.9 of the Louisiana Rules for Civil Proceedings in District Courts. In the proposed order submitted with their motion for expedited discovery, Petitioners proposed a deadline of January 7, 2019, for Defendants' opposition memoranda. Petitioners provide no justification—and there is none—for amending the default schedule that would otherwise require Defendants' memoranda to be due eight days before the hearing date, i.e., January 16, 2019.

Rejection of Petitioners' proposed accelerated briefing schedule is particularly warranted here, where upon information and belief only two of the five Defendants have been formally served with the Petition, Petitioners' motion was served on only certain Defendants two business days before Christmas (others still have not been served with the motion), and responding to Petitioners' motion will require retaining and working with experts during the holiday vacation period to assess and respond to Petitioners' expert's statements. Coordinating this work with experts and lawyers is difficult because of numerous family and personal commitments among the professionals and their staffs. Accordingly, if the Court orders a hearing on Petitioners' motion on January 24 – which it should not – Defendants' opposition papers should be due on January 16, not January 7, 2019, as Petitioners request.

### CONCLUSION

Petitioners' request for expedited briefing and hearing on their motion for expedited discovery should be denied. The Court should first consider Defendants' filed and forthcoming declinatory exceptions because they may result in dismissal or stay of this action, negating the need to decide whether expedited discovery is warranted. Even so, Petitioners have not met their burden to show that expedited briefing and hearing on the motion is needed to avoid irreparable

harm—onsite sampling data has been collected and recorded by LDEQ, SCS, CEC, and Jefferson Parish's environmental compliance contractor over the past year. Finally, there is no basis to shorten Defendants' default time under the applicable rules to respond to Petitioners' motion. For all of the aforementioned reasons, Petitioners' motion for expedited briefing and hearing should be denied, and the Court should set a briefing and hearing schedule that follows a decision on Defendants' forthcoming exceptions, as set forth in Defendant Waste Connections' proposed order.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: _____

David R. Taggart
(Louisiana Bar Roll No. 12626)
401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
(Louisiana Bar Roll No. 33991)
John B. Stanton
(Louisiana Bar Roll No. 36036)
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

BEVERIDGE & DIAMOND, P.C.
James B. Slaughter (*pro hac vice* to be applied for)
1350 I Street, N.W., Suite 700
Washington, DC 20005
(202) 789-6000

Michael G. Murphy (*pro hac vice* to be applied for)
Megan R. Brillault (*pro hac vice* to be applied for)
John H. Paul (*pro hac vice* to be applied for)
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400

Counsel for Defendant Waste Connections US, Inc.

11

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above pleading on all known counsel of record via email this 28th day of December, 2018.

_____
MICHAEL C. MIMS

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                                                    DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

### ORDER

Based on Defendant Waste Connections US, Inc.'s Opposition to Petitioners' request for expedited briefing and hearing as set forth in their Request For Expedited Discovery For The Purpose Of Entering And Inspecting The Subject Landfill And Motion For Expedited Hearing:

**IT IS HEREBY ORDERED** that Petitioners' motion for an expedited hearing and briefing schedule relating to Petitioners' request for expedited discovery is **DENIED.**

**IT IS FURTHER ORDRED** that all proceedings relating to Petitioners' motion for expedited discovery are stayed pending the court's ruling on Defendants' declinatory exceptions.

Gretna, Louisiana this ___ day of _____, 20___.

_____

**Judge Stephen C. Grefer – DIVISION "J"**

TN320190053

## LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY
### FIELD INTERVIEW FORM

AGENCY INTEREST#: 6961     INSPECTION DATE: 12/4/18   TIME OF ARRIVAL: 11:50  AM

ALTERNATE ID#: 0297 RIM7   DEPARTURE DATE: 12/4/18   TIME OF DEPARTURE: 1:20 PM
(ID Type/Number)

FACILITY NAME: Jefferson Parish Sanitary Landfill     PHONE #: (504) 436-0152

LOCATION: 5800 Highway 90 w   Avondale

PARISH: Jefferson

RECEIVING STREAM (BASIN/SUBSEGMENT): 02 0501

MAILING ADDRESS: 834 S. Clearview Pkwy Harahan         LA        70123
                 (Street/P.O. Box)              (City)         (State)      (Zip)

FACILITY REPRESENTATIVE: Mark Klynn     TITLE: Environmental Quality Specialist
FACILITY REPRESENTATIVE PHONE NUMBER:

NAME, TITLE, ADDRESS and TELEPHONE of RESPONSIBLE OFFICIAL (if different from above):

Michael Lockwood

INSPECTION TYPE: assessment   PROGRAM INVOLVED:  AIR ☐ WASTE ☑ WATER ☑ OTHER:

INSPECTOR'S OBSERVATIONS: (e.g. AREAS AND EQUIPMENT INSPECTED, PROBLEMS, DEFICIENCIES, REMARKS, VERBAL
COMMITMENTS FROM FACILITY REPRESENTATIVES)

An assessment was conducted to investigate operations and maintenance activities of
the leachate and gas collection system. According to the Jefferson Parish Met Station, wind was
1.1mph out of the NNW at 11:55am and 16 mph out of the NE at 1:04 pm. A max H₂S reading on the
Jerome meter was .049 ppm downwind of Riser 215 at 12:52 where a landfill gas/seep bypass odor was noted.
Odors were also noted near the NE corner of Phase 1 by the gas plant, downwind of the working face (strongest)
N (strongest)                                      gas (Candler)
near Riser 205 and downwind of the River Birch leachate pond and gas plant. Leachate is being pumped
out of risers and into totes that are emptied into a hose go/es into manhole 3.

### AREAS OF CONCERN:

| REGULATION | EXPLANATION | CORRECTED? |
|---|---|---|
|  |  | YES ☐   NO ☐ |
|  |  | YES ☐   NO ☐ |

PHOTOS TAKEN:   YES ☑ NO ☐   SAMPLES TAKEN: YES ☐   NO ☑ (Attach Chain-of-Custody)

RECEIVED BY SIGNATURE:

PRINT NAME: Mark Klynn
(NOTE: SIGNATURE DOES NOT INDICATE AGREEMENT WITH INSPECTOR'S NOTES)

INSPECTOR(S): Jeff Parham         CROSS REFERENCE:

                                  ATTACHMENTS:

REVIEWER: Hal Hermann

NOTE: The information contained on this form reflects only the preliminary observations of the inspector(s). It should not
be interpreted as a final determination by the Department of Environmental Quality or any of its officers or personnel as to
any matter, including, but not limited to, a determination of compliance or lack thereof by the facility operator with any
requirements of statutes regulations or permits. Each day of non-compliance constitutes a separate violation of the
regulations and/or the Louisiana Environmental Quality Act.

REVISED: 12/06/2011

PAGE ___ OF ___

**EXHIBIT A**

tabbies

**Jefferson Parish Sanitary Landfill**
**Site Assessment Checklist**

AI No. 6961                         Alternate ID No. 0297 RIM7
Assessment Date: 12/4/18           Time of Arrival: 11:50 a.m.   Time of Departure 1:20 p.m.
Site Name: Jefferson Parish Sanitary Landfill              Ph #: 504-436-0152
Physical Location: 5800 Hwy 90 West

Avondale                           LA   Parish: Jefferson
(City)                             (State)

Facility Representative/Title: Mark Klym / Environmental Quality Specialist
LDEQ Lead Inspector: Jeff Parham
Other Inspectors:

## ASSESSMENT INFORMATION

**General Information**

| | |
|---|---|
| 1. Wind direction: NE  Wind Speed: 11 mph.  Time begin: 11:55 am | |
| Wind direction: NE  Wind Speed: 16 mph.  Time end: 1:07pm | |
| 2. Are landfill odors present? | ☑ Yes ☐ No |
| If yes, describe the odors. Most Engine sewer, gear base, LF gas sweet chemical, chemical, LF gas/sewage | |
| Where are the odors noticeable? (Describe location) NE corner of Phase I, Down wind of working face, near Riser 205, Down wind of RB north leachate pond, Downwind of RB gas Plant, near riser 215 | |
| 3. Was the MultiRAE Meter Used? | ☑ Yes ☐ No |
| If yes what was the H₂S concentration? 0.0 ppm | |
| 4. Was the Jerome Meter used? | ☑ Yes ☐ No |
| If yes, what was the H₂S Concentration? e.777 ppm max - see monitoring report form for additional readings | |
| 5. Was a Summa Canister sample collected? | ☐ Yes ☑ No |
| If yes, what time was the sample collected? NA | |
| If yes, describe sample location. NA | |
| 6. Were any odors observed coming from offsite? | ☑ Yes ☐ No |
| If yes, what was the wind direction and the potential source of the odors? NE - River Birch Leachate Ponds and gas Plant | |

**LANDFILL GAS COLLECTION SYSTEM**

| | |
|---|---|
| 7. What is the total number of landfill gas collection wells? 222 | |
| 8. How many of the landfill gas collection wells are not in service? 0 | |
| 9. Is a vacuum being pulled on all of the landfill gas collection wells? | ☑ Yes ☐ No |
| How much vacuum is being pulled on the gas skid? - 30.9 inches H₂O | |
| How much vacuum is being pulled on the Flare? - 36 inches H₂O | |
| 10. Is landfill gas being sent to Cornerstone Chemical? | ☑ Yes ☐ No |
| 11. Is landfill gas being sent to the Jefferson Parish landfill flare? | ☑ Yes ☐ No |
| 12. Was the JP landfill Flare in use during the inspection? | ☑ Yes ☐ No |

**LEACHATE COLLECTION SYSTEM**

| | |
|---|---|
| 13. What is the total number of leachate risers for Phases I, II, IIIA, and IIIB? 70 | |
| How many have pumps that are not in service? 26 | |
| 14. What is the total number of leachate risers for Phase IV A? 7 | |
| How many have pumps that are not in service? 1 | |
| What repairs are being done on the leachate risers? Pumps are out leachate and installing pumps | |
| 15. What is the total length of force main that has been welded? 23,000' total 21975 buried, 1miles remaining Surface in 4ft = 0.7375 | |
| 16. What is the status on Lift Station #2 replacement? complete | |
| 17. Totalizer reading at Lift Station #2 (leachate sent to the Bridge City POTW) 46518 468 gallons. | |
| 18. Is the leachate pond being used to store leachate? | ☐ Yes ☑ No |

**Additional Comments:**
According to Mr. Klym, all of the now 10" Force main has been welded and buried and they expect to have it on line by the end of this week.

INCIDENT LOG NUMBER _____

## LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY
## MONITORING REPORT FORM

FACILITY NAME: Jefferson Parish Landfill       DATE: 12/4/14

INCIDENT DESCRIPTION:

INCIDENT LOCATION:
Jefferson Parish Landfill- 5800 Hwy 90 W., Avondale

| EQUIPMENT USED: | SERIAL NUMBER: |
|---|---|
| 1 MultiRAE gas monitor | S/N: M01CA08507 |
| 2 Jerome H2S meter | S/N: 631-2058 |
| 3 | |
| 4 | |
| 5 | |

FIELD MONITORING TEAM:
1   Jeff Parham
2
3
4
5

NOTE: RECORD BACKGROUND READINGS IN TABLE BELOW FOR EACH UNIT PARAMETER PRIOR TO INITIATING MONITORING ACTIVITIES, WHEN EQUIPMENT CHANGE OCCURS OR WHEN THERE IS A SIGNIFICANT CHANGE IN BACKGROUND READINGS DUE TO HUMIDITY, BATTERY STRENGTH OR OTHER CONDITIONS.

| TIME 24:00 | LOCATION DESCRIPTION OF EACH MONITORING POINT (AND GPS IF AVAILABLE) | PARAMETER Jerome meter H2S ppm | PARAMETER MultiRae H2S ppm | PARAMETER Units | PARAMETER Units | PARAMETER Units | OBSERVATIONS DURING MONITORING | INITIALS |
|---|---|---|---|---|---|---|---|---|
| 12:04 | NE corner of Phase I NW corner of Phase IIIA | .001 | 0 | | | | Sewage odor | JP |
| 12:19 | Downwind of working face | .003 | 0 | | | | Fresh garbage | JP |
| 12:30 | SSW (downwind) of Leachate Riser 205 | .03 | 0 | | | | garbage/LF gas | JP |
| 12:37 | Downwind of RB Leachate pond | .004 | 0 | | | | Sweet Chemical | JP |
| 12:40 | Downwind of Silica Gas Plant | .000 | 0 | | | | Chemical | JP |
| 12:52 | Downwind of Riser 215 | .044 | 0 | | | | garbage/LF gas | JP |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

N/A – Not Applicable       UNITS:   PPM – Parts Per Million       PPB – Parts Per Billion

REMARKS/SUMMARY:

11/19/18

**0115**

ATTACHMENT

Facility Name:   Jefferson Parish Landfill
City:   Avondale          Parish:   Jefferson      Photographer:   Jeff Parham      AI:   6961
Date:   12/4/2018    Reason:   Landfill Assessment    Other ID #:



Photo #:   1   of   1    Time:   12:49 pm
Description: Workers pumping the leachate out of riser 13 S into a tote

INS20190054

LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY
FIELD INTERVIEW FORM

AGENCY INTEREST#: 1961        INSPECTION DATE: 12 5 18      TIME OF ARRIVAL: 9:00 AM

ALTERNATE ID#: 0297 RIM7       DEPARTURE DATE: 12 5 18      TIME OF DEPARTURE: 10:20 AM

FACILITY NAME: Jefferson Parish Sanitary Landfill        PHONE #: (504) 436-0152
(ID Type/Number)

LOCATION: 5800 Hwy. 90 W        Avondale, LA

                                        PARISH: Jefferson

RECEIVING STREAM (BASIN/SUBSEGMENT): 020501

MAILING ADDRESS: 839 S. Clearview Pkwy      New Orleans      LA      70123
                    (Street/P.O. Box)              (City)              (State)    (Zip)

FACILITY REPRESENTATIVE: Michael DeSoto        TITLE: Env. Quality Specialist

FACILITY REPRESENTATIVE PHONE NUMBER:

NAME, TITLE, ADDRESS and TELEPHONE of RESPONSIBLE OFFICIAL (if different from above):
Michael Lockwood

INSPECTION TYPE: Assessment        PROGRAM INVOLVED: AIR ☐ WASTE ☑ WATER ☑ OTHER:

INSPECTOR'S OBSERVATIONS: (e.g. AREAS AND EQUIPMENT INSPECTED, PROBLEMS, DEFICIENCIES, REMARKS, VERBAL COMMITMENTS FROM FACILITY REPRESENTATIVES)

· Winds ENE at 9 mph upon arrival / NNE at 13 mph upon departure.

· Landfill-type odor on South Access Road between Phase IIIA & Phase II (Jerome: .007 ppm $H_2S$).

· Garbage odor on South Access Road by Phase IVA (Jerome: .005 ppm $H_2S$).

· MultiRae was 0 ppm throughout site visit.

· Flare in use, vacuum being pulled.

AREAS OF CONCERN:

| REGULATION | EXPLANATION | CORRECTED? |
|---|---|---|
| | | YES ☐   NO ☐ |
| | | YES ☐   NO ☐ |

PHOTOS TAKEN:        YES ☐ NO ☑        SAMPLES TAKEN: YES ☐   NO ☑ (Attach Chain-of-Custody)

RECEIVED BY SIGNATURE: Michael a E Soto

PRINT NAME: Michael De Soto
(NOTE: SIGNATURE DOES NOT INDICATE AGREEMENT WITH INSPECTOR'S NOTES)

INSPECTOR(S): Jessica Barbe    Jessica Barbe        CROSS REFERENCE:
              Jodi Holewka                          ATTACHMENTS:

REVIEWER: Kelly Horrmann

NOTE: The information contained on this form reflects only the preliminary observations of the inspector(s). It should not be interpreted as a final determination by the Department of Environmental Quality or any of its officers or personnel as to any matter, including, but not limited to, a determination of compliance or lack thereof by the facility operator with any requirements of statutes regulations or permits. Each day of non-compliance constitutes a separate violation of the Louisiana Environmental Quality Act.

REVISED: 12/06/2011

PAGE ___ OF ___

IN5287100 S4

**Jefferson Parish Sanitary Landfill**
**Site Assessment Checklist**

AI No. __6961__     Alternate ID No. __0297RM7__
Assessment Date: __12/5/18__     Time of Arrival: __9 AM__   Time of Departure __10:20 AM__
Site Name: __Jefferson Parish Sanitary Landfill__     Ph #: __504-436-0152__
Physical Location: __5800 Hwy 90 West__
            Avondale                    LA   Parish: __Jefferson__
            (City)          (State)
Facility Representative/Title: __Michael Desoto / Environmental Quality Specialist__
LDEQ Lead Inspector: __Jessica Barbe__
Other Inspectors: __Jodi Holewka__

## ASSESSMENT INFORMATION

### General Information

| | | |
|---|---|---|
| 1. Wind direction: __ENE__  Wind Speed: __9__ mph.   Time begin: __9 AM__ | | |
| Wind direction: __NNE__  Wind Speed: __13__ mph.   Time end: __10 AM__ | | |
| 2. Are landfill odors present? | | ☑ Yes ☐ No |
| If yes, describe the odors. __see below__ | | |
| Where are the odors noticeable? (Describe location) __see below__ | | |
| 3. Was the MultiRAE Meter Used? | | ☑ Yes ☐ No |
| If yes what was the $H_2S$ concentration? __0.0__ ppm | | |
| 4. Was the Jerome Meter used? | | ☑ Yes ☐ No |
| If yes, what was the $H_2S$ Concentration? __.007 ppm & .005 ppm  *see below__ | | |
| 5. Was a Summa Canister sample collected? | | ☐ Yes ☑ No |
| If yes, what time was the sample collected? | | |
| If yes, describe sample location. | | |
| 6. Were any odors observed coming from offsite? | | ☐ Yes ☑ No |
| If yes, what was the wind direction and the potential source of the odors? | | |

### LANDFILL GAS COLLECTION SYSTEM

| | | |
|---|---|---|
| 7. What is the total number of landfill gas collection wells? | 222 | |
| 8. How many of the landfill gas collection wells are **not in service**? | 0 | |
| 9. Is a vacuum being pulled on all of the landfill gas collection wells? | | ☑ Yes ☐ No |
| How much vacuum is being pulled on the gas skid? | - 30.9 inches $H_2O$ | |
| How much vacuum is being pulled on the Flare? | - 36 inches $H_2O$ | |
| 10. Is landfill gas being sent to Cornerstone Chemical? | | ☑ Yes ☐ No |
| 11. Is landfill gas being sent to the Jefferson Parish landfill flare? | | ☑ Yes ☐ No |
| 12. Was the JP landfill Flare in use during the inspection? | | ☑ Yes ☐ No |

### LEACHATE COLLECTION SYSTEM

| | | |
|---|---|---|
| 13. What is the total number of leachate risers for Phases I, II, IIIA, and IIIB? | 70 | |
| How many have pumps that are not in service? | 20 | |
| 14. What is the total number of leachate risers for Phase IV A? | 7 | |
| How many have pumps that are not in service? | 0 | 1 energized but not hooked to force main. |
| What repairs are being done on the leachate risers? __Cleaning silt, checking for chemical issues__ | | |
| 15. What is the total length of force main that has been welded? __16 manholes, 4w 21,000-23,000 ft welded, 21500 ft buried__ | | |
| 16. What is the status on Lift Station #2 replacement? __Completed, in service__ | | |
| 17. Totalizer reading at Lift Station #2 (leachate sent to the Bridge City POTW) __46527000__ gallons. | | |
| 18. Is the leachate pond being used to store leachate? | | ☐ Yes ☑ No |

### Additional Comments:

- Landfill odor detected on South Access Road, between Phase IIIA & Phase II at 9:23 AM.
  - MultiRae: 0 ppm $H_2S$
  - Jerome: .007 ppm $H_2S$
- Garbage odor detected on South Access Road by Phase IV A at 9:52 AM.
  - MultiRae: 0 ppm $H_2S$
  - Jerome: .005 ppm $H_2S$

INCIDENT LOG NUMBER

## LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY
## MONITORING REPORT FORM

FACILITY NAME: Jefferson Parish Landfill

DATE: 12/5/18

INCIDENT DESCRIPTION:

INCIDENT LOCATION:
Jefferson Parish Landfill- 5800 Hwy 90 W., Avondale

EQUIPMENT USED:         SERIAL NUMBER:
1  MultiRAE gas monitor   S/N: M01CA08507
2  Jerome H2S meter       S/N: 631-2058
3 _____        _____
4 _____        _____
5 _____        _____

FIELD MONITORING TEAM:
1  Jessica Barbe
2  Jodi Holewka
3 _____
4 _____
5 _____

NOTE: RECORD BACKGROUND READINGS IN TABLE BELOW FOR EACH UNIT PARAMETER PRIOR TO
INITIATING MONITORING ACTIVITIES, WHEN EQUIPMENT CHANGE OCCURS OR WHEN THERE IS A SIGNIFICANT
CHANGE IN BACKGROUND READINGS DUE TO HUMIDITY, BATTERY STRENGTH OR OTHER CONDITIONS.

| TIME 24:00 | LOCATION DESCRIPTION OF EACH MONITORING POINT (AND GPS IF AVAILABLE) | PARAMETER Jerome meter H2S ppm | PARAMETER MultiRae H2S ppm | PARAMETER Units | PARAMETER Units | PARAMETER Units | OBSERVATIONS DURING MONITORING | INITIALS |
|---|---|---|---|---|---|---|---|---|
| 923 | On South Access Rd, b/w Phase IIIA & Phase II | .007 | 0 | | | | landfill odor | JB |
| 952 | On South Access Rd. by Phase IIIA | .005 | 0 | | | | garbage odor | JB |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

N/A – Not Applicable      UNITS:  PPM – Parts Per Million      PPB – Parts Per Billion

REMARKS/SUMMARY:

11/19/18

**0119**

INS20190057

**Jefferson Parish Sanitary Landfill**
**Site Assessment Checklist**

| | |
|---|---|
| AI No. 6961 | Alternate ID No. **P-0297 RIM7** |
| Assessment Date: 12/10/2018 | Time of Arrival: 1:45 PM.   Time of Departure: 2:45 PM. |
| Site Name: Jefferson Parish Sanitary Landfill | Ph #: 504-436-0152 |
| Physical Location: 5800 Hwy 90 West | |

| | | |
|---|---|---|
| Avondale | LA | Parish: Jefferson |
| (City) | (State) | |

Facility Representative/Title: Mike DeSoto

LDEQ Lead Inspector: Tyler Williams

Other Inspectors:

## ASSESSMENT INFORMATION

### General Information

| | |
|---|---|
| 1. Wind direction: N   Wind Speed: 10 mph   Time begin: 1:50 PM | |
| Wind direction: N   Wind Speed: 15 mph   Time end: 2:40 PM | |
| 2. Are landfill odors present? | ☒ Yes ☐ No |
| If yes, describe the odors. General landfill and landfill gas odors | |
| Where are the odors noticeable? (Describe location) Corner of North Access Rd and Rd between phases IV A & III A (downwind of working face); South Access Rd (downwind of working face). | |
| 3. Was the MultiRAE Meter Used? | ☒ Yes ☐ No |
| If yes what was the $H_2S$ concentration? 0.000 ppm | |
| 4. Was the Jerome Meter used? | ☒ Yes ☐ No |
| If yes, what was the $H_2S$ Concentration? 0.096 ppm | |
| 5. Was a Summa Canister sample collected? | ☐ Yes ☒ No |
| If yes, what time was the sample collected? NA | |
| If yes, describe sample location. NA | |
| 6. Were any odors observed coming from offsite? | ☐ Yes ☒ No |
| If yes, what was the wind direction and the potential source of the odors? NA | |

### LANDFILL GAS COLLECTION SYSTEM

| | | |
|---|---|---|
| 7. What is the total number of landfill gas collection wells? | 222 | |
| 8. How many of the landfill gas collection wells are **not in service**? | 0 | **All operational** |
| 9. Is a vacuum being pulled on all of the landfill gas collection wells? | | ☒ Yes ☐ No |
| How much vacuum is being pulled on the gas skid? | - 32.2 inches $H_2O$ | |
| How much vacuum is being pulled on the Flare? | - 37 inches $H_2O$ | |
| 10. Is landfill gas being sent to Cornerstone Chemical? | | ☒ Yes ☐ No |
| 11. Is landfill gas being sent to the Jefferson Parish landfill flare? | | ☒ Yes ☐ No |
| 12. Was the JP landfill Flare in use during the inspection? | | ☒ Yes ☐ No |

### LEACAHTE COLLECTION SYSTEM

| | | |
|---|---|---|
| 13. What is the total number of leachate risers for Phases I, II, IIIA, and IIIB? | 70 | |
| How many have pumps that are not in service? | 26 | **44 operational** |
| 14. What is the total number of leachate risers for Phase IV A? | 7 | |
| How many have pumps that are not in service? | 1 | **6 operational** |
| What repairs are being done on the leachate risers? General operation and maintenance | | |
| 15. What is the total length of force main that has been welded? | 23,000 | Note 1 |
| 16. What is the status on Lift Station #2 replacement? | | Completed |
| 17. Totalizer reading at Lift Station #2 (leachate sent to the Bridge City POTW) 46,738,088 gallons. | | |
| 18. Is the leachate pond being used to store leachate? | | ☐ Yes ☒ No |

**Additional Comments:**
14) All risers energized, only 1 is not hooked to force main
Note 1: 21,475 linear feet buried

2:07 PM – Corner of North Access Rd and Road between phases IV A & III A (downwind of working face); Jerome reading of 0.002, landfill odor

2:11 PM – Corner of North Access Rd and Northernmost Rd; Jerome reading of 0.001, very faint odor

2:16 PM – South Access Rd by Cell 22 (working face); Jerome reading of 0.096, general landfill gas odor

2:19 PM – North of working face; Jerome reading of 0.002

INCIDENT LOG NUMBER ___INS20190057____

## LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY
## MONITORING REPORT FORM

FACILITY NAME: Jefferson Parish Landfill

DATE:
___12/10/2018___

INCIDENT DESCRIPTION:

INCIDENT LOCATION:
Jefferson Parish Landfill- 5800 Hwy 90 W., Avondale

| EQUIPMENT USED: | SERIAL NUMBER: |
|---|---|
| 1 MultiRAE gas monitor | S/N: M01CA08507 |
| 2 Jerome H2S meter | S/N: 631-2058 |
| 3 | |
| 4 | |
| 5 | |

FIELD MONITORING TEAM:
1 __Tyler Williams__
2
3
4
5

NOTE: RECORD BACKGROUND READINGS IN TABLE BELOW FOR EACH UNIT PARAMETER PRIOR TO INITIATING MONITORING ACTIVITIES, WHEN EQUIPMENT CHANGE OCCURS OR WHEN THERE IS A SIGNIFICANT CHANGE IN BACKGROUND READINGS DUE TO HUMIDITY, BATTERY STRENGTH OR OTHER CONDITIONS.

| TIME 24:00 | LOCATION DESCRIPTION OF EACH MONITORING POINT (AND GPS IF AVAILABLE) | PARAMETER Jerome meter H2S ppm | PARAMETER MultiRae H2S ppm | PARAMETER Units | PARAMETER Units | PARAMETER Units | OBSERVATIONS DURING MONITORING | INITIALS |
|---|---|---|---|---|---|---|---|---|
| 2:07 PM | Corner of N Access Rd and Rd between III A & IV A | 0.002 | 0.00 | | | | Landfill Odor | |
| 2:11 PM | Corner of N Access Rd and Northernmost Rd | 0.001 | 0.00 | | | | Very Faint Landfill Odor | |
| 2:16 PM | S Access Rd (downwind of Cell 22, downwind) | 0.096 | 0.00 | | | | Landfill Gas Odor | |
| 2:19 PM | North of Working Face (upwind) | 0.002 | 0.00 | | | | Very Faint Landfill Odor | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

N/A – Not Applicable     UNITS:  PPM – Parts Per Million     PPB – Parts Per Billion

REMARKS/SUMMARY:

12/14/18

**LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY**
**FIELD INTERVIEW FORM**

AGENCY INTEREST#: 6961    INSPECTION DATE: 12/10/2018  TIME OF ARRIVAL: 1:40 PM

ALTERNATE ID#: _____ DEPARTURE DATE: 12/10/2018  TIME OF DEPARTURE: 2:45 PM
                    (ID Type/Number)
FACILITY NAME: Jefferson Parish Sanitary Landfill    PH#: 504 436-0152

LOCATION: 5800 Hwy 90 W, Avondale
                                   ~~ten~~
                                              PARISH NAME: Jefferson

RECEIVING STREAM (BASIN/SUBSEGMENT): _____

MAILING ADDRESS: 834 S. Clearview Parkway    Harahan    LA    70123
                 (Street/P.O. Box)                (City)    (State)    (ZIP)
FACILITY REPRESENTATIVE: Mike DeSoto    TITLE: Environmental Specialist
FACILITY REPRESENTATIVE PHONE NUMBER: SAME AS ABOVE
NAME, TITLE, ADDRESS and TELEPHONE of RESPONSIBLE OFFICIAL (if different from above):
      Mr. Mike Lockwood, PP Environmental Affairs
_____

INSPECTION TYPE: Site Assessme  PROGRAM INVOLVED: (AIR)   WASTE   WATER   OTHER Multi-Media

INSPECTOR'S OBSERVATIONS: (e.g. AREAS AND EQUIPMENT INSPECTED, PROBLEMS, DEFICIENCIES, REMARKS, VERBAL
                          COMMITMENTS FROM FACILITY REPRESENTATIVES)

A site visit was conducted to investigate the operations and maintenance of the
gas collection system. The wind data collected from JP weather station:
At arrival (1:30PM): 10 mph  N    At departure (2:40PM): 15 mph  N
Information for checklist was received from and tour of facility was conducted by
Mike DeSoto of JP Landfill
Jerome meter and MultiRae were used during tour; Jerome max: 0.096  taken
at Cell 22 along South Access Rd, downwind of working face.
Faint odor detected near corner of N access and access between N and S rds

AREAS OF CONCERN:

| REGULATION | EXPLANATION | CORRECTED? |
|---|---|---|
| _____ | _____ | YES   NO |
| | _____ | |
| _____ | _____ | YES   NO |
| | _____ | |

PHOTOS TAKEN: ☐ YES  ☒ NO    SAMPLES TAKEN: ☐ YES  ☒ NO  (Attach Chain-of-custody)

RECEIVED BY: SIGNATURE: Michael A DeSoto

PRINT NAME: Michael DeSoto
(NOTE: SIGNATURE DOES NOT NECESSARILY INDICATE AGREEMENT WITH INSPECTOR'S STATED OBSERVATIONS)

INSPECTOR(S): Tyler Williams  Tyler Williams    CROSS REFERENCE: _____

_____    ATTACHMENTS: _____

REVIEWER: _____

NOTE: The information contained on this form reflects only the preliminary observations of the inspector(s).  It should not be
interpreted as a final determination by the Department of Environmental Quality or any of its officers or personnel as to any matter,
including, but not limited to, a determination of compliance or lack thereof by the facility operator with any requirements of statutes
regulations or permits.  Each day of non-compliance constitutes a separate violation of the regulations and/or the Louisiana
Environmental Quality Act.

REVISED: 02/03/2003                                    PAGE 1 OF 1

FILED FOR RECORD 01/02/2019 14:10:02
Schlise S. Borne, DY CLERK

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.   790-369                                              DIVISION: "J"

**FREDERICK ADDISON, ET AL**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL**

FILED: _____     _____

                                                                    **DEPUTY CLERK**

**REQUEST FOR NOTICE**

**CLERK OF COURT**

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

Pursuant to Article 1572 of the Louisiana Code of Civil Procedure, Defendant, the Parish

of Jefferson, hereby requests written notice of the date set for hearing of any pleadings or motions

therein at least ten (10) days before any trial or hearing date.

Defendant also requests notice of the signing of any final judgment or of the rendition of

any interlocutory order or judgment in said cause as provided by Articles 1913 and 1914 of the

Louisiana Code of Civil Procedure.

Respectfully submitted,

**CONNICK AND CONNICK, L.L.C.**

_____

**WILLIAM P. CONNICK (14158)**
**MICHAEL S. FUTRELL (20819)**
**MATTHEW D. MOGHIS (33994)**
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6663
*Attorneys for Defendant, the Parish of Jefferson*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading has been forwarded to all counsel of record

by depositing same in the United States Mail, postage prepaid, this 27TH day of December,

2018.

_____

**MICHAEL S. FUTRELL**

FILED FOR RECORD 01/02/2019 14:10:56
Schlise S. Borne, DY CLERK
JEFFERSON PARISH, LA

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 790-369          DIVISION: "J"

**FREDERICK ADDISON, ET AL**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL**

FILED: _____     _____
                                      **DEPUTY CLERK**

**MOTION AND ORDER FOR EXTENSION OF TIME
WITHIN WHICH TO PLEAD**

**NOW INTO COURT,** through undersigned counsel, comes Defendant, the Parish of Jefferson, appearing specially and solely for the purpose of this motion and reserving all rights, and moves the court for an extension of time of thirty (30) days from the date the Answer is due, within which to plead or until February 4, 2019, for the reason that counsel has only recently been retained and additional time is required to conduct an investigation. No other extensions have been granted and no oppositions have been filed in the record.

**IT IS ORDERED** that Defendant be and is hereby granted an extension of time through and including February 4, 2019 within which to file its responsive pleadings to the Plaintiff's Petition for Permanent Injunction, with full reservation of all of their rights and without waiver thereof.

GRETNA, LOUISIANA, this ___7th___ day of ___January___, 2019.

_____
             **JUDGE**

Respectfully submitted,

**CONNICK AND CONNICK, L.L.C.**

_____
**WILLIAM P. CONNICK (14158)**
**MICHAEL S. FUTRELL (20819)**
**MATTHEW D. MOGHIS (33994)**
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6663
Attorney for Defendant, the Parish of Jefferson

24th JUDICIAL DISTRICT COUR FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

SUIT NO.: 790-369                                        DIVISION: "J"

FREDERICK ADDISON, et al.,

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et al.


FILED: _____              _____
                                                                    DEPUTY CLERK

**MEMORANDUM IN OPPOSITION TO DEFENDANT JEFFERSON PARISH'S
MOTION FOR EXTENSION OF TIME AND MOTION TO STRIKE PURSUANT TO
UNIFORM DISTRICT RULE 9.8(a) DEFENDANT JEFFERSON PARISH'S MOTION
FOR EXTENSION OF TIME**

**NOW INTO COURT,** through undersigned counsel, comes Plaintiffs Frederick Addison,

et. al, who collectively oppose the motion of the defendant, the Parish of Jefferson (the "Parish")

for a thirty-day extension of time, until February 4, 2019, to respond to the Petition filed in this

action. Alternatively, plaintiffs do not oppose the Parish's request provided that such an extension

does not have the effect of delaying the hearing on Plaintiffs' Motion for Expedited Discovery for

the Purpose of Entering and Inspecting the Subject Landfill and Motion for Expedited Hearing,

which plaintiffs have requested be set for January 24, 2019.

## FACTS AND PROCEDURAL HISTORY

The Petition in this action was filed with the court on December 13, 2018. On the same

date, a courtesy copy of the Petition was sent by email to the firm of Connick and Connick, among

others. *See* Ex. 1 hereto.[1] This courtesy copy was provided because that firm is representing the

Parish in four other lawsuits initiated on behalf of other plaintiffs against the Parish and the

defendants herein; consequently, undersigned counsel believed it quite possible, if not likely, that

the Connick firm also would represent the Parish in this case.

Two days later, and on the assumption that the Connick firm might represent the Parish

herein, plaintiffs' counsel wrote to the Connick firm (among others) and asked if it would waive

---

[1]  The Parish was formally served with the Petition on December 20, 2018.

1

service of the Petition pursuant to L.C.C.P. art. 1201. See Ex. 2 hereto.  The Connick firm never responded to that inquiry.

On December 20, 2018 plaintiffs filed a Motion for Expedited Discovery for the Purpose of Entering and Inspecting the Subject Landfill and Motion for Expedited Hearing. Since no counsel had yet entered an appearance on behalf of any defendant, a courtesy copy of this motion was served *by overnight mail* on the Parish and all other defendants as required by the Code, and was received by the Parish on December 21, 2018.

Also on December 21, 2018 the Connick firm submitted a letter to the Court complaining that it had not been provided with a courtesy copy of that motion – even though it had not yet entered an appearance on behalf of the Parish in this case and had not communicated at all with undersigned counsel. *See* Ex. 3 hereto.  On December 28, 2018 the Connick firm repeated this complaint directly to plaintiffs' counsel, claiming incorrectly that plaintiffs' counsel was "aware" that Connick firm represented the Parish in this matter. *See* exchange of correspondence attached *in globo* as Ex. 4 hereto.

Now, however, the Connick firm asks for a thirty-day extension of time to answer the Petition because it claims to have been "only recently" retained by the Parish in this matter and needs more time "for investigation."  These assertions simply cannot be squared with the history recited above.  Moreover, the notion that the Parish and its counsel need thirty more days to investigate flies in the face of the fact that the Connick firm represents the Parish in four lawsuits previously filed by other plaintiffs involving alleged harm caused by the Jefferson Parish Landfill, and the Parish has been actively investigating these matters for many months.[2]

Moreover, had the Parish approached undersigned counsel concerning this request before filing its motion,[3] undersigned counsel would have informed it that plaintiffs would have no objection to an extension of time to answer the Petition if the Parish would consent to a January

---

[2] *See* http://www.jeffparish.net/index.aspx?page=3652, last accessed 2 Jan. 2019.
[3]  It is also noteworthy that wile complaining to the Court and undersigned counsel about an alleged (and non-existent) lack of courtesy on the part of petitioners for failure to serve a courtesy copy of pleadings on the Parish's counsel, the Connick firm did not provide any advance notice or a contemporaneous courtesy copy of its motion for an extension of time.

24, 2019 hearing date for plaintiffs' motion for expedited discovery. This is because, as plaintiffs made plain in that motion, the need to gain expedited entry on to the landfill site and to obtain samples of landfill gases being emitted by the landfill is of utmost importance.

In this regard, it is noteworthy that defendant Waste Connections US, Inc., which was served with a copy of the Petition by long-arm jurisdiction and was served with a courtesy copy of plaintiffs' motion for expedited discovery in the same manner as the Parish – has already filed a timely response to the Petition and has indicated its intent to file a timely opposition to plaintiffs' motion for expedited discovery. Service of the exception by Waste Connection US, Inc. was received by undersigned counsel on December 28, 2018.

Plaintiffs further aver that Defendant's Motion was received by undersigned counsel on January 2, 2019, the same date as the filing of this Opposition and Motion to Strike.

## LAW AND ARGUMENT

Jefferson Parish submitted its Motion and Order *ex parte*. Per Uniform District Rule 9.8, all motions should be accompanied by a proposed order setting the matter for hearing unless it is joined by all parties, unopposed, or *ex parte*. La.C.C.P. art. 963 notes that *ex parte* motions may be granted when "the order applied for by written motion is one to which mover is clearly entitled without supporting proof." In the event that the order applied for is one to which the mover is not entitled, or which requires supporting proof (as is the case in this instance) the motion must be served and tried contradictorily.[4] Where a party inappropriately submits a motion as *ex parte*, Rule 9.8 provides that the Court may strike the motion.[5]

Here, the Parish is plainly not "entitled" to an extension "without supporting proof" and hence its motion should be denied outright under Rule 9.8. Moreover, even if the Parish's motion were not procedurally deficient under Rule 9,8, it should be denied on substantive grounds for the same reasons articulated above; as the procedural history and communications of this case demonstrates, the Connick firm plainly has been representing the Parish in this case since it was

---

[4] *Id.*
[5] Uniform District Rule 9.8 states "If the exceptor or mover fails to comply with this requirement [to attach an Order setting for the matter for hearing] the court may strike the exception or motion…"

filed, and both the Parish and its counsel have been conducting investigations concerning the Jefferson Parish Landfill for many months.

**WHEREFORE,** for all the foregoing reasons, the conclusion is inescapable that the Parish's motion for an extension of time to respond to the Petition is simply a delaying tactic. That request should therefore be denied outright, or denied on the condition that the Parish file a timely response to plaintiff's motion for expedited discovery and appear for a hearing on that motion on January 24, 2019.

Respectfully submitted,

**FORREST CRESSEY & JAMES, LLC**

*/s/ Nicholas V. Cressy*
_____
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com

OF COUNSEL:
Barry S. Neuman (Motion for Pro Hac Vice Admission pending.)
C. Allen Foster
Erik Bolog
Adrian Snead
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served on all parties via U.S. mail, properly addressed and postage pre-paid and that an additional copy was sent to all enrolled counsel of record via electronic mail on this 2 day of January, 2019,

4

*Nicholas V. Cressy*
_____

**JEFFERSON PARISH**
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, Louisiana 70002

**WASTE CONNECTIONS, U.S. INC.**
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163

**APTIM Corp.**
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**LOUISIANA REGIONAL LANDFILL COMPANY**
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**WASTE CONNECTIONS BAYOU, INC.**
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**24th JUDICIAL DISTRICT COUR FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**SUIT NO.: 790-369**                                         **DIVISION: "J"**

**FREDERICK ADDISON, et al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et al.**


**FILED: _____**                    _____

                                                                          **DEPUTY CLERK**

**<u>ORDER</u>**

CONSIDERING THE FOREGOING:

**IT IS ORDERED** that Defendant Jefferson Parish's Motion for Extension of Time Within

Which to Plead is **HEREBY STRIKEN** from the record.

Gretna, Louisiana this _____ day of January, 2019.


                                    _____

                                    **JUDGE- DIVISION "J"**


**<u>PLEASE SERVE ALL UNREPRESENTED PARTIES</u>**
**<u>AND ENROLLED COUNSEL OF RECORD</u>**
**<u>WITH A SIGNED COPY OF THIS ORDER VIA U.S. MAIL.</u>**

6

**Wednesday, January 2, 2019 at 1:22:37 PM Central Standard Time**

| | |
|---|---|
| **Subject:** | Addison, et al. v. Louisiana Regional Landfill Company, et al., No. 790 369 (24th Judicial District, Jefferson Parish) |
| **Date:** | Thursday, December 13, 2018 at 2:12:59 PM Central Standard Time |
| **From:** | Neuman, Barry S. |
| **To:** | dtaggart@bradleyfirm.com, jslaughter@bdlaw.com, egieger@glllaw.com, pconnick@connicklaw.com |
| **CC:** | Eliza James, Byron Forrest, Nicholas Cressy |
| **Attachments:** | 1. Toxic Tort_Petition for Damages and Request for Inj CLOCKED.pdf |

Gentlemen --  Attached is a courtesy copy of the petition filed today in the above matter.  A courtesy copy has also been delivered by hand to the office of the Jefferson Parish Attorney.

Kind regards,

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:  202.327.6151

This transmission contains information from the law firm of Whiteford, Taylor & Preston LLP which may be confidential and/or privileged. The information is intended to be for the exclusive use of the planned recipient. If you are not the intended recipient, be advised that any disclosure, copying, distribution or other use of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

Exhibit 1

**Subject:** Addison, et al. v. Louisiana Regional Landfill Company, et al., No. 790 369 (24th Judicial District, Jefferson Parish)

**Date:** Saturday, December 15, 2018 at 1:04:51 PM Central Standard Time

**From:** Neuman, Barry S.

**To:** dtaggart@bradleyfirm.com, jslaughter@bdlaw.com, egieger@glllaw.com, pconnick@connicklaw.com

**CC:** Byron Forrest, Eliza James, Nicholas Cressy

**Attachments:** 1. Toxic Tort_Petition for Damages and Request for Inj CLOCKED.pdf

Gentlemen – As a follow-up to my December 13 email, I ask you each to inform me whether you agree to waive service on behalf of your respective clients pursuant to LSA-C.C.P. Art. 1201.  Thank you in advance for your consideration and prompt response.

Kind regards,

Barry.

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:  202.327.6151

---

**From:** Neuman, Barry S.
**Sent:** Thursday, December 13, 2018 3:13 PM
**To:** 'dtaggart@bradleyfirm.com' <dtaggart@bradleyfirm.com>; 'jslaughter@bdlaw.com' <jslaughter@bdlaw.com>; 'egieger@glllaw.com' <egieger@glllaw.com>; 'pconnick@connicklaw.com' <pconnick@connicklaw.com>
**Cc:** S. Eliza (eliza@fcjlaw.com) <eliza@fcjlaw.com>; Byron Forrest (byron@fcjlaw.com) <byron@fcjlaw.com>; Nicholas Cressy <nicholas@fcjlaw.com>
**Subject:** Addison, et al. v. Louisiana Regional Landfill Company, et al., No. 790 369 (24th Judicial District, Jefferson Parish)

Gentlemen --  Attached is a courtesy copy of the petition filed today in the above matter.  A courtesy copy has also been delivered by hand to the office of the Jefferson Parish Attorney.

Kind regards,

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:  202.327.6151

---

Exhibit 2

Page 1 of 2

This transmission contains information from the law firm of Whiteford, Taylor & Preston LLP which may be confidential and/or privileged. The information is intended to be for the exclusive use of the planned recipient. If you are not the intended recipient, be advised that any disclosure, copying, distribution or other use of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

**CONNICK AND CONNICK, L.L.C.**
**ATTORNEYS AT LAW**

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN

ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
ELIZABETH A. ZAVALA
LAURA M. BLOUIN
NOAH R. BORER

3421 NORTH CAUSEWAY BOULEVARD SUITE 408
METAIRIE, LOUISIANA 70002

TELEPHONE: (504) 838-8777
FACSIMILE: (504) 838-9903
WEBSITE: www.connicklaw.com

OF COUNSEL,

PAUL D. CONNICK, JR.

DIRECT DIAL: (504) 681-6658
EMAIL: moghis@connicklaw.com

December 21, 2018

**VIA FAX AND U.S. MAIL**

HONORABLE STEPHEN C. GREFER
**THOMAS F. DONELON COURTHOUSE**
24TH JUDICIAL DISTRICT COURT
200 Derbigny Street, Suite 5200
Gretna, Louisiana 70053
Phone:    (504) 364-3916
Fax:       (504) 364-2875

Re:    *Addison, et al. v. Jefferson Parish, et al.*
Court:    24th JDC, Case No. 790-369, Division "J"
File No.:   81.182829

Dear Judge Grefer:

Named Defendant in this case, Jefferson Parish, was made aware late yesterday evening by way of a news story on WDSU that Plaintiffs filed a Motion for Expedited Discovery in this case. Despite apparently forwarding the Motion to WDSU and requesting expedited consideration from this Court, Plaintiffs' counsel, Mr. Barry Neuman, did not forward a copy to Jefferson Parish, nor has Jefferson Parish been served to date (Mr. Neuman provided a courtesy copy of *only* the Petition for Damages). While Jefferson Parish reserves all rights regarding proper service, it felt appropriate, given the nature of the Motion, to advise the Court that it fully intends on opposing the prayed for relief (including the requested deadlines that are in violation of the Louisiana Code of Civil Procedure).

Jefferson Parish will fully brief its position once proper service is affected, but felt compelled to immediately notify the Court of its opposition given the nature of the Motion. Upon information and belief, Jefferson Parish also understands that other named Defendants also intend on opposing the Motion.

We appreciate the Court's time.

Sincerely,

CONNICK AND CONNICK, LLC

MATTHEW D. MOGHIS
WILLIAM P. CONNICK
MICHAEL S. FUTRELL

Exhibit 3

**1** of **2**

Cc:    Barry Neuman (bneuman@wtplaw.com)
        Byron Forrest (byron@fcjlaw.com)
        Eliza James (eliza@fcjlaw.com)
        Nicholas Cressy (nicholas@fcjlaw.com)
        Michael Mims (mmims@bradleyfirm.com)
        David Taggart (dtaggart@bradleyfirm.com)
        Jim Slaughter (jslaughter@bradleyfirm.com)
        William Barousse (wbarousse@glllaw.com)

# WHITEFORD, TAYLOR & PRESTON L.L.P.

1800 M STREET, NW, SUITE 450N
WASHINGTON, D.C.  20036-5405
MAIN TELEPHONE (202) 659-6800
FACSIMILE (202) 331-0573

BARRY S. NEUMAN
PARTNER
DIRECT LINE  (202) 659-6761
DIRECT FAX  (202) 327-6151
BNeuman@wtplaw.com

DELAWARE*
DISTRICT OF COLUMBIA
KENTUCKY
MARYLAND
MICHIGAN
NEW YORK
PENNSYLVANIA
VIRGINIA

WWW.WTPLAW.COM
(800) 987-8705

December 28, 2018

VIA EMAIL AND U.S. MAIL (moghis@connicklaw.com)
Matthew D. Moghis, Esq.
Connick and Connick, LLC
3421 North Causeway Boulevard
Suite 408
Metairie, LA 70002

> Re:   Addison, et al. v. Jefferson Parish, et al., Case No. 790-369,
>       Division "J" (24th JDC)

Dear Mr. Moghis:

I have your letter addressed to the Court, dated December 21, 2018.

As your letter acknowledges, petitioners provided a courtesy copy of the petition to the Parish as well as to your firm promptly after it was filed.  We did so in the belief that your firm might represent the Parish in this case.

Your letter fails to mention, however, that on December 15 we also sent your firm (and all other defendants) a written request for waiver of service of the petition, in the event your firm would be representing the Parish.  A copy of that email communication is attached for your reference as Attachment 1.  *Neither your firm nor anyone representing the Parish ever responded to that request.*[1]  Consequently, when petitioners filed their motion for expedited entry on December 20, we had no reason to assume that your firm would be representing the Parish.

Having heard nothing from you in response to our December 15 communication, we did not send your firm a courtesy copy of the motion.  However, our local counsel *did* send a courtesy copy of the motion, *by federal express*, to the Parish directly.  The

---

[1] In contrast, counsel for defendant Waste Connections did respond, and after several discussions informed me that his client could not agree to waive service.

<span style="color:red">Exhibit 4a</span>

**Whiteford, Taylor & Preston L.L.P. is a limited liability partnership.  Our Delaware offices are operated under a separate Delaware limited liability company, Whiteford, Taylor & Preston L.L.C.*

VIA EMAIL AND U.S. MAIL
Matthew D. Moghis, Esq.
December 28, 2018
Page 2


Parish received a copy of the motion at 1:29 PM on December 21 – shortly after you sent your letter to the Court.  See Attachment 2 hereto.

In addition, on the same day you wrote to the Court, my local counsel received the attached letter from the office of the Parish Counsel.  *See* Attachment 3.  Since no lawyer has yet entered an appearance for the Parish in this matter, kindly inform us who will be appearing as counsel of record for the Parish in this case.

We ask that you please provide the Court with a follow-up letter setting the record straight by informing it of the above facts.

We look forward to a working relationship of mutual professional courtesy in this matter, as is our practice.

Thank you for your attention.

Sincerely,

Barry S. Neuman
Partner

cc via email (w encls):  Michael Mims (mmims@bradleyfirm.com)
David Taggart (dtaggart@bradleyfirm.com)
Jim Slaughter (jslaughter@bdlaw.com)
William Barousse (wbarousse@glllaw.com)
Byron Forrest (byron@fcjlaw.com)
Eliza James  (eliza@fcjlaw.com)
Nicholas Cressy (nicholas@fcjlaw.com)

BSN:nbs

**Neuman, Barry S.**

| | |
|---|---|
| **From:** | Neuman, Barry S. |
| **Sent:** | Saturday, December 15, 2018 2:05 PM |
| **To:** | 'dtaggart@bradleyfirm.com'; 'jslaughter@bdlaw.com'; 'egieger@glllaw.com'; 'pconnick@connicklaw.com' |
| **Cc:** | Byron Forrest (byron@fcjlaw.com); S. Eliza (eliza@fcjlaw.com); 'Nicholas  Cressy' |
| **Subject:** | Addison, et al. v. Louisiana Regional Landfill Company, et al., No. 790 369 (24th Judicial District, Jefferson Parish) |
| **Attachments:** | 1. Toxic Tort_Petition for Damages and Request for Inj CLOCKED.pdf |

Gentlemen – As a follow-up to my December 13 email, I ask you each to inform me whether you agree to waive service on behalf of your respective clients pursuant to LSA-C.C.P. Art. 1201.  Thank you in advance for your consideration and prompt response.

Kind regards,

Barry.

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:  202.327.6151

**From:** Neuman, Barry S.
**Sent:** Thursday, December 13, 2018 3:13 PM
**To:** 'dtaggart@bradleyfirm.com' <dtaggart@bradleyfirm.com>; 'jslaughter@bdlaw.com' <jslaughter@bdlaw.com>; 'egieger@glllaw.com' <egieger@glllaw.com>; 'pconnick@connicklaw.com' <pconnick@connicklaw.com>
**Cc:** S. Eliza (eliza@fcjlaw.com) <eliza@fcjlaw.com>; Byron Forrest (byron@fcjlaw.com) <byron@fcjlaw.com>; Nicholas Cressy <nicholas@fcjlaw.com>
**Subject:** Addison, et al. v. Louisiana Regional Landfill Company, et al., No. 790 369 (24th Judicial District, Jefferson Parish)

Gentlemen --  Attached is a courtesy copy of the petition filed today in the above matter.  A courtesy copy has also been delivered by hand to the office of the Jefferson Parish Attorney.

Kind regards,

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:  202.327.6151

Attachment 1



December 28,2018

Dear Customer:

The following is the proof-of-delivery for tracking number **774038797831**.

## Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Receptionist/Front Desk |
| Signed for by: | C.BONITZ | Delivery location: | 1221 ELMWOOD PARK 701 |
| | | | Jefferson, LA 70123 |
| Service type: | FedEx Express Saver | Delivery date: | Dec 21, 2018 13:29 |
| Special Handling: | Deliver Weekday | | |
| | Adult Signature Required | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 774038797831 | Ship date: | Dec 20, 2018 |

**Recipient:**
Parish of Jefferson
Through its Agent for Service
Parish Attorney
1221 Elmwood Park Blvd, Ste. 701
Jefferson, LA 70123 US

**Shipper:**
Eliza James
365 Canal Street
Suite 1475
New Orleans, LA 70130 US

Thank you for choosing FedEx.

Attachment 1



# JEFFERSON PARISH
## Office of the Parish Attorney

**Michael S. Yenni**
Parish President

**Jeremy D. Dwyer**
Parish Attorney
**Michele R. Morel**
Deputy Parish Attorney
**Marc C. Dougherty**
Deputy Parish Attorney

December 21, 2018

Via Email: eliza@fcjlaw.com
Via Facsimile: 504-322-3884

S. Eliza James
Forrest, Cressy & James, LLC
One Canal Place
365 Canal St., Suite 1475
New Orleans, LA 70130

RE:   *Frederick Addison, et al v. Louisiana Regional Landfill Company (LRLC), f/k/a IESI LA Landfill Corporation, et al*
24th JDC Case No. 790-369, Div "J"

Dear Ms. James:

This will acknowledge service on Jefferson Parish of the above captioned lawsuit.

We would ask that you take no further adverse action without timely notification to this office of your intent to do so.  We assure you that we shall not unduly delay this matter.

In the event you are unable to grant us this courtesy, please contact me at your earliest convenience.

Yours very truly,

Yvette Hargis
Litigation Secretary
Jefferson Parish Attorney's Office

/yh

Attachment 3

# CONNICK AND CONNICK, L.L.C.
## ATTORNEYS AT LAW

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN
------------------------
ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
ELIZABETH A. ZAVALA
LAURA M. BLOUIN
NOAH R. BORER

3421 NORTH CAUSEWAY BOULEVARD SUITE 408
METAIRIE, LOUISIANA 70002

TELEPHONE: (504) 838-8777
FACSIMILE: (504) 838-9903
WEBSITE: www.connicklaw.com

OF COUNSEL,

PAUL D. CONNICK, JR.

DIRECT DIAL: (504) 681-6658
EMAIL: moghis@connicklaw.com

December 28, 2018

**VIA EMAIL**

BARRY S. NEUMAN
**WHIEFORD, TAYLOR & PRESTON, LLP**
1800 M. Street, NW, Suite 450N
Washington, D.C. 20036
Phone:   (202) 659-6800
Fax:      (202) 331-0573

Re:     *Addison, et al. v. Jefferson Parish, et al.*
        Court:      24th JDC, Case No. 790-369, Division "J"
        File No.:   81.182829

Dear Mr. Neuman,

In response to your letter from earlier today:

As your firm was aware when your lawsuit was filed, we are the assigned counsel for Jefferson Parish for all of the matters regarding to the Jefferson Parish Landfill. This is the reason the courtesy copy of the Petition was forwarded to our office via email (which we appreciate). When requesting expedited consideration of a discovery matter and deadlines that violate the Louisiana Code of Civil Procedure, we believe it is appropriate to forward a courtesy copy of that pleading, as well. That was not done in this case, and that is all that was conveyed to the Court. We will abstain from arguing about the pre-litigation communications, other than to say that it is our understanding that the Waste Connections Defendants (with whom you maintained contact) were also not sent a courtesy a copy of the pleading. Again, given the nature of the pleading, we believe that immediate service to all parties is appropriate.

Respectfully, there were no misrepresentations made to the Court and we will not be sending additional correspondence on the matter. We, too, look forward to working with you.

Have a great New Year.

Sincerely,

CONNICK AND CONNICK, LLC

MATTHEW D. MOGHIS

Exhibit 4b

**1** of **2**

0141

Cc:    Byron Forrest (byron@fcjlaw.com)
        Eliza James (eliza@fcjlaw.com)
        Nicholas Cressy (nicholas@fcjlaw.com)
        Michael Mims (mmims@bradleyfirm.com)
        David Taggart (dtaggart@bradleyfirm.com)
        Jim Slaughter (jslaughter@bradleyfirm.com)
        William Barousse (wbarousse@glllaw.com)

# CONNICK AND CONNICK, L.L.C.
## ATTORNEYS AT LAW

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN
–––––––––––––––––
ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
ELIZABETH A. ZAVALA
LAURA M. BLOUIN
NOAH R. DOREK

3421 NORTH CAUSEWAY BOULEVARD
SUITE 408
METAIRIE, LOUISIANA 70002
TELEPHONE (504) 838-8777
FACSIMILE (504) 838-9903
Website: www.connicklaw.com

OF COUNSEL

PAUL D. CONNICK, JR.

Direct Dial: (504) 681-6663
Email: mfutrell@connicklaw.com

January 3, 2019

**Via Fax: 36403780**
Clerk of Court
24th Judicial District Court
Post Office Box 10
Gretna, LA 70054-0010

Re:     Frederick Addison, et al
        v. Louisiana Regional Landfill Company, et al
        24th JDC No.: 790-369 "J"

Dear Sir/Madam:

Please find attached the Supplemental Motion and Memorandum in Support of Motion for Extension of Time which I ask that you fax file in connection with the above captioned matter.

It is my understanding that no costs are due at this time as we represent the Parish of Jefferson.

Thanking you in advance for your cooperation, I remain

Sincerely yours,

CONNICK AND CONNICK, L.L.C.

MICHAEL S. FUTRELL

MSF/rmm
cc:     Judge Stephen Grefer via fax; (504) 364-2875
        Byron M. Forrest via fax: (504) 322-3884
        Nicholas V. Cressy via fax: (504) 322-3884
        S. Eliza James via fax: (504) 322-3884
        Barry S. Neuman via fax: (202) 327-6151
        Erik Bolog via fax: (202) 327-6151
        C. Allen Foster via fax: (202) 327-6151
        Adrian Sneed via fax: (202) 327-6151
        Michael Mims via fax: (504) 596-6301
        William Barousse via fax: (504) 561-1101

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.    790-369                                                    DIVISION: "J"

**FREDERICK ADDISON, ET AL**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL**

FILED: _____    _____
                                                    **DEPUTY CLERK**

**SUPPLEMENTAL MOTION AND MEMORANDUM IN SUPPORT OF
MOTION AND ORDER FOR EXTENSION OF TIME**

**NOW INTO COURT,** through undersigned counsel, comes Defendant, the Parish of Jefferson, who appears specially and soley for the purpose of submitting this Supplemental Motion and Memorandum to its previously filed Motion and Order for Extension of Time with full reservation of all rights and respectfully submits as follows:

On December 20, 2018, the Parish of Jefferson was served with the Petition for Damages in this matter which had been filed on December 13, 2018. Upon receipt of service, the Parish of Jefferson assigned the defense of this matter to Connick and Connick, LLC. As is customary and routine on all cases, undersigned counsel filed a Motion for Extension of Time to file responsive pleadings on December 27, 2018. The Motion for Extension was filed via U.S. mail and courtesy copies were provided to all counsel in that same manner.

On January 2, 2019, counsel for Plaintiffs filed what is captioned as a Memorandum in Opposition to Jefferson Parish's Motion for Extension of Time and Motion to Strike pursuant to Uniform District Court Rule 9.8 A. It is unclear from the body of the Memorandum the exact relief which Plaintiffs are seeking. Further, Plaintiffs provide no legal or case authority for their position. In any event, it is abundantly clear that Louisiana Code of Civil Procedure Article 963 allows for the filing of a Motion for Extension of Time ex parte as the Parish of Jefferson is "clearly entitled without supporting proof" to an extension of time.

As this Court is well aware, each lawsuit filed presents its own set of facts, claims alleged, damages alleged, potential defenses, potential exceptions, etc. That fact is apparent here as this lawsuit is different from the four prior civil suits and one prior injunction filed relating to the Parish of Jefferson Landfill in that it does not seek class action status, but seeks individual claims

on behalf of eighty plus Plaintiffs and expedited discovery. As such, the Parish of Jefferson is "clearly entitled" to additional time to investigate and determine the appropriate responsive pleadings that should be filed.

The fact that Plaintiffs in this case wish to circumvent the Code of Civil Procedure in order to obtain discovery on an expedited basis with a briefing and hearing schedule to which they are clearly not entitled and use that Motion as leverage to prevent the Parish of Jefferson from an extension of time to file responsive pleadings does not change the fact that the Parish of Jefferson is clearly entitled to the extension of time requested. Additionally, the fact that another Defendant in this matter has chosen to file an Exception is irrelevant.

Finally, counsel for Plaintiffs has chosen to ignore the totality of Uniform District Court Rule 9.8 (a) which provides that should this Court deem that the provisions of Uniform District Court Rule 9.8 (d) do not apply in that it is not an ex parte motion (which is again specifically denied) the Court may "strike the exception or motion, may set the matter for hearing on its own motion, or take other action as the Court deems appropriate". Thus, it is clearly within the discretion of this Court to grant the Motion for Extension of Time and/or set the Motion for Extension of Time for contradictory hearing.

**WHEREFORE,** Defendant, the Parish of Jefferson, prays that its Motion for Extension of Time be granted and that it be afforded up to and including February 4, 2019 to file responsive pleadings in this matter or alternatively that its Motion for Extension be set for contradictory hearing.

Respectfully submitted,

**CONNICK AND CONNICK, L.L.C.**

**WILLIAM P. CONNICK (14158)**
**MICHAEL S. FUTRELL (20819)**
**MATTHEW D. MOGHIS (33994)**
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6663
Attorney for Defendant, the Parish of Jefferson

0145

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been forwarded to all counsel of record via facsimile and/or by depositing same in the United States Mail, postage prepaid, this 3RD day of January, 2019.

MICHAEL S. FUTRELL

```
                    ********************
                    ***   RX REPORT   ***
                    ********************


        RECEPTION OK

        TX/RX NO              8126
        RECIPIENT ADDRESS
        DESTINATION ID
        ST. TIME             01/03 11:42
        TIME USE             00'34
        PGS.                     4
        RESULT               OK
```

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.  790-369                                            DIVISION: "J"

**FREDERICK ADDISON, ET AL**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL**

FILED: _____       _____
                                                **DEPUTY CLERK**

## DECLINATORY EXCEPTION OF LIS PENDENS WITH INCORPORATED MEMORANDUM

**NOW INTO COURT,** through undersigned counsel, comes Defendant, the Parish of Jefferson, who adopts and incorporates the Exception of Lis Pendens filed in this matter by Waste Connections US, Inc. as if copied *in extenso*. In further support of the Exception of Lis Pendens, the Parish of Jefferson submits the following:

Plaintiffs filed suit in this matter on December 13, 2018. The allegations in this suit are identical to those contained in the proposed class action litigations which are currently pending in the Eastern District of Louisiana. Those cases are *Ictech-Bendeck v. Progressive Wast Solutions,* No. 2:18-cv-07889; *Thompson v. Louisiana Regional Landfill Company,* No. 2:18-cv-08071; *Bernard v. Progressive Wast Solutions of LA, Inc.,* 2:18-cv-08218; and *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-09312. Also pending in the 24th Judicial District Court is a Petition for Permanent Injunction captioned *Seth H. Schaumberg v. Parish of Jefferson,* case number 786-052 "N".

The Parish of Jefferson was served with the Petition on December 20, 2018. On January 2, 2019, the Parish of Jefferson filed a Motion for Extension of Time to file responsive pleadings up through and including February 4, 2019. That Motion was granted by this Court.

Given that the Court has set the Exception of Lis Pendens filed by Waste Connections US, Inc. for hearing on January 24, 2019, the Parish of Jefferson submits this Exception of Lis Pendens and also requests that it be set for hearing on January 24, 2019 as well.

Louisiana Code of Civil Procedure Article 531 provides in pertinent part:

> Art. 531.  Suits pending in Louisiana court or courts
>
> When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties

in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925.

Louisiana Code of Civil Procedure Article 532 provides:

> Art. 532. Motions to stay in suits pending in Louisiana and federal or foreign court
>
> When a suit is brought in Louisiana court while another is pending in a court of another state or of the United States on the same transaction or occurrence, between the same parties in the same capacities, on motion of the defendant or on its own motion, the court may stay all proceedings in the second suit until the first has been discontinued or final judgment has been rendered.

There is no doubt that the instant litigation arises out of the same transaction or occurrence in that all of the lawsuits allege damages caused by odors emanating from the Jefferson Parish Landfill. There is also no doubt that the Defendants in all five lawsuits are identical. Based upon the proposed class certification of all Jefferson Parish residents affected by the alleged odors emanating from the Jefferson Parish Landfill, the Plaintiffs in this case would certainly fall within the proposed class. As such, the requirements of Louisiana Code of Civil Procedure Articles 531 and 532 are met and this Declinatory Exception of Lis Pendens should be granted with Plaintiffs' case dismissed with prejudice or alternatively stayed until final judgment has been rendered in the suits currently pending in the Eastern District of Louisiana.

**WHEREFORE** the Parish of Jefferson prays that its Exception of Lis Pendens be set for hearing on January 24, 2019 and that after hearing the Exception be granted with Plaintiffs' claims dismissed with prejudice or alternatively this matter being stayed pending final judgment of the currently pending suits in the Eastern District of Louisiana.

Respectfully submitted,

**CONNICK AND CONNICK, L.L.C.**

**WILLIAM P. CONNICK (14158)**
**MICHAEL S. FUTRELL (20819)**
**MATTHEW D. MOGHIS (33994)**
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6663
Attorney for Defendant, the Parish of Jefferson

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been forwarded to all counsel of record via facsimile and/or by depositing same in the United States Mail, postage prepaid, this 8TH day of January, 2019.

_____

**MICHAEL S. FUTRELL**

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

NO.   790-369                                          DIVISION: "J"

### FREDERICK ADDISON, ET AL

### VERSUS

### LOUISIANA REGIONAL LANDFILL COMPANY, ET AL

FILED: _____          _____
                                                        DEPUTY CLERK

### ORDER

Considering the foregoing Exception of Lis Pendens, it is Ordered that Plaintiffs show

cause on the _____24th___ day of _January__, 2019 at _9:00___ a.m. why the Exception of Lis

Pendens should not be granted.

Gretna, Louisiana, this _____ day of _____, 2019.


_____

**J U D G E**


PLEASE SERVE:

**A COPY OF THE EXCEPTION OF LIS PENDENS WILL BE SERVED BY FED EX IN ACCORDANCE WITH LA. C.C.P. ART. 1313.C. ON:**

**Plaintiffs**
*through their counsel*
Byron M. Forrest
Nicholas V. Cressy
S. Eliza James
One Canal Place Suite 1475
365 Canal Street
New Orleans, LA 70130



(300)  NOTICE OF DATE SET TO ATTORNEY

<div align="center">
24TH JUDICIAL DISTRICT COURT<br>
PARISH OF JEFFERSON<br>
STATE OF LOUISIANA
</div>

FREDERICK ADDISON, BARBARA ADDISION, PERRY
ANDRAS, SHEILA BASKIN, WILLIE FAY BROOKS, ERIC
BROWN, RAMONA BYRD, EDWARD CLOUDET, MONICA
COLEMAN-LESTRICK, MONICA COLEMAN, ET AL
   versus
LOUISIANA REGIONAL LANDFILL COMPANY, IESI LA
LANDFILL CORPORATION, WASTE CONNECTIONS
BAYOU INC, PROGRESSIVE WASTE SOLUTIONS OF LA
INC, WASTE CONNECTIONS US INC, APTIM CORP,
PARISH OF JEFFERSON, ABC CORP, DEF CORP, GHI
CORP, JKL CORP, MNO CORP

Case: 790-369   Div: "J"
D 5  WASTE CONNECTIONS US
INC

  WASTE CONNECTIONS US INC
THROUGH CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON DE 19808

This is to inform you that the  RULE TO SHOW CAUSE/DECLINATORY EXCEPTION;  which
you filed on 12/28/2018 in the above captioned matter, has been fixed for hearing/trial on the
24th day of January, 2019 at 09:00 AM.
Issued by the Clerk Of Court on the 8th day of January, 2019.

/s/ Samantha A. Gambino
Samantha A. Gambino, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk Of Court

Imaged 01/08/2019 14:25 - Signed: Deputy Clerk of Court /s/ Samantha A. Gambino

# BRADLEYMURCHISON
# KELLY & SHEA LLC

bradleyfirm.com

**Michael C. Mims**
*Partner*
New Orleans Office
direct: (504) 596-6136
mmims@bradleyfirm.com

Shreveport | New Orleans | Baton Rouge

January 15, 2019

**_VIA FACSIMILE ONLY 504.364.3780_**
Hon. Jon Gegenheimer
CLERK OF COURT
24TH JDC, PARISH OF JEFFERSON
P.O. Box 10
Gretna, Louisiana 70054

RE:   *Frederick Addison, et al v. Louisiana Regional Landfill Company, et al.*
      24th JDC, Parish of Jefferson, Case No. 790-369, Div. "J"
      Our File:  12534-180394

Dear Sir/Madam:

Attached please find a copy of Defendant Waste Connections US, Inc.'s Memorandum in Support of Declinatory Exception of Lis Pendens and Motion to Stay which I am presenting for fax filing. Please send me a return facsimile with the amount to cover the cost of filing same and I will promptly remit along with the original and three (3) copies of the notice.

Should you have any questions, please feel free to contact me.

Yours truly,

Michael C. Mims

MCM/kze
Enclosure

cc:   Hon. Stephen C. Grefer – Via Facsimile 504.364.2875
      Byron M. Forrest

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                                 DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**DEFENDANT WASTE CONNECTIONS US, INC.'S MEMORANDUM IN SUPPORT OF DECLINATORY EXCEPTION OF LIS PENDENS AND MOTION TO STAY**

**I.      INTRODUCTION**

This mass action is the fifth lawsuit in six months and the most recent in a series of duplicative actions seeking the same relief against the same group of Defendants, all complaining of injuries allegedly caused by odors and noxious fumes emanating from the Jefferson Parish Landfill located in Waggaman, Louisiana ("Landfill"). Plaintiffs commenced this action five months after four nearly identical putative class action suits were filed in the 24th Judicial District Court and subsequently removed to the United States District Court for the Eastern District of Louisiana. This latest lawsuit is barred from proceeding by Louisiana's doctrine of lis pendens, codified in Articles 531 and 532 of the Louisiana Code of Civil Procedure, which prevents this precise situation: "a series of vexatious suits by the same plaintiff against the same defendant in the same transaction or occurrence in different forums." *Sw. Elec. Power Co. v. Amax, Inc.,* 621 So. 2d 615 (La. 1993) (Lemmon, J. concurring).

The criteria for lis pendens are satisfied because (i) all of the *Addison* Plaintiffs are members of the putative classes in the four previously filed class actions, (ii) all of the Plaintiffs' claims arise from the same alleged odors complained of in those putative class action suits, and (iii) all actions involve the same Defendants. As explained in the cases applying lis pendens, allowing this case to move forward at the same time as the class actions are being litigated would waste judicial resources, lead to inconsistent discovery and merit rulings, and subject the

Defendants to burdensome and duplicative lawsuits. This Court should grant Defendant Waste Connections US, Inc.'s exception of lis pendens and stay this action.[1]

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Four putative class actions relating to alleged odors from the Landfill are pending in federal district court.

On July 25, 2018, the first of four putative class actions was filed in the 24th Judicial District Court on behalf of a proposed class of persons seeking damages for alleged "noxious odors" emanating from the Landfill. *See Ictech-Bendeck v. Progressive Waste Solutions,* No. 2:18-cv-07889 (E.D. La.) (filed in the 24th JDC July 25, 2018). On August 17, 2018, Defendants removed the *Ictech-Bendeck* action to federal court pursuant to the Class Action Fairness Act ("CAFA"). Over the next month, three additional putative class actions were filed in the 24th Judicial District Court, *Thompson v. Louisiana Regional Landfill Company,* No. 2:18-cv-08071 (E.D. La.) (filed in the 24th JDC July 30, 2018); *Bernard v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-08218 (E.D. La.) (filed in the 24th JDC Aug. 10, 2018); and *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-09312 (E.D. La.) (filed in the 24th JDC Aug. 27, 2018). Defendants also removed these subsequent actions to federal court pursuant to CAFA. *See* Taggart Aff. Exs. B, C and D.

Together, the four putative class actions seek damages against the owner of the Landfill, Jefferson Parish, and several of its contractors (and related entities): Louisiana Regional Landfill Company ("LRLC") f/k/a IESI LA Landfill Corporation, Waste Connections Bayou, Inc. f/k/a/ Progressive Waste Solutions of LA, Inc., Waste Connections US, Inc. (collectively the "Waste Connections Defendants"), and Aptim Corporation. The proposed class in each action is defined as "[a]ll persons domiciled of and/or within the Parish of Jefferson" that suffered harm as a result of the alleged emission of noxious odors from the Landfill. The representative plaintiffs allege damages from diminution in property value and personal injuries and also seek permanent injunctive relief.

Plaintiffs in all four putative class actions moved to remand the cases to state court, which Defendants opposed. Judge Morgan of the Eastern District held a hearing on the motions

---

[1] Motions to remand are pending in the earlier-filed putative class actions. If the Eastern District remands the cases to state court, then pursuant to La. Code Civ. Proc. art. 531, the *Addison* action must be dismissed, rather than stayed. *See infra,* section III.B.

2

on October 31, 2018, and the parties are awaiting the court's decision. Lis pendens, or equivalent federal doctrines, should prevent the duplicative litigation of the follow-on class actions as well. That issue will be adjudicated after the venue for the four cases is determined.

  **B.**  **Plaintiffs' lawsuit is a copycat of the existing nuisance class actions.**

  On December 13, 2018, the *Addison* Plaintiffs commenced this duplicative action seeking damages for alleged odors emanating from the Landfill. Plaintiffs are 86 residents of Jefferson Parish, and therefore are also members of the proposed class in the four pending complaints. Plaintiffs assert their claims against the same group of defendants that are named in the four putative class actions: Jefferson Parish, the Waste Connections Defendants, and Aptim Corporation, and have also named unidentified insurance companies of the various Defendants. Like the putative class action plaintiffs, the *Addison* Plaintiffs allege that the Landfill is emitting odors that have damaged Plaintiffs and their properties:

> "[t]he Defendants' failure to properly design, operate, manage, and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals."

Taggart Aff. Ex. A at 14; *see also* Taggart Aff. Ex. C, Petition at 8 ("The improper emission of noxious odors from the Jefferson Parish Landfill into and onto neighboring properties . . . has been pervasive and persistent" and "constitute[s] a nuisance to neighboring persons and properties."); Taggart Aff. Ex. B, Petition at 3 (alleging Defendants' "[f]ailure to properly operate and/or manage a solid waste 'sanitary' landfill in a manner that does not cause harm to others, and in particular, to its neighbors" is the cause of "emanations of noxious odors and gases."). A cursory review of the five petitions shows no material difference in their allegations, inviting the application of lis pendens.

**III.**  **ARGUMENT**

  **A.**  **The *Addison* action should be stayed because Plaintiffs commenced the action after four prior actions alleged the same injuries against the same group of defendants.**

  Pursuant to La. Code Civ. Proc. art. 532, Louisiana courts typically exercise their discretion to grant an exception of lis pendens and stay an action when defendants demonstrate

<center>3</center>

"(1) that a suit was brought in a Louisiana state court during the pendency of a suit in a federal court or a court of a state other than Louisiana; (2) that the two suits are based on the same transaction or occurrence; and (3) that the two suits are between the same parties in the same capacities." *Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc.*, 36,723 (La. App. 2 Cir. 6/27/03); 850 So. 2d 1027, 1031 (lis pendens granted in case involving personal injury, property damage, and wrongful death claims related to oil-well explosion); *accord Black v. Exxon Mobil Corp.*, 14-524 (La. App. 5 Cir. 11/25/14); 165 So. 3d 1013 (lis pendens granted in case involving wrongful death and survivorship claims arising from exposure to pipe cleaning operations where plaintiff had intervened in earlier case and alleged personal injuries arising from same operations); *Aisola v. La. Citizens Prop. Ins. Corp.*, 14-1708 (La. 10/14/15); 180 So. 3d 266, 269 (lis pendens granted in case involving the alleged mishandling of insurance claims following Hurricane Katrina); *c.f. Stone Man, Inc. v. Green*, 265 Ga. 877, 463 S.E. 2d 1 (1995) (court applied parallel doctrine of res judicata to bar claim for damages arising from same alleged nuisance as earlier case seeking to abate the nuisance). Courts grant stays in order to promote judicial economy, avoid inconsistent rulings, and prevent the undue harassment of defendants. *See Fincher v. Ins. Corp. of Am.*, 521 So. 2d 488, 489 (La. App. 4th Cir. 1988).[2] The *Addison* action meets and exceeds all of the criteria of article 532, and therefore should be stayed.

> 1. ***Addison* was filed while four other suits were pending in federal court.**

The first element of the exception of lis pendens is amply satisfied because the instant action was filed while *four* other suits were pending in federal court. *See* La. Code Civ. Proc. art. 532 (2018). *Addison* was filed on December 13, 2018. *See* Taggart Aff. Ex. A. The putative class actions were filed in the 24th Judicial District Court on July 23, July 30, August 10, and August 27, 2018, and were all subsequently removed to the Eastern District of Louisiana by October 5, 2018. Thus, at the time this action was filed, four nearly identical suits were—and still are—pending in the Eastern District.

---

[2] The criteria set forth in La. Code Civ. Proc. art. 531 and 532 closely mirror the criteria for *res judicata*, so Courts often characterize the "test" for an exception of lis pendens as whether a final judgment in the earlier filed suit would be *res judicata* in the later filed suit. *Aisola*, 180 So. 3d at 269; *see also United Gen. Title Ins. Co. v. Casey Title, Ltd.*, 01-600 (La. App. 5 Cir. 10/30/01), 800 So. 2d 1061, 1067 (reviewing *res judicata* cases to determine how La. Code Civ. Proc. art. 532 is interpreted).

4

2. **All five suits are based on the same transaction or occurrence because they are based on the alleged emission of odors or noxious fumes from the Landfill.**

The exception of lis pendens requires also that the action arise from the same transaction or occurrence as the earlier-filed suit(s). La. Code Civ. Proc. art. 532 (2018). Louisiana courts apply a broad meaning to the phrase "transaction or occurrence," ranging from "the subject matter of the litigation" to "all logically related events entitling a person to institute legal action against another." *In re Succession of Bernat*, 13-277 (La. App. 3 Cir. 10/9/13); 123 So. 3d 1277, 1284 (the execution and interpretation of a will constituted a single transaction or occurrence) (citing *Hy-Octane Invs., Ltd. v. G & B Oil Prods., Inc.*, 97-28 (La. App. 3 Cir. 10/29/97); 702 So. 2d 1057 (action for wrongful termination of a contract and a suit for breach of contract arose from the same transaction or occurrence)); *accord Black*, 14-524, 165 So. 3d at 1016 (husband's action for exposure to chemicals and wife's action for husband's wrongful death resulting from chemical exposure); *Bailey v. Oakbourne Country Club, Inc.*, Civil No. 6:14-2546, 2015 WL 4622418 (W.D. La. July 30, 2015) (for purposes of *res judicata*, defendant's prolonged course of allegedly discriminatory action constituted a single transaction or occurrence); Restatement (Second) of Judgments § 24(2) (1982) ("What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.").

An identity of legal claims is not required in order for lis pendens to apply; rather, the focus is on whether the subsequent lawsuit involves the same facts as the earlier suit. *See Bandaries v. Cassidy,* 11-161 (La. App. 3 Cir. 6/1/11); 66 So. 3d 564, 567 ("all causes of action arising out of the transaction or occurrence that is the basis of the suit are subject to challenge for lis pendens. . . ."); Official Comment to La. Code Civ. Proc. art. 532 (2018) (Article 532 was amended to conform to *res judicata* codified in La. Stat. Ann. § 13:4231, which provides "[f]or purposes of *res judicata* it would not matter whether the cause of action asserted in the second action was the same as that asserted in the first or different as long as it arose out of the transaction or occurrence that was the subject matter of the first action." La. Stat. Ann. §

5

13:4231, cmt. (a) (2018)); *cf. Jenkins v. Willow, Inc.,* No. 16-38, 2016 WL 3033606 at *7 (La. App. 5th Cir. May 26, 2016), -- So. 3d -- (*res judicata* barred fraud in the inducement claim even though the claim was neither brought nor litigated in an earlier action because the claim arose from the same series of alleged misrepresentations relating to home warranty policies over a seven-year period).

Here, *Addison* and the four pending class actions indisputably arise from the same transaction or occurrence. The "subject matter" or the "event" of each suit is the alleged emission of fumes or odors from the Landfill. *See* Taggart Aff. Ex. A at 2; Taggart Aff. Ex. B, Petition at 2; Taggart Aff. Ex. C, Petition at 2; Taggart Aff. Ex. D, Petition at 2; Taggart Aff. Ex. E, Petition at 2. These allegedly continuing emissions from the same alleged source are logically related to, and constitute the basis of, the claims asserted in all five pending lawsuits. *Id.* The *Addison* claims readily satisfy second element of the lis pendens exception.

### 3. The five suits are between the same parties in the same capacities.

The final element of the exception of lis pendens requires that the present suit and earlier-filed suits involve the same parties in the same capacities. La. Code Civ. Proc. art. 532 (2018). The parties do not have to be the "same" in the literal sense (i.e., the identical individual or institution) so long as they are the same "in the legal sense of the word." *Black*, 14-524, 165 So. 3d at 1016 (internal quotation marks omitted); *see also Jensen Constr. Co. v. Dep't of Transp. & Dev.,* 542 So. 2d 168, 171 (La. App. 1st Cir. 1989) ("The 'identity of parties' requirement is met whenever 'the same parties, their successors, or others appear so long as they share the same 'quality' as parties.'"). Here, all five suits plainly involve the same parties in the same capacities.

### a. Lis pendens applies since the *Addison* Plaintiffs are also putative class members in the pending class actions.

The "identity of the parties" requirement for the exception of lis pendens is satisfied when plaintiffs in the present action are putative class members of an earlier-filed pending class action, unless and until class certification is denied. *Aisola*, 14-1708, 180 So. 3d at 270 ("identity of parties" found and upholding exception of lis pendens where plaintiffs were putative class members of four earlier-filed class action suits); *Elfer v. Murphy Oil U.S.A., Inc.*, 02-0020 (La. 3/15/02); 811 So. 2d 892 (same).

6

Applying the same reasoning underlying *res judicata*, Louisiana courts hold that putative class members that file a subsequent action individually are the "same" for purposes of article 532 because a final judgment in a class action would have a preclusive effect on all subsequent suits filed by class members. *See Harris v. La. Citizens Prop. Ins. Co.*, 14-120 (La. App. 5 Cir. 10/29/14); 164 So. 3d 216, 221 ("Because any judgment on those class actions in which plaintiff is an alleged putative class member would be conclusive and binding as to plaintiff under La. C.C.P. art. 597, it necessarily follows that the requirements of *lis pendens* are satisfied."); La. Code of Civ. Proc. art. 597 (2018) ("A definitive judgment on the merits rendered in a class action concludes all members of the class, whether joined in the action or not, if the members who were joined as parties fairly insured adequate representation of all members of the class."); *Duckworth v. La. Farm Bureau Mut. Ins. Co.*, 2011–2835 (La. 11/2/12); 125 So. 3d 1057, 1069-1070 ("[u]nder the articles governing Louisiana's class action, all persons possessing claims arising out of transactions or occurrences described in a class action petition . . . are bound by any judgment in the action.").

The *Addison* Plaintiffs are putative members of the proposed classes in the four pending class actions: residents of Jefferson Parish who have allegedly been injured as a result of odors allegedly emanating from the Landfill. Specifically, *Ictech-Bendeck* and *Bernard* define the proposed class as:

> "All persons domiciled of and/or within the Parish of Jefferson, (except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels), who sustained legally cognizable damages in the form of nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)' acts that caused the emission of noxious odors and gases into and unto their persons and properties."

Taggart Aff. Ex. B, Petition at 4; Taggart Aff. Ex D, Petition at 5; *accord* Taggart Aff. Exs. C, Petition at 2 and E, Petition at 5 (providing nearly identical class definitions in the *Thompson* and *Landry-Boudreaux* Petitions).

The *Addison* Plaintiffs fall squarely within the proposed class definitions. They are all residents of Jefferson Parish and allege injuries – including physical harm, diminution of property value, and loss of use and enjoyment of their property – caused by the alleged emission of odors and gases from the Landfill. *See* Taggart Aff. Ex. A. Moreover, class certification has

7

not been decided, and therefore not been denied, in any of the putative class actions. Because the *Addison* Plaintiffs are putative members of the proposed classes in all four of the actions currently pending before the Eastern District of Louisiana, they constitute the "same parties in the same capacities" as the named plaintiffs in those actions. *Aisola,* 14-1708, 180 So. 3d at 269.

### b.   Defendants are the "same parties" across all five suits.

Defendants in this action are the same defendants named in the pending putative class actions: Louisiana Regional Landfill Company (f/k/a IESI LA Landfill Corporation), Waste Connections Bayou, Inc. (f/k/a Progressive Waste Solutions of LA, Inc.), Waste Connections US, Inc., Aptim Corporation, and Jefferson Parish. *See* Taggart Aff. Ex F. Plaintiffs' inclusion of several unidentified insurance companies in *Addison* that are not named in the putative class actions (ABC Corp., DEF Corp., GHI Corp., JKL Corp., and MNO Corp.) does not disturb the "identity of the parties" requirement of lis pendens. When an insured entity and its insurance company appear in the action in the "same quality or capacity," they share an identity of parties because "their identities are virtually merged into one." *United Gen. Title Ins.,* 01-600, 800 So. 2d at 1067 (insurer and insured were the same "person" for purposes of the suit). Here, the various unnamed insurance companies would be appearing in the same capacity as, and therefore sharing an identity with, the named Defendants (all of whom are named in the pending class actions). The identity of the parties requirement for lis pendens is satisfied.

### B.   If the four pending putative class actions are remanded, the *Addison* case should be dismissed.

Unlike lis pendens under La. Code Civ. Proc. art. 532, which applies when earlier-filed actions are pending in *federal* court, an exception of lis pendens pursuant to La. Code Civ. Proc. art. 531—which results in a dismissal of an action—applies when multiple suits are pending before a *Louisiana state court* on the same transaction or occurrence and between the same parties in the same capacities. If the pending putative class actions are remanded to the 24th Judicial District Court by the Eastern District of Louisiana, then Article 531, not Article 532, is applicable. Because the other elements of Article 531 are identical to those of Article 532—which as discussed above are met—it would be appropriate for this Court to dismiss, rather than stay, the *Addison* action pursuant to La. Code Civ. Proc. art. 531, to avoid wasting judicial

8

resources and prevent Defendants from facing unnecessary, duplicative suits and potentially inconsistent rulings. *See, e.g., Parker v. Tulane-Loyola Fed. Credit Union,* 15-1362 (La. App. 4 Cir. 5/25/16); 193 So. 3d 441 (dismissal of suit was appropriate where requirements of La. Code Civ. Proc. art. 531 were satisfied).

## IV.    CONCLUSION

All of the elements of lis pendens are satisfied here and it would be patently unfair for the Defendants to have to litigate the *Addison* claims. The same Defendants have been sued four separate times for the same odors allegedly emanating from the Landfill in the putative class actions pending in federal court. Until certification has been denied in all four actions, the *Addison* Plaintiffs should be precluded from litigating this case under Article 532 (or Article 531 if the cases are remanded to state court). This Court should grant Defendant's exception of lis pendens to prevent inconsistent rulings on discovery and merit issues, the waste of judicial resources, and the vexatious, duplicative litigation in multiple forums the doctrine of lis pendens is intended to guard against.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: _____
David R. Taggart
(Louisiana Bar Roll No. 12626)
401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
(Louisiana Bar Roll No. 33991)
John B. Stanton
(Louisiana Bar Roll No. 36036)
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

BEVERIDGE & DIAMOND, P.C.

James B. Slaughter (*pro hac vice* to be submitted)
1350 I Street, N.W., Suite 700
Washington, DC 20005
(202) 789-6000

9

Michael G. Murphy (*pro hac vice* to be submitted)
Megan R. Brillault (*pro hac vice* to be submitted)
John H. Paul (*pro hac vice* to be submitted)
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400

Counsel for Defendant Waste Connections US, Inc.,

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was served on all counsel of record by PDF email, facsimile, and/or by United States Mail, properly addressed and with adequate postage affixed thereon on this the _15th_ day of January, 2019.

Barry S. Neuman
Whiteford, Taylor & Preston LLP
1800 M Street NW, Suite 450N
Washington, DC 20036

Byron M. Forrest
Nicholas V. Cressy
S. Eliza James
Forrest, Cressy & James, LLC
One Canal Place
365 Canal St. Ste 1475
New Orleans LA, 70130

Matthew D. Moghis
William P. Connick
Michael S. Futrell
Connick and Connick, LLC
3421North Causeway Boulevard Suite 408
Metairie, LA 70002

OF COUNSEL

11

0164

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                                    DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**AFFIDAVIT OF DAVID R. TAGGART IN SUPPORT OF DEFENDANT WASTE
CONNECTIONS US, INC.'S MEMORANDUM IN SUPPORT
OF DECLINATORY EXCEPTION OF LIS PENDENS AND MOTION TO STAY**

STATE OF LOUISIANA

PARISH OF CADDO

     BEFORE ME, the undersigned Notary Public, came and appeared DAVID R. TAGGART, who, after being duly sworn, did depose and state:

1.

     I am a resident of Caddo Parish, Louisiana.  I am a person of the full age of majority, and make this affidavit on the basis of my own personal knowledge, and the facts set forth below are true and correct to the best of my information, knowledge, and belief.

2.

     I am a member of the law firm Bradley Murchison Kelly & Shea LLC and am duly admitted to practice before this Court.

3.

     I submit this Affidavit, together with the accompanying exhibits, in support of Defendant Waste Connections US, Inc.'s Memorandum in Support of Declinatory Exception of Lis Pendens and Motion to Stay.

4.

     A true and correct copy of the Petition for Damages and Request for Injunctive Relief filed in this matter is attached hereto as Exhibit A.

1

5.

A true and correct copy of the petition filed in *Ictech-Bendeck v. Progressive Waste Solutions,* Docket No. 785-955-J, filed in the 24th Judicial District Court on July 25, 2018, and the Notice of Removal, Docket No. 2:18-cv-07889, filed in the United States District Court for the Eastern District of Louisiana, on August 17, 2018, is attached hereto as Exhibit B.

6.

A true and correct copy of the petition filed in *Thompson v. Louisiana Regional Landfill Company,* Docket No. 786-137-N, filed in the 24th Judicial District Court on July 30, 2018, and the Notice of Removal, Docket No. 2:18-cv-08071, filed in the United States District Court for the Eastern District of Louisiana, on August 23, 2018, is attached hereto as Exhibit C.

7.

A true and correct copy of the petition filed in *Bernard v. Progressive Waste Solutions of LA, Inc.,* Docket No. 786-541-H, filed in the 24th Judicial District Court on August 10, 2018, and the Notice of Removal, Docket No. 2:18-cv-08218, filed in the United States District Court for the Eastern District of Louisiana on August 29, 2018 is attached hereto as Exhibit D.

8.

A true and correct copy of the petition filed in *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,* Docket No. 787-081-K, filed in the 24th Judicial District Court on August 27, 2018, and the Notice of Removal, Docket No. 2:18-cv-09312 filed in the United States District Court for the Eastern District of Louisiana on October 5, 2018, is attached hereto as Exhibit E.

9.

True and correct copies of the lists of all parties (available on the Eastern District's ECF system) for *Ictech-Bendeck v. Progressive Waste Solutions, Thompson v. Louisiana Regional Landfill Company, Bernard v. Progressive Waste Solutions of LA, Inc.,* and *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,* are attached hereto as Exhibits F-1 through F-4, respectively.

2

DAVID R. TAGGART

SWORN TO AND SUBSCRIBED before me, the undersigned Notary Public on this the _15th_ day of January, 2019.

Notary Public

DONNA GREEN PRUDHOME, 33295
Notary Public in and for
Caddo Parish, Louisiana
My Commission is for Life

3

FILED FOR RECORD 12/17/2018 09:42:50
Michelle S. Bruner BY CLERK
JEFFERSON PARISH, LA

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.: ___ ___ ___                                    DIVISION: ___

FREDERICK ADDISON; BARBARA ADDISION; PERRY ANDRAS; SHEILA BASKIN;
WILLIE FAY BROOKS; ERIC BROWN; RAMONA BYRD; EDWARD CLOUDET;
MONICA COLEMAN-LESTRICK, individually and on behalf of her minor child
CHARLES LESTRICK III; DORIS COLLINS; LULA DARDEN; DEMONTE DETEIGE;
VINCENT EATON; KIMBERLY ENGEL; ADELAINE FITZPATRICK; CARLA FORD;
GERALD FORD; VERNA MAE GABRIEL; MERLENE GRANT; ETHEL GREEN;
WENDY GREMILLION, individually and on behalf of her minor children ADELYN S.
GREMILLION and BRAXTON C. GREMILLION; SCOTT GREMILLION; REGINA
PIERRE GRIFFIN; GLENDA BUILBEAU; ALBERTINE HARGRAVE; JOWE
HERNANDEZ, individually and on behalf of his minor children, MILES HERNANDEZ
AND LUCIANNA HERNANDEZ; LIZ HERNANDEZ; KIMBERLY HIMEL; CORY
HIMEL; ADA JACKSON; BRIDGETT JOHNSON; MARGARITE JOHNSON;
MELODIE JONES; RITA JONES; JESSE KOEHL; ELIZABETH LALA; LUCINDA
LIGHTELL; ELIZABETH LOWE; JOHN LOWE; GARY MEYER; RHONDA MEYER;
ALEXANDER MITCHELL; REGINA MITCHELL; JOSEPH PETE, JR.; TERRY
PEETE, individually and on behalf of her minor children JOSEPH PETE, III AND
AUGUST PEETE; ANDREA PICKNEY; WARREN PICKNEY; PEARL PINKLEY;
CAROLYN POLK; GERALD POLK; GLENDA PRIMUS; JULIANE RAYBURN; KIAN
RILEY; KAREN ROSS, individually and on behalf of her minor children JARED ROSS,
TYRENE ROSS and JERMAINE ROSS; TONY ROSS; ALETHA SCOTT; DAVID
SCOTT; CARI SERPAS, individually and on behalf of her minor children GRACE
SERPAS AND CHASE SERPAS; STEVEN SERPAS; JOHN THOMPSON; CHANDRA
TIGLER, individually and on behalf of her minor child OBRAINA TIGLER; OSCAR
TIGLER; GLORIA TOLODANO; ROY TOLODANO; MELVIN URSIN; SANTANA
UTHAISANG; KIRK WELLS, individually and on behalf of his minor children
ADDYSON WELLS and JOSEPH WELLS; REBECCA WELLS; KEVIN WOOD; and
MARY WOOD.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL
CORPORATION; WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE
WASTE SOLUTIONS OF LA, INC; WASTE CONNECTIONS US, INC; APTIM CORP;
PARISH OF JEFFERSON; ABC CORP; DEF CORP; GHI CORP; JKL CORP; and
MNO CORP.

FILED: _____          _____

                                          DEPUTY CLERK

PETITION FOR DAMAGES AND REQUEST FOR INJUNCTIVE RELIEF

NOW INTO COURT, come Petitioners, who allege and aver the following in support of
their Petition for Damages and Request for Injunctive Relief:



EXHIBIT
A

## INTRODUCTION

This action arises from the continuing, significant and unabated harm suffered by each of the named Petitioners as a result of the ongoing – and admitted – failure of each of the Defendants to ensure that the design, operation and maintenance of the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable environmental laws and adequately protects Petitioners' human health and environment. At all relevant times, the J.P. Landfill and has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.

These unlawful, harmful and toxic releases have caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things: difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience. These emissions also have caused diminution in the value of Petitioners' homes.

Accordingly, Petitioners seek redress from the Defendants for the direct and consequential injury and damage they have suffered and will continue to suffer as a direct result of the releases of noxious odors and chemicals from the J.P. Landfill.

## PETITIONERS

III.

Named Petitioners herein are:

**FREDERICK ADDISON** an individual of full age of majority residing at 41 Morning Glory Lane, Waggaman, LA 70094, and owner of said immovable property.

**BARBARA ADDISON**, an individual of full age of majority residing at 41 Morning Glory Lane, Waggaman, LA 70094, and owner of said immovable property.

**PERRY ANDRAS**, an individual of full age of majority residing at 37 Morning Glory Lane, Waggaman, LA 70094, and owner of said immovable property.

**SHEILA BASKIN**, an individual of full age of majority residing at 648 Sweet Olive Lane, Waggaman, LA 70094, and owner of said immovable property.

2

**WILLIE FAYE BROOKS,** an individual of full age of majority residing at 20 Winifred St., Waggaman, LA, 70094, and owner of said immovable property.

**ERIC BROWN,** an individual of full age of majority residing at an individual of full age of majority residing at 275 Capitol Drive Avondale, LA 70094, and owner of said immovable property.

**RAMONA BYRD,** an individual of full age of majority residing at 322 Hanson Place, Kenner, LA 70062, and owner of said property.

**DORIS COLLINS,** an individual of full age of majority residing at 352 Deacon St., Avondale, LA . 70094, and owner of said immovable property.

**EDWARD CLOUDET,** an individual of full age of majority residing at 601 S. Bengal, River Ridge, LA 70123, and owner of said immovable property.

**MONICA COLEMAN-LESTRICK,** an individual of full age of majority residing at 2 Jasmine Lane, Waggaman, LA 70094, and owner of said immovable property, in her individual capacity and as parent of her minor child, **CHARLES LESTRICK III.**

**LULA DARDEN,** an individual of full age of majority residing at 408 Upland Ave., River Ridge, LA 70123 and owner of said immovable property.

**DEMONE DETEIGE,** an individual of full age of majority residing at 528 Ruth Dr., Avondale, LA 70094 and owner of said immovable property.

**VINCENT EATON,** an individual of full age of majority residing at 513 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**KIMBERLY ENGEL,** an individual of full age of majority residing at 601 Hester Ave., River Ridge LA 70123, and owner of said immovable property.

**ADELAINE FITZPATRICK,** an individual of full age of majority residing at 324 Counsel Dr., Avondale, LA 70094 and owner of said immovable property.

**CARLA FORD,** an individual of full age of majority residing at 49 Judith St., Waggaman, LA 70094, and owner of said immovable property.

**GERALD FORD,** an individual of full age of majority residing at 49 Judith St., Waggaman, LA 70094, and owner of said immovable property.

3

**VERNA MAE GABRIEL,** an individual of full age of majority residing at 512 Avondale Garden Rd., Avondale LA 70094, and owner of said immovable property.

**MERLENE GRANT,** an individual of full age of majority residing at 1811 Moisant St., Kenner, LA 70062, and owner of said immovable property.

**ETHEL GREEN,** an individual of full age of majority residing at 341 Providence Lane, Kenner LA 70062, and owner of said immovable property.

**WENDY GREMILLION,** an individual of full age of majority residing at 9701 Robin Lane, River Ridge, LA 70123, and owner of said immovable property, in her individual capacity and as parent of her minor children, **ADELYN S. GREMILLION** and **BRAXTON C. GREMILLION.**

**SCOTT GREMILLION,** an individual of full age of majority residing at 9701 Robin Lane, River Ridge, LA 70123, and owner of said immovable property.

**REGINIA PIERRE GRIFFIN,** an individual of full age of majority residing at 612 Filmore St., Kenner, La 70062 and owner of said immovable property.

**GLENDA GUILBEAU,** an individual of full age of majority residing at 600 Wilker Neal Ave., River Ridge, LA 70123, and owner of said immovable property.

**ALBERTINE HARGRAVE,** an individual of full age of majority residing at 8721 Milan St., Metairie, LA 70003, and owner of said immovable property.

**JOSE HERNANDEZ,** an individual of full age of majority residing at 721 Randolph Ave., Harahan, LA 70123, and owner of said immovable property, in his individual capacity and as parent of his minor children, **MILES HERNANDEZ** and **LUCIANNA HERNANDEZ.**

**LIZ HERNANDEZ,** an individual of full age of majority residing at 721 Randolph Ave., Harahan, LA 70123, and owner of said immovable property.

**KIMBERLY HIMEL,** an individual of full age of majority residing at 642 Grove Avenue, Harahan, LA 70123, and owner of said immovable property.

**CORY HIMEL,** an individual of full age of majority residing at 642 Grove Ave., Harahan, LA 70123, and owner of said immovable property.

**ADA JACKSON,** an individual of full age of majority residing at 513 S. Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

4

**BRIDGETTE JOHNSON,** an individual of full age of majority residing at 325 Georgetown Dr., Westwago, LA 70094, and owner of said immovable property.

**MARGARITE JOHNSON,** an individual of full age of majority residing at 112 Marie Dr., Avondale, LA 70094, and owner of said immovable property.

**MELODIE JONES,** an individual of full age of majority residing at 413 Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

**RITA JONES,** an individual of full age of majority residing at 248 Glen Della Dr., Avondale, LA 70094, and owner of said immovable property.

**ELIZABETH LALA,** an individual of full age of majority residing at 8701 Steamboat Lane, River Ridge, LA 70123, and owner of said immovable property.

**BRUCE LIGHTELL,** an individual of full age of majority residing at 51 Winifred St., Waggaman, LA 70094, and owner of said immovable property.

**LUCINDA LIGHTELL,** an individual of full age of majority residing at 51 Winifred St., Waggaman, LA 70094, and owner of said immovable property.

**ELIZABETH LOWE,** an individual of full age of majority residing at 604 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**JOHN LOWE,** an individual of full age of majority residing at 10120 St. Paul Ave., River Ridge, LA 70123, and owner of said immovable property.

**GARY MEYER,** an individual of full age of majority, residing at 612 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**RHONDA MEYER,** an individual of full age of majority residing at 612 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**ALEXANDER MITCHELL,** an individual of full age of majority residing at 204 Hanson Ave., Kenner, LA 70062, and owner of said immovable property.

**REGINA MITCHELL,** an individual of full age of majority residing at 204 Hanson Ave. Kenner, LA 70062.

**JOSEPH PETE, JR.,** an individual of full age of majority residing at 149 Southern Ct., Avondale, LA 70094, and owner of said immovable property.

5

**TERRY PETE,** an individual of full age of majority residing at 149 Southern Ct., Avondale, LA 70094 and owner of said immovable property, in her individual capacity and as parent of her minor children **JOSEPH PETE, III** and **AUGUST PETE.**

**ANDREA PICKNEY,** an individual of full age of majority residing at 657 Richard Ave., River Ridge, LA 70123, and owner of said immovable property.

**WARREN PICKNEY,** an individual of full age of majority residing at 657 Richard Ave., River Ridge, LA 70123, and owner of said immovable property.

**PEARL PINKLEY,** an individual of full age of majority residing at 511 Wilker Neal Ave., River Ridge, LA 701235, and owner of said immovable property.

**CAROLYN POLK,** an individual of full age of majority residing at 305 S. Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

**GERALD POLK,** an individual of full age of majority residing at 305 S. Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

**GLENDA PRIMUS,** an individual of full age of majority residing at 8521 Milan St., Metairie, LA 70003, and owner of said immovable property.

**JULIANE RAYBURN,** an individual of full age of majority residing at 513 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**KIAN RILEY,** an individual of full age of majority residing at 6 Jasmine Lane, Waggaman, LA 70094, and owner of said immovable property.

**KAREN ROSS,** an individual of full age of majority residing at 52 Winifred St., Waggaman, LA70094, and owner of said immovable property, in her individual capacity and on behalf of her minor children, **JARED ROSS, JERMANIE ROSS** and **TYRESE ROSS.**

**TONY ROSS,** an individual of full age of majority residing at 52 Winifred St., Waggaman, LA 70094, and owner of said immovable property.

**ALETHA SCOTT,** an individual of full age of majority residing at 629 South Cumberland St., River Ridge, LA 70123, and owner of said immovable property.

**DAVID SCOTT,** an individual of full age of majority, residing at 629 South Cumberland St., River Ridge, LA 70123, and owner of said immovable property.

6

**CARI SERPAS,** an individual of full age of majority residing at 609 Hester Ave., River Ridge, LA70123, and owner of said immovable property, in her individual capacity and as parent of her minor children, **GRACE SERPAS** and **CHASE SERPAS.**

**STEVEN SERPAS,** an individual of full age of majority residing at 609 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**JOHN THOMPSON,** an individual of full age of majority residing at 412 Wilker Neal Ave., River Ridge, LA 70123 and owner of said immovable property.

**CHANDRA TIGLER,** an individual of full age of majority residing at 29 Richelle St., Waggaman, LA 70094, and owner of said immovable property, in her individual capacity and as parent of her minor child, **OBRAINA TIGLER.**

**OSCAR TIGLER,** an individual of full age of majority residing at 29 Richelle St., Waggaman, LA 70094, and owner of said immovable property.

**GLORIA TOLODANO,** an individual of full age of majority residing at 225 Helis Dr., Waggaman, LA 70094 and owner of said immovable property.

**ROY TOLODANO,** an individual of full age of majority residing at 225 Helis Dr., Waggaman, LA 70094 and owner of said immovable property.

**MELVIN URSIN,** an individual of full age of majority residing at 500 Cumberland Str., River Ridge, LA 70123, and owner of said immovable property.

**SANTANA UTHAISANG,** an individual of full age of majority residing at 2033 Generes Dr., Harahan, LA 70123 and owner of said immovable property.

**KIRK WELLS,** an individual of full age of majority residing at 153 Rebel Ave., River Ridge, LA 70123, and owner of said immovable property, in his individual capacity and as parent of his minor children, **ADDYSON WELLS** and **JOSEPH WELLS.**

**REBECCA WELLS,** an individual of full age of majority residing at 153 Rebel Ave., River Ridge. LA 70123, and owner of said immovable property.

**KEVIN WOOD,** an individual of full age of majority, residing at 824 Colonial Club Dr., Harahan, LA 70123, and owner of said immovable property.

**MARY WOOD,** an individual of full age of majority, residing at 824 Colonial Club Dr., Harahan, LA 70123, and owner of said immovable property.

7

II.

Made Defendants herein are:

a.  **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION ("IESI"),** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State.  On information and belief, LRLC is a wholly-owned subsidiary of Defendant Waste Connections Bayou, Inc., Inc., which in turn was acquired by Defendant Waste Connections US, Inc.  On information and belief, Defendant LRLC is controlled by Defendants Waste Connections Bayou, Inc., and/or Waste Connections, US, Inc., and is the "alter ego" of those Defendants, operating without autonomy and only pursuant to the direction, policies and procedures of its parent corporations;

b.  **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized to do and doing business in this Parish and State;

c.  **WASTE CONNECTIONS US, INC.,** a foreign corporation authorized to do and doing business in this Parish and State; and

d.  **APTIM CORP.,** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State;

e.  **PARISH OF JEFFERSON,** a Louisiana parish in and political subdivision of the State of Louisiana (the "Parish");

f.  **ABC CORPORATION,** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), F/K/A IESI LA LANDFILL CORPORATION ("IESI"),** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

g.  **DEF CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of

8

insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

h. **GHI CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

i. **JKL CORPORATION;** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **APTIM CORP**, that may provide coverage for acts occurrences, and/or omissions more specifically described herein;

j. **MNO CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **PARISH OF JEFFERSON,** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein.

III.

## JURISDICTION AND VENUE

Venue is proper in accordance with La. R.S. 13:5104(B), which states, in part, that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." Venue is further proper as to all other defendants as the wrongful conduct giving rise to the Petitioner's claims occurred within the jurisdictional limits of Jefferson Parish, State of Louisiana.

IV.

## FACTS

The Parish is the owner of the Jefferson Parish Landfill (the "J.P. Landfill"), located at 5800 Highway 90 West in Avondale, Jefferson Parish, State of Louisiana.

V.

9

At all relevant times, the J.P. Landfill has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.* (the "Act") as well as federal laws and regulations implemented by the United States Environmental Protection Agency ("USEPA").

VI.

The J.P. Landfill is authorized to operate pursuant to and only in accordance with the terms and conditions of, among other things, Standard Permit P-0297R1(the "Standard Permit") as issued, approved, and subject to periodic review and renewal by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to the Act. The Standard Permit was most recently renewed by the LDEQ on or about January 22, 2010.

VII.

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the J.P. Landfill (the "IESI Operating Contract"). The IESI Operating Contract provides that:

a. Operation of the J.P. Landfill will be conducted "in strict compliance and conformity with all Federal, State and local laws, ordinances, and regulations, including the rules and regulations of the USEPA, LDEQ, and all State of Louisiana agencies, and in accordance with the Permit Documents."

b. "IESI shall be responsible for compliance with all Federal, State and local regulations, laws and ordinances in its performance of the Service/Work associated with the operation [and maintenance] of the Landfill."

c. IESI is required to "provide all labor, equipment, materials and incidentals to assume all daily operations of the Landfill."

d. The Parish Engineer has the authority to "decide any and all questions as to...the manner of performance and rate of progress of the Services/Work...the interpretation of the Contract Documents, and all questions as to the acceptable Completion" of the

10

**0177**

Contract "in his reasonable and good faith opinion." The Parish Engineer is further authorized to "suspend operations at any time when the Service/Work, in his good faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits."

VIII.

Defendant APTIM is and at all relevant times has been a co-operator of the gas and leachate collection system of the J.P. Landfill.

IX.

Jefferson Parish, in addition to being an owner of the J.P. Landfill, is and at all relevant times has been a co-manager and co-operator of the J.P. Landfill with IESI/LRLP and APTIM.

X.

The Parish has admitted that improper operation of the J.P. Landfill is a major source of the odors suffered by Petitioners as well as the adverse consequences thereof.  At a public press conference on July 23, 2018, Parish President Mike Yenni stated that:

a.  The J.P. Landfill's system designed to "contain and deodorize landfill gases" has not been in "proper working order."

b.  The landfill's leachate collection system has not been operated properly.

c.  "Properly operated landfills do not operate persistent off-site odors and corrective actions…are essential."

d.  The Parish has notified IESI that it is in breach of its contract to properly operate the J.P. Landfill.

XI.

At the same press conference, Parish Deputy Sheriff Mark Conley stated that the J.P. Landfill gas collection system has been collecting only twenty percent of the gas emitted from landfill operations, whereas a properly operating system would collect ninety-seven to ninety-eight percent of gas emissions, "[s]o that is why the Parish president is stressing that we realize we have problems…right now, a lot of our priority, in the name of public safety and our police powers, is to address the existing system, get it operational, and to pull as much gas out of that landfill as we can."

11

XII.

At the same press conference, Parish Councilman Paul Johnson stated that the odor from
the J.P. Landfill

"has gotten really bad in the past for our five months…we are all going to experience odors
from the landfill because it's a landfill.  But, not those we have been having for the past
three or five months.  It's been really bad.  I have been woken up at night with my nose
burning and couldn't breathe at three or four o'clock in the morning.  This has happened
to me more than one time…we know the landfill is causing problems and we know it is a
big source of problems…."

XIII.

At the same press conference, Doctor Joseph Cantor, Medical Director and Administrator
for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high
level, residents should, if they are able to, leave the area and particularly if they have certain
chronic conditions which put them at increased risk mainly pulmonary disease and asthma
COPD."[1]

XIV.

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which,
among other things, found that the Parish has violated its Landfill Permit and applicable
environmental regulations by (i) failing to provide daily cover and (ii) failing to properly operate
the system that is intended to collect leachate – the liquid brew that drains from a landfill and
carries with it numerous harmful chemicals.

XV.

The LDEQ inspectors found areas of pooled leachate and leachate flowing downhill from
the pooled leachate.

XVI.

---

[1] A video recording of the July 23 press conference can be accessed at
https://www.facebook.com/NOLAnews/videos/10155793116437060/ (last visited Aug. 4, 2018).

12

The United States Environmental Protection Agency ("EPA") has established general screening levels for various pollutants. These screening levels are chemical-specific concentrations for individual contaminants in air that may warrant further investigation or site cleanup. https://www.epa.gov/risk/regional-screening-levels-rsls-users-guide (last visited, Nov. 21, 2018). A chronic screening level addresses potential chronic exposure to a chemical.

XVII.

Air samples collected by the LDEQ in the Jefferson Parish communities of River Ridge, Harahan, and Waggaman between July 20, 2018 through approximately July 28, 2018 were found to contain numerous chemical compounds at concentrations that exceed EPA's chronic screening levels, including acrolein, 1.2-dichloroethane, benzene, carbon tetrachloride, and naphthalene. All of these compounds are multimodal toxicants, in that they are potential or actual human carcinogens and also have other toxic effects.

XVII.

The air samples collected by LDEQ also contained hydrogen sulfide at concentrations that exceed EPA's chronic screening levels. Hydrogen sulfide is a potentially toxic compound. All of these compounds are typically found in the gases generated by landfills like the J.P. Landfill.

XVIII.

In a report dated August 15, 2018, prepared for the Parish by its environmental consultant, Carson Environmental Consulting ("CEC"), CEC made several findings, including, among other things, that there are numerous deficiencies in "the landfill gas condensate and leachate collection pumping systems[,]" and that the infrastructure for these systems requires immediate improvement "to meet the Parish's performance objectives." In addition, CEC concluded that improved operation and maintenance of the J.P. Landfill requires the Parish's "focused attention."

XIX.

On information and belief, on or about December 5, 2018 the Commissioner of the LDEQ informed the Parish that there is "no doubt" in his mind that the JP Landfill is the primary source the odors experienced by residents of the communities in which Petitioners reside.

XX.

13

On information and belief, Defendant ABC Corporation has issued a policy of insurance to Defendant Louisiana Regional Landfill Company that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify ABC Corporation once its identity is known.

XXI.

On information and belief, Defendant DEF Corporation has issued a policy of insurance to Defendant Waste Connections Bayou, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify DEF Corporation once its identity is known.

XXII.

On information and belief, Defendant GHI Corporation has issued a policy of insurance to Defendant Waste Connections US, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify GHI Corporation once its identity is known.

XXIII.

On information and belief, Defendant JKL Corporation has issued a policy of insurance to Defendant Aptim Corporation that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

XXIV.

On information and belief, Defendant MNO Corporation has issued a policy of insurance to Defendant Parish of Jefferson that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## PROXIMATE CAUSE AND BAD ACTS

XXV.

The Defendants' failure to properly design, operate, manage, and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals.

XXVI.

These odors and chemicals have also caused these Petitioners to suffer physical, mental, and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes,

14

ears, noses and throats, dizziness, loss of appetite and lethargy, as well as fear, anguish, anxiety and mental pain and suffering.

### XXVII.

Defendants' actions and omissions with respect to the design, operation and maintenance of the J.P. Landfill are the direct and proximate cause of the injuries and harm suffered by each of the Petitioners as alleged above.

### XXVIII.

Defendants' actions and omissions as outlined above also have caused a diminution in the value of Petitioners' immovable property.

### XXIX.

These odors have been pervasive and persistent. They have continued to the present and are likely to continue for the foreseeable future. The emissions constitute a continuing tort.

### XXX.

Defendants' acts and omissions in owning, designing, operating and/or maintaining the J.P. Landfill as described above constitute an unreasonable interference with each of the Petitioners' comfortable use and enjoyment of their homes.

### XXXI.

Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.

### XXXII.

These physical invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, loss of enjoyment of property, as well as fear, anguish and mental pain and suffering.

### XXXIII.

The emissions of these harmful odors and chemicals have been pervasive and persistent and constitute a continuing tort.

### XXXIV.

15

The Defendants' illegal actions and omissions in owning and operating the J.P. Landfill continue to this day and, unless enjoined by this Court, will continue for the indefinite future. Accordingly, Petitioners are entitled to a permanent injunction ordering the Defendants to abate the continuing nuisance and cease the trespasses caused and created by the J.P. Landfill, including the emission of noxious odors and chemicals, and to take all necessary reasonable actions required to accomplish same.

<div align="center">XXXV.</div>

Each of the Defendants had a duty to Petitioners to exercise reasonable care in the design, ownership and/or operation of the Landfills, including without limitation the duty to comply with applicable environmental laws and regulations and otherwise to ensure that the Landfills were operated in a manner that does not jeopardize their health, immovable property, environment, and quality of life.

<div align="center">XXXVI.</div>

Each of the Defendants breached such duties of care to the Petitioners by, among other things:

a. Failing to properly design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods;

b. Failing to take careful and prudent precautionary measures to ensure that these releases would not occur;

c. Failing to design, operate and maintain the J.P. Landfill in a manner that does not cause harm to others and, in particular, its neighbors;

d. Failing to comply with applicable regulations governing the design, operation and maintenance of the J.P. Landfill;

e. Being inattentive and careless in the overall design, operation and maintenance of the J.P. Landfill;

f. Failing to remediate and repair the failures in design, operation and maintenance of the J.P. Landfill as they became known to the Defendants;

<div align="center">16</div>

g. Any and all other acts of negligence which may be revealed between now and the time of trial.

### XXXV.

The Defendants' failure to comply with their duties of care to the Petitioners were and are a cause in fact and a legal cause of Petitioners' injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their immovable property and diminution in the value of said property.

### XXXVII.

The Parish's ownership and operation of the J.P. Landfill has caused substantial damage to the value of Petitioners' respective interests in their immovable property.

### XXVIII.

The Parish knew, or in the exercise of reasonable care, should have known, that its failure to properly design, operate and maintain the J.P. Landfill would cause damage to Petitioners, and such damage could have been prevented by the exercise of reasonable care. The Parish, as owner of the J.P. Landfill, failed to exercise such reasonable care.

### XXXVIII.

In committing the acts and omissions described above, the Defendants have breached their contractual obligations, of which Petitioners are third party beneficiaries, arising under the contracts between the Parish and all other Defendants herein pertaining to the design, operation and maintenance of the J.P. Landfill.

### XXXIX.

In committing the foregoing acts and omissions, Defendants have violated, *inter alia*, Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continues to cause each of the Petitioners damages including nuisance damages; physical harm and mental fear, anguish, pain and suffering; and diminution in property value.

### XL.

Further, Petitioners' interest is their immovable property is a property right protected by the Louisiana Constitution.

17

XLI.

Petitioners' interest in their real property has been taken and damaged by the actions of Jefferson Parish as pled herein.

XLII.

Such taking and damage was for a public purpose – to wit, the operation of a public landfill for the purpose of handling and disposing of waste generated by the citizens of Jefferson Parish and others.

XLIII.

The Parish is liable to the Petitioners for damages caused by the Parish's unconstitutional taking of their immovable property without paying just compensation pursuant to Article I, Section 4(B) of the Louisiana Constitution.

XLIV.

The Parish's taking of Petitioners' property without just compensation constitutions a deprivation of their property without due process of law pursuant to Article I, Section 2 of the Louisiana Constitution.

XLV.

The Parish is liable to the Petitioners for all damages caused by the Parish's violation of Petitioners' due process rights.

XLVI.

### REQUEST FOR TRIAL BY JURY

Petitioners request a jury trial to all claims triable by a jury.

XLVII.

### PRAYER FOR RELIEF

**WHEREFORE,** Petitioners pray that:

a.  Judgment be entered declaring each of the Defendants jointly, severally and *in solido* liable to each of the Petitioners for all damages (and awarding all such damages), including physical and bodily harm, loss of use and enjoyment of their homes, diminution in property value, lost wages, medical expenses and mental pain and suffering;

18

b. Judgment be entered against the Parish declaring it liable for inverse condemnation, and awarding to each of the Petitioners just compensation for the unconstitutional taking of their interests in real property and/or a deprivation of due process;

c. Judgment be entered against all Defendants for all additional damages as are just and reasonable under the circumstances, including but not limited to the cost of alternative housing and medical testing;

d. The Defendants be permanently enjoined and ordered to abate the nuisances and trespasses, and to take all reasonable and necessary measures to cease the harmful emissions from the J.P. Landfill.

e. The Defendants be required to provide medical monitoring for all Petitioners as appropriate;

f. Prejudgment and post-judgment interest on all damages be awarded;

g. Petitioners be awarded all costs for prosecution of this action including attorney's fees and costs;

h. Damages be awarded for all other injuries that may be proved at trial; and

i. This Court award such other and further relief as it may deem just and proper.

Respectfully submitted,

**FORREST CRESSY & JAMES, LLC**

Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele: (504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com

OF COUNSEL:
Barry S. Neuman
Erik Bolog
C. Allen Foster
Adrian Sneed
**WHITEFORD   TAYLOR   PRESTON,
LLP**
1800 M Street, NW
Suite 450N

19

Washington, DC 20036
Tele: (202) 659.6800
(Applications for Admission *Pro Hac Vice*
Pending)

SERVICE INSTRUCTIONS ON FOLLOWING PAGE.

20

**PLEASE SERVE:**

**LOUISIANA REGIONAL LANDFILL COMPANY**
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**WASTE CONNECTIONS BAYOU, INC.**
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**WASTE CONNECTIONS US, INC.**
Through its Agent for Service
Via long arm through its Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**APTIM Corp.**
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**PARISH OF JEFFERSON**
Through its Agent for Service
Michael J. Power
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

21

 

(101)  CITATION: CLASS ACTION PETITION FOR DAMAGES / REQUEST
FOR WRITTEN NOTICE ; EX PARTE MOTION AND ORDER AND
INCORPORATED MEMORANDUM IN SUPPORT OF X PARTE MOTION TO
APPOINT INTERIM CLASS COUNSEL

180726-4031-3

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

ELIAS JORGE ICTECH-BENDECK, ELIAS GEORGE
ICTECH-BENDICK
　　　　　versus
PROGRESSIVE WASTE SOLUTION OF LA INC, WASTE
CONNECTIONS US INC, IESI LA LANDFILL
CORPORATION, LOUISIANA REGIONAL LANDFILL
COMPANY INC, APTIM CORPORATION, PARISH OF
JEFFERSON

Case: 785-955    Div: "H"
P 1 ELIAS JORGE ICTECH-
BENDECK

To:  LOUISIANA REGIONAL LANDFILL COMPANY INC
THRU ITS AGENT
CORPORATION SERVICE COMPANY
501 LOUISIANA AVE
BATON ROUGE LA 70802

EBR# 15955  $139.44

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the CLASS ACTION
PETITION FOR DAMAGES / REQUEST FOR WRITTEN NOTICE / EX PARTE MOTION AND
ORDER AND INCORPORATED MEMORANDUM IN SUPPORT OF EX PARTE MOTION TO
APPOINT INTERIM CLASS COUNSEL  of which a true and correct copy accompanies this
citation, or make an appearance either by filing a pleading or otherwise, in the 24th Judicial
District Court in and for the Parish of Jefferson, State of Louisiana, within FIFTEEN (15)
CALENDAR days after the service hereof, under penalty of default.

This service was requested by attorney VAL P. EXNICIOS and was issued by the Clerk of Court
on the 26th day of July, 2018.

/s/ Lisa M. Cheramie
Lisa M. Cheramie, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk of Court

## SERVICE INFORMATION

(101)  CITATION: CLASS ACTION PETITION FOR DAMAGES / REQUEST
FOR WRITTEN NOTICE ; EX PARTE MOTION AND ORDER AND
INCORPORATED MEMORANDUM IN SUPPORT OF X PARTE MOTION TO
APPOINT INTERIM CLASS COUNSEL

180726-4031-3

Received:_____  Served:_____  Returned:_____

Service was made:
　　　___ Personal　　　　　___ Domiciliary _____

Unable to serve:
　　　___ Not at this address　　　___ Numerous attempts _____ times
　　　___ Vacant　　　　　　　　　___ Received too late to serve
　　　___ Moved　　　　　　　　　___ No longer works at this address
　　　___ No such address　　　　___ Need apartment / building number
　　　___ Other

Service: $_____　　Mileage: $_____　　Total: $_____

Completed by:_____  # _____
　　　　　　　　　Deputy Sheriff
Parish of: _____

**EXHIBIT**

B

Thomas F. Donelon Courthouse : 200 Derbigny St. : Gretna LA 70053

Page 1 of 1

FILED FOR RECORD 07/25/2018 08:56:09
Michelle S. Bruner, DY CLERK
JEFFERSON PARISH, LA

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 785-955

DIVISION H

ELIAS JORGE "GEORGE" ICTECH-BENDECK
VERSUS
PROGRESSIVE WASTE SOLUTIONS OF LA, INC., WASTE CONNECTIONS, US,
INC., IESI LA LANDFILL CORPORATION, LOUISIANA REGIONAL LANDFILL
COMPANY, INC. , APTIM CORPORATION, AND PARISH OF JEFFERSON

FILED:_____          _____
                                              DEPUTY CLERK

CLASS ACTION PETITION FOR DAMAGES

The petition of **ELIAS JORGE "GEORGE" ICTECH-BENDECK**, a person of the full

age of majority and a resident of and domiciled in the Parish of Jefferson, State of Louisiana, on

behalf of himself and all other similarly situated persons residing in and/or domiciled in the effected

areas of Jefferson Parish, with respect represents that:

I.

Made Defendants in this cause of action are:

**1. PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized

to do and doing business in this Parish and State;

**2. WASTE CONNECTIONS, US, INC.,** a foreign corporation authorized to do and doing

business in this Parish and State;

**3. IESI LA LANDFILL CORPORATION,** a foreign corporation authorized to do and

doing business in this Parish and State;

**4. LOUISIANA REGIONAL LANDFILL COMPANY, INC.,** a foreign corporation

authorized to do and doing business in this Parish and State;

**5. APTIM CORPORATION,** a foreign corporation authorized to do and doing business in

this Parish and State;

**6. PARISH OF JEFFERSON,** a Louisiana municipal parish in the State of Louisiana.

II.

Defendants are jointly, severally and in solido indebted unto your Petitioner and all those

1

similarly situated, for general and special damages suffered by Petitioner and all those similarly situated in a sum sufficient to fully compensate him/her/them for all of his/her/their damages, together with legal interest, and for all costs, for this, to-wit:

## III.

### UNDERLYING FACTS

On or about August 1, 2017 the purported "sanitary solid waste" facility/landfill owned by Defendant Jefferson Parish and known as the Jefferson Parish landfill (hereinafter JP Landfill) that is located in Waggaman, LA began to emit noxious odors, believed to consist primarily of methane and hydrogen sulfide gases, into areas surrounding the JP Landfill. The surrounding neighborhoods, including but not limited to those located in Waggaman, LA., River Ridge, La. and Harahan, La., experienced said noxious odors on various days and at various times of the day and night depending upon the then prevailing wind direction crossing over and/or otherwise emanating from the site of the JP Landfill. The emission of said noxious odors continue to date of filing, continued into the past approximate 11 month period and are asserted to likely continue into the foreseeable future such that the emission has been and will be a continuous tort into the foreseeable future.

## IV.

### DEFENDANT PARTIES

The JP Landfill is, and/or was at relevant times, owned by Defendant JEFFERSON PARISH and is, and/or was at all relevant times, being operated pursuant to contracts issued by Defendant JEFFERSON PARISH to Defendants IESI LA LANDFILL CORPORATION, (hereinafter IESI-LA) a wholly owned subsidiary of Defendant PROGRESSIVE WASTE SOLUTIONS OF LA, INC., that was in turn acquired by Defendant WASTE CONNECTIONS, US, INC.

IESI-LA is controlled by its parent corporations PROGRESSIVE WASTE SOLUTIONS, OF LA, INC. and/or  WASTE CONNECTIONS, US, INC. and is the "alter ego" of said parent corporation(s) and operates without autonomy and only pursuant to the directions, policies and procedures of its parent corporation(s); as such, said parent corporation(s) are liable for all negligent and/or otherwise bad acts of its wholly owned subsidiary(ies), IESI-LA and/or LOUISIANA REGIONAL LANDFILL COMPANY, INC..

IESI operated and managed (and/or mis-managed) the JP landfill from the date of the initial omissions of noxious odors in August, 2017 and it is thus liable for all damages sustained from

2

August 1, 2017 to the date of its corporate name change, to wit: IESI recently changed its corporate name in June, 2018 to LOUISIANA REGIONAL LANDFILL COMPANY, INC. (hereinafter LRLC) and LRLC is the current operator and manager (and/or mis-manager) of the JP Landfill and is thus liable for all damages sustained since its corporate name change to date of just and equitable adjudication, and into such future date as the emissions cease, if ever.

Defendant APTIM CORPORATION, based upon information and belief, manages, or in this case, mis-manages, pursuant to contract and/or subcontract, the gas and/or leachate collection system(s) of JP Landfill that, in addition to the site's liquid industrial waste, residential sewerage, commercial waste, and improperly covered solid waste is at least one "point source" of the noxious odors and gases emanating from the JP landfill.

## V.

## PROXIMATE CAUSE AND BAD ACTS

The sole proximate cause of the above described emanations of noxious odors and gases is and was the strict liability, breach of contractual obligations and/or negligent acts of Defendants, which strict liability, breach of contractual obligations  and/or negligence consists more particularly, but not exclusively, of the following:

1.    Violation of Civil Code Articles 667, 669, 2315, 2316, 2317, 2317.1, 2322 and applicable environmental rules and regulations promulgated by the State of Louisiana and/or Louisiana Department of Environmental Quality (LDEQ) ;

2.    Failure to properly operate and/or manage a solid waste "sanitary" landfill in a manner that does not cause harm to others, and in particular, to its neighbors;

3.    Failure to take all reasonable action to avoid causing harm as set forth herein;

4.    Failure to prevent the emission of noxious and harmful odors and gases into and onto the persons and properties of the surrounding neighborhoods;

5.    Breach of contractual obligations of which Petitioner and all those similarly situated are third party beneficiaries of the contract(s) between Defendant Jefferson Parish and all other Defendants named herein that cause(d) harm to Petitioner and all those similarly situated that he seeks to represent.

## VI.

## DAMAGES

3

As a consequence of the acts and/or failures to act and/or breach of duties and/or obligations and resulting legally cognizable damages, Petitioner and all those similarly situated, sustained damages as follows:

A.   Past, present and future nuisance damages;

B.   Past, present and future diminution in property value.

### VI (a).

### ARTICLE 893

Pursuant to La. Code of Civil Procedure Article 893, Petitioner prays and/or asserts that the sum in damages sought by and for any individual petitioner herein be and is greater than the jurisdictional amount necessary for trial by jury.

### VII.

### CLASS ACTION PROCEDURAL PROVISIONS

Petitioner seeks to proceed as a Class Action pursuant to Louisiana Code of Civil Procedure Article 591, et seq., individually and as class representative on behalf of a class of Plaintiffs similarly situated but as yet fully identified, as Plaintiff herein represents that he has sustained legally cognizable damages common to all those similarly situated who incurred such damages arising from the direct and proximate result of the wrongful conduct of Defendants as set forth herein, and/or by those for whom they are legally responsible pursuant to the doctrine of respondiat superior, employer-employee, master-servant and/or as otherwise authorized by statutory law and/or jurisprudence.

### VII (a)

Petitioner/Plaintiff proposes that the Class be defined as:

"All persons domiciled of and/or within the Parish of Jefferson, (except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels), who sustained legally cognizable damages in the form of nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)' acts that caused the emission of noxious odors and gases into and unto their persons and properties".

### VII (b)

This action is appropriate for determination through utilization of the Louisiana class action procedural device, to wit: Louisiana Class Action Procedure Articles (La. C.Civ.P. Art. 591, *et seq.*) for the following reasons:

4

1.   **NUMEROSITY**

While the exact number of and identities of the class members are unknown at this time, they may be ascertained through appropriate discovery and Plaintiff is of the information and belief that the class of Plaintiffs clearly consists of persons presenting a level of numerosity better handled through the class action procedural device;

2.   **COMMON QUESTIONS OF LAW AND FACT**

There are common questions of law and fact applicable to all class members and which predominate over individual questions, which include, but are not limited to: whether the damages were a result of the wrongful conduct of Defendant(s);

3.   **TYPICALITY**

The claims of the class representative as named herein are typical of the class members he seeks to represent and the defenses of Defendants are typical as to the Plaintiff and class members in that all seek damages arising from the wrongful conduct of Defendants as alleged herein;

4.   **ADEQUACY OF REPRESENTATION**

Plaintiff will fairly and adequately represent the interests of the class, and the class representative herein is represented by skilled attorneys who are experienced in the handling of mass tort class action litigation, and who will handle this action in an expeditious and economical manner, and all in the best interests of all members of the class; further, undersigned Counsel Val Patrick Exnicios, Esq. serves as Chairman of the Louisiana State Bar Association's Class Action, Mass Torts & Complex Litigation Section, and as Co-Chairman of the Louisiana Supreme Court's Class Action, Rules of Professional Conduct and MDL Committee and is pro bono ethics counsel to several plaintiff and defense law firms and is a frequent lecturer at CLE presentations and at area law schools on both ethics and professionalism in the practice of law in this State; as such, he is highly skilled in the prosecution and management of actions wherein the Court has determined that the class action procedural device is the most appropriate means to manage mass and/or complex litigation, and highly skilled as to the Louisiana Supreme Court's Rules of

5

Professional Conduct applicable to said procedural device and mass and individual client representation actions.

5. **OBJECTIVE CLASS DEFINITION**

This Class is (or may be as this Honorable Court determines) defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in this case.

6. **RISK OF PROSECUTING SEPARATE ACTIONS**

The prosecution of separate actions by individual members of the class would create a risk of inconsistent and/or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party(ies) opposing the class, or adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Lastly, the Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable. Individual litigation by each of the class members, besides being unduly burdensome to the Plaintiffs, would also be unduly burdensome and expensive to the court system, as well as to the Defendants.

**VIII**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ELIAS JORGE "GEORGE" ICTECH-BENDECK prays that a copy of this Petition be served on each Defendant, and that they each be cited to answer same within the delays allowed by law and that, after due proceedings are had, that the class be certified and that appropriate Notice be issued, and that judgment against Defendants be granted in favor of Plaintiff and all those similarly situated be entered in an amount to be determined at trial by the trier of fact reasonable in the premises for injuries, harms, damages, and losses as set forth above, special damages, applicable penalties (if any), costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other

6

further relief as the Court may deem appropriate, just, and proper as the law allows.

Respectfully submitted,

*Liska, Exnicios, & Nungesser*

Val Patrick Exnicios, TA (LA Bar #19563)
**Kelsey L. Zeitzer (LA Bar #37368)**
**Max N. Tobias, Jr. (LA Bar # 12837)**
*Liska, Exnicios & Nungesser*
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937

*FAVRET, DEMAREST, RUSSO,*
*LUTKEWITTE & SCHAUMBURG*
A Professional Law Corporation
**Seth H. Schaumburg, No. 24636**
**Anthony J. Russo, No. 8806**
**Dean J. Favret, No. 20186**
**Angela C. Imbornone, No. 19631**
**Lauren A. Favret, No. 33826**
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone:  (504) 561-1006
Facsimile:  (504) 523-0699

**Douglas Hammel, LA BAR #( 26915)**
Attorney at Law
3129 Bore Street
Metairie, La. 70001
504.304.9952 phone
504.304.9964 fax
*Attorneys for Plaintiff and the Proposed Class*

PLEASE SERVE:

**PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**
Through its Agent
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**WASTE CONNECTIONS, US, INC.**
Via long arm through its Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**IESI LA LANDFILL CORPORATION**
Through its Agent
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

7

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE.

*Lisa M C Reeimui*
DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT

**LOUISIANA REGIONAL LANDFILL COMPANY, INC.**
Through its Agent
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802


**APTIM CORPORATION**
Through its Agent
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**JEFFERSON PARISH**
Through the Parish Attorney
Michael J. Power
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

8

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**ELIAS JORGE "GEORGE"**                           CIVIL ACTION NO.:_____
**ICHTECH-BENDECK,**
    **Plaintiff**

**VERSUS**                                         SECTION:_____

**PROGRESSIVE WASTE SOLUTIONS**
**OF LA, INC., WASTE CONNECTIONS**                 JUDGE: _____
**US, INC., IESI LA LANDFILL**
**CORPORATION, LOUISIANA REGIONAL**
**LANDFILL COMPANY, INC., APTIM**
**CORPORATION, AND PARISH OF**                     MAGISTRATE JUDGE:_____
**JEFFERSON,**
    **Defendants.**

### NOTICE OF REMOVAL
### BY DEFENDANT WASTE CONNECTIONS US, INC.

Defendant Waste Connections US, Inc., hereby removes Case No. 785-955 from the 24th

Judicial District Court for the Parish of Jefferson, State of Louisiana, Division H, to the United

States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §§ 1332, 1441,

1446, and 1453, on the basis of diversity jurisdiction under the Class Action Fairness Act of

2005 ("CAFA"), and as grounds for the case's removal state the following.

    1.    On July 25, 2018, the Plaintiff filed a Class Action Petition for Damages

("Complaint") in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana,

Division H, styled *Elias Jorge "George" Ictech-Bendeck, v. Progressive Waste Solutions of LA,*

*Inc., Waste Connections US, Inc., IESI LA Landfill Corporation, Louisiana Regional Landfill*

*Company, Inc., Aptim Corporation, and Parish of Jefferson,* Case No. 785955.

2.      Defendant Waste Connections US, Inc. was served on July 30, 2018.  This Notice

of Removal is timely under 28 U.S.C. § 1446(b).

3.      Under 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served

upon Defendants are attached as Exhibit A.

4.      This Court has subject matter jurisdiction over Plaintiff's claims under CAFA.

Original jurisdiction in this Court exists under CAFA if the litigation is a "class action" as

defined by CAFA, "the matter in controversy exceeds the sum or value of $5,000,000," and "any

member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C.

§1332(d)(2).

5.      CAFA defines a "class action" as "any civil action filed under rule 23 of the

Federal Rules of Civil Procedure or similar State statute or rule or judicial procedure authorizing

an action to be brought by 1 or more representative persons as a class action."  28 U.S.C.

§ 1332(d)(1)(B).  Plaintiff specifically alleges his Complaint to be asserted as a class action,

citing Louisiana Code of Civil Procedure Article 591 *et seq*. *See* Ex. A, Compl., § VII. Actions

seeking class treatment under such provision are "class actions" for purposes of CAFA.  *See,*

*e.g.*, *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (complaint filed

under Louisiana Code of Civil Procedure Article 591 is a class action for purposes of CAFA).

6.      Plaintiff is a resident of, and domiciled in, the Parish of Jefferson in the State of

Louisiana. Exhibit A, Compl., at 1. Defendant Waste Connections US, Inc. is a Delaware

corporation with its principal place of business in The Woodlands, Texas. *See* Ex. A, Compl., §

I(2)".[1]  Thus, at least one plaintiff is diverse from at least one defendant in accord with 28 U.S.C.

§ 1332(d).

---

[1] Although Plaintiff correctly identifies Waste Connections US, Inc. as a foreign corporation, Plaintiff mistakenly
claims that Waste Connections US, Inc. is authorized to do business in Louisiana.

2

7.     Plaintiff alleges that he represents and brings this action on behalf of a proposed class consisting of "[a]ll persons domiciled of and/or within the Parish of Jefferson, (except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels), who sustained legally cognizable damages in the form of nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)' acts that caused the emission of noxious odors and gases into and unto their persons and properties." Ex. A, Compl., § VII(a). Plaintiff claims damages in the form of, among other things, "an amount to be determined at trial … reasonable in the premises for injuries, harms, damages, and losses as set forth above, special damages, applicable penalties (if any), costs, expert witness fees, attorneys' fees … [and] all other injuries and damages as shall be proven at trial …." Ex. A, Compl., § VIII. These pleadings implicate the jurisdictional minimum under CAFA.

8.     Original jurisdiction under CAFA exists where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. 1332(d)(2).  In its notice of removal, Defendant "need[s] include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) ("[a] removing defendant can meet its burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone … the court [may] make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim"). The proposed class is undefined but, under the Complaint, may include any person domiciled within Jefferson Parish. Ex. A, Compl. § VII(a). On information and belief, the population of Jefferson Parish is greater than 400,000 people. Plaintiff's prayer for

3

relief on behalf of each member of the proposed class alleges damages that include past, present and future nuisance damages and past, present and future diminution in property value. Plaintiff also seeks special damages, applicable penalties (if any), and expert witness and attorneys' fees. As a result, even a modest alleged damage amount for each proposed class member, plus additional witness and attorneys' fees, would exceed $5,000,000.

9.     For these reasons, the $5,000,000 jurisdictional amount in controversy requirement is satisfied.  28 U.S.C. § 1332(d).

10.     The removal of this action to this Court is proper under 28 U.S.C. § 1441(a) because the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, where this action was originally filed, is within the federal judicial district for the Eastern District of Louisiana.

11.     Defendant respectfully requests that this Court assume jurisdiction over this matter and issue such orders and processes as may be necessary to bring before it all the parties necessary for the trial thereof.

12.     Defendant will file a true and correct copy of this Notice of Removal with the Clerk of the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. Defendant has also served Plaintiff's counsel with a copy of this Notice of Removal.

**WHEREFORE**, Defendant Waste Connections US, Inc. hereby removes Case No. 785-955 from the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Division H, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

4

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC


By:   /s/ David R. Taggart
            David R. Taggart, T.A.
            Louisiana Bar Roll No. 12626

401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
Louisiana Bar Roll No. 33991
John B. Stanton
Louisiana Bar Roll No. 36036
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

Counsel for Defendant Waste Connections US, Inc.

5

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**ELIAS JORGE "GEORGE"**  
**ICHTECH-BENDECK,**  
    **Plaintiff**

**CIVIL ACTION NO.:**_____

**VERSUS**

**SECTION:**_____

**PROGRESSIVE WASTE SOLUTIONS**  
**OF LA, INC., WASTE CONNECTIONS**  
**US, INC., IESI LA LANDFILL**  
**CORPORATION, LOUISIANA REGIONAL**  
**LANDFILL COMPANY, INC., APTIM**  
**CORPORATION, AND PARISH OF**  
**JEFFERSON,**  
    **Defendants.**

**JUDGE:** _____

**MAGISTRATE JUDGE:**_____

### CERTIFICATE OF SERVICE

I hereby certify that I have, on this 17th day of August, 2018, served a copy of the foregoing pleading upon all counsel of record and the parties named herein by either serving the counsel through the Court's ECF system, facsimile transmission, email or by placing same in the U. S. mail, postage prepaid and properly addressed to the following:

Val Patrick Exnicios, TA  
Kelsey L. Zeitzer  
Max N. Tobias, Jr.  
*Liska, Exnicios & Nungesser*  
1515 Poydras Street, Suite 1400  
New Orleans, Louisiana 70112

Seth H. Schaumburg  
Anthony J. Russo  
Dean J. Favret  
Angela C. Imbornone  
Lauren A. Favret  
*Favret, Demarest, Russo, Lutkewitte & Schaumburg*  
1515 Poydras Street, Suite 1400  
New Orleans, Louisiana 70112

6

Douglas Hammel
Attorney at Law
3129 Bore Street
Metairie, Louisiana 70001

Shreveport, Louisiana this 17th day of August, 2018.

_____/s/ David R. Taggart_____
OF COUNSEL

7

$7100
83S

24th JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON
STATE OF LOUISIANA

NO. 786-137

DIVISION N

SAVANNAH THOMPSON

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY f/k/a IESI LA LANDFILL
CORPORATION, WASTE CONNECTIONS BAYOU, INC. f/k/a PROGRESSIVE WASTE
SOLUTIONS OF LA, INC., WASTE CONNECTIONS OF LOUISIANA, INC., APTIM
CORP., AND PARISH OF JEFFERSON

FILED: _____

DEPUTY CLERK

## CLASS ACTION PETITION FOR DAMAGES and INJUNCTIVE RELIEF

The petition of Savannah Thompson, a person of the full age of majority and resident of and domiciled in the Parish of Jefferson, State of Louisiana, individually and on behalf of all other similarly situated, respectfully represent the following:

I.

That made Defendants herein are:

A)    LOUISIANA REGIONAL LANDFILL COMPANY f/k/a IESI LA LANDFILL CORPORATION, a foreign corporation domiciled in Delaware, which at relevant times was and/or is authorized to do and doing business in this Parish and State, which currently and/or at relevant times has maintained, and has, an agent for service in Louisiana.

B)    WASTE CONNECTIONS BAYOU, INC. f/k/a PROGRESSIVE WASTE SOLUTIONS OF LA, INC. & f/k/a IESI LA CORPORATION, a foreign corporation domiciled in Delaware and authorized to do and doing business in this Parish and State, which currently and at relevant times has maintained, and has, an agent for service in Louisiana.

C)    WASTE CONNECTIONS OF LOUISIANA, INC., a foreign corporation domiciled in Delaware and authorized to do and doing business in this Parish and State, which currently and at relevant times has maintained, and has, an agent for service in Louisiana.

D)    APTIM CORP., a foreign corporation domiciled in Delaware and authorized to do and doing business in this Parish and State, which currently and at all relevant times has maintained, and has, an agent for service in Louisiana.

E)    PARISH OF JEFFERSON (JEFFERSON PARISH), a Louisiana municipal parish in the State of Louisiana, which at all pertinent times herein owned the landfill in question, and which maintains the capacity to be sued as a proper party defendant.

1

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

EXHIBIT
C

### CLASS ALLEGATIONS

#### II.

Plaintiff seeks to have this matter proceed as a Class Action pursuant to La. C.C.P. Art. 591, *et seq.* on behalf of a class of plaintiffs similarly situated, as plaintiff herein represents that she has causes of action and damages common to all those similarly situated who incurred damages arising from the noxious emissions from the Jefferson Parish landfill, and/or such acts of negligence, nuisance, trespass and/or other issues as may be proven upon trial.

#### III.

Plaintiffs allege and propose that the class be defined as:

> All persons domiciled of and/or within the Parish of Jefferson on or after August 1, 2017 (except for Defendants' employees and relevant court personnel), who sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in property value resulting from Defendants' acts that caused the emission of noxious odors into and unto their persons and properties.

#### IV.

This action is appropriate for determination through the Louisiana Class Action Procedure (La. C.C.P. Art. 591, *et seq.*) for the following reasons:

1. NUMEROSITY

    The exact number and identities of the class plaintiffs are unknown at this time, but may be ascertained through appropriate discovery; plaintiffs are of information and belief that the class of plaintiffs clearly consists of over a hundred persons presenting a level of numerosity handled through a class action procedure; moreover, upon information and belief, several facts prove that numerosity has been met, including but not limited to the facts that: a) there have already been thousands of complaints made by Jefferson Parish residents relative to the noxious odors at issue emanating from the Jefferson Parish Landfill, b) Jefferson Parish found it necessary to set up a hotline in order to handle the calls from so many people complaining because the noxious odors were so pervasive and affected so many people and properties; and c) on or about July 23, 2018, Jefferson Parish representatives found it necessary to hold a press in order to address the noxious odor problem which is affecting so many Jefferson Parish residents.

2

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

2.     COMMON QUESTIONS OF LAW AND FACT

There are common questions of law and fact applicable to all class members and which predominate over individual questions, which include but are not limited to, whether the damages sustained by class members were a result of the wrongful conduct and negligence of the Defendants, which includes but is not necessarily limited to: a) failing to maintain and/or design the Jefferson Parish Landfill such that noxious odors would not occur; b) failing to maintain and/or design the Jefferson Parish Landfill such that noxious odors would not persist; c) failing to operate the Jefferson Parish Landfill in such a way to prevent the emission of noxious odors; d) failing to maintain, attain, and/or implement measures at the Jefferson Parish Landfill to minimize the existence of liquid runoff; e) failing to timely and/or efficiently correct the emission of noxious odors from the Jefferson Parish Landfill so as to not cause harm to others, and in particular, neighbors;

3.     ADEQUACY OF REPRESENTATION

Plaintiffs will fairly and adequately represent the interests of the class, and the class representatives herein are represented by skilled attorneys who have experience handling state-court class actions, as well as federal mass tort litigations, and who will handle this action in an expeditious and economic manner, all in the best interest of all members of the class;

4.     TYPICALITY

The claims of the class representatives as named herein are typical of the class members she/they seek to represent in that their claims all seek damages arising from the failure on the part of Defendants as alleged herein, and further, the claims of the class representatives are not antagonistic or in conflict with the claims of any putative class members;

5.     OBJECTIVITY

This class may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

3

conclusiveness of any judgment that may be rendered in the case.  It is not necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class;

6.      SUPERIORITY AND PREDOMINANCE

The Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable.  Individual litigation by each of the class members, besides being unduly burdensome to the plaintiffs would also be unduly burdensome and expensive to the court system, as well as the defendants. The prosecution of separate actions by individual members of the class would create a risk of: a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the defendants, and/or b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Additionally, defendants have acted and/or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; and/or questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of this case, including but not necessarily limited to the following: a) the low interest of the members of the class individually controlling the prosecution of separate actions, b) the lack of any prior individual litigation by class members; c) the desirability of concentrating this litigation in this forum; d) the benefits and lack of difficulties in management of this matter as a class action, e) the lack of practical ability of individual class members to pursue their claims without the class action vehicle, and f) the cost, efficiency and other benefits which justify this matter proceeding as a class action.

4

24th E-Filed: 07/30/2016 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

## FACTUAL ALLEGATIONS

### V. DEFENDANT PARTIES

PARISH OF JEFFERSON:

Defendant Jefferson Parish, at all times relevant herein, owned and/or co-operated (and continues to do so) the Jefferson Parish Landfill at issue. And, all times relevant herein, defendant Jefferson Parish was responsible for selecting vendors and contracting with vendors to assist and/or handle the operation of the Jefferson Parish Landfill. The relevant actions and/or inactions (at issue herein) of Defendant Jefferson Parish are equally applicable to all class members.

LOUISIANA REGIONAL LANDFILL COMPANY f/k/a IESI LA LANDFILL CORPORATION:

Defendant Louisiana Regional Landfill Company (LRLC) f/k/a IESI LA Landfill Corporation (IESI) has at least co-operated Phase IV of the Jefferson Parish Landfill since May 2012 (depending upon which corporate name is used), and at least during relevant times at issue herein. The relevant actions and/or inactions (at issue herein) of Defendant LRLC f/k/a IESI are equally applicable to all class members.

WASTE CONNECTIONS BAYOU, INC. f/k/a PROGRESSIVE WASTE SOLUTIONS OF LA, INC.:

Defendant Waste Connections Bayou, Inc., upon information and belief, at relevant times herein is and/or was a controlling "alter ego" and parent corporation of LRLC and IESI, controlling the conduct of LRLC and IESI such that it is liable for their negligent acts. The relevant actions and/or inactions of Defendant are equally applicable to all class members.

WASTE CONNECTIONS OF LOUISIANA, INC.:

Defendant Waste Connections of Louisiana, Inc., upon information and belief, at relevant times herein is and/or was a controlling "alter ego" and parent corporation of LRLC and IESI, controlling the conduct of LRLC and IESI such that it is liable for their negligent acts, and the conduct and status of this defendant is equally applicable to all class members.

APTIM CORPORATION:

Defendant APTIM Corporation, based upon information and belief and at relevant times herein, co-managed and/or co-operated the gas and/or leachate collection system of the Jefferson Parish Landfill that has been identified as a source of the noxious odors and gases improperly emanating from the Jefferson Parish Landfill. The relevant actions and/or inactions (at issue herein) of Defendant APTIM Corporation are equally applicable to all class members.

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

5

## VI.

At relevant times herein, Defendants LRLC and IESI have co-managed and/or co-operated the Jefferson Parish Landfill, and have been paid by Defendant Jefferson Parish to do so pursuant to the terms and conditions of a Contract to Provide Services to Operate, Manage, and Maintain the Jefferson Parish Sanitary Landfill Site between LRLC and Jefferson Parish (the "Landfill Operating Agreement").

## VII.

The Landfill Operating Agreement requires that LRLC and/or IESI handle the bulk of the landfill's operations, including maintenance and correction of and to persistent offsite odors.

## VIII.

On or about August 1, 2017, the Jefferson Parish Landfill began to emit noxious odors into the areas surrounding the Jefferson Parish Landfill, including, but not limited to, the neighborhoods in and around Waggaman, Louisiana, River Ridge, Louisiana, and Harahan Louisiana.

## VIII.

Despite early complaints, as well as many complaints over the past many months, no initial steps were taken by the Defendants to mitigate and/or correct the release of the noxious gasses released from the Jefferson Parish Landfill.

## IX.

The Louisiana Department of Environmental Quality (LDEQ) placed a mobile air monitoring lab in the area for seven days, and subsequently the LDEQ released a report that found higher-than-normal levels of methane and hydrogen sulfide near the landfill.

## X.

In or around June of 2018, the LDEQ issued a report which indicated that a noxious odor plaguing Jefferson Parish neighborhoods could be coming from a Jefferson Parish landfill.

6

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

### XII.

On or about July 23, 2018, Jefferson Parish (JP) President Mike Yenni outlined actions the parish has taken to eliminate noxious odors that JP officials believe are coming from Jefferson Parish's landfill in Waggaman, including declaring the landfill's private operator [LRLC] to be in breach of its contract with JP, and accepting the resignation of the parish's landfill engineer.

### XIII.

On or about July 23, 2018, Jefferson Parish President Mike Yenni was quoted as stating that "properly operated landfills do not (produce) persistent offsite odors, and the corrective actions … are essential." Moreover, on or about the same date (and at the same news conference), Keith Conley (Yenni's chief aid) was quoted as admitting that the Jefferson Parish Landfill was a source of the noxious odors at issue.

### XIV.

On information and belief, LRLC is able to collect only 20 percent of the gases produced by the landfill are being collected by the antiquated leachate collection system, leaving much, if not all, of the rest to escape through the ground and into the air.

### XV.

The noxious odor has been so bad and/or persistent, on or about July 9, Jefferson Parish announced the creation of a hotline to report the stench.

### XVI.

On or about July 9, 2018, in response to various complaints by residents, Jefferson Parish issued a formal news release, which stated in pertinent part as follows:

> Jefferson Parish recognizes there have been odor issues and complaints from residents in the River Ridge, Harahan and Waggaman area located along the river. As Jefferson Parish owns and operates one of the three landfills in Waggaman which services Jefferson Parish residents, we do realize we may be a contributory factor to the odor issue. Jefferson Parish is committed to take all steps necessary to identify the source or sources responsible and mitigate those sources. As of July 2, 2018, Jefferson Parish has advised our contractor to stop taking liquid waste and other material believed to have the potential over time to create an odor. Please report any obnoxious odors to the Jefferson Parish hot line…

7

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

XVII.

In response to the numerous complaints from area residents, Defendant, Jefferson Parish, has represented that it will soon begin pumping the liquid runoff (leachate) from the Jefferson Parish Landfill as a corrective measure, but the damage remains persistent and the action is not yet implemented.

XVIII.

The improper emission of the noxious odors from the Jefferson Parish Landfill into and onto neighboring properties located in Waggaman, Harahan and River Ridge and/or other areas within Jefferson Parish, has occurred for approximately one year, has been pervasive and persistent, continues to occur, and is likely to continue into the foreseeable future such that the emission has been and will be a continuous tort into the foreseeable future. Upon information and belief, the Jefferson Parish Landfill has been and is still being owned and/or co-operated by defendants with inadequate and/or antiquated leachate and/or gas collection systems such that landfill leachates and gases are emanating from the site improperly, and at levels that constitute a nuisance to neighboring persons and properties. Further, upon information and belief, the Jefferson Parish Landfill has been cited by the LDEQ for violation of relevant environmental rules and/or regulations.

XIX.

Defendants actions/inactions are the sole cause of Plaintiff's and numerous other similarly situated persons damages in the following non-exclusive respects:

    a) Failing to maintain and/or design the Jefferson Parish Landfill such that noxious odors would not occur has created a nuisance for neighbors of the Jefferson Parish Lawsuit;

    b) Failing to maintain and/or design the Jefferson Parish Landfill such that noxious odors would not persist has inconvenienced Plaintiffs and class members, which violates;

    c) Failing to operate the Jefferson Parish Landfill in such a way to prevent the emission of noxious odors;

8

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

d) Failing to maintain, attain, and/or implement measures at the Jefferson Parish Landfill to minimize the existence of liquid runoff;

e) Failing to timely and/or efficiently correct the emission of noxious odors from the Jefferson Parish Landfill so as to not cause harm to others, and in particular, neighbors;

f) Other action/inaction in violation of industry standards and/or in violation of the laws, rules, regulations and/or requirements of Louisiana, the LDEQ and/or Jefferson Parish, including but not limited those actions and/or inactions as outlined herein as well as others which will be proven at the adjudication of this matter.

The conduct of Defendants is equally applicable to all class members. Moreover, Defendants' actions/inactions are violations of La. C.C. arts. 490, 667, 669, 2315, 2316, 2317, 2317.1 and 2322.

XX.

Defendants are in violation of La. C. C. art. 667 and should be permanently enjoined to abate the nuisance described above. Pursuant to Louisiana law, including La. C.C.P. Arts. 3601, *et seq.*, Plaintiff seeks a permanent injunction ordering and enjoining Defendants to abate the nuisance (which includes the emission of noxious odors) caused by the operation of the Jefferson Parish Landfill as outlined herein. Moreover, this nuisance caused by the Jefferson Parish Landfill is depriving Plaintiff and the class members of the liberty of enjoying their homes and/or property, and/or which is causing damages to Plaintiff and the class, in violation of La. C. C. art. 667. Accordingly, Plaintiff hereby seeks this injunction in order to preventing Defendants from causing the emission of noxious odors from the Jefferson Parish Landfill, and to take all reasonable and necessary actions required in order to do same.

XXI.

Plaintiff and others similarly situated have sustained damages as a result of Defendants' actions/inactions and/or breach of duties that have resulted in legally cognizable damages. For a period of approximately one year, since approximately August 1, 2017, noxious odors have been emitted from the Jefferson Parish Landfill into and onto the persons and properties of neighboring communities, including into and onto Plaintiff and Plaintiff's immovable property (as well as into and onto class members and class members' immovable property in Waggaman, Harahan, River

9

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

Ridge and/or other areas in Jefferson Parish). The emissions of these noxious odors from the Jefferson Parish Landfill, which are believed to consist primarily of hydrogen sulfide and methane gases, have caused significant and recurring interference with the peaceful enjoyment of Plaintiff's property (as well as class members' properties). Accordingly, Plaintiff seek damages (on behalf of herself and the class members she represents), which damages include:

    a) Past, present and future nuisance damages;

    b) Past, present and future trespass damages;

    c) Past, present and future diminution in property value.

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, Petitioner prays:

    a) That the Defendants be served with a copy of this Petition and be cited to appear and answer same;

    b) That after due proceedings had, that this action be certified as a class action pursuant to the provisions of La. C.C. art. 591 *et seq.*, in the respect alleged herein above, for the purposes of determining the common issues of liability for compensatory damages, as well as other common issues;

    c) That upon certification of the class action, the court call for the formulation of a suitable management plan pursuant to Louisiana law;

    d) That after due proceedings had, there be a judgment in this matter in favor of Plaintiff and the class and against Defendants, declaring that the Defendants are liable to Plaintiff and all members of the class for all damages arising from the emission of noxious odors from the Jefferson Parish Landfill;

    e) That the rights of the members of the class to establish their entitlement to compensatory damages, and the amount thereof, be reserved for determination in their individual actions when appropriate;

    f) That the Defendants be permanently enjoined to abate the nuisance and trespass; and

    g) That Plaintiff recover the costs for prosecution of this class action, and for interest on all damages form the date of judicial demand until paid.

<div align="center">

10

</div>

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

Respectfully submitted,

IRPINO AVIN & HAWKINS

Anthony D. Irpino, La. Bar # 24727
Louise C. Higgins, La. Bar # 31780
Pearl Robertson, La. Bar # 34060
2216 Magazine Street
New Orleans, Louisiana 70130
Ph.   (504) 525-1500
Fax.  (504) 525-1501
airpino@irpinolaw.com
lhiggins@irpinolaw.com
probertson@irpinolaw.com

**PLEASE SERVE:**

LOUISIANA REGIONAL LANDFILL COMPANY, INC.
Through its Agent for Service:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS, BAYOU, INC:
Through its Agent for Service:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS OF LOUISIANA, INC.
Through its Agent for Service:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

APTIM CORPORATION
Through its Agent for Service:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

PARISH OF JEFFERSON
Through its Agent for Service:
Michael J. Power
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

24th E-Filed: 07/30/2018 16:52:49 Case: 786137 Div:N Atty:024727 ANTHONY D IRPINO

11



JON A. GEGENHEIMER
## JEFFERSON PARISH CLERK OF COURT
*24th Judicial District Court Civil Records Department*
P.O. BOX 10 • GRETNA LA 70054-0010 • (504) 364-3740

## CIVIL RECORDS TELEPHONE CALL LOG

### Call 1

Case No: ___786-137___ Div. " N " _____ 7/31, 20 18

Deputy Clerk: s/ SROUSSEL _____ Time: 8:45

Deputy Clerk Spoke To: CELESTE - PARALEGAL _____ of

In Re: SERVICE CHECK _____

Message to Provide if Attorney/Litigant/Designee Returns Call:

EBR - $139.44
MAILING CHECK     SENT THRU TO ISSUING 7/31/18

### Call 2

Case No: ___786-137___ Div. " N " _____ 20 18

Deputy Clerk: s/ SROUSSEL _____ Time: _____

Deputy Clerk Spoke To: _____ of

In Re: _____

Message to Provide if Attorney/Litigant/Designee Returns Call:

### Call 3

Case No: ___786-137___ Div. " N " _____ 20 18

Deputy Clerk: s/ SROUSSEL _____ Time: _____

Deputy Clerk Spoke To: _____ of

In Re: _____

Message to Provide if Attorney/Litigant/Designee Returns Call:

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SAVANNAH THOMPSON** | **CIVIL ACTION NO.:**_____ |
|     **Plaintiff** | |
| | |
| **VERSUS** | **SECTION:**_____ |
| | |
| **LOUISIANA REGIONAL LANDFILL** | |
| **COMPANY, F/K/A IESI LA LANDFILL** | |
| **CORPORATION, WASTE CONNECTIONS** | **JUDGE:**_____ |
| **BAYOU, INC. F/K/A PROGRESSIVE** | |
| **WASTE SOLUTIONS OF LA, INC.,** | |
| **WASTE CONNECTIONS OF LOUISIANA,** | |
| **INC., APTIM CORPORATION, AND** | **MAGISTRATE JUDGE:**_____ |
| **PARISH OF JEFFERSON,** | |
|     **Defendants.** | |

### NOTICE OF REMOVAL

Defendants Louisiana Regional Landfill Company,[1] Waste Connections of Louisiana, Inc., and Waste Connections Bayou, Inc.[2] hereby remove Case No. 786-137 from the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Division N, to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, on the basis of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), and as grounds for the case's removal state the following.

    1.     On July 30, 2018, the Plaintiff filed a Class Action Petition for Damages and Injunctive Relief ("Complaint") in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Division N, styled *Savannah Thompson v. Louisiana Regional Landfill Company f/k/a IESI LA Landfill Corporation, Waste Connections Bayou, Inc. f/k/a Progressive Waste Solutions of LA, Inc., Aptim Corporation, and Parish of Jefferson,* Docket No. 786-137.

---

[1] f/k/a IESI LA Landfill Corporation.
[2] f/k/a Progressive Waste Solutions of LA, Inc. & f/k/a IESI LA Corporation.

2.      Louisiana Regional Landfill Company was served on August 21, 2018. Waste Connections of Louisiana, Inc. and Waste Connections Bayou, Inc., were served on August 20, 2018. This Notice of Removal is timely under 28 U.S.C. § 1446(b).

3.      Under 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants are attached as Exhibit A.

4.      This Court has subject matter jurisdiction over Plaintiff's claims under CAFA. Original jurisdiction in this Court exists under CAFA if the litigation is a "class action" as defined by CAFA, "the matter in controversy exceeds the sum or value of $5,000,000," and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §1332(d)(2).

5.      CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule or judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Plaintiff specifically alleges her Complaint to be asserted as a class action, citing Louisiana Code of Civil Procedure Article 591 *et seq. See* Ex. A, Compl., § II. Actions seeking class treatment under such provision are "class actions" for purposes of CAFA. *See, e.g., In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (complaint filed under Louisiana Code of Civil Procedure Article 591 is a class action for purposes of CAFA).

6.      Plaintiff is a resident of, and domiciled in, the Parish of Jefferson in the State of Louisiana. Exhibit A, Compl., p. 1. Defendants Louisiana Regional Landfill Company, Waste Connections of Louisiana, Inc., and Waste Connections Bayou, Inc. are Delaware corporations with principal places of business in The Woodlands, Texas. *See* Ex. A, Compl., § V. Thus, at least one plaintiff is diverse from at least one defendant in accord with 28 U.S.C. § 1332(d).

2

7.     Plaintiff alleges that she represents and brings this action on behalf of a proposed class consisting of "[a]ll persons domiciled of and/or within the Parish of Jefferson on or after August 1, 2017 (except for Defendants' employees and relevant court personnel) who sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in property value resulting from Defendants' acts that caused the emission of noxious odors into and unto their persons and properties." Ex. A, Compl., § III. Plaintiff seeks to hold Defendants liable "for all damages arising from the emission of noxious odors from the Jefferson Parish Landfill" including the costs for prosecution of the action and interest. Ex. A, Compl., p. 10. These pleadings implicate the jurisdictional minimum under CAFA.

8.     Original jurisdiction under CAFA exists where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. 1332(d)(2).  In its notice of removal, Defendants "need[s] include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) ("[a] removing defendant can meet its burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone … the court [may] make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim"). The proposed class is undefined but, under the Complaint, may include any person domiciled within Jefferson Parish. Ex. A, Compl. § III. On information and belief, the population of Jefferson Parish is greater than 400,000 people. Plaintiff's prayer for relief on behalf of each member of the proposed class alleges damages that include past, present and future nuisance damages and past, present and future diminution in property value. Plaintiff also

3

seeks special damages, applicable penalties (if any), and expert witness and attorneys' fees. As a result, even a modest alleged damage amount for each proposed class member, plus additional witness and attorneys' fees, would exceed $5,000,000.

9.    For these reasons, the $5,000,000 jurisdictional amount in controversy requirement is satisfied. 28 U.S.C. § 1332(d).

10.    The removal of this action to this Court is proper under 28 U.S.C. § 1441(a) because the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, where this action was originally filed, is within the federal judicial district for the Eastern District of Louisiana.

11.    Defendants respectfully request that this Court assume jurisdiction over this matter and issue such orders and processes as may be necessary to bring before it all the parties necessary for the trial thereof.

12.    Defendants will file a true and correct copy of this Notice of Removal with the Clerk of the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. Defendants have also served Plaintiff's counsel with a copy of this Notice of Removal.

**WHEREFORE**, Defendants Louisiana Regional Landfill Company, Waste Connections of Louisiana, Inc., and Waste Connections Bayou, Inc. hereby remove Case No. 786-137 from the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Division N, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

**[Signatures on following page.]**

4

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC


By:   /s/Michael C. Mims
        David R. Taggart, T.A.
        Louisiana Bar Roll No. 12626

401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
Louisiana Bar Roll No. 33991
John B. Stanton
Louisiana Bar Roll No. 36036
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

Counsel for Defendants Louisiana Regional
Landfill Company, Waste Connections of
Louisiana, Inc., and Waste Connections Bayou, Inc.

5

## CERTIFICATE OF SERVICE

I hereby certify that I have, on this 23rd day of August, 2018, served a copy of the foregoing pleading upon all counsel of record and the parties named herein by either serving the counsel through the Court's ECF system, facsimile transmission, email or by placing same in the U. S. mail, postage prepaid and properly addressed to the following:

Anthony D. Irpino
Louise C. Higgins
Pearl Robertson
Irpino Avin & Hawkins
2216 Magazine Street
New Orleans, Louisiana 70130

New Orleans, Louisiana this 23rd day of August, 2018.

$$\underline{\hspace{2cm}\text{/s/ Michael C. Mims}\hspace{2cm}}$$
OF COUNSEL

6

$850
835
$139.44



### 24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

NO. 760.541                                              DIVISION: "   "

### LARRY BERNARD, SR. and MONA BERNARD

### VERSUS

### PROGRESSIVE WASTE SOLUTIONS OF LA, INC., WASTE CONNECTIONS, US, INC.,IESA LA LANDFILL CORPORATION, LOUISIANA REGIONAL LANDFILL COMPANY INC., APTIM CORPORATION, AND PARISH OF JEFFERSON

FILED:_____          _____
                                                    DEPUTY CLERK

### CLASS ACTION PETITION FOR DAMAGES

The petition of LARRY BERNARD, SR. and MONA BERNARD, persons of the full age

of majority and residents of and domiciled in the Parish of Jefferson, State of Louisiana, on behalf

of themselves and all other similarly situated persons residing in and/or domiciled in the effected

areas of Jefferson Parish, with respect represent that:

I.

Made Defendants in this cause of action are:

1. **PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**, a foreign corporation authorized

to do and doing business in this Parish and State;

2. **WASTE CONNECTIONS, US, INC.**, a foreign corporation authorized to do and doing

business in this Parish and State;

3. **IESA LA LANDFILL CORPORATION**, a foreign corporation authorized to do and

doing business in this Parish and State;

4. **LOUISIANA REGIONAL LANDFILL COMPANY, INC.**, a foreign corporation

authorized to do and doing business in this Parish and State;

5. **APTIM CORPORATION**, a foreign corporation authorized to do and doing business in

this Parish and State;

6. **PARISH OF JEFFERSON**, a Louisiana municipal parish in the State of Louisiana.

24th E-Filed: 08/10/2018 11:54:31 Case: 786541 Div:H Atty:026800 BRUCE C BETZER



EXHIBIT

D

<p style="text-align:center">II.</p>

Defendants are jointly, severally and in solido indebted unto your Petitioners and all those similarly situated, for general and special damages suffered by Petitioners and all those similarly situated in a sum sufficient to fully compensate him/her/them for all of his/her/their damages, together with legal interest, and for all costs, for this, to-wit:

<p style="text-align:center">III.</p>

<p style="text-align:center">UNDERLYING FACTS</p>

On or about August 1, 2017 the purported "sanitary solid waste" facility/landfill owned by Defendant Jefferson Parish and known as the Jefferson Parish landfill (hereinafter JP Landfill) that is located in Waggaman, LA began to emit noxious odors, believed to consist primarily of methane and hydrogen sulfide gases, into areas surrounding the JP Landfill. The surrounding cities, including but not limited to Waggaman, LA, River Ridge, LA, Harahan, LA, and Kenner, LA, experienced said noxious odors on various days and at various times of the day and night depending upon the then prevailing wind direction crossing over and/or otherwise emanating from the site of the JP Landfill. The emission of said noxious odors continue to date of filing and began several months ago, and are asserted to likely continue into the foreseeable future such that the emission has been and will be a continuous tort into the foreseeable future.

<p style="text-align:center">IV.</p>

<p style="text-align:center">DEFENDANT PARTIES</p>

The JP Landfill is, and/or was at relevant times, owned by Defendant JEFFERSON PARISH and is, and/or was at all relevant times, being operated pursuant to contracts issued by Defendant JEFFERSON PARISH to Defendants IESI LA LANDFILL CORPORATION, (hereinafter IESI-LA) a wholly owned subsidiary of Defendant PROGRESSIVE WASTE SOLUTIONS OF LA, INC., that was in turn acquired by Defendant WASTE CONNECTIONS, US, INC.

IESI-LA is controlled by its parent corporations PROGRESSIVE WASTE SOLUTIONS, OF LA, INC. and/or WASTE CONNECTIONS, US, INC. and is the "alter ego" of said parent corporation(s) and operates without autonomy and only pursuant to the directions, policies and procedures of its parent corporation(s); as such, said parent corporation(s) are liable for all negligent

24th E-Filed: 08/10/2018 11:54:31 Case: 766541 Div:H Atty:026800 BRUCE C BETZER

and/or otherwise bad acts of its wholly owned subsidiary(ies), IESI-LA. and/or LOUISIANA REGIONAL LANDFILL COMPANY, INC.

IESI operated and managed (and/or mis-managed) the JP landfill from the date of the initial omissions of noxious odors in August, 2017 and it is thus liable for all damages sustained from August 1, 2017 to the date of its corporate name change, to wit: IESI recently changed its corporate name in June of 2018 to LOUISIANA REGIONAL LANDFILL COMPANY, INC. (hereinafter LRLC) and LRLC is the current operator and manager (and/or mis-manager) of the JP Landfill and is thus liable for all damages sustained since its corporate name change to date of just and equitable adjudication, and into such future date as the emissions cease, if ever.

Defendant APTIM CORPORATION, based upon information and belief, manages, or in this case, mis-manages, pursuant to contract and/or subcontract, the gas and/or leachate collection system(s) of JP Landfill that, in addition to the site's liquid industrial waste, residential sewerage, commercial waste, and improperly covered solid waste is at least one "point source" of the noxious odors and gases emanating from the JP landfill.

<div align="center">V.</div>

<div align="center">**PROXIMATE CAUSE AND BAD ACTS**</div>

The sole proximate cause of the above described emanations of noxious odors and gases is and was the strict liability, breach of contractual obligations and/or negligent acts of Defendants, which strict liability, breach of contractual obligation and/or negligence consists more particularly, but not exclusively, of the following:

1.  Violation of Civil Code Articles 667,669, 2315, 2316, 2317, 2317.1, 2322 and applicable environmental rules and regulations promulgated by the State of Louisiana and/or Louisiana Department of Environmental Quality (LDEQ) ;

2.  Failure to properly operate and/or manage a solid waste "sanitary" landfill in a manner that does not cause harm to others, and in particular, to its neighbors;

3.  Failure to take all reasonable action to avoid causing harm as set forth herein;

4.  Failure to prevent the emission of noxious and harmful odors and gases into and onto the persons and properties of the surrounding neighborhoods;

24th E-Filed: 08/10/2018 11:54:31 Case: 786541 Div:H Atty:026800 BRUCE C BETZER

5.      Breach of contractual obligations of which Petitioners and all those similarly situated

are third party beneficiaries of the contract(s) between Defendant Jefferson Parish

and all other Defendants named herein that cause(d) harm to Petitioners and all those

similarly situated that they seek to represent.

VI.

DAMAGES

As a consequence of the acts and/or failures to act and/or breach of duties and/or obligations

and resulting legally cognizable damages, Petitioners and all those similarly situated, sustained

damages as follows:

A.      Past, present and future nuisance damages;

B.      Past, present and future diminution in property value.

VI (a).

ARTICLE 893

Pursuant to La. Code of Civil Procedure Article 893, Petitioners pray and/or assert that the

sum in damages sought by and for any individual Petitioner herein be and is greater than the

jurisdictional amount necessary for trial by jury.

VII.

CLASS ACTION PROCEDURAL PROVISIONS

Petitioners seek to proceed as a Class Action pursuant to Louisiana Code of Civil Procedure

Article 591, et seq., individually and as class representatives on behalf of a class of Plaintiffs

similarly situated but not yet fully identified, as Plaintiffs herein represent that they have sustained

legally cognizable damages common to all those similarly situated who incurred such damages

arising from the direct and proximate result of the wrongful conduct of Defendants as set forth

herein, and/or by those for whom they are legally responsible pursuant to the doctrine of respondeat

superior, employer-employee, master-servant and/or as otherwise authorized by statutory law and/or

jurisprudence.

VII (a)

Petitioners/Plaintiffs propose that the Class be defined as:

24th E-Filed: 08/10/2018 11:54:31 Case: 786541 Div:H Atty:026800 BRUCE C BETZER

"All persons domiciled of and/or within the Parish of Jefferson, (except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels), who sustained legally cognizable damages in the form of nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant( s )' acts that caused the emission of noxious odors and gases into and unto their persons and properties."

<center>VII (b)</center>

This action is appropriate for determination through utilization of the Louisiana class action procedural device, to wit: Louisiana Class Action Procedure Articles (La. C. Civ. P. Art. 591, et seq.) for the following reasons:

1. **NUMEROSITY**

   While the exact number of and identities of the class members are unknown at this time, they may be ascertained through appropriate discovery and Plaintiffs are of the information and belief that the class of Plaintiffs clearly consists of persons presenting a level of numerosity better handled through the class action procedural device;

2. **COMMON QUESTIONS OF LAW AND FACT**

   There are common questions of law and fact applicable to all class members and which predominate over individual questions, which include, but are not limited to: whether the damages were a result of the wrongful conduct of Defendant(s);

3. **TYPICALITY**

   The claims of the class representatives as named herein are typical of the class members they seeks to represent and the defenses of Defendants are typical as to the Plaintiffs and class members in that they all seek damages arising from the wrongful conduct of Defendants as alleged herein;

4. **ADEQUACY OF REPRESENTATION**

   Plaintiffs will fairly and adequately represent the interests of the class, and the class representatives herein are represented by skilled attorneys who are experienced in the

24th E-Filed: 08/10/2018 11:54:31 Case: 786541 Div:H Atty:026800 BRUCE C BETZER

handling of mass tort class action litigation, and who will handle this action in an expeditious and economical manner, and all in the best interests of all members of the class; further, undersigned Counsel Bruce C. Betzer, Esq. who not only lives in this community, but also has served on several Plaintiff Steering Committees in similar environmental Class Actions, as well as multi-district litigation at a national level; as such, he is highly skilled in the prosecution and management of actions wherein the Court has determined that the class action procedural device is the most appropriate means to manage mass and/or complex litigation, and highly skilled as to the Louisiana Supreme Court's Rules of Professional Conduct applicable to said procedural device and mass and individual client representation actions.

5.   **OBJECTIVE CLASS DEFINITION**

This Class is (or may be as this Honorable Court determines) defined objectively in terms of ascertainable criteria, such that the Court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in this case.

6.   **RISK OF PROSECUTING SEPARATE ACTIONS**

The prosecution of separate actions by individual members of the class would create a risk of inconsistent and/or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party(ies) opposing the class, or adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Lastly, the Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable. Individual litigation by each of the class members, besides being unduly burdensome to the Plaintiffs, would also be unduly burdensome and expensive to the court system, as well as to the Defendants.

24th E-Filed: 08/10/2018 11:54:31 Case: 786541 Div:H Atty:026800 BRUCE C BETZER

VIII

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, LARRY BERNARD, SR. and MONA BERNARD, pray that a copy of this Petition be served on each Defendant, and that they each be cited to answer same within the delays allowed by law and that, after due proceedings are had, that the class be certified and that appropriate Notice be issued, and that judgment against Defendants be granted in favor of Plaintiffs and all those similarly situated be entered in an amount to be determined at trial by the trier of fact reasonable in the premises for injuries, harms, damages, and losses as set forth above, special damages, applicable penalties (if any), costs, expert witness fees, attorneys' fees, filing fees, pre-and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper as the law allows.

Respectfully submitted,



Bruce C. Betzer, Bar No. 26800
Jennifer S. Avallone, Bar No. 35613
*The Law Office of Bruce C. Betzer*
**A Professional Limited Liability Company**
3129 Bore Street
Metairie, Louisiana 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964
*Attorney for Petitioners*

PLEASE SERVE:

PROGRESSIVE WASTE SOLUTIONS OF LA, INC.
Through its Agent
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

WASTE CONNECTIONS, US, INC.
Via long arm through its Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

CK#9058
$139.44
EBR

24th E-Filed: 08/10/2018 11:54:31 Case: 786541 Div:H Atty:026800 BRUCE C BETZER

IESI LA LANDFILL CORPORATION
Through its Agent
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

LOUISIANA REGIONAL LANDFILL COMPANY, INC.
Through its Agent
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

APTIM CORPORATION
Through its Agent
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

JEFFERSON PARISH
Through the Parish Attorney
Michael J. Power
1221 Elmwood Park Blvd.
Suite 701
Jefferson, LA 70123

24th E-Filed: 08/10/2018 11:54:31 Case: 786541 Div:H Atty:026800 BRUCE C BETZER



**JON A. GEGENHEIMER**
## JEFFERSON PARISH CLERK OF COURT
*24ᵗʰ Judicial District Court Civil Records Department*
P.O. BOX 10 • GRETNA LA 70054-0010 • (504) 364-3740

E-mailed att
8-10-18 @
1:02 pm.

## CIVIL RECORDS TELEPHONE CALL LOG

### Call 1

Case No: 780541 Div. "H"          8.10 , 20 18
Deputy Clerk: s/ Dunmuya.          Time: 1:03pm.
Deputy Clerk Spoke To: voicemail.          of
Bruce C. Betzer @ 832-9942
Notes: $139.44 TEBR
- left mess. on voicemail - Ai.

- Rec'd ck 8/14/18 Ai

### Call 2

Case No: _____ Div. "___"          , 20 ___
Deputy Clerk: s/ _____          Time: _____
Deputy Clerk Spoke To: _____          of

Notes: _____

### Call 3

Case No: _____ Div. "___"          , 20 ___
Deputy Clerk: s/ _____          Time: _____
Deputy Clerk Spoke To: _____          of

Notes: _____

**0232**

THE LAW OFFICE OF

# BRUCE C. BETZER

A Professional Limited Liability Company

Bruce C. Betzer
bruce@brucebetzer.com

Telephone: (504) 832-9942
Facsimile: (504) 304-9964

3129 Bore Street
Metairie, Louisiana 70001
www.brucebetzer.com

*Rec'd*

FILED FOR RECORD 08/14/2018 14:32:35
Bridget M. Calongne, DY CLERK
JEFFERSON PARISH, LA

August 13, 2018

Angela P. Ingraffia- *Deputy Clerk of Court*
24th JDC Civil New Suits
Jefferson Parish Clerk of Court
Thomas F. Donelon Courthouse
200 Derbigny St. Ste. 2400
Gretna LA 70053

*EBR ck# 009638*
*$ 139.44*

Re:  Larry Bernard, Sr., et al v. Progressive Waste Solutions of LA, Inc.,
et al
24th JDC; No. 786541; Division: "H"

Dear Ms. Ingraffia:

Please find enclosed my firm's check in the amount of $139.44 for service fees associated with the Petition for Damages that was previously e-filed in this matter. If I can be of further assistance, please do not hesitate to contact my office.

Thank you for your assistance in this matter.

Cordially,

Bruce C. Betzer

BCB/sbl
Enclosures

0233

Rec'd
FILED FOR RECORD 08/14/2018 14:33:09
Bridget M. Calongne, DY CLERK
JEFFERSON PARISH, LA

*The Law Office of Bruce C. Betzer*
Attorney at Law
3129 Bore Street
Metairie, LA 70001

NEW ORLEANS
LA 700
13 AUG
PM 1

NEOPOST    FIRST-CLASS MAIL
08/13/2018
US POSTAGE $000.47°

ZIP 70001
041M10270619



Angela P. Ingraffia- *Deputy Clerk of Court*
24th JDC Civil New Suits
*Jefferson Parish Clerk of Court*
Thomas F. Donelon Courthouse
200 Derbigny St. Ste. 2400
Gretna LA 70053

70053-587500

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LARRY BERNARD, SR. AND** | **CIVIL ACTION NO.:**_____ |
| **MONA BERNARD,** | |
| **Plaintiffs** | |
| | |
| **VERSUS** | **SECTION:**_____ |
| | |
| **PROGRESSIVE WASTE SOLUTIONS OF** | |
| **LA, INC., WASTE CONNECTIONS US, INC.** | |
| **IESA [sic] LA LANDFILL CORPORATION,** | **JUDGE:**_____ |
| **LOUISIANA REGIONAL** | |
| **LANDFILL COMPANY INC., APTIM** | |
| **CORPORATION, AND** | **MAGISTRATE JUDGE:**_____ |
| **PARISH OF JEFFERSON,** | |
| **Defendants.** | |

### NOTICE OF REMOVAL

Defendants Louisiana Regional Landfill Company, Progressive Waste Solutions of LA,

Inc., and IESI LA Landfill Company[1] hereby remove Case No. 786-541 from the 24th Judicial

District Court for the Parish of Jefferson, State of Louisiana, Division H, to the United States

District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §§ 1332, 1441, 1446,

and 1453, on the basis of diversity jurisdiction under the Class Action Fairness Act of 2005

("CAFA"), and as grounds for the case's removal state the following.

    1.     On August 10, 2018, the Plaintiffs filed a Class Action Petition for Damages

("Complaint") in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana,

Division H, styled *Larry Bernard, Sr., and Mona Bernard v. Progressive Waste Solutions of LA,*

---

[1] The caption of Plaintiffs' petition incorrectly names (i) IESI LA Landfill Corporation as IESA LA Landfill Corporation, and (ii) Louisiana Regional Landfill Corporation as Louisiana Regional Landfill Corporation Inc. Further, Progressive Waste Solutions of LA, Inc. and IESI LA Landfill Corporation changed their names to Waste Connections Bayou, Inc. and Louisiana Regional Landfill Company, respectively.

*Inc., Waste Connections US, Inc. IESI LA Landfill Corporation, Louisiana Regional Landfill Company Inc., Aptim Corporation, and Parish of Jefferson,* Docket No. 786-541.

2.    Progressive Waste Solutions of LA, Inc. was served on August 21, 2018. IESI LA Landfill Corporation and Louisiana Regional Landfill Company were served on August 27, 2018. This Notice of Removal is timely under 28 U.S.C. § 1446(b).

3.    Under 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants are attached as Exhibit A.

4.    This Court has subject matter jurisdiction over Plaintiffs' claims under CAFA. Original jurisdiction in this Court exists under CAFA if the litigation is a "class action" as defined by CAFA, "the matter in controversy exceeds the sum or value of $5,000,000," and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §1332(d)(2).

5.    CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule or judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Plaintiffs specifically allege their Complaint to be asserted as a class action, citing Louisiana Code of Civil Procedure Article 591 *et seq. See* Ex. A, Compl., § VII. Actions seeking class treatment under such provision are "class actions" for purposes of CAFA. *See, e.g., In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (complaint filed under Louisiana Code of Civil Procedure Article 591 is a class action for purposes of CAFA).

6.    Plaintiffs are residents of, and domiciled in, the Parish of Jefferson in the State of Louisiana. Exhibit A, Compl., p. 1. Defendants Louisiana Regional Landfill Company, Progressive Waste Solutions of LA, Inc., and IESI LA Landfill Company are Delaware

2

corporations with principal places of business in The Woodlands, Texas. *See* Ex. A, Compl., § II. Thus, at least one plaintiff is diverse from at least one defendant in accord with 28 U.S.C. § 1332(d).

7.      Plaintiffs allege that they represent and bring this action on behalf of a proposed class consisting of "[a]ll persons domiciled of and/or within the Parish of Jefferson on or after August 1, 2017 (except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels), who sustained legally cognizable damages in the form of nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)' acts that caused the emission of noxious odors and gases into and unto their persons and properties." Ex. A, Compl., § VII(a). Plaintiffs seek to hold Defendants liable for all damages arising from the emission of noxious odors from the Jefferson Parish Landfill including the costs for prosecution of the action and interest. Ex. A, Compl., §§ III,VIII. These pleadings implicate the jurisdictional minimum under CAFA.

8.      Original jurisdiction under CAFA exists where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. 1332(d)(2).  In its notice of removal, Defendants "need[s] include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) ("[a] removing defendant can meet its burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone … the court [may] make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim"). The proposed class is undefined but, under the Complaint, may include any person domiciled within Jefferson Parish. Ex. A, Compl. § VII(a). On information and

3

belief, the population of Jefferson Parish is greater than 400,000 people. Plaintiffs' prayer for relief on behalf of each member of the proposed class alleges damages that include past, present and future nuisance damages and past, present and future diminution in property value. Plaintiffs also seek special damages, applicable penalties (if any), and expert witness and attorneys' fees. As a result, even a modest alleged damage amount for each proposed class member, plus additional witness and attorneys' fees, would exceed $5,000,000.

9.    For these reasons, the $5,000,000 jurisdictional amount in controversy requirement is satisfied. 28 U.S.C. § 1332(d).

10.    The removal of this action to this Court is proper under 28 U.S.C. § 1441(a) because the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, where this action was originally filed, is within the federal judicial district for the Eastern District of Louisiana.

11.    Defendants respectfully request that this Court assume jurisdiction over this matter and issue such orders and processes as may be necessary to bring before it all the parties necessary for the trial thereof.

12.    Defendants will file a true and correct copy of this Notice of Removal with the Clerk of the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. Defendants have also served Plaintiffs' counsel with a copy of this Notice of Removal.

**WHEREFORE,** Defendants Louisiana Regional Landfill Company, Progressive Waste Solutions of LA, Inc., and IESI LA Landfill Company hereby remove Case No. 786-541 from the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Division H, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

4

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By:   /s/Michael C. Mims
          David R. Taggart, T.A.
          Louisiana Bar Roll No. 12626

401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
Louisiana Bar Roll No. 33991
John B. Stanton
Louisiana Bar Roll No. 36036
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

Counsel for Defendants Louisiana Regional
Landfill Company, Progressive Waste Solutions of
LA, Inc., and IESI LA Landfill Company

5

**CERTIFICATE OF SERVICE**

I hereby certify that I have, on this 29th day of August, 2018, served a copy of the foregoing pleading upon all counsel of record and the parties named herein by either serving the counsel through the Court's ECF system, facsimile transmission, email or by placing same in the U. S. mail, postage prepaid and properly addressed to the following:

Bruce C. Betzer
Jennifer S. Avallone
The Law Office of Bruce C. Betzer
3129 Bore Street
Metarie, LA 70001

New Orleans, Louisiana this 29th day of August, 2018.

                                 /s/ Michael C. Mims
                                 OF COUNSEL

6





24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

No. 787-081 NICOLE M. LANDRY-BOUDREAUX

DIVISION K

VERSUS

PROGRESSIVE WASTE SOLUTIONS OF LA, INC., WASTE CONNECTIONS, US, INC., IESI LA LANDFILL CORPORATION, LOUISIANA REGIONAL LANDFILL COMPANY, INC. APTIM CORPORATION, AND JEFFERSON PARISH

FILED: _____      _____
                                          DEPUTY CLERK

<u>CLASS ACTION PETITION FOR DAMAGES</u>

The petition of Nicole M. Landry-Boudreaux, a person of the full age of majority and a resident of and domiciled in the Parish of Jefferson, State of Louisiana, on behalf of himself and all other similarly situated persons residing in and/or domiciled in Jefferson Parish, in the area near the Jefferson Parish landfill, herein represent:

I.

Made Defendants herein are:

1. PROGRESSIVE WASTE SOLUTIONS OF LA, INC., a foreign corporation authorized to do and doing business in this Parish and State;

2. WASTE CONNECTIONS, US, INC., a foreign corporation authorized to do and doing business in this Parish and State;

3. IESI LA LANDFILL CORPORATION, a foreign corporation authorized to do and doing business in this Parish and State;

4. LOUISIANA REGIONAL LANDFILL COMPANY, INC., a foreign corporation authorized to do and doing business in this Parish and State;

5. APTIM CORPORATION, a foreign corporation authorized to do and doing business in this Parish and State;

6. JEFFERSON PARISH, a Louisiana municipal parish in the State of Louisiana.

<div style="writing-mode: vertical">24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY jr</div>



EXHIBIT
E

II.

Defendants are jointly, severally and in solido indebted unto Plaintiff and all those similarly situated, for general and special damages suffered, with legal interest and all costs, resulting from the improper operation of the Jefferson Parish landfill. At all times pertinent the Jefferson Parish Landfill referred to in the instant litigation is located in Waggaman, Louisiana.

III.

Under information and belief that the sanitary solid waste landfill owned and operated by the Defendants began to emit noxious odors. Said odors are believed to consist primarily of methane and hydrogen sulfide gases. Said odors are being emitted into areas surrounding the Jefferson Parish landfill. The noxious odors continue to date and are likely to continue into the future such that the emissions have been and will continue to be a continuous tort.

Plaintiffs allege that the noxious odors have emanated from the landfill since August of 2017 and further allege that discovery may reveal that the emissions started before the aforementioned date.

IV.

The JP Landfill is owned by Defendant JEFFERSON PARISH and is, and/or was at all relevant times, being operated pursuant to contracts issued by JEFFERSON PARISH to Defendants IESI LA LANDFILL CORPORATION, (hereinafter IESI-LA) a wholly owned subsidiary of Defendant PROGRESSIVE WASTE SOLUTIONS OF LA, INC., that was in turn acquired by Defendant WASTE CONNECTIONS, US, INC.

IESI-LA is controlled by its parent corporations PROGRESSIVE WASTE SOLUTIONS, OF LA, INC. and/or WASTE CONNECTIONS, US, INC. and is the "alter ego" of said parent corporation(s) and operates without autonomy and only pursuant to the directions, policies and procedures of its parent corporation(s); as such, said parent corporation(s) are liable for all negligent and/or otherwise bad acts of its wholly owned subsidiary(ies), IESI-LA. and/or LOUISIANA REGIONAL LANDFILL COMPANY,

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY Jr

INC..

IESI-LA operated and managed the JP landfill from the date of the initial omissions of noxious odors in August of 2017 and it is thus liable for all damages sustained from August of 2017 to the date of its corporate name change, to wit: IESI-LA recently changed its corporate name in June, 2018 to LOUISIANA REGIONAL LAND FILL COMPANY, INC.(hereinafter LRLC) and LRLC is the current operator and manager (and/or mis-manager) of the JP Landfill and is thus liable for all damages sustained since its corporate name change to date of just and equitable adjudication, and into such future date as the emissions cease, if ever.

Defendant APTIM CORPORATION, based upon information and belief manages pursuant to contract and/or subcontract, the gas and/or leachate collection system(s) of JP Landfill that, in addition to the site's liquid industrial waste, residential sewerage, commercial waste, and improperly covered solid waste is at least one "point source" of the noxious odors and gases emanating from the JP landfill.

V.

The sole proximate cause of the above described emanations of noxious odors and gases is and was the strict liability, breach of contractual obligations and/or negligent acts of Defendants, which strict liability, breach of contractual obligations and/or negligence consists more particularly, but not exclusively, of the following:

1. Violation of Civil Code Articles 667, 669, 2315, 2316, 2317, 2317.I, 2322 and applicable environmental rules and regulations promulgated by the State of Louisiana and/or Louisiana Department of Environmental Quality (LDEQ);

2. Violation of rules and regulations promulgated by the Environmental Protection Agency and rules under the Clean Water Act;

3. Failure to properly operate and/or manage a solid waste "sanitary" landfill in a manner that does not cause harm to others, and in particular, to its neighbors;

4. Failure to take all reasonable action to avoid causing harm as set forth herein;

5. Failure to prevent the emission of noxious and harmful odors and gases into and onto

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY Jr

the persons and properties of the surrounding neighborhoods;

6. Breach of contractual obligations of which Plaintiff and all those similarly situated are third party beneficiaries of the contract(s) between Defendant Jefferson Parish and all other Defendants named herein that cause(d) harm to Plaintiff and all those similarly situated that he seeks to represent.

VI.

As a consequence of the acts and/or failures to act and/or breach of duties and/or obligations and resulting legally cognizable damages, Plaintiff and all those similarly situated, sustained damages as follows:

A. Past, present and future nuisance damages;

B. Past, present and future diminution in property value;

C. Bodily injury;

D. Medical bills;

E. Lost wages.

VII.

Pursuant to La. Code of Civil Procedure Article 893, Plaintiff prays and/or asserts that the sum in damages sought by and for any individual Plaintiff herein· be and is greater than the jurisdictional amount necessary for trial by jury.

VIII.

Plaintiff seeks to proceed as a Class Action pursuant to Louisiana Code of Civil Procedure Article 591, et seq., individually and as class representative on behalf of a class of Plaintiffs similarly situated but as yet fully identified, as Plaintiff herein represents that he has sustained legally cognizable damages common to all those similarly situated who, incurred such damages arising from the direct and proximate result of the wrongful conduct of Defendants as set forth herein, and/or by those for whom they are legally responsible pursuant to the doctrine of respondiat superior, employer-employee, master-servant and/or as otherwise authorized by statutory law and/or jurisprudence.

IX.

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY Jr

Petitioner/Plaintiff proposes that the Class be defined as:

"All persons domiciled of and/or within the Parish of Jefferson, (except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels), who sustained legally cognizable damages in the form of personal injury, lost wages, nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)' acts that caused the emission of noxious odors and gases into and unto their persons and properties".

<div align="center">X.</div>

This class action is proper pursuant to La. C. Civil Procedure Article 591. While the exact number of and identities of the class members are unknown at this time, they may be ascertained through appropriate discovery and Plaintiff is of the information and belief that the class of Plaintiffs clearly consists of persons presenting a level of numerosity better handled through the class action procedural device. There are common questions of law and fact applicable to all class members and which predominate over individual questions, which include, but are not limited to: whether the damages were a result of the wrongful conduct of Defendant(s);The claims of the class representative as named herein are typical of the class members he seeks to represent and the defenses of Defendants are typical as to the Plaintiff and class members in that all seek damages arising from the wrongful conduct of Defendants as alleged herein. Plaintiff will fairly and adequately represent the interests of the class, and the class representative herein is represented by skilled attorneys who will handle this action in an expeditious and economical manner, and all in the best interests of all members of the class; The prosecution of separate actions by individual members of the class would create a risk of inconsistent and/or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party(ies) opposing the class, or adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY Jr

interests. Lastly, the Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable. Individual litigation by each of the class members, besides being unduly burdensome to the Plaintiffs, would also be unduly burdensome and expensive to the court system, as well as to the Defendants.

XI.

WHEREFORE, Petitioner prays:

1. That the Defendants be served with a copy of this petition and be cited to appear and answer the same.

2. That after due proceedings had, that this action be certified as a class action pursuant to the provisions of La. C. C. Art. 591 in the respect alleged herein above, for the purposes of determining the common issues of liability, damages and other common issues

3. That upon certification of the class action, the court call for the formulation of a suitable management plan

4. After due proceedings, there be judgment in this matter in favor of petitioners and the class against Defendants, determining that the Defendants are liable to Petitioners and all members of the class for all damages

5. That the rights of the members of the class to establish their entitlement to damages, and the amount thereof, be reserved for determination in their individual actions

6. Petitioners be allowed to recover the costs and interest of prosecution of this class action

Respectfully submitted,

**Edwin M. Shorty, Jr. & Associates**
Edwin M. Shorty, Jr. (LA Bar # 28421)
Dwayne P. Smith (LA Bar #21382)
Hope L. Harper (LA Bar # 33173)
650 Poydras Street, Suite 2515
New Orleans, LA 70112
Telephone: (504) 207-1370
Facsimile: (504) 207-2850

FREDDIE KING, III (LA Bar #33923)
**THE KING LAW FIRM**
300 Huey P. Long Avenue, Suite E
Gretna, LA 70053
Telephone: (504) 982-5464
Facsimile: (504) 617-7755

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY Jr

**PLEASE SERVE:**

**PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**
Through its Agent
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**WASTE CONNECTIONS, US, INC.**
Via long arm through its Agent Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**IESI LA LANDFILL CORPORATION**
Through its Agent Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**LOUISIANA REGIONAL LANDFILL COMPANY, INC.**
Through its Agent Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**APTIM CORPORATION**
Through its Agent
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**JEFFERSON PARISH**
Through the Parish Attorney
Michael J. Power
1221 Elmwood Park Blvd., Suite-701
Jefferson, LA 70123

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY Jr



**JON A. GEGENHEIMER**

# JEFFERSON PARISH CLERK OF COURT

*24th Judicial District Court Civil Records Department*
P.O. BOX 10 • GRETNA LA 70054-0010 • (504) 364-3740

## CIVIL RECORDS TELEPHONE CALL LOG

### Call 1

Case No: 787-081 Div. " K " 8-28 , 20 18
Deputy Clerk: s/ S. MAUTERER Time: 8:51 AM
Deputy Clerk Spoke To: Rebecca of

Notes: $139.44 EBR

Pending check

### Call 2

Case No: _____ Div. " _ " _____ , 20 ___
Deputy Clerk: s/ S. MAUTERER Time: _____
Deputy Clerk Spoke To: _____ of

Notes:

### Call 3

Case No: _____ Div. " _ " _____ , 20 ___
Deputy Clerk: s/ S. MAUTERER Time: _____
Deputy Clerk Spoke To: _____ of

Notes:

FILED FOR RECORD 09/05/2018 09:15:45
Jessica B. Slade, DY CLERK
JEFFERSON PAREH, LA

# EDWIN M. SHORTY, JR. & ASSOCIATES

## A PROFESSIONAL LAW CORPORATION
ATTORNEYS AND COUNSELORS AT LAW
650 POYDRAS STREET, SUITE 2515
NEW ORLEANS, LOUISIANA 70130
WWW.ESHORTYLAWOFFICE.COM

EDWIN M. SHORTY, JR.
NATHAN M. CHIANTELLA
DWAYNE P. SMITH, *Of Counsel*

TELEPHONE: (504) 207-1370
FACSIMILE:  (504) 207-0850

WRITER'S E-MAIL ADDRESS:
nthomas@eshortylawoffice.com

August 31, 2018

*Via First Class U. S. Mail*
Jefferson Parish Clerk of Court
P.O. Box 10
Gretna, Louisiana 70054-0010

      RE:   Nicole M. Landry-Boudreaux versus Progressive Waste Solutions, et al
            24th Judicial District Court No. 787-081, Division "K"

Dear Sir or Madam:

     Enclosed, please find check number 3117 in the amount of **One Hundred Thirty-Nine Dollars and 44/100 ($139.44)** to the East Baton Rouge Sheriff's Office, which represents payment for service of the *Petition for Damages* filed in the above referenced matter. Upon receipt and review of this correspondence, please do not hesitate to contact me if you have any questions.

     With kindest regards, I remain

               Very truly yours,

               Rebecca B McDonald

               Rebecca B. McDonald
               Paralegal

/rm
Enclosures

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NICHOLE M. LANDRY-BOUDREAUX<br>    **Plaintiff** | CIVIL ACTION NO.:_____ |
| | |
| **VERSUS** | SECTION:_____ |
| | |
| **PROGRESSIVE WASTE SOLUTIONS OF<br>LA, INC., WASTE CONNECTIONS US, INC.<br>IESI LA LANDFILL CORPORATION,<br>LOUISIANA REGIONAL<br>LANDFILL COMPANY INC., APTIM<br>CORPORATION, AND<br>JEFFERSON PARISH,<br>    Defendants.** | JUDGE:_____<br><br>MAGISTRATE JUDGE:_____ |

### <u>NOTICE OF REMOVAL</u>

Defendants Waste Connections US, Inc., Progressive Waste Solutions of LA, Inc., IESI LA Landfill Corporation, and Louisiana Regional Landfill Company[1] ("Waste Connections entities") hereby remove Case No. 787-081 from the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Division K, to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, on the basis of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), and as grounds for the case's removal state the following.

      1.      On August 27, 2018, the Plaintiff filed a Class Action Petition for Damages ("Complaint") in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Division K, styled *Nicole M. Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc., Waste Connections, US, Inc., IESI LA Landfill Corporation, Louisiana Regional Landfill Company, Inc., Aptim Corporation, and Jefferson Parish,* Docket No. 787-081.

---

[1] Incorrectly named in the petition as Louisiana Regional Landfill Company, Inc.

2.      Waste Connections US, Inc. was served on September 25, 2018. Progressive Waste Solutions of LA, Inc. was served on October 2, 2018.  Louisiana Regional Landfill Company and IESI LA Landfill Corporation were both served on October 4, 2018.  This Notice of Removal is timely under 28 U.S.C. § 1446(b).

3.      Under 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant Waste Connections US, Inc. are attached as Exhibit A.

4.      This Court has subject matter jurisdiction over Plaintiff's claims under CAFA. Original jurisdiction in this Court exists under CAFA if the litigation is a "class action" as defined by CAFA, "the matter in controversy exceeds the sum or value of $5,000,000," and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §1332(d)(2).

5.      CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule or judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Plaintiff specifically alleges the Complaint to be asserted as a class action, citing Louisiana Code of Civil Procedure Article 591 *et seq. See* Ex. A, Compl., § VIII. Actions seeking class treatment under such provision are "class actions" for purposes of CAFA.  *See, e.g., In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 705 (5th Cir. 2008) (complaint filed under Louisiana Code of Civil Procedure Article 591 is a class action for purposes of CAFA).

6.      Plaintiff is a resident of, and domiciled in, the Parish of Jefferson in the State of Louisiana. Exhibit A, Compl., p. 1. Defendants Waste Connections US, Inc., Louisiana Regional Landfill Company, Progressive Waste Solutions of LA, Inc., and IESI LA Landfill Company are Delaware corporations with principal places of business in The Woodlands, Texas. *See* Ex. A,

2

Compl., § I. Thus, plaintiff is diverse from at least one Defendant in accord with 28 U.S.C. § 1332(d).

7.     Plaintiff alleges that she represents and bring this action on behalf of a proposed class consisting of "[a]ll persons domiciled of and/or within the Parish of Jefferson (except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels), who sustained legally cognizable damages in the form of personal injury, lost wages, nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)' acts that caused the emission of noxious odors and gases into and unto their persons and properties." Ex. A, Compl., § IX. Plaintiff seeks to hold Defendants liable for all damages arising from the emission of noxious odors from the Jefferson Parish Landfill including the costs for prosecution of the action and interest. Ex. A, Compl., § XI. These pleadings implicate the jurisdictional minimum under CAFA.

8.     Original jurisdiction under CAFA exists where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. 1332(d)(2).  In its notice of removal, Defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015) ("[a] removing defendant can meet its burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone … the court [may] make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim"). The proposed class is undefined but, under the Complaint, may include any person domiciled within Jefferson Parish. Ex. A, Compl. § IX. On information and belief,

3

the population of Jefferson Parish is greater than 400,000 people. Plaintiff's prayer for relief on behalf of each member of the proposed class alleges damages that include past, present and future nuisance damages and past, present and future diminution in property value. Plaintiff also seeks special damages, applicable penalties (if any), and expert witness and attorneys' fees. As a result, even a modest alleged damage amount for each proposed class member, plus additional witness and attorneys' fees, would exceed $5,000,000.

9.      For these reasons, the $5,000,000 jurisdictional amount in controversy requirement is satisfied. 28 U.S.C. § 1332(d).

10.      The removal of this action to this Court is proper under 28 U.S.C. § 1441(a) because the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, where this action was originally filed, is within the federal judicial district for the Eastern District of Louisiana.

11.      Defendants respectfully request that this Court assume jurisdiction over this matter and issue such orders and processes as may be necessary to bring before it all the parties necessary for the trial thereof.

12.      Defendant will file a true and correct copy of this Notice of Removal with the Clerk of the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. Defendant has also served Plaintiff's counsel with a copy of this Notice of Removal.

**WHEREFORE**, Defendant Waste Connections US, Inc., hereby removes Case No. 787-081 from the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Division K, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

4

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By:   /s/ David R. Taggart
      David R. Taggart, T.A.
      Louisiana Bar Roll No. 12626

401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
Louisiana Bar Roll No. 33991
John B. Stanton
Louisiana Bar Roll No. 36036
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

Counsel for Defendant Waste Connections US, Inc.,
Progressive Waste Solutions of LA, Inc., IESI LA
Landfill Corporation and Louisiana Regional
Landfill Company

5

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have, on this 5th day of October, 2018, served a copy of the foregoing pleading upon all counsel of record and the parties named herein by either serving the counsel through the Court's ECF system, facsimile transmission, email or by placing same in the U. S. mail, postage prepaid and properly addressed to the following:

Edwin M. Shorty, Jr.
Dwayne P. Smith
Hope L. Harper
Edwin M. Shorty, Jr. & Associates
650 Poydras Street, Suite 2515
New Orleans, LA 70112

Freddie King, III
The King Law Firm
300 Huey P. Long Avenue, Suite E
Gretna, LA 70053

Shreveport, Louisiana this 5thday of October, 2018.


_____/s/ David R. Taggart_____
OF COUNSEL

6

**2:18-cv-07889-SM-MBN** Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc. et al
Susie Morgan, presiding
Michael North, referral
**Date filed:** 08/17/2018
**Date of last filing:** 10/31/2018

# Parties

**Aptim Corp**
*Added: 08/17/2018*
*(Defendant)*

represented
by

**William A. Barousse**
Gieger, Laborde &
Laperouse, LLC (New
Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
504-561-1011 (fax)
wbarousse@glllaw.com
*Assigned: 10/09/2018*
*ATTORNEY TO BE*
*NOTICED*

**John Michael DiGiglia**
Gieger, Laborde &
Laperouse, LLC (New
Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
mdigiglia@glllaw.com
*Assigned: 10/09/2018*
*ATTORNEY TO BE*
*NOTICED*

**Ernest Paul Gieger, Jr.**
Gieger, Laborde &
Laperouse, LLC (New
Orleans)
One Shell Square
701 Poydras St.
Suite 4800



EXHIBIT
F-1

New Orleans, LA 70139-4800
504-561-0400
504-561-1011 (fax)
egieger@glllaw.com
*Assigned: 10/09/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Jonathan S. Ord**
Gieger, Laborde &
Laperouse, LLC (New
Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
jord@glllaw.com
*Assigned: 10/09/2018*
*ATTORNEY TO BE*
*NOTICED*

**IESI LA Landfill Corporation**
SEE Louisiana Regional Landfill
Company (name changed per R. Doc.
8)

*Added: 08/17/2018*
*(Defendant)*

**Elias Jorge Ictech-Bendeck**
*Added: 08/17/2018*
*(Plaintiff)*

represented
by

**Val Patrick Exnicios**
Liska, Exnicios & Nungesser
1515 Poydras St.
Suite 1400
New Orleans, LA 70112
504-410-9611
504 410 9937 (fax)
vpexnicios@exnicioslaw.com
*Assigned: 08/17/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Dean Joseph Favret**
Favret, Demarest, Russo &
Lutkewitte
1515 Poydras St.
Suite 1400
New Orleans, LA 70112
(504) 561-1006
dean@favretlaw.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE*
*NOTICED*

**Lauren A Favret**
Favret, Demarest, Russo &
Lutkewitte
1515 Poydras St.
Suite 1400
New Orleans, LA 70112
504-444-3798
lfavret@favretlaw.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE*
*NOTICED*

**Douglas S. Hammel**
Hammel Law Firm, LLC
3129 Bore Street
Metairie, LA 70001
504-832-9942
douglashammel@gmail.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE*
*NOTICED*

**Angela Cecelia Imbornone**
Favret, Demarest, Russo &
Lutkewitte
1515 Poydras St.
Suite 1400
New Orleans, LA 70112
(504) 561-1006
504-523-0699 (fax)
angela@favretlaw.com
*Assigned: 08/17/2018*

*ATTORNEY TO BE
NOTICED*

**Anthony J. Russo**
Favret, Demarest, Russo &
Lutkewitte
1515 Poydras St.
Suite 1400
New Orleans, LA 70112
504-561-1006
trusso@favretlaw.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE
NOTICED*

**Seth H. Schaumburg**
Favret, Demarest, Russo &
Lutkewitte
1515 Poydras St.
Suite 1400
New Orleans, LA 70112
(504) 561-1006
seth@favretlaw.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE
NOTICED*

**Max N. Tobias, Jr.**
Liska, Exnicios & Nungesser
1515 Poydras St.
Suite 1400
New Orleans, LA 70112
504-636-3178
maxtobias504@aol.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE
NOTICED*

**Kelsey Leigh Zeitzer**
Leake & Andersson, LLP
(New Orleans)
Energy Centre
1100 Poydras St.
Suite 1700

New Orleans, LA 70163-1701
504-585-7500
kzeitzer@leakeandersson.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE*
*NOTICED*

**Jefferson Parish**
*Added: 08/17/2018*
*(Defendant)*

represented
by

**William Peter Connick**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
(504) 838-8777
504.838.9903 (fax)
pconnick@connicklaw.com
*Assigned: 08/17/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Michael S. Futrell**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
(504) 681-6663
mfutrell@connicklaw.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE*
*NOTICED*

**Matthew Dara Moghis**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
504-681-6658
moghis@connicklaw.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE*
*NOTICED*

**Louisiana Regional Landfill
Company**

represented
by

**Megan R Brillault**
Beveridge & Diamond (New

Incorrectly named as Louisiana
Regional Landfill Company, Inc. (SEE
R. Doc. 27)

*Added: 10/09/2018*
*(Defendant)*

York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly &
Shea, LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 08/21/2018*
*ATTORNEY TO BE*
*NOTICED*

**Michael G. Murphy**
Beveridge & Diamond (New
York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**John H. Paul**
Beveridge & Diamond (New
York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 09/21/2018*

*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**John B. Stanton**
Bradley, Murchison, Kelly &
Shea, LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 08/21/2018*
*ATTORNEY TO BE*
*NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly &
Shea, LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 08/21/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Louisiana Regional Landfill
Company, Inc.**

Incorrectly named; SEE Louisiana
Regional Landfill Company (per R.
Doc. 27)

*Added: 08/17/2018*
*(Defendant)*

**Progressive Waste Solutions of LA,
Inc.**
SEE Waste Connections Bayou, Inc.
(name changed per R. Doc. 8)

*Added: 08/17/2018*
*(Defendant)*

**Waste Connections Bayou, Inc.**
*Added: 08/21/2018*
*(Defendant)*

represented
by

**Megan R Brillault**
Beveridge & Diamond (New
York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly &
Shea, LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 08/21/2018*
*ATTORNEY TO BE*
*NOTICED*

**Michael G. Murphy**
Beveridge & Diamond (New
York)
477 Madison Avenue

15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**John H. Paul**
Beveridge & Diamond (New
York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**John B. Stanton**
Bradley, Murchison, Kelly &
Shea, LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 08/21/2018*

*ATTORNEY TO BE NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly &
Shea, LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 08/21/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Waste Connections US, Inc**
*Added: 08/17/2018*
*(Defendant)*

represented by

**Megan R Brillault**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly &
Shea, LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 08/17/2018*
*ATTORNEY TO BE NOTICED*

**Michael G. Murphy**
Beveridge & Diamond (New York)

477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**John H. Paul**
Beveridge & Diamond (New
York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 09/21/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**John B. Stanton**
Bradley, Murchison, Kelly &
Shea, LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 08/17/2018*

*ATTORNEY TO BE*
*NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly &
Shea, LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 08/21/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/14/2019 14:49:19 | | | |
| PACER Login: | bm3877:3432789:0 | Client Code: | |
| Description: | Party List | Search Criteria: | 2:18-cv-07889-SM-MBN |
| Billable Pages: | 3 | Cost: | 0.30 |

**2:18-cv-08071-SM-KWR** Thompson v. Louisiana Regional Landfill Company, et al
Susie Morgan, presiding
Karen Wells Roby, referral
**Date filed:** 08/23/2018
**Date of last filing:** 10/31/2018

# Parties

**Aptim Corp**
*Added: 08/23/2018*
*(Defendant)*

represented
by

**William A. Barousse**
Gieger, Laborde & Laperouse, LLC
(New Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
504-561-1011 (fax)
wbarousse@glllaw.com
*Assigned: 10/16/2018*
*ATTORNEY TO BE NOTICED*

**John Michael DiGiglia**
Gieger, Laborde & Laperouse, LLC
(New Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
mdigiglia@glllaw.com
*Assigned: 10/16/2018*
*ATTORNEY TO BE NOTICED*

**Ernest Paul Gieger, Jr.**
Gieger, Laborde & Laperouse, LLC
(New Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
504-561-1011 (fax)
egieger@glllaw.com
*Assigned: 10/16/2018*



EXHIBIT
F-2

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan S. Ord**
Gieger, Laborde & Laperouse, LLC
(New Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
jord@glllaw.com
*Assigned: 10/16/2018*
*ATTORNEY TO BE NOTICED*

**Jefferson Parish**
*Added: 08/23/2018*
*(Defendant)*

represented
by

**William Peter Connick**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
(504) 838-8777
504.838.9903 (fax)
pconnick@connicklaw.com
*Assigned: 10/16/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael S. Futrell**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
(504) 681-6663
mfutrell@connicklaw.com
*Assigned: 10/16/2018*
*ATTORNEY TO BE NOTICED*

**Matthew Dara Moghis**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
504-681-6658
moghis@connicklaw.com

*Assigned: 10/16/2018*
*ATTORNEY TO BE NOTICED*

**Louisiana Regional Landfill**
**Company**
*Added: 08/23/2018*
*(Defendant)*

represented
by

**Megan R Brillault**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly & Shea, LLC
(New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 08/23/2018*
*ATTORNEY TO BE NOTICED*

**Michael G. Murphy**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John H. Paul**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 10/10/2018*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John B. Stanton**
Bradley, Murchison, Kelly & Shea,
LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 08/23/2018*
*ATTORNEY TO BE NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly & Shea,
LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 08/23/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Savannah Thompson**
*Added: 08/23/2018*
*(Plaintiff)*

represented
by

**Louise Crouchet Higgins**
Irpino, Avin & Hawkins (New Orleans)
2216 Magazine Street
New Orleans, LA 70130
504-525-1500
504-525-1501 (fax)

lhiggins@irpinolaw.com
*Assigned: 08/23/2018*
*ATTORNEY TO BE NOTICED*

**Anthony D. Irpino**
Irpino, Avin & Hawkins (New Orleans)
2216 Magazine Street
New Orleans, LA 70130
504-525-1500
airpino@irpinolaw.com
*Assigned: 08/23/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pearl A. Robertson**
Irpino, Avin & Hawkins (New Orleans)
2216 Magazine Street
New Orleans, LA 70130
504-525-1500
probertson@irpinolaw.com
*Assigned: 08/23/2018*
*ATTORNEY TO BE NOTICED*

**Waste Connections Bayou, Inc.**
*Added: 08/23/2018*
*(Defendant)*

represented by

**Megan R Brillault**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly & Shea, LLC
(New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 08/23/2018*
*ATTORNEY TO BE NOTICED*

**Michael G. Murphy**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*


**John H. Paul**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*


**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*


**John B. Stanton**
Bradley, Murchison, Kelly & Shea,
LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 08/23/2018*
*ATTORNEY TO BE NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly & Shea,
LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 08/23/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Waste Connections of
Louisiana, Inc.**
*Added: 08/23/2018*
*(Defendant)*

represented
by

**Megan R Brillault**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly & Shea, LLC
(New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 08/23/2018*
*ATTORNEY TO BE NOTICED*

**Michael G. Murphy**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John H. Paul**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John B. Stanton**
Bradley, Murchison, Kelly & Shea,
LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 08/23/2018*
*ATTORNEY TO BE NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly & Shea,
LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 08/23/2018*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/14/2019 14:51:45 | | | |
| PACER Login: | bm3877:3432789:0 | Client Code: | |
| Description: | Party List | Search Criteria: | 2:18-cv-08071-SM-KWR |
| Billable Pages: | 3 | Cost: | 0.30 |

**2:18-cv-08218-SM-MBN** Bernard et al v. Progressive Waste Solutions of LA, Inc. et al
Susie Morgan, presiding
Michael North, referral
**Date filed:** 08/29/2018
**Date of last filing:** 10/31/2018

# Parties

**Aptim Corp**
*Added: 08/29/2018*
*(Defendant)*

represented
by

**William A. Barousse**
Gieger, Laborde &
Laperouse, LLC (New
Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-
4800
504-561-0400
504-561-1011 (fax)
wbarousse@glllaw.com
*Assigned: 10/16/2018*
*ATTORNEY TO BE*
*NOTICED*

**John Michael DiGiglia**
Gieger, Laborde &
Laperouse, LLC (New
Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-
4800
504-561-0400
mdigiglia@glllaw.com
*Assigned: 10/16/2018*
*ATTORNEY TO BE*
*NOTICED*

**Ernest Paul Gieger, Jr.**
Gieger, Laborde &
Laperouse, LLC (New
Orleans)
One Shell Square

EXHIBIT
F-3

701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
504-561-1011 (fax)
egieger@glllaw.com
*Assigned: 10/16/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan S. Ord**
Gieger, Laborde & Laperouse, LLC (New Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
jord@glllaw.com
*Assigned: 10/16/2018*
*ATTORNEY TO BE NOTICED*

**Larry Bernard, Sr.**
*Added: 08/29/2018*
*(Plaintiff)*

represented by

**Jennifer S Avallone**
Bruce Betzer Law Office, APLC
3129 Bore Street
Metairie, LA 70001
504-832-9942
jennifer@brucebetzer.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE NOTICED*

**Bruce Betzer**
Law Office of Bruce C. Betzer
3129 Bore St.
Metairie, LA 70001
504-832-9942
bruce@brucebetzer.com

*Assigned: 08/29/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Mona Bernard**
*Added: 08/29/2018*
*(Plaintiff)*

represented by

**Jennifer S Avallone**
Bruce Betzer Law Office,
APLC
3129 Bore Street
Metairie, LA 70001
504-832-9942
jennifer@brucebetzer.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE*
*NOTICED*

**Bruce Betzer**
Law Office of Bruce C.
Betzer
3129 Bore St.
Metairie, LA 70001
504-832-9942
bruce@brucebetzer.com
*Assigned: 08/29/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**IESA La Landfill Corporation**
incorrectly named in caption; See IESI LA
Landfill Corporation (per R. Doc. 1)

*Added: 08/29/2018*
*(Defendant)*

**IESI LA Landfill Corporation**
SEE Louisiana Regional Landfill
Company (name changed per R. Doc. 1);
Also, incorrectly named as IESA LA
Landfill Corporation in caption (SEE R.
Doc. 1)

*Added: 08/29/2018*
*(Defendant)*

**Jefferson Parish**
*Added: 08/29/2018*
*(Defendant)*

represented
by

**William Peter Connick**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
(504) 838-8777
504.838.9903 (fax)
pconnick@connicklaw.com
*Assigned: 08/29/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Michael S. Futrell**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
(504) 681-6663
mfutrell@connicklaw.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE*
*NOTICED*

**Matthew Dara Moghis**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
504-681-6658
moghis@connicklaw.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE*
*NOTICED*

**Louisiana Regional Landfill Company**
Incorrectly named as Louisiana Regional
Landfill Company, Inc. (SEE R. Doc. 1)

*Added: 08/29/2018*
*(Defendant)*

represented
by

**Megan R Brillault**
Beveridge & Diamond
(New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 10/10/2018*

*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly
& Shea, LLC (New
Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE*
*NOTICED*

**Michael G. Murphy**
Beveridge & Diamond
(New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**John H. Paul**
Beveridge & Diamond
(New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**James B. Slaughter**

Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-
3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*


**John B. Stanton**
Bradley, Murchison, Kelly
& Shea, LLC (New
Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE*
*NOTICED*


**David R. Taggart**
Bradley, Murchison, Kelly
& Shea, LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 10/04/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Louisiana Regional Landfill Company,
Inc.**
incorrectly named; SEE Louisiana
Regional Landfill Company (per R. Doc.
1)

*Added: 08/29/2018*
*(Defendant)*

**Progressive Waste Solutions of LA, Inc.**
SEE Waste Connections Bayou, Inc.
(name changed per R. Doc. 1)

*Added: 08/29/2018*
*(Defendant)*

**Waste Connections Bayou, Inc.**
*Added: 08/29/2018*
*(Defendant)*

represented by

**Megan R Brillault**
Beveridge & Diamond
(New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly
& Shea, LLC (New
Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE*
*NOTICED*

**Michael G. Murphy**
Beveridge & Diamond
(New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com

*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**John H. Paul**
Beveridge & Diamond
(New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-
3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 10/10/2018*
*PRO HAC VICE*
*ATTORNEY TO BE*
*NOTICED*

**John B. Stanton**
Bradley, Murchison, Kelly
& Shea, LLC (New
Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE*
*NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly
& Shea, LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 10/04/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

**Waste Connections US, Inc**
*Added: 08/29/2018*
*(Defendant)*

represented
by

**Michael C. Mims**
Bradley Murchison Kelly
& Shea, LLC (New
Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE*
*NOTICED*

**John B. Stanton**
Bradley, Murchison, Kelly
& Shea, LLC (New
Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 08/29/2018*
*ATTORNEY TO BE*
*NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly
& Shea, LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101

318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 10/04/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE*
*NOTICED*

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/14/2019 14:52:27 | | | |
| PACER Login: | bm3877:3432789:0 | Client Code: | |
| Description: | Party List | Search Criteria: | 2:18-cv-08218-SM-MBN |
| Billable Pages: | 3 | Cost: | 0.30 |

**2:18-cv-09312-SM-JCW** Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc., et al
Susie Morgan, presiding
Joseph C. Wilkinson, Jr, referral
**Date filed:** 10/05/2018
**Date of last filing:** 11/15/2018

# Parties

**Aptim Corp**
*Added: 10/05/2018*
*(Defendant)*

represented
by

**William A. Barousse**
Gieger, Laborde & Laperouse, LLC
(New Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
504-561-1011 (fax)
wbarousse@glllaw.com
*Assigned: 11/13/2018*
*ATTORNEY TO BE NOTICED*

**John Michael DiGiglia**
Gieger, Laborde & Laperouse, LLC
(New Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
mdigiglia@glllaw.com
*Assigned: 11/13/2018*
*ATTORNEY TO BE NOTICED*

**Ernest Paul Gieger, Jr.**
Gieger, Laborde & Laperouse, LLC
(New Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
504-561-1011 (fax)
egieger@glllaw.com
*Assigned: 11/13/2018*



EXHIBIT
F-4

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan S. Ord**
Gieger, Laborde & Laperouse, LLC
(New Orleans)
One Shell Square
701 Poydras St.
Suite 4800
New Orleans, LA 70139-4800
504-561-0400
jord@glllaw.com
*Assigned: 11/13/2018*
*ATTORNEY TO BE NOTICED*

**IESI LA Landfill Corporation**
SEE Louisiana Regional Landfill
Company (name changed per R.
Doc. 2)

*Added: 10/05/2018*
*(Defendant)*

**Jefferson Parish**
*Added: 10/05/2018*
*(Defendant)*

represented
by

**William Peter Connick**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
(504) 838-8777
504.838.9903 (fax)
pconnick@connicklaw.com
*Assigned: 10/05/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael S. Futrell**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
(504) 681-6663
mfutrell@connicklaw.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**Matthew Dara Moghis**
Connick & Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, LA 70002
504-681-6658
moghis@connicklaw.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**Nicole M. Landry-Boudreaux**
*Added: 10/05/2018*
*(Plaintiff)*

represented
by

**Hope Lynette Harper**
H.L. Harper & Associates, L.L.C.
650 Poydras St
Suite 2515
New Orleans, LA 70130
855-880-4673
504-322-3807 (fax)
hharper@hlharperandassociates.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**Freddie King, III**
King Law Firm, LLC
300 Huey P. Long Ave.
Suite E
Gretna, LA 70053
504-416-0313
504-361-9581 (fax)
freddiekingiii@yahoo.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**Edwin Mark Shorty, Jr.**
Edwin M. Shorty, Jr. & Associates,
APLC
650 Poydras St.
Suite 2515
New Orleans, LA 70130
504-207-1370
504-207-0850 (fax)
eshorty@eshortylawoffice.com
*Assigned: 10/05/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dwayne Paul Smith**
Edwin M. Shorty, Jr. & Associates,
APLC
650 Poydras St.
Suite 2515
New Orleans, LA 70130
504-207-1370
dsmith@eshortylawoffice.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**Louisiana Regional Landfill
Company**
Incorrectly named as Louisiana
Regional Landfill Company, Inc.
(SEE R. Doc. 1)

*Added: 10/05/2018*
*(Defendant)*

represented
by

**Megan R Brillault**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly & Shea,
LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**Michael G. Murphy**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John H. Paul**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John B. Stanton**
Bradley, Murchison, Kelly & Shea,
LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly & Shea,
LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 10/05/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Louisiana Regional Landfill
Company, Inc.**
Incorrectly named; SEE
Louisiana Regional Landfill
Company (per R. Doc. 1)

*Added: 10/05/2018
(Defendant)*

**Progressive Waste Solutions of
LA, Inc.**
SEE Waste Connections Bayou,
Inc. (name changed per R. Doc.
2)

*Added: 10/05/2018
(Defendant)*

**Waste Connections Bayou, Inc.**
*Added: 10/05/2018
(Defendant)*

represented
by

**Megan R Brillault**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly & Shea,
LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**Michael G. Murphy**
Beveridge & Diamond (New York)
477 Madison Avenue

15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John H. Paul**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John B. Stanton**
Bradley, Murchison, Kelly & Shea,
LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**David R. Taggart**
Bradley, Murchison, Kelly & Shea,

LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 10/05/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Waste Connections US, Inc**
*Added: 10/05/2018*
*(Defendant)*

represented
by

**Megan R Brillault**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5414
mbrillault@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael C. Mims**
Bradley Murchison Kelly & Shea,
LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6136
mmims@bradleyfirm.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*

**Michael G. Murphy**
Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5436
mmurphy@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John H. Paul**

Beveridge & Diamond (New York)
477 Madison Avenue
15th Floor
New York, NY 10022
212-702-5456
jpaul@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*


**James B. Slaughter**
Beveridge & Diamond, PC
(Washington)
1350 I St., N.W.
Suite 700
Washington, DC 20008-3311
202-789-6040
jslaughter@bdlaw.com
*Assigned: 11/01/2018*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*


**John B. Stanton**
Bradley, Murchison, Kelly & Shea,
LLC (New Orleans)
1100 Poydras St.
Suite 2700
New Orleans, LA 70163
504-596-6300
jstanton@bradleyfirm.com
*Assigned: 10/05/2018*
*ATTORNEY TO BE NOTICED*


**David R. Taggart**
Bradley, Murchison, Kelly & Shea,
LLC (Shreveport)
401 Edwards Street
Suite 1000
Shreveport, LA 71101
318-227-1131
dtaggart@bradleyfirm.com
*Assigned: 10/05/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/14/2019 14:52:55 | | | |
| PACER Login: | bm3877:3432789:0 | **Client Code:** | |
| **Description:** | Party List | **Search Criteria:** | 2:18-cv-09312-SM-JCW |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

**24th JUDICIAL DISTRICT COUR FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**SUIT NO.: 790-369**                                              **DIVISION: "J"**

**FREDERICK ADDISON, et al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et al.**

**FILED: _____**                     **_____**

                                                                          **DEPUTY CLERK**

**PETITIONERS' OPPOSITION TO WASTE CONNECTION US, INC. AND
JEFFERSON PARISH'S DECLINATORY EXCEPTION OF _LIS PENDENS_ AND
MEMORANDUM IN SUPPORT**

**MAY IT PLEASE THE COURT:**

Petitioners, through undersigned counsel, submit this memorandum in opposition to the
exceptions of _lis pendens_ that have been filed by the defendants, Waste Connections US, Inc.
("Waste Connections") and the Parish of Jefferson (the "Parish").[1]

I.    **INTRODUCTION**

In aid of their efforts to thwart plaintiffs (and, by extension, the public and this Court) from
obtaining important information concerning the full extent of harm caused by their negligent
operation of the Jefferson Parish Landfill, the defendants seek to prevent plaintiffs from
proceeding with this case under the doctrine of _lis pendens_.   The defendants plainly do not want
the full extent of the harm they are causing to be obtained and disclosed for as long as possible.
They oppose plaintiffs' motion for expedited discovery not only on specious scientific grounds,
but also on the erroneous claim that this case may not proceed in light of four putative class action
lawsuits pending in the Eastern District of Louisiana – all of which are in that court at the behest
of the defendants and remain stalled there indefinitely on procedural grounds. All the while, as
alleged in the Petition, plaintiffs continue to be harmed by the noxious gases escaping from the

---

[1]   Waste Connections filed its _lis pendens_ exception, with a supporting memorandum, on December 28, 2018.  More
than two weeks later, on January 15, 2019, Waste Connections filed a second memorandum in support of its exception
– one day before this Opposition was due and only nine days before the January 24, 2019 hearing date set by this
Court. Under Louisiana Uniform District Court Rule 9.9(b), Waste Connections was required to file any supporting
memorandum by no later than January 9, 2019 – fifteen days before the January 24th hearing. Accordingly, petitioners
concurrently are filing an Objection to Waste Connections' untimely January 15 submission. .

Landfill due to the grossly negligent manner in which the defendants have designed, operated and maintained the Landfill.

Under the defendants' misguided view of the law, the named eighty-eight individuals who have chosen to file *this* action are prohibited from doing so; instead, defendants assert, plaintiffs must sit tight and wait for as long as it takes the Eastern District of Louisiana to rule on the jurisdictional issues pending before it. Even after the jurisdictional issues are sorted out, plaintiffs would have to wait for what assuredly will be a long time before any decisions are made as to whether class action status will actually be certified. It is a good bet that defendants, when the time comes, will oppose class certification. And significantly, there is a substantial question whether class actions status will be granted. *See, e.g., Madison v. Chalmette Ref., L.L.C.,* 637 F.3d 551 (5th Cir. 2011); *Robertson v. Monsanto Co.,* 2008 U.S.App. LEXIS 15468** (5th Cir. 2008); *Steering Comm. V. Exxon Mobil Corp.,* 461 F.3d 58 (5th Cir. 2006*); O'Sullivan v. Countrywide Home Loans, Inc.,* 319 F.3d 732 (5th Cir. 2003). *See also, Price v. Martin,* 79 So. 2d 960 (La. Sup. Ct. 2011).

Moreover, while the previously filed lawsuits remain consigned to procedural limbo,[2] plaintiffs here have taken immediate action to press their case on the merits in order to obtain appropriate relief as soon as possible. On December 20, 2018, plaintiffs filed a motion seeking immediate access to the Landfill site in order to collect and obtain important "source emissions" data that would help reveal, for the first time, the full array of toxic chemicals that are contained in the landfill gases, so that petitioners and the public can realistically assess the full range of harm to which they may be exposed as a result of defendants' negligence.[3]

The previously filed putative class actions are all pending in the Eastern District of Louisiana, at the behest of the defendants. Consequently, defendants' *lis pendens* exception is governed by La. C.C.P. art. 532. Article 532 authorizes only a stay of this case, not a dismissal, and the decision whether to stay this action would rest in the Court's sound discretion. Given the

---

[2] Waste Connection notes that none of the plaintiffs in the previously filed cases have sought any discovery to date.

[3] Petitioners' alacrity in pressing this case makes plain that this is not simply a "copycat" of the previously filed lawsuits, as Waste Connections incorrectly asserts. Petitioners allege not only that "odor" has caused "nuisance" type harm, as Waste Connections puts it, but also that numerous toxic chemicals in the Landfill gas may be causing them physical harm. Petition ¶ XV-XVI. That is also why petitioners in this case seek medical monitoring as part of their requested relief.

continuing harm plaintiffs would be forced to suffer, to stay this action pending further proceedings in the federal cases would be fundamentally unfair and unjust to these plaintiffs, and effectively deprive them of their constitutional right of access to the courts. Consequently, the Court should reject defendants' transparent effort to thwart the prompt factual investigation to which plaintiffs are entitled and to delay adjudication of these issues on the merits. It should permit the instant lawsuit to proceed and deny defendants' exception.

## II.  PROCEDURAL AND FACTUAL BACKROUND

Four separate putative class action lawsuits arising from the odors emanating from the Landfill were filed in this Court between July 25, 2018 and August 27, 2018.  *See* Waste Connection's Mem. at 3.  The defendants removed all of those cases to the Eastern District of Louisiana.  Plaintiffs in all four cases moved to remand to state court; the defendants have opposed those motions, contending that all those cases belong in federal court. As of the date of filing this Opposition, the Eastern District has not ruled on the motions for remand.  None of the plaintiffs in those cases have initiated any discovery to date. *Id.*

The eighty-eight individual plaintiffs filed this case on December 13, 2018.  They all reside in Jefferson Parish in communities that lie on both sides of the Mississippi River, including River Ridge, Harahan, Waggaman, Avondale, Kenner and Metairie.  These plaintiffs come from a broad variety of personal backgrounds and walks of life.  They chose to retain undersigned counsel and file this action despite the fact that putative class actions lawsuits had already been initiated.

In the meantime, the four putative class actions remain mired in procedural battles. It is virtually certain that there will be no class certification determinations in those cases for a very long time. Critically, it is highly uncertain whether any class will be certified, and it cannot be assumed that any of these plaintiffs would elect to participate in any of those cases even if a class is certified. Their intent to act outside of any such class designation is evidenced by the fact that they all have chosen to initiate this action.

## III.  ARGUMENT

### A.  Whether to Stay This Case Lies in The Court's Sound Discretion

All four previously filed actions are pending in federal court, as a result of the defendants' actions.  Accordingly, the instant motion is governed by La. C.C.P. art. 532, which provides in pertinent part:

> Art. 532. Motions to stay in suits pending in Louisiana and federal or foreign court
>
> When a suit is brought in a Louisiana court while another is pending in a court of another state or of the United States on the same transaction or occurrence, between the same parties in the same capacities, on motion of the defendant or on its own motion, the court **may** stay all proceedings in the second suit until the first has been discontinued or final judgment has been rendered.

(emphasis added).  The highlighted language establishes that the decision whether to stay litigation rests in the sound discretion of the trial court and cannot be overturned on review "absent a clear abuse of that discretion." *Robbins v. Delta Wire Rope, Inc.*, 196 So. 3d 700, 705 (La. Ct. App. 2016) (citing *Rivers v. Bo Ezernack Hauling Contractor, LLC,* 37 So. 3d 1088, 1090  (La. App. 3 Cir. May 5, 2010).

Further, the Court has *no* authority to dismiss the case under art. 532.  While the defendants make reference to art. 531 (which authorizes dismissal where identical cases are already pending in Louisiana *state* court), that section plainly does not apply as the previously filed cases are pending in federal court.  The defendants cannot have it both ways.  Having chosen to remove the four prior cases to federal court (presumably for their own perceived benefit), defendants cannot simultaneously invoke article 531.

## B.  The Court Should Deny Defendants' Exceptions and Decline to Stay This Case

Under the facts and circumstances presented here, a stay of this case would be highly prejudicial and fundamentally unfair to the plaintiffs.  This case presents well-founded allegations of *continuing* harm caused by the uncontrolled gases that defendants have allowed to be released from the Landfill.  The Parish itself has admitted that the landfill gas collection systems are not adequate – and their own consultant, Carson Environmental Consulting ("CEC"), has published a report documenting numerous deficiencies that require correction and remediation. Petition, ¶ XVII.  Critically, *Parish officials are on record as admitting that the Landfill is a primary source of odors that the surrounding communities have been experiencing; the Commissioner of the Louisiana Department of Environmental Quality has stated there is "no doubt" that the Landfill*

4

*is the primary cause of the odors; and officials from the Department of Health have publicly cautioned residents to vacate the area when they experience these odors.* Petition ¶¶ X-XIII and XIX. The defendants' irresponsible position that sufficient information concerning the Landfill gases has already been collected to ensure an adequate understanding of the resulting public health risks,[4] only serves to underscore how important it is that plaintiffs' experts be permitted prompt access to the Landfill site to conduct their own sampling and analyses.[5] Defendants cannot explain why it would be fair or appropriate to require these plaintiffs – who have chosen to initiate this litigation notwithstanding the previously filed cases – to continue being subjected to known and unknown harms caused by the Landfill until some hypothetical future date when class action status may be conferred in another case which these plaintiffs may or may not choose to join. Such a result would be highly prejudicial and fundamentally unfair to plaintiffs, and would pose virtually no harm to the defendants – especially compared to the continuing harm to plaintiffs. The continuing nature of the harm distinguishes this case from every case of which we are aware that granted a stay under art. 552, including *Holmes v. Louisiana Citizens Property Ins. Co*., 168 So. 3d 792 (La. App. 5th Cir. Feb. 25, 2015) and other cases cited by defendants – including those that Waste Connections has cited in its late-filed Memorandum.

Moreover, unlike in this case, the plaintiffs in *Holmes* expressly alleged that they were putative members of the previously filed class action lawsuits. Plainly, as the court recognized, a plaintiff cannot claim he is a putative member of a pending class action lawsuit and also avoid *lis pendens* for an identical individual suit. This case presents the opposite situation; plaintiffs here do not allege they are members of any class that might be certified in other litigation. Moreover, none of the additional cases cited in Waste Connections' late-filed memorandum involve putative class action lawsuits).

### C. A Stay or Dismissal Would Violate Plaintiffs' Constitutional Rights

---

[4] *See* Affidavit of Paul Chrostowski, Ph.D. QEP, submitted in support of petitioners' motion for expedited discovery. We expect that Dr. Chrostowski will supplement his previous affidavit after reviewing any additional technical arguments that the defendants have indicated will be forthcoming in papers they intend to file on January 16 in opposition to plaintiffs' motion for expedited discovery.

[5] Plaintiffs have assembled a team of nationally and internationally recognized environmental consulting firms to conduct these assessments.

5

Indeed, to stay (or dismiss) the instant case under the circumstances presented would amount to a denial of these plaintiffs' constitutional right to access the courts of this State. *C.f., Christus Health Southwest Louisiana v. All About You Home Healthcare, Inc.*, 2017 WL 498569 (La. App. 3 Cir. 2/7/17) (Unpublished Opinion, a copy of which is attached as Exhibit 1 hereto). In that case Christus Health, a healthcare provider, sued the injured party's employer and its workers' compensation insurer to recover an underpayment and penalties for the alleged arbitrary and capricious handling of the claim. However, the proper method for calculating such payments had been the subject of a settlement in a previous class action, which was then under further review and clarification in the class action litigation. Consequently, the relators sought a continuance/stay of the *Christus Health* case on the grounds that the exact issue presented (*i.e.,* the method for calculate the payment owed) was being sorted out in connection with the class action litigation. Relators argued that it would be premature for the court to adjudicate Christus Health's claims until "the suspensive appeal of the 27th JDC's previous ruling in [the class action case] is resolved."

Even though Christus Health *was prepared to stipulate that it was a member of the class action settlement* and that the relators would be directly affected by that settlement, the district court denied the motion to stay, stating: "The easiest thing for me to do would be to stay this matter, but…I'm going to deny your motion to stay…." On appeal, the 3rd Circuit affirmed the district court's decision, because "'[t]he particular facts of this case to not outweigh the claimants' due process rights and their right to proceed to a resolution of their matter in the courts, without any undue delay.'" [quoting *Kershaw v. Mermentau Rice, Inc*., 05-317 (La.App. 3 Cir. 4/3/15 (unpublished writ decision)). *See also*, *Brasseaux v. Spell*, 238 So. 254 (La.App. 3 Cir. 1970) ("to require relator to await the finality of the criminal proceedings makes his civil remedy inadequate if not nonexistent. This is a violation of relator's constitutional rights.")

Similarly, given the continuing nature of the harm suffered by plaintiffs here, to deny them the right to immediately proceed with this litigation would violate their rights "to proceed to a resolution of their matter in the courts, without undue delay."

## IV.    CONCLUSION

For all the foregoing reasons, defendants' *lis pendens* objections should be rejected.

6

Respectfully submitted,

**FORREST CRESSEY & JAMES, LLC**

/s/ S. Eliza James

_____
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com

Barry S. Neuman (Admitted P*ro Hac Vice*)
**WHITEFORD    TAYLOR    PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

**OF COUNSEL:**
C. Allen Foster
Erik Bolog
Adrian Snead
**WHITEFORD    TAYLOR    PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

## CERTIFICATE OF SERVICE

  I, S. Eliza James, hereby certify that the foregoing Opposition was served on the following parties via fax on this 16 day of January, 2019. A courtesy copy of this Motion was additionally sent by electronic mail.

             /s/ S. Eliza James

           _____

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick

7

Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, Louisiana 70002
Fax: 504- 838-9901

WASTE CONNECTIONS, U.S.
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163
Fax: 504- 596-6301

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005
Fax: 202-789-6000

William Barousse
701 Poydras Street
Suite 4800
New Orleans, LA 70139
Fax: 504-561-1011

APTIM CORP.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

8

Case 2:19-cv-11133-SM-MBN   Document 1-5   Filed 06/10/19   Page 305 of 317

Christus Health Southwest Louisiana v. All About You..., Not Reported in So....
2017-57 (La.App. 3 Cir. 2/7/17)

2017 WL 498569

UNPUBLISHED OPINION. CHECK COURT RULES
BEFORE CITING.

**NOT DESIGNATED FOR PUBLICATION**
Court of Appeal of Louisiana, Third Circuit.

CHRISTUS HEALTH SOUTHWEST
LOUISIANA d/b/a Christus St. Patrick Hospital
v.
ALL ABOUT YOU HOME
HEALTHCARE, INC., et al.

17–57
|
02/7/2017

APPEAL FROM THE OFFICE OF WORKERS'
COMPENSATION—Dist. 03, PARISH OF
CALCASIEU, NO. 16–04524, DIANNE MARIE
MAYO, WORKERS COMPENSATION JUDGE

**Attorneys and Law Firms**

Jerald R. Harper, Harper Law Firm, 213 Texas St.,
Shreveport, LA 71101, (318) 213–8800, COUNSEL FOR
DEFENDANT/APPLICANT: Bridgefield Casualty
Insurance Company, All About You Home Healthcare,
Inc.

Thomas Allen Filo, Cox, Cox, & Filo, 723 Broad Street,
Lake Charles, LA 70601, (337) 436–6611, COUNSEL
FOR PLAINTIFF/RESPONDENT: Christus Health
Southwest Louisiana

Allison C. Foster, Jason B. Nichols, Cook, Yancey, King
& Galloway, P. O. Box 22260, Shreveport, LA 71120–
2260, (318) 221–6277, COUNSEL FOR DEFENDANT/
APPLICANT: Bridgefield Casualty Insurance Company,
All About You Home Healthcare, Inc.

Court composed of, John D. Saunders, Elizabeth A.
Pickett, and Shannon G. Gremillion, Judges.

**Opinion**

SAUNDERS, Judge.

**\*1 \*\*1** Relators, All About You Home Healthcare, Inc.
and Bridgefield Casualty Insurance Company (hereinafter
collectively referred to as Relators), seek supervisory
writs from a ruling rendered by the Office of Workers'
Compensation, District 3, the Honorable Dianne Mayo,
presiding. The ruling at issue was rendered in open court
on January 23, 2017, and denied Relators' request for a
continuance/stay. Relators ask this court to stay the trial
in this matter pending a ruling by this court on the instant
writ application.

**STATEMENT OF THE CASE**

This matter arises out of the alleged underpayment and/
or late payment of medical bills for services provided
to Brandi Vital on March 17, 2013, in connection with
her workers' compensation claim.[1] It is related to class
action litigation that is currently pending before this
court.[2] *See Opelousas General Hospital Authority v.
FairPay Solutions, Inc.*, 17–42. The parties to the class
action entered into a settlement agreement, but the parties
disagreed regarding the implementation of the future
pricing methodology. There is an issue as to whether the
judgment rendered by the trial court in 17–42 was properly
designated as a final judgment under *R.J. Messinger, Inc.
v. Rosenblum*, 04–1664 (La. 3/2/05), 894 So.2d 1113.

Christus Health Southwest Louisiana d/b/a Christus St.
Patrick Hospital (Christus), the healthcare provider, filed
suit against the injured party's employer, All About You
Home Healthcare, Inc., and its workers' compensation
insurer, Bridgefield Casualty Insurance Company, in
the workers' compensation court to **\*\*2** recover the
underpayment as well as penalties and attorneys' fees
for the alleged arbitrary and capricious handling of the
claim.[3] Relators assert that the instant claim was paid
pursuant to the settlement agreement in *Opelousas General
Hospital Authority*, 17–42. Relators aver that they "have
asserted their appropriate defenses." Although the 1008 is
attached as an exhibit to this writ application, Relators'
answer to the 1008 is not provided. Christus attached the
answer as an exhibit to its opposition. Relators have raised
res judicata as a defense.[4]

On January 13, 2017, Relators filed a motion to continue/
stay the trial date of January 23, 2017. Relators alleged
that the exact issue presented in Christus' 1008 (i.e., the
application of the Future FairPay Pricing Methodology
as outlined in the settlement in *Opelousas General Hospital
Authority*, 17–42) is currently pending before this court.

Christus Health Southwest Louisiana v. All About You..., Not Reported in So....

2017-57 (La.App. 3 Cir. 2/7/17)

According to Relators, "the consideration of this alleged underpayment is premature, as the application of the methodology by which the insurer issued its payment which is the subject of the instant dispute is the subject of a pending Motion to Enforce Settlement Agreement."

**\*2** Christus opposed the motion to continue/stay. Christus argued that the suspensive appeal taken by FairPay in *Opelousas General Hospital Authority*, 17–42, "does not and cannot impact this workers' compensation claim." FairPay is not a named defendant in the instant case. FairPay is not an employer or an insurance company and is not subject to suit in workers' compensation court.

A hearing on the motion for stay was held on January 23, 2017. The trial court stated: "The easiest thing for me to do would be to stay this matter, but I have not always done the easiest thing, so what I am going to do is I'm going to deny your motion to stay[,] and we are going to proceed here today." Relators **\*\*3** asked for and were granted seventy-two (72) hours to file a writ with this court. The court recessed the trial at that point and ordered the parties to return for trial on February 8, 2017.

A written judgment was presented for signature, but a signed judgment was not available at the time this writ application was filed. Relators filed a written notice of intent to apply for writs as well as an order to set the return date. That order was not signed. Thus, no return date was specifically fixed by the trial court. Relators were given seventy-two (72) hours, but the minutes do not reflect the time of day on January 23, 2017, that the time was given. The writ application should have been filed by January 26, 2017. The writ was filed by e-mail on January 26, 2017. Christus alleges that the writ was filed outside of the seventy-two (72) hours granted by the trial court because the time limit was given in the morning, and the writ was not filed until the afternoon of January 26, 2017. Christus presents no evidence of this. Thus, this writ application is considered timely filed. Christus filed an opposition to the writ application on January 31, 2017.

Trial in this matter is scheduled to resume on Wednesday, February 8, 2017.

### SUPERVISORY RELIEF

"A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment." La.Code Civ.P. art. 1841. "The proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ." *Baxter v. Baxter*, 15–85, p. 10 (La.App. 4 Cir. 6/24/15), 171 So.3d 1159, 1166, *citing* La.Code Civ.P. art. 2201.

### **\*\*4** ON THE MERITS

"The denial of a motion for continuance will not be disturbed absent a showing of an abuse of discretion by the trial court." *Newsome v. Homer Mem. Med. Ctr.*, 10–564, p. 2 (La. 4/9/10), 32 So.3d 800, 802.

Relators' argument is that "[u]ntil the suspensive appeal of the 27th JDC's previous ruling in the *Opelousas General* matter is resolved, any decision by the numerous administrative and lower courts in the eight-plus cases such as this would be premature and/or could run the risk of being inconsistent with this Court's decision in the *Opelousas General* matter." According to Relators, considerations of judicial economy and efficiency also support their request for a continuance/stay because "potentially, the same witnesses would be required to testify in each workers' compensation matter[,] and a number of different judges throughout the State would interpret the language of the Settlement Agreement and, critically, determine whether FairPay is correctly utilizing and applying the agreed-to Methodology as set forth in the Settlement Agreement." Relators cite no authority in support of their request for a continuance/stay other than *Transamerica Ins. Co. v. Whitney Nat. Bank of New Orleans*, 251 La. 800, 809, 206 So.2d 500, 503 (La.1968), *quoting Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163 (1936), which stands for the proposition that "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket."

**\*3** Christus was prepared to stipulate that it is a member of the class in the class action settlement and that the employer and its insurer in the instant case would qualify as parties that could be affected by the class action settlement. In opposition to the continuance/stay, Christus argues that an indefinite stay (as **\*\*5** sought

**Case 2:19-cv-11133-SM-MBN   Document 1-5   Filed 06/10/19   Page 307 of 317**

Christus Health Southwest Louisiana v. All About You..., Not Reported in So....

2017-57 (La.App. 3 Cir. 2/7/17)

by Relators) would deprive them of their constitutionally protected right of access to the courts.

Christus cites *Brasseaux v. Spell*, 238 So.2d 254 (La.App. 3 Cir. 1970), in support of its argument. In that case, Brasseaux sought damages for injuries sustained when Girouard shot him. Girouard sought a continuance of the civil trial pending the outcome of his criminal trial on charges stemming from the shooting. The trial court granted the continuance, and this court initially upheld the continuance as being within the trial court's discretion but reserved Brasseaux's right to re-urge the application should the criminal case not be tried within six weeks. When the civil trial was re-fixed, Girouard again sought and was granted a continuance, on the same ground. This court reversed the continuance noting that the trial had been postponed four times and that "[t]o require relator to await the finality of the criminal proceedings makes his civil remedy inadequate if not nonexistent. This is a violation of relator's constitutional rights." *Id.*, at 256. "The trial court's discretion may not be used arbitrarily where the denial of a continuance based on a good-faith ground may deny a litigant their day in court." *Shriver v. Lafayette City–Parish Consol. Government*, 14–760, p. 3 (La.App. 3 Cir. 12/10/14), 154 So.3d 789, 791.

Christus also cites *Kershaw v. Mermentau Rice, Inc.*, 05–317 (La.App. 3 Cir. 4/13/15), an unpublished writ decision:

> **WRIT GRANTED AND MADE PEREMPTORY.** The workers' compensation court committed error in granting a stay of the claimants' April 22, 2005 trial date, pending the rendition of a declaratory judgment in a separate, state court action. The particular facts of this case do not outweigh

the claimants' due process rights and their right to proceed to a resolution of their matter in the courts, without any undue delay. *Brasseaux v. Spell*, 238 So.2d 254 (La.App. 3 Cir. 1970); U.S.Const. amend. XIV, § I; La.Const. art. 1, §§ 2, 22. The order granting the stay is hereby reversed, and this matter remanded for further proceedings in accordance with this court's ruling.

**\*\*6** Christus also argues that Relators' motion for continuance/stay is nothing more than a late-filed exception of prematurity and that this writ is a prematurity exception in disguise. *See* La.Code Civ.P. arts. 926 and 928.

We find that Relators have not shown an abuse of discretion. They have not asserted a prematurity exception. They have asserted the defense of res judicata, but the court has made no ruling thereon. Relators are still free to assert the peremptory exception of res judicata, if they so choose. La.Code Civ.P. arts. 927 and 928. Therefore, we deny this writ application. Moreover, the request for stay is denied.

**STAY DENIED.**

**WRIT DENIED.** We find no abuse of discretion in the trial court's ruling.

**All Citations**

Not Reported in So. Rptr., 2017 WL 498569, 2017-57 (La.App. 3 Cir. 2/7/17)

---

Footnotes

1   Christus notes that the underpayment in this case is alleged to be $75.00.

2   FairPay Solutions, Inc. (FairPay), is a billing review service. In the class action, several healthcare providers alleged that FairPay re-priced the providers' bills at levels below those required by law.

3   Other similar claims have been filed in the various workers' compensation courts.

4   The peremptory exception of res judicata can be raised at any time prior to the submission of the case for decision. La.Code Civ.P. art. 928.

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**24th JUDICIAL DISTRICT COUR FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**SUIT NO.: 790-369**                                                    **DIVISION: "J"**

**FREDERICK ADDISON, et al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et al.**

**FILED: _____**                    _____
                                                                        **DEPUTY CLERK**

**OBJECTION TO UNTIMELY FILING OF SUPPLEMENTAL MEMORANDUM BY WASTE CONNECTIONS AND REQUEST FOR SANCTIONS UNDER UNIFORM DISTRICT COURT RULE 9.9(e)**

NOW INTO COURT, comes Plaintiffs, who object to defendant Waste Connections US, Inc. ("Waste Connections"), untimely filing of a supplemental memorandum in support of their exception of *lis pendens*.

On December 28, 2018, the filed a *lis pendens* exception to the petition filed in this case, together with a supporting memorandum. This Court scheduled a hearing on Waste Connections' exception for January 24, 2019.  On the eve of January 15, 2019, Waste Connections filed a second, supplemental memorandum in support of its *lis pendens* exception.

Waste Connection's supplemental memorandum is untimely pursuant to Uniform District Rule 9.9(b), which requires that all memoranda in support of exceptions be filed and served fifteen calendar days before a hearing[1] -- which in this case meant January 9, 2019. Here, Waste Connections summarily filed its supplemental memorandum six days after the required deadline of January 9, 2019.  Thus, it waited more than two weeks after filing its exception – and until the evening before petitioners' opposition was due to be filed – to submit its second memorandum.

---

[1] "When a party files an exception or motion, that party shall concurrently furnish the trial judge and serve on all other parties a supporting memorandum that cites both the relevant facts and applicable law. The memorandum for motions and exceptions, other than motions for summary judgment, *shall be served on all other parties so that it is received by the other parties at least fifteen calendar days before the hearing*, unless the court sets a shorter time. Uniform District Rule 9.9(b). Emphasis added.

When a party fails to timely file a memorandum, Uniform District Court Rule 9.9(e) dictates that the tardy party be precluded participating in oral argument.[2]

Waste Connections has not offered and cannot offer any legitimate reason for conducting itself in this manner, and in thereby substantially inconveniencing the petitioners in their final preparation of their opposition papers. Accordingly, plaintiffs respectfully submit that Waste Connections should be precluded from presenting oral argument pursuant to rule 9.9(e) and that the Court disregard its January 15, 2019 submission.

Respectfully submitted,

**FORREST CRESSEY & JAMES, LLC**

/s/ S. Eliza James

_____
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com

Barry S. Neuman (Admitted P*ro Hac Vice*)
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

**OF COUNSEL:**
C. Allen Foster
Erik Bolog
Adrian Snead
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

---

[2] Uniform District Rule 9.9(e). "Parties who fail to comply with paragraphs (b) and (c) of this Rule may forfeit the privilege of oral argument. If a party fails to timely serve a memorandum, thus necessitating a continuance to give the opposing side a fair chance to respond, the court may order the late filing party to pay the opposing side's costs incurred on account of the untimeliness."

## CERTIFICATE OF SERVICE

I, S. Eliza James, hereby certify that the foregoing Objection was served on the following parties via fax on this 16 day of January, 2019. A courtesy copy of this Motion was additionally sent by electronic mail.

/s/ S. Eliza James

_____

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, Louisiana 70002
Fax: 504- 838-9901

WASTE CONNECTIONS, U.S.
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163
Fax: 504- 596-6301

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005
Fax: 202-789-6000

William Barousse
701 Poydras Street
Suite 4800
New Orleans, LA 70139
Fax: 504-561-1011

APTIM CORP.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company

501 Louisiana Avenue
Baton Rouge, LA 70802
WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

# CONNICK AND CONNICK, L.L.C.
## ATTORNEYS AT LAW

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN

ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
ELIZABETH A. ZAVALA
LAURA M. BLOUIN
NOAH R. BORER

3421 NORTH CAUSEWAY BOULEVARD SUITE 408
METAIRIE, LOUISIANA 70002

TELEPHONE: (504) 838-8777
FACSIMILE: (504) 838-9903
WEBSITE: www.connicklaw.com

OF COUNSEL,

PAUL D. CONNICK, JR.

DIRECT DIAL: (504) 681-6658
EMAIL: moghis@connicklaw.com

January 16, 2019

24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
P.O. Box 10
Gretna, Louisiana 70054-0010
Phone:   (504) 364-3998
Fax:      (504) 364-3780

Re:   *Addison, et al. v. Jefferson Parish, et al.*
Court:   24th JDC, Case No. 790-369, Division "J"
File No.:   81.182829

Dear Sir/Madam,

Attached is Defendant's Opposition to Plaintiffs' Motion for Expedited Discovery or, Alternatively, Motion to Continue, which I ask that you fax file in connection with the above-referenced matter.  Please advise as to the costs associated with this request so that a check to cover same can be forwarded with the originals.

Thanking you in advance for your cooperation, I remain

Sincerely,

CONNICK AND CONNICK, LLC

MATTHEW D. MOGHIS

MDM/js
Attachment
cc:   Barry Neuman (bneuman@wtplaw.com)
Byron Forrest  (byron@fcjlaw.com)
Eliza James (eliza@fcjlaw.com)
Nicholas Cressy (nicholas@fcjlaw.com)
Michael Mims (mmims@bradleyfirm.com)
David Taggart (dtaggart@bradleyfirm.com)
Jim Slaughter (jslaughter@bradleyfirm.com)
William Barousse (wbarousse@glllaw.com)

**24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 790-369                                                        DIVISION "J"

**FREDERICK ADDISON, et. al.**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et. al.**

FILED: _____          _____
                                                         **DEPUTY CLERK**

**OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY OR,**
**ALTERNATIVELY, MOTION TO CONTINUE**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jefferson

Parish, who appears solely for the purpose of opposing Plaintiffs' Request for Expedited

Discovery and hearing or, in the alternative, requesting a continuance on consideration

of the issues presented therein, reserving all rights and defenses, and sets forth as

follows:

**ISSUES PRESENTED**

Jefferson Parish respectfully requests this Court deny or, alternatively, continue

the hearing on Plaintiff's Request for Expedited Discovery, currently set for January 24,

2019, for the following reasons:

1. Plaintiffs violated multiple requirements of Louisiana Code of Civil
   Procedure; and

2. Defendant would be prejudiced by the short amount of time proposed
   by Plaintiffs to respond to the convoluted Motion and 17-page expert
   affidavit of Dr. Paul C. Chrostowski.

i.      *PLAINTIFF'S VIOLATED SEVERAL PROVISIONS OF THE LOUISIANA CODE OF CIVIL*
        *PROCEDURE.*

        a.  *Plaintiff has not adhered to the proper discovery process.*

Louisiana Code of Civil Procedure article 1461 allows a party to request entry

upon land for the purposes of conducting discovery.[1] Article 1462, however, *mandates*

that Plaintiffs serve their requests upon Defendants and "specify a reasonable time,

---

[1] La. C.C.P. art. 1461.

place, and manner of making the inspection and performing the related acts."[2] Plaintiffs neither served any request to Defendant or specified the "time, place, and manner" of the proposed discovery. Further, Article 1462 also allows Defendant 30 days to respond to this request.[3] Simply put, Plaintiffs are required to specify with particularity the proposed discovery and give Defendant a reasonable opportunity to respond to those requests. That did not happen here, and Plaintiffs cite no legal support for circumvention of these rules.

Only after the aforementioned requests have been made and denied may Plaintiffs seek relief under Article 1469.[4] However, that Article also requires Plaintiffs provide "reasonable notice to *other parties and all persons affected thereby*."[5] Plaintiffs have not yet served all parties/Defendants who would certainly be affected by any order regarding expedited discovery.

Additionally, Rules for Civil Proceedings in District Court, Rule 10.1, mandates that "*before* filing any motion to compel discovery" Plaintiffs "*shall* confer in person or by telephone with the opposing party or counsel for the purpose of amicably resolving the discovery dispute." Again, Plaintiff has not satisfied this requirement.

Plaintiffs have failed to (1) make any written requests, (2) specify the discovery they seek with particularity, (3) allow Defendant an appropriate opportunity to respond, or (4) hold a Rule 10.1 Telephone Conference. This procedure is mandated under Louisiana law and Plaintiffs have cited no case law to suggest any different.

### b. *Plaintiff has not identified the proposed discovery with any specificity.*

Most importantly, Plaintiffs have not specified with particularity discovery they seek. Plaintiffs set forth in that they would like to "enter, inspect, and sample the Landfill immediately"[6] and "see firsthand the conditions, layout, and operation."[7] However,

---

[2] La. C.C.P. art. 1462 (A).
[3] La. C.C.P. art. 1462 (B).
[4] La. C.C.P. art. 1469.
[5] La. C.C.P. art. 1469.
[6] Petitioner's Request for Expedited Discovery for the Purpose of Entering and Inspecting the Subject the Landfill and Motion for Expedited Hearing and Incorporated Memorandum in Support, filed December 20, 2018 (hereinafter referred to as "Plaintiffs' Motion"), at Introduction Paragraph.
[7] Plaintiffs' Motion, at Page 4.

Plaintiffs do not particularly specify what information they are seeking, what methods they will use to conduct discovery, what equipment will be used, who will administer the discovery, the time/date/duration of the discovery, or any other logistics of the vaguely proposed process. Perhaps most importantly, Plaintiffs did not indicate how their inspection will affect the ongoing operations of an operational public landfill. They simply set forth a broad motion requesting that same type of relief.

As Plaintiffs Motion acknowledges, "the subject matter related to request for expedited discovery should be *narrowly tailored in scope*,"[8] and expedited discovery should only be granted in "*limited circumstances.*"[9] Although Defendant maintains that Plaintiffs requests do not fall under the "limited circumstances" where expedited discovery should be granted, Plaintiffs have certainly not narrowly tailored the scope of same.

Plaintiffs appear to be seeking prolonged monitoring of the Landfill, but do not specify any further.[10] They also admit that to properly assess whether these issues are emanating from the Landfill would "require actual sampling taken on a regular basis throughout the affected communities."[11] However, Plaintiffs have produced no information regarding these tests being performed at any one (1) of the homes of the over-80-Plaintiffs in this case. Rather, Plaintiffs simply seek to conduct a generic and broad discovery at the Landfill in order to work backwards and create their theory of the case. This is unprecedented, improper, and unsupported by Louisiana law. This is the purpose of the requirements of specificity and cooperation to working out the process of the proposed discovery (which Plaintiffs did not do here).

Lastly, the entire basis of Plaintiffs' motion presupposes causation between the Landfill and their alleged damages. Plaintiffs' position with respect to causation is unsupported and completely disregards the multitude of other potential sources in the exact same area in which the Landfill sits. This area includes, but is not limited to, multiple other Landfills, chemical plants, and barge operations on the river. Plaintiffs

---

[8] Plaintiffs' Motion, at Page 6. (Emphasis added).
[9] Plaintiffs' Motion, at Page 7. (Emphasis added).
[10] Plaintiffs' Motion, at Page 8.
[11] Plaintiffs' Motion, at Page 8.

proposition for generic discovery and monitoring is silent with respect to the vast number of potential sources in this same area. Simply put, what Plaintiffs propose is a vague, broad, and unrestricted fishing expedition into a functioning public landfill, which should not be allowed.

### ii.   *DEFENDANT IS PREJUDICED BY THE MINIMAL AMOUNT OF TIME TO RESPOND.*

As set forth above, Plaintiffs have not adhered to any of the rules required during the discovery process. Instead, Plaintiffs filed this "emergency" Motion during the holidays with proposed deadlines that violate the Code of Civil Procedure and supported same with a 17-page expert affidavit. As stated, this is the sixth (6th) filed litigation regarding the Jefferson Parish Landfill and the first time Defendant has been confronted with this "emergency" issue. To require Defendant to substantively respond to the convoluted, expert supported Motion in such a short period of time without any prior notice or procedural safeguards being followed would be extremely prejudicial.

Plaintiffs have cited no legal support for the procedural posture they are taking to strong-arm Defendant into the proposed "emergency" discovery. In their own Motion, Plaintiffs admit that this is an unprecedented maneuver, acknowledging that they "have found no case decided by any Louisiana State Court that is directly on point."[12] Plaintiffs have violated several required provisions of the Louisiana Code of Civil Procedure that are aimed to safeguard Defendants from this type of ambushed request. Without legal support for their position, Plaintiffs are not entitled to the relief they seek, nor the hearing date they propose.

**WHEREFORE**, Defendant, Jefferson Parish, respectfully request this Court deny or, in the alternative, continue the hearing on Plaintiffs Motion for Expedited Discovery without date to allow Plaintiff to adhere to the Rules of Louisiana Code of Civil Procedure.

*(Signature block on next page).*

---

[12] Plaintiffs' Motion, at Page 5. (Emphasis added).

Respectfully submitted,

CONNICK AND CONNICK, LLC

_____

WILLIAM P. CONNICK, LA. BAR NO. 14158
MICHAEL S. FUTRELL, LA BAR. NO. 20819
MATTHEW D. MOGHIS, LA BAR. NO. 33994
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone:   (504) 681-6658
Facsimile:   (504) 838-9903
E-mail:       moghis@connicklaw.com

*Counsel for Defendant, Jefferson Parish*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all known counsel of record in this proceeding by:

( )   Hand Delivery              ( )   Prepaid U.S. Mail
(X)  Email                        ( )   Facsimile

New Orleans, Louisiana this 16th day of January, 2019.

_____

MATTHEW D. MOGHIS