# STATE OF LOUISIANA
# FIFTH CIRCUIT COURT OF APPEAL

Case No.:

_____

## FREDERICK ADDISON, *et. al.;*

### Versus

## LOUISIANA REGIONAL LANDFILL COMPANY, *et. al.*

_____

24th JUDICIAL DISTRICT COURT
FOR THE PARISH OF JEFFERSON
STATE OF LOUISIANA
DOCKET NO.: 790-369
HON. JUDGE STEPHEN GREFER PRESIDING

---

## PLAINTIFFS' APPLICATION FOR SUPERVISORY WRIT

## CIVIL PROCEEDING

---

RESPECTFULLY SUBMITTED ON BEHALF OF PLAINTIFFS,
FREDERICK ADDISON, *ET. AL.*:

**FORREST CRESSY & JAMES, LLC**
Byron Miller Forrest (#35480)
Nicholas V. Cressy (#35725)
S. Eliza James (#35182)
One Canal Place Office Tower
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Telephone: 504-605-0777
Facsimile: 504-322-3884

**WHITEFORD TAYLOR PRESTON, LLP**
Barry S. Neuman, Admitted *Pro Hac Vice*
Adrian F. Snead, Admitted *Pro Hac Vice*
1800 M Street, NW
Suite 450N
Washington, DC 20036
Telephone: (202) 659-6800

*Appeal counsel for Plaintiffs.*

## INDEX OF MEMORANDUM

I.   STATEMENT OF GROUNDS OF JURISDICTION............................1

II.   STATEMENT OF THE CASE...............................................................2

      a.  Brief Factual Summary And Procedural History..........................2

      b.  Action of the Trial Court that Forms the Basis of the Application.....6

III.  ISSUES PRESENTED FOR REVIEW.............................................6

IV.  ASSIGNMENTS OF ERROR.........................................................7

V.   SUMMARY OF THE ARGUMENT...............................................7

VI.  LAW AND ARGUMENT...............................................................9

      a.  Standard of Review......................................................9

      b.  The Trial Court Erred As A Matter Of Law In Granting The Exception Of *Lis Pendens* Because The Plaintiffs In This Case are Different From All Plaintiffs In The Pending Class Actions..............................9

            i.  A Putative Class Member Is Not A "Party" To A Class Action And Cannot Be Bound Unless A Class Is Certified And They Have Not Opted Out..................................................11

            ii.  The Trial Court Reliance On *Aisola* And Its Progeny Was In Error Because Plaintiffs Here Do Not Seek Benefits Of The Previously Filed Class Actions.....................................13

      c.  The Court Erred in Holding That Article 532 Is Applicable To A Timely Filed Individual Suit When The First Filed Suit Was A Class Action.....................................................................18

            i.  Louisiana's laws do not prohibit or prevent multiple simultaneous actions when a class action is the first filed.......18

            ii.  Article 532 is not applicable to individual suits when the first filed suit is a class action...........................................19

      d.  The Trial Court Abused Its Discretion In Staying Plaintiffs' Case....21

      e.  Granting *Lis Pendens* Violates Plaintiffs' Right To Due Process......22

VII.  CONCLUSION AND PRAYER FOR RELIEF.................................25

VIII. VERIFICATION AND CERTIFICATE OF SERVICE.......................27

# INDEX OF APPENDIX

Petition for Damages and Request for Injunctive Relief...............................30

Petitioners Request for Expedited Discovery for the Purpose of Entering and Inspecting the Subject Landfill and Motion for Expedited Hearing and Incorporated Memorandum in Support..................................................................51
     Exhibit A1-2, Declaration of Paul C. Chrostowski, Ph.D......................64

Waste Connections Us, Inc's Declinatory Exception of *Lis Pendens* and Reservation of Rights to Submit a Brief in Support Within the Delays Allowed by Law.......................................................................................117

Declinatory Exception of *Lis Pendens* with Incorporated Memorandum in Support, Filed by Jefferson Parish.................................................................121

Opposition to Plaintiffs' Motion for Expedited Discovery or Alternatively Motion to Continue filed by Jefferson Parish..................................................125

Defendant Waste Connection's Exception of *Lis Pendens* And Memorandum In Support (Supplemental Filing) ...........................................................130
     Exhibit A......................................................................143
     Exhibit A-1 ................................................................ 146
     Exhibit B ................................................................... 167
     Exhibit C ................................................................... 183
     Exhibit D ................................................................... 201
     Exhibit E ................................................................... 218
     Exhibit F-1 ................................................................. 233
     Exhibit F-2 ................................................................. 245
     Exhibit F-3 ................................................................. 254
     Exhibit F-4 ................................................................. 255

Petitioners' Opposition to Waste Connections Us, Inc. and Jefferson Parish's Declinatory Exception of *Lis Pendens* And Memorandum in Support............. 256
     Exhibit 1.................................................................... 264

Objection to Untimely Filing ff Supplemental Memorandum by Waste Connections and Request for Sanctions Under Uniform District Court Rule 9.9(C)............ 267

Defendant Waste Connections Us, Inc.'s Combined Reply Memorandum in Support of its Declinatory Exception of *Lis Pendens* and Motion to Stay and Response to Plaintiffs' "Objection to Untimely Filing" .......................................... 272

Judgement on Exception and Discovery Hearing 1/24/19 ........................... 282

Notice of Intent to Apply for Supervisory Writ ...................................... 284

Order Granting Extension of Return Date ............................................288

Exception of *Lis Pendens* Hearing Transcript ...................................... 289

Nicole M. Landry Boudreaux V. Progressive Waste Solutions of La, Et Al - Order Denying Remand ............................................................................ .326

Savannah Thompson V. Louisiana Regional Landfill Company, Et Al – Order Denying Remand ........................................................................... .. 331

Larry Bernard, Sr., Et Al V. Progressive Waste Solutions of La, Inc., Et Al – Order Denying Remand ......................................................................... .. 343

Elias Jorge "George" Ictech-Bendeck V. Progressive Waste Solutions of La, Inc., Et Al – Order Denying Remand ....................................................... 348

*Ex Parte* Motion and Order & Incorporated Memorandum in Support of *Ex Parte* Motion to Appoint Interim Class Counsel ........................ .. ............ .. 364

## I.   STATEMENT OF JURISDICTION

This Court has supervisory jurisdiction to review the interlocutory judgments under Article V, Section 10 of the Louisiana Constitution, Article 2201 of the Louisiana Code of Civil Procedure, and Rule 4 of the Uniform Rules of Courts of Appeal.

Under Article V, Section 10 of the Louisiana Constitution, appellate courts may intervene in a trial court proceeding and may grant meritorious applications for supervisory writs when the action is dictated by the considerations of efficient judicial administration, fundamental fairness, and irreparable injury to the litigants. *Richard v. Swiber*, 760 So.2d 355, 358 (La. App.1 Cir. 1999); *Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia*, Inc. 396 So.2d 878 n.1 (La. 1981). The Supreme Court has recognized that supervisory review is warranted when the trial court's decision is "arguably incorrect." *Herlitz*, 396 S.2d at 878. Here, the trial court's ruling is "arguably incorrect" and it is in the interest of judicial administration and fundamental fairness to review the trial court's error.

## II.   STATEMENT OF THE CASE

### a.  Brief Factual Summary And Procedural History

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the Jefferson Parish Landfill ("J.P. Landfill").[1] Sometime thereafter, the J.P. Landfill began emitting noxious gases and fumes, affecting the landfill's neighbors on both side of the river, predominately affecting the communities of Waggaman, River Ridge, Avondale, Kenner, Harahan, and Metairie.[2]

These unlawful, toxic, and harmful releases have caused Plaintiffs substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things, difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience.[3] These emissions also diminished the value of Plaintiffs' homes.[4] Apart from these reported symptoms, the releases from the landfill also contain known toxic substances that have been found in the surrounding communities at levels that exceed health screening thresholds established by the U.S. Environmental Protection Agency.[5]

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which, among other things, found that the Parish violated its Landfill Permit and applicable environmental regulations by (i) failing to provide daily cover and (ii)

---

[1] *See* Petition for Damages and Request for Injunctive Relief, at Appendix pg. 39.
[2] *Id* at Appendix pg. 31-35.
[3] *Id* at Appendix pg. 43-44.
[4] *Id* at Appendix pg. 44.
[5] *See* Petitioners Request for Expedited Discovery for the Purpose of Entering and Inspecting the Subject Landfill and Motion for Expedited Hearing and Incorporated Memorandum in Support, at Appendix pg. 58-59. *See also See also* Exhibit A to Petitioner's Motion for Expedited Discovery, Declaration of Paul C. Chrostowski, Ph.D. dated Dec. 19, 2018, at Appendix pg. 73.

failing to properly operate the system that is intended to collect leachate—the liquid

brew that drains from a landfill and carries with it numerous harmful chemicals.[6]

After significant community outcry, the Parish admitted that improper

operation of the J.P. Landfill is a major source of the odors suffered by Petitioners

as well as the adverse consequences thereof. At a public press conference on July

23, 2018, Parish President Mike Yenni stated that the J.P. Landfill's system designed

to "contain and deodorize landfill gases" has not been in "proper working order;"

the landfill's leachate collection system has not been operated properly; and

"Properly operated landfills do not operate persistent off-site odors and corrective

actions . . . are essential;" and that the Parish notified IESI that it was in breach of

its contract to properly operate the J.P. Landfill.[7]

At the same press conference, Parish Deputy Sheriff Mark Conley stated that

the J.P. Landfill gas collection system had been collecting only twenty percent (20%)

of the gas emitted from landfill operations, whereas a properly operating system

would collect ninety-seven to ninety-eight percent (97-98%) of gas emissions.[8]

Specifically, he remarked:

> [s]o that is why the Parish president is stressing that we realize we have
> problems. . . right now, a lot of our priority, in the name of public safety
> and our police powers, is to address the existing system, get it
> operational, and to pull as much gas out of that landfill as we can."[9]

In addition, Parish Councilman Paul Johnson stated that the odor from the J.P.

Landfill:

> "has gotten really bad in the past for our five months . . . we are all
> going to experience odors from the landfill because it's a landfill. But,
> not those we have been having for the past three or five months. It's
> been really bad. I have been woken up at night with my nose burning
> and couldn't breathe at three or four o'clock in the morning. This has

---

[6] *See* Petition for Damages and Request for Injunctive Relief, at Appendix pg. 41.
[7] *Id* at Appendix pg. 40.
[8] *Id.*
[9] *Id* at Appendix pg. 41.

happened to me more than one time . . . we know the landfill is causing problems and we know it is a big source of problems. . . .[10]

Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to, leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[11]    The harms have not ceased and are, indeed, continuing.

In a classic rush to the courthouse, a series of putative class action case were filed in the 24th Judicial District Court.[12]  On July 25, 2018, just two days after Mr. Yenni's statement, five plaintiffs filed four putative class action suits.  The first was filed by Elias Jorge "George" Ictech-Bendeck 24th JDC Case No. 785-955.[13]  On the same day, attorneys for Mr. Ictech-Bendeck filed to become interim class counsel, a motion which the Court granted.[14] Three additional copy-cat suits followed by plaintiffs Savannah Thompson ( 24th JDC Case No. 786-137 in Division N),[15] Larry and Mona Bernard (24th JDC Case No. 786-541 in Division H)[16], and Nicole Landry-Boudreaux (24th JDC Case No. 787-081, Division K)[17].

Each of the four suits named IESI LA Landfill Corp., Progressive Waste Solutions of LA, Waste Connections US, Inc., Louisiana Regional Landfill Company, Inc., APTIM Corporation, and the Parish of Jefferson, or their successor

---

[10] *Id* at Appendix pg. 41.
[11] *Id* at Appendix pg. 41.
[12] *See* Defendant Waste Connection's Exception of *Lis Pendens* and Memorandum in Support (Supplemental Filing), Exhibits B-E at Appendix pgs. 167-194.
[13] *See* Defendant Waste Connection's Exception of *Lis Pendens* and Memorandum in Support (Supplemental Filing), Exhibits B Appendix pg. 167.
[14] *Id.* See also *Ex Parte* Motion and Order and Incorporated Memorandum in Support of *Ex Parte* Motion to Appoint Interim Class Counsel, at Appendix pg. 364-367.
[15] *See* Exhibit C to Defendant Waste Connection's Exception of *Lis Pendens* and Memorandum in Support (Supplemental Filing), at Appendix p. 183.
[16] *See* Exhibit D to Defendant Waste Connection's Exception of *Lis Pendens* and Memorandum in Support (Supplemental Filing), at Appendix pg. 201.
[17] *See* Exhibit E to Defendant Waste Connection's Exception of *Lis Pendens* and Memorandum in Support (Supplemental Filing), pg. 218.

entities as defendants.  All suits requested class certification and proposed that the class be composed of *every individual* residing in Jefferson Parish.[18]

The defendants in all of the putative class actions removed the cases to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453 and 1711-1713.[19]  On March 14, 2019, that court denied each party's motion to remand the cases back to Louisiana state courts and those cases remain in the District Court for the Eastern District of Louisiana pending class certification.[20]

Before the first of these putative class action suits was filed, undersigned counsel received inquiries from clients and potential clients regarding the toxic gasses emanating from the landfill.  Instead of rushing to the courthouse simply to be the first to file, undersigned counsel, in accordance with their ethical duties under La. C.C.P. Art. 863, methodically investigated these complaints and spoke to hundreds of clients.  After conducting substantial due diligence, they filed the instant Petition on behalf of these plaintiffs on December 13, 2018.[21]  In the Petition, plaintiffs asserted claims in their individual capacities,[22] and *not* as a proposed class.[23]

On December 20, 2018, Plaintiffs' filed a motion requesting expedited discovery to ensure the preservation of evidence.[24]  In response to Plaintiffs' Petition and the subsequent motion, on December 28, 2018, Defendants Waste Connections

---

[18] *See* Defendant Waste Connection's Exception of *Lis Pendens* and Memorandum in Support (Supplemental Filing), Exhibits B-E at Appendix pgs. 167-194.

[19] *See Landry-Boudreaux v. Progressive Waste Solutions of La, Inc. et. al.*; EDLA Case No. Order and Reasons, at  Appendix pg. 326, *Thompson v. Louisiana Regional Landfill Comp, et. al..* EDLA Case No. 18-8071, Order and Reasons at Appendix pg. 331, *Bernard v. Progressive Waste Solutions of La, Inc. et. al.*, EDLA Case No. 18-8218, Order and Reasons at pg. 343; *Ictech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.;* EDLA Case No. 18-7889, Order and Reasons at pg. 348.

[20] *Id.*

[21] *See* Petition for Damages and Injunctive Relief, Appendix pg 30.

[22] It must be noted that some Plaintiffs sued on behalf of their minor children. Such designations are made in the Petition. *See Id.*

[23] *Id* at Appendix pgs. 32-37.

[24] *See* Petitioners Request for Expedited Discovery the Purpose of Entering and Inspecting the Subject Landfill and Motion for Expedited Hearing and Incorporated Memorandum in Support, at Appendix pg. 51.

filed an exception of *lis pendens.*[25]   On or about January 8, 2019, Defendant Jefferson Parish filed another exception of *lis pendens*, adopting and pleading Waste Connection's previously filed exception.[26] Thereafter, and in a grossly untimely filing, Waste Connections submitted a supplemental memorandum in support of their exception on January 15, 2019.[27]

On January 16, 2019, Plaintiffs submitted their Opposition to Waste Connections and Jefferson Parish's original exceptions of *lis pendens.*[28]   In a separate filing, Plaintiffs objected to Waste Connection's untimely filing of their supplemental brief.[29]

### b. Action Of The Trial Court That Forms The Basis For This Application

The exception and Plaintiffs' motion for expedited discovery came for hearing on January 24, 2019. After arguments, Judge Grefer granted Defendants' exception of *lis pendens.*[30] Having determined that the doctrine applied, he then stayed Plaintiffs' the case until either the Eastern District of Louisiana ruled on the outstanding motions to remand the purported class actions or ruled on class certification. Plaintiffs' request for expedited discovery was denied as moot.[31]

On February 19, 2019 Plaintiffs filed a Notice of Intent to Apply for Supervisory Writ.[32] On February 20, 2019 Judge Grefer entered an order setting a return date of March 7, 2019.[33] Thereafter, on February 26, 2019 Plaintiffs' counsel

---

[25] *See* Waste Connection US, Inc.'s Declinatory Exception of Lis Pendens and Reservation of Rights to Submit a Brief In Support Within the Delays Allowed by Law, Appendix pg. 171.
[26] *See* Declinatory Exception of Lis Pendens with Incorporated Memorandum in Support filed by Jefferson Parish at Appendix pg. 121.
[27] *See* Defendant Waste Connections, US Inc.'s Memorandum in Support of Declinatory Exception of *Lis Pendens* and Motion to Stay (Supplemental Filing), Appendix at pg. 130.
[28] Petitioner's Opposition to Waste Connection US, Inc.'s and Jefferson Parish' Declinatory Exception of Lis Pendens and Memorandum in Support, at Appendix pg. 256.
[29] *See* Objection to Untimely Filing of Supplemental Memorandum By Waste Connections and Request for Sanctions Under Uniform District Court Rule 9.9(e) at Appendix pg. 267.
[30] *See* Hearing Transcript, Jan. 24, 2019 at Appendix pg. 289. *See also* Judgment, Feb. 6, 2019 at Appendix pg. 282.
[31] *Id.*
[32] *See* Notice of Intent to Apply for Supervisory Writ, at Appendix pg. 284.
[33] Id.

filed for an extension of the return date. That request was granted setting a return date for March 21, 2019.[34] This timely Application for Supervisory Writ follows.

## III.   ISSUES PRESENTED FOR REVIEW

The trial court erred as a matter of law in granting Defendants' exception of *lis pendens*.  Under Louisiana law, parties to a federal class action and parties to a state individual action cannot be considered the same unless and until a federal class is certified and the state plaintiffs fail to timely opt out.  Otherwise, it would be a violation of the state-plaintiffs' due process rights to deny them access to state courts.  Even assuming the doctrine *lis pendens* applies, the trial court abused its discretion in staying the case because it did so simply on the grounds of judicial efficiency and the purported inconvenience to the Defendants that would result if they had to defend this litigation while simultaneously opposing class certification—with no mention or consideration of the harm that plaintiffs will suffer if the case is stayed. Therefore, the trial court's decision should be reversed, the exception overruled, and the stay lifted.

## IV.   ASSIGNMENTS OF ERROR

1. Whether the trial court erred as a matter of law in finding that *lis pendens* applied.

2. Whether the trial court erred as a matter of law in granting the exception of *lis pendens* and staying Plaintiffs' case.

3. Whether, assuming *arguendo* that the doctrine of lis pendens is applicable, the trial court abused its discretion in staying the instant case.

4. Whether the exception of *lis pendens*, as applied, violates Plaintiffs' Constitutional guarantee of due process.

## V.   SUMMARY OF ARGUMENT

---

[34] See Order granting extension of return date, at Appendix pg. 288.

Louisiana Code of Civil Procedure Article 532 states:

> When a suit is brought in a Louisiana court while another is pending in a court of another state or of the United States on the same transaction or occurrence, between the same parties in the same capacities, on motion of the defendant or on its own motion, the court may stay all proceedings in the second suit until the first has been discontinued or final judgment has been rendered.

The article requires that a defendant in a state court action prove the following elements in order to prevail on an exception of *lis pendens* based on the pendency of another case in a foreign or Federal court action: (1) that two or more suits are pending, (2) that the two or more suits arise out of the same transaction or occurrence, and (3) that the two or more suits are between the same parties in the same capacities. 1 La. Prac. Civ. Proc. Article 532 (2013 ed.). If the defendant proves all three requirements, all but the first filed suit may be stayed "until the first has been discontinued or final judgment has been rendered." *Id.* "The 'test' established to determine if an exception of *lis pendens* should be sustained is the same as that for *res judicata*; thus, an exception of *lis pendens* should be sustained if 'a final judgment in the first suit would be res judicata in the subsequently filed suit.'" *Aisola v. Louisiana Citizens Prop. Ins. Corp.*, 2014-1708 (La. 10/14/15), 180 So. 3d 266, 269 (citations omitted) (construing Louisiana Code of Civil Procedure Article 531).

Pursuant to Louisiana Code of Civil Procedure Article 532, the question is whether the same parties in the same capacities are litigating in state and federal court. The answer is no. Under federal law, (which would apply to the four pending class actions involved here), until a class is certified the only parties to a putative class are the named parties. If and when a class is certified, the resolution of the class action will only apply to those individuals who have not timely opted out of the class. But, one cannot opt out prior to class certification.

None of the named Plaintiffs in the four federal cases are the same as any plaintiff in the instant case.  Because there is no identity of parties for the purposes of Article 532, the trial court erred as a matter of law in granting the exception of *lis pendens* and staying Plaintiffs' case.  Continuing to hold Plaintiffs in limbo pending the outcome of a proceeding they are not a part of in a foreign jurisdiction would deny them access to Louisiana's courts and constitute a violation of their due process rights—especially where, as alleged in the Petition, they continue to suffer harm as a result of the Defendants' actions and omissions in operating and managing the Jefferson Parish landfill.

Even if *lis pendens* were found to apply in this case, the trial court abused its discretion in granting a stay.  Not only have the Plaintiffs alleged specific and continuing harm, but an official of the Louisiana Department of Health advised residents with respiratory sensitivities to leave the area when they experience the odors.[35]  There is nothing in the record to indicate that the trial court weighed any of the continued harm and risks of harm to Plaintiffs in deciding to stay this lawsuit.[36]  This was plainly arbitrary and capricious, the very definition of an abuse of discretion.  For all the reasons above, the trial court's decision must be reversed and the case remanded and allowed to proceed.

## VI.   LAW AND ARGUMENT

### a.  Standard of Review

An appellate court reviews issues of law *de novo* to determine whether the court's interpretative decision is legally correct.  *Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C.*, 2012-1014 (La. App. 4 Cir. 8/21/13), 122 So. 3d 1152, 1157-58, *reh'g denied* (9/11/13), *writ denied*, 2013-2414 (La. 1/10/14), 130 So. 3d

---

[35] *See* Petition for Damages and Injunctive Relief at Appendix pg. 41.
[36] *See* Hearing Transcript, Jan. 24, 2019 at Appendix pg. 289-325. *See also* Judgment, Feb. 6, 2019 at Appendix pg. 282.

327.  On issues of law, the decision of the trial court is not entitled to deference by

the reviewing court.  *Id.*

Matters within the discretion of the trial court are reviewed for an "abuse of

discretion."  *Southwestern Electrical Power Co. v. Amax, Inc.*, 621 So. 2d 615 (La.

1993)."  An "abuse of discretion results from a conclusion reached capriciously or

in an arbitrary manner."  *Torrance v. Caddo Par. Police Jury*, 119 So. 2d 617, 619

(La. App. 2d Cir. 1960) (citations and internal quotations marks omitted).

"Capricious" means the entry of judgment with no substantial evidence to support it

or a conclusion contrary to substantiated competent evidence. *Coliseum Square*

*Assoc. v. New Orleans*, 544 So. 2d 351, 360 (La. 1989) (citations omitted).

"Arbitrary" implies a disregard of evidence or the proper weight thereof.  *Id.*

(citations omitted).

> **b. The Trial Court Erred As A Matter Of Law In Granting The Exception Of *Lis Pendens* Because The Plaintiffs In This Case are Different From All Plaintiffs In The Pending Class Actions.**

Louisiana Code of Civil Procedure Article 532 states:

> When a suit is brought in a Louisiana court while another is pending in a court of another state or of the United States on the same transaction or occurrence, between the same parties in the same capacities, on motion of the defendant or on its own motion, the court may stay all proceedings in the second suit until the first has been discontinued or final judgment has been rendered.

La. Code Civ. Proc. Ann. art. 532.  Under 532, a defendant in a state court

action must prove: (1) that two or more suits are pending in different jurisdictions,

(2) that the two or more suits arise out of the same transaction or occurrence, and (3)

that the two or more suits are between the same parties in the same capacities. 1 La.

Prac. Civ. Proc. Article 532 (2013 ed.).   If the defendant proves all three

requirements, all but the first filed suit *may* be stayed "until the first has been

discontinued or final judgment has been rendered." *Id.*

This case is being litigated in Louisiana state court, while the class action cases are being, and will be, litigated in federal court.  As a result, deciding who is a party to this case is a matter of state law, while deciding who is a party to the federal cases is a matter of federal law.  *Quinn v. Louisiana Citizens Prop. Ins. Corp.*, 2012-0152 (La. 11/2/12), 118 So. 3d 1011, 1020 n. 12 ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law).  Plaintiffs in the instant case and the Plaintiffs in the four putative federal class actions pending in the Eastern District of Louisiana are not the same and are not litigating in the same capacity.[37]  Not one of the five named plaintiffs in the four putative class actions overlaps with a single plaintiff here.[38]  Nor are the parties litigating in the "same capacities."  Each of the eighty-eight named plaintiffs in this case are litigating in their individual capacities or in their capacities as tutors and legal representatives of their minor children, while the federal Plaintiffs each seek to represent a class of individuals. Because none of the parties to the instant case are parties to any of the federal class actions, *res judicata* would not apply and the trial court's *lis pendens* decision must be overruled.

Defendants argued, and the court below accepted, that because all of the plaintiffs in this case are residents of Jefferson Parish and therefore fall within the scope of the *proposed* classes in the four federal cases, the parties in all of the cases are the same for purposes of *lis pendens*.[39] Significantly, however, no class has yet been certified in any of the pending federal cases, and as the Eastern District has denied motions to remand those cases to state court, it will likely be  months if not a

---

[37] *See* Petition for Damages and Injunctive Relief, Appendix at pg. 31-37. *See also* Defendant Waste Connection's Exception of *Lis Pendens* and Memorandum in Support (Supplemental Filing), Exhibits B-E at Appendix pgs. 167-194
[38] The five named Plaintiffs in the four Federal class cases are Elias Jorge "George" Ictech-Bendeck; Savannah Thompson, Larry Bernard and Mona Bernard, and Nicole Landry-Boudreaux. None are among or connected to the eighty-eight plaintiffs who filed suit in the *Addison* action.
[39] *See* Waste Connections Mem. In Supp. Of *Lis Pendens* (Supplemental Filing), at Appendix pg. 131 (quoting class actions).

year before any class certification rulings are issued.[40]  Because the class actions will remain in federal court, under Section 532 the question is: does the federal court consider the current plaintiffs as parties to the putative class actions?  The answer is an unambiguous no.

i.  **A putative class member is not a "party" to a class action and cannot be bound unless a class is certified and they have not opted out.**

Whatever Louisiana state law may be, it is clear that in federal court, until a class is certified, the only parties to the action are the named parties.  The general rule is that putative class members are not considered parties to a case.[41]  *See Devlin v. Scardelletti*, 536 U.S. 1, 16 n.1 (2002) (Scalia, J. dissenting) ("Not even petitioner, however, is willing to advance the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation before the class is certified.").[42]  Indeed, a pre-certification plaintiff who has brought a putative class may settle without notice to any putative class member, so long as that settlement has no determental [sic] effect on any putative class member's rights.  *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1314 (4th Cir. 1978).

---

[40] *See Landry-Boudreaux v. Progressive Waste Solutions of La, Inc. et. al.*; EDLA Case No. Order and Reasons, at Appendix pg. 326, *Thompson v. Louisiana Regional Landfill Comp, et. al.*. EDLA Case No. 18-8071, Order and Reasons at Appendix pg. 331, *Bernard v. Progressive Waste Solutions of La, Inc. et. al.*, EDLA Case No. 18-8218, Order and Reasons at pg. 343; *Ictech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.;* EDLA Case No. 18-7889, Order and Reasons at pg. 348.

[41] Moreover, even when a class is certified, an absent class member is not considered a "party" to the litigation.  *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1317 (11th Cir. 2013).

[42] *See also* John Randall Whaley et. al., Precertification Discovery: A User's Guide, 80 Tul. L. Rev. 1827, 1841–42 (2006) ("A 'putative' class member is usually understood to be one of those persons generically identified in the complaint's class definition before a certification decision is made. 'Putative' is an appropriate term to describe this person or entity at this procedural stage since the class is not certified and this person is only a potential member of the proposed class. An 'absent' class member, however, usually refers to an unnamed, unrepresentative class member as defined in the court's certification order. This class member would have received adequate notice informing him of his inclusion in the class and his right to opt out. The absent class member would have chosen not to opt out of the class action and is thus bound, for good or ill, by any decision made on behalf of the class."); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 351 n.4 (1983) ("Putative class members frequently are not entitled to intervene as of right under Fed. Rule Civ. Proc. 24(a), and permissive intervention under Fed. Rule Civ. Proc. 24(b) may be denied in the discretion of the District Court.").

Even Louisiana state courts recognize that, absent class certification, no unnamed individual can be a party to the action. *See Harris v. Louisiana Citizens Prop. Ins. Co.*, 14-120 (La. App. 5 Cir. 10/29/14), 164 So. 3d 216, 221, *writ denied*, 2014-2484 (La. 2/6/15), 158 So. 3d 823 ("This Court has found that '[o]nce the demand for class certification is stricken, the 'action may continue between the named parties alone.'" (quoting *Sellers v. El Paso Indus. Energy, L.P.*, 08–403 (La. App. 5 Cir. 2/10/09), 8 So. 3d 723, 732)); *see also* La. C.C.P. art. 592(A)(3)(c) ("If the court finds that the action should not be maintained as a class action, the action may continue between the named parties.").

Only "when a class is certified, [do] absent class members . . . [become] parties . . . bound by [a class] settlement or judgement" unless they timely opt out. *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 819–20 (N.D. Ill. 2018) (internal quotation marks omitted) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) and *Devlin*, 536 U.S. at 10 (2002)). This is why both putative and "absent class members are *not* considered 'clients' of putative class counsel . . . that designation is limited to those class members (typically the named plaintiffs or proposed class representatives) with whom putative class counsel has an individual relationship and retainer agreement." 3 Newberg on Class Actions § 9:6 (5th ed.) (emphasis added).

For these reason alone, *lis pendens* is inapplicable. None of the Plaintiffs in this action are named Plaintiffs or proposed representatives in the four prior actions.[43] None have an attorney-client relationship with the proposed class representative. Therefore, none can be deemed parties to the putative class actions pending in federal court.

---

[43] *See* Petition for Damages and Injunctive Relief, Appendix at pg. 32-37. *See* Defendant Waste Connection's Exception of *Lis Pendens* and Memorandum in Support (Supplemental Filing), Exhibits B-E at Appendix pgs. 167-194.

ii.     **The trial court's reliance on *Aisola* and its progeny was in error because Plaintiffs here do not seek benefits of the previously filed class actions.**

In the trial court, Defendants cited several cases in support of their contention that putative class members satisfy the "same parties in same capacities" requirement of Article 532, chiefly: *Aisola v. Louisiana Citizens Prop. Ins. Corp.*, 2014-1708 (La. 10/14/15), 180 So. 3d 266; *Duckworth*, 125 So. 3d 1057; and *Harris v. La. Citizens Prop. Ins. Co.*, 14-120 (La. App. 5 Cir 10/29/14), 164 So. 3d 216.[44] As discussed below, however, none of those cases addresses the application of the *lis pendens* doctrine in the situation presented here; to the contrary, the facts in those cases demonstrate why *lis pendens* does not and cannot apply in this case.

*Aisola*, *Duckworth*, and *Harris* are limited to interpreting La. C.C.P. art. 596 and make clear that the filing a proposed class tolls the prescriptive period for individuals falling under the proposed class definitions. *Aisola*, 180 So. 3d at 267; *Duckworth*, 125 So. 3d at 1060; *Harris*, 164 So. 3d at 218. La. C.C.P. art. 596 states in relevant part, "Liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein." La. Code Civ. Proc. Ann. art. 596. In each of those cases, however, the *plaintiffs not only admitted, but expressly asserted, that they were part of the proffered classes in order to benefit from prescriptive tolling* under La. C.C.P. art. 596. *Aisola*, 180 So. 3d at 267; *Duckworth*, 125 So. 3d at 1060; *Harris*, 164 So. 3d at 218. In each case, the courts strictly construed La. C.C.P. art. 596 to find that, having affirmatively sought the protection of the previously filed class actions, *lis pendens* precluded plaintiffs' subsequently filed suits. In sharp contrast, Plaintiffs

---

[44] *See* Defendant Waste Connection, US Inc's Combined Reply Mem. In Support of Declinatory Exception of *Lis Pendens* and Motion to Stay and Response to Plaintiffs "Objection to Untimely Filing" at Appendix pg. 272.

*here have not requested any benefit under the proposed class definitions and are not*

*alleging they are part of the putative classes.*

In *Aisola*, Plaintiff property owners sued their insurer four and a half years

after Hurricane Katrina. 180 So. 3d at 267. In order to defeat prescription, the *Aisola*

Plaintiffs amended their petition to explicitly allege that they were part of six

putative Louisiana state class actions and one Federal class action. *Id.* At least two

of the state class actions—*Oubre and Press*—had been certified *before* the *Aisola*

plaintiffs sued. *See id.* at 268, n.4 & 6. In sustaining *lis pendens* under Article 531,

which requires mandatory dismissal of the second-filed action, the court reasoned,

> Based upon plaintiffs' allegations they are putative class members of
> the *Oubre*, *Orrill*, *Press*, and *Christenberry* class action suits, which
> they assert in order to secure the benefit of suspension of prescription
> under La. Code Civ. Proc. art. 596, it follows that any judgment
> rendered in those suits would be conclusive and, thus, res judicata, to
> the identical claims raised in plaintiffs' instant individual suits.
> Accordingly, because any judgment rendered in the *Oubre*, *Orrill*,
> *Press*, and *Christenberry* class action suits would be res judicata to the
> identical claims raised in the instant individual suits, lis pendens applies
> to those claims.

*Id.* at 269. Further:

> In order to obtain the benefit of suspension of prescription, the plaintiffs
> here alleged they are putative class members of various pending class
> actions and their claims arise out of the same transactions or
> occurrences as the reliant class action suits. Any judgment rendered in
> the *Oubre*, *Orrill*, *Press*, and *Christenberry* class action suits would be
> res judicata to the identical claims raised by the plaintiffs in their
> individual suits. Because any judgment on those class actions in which
> the plaintiffs are alleged putative class members [and in which they
> have not timely opted out] would be conclusive and binding as to the
> plaintiffs under La. Code Civ. Proc. art. 597, it necessarily follows that
> the requirements of lis pendens are satisfied.

*Id.* at 270–71.

In *Duckworth*, Plaintiff whose case was otherwise prescribed, sought the

extended prescription of Article 596, arguing that she was part of a timely filed, but

not yet certified, class action. *Duckworth*, 125 So. 3d at 1060–61. The Court held

that the plain language and meaning of Article 596 specifically provides prescriptive

protection to "all persons possessing claims arising out of transactions or occurrences described in a class action petition [who] are members of the class and are bound by any judgment in the action, unless they timely request exclusion." *Id.* at 1069–70. Here again, the plaintiff affirmatively sought to align herself with the pending class action lawsuit in order to avoid prescription.

And in *Harris*, the Fifth Circuit faced the issue of whether or not a plaintiff, who filed years after the prescriptive period ran, could still timely bring suit by affirmatively invoking the protections of a previously filed class action. *Harris*, 164 So. 3d at 217.[45]   Because the Court found that any judgement rendered in those state court class actions would be *res judicata*, it sustained the *lis pendens* prescription. *Id.* at 220.

During oral argument in this case, the trial court erroneously felt constrained by the foregoing cases, especially *Aisola*, to find the doctrine of *lis pendens* applicable: ("The question [for *lis pendens* purposes] is whether they are basically putative class members and, again, I can't see a way that they would not be.") [46] Judge Grefer concluded that:

> [F]rom a judicial efficiency standpoint and I think in fairness to the defendants to be able to defend these types of actions in one forum I think is just fundamentally fair. So I'm not going to exercise the discretion and allow this matter to continue, as such."[47]

Thus, in Judge Grefer's view, at best, unless Plaintiffs somehow attempted to pre-opt-out of a class that does not exist, the doctrine of *lis pendens* applies. In this, the trial court erred.

---

[45] In *Harris* the Plaintiff first filed suit without claiming he was a putative class member. *Harris*, 164 So. 3d at 217. That suit was held to be prescribed. *Id.* Filing again, he explicitly claimed he was a putative member of various class actions. *Id.* Further, it must be noted that many of these class actions, all brought in the wake of Hurricane Katrina, were, by 2013 when Harris filed his second suit, certified and still pending. *Id.* at 219, n. 4–8.

[46] *See* Hearing Transcript, Jan. 24, 2019 at Appendix pg. 321.

[47] *See Id.*

Contrary to the opinion of the court below, *Aisola* and related cases do not require the courts to read into the *lis pendens* statute the proposition that a purported class will include individual plaintiffs falling into the proposed class definition before any class is certified and when such plaintiffs have not sought the protection or benefits of putative class status.[48] As the Louisiana Supreme Court recognized, opting out of a class prior to certification would be a nullity—it is not an available option because no class yet exists to opt out of. "The decision to 'opt out' is made, not at the time of filing a class action petition, but after the class is certified, notice is issued, and a timely election form is submitted." *Duckworth*, 125 So. 3d at 1070 (citing La. C.C.P. art. 592(B)–(C)). This is the precise procedure detailed in Louisiana Statute. *Id.* More to the point, the benefits of the class only flow to those individuals who have not opted out and are thus bound by the decision of the class action case. *Id.* at 1069–70 (the prescriptive period extension of Art. 596 only applies to individuals who "are members of the class and are bound by any judgment in the action" by virtue of not "timely request[ing] exclusion.").

Indeed, as the cases make clear, the fundamental test of whether the doctrine of *lis pendens* applies is whether disposition of the first case on the merits will act as *res judicata* as to the subsequently filed case. *Aisola*, 180 So. 3d at 269. Plainly, it is impossible to ascertain whether a putative class action will act as *res judicata* against a subsequently filed action *unless and until a class is actually certified, the class is defined, and the plaintiffs in the subsequent action choose not to opt out of any certified class of which they may be a member.* Thus, there is simply no basis to hold that the four pending class actions involving the Jefferson Parish Landfill will act as *res judicata* on the instant litigation.

---

[48] Indeed, to find otherwise would be to hold that the legislature would allow any attorney barred in the state to file a suit on any action for "all individuals in the state of Louisiana," and then have all other claims barred or stayed pending the outcome of class certification. This cannot have been the legislature's or the La. Supreme Court's intention.

Here, remand has been denied.[49] All putative class actions are pending in federal court and will remain there.[50]  Federal law is clear: absent class certification, only named plaintiffs are parties to a suit.  Therefore, the same plaintiffs are not litigating the class actions and these cases in the same capacities.  The trial court's clear error must be overturned.

### c. The Court Erred in Holding That Article 532 Is Applicable To A Timely Filed Individual Suit When The First Filed Suit Was A Class Action.

The  doctrine of *lis pendens* is not for the purpose of judicial economy but instead is meant to prevent litigants from forum shopping by preventing "a series of vexatious suits by the same plaintiff against the same defendant in the same transaction or occurrence in different forums." *Sw. Elec. Power Co. v. Amax, Inc.*, 621 So. 2d 615, 615 (La. 1993) (Lemmon, J., concurring).  This lawsuit does not invoke or threaten that central purpose.  Consequently, *lis pendens* cannot shield these defendants from this case.

### i. Louisiana's laws do not prohibit or prevent multiple simultaneous actions when a class action is the first filed.

*Duckworth* recognized that "Louisiana's current rules clearly contemplate the possibility of a multiplicity of individual suits because plaintiffs . . . [in class cases]

---

[49]*See Landry-Boudreaux v. Progressive Waste Solutions of La, Inc. et. al.*; EDLA Case No. Order and Reasons, at  Appendix pg. 326, *Thompson v. Louisiana Regional Landfill Comp, et. al..* EDLA Case No. 18-8071, Order and Reasons at Appendix pg. 331, *Bernard v. Progressive Waste Solutions of La, Inc. et. al.*, EDLA Case No. 18-8218, Order and Reasons at pg. 343; *Ictech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.;* EDLA Case No. 18-7889, Order and Reasons at pg. 348.

[50] It is virtually certain that the defendants will fight class certification, and it is also doubtful that the Eastern District of Louisiana will certify a class composed of "All persons domiciled of and/or within the Parish of Jefferson."  *See, e.g., Madison v. Chalmette Ref., L.L.C.*, 637 F.3d 551 (5th Cir. 2011) (holding that the Eastern District of Louisiana abused its discretion in certifying a class that included all persons located at the Chalmette National Battlefield in St. Bernard Parish, Louisiana when petroleum coke dust allegedly migrated over them); *Robertson v. Monsanto Co.*, 287 F. App'x 354 (5th Cir. 2008) (reversing the Eastern District of Louisiana's order certifying a class alleging claims arising out of a gas release at a Monsanto manufacturing plant); *Steering Comm. V. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006) (plaintiffs did not meet their burden of demonstrating that common issues predominated over the significant individual issues in exposure to chemical plant smoke); *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir. 2003); *see also Price v. Martin*, 79 So. 2d 960 (La. Sup. Ct. 2011); *Dupree v. Lafayette Ins. Co.*, 2009-2602 (La. 11/30/10), 51 So. 3d 673, 682 (class certification is generally not appropriate for individualized damage claims seeking primarily monetary damages).

are allowed to submit election forms requesting exclusion from the class." *Id.* at

1070. The Supreme Court expressly rejected the idea that Louisiana law prohibited

individual cases from moving forward prior to the decision on class certification:

> While it might be a good idea to have a rule that prohibits individual
> cases until after class certification is resolved, no such rule exists today.
> The current Federal Rules of Civil Procedure permit a multiplicity of
> suits in different jurisdictions after a class is certified because members
> of the class are permitted to "opt out." See Rule 23(c). Nor is there
> anything in the Federal Rules of Civil Procedure that prohibits
> individual lawsuits being filed in multiple jurisdictions prior to a ruling
> on a pending motion for class certification. Rule 23 is an efficient way
> to handle multiple parties, but it is clearly designed to accommodate
> individual choice as well. While it might be argued that individual
> choice is not a good idea in this context, such an argument would justify
> a new rule. It would not justify ignoring the structure of the current rule,
> and a clear directive from the United States Supreme Court. Finally, it
> would be ironic to say that [plaintiff] has filed his case too soon and,
> therefore, it must be dismissed because the statute of limitation is
> violated. It would turn the purpose of the statute of limitations on its
> head to say that [plaintiff] must wait until the dispute is more stale
> before he can file his individual case.

*Id.* at 1071 (quoting with approval *Lehman v. United Parcel Service, Inc.*, 443

F.Supp. 2d 1146, 1151 (W.D. Mo. 2006). The Supreme Court emphasized, "The

same rationale applies with equal force to the provisions of Louisiana law." *Id.*

The teaching of *Duckworth* and the other Louisiana cases cited above—that

article 596 must be strictly and narrowly construed—applies equally to all legislative

enactments including Article 532. Using the exception if *lis pendens* to dismiss or

stay individual plaintiffs' cases where class actions have been filed by *different*

plaintiffs is not defensible under Louisiana law. "In Louisiana, as in other civil law

jurisdictions, legislation is superior to any other source of law." *Duckworth*, 125

So. 3d at 1064. In interpreting such laws, "Words are to be understood in their

ordinary, everyday meanings—unless the context indicates that they bear a technical

sense." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of

Legal Texts, 69 (2012); *c.f. Reynolds v. Select Properties, Ltd.*, 634 So. 2d 1180,

1183 (La. 1994) ("Words and phrases used in a [insurance] policy are to be construed

using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.").

The requirement that the parties be the same is plain as day in the *lis pendens* statute. The words are clear on their face and clear in context. *Lis pendens* is a shield that allows a Defendant to prevent multiple, vexatious lawsuits in different jurisdictions brought by the same plaintiff. *Sw. Elec. Power Co.*, 621 So. 2d at 615 (Lemmon, J., concurring). It cannot be used as a sword to save a tortfeasor from defending lawsuits brought by all those he or she has wronged. If this had been the legislature's intent, *lis pendens* would not require the "same parties in the same capacities." No amount of interpretive language from the Louisiana appellate courts can overturn the plain language of the solution the legislature provided.

### ii. Article 532 is not applicable to individual suits when the first filed suit is a class action.

In Louisiana, the legislature has passed three specific laws applying the doctrine of *lis pendens* in three specific and different situations: Articles 531 and 532, which apply to individual parties bringing duplicative cases in either state court or state and a foreign court; and  Article 593.1, which applies to the filing of multiple class actions. *See* La. Code Civ. Proc. Ann. art. 593.1 (specifically creating *lis pendens* exception for class actions that neither stays nor dismisses second filed suits but merely allows for consolidation).

When the legislature enacts a law, it must be considered by the courts as "the solemn expression of the legislative will." *Sw. Elec. Power Co.*, 621 So. 2d at 615 (Lemmon, J., concurring). "If an enactment provides a solution to a particular situation, then no jurisprudence, usage, equity or doctrine can prevail over the legislation." *Id.* (citing La. C.C. arts. 2 and 3). Similarly, if the legislature had intended Articles 531 and 532 to be used between parties on the one hand bringing claims in their individual capacity, and other parties litigating as a putative class,

then the legislature would have had no reason to pass Article 593.1.  If the legislature

had intended for *lis pendens* to apply as between putative class actions and individual

cases, it would have included such language in Art. 531, 532 or 593.1.  But, it did

not, singling that the legislature sees this as a distinct issue.  *See Int'l Paper Co. v.*

*Hilton*, 2007-0290 (La. 10/16/07), 966 So. 2d 545, 558–59 ("Expressio Unius est

Exclusio Alterius, which dictates that 'when the legislature specifically enumerates

a series of things, the legislature's omission of other items, which could have easily

been included in the statute, is deemed intentional.' (citations omitted)").

   The trial court was clearly erroneous in holding that Article 532 could be used

to stay individual plaintiffs' cases where class actions were filed by different

plaintiffs, which are now pending in federal court.  The Court's holding must be

reversed.

### d.  The Trial Court Abused Its Discretion In Staying Plaintiffs' Case.

   In the alternative, assuming the doctrine of *Lis Pendens* applies, the trial court

abused its discretion in granting Defendants exception because the ruling was

arbitrary and capricious.  *Torrance*, 119 So. 2d at 619.  A court acts arbitrarily and

capriciously when it enters a judgment without substantial evidence to support it or

has given the evidence improper weight.  *Coliseum Square Assoc.*, 544 So. 2d at 360

(citations omitted).

   Plaintiffs' have alleged serious and continuing harm and presented evidence

of the continuing danger the landfill poses to plaintiffs.[51] The Louisiana Department

of Health has warned residents to "leave the area" when odor levels are high,

"particularly if they have certain chronic conditions which put them at increased risk

mainly pulmonary disease and asthma COPD."[52]  The Parish president has admitted

---

[51] *See* Petition for Damages and Request for Injunctive Relief, at Appendix pg. 43.
[52] *Id* at Appendix pg. 41.

the landfill is not operating properly.[53]  Plaintiffs then sought expedited discovery to

preserve evidence and mitigate that harm.[54]

Without even mentioning or weighing the harm that Plaintiffs allege they will

continue to suffer, the court thought it appropriate to stay this case simply on the

grounds of judicial economy and because of the inconvenience that the Defendants,

large, nationally recognized corporations, would experience by being required to

defend multiple lawsuits:

> I understand, Mr. Neuman, that I have the right to exercise discretion
> in this particular matter. I am reluctant, as always, to have similar cases
> or same cases traveling down different paths. I think from a judicial
> efficiency standpoint and I think in fairness to the defendants to be able
> to defend these types of actions in one forum I think is just
> fundamentally fair. So I'm not going to exercise the discretion and allow
> this matter to continue, as such. Given that the federal action is pending,
> it's incumbent upon the Court to stay these proceedings, not to dismiss
> them, but to simply stay them as I appreciate the law in this matter.
>
> So accordingly, the Court is going to grant the Exception of Lis Pendens
> and stay the proceedings in this case.[55]

The trial court took this action, moreover, despite the fact that *lis pendens* "is

considered *stricti juris*; therefore, any doubt concerning the application of either [*lis*

*pendens* or *res judicata*] doctrine must be resolved against its application and for

maintenance of the suit." *Robbins v. Delta Wire Rope, Inc.*, 2015-1757 (La. App. 1

Cir. 6/3/16), 196 So. 3d 700, 705 (citations omitted).   Judge Grefer made no

finding—nor even a concerted effort to find—that plaintiffs do not face a threat of

continued harm, or that such real or potential harm is outweighed by the mere

inconvenience to the defendants in being required to defend this action while also

opposing class certification in the pending federal cases. Indeed, if such balancing

had been undertaken, it is difficult to imagine how the balance should not be struck

---

[53] *Id* at Appendix pg. 40.
[54] *See* Petitioners Request for Expedited Discovery for the Purpose of Entering and Inspecting the Subject Landfill and Motion for Expedited Hearing and Incorporated Memorandum in Support, at Appendix pg. 51.
[55] Hearing Transcript, Jan. 24, 2019 at Appendix pg. 321.

in favor of allowing plaintiffs to proceed. Thus, it is axiomatic that the trial court's decision to stay this case was arbitrary and capricious, and should be overruled.

### e. Granting Lis Pendens Violates Plaintiffs Right To Due Process.

"Gladstone almost one hundred years ago asserted 'Justice delayed is justice denied.'" *Watt v. Creppel*, 67 So. 2d 341, 345 (La. Ct. App. 1953). The trial courts error in granting *lis pendens* has effectively denied Plaintiffs due process rights by denying them timely access to the courts. As it currently stands, Plaintiffs here must wait until some unknown date when the Eastern District of Louisiana finally rules on class certification before continuing their suit.[56] This is a gross and needless delay of justice, preventing Plaintiffs from even commencing discovery and risking the loss of valuable evidence.

Article I, Section 2 of the Louisiana Constitution of 1974, guarantees that "no person can be deprived of life, liberty or property, except by due process of law." "The essential elements of due process of law are notice, and the opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case." *Succession of Griffith*, 415 So. 2d 670, 674 (La. Ct. App. 1982) (citation omitted). The opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Similarly, Article 22 of the Louisiana Constitution of 1974, guarantees that "All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

As interpreted by the Defendants, and as applied by the trial court, Art. 532 deprives the Plaintiffs of these constitutional rights by preventing their access to the courts for redress of their grievances. The Supreme Court in *Duckworth* also

---

[56] *See also* Judgment, Feb. 6, 2019 at Appendix pg. 282.

expressly warned against interpretations of Louisiana law as it relates to pre-class-certification filings that would create "prescriptive purgatory." 125 So. 3d at 1068. Yet, that is precisely where the trial court placed Plaintiffs here—unable to proceed on their claims until the Eastern District of Louisiana rules on class certification, at which time either a class will exist and Plaintiffs will finally have the option of opting out, or that the class is stricken, voiding any possibility of *lis pendens*.

The "prescriptive purgatory" to which the trial court sentenced Plaintiffs is inequitable.  This is particularly the case because the Louisiana Supreme Court has made clear that the prescriptive period for putative class members *is not* tolled under Article 596 when the only pending class cases are in Federal Court. *Quinn*, 118 So. 3d at 1019 (suspension of prescription under La. C.C.P. art. 596 can apply only to putative class actions filed in Louisiana state courts); *see also Quinn* at 1022 ("[O]ur analysis of La. C.C.P. art. 596 leads us to conclude that the legislature has rejected 'cross-jurisdictional tolling' in class action proceedings. As a result, the Quinns cannot rely on the 'recently dismissed' class action claim in the U.S. District Court for the Eastern District of Louisiana to establish a suspension of prescription as to the 'individual' claims asserted in their lawsuit.").

Plaintiffs continue to suffer legal and physical harm from the releases from the Landfill.[57]  Plaintiffs are ready to litigate their claims *now,* as demonstrated by the fact that they filed a separate lawsuit in their individual capacities, and moved for expedited discovery in order to preserve evidence.[58] The State Department of Health has advised residents to leave the area when they experience the odors, and concentrations of some toxic chemicals contained in landfill gas, including

---

[57] *See also* Petition for Damages and Request for Injunctive Relief at Appendix pg. 44. *See* Petitioners Request for Expedited Discovery for the Purpose of Entering and Inspecting the Subject Landfill and Motion for Expedited Hearing and Incorporated Memorandum in Support, at Appendix pg. 51.
[58] See Petition for Damages and Request for Injunctive Relief at Appendix pg. 31-37.

carcinogens, have been detected in the community at levels that exceed EPA screening thresholds—meaning that more investigation is required.[59]

Yet, as the Eastern District of Louisiana has denied remand, Plaintiffs in this action are now stuck.[60]  Under Judge Grefer's erroneous decision, they must wait for the Eastern District to rule on class certification and hope that whatever class is certified—*if any* class is certified—either includes them or that class certification proceedings are completed before the prescriptive period.  If the Eastern District denies class status and such denial falls outside the general prescriptive period, Plaintiffs will have lost their right to sue, and certainly lost their right to any meaningful relief. [61]

Plaintiffs, here, have further been deprived of the ability to have their rights pursued by counsel of their choosing.  The right to counsel in civil matters "includes the right to choose the lawyer who will provide that representation." *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1257 (5th Cir. 1983).  It is a right that "should be freely exercised without impingement," the right is not absolute. *Texas Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992) (quoting *McCuin*, 714 F.2d at 1262).  Only where there are "compelling reasons," can a "party's right to choose its own counsel may be overridden." *Id.*  There are no such compelling reasons here.  Neither judicial economy nor a Defendants' wish to

---

[59] *See* Petition for Damages and Injunctive Relief at Appendix pg. 13. *See also* Exhibit A to Petitioner's Motion for Expedited Discovery, Declaration of Paul C. Chrostowski, Ph.D. dated Dec. 19, 2018, at Appendix pg. 43-44..

[60] *See Landry-Boudreaux v. Progressive Waste Solutions of La, Inc. et. al.*; EDLA Case No. Order and Reasons, at  Appendix pg. 326, *Thompson v. Louisiana Regional Landfill Comp, et. al.*. EDLA Case No. 18-8071, Order and Reasons at Appendix pg. 331, *Bernard v. Progressive Waste Solutions of La, Inc. et. al.*, EDLA Case No. 18-8218, Order and Reasons at pg. 343; *Ictech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.;* EDLA Case No. 18-7889, Order and Reasons at pg. 348.

[61] Although there is a continuing one-year prescriptive period for tort claims, assuming that the Parish ultimately remedies the Landfill's deficiencies, the harm (and damages) suffered by plaintiffs in the future will presumably be much less than the harms they have suffered during the past year when the Landfill's releases have been largely uncontrolled.

be shielded from a multiplicity of suits from his or her bad acts would justify denying that right to Plaintiffs.

Here, the trial court has denied Plaintiffs their rights and handed their case to attorneys who are not their representatives in cases which they are not parties. The trial court's decision denies Plaintiffs a meaningful opportunity to be heard in Louisiana's courts and be represented by counsel of theirs choosing. It must, therefore, be overturned.

## VII.   CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, this Court should REVERSE the Judgment of the trial court granting Defendant's Exception of *Lis Pendens* and remand this case to the trial court for further proceedings consistent with this ruling.

**Respectfully Submitted:**

**FORREST CRESSY & JAMES, LLC**

Byron Miller Forrest (#35480)
Nicholas V. Cressy (#35725)
S. Eliza James (#35182)
One Canal Place Office Tower
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Telephone: 504-605-0777
Facsimile: 504-322-3884

**WHITEFORD TAYLOR PRESTON, LLP**

_____s/ Barry S. Neuman_____
Barry S. Neuman, Admitted *Pro Hac Vice*
Adrian Snead, Admitted *Pro Hac Vice*
1800 M Street, NW
Suite 450N
Washington, DC 20036
Telephone: (202) 659-6800

*Appeal counsel for Plaintiffs.*

## VIII.   <u>VERIFICATION AND CERTIFICATE OF SERVICE</u>

**STATE OF LOUISIANA**
**PARISH OF ORLEANS**

**BEFORE ME,** the undersigned authority, personally came and appeared:

**S. ELIZA JAMES,**

who declared that she is the attorney of record and appeals counsel for

the Plaintiffs Frederick Addison, *et. al.*, in the present case; that the above and

foregoing Application for Supervisory Writ is true and correct to the best of

her knowledge, information, and belief; and that he served a copy of the

foregoing to the trial court and all counsel of record for all parties By

depositing same in the United States mail, postage pre-paid, and properly

addressed, this  21 day of March, 2019. Counsel avers that an additional

courtesy copy was transmitted through email.

S. Eliza James

SWORN TO AND SUBSCRIBED
BEFORE ME, THIS 21ˢᵗ DAY
OF MARCH, 2019

BYRON MILLER FORREST
Notary Public
State of Louisiana
Orleans Parish
Bar Roll # 35480
My Commission is for Life

Hon. Stephen J. Grefer
24ᵗʰ Judicial District Court
Division "J"
200 Derbigny Street
Gretna, Louisiana 70053

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408

Metairie, Louisiana 70002
Fax: 504- 838-9901

WASTE CONNECTIONS, U.S.
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163
Fax: 504- 596-6301

and

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005
Fax: 202-789-6000

William Barousse
701 Poydras Street
Suite 4800
New Orleans, LA 70139

APTIM Corp.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

# **<u>APPENDIX</u>**

COURT OF APPEAL, FIFTH CIRCUIT
STATE OF LOUISIANA

NO. 19–C–129

---

FREDERICK ADDISON, et al.

Plaintiffs/Applicants

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et al.

Defendants/Respondents

---

CIVIL PROCEEDING

---

## JOINT OPPOSITION TO APPLICATION FOR SUPERVISORY WRITS BY RESPONDENTS WASTE CONNECTIONS US, INC. AND JEFFERSON PARISH

From the 24th Judicial District Court for the Parish of Jefferson,
No. 790-369, Division "J," The Honorable Stephen C. Grefer

| BRADLEY MURCHISON KELLY & SHEA LLC | BEVERIDGE & DIAMOND, P.C. | CONNICK AND CONNICK, LLC |
|---|---|---|
| David R. Taggart (La. Bar No. 12626) 401 Edwards Street, Suite 1000 Shreveport, Louisiana 71101 Telephone: (318) 227-1131 Facsimile: (318) 227-1141 | Megan R. Brillault* Michael G. Murphy* John H. Paul* 477 Madison Avenue, 15th Floor New York, NY 10022 (212) 702-5400 | William P. Connick (La. Bar No. 14158) Michael S. Futrell (La Bar. No. 20819) Matthew D. Moghis (La Bar. No. 33994) 3421 N. Causeway Blvd., Suite 408 Metairie, Louisiana 70002 Telephone:   (504) 681-6658 Facsimile:   (504) 838-9903 |
| Michael C. Mims (La. Bar No. 33991) John B. Stanton (La. Bar No. 36036) 1100 Poydras St., Suite 2700 New Orleans, Louisiana 70163 Telephone: (504) 596-6300 Fax: (504) 596-6301 | James B. Slaughter* 1350 I Street, N.W., Suite 700 Washington, DC 20005 (202) 789-6000  *pro hac vice to be applied for | |
| **Counsel for Waste Connections US, Inc.** | | **Counsel for Jefferson Parish** |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. ii

I.    Introduction ...................................................................... 1

II.   Background and Procedural History.................................... 2

III.  Exercise Of The Court's Supervisory Jurisdiction Is Not Warranted ............ 6

    A.    Applicants' Interests Are Currently Being Represented by Putative Class Counsel in Four Previously Filed Actions ................... 7

    B.    Applicants' Alleged Need for Discovery Is Not Before This Court ....................................................................... 8

    C.    The Trial Court's Judgment Does Not Impede Applicants' Ability to Investigate the Odors that They Are Allegedly Experiencing........................................................... 10

    D.    Judicial Efficiency Warrants Denial of this Writ Application ........... 11

IV.   The Trial Court Did Not Abuse Its Discretion In Granting The Exceptions Of Lis Pendens.......................................... 12

    A.    Article 532 Dictates that Applicants' Suit Remain Stayed ............... 12

        1.   Lis pendens applies because Applicants are also putative class members in the pending class actions ........................... 13

        2.   The federal venue for the related class actions does not affect Applicants' shared identity with the proposed class action plaintiffs ................................................................. 18

        3.   The remaining elements of lis pendens apply.......................... 20

        4.   Article 593.1 has no bearing on this case................................. 22

    B.    The Trial Court's Decision to Temporarily Stay This Action Is Not Unfair to Applicants and Does Not Deprive Them of Due Process........................................................ 23

CONCLUSION ............................................................................ 26

VERIFICATION........................................................................... 28

i

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Aisola v. La. Citizens Prop. Ins. Corp.,*
  14-1708 (La. 10/14/15),
  180 So. 3d 266 .................................... 2, 12, 13, 16, 17, 18, 19, 20, 23, 25, 26

*Allison v. Citgo Petroleum Corp.,*
  151 F.3d 402 (5th Cir. 1998) ....................................................... 25

*Bailey v. Oakbourne Country Club, Inc.,*
  Civil No. 6:14-2546, 2015 WL 4622418 (W.D. La. July 30, 2015) ............ 21

*Bandaries v. Cassidy,*
  11-161 (La. App. 3 Cir. 6/1/11), 66 So. 3d 564........................................... 21

*Black v. Exxon Mobil Corp.,*
  14-524 (La. App. 5 Cir. 11/25/14), 165 So. 3d 1013........................ 13, 14, 21

*Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc.,*
  36,723 (La. App. 2 Cir. 6/27/03), 850 So. 2d 1027..................................... 12

*Cichirillo v. Avondale Indus., Inc.,*
  04-2894 (La. 11/29/05), 917 So. 2d 424....................................................... 10

*Crown, Cork & Seal Co. v. Parker,*
  462 U.S. 345 (1983)................................................................................. 17

*Day v. Persels & Assocs., LLC,*
  729 F.3d 1309 (11th Cir. 2013) ...................................................... 19

*Denoux v. Vessel Mgmt. Servs., Inc.,*
  07-2143 (La. 5/21/08), 983 So. 2d 84......................................................9

*Devlin v. Scardelletti,*
  536 U.S. 1 (2002)................................................................................... 19

*Duckworth v. La. Farm Bureau Mut. Ins. Co.,*
  11-2835 (La. 11/2/12), 125 So. 3d 1057.......................... 7, 14, 15, 17, 19, 25

*Elfer v. Murphy Oil USA, Inc.,*
  02-0020 (La. 3/15/02), 811 So. 2d 892.............................................. 2, 13, 23

*Fincher v. Ins. Corp. of Am.,*
  521 So. 2d 488 (La. App. 4th Cir. 1988)..................................................... 13

*First Fin. Bank, FSB v. Boue*,
    541 So. 2d 947 (La. App. 5th Cir. 1989) ............................................6

*Funai v. Air Center, Inc.*,
    499 So. 2d 669 (La. App. 3d Cir. 1986) ...................................... 20

*Harris v. La. Citizens Prop. Ins. Co.*,
    14-120 (La. App. 5 Cir. 10/29/14), 164 So. 3d 216................. 14, 17

*Hy-Octane Invs. Ltd. v. G & B Oil Prods., Inc.*,
    97-28 (La. App. 3 Cir. 10/29/97), 702 So. 2d 1057....................... 21

*In re Depland*,
    03-0385 (La. App. 4 Cir. 8/6/03), 854 So. 2d 438...........................6

*In re Succession of Bernat*,
    13-277 (La. App. 3 Cir. 10/9/13), 123 So. 3d 1277 ..................... 21

*Jenkins v. Willow, Inc.*,
    No. 16-CA-38, 2016 WL 3033606 (La. App. 5 Cir. May 26, 2016) ........... 22

*Jensen Const. Co. v. Dep't of Transp. & Dev.*,
    542 So. 2d 168 (La. App. 1st Cir. 1989)....................................... 14

*Lee-Bolton v. Koppers Inc.*,
    848 F. Supp. 2d 1342 (N.D. Fla. 2011) .................................... 7, 15

*McCuin v. Tex. Power & Light Co.*,
    714 F.2d 1255 (5th Cir. 1983) ...................................................... 25

*Rider v. Priola Const. Corp.*,
    2009-1294 (La. App. 3 Cir. 4/21/10), 36 So. 3d 389........................9

*Roussell v. Roussell*,
    96-148 (La. App. 5 Cir. 7/30/96), 678 So. 2d 612...........................9

*Quinn v. La. Citizens Prop. Ins. Corp.*,
    12-0152 (La. 11/2/12), 118 So. 3d 1011 ........................... 2, 7, 15, 18, 19, 25

*Sw. Elec. Power Co. v. Amax, Inc.*,
    621 So. 2d 615 (La. 1993) ...................................................... 3, 23

*Tex. Catastrophe Prop. Ins. Ass'n v. Morales*,
    975 F.2d 1178 (5th Cir. 1992) ...................................................... 26

*United Gen. Title Ins. Co. v. Casey Title, Ltd.*,
    01-600 (La. App. 5 Cir. 10/30/01), 800 So. 2d 1061..................... 13

*Women's Clinic v. Watson,*
    550 So. 2d 864 (La. App. 2d Cir. 1989) ..............................................6

*Zen-Noh Grain Corp. v. Thompson,*
    13-110 (La. App. 5 Cir. 8/27/13), 123 So. 3d 777...........................23


## Statutes

Federal Rules of Civil Procedure 23(b)(3)........................................ 15

Federal Rules of Civil Procedure 26 .................................................8

LA. STAT. ANN. § 13:4231 (2018)................................................... 22

LA. CODE CIV. PROC. ANN. art. 531 (2018)................................ 11, 13

LA. CODE CIV. PROC. ANN.
    art. 532 (2018)......................... 3, 5, 7, 11, 12, 13, 14, 17, 21, 22, 23, 26

LA. CODE CIV. PROC. ANN. art. 591(B)(3) (2018)............................. 15

LA. CODE CIV. PROC. ANN. art. 593.1 (2018)................................... 22

LA. CODE CIV. PROC. ANN. art. 596 (2018)...................................... 18

LA. CODE CIV. PROC. ANN. art. 597 (2018)................................ 14, 17

LA. CODE CIV. PROC. ANN. art. 930 (2018)...................................... 10


## Other Sources

Rule 1-3 of the Uniform Rules of Louisiana Courts of Appeal.......... 9, 22

Rule 4-5 of the Uniform Rules of Louisiana Courts of Appeal............. 10

Rule 4-8 of the Uniform Rules of Louisiana Courts of Appeal............. 10

Restatement (Second) of Judgments § 24(2) (1982).............................. 21

*Anderson et al. v. Louisiana Regional Landfill Company, et al.,*
    Civil No. 792-502 (24th JDC, filed on February 25, 2019) ..........................3

*Bernard v. Progressive Waste Solutions of LA, Inc.,*
    2:18-cv-08218 (E.D. La.) (filed in 24th JDC on Aug. 10, 2018) ....... 4, 15, 16

*Brunet et al. v. Louisiana Regional Landfill Company, et al.,*
    Civil No. 793-088 (24th JDC, filed on March 14, 2019) ...............................3

*Calligan et al. versus Louisiana Regional Landfill Company, et al.*
    (24th JDC, filed on April 5, 2019)...................................................................3

*Ictech-Bendeck v. Progressive Waste Solutions,*
    No. 2:18-cv-07889 (E.D. La.)
    (filed in 24th JDC on July 25, 2018) ................................ 3, 4, 5, 7, 15, 16, 26

*Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,*
    2:18-cv-09312 (E.D. La.) (filed in 24th JDC on Aug. 27, 2018)............. 4, 16

*Thompson v. Louisiana Regional Landfill Company,*
    No. 2:18-cv-08071 (E.D. La.)
    (filed in 24th JDC on July 30, 2018).. ............................................. 3, 4, 5, 16

*Winngkof et al. v. Louisiana Regional Landfill Company, et al.*
    (24th JDC, filed on April 2, 2019)...................................................................3

Waste Connections U.S., Inc. ("Waste Connections") and Jefferson Parish (collectively, "Respondents"), submit this brief in opposition to the Application for Supervisory Writs filed by Plaintiffs/Applicants Frederick Addison et al. (the "Application"), which seeks reversal of the trial court's judgment sustaining Respondents' declinatory exceptions of lis pendens.

## I.    Introduction

A supervisory writ is an extraordinary remedy that is not merited here. The trial court's grant of the exceptions of lis pendens staying this late-filed tort case was plainly warranted because there are four identical, previously filed class actions that represent Mr. Addison and his co-Plaintiffs. There is no harm to the Applicants here, much less the required irreparable harm, and they can fully pursue their claims should a class not be certified. In fact, a status conference was recently held in the class actions and those cases are well underway.

The *Addison* case commenced in December 2018, five months after four nearly identical putative class action suits were filed in the 24th Judicial District Court (subsequently removed to the United States District Court for the Eastern District of Louisiana), and approximately sixteen months after residents of Jefferson Parish began complaining of the odors that are the basis of those putative class actions. Despite this delay, Applicants now contend that exigent circumstances warrant the granting of this writ. To the contrary, there is no emergency or threat of irreparable harm that necessitates this Court hear Applicants' appeal at this time.

The lower court's judgment staying this action until a decision on class certification in the related federal putative class action does not cause the *Addison* Plaintiffs' harm, let alone irreparable harm, because: (i) Applicants' interests are

currently being represented by putative class counsel in the four putative class actions; (ii) the stay does not impede Applicants' ability to investigate the odors; and (iii) any error by the trial court can be remedied when Applicants are later afforded the opportunity to litigate their own individual action, if they decide to opt out of the related federal putative class actions or certification is denied. The demanding standards for the relief of a supervisory writ – that there would be no remedy on appeal and that the applicant will suffer irreparable harm – are not satisfied here and the application should be denied.

If this Court reaches the merits of Applicants' argument, which it should not, this Court should decline to grant any relief to Applicants. Recent decisions by the Louisiana Supreme Court dictate that the trial court's stay remain in place. *See Aisola v. La. Citizens Prop. Ins. Corp.*, 14-1708 (La. 10/14/15), 180 So. 3d 266, 269 (finding that there was an "identity of parties" and upholding exception of lis pendens where plaintiffs were putative class members of four earlier-filed class action suits); *Elfer v. Murphy Oil USA, Inc.*, 02-0020 (La. 3/15/02), 811 So. 2d 892 (same); *Quinn v. La. Citizens Prop. Ins. Corp.*, 2012-0152 (La. 11/2/12), 118 So. 3d 1011, 1022 (when a class action is pending in federal court, and a state individual action is filed later to protect any timeliness issues, a stay of the state court action is appropriate to ameliorate impacts on judicial efficiency). Those authorities govern here, as Applicants concede that they fall within the definition of the class proposed in the related class actions.[1]

## II.   Background and Procedural History

The *Addison* mass action is the fifth lawsuit in nine months and the most recent in a series of duplicative actions seeking the same relief against the same

---

[1] Appendix p. 307, Transcript, p. 19, lines 8–21.

group of defendants, all complaining of injuries allegedly caused by odors emanating from the Jefferson Parish Landfill located in Waggaman, Louisiana ("Landfill"). Applicants commenced this action five months after four nearly identical putative class action suits were filed in the 24th Judicial District Court and subsequently removed to the United States District Court for the Eastern District of Louisiana. As the trial court properly held, this latest lawsuit is barred from proceeding at this time by Louisiana's doctrine of lis pendens, codified in Article 532 of the Louisiana Code of Civil Procedure, which prevents this precise situation: "a series of vexatious suits by the same plaintiff against the same defendant in the same transaction or occurrence in different forums." *Sw. Elec. Power Co. v. Amax, Inc.* 621 So. 2d 615 (La. 1993) (Lemmon, J. concurring).[2]

On July 25, 2018, the first of four putative class actions was filed in the 24th Judicial District Court on behalf of a proposed class of persons seeking damages for alleged "noxious odors" emanating from the Jefferson Parish Landfill. *See Ictech-Bendeck v. Progressive Waste Solutions,* No. 2:18-cv-07889 (E.D. La.) (filed in 24th Judicial Dist. July 25, 2018).[3] On August 17, 2018, Waste Connections removed the *Ictech-Bendeck* action to federal court pursuant to the Class Action Fairness Act ("CAFA"). Over the next month, three additional putative class actions were filed in the 24th Judicial District Court, *Thompson v.*

---

[2] Applicants argue that defendants are not at risk of a series of vexatious suits. This claim is plainly contradicted by the recent filings of Applicants' counsel, Barry S. Neuman and the firm of Forrest, Cressy & James, LLC, who in the past few weeks have filed four additional lawsuits (with more likely on the way) that are duplicative of the related class actions and this action in all material respects. *See Charles Lee Anderson et al. versus Louisiana Regional Landfill Company, et al.*, Civil Action No. 792-502 (24th JDC, filed on February 25, 2019); *Michael Brunet et al. versus Louisiana Regional Landfill Company, et al.*, Civil Action No. 793-088 (24th JDC, filed on March 14, 2019); *Mary Ann Winngkof et al. versus Louisiana Regional Landfill Company, et al.* (24th JDC, filed on April 2, 2019); *Rickey Calligan et al. versus Louisiana Regional Landfill Company, et al.* (24th JDC, filed on April 5, 2019). This Court may take judicial notice of those filings.

[3] Appendix, p. 167.

*Louisiana Regional Landfill Company*, No. 2:18-cv-08071 (E.D. La.) (July 30, 2018), *Bernard v. Progressive Waste Solutions of LA, Inc.*, 2:18-cv-08218 (E.D. La.) (Aug. 10, 2018), and *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.*, 2:18-cv-09312 (E.D. La.) (Aug. 27, 2018).[4] Waste Connections also removed these subsequent actions to federal court pursuant to CAFA.

Together, the four putative class actions seek damages against the owner of the Landfill, Jefferson Parish, and several of its contractors (and related entities): Defendants Louisiana Regional Landfill Company ("LRLC") f/k/a IESI LA Landfill Corporation, Waste Connections Bayou, Inc. f/k/a/ Progressive Waste Solutions of LA, Inc., Waste Connections US, Inc. (collectively, the "Waste Connections Defendants"), and Aptim Corporation. The proposed class in each action is defined as "[a]ll persons domiciled of and/or within the Parish of Jefferson" who suffered harm as a result of the alleged emission of noxious odors from the Landfill.[5] The representative plaintiffs allege damages from diminution in property value and personal injuries and also seek permanent injunctive relief.

Plaintiffs in all four putative class actions moved to remand the cases to state court, which Respondents opposed. On March 14, 2019, Judge Morgan denied the motions to remand and held that all four putative class actions would remain in federal court.[6] Following a status conference on March 27, 2019, all parties filed a joint motion to consolidate the putative class actions on April 3, 2019.

Lead Plaintiff Frederick Addison commenced this duplicative action on December 13, 2018, against the same defendants, seeking the same damages for

---

[4] Appendix, pp. 183, 201, 218.
[5] Appendix, p. 171, *Ictech* at 4; p. 184, *Thompson* at 2; p. 205, *Bernard* at 5; and p. 222, *Landry* at 5.
[6] Appendix, pp. 326–363.

the same alleged odors emanating from the Landfill.[7] Applicants are 86 residents

of Jefferson Parish, and therefore are also members of the proposed class in the

four pending complaints. Applicants assert their claims against the same group of

defendants that are named in the four putative class actions: Jefferson Parish, the

Waste Connections Defendants, and Aptim Corporation, and have also named

unidentified insurance companies of the various defendants. Like the putative class

action plaintiffs, Applicants allege that the Landfill is emitting odors that have

damaged them and their properties:

> [t]he Defendants' failure to properly design, operate, manage, and
> maintain the J.P. Landfill, including its gas and leachate collection
> systems, have caused harmful, noxious and repulsive odors and
> chemicals to be released from the J.P. Landfill into the surrounding
> environment on and in to Petitioners' homes and immovable property,
> resulting in Petitioners' continuing exposure to these odors and
> chemicals.[8]

Waste Connections and Jefferson Parish each responded to Applicants'

lawsuit by timely asserting declinatory exceptions of lis pendens. The district

court, Judge Stephen C. Grefer presiding, held a hearing on January 24, 2019. At

the conclusion of the parties' arguments, Judge Grefer held that Louisiana Code of

Civil Procedure article 532 dictated that the exceptions of lis pendens be granted

because Applicants are putative class members of the putative federal class actions

and the other lis pendens elements were also satisfied.[9] Judge Grefer further

ordered that Applicants' action would be stayed until the Eastern District of

---

[7] Appendix, p. 30.

[8] Appendix, p. 43; accord Appendix, p. 190, *Thompson* Petition at 8 ("The improper emission of noxious odors from the Jefferson Parish Landfill into and onto neighboring properties . . . has been pervasive and persistant" and "constitute[s] a nuisance to neighboring persons and properties."); Appendix, p. 169, *Ictech-Bendeck* Petition at 2 (alleging defendants' [f]ailure to properly operate and/or manage a solid waste 'sanitary' landfill in a manner that does not cause harm to others, and in particular, to its neighbors" is the cause of "emanations of noxious odors and gases.").

[9] Appendix, pp. 319–24.

Louisiana ordered a remand of any one of the related class actions, or the Eastern District of Louisiana ruled on class certification in any one of those actions.[10] On February 6, 2019, Judge Grefer signed a judgment reflecting this ruling.[11]

## III.  Exercise of the Court's Supervisory Jurisdiction Is Not Warranted.

Applicants' request for this Court to exercise its supervisory jurisdiction and review Judge Grefer's interlocutory judgment should be denied. The Fifth Circuit has adopted a two-part test to determine when a supervisory writ should be granted: "1. if there is no remedy on appeal AND 2. if the relator will suffer irreparable harm if the writ is not granted." *First Fin. Bank, FSB v. Boue*, 541 So. 2d 947, 950 (La. App. 5th Cir. 1989) (denying writ because the applicant failed to satisfy either prong of the test); *see also Women's Clinic v. Watson*, 550 So. 2d 864 (La. App. 2d Cir. 1989) (writ not warranted on denial of exception of prescription because any error was correctable on appeal, plaintiffs would not suffer irreparable harm, and judicial efficiency and fundamental fairness to the litigants did not dictate use of this Court's supervisory powers).

Here, Applicants have not demonstrated – or even attempted to demonstrate – that they would suffer irreparable harm in the absence of supervisory relief. Irreparable harm is not threatened where "any error in the judgment may be corrected as a practical matter on appeal following the determination of the merits."[12] Rather than address this standard, Applicants instead argue that the trial court's judgment creates "a gross and needless delay of justice, preventing Plaintiffs from even commencing discovery and risking the loss of valuable

---

[10] Appendix, pp. 320–24.
[11] Appendix, pp. 282–83.
[12] *In re Depland*, 03-0385, p. 2 (La. App. 4 Cir. 8/6/03), 854 So. 2d 438, 440.

evidence."[13] This does not come close to the showing required to justify this Court's exercise of supervisory jurisdiction, since it is based on mere delay, and the speculation of lost evidence. Moreover, Applicants fail to account for the fact that their interests are currently being represented by putative class counsel in the four previously filed actions, who will soon be commencing discovery as part of the class certification proceedings. Nor does the trial court's judgment impede Applicants' ability to investigate the odors, which they are allegedly experiencing, outside of the formal discovery process – and even if it did, that is not a basis for allowing a duplicative action to move forward when the elements of Louisiana Code of Civil Procedure article 532 are satisfied.

### A.    Applicants' Interests Are Currently Being Represented by Putative Class Counsel in Four Previously Filed Actions.

There is no irreparable harm justifying interlocutory intervention because the Addison Applicants are represented by four teams of lawyers in the pending proposed class actions. Applicants concede that they fall within the definition of the class proposed in the *Ictech-Bendeck* and related actions.[14] Thus, Applicants are deemed to be putative class members unless and until class certification is denied, or until they formally opt out of the class after certification.[15]

---

[13] Application, p. 23.

[14] Appendix, p. 307, Transcript, p. 19:8-21; Applicants have also reserved their right to join the related class actions if a class is certified, impliedly acknowledging that their interests are adequately represented by those actions. *See* Appendix p. 303, Transcript, 15:28-15:30; Appendix p. 260, Brief in Opposition to Exception of Lis Pendens, p. 5 ("plaintiffs may or may not choose to join [the class if it is certified].").

[15] *Duckworth v. La. Farm Bureau Mut. Ins. Co.*, 11-2835, pp. 21-22 (La. 11/2/12), 125 So. 3d 1057, 1070 ("The decision to request exclusion or to 'opt out' is made, not at the time of filing a class action petition, but after the class is certified, notice is issued, and a timely election form is submitted."); *Quinn v. La. Citizens Prop. Ins. Corp.*, 12-0152, p. 7 (La. 11/2/12), 118 So. 3d 1011, 1016 ("when a class action is certified in Louisiana, all persons who fall within the class definition are class members. The only avenue for requesting exclusion from a class once it is certified is by the timely submission of an election form."); *Lee-Bolton v. Koppers Inc.*, 848 F. Supp. 2d 1342, 1350 (N.D. Fla. 2011) ("potential class members in a putative class action cannot

If Applicants are dissatisfied with the putative class counsel, once the Eastern District of Louisiana issues a ruling on class certification, Applicants may prosecute their individual action, either because class certification has been denied, or because Applicants have chosen to opt-out of the class. In any scenario, Applicants' interests will be furthered during the pendency of the stay, and their ultimate ability to resume individual actions is not impaired.

In fact, Applicants will benefit from the pending discovery in connection with the related class actions. Rule 26 evidence disclosures in the pending federal cases are scheduled to occur in a matter of days (April 10, 2019). If some exigency existed at the Landfill that warranted expedited discovery – which is not the case – then the putative class counsel could have requested such discovery. They have not done so, because no such exigent circumstances exist. As discussed more fully below, any delay encountered in pursuing discovery will not cause any prejudice to Applicants, as the continued availability of the material evidence is not at risk.

### B.    Applicants' Alleged Need for Discovery Is Not Before this Court.

Applicants attempt to create an exigency by rehashing a motion for expedited discovery filed in the trial court that was not granted because the case was stayed. The discovery motion and the affidavit of the Applicants' expert is not a part of the record on appeal and cannot serve as a basis for relief. In any event, Applicants' arguments for emergency discovery were thoroughly rebutted by the Respondents in the trial court and Applicants have ample opportunity to gather evidence during the stay.

---

validly opt out of becoming class members until after they receive the required notice under Rule 23.").

The Chrostowski affidavit was submitted to the trial court in support of a motion for expedited discovery filed by Applicants[16] – but that motion was denied as moot, and the ruling of the trial court on the motion for expedited discovery is not before the Court. Applicants have not assigned that issue for review, and therefore it would be improper for this Court to consider it.[17] Further, the Chrostowski affidavit was not attached to any of the briefing on the exceptions of lis pendens. More importantly, the Chrostowski affidavit was not offered into evidence at any stage of the trial proceedings below, neither in the context of the motion for expedited discovery nor the exceptions of lis pendens.[18] The Louisiana Supreme Court has made it very clear that "[e]vidence not properly and officially offered and introduced cannot be considered [by a court of appeal], even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal." *See Denoux v. Vessel Mgmt. Servs., Inc.*, 07-2143, p. 6 (La. 5/21/08), 983 So. 2d 84, 88 (holding that trial court and court of appeal improperly considered depositions which plaintiff attached to trial memoranda, but failed to offer into evidence at the

---

[16] Appendix, pp. 51-116.

[17] Applicants' "Assignment of Error" makes no mention of any issues related to Applicants' motion for expedited discovery; rather, it mentions only Judge Grefer's sustaining of the exceptions of lis pendens. *See* Application, p. 7. Therefore, Applicants have not applied for supervisory review of any issues related to the motion for expedited discovery. *See* Rule 1-3 of the Uniform Rules of Louisiana Courts of Appeal, which provides:

> The Courts of Appeal will review only issues which were submitted to the trial court and **which are contained in specifications or assignments of error**, unless the interest of justice clearly requires otherwise.

(emphasis added). *See also Roussell v. Roussell*, 96-148 (La. App. 5 Cir. 7/30/96), 678 So. 2d 612, 615 ("…the appellant did not assign as error the trial court's refusal to address this issue. Therefore, it is beyond the scope of our review."); *Rider v. Priola Const. Corp.*, 2009-1294 (La. App. 3 Cir. 4/21/10), 36 So. 3d 389, 39 ("Given the failure of Priola to assign an error relative to the January 9, 2009 judgment…this ruling of the trial court is not properly before this court.").

[18] *See* Appendix, pp. 289–325, trial transcript.

hearing on defendant's exceptions).[19] The Court should disregard the Chrostowski affidavit.

Further, the Court should disregard Applicants' motion for expedited discovery in its entirety because Applicants violated Rule 4-5 of the Uniform Rules of Louisiana Courts of Appeal. Rule 4-5 requires Applicants to attach to their writ application "a copy of any opposition and any attachments thereto filed by a party in the trial court or a statement by the relator that no opposing written document was filed." If Applicants intended the Court to consider any part of the motion for expedited discovery, such as the Chrostowski affidavit (which they cite to in their writ application), then they should have attached the opposition to that motion filed by Waste Connections as required by Rule 4-5.[20] Applicants' failure to do so is another reason the Court should not consider any portion of their motion for expedited discovery.

### C. The Trial Court's Judgment Does Not Impede Applicants' Ability to Investigate the Odors that They Are Allegedly Experiencing.

Applicants argue that because Judge Grefer stayed their action, they continue to be exposed to various forms of air pollution, without the ability to conduct "more investigation [that] is required" of those contaminants in the community. Applicants and their expert, however, ignore highly relevant, publicly-available data as to air quality in the area. Moreover, as noted by Judge Grefer,

---

[19] In this regard, a hearing on an exception contrasts with a hearing on a motion for summary judgment. Unlike a motion for summary judgment, a hearing on an exception is deemed to be an evidentiary hearing, and exhibits may only be considered if they are formally offered into evidence. *See* LA. CODE CIV. PROC. ANN. art. 930 (2018); *Cichirillo v. Avondale Indus., Inc.*, 04-2894, p. 5 (La. 11/29/05), 917 So. 2d 424, 428 ("[t]he failure to appropriately file exhibits into evidence is problematic" and acknowledging that, in the context of an exception, exhibits to memoranda may only be considered if they are offered into evidence). Such evidentiary standards should apply equally whether in the context of a writ application or an appeal. *See* Uniform Rules of Louisiana Courts of Appeal, Rule 4-8 (rules apply equally to appeals and writ applications, except in the case of conflict or inapplicability).

[20] Waste Connections' opposition memorandum, which Applicants neglected to attach to this writ application, was 20 pages long with 349 pages of supporting exhibits.

Applicants can obtain the information they seek without relying on formal discovery proceedings and while their individual action is stayed.

As the trial court correctly pointed out, and as Applicants conceded,[21] nothing prevents Applicants from investigating alleged emissions emanating from the Landfill from the facility's fence line. This investigation can be conducted outside of the discovery process and while the current case is stayed. Applicants concede they have not attempted to gather such data and were unable to provide a substantive response when asked by Judge Grefer why taking air samples right outside the boundary of the Landfill was not sufficient.[22] Nor have Applicants attempted to gather data related to odors experienced at or near their actual homes. Applicants' failure to gather such preliminary data confirms that their desire to access the Landfill is a fishing expedition, not a legitimate need, and certainly does not warrant granting their writ application.

### D.    Judicial Efficiency Warrants Denial of this Writ Application.

Finally, granting this writ would not serve any interest in judicial efficiency by providing an opportunity to dispose of this action. Granting Applicants' writ application would not dispose of the case – unlike a lis pendens issued under Article 531, which allows a trial court to dismiss the later-filed action, the trial court issued a stay pursuant to Article 532. Therefore, no decision by this Court on an interlocutory appeal would end this action – it would only continue the stay or lift the stay allowing the case to proceed in parallel with the federal court actions. The latter scenario would likely result in judicial inefficiencies as noted by Judge

---

[21] Appendix, pp. 309–310, Transcript, pp. 21:9-22:16.
[22] Appendix, p. 309, Transcript, p. 21:10-20.

Grefer, and thus would run counter to one of the reasons to grant a supervisory writ.

## IV. The Trial Court Did Not Abuse Its Discretion in Granting the Exceptions of Lis Pendens.

If this Court reaches the merits of Applicants' argument, this Court should decline to grant any relief to Applicants. The trial court correctly concluded that Louisiana law dictated that Respondents' exceptions of lis pendens be sustained. First, the black letter of Louisiana Code of Civil Procedure article 532 dictates a stay under the facts alleged in Applicants' petition. Second, Applicants' arguments regarding fairness are unsupported rhetoric that lack any merit and certainly do not satisfy Appellants' burden of demonstrating that the trial court abused its discretion.

### A. Article 532 Dictates that Applicants' Suit Remain Stayed.

As Judge Grefer correctly held, the criteria for lis pendens are satisfied in this case because Respondents conclusively demonstrated (1) that this suit was brought in a Louisiana state court during the pendency of a suit in a federal court; (2) that the suits are based on the same transaction or occurrence; and (3) that the suits are between the same parties in the same capacities.[23] When the elements of lis pendens are satisfied, a stay is warranted. *Aisola v. La. Citizens Prop. Ins. Corp.*, 14-1708 (La. 10/14/15), 180 So. 3d 266, 269 (lis pendens granted in case involving the alleged mishandling of insurance claims following Hurricane Katrina); *see also Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc.*, 36,723 (La. App. 2 Cir. 6/27/03), 850 So. 2d 1027 (lis pendens granted in case involving personal injury, property damage, and wrongful death claims related to

---

[23] Appendix, p.320, Transcript, p. 32.

oil-well explosion); *Black v. Exxon Mobil Corp.*, 14-524 (La. App. 5 Cir. 11/25/14), 165 So. 3d 1013 (lis pendens granted in case involving wrongful death and survivorship claims arising from exposure to pipe cleaning operations where plaintiff had intervened in earlier case and alleged personal injuries arising from same operations).

Courts grant such stays in order to promote judicial economy, avoid inconsistent rulings, and prevent the undue harassment of defendants. *See Fincher v. Ins. Corp. of Am.*, 521 So. 2d 488, 489 (La. App. 4th Cir. 1988).[24] Indeed, after finding that the *Addison* action meets all of the criteria of Article 532, Judge Grefer concluding that judicial efficiency and fairness warranted a stay of the action until the determination of class certification.[25]

### 1.   Lis pendens applies because Applicants are also putative class members in the pending class actions.

Applicants seem to concede that every element of lis pendens is satisfied in this case, except for the question of whether there is an identity of the plaintiffs. Contrary to Applicants' arguments, however, the Louisiana Supreme Court has made it clear that the "identity of the parties" requirement for the exception of lis pendens is satisfied when plaintiffs in the later-filed action are putative class members of an earlier-filed pending class action, unless and until class certification is denied. *Aisola*, 14-1708, pp. 5-6 (La. 10/14/15), 180 So. 3d at 270 (finding that there was an "identity of parties" and upholding exception of lis pendens where plaintiffs were putative class members of four earlier-filed class action suits); *Elfer*

---

[24] The criteria set forth in Louisiana Code of Civil Procedure articles 531 and 532 closely mirror the criteria for *res judicata*, so courts often characterize the "test" for an exception of lis pendens as whether a final judgment in the earlier filed suit would be *res judicata* in the later filed suit. *Aisola*, 14-1708 at 4, 180 So. 3d at 269; *see also United Gen. Title Ins. Co. v. Casey Title, Ltd.*, 01-600, p. 10 (La. App. 5 Cir. 10/30/01), 800 So. 2d 1061, 1067 (reviewing *res judicata* cases to determine how LA. CODE CIV. PROC. ANN. art. 532 is interpreted).

[25] Appendix, pp. 320–21, Transcript, pp. 32:22-33:13.

*v. Murphy Oil USA, Inc.*, 02-0020 (La. 3/15/02), 811 So. 2d 892 (same); *see also Harris v. La. Citizens Prop. Ins. Co.*, 14-120, pp. 9-10 (La. App. 5 Cir. 10/29/14), 164 So. 3d 216, 222 (denying lis pendens exception because class certification was denied in first action and therefore there was no longer an identity of parties between the named plaintiffs in the first action and the plaintiff in the second suit).

This result is consistent with Louisiana law recognizing that the parties do not have to be the "same" in the literal sense so long as they are the same "in the legal sense of the word." *Black*, 14-524 at 4, 165 So. 3d at 1016; *see also Jensen Const. Co. v. Dep't of Transp. & Dev.*, 542 So. 2d 168, 171 (La. App. 1st Cir. 1989) ("The 'identity of parties' requirement is met whenever 'the same parties, their successors, or others appear so long as they share the same 'quality' as parties.'").

Applying the same reasoning underlying *res judicata*, Louisiana courts hold that putative class members that file a subsequent action individually are the "same" for purposes of Article 532 because a final judgment in a class action would have a preclusive effect on all subsequent suits filed by individual class members. *See Harris*, 14-120 at 8, 164 So. 3d at 221 ("Because any judgment on those class actions in which plaintiff is an alleged putative class member would be conclusive and binding as to plaintiff under La. C.C.P. art. 597, it necessarily follows that the requirements of *lis pendens* are satisfied."); La. Code Civ. Proc. Ann. art. 597 (2018) ("A definitive judgment on the merits rendered in a class action concludes all members of the class, whether joined in the action or not, if the members who were joined as parties fairly insured adequate representation of all members of the class."); *Duckworth*, 11-2835 at 21, 125 So. 3d at 1069-1070 ("[u]nder the articles governing Louisiana's class action, all persons possessing

claims arising out of transactions or occurrences described in a class action petition
. . . are bound by any judgment in the action").

Moreover, an individual falling within the definition of the proposed class is a putative member of that class, until: (i) the class is certified pursuant to Federal Rules of Civil Procedure 23(b)(3), or the state equivalent, Louisiana Code of Civil Procedure article 591(B)(3), and the individual then opts out of the class action; or (ii) class certification is denied. *See Duckworth*, 11-2835 at 21-22, 125 So. 3d at 1070 ("The decision to request exclusion or to 'opt out' is made, not at the time of filing a class action petition, but after the class is certified, notice is issued, and a timely election form is submitted."); *Quinn*, 12-0152 at 7, 118 So. 3d at 1016 ("when a class action is certified in Louisiana, all persons who fall within the class definition are class members. The only avenue for requesting exclusion from a class once it is certified is by the timely submission of an election form."); *Lee-Bolton*, 848 F. Supp. 2d at 1350 ("[P]otential class members in a putative class action cannot validly opt out of becoming class members until after they receive the required notice under Rule 23.").

Here, there is no dispute that Applicants are putative members of the proposed classes in the four pending class actions. Applicants concede that they fall squarely within the proposed class definitions:[26] residents of Jefferson Parish who have allegedly been injured as a result of odors allegedly emanating from the Landfill.[27] Because class certification has not been decided in any of the putative

---

[26] Appendix p. 307, Transcript, p. 19:8-21. Indeed, Applicants have previously expressly reserved their right to join any class if certified. *See* Appendix p. 303, Transcript, p. 15:28-30; Appendix p. 260, Brief in Opposition to Exception of Lis Pendens, p. 5 ("plaintiffs may or may not choose to join [the class if it is certified].").
[27] Specifically, *Ictech-Bendeck* and *Bernard* define the proposed class as:

class actions, Applicants are not able to opt out of the proposed class. Therefore, the trial court held:

> [given] the proposed class definition [in *Ictech-Bendeck* and the related actions] and the allegations alleged in the plaintiffs' petition in the *Addison* matter . . . there is no way that this Court can envision that [the *Addison* plaintiffs] wouldn't be members of the class if a class is so certified [in *Ictech-Bendeck* or the related actions]. That doesn't mean that they can't opt out [at a later date], obviously, but that's not the question now.[28]

Accordingly, the trial court correctly concluded that Applicants constitute the "same parties in the same capacities" as the named plaintiffs in the actions currently pending before the Eastern District of Louisiana. *Aisola*, 14-1708 at 4, 180 So. 3d at 269.

In an attempt to escape the holdings of *Aisola* and the related jurisprudence, Applicants argue, as they did to the trial court, that *Aisola* is distinguishable because Applicants have not affirmatively claimed to be members of the putative class proposed in the federal cases. Applicants' argument was considered and rejected by the trial court. Class action law does not allow a late-filing plaintiff to disavow a class at this stage of the litigation. As the trial court correctly held, under *Aisola*, the relevant question is not whether Applicants *allege* that they are putative class members, but whether they actually *are* putative class members under the proposed class definition.[29] *See Aisola*, 14-1708 at 5-6, 180 So. 3d at 270 ("We

---

> All persons domiciled of and/or within the Parish of Jefferson, (except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels), who sustained legally cognizable damages in the form of nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)' acts that caused the emission of noxious odors and gases into and unto their persons and properties.

Appendix, p. 171, *Ictech* at 4; p. 184, *Thompson* at 2; p. 205, *Bernard* at 5; and p. 222, *Landry* at 5.

[28] Appendix p. 319–320, Transcript, pp. 31:30-32:12.

[29] *Id.*

find the trial court erred in finding there exists no 'identity of the parties' for *lis pendens* purposes when a putative class member, such as plaintiffs herein, is not a named plaintiff or joined as a party in the class action."). Nothing in *Aisola* suggests that the *lis pendens* exception would have been denied but for the plaintiff's allegation that plaintiff was a member of the putative class. The plaintiff's admission simply mooted any need to examine the issue further. *Aisola*, 14-1708 at 6, 180 So. 3d at 270 (noting that plaintiffs there had alleged to be putative class members for a separate procedural benefit, but that preclusive effect of class action as to the plaintiffs, which satisfied requirements of *lis pendens*, arose under Article 597).

Allowing individual lawsuits, like *Addison*, to proceed while a class action is pending and certification status has not been determined, would result in the "needless multiplicity of actions [which] . . . Federal Rule of Civil Procedure 23 . . . w[as] designed to avoid." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 351 (1983). Moreover, allowing *Addison* to proceed now could result in a scenario where Applicants prosecute this case for months, forcing defendants to engage in discovery in two different forums, to only then decide to remain in the class once it is certified. Such a waste of resources (of the litigants and the courts) is exactly what Article 532 was intended to prevent. Accordingly, the trial court properly held that Applicants should be barred from prosecuting their individual lawsuits until class certification is granted and Applicants timely opt out of the class action, or certification is denied. *See Duckworth*, 11-2835 at 21-22, 125 So. 3d at 1070; *accord Harris*, 14-120 at 9, 164 So. 3d at 222 ("because class certification was denied in *Buxton* and the *Buxton* suit may only remain between the named parties,

there no longer exists an identity of parties between the named plaintiffs in the
*Buxton* suit and plaintiff in the instant individual suit.").

**2.    The federal venue for the related class actions does not
affect Applicants' shared identity with the proposed class
action plaintiffs.**

Attempting to distinguish this case from the controlling authorities of *Aisola*
and its progeny, Applicants urge this Court to apply federal law to determine
whether Applicants share a legal identity with the proposed class action plaintiffs
for purposes of lis pendens. Yet, Applicants cannot cite any authority for their
proposition. In fact, the Louisiana Supreme Court addressed this very question and
held that when a class action is the first-filed case, a putative class member's
subsequently filed individual suit should be stayed, even if the class action is
pending in federal court. *See Quinn*, 12-0152 at 18, 118 So. 3d at 1022 (explaining
that when a class action is pending in federal court, and a state individual action is
filed later to protect any timeliness issues, a stay of the state court action is
appropriate to ameliorate impacts on judicial efficiency).

Although Applicants cite the *Quinn* case to argue that this Court is bound by
federal law and must allow this case to move forward, *Quinn* holds no such thing.
Rather, *Quinn* addressed the question of whether a plaintiff in a later-filed state
court suit may avail himself of the prescription-tolling device of Louisiana Code of
Civil Procedure article 596 when there is an earlier-filed class action pending in
federal court, referred to as cross-jurisdictional tolling. In rejecting the application
of cross-jurisdictional tolling, the Louisiana Supreme Court dismissed the concern
that plaintiffs would be forced to preemptively file suit in state courts to protect
against the risk that class certification might be denied, holding:

> any resultant blow to judicial efficiency occasioned by the necessity
> of protective filings in state court pending the resolution of the
> certification issue in federal court can be ameliorated by measures
> available to the state courts: [E]arly filings in state court by plaintiffs
> who are pursuing a class action elsewhere could not be entirely
> undesirable, as such filings would put that state's court system on
> notice of the potential claim. If necessary, **the state suit could be
> stayed pending [a decision on class certification by the federal
> court]**.

*Id.* (emphasis added) (internal citations omitted).

Even if Applicants are correct that Louisiana law does not prohibit the filing of individual suits prior to a ruling on class certification in an earlier filed class action, *see* Application, page 19, now that Applicants have filed their suit to protect their interests, Louisiana law dictates that the action be stayed. The reasoning set forth in the *Quinn* decision removes any doubt that this should be the result. Thus, Applicants' reliance on *Quinn* and *Duckworth* actually supports denial of their application.

Finally, Applicants rely on irrelevant cases to claim that they do not share an identity with the plaintiffs in the federal putative class actions.[30] None of the cases cited by Applicants address the pivotal question for lis pendens – would a final judgment as to the earlier-filed class action plaintiffs be *res judicata* as to the later-filed individual plaintiffs? *Aisola* dictates that the answer to this question is yes – unless and until the later-filed plaintiff opts out, courts must presume that the later-

---

[30] *See* Application, p. 12. The authorities cited by Applicants do not relate to lis pendens, and their rationale in no way supports overturning the trial court's finding that Applicants share a legal identity with the related class action plaintiffs for lis pendens purposes. *See Day v. Persels & Assocs., LLC*, 729 F.3d 1309 (11th Cir. 2013) (absent class members, who have not participated in proceedings, are not parties whose consent is required for a magistrate judge to enter a final judgment under the Federal Magistrates Act); *Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002). Applicants cited the dissenting opinion in *Devlin*, but the Court's actual opinion supports denial of this writ. The *Devlin* Court found that a nonnamed class member sufficiently shared an identity with the named plaintiffs such that he was allowed to appeal a settlement approval. The Court recognized that "[n]onnamed class members, however, may be parties for some purposes and not for others." *Id.*

filed plaintiff is a member of the class.[31] As noted by the Louisiana Supreme Court, this is the most sensible, equitable manner for handling a duplicative, late-filed lawsuit such as Applicants' action.[32]

In short, Applicants cannot overcome the multiple, recent decisions by the Louisiana Supreme Court that hold that a stay is warranted under these circumstances.

### 3.  The remaining elements of lis pendens apply.

As for the remaining elements of lis pendens, the trial court correctly found, and Applicants do not contest, that they have been satisfied. Defendants in this action are the same defendants named in the pending putative class actions: Louisiana Regional Landfill Company (f/k/a IESI LA Landfill Corporation), Waste Connections Bayou, Inc. (f/k/a Progressive Waste Solutions of LA, Inc.), Waste Connections US, Inc., Aptim Corporation, and Jefferson Parish.[33] Applicants also seem to concede that their inclusion of several unidentified insurance companies in *Addison* that are not named in the putative class actions (ABC Corp., DEF Corp., GHI Corp., JKL Corp., and MNO Corp.,) does not disturb the "identity of the parties" requirement of lis pendens.[34]

---

[31] *Aisola*, 14-1708 at 5-6, 180 So. 3d at 270 ("We find the trial court erred in finding there exists no 'identity of the parties' for *lis pendens* purposes when a putative class member, such as plaintiffs herein, is not a named plaintiff or joined as a party in the class action.").

[32] Applicants complain that the *Aisola* doctrine creates the risk that even the most incompetent attorney, rushing to the courthouse to be the first to file, could foreclose plaintiffs from prosecuting their lawsuits by proposing a class of "all individuals in the state of Louisiana" – a fanciful hypothetical that bears little resemblance to this case. On this point, Applicants miss the mark, as *Aisola* protects against a much more likely, and equally prejudicial, situation. Without the *Aisola* doctrine, plaintiffs would have incentives to bring multiple rounds of copycat class action and individual litigation, subjecting defendants to duplicative discovery and inconsistent rulings, wasting judicial resources, and wildly re-shaping the legislature's carefully crafted class action procedures.

[33] *Compare* Appendix, pp. 30, 167, 183, 201, 218.

[34] When an insured entity and its insurance company appear in the action in the "same quality or capacity," they share an identity of parties because "their identities are virtually merged into one." *Funai v. Air Center, Inc.*, 499 So. 2d 669, 674 (La. App. 3d Cir. 1986) (identity of the parties existed where an insured party and its insurance company were defendants in present

The next element of the exception of lis pendens is also satisfied because Applicants' action was filed while the four related putative class actions were pending in federal court, which Applicants do not contest. *See* LA. CODE CIV. PROC. ANN. art. 532 (2018). *Addison* was filed on December 13, 2018.[35] The putative class actions were filed in the 24th Judicial District Court for the Parish of Jefferson on July 23, July 30, August 10, and August 27, 2018, and were all subsequently removed to the Eastern District of Louisiana by October 1, 2018. Thus, at the time this action was filed, four nearly identical suits were—and still are—pending in the Eastern District of Louisiana.

Finally, the *Addison* action arises from the same transaction or occurrence as the earlier-filed suit(s). LA. CODE CIV. PROC. ANN. art. 532 (2018).[36] *Addison* and the four pending class actions indisputably arise from the same transaction or occurrence.[37] The "subject matter" or the "event" of each suit is the alleged

---

action but only the insured party was listed as a defendant in an earlier-filed suit). Here, the various unnamed insurance companies would be appearing in the same capacity as, and therefore sharing an identity with, the named defendants (all of whom are named in the pending class actions). The identity of the parties requirement for lis pendens is satisfied.

[35] Appendix, p. 30.

[36] Louisiana courts consistently apply a broad meaning to the phrase "transaction or occurrence," ranging from "the subject matter of the litigation" to "all logically related events entitling a person to institute legal action against another." *In re Succession of Bernat*, 13-277, p. 9 (La. App. 3 Cir. 10/9/13), 123 So. 3d 1277, 1284 (finding that the execution and interpretation of a will constituted a single transaction or occurrence) (citing *Hy-Octane Invs. Ltd. v. G & B Oil Prods., Inc.*, 97-28 (La. App. 3 Cir. 10/29/97), 702 So. 2d 1057 (action for wrongful termination of a contract and a suit for breach of contract arose from the same transaction or occurrence); *Black*, 14-524 at 4, 165 So. 3d at 1015-1016 (husband's action for exposure to chemicals and wife's action for husband's wrongful death resulting from chemical exposure were based on same transaction or occurrence); *accord Bailey v. Oakbourne Country Club, Inc.*, Civil No. 6:14-2546, 2015 WL 4622418 (W.D. La. July 30, 2015) (for purposes of *res judicata*, defendant's prolonged course of allegedly discriminatory action constituted a single transaction or occurrence); *see also* Restatement (Second) of Judgments § 24(2) (1982) ("What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.").

[37] An identity of legal claims is not required in order for lis pendens to apply; rather, the focus is on whether the subsequent lawsuit involves the same underlying factual circumstances as the earlier suit. *See Bandaries v. Cassidy*, 11-161, p. 4 (La. App. 3 Cir. 6/1/11), 66 So. 3d 564, 567

emission of fumes or odors from the Jefferson Parish Landfill.[38] These allegedly continuing emissions from the same alleged source are logically related to and constitute the basis of the claims asserted in all five pending lawsuits. *Id.*

### 4.    Article 593.1 has no bearing on this case.

Applicants raise a vague, strained argument regarding Louisiana Code of Civil Procedure article 593.1. Because this argument was not raised before the trial court, and is now raised for the first time with this Court, it should not be considered.[39] Regardless, Applicants' argument is baseless because Article 593.1, by its very terms, has no application to this case. That article explicitly applies only "[w]hen two or more actions requesting the certification of a class pursuant to Article 591 are filed in two or more Louisiana courts," and provides circumstances under which a defendant may have the two class actions transferred to the same judicial district in Louisiana.[40] This case does not involve multiple class actions pending in different districts of Louisiana state courts, and thus Louisiana Code of Civil Procedure article 593.1 has no application here. Applicants' remaining argument – that the existence of Article 593.1 suggests that the Legislature did not intend to have lis pendens apply between a class action and an individual action –

---

("all causes of action arising out of the transaction or occurrence that is the basis of the suit are subject to challenge for lis pendens"); Official Comment to LA. CODE CIV. PROC. ANN. art. 532 (2018) (Article 532 was amended to conform to *res judicata* codified in LA. STAT. ANN. § 13:4231, which provides "[f]or purposes of res judicata it would not matter whether the cause of action asserted in the second action was the same as that asserted in the first or different as long as it arose out of the transaction or occurrence that was the subject matter of the first action."); *cf. Jenkins v. Willow, Inc.*, No. 16-CA-38, p. 12, 2016 WL 3033606 at *7 (La. App. 5 Cir. May 26, 2016) (*res judicata* barred fraud in the inducement claim even though the claim was neither brought nor litigated in an earlier action because the claim arose from the same series of alleged misrepresentations relating to home warranty policies over a seven-year period).

[38] *Compare* Appendix, pp. 32, 169, 185, 203, 220.

[39] *See* Rule 1-3 of the Uniform Rules of Louisiana Courts of Appeal ("The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.").

[40] LA. CODE CIV. PROC. ANN. art. 593.1 (2018).

is put to rest by the Louisiana Supreme Court's holdings in *Aisola*, 14-1708 at 6,

180 So. 3d at 270, and *Elfer*, 02-0020, 811 So. 2d 892.

### B.    The Trial Court's Decision to Temporarily Stay this Action Is Not Unfair to Applicants and Does Not Deprive Them of Due Process.

Applicants claim that the trial court abused its discretion, relying on vague,

baseless arguments concerning the injustices they will allegedly suffer if their case

remains stayed and claim that they are being denied timely access to the courts.

This is empty rhetoric. The trial court's decision to grant Respondents' exceptions

of lis pendens must be upheld unless Applicants are able to demonstrate that the

trial court abused its discretion when staying their case. [41] Applicants have failed to

meet this high burden. Although Applicants argue that the trial court made "no[t]

even a concerted effort" to analyze whether Applicants would face harm from the

issuance of a stay, the trial transcript is replete with discussion from the trial court

inquiring as to, among other issues, why Applicants desired expedited discovery

and whether any harm would ensue if the court did not allow discovery

immediately, why defendants believed such discovery to be overly burdensome,

and why defendants were not capable of defending themselves in multiple

forums. [42]

Applicants are unable to show actual irreparable harm that would result from

continuing the trial court's stay of this action. *See*, *supra*, section III. Applicants

make the same argument now as they did in the trial court – that they are being

harmed by noxious odors and air emissions and need to preserve this evidence.

---

[41] *Sw. Elec. Power Co.*, 621 So. 2d at 615 ("Even if the predicate conditions of La. Code Civ. Proc. art. 532 are met, the decision to stay a Louisiana suit rests in the sound discretion of the trial court. No abuse of that discretion has been shown."); *Zen-Noh Grain Corp. v. Thompson*, 13-110, p. 6 (La. App. 5 Cir. 8/27/13), 123 So. 3d 777, 780 ("The standard of review in the lis pendens context is whether the trial court abused its sound discretion.").

[42] *See* Appendix, pp. 297–300, 309-310, 313–315, Transcript, pp. 9:20-12:9, 21:9-22:16, 25:14-27:4.

Although Applicants chose to sue a single landfill in an area with numerous other potential sources of odors and air emissions,[43] Applicants have not taken a single step to determine what actual constituents and compounds they have been exposed to at their homes—the very harm that they are seeking to characterize and enjoin. Nor did Applicants seek a preliminary injunction against the Landfill. Applicants conceded this very point when questioned during oral argument in the trial court.[44] The trial court also suggested that Applicants could obtain much of the information they seek by simply testing right outside the boundary of the Landfill—a point the Applicants could only rebut by insisting they wanted to be inside the fence, not outside.[45]

A review of the record establishes that the trial court properly considered Applicants' briefing and argument on the same equitable considerations presented to this Court and held that there are no unique circumstances to suggest that Applicants need immediate access to the Landfill as they request. The court concluded that considerations of judicial efficiency and fairness to Defendants to litigate in one forum at a time outweighed any inconvenience to Applicants to temporarily stay their case until class certification is determined.[46] Applicants' discontent with the trial court's decision is not a basis to conclude that the trial court abused its discretion.

---

[43] Appendix p. 310, Transcript, p. 22:24-22:25 (in which Applicants concede "there are other sources in the area of potential pollution").
[44] Appendix, p. 308, Transcript, p. 20.
[45] Appendix, p. 309, Transcript, p. 21.
[46] Appendix, pp. 320–21, Transcript, pp. 32:31-33:7 ("I understand, Mr. Neuman, that I have the right to exercise discretion in this particular matter. I am reluctant, as always, to have similar cases or same cases traveling down different paths. I think from a judicial efficiency standpoint and I think in fairness to the defendants to be able to defend these types of actions in one forum I think is just fundamentally fair.").

Applicants also claim that Louisiana's lis pendens procedure deprives them of their constitutional due process, a point raised with and dismissed by the trial court. Specifically, Applicants claim that the class action process results in too much delay by placing them in "prescriptive purgatory" and thereby denying them access to the courts.[47] Applicants are mistaken. The class action process is designed to ensure plaintiffs' due process rights are protected, "automatically provid[ing] the right of notice and opt-out to individuals who do not want their monetary claims decided in a class action." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998) (citing Fed. R. Civ. P. 23(b)).

The Louisiana Supreme Court's decisions in *Duckworth* and *Quinn* also undermine Applicants' argument. As explained above, those cases clarify that the proper procedure for a plaintiff to ensure protection of its claim by suspending prescription while a class action is pending is to file an individual lawsuit before class certification.[48] However, application of lis pendens to stay those individual actions prevents undue inefficiencies in the judicial system. Louisiana law does not allow Applicants to bypass the class action procedure simply because they would prefer to proceed separately from the class litigation. *See Aisola*, 14-1708 at 7, 180 So. 3d at 271 ("The purpose and intent of class action procedure is to adjudicate and obtain res judicata effect on all common issues applicable not only to the representatives who bring the action, but to all others who are 'similarly situated' . . . ."). Once a class certification is determined, Applicants can elect to proceed as a class member or opt out and continue this action.[49]

---

[47] Application, p. 24.
[48] *Duckworth*, 11-2835 at 21-22, 125 So. 3d at 1070; *Quinn*, 12-0152 at 7, 118 So. 3d at 1016.
[49] Applicants argue that the trial court has deprived them of the right to choose their own counsel, disingenuously citing two wholly inapposite cases having nothing to do with class actions or lis pendens. *See* Application, p. 25 (citing *McCuin v. Tex. Power & Light Co.*, 714

For all of these reasons, the trial court did not abuse its discretion and a balancing of the equities does not support overturning the stay of this litigation in contradiction with the directives of Louisiana Code of Civil Procedure article 532.

## **CONCLUSION**

This writ application should be denied because any error will be correctable once the Eastern District of Louisiana rules on class certification; Applicants will not suffer irreparable harm; their interests are already being prosecuted by putative class counsel; and judicial efficiency and fundamental fairness to the litigants do not dictate use of this Court's supervisory powers at this time.

Further, the trial court properly granted the declinatory exceptions of lis pendens based on established Louisiana law, including Louisiana Code of Civil Procedure article 532, as well as the Louisiana Supreme Court's recent opinion in *Aisola*, 14-1708, 180 So. 3d 266. Those authorities, when applied to Applicants' allegations and their concession that they fall within the definition of the proposed class in the *Ictech-Bendeck* and related actions, plainly dictate in favor of this case remaining stayed. There exist no extraordinary circumstances that would weigh in favor of disregarding Louisiana Code of Civil Procedure article 532 and lifting the trial court's stay, and Applicants have not demonstrated that the trial court abused its discretion. As the trial court properly noted, allowing this duplicative lawsuit to proceed would serve only to waste judicial resources and impose prejudice on the

---

F.2d 1255 (5th Cir. 1983) (employment discrimination action in which question before court was whether or not employment of judge's brother-in-law as local counsel for defendant required disqualification of local counsel or recusal of judge); *Tex. Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178, 1180 (5th Cir. 1992) (law required property owners' association to rely exclusively on the Texas Attorney General for legal representation)). Nothing is preventing Applicants from retaining counsel of their choosing, and nothing will prevent Applicants from asserting their own individual action once class certification is decided.

defendants and the plaintiffs in the earlier-filed actions.[50] For these reasons, this writ application should be denied.

**[signatures on following page]**

---
[50] Appendix, p. 321, Transcript, p. 33:1-33:7.

Respectfully submitted,

| BRADLEY MURCHISON KELLY & SHEA LLC | BEVERIDGE & DIAMOND, P.C. | CONNICK AND CONNICK, LLC |
|---|---|---|
| By: *Michael Mims* | | By: |
| David R. Taggart (La. Bar No. 12626) 401 Edwards Street, Suite 1000 Shreveport, Louisiana 71101 Telephone: (318) 227-1131 Facsimile: (318) 227-1141 | Megan R. Brillault* Michael G. Murphy* John H. Paul* 477 Madison Avenue, 15th Floor New York, NY 10022 (212) 702-5400 | William P. Connick (La. Bar No. 14158) Michael S. Futrell (La Bar. No. 20819) Matthew D. Moghis (La Bar. No. 33994) 3421 N. Causeway Blvd., Suite 408 Metairie, Louisiana 70002 Telephone: (504) 681-6658 Facsimile: (504) 838-9903 |
| Michael C. Mims (La. Bar No. 33991) John B. Stanton (La. Bar No. 36036) 1100 Poydras St., Suite 2700 New Orleans, Louisiana 70163 Telephone: (504) 596-6300 Fax: (504) 596-6301 | James B. Slaughter* 1350 I Street, N.W., Suite 700 Washington, DC 20005 (202) 789-6000 *pro hac vice to be applied for | |
| **Counsel for Waste Connections US, Inc.** | | **Counsel for Jefferson Parish** |

## **VERIFICATION**

STATE OF LOUISIANA,

PARISH OF ORLEANS

BEFORE ME, the undersigned public authority personally came and appeared MICHAEL C. MIMS, who being first duly sworn did depose and say:

I am counsel of record for Waste Connections US, Inc. and have prepared the foregoing opposition on its behalf. I verify from personal knowledge that all allegations of the opposition are true and correct. I further certify that a copy of the foregoing opposition was served on Judge Stephen C. Grefer via e-mail and upon counsel for all known parties listed below via e-mail this 5th day of April, 2019. There are no unrepresented parties.

MICHAEL C. MIMS

**SWORN TO AND SUBSCRIBED**
**BEFORE ME THIS 5th DAY**
**OF APRIL 2019.**

**NOTARY PUBLIC** [# _03391_ ]
*C. WM. BRADLEY JR.*
Hon. Stephen J. Grefer (*Via Email to thomasps@24jdc.us*)
24th Judicial District Court
Division "J"
200 Derbigny Street
Gretna, Louisiana 70053

**PLAINTIFF**
Through their attorneys of record:
Byron Miller Forrest
Nicholas V. Cressy
S. Eliza James

Forest, Cressy & James, LLC
One Canal Place Office Tower
365 Canal Boulevard, Suite 1475
New Orleans, Louisiana 70130
Facsimile: 504.322.3884

Barry S. Neuman
Adrian F. Snead
Whiteford, Taylor, Preston, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036

**JEFFERSON PARISH**
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 North Causeway Boulevard
Suite 408
Metairie, Louisiana 70002
Facsimile: 504.838.9901

**APTIM CORP**
Through its attorney of record:
William Barousse
701 Poydras Street
Suite 4800
New Orleans, Louisiana 70139

# STATE OF LOUISIANA
# FIFTH CIRCUIT COURT OF APPEAL

### Case No.:  19-C-129

---

## FREDERICK ADDISON, *et. al.;*

## Versus

## LOUISIANA REGIONAL LANDFILL COMPANY, *et. al.*

---

24th JUDICIAL DISTRICT COURT
FOR THE PARISH OF JEFFERSON
STATE OF LOUISIANA
DOCKET NO.: 790-369
HON. JUDGE STEPHEN GREFER PRESIDING

---

## REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' APPLICATION FOR SUPERVISORY WRIT

## CIVIL PROCEEDING

---

RESPECTFULLY SUBMITTED ON BEHALF OF PLAINTIFFS,
FREDERICK ADDISON, *ET. AL.*:

**FORREST CRESSY & JAMES, LLC**
Byron Miller Forrest (#35480)
Nicholas V. Cressy (#35725)
S. Eliza James (#35182)
One Canal Place Office Tower
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Telephone: 504-605-0777
Facsimile: 504-322-3884

**WHITEFORD TAYLOR PRESTON, LLP**
Barry S. Neuman, Admitted *Pro Hac Vice*
Adrian Snead, Admitted *Pro Hac Vice*
1800 M Street, NW , Suite 450N
Washington, DC 20036
Telephone: (202) 659-6800

*Appeal counsel for Plaintiffs.*

## INDEX OF REPLY MEMORANDUM

I.    LAW AND ARGUMENT…………………………………………………… 1

       a.  Recent developments in the federal class action case require the order staying proceedings in this matter be vacated…………………………2

       b.  *Aisola* requires the trial court be reversed……………………………3

       c.  The standard of review for a supervisory writ does not require a showing of irreparable harm; nevertheless, the trial court's erroneous ruling is causing harm to Mr. Addison and his Co-Plaintiffs…………5

II.    CONCLUSION AND PRAYER FOR RELIEF…………………………...7

III.   VERIFICATION AND CERTIFICATE OF SERVICE………………………9

## <u>INDEX OF REPLY APPENDIX</u>

*Elias Jorje "George" Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc., et al.*, EDLA Case No. 2:18-cv-07889 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Plaintiff-Applicants Frederick Addison, *et al.*, through counsel, submit this Reply Memorandum in Support of their Application for Supervisory Writ on Defendant-Respondents (Waste Connections U.S., Inc., and Jefferson Parish) ("Respondents") *lis pendens* exception. For the reasons previously briefed and further discussed below, the Court should grant the writ and vacate the trial court's order.

## I.     LAW AND ARGUMENT

In their Opposition, Respondents spend considerable time discussing matters that have nothing to do with the issue to be decided by this Court -- that issue is whether the trial court was authorized to issue a stay of this case under Civil Procedure Code, Article 532. The trial court was authorized to stay the Applicants' case only if the parties to this case and the parties to the federal class action case were the same parties, and only if the doctrine of *lis pendens* applies here. The trial court ruled incorrectly because the parties are not the same, and because the doctrine of *lis pendens* does not apply here. Therefore, issuance of the supervisory writ is required.

To escape this result, Respondents assert that Applicants must show that irreparable harm will result from the trial court's order (even though Louisiana law imposes no such requirement on supervisory writs); that there is no irreparable harm because Applicants can still investigate the basis of their claims (albeit without the benefit of compulsory process under the discovery procedures); and that staying this state court action will somehow promote judicial efficiency (by causing these Plaintiffs to delay the adjudication of their claims until other claims of other persons are resolved in some other court). None of Respondents' justifications support denial of the writ. More important, Respondents' own filings in the federal case now make plain that the parties and claims asserted in the federal case are *not* same as those in this case – a fact that mandates immediate vacation of the stay order.

a. **Recent developments in the federal class action case require the order staying proceedings in this matter be vacated.**

Louisiana Code of Civil Procedure Article 532 permitted the trial court to stay this case only if, among other things, the prior lawsuit was "between the same parties in the same capacities." Here, none of Plaintiffs in this case are also named plaintiffs in the federal court cases. Nevertheless, the trial court found that federal cases and this case are "between the same parties in the same capacities" because, in its view, Applicants' were subsumed in the proposed class definition of at least one of the prior-filed class cases and, therefore, "putative" class members.

On April 10, 2019, while this petition for a supervisory writ was pending, the Plaintiffs in the now-consolidated federal cases filed an Amending and Superceding [sic] Master Class Action Complaint.[1] [2] Critically, by virtue of this new filing, the proposed class definition has changed. The four previously-used definitions were superseded by the following:

> All persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill into and/or onto their persons and/or properties (except for Defendants' employees and relevant court personnel)... ***A more precise definition of the proposed class, including its geographic boundaries, will be set forth in Petitioners/proposed Class Representatives' class certification motion and supporting evidence.***[3]

Because the proposed class is to be limited to persons within as-yet-undefined specific geographical boundaries, and is limited to persons who are asserting the

---

[1] *See Elias Jorje "George" Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc., et al.,* EDLA Case No. 2:18-cv-07889, Reply Appendix at pg. 17.

[2] This Court can take judicial notice of this filing. 19 La. Civ. L. Treatise, Evidence And Proof § 4.4 (2d ed.) ("The state and federal evidence rules provide that an adjudicative fact (one which determines the application of law to events) may be noticed if it is "not subject to reasonable dispute. . . ."); *Pierce v. Bd. of Sup'rs of Louisiana State Univ.,* 392 So. 2d 460, 464 (La. Ct. App. 1st Cir. 1979) (Louisiana Appellate courts can take judicial notice of undisputed facts).

[3] *See Elias Jorje "George" Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc., et al.,* EDLA Case No. 2:18-cv-07889, Reply Appendix at pg. 17. (Emphasis added).

above-specific claims, it cannot be concluded automatically that all (or indeed any) of the Plaintiffs in this case are actually members of the proposed class. [5]

The Plaintiffs in this case have asserted a number claims that are not within the scope of the federal class action at all, including (a) personal injury claims seeking damages for bodily harm, and fear, anguish, and mental pain and suffering;[6] (b) claims for an unconstitutional taking of property and violation of due process;[7] (c) claims for lost wages and medical expenses;[8] (d) claims for medical monitoring.[9] It is now clear that none of these claims will be adjudicated in the class action case, and any judgment entered in the class action case can have no effect upon them.

For this reason, the parties are not the same, and Court must exercise its supervisory jurisdiction, vacate the order below, and remand this matter.

### b. *Aisola* requires the trial court be reversed.

Respondents contend that *Aisola v. Louisiana Citizens Prop. Ins. Corp.*, 2014-1708 (La. 10/14/15), 180 So. 3d 266, 269, requires denial of the writ. The opposite is true. In *Aisola*, the Plaintiffs themselves alleged they were members of the classes whose claims were being adjudicated in the class action lawsuits. This was done because their claims would have otherwise prescribed. As a result, the court recognized,

> [a]ny judgment rendered in the … class action suits would be *res judicata* to the identical claims raised by the plaintiffs in their individual suits. Because any judgment on those class actions in which the plaintiffs are alleged putative class members would be conclusive and binding as the plaintiffs under La. Code Civ. Proc. art. 597, it

---

[5] The original class action complaints had defined the classes in each case as all residents of Jefferson Parish.

[6] *See* Petition for Damages and Request for Injunctive Relief, at Appendix pg. 43-44. ("These odors and chemicals have also caused these Petitioners to suffer physical, mental, and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness, loss of appetite and lethargy, as well as fear, anguish, anxiety and mental pain and suffering."); *See also Id* at Appendix pg. 44 ("Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.").

[7] *Id* at Appendix pg. 46–48.

[8] *Id* at Appendix pg. 48.

[9] *Id* at Appendix pg. 47-48.

necessarily follows that that the requirements of *lis pendens* are satisfied.

180 So. 3d at 271. Here, by contrast, Plaintiffs do not allege that they are members of the federal class. In fact, as described above, they are asserting claims that are not at issue in the federal case at all. As a result, the judgment in the federal case will not be *res judicata* as to such claims.

*Aisola* establishes that the "test" established to determine if an exception of *lis pendens* should be sustained is the same as that for *res judicata*; thus, an exception of *lis pendens* should be sustained if "a final judgment in the first suit would be res judicata in the subsequently filed suit." *Aisola* 180 So. 3d at 269. Conversely, where the judgment in the first case will not have *res judicata* effect on the later case, the exception of *lis pendens* must be overruled.

It must also be noted that *Aisola* construes Louisiana Code of Civil Procedure Article 531 *not* Article 532. *Aisola* 180 So. 3d at 269. While Articles 531 and 532 are similar, they are not the same. Article 531 refers to cases between the same parties that are all pending in state court. It requires dismissal of the later-filed case in favor of the first filed case. When both cases are in state court, the Louisiana Supreme Court ultimately has the ability to review both cases. By contrast, Article 532 applies when the first filed case is pending in a jurisdiction other than Louisiana state court. Article 532 permits, and does not require, the state court to stay the later filed case until the first is concluded (dismissal is not permitted under Art. 532). In the present instance, Louisiana state courts have no power at all to review the final judgment of the matters pending in federal court.

In considering whether to stay this action in favor of the federal class action, the Court must be mindful of the constitutional rights of Louisiana citizens to have their claims adjudicated in Louisiana courts. Article 22 of the Louisiana Constitution of 1974, guarantees that "All courts shall be open, and every person shall have an

adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." La. Const. Ann. art. I, § 22. For this reason, any order that might close the courts to any person must be approached with caution.

### c. The standard of review for a supervisory writ does not require a showing of irreparable harm; nevertheless, the trial court's erroneous ruling is causing harm to Mr. Addison and his Co-Plaintiffs.

Respondents contend that the writ must be denied because Plaintiffs cannot show that they will suffer irreparable harm as a result of the trial court's order. Louisiana law imposes no such requirement for the issuance of a supervisory writ. In *Herlitz Const. Co., Inc. v. Hotel Inv'rs of New Iberia, Inc.*, 396 So. 2d 878 (La. 1981) (per curiam), Defendants filed an exception of no cause of action, contending that the only item of damages recoverable for the failure to timely perform an obligation to pay money is interest. *Id.* The trial court overruled the exception. *Id.* Defendants then applied for supervisory writs. The Court of Appeals denied the writ because the appellant could not show that "irreparable injury will ensue." *Id.* The Supreme Court thereupon granted the writ, stating "A court of appeal has plenary power to exercise supervisory jurisdiction over trial courts and may do so at any time, according to the discretion of the court." *Herlitz*, 396 So. 2d at 878.

When *Herlitz* was decided, Art. 2083 (as it then existed), permitted a direct appeal to be taken from "an interlocutory judgment which may cause irreparable injury." The *Herlitz* court reasoned, "If appellate courts have appellate jurisdiction over interlocutory judgments which cause irreparable injury, then the courts' supervisory jurisdiction logically extends to interlocutory judgments that do not cause irreparable injury." *Id.* n. 1. Stated differently, there would be no difference between a supervisory writ and a direct appeal if irreparable injury had to be shown in all cases, and orders not causing irreparable injury (like the order before the court

in *Herlitz*, which could have been reviewed after final judgment; *i.e.*, no irreparable injury), would not be reviewable at all before final judgment.

Article 2083 was amended in 2005 to remove the reference to "irreparable injury." Comment (c) to the statute explained that one reason for the amendment was to "eliminate[] the uncertainty of selection between an interlocutory appeal and supervisory writ as the proper procedure when the overlapping and ill-defined irreparable injury standard is thought to be applicable to the trial court's ruling." Comment (b) to the 2005 amendment stated, "Irreparable injury continues to be an important (but not exclusive) ingredient in an application for supervisory writs." Since the adoption of the amendment, cases have been uniform in concluding that "The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs." *See Brown v. Sanders*, 06-1171, p. 2 (La. App. 1 Cir. 3/23/07), 960 So. 2d 931, 933 (citing La. C.C.P. arts. 2087 and 2201)).

The cases cited by Respondents were all decided before the 2005 amendments to Article 2083. *See* Opp. at 6 (citing *First Fin. Bank, FSB v. Boue*, 541 So. 2d 947, 950 (La. Ct. App. 5th Cir. 1989) and *Women's Clinic v. Watson*, 550 So. 2d 864, 866 (La. Ct. App. 2d Cir. 1989).

Even if the Plaintiffs here required to prove irreparable injury, that injury is manifest from Respondents' actions. Appellees' have admitted serious, ongoing harms, to the point that the Parish publicly advised residents near the landfill to move. As detailed fully in Applicants' application, Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to,

leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[10]

At the same time, Defendants seek to deprive the Plaintiffs of their ability to vindicate their rights. Respondents assert that Applicants can "conduct discovery outside of the discovery process while the current case is stayed," suggesting that Applicants' essentially, "stand at the fence line and sniff" to gather evidence.[11] As litigants in state court proceedings, Applicants have the right to gather discovery through compulsory process. *Hodges v. S. Farm Bureau Cas. Ins. Co.*, 433 So. 2d 125, 129 (La. 1983) ("The basic objectives of the Louisiana discovery process are (1) to afford all parties a fair opportunity to obtain facts pertinent to the litigation, (2) to discover the true facts and compel disclosure of these facts wherever they may be found, (3) to assist litigants in preparing their cases for trial, (4) to narrow and clarify the basic issues between the parties, and (5) to facilitate and expediate [sic] the legal process by encouraging settlement or abandonment of less than meritorious claims."). In the absence of the ability to conduct discovery through a compulsory process, they cannot ensure that evidence is gathered before memories fade and before documents are lost.

Respondents assert that Applicants are not facing any "irreparable harm justifying interlocutory intervention because the *Addison* Applicants are represented by four teams of lawyers in the pending proposed class actions."[12] However, not one of these teams of lawyers contains an attorney chosen by any of the *Addison* Plaintiffs to represent their interests. More importantly, these lawyers have chosen not to assert causes of action upon which the Applicants are proceeding, and Respondents demand that the Applicants be bound by the decisions of lawyers who

---

[10] *See* Petition for Damages and Request for Injunctive Relief, at Appendix pg. 41.
[11] *See* Joint Opposition to Application for Supervisory Writ by Respondents Waste Connections US, Inc. and Jefferson Parish, at pg. 11
[12] *Id* at pg. 7.

do not represent them and with whom they have never communicated. Thus, these considerations mandate that the trial court be reversed.

## I.  CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, this Court should issue the writ and vacate the order of the trial court granting Defendant's Exception of *Lis Pendens.*

**Respectfully Submitted:**

**FORREST CRESSY & JAMES, LLC**

*/s/ S. Eliza James*
_____
Byron Miller Forrest (#35480)
Nicholas V. Cressy (#35725)
S. Eliza James (#35182)
One Canal Place Office Tower
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Telephone: 504-605-0777
Facsimile: 504-322-3884

**WHITEFORD TAYLOR PRESTON, LLP**

_____s/ Barry S. Neuman_____
Barry S. Neuman, Admitted *Pro Hac Vice*
Adrian Snead, Admitted *Pro Hac Vice*
1800 M Street, NW
Suite 450N
Washington, DC 20036
Telephone: (202) 659-6800

*Appeal counsel for Plaintiffs.*

## III.   <u>VERIFICATION AND CERTIFICATE OF SERVICE</u>

**STATE OF LOUISIANA**
**PARISH OF ORLEANS**

**BEFORE ME,** the undersigned authority, personally came and appeared:

**S. ELIZA JAMES,**

who declared that she is the attorney of record and appeals counsel for the

Plaintiffs Frederick Addison, *et. al.*, in the present case; that the above and

foregoing Memorandum in Reply in Support of Plaintiffs' Application for

Supervisory Writ is true and correct to the best of her knowledge, information,

and belief; and that he served a copy of the foregoing to the trial court and all

counsel of record for all parties by depositing same in the United States mail,

postage pre-paid, and properly addressed, this 15 day of April, 2019. Counsel

avers that an additional courtesy copy was transmitted through email.

_____
S. Eliza James

SWORN TO AND SUBSCRIBED
BEFORE ME, THIS 15 DAY
OF APRIL, 2019

BYRON MILLER FORREST
Notary Public
State of Louisiana
Orleans Parish
Bar Roll # 35480
My Commission is for Life

Hon. Stephen J. Grefer
24th Judicial District Court
Division "J"
200 Derbigny Street
Gretna, Louisiana 70053

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.

Suite 408
Metairie, Louisiana 70002

WASTE CONNECTIONS, U.S.
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163

James B. Slaughter
Megan R. Brillault
Michael G. Murphy
John H. Paul
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005

APTIM Corp.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802