24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                      DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

## WASTE CONNECTIONS US, INC.'S MOTION TO TRANSFER AND CONSOLIDATE

Defendant Waste Connections US, Inc., through undersigned counsel, appearing herein solely for the purpose of exercising its rights pursuant to La. C.C.P. art. 1561 and without waiving any rights related to the Court's stay of this litigation, now moves this Court for entry of an order transferring the action *Charles Lee Anderson et al. versus Louisiana Regional Landfill Company, et al.,* Civil Action No. 792-502, currently pending on the docket of Division O in this district, to Division J, and consolidating it with the present action, because the *Anderson* action involves the same allegations of fact and law as the present action, as set forth more fully in the attached memorandum.

Counsel for plaintiffs in both this action and the *Anderson* action, Barry S. Neuman, has indicated that he opposes this motion.

WHEREFORE, defendant Waste Connections US, Inc., respectfully requests that this motion be granted, transferring Civil Action No. 792-502 from Division O to Division J, and consolidating it with the present action.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: _____
      David R. Taggart
      (Louisiana Bar Roll No. 12626)
401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
(Louisiana Bar Roll No. 33991)
John B. Stanton
(Louisiana Bar Roll No. 36036)

1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

BEVERIDGE & DIAMOND, P.C.
Michael G. Murphy (*pro hac vice*)
Megan R. Brillault (*pro hac vice*)
John H. Paul (*pro hac vice*)
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice to be submitted*)
1350 I Street, N.W., Suite 700
Washington, DC 20005
(202) 789-6000

Counsel for Defendant Waste Connections US, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above pleading on the following counsel of record via PDF email this 29th day of March, 2019.

Byron M. Forrest
Nicholas V. Cressey
S. Eliza James
Forrest Cressey & James, LLC
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130

Barry S. Neuman
Adrian Snead
C. Allen Foster
Erik Bolog
Whiteford Taylor Preston, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036

OF COUNSEL

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                              DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**ORDER**

Considering the above and foregoing Motion to Transfer and Consolidate submitted by

Waste Connections US, Inc.,

IT IS ORDERED BY THE COURT that Petitioners show cause on the _____ day of

_____ at _____ a.m. why Waste Connections US, Inc.'s Motion to Transfer and

Consolidate should not be granted.

Gretna, Louisiana, this _____ day of _____ 2019.


_____
DISTRICT JUDGE


**SHERIFF, PLEASE SERVE:**
**FREDERICK ADDISON, ET AL.**
**THROUGH THEIR COUNSEL OF RECORD:**
Byron M. Forrest
Nicholas V. Cressey
S. Eliza James
Forrest Cressey & James, LLC
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                                    DIVISION "J"

FREDERICK ADDISON, et al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et al.

**MEMORANDUM IN SUPPORT OF**
**WASTE CONNECTIONS US, INC.'S MOTION TO TRANSFER AND CONSOLIDATE**

Defendant Waste Connections US, Inc. ("Waste Connections"), through undersigned counsel, submits this memorandum in support of its Motion to Transfer and Consolidate, requesting that pursuant to La. C.C.P. art. 1561, the action *Charles Lee Anderson et al. versus Louisiana Regional Landfill Company, et al.,* Civil Action No. 792-502,[1] currently pending on the docket of Division O in this district, be transferred to Division J, and consolidated with the present action.

**A. PROCEDURAL BACKGROUND**

On July 25, 2018, the first of four putative class actions was filed in the 24th Judicial District Court on behalf of a proposed class of persons seeking damages for alleged "noxious odors" emanating from the Jefferson Parish Landfill ("Landfill"). *See Ictech-Bendeck v. Progressive Waste Solutions,* No. 2:18-cv-07889 (E.D. La.) (filed in 24th Jud. Dist. July 25, 2018).[2] On August 17, 2018, Waste Connections removed the *Ictech-Bendeck* action to federal court pursuant to the Class Action Fairness Act ("CAFA").[3] Over the next month, three additional putative class actions were filed in the 24th Judicial District Court, *Thompson v. Louisiana Regional Landfill Company,* No. 2:18-cv-08071 (E.D. La.) (July 30, 2018), *Bernard v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-08218 (E.D. La.) (Aug. 10, 2018), and *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-09312 (E.D. La.) (Aug. 27, 2018). [4] Waste Connections also removed these subsequent actions to federal court pursuant to

---

[1] Ex. A.
[2] Ex. B-1.
[3] Ex. B-2.
[4] Exs. C-1, D-1, E-1.

CAFA.[5] All four proposed class actions name the same set of defendants – Jefferson Parish, Louisiana Regional Landfill Company f/k/a IESI LA Landfill Corporation (a Waste Connections subsidiary), Waste Connections Bayou, Inc. f/k/a/ Progressive Waste Solutions of LA, Inc., Waste Connections US, Inc. (collectively the "Waste Connections Defendants"), and Aptim Corporation.

On December 13, 2018, the *Addison* plaintiffs filed the instant action, brought on behalf of 86 residents of Jefferson Parish and seeking damages for alleged odors emanating from the Landfill. This suit also involves defendants Jefferson Parish, the Waste Connections Defendants, and Aptim Corporation. The *Addison* plaintiffs are represented by Barry S. Neuman, based in Washington, D.C., with the firm of Forrest, Cressy & James, LLC serving as local counsel. The *Addison* matter was not removable under CAFA, which provides jurisdiction for cases that are either styled as a class action, or that involve 100 or more plaintiffs. *Addison* meets neither of those criteria.

Waste Connections and Jefferson Parish responded to the *Addison* action with declinatory exceptions of lis pendens. After those matters were fully briefed, this Court held a hearing on January 24, 2019. At the conclusion of argument, this Court held that La. C.C.P. art. 532 dictated that the exceptions of lis pendens be granted as *Addison* was duplicative of the four related class actions pending in federal court.[6] The Court further ordered that *Addison* would be stayed until such time as the Eastern District of Louisiana ordered a remand of any one of the related class actions, or until such time as the Eastern District of Louisiana ruled on class certification in any one of those actions. On February 6, 2019, the Court signed a judgment reflecting this ruling.[7]

On February 25, 2019, Mr. Neuman and the Forrest, Cressy, and James firm filed suit in this district on behalf of 91 additional residents of Jefferson Parish, also complaining of odors allegedly emanating from the Landfill. That matter also names defendants Jefferson Parish, the same Waste Connections defendants named in the present action, and Aptim Corporation, and is

---

[5] Exs. C-2, D-2, E-2.
[6] Ex. F-1.
[7] See Exhibit F-2. On March 21, 2019, the *Addison* plaintiffs filed an application for supervisory writs, which the Fifth Circuit Court of Appeal has not yet ruled on. That application lacks any merit, as this Court properly held that *Addison* was duplicative of the four related class actions pending in federal court.

captioned *Charles Lee Anderson et al. versus Louisiana Regional Landfill Company, et al.,* Civil Action No. 792-502, currently pending on the docket of Division O in this district.[8]

On March 14, 2019, Mr. Neuman and the Forrest, Cressey, and James firm filed a third such suit in this district, this time on behalf of 93 additional residents of Jefferson Parish, also complaining of odors allegedly emanating from the Landfill. That matter also names defendants Jefferson Parish, the same Waste Connections defendants named in the present action, and Aptim Corporation, and is captioned *Michael Brunet et al. versus Louisiana Regional Landfill Company, et al.,* Civil Action No. 793-088, currently pending on the docket of Division O in this district.[9]

On March 14, 2019, the Eastern District of Louisiana denied the various motions to remand pending in the four putative class actions, holding that the actions would remain in federal court.[10]

Waste Connections now requests that the *Anderson* matter be transferred from Division O to Division J, and consolidated with the present action, given that the two actions involve the same allegations of fact and law. The consolidation will serve several vital interests: prevent the appearance of judge shopping by plaintiffs; promote efficiency and judicial expediency; and avoid the possibility of inconsistent rulings.

Simultaneous with this motion, Waste Connections has filed a declinatory exception of lis pendens in the *Anderson* matter, on the basis that it is duplicative of the related class actions filed in the summer of last year (i.e., the same basis on which this Court ordered that the *Addison* matter be stayed). Waste Connections submits that this Court should hear the exception of lis pendens after *Anderson* is transferred to this division. Additionally, Waste Connections filed a similar motion to the present one in Division "O" in the *Anderson* action, also requesting that the *Anderson* action be transferred to Division J. That motion was filed in an abundance of caution, given that the present matter is stayed pursuant to the Court's order dated February 6, 2019.

---

[8] Ex. A.
[9] Ex. G.
[10] *Ictech-Bendeck*, __F.Supp.3d__, 2019 WL 1199105; *Thompson*, __F.Supp.3d__, 2019 WL 1199103; *Landry-Boudreaux*, __F.Supp.3d__, 2019 WL 1199104; *Bernard*, __F.Supp.3d__, 2019 WL 1199102.

## B. ARGUMENT

Louisiana Code of Civil Procedure article 253.2 allows for transfer of a case from one division of a judicial district to another division within the same district to effect a consolidation, as follows:

> After a case has been assigned to a particular section or division of the court, it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561. However, the supreme court, by rule, may establish uniform procedures for reassigning cases under circumstances where an expeditious disposition of cases may be effectuated.

Further, Louisiana Code of Civil Procedure article 1561 provides that the division in which the first-filed action is pending is the proper division to order a consolidation:

> When two or more separate actions are pending in the same court, the section or division of the court in which the first filed action is pending may order consolidation of the actions for trial[11] after a contradictory hearing, and upon a finding that common issues of fact and law predominate[.]

Louisiana courts have long recognized that consolidation should be granted to avoid multiplicity and duplication of actions.[12] The purpose of consolidation is to discourage judge shopping[13] and to promote judicial efficiency and expediency.[14]

---

[11] Despite article 1561's reference to trial, Louisiana courts have observed that a trial court has wide discretion to order consolidation at any stage of the proceedings, even if consolidation would obviate the need for a trial. *See Bonnette v. Tunica-Biloxi Indians,* 2002-919 (La.App. 3 Cir. 5/28/03, 2), 873 So. 2d 1, 4, on reh'g (Mar. 24, 2003). There, the trial court dismissed the first-filed action for lack of subject matter jurisdiction; it then ordered consolidation of a later filed action, and subsequently dismissed it for lack of subject matter jurisdiction for the same reasons as first-filed action. The court of appeal rejected the appellant's argument that the trial court erred in dismissing the later-filed action immediately after consolidation, and that consolidation should be for trial only. *Id; see also Ferguson v. Sugar,* 2000-2528 (La.App. 4 Cir. 12/19/01, 3), 804 So.2d 844, 846 (permitting the consolidation of a petition for discovery only pending in one division with the underlying negligence claim pending in another, even though the discovery petition was not consolidated "for trial.")

[12] *See e.g., In re Miller,* 95-1051 (La. App. 1 Cir. 12/15/95), 665 So. 2d 774, 776; *Reynaud v. Champagne,* 14 Orleans App. 179, 181 (La. 1917) ("The law abhors a multiplicity of actions against the same person.").

[13] *See* Rule 9.4(b) of the Uniform Rules for Louisiana District Courts, which provides:
> (b) Judge or forum shopping is prohibited. To achieve continuity of case management and avoid the appearance of judge or forum shopping, all subsequent actions asserting the same claim by the same parties, except for cases filed in juvenile courts with concurrent jurisdiction, shall be transferred to the division to which the first case filed was allotted, whether or not the first case is still pending. Any attorney or party who files more than one petition for the same party on the same cause of action shall attach to any subsequent petition a "Notice of Prior Filing or Multiple Filing," regardless of whether any of the previous petitions were dismissed. This notice shall comply with La. Code Civ. Proc. art. 853.

[14] *See St. Pe v. Neal,* 534 So. 2d 993, 994 (La.App. 4th Cir. 1988) (consolidation appropriate when it "achieves judicial economy and results in the reduction of transactional costs."); *Aaron & Turner, L.L.C. v. Perret,* 2007-1425 (La.App. 1 Cir. 5/4/09), 2009 WL 2857974 (consolidation warranted "in the interests of judicial efficiency"); *Johnson v. First Nat. Bank of Shreveport,* 2000-870 (La.App. 3 Cir. 6/20/01, 6), 792 So. 2d 33, 43 ("Judicial economy dictates that such similar matters arising out of the same set of facts and circumstances and against the same set of Defendants be tried together.").

The Louisiana Supreme Court has confirmed that consolidation is appropriate when two suits allege common issues of fact and law. In *Cotton v. Gaylord Chemical Corporation*, 96-1823 (La. 7/18/96), 678 So. 2d 532, the trial court granted consolidation under Article 1561 because the two cases arose from the same alleged incident, were against the same defendants, and made similar allegations against the defendants. On appeal, the First Circuit reversed the consolidation. *Id.* The Supreme Court granted writs and reinstated the consolidation order, finding that consolidation with the first-filed case was required due to the common issues of fact and law alleged in the two cases. *Id.*

The Louisiana Fifth Circuit has recognized that consolidation should not be denied based on vague or nonspecific objections; rather, an objection to consolidation is valid only when the objecting party demonstrates with "specificity" that it will be unduly prejudiced. *Abadie v. Metro. Life Ins. Co.*, 00-344 (La.App. 5th Cir. 3/28/01, 11), 784 So. 2d 46, 62.

Here, consolidation is warranted under article 1561 because both *Anderson* and *Addison* allege the same events and alleged wrongdoing (ongoing odors which are allegedly emanating from the Landfill); the two suits involve at least one common plaintiff (Ms. Ethel Green);[15] all plaintiffs in both suits belong to the same proposed class of plaintiffs in four previously filed proposed class actions; both suits name identical defendants; and both suits seek the same relief from the same defendants.[16]

Further, consolidation should be granted as several more similar actions are likely to be filed in the near future, and without consolidation, those various suits would cause a drain on this district's resources and create a risk of inconsistent judgments.

1.  **Same alleged events, same alleged wrongdoing.**

First, consolidation is appropriate because the two suits arise from the same alleged events and involve the same alleged acts of wrongdoing. Namely, both the *Anderson* and *Addison* suits allege that odors have emanated and continue to emanate from the Landfill, and that such odors are caused by the Landfill's insufficient leachate and gas collection systems. This

---

[15] *See Addison* petition, p. 4; Ex. A, *Anderson* petition, p. 5.
[16] Those defendants are Jefferson Parish, Louisiana Regional Landfill Company ("LRLC") f/k/a IESI LA Landfill Corporation, Waste Connections Bayou, Inc. f/k/a/ Progressive Waste Solutions of LA, Inc., Waste Connections US, Inc., and Aptim Corporation.

is made abundantly clear by the "Introduction" sections of the *Anderson* and *Addison* petitions –

which contain the same, identical provision:

> This action arises from the continuing, significant and unabated harm suffered by
> each of the named Petitioners as a result of the ongoing – and admitted – failure
> of each of the Defendants to ensure that the design, operation and maintenance of
> the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable
> environmental laws and adequately protects Petitioners' human health and
> environment. At all relevant times, the J.P. Landfill and has persistently emitted
> harmful and toxic odors and chemicals into the surrounding areas, including
> where each of the Petitioners resides.
>
> These unlawful, harmful and toxic releases have caused Petitioners substantial
> loss of the use and enjoyment of their homes and immovable property, and have
> caused physical harms including, among other things: difficulties breathing,
> coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite
> and lethargy, as well as fear, anguish, discomfort and inconvenience. These
> emissions also have caused diminution in the value of Petitioners' homes.
>
> Accordingly, Petitioners seek redress from the Defendants for the direct and
> consequential injury and damage they have suffered and will continue to suffer as
> a direct result of the releases of noxious odors and chemicals from the J.P.
> Landfill.[17]

Likewise, the remainder of both petitions set forth nearly identical allegations regarding the

events giving rise to the litigation and the harms allegedly suffered.[18] In short, there is no

meaningful distinction in the facts and law alleged in the two suits that would cut against

consolidating these actions.

### 2.  Same plaintiffs

Consolidation is also appropriate as *Addison* and *Anderson* both involve at least one

common plaintiff,[19] and more importantly, the *Addison* and *Anderson* plaintiffs share a legal

identity as both sets of plaintiffs belong to the same proposed class of plaintiffs in four

previously filed proposed class actions which are pending in federal court.

As this Court already recognized when it granted Waste Connections' exception of lis

pendens, the *Addison* plaintiffs are, as a matter of law, deemed to share an identity with the

---

[17] *Addison* petition, p. 2; Ex. A, *Anderson* petition, p. 2.
[18] *Compare, e.g., Addison* petition, para. XXXV(a) (alleging that defendants were negligent in "Failing to properly
design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be
released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods.") with Ex. A,
*Anderson* petition, para. XXXVIII(i) (same); *Addison* petition, para. XXXV [sic] at p. 17 ("The Defendants' failure
to comply with their duties of care to the Peti tioners were and are a cause in fact and a legal cause of Petitioners'
injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in
property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their
immovable property and diminution in the value of said property.") with Ex. A, *Anderson* petition, para. XXXIX
(same).
[19] *See Addison* petition, p. 4; Ex. A, *Anderson* petition, p. 5 (both naming Ethel Green of 341 Providence Lane,
Kenner, LA 70062).

proposed class of plaintiffs in the *Ictech* and other related proposed class actions.[20] The Court's ruling was based, in part, on Louisiana Supreme Court authority which makes it clear that when plaintiffs in a later-filed action are putative class members of an earlier-filed pending class action, there is a shared legal identity among all members of the putative class until at least such time as class certification is ruled upon. *Aisola v. Louisiana Citizens Property Ins. Corp.,* 2014-1708 (La. 10/14/15), 180 So. 3d 266, 270 (finding that there was an "identity of parties" where plaintiffs were putative class members of four earlier-filed class action suits). The *Addison* plaintiffs conceded that they fall within the definition of the class proposed in the *Ictech* and related actions,[21] and there is not yet an available procedure for opting out of the proposed class.[22] Accordingly, this Court correctly held that the *Addison* plaintiffs share an identity with the plaintiffs in four previously filed proposed class actions.

The *Anderson* plaintiffs, just like the *Addison* plaintiffs, all allege to be residents of Jefferson Parish who have been harmed by odors allegedly emanating from the Landfill.[23] Therefore, for the same reasons as the *Addison* plaintiffs, the *Anderson* plaintiffs fall within the proposed class definition[24] and share an identity with the plaintiffs in four previously filed proposed class actions – and by extension, the *Addison* and *Anderson* plaintiffs share an identity with each other.

Finally, the *Addison* and *Anderson* plaintiffs are represented by the same attorneys, which also weighs in favor of consolidation.[25]

For these reasons, consolidation is appropriate as *Addison* and *Anderson* both involve at least one common plaintiff, and the *Addison* and *Anderson* plaintiffs share a legal identity.

---

[20] Ex. F-2, pp. 31:30-32:12 (holding that given "the proposed class definition [in *Ictech-Bendeck* and the related actions] and the allegations alleged in the plaintiffs' petition in the Addison matter that there is no way that this Court can envision that [the Addison plaintiffs] wouldn't be members of the class if a class is so certified [in *Ictech-Bendeck* or the related actions]. That doesn't mean that they can't opt out [at a later date], obviously, but that's not the question now.").

[21] Ex. F-2, p. 19, lines 8–21.

[22] *See Duckworth v. La. Farm Bureau Mut. Ins. Co.,* 2011-2835 (La. 11/2/12), 125 So. 3d 1057, 1070 ("The decision to request exclusion or to 'opt out' is made, not at the time of filing a class action petition, but after the class is certified, notice is issued, and a timely election form is submitted."); *Quinn v. La. Citizens Prop. Ins. Corp.,* 2012-0152 (La. 11/2/12), 118 So. 3d 1011, 1016 ("when a class action is certified in Louisiana, all persons who fall within the class definition are class members. The only avenue for requesting exclusion from a class once it is certified is by the timely submission of an election form.").

[23] Ex. A, *Anderson* petition, paras. I, III, XXVI.

[24] The proposed class in each action is defined as all residents of Jefferson Parish that suffered harm as a result of the alleged emission of noxious odors from the Landfill. *See* Ex. B-1, Petition at 4; Ex. C-1, Petition at 2; Ex. D-1, Petition at 5; and E-1, Petition at 5.

[25] *Rapp v. City of New Orleans,* 95-1638 (La.App. 4 Cir. 9/18/96, 46), 681 So. 2d 433, 455 ("common representation on both sides" was one reason that consolidation was warranted).

9

### 3.  Same defendants

Consolidation is also warranted because the *Addison* and *Anderson* actions involve the same defendants – namely, Jefferson Parish, the same Waste Connections defendants named in the present action, and Aptim Corporation.

### 4.  Consolidation is necessary to prevent the appearance of judge shopping

Additionally, consolidation is necessary to prevent the appearance of judge shopping. Rule 9.4(b) of the Uniform Rules for Louisiana District Courts explicitly calls for transfers when necessary to prevent the appearance of judge shopping, as follows:

> Judge or forum shopping is prohibited. To achieve continuity of case management and avoid the appearance of judge or forum shopping, all subsequent actions asserting the same claim by the same parties, except for cases filed in juvenile courts with concurrent jurisdiction, shall be transferred to the division to which the first case filed was allotted, whether or not the first case is still pending. Any attorney or party who files more than one petition for the same party on the same cause of action shall attach to any subsequent petition a "Notice of Prior Filing or Multiple Filing," regardless of whether any of the previous petitions were dismissed.

As set forth above, the *Addison* and *Anderson* actions involve the same defendants, at least one common plaintiff, and the remaining plaintiffs share a legal identity. Under these circumstances, Uniform Rule 9.4(b) required plaintiffs' counsel to attach a "Notice of Prior Filing or Multiple Filing" to the *Anderson* petition, which presumably would have prompted the Clerk of Court to transfer the *Anderson* action to this division. Yet, plaintiffs' counsel failed to submit the required notice, and when contacted by undersigned counsel, plaintiffs' counsel indicated that he would oppose any motion requesting that *Anderson* be transferred to this division.

Regardless of plaintiffs' counsel's true motives for opposing transfer of *Anderson* to this division, it certainly creates the appearance that plaintiffs' counsel would prefer to avoid this division, in which this Court already held that the similar *Addison* action be stayed under lis pendens. Uniform Rule 9.4(b) is designed to prevent such appearances of judge shopping and thus consolidation is warranted.

### 5.  Consolidation is necessary to prevent a drain on this district's resources and the risk of inconsistent judgments.

Consolidation should be granted to avoid wasting judicial resources and inconsistent rulings. Several more similar actions are likely to be filed in the near future—indeed, just weeks

after filing *Anderson*, the same counsel filed another related action, *Brunet*.[26] Without consolidation, the various related suits would waste judicial resources and create a risk of inconsistent judgments. So far, Mr. Neuman and the Forrest, Cressy, & James firm have filed three mass actions concerning alleged odors emanating from the Landfill. Mr. Neuman has already indicated to this Court that his legal team "has been inundated with over a thousand phone calls" from prospective clients and that he is indeed working to enlist additional plaintiffs.[27]

Given Mr. Neuman's suggestion that thousands more potential plaintiffs are lying in wait, there is a very real possibility that many—10 or more—related actions could be filed alleging the same issues of fact and law, and that each would be lodged in a different division of this judicial district. That number could balloon considerably if other attorneys adopt Mr. Neuman's strategy, especially in consideration of the staggering geographic scope of those allegedly suffering harm[28] and Jefferson Parish's population in excess of 400,000 people. Without consolidation, those various suits would create a significant drain on this district's resources and create a risk of inconsistent judgments on *lis pendens* and other issues that may arise.

6. **Consolidation would not cause undue prejudice.**

Finally, consolidation is warranted as it would not cause jury confusion, prevent a fair and impartial trial, give any party an undue advantage, or prejudice the rights of any party. *See* La. C.C.P. art. 1561(B). The Louisiana Fifth Circuit has recognized that consolidation should not be denied based on vague or nonspecific objections; rather, an objection to consolidation is valid only when the objecting party demonstrates with "specificity" that it will be unduly prejudiced. *Abadie v. Metro. Life Ins. Co.*, 00-344 (La.App. 5th Cir. 3/28/01, 11), 784 So. 2d 46, 62.

Here, consolidation would not only be fair to all parties but would be the most efficient and common-sense approach to managing the related actions. It would allow the same judge to issue rulings on lis pendens in the various cases, which is appropriate given that the exceptions

---

[26] Ex. G.
[27] Ex. F-2, pp. 14:30–15:12.
[28] On the northwest end of the spectrum, Mr. Neuman has filed suit on behalf of plaintiffs residing north of Louis Armstrong airport in Kenner. *See* Ex. A, *Anderson* petition, p. 5 (naming plaintiffs living at 3150 Washington St., Kenner, LA 70065). On the southeast end of the spectrum, he has filed suit on behalf of plaintiffs residing almost as far south as Lapalco Boulevard in Marrero. *See* Ex. G, *Brunet* petition, p. 4 (naming a plaintiff living at 1534 Mansfield Ave., Marrero, LA 70072).

of lis pendens in *Addison* and *Anderson* involve virtually the same factual allegations and issues of law. And if and when the stays are lifted, all of the actions would be before a single division, ensuring consistent discovery and case management rulings.

As for the risk of jury confusion and the likelihood of an impartial trial, any such concerns are entirely speculative at this point. Pursuant to the exceptions of lis pendens – which has already been granted as to *Addison*, and is likely to be granted as to *Anderson* – the *Addison* and *Anderson* actions will not proceed to trial in this district unless class certification is denied or the plaintiffs chose to opt out of a certified class.

Even if the Court assumes that *Addison* and *Anderson* will eventually proceed to trial in this division, consolidation is deemed to be unlikely to cause jury confusion or undue prejudice when the cases are "closely connected by the facts and theories of recovery" alleged in the petitions, as is the case here. *See Bridwell v. Louisiana Patients' Comp. Fund*, 2003-0683 (La.App. 4 Cir. 5/7/03, 2), 847 So. 2d 686, 688. Given the common issues alleged in *Anderson* and *Addison,* there is no basis to conclude that consolidation would impair the plaintiffs' right to a fair trial. *See also Riggin v. Watson-Aven Ice Cream Co.*, 192 La. 469, 476, 188 So. 144, 146 (1939) (consolidation would not unduly prejudice plaintiffs when the allegations "arise from one and the same accident and are of a similar nature.").

While the above objections would lack any merit, the most obvious objection the *Anderson* plaintiffs might have to consolidation is that this Court would presumably apply the same rationale in ruling on the issue of lis pendens as it did in *Addison*, resulting in a stay of the *Anderson* suit. However, a party's desire for a second bite at the apple before a different judge is not a valid reason for opposing consolidation.[29]

### C. CONCLUSION

For all of these reasons, defendant Waste Connections US, Inc., respectfully requests that this motion be granted, transferring Civil Action No. 792-502 from Division O to Division J, and consolidating it with the present action.

---

[29] *See* Rule 9.4(b) of the Uniform Rules for Louisiana District Courts, which orders that cases involving the same parties and same causes of action be tried in the same division in order to "achieve continuity of case management and avoid the appearance of judge or forum shopping."

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: _(signature)_

    David R. Taggart
    (Louisiana Bar Roll No. 12626)
401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
(Louisiana Bar Roll No. 33991)
John B. Stanton
(Louisiana Bar Roll No. 36036)
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

BEVERIDGE & DIAMOND, P.C.
Michael G. Murphy (*pro hac vice*)
Megan R. Brillault (*pro hac vice*)
John H. Paul (*pro hac vice*)
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice to be submitted*)
1350 I Street, N.W., Suite 700
Washington, DC 20005
(202) 789-6000

Counsel for Defendant Waste Connections US, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above pleading on the following counsel of record via PDF email this 29th day of March, 2019.

Byron M. Forrest
Nicholas V. Cressey
S. Eliza James
Forrest Cressey & James, LLC
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130

Barry S. Neuman
Adrian Snead
C. Allen Foster
Erik Bolog
Whiteford Taylor Preston, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036

OF COUNSEL

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                    DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

FILED: _____    _____
                                                    DEPUTY CLERK

## MOTION TO TEMPORARILY LIFT STAY, MOTION TO CONSOLIDATE, AND REQUEST FOR EXECUTION OF ORDER, EX PARTE, OR, IN THE ALTERNATIVE REQUEST FOR EXPEDITED HEARING

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jefferson Parish, who moves this Court for an Order consolidating five (5) identical subsequent-filed lawsuits that allege the same causes of action as Plaintiffs in the above-captioned matter. These subsequent lawsuits were also filed by the same attorneys and include many of the same Plaintiffs in several of the cases (see below). Uniform Rules for District Courts, Rule 9.4, *mandates* that Plaintiffs file a Notice of Prior Filing, which would have *automatically* transferred the five (5) subsequent actions to Division "J." Plaintiffs failed to comply with this rule in any of the subsequent-filed lawsuits. Accordingly, Defendant requests this Court execute the attached Order of Consolidation, *ex parte*, in accordance with Louisiana Code of Civil Procedure article 963, as relief to which Defendants are "clearly entitled" under Rule 9.4. Alternatively, should this Court deem a contradictory hearing necessary, Defendant respectfully requests expedited consideration for the reasons more fully set forth below.

I.

Defendant specifically requests the following suits be consolidated with the above captioned matter (Docket No. 790-369):

1. *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*[1]
   Docket No. 792-502
   Division "O"

---

[1] Charles Anderson Petition, filed February 25, 2019, attached hereto and marked as "Exhibit 1."

2. *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.*[2]
   Docket No. 793-088
   Division "O"

3. *Mary Ann Winningkof, et al. v. Louisiana Regional Landfill Company, et al.*[3]
   Docket No. 793-784
   Division "M"

4. *Rickey Calligan, et al. v. Louisiana Regional Landfill Company, et al.*[4]
   Docket No. 793-908
   Division "L"

5. *Regenia Griffin, et al. v. Louisiana Regional Landfill Company, et al.*[5]
   Docket No. 794-011
   Division "A"

Hereinafter and collectively referred to as the "Related Lawsuits."

## II.

On December 13, 2018, counsel for Frederick Addision, *et al.* filed a lawsuit asserting various alleged damages relative to the Jefferson Parish Landfill. The Addison case was allotted to Division "J" of the 24th Judicial District Court (Docket No. 790-369).

## III.

On January 24, 2019, hearings were held by this Court on Exceptions of Lis Pendens filed by Jefferson Parish and the Waste Connection Defendants. Those Exceptions were granted, and the Court signed the appropriate Judgment on February 6, 2019.

## IV.

As part of that Judgment, this matter (Docket No. 790-369) was ordered stayed pending the ruling by Judge Susie Morgan as to class certification in related class action matters, currently pending in United States District Court for the Eastern District of Louisiana.

---

[2] Michael Brunet Petition, filed March 14, 2019, attached hereto and marked as "Exhibit 2."
[3] Mary Ann Winningkof Petition, filed April 2, 2019, attached hereto and marked as "Exhibit 3."
[4] Ricky Calligan Petition, filed April 5, 2019, attached hereto and marked as "Exhibit 4."
[5] Reginia Griffin Petition, filed April 9, 2019, attached hereto and marked as "Exhibit 5."

## V.

Since the filing of the Addison suit, counsel representing Addison, et al. have to-date filed five (5) identical Related Lawsuits; specifically:

1. *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 792-502
   Division "O"

2. *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-088
   Division "O"

3. *Mary Ann Winningkof, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-784
   Division "M"

4. *Rickey Calligan, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-908
   Division "L"

5. *Regenia Griffin, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 794-011
   Division "A"

## VI.

Jefferson Parish requests that the Stay Order currently in place be temporarily lifted for the limited purpose of allowing this Court to rule upon this Motion to Consolidate the Related Lawsuits with the above-captioned matter, only.

## VII.

As a preliminary matter, Plaintiffs in the Related Lawsuits were *mandated* to file a Notice of Prior Filing, in accordance with Uniform Rules for District Courts, Rule 9.4 (see below).

## VIII.

There are common Plaintiffs in all six (6) lawsuits.

- Ethel Green and Glenda Guilbeau are named Plaintiffs in both *Addison* and *Anderson*.

- Lula Darden is a named Plaintiff in both *Addison* and *Brunet*.

- Willie Faye Brooks, Liz Hernandez, and Alexander Mitchell are named Plaintiffs in both *Addison* and *Winningkof*.

- Elizabeth Lowe and Rebecca Wells are named Plaintiffs in both *Addison* and *Calligan*.

- Regenia Griffin and Eric Brown are named Plaintiffs in both *Addison* and *Griffin*.

- Deborah Ursin is a Plaintiff in both *Anderson* and *Winningkof*.

- Cheryl Dufrene is a named Plaintiff in both *Anderson* and *Calligan*.

- Michael Brown, Calvin Carter, and Tedrick Jackson are named Plaintiffs in both *Anderson* and *Griffin*.

- Chandra August is a named Plaintiff in both *Brunet* and *Calligan*.

- Leroniesha Hartford is a named Plaintiff in both *Calligan* and *Griffin*.

## IX.

Because the cases involve the same parties making the same claims, Plaintiffs were *mandated* under Rule 9.4 of the Uniform Rules for District Courts to file a Notice of Prior Filing with the Related Lawsuits ("*[S]hall attach to any subsequent action [...]*"). If Plaintiffs had complied with the mandatory rule, all of these matters would have been *automatically* transferred to Division "J." ("*[S]hall be transferred to the division to which the first case filed was allotted [...]*").

## X.

Given that Rule 9.4 is *mandatory*, Defendant submits that it is "*clearly entitled*" to have all of these Related Lawsuit transferred to Division "J," as transfer would have otherwise been *automatic*. Accordingly, Defendant requests this Court execute the attached Order to Consolidate without the need for contradictory hearing, in accordance with Louisiana Code of Civil Procedure article 963.

## XI.

Alternatively, Defendant requests this Court consolidate the Related Lawsuits with the above captioned matter in accordance with Louisiana Code of Civil Procedure article 1561. Counsel for Plaintiffs has previously objected to consolidation of these matters.

## XII.

All six (6) of these lawsuits assert identical claims relating to Plaintiffs' alleged damages from the operation of the Jefferson Parish Landfill.

**4** of **6**

**XIII.**

All six (6) of these lawsuits allege common issues of law and fact that will require testimony and discovery from the same parties.

**XIV.**

In addition to the mandatory allotment to Division "J" in accordance with Rule 9.4, Defendant submits that judicial efficiency and justice would be best served by consolidation.

**XV.**

Counsel for the Waste Connection Defendants previously filed a Motion to Consolidate, which is currently set for hearing in this Court on May 30, 2019.

**XVI.**

Counsel for the Waste Connection Defendants also filed a Motion to Transfer the Anderson matter, which is currently set for hearing in Division "O," on May 28, 2019.

**XVII.**

Defendants assert that it is appropriate for this Court, as the division where the first filed lawsuit was allotted, to rule on the Motion to Consolidate prior to the Motion to Transfer. Plaintiffs' counsel has objected to moving the hearing dates currently scheduled on the Motions filed by Waste Connection Defendants.

**XVIII.**

Defendant maintains that the relief prayed for herein is relief to which it is "*clearly entitled*" and, therefore, request the attached Order to Consolidate be executed in accordance with Louisiana Code of Civil Procedure article 963.

**XIX.**

Alternatively, should the Court deem a contradictory hearing necessary, Defendant respectfully requests expedited hearing on this Motion prior to May 28, 2019. Based on information from Court staff, a hearing dates of May 9, 2019 and May 28, 2019 are available.

**WHEREFORE**, Defendant, Jefferson Parish, respectfully requests this Court (1) temporarily lift the stay in this matter for the limited purpose of ruling on this Motion to Consolidate, only and (2) execute the attached Order of Consolidation, consolidating the Related Lawsuits with the above titled action. Alternatively, Defendant respectfully requests this Court (1) temporarily lift the stay in this matter for the limited purpose of ruling on this Motion to Consolidate, only and (2) set an expedited hearing on this Motion to Consolidate, and (3) order that the Related Lawsuits be consolidated with this action.

Respectfully submitted,

CONNICK AND CONNICK, LLC

_____

WILLIAM P. CONNICK, LA. BAR NO. 14158
MICHAEL S. FUTRELL, LA BAR. NO. 20819
MATTHEW D. MOGHIS, LA BAR. NO. 33994
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone:   (504) 681-6658
Facsimile:   (504) 838-9903
E-mail:   *moghis@connicklaw.com*

*Counsel for Defendant, Jefferson Parish*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all known counsel of record in this proceeding by:

( )   Hand Delivery            ( )   Prepaid U.S. Mail
(X)   Email                    ( )   Facsimile

New Orleans, Louisiana this 11th day of April, 2019.

_____

MATTHEW D. MOGHIS

**24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**NO. 790-369**                                                         **DIVISION "J"**

**FREDERICK ADDISON, et. al.**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et. al.**

**FILED:** _____          _____
                                                         **DEPUTY CLERK**

**ORDER OF CONSOLIDATION**

**CONSIDERING** the Motion to Consolidate filed by Defendant, Jefferson Parish,

**IT IS ORDERED** that the matters entitled the following matters be and are hereby

consolidated with the above-captioned matter (*Frederick Addison, et al. v. Louisiana*

*Regional Landfill Company, et al.*, No. 790-369, Division "J"):

1. *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 792-502
   Division "O"

2. *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-088
   Division "O"

3. *Mary Ann Winningkof, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-784
   Division "M"

4. *Rickey Calligan, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-908
   Division "L"

5. *Regenia Griffin, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 794-011
   Division "A"

**IT IS FURTHER ORDERED** that these matters be consolidated for trial in

Division "J" of the 24th Judicial District Court for the Parish of Jefferson, State of

Louisiana.

*(Continued on next page)*

**1 of 2**

**IT IS FURTHER** that all records shall be kept separate and all pleadings shall bear the number of and be filed in the record to which they pertain, except a Motion to Set Trial, which may bear all numbers.

Gretna, Louisiana, this _____ day of April, 2019.


_____

JUDGE STEPHEN C. GREFER

**24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**NO. 790-369**                                                    **DIVISION "J"**

**FREDERICK ADDISON, et. al.**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et. al.**

**FILED: _____**         **_____**
                                             **DEPUTY CLERK**

<u>**RULE TO SHOW CAUSE**</u>

**CONSIDERING** the Motion to Consolidate filed by Defendant, Jefferson Parish,

**IT IS ORDERED** that Plaintiffs show cause on the ___ day of May, 2019 at

___:__ __.M. why the Motion to Consolidate should not be granted, consolidating the

following matters with the above-captioned matter (*Frederick Addison, et al. v.*

*Louisiana Regional Landfill Company, et al.*, No. 790-369, Division "J"):

1. *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 792-502
   Division "O"

2. *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-088
   Division "O"

3. *Mary Ann Winningkof, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-784
   Division "M"

4. *Rickey Calligan, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-908
   Division "L"

5. *Regenia Griffin, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 794-011
   Division "A"

Gretna, Louisiana, this _____ day of April, 2019.

_____
**JUDGE STEPHEN C. GREFER**

*SERVICE WILL BE MADE ON COUNSEL FOR PLAINTIFFS IN ACCORDANCE WITH LOUISIANA CODE*
*OF CIVIL PROCEDURE ARTICLE 1313.*

**1 of 1**

0869

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                    DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

FILED: _____        _____
                                          DEPUTY CLERK

## MEMORANDUM IN SUPPORT OF MOTION TO TEMPORARILY LIFT STAY, MOTION TO CONSOLIDATE, HIM AND REQUEST FOR EXECUTION OF ORDER, EX PARTE, OR, IN THE ALTERNATIVE REQUEST FOR EXPEDITED HEARING

**NOW INTO COURT** through undersigned counsel comes Defendant, Jefferson Parish, who in support of its Motion to Consolidate adopts, as if copied *in extenso*, the Motions and arguments set forth by the Waste Connection Defendants in support of its Motion to Consolidate. Additionally, Jefferson Parish submits the following:

This matter is the first-filed of six (6) current lawsuits filed by the same attorneys on behalf of various Plaintiffs that all assert alleged damages related to the operation of the Jefferson Parish Landfill. Counsel for Plaintiffs filed this matter on December 13, 2018 and have subsequently filed five (5) additional lawsuits:

1. *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 792-502
   Division "O"

2. *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-088
   Division "O"

3. *Mary Ann Winningkof, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-784
   Division "M"

4. *Rickey Calligan, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-908
   Division "L"

5. *Regenia Griffin, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 794-011
   Division "A"

Hereinafter and collectively referred to as the "Related Lawsuits."

As a preliminary matter, this Motion to Consolidate should be unnecessary given the mandate that Plaintiffs file a Notice of Prior Filing in accordance with Uniform Rules for District Courts, Rule 9.4. In its entirety, Rule 9.4 states as follows:

> **Rule 9.4    Pleadings To Be Filed with Clerk;**
> **Prior or Multiple Filings of Pleadings**
>
> (a) All pleadings shall be filed with the Clerk of Court before presentation to the assigned Judge. Exceptions to this Rule are noted in Appendix 9.4.
>
> (b) Judge or forum shopping is prohibited. To achieve continuity of case management and avoid the appearance of Judge or forum shopping, all subsequent actions asserting the same claim by the same parties, except for cases filed in juvenile courts will concurrent jurisdiction, **shall be transferred to the division to which the first case filed was allotted**, whether or not the first case is still pending. Any attorney or party who files more than one petition for the same party on the same cause of action **shall attach to any subsequent petition a "Notice of Prior Filing or Multiple Filing,"** regardless of whether any of the previous petitions were dismissed.  This notice shall comply with La. Code Civ. Proc. Art. 853.

As set forth in the Motion to Consolidate, there are multiple Plaintiffs that appear in each of these subsequently filed lawsuits.[6] Accordingly, Rule 9.4 is mandatory ("*shall*"), and Plaintiffs were *required* to submit a Notice of Prior Filing or Multiple Filing. Plaintiffs failed to adhere to the required rule. Had Plaintiffs adhered to the mandatory rule, the Related Lawsuits would have automatically been transferred to Division "J" ("[S]*hall be transferred to the division to which the first case filed was allotted*").

Louisiana Code of Civil Procedure article 963 allows Defendant to submit a Motion to this Court, *ex parte*, if the relief sought is "clearly entitled" by Defendant. Given that Rule 9.4 is mandatory regarding the Notice of Prior Filing and subsequent transfer to the first allotted division, Defendant respectfully submits that no contradictory hearing is necessary to order consolidation of these matters. Accordingly, Defendant

---

[6] Ethel Green and Glenda Guilbeau are named Plaintiffs in both Addison and Anderson; Lula Darden is a named Plaintiff in both Addison and Brunet matters; Willie Faye Brooks, Liz Hernandez, and Alexander Mitchell are named Plaintiffs in both Addison and Winningkof; Elizabeth Lowe and Rebecca Wells are named Plaintiffs in both the Addison and Calligan matters; Regenia Griffin and Eric Brown are named Plaintiffs in both the Addison and Griffin matters; Deborah Ursin is a Plaintiff in both the Anderson and Winningkof matters; Cheryl Dufrene is a named Plaintiff in both the Anderson and Calligan matters; Michael Brown, Calvin Carter, and Tedrick Jackson are named Plaintiffs in both the Anderson and Griffin matters; Chandra August is a named Plaintiff in both the Brunet and Calligan matters; and Leroniesha Hartford is a named Plaintiff in both the Calligan and Griffin matters.

respectfully request this Court execute the attached Order of Consolidation as relief

Defendant is "clearly entitled."

Alternatively, consolidation of these matters is proper pursuant to Louisiana Code

of Civil Procedure articles 253.2 and 1561. Those articles provide as follows:

### Art. 253.2    Transfer and Reassignment of Pending Cases

After a case has been assigned to a particular section or division of the Court, it may not be transferred from one section or division to another section or division within the same Court, unless agreed to by all parties, or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561. However, the Supreme Court, by rule, may establish uniform procedures for reassigning cases under circumstances were an expeditious disposition of cases may be effectuated.

### Art. 1561    Consolidation for Trial

A.  When two or more separate actions are pending in the same Court, the section or division of the Court in which the first filed action is pending may order consolidation of the actions for trial after a contradictory hearing, and **upon a finding that common issues of fact and law predominate**, and, in the event a trial date has been set in a subsequently filed action, upon a finding that consolidation is in the interest of justice. The contradictory hearing may be waived upon the certification by the mover that all parties in all cases to be consolidated consent to the consolidation.

B.  Consolidation shall not be ordered if it would do any of the following:

(1) Cause jury confusion.
(2) Prevent a fair and impartial trial.
(3) Give one party an undue advantage.
(4) Prejudice the rights of any party.

As can be seen from the attached Exhibits (Petitions from the Related Lawsuits),

the allegations set forth in each case are identical. All of these lawsuits allege various

damages by Plaintiffs who reside in areas allegedly affected by odors emanating from

the Jefferson Parish Landfill. Consolidation of these cases is clearly warranted.

Currently, this Court has hearing set on May 30, 2019 on a Motion to Consolidate

filed by Waste Connection Defendants. Additionally, Waste Connections Defendants

contemporaneously filed a Motion to Transfer in Division "O," the Honorable Judge

Danyelle Taylor, which was set two (2) days before, on May 28, 2019. Defendants submit that this Court, as the division in which the first filed lawsuit was allotted, is the most appropriate to hear the Motion to Consolidate initially and before any Motion to Transfer is heard. Plaintiffs' counsel has objected to requests by counsel for Waste Connection Defendants to move either hearing date. Accordingly, Defendant herein, Jefferson Parish, respectfully requests that – should this Court deem a contradictory hearing necessary – an expedited hearing be set prior to May 28, 2019. Based on information from Court staff, May 9, 2019 and May 28, 2019 are the next available hearing dates.

As also set forth in the Motion to Consolidate, this Court previously ordered a stay of these proceedings pending the resolution of class certification in Federal Court lawsuits currently pending before Judge Susie Morgan. While class certification is still pending, Defendant respectfully requests this Court temporarily lift the stay for the limited purpose of ruling on the Motions to Consolidate.

**WHEREFORE**, Defendant, Jefferson Parish, respectfully requests this Court (1) temporarily lift the stay in this matter for the limited purpose of ruling on this Motion to Consolidate, only and (2) execute the attached Order of Consolidation, consolidating the Related Lawsuits with the above titled action. Alternatively, Defendant respectfully requests this Court (1) temporarily lift the stay in this matter for the limited purpose of ruling on this Motion to Consolidate, only and (2) set an expedited hearing on this Motion to Consolidate, and (3) order that the Related Lawsuits be consolidated with this action.

*(Signature block on next page)*

Respectfully submitted,

**CONNICK AND CONNICK, LLC**

WILLIAM P. CONNICK, LA. BAR NO. 14158
MICHAEL S. FUTRELL, LA BAR. NO. 20819
MATTHEW D. MOGHIS, LA BAR. NO. 33994
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone:    (504) 681-6658
Facsimile:    (504) 838-9903
E-mail:       moghis@connicklaw.com

*Counsel for Defendant, Jefferson Parish*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all known counsel of record in this proceeding by:

( )    Hand Delivery          ( )    Prepaid U.S. Mail
(X)    Email                  ( )    Facsimile

New Orleans, Louisiana this 11th day of April, 2019.

MATTHEW D. MOGHIS

FILED FOR RECORD 02/25/2019 13:17:16
Michelle S. Bruner, DY CLERK
JEFFERSON PARISH, LA

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

NO. 792-502                                          DIVISION

**CHARLES LEE ANDERSON; ASHELEY AUGUSTINE; BYRON BARKER; KIMBERLY BARKER Individually and on Behalf of Her Minor Child, TERRELL RODRIGUE; DIONNE BARNES; JAMES C. BARNES, Jr.; JAMES C. BARNES III; JAYLN BARNES; DEBRA BROWN; MICHAEL BROWN; JEFF CARTER; CALVIN CARTER; DOLLY CROSLEY; LEKESHA DAVIS Individually And On Behalf Of Her Minor Child, SHYNA JOHNSON; PAUL DAVIS, Jr.; EDNA DOBSON; GLEN DUBONE; CHERYL DUFRENE; BETTY DUMAS; PATRICE DUNBAR; BETTY FERRELL Individually And On Behalf Of Her Minor Child, SHAWNDIA FERRELL; BRENDA FERRELL; LAWRENCE FERRELL; RANDY FRICKEY; LINDA FRICKEY In Her Individual Capacity And As The Parent Of Her Minor Child, PRUDENCE CAMARDELLA; RICKEY FRICKEY; SANDRA GARNER, In Her Individual Capacity And On Behalf Of Her Minor Children, DEWITT SOLOMON and DEWIGHT SOLOMON; CLAUDETTA GOLSTON; ALVIN GORDON, Jr.; GABRIELLE GORDON, Individually And On Behalf Of Her Minor Child, GAVIN GORDON; D'LISA GREEN; ETHEL GREEN; FELTON GREEN; DANIEL GUILBEAU; FELTON GUILBEAU; GLENDA GUILBEAU; SHEILA GUILBEAU; CALISA HAMMOND, In Her Individual Capacity And On Behalf Of Her Minor Child, MIRACLE HAMMOND; ALFREDA HARDIN; BRENDA HARRIS; MICHAEL HARRIS, Sr.; AMBER HYBART, In Her Individual Capacity And As Parent Of Her Minor Children, ABIGAIL HYBART, AUBREE HYBART, DECAL HYYBART, and JAXON HYBART;NICHOLAS HYBART; TEDRICK JACKSON; JESSE KOEHL; KATIE KOEHL; SHELETHA LEBRANCH, individually and on behalf of her minor children, MARCUS LANIEUX, ARMAN NUNNERY, DIZNEE LEBRANCH and CHEVRONE WILLIAMS;MICHELLE LEE, In Her Individual Capacity And On Behalf Of Her Minor Children, KARLIE WELLS, JACAYLA KELLY and JYIA KELLY; LEO LESTRICK; TUSCANOW LEWIS; CIARRA MAGEE, Individually And On Behalf Of Her Minor Children, RONKIEA JOHNSON and MELVIN MCCLINTON; LATOYA MANSON, In Her Individual Capacity And On Behalf Of Her Minor Child, KIARA GIBSON; MICHELLE MEYER; CHANCE PALAZZOLO; BERTHA REED; BRADY REED; WILLIS REED; VERNA REED; WILLIS REED, Jr.; BARBARA RIDGLEY; MINDY BERTUCCI RIGNEY, Individually And On Behalf Of Her Minor Children, GRAHAM RIGNEY, GABE RIGNEY and GRANT RIGNEY; WILLIAM DUFRENE STANLEY; CARROLL THIBODEAUX, Jr., In His Individual Capacity And As Parent Of His Minor Child, AIDAN STEFFENS; DEBORAH URSIN; MONTERIO VAUGHN; and KERNER WEATHERSBY.**

## VERSUS

**LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION; WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC; WASTE CONNECTIONS US, INC; APTIM CORP; PARISH OF JEFFERSON; ABC CORP; DEF CORP; GHI CORP; JKL CORP; and MNO CORP.**

FILED:_____          _____

                                              **DEPUTY CLERK**

**EXHIBIT**

**1**

0875

## PETITION FOR DAMAGES AND INJUNCTIVE RELIEF

This action arises from the continuing, significant and unabated harm suffered by each of the named Petitioners as a result of the ongoing – and admitted – failure of each of the Defendants to ensure that the design, operation and maintenance of the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable environmental laws and adequately protects Petitioners' human health and environment. At all relevant times, the J.P. Landfill and has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.

These unlawful, harmful and toxic releases have caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things: difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience. These emissions also have caused diminution in the value of Petitioners' homes.

Accordingly, Petitioners seek redress from the Defendants for the direct and consequential injury and damage they have suffered and will continue to suffer as a direct result of the releases of noxious odors and chemicals from the J.P. Landfill.

**I.**

Petitioners respectfully allege as follows:

## PETITIONERS

Named Petitioners herein are:

**CHARLES LEE ANDERSON,** an individual of full age of majority residing at 1332 S. Dilton St., Metairie, LA 70003, and owner of said immovable property.

**ASHELEY AUGUSTINE,** an individual of full age of majority residing at 308 27TH St., Kenner, LA 70062 and owner of said immovable property.

**BYRON BARKER,** an individual of full age of majority residing at 24 Richelle Street, Westwego, LA 70064, and owner of said immovable property.

2

**KIMBERLY BARKER,** an individual of full age of majority residing at 24 Richelle St., Westwego, LA 70094, and owner of said immovable property, individually and on behalf of her minor child, **TERRELL RODRIGUE.**

**DIONNE BARNES,** an individual of full age of majority residing at 140 Willswood Lane, Waggaman, LA 70094, and owner of a leasehold interest in said premises.

**JAMES C. BARNES, JR.,** an individual of full age of majority residing at 140 Willswood Lane, Waggaman, LA 70094 and owner of said immovable property.

**JAMES C. BARNES III** is an individual of full age of majority residing at 140 Willswood Lane, Waggaman, LA 70094.

**JAYLN BARNES,** an individual of full age of majority residing at 140 Willswood Lane, Waggaman, LA 70094.

**DEBRA BROWN,** an individual of full age of majority residing at 31 Richelle Street, Westwego, LA 70064 and owner of said immovable property.

**MICHAEL BROWN,** an individual of full age of majority residing at 31 Richelle Street, Westwego, LA 70064, and owner of said immovable property.

**JEFF CARTER,** an individual of full age of majority, residing at 181 Bishop Drive, Avondale, LA 70094, and owner of said immovable property.

**CALVIN CARTER,** an individual of full age of majority residing at 181 Bishop Drive, Avondale, LA 70094, and owner of said immovable property.

**DOLLY CROSLEY,** an individual of full age of majority residing at 181 Bishop Dr., Avondale, LA 70094, and owner of said immovable property.

**LEKESHA DAVIS,** an individual of full age of majority residing at 341 Providence Lane, Kenner LA 70062, individually and on behalf of her minor child, **SHYNA JOHNSON.**

**PAUL DAVIS, Jr.,** an individual of full age of majority residing at 649 Clay Street, Kenner, LA 70062, and owner of a leasehold interest in said immovable property.

**EDNA DOBSON**, an individual of full age of majority residing at 312 Judiciary Drive, Avondale, LA 70094, and owner of said immovable property.

**GLEN DUBONE**, an individual of full age of majority residing at 136 Jasmine Ln., Waggaman, LA 70094, and owner of a leasehold interest in said immovable property.

**CHERYL DUFRENE**, an individual of full age of majority residing at 8933 Camille Ct., River Ridge LA 70123, and owner of said immovable property.

**BETTY DUMAS**, an individual of full age of majority, residing at 316 Rotunda Drive, Avondale, LA 70094, and owner of said immovable property.

**PATRICE DUNBAR**, an individual of full age of majority residing at 309 Wilker Neal Ave., River Ridge, LA 70123, and owner of said immovable property.

**BETTY FERRELL**, an individual of full age of majority residing at 645 Richard Ave., River Ridge, LA 70123, and owner of said immovable property, individually and on behalf of her minor child, **SHAWNDIA FERRELL.**

**BRENDA FERRELL,** and individual of full age of majority residing at 707 Richard Ave., River Ridge, LA 70123, and owner of said immovable property.

**LAWRENCE FERRELL,** and individual of full age of majority residing at 707 Richard Ave., River Ridge, LA 70123.

**RANDY FRICKEY**, an individual residing at 141 Daffodil Lane Westwego, LA 70094.

**LINDA FRICKEY**, an individual of full age of majority residing at 141 Daffodil Lane Westwego, LA 70094 and owner of said immovable property, in her individual capacity and as the parent of her minor child, **PRUDENCE CAMARDELLA**.

**RICKEY FRICKEY**, an individual of full age of majority residing at 141 Daffodil Lane Westwego, LA 70094 and owner of said immovable property.

**SANDRA GARNER,** an individual of full age of majority residing at 120 Rosalie Dr., Avondale, LA 70094, in her individual capacity and on behalf of her minor children, **DEWITT SOLOMON** and **DEWIGHT SOLOMON.**

4

**CLAUDETTA GOLSTON**, an individual of full age of majority residing at 7937 Macon St., Metairie, LA 70003, and owner of said immovable property.

**ALVIN GORDON, Jr.**, an individual of full age of majority residing at 37 Duffy St., Waggaman, LA 70094, and owner of said immovable property.

**GABRIELLE GORDON**, an individual of full age of majority residing at 37 Duffy St., Waggaman, LA 70094, and owner of said immovable property, individually and on behalf of her minor child, **GAVIN GORDON.**

**D'LISA GREEN**, an individual of full age of majority residing at 341 Providence Lane, Kenner, LA 70062.

**ETHEL GREEN**, an individual of full age of majority residing at 341 Providence Lane, Kenner, LA 70062, and owner of said immovable property.

**FELTON GREEN**, an individual of full age of majority, residing at 341 Providence Lane, Kenner, LA 70062.

**DANIEL GUILBEAU**, an individual of full age of majority residing at 3150 Washington St., Kenner, LA 70065.

**FELTON GUILBEAU**, an individual of full age of majority residing at 3150 Washington St., Kenner, LA 70065.

**GLENDA GUILBEAU**, an individual of full age of majority residing at 3150 Washington St., Kenner, LA 70065 and owner of said immovable property.

**SHEILA GUILBEAU**, an individual of full age of majority residing at 3150 Washington St., Kenner, LA 70065 and owner of said immovable property.

**CALISA HAMMOND**, an individual of full age of majority residing at 120 Rosalie Drive, Avondale, LA 70094, in her individual capacity and on behalf of her minor child, **MIRACLE HAMMOND.**

**ALFREDA HARDIN**, an individual of full age of majority residing at 621 South Cumberland, Apt. C., River Ridge, LA 70123 and owner of a leasehold interest in said premises.

5

BRENDA HARRIS, an individual of full age of majority residing at 621 South Cumberland, Apt. C., River Ridge, LA 70123 and owner of a leasehold interest in said premises.

MICHAEL HARRIS, SR., an individual of full age of majority residing at 415 Hanson Place, Kenner, LA 70062, and owner of a leasehold interest in said premises.

AMBER HYBART, an individual of full age of majority residing at 247 Dilton St,. River Ridge, LA 70123, and owner of said immovable property, in her individual capacity and as parent of her minor children, ABIGAIL HYBART, AUBREE HYBART, DECAL HYYBART, and JAXON HYBART.

NICHOLAS HYBART, an individual of full age of majority residing at 247 Dilton St. River Ridge, LA 70123, and owner of said immovable property.

TEDRICK JACKSON, an individual of full age of majority residing at 346 Azalea Dr., Waggaman, LA 70094, and owner of a leasehold interest in said premises.

JESSE KOEHL, an individual of full age of majority residing at 10411 Pear St., River Ridge, LA 70123, and owner of said immovable property.

KATIE KOEHL, an individual of full age of majority residing at 10411 Pear St., River Ridge, LA 70123, and owner of said immovable property.

SHELETHA LEBRANCH, an individual of full age of majority residing at 718 South Starrett Rd., River Ridge, LA 70123 and owner of a leasehold interest in said premises, individually and on behalf of her minor children, MARCUS LANIEUX, ARMAN NUNNERY, DIZNEE LEBRANCH and CHEVRONE WILLIAMS.

MICHELLE LEE, an individual of full age of majority residing at 52 Wilker Neal Ave., Apt. A, River Ridge, LA 70123, and owner of a leasehold interest in said premises, in her individual capacity and on behalf of her minor children, KARLIE WELLS, JACAYLA KELLY and JYIA KELLY.

LEO LESTRICK, an individual of full age of majority residing at 133 Jasmine Ln., Waggaman, LA 70094.

6

**TUSCANOW LEWIS,** an individual of full age of majority residing at 226 Coleman, Kenner, LA 70062, and owner of a leasehold interest in said premises.

**CIARRA MAGEE,** an individual of full age of majority residing at 4113 Trenton St. Apt. 2, Metairie, LA 70002, and owner of a leasehold interest in said premises, individually and on behalf of her minor children, **RONKIEA JOHNSON** and **MELVIN MCCLINTON.**

**LATOYA MANSON,** an individual of full age of majority residing at 44 Megehee Ct Waggaman, LA 70094 and owner of a leasehold interest in said premises, in her individual capacity and on behalf of her minor child, **KIARA GIBSON.**

**MICHELLE MEYER,** an individual of full age of majority residing at 612 Hester Ave., River Ridge LA 70123.

**CHANCE PALAZZOLO,** an individual of full age of majority residing at 141 Daffodil Lane Westwego, LA 70094.

**BERTHA REED,** an individual of full age of majority, residing at 249 Coretta Dr. Avondale, LA 70094, and owner of said immovable property.

**BRADY REED,** an individual of full age of majority, residing at 249 Coretta Dr., Avondale, LA 70094.

**WILLIS REED,** an individual of full age of majority, residing at 249 Coretta Dr. Avondale, LA 70094, and owner of said immovable property.

**VERNA REED,** an individual of full age of majority residing at 133 Jasmine Lane, Waggaman, LA 70094.

**WILLIS REED, JR.,** an individual of full age of majority residing at 133 Jasmine Lane, Westwego, LA 70094, and owner of said immovable property.

**BARBARA RIDGLEY,** an individual of full age of majority residing at 516 S. Cumberland, River Ridge, LA 70123, and owner of a leasehold interest in said premises.

7

**MINDY BERTUCCI RIGNEY**, an individual of full age of majority residing at 9608 Justin Place., River Ridge, LA 70123 and owner of said immovable property, individually and on behalf of her minor children, **GRAHAM RIGNEY, GABE RIGNEY and GRANT RIGNEY**.

**WILLIAM DUFRENE STANLEY,** an individual of full age of majority residing at 8933 Camille Ct., River Ridge LA 70123, and owner of said immovable property.

**CARROLL THIBODEAUX, Jr.,** an individual of full age of majority, residing at 315 Citrus Road River Ridge, LA 70123, and owner of said immovable property, in his individual capacity and as parent of his minor child, **AIDAN STEFFENS**.

**DEBORAH URSIN**, an individual of full age of majority residing at 500 Cumberland St., River Ridge, LA 70123, and owner of said immovable property.

**MONTERIO VAUGHN**, an individual of full age of majority residing at 500 Cumberland St., River Ridge, LA 70123.

**KERNER WEATHERSBY**, an individual of full age of majority residing at 604 Hester Ave., River Ridge, LA 70123.

**II.**

Made Defendants herein are:

a. **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION (IESI")**, a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State. On information and belief, LRLC is a wholly owned subsidiary of Defendant Waste Connections Bayou, Inc., Inc., which in turn was acquired by Defendant Waste Connections US, Inc. On information and belief, Defendant LRLC is controlled by Defendants Waste Connections Bayou, Inc., and/or Waste Connections, US, Inc., and is the "alter ego" of those Defendants, operating without autonomy and only pursuant to the direction, policies and procedures of its parent corporations;

8

b. **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized to do and doing business in this Parish and State;

c. **WASTE CONNECTIONS US, INC.,** a foreign corporation authorized to do and doing business in this Parish and State; and

d. **APTIM CORP.,** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State;

e. **PARISH OF JEFFERSON,** a Louisiana municipal parish in and political subdivision of the State of Louisiana (the "Parish";

f. **ABC CORPORATION,** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), F/K/A IESI LA LANDFILL CORPORATION ("IESI"),** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

g. **DEF CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

h. **GHI CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

### III.

### JURISDICTION AND VENUE

Venue is proper in accordance with La. R.S. 13:5104(B), which states, in part, that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court

of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." Venue is further proper as to all other defendants as the wrongful conduct giving rise to the Petitioner's claims occurred within the jurisdictional limits of Jefferson Parish, State of Louisiana.

### IV.

### FACTS

The Parish is the owner of the Jefferson Parish Landfill (the "J.P. Landfill"), located at 5800 Highway 90 West in Avondale, Jefferson Parish, LA.

### V.

At all relevant times, the J.P. Landfill has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.* (the "Act") as well as federal laws and regulations implemented by the United States Environmental Protection Agency ("USEPA").

### VI.

The J.P. Landfill is authorized to operate pursuant to and only in accordance with the terms and conditions of, among other things, Standard Permit P-0297R1(the "Standard Permit") as issued, approved, and subject to periodic review and renewal by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to the Act. The Standard Permit was most recently renewed by the LDEQ on or about January 22, 2010.

### VII.

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the J.P. Landfill (the "IESI Operating Contract"). Among other things, the IESI Operating Contract provides that:

10

(a) Operation of the J.P. Landfill will be conducted "in strict compliance and conformity with all Federal, State and local laws, ordinances, and regulations, including the rules and regulations of the USEPA, LDEQ, and all State of Louisiana agencies, and in accordance with the Permit Documents."

(b) "IESI shall be responsible for compliance with all Federal, State and local regulations, laws and ordinances in its performance of the Service/Work associated with the operation [and maintenance] of the Landfill."

(c) IESI is required to "provide all labor, equipment, materials and incidentals to assume all daily operations of the Landfill."

(d) The Parish Engineer has the authority to "decide any and all questions as to...the manner of performance and rate of progress of the Services/Work...the interpretation of the Contract Documents, and all questions as to the acceptable Completion" of the Contract "in his reasonable and good faith opinion." The Parish Engineer is further authorized to "suspend operations at any time when the Service/Work, in his good faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits."

## VIII.

Defendant APTIM is and at all relevant times has been a co-operator of the gas and leachate collection system of the J.P. Landfill.

## IX.

Jefferson Parish, in addition to being an owner of the J.P. Landfill, is and at all relevant times has been a co-manager and co-operator of the J.P. Landfill with IESI/LRLP and APTIM.

## X.

The Parish has admitted that improper operation of the J.P. Landfill is a major source of the odors suffered by Petitioners as well as the adverse consequences thereof.  At a public press conference on July 23, 2018, Parish President Mike Yenni stated that:

(a) The J.P. Landfill's system designed to "contain and deodorize landfill gases" has not been in "proper working order."

11

(b) The landfill's leachate collection system has not been operated properly.

(c) "Properly operated landfills do not operate persistent off-site odors and corrective actions...are essential."

(d) The Parish has notified IESI that it is in breach of its contract to properly operate the J.P. Landfill.

## XI.

At the same press conference, Parish Sheriff Mark Conley stated that the J.P. Landfill gas collection system has been collecting only twenty percent of the gas emitted from landfill operations, whereas a properly operating system would collect ninety-seven to ninety-eight percent of gas emissions, "[s]o that is why the Parish president is stressing that we realize we have problems...right now, a lot of our priority, in the name of public safety and our police powers, is to address the existing system, get it operational, and to pull as much gas out of that landfill as we can."

## XII.

At the same press conference, Parish Councilman Paul Johnson stated that the odor from the J.P. Landfill

"has gotten really bad in the past for our five months...we are all going to experience odors from the landfill because it's a landfill. But, not those we have been having for the past three or five months. It's been really bad. I have been woken up at night with my nose burning and couldn't breathe at three or four o'clock in the morning. This has happened to me more than one time...we know the landfill is causing problems and we know it is a big source of problems...."

## XIII.

At the same press conference, Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to, leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[1]]

## XIV.

---

[1] A video recording of the July 23 press conference can be accessed at https://www.facebook.com/NOLAnews/videos/10155793116437060/ (last visited Aug. 4, 2018).

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which, among other things, found that the Parish has violated its Landfill Permit and applicable environmental regulations by (i) failing to provide daily cover and (ii) failing to properly operate the system that is intended to collect leachate – the liquid brew that drains from a landfill and carries with it numerous harmful chemicals.

## XV.

The LDEQ inspectors found areas of pooled leachate and leachate flowing downhill from the pooled leachate.

## XVI.

The United States Environmental Protection Agency ("EPA") has established general screening levels for various pollutants.   These screening levels are chemical-specific concentrations for individual contaminants in air that may warrant further investigation or site cleanup.  https://www.epa.gov/risk/regional-screening-levels-rsls-users-guide (last visited, Nov. 21, 2018).  A chronic screening level addresses potential chronic exposure to a chemical.

## XVII.

Air samples collected by the LDEQ in the communities of River Ridge, Harahan and Waggaman between July 20, 2018 through approximately July 28, 2018 were found to contain numerous chemical compounds at concentrations that exceed EPA's chronic screening levels, including acrolein, 1, 2-dichloroethane, benzene, carbon tetrachloride, and naphthalene. All of these compounds are multimodal toxicants, in that they are potential or actual human carcinogens and also have other toxic effects.  The air samples collected by LDEQ also contained hydrogen sulfide at concentrations that exceed EPA's chronic screening levels.  Hydrogen sulfide is a potentially toxic compound.  All of these compounds are typically found in the gases generated by landfills like the Jefferson Parish Landfill.

## XVIII.

In a report dated August 15, 2018, prepared for the Parish by its environmental consultant, Carson Environmental Consulting ("CEC"), CEC made several findings, including, among other

13

things, that there are numerous deficiencies in "the landfill gas condensate and leachate collection pumping systems[,]" and that the infrastructure for these systems requires immediate improvement "to meet the Parish's performance objectives."   In addition, CEC concluded that improved operation and maintenance of the J.P. Landfill requires the Parish's "focused attention."

### XX.

On information and belief, on or about December 5, the Commissioner of the LDEQ informed the Parish that there is "no doubt" in his mind that the JP Landfill is the primary source the odors experienced by residents of the communities in which Petitioners reside.

### XXI.

On information and belief, Defendant ABC Corporation has issued a policy of insurance to Defendant Louisiana Regional Landfill Company that covers the acts and omissions alleged herein.  Petitioners will amend this Petition to identify ABC Corporation once its identity is known.

### XXII.

On information and belief, Defendant DEF Corporation has issued a policy of insurance to Defendant Waste Connections Bayou, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify DEF Corporation once its identity is known.

### XXIII.

On information and belief, Defendant GHI Corporation has issued a policy of insurance to Defendant Waste Connections US, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify GHI Corporation once its identity is known.

### XXIV.

On information and belief, Defendant JKL Corporation has issued a policy of insurance to Defendant Aptim Corporation that covers the acts and omissions alleged herein.  Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

### XXV.

14

0008

On information and belief, Defendant MNO Corporation has issued a policy of insurance to Defendant Parish of Jefferson that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

### XXVI.

### <u>PROXIMATE CAUSE AND BAD ACTS</u>

The Defendants' failure to properly design, operate and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals.

### XXVII.

These odors and chemicals have also caused these Petitioners to suffer physical and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness, loss of appetite, fatigue and lethargy, as well as fear, anguish, anxiety and mental pain and suffering. In addition:

i. Petitioner **Charles Lee Anderson** suffers from asthma for which he is treated by a medical doctor, and which is exacerbated by the odors emanating from the Landfill. Mr. Anderson also suffers from coughing, headaches, fatigue, flue-like symptoms and loss of appetite as a result of odors emanating from the Landfill.

ii. Petitioner **Asheley Augustine** suffers from asthma. She has been treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

iii. Petitioner **Dionne Barnes** suffers from asthma, which is exacerbated by the odors emanating from the Landfill.

iv. Petitioner **Jalyn Barnes** suffers from asthma, which is exacerbated by the odors emanating from the Landfill.

v. Petitioner **Prudence Camardella** suffers from asthma, which is exacerbated by the odors emanating from the Landfill.

15

vi.      Petitioner **LeKesha Davis** suffers from polymyostitis, an inflammation of the lungs. She receives treatment from a physician for this condition. Her illness is exacerbated by the odors emanating from the Landfill, which also cause her to feel nausea.

vii.     Petitioner **Paul Davis, Jr.** suffers from asthma. This illness is exacerbated by the odors emanating from the Landfill. Mr. Davis is treated by a physician for his asthma.

viii.    Petitioner **Betty Dumas** suffers from chronic bronchitis. She is treated by a physician for this illness. Her bronchitis is exacerbated by the odors emanating from the Landfill.

ix.      Petitioner **Betty Ferrell** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

x.       Petitioner **Linda Frickey** suffers from chronic bronchitis. This illness is exacerbated by the odors emanating from the Landfill. She is treated by a physician for this illness.

xi.      Petitioner **Kiara Gibson** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xii.     Petitioner **Sheila Guilbeau** suffers from asthma. She is under a physician's care for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xiii.    Petitioner **Claudetta Golston** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xiv.     Petitioner **Michael Harris, Sr.** suffers from asthma and COPD. He is treated by a physician for these illnesses. These illnesses are exacerbated by the odors emanating from the Landfill. In fact, his physician has advised Mr. Harris to move away from the area due to the severity of the symptoms he suffers from the odors emanating from the Landfill.

xv.      Petitioner **Jaxon Hybart** suffers from asthma. He has been treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill.

xvi.     Petitioner **Tedrick Jackson** suffers from asthma. He has been treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill.

xvii.    Petitioner **Shyna Johnson** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xviii.   Petitioner **Markus Lanieaux** suffers from asthma. He has been treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill, on occasion so severely that he must be admitted to the hospital.

16

xix.    Petitioner **Tuscanow Lewis** suffers from asthma.  The odors exacerbate his asthma. He is treated by a physician for this illness.

xx.    Petitioner **Ciarra Magee** suffers from asthma.   She is treated by a physician for this illness.  Her asthma is exacerbated by the odors emanating from the Landfill.

xxi.    Petitioner **Kerner Weathersby**, suffers from asthma and COPD.  He is treated by a physician for these illnesses.  The odors emanating from the Landfill exacerbate these illnesses.

## XXVIII.

Defendants' actions and omissions with respect to the design, operation and maintenance of the J.P. Landfill are the direct and proximate cause of the injuries and harm suffered by each of the Petitioners as alleged above.

## XXVIX.

Defendants' actions and omissions as outlined above also have caused a diminution in the value of Petitioners' immovable property.

## XXX.

These odors have been pervasive and persistent.  They have continued to the present and are likely to continue for the foreseeable future.  The emissions constitute a continuing tort.

## XXXI.

Defendants' acts and omissions in owning, designing, operating and/or maintaining the J.P. Landfill as described above constitute an unreasonable interference with each of the Petitioners' comfortable use and enjoyment of their homes.

## XXXII.

Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.

## XXXIII.

17

These physical invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, loss of enjoyment of property, as well as fear, anguish and mental pain and suffering.

### XXXV.

The emissions of these harmful odors and chemicals have been pervasive and persistent, and constitute a continuing tort.

### XXXVI.

The Defendants' illegal actions and omissions in owning and operating the J.P. Landfill continue to this day and, unless enjoined by this Court, will continue for the indefinite future. Accordingly, Petitioners are entitled to a permanent injunction ordering the Defendants to abate the continuing nuisance and cease the trespasses caused and created by the J.P. Landfill, including the emission of noxious odors and chemicals, and to take all necessary reasonable actions required to accomplish same.

### XXXVII.

Each of the Defendants had a duty to Petitioners to exercise reasonable care in the design, ownership and/or operation of the Landfills, including without limitation the duty to comply with applicable environmental laws and regulations and otherwise to ensure that the Landfills were operated in a manner that does not jeopardize their health, immovable property, environment, and quality of life.

### XXXVIII.

Each of the Defendants breached such duties of care to the Petitioners by, among other things:

    i.    Failing to properly design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods;

    ii.    Failing to take careful and prudent precautionary measures to ensure that these releases would not occur;

iii.  Failing to design, operate and maintain the J.P. Landfill in a manner that does not cause harm to others and, in particular, its neighbors;

iv.  Failing to comply with applicable regulations governing the design, operation and maintenance of the J.P. Landfill;

v.  Being inattentive and careless in the overall design, operation and maintenance of the J.P. Landfill;

vi.  Failing to remediate and repair the failures in design, operation and maintenance of the J.P. Landfill as they became known to the Defendants;

vii.  Any and all other acts of negligence which may be revealed between now and the time of trial.

## XXXIX.

The Defendants' failure to comply with their duties of care to the Petitioners were and are a cause in fact and a legal cause of Petitioners' injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their immovable property and diminution in the value of said property.

## XL.

The Parish's ownership and operation of the J.P. Landfill has caused substantial damage to the value of Petitioners' respective interests in their immovable property.

## XLI.

The Parish knew, or in the exercise of reasonable care, should have known, that its failure to properly design, operate and maintain the J.P. Landfill would cause damage to Petitioners, and such damage could have been prevented by the exercise of reasonable care.  The Parish, as owner of the J.P. Landfill, failed to exercise such reasonable care.

## XLII.

In committing the acts and omissions described above, the Defendants have breached their contractual obligations, of which Petitioners are third party beneficiaries, arising under the

19

contracts between the Parish and all other Defendants herein pertaining to the design, operation and maintenance of the J.P. Landfill.

## XLIII.

In committing the foregoing acts and omissions, Defendants have violated, *inter alia*, Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continues to cause each of the Petitioners damages including nuisance damages; physical harm and mental fear, anguish, pain and suffering; and diminution in property value.

## XLIV.

Further, Petitioners' interest is their immovable property is a property right protected by the Louisiana Constitution.

## XLV.

Petitioners' interest in their real property has been taken and damaged by the actions of Jefferson Parish as set forth above.

## XLVI.

Such taking and damage was for a public purpose – to wit, the operation of a public landfill for the purpose of handling and disposing of waste generated by the citizens of Jefferson Parish and others.

## XLVII.

The Parish is liable to the Petitioners for damages caused by the Parish's unconstitutional taking of their immovable property without paying just compensation pursuant to Article I, Section 4(B) of the Louisiana Constitution.

## XLVIII.

The Parish's taking of Petitioners' property without just compensation constitutions a deprivation of their property without due process of law pursuant to Article I, Section 2 of the Louisiana Constitution.

## XLIX.

20

The Parish is liable to the Petitioners for damages caused by the Parish's violation of Petitioners' due process rights.

## L.

### REQUEST FOR TRIAL BY JURY

**PETITIONERS REQUEST A JURY TRIAL AS TO ALL CLAIMS TRIABLE BY JURY.**

## LI.

### PRAYER FOR RELIEF

**WHEREFORE,** Petitioners pray that:

(a) Judgment be entered declaring each of the Defendants jointly, severally and *in solido* liable to each of the Petitioners for all damages (and awarding all such damages), including physical and bodily harm, loss of use and enjoyment of their homes, diminution in property value, lost wages, medical expenses and mental pain and suffering;

(b) Judgment be entered against the Parish declaring it liable for inverse condemnation, and awarding to each of the Petitioners just compensation for the unconstitutional taking of their interests in real property and/or a deprivation of due process;

(c) Judgment be entered against all Defendants for all additional damages as are just and reasonable under the circumstances, including but not limited to the cost of alternative housing and medical testing;

(d) The Defendants be permanently enjoined and ordered to abate the nuisances and trespasses, and to take all reasonable and necessary measures to cease the harmful emissions from the J.P. Landfill.

(e) The Defendants be required to provide medical monitoring for all Petitioners as appropriate;

(f) Prejudgment and post-judgment interest on all damages be awarded;

(g) Petitioners be awarded all costs for prosecution of this action and attorney fees;

21

(h) Damages be awarded for all other injuries that may be proved at trial; and

(i) This Court award such other and further relief as it may deem just and proper.

Respectfully submitted,

**FORREST CRESSEY & JAMES, LLC**

Byron Forrest (La. Bar No. 35481)
Nicholas Cressey (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Eliza@fcjlaw.com
Tele: 504.605.0777
Fax:   504.322.3884

**OF COUNSEL:**
Barry S. Neuman
Erik Bolog
C. Allen Foster
Adrian Sneed
WHITEFORD TAYLOR PRESTON, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036
(202) 659-6800
(Applications for Admission *Pro Hac Vice*
Pending)

**PLEASE SERVE:**

**LOUISIANA REGIONAL LANDFILL COMPANY**
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**WASTE CONNECTIONS BAYOU, INC.**
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**WASTE CONNECTIONS US, INC.**
Via long-arm service through FedEx
Through its Agent for Service
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**APTIM Corp.**
Through its Agent for Service

22

CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**PARISH OF JEFFERSON**
Through its Agent for Service
Parish Attorney for the Parish of Jefferson
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

23

FILED FOR RECORD 03/14/2019 11:04:35
Stacy L. Roussel, DY CLERK
JEFFERSON PARISH, LA

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.:   793088                                    DIVISION:

MICHAEL BRUNET, LAKEISHA ALLEN, CHANDRA AUGUST, J.C. BATES, ECHELLE BATES, LA'SHEA BATES, individually and on behalf of her minor child, O'SHEA BATES, ROSA BATES, JEREMY BELL, individually and on behalf of his minor children, CONNOR BELL and LONDON WATKINS, BREANNA BLANCHARD, individually and on behalf of her minor child, JAYDEN TATE, HOLLY BLANCHARD, individually and on behalf of her minor children BRIYA BLANCHARD and BRYCE BLANCHARD, CHARLES BLOODSWORTH, GINA BLOODSWORTH, individually and on behalf of her minor children CORD BLOODSWORTH, JILLIAN BLOODSWORTH and BRIN BLOODSWORTH, ASHLEY COLEMAN, individually and on behalf of her minor child SIDNEY ALEXANDER LIVIOUS, ERICA COLLINS, individually and on behalf of her minor child KADENCE BRIGNAC, PATTY CRIER, CAROL CROCKETT, COURTNEY CROCKETT, individually and on behalf of her minor child JONATHAN CROCKETT, CATHY DANIELS, LAKEISHA DANIELS, individually and on behalf of her minor child AMIR AUSTIN, LULA DARDEN, SHANTEL EVANS, individually and on behalf of her minor children DESTINY EVANS and FAITH EVANS, LIZ EVERSON, ELAINE FISHER, MARY FERRELL, individually and on behalf of her minor children JOHN V. KELLY III, SABYRON B. FERRELL, OLIVIA D. FERRELL and SYOUR D. FERRELL, DESELLE GUSTAIN, DONELL GUSTAIN, VIOLA HAWKINS, BARBARA HENDERSON, SHANNON HILL, JAKE JAMES, ZANE JANICKI, individually and on behalf of his minor children KATE JANICKI and SOPHIA JANICKI, DONNA JEFFERSON, TENNILLE JONES, individually and on behalf of her minor children TY'LEAH LANUS and CAILEE LANUS, LAWRENCE KIMBELL, CLARK LANUS, individually and on behalf of his minor children, TY'LEAH LANUS and CAILEE LANUS, CLARENCE LEBLANC, JESSICA MCKANICK, individually and on behalf of her minor children, HAIDEN MCKANIC and HAKEEM MCKANIC, BONNITTA MAGEE, JANAY MASON, individually and on behalf of her minor child individually and on behalf of her minor child DEMONE DETIEGE, JR., KAREN MORISE, ERNEST NEWELL, MELVIN RATCLIFF, KENNETH ROYAL, SUSIE ROUX, ANEESAH SABRE, LORETTA SEALS, DEBRA SHELVIN, EMMETTE SYLVE, JR., THOMAS STACKER, JAMES STERMER, DEBRA STROMAS, WILLIE STROMAS, HAROLD SUTTON, VERA SUTTON, individually and on behalf of her minor children CHELSIA STERMER-SUTTON, KAMERON STERMER-SUTTON and JAMES STERMER-SUTTON, DREYTON THOMAS, BRITNEY TORRES, JUANITA TORRES, PATRICIA WHITE, JOSEPH WILLIAMS, IV, individually and on behalf of his minor children JOSIAH WILLIAMS, JOSEPH WILLIAMS, and SINAYA WILLIAMS.


VERSUS


LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION; WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC; WASTE CONNECTIONS US, INC; APTIM CORP; PARISH OF JEFFERSON; ABC CORP; DEF CORP; GHI CORP; JKL CORP; and MNO CORP.


FILED:_____          _____
                                         DEPUTY CLERK

_____

**EXHIBIT**

**2**

0899

## PETITION FOR DAMAGES AND INJUNCTIVE RELIEF

This action arises from the continuing, significant and unabated harm suffered by each of the named Petitioners as a result of the ongoing – and admitted – failure of each of the Defendants to ensure that the design, operation and maintenance of the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable environmental laws and adequately protects Petitioners' human health and environment.  At all relevant times, the J.P. Landfill and has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.

These unlawful, harmful and toxic releases have caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things: difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience. These emissions also have caused diminution in the value of Petitioners' homes.

Accordingly, Petitioners seek redress from the Defendants for the direct and consequential injury and damage they have suffered and will continue to suffer as a direct result of the releases of noxious odors and chemicals from the J.P. Landfill.

Petitioners respectfully allege as follows:

### I.

Petitioners are:

**LAKEISHA ALLEN,** an individual of full age of majority residing at 9009 Rousseau St., Kenner, LA 70062 and owner of a leasehold interest in said premises.

**CHANDRA AUGUST,** an individual of full age of majority residing at 261Capitol Dr., Avondale La 70084, and owner of said immovable property.

**J.C. BATES,** an individual of full age of majority residing at 307 Audubon Ct., Kenner, LA 70062, and owner of a leasehold interest in said premises.

**ECHELLE BATES,** an individual of full age of majority residing at 525 Taylor St. Apt. A, Kenner, LA 70062 and owner of a leasehold interest in said premises.

2

**LA'SHEA BATES**, an individual of full age of majority residing at 525 Taylor St. Apt. A, Kenner, LA 70062, and in her individual capacity and on behalf of her minor child, **O'SHEA BATES.**

**ROSA BATES**, an individual of full age of majority residing at 10950 Jefferson Hwy, Apt. R6, River Ridge, LA 70123, and an owner of a leasehold interest in said premises.

**JEREMY BELL**, an individual of full age of majority residing at 37 Imogene St., Westwego, LA 70094, and owner of a leasehold interest in said premises, in his individual capacity and as parent of his minor children, **CONNOR BELL** and **LONDON WATKINS.**

**BREANNA BLANCHARD**, an individual of full age of majority residing at 253 Azalea Dr., Waggaman LA 70094, in her individual capacity and as parent of her minor child, **JAYDEN TATE.**

**HOLLY BLANCHARD**, an individual of full age of majority residing at 253 Azalea Dr., Waggaman LA 70094, in her individual capacity and as parent of her minor children, **BRIYA BLANCHARD** and **BRYCE BLANCHARD.**

**CHARLES BLOODSWORTH**, an individual of full age of majority residing at 9125 5th St., River Ridge, La 70123 and owner of said immovable property.

**GINA BLOODSWORTH**, an individual of full age of majority residing at 9125 5th St., River Ridge, La 70123 and owner of said immovable property, in her individual capacity and on behalf of her minor children, **CORD BLOODSWORTH, JILLIAN BLOODSWORTH** and **BRIN BLOODSWORTH**.

**MICHAEL BRUNET**, an individual of full age of majority residing at 605 Hester Avenue, River Ridge, LA 70123 and owner of said immovable property.

**ASHLEY COLEMAN**, an individual of full age of majority residing at 5808 Cedar Creek Road, Apt 215, River Ridge, LA 70123 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **SIDNEY ALEXANDER LIVIOUS**.

**ERICA COLLINS**, an individual of full age of majority residing at 337 Glen Della Dr., Westwego, LA 70094, and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **KADENCE BRIGNAC.**

3

0901

PATTY CRIER, an individual of full age of majority residing at 744 Hooter Rd., Westwego, LA 70094, and owner of a leasehold interest in said premises.

CAROL CROCKETT, an individual of full age of majority residing at 1358 South Myrtle Street, Metairie LA 70003, and owner of a leasehold interest in said premises.

COURTNEY CROCKETT, an individual of full age of majority residing at 1358 South Myrtle Street, Metairie LA 70003, in her individual capacity and on behalf of her minor child, JONATHAN CROCKETT.

CATHY DANIELS, an individual of full age of majority residing at 228 Della Lane Avondale, LA 70094, and owner of said immovable property.

LAKEISHA DANIELS, an individual of full age of majority residing at 228 Della Lane Avondale, LA 70094, in her individual capacity and on behalf of her minor child, AMIR AUSTIN.

LULA DARDEN, an individual of full age of majority residing at 408 Upland Ave., River Ridge, LA 70123 and owner of said immovable property.

SHANTEL EVANS, an individual of full age of majority residing at 8021 Monett St Metairie LA 70003 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor children, DESTINY EVANS and FAITH EVANS

LIZ EVERSON, an individual of full age of majority residing at 812 1/2 S. Cumberland, Metairie, LA 70003, and owner of a leasehold interest in said premises.

ELAINE FISHER, an individual of full age of majority residing at 1020 Starrett Rd., Metairie, LA 70003, and owner of said immovable property.

MARY FERRELL, an individual of full age of majority residing at 1534 Mansfield Ave. Marrero, LA 70072 and owner of a leasehold interest in said premises, individually and on behalf of her minor children, JOHN V. KELLY III, SABYRON B. FERRELL, OLIVIA D. FERRELL and SYOUR D. FERRELL.

DESELLE GUSTAIN, an individual of full age of majority residing at 10506 Jefferson Hwy., Apt. 3, River Ridge, LA 70123, and owner of a leasehold interest in said premises.

DONELL GUSTAIN, an individual of full age of majority residing at 10506 Jefferson Hwy., Apt. 3, River Ridge, LA 70123, and owner of a leasehold interest in said premises.

4

**VIOLA HAWKINS,** an individual of full age of majority residing at 353 Senate Dr., Avondale, LA 70094 and owner of a leasehold interest in said premises.

**BARBARA HENDERSON,** an individual of full age of majority residing at 1407 S. Dilton St., Metairie, LA 70003, and owner of said immovable property.

**SHANNON HILL,** an individual of full age of majority residing at 11104 Newton St., River Ridge, LA 70123, and owner of a leasehold interest in said premises.

**JAKE JAMES,** an individual of full age of majority residing at 136 Jasmine Ln., Waggaman, LA 70094, and owner of a leasehold interest in said premises.

**ZANE JANICKI,** an individual of full age of majority residing at 2033 Generes Drive, Harahn, LA 7012, in his individual capacity and as the parent of his minor children, **KATE JANICKI** and **SOPHIA JANICKI.**

**DONNA JEFFERSON,** an individual of full age of majority residing at 353 Senate Dr., Avondale, LA 70094 and owner of a leasehold interest in said premises.

**TENNILLE JONES,** an individual of full age of majority residing at 512 Clifford St., Waggaman, LA 70094 and owner of a leasehold interest in said immovable property, in her individual capacity and as parent of her minor children, **TY'LEAH LANUS** and **CAILEE LANUS.**

**LAWRENCE KIMBELL,** an individual of full age of majority residing at 621 S. Cumberland St, River Ridge, LA 70123 and owner of a leasehold interest in said immovable property.

**CLARK LANUS,** an individual of full age of majority residing at 512 Clifford St., Waggaman, LA 70094, in his individual capacity and as parent of his minor children, **TY'LEAH LANUS** and **CAILEE LANUS.**

**CLARENCE LEBLANC,** an individual of full age of majority residing at 1113 S. Starrett Rd., Metairie, LA 70003, and owner of a leasehold interest in said immovable property.

**JESSICA MCKANICK,** an individual of full age of majority residing at 629 Pat Dr, Avondale, LA 70094, in her individual capacity on behalf of her minor children, **HAIDEN MCKANIC** and **HAKEEM MCKANIC.**

5

**BONNITTA MAGEE,** an individual of full age of majority residing at 1325 S. Dilton St Metairie La 70003 and owner of said immovable property.

**JANAY MASON,** an individual of full age of majority residing at 528 Ruth Drive, Avondale, LA 70094, in her individual capacity and as parent of her minor child, **DEMONE DETIEGE, JR.**

**KAREN MORISE,** an individual of full age of majority residing at 253 Azalea Dr., Waggaman LA 70094, and owner of said immovable property.

**ERNEST NEWELL,** is an individual of full age of majority residing at 703 Richard, River Ridge, LA 70123, and owner of said immovable property.

**MELVIN RATCLIFF,** an individual of full age of majority residing at 10950 Jefferson Hwy, Apt. R6, River Ridge, LA 70123, and an owner of a leasehold interest in said premises.

**KENNETH ROYAL,** an individual of full age of majority residing at 644 Compromise Street, Kenner LA 70062, and owner of a leasehold interest in said premises.

**SUSIE ROUX,** is an individual of full age of majority residing at 703 Richard Ave., River Ridge, LA 70123, and owner of said immovable property.

**ANEESAH SABRE,** an individual of full age of majority residing at 8724 Sheldon St., Metairie, LA 70003 and owner of said immovable property.

**LORETTA SEALS,** an individual of full age of majority residing at 644 Compromise St Apt D, 644 Compromise St Apt D, Kenner, LA 70062, and owner of a leasehold interest in said premises.

**DEBRA SHELVIN,** an individual of full age of majority residing at 629 Pat Dr, Avondale, LA 70094, and owner of said immovable property.

**EMMETTE SYLVE, JR.,** an individual of full age of majority residing at 261 Capitol Dr., Avondale LA 70084 and owner of said immovable property.

**THOMAS STACKER,** an individual of full age of majority residing at 812 1/2 S. Cumberland, Metairie, LA 70003, and owner of a leasehold interest in said premises.

**JAMES STERMER,** an individual of full age of majority residing at 124 Rosalie Drive, Avondale, LA 70094.

6

**DEBRA STROMAS,** an individual of full age of majority residing at 337 Glen Della Dr., Westwego, LA 70094, and owner of said immovable property.

**WILLIE STROMAS,** an individual of full age of majority residing at 337 Glen Della Dr., Westwego, LA 70094, and owner of said immovable property.

**HAROLD SUTTON,** an individual of full age of majority residing at 124 Rosalie Drive, Avondale, LA 70094, and owner of said immovable property.

**VERA SUTTON,** an individual of full age of majority residing at 124 Rosalie Drive, Avondale, LA 70094, and owner of said immovable property, individually and on behalf of her minor children, **CHELSIA STERMER-SUTTON, KAMERON STERMER-SUTTON** and **JAMES STERMER-SUTTON.**

**DREYTON THOMAS,** an individual of full age of majority residing at 112 Mark Twain Dr. #23, River Ridge, LA 70123, and owner of a leasehold interest in said immovable property.

**BRITNEY TORRES,** an individual of full age of majority residing at 318 Federal Dr., Waggaman, LA 70094, as owner of a leasehold interest in said premises and as owner of the immovable property located at 208 Senate Drive, Avondale, LA 70094.

**JUANITA TORRES,** an individual of full age of majority residing at 208 Senate Dr., Avondale, LA 70094, and owner of said immovable property.

**PATRICIA WHITE,** an individual of full age of majority residing at 444 Liska St., Waggaman LA 70094, and owner of said immovable property.

**JOSEPH WILLIAMS, IV,** an individual of full age of majority residing at 8724 Sheldon St., Metairie, LA 70003, and owner of said immovable property, in his individual capacity and as parent of his minor children, **JOSIAH WILLIAMS, JOSEPH WILLIAMS,** and **SINAYA WILLIAMS.**

## II.

Made Defendants herein are:

a. **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION (IESI"),** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State. On information and belief, LRLC is a wholly owned subsidiary of Defendant Waste Connections Bayou, Inc., Inc.,

7

which in turn was acquired by Defendant Waste Connections US, Inc.  On information and belief, Defendant LRLC is controlled by Defendants Waste Connections Bayou, Inc., and/or Waste Connections, US, Inc., and is the "alter ego" of those Defendants, operating without autonomy and only pursuant to the direction, policies and procedures of its parent corporations;

b. **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized to do and doing business in this Parish and State;

c. **WASTE CONNECTIONS US, INC.,** a foreign corporation authorized to do and doing business in this Parish and State; and

d. **APTIM CORP.,** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State;

e. **PARISH OF JEFFERSON,** a Louisiana municipal parish in and political subdivision of the State of Louisiana (the "Parish";

f. **ABC CORPORATION,** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), F/K/A IESI LA LANDFILL CORPORATION ("IESI"),** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

g. **DEF CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

h. **GHI CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/**

8

**PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

i.  **JKL CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **APTIM CORP**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

j.  **MNO CORPORATIONS** foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **PARISH OF JEFFERSON**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein.

## III.

### JURISDICTION AND VENUE

Venue is proper in accordance with La. R.S. 13:5104(B), which states, in part, that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." Venue is further proper as to all other defendants as the wrongful conduct giving rise to the Petitioner's claims occurred within the jurisdictional limits of Jefferson Parish, State of Louisiana.

### IV.

### FACTS

The Parish is the owner of the Jefferson Parish Landfill (the "J.P. Landfill"), located at 5800 Highway 90 West in Avondale, Jefferson Parish, LA.

### V.

At all relevant times, the J.P. Landfill has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.*

9

(the "Act") as well as federal laws and regulations implemented by the United States Environmental Protection Agency ("USEPA").

## VI.

The J.P. Landfill is authorized to operate pursuant to and only in accordance with the terms and conditions of, among other things, Standard Permit P-0297R1(the "Standard Permit") as issued, approved, and subject to periodic review and renewal by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to the Act. The Standard Permit was most recently renewed by the LDEQ on or about January 22, 2010.

## VII.

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the J.P. Landfill (the "IESI Operating Contract"). Among other things, the IESI Operating Contract provides that:

(a) Operation of the J.P. Landfill will be conducted "in strict compliance and conformity with all Federal, State and local laws, ordinances, and regulations, including the rules and regulations of the USEPA, LDEQ, and all State of Louisiana agencies, and in accordance with the Permit Documents."

(b) "IESI shall be responsible for compliance with all Federal, State and local regulations, laws and ordinances in its performance of the Service/Work associated with the operation [and maintenance] of the Landfill."

(c) IESI is required to "provide all labor, equipment, materials and incidentals to assume all daily operations of the Landfill."

(d) The Parish Engineer has the authority to "decide any and all questions as to...the manner of performance and rate of progress of the Services/Work...the interpretation of the Contract Documents, and all questions as to the acceptable Completion" of the Contract "in his reasonable and good faith opinion." The Parish Engineer is further authorized to "suspend operations at any time when the Service/Work, in his good faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits."

10

## VIII.

Defendant APTIM is and at all relevant times has been a co-operator of the gas and leachate collection system of the J.P Landfill.

## IX.

Jefferson Parish, in addition to being an owner of the J.P. Landfill, is and at all relevant times has been a co-manager and co-operator of the J.P. Landfill with IESI/LRLP and APTIM.

## X.

The Parish has admitted that improper operation of the J.P. Landfill is a major source of the odors suffered by Petitioners as well as the adverse consequences thereof. At a public press conference on July 23, 2018, Parish President Mike Yenni stated that:

(a) The J.P. Landfill's system designed to "contain and deodorize landfill gases" has not been in "proper working order."

(b) The landfill's leachate collection system has not been operated properly.

(c) "Properly operated landfills do not operate persistent off-site odors and corrective actions...are essential."

(d) The Parish has notified IESI that it is in breach of its contract to properly operate the J.P. Landfill.

## XI.

At the same press conference, Parish Sheriff Mark Conley stated that the J.P. Landfill gas collection system has been collecting only twenty percent (20%) of the gas emitted from landfill operations, whereas a properly operating system would collect ninety-seven to ninety-eight percent of gas emissions, "[s]o that is why the Parish president is stressing that we realize we have problems...right now, a lot of our priority, in the name of public safety and our police powers, is to address the existing system, get it operational, and to pull as much gas out of that landfill as we can."

## XII.

At the same press conference, Parish Councilman Paul Johnson stated that the odor from the J.P. Landfill

11

"has gotten really bad in the past for our five months...we are all going to experience odors from the landfill because it's a landfill.  But, not those we have been having for the past three or five months.  It's been really bad.  I have been woken up at night with my nose burning and couldn't breathe at three or four o'clock in the morning.  This has happened to me more than one time...we know the landfill is causing problems and we know it is a big source of problems...."

### XIII.

At the same press conference, Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to, leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[1]]

### XIV.

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which, among other things, found that the Parish has violated its Landfill Permit and applicable environmental regulations by (i) failing to provide daily cover and (ii) failing to properly operate the system that is intended to collect leachate – the liquid brew that drains from a landfill and carries with it numerous harmful chemicals.

### XV.

The LDEQ inspectors found areas of pooled leachate and leachate flowing downhill from the pooled leachate.

### XVI.

The United States Environmental Protection Agency ("EPA") has established general screening levels for various pollutants.  These screening levels are chemical-specific concentrations for individual contaminants in air that may warrant further investigation or site cleanup.[2] A chronic screening level addresses potential chronic exposure to a chemical.

---

[1] A video recording of the July 23 press conference can be accessed at
https://www.facebook.com/NOLAnews/videos/10155792116437060/ (last visited Aug. 4, 2018).
[2] https://www.epa.gov/risk/regional-screening-levels-rsls-users-guide (last visited, Nov. 21, 2018).

12

## XVII.

Air samples collected by the LDEQ in the communities of River Ridge, Harahan and Waggaman between July 20, 2018 through approximately July 28, 2018 were found to contain numerous chemical compounds at concentrations that exceed EPA's chronic screening levels, including acrolein, 1, 2-dichloroethane, benzene, carbon tetrachloride, and naphthalene. All of these compounds are multimodal toxicants, in that they are potential or actual human carcinogens and also have other toxic effects. The air samples collected by LDEQ also contained hydrogen sulfide at concentrations that exceed EPA's chronic screening levels. Hydrogen sulfide is a potentially toxic compound. All of these compounds are typically found in the gases generated by landfills like the Jefferson Parish Landfill.

## XVIII.

In a report dated August 15, 2018, prepared for the Parish by its environmental consultant, Carson Environmental Consulting ("CEC"), CEC made several findings, including, among other things, that there are numerous deficiencies in "the landfill gas condensate and leachate collection pumping systems[,]" and that the infrastructure for these systems requires immediate improvement "to meet the Parish's performance objectives." In addition, CEC concluded that improved operation and maintenance of the J.P. Landfill requires the Parish's "focused attention."

## XX.

On information and belief, on or about December 5, 2018 the Commissioner of the LDEQ informed the Parish that there is "no doubt" in his mind that the JP Landfill is the primary source the odors experienced by residents of the communities in which Petitioners reside.

## XXI.

On information and belief, Defendant ABC Corporation has issued a policy of insurance to Defendant Louisiana Regional Landfill Company that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify ABC Corporation once its identity is known.

## XXII.

On information and belief, Defendant DEF Corporation has issued a policy of insurance to Defendant Waste Connections Bayou, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify DEF Corporation once its identity is known.

## XXIII.

On information and belief, Defendant GHI Corporation has issued a policy of insurance to Defendant Waste Connections US, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify GHI Corporation once its identity is known.

## XXIV.

On information and belief, Defendant JKL Corporation has issued a policy of insurance to Defendant Aptim Corporation that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## XXV.

On information and belief, Defendant MNO Corporation has issued a policy of insurance to Defendant Parish of Jefferson that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## XXVI.

### PROXIMATE CAUSE AND BAD ACTS

The Defendants' failure to properly design, operate and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals.

## XXVII.

These odors and chemicals have also caused these Petitioners to suffer physical and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness, loss of appetite, fatigue and lethargy, as well as fear, anguish, anxiety and mental pain and suffering. In addition:

k.     Petitioner **J.C. Bates** suffers from asthma. He is treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill.

ii.     Petitioner **La'Shea Bates** suffers from asthma. Her asthma is exacerbated by the odors emanating from the Landfill.

14

iii.     Petitioner **Rosa Bates** suffers from asthma.  She is treated by a physician for this illness.  Her asthma is exacerbated by the odors emanating from the Landfill.

iv.     Petitioner **Jeremy Bell** suffers from asthma.  He is treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill.

v.     Petitioner **Holly Blanchard** suffers from asthma.  She is treated by a physician for this illness.  Her asthma is exacerbated by the odors emanating from the Landfill.

vi.     Petitioner **Cord Bloodsworth** suffers from asthma.  He is treated by a physician for this illness.  His asthma is exacerbated by the odors emanating from the Landfill.

vii.     Petitioner **Michael Brunet** suffers from asthma.  He is treated by a physician for this illness.  His asthma is exacerbated by the odors emanating from the Landfill.

vii.     Petitioner **Patty Crier** suffers from asthma.  She is treated by a physician for this illness.  Her asthma is exacerbated by the odors emanating from the Landfill.

ix.     Petitioner **Carol Crockett** suffers from asthma.  She is treated by a physician for this illness.  Her asthma is exacerbated by the odors emanating from the Landfill.

x.     Petitioner **Courtney Crockett** suffers from asthma.  She is treated by a physician for this illness.  Her asthma is exacerbated by the odors emanating from the Landfill.

xi.     Petitioner **Jonathan Crockett** suffers from asthma.  He is treated by a physician for this illness.  His asthma is exacerbated by the odors emanating from the Landfill.

xii.     Petitioner **Demone Deteige, Jr.** suffers from asthma. He is treated by a physician for this illness.  His asthma is exacerbated by the odors emanating from the Landfill.

xiii.     Petitioner **Destiny Evans** suffers from asthma.  She is treated by a physician for this illness.  Her asthma is exacerbated by the odors emanating from the Landfill.

xivv.     Petitioner **Faith Evans** suffers from asthma.  She is treated by a physician for this illness.  Her asthma is exacerbated by the odors emanating from the Landfill.

xv.     Petitioner **Shantel Evans** suffers from asthma.  She is treated by a physician for this illness.  Her asthma is exacerbated by the odors emanating from the Landfill.

xvi.     Petitioner **Elizabeth Everson** suffers from asthma and COPD.  She is treated by a physician for these conditions.  Her illnesses are exacerbated by the odors emanating from the Landfill.

0913

xvii.    Petitioner **Deselle Gustain** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xviii.    Petitioner **Sophia Janicki** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xix.    Petitioner **Donna Jefferson** suffers from COPD. She is treated by a physician for this illness. Her COPD is exacerbated by the odors emanating from the Landfill.

xx.    Petitioner **Sidney Alexander Livious** suffers from asthma. He is treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill.

xxi.    Petitioner **Bonnitta Magee** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xxii.    Petitioner **Haiden McKanick** suffers from asthma. He is treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill.

xxiii.    Petitioner **Hakeem McKanick** has asthma. He is treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill.

xxiv.    Petitioner **Ernest Newell** suffers from asthma. He is treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill.

xxv.    Petitioner **Susie Roux** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xxvi.    Petitioner **Aneesah Sabre** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xxvii.    Petitioner **Harold Sutton** suffers from COPD. He is treated by a physician for this illness. His asthma is exacerbated by the odors emanating from the Landfill.

xxviii.    Petitioner **Britney Torres** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xxix.    Petitioner **Juanita Torres** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xxx.    Petitioner **Patricia White** suffers from asthma. She is treated by a physician for this illness. Her asthma is exacerbated by the odors emanating from the Landfill.

xxxi.    Petitioner **Joseph Williams, IV** suffers from COPD. He is treated by a physician for this illness. His COPD is exacerbated by the odors emanating from the Landfill.

### XXVIII.

Defendants' actions and omissions with respect to the design, operation and maintenance of the J.P. Landfill are the direct and proximate cause of the injuries and harm suffered by each of the Petitioners as alleged above.

### XXVIX.

Defendants' actions and omissions as outlined above also have caused a diminution in the value of Petitioners' immovable property.

### XXX.

These odors have been pervasive and persistent. They have continued to the present and are likely to continue for the foreseeable future. The emissions constitute a continuing tort.

### XXXI.

Defendants' acts and omissions in owning, designing, operating and/or maintaining the J.P. Landfill as described above constitute an unreasonable interference with each of the Petitioners' comfortable use and enjoyment of their homes.

### XXXII.

Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.

### XXXIII.

These physical invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, loss of enjoyment of property, as well as fear, anguish and mental pain and suffering.

### XXXV.

The emissions of these harmful odors and chemicals have been pervasive and persistent and constitute a continuing tort.

### XXXVI.

17

The Defendants' illegal actions and omissions in owning and operating the J.P. Landfill continue to this day and, unless enjoined by this Court, will continue for the indefinite future. Accordingly, Petitioners are entitled to a permanent injunction ordering the Defendants to abate the continuing nuisance and cease the trespasses caused and created by the J.P. Landfill, including the emission of noxious odors and chemicals, and to take all necessary reasonable actions required to accomplish same.

## XXXVII.

Each of the Defendants had a duty to Petitioners to exercise reasonable care in the design, ownership and/or operation of the Landfills, including without limitation the duty to comply with applicable environmental laws and regulations and otherwise to ensure that the Landfills were operated in a manner that does not jeopardize their health, immovable property, environment, and quality of life.

## XXXVIII.

Each of the Defendants breached such duties of care to the Petitioners by, among other things:

    i.    Failing to properly design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods;

    ii.    Failing to take careful and prudent precautionary measures to ensure that these releases would not occur;

    iii.    Failing to design, operate and maintain the J.P. Landfill in a manner that does not cause harm to others and, in particular, its neighbors;

    iv.    Failing to comply with applicable regulations governing the design, operation and maintenance of the J.P. Landfill;

    v.    Being inattentive and careless in the overall design, operation and maintenance of the J.P. Landfill;

    vi.    Failing to remediate and repair the failures in design, operation and maintenance of the J.P. Landfill as they became known to the Defendants;

vii.   Any and all other acts of negligence which may be revealed between now and the time of trial.

### XXXIX.

The Defendants' failure to comply with their duties of care to the Petitioners were and are a cause in fact and a legal cause of Petitioners' injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their immovable property and diminution in the value of said property.

### XL.

The Parish's ownership and operation of the J.P. Landfill has caused substantial damage to the value of Petitioners' respective interests in their immovable property.

### XLI.

The Parish knew, or in the exercise of reasonable care, should have known, that its failure to properly design, operate and maintain the J.P. Landfill would cause damage to Petitioners, and such damage could have been prevented by the exercise of reasonable care. The Parish, as owner of the J.P. Landfill, failed to exercise such reasonable care.

### XLII.

In committing the acts and omissions described above, the Defendants have breached their contractual obligations, of which Petitioners are third party beneficiaries, arising under the contracts between the Parish and all other Defendants herein pertaining to the design, operation and maintenance of the J.P. Landfill.

### XLIII.

In committing the foregoing acts and omissions, Defendants have violated, *inter alia*, Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continues to cause each of the Petitioners damages including nuisance damages; physical harm and mental fear, anguish, pain and suffering; and diminution in property value.

### XLIV.

Further, Petitioners' interest is their immovable property is a property right protected by the Louisiana Constitution.

## XLV.

Petitioners' interest in their real property has been taken and damaged by the actions of Jefferson Parish as set forth above.

## XLVI.

Such taking and damage was for a public purpose – to wit, the operation of a public landfill for the purpose of handling and disposing of waste generated by the citizens of Jefferson Parish and others.

## XLVII.

The Parish is liable to the Petitioners for damages caused by the Parish's unconstitutional taking of their immovable property without paying just compensation pursuant to Article I, Section 4(B) of the Louisiana Constitution.

## XLVIII.

The Parish's taking of Petitioners' property without just compensation constitutions a deprivation of their property without due process of law pursuant to Article I, Section 2 of the Louisiana Constitution.

## XLIX.

The Parish is liable to the Petitioners for damages caused by the Parish's violation of Petitioners' due process rights.

## L.

### REQUEST FOR TRIAL BY JURY

PETITIONERS REQUEST A JURY TRIAL AS TO ALL CLAIMS TRIABLE BY JURY.

## LI.

### PRAYER FOR RELIEF

**WHEREFORE,** Petitioners pray that:

    (a) Judgment be entered declaring each of the Defendants jointly, severally and *in solido* liable to each of the Petitioners for all damages (and awarding all such damages), including physical and bodily harm, loss of use and enjoyment of

20

their homes, diminution in property value, lost wages, medical expenses and mental pain and suffering;

(b) Judgment be entered against the Parish declaring it liable for inverse condemnation, and awarding to each of the Petitioners just compensation for the unconstitutional taking of their interests in real property and/or a deprivation of due process;

(c) Judgment be entered against all Defendants for all additional damages as are just and reasonable under the circumstances, including but not limited to the cost of alternative housing and medical testing;

(d) The Defendants be permanently enjoined and ordered to abate the nuisances and trespasses, and to take all reasonable and necessary measures to cease the harmful emissions from the J.P. Landfill.

(e) The Defendants be required to provide medical monitoring for all Petitioners as appropriate;

(f) Prejudgment and post-judgment interest on all damages be awarded;

(g) Petitioners be awarded all costs for prosecution of this action and attorney fees;

(h) Damages be awarded for all other injuries that may be proved at trial; and

(i) This Court award such other and further relief as it may deem just and proper.

**Respectfully submitted,**

FORREST CRESSEY & JAMES, LLC

By _/s/_ _____

Byron Forrest (La. Bar No. 35481)
Nicholas Cressey (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Byron@fcjlaw.com
Eliza@fcjlaw.com
Tele: 504.605.0777
Fax:   504.322.3884

OF COUNSEL:
Barry S. Neuman (*Pro Hac Vice* application
to be submitted)
Erik Bolog

21

C. Allen Foster
Adrian Sneed
WHITEFORD TAYLOR PRESTON, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036
(202) 659-6800

**PLEASE SERVE:**

**LOUISIANA REGIONAL LANDFILL COMPANY**
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**WASTE CONNECTIONS BAYOU, INC.**
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**WASTE CONNECTIONS US, INC.**
Through its Agent for Service
Via long arm through its Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**APTIM CORP.**
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**PARISH OF JEFFERSON**
Through its Agent for Service
Parish Attorney for the Parish of Jefferson
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

**ABC CORP.**
*Address unknown at this time.*

**DEF CORP.**
*Address unknown at this time.*

**GHI CORP.**
*Address unknown at this time.*

**JKL CORP.**
*Address unknown at this time.*

**MNO CORP.**
*Address unknown at this time.*

22

FILED FOR RECORD 04/02/2019 09:52:06
Shelley M. Mauterer, DY CLERK
JEFFERSON PARISH, LA

885
$106.08
$150.00
$190.00
$400.00
$95.00
$95.00
$95.00
$95.00
$95.00

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.: 793-784                                                  DIVISION: M

MARY ANN WINNINGKOF; CURTIS ADAMS; HEATHER ADAMS, in her
individual capacity and on behalf of her minor children, SARAH ADAMS AND TABITHA
ADAMS; DEVIN ALEXANDER; DIONNE ALEXANDER; LIONEL ALEXANDER;
ANNA ALEXIE; JUANITA AHYSEN; RICHARD AHYSEN; SEDONIA AUGUSTINE;
DABNIS BELL; DARIUS BELL; JARED BELL, in his individual capacity and as parent
of his minor child JOURNI BELL; MILDRED BELL;STEPHANIE THOMAS BELL;
AARON BRADLEY; SHIQUITA BROOKS; ADAM BROSN; KEVIN BROOKS;
WILLIE FAYE BROOKS; PATRICK BURNETT; SARAH BURNETT, in her individual
capacity and as parent of her minor children, KATE BURNETT, MICHAQEL BURNETT
and PATRICK BURNETT; JOHNNY CHATMAN; KEVIN CHIRLOW, JR.; CHERYL
CLARK; JENAE CLARK, in her individual capacity and as parent of her minor child,
MARCUS WILLIAMS, JR.; ALYSIA COLLINS; LINDA ANN CORLEY, in her
individual capacity and has parent of her minor children, LYNDAYLE HUMPHREY and
SKY HAWKINS; YOLAND DIXON, in her individual capacity and as parent of her minor
children, GREGORY JACOB, RASHAD DIXON AND CRAYONNA DIXON; KEVIN
DRAKE; ESTIN EDWARDS; VERONICA EDWARDS; SAMUEL FISHER; ANNETTE
FORD; EDWARD FORD, SR.; LAWRENCE GILBERT; MAGNOLIA GREEN;
DEVORA HAMPTON; DEVONTA HARRIS; LIZ HERNZNDEZ; WILLIAM HERVEY;
EDITH IRVIN; ALFRED JACKSON; ANDREW JACKSON, SR.; ANDREW JACKSON,
JR.; DEBORAH JOHNSON; QUENTIN JOHNSON; RAYVIN KENNEDY; JULIE
KETCHENS, in her individual capacity and as parent of her minor children, JULISSA
CELESTINE and JAESEAN CELESTINE; CAMERON KIMBLE; BERNIE LEWIS;
SHERRIE LEWIS; GAVIN MAHL; ALEXANDER MITHCELL; KATIE MITCHELL;
TAKITA NICKERSON, in her individual capacity and as parent of her minor children,
RAYVIN KENNEDY JR. and RYAN KENNEDY; JULIANE RAYBURN, in her capacity
as parent of her minor children, ADELAIDE EATON, ALINE EATON and LUCILE
EATON; DOLORES RICHARD; JOCYLEN ROTICHAUX; MARK ROBICHAUX, in his
individual capacity and as parent of his minor child, ANGEL ROBICHAUX; RAQUEL
ROBICHAUX; DANA SCALLAN, in her individual capacity and as parent of her minor
child, SYDNEY SCALLAN; RANDOPH SCALLAN; DAVENIESHA SCOTT;
MARGARET THOMAS; ROBERT THOMAS; ERNISTH TRICHE; ERNEST TRICHE,
JR.; DEBORAH URSIN, in her individual capacity and as parent of her minor children,
ZANIAH URSIN AND CHAPELLE URSIN; KYLEIGH VOLPI; DAVID WARD; JESSE
WELLS; and ANN WILLIAMS;

**VERSUS**

LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL
CORPORATION; WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE
WASTE SOLUTIONS OF LA, INC; WASTE CONNECTIONS US, INC; APTIM CORP;
PARISH OF JEFFERSON; ABC CORP; DEF CORP; GHI CORP; JKL CORP; and
MNO CORP.

FILED:_____

                                        _____
                                        **DEPUTY CLERK**

_____

**PETITION FOR DAMAGES AND INJUNCTIVE RELIEF**

This action arises from the continuing, significant and unabated harm suffered by each of

the named Petitioners as a result of the ongoing – and admitted – failure of each of the Defendants

1



EXHIBIT
3

to ensure that the design, operation and maintenance of the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable environmental laws and adequately protects Petitioners' human health and environment. At all relevant times, the J.P. Landfill and has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.

These unlawful, harmful and toxic releases have caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things: difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience. These emissions also have caused diminution in the value of Petitioners' homes.

Accordingly, Petitioners seek redress from the Defendants for the direct and consequential injury and damage they have suffered and will continue to suffer as a direct result of the releases of noxious odors and chemicals from the J.P. Landfill.

Petitioners are:

**MARY ANN WINNINGKOFF,** an individual of full age of majority residing at 47 Donelon Dr, Harahan, LA 70123, and owner of said immovable property.

**CURTIS ADAMS,** an individual of full age of majority residing at 2029 Generes Dr., River Ridge, LA 70123 and owner of said immovable property.

**HEATHER ADAMS,** an individual of full age of majority residing at 2029 Generes Dr., river Ridge, LA 70123 and owner of said immovable property, in her individual capacity and as parent of her minor children, **SARAH ADAMS** and **TABITHA ADAMS.**

**DEVIN ALEXANDER,** an individual of full age of majority residing at 617 Wilker Neal Ave., River Ridge, LA 70123.

**DIONNE ALEXANDER,** an individual of full age of majority residing at 617 Wilker Neal Ave., River Ridge, LA 70123 and owner of said immovable property.

**LIONEL ALEXANDER,** an individual of full age of majority residing at 617 Wilker Neal Ave., River Ridge, LA 70123.

**ANNA ALEXIE,** an individual of full age of majority residing at 37 Morning Glory, Waggaman, LA 70094.

2

**JUANITA AHYSEN**, an individual of full age of majority residing at 417 Dandelion Dr., Waggaman, LA 70094 and owner of said immovable property.

**RICHARD AHYSEN**, an individual of full age of majority residing at 417 Dandelion Dr., Waggaman, LA 70094 and owner of said immovable property.

**SEDONIA AUGUSTINE**, an individual of full age of majority residing at 137 Rosalie Dr., Avondale, LA. 70094 and owner of said immovable property.

**DABNIS BELL**, an individual of full age of majority residing at 37 Imogene St Westwego, LA 70094

**DARIUS BELL**, an individual of full age of majority residing at 37 Imogene St Westwego, LA 70094

**JARED BELL**, an individual of full age of majority residing at 52 Winifred St., Waggaman. LA 70094 in his individual capacity and as parent of his minor child **JOURNI BELL.**

**MILDRED BELL**, an individual of full age of majority residing at 125 Dillard Dr., Westwego, LA 70094.

**STEPHANIE THOMAS BELL**, an individual of full age of majority residing at 37 Imogene St., Waggaman, LA 70094.

**AARON BRADLEY**, an individual of full age of majority residing at 612 Upland Ave., River Ridge, LA 70123, and owner of a leasehold interest in said premises.

**SHIQUITA BROOKS**, an individual of full age of majority residing at 312 Delegate Drive Avondale, LA 70094.

**ADAM BROWN**, an individual of full age of majority residing at 31 Richelle Street, Westwego, LA 70094.

**KEVIN BROOKS**, an individual of full age of majority residing at 20 Winifred St, Waggaman, LA 70094.

**WILLIE FAYE BROOKS**, an individual of full age of majority residing at 20 Winifred St., Waggaman, LA 70094 and owner of said immovable property.

**PATRICK BURNETT,** an individual of full age of majority residing at 508 Park Ridge Drive, River Ridge, LA 70123 and owner of said immovable property.

3

**SARAH BURNETT,** an individual of full age of majority residing at 508 Park Ridge Drive, River Ridge, LA 70123 and owner of said immovable property, in her individual capacity and as parent of her minor children, **KATE BURNETT, MICHAEL BURNETT,** and **PATRICK BURNETT.**

**JOHNNY CHATMAN,** an individual of full age of majority residing at 8021 Monett St Metairie LA 70003 and owner of said immovable property.

**KEVIN CHIRLOW, JR.,** an individual of full age of majority residing at 444 Liska St., Waggaman LA 70094.

**CHERYL CLARK,** an individual of full age of majority residing at 423 Wilker Neal Ave. River Ridge, LA 70123 and owner of said immovable property.

**JENAE CLARK,** an individual of full age of majority residing at 423 Wilker Neal Ave. River Ridge, LA 70123 , in her individual capacity and as parent of her minor child, **MARCUS WILLIAMS, JR.**

**ALYSIA COLLINS,** an individual of full age of majority residing at 21 Richelle St., Waggaman, LA 70094.

**LINDA ANN CORLEY,** an individual of full age of majority residing at 26 Jasmine Lane Waggaman LA 70094 and owner of a leasehold interest in said premises, in her individual capacity and on behalf of her minor children, **LYNDAYLE HUMPHREY** and **SKY HAWKINS.**

**YOLANDA DIXON,** an individual of full age of majority residing at 89 Clifford Ct Waggaman, La 70094 and owner of a leasehold interest in said premises, in her individual capacity and on behalf of her minor children, **GREGORY JACOB, RASHAD DIXON** and **CRAYONNA DIXON.**

**KEVIN DRAKE,** an individual of full age of majority residing at 433 Taylor St., Kenner, LA 70062, and owner of said immovable property.

**DESTIN EDWARDS,** an individual of full age of majority residing at 845 Reverend Richard Wilson Dr. #4E Kenner, LA 70062.

**VERONICA EDWARDS,** an individual of full age of majority residing at 845 Reverand Richard Wilson Dr., Apt. 4E, Kenner, LA 70062, and owner of a leasehold interest in said premises.

4

**SAMUEL FISHER,** an individual of full age of majority residing at 52 Winifred St., Waggaman, LA 70094.

**ANNETTE FORD,** an individual of full age of majority residing at 16 Clifford Ct., Waggaman, LA 70094 and owner of a leasehold interest in said premises.

**EDWARD FORD, SR.,** an individual of full age of majority residing at 16 Clifford Ct., Waggaman, LA 70094 and owner of a leasehold interest in said premises.

**LAWRENCE GILBERT,** an individual of full age of majority residing at 850 Reverend Richard Wilson Rd., Apt. 3A, Kenner, LA 70062, and owner of a leasehold interest in said premises.

**MAGNOLIA GREEN,** an individual of full age of majority residing at 312 Delegate Drive Avondale, LA 70094 and owner of a leasehold interest in said premises.

**DEVORA HAMPTON,** an individual of full age of majority residing at 809 S. Cumberland, Metairie, LA 70003.

**DEVONTA HARRIS,** an individual of full age of majority residing at 707 Richard Ave., River Ridge, LA 70123.

**LIZ HERNANDEZ** an individual of full age of majority residing at 721 Randolph Road, Harahan, LA 70123, in her capacity as parent of her minor child, **SOPHIA HERNANDEZ.**

**WILLIAM HERVEY,** an individual of full age of majority residing at 305 S. Bengal, River Ridge, LA 70123.

**EDITH IRVIN,** an individual of full age of majority residing at 863 Reverand Richard Wilson Dr., Apt. 7A, Kenner, LA 70062.

**ALFRED JACKSON,** an individual of full age of majority residing at 513 S. Bengal, River Ridge, LA 70123, and owner of said immovable property.

**ANDREW JACKSON, SR.,** an individual of full age of majority residing at 124 Prairie View Ct., Avondale, LA 70094, and owner of said immovable property.

**ANDREW JACKSON, JR.,** an individual of full age of majority residing at 124 Prairie View Ct., Avondale, LA 70094.

**DEBORAH JOHNSON,** an individual of full age of majority residing at 11417 Jefferson Highway Apartment D, River Ridge LA 70123, and owner of a leasehold interest in said premises.

5

**QUENTIN JOHNSON,** an individual of full age of majority residing at 11417 Jefferson Highway Apartment D, River Ridge LA 70123

**RAYVIN KENNEDY,** an individual of full age of majority residing at 409 Avondale Garden Road, Westwego, LA 70094 and owner of said immovable property.

**JULIE KETCHENS,** an individual of full age of majority residing at 24 Rosa Street, Waggaman, LA 70094, and owner of said immovable property, in her individual capacity and as parent of her minor children, **JULISSA CELESTINE and JAESEAN CELESTINE.**

**CAMERON KIMBLE,** an individual of full age of majority residing at 1325 S. Dilton St Metairie LA 70003.

**BERNIE LEWIS,** an individual of full age of majority residing at 20 Winifred St., Waggaman, LA 70094.

**SHERRIE LEWIS,** an individual of full age of majority residing at 226 Coleman Place Kenner, LA and owner of a leasehold interest in said immovable property.

**GAVIN MAHL,** an individual of full age of majority residing at 9125 5th St., River Ridge, La 70123.

**ALEXANDER MITCHELL,** an individual of full age of majority residing at 204 Hanson Avenue, Kenner, LA 70062 and owner of said immovable premises.

**KATIE MITCHELL,** an individual of full age of majority residing at 204 Hanson Ave Kenner LA 70062.

**TAKITA NICKERSON,** an individual of full age of majority residing at 409 Avondale Garden Road, Westwego, LA 70094 and owner of said immovable property, in her individual capacity and on behalf of her minor children **RAYVIN KENNEDY JR. and RYAN KENNEDY.**

**JULIANE RAYBURN,** an individual of full age of majority residing at 513 Hester Avenue, River Ridge, LA 70123, and owner of said immovable property, in her capacity as parent of her minor children, **ADELAIDE EATON, ALINE EATON and LUCILE EATON.**

**DOLORES RICHARD,** an individual of full age of majority residing at 404 HANSON Place, Kenner, LA 70062.

**JOCYLEN ROBICHAUX,** an individual of full age of majority residing at 420 Dandelion Dr., Waggaman, LA 70094, and owner of said immovable property.

6

**MARK ROBICHAUX,** an individual of full age of majority residing at 420 Dandelion Dr., Waggaman, LA 70094, in his individual capacity and as parent of his minor child, **ANGEL ROBICHAUX.**

**RAQUEL ROBICHAUX,** an individual of full age of majority residing at 420 Dandelion Dr., Waggaman, LA 70094.

**DANA SCALLAN,** an individual of full age of majority residing at 33 Richelle St., Waggaman LA 70094 and owner of said immovable property, in her individual capacity and as parent of her minor child, **SYDNEY SCALLAN.**

**RANDOLPH SCALLAN,** an individual of full age of majority residing at 33 Richelle St., Waggaman LA 70094 and owner of said immovable property.

**DAVENIESHA SCOTT,** an individual of full age of majority residing at 629 S. Cumberland St., River Ridge, LA 70123.

**MARGARET THOMAS,** an individual of full age of majority residing at 112 Mark Twain Dr. #23, River Ridge, LA 70123, and owner of a leasehold interest in said immovable property.

**ROBERT THOMAS,** an individual of full age of majority residing at 333 Coretta Dr., Westwego, LA 70094.

**ERNEST TRICHE,** an individual of full age of majority residing at 208 Glen Della Drive, Avondale, LA 70094.

**ERNEST TRICHE, JR.,** an individual of full age of majority residing at 208 Glen Della Drive, Avondale, LA 70094 and owner of said immovable property..

**DEBORAH URSIN,** an individual of full age o majority residing at 500 Cumberland St., River Ridge, LA 70123, in her individual capacity and as parent of her minor children, **ZANIAH URSIN and CHAPELLE URSIN.**

**KYLEIGH VOLPI,** an individual of full age of majority residing at 31 Richelle Street, Westwego, LA 70094.

**DAVID WARD,** an individual of full age of majority residing at 809 S. Cumberland, Metairie, LA 70003 and owner of said immovable property.

7

**JESSE WELLS,** an individual of full age of majority residing at 511 Filmore St., Kenner La. 70062 and owner of a leasehold interest in said premises.

**ANN WILLIAMS,** an individual of full age of majority residing at 644 Compromise St., apt. C, Kenner, LA 70062, and owner of a leasehold interest in said premises.

## I.

Made Defendants herein are:

a. **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION (IESI"),** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State. On information and belief, LRLC is a wholly owned subsidiary of Defendant Waste Connections Bayou, Inc., Inc., which in turn was acquired by Defendant Waste Connections US, Inc. On information and belief, Defendant LRLC is controlled by Defendants Waste Connections Bayou, Inc., and/or Waste Connections, US, Inc., and is the "alter ego" of those Defendants, operating without autonomy and only pursuant to the direction, policies and procedures of its parent corporations;

b. **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized to do and doing business in this Parish and State;

c. **WASTE CONNECTIONS US, INC.,** a foreign corporation authorized to do and doing business in this Parish and State; and

d. **APTIM CORP.,** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State;

e. **PARISH OF JEFFERSON,** a Louisiana municipal parish in and political subdivision of the State of Louisiana (the "Parish";

f. **ABC CORPORATION,** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), F/K/A IESI LA LANDFILL CORPORATION ("IESI"),**

8

that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

g.  **DEF CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC.,** f/k/a/ **PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

h.  **GHI CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC.,** f/k/a/ **PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

i.  **JKL CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **APTIM CORP**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

j.  **MNO CORPORATIONS** foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **PARISH OF JEFFERSON**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein.

## II.

## JURISDICTION AND VENUE

Venue is proper in accordance with La. R.S. 13:5104(B), which states, in part, that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." Venue is further proper as to all other defendants as the wrongful conduct giving rise to the Petitioner's claims occurred within the jurisdictional limits of Jefferson Parish, State of Louisiana.

9

### III.

### FACTS

The Parish is the owner of the Jefferson Parish Landfill (the "J.P. Landfill"), located at 5800 Highway 90 West in Avondale, Jefferson Parish, LA.

### IV.

At all relevant times, the J.P. Landfill has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.* (the "Act") as well as federal laws and regulations implemented by the United States Environmental Protection Agency ("USEPA").

### V.

The J.P. Landfill is authorized to operate pursuant to and only in accordance with the terms and conditions of, among other things, Standard Permit P-0297R1(the "Standard Permit") as issued, approved, and subject to periodic review and renewal by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to the Act. The Standard Permit was most recently renewed by the LDEQ on or about January 22, 2010.

### VI.

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the J.P. Landfill (the "IESI Operating Contract"). Among other things, the IESI Operating Contract provides that:

    (a) Operation of the J.P. Landfill will be conducted "in strict compliance and conformity with all Federal, State and local laws, ordinances, and regulations, including the rules and regulations of the USEPA, LDEQ, and all State of Louisiana agencies, and in accordance with the Permit Documents."

    (b) "IESI shall be responsible for compliance with all Federal, State and local regulations, laws and ordinances in its performance of the Service/Work associated with the operation [and maintenance] of the Landfill."

10

(c) IESI is required to "provide all labor, equipment, materials and incidentals to assume all daily operations of the Landfill."

(d) The Parish Engineer has the authority to "decide any and all questions as to...the manner of performance and rate of progress of the Services/Work...the interpretation of the Contract Documents, and all questions as to the acceptable Completion" of the Contract "in his reasonable and good faith opinion." The Parish Engineer is further authorized to "suspend operations at any time when the Service/Work, in his good faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits."

### VII.

Defendant APTIM is and at all relevant times has been a co-operator of the gas and leachate collection system of the J.P. Landfill.

### VIII.

Jefferson Parish, in addition to being an owner of the J.P. Landfill, is and at all relevant times has been a co-manager and co-operator of the J.P. Landfill with IESI/LRLP and APTIM.

### IX.

The Parish has admitted that improper operation of the J.P. Landfill is a major source of the odors suffered by Petitioners as well as the adverse consequences thereof.  At a public press conference on July 23, 2018, Parish President Mike Yenni stated that:

(a) The J.P. Landfill's system designed to "contain and deodorize landfill gases" has not been in "proper working order."

(b) The landfill's leachate collection system has not been operated properly.

(c) "Properly operated landfills do not operate persistent off-site odors and corrective actions...are essential."

(d) The Parish has notified IESI that it is in breach of its contract to properly operate the J.P. Landfill.

### X.

At the same press conference, Parish Sheriff Mark Conley stated that the J.P. Landfill gas collection system has been collecting only twenty percent (20%) of the gas emitted from landfill

11

operations, whereas a properly operating system would collect ninety-seven to ninety-eight percent of gas emissions, "[s]o that is why the Parish president is stressing that we realize we have problems…right now, a lot of our priority, in the name of public safety and our police powers, is to address the existing system, get it operational, and to pull as much gas out of that landfill as we can."

## XI.

At the same press conference, Parish Councilman Paul Johnson stated that the odor from the J.P. Landfill

"has gotten really bad in the past for our five months…we are all going to experience odors from the landfill because it's a landfill. But, not those we have been having for the past three or five months. It's been really bad. I have been woken up at night with my nose burning and couldn't breathe at three or four o'clock in the morning. This has happened to me more than one time…we know the landfill is causing problems and we know it is a big source of problems…."

## XII.

At the same press conference, Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to, leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[1]]

## XIII.

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which, among other things, found that the Parish has violated its Landfill Permit and applicable environmental regulations by (i) failing to provide daily cover and (ii) failing to properly operate the system that is intended to collect leachate – the liquid brew that drains from a landfill and carries with it numerous harmful chemicals.

## XIV.

---

[1] A video recording of the July 23 press conference can be accessed at https://www.facebook.com/NOLAnews/videos/10155793116437060/ (last visited Aug. 4, 2018).

The LDEQ inspectors found areas of pooled leachate and leachate flowing downhill from the pooled leachate.

### XV.

The United States Environmental Protection Agency ("EPA") has established general screening levels for various pollutants.   These screening levels are chemical-specific concentrations for individual contaminants in air that may warrant further investigation or site cleanup.[2] A chronic screening level addresses potential chronic exposure to a chemical.

### XVI.

Air samples collected by the LDEQ in the communities of River Ridge, Harahan and Waggaman between July 20, 2018 through approximately July 28, 2018 were found to contain numerous chemical compounds at concentrations that exceed EPA's chronic screening levels, including acrolein, 1, 2-dichloroethane, benzene, carbon tetrachloride, and naphthalene. All of these compounds are multimodal toxicants, in that they are potential or actual human carcinogens and also have other toxic effects.  The air samples collected by LDEQ also contained hydrogen sulfide at concentrations that exceed EPA's chronic screening levels.  Hydrogen sulfide is a potentially toxic compound. All of these compounds are typically found in the gases generated by landfills like the Jefferson Parish Landfill.

### XVII.

In a report dated August 15, 2018, prepared for the Parish by its environmental consultant, Carson Environmental Consulting ("CEC"), CEC made several findings, including, among other things, that there are numerous deficiencies in "the landfill gas condensate and leachate collection pumping systems[,]" and that the infrastructure for these systems requires immediate improvement "to meet the Parish's performance objectives."  In addition, CEC concluded that improved operation and maintenance of the J.P. Landfill requires the Parish's "focused attention."

### XX.

---

[2] https://www.epa.gov/risk/regional-screening-levels-rsls-users-guide (last visited, Nov. 21, 2018).

On information and belief, on or about December 5, 2018 the Commissioner of the LDEQ informed the Parish that there is "no doubt" in his mind that the JP Landfill is the primary source the odors experienced by residents of the communities in which Petitioners reside.

## XXI.

On information and belief, Defendant ABC Corporation has issued a policy of insurance to Defendant Louisiana Regional Landfill Company that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify ABC Corporation once its identity is known.

## XXII.

On information and belief, Defendant DEF Corporation has issued a policy of insurance to Defendant Waste Connections Bayou, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify DEF Corporation once its identity is known.

## XXIII.

On information and belief, Defendant GHI Corporation has issued a policy of insurance to Defendant Waste Connections US, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify GHI Corporation once its identity is known.

## XXIV.

On information and belief, Defendant JKL Corporation has issued a policy of insurance to Defendant Aptim Corporation that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## XXV.

On information and belief, Defendant MNO Corporation has issued a policy of insurance to Defendant Parish of Jefferson that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## XXVI.

## PROXIMATE CAUSE AND BAD ACTS

The Defendants' failure to properly design, operate and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and

14

in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals.

## XXVII.

These odors and chemicals have also caused these Petitioners to suffer physical and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness, loss of appetite, fatigue and lethargy, as well as fear, anguish, anxiety and mental pain and suffering.

## XXVIII.

Defendants' actions and omissions with respect to the design, operation and maintenance of the J.P. Landfill are the direct and proximate cause of the injuries and harm suffered by each of the Petitioners as alleged above.

## XXVIX.

Defendants' actions and omissions as outlined above also have caused a diminution in the value of Petitioners' immovable property.

## XXX.

These odors have been pervasive and persistent.  They have continued to the present and are likely to continue for the foreseeable future.  The emissions constitute a continuing tort.

## XXXI.

Defendants' acts and omissions in owning, designing, operating and/or maintaining the J.P. Landfill as described above constitute an unreasonable interference with each of the Petitioners' comfortable use and enjoyment of their homes.

## XXXII.

Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.

## XXXIII.

15

These physical invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, loss of enjoyment of property, as well as fear, anguish and mental pain and suffering.

### XXXV.

The emissions of these harmful odors and chemicals have been pervasive and persistent and constitute a continuing tort.

### XXXVI.

The Defendants' illegal actions and omissions in owning and operating the J.P. Landfill continue to this day and, unless enjoined by this Court, will continue for the indefinite future. Accordingly, Petitioners are entitled to a permanent injunction ordering the Defendants to abate the continuing nuisance and cease the trespasses caused and created by the J.P. Landfill, including the emission of noxious odors and chemicals, and to take all necessary reasonable actions required to accomplish same.

### XXXVII.

Each of the Defendants had a duty to Petitioners to exercise reasonable care in the design, ownership and/or operation of the Landfills, including without limitation the duty to comply with applicable environmental laws and regulations and otherwise to ensure that the Landfills were operated in a manner that does not jeopardize their health, immovable property, environment, and quality of life.

### XXXVIII.

Each of the Defendants breached such duties of care to the Petitioners by, among other things:

  i.   Failing to properly design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods;

  ii.  Failing to take careful and prudent precautionary measures to ensure that these releases would not occur;

  iii. Failing to design, operate and maintain the J.P. Landfill in a manner that does not cause harm to others and, in particular, its neighbors;

16

iv.   Failing to comply with applicable regulations governing the design, operation and maintenance of the J.P. Landfill;

v.   Being inattentive and careless in the overall design, operation and maintenance of the J.P. Landfill;

vi.   Failing to remediate and repair the failures in design, operation and maintenance of the J.P. Landfill as they became known to the Defendants;

vii.   Any and all other acts of negligence which may be revealed between now and the time of trial.

### XXXIX.

The Defendants' failure to comply with their duties of care to the Petitioners were and are a cause in fact and a legal cause of Petitioners' injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their immovable property and diminution in the value of said property.

### XL.

The Parish's ownership and operation of the J.P. Landfill has caused substantial damage to the value of Petitioners' respective interests in their immovable property.

### XLI.

The Parish knew, or in the exercise of reasonable care, should have known, that its failure to properly design, operate and maintain the J.P. Landfill would cause damage to Petitioners, and such damage could have been prevented by the exercise of reasonable care. The Parish, as owner of the J.P. Landfill, failed to exercise such reasonable care.

### XLII.

In committing the acts and omissions described above, the Defendants have breached their contractual obligations, of which Petitioners are third party beneficiaries, arising under the contracts between the Parish and all other Defendants herein pertaining to the design, operation and maintenance of the J.P. Landfill.

### XLIII.

17

In committing the foregoing acts and omissions, Defendants have violated, *inter alia*, Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continues to cause each of the Petitioners damages including nuisance damages; physical harm and mental fear, anguish, pain and suffering; and diminution in property value.

## XLIV.

Further, Petitioners' interest is their immovable property is a property right protected by the Louisiana Constitution.

## XLV.

Petitioners' interest in their real property has been taken and damaged by the actions of Jefferson Parish as set forth above.

## XLVI.

Such taking and damage was for a public purpose – to wit, the operation of a public landfill for the purpose of handling and disposing of waste generated by the citizens of Jefferson Parish and others.

## XLVII.

The Parish is liable to the Petitioners for damages caused by the Parish's unconstitutional taking of their immovable property without paying just compensation pursuant to Article I, Section 4(B) of the Louisiana Constitution.

## XLVIII.

The Parish's taking of Petitioners' property without just compensation constitutions a deprivation of their property without due process of law pursuant to Article I, Section 2 of the Louisiana Constitution.

## XLIX.

The Parish is liable to the Petitioners for damages caused by the Parish's violation of Petitioners' due process rights.

## L.

## REQUEST FOR TRIAL BY JURY

**PETITIONERS REQUEST A JURY TRIAL AS TO ALL CLAIMS TRIABLE BY JURY.**

18

0939

## LI.

### PRAYER FOR RELIEF

**WHEREFORE,** Petitioners pray that:

(a) Judgment be entered declaring each of the Defendants jointly, severally and *in solido* liable to each of the Petitioners for all damages (and awarding all such damages), including physical and bodily harm, loss of use and enjoyment of their homes, diminution in property value, lost wages, medical expenses and mental pain and suffering;

(b) Judgment be entered against the Parish declaring it liable for inverse condemnation, and awarding to each of the Petitioners just compensation for the unconstitutional taking of their interests in real property and/or a deprivation of due process;

(c) Judgment be entered against all Defendants for all additional damages as are just and reasonable under the circumstances, including but not limited to the cost of alternative housing and medical testing;

(d) The Defendants be permanently enjoined and ordered to abate the nuisances and trespasses, and to take all reasonable and necessary measures to cease the harmful emissions from the J.P. Landfill.

(e) The Defendants be required to provide medical monitoring for all Petitioners as appropriate;

(f) Prejudgment and post-judgment interest on all damages be awarded;

(g) Petitioners be awarded all costs for prosecution of this action and attorney fees;

(h) Damages be awarded for all other injuries that may be proved at trial; and

(i) This Court award such other and further relief as it may deem just and proper.

**Respectfully submitted,**

FORREST CRESSEY & JAMES, LLC

Byron Forrest (La. Bar No. 35481)

19

Nicholas Cressey (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Byron@fcjlaw.com
Eliza@fcjlaw.com
Tele: 504.605.0777
Fax:  504.322.3884

OF COUNSEL:
Barry S. Neuman (*Pro Hac Vice* application
to be submitted)
Erik Bolog
C. Allen Foster
Adrian Sneed
WHITEFORD TAYLOR PRESTON, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036
(202) 659-6800

**PLEASE SERVE:**

**LOUISIANA REGIONAL LANDFILL COMPANY**
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**WASTE CONNECTIONS BAYOU, INC.**
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

EBR-1682
$106.08

**WASTE CONNECTIONS US, INC.**
Through its Agent for Service
Via long arm through its Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**APTIM CORP.**
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**PARISH OF JEFFERSON**
Through its Agent for Service
Parish Attorney for the Parish of Jefferson
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

**ABC CORP.**
*Address unknown at this time.*

20

**DEF CORP.**
*Address unknown at this time.*

**GHI CORP.**
*Address unknown at this time.*

**JKL CORP.**
*Address unknown at this time.*

**MNO CORP.**
*Address unknown at this time.*

FILED FOR RECORD 04/05/2019 10:30:01
MICHELLE STUBBS DY CLERK
JEFFERSON PARISH, LA

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

NO.: 793-908                                      DIVISION: L

RICKEY CALLIGAN; ABENI ALEXANDER, in her individual capacity and as parent of her minor child, AUBREE ALEXANDER; BREJEANNE ANDERSON; CHANDRA AUGUST; MABLE IRENE BRADLEY; KIEOKA BARCONEY, in her individual capacity and as parent of her minor children, MARAHJ BARCONEY and JORDAN TAYLOR; VICTORIA BARNES; SHAKITA BATES, in her individual capacity and on behalf of her minor children: LEE BATES and KYRON BATES;  LEON BRADLEY, SR.; KIZZIE CAGE, in her individual capacity and on behalf of her minor children, DARRELL ROBINSON, DONTRELL EDGERSON, DESTINI TRICE and DANEY CAGE; RICKEY CALLIGAN; JESSICA CAMPBELL, in her individual capacity and on behalf of her minor child, JOURNIE CAMPBELL; MISTY CAPO, in her individual capacity and as parent of her minor children, VINCENT CAPO IV and KAITLIN CAPO; MARK CHAMPAGNE; JEANELLE CROCKETT; JEANIE CROCKETT, in her individual capacity and as parent of her minor child BRITTANY CROCKETT; TIMOTHY DAIGLE, in his individual capacity and as parent of his minor child DESIRAE DAIGLE; DERRICK DANDRIDGE; CORNEAL DAWSON; CORNELL DELANEY, JR.; DUSTIN DELAUNE; ALYSIA DIMAGGIO, in her individual capacity and as parent of her minor child, ALEXANDER MEDINA, JR.; CHERYL DUFRENE; MARYBETH EATON; THOMAS EATON; DONALD EDGERSON; DANIELLE FERRELL; EVAN FRAZIER; GEORGE GAMBINO; KIMBERLY GAMBINO; RHONDA GLANTON; LERONIESHA HARTFORD, in her individual capacity and as parent of her minor children, SAIGE HARTFORD, CHASE HARTFORD, and CHARM HARTFORD; LISA HAWKINS; DONALD HENRY; ISIAH HILL; SHEILA THOMPSON JAMES; JHI JASMIN; ANDRE JOLIVETT, in his individual capacity and as parent of his minor child, ZANAI COLLINS; AISHA JONES, in her individual capacity and as parent of her minor child JO'VONTA JONES; ERIC JONES; LEO JONES; HELENA JEFFERSON; CHAYLA LESTRICK; BRITTANY LIGHTELL; BRUCE LIGHTELL; ELIZABETH LOWE; LAUREN LOWE, in her individual capacity and as parent of her minor child, CHARLOTTE LOWE;  KATHI MAGRI; AUGUSTA MARTIN; DEBRA MARTIN; NICOLE MCINNIS, in her individual capacity and as parent of her minor children, EMMERSON MCINNIS and JAKE MCINNIS; RAY PENDELTON; JALISA PINKLEY,  in her individual capacity and as parent of her minor child, MIALA PINKLEY; WILEY PINKLEY; RESHAUN RICHARDSON;  KIM RILEY; CHARLES ROBERTSON; REBECCA ROTH; JAVON SINGLETON; J.C. SINGLETON; MOZELLA SINGLETON; ROSALYN SINGLETON, in her individual capacity and on behalf of her minor children, JOSHUA JOHNSON and AMIAYA JASON; DWIGHT SOLOMON; VELLIS TILLMAN; ALICIA TOLEDANO; JAHREMY TROTTER; DEMETRICE VALL; CARLETTA WALKER; FRANCINE WALKER; and REBECCA WELLS, in her individual capacity and as parent of her minor children, ADDYSON WELLS and JOSEPH WELLS.

### VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION; WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC; WASTE CONNECTIONS US, INC; APTIM CORP; PARISH OF JEFFERSON; ABC CORP; DEF CORP; GHI CORP; JKL CORP; and MNO CORP.

FILED: _____

_____
DEPUTY CLERK

---

### PETITION FOR DAMAGES AND INJUNCTIVE RELIEF

1



EXHIBIT
4

This action arises from the continuing, significant and unabated harm suffered by each of the named Petitioners as a result of the ongoing – and admitted – failure of each of the Defendants to ensure that the design, operation and maintenance of the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable environmental laws and adequately protects Petitioners' human health and environment. At all relevant times, the J.P. Landfill and has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.

These unlawful, harmful and toxic releases have caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things: difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience. These emissions also have caused diminution in the value of Petitioners' homes.

Accordingly, Petitioners seek redress from the Defendants for the direct and consequential injury and damage they have suffered and will continue to suffer as a direct result of the releases of noxious odors and chemicals from the J.P. Landfill.

Petitioners are:

**RICKEY CALLIGAN,** an individual of full age of majority residing at 8701 Steamboat Lane, River Ridge, LA 70123.

**ABENI ALEXANDER,** an individual of full age of majority residing at 352 Plantation Dr., Kenner, LA 70062 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **AUBREE ALEXANDER.**

**BREJEANNE ANDERSON,** an individual of full age of majority residing at 1332 South Dilton Street Metairie, LA 70003.

**CHANDRA AUGUST,** an individual of full age of majority residing at 261 Capitol Dr., Avondale, LA 70084 and owner of said immovable property.

**MABLE IRENE BRADLEY,** an individual of full age of majority residing at 612 S. Upland Ave., River Ridge LA 70123 and owner of a leasehold interest in said premises.

2

**KIEOKA BARCONEY**, an individual of full age of majority residing at 400 Federal Dr., Avondale, LA 70094, in her individual capacity and as parent of her minor children, **MARAHJ BARCONEY** and **JORDAN TAYLOR.**

**VICTORIA BARNES**, an individual of full age of majority residing at 10950 Jefferson Hwy., Apt. B14, River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**SHAKITA BATES**, an individual of full age of majority residing at 10950 Jefferson Hwy., Apt J4, River Ridge, LA 70123, and owner of a leasehold interest in said premises, in her individual capacity and on behalf of her minor children: **LEE BATES** and **KYRON BATES.**

**LEON BRADLEY, SR.**, an individual of full age of majority residing at 612 S. Upland Ave., River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**KIZZIE CAGE**, an individual of full age of majority residing at 863 3rd St., Kenner, LA 70062, in her individual capacity and on behalf of her minor children, **DARRELL ROBINSON, DONTRELL EDGERSON, DESTINI TRICE** and **DANEY CAGE.**

**JESSICA CAMPBELL**, an individual of full age of majority residing at 861 Reverend Richard Wilson Dr., Kenner, LA 70062, in her individual capacity and on behalf of her minor child, **JOURNIE CAMPBELL.**

**MISTY CAPO**, an individual residing at 116 Gardenia Lane, Westwego, LA 70094 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor children, **VINCENT CAPO IV** and **KAITLIN CAPO.**

**MARK CHAMPAGNE**, an individual residing at 120 Daffodil Lane, Waggaman, LA and owner of said immovable property.

**JEANELLE CROCKETT**, an individual of full age of majority residing at 7916 Warsaw St., Metairie, LA 70003.

**JEANIE CROCKETT**, an individual of full age of majority residing at 7916 Warsaw St., Metairie, LA 70003, in her individual capacity and as parent of her minor child **BRITTANY CROCKETT.**

**TIMOTHY DAIGLE**, an individual of full age of majority residing at 100 4 O'Clock Lane, Westwego, LA 70094, in his individual capacity and as parent of his minor child **DESIRAE DAIGLE.**

3

**DERRICK DANDRIDGE,** an individual of full age of majority residing at 346 Azalea Dr., Westwego, LA 70094.

**CORNEAL DAWSON,** an individual of full age of majority residing at 518 Wilker Neal Ave., River Ridge, LA 70123.

**CORNELL DELANEY, JR.,** an individual of full age of majority residing at 21 Dolores Dr., Waggaman, LA 70094.

**DUSTIN DELAUNE,** an individual of full age of majority residing at 109 Roux Lane, Westwego, LA 70094.

**ALYSIA DIMAGGIO,** an individual of full age of majority residing at 49 Judith St., Waggaman, LA 70094, in her individual capacity and as parent of her minor child, **ALEXANDER MEDINA, JR.**

**CHERYL DUFRENE,** an individual of full age of majority residing at 8933 Camille Ct., River Ridge, LA 70123 and owner of said immovable property.

**MARYBETH EATON,** an individual of full age of majority residing at 625 Hester Ave., River Ridge, LA 70123 and owner of said immovable property.

**THOMAS EATON,** an individual of full age of majority residing at 625 Hester Ave., River Ridge, LA 70123 and owner of said immovable property.

**DONALD EDGERSON,** an individual of full age of majority residing at 11104 Newton St., Apt A, River Ridge, LA 70123.

**DANIELLE FERRELL,** an individual of full age of majority residing at 11100 Newton St., Apt B, River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**EVAN FRAZIER,** an individual of full age of majority residing at 23 Sharen Place, Westwego, LA 70094.

**GEORGE GAMBINO,** an individual of full age of majority residing at 29 Chalstrom Dr., River Ridge, LA 70123 and owner of said immovable property.

**KIMBERLY GAMBINO,** an individual of full age of majority residing at 29 Chalstrom Dr., River Ridge, LA 70123.

**RHONDA GLANTON,** an individual of full age of majority residing at 636 Azalea Dr., Westwego, LA 70094 and owner of a leasehold interest in said premises.

4

**LERONIESHA HARTFORD,** an individual of full age of majority residing at 204 Wilker Neal Ave., Apt A, River Ridge, LA 70123, in her individual capacity and as parent of her minor children, **SAIGE HARTFORD, CHASE HARTFORD,** and **CHARM HARTFORD.**

**LISA HAWKINS,** an individual of full age of majority residing at 33 Clifford Ct., Waggaman, LA 70094 and owner of a leasehold interest in said premises.

**DONALD HENRY,** an individual of full age of majority residing at 140 Rosalie Dr., Apt. C, Avondale, LA 70094 and owner of a leasehold interest in said premises.

**ISIAH HILL,** an individual of full age of majority residing at 611 South Bengal Rd., River Ridge, LA 70123 and owner of said immovable property.

**SHEILA THOMPSON JAMES,** an individual of full age of majority residing at 412 Wilker Neal Ave., River Ridge, LA 70123 and owner of said immovable property.

**JHI JASMIN,** an individual of full age of majority residing at 617 Wilker Neal Ave., River Ridge, LA 70123.

**ANDRE JOLIVETT,** an individual of full age of majority residing at 218 Marion Court River Ridge, LA 70123, and owner of a leasehold interest in said premises, in his individual capacity and as parent of his minor child, **ZANAI COLLINS.**

**AISHA JONES,** an individual of full age of majority residing at 33 Clifford Ct., Waggaman, LA 70094 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child **JO'VONTA JONES.**

**ERIC JONES,** an individual of full age of majority residing at 33 Clifford Court, Waggaman, LA 70094.

**LEO JONES** an individual of full age of majority residing at 321 S. Upland St., River Ridge, LA 70123 and owner of said immovable property.

**HELENA JEFFERSON,** an individual of full age of majority residing at 624 Wilker Neal Ave., Apt. B, River Ridge, LA 70123.

**CHAYLA LESTRICK,** an individual of full age of majority residing at 2 Jasmine Lane, Waggaman, LA 70094.

**BRITTANY LIGHTELL,** an individual of full age of majority residing at 51 Winifred St., Waggaman, LA 70094.

5

**BRUCE LIGHTELL**, an individual of full age of majority residing at 51 Winifred St., Waggaman, LA 70094 and owner of said immovable property.

**ELIZABETH LOWE**, an individual of full age of majority residing at 604 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**LAUREN LOWE**, an individual of full age of majority residing at 10120 Saint Paul Ave., River Ridge, LA 70123 and owner of said immovable property, in her individual capacity and as parent of her minor child, **CHARLOTTE LOWE**.

**KATHI MAGRI**, an individual of full age of majority residing at 10004 Hyde Pl., River Ridge, LA 70123 and owner of said immovable property.

**AUGUSTA MARTIN**, an individual of full age of majority residing at 514 Folse St., River Ridge, LA 70123.

**DEBRA MARTIN**, an individual of full age of majority residing at 514 Folse St., River Ridge, LA 70123 and owner of a leasehold interest of said premises.

**NICOLE MCINNIS**, an individual of full age of majority residing at 710 Randolph Av., Harahan, LA 70123 and owner of said immovable property, in her individual capacity and as parent of her minor children, **EMMERSON MCINNIS** and **JAKE MCINNIS**.

**RAY PENDELTON**, an individual of full age of majority residing at 824 Wilker Neal Ave., Metairie, LA 70003 and owner of a leasehold interest in said premises.

**JALISA PINKLEY**, an individual of full age of majority residing at 511 Wilker Neal Ave., River Ridge, LA 70123, in her individual capacity and as parent of her minor child, **MIALA PINKLEY**.

**WILEY PINKLEY**, an individual of full age of majority residing at 511 Wilker Neal Ave., River Ridge, LA 70123, and owner of said immovable property.

**RESHAUN RICHARDSON**, an individual of full age of majority residing at 624 Wilker Neal Ave., Apt.B, River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**KIM RILEY**, an individual of full age of majority residing at 208 Jeffer Dr., Waggaman, LA 70094 and owner of said immovable property.

6

**CHARLES ROBERTSON,** an individual of full age of majority residing at 11104 Newton, Apt. B, River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**REBECCA ROTH,** an individual of full age of majority residing at 100 4 O'Clock Lane, Westwego, LA 70094 and owner of said immovable property.

**JAVON SINGLETON,** an individual of full age of majority residing at 609 Dandelion Dr., Waggaman, LA 70094.

**J.C. SINGLETON,** an individual of full age of majority residing at 609 Dandelion Dr., Waggaman, LA 70094 and owner of said immovable property.

**MOZELLA SINGLETON,** an individual of full age of majority residing at 609 Dandelion Dr., Waggaman, LA 70094.

**ROSALYN SINGLETON,** an individual of full age of majority residing at 609 Dandelion Dr., Waggaman, LA 70094 and owner of said immovable property, in her individual capacity and on behalf of her minor children, **JOSHUA JOHNSON** and **AMIAYA JASON.**

**DWIGHT SOLOMON,** an individual of full age of majority residing at 120 Rosalie Dr., Avondale, LA 70094 and owner of a leasehold interest in said premises.

**VELLIS TILLMAN,** an individual of full age of majority residing at 8721 Milan St., Metairie, LA 70003.

**ALICIA TOLEDANO,** an individual of full age of majority residing at 17 Jay Place, Waggaman, LA 70094 and owner of a leasehold interest in said premises.

**JAHREMY TROTTER,** an individual of full age of majority residing at 3632 Afton Lane Avondale, LA 70094.

**DEMETRICE VALL,** an individual of full age of majority residing at 1309 Dilton St., Apt. 3, Metairie, LA 70003 and owner of a leasehold interest in said premises.

**CARLETTA WALKER,** an individual of full age of majority residing at 723 Coleman Place, Kenner, LA 70062 and owner of said immovable property.

**FRANCINE WALKER,** an individual of full age of majority residing at 847 Rev. Richard Wilson Dr., 5B, Kenner, LA 70062 and owner of a leasehold interest in said premises.

7

**REBECCA WELLS,** an individual of full age of majority residing at 153 Rebel Ave., River Ridge, LA 70123 and owner of said immovable property, in her individual capacity and as parent of her minor children, **ADDYSON WELLS** and **JOSEPH WELLS.**

I.

Made Defendants herein are:

a.  **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION (IESI"),** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State.  On information and belief, LRLC is a wholly owned subsidiary of Defendant Waste Connections Bayou, Inc., Inc., which in turn was acquired by Defendant Waste Connections US, Inc.  On information and belief, Defendant LRLC is controlled by Defendants Waste Connections Bayou, Inc., and/or Waste Connections, US, Inc., and is the "alter ego" of those Defendants, operating without autonomy and only pursuant to the direction, policies and procedures of its parent corporations;

b.  **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized to do and doing business in this Parish and State;

c.  **WASTE CONNECTIONS US, INC.,** a foreign corporation authorized to do and doing business in this Parish and State; and

d.  **APTIM CORP.,** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State;

e.  **PARISH OF JEFFERSON,** a Louisiana municipal parish in and political subdivision of the State of Louisiana (the "Parish";

f.  **ABC CORPORATION,** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), F/K/A IESI LA LANDFILL CORPORATION ("IESI"),** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

8

g.   **DEF CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

h.   **GHI CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

i.   **JKL CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **APTIM CORP**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

j.   **MNO CORPORATIONS** foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **PARISH OF JEFFERSON**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein.

## II.

## JURISDICTION AND VENUE

Venue is proper in accordance with La. R.S. 13:5104(B), which states, in part, that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." Venue is further proper as to all other defendants as the wrongful conduct giving rise to the Petitioner's claims occurred within the jurisdictional limits of Jefferson Parish, State of Louisiana.

## III.

## FACTS

The Parish is the owner of the Jefferson Parish Landfill (the "J.P. Landfill"), located at 5800 Highway 90 West in Avondale, Jefferson Parish, LA.

## IV.

At all relevant times, the J.P. Landfill has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.* (the "Act") as well as federal laws and regulations implemented by the United States Environmental Protection Agency ("USEPA").

## V.

The J.P. Landfill is authorized to operate pursuant to and only in accordance with the terms and conditions of, among other things, Standard Permit P-0297R1(the "Standard Permit") as issued, approved, and subject to periodic review and renewal by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to the Act. The Standard Permit was most recently renewed by the LDEQ on or about January 22, 2010.

## VI.

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the J.P. Landfill (the "IESI Operating Contract"). Among other things, the IESI Operating Contract provides that:

(a) Operation of the J.P. Landfill will be conducted "in strict compliance and conformity with all Federal, State and local laws, ordinances, and regulations, including the rules and regulations of the USEPA, LDEQ, and all State of Louisiana agencies, and in accordance with the Permit Documents."

(b) "IESI shall be responsible for compliance with all Federal, State and local regulations, laws and ordinances in its performance of the Service/Work associated with the operation [and maintenance] of the Landfill."

(c) IESI is required to "provide all labor, equipment, materials and incidentals to assume all daily operations of the Landfill."

10

(d) The Parish Engineer has the authority to "decide any and all questions as to...the manner of performance and rate of progress of the Services/Work...the interpretation of the Contract Documents, and all questions as to the acceptable Completion" of the Contract "in his reasonable and good faith opinion." The Parish Engineer is further authorized to "suspend operations at any time when the Service/Work, in his good faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits."

### VII.

Defendant APTIM is and at all relevant times has been a co-operator of the gas and leachate collection system of the J.P. Landfill.

### VIII.

Jefferson Parish, in addition to being an owner of the J.P. Landfill, is and at all relevant times has been a co-manager and co-operator of the J.P. Landfill with IESI/LRLP and APTIM.

### IX.

The Parish has admitted that improper operation of the J.P. Landfill is a major source of the odors suffered by Petitioners as well as the adverse consequences thereof. At a public press conference on July 23, 2018, Parish President Mike Yenni stated that:

(a) The J.P. Landfill's system designed to "contain and deodorize landfill gases" has not been in "proper working order."

(b) The landfill's leachate collection system has not been operated properly.

(c) "Properly operated landfills do not operate persistent off-site odors and corrective actions...are essential."

(d) The Parish has notified IESI that it is in breach of its contract to properly operate the J.P. Landfill.

### X.

At the same press conference, Parish Sheriff Mark Conley stated that the J.P. Landfill gas collection system has been collecting only twenty percent (20%) of the gas emitted from landfill operations, whereas a properly operating system would collect ninety-seven to ninety-eight percent of gas emissions, "[s]o that is why the Parish president is stressing that we realize we have

11

problems…right now, a lot of our priority, in the name of public safety and our police powers, is to address the existing system, get it operational, and to pull as much gas out of that landfill as we can."

## XI.

At the same press conference, Parish Councilman Paul Johnson stated that the odor from the J.P. Landfill

"has gotten really bad in the past for our five months…we are all going to experience odors from the landfill because it's a landfill. But, not those we have been having for the past three or five months. It's been really bad. I have been woken up at night with my nose burning and couldn't breathe at three or four o'clock in the morning. This has happened to me more than one time…we know the landfill is causing problems and we know it is a big source of problems…."

## XII.

At the same press conference, Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to, leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[1]]

## XIII.

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which, among other things, found that the Parish has violated its Landfill Permit and applicable environmental regulations by (i) failing to provide daily cover and (ii) failing to properly operate the system that is intended to collect leachate – the liquid brew that drains from a landfill and carries with it numerous harmful chemicals.

## XIV.

The LDEQ inspectors found areas of pooled leachate and leachate flowing downhill from the pooled leachate.

---

[1] A video recording of the July 23 press conference can be accessed at https://www.facebook.com/NOLAnews/videos/10155793116437060/ (last visited Aug. 4, 2018).

12

0954

## XV.

The United States Environmental Protection Agency ("EPA") has established general screening levels for various pollutants. These screening levels are chemical-specific concentrations for individual contaminants in air that may warrant further investigation or site cleanup.[2] A chronic screening level addresses potential chronic exposure to a chemical.

## XVI.

Air samples collected by the LDEQ in the communities of River Ridge, Harahan and Waggaman between July 20, 2018 through approximately July 28, 2018 were found to contain numerous chemical compounds at concentrations that exceed EPA's chronic screening levels, including acrolein, 1, 2-dichloroethane, benzene, carbon tetrachloride, and naphthalene. All of these compounds are multimodal toxicants, in that they are potential or actual human carcinogens and also have other toxic effects. The air samples collected by LDEQ also contained hydrogen sulfide at concentrations that exceed EPA's chronic screening levels. Hydrogen sulfide is a potentially toxic compound. All of these compounds are typically found in the gases generated by landfills like the Jefferson Parish Landfill.

## XVII.

In a report dated August 15, 2018, prepared for the Parish by its environmental consultant, Carson Environmental Consulting ("CEC"), CEC made several findings, including, among other things, that there are numerous deficiencies in "the landfill gas condensate and leachate collection pumping systems[,]" and that the infrastructure for these systems requires immediate improvement "to meet the Parish's performance objectives." In addition, CEC concluded that improved operation and maintenance of the J.P. Landfill requires the Parish's "focused attention."

## XX.

On information and belief, on or about December 5, 2018 the Commissioner of the LDEQ informed the Parish that there is "no doubt" in his mind that the JP Landfill is the primary source the odors experienced by residents of the communities in which Petitioners reside.

## XXI.

---

[2] https://www.epa.gov/risk/regional-screening-levels-rsls-users-guide (last visited, Nov. 21, 2018).

13

On information and belief, Defendant ABC Corporation has issued a policy of insurance to Defendant Louisiana Regional Landfill Company that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify ABC Corporation once its identity is known.

### XXII.

On information and belief, Defendant DEF Corporation has issued a policy of insurance to Defendant Waste Connections Bayou, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify DEF Corporation once its identity is known.

### XXIII.

On information and belief, Defendant GHI Corporation has issued a policy of insurance to Defendant Waste Connections US, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify GHI Corporation once its identity is known.

### XXIV.

On information and belief, Defendant JKL Corporation has issued a policy of insurance to Defendant Aptim Corporation that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

### XXV.

On information and belief, Defendant MNO Corporation has issued a policy of insurance to Defendant Parish of Jefferson that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

### XXVI.

### PROXIMATE CAUSE AND BAD ACTS

The Defendants' failure to properly design, operate and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals.

### XXVII.

These odors and chemicals have also caused these Petitioners to suffer physical and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes, ears,

14

noses and throats, dizziness, loss of appetite, fatigue and lethargy, as well as fear, anguish, anxiety and mental pain and suffering.

### XXVIII.

Defendants' actions and omissions with respect to the design, operation and maintenance of the J.P. Landfill are the direct and proximate cause of the injuries and harm suffered by each of the Petitioners as alleged above.

### XXVIX.

Defendants' actions and omissions as outlined above also have caused a diminution in the value of Petitioners' immovable property.

### XXX.

These odors have been pervasive and persistent. They have continued to the present and are likely to continue for the foreseeable future. The emissions constitute a continuing tort.

### XXXI.

Defendants' acts and omissions in owning, designing, operating and/or maintaining the J.P. Landfill as described above constitute an unreasonable interference with each of the Petitioners' comfortable use and enjoyment of their homes.

### XXXII.

Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.

### XXXIII.

These physical invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, loss of enjoyment of property, as well as fear, anguish and mental pain and suffering.

### XXXV.

The emissions of these harmful odors and chemicals have been pervasive and persistent and constitute a continuing tort.

### XXXVI.

The Defendants' illegal actions and omissions in owning and operating the J.P. Landfill continue to this day and, unless enjoined by this Court, will continue for the indefinite future. Accordingly, Petitioners are entitled to a permanent injunction ordering the Defendants to abate the continuing nuisance and cease the trespasses caused and created by the J.P. Landfill, including the emission of noxious odors and chemicals, and to take all necessary reasonable actions required to accomplish same.

## XXXVII.

Each of the Defendants had a duty to Petitioners to exercise reasonable care in the design, ownership and/or operation of the Landfills, including without limitation the duty to comply with applicable environmental laws and regulations and otherwise to ensure that the Landfills were operated in a manner that does not jeopardize their health, immovable property, environment, and quality of life.

## XXXVIII.

Each of the Defendants breached such duties of care to the Petitioners by, among other things:

i. Failing to properly design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods;

ii. Failing to take careful and prudent precautionary measures to ensure that these releases would not occur;

iii. Failing to design, operate and maintain the J.P. Landfill in a manner that does not cause harm to others and, in particular, its neighbors;

iv. Failing to comply with applicable regulations governing the design, operation and maintenance of the J.P. Landfill;

v. Being inattentive and careless in the overall design, operation and maintenance of the J.P. Landfill;

vi. Failing to remediate and repair the failures in design, operation and maintenance of the J.P. Landfill as they became known to the Defendants;

0958

vii.    Any and all other acts of negligence which may be revealed between now and the time of trial.

## XXXIX.

The Defendants' failure to comply with their duties of care to the Petitioners were and are a cause in fact and a legal cause of Petitioners' injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their immovable property and diminution in the value of said property.

## XL.

The Parish's ownership and operation of the J.P. Landfill has caused substantial damage to the value of Petitioners' respective interests in their immovable property.

## XLI.

The Parish knew, or in the exercise of reasonable care, should have known, that its failure to properly design, operate and maintain the J.P. Landfill would cause damage to Petitioners, and such damage could have been prevented by the exercise of reasonable care. The Parish, as owner of the J.P. Landfill, failed to exercise such reasonable care.

## XLII.

In committing the acts and omissions described above, the Defendants have breached their contractual obligations, of which Petitioners are third party beneficiaries, arising under the contracts between the Parish and all other Defendants herein pertaining to the design, operation and maintenance of the J.P. Landfill.

## XLIII.

In committing the foregoing acts and omissions, Defendants have violated, *inter alia,* Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continues to cause each of the Petitioners damages including nuisance damages; physical harm and mental fear, anguish, pain and suffering; and diminution in property value.

## XLIV.

Further, Petitioners' interest is their immovable property is a property right protected by the Louisiana Constitution.

17

0959

### XLV.

Petitioners' interest in their real property has been taken and damaged by the actions of Jefferson Parish as set forth above.

### XLVI.

Such taking and damage was for a public purpose – to wit, the operation of a public landfill for the purpose of handling and disposing of waste generated by the citizens of Jefferson Parish and others.

### XLVII.

The Parish is liable to the Petitioners for damages caused by the Parish's unconstitutional taking of their immovable property without paying just compensation pursuant to Article I, Section 4(B) of the Louisiana Constitution.

### XLVIII.

The Parish's taking of Petitioners' property without just compensation constitutions a deprivation of their property without due process of law pursuant to Article I, Section 2 of the Louisiana Constitution.

### XLIX.

The Parish is liable to the Petitioners for damages caused by the Parish's violation of Petitioners' due process rights.

### L.

### REQUEST FOR TRIAL BY JURY

**PETITIONERS REQUEST A JURY TRIAL AS TO ALL CLAIMS TRIABLE BY JURY.**

### LI.

### PRAYER FOR RELIEF

**WHEREFORE,** Petitioners pray that:

   (a) Judgment be entered declaring each of the Defendants jointly, severally and *in solido* liable to each of the Petitioners for all damages (and awarding all such damages), including physical and bodily harm, loss of use and enjoyment of

their homes, diminution in property value, lost wages, medical expenses and
mental pain and suffering;

(b) Judgment be entered against the Parish declaring it liable for inverse
condemnation, and awarding to each of the Petitioners just compensation for
the unconstitutional taking of their interests in real property and/or a deprivation
of due process;

(c) Judgment be entered against all Defendants for all additional damages as are
just and reasonable under the circumstances, including but not limited to the
cost of alternative housing and medical testing;

(d) The Defendants be permanently enjoined and ordered to abate the nuisances
and trespasses, and to take all reasonable and necessary measures to cease the
harmful emissions from the J.P. Landfill.

(e) The Defendants be required to provide medical monitoring for all Petitioners as
appropriate;

(f) Prejudgment and post-judgment interest on all damages be awarded;

(g) Petitioners be awarded all costs for prosecution of this action and attorney fees;

(h) Damages be awarded for all other injuries that may be proved at trial; and

(i) This Court award such other and further relief as it may deem just and proper.

**Respectfully submitted,**

FORREST CRESSEY & JAMES, LLC

Byron Forrest (La. Bar No. 35481)
Nicholas Cressey (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Byron@fcjlaw.com
Eliza@fcjlaw.com
Tele: 504.605.0777
Fax:  504.322.3884

OF COUNSEL:
Barry S. Neuman (*Pro Hac Vice* application
to be submitted)
Erik Bolog

19

C. Allen Foster
Adrian Sneed
WHITEFORD TAYLOR PRESTON, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036
(202) 659-6800

**PLEASE SERVE:**
**LOUISIANA REGIONAL LANDFILL COMPANY**
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**WASTE CONNECTIONS BAYOU, INC.**
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**WASTE CONNECTIONS US, INC.**
Through its Agent for Service
Via long arm through its Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**APTIM CORP.**
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**PARISH OF JEFFERSON**
Through its Agent for Service
Parish Attorney for the Parish of Jefferson
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

**ABC CORP.**
*Address unknown at this time.*

**DEF CORP.**
*Address unknown at this time.*

**GHI CORP.**
*Address unknown at this time.*

**JKL CORP.**
*Address unknown at this time.*

**MNO CORP.**
*Address unknown at this time.*

20

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO.:                                                    DIVISION:

REGENIA GRIFFIN; GEORGE ALLAIN, III; SHIRLEY ALLAIN; WILLIAM BEL;
LLOYD BICKHAM; MAURICE BICKHAM; WILLIE BOATNER; CORNELIUS
BRIDGETT; KAYLA BROOKS; ARTHUR BROWN; BERNICE BROWN; ERIC
BROWN, in his individual capacity and as parent of his minor child, MELISSA BROWN;
MICHAEL BROWN; KAREN BRUCE, in her individual capacity and as parent of her minor
child, JULIAN MOTION ;KEEA BRUCE, in her individual capacity and as parent of her
minor child, KE'DARRIUS BRUCE; THADDEUS CAMMON; CALVIN CARTER, SR.;
LORA CARTER, in her individual capacity and on behalf of her minor children JOHN
SMITH, KEDRICK SMITH, and TRE'AVALLIE SMITH; ORAH CHAIRS; JEAN
CLAY; KAYLA COLEMAN; KELLY COLEMAN; KRYSTAL COLEMAN, in her
individual capacity and as parent of her minor children, MAKIYAH COLEMAN and KALIAL
COLEMAN; JARRIE CROSLEY; CHERLY EARL, in her individual capacity and as parent
of her minor children, CE'VANNE URSIN and CANYON SUNDAY; LINDA FREDERICK,
in her individual capacity and as parent of her minor child, BLAKE BAILEY, JR.;THAREN
FREDRICK; JARMAL GABRIEL; THURSTON GOLSTON, JR.; LULA GOSLTON-
STEWART; DONALD GRAY; VALENCIA GRAY, in her individual capacity and as parent
of her minor child, CAILEM GRAY; JAMAL GREEN, in his individual capacity and as
parent of his minor child, JAMEISHA CARTER; TIARA GREEN; DARREN GRIFFIN;
JINNILYNN GRIFFIN; JOURDAN GRIFFIN, in her individual capacity and as parent of her
minor child, COLE DOMANGUE; LEROY GUILLARD, JR.; RONALD HAMPTON;
ELIZABETH HARGRAVE; ANTOINE HARRIS; LIONEL HARRIS;VALERIE
HARRIS; LERONIESHA HARTFORD, in her individual capacity and as parent of her minor
children, SAIGE HARTFORD, CHASE HARTFORD, and CHARM HARTFORD;
CYNTHIA ISIDORE, in her individual capacity and as parent of her minor child, NATORY
ISIDORE;CHRIS JACKSON, in his individual capacity and as parent of his minor child
MIRACLE JACKSON; JARVIS JACKSON; TEDRICK JACKSON, in his individual
capacity and as parent of his minor child, KENNEDY JACKSON; ALEXIS JOHNSON;
AMANDA JOHNSON; BONALYN JOHNSON; JACQUELINE JOHNSON; JAVINE
JOHNSON; JEFFERY JOHNSON; CHRISTINA JONES; KEVIN KNOX; JOELLE
LONG, in her individual capacity and as  parent of her minor children, KAISON LONG and
KAMILLE JONES; ANTHONY MURPHY; VANESSA MURPHY; BRET NELSON;
HILARY NELSON; RONNIE PIERRE, SR.; MARY ROGERS; JAMES SIMMONS; in
her individual capacity and as parent of her minor child, SAVANNAH SMITH; JONATHAN
TATE; JUSTIN THOMAS; ORDELIA THOMAS; DELICE WALKER, in her individual
capacity and on behalf of her minor children, ZAREYAN WALKER and ZYWREN
WALKER; NICHOLE WALKER,  in her individual capacity and as parent of her minor child,
MARCO T. ROWELL; and JANICE WILKINSON.

**VERSUS**

LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL
CORPORATION; WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE
WASTE SOLUTIONS OF LA, INC; WASTE CONNECTIONS US, INC; APTIM CORP;
PARISH OF JEFFERSON; ABC CORP; DEF CORP; GHI CORP; JKL CORP; and
MNO CORP.

FILED:_____

_____
DEPUTY CLERK

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES

**PETITION FOR DAMAGES AND INJUNCTIVE RELIEF**



JON A. GEGENHEIMER

1

04/09/2019 11:39:56 CERTIFIED TRUE COPY - ...   n Clerk of Court - ID:1948302

EXHIBIT
5

0963

This action arises from the continuing, significant and unabated harm suffered by each of the named Petitioners as a result of the ongoing – and admitted – failure of each of the Defendants to ensure that the design, operation and maintenance of the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable environmental laws and adequately protects Petitioners' human health and environment. At all relevant times, the J.P. Landfill and has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.

These unlawful, harmful and toxic releases have caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things: difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience. These emissions also have caused diminution in the value of Petitioners' homes.

Accordingly, Petitioners seek redress from the Defendants for the direct and consequential injury and damage they have suffered and will continue to suffer as a direct result of the releases of noxious odors and chemicals from the J.P. Landfill.

Petitioners are:

**REGENIA GRIFFIN,** an individual of full age of majority residing at 612 Filmore S., Kenner, LA 70062 and owner of said immovable property.

**GEORGE ALLAIN, III,** an individual of full age of majority residing at 1344 South Elm St., Metairie, LA  70003 and owner of said immovable property.

**SHIRLEY ALLAIN,** an individual of full age of majority residing at 1344 South Elm St., Metairie, LA  70003 and owner of said immovable property.

**WILLIAM BELL,** an individual of full age of majority residing at 1250 Dillard Dr., Avondale, LA 70094 and owner of said immovable property.

**LLOYD BICKHAM,** an individual of full age of majority residing at 627 Avondale Garden Rd., Westwego, LA 70094 and owner of said immovable property.

**MAURICE BICKHAM,** an individual of full age of majority residing at 627 Avondale Garden Rd., Westwego, LA 70094 and owner of said immovable property.

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELZA   JAMES



**WILLIE BOATNER,** an individual of full age of majority residing at 429 Wilker Neal River Ridge, LA 70123.

**CORNELIUS BRIDGETT,** an individual of full age of majority residing at 312 Judiciary Dr., Avondale, LA 70094.

**KAYLA BROOKS,** an individual of full age of majority residing at 1650 Wakefield Dr., Marrero, LA 70072.

**ARTHUR BROWN,** an individual of full age of majority residing at 408 Upland Ave., River Ridge, LA 70123.

**BERNICE BROWN,** an individual of full age of majority residing at 295 Capital Dr., Avondale, LA 70094.

**ERIC BROWN,** an individual of full age of majority residing at 295 Capital Dr., Avondale, LA 70094 in his individual capacity and as parent of his minor child, **MELISSA BROWN.**

**MICHAEL BROWN,** an individual of full age of majority residing at 31 Richelle St., Westwego, LA 70094.

**KAREN BRUCE,** an individual of full age of majority residing at 11100 Newton St., Apt C River Ridge, LA 70123 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **JULIAN MOTION.**

**KEEA BRUCE,** an individual of full age of majority residing at 11100 Newton St., Apt C River Ridge, LA 70123 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **KE'DARRIUS BRUCE.**

**THADDEUS CAMMON,** an individual of full age of majority residing at 1320 S. Meadow St., Metairie, LA 70003 and owner of a leasehold interest in said premises.

**CALVIN CARTER, SR.** an individual of full age of majority residing at 181 Bishop Dr., Avondale, LA 70094 and owner of said immovable property.

**LORA CARTER,** an individual of full age of majority residing at 181 Bishop Dr., Avondale, LA 70094 in her individual capacity and on behalf of her minor children **JOHN SMITH, KEDRICK SMITH,** and **TRE'AVALLIE SMITH.**

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES

3



**ORAH CHAIRS,** an individual of full age of majority residing at 429 Wilker Neal Ave, River Ridge, LA 70123.

**JEAN CLAY,** an individual of full age of majority residing at 714 S. Bengal Rd., Metairie, LA 70003 and owner of said immovable property.

**KAYLA COLEMAN,** an individual of full age of majority residing at 640 Pat Dr., Avondale, LA 70094 and owner of a leasehold interest in said immovable property.

**KELLY COLEMAN,** an individual of full age of majority residing at 20 Dolores Dr., Waggaman, LA 70094 and owner of said immovable property.

**KRYSTAL COLEMAN,** an individual of full age of majority residing at 640 Pat Dr., Avondale, LA 70094 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor children, **MAKIYAH COLEMAN** and **KALIAL COLEMAN.**

**JARRIE CROSLEY,** an individual of full age of majority residing at 181 Bishop Drive, Avondale, LA 70094.

**CHERLY EARL,** an individual of full age of majority residing at 8301 Bern St., Metairie, LA 70003, in her individual capacity and as parent of her minor children, **CE'VANNE URSIN** and **CANYON SUNDAY.**

**LINDA FREDERICK,** an individual of full age of majority residing at 116 Rosalie Dr., Avondale, LA 70094, in her individual capacity and as parent of her minor child, **BLAKE BAILEY, JR.**

**THAREN FREDRICK,** an individual of full age of majority residing at 116 Rosalie Dr., Avondale, LA 70094.

**JARMAL GABRIEL,** an individual of full age of majority residing at 512 Avondale Garden Rd., Avondale, LA 70094.

**THURSTON GOLSTON, JR,** an individual of full age of majority residing at 8000 Macon St. Metairie, LA 70003 and owner of said immovable property.

**LULA GOSLTON-STEWART,** an individual of full age of majority residing at 613 Filmore St., Kenner, LA 70052 and owner of said immovable property.

**DONALD GRAY,** an individual of full age of majority residing at 3301 W. Esplanade Ave., Apt N, 20328 Metairie, LA 70002 and owner of a leasehold interest in said premises.

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES

4

SEAL OF THE CLERK OF COURT ... LOUISIANA ... OF 1877
JON A. GEGENHEIMER

0966

**VALENCIA GRAY,** an individual of full age of majority residing at 3301 W. Esplanade Ave., Apt N, 20328 Metairie, LA 70002 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **CAILEM GRAY.**

**JAMAL GREEN,** an individual of full age of majority residing at 314 Avonadale Garden Rd., Avondale, LA 70094 and owner of a leasehold interest in said premises, in his individual capacity and as parent of his minor child, **JAMEISHA CARTER.**

**TIARA GREEN,** an individual of full age of majority residing at 20 Winifred St., Westwego, LA 70094.

**DARREN GRIFFIN,** an individual of full age of majority residing at 31 Judith St., Westwego, LA 70094 and owner of said immovable property.

**JINNILYNN GRIFFIN,** an individual of full age of majority residing at 31 Judith St., Westwego, LA 70094 and owner of said immovable property.

**JOURDAN GRIFFIN,** an individual of full age of majority residing at 53 Lucille St., Waggaman, LA 70094 and owner of said immovable property, in her individual capacity and as parent of her minor child, **COLE DOMANGUE.**

**LEROY GUILLARD, JR.,** an individual of full age of majority residing at 703 Richard Ave., River Ridge, LA 70123.

**RONALD HAMPTON,** an individual of full age of majority residing at 1309 South Dilton St., Metairie, LA 70003 and owner of a leasehold interest in said premises.

**ELIZABETH HARGRAVE,** an individual of full age of majority residing at 307 Audubon Ct., Kenner, LA, 70062 and owner of said immovable property.

**ANTOINE HARRIS,** an individual of full age of majority residing at 404 Hanson Pl., Kenner, LA 70062.

**LIONEL HARRIS,** an individual of full age of majority residing at 117 Rosalie Dr., Avondale, LA 70094 and owner of a leasehold interest in said premises.

**VALERIE HARRIS,** an individual of full age of majority residing at 403 Farrar Ave., Kenner, LA 70062 and owner of a leasehold interest in said premises.

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES


JON A. GEGENHEIMER

04/09/2019 11:39:56 CERTIFIED TRUE COPY - Pg:5 of 21 - Jefferson Parish Clerk of Court - ID:1948302

0967

**LERONIESHA HARTFORD,** an individual of full age of majority residing at 204 Wilker Neal Ave., Apt A, River Ridge, LA 70123, in her individual capacity and as parent of her minor children, **SAIGE HARTFORD, CHASE HARTFORD,** and **CHARM HARTFORD**

**CYNTHIA ISIDORE,** an individual of full age of majority residing at 2308 Rev. Richard Wilson Dr., Kenner, LA 70062 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **NATORY ISIDORE.**

**CHRIS JACKSON,** an individual of full age of majority residing at 1457 South Laurel St., Metairie, LA 70003 and owner of a leasehold interest in said premises, in his individual capacity and as parent of his minor child **MIRACLE JACKSON.**

**ERNEST JACKSON,** an individual of full age of majority residing at 400 Federal Dr., Avondale, LA 70094.

**JARVIS JACKSON,** an individual of full age of majority residing at 617 Wilker Neal Ave., River Ridge, LA 70123.

**TEDRICK JACKSON,** an individual of full age of majority residing at 346 Azalea Dr.,Waggaman, LA 70094 and owner of a leasehold interest in said premises, in his individual capacity and as parent of his minor child, **KENNEDY JACKSON.**

**ALEXIS JOHNSON,** an individual of full age of majority residing at 616 Starrett Rd., Apt B River Ridge, LA 70123.

**AMANDA JOHNSON,** an individual of full age of majority residing at 616 Starrett Rd., Apt B River Ridge, LA 70123 and owner of a leasehold interest in said immovable property.

**BONALYN JOHNSON,** an individual of full age of majority residing at 315 Citrus Rd., River Ridge, LA 70123.

**JACQUELINE JOHNSON,** an individual of full age of majority residing at 11112 Newton St., Apt. A River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**JAVINE JOHNSON,** an individual of full age of majority residing at 325 Georgetown Dr., Avondale, LA 70094.

**JEFFERY JOHNSON,** an individual of full age of majority residing at 722 Starrett Rd., River Ridge, LA 70123 and owner of a leasehold interest in said premises.

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES



6

04/09/2019 11:39:56 CERTIFIED TRUE COPY - Pg:6 of 21 - Jefferson Parish Clerk of Court - ID:1948302

**CHRISTINA JONES,** an individual of full age of majority residing at 833 N. Cumberland St., Metairie, LA 70003 and owner of a leasehold interest in said premises.

**KEVIN KNOX,** an individual of full age of majority residing at 7805 Monett St., Metairie, LA 70003 and owner of a leasehold interest in said premises.

**JOELLE LONG,** an individual of full age of majority residing at 2424 Reverend Richard Wilson Dr., Kenner, LA 70062 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor children, **KAISON LONG** and **KAMILLE JONES.**

**ANTHONY MURPHY,** an individual of full age of majority residing at 720 S. Cumberland St., Metairie, LA 70003.

**VANESSA MURPHY,** an individual of full age of majority residing at 720 S. Cumberland St., Metairie, LA 70003.

**BRET NELSON,** an individual of full age of majority residing at 861 Reverend Richard Wilson Dr., Kenner, LA 70062.

**HILARY NELSON,** an individual of full age of majority residing at 861 Reverend Richard Wilson Dr., Kenner, LA 70062 and owner of a leasehold interest in said premises.

**RONNIE PIERRE, SR.,** an individual of full age of majority residing at 9025 Milan St., Metairie, LA 70003 and owner of a leasehold interest in said premises.

**MARY ROGERS,** an individual of full age of majority residing at 133 Hanson Pl., Kenner, LA 70062 and owner of a leasehold interest in said premises.

**JAMES SIMMONS,** an individual of full age of majority residing at 627 Avondale Garden Rd., Westwego, LA 70094.

**SUSAN SMITH,** an individual of full age of capacity residing at 565 Bellview St., River Ridge, LA 70123 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **SAVANNAH SMITH.**

**JONATHAN TATE,** an individual of full age of majority residing at 21 Richelle St., Waggaman, LA 70094.

**JUSTIN THOMAS,** an individual of full age of majority residing at 10950 Jefferson Hwy, River Ridge, LA 70123 and owner of a leasehold interest in said premises.

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA  JAMES

7

JON A. GEGENHEIMER

**ORDELIA THOMAS,** an individual of full age of majority residing at 333 Coretta Dr., Westwego, LA 70094 and owner of said immovable property.

**DELICE WALKER,** an individual of full age of majority residing at 723 Coleman Place, Kenner, LA 70062 in her individual capacity and on behalf of her minor children, **ZAREYAN WALKER** and **ZYWREN WALKER.**

**NICHOLE WALKER,** an individual of full age of majority residing at 850 Rev. Richard Wilson Dr., Apartment 1D, Kenner, LA 70062 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **MARCO T. ROWELL.**

**JANICE WILKINSON,** an individual of full age of majority residing at 1332 S. Dilton St., Metairie, LA 70003 and owner of said immovable property.

Made Defendants herein are:

a. **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION (IESI"),** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State.  On information and belief, LRLC is a wholly owned subsidiary of Defendant Waste Connections Bayou, Inc., Inc., which in turn was acquired by Defendant Waste Connections US, Inc.  On information and belief, Defendant LRLC is controlled by Defendants Waste Connections Bayou, Inc., and/or Waste Connections, US, Inc., and is the "alter ego" of those Defendants, operating without autonomy and only pursuant to the direction, policies and procedures of its parent corporations;

b. **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized to do and doing business in this Parish and State;

c. **WASTE CONNECTIONS US, INC.,** a foreign corporation authorized to do and doing business in this Parish and State; and

d. **APTIM CORP.,** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State;

e. **PARISH OF JEFFERSON,** a Louisiana municipal parish in and political subdivision of the State of Louisiana (the "Parish";

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES

8



JON A. GEGENHEIMER

0970

f.  **ABC CORPORATION,** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), F/K/A IESI LA LANDFILL CORPORATION ("IESI"),** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

g.  **DEF CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

h.  **GHI CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

i.  **JKL CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **APTIM CORP,** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

j.  **MNO CORPORATIONS** foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **PARISH OF JEFFERSON,** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein.

I.

<u>JURISDICTION AND VENUE</u>

Venue is proper in accordance with La. R.S. 13:5104(B), which states, in part, that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES

9

jurisdiction in the parish in which the cause of action arises." Venue is further proper as to all other defendants as the wrongful conduct giving rise to the Petitioner's claims occurred within the jurisdictional limits of Jefferson Parish, State of Louisiana.

## II.

### FACTS

The Parish is the owner of the Jefferson Parish Landfill (the "J.P. Landfill"), located at 5800 Highway 90 West in Avondale, Jefferson Parish, LA.

## III.

At all relevant times, the J.P. Landfill has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.* (the "Act") as well as federal laws and regulations implemented by the United States Environmental Protection Agency ("USEPA").

## IV.

The J.P. Landfill is authorized to operate pursuant to and only in accordance with the terms and conditions of, among other things, Standard Permit P-0297R1(the "Standard Permit") as issued, approved, and subject to periodic review and renewal by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to the Act.  The Standard Permit was most recently renewed by the LDEQ on or about January 22, 2010.

## V.

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the J.P. Landfill (the "IESI Operating Contract").  Among other things, the IESI Operating Contract provides that:

(a) Operation of the J.P. Landfill will be conducted "in strict compliance and conformity with all Federal, State and local laws, ordinances, and regulations, including the rules and regulations of the USEPA, LDEQ, and all State of Louisiana agencies, and in accordance with the Permit Documents."

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES



JON A. GEGENHEIMER

10

(b) "IESI shall be responsible for compliance with all Federal, State and local regulations, laws and ordinances in its performance of the Service/Work associated with the operation [and maintenance] of the Landfill."

(c) IESI is required to "provide all labor, equipment, materials and incidentals to assume all daily operations of the Landfill."

(d) The Parish Engineer has the authority to "decide any and all questions as to...the manner of performance and rate of progress of the Services/Work...the interpretation of the Contract Documents, and all questions as to the acceptable Completion" of the Contract "in his reasonable and good faith opinion." The Parish Engineer is further authorized to "suspend operations at any time when the Service/Work, in his good faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits."

## VI.

Defendant APTIM is and at all relevant times has been a co-operator of the gas and leachate collection system of the J.P. Landfill.

## VII.

Jefferson Parish, in addition to being an owner of the J.P. Landfill, is and at all relevant times has been a co-manager and co-operator of the J.P. Landfill with IESI/LRLP and APTIM.

## VIII.

The Parish has admitted that improper operation of the J.P. Landfill is a major source of the odors suffered by Petitioners as well as the adverse consequences thereof. At a public press conference on July 23, 2018, Parish President Mike Yenni stated that:

(a) The J.P. Landfill's system designed to "contain and deodorize landfill gases" has not been in "proper working order."

(b) The landfill's leachate collection system has not been operated properly.

(c) "Properly operated landfills do not operate persistent off-site odors and corrective actions...are essential."

(d) The Parish has notified IESI that it is in breach of its contract to properly operate the J.P. Landfill.

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA JAMES



JON A. GEGENHEIMER

## IX.

At the same press conference, Parish Sheriff Mark Conley stated that the J.P. Landfill gas collection system has been collecting only twenty percent (20%) of the gas emitted from landfill operations, whereas a properly operating system would collect ninety-seven to ninety-eight percent of gas emissions, "[s]o that is why the Parish president is stressing that we realize we have problems...right now, a lot of our priority, in the name of public safety and our police powers, is to address the existing system, get it operational, and to pull as much gas out of that landfill as we can."

## X.

At the same press conference, Parish Councilman Paul Johnson stated that the odor from the J.P. Landfill

"has gotten really bad in the past for our five months...we are all going to experience odors from the landfill because it's a landfill. But, not those we have been having for the past three or five months. It's been really bad. I have been woken up at night with my nose burning and couldn't breathe at three or four o'clock in the morning. This has happened to me more than one time...we know the landfill is causing problems and we know it is a big source of problems...."

## XI.

At the same press conference, Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to, leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[1]]

## XII.

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which, among other things, found that the Parish has violated its Landfill Permit and applicable environmental regulations by (i) failing to provide daily cover and (ii) failing to properly operate

---

[1] A video recording of the July 23 press conference can be accessed at https://www.facebook.com/NOLAnews/videos/10155793116437060/ (last visited Aug. 4, 2018).

12

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES

the system that is intended to collect leachate – the liquid brew that drains from a landfill and carries with it numerous harmful chemicals.

### XIII.

The LDEQ inspectors found areas of pooled leachate and leachate flowing downhill from the pooled leachate.

### XIV.

The United States Environmental Protection Agency ("EPA") has established general screening levels for various pollutants. These screening levels are chemical-specific concentrations for individual contaminants in air that may warrant further investigation or site cleanup.[2] A chronic screening level addresses potential chronic exposure to a chemical.

### XV.

Air samples collected by the LDEQ in the communities of River Ridge, Harahan and Waggaman between July 20, 2018 through approximately July 28, 2018 were found to contain numerous chemical compounds at concentrations that exceed EPA's chronic screening levels, including acrolein, 1, 2-dichloroethane, benzene, carbon tetrachloride, and naphthalene. All of these compounds are multimodal toxicants, in that they are potential or actual human carcinogens and also have other toxic effects. The air samples collected by LDEQ also contained hydrogen sulfide at concentrations that exceed EPA's chronic screening levels. Hydrogen sulfide is a potentially toxic compound. All of these compounds are typically found in the gases generated by landfills like the Jefferson Parish Landfill.

### XVI.

In a report dated August 15, 2018, prepared for the Parish by its environmental consultant, Carson Environmental Consulting ("CEC"), CEC made several findings, including, among other things, that there are numerous deficiencies in "the landfill gas condensate and leachate collection pumping systems[,]" and that the infrastructure for these systems requires immediate improvement "to meet the Parish's performance objectives." In addition, CEC concluded that improved operation and maintenance of the J.P. Landfill requires the Parish's "focused attention."

---

https://www.epa.gov/risk/regional-screening-levels-rsls-users-guide (last visited, Nov. 21, 2018).



24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA  JAMES

## XX.

On information and belief, on or about December 5, 2018 the Commissioner of the LDEQ informed the Parish that there is "no doubt" in his mind that the JP Landfill is the primary source the odors experienced by residents of the communities in which Petitioners reside.

## XXI.

On information and belief, Defendant ABC Corporation has issued a policy of insurance to Defendant Louisiana Regional Landfill Company that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify ABC Corporation once its identity is known.

## XXII.

On information and belief, Defendant DEF Corporation has issued a policy of insurance to Defendant Waste Connections Bayou, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify DEF Corporation once its identity is known.

## XXIII.

On information and belief, Defendant GHI Corporation has issued a policy of insurance to Defendant Waste Connections US, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify GHI Corporation once its identity is known.

## XXIV.

On information and belief, Defendant JKL Corporation has issued a policy of insurance to Defendant Aptim Corporation that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## XXV.

On information and belief, Defendant MNO Corporation has issued a policy of insurance to Defendant Parish of Jefferson that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## XXVI.

### PROXIMATE CAUSE AND BAD ACTS

The Defendants' failure to properly design, operate and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA    JAMES

14

JON A. GEGENHEIMER

0976

in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals.

## XXVII.

These odors and chemicals have also caused these Petitioners to suffer physical and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness, loss of appetite, fatigue and lethargy, as well as fear, anguish, anxiety and mental pain and suffering.

## XXVIII.

Defendants' actions and omissions with respect to the design, operation and maintenance of the J.P. Landfill are the direct and proximate cause of the injuries and harm suffered by each of the Petitioners as alleged above.

## XXVIX.

Defendants' actions and omissions as outlined above also have caused a diminution in the value of Petitioners' immovable property.

## XXX.

These odors have been pervasive and persistent. They have continued to the present and are likely to continue for the foreseeable future. The emissions constitute a continuing tort.

## XXXI.

Defendants' acts and omissions in owning, designing, operating and/or maintaining the J.P. Landfill as described above constitute an unreasonable interference with each of the Petitioners' comfortable use and enjoyment of their homes.

## XXXII.

Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.

## XXXIII.

These physical invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, and loss of enjoyment of property, as well as fear, anguish and mental pain and suffering.

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES

15

## XXXV.

The emissions of these harmful odors and chemicals have been pervasive and persistent and constitute a continuing tort.

## XXXVI.

The Defendants' illegal actions and omissions in owning and operating the J.P. Landfill continue to this day and, unless enjoined by this Court, will continue for the indefinite future. Accordingly, Petitioners are entitled to a permanent injunction ordering the Defendants to abate the continuing nuisance and cease the trespasses caused and created by the J.P. Landfill, including the emission of noxious odors and chemicals, and to take all necessary reasonable actions required to accomplish same.

## XXXVII.

Each of the Defendants had a duty to Petitioners to exercise reasonable care in the design, ownership and/or operation of the Landfills, including without limitation the duty to comply with applicable environmental laws and regulations and otherwise to ensure that the Landfills were operated in a manner that does not jeopardize their health, immovable property, environment, and quality of life.

## XXXVIII.

Each of the Defendants breached such duties of care to the Petitioners by, among other things:

i.  Failing to properly design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods;

ii.  Failing to take careful and prudent precautionary measures to ensure that these releases would not occur;

iii.  Failing to design, operate and maintain the J.P. Landfill in a manner that does not cause harm to others and, in particular, its neighbors;

iv.  Failing to comply with applicable regulations governing the design, operation and maintenance of the J.P. Landfill;

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA JAMES



v.   Being inattentive and careless in the overall design, operation and maintenance of the J.P. Landfill;

vi.   Failing to remediate and repair the failures in design, operation and maintenance of the J.P. Landfill as they became known to the Defendants;

vii.   Any and all other acts of negligence which may be revealed between now and the time of trial.

### XXXIX.

The Defendants' failure to comply with their duties of care to the Petitioners were and are a cause in fact and a legal cause of Petitioners' injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their immovable property and diminution in the value of said property.

### XL.

The Parish's ownership and operation of the J.P. Landfill has caused substantial damage to the value of Petitioners' respective interests in their immovable property.

### XLI.

The Parish knew, or in the exercise of reasonable care, should have known, that its failure to properly design, operate and maintain the J.P. Landfill would cause damage to Petitioners, and such damage could have been prevented by the exercise of reasonable care. The Parish, as owner of the J.P. Landfill, failed to exercise such reasonable care.

### XLII.

In committing the acts and omissions described above, the Defendants have breached their contractual obligations, of which Petitioners are third party beneficiaries, arising under the contracts between the Parish and all other Defendants herein pertaining to the design, operation and maintenance of the J.P. Landfill.

### XLIII.

In committing the foregoing acts and omissions, Defendants have violated, *inter alia*, Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continues to cause each of

24th E-Filed 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES



JON A. GEGENHEIMER

04/09/2019 11:39:56 CERTIFIED TRUE COPY - Pg:17 of 21 - Jefferson Parish Clerk of Court - ID:1948302

0979

the Petitioners damages including nuisance damages; physical harm and mental fear, anguish, pain and suffering; and diminution in property value.

### XLIV.

Further, Petitioners' interest is their immovable property is a property right protected by the Louisiana Constitution.

### XLV.

Petitioners' interest in their real property has been taken and damaged by the actions of Jefferson Parish as set forth above.

### XLVI.

Such taking and damage was for a public purpose – to wit, the operation of a public landfill for the purpose of handling and disposing of waste generated by the citizens of Jefferson Parish and others.

### XLVII.

The Parish is liable to the Petitioners for damages caused by the Parish's unconstitutional taking of their immovable property without paying just compensation pursuant to Article I, Section 4(B) of the Louisiana Constitution.

### XLVIII.

The Parish's taking of Petitioners' property without just compensation constitutions a deprivation of their property without due process of law pursuant to Article I, Section 2 of the Louisiana Constitution.

### XLIX.

The Parish is liable to the Petitioners for damages caused by the Parish's violation of Petitioners' due process rights.

### L.

### **REQUEST FOR TRIAL BY JURY**

**PETITIONERS REQUEST A JURY TRIAL AS TO ALL CLAIMS TRIABLE BY JURY.**

### LI.

### **PRAYER FOR RELIEF**

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES



**WHEREFORE,** Petitioners pray that:

(a) Judgment be entered declaring each of the Defendants jointly, severally and *in solido* liable to each of the Petitioners for all damages (and awarding all such damages), including physical and bodily harm, loss of use and enjoyment of their homes, diminution in property value, lost wages, medical expenses and mental pain and suffering;

(b) Judgment be entered against the Parish declaring it liable for inverse condemnation, and awarding to each of the Petitioners just compensation for the unconstitutional taking of their interests in real property and/or a deprivation of due process;

(c) Judgment be entered against all Defendants for all additional damages as are just and reasonable under the circumstances, including but not limited to the cost of alternative housing and medical testing;

(d) The Defendants be permanently enjoined and ordered to abate the nuisances and trespasses, and to take all reasonable and necessary measures to cease the harmful emissions from the J.P. Landfill.

(e) The Defendants be required to provide medical monitoring for all Petitioners as appropriate;

(f) Prejudgment and post-judgment interest on all damages be awarded;

(g) Petitioners be awarded all costs for prosecution of this action and attorney fees;

(h) Damages be awarded for all other injuries that may be proved at trial; and

(i) This Court award such other and further relief as it may deem just and proper.

**Respectfully submitted,**

FORREST CRESSEY & JAMES, LLC

/s/ S. Eliza James

Byron Forrest (La. Bar No. 35481)
Nicholas Cressey (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130

*24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA    JAMES*

19



Byron@fcjlaw.com
Eliza@fcjlaw.com
Tele: 504.605.0777
Fax:   504.322.3884

OF COUNSEL:
Barry S. Neuman (*Pro Hac Vice* application
to be submitted)
Erik Bolog
C. Allen Foster
Adrian Sneed
WHITEFORD TAYLOR PRESTON, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036
(202) 659-6800

**PLEASE SERVE:**
**LOUISIANA REGIONAL LANDFILL COMPANY**
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**WASTE CONNECTIONS BAYOU, INC.**
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**WASTE CONNECTIONS US, INC.**
Through its Agent for Service
Via long arm through its Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**APTIM CORP.**
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**PARISH OF JEFFERSON**
Through its Agent for Service
Parish Attorney for the Parish of Jefferson
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

**ABC CORP.**
*Address unknown at this time.*

**DEF CORP.**
*Address unknown at this time.*

**GHI CORP.**
*Address unknown at this time.*

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA  JAMES



JON A. GEGENHEIMER

04/09/2019 11:39:56 CERTIFIED TRUE COPY - Pg:20 of 21 - Jefferson Parish Clerk of Court - ID:1948302

0982

**JKL CORP.**
*Address unknown at this time.*

**MNO CORP.**
*Address unknown at this time.*

24th E-Filed: 04/09/2019 10:44:57 Case: 794011 Div:A Atty:035182 S ELIZA   JAMES



JON A. GEGENHEIMER

04/09/2019 11:39:56 CERTIFIED TRUE COPY - Pg:21 of 21 - Jefferson Parish Clerk of Court - ID:1948302

0983

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                                                    DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**WASTE CONNECTIONS US, INC.'S MEMORANDUM
IN SUPPORT OF JEFFERSON PARISH'S MOTION
TO TEMPORARILY LIFT STAY AND MOTION TO CONSOLIDATE**

Defendant Waste Connections US, Inc. ("Waste Connections"), through undersigned

counsel, appearing herein solely for the purpose of exercising its rights pursuant to La. C.C.P.

art. 1561 and without waiving any rights related to the Court's stay of this litigation, submit this

memorandum joining in Jefferson Parish's Motion To Temporarily Lift Stay And Motion To

Consolidate, filed on April 11, 2019. Waste Connections hereby adopts and incorporates, as if

copied herein *in extenso*, the position and arguments set forth by Jefferson Parish in that motion

and supporting memorandum.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: _____
David R. Taggart
(Louisiana Bar Roll No. 12626)
401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
(Louisiana Bar Roll No. 33991)
John B. Stanton
(Louisiana Bar Roll No. 36036)
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

BEVERIDGE & DIAMOND, P.C.
Michael G. Murphy (*pro hac vice*)
Megan R. Brillault (*pro hac vice*)
John H. Paul (*pro hac vice*)
477 Madison Avenue, 15th Floor

New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice to be submitted*)
1350 I Street, N.W., Suite 700
Washington, DC 20005
(202) 789-6000

Counsel for Defendant Waste Connections US, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above pleading on the following counsel

of record via PDF email this 18th day of April, 2019.

Byron M. Forrest
Nicholas V. Cressey
S. Eliza James
Forrest Cressey & James, LLC
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130

Barry S. Neuman
Adrian Snead
C. Allen Foster
Erik Bolog
Whiteford Taylor Preston, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036

OF COUNSEL

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                   DIVISION "J"

FREDERICK ADDISON, et al.,

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et al.

FILED:_____

_____
DEPUTY CLERK

## PLAINTIFFS FREDERICK ADDISON'S *ET. AL.* MOTION TO PERMANENTLY LIFT STAY

**NOW INTO COURT,** through undersigned counsel, come Plaintiffs, Frederick Addison, *et al.,* who move this Court for an Order permanently lifting the stay of this action previously ordered by this Court as part of its Judgment signed on February 6, 2019. That stay was predicated on the Court's conclusion that, under *Aisola v. Louisiana Citizens Prop. Ins. Corp.,* 2014-1709 (La. 10/14/15), 180 So. 3d 266, it was required to grant the Defendants' exception of *lis pendens* in light of four previously filed putative class action lawsuits pending in the United States District Court for the Eastern District of Louisiana. This Court's legal conclusion rested squarely on its factual finding that, "given the…proposed class definition [in the federal lawsuits] and the allegations [in this case], there is no way this Court can envision that those same plaintiffs wouldn't be members of the class if a class is so certified."[1]

However, in light of subsequent filings in the federal cases, this Court's previous factual finding as to the identity of parties between this lawsuit and the federal class action lawsuits has been completely vitiated – and *Asiola* mandates that the stay be permanently lifted.[2] On April 10, 2019, the plaintiffs in the now-consolidated federal cases filed an "Amended and Superceding [sic]

---

[1] Transcript of Jan. 24, 2019 Hearing on Exception of *Lis Pendens* ("Oral Argument Tr."), at 32.
[2] Plaintiffs disagreed (and disagree) with this Court's initial conclusion that *Asiola* was applicable in the first instance for reasons discussed at the January24th oral argument, but in any event the recent developments discussed herein compel lifting of the stay even under the Court's reading of *Asiola*.

Master Class Action Complaint."[3]  As discussed below, that new filing changed the definition of the putative class in a manner that, on its face, does *not* include every (or perhaps any) Plaintiff named in the instant case.[4]

As a result, this Court's previous conclusion, that "there is no way" plaintiffs herein would not also be members of the putative class in the federal cases, is no longer true. The critical factual underpinning for this Court's decision has been removed; there is no basis on which this Court could find that any judgment rendered in the federal class actions would act as *res judicata* as to the plaintiffs in this case; there is no longer any basis to apply the doctrine of *lis pendens* to this action; *Asiola* therefore mandates that the stay be lifted; and Art. 532 of the Louisiana Code of Civil Procedure provides no authority for this Court to stay this proceeding.[5] Consequently, and for the reasons more fully set forth below, Plaintiffs respectfully request that this Court permanently lift the stay of this proceeding.

## I.

On or about December 13, 2018, this case was initiated by the filing of a Petition for Damages and Injunctive Relief in the 24th Judicial District Court.  It was allotted to Division "J" of this Court.

## II.

On January 24, 2019, this Court held a hearing on exceptions of *lis pendens* filed by the Defendants Jefferson Parish and Waste Connections.

## III.

Following the hearing, this Court entered a Judgment dated February 6, 2019, which granting the *lis pendens* exceptions and ordered this case stayed pending the federal court's disposition of the  motions to remand or, alternatively, class certification.

---

[3] *See* Exhibit 1, *Elias Jorge "George" Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc., et al.*, EDLA Case No. 2:18-cv-07889, Rec. Doc. 48.

[4] *Id.*

[5] La. C.C.P. art. 532 states:
> When a suit is brought in a Louisiana court while another is pending in a court of another state or of the United States on the same transaction or occurrence, between the same parties in the same capacities, on **motion** of the defendant or on its own **motion**, the court may stay all proceedings in the second suit until the first has been discontinued or final judgment has been rendered.

## IV.

In granting the exceptions of l*is pendens*, this Court concluded that "binding authority" compelled that result, citing *Asiola*.[6]  Specifically, this Court stated:

> I think given the…proposed class definition [in the federal lawsuits] and the allegations alleged [in this case], *there is no way that this Court can envision that those same plaintiffs wouldn't be members of a class if a class is so certified*. That doesn't mean that they can't opt-out, obviously. But that's not the question now. The question is whether they are basically putative class members, and again, I can't see a way that they would not be. As such, I think the last elements with regards to *lis pendens*, again, whether there's an identity of the parties or the same parties is actually satisfied by virtue of that…*I don't see a way around these parties being included [in the federal class]* and, as such, I think you do have the same parties. Accordingly, I think the rules of *lis pendens* apply and, as such, the Court would grant the exception of *lis pendens*.[7]

## V.

By order dated March 14, 2019, the U.S. District Court for the Eastern District of Louisiana denied motions filed by plaintiffs in each of the four putative class actions to remand those cases to this Court.[8]

## VI.

By order dated April 5, 2019, the federal court consolidated the four class action lawsuits under the caption *Elias Jorje "George" Ichtech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, No. 2:18-cv-07889-SM-MBN.[9]

## VI.

On April 10, 2019, the plaintiffs in the four (now consolidated) federal cases filed an "Amended and Superceding [sic] Master Class Action Complaint."[10]  Critically, by virtue of this new filing, the proposed class definition has changed.  The four previously-used definitions have been superseded by the following:

> All persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance,

---

[6] Oral Argument Tr. at 31.

[7] Oral Argument Tr., at 32 (Emphasis added).

[8] *See Landry-Boudreaux v. Progressive Waste Solutions of La, Inc. et. al.*; EDLA Case No. 2:18-cv-09312 Order and Reasons, Rec. Doc. 23. *See also Thompson v. Louisiana Regional Landfill Comp, et. al..* EDLA Case No. 2:18-cv-18-8071, Order and Reasons, Rec. Doc. 23. *See also Bernard v. Progressive Waste Solutions of La, Inc. et. al.*, EDLA Case No. 2:18-cv-8218, Order and Reasons, Rec Doc. 25. *See also Ictech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.;* EDLA Case No. 2:18-cv-7889, Order and Reasons, Rec. Doc. 37.

[9] *See Ictech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.;* EDLA Case No. 18-7889, Rec. Doc. 47.

[10] Exhibit 1.

trespass, interference, with the enjoyment of their properties and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill into and/or onto their persons or properties (except for Defendants' employees and relevant court personnel)… A more precise definition of the proposed class including its geographic boundaries will be set forth in *Petitioners/proposed Class Representatives' class certification motion and supporting evidence.*[11]

## VII.

Because the proposed class is limited to persons within as-yet-undefined specific geographical boundaries, and who assert only the above-specified property-related claims, Defendants can no longer contend that all (or indeed any) of the Plaintiffs in this case are actually members of the putative class.

## VIII.

Further, Plaintiffs in this case have asserted a number of claims that are not within the scope of the federal class action at all, including (i) personal injury claims seeking damages for bodily harm, and fear, anguish and mental pain and suffering; (ii) claims for unconstitutional takings of property and violation of due process; and (iii) claims for lost wages and medical expenses; (iv) claims for medical monitoring. It is now clear that none of those claims will be adjudicated in the federal cases, and any judgment entered in those putative class actions would have no effect on these claims.

## IX.

This critical distinction would be even starker if this Court were to grant Defendants' pending motions to consolidate this case with later-filed mass action lawsuits involving the Jefferson Parish Landfill. Two of the lawsuits specifically allege that a total of fifty-two named plaintiffs suffer from respiratory diseases Including asthma, COPD and chronic bronchitis as a result releases from the Jefferson Parish Landfill.[12]

---

[11] *Id.*

[12] *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*, docket No. 792-502 (Division "O"); and *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.,* Docket No. 793-088 (Division "O").

## X.

In light of the revised definition of the proposed class – a definition that explicitly leaves open the geographic boundaries of the class and is expressly limited to property-related damages that do not include constitutional claims – this Court's previous finding that there is "no way" that Plaintiffs in this action are not members of the putative class in the federal cases is now simply incorrect.  Indeed, given the revised (and tentative) class definition contained in the new class action complaint, there is "no way" to conclude that any specific Plaintiffs in this case is a member of the putative class.

## XI.

Since there is no longer any basis to assume an identity of parties between this action and the federal class actions, *Asiola* mandates that the stay in this case be lifted. Since neither the parties nor the specific claims can be assumed to be identical, there is also no basis to conclude that any disposition of the federal cases would act as *res judicata* with respect to the parties and claims in this case.

## XII.

Consequently, the pending federal cases do not provide any basis for applying the doctrine of *lis pendens* to this case.

## XIII.

Accordingly, the stay of this proceeding previously entered by this Court must be permanently lifted, and this case allowed to proceed.

## XIV.

Plaintiffs aver that the parties will be in Court for a related hearing on May 9, 2019 and request this matter be set and heard on that date.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter an Order permanently lifting the stay in this matter and allowing this case to proceed in accordance with the Louisiana Code of Civil Procedure.

Respectfully submitted,

**FORREST CRESSEY & JAMES, LLC**

*/s/ S. Eliza James*
_____
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com


*/s/ Barry S. Neuman*
_____
Barry S. Neuman (Admitted *Pro Hac Vice*)
Adrian Snead (Admitted *Pro Hac Vice*)
**WHITEFORD    TAYLOR    PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800


**OF COUNSEL:**
C. Allen Foster
Erik Bolog
**WHITEFORD    TAYLOR    PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

<u>**CERTIFICATE OF SERVICE**</u>

  I S. Eliza James, hereby certify that the foregoing Motion was served on all parties of record via email and Federal Express this 23 day of April, 2019.

<em>/s/ S. Eliza James</em>

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, Louisiana 70002
Fax: 504- 838-9901

WASTE CONNECTIONS, U.S.
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163
Fax: 504- 596-6301

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005
Fax: 202-789-6000

Michael D. Murphy
Megan R. Brillault
John H. Paul
477 Madison Avenue
15th Floor
New York, NY 10022

APTIM CORP.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**NO. 790-369**                                        **DIVISION "J"**

**FREDERICK ADDISON, et al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et al.**

**FILED:**_____                 _____

                                                  **DEPUTY CLERK**

**<u>ORDER</u>**

BASED ON THE FOREGOING MOTION TO LIFT STAY:

Defendants are hereby ordered to show cause on May 9, 2019 at 9:00 A.M. as to why this

Motion should not be granted and the stay, previously entered in this matter, should not be

permanently lifted.

Gretna, Louisiana this _____ day of _____, 2019.

                                                  _____

                                                  **Hon. Judge Division "J"**

**PLEASE SERVE ALL COUNSEL OF RECORD**
**AND UNREPRESENTED PARTIES WITH A**
**SIGNED COPY OF THIS ORDER BY U.S. MAIL.**

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**NO. 790-369**                                        **DIVISION "J"**

**FREDERICK ADDISON, et al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et al.**


**FILED:**_____          _____
                                                                    **DEPUTY CLERK**


## PLAINTIFFS, FREDERICK ADDISON'S, E*T. AL.* MEMORANDUM IN SUPPORT OF THEIR MOTION TO PERMANENTLY LIFT STAY

### MAY IT PLEASE THE COURT:

Plaintiffs Frederick Addison, *et al.,* through undersigned counsel, submit this memorandum in further support of their Motion to Permanently Lift Stay.  As discussed in their motion and as further discussed below, the stay is no longer supportable because amended pleadings filed by plaintiffs in putative class actions pending in federal court now make plain that there is no basis to find (as this Court found in granting Defendants' *lis pendens* exceptions) that there is an identity of parties as between this case and the federal class actions.  Consequently, the doctrine of *lis pendens* does not apply here, and there is therefore no basis to stay this proceeding.

### I.     FACTS AND PROCEDURAL HISTORY

This action was initiated on behalf of more than eighty named plaintiffs, all residents of Jefferson Parish, who have alleged diminution in property value, physical harm and fear, anguish and mental pain and suffering caused by noxious and harmful odors and chemicals emanating from the Jefferson Parish Landfill.[1]  Prior to this action, four putative class action lawsuits were initiated in the 24th Judicial District court, and subsequently removed to the United States District Court

---

[1] *See* Petition for Damages and Injunctive Relief.

1

for the Eastern District of Louisiana.[2]  In one of the matters, the *Landry-Bordeaux* case, the putative class was defined as all residents of Jefferson Parish who have suffered "legally cognizable damages in the form of personal injury, lost wages, nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)' acts that caused the emission of noxious odors and gases into and unto their persons and properties."[3]  As the putative class encompassed both personal and property injury, the complaint in that action could be read to include all of the named plaintiffs in the instant lawsuit.

Eventually, the defendants in all four class action lawsuits removed those cases to federal court, and the plaintiffs in those cases filed motions to remand the cases to state court, which the defendants opposed. The federal court denied the motions to remand on March 14, 2019.[4]

On January 24, 2019, this Court held oral argument on exceptions of *lis pendens* filed by the Parish and Waste Connections in this case.  Because the four class action lawsuits were then pending in federal court and not state court,  if the doctrine of *lis pendens* applied, the Court had discretion under Article 532 to stay (or not stay) this lawsuit.[5] At the conclusion of the January 24, 2019 hearing, this Court granted Defendants' *lis pendens* exception and exercised its discretion to stay this case pending disposition of class certification issues in the other cases.  An order to that effect was signed on February 6, 2019.

In granting the exception, this Court explained that it was bound by the decision in *Asiola v. Louisiana Citizens Prop. Ins. Corp.,* 2014-1708 (La. 10/14/15), 180 Sou. 3d, 266 because, among other things, the parties to this action and the class actions are identical.  As to identity of parties, this Court stated:

---

[2]  *See Ichtech-Bendeck v. Progressive Waste Solutions, et al.*, No. 2:18-cv-07889; *Thompson v. Louisiana Regional Landfill Company,* No. 2:18-cv-08071; *Bernard v. Progressive Waste Solutions of LA, Inc.*, No. 2:18-cv-08218; *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,* No. 2:18-cv-09312.
[3]  *See* Exhibit 2.
[4]  *See Landry-Boudreaux v. Progressive Waste Solutions of La, Inc. et. al.*; EDLA Case No. 2:18-cv-09312 Order and Reasons, Rec. Doc. 23. *See also Thompson v. Louisiana Regional Landfill Comp, et. al.*. EDLA Case No. 2:18-cv-18-8071, Order and Reasons, Rec. Doc. 23. *See also Bernard v. Progressive Waste Solutions of La, Inc. et. al.*, EDLA Case No. 2:18-cv-8218, Order and Reasons, Rec Doc. 25. *See also Ictech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.;* EDLA Case No. 2:18-cv-7889, Order and Reasons, Rec. Doc. 37.
[5]  At the January 24, 2019 hearing, this Court noted the possibility that the federal court might grant plaintiffs' motion to remand the class action lawsuits back to this Court – in which case the doctrine of *lis pendens*, if applicable, might require outright dismissal of this action under Article 531. Oral Argument Tr. at 33.  As the federal court has now denied the motions to remand, Article 531 does not and will not apply here.

2

I think given the…proposed class definition [in the federal lawsuits] and the allegations alleged [in this case], *there is no way that this Court can envision that those same plaintiffs wouldn't be members of a class if a class is so certified.* That doesn't mean that they can't opt-out, obviously. But that's not the question now. The question is whether they are basically putative class members, and again, I can't see a way that they would not be. As such, I think the last elements with regards to *lis pendens*, again, whether there's an identity of the parties or the same parties is actually satisfied by virtue of that…*I don't see a way around these parties being included [in the federal class]* and, as such, I think you do have the same parties. Accordingly, I think the rules of *lis pendens* apply and, as such, the Court would grant the exception of *lis pendens.*[6]

On April 5, 2019, the Eastern District of Louisiana consolidated all four putative class actions.[7]  On April 10, 2019, the plaintiffs in the four (now consolidated) federal cases filed an "Amended and Superceding [sic] Master Class Action Complaint."[8]  Critically, by virtue of this new filing, the proposed class definition has changed. The four previously-used definitions have been superseded by the following:

All persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference, with the enjoyment of their properties and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill into and/or onto their persons or properties (except for Defendants' employees and relevant court personnel)… ***A more precise definition of the proposed class including its geographic boundaries will be set forth in Petitioners/proposed Class Representatives' class certification motion and supporting evidence.***[9]

## II.    Law and Argument

La. C.C.P. art. 532 states,

When a suit is brought in a Louisiana court while another is pending in a court of another state or of the United States on the same transaction or occurrence, between the same parties in the same capacities, on motion of the defendant or on its own motion, the court may stay all proceedings in the second suit until the first has been discontinued or final judgment has been rendered.

The new compliant in the federal actions establishes that there is no identity of parties between those actions and the instant case, a key element of the *lis pendens* doctrine and therefore a predicate to Art. 532. As a result, the stay must be lifted so that this case can proceed.

---

[6] Oral Argument Tr., at 32 (Emphasis added).
[7] *See Ictech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.;* EDLA Case No. 18-7889, Rec. Doc. 47.
[8] *See* Exhibit 1.
[9] *Id.*

First, the highlighted language makes it clear that even the *proposed* class, including its geographic boundaries, has not yet been defined, but is rather in flux and uncertain. It is therefore impossible to conclude that all of the plaintiffs – or even any of the plaintiffs – in this case will fall within the class definition in the consolidated class actions. The highlighted language entirely vitiates all of the preceding verbiage which purports to describe the class.

Second, to the extent that the first portion of the definition is to be given any weight, it proves that there is *not* an identity of plaintiffs. As noted above, the proposed class definition in the *Landry-Bordeaux* complaint as initially filed included people who suffered from both physical and property damage -- residents of Jefferson Parish who have suffered:

> …legally cognizable damages in the form of personal injury, lost wages, nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)′ acts that caused the emission of noxious odors and gases into and unto their persons and properties.[10]

As such, the initial Petition in the *Landry-Bordeaux* putative class arguably included all plaintiffs in this lawsuit, which alleges both property and personal injury. However, the revised Master Complaint no longer includes people who have suffered personal injury within the class definition. Rather, the class is limited to those who have suffered "nuisance, trespass, interference with enjoyment of their properties, and or diminution in the value of their properties…."[11] These are all claims dealing with harm to *property* interests. In contrast to the original class definition in *Landry-Bordeaux*, they do not include "damage in the form of personal injury."[12] Yet Plaintiffs in this case explicitly allege and seek redress for personal injury damages.  Thus, to the extent  the new "master" class definition provides any guidance, it demonstrates that the class clearly does not encompass all (or perhaps any) of the plaintiffs in this case.[13]  This critical distinction would be even starker if this Court were to grant Defendants′ pending motions to consolidate this case with

---

[10] *See* Exhibit 2.
[11] *See* Exhibit 1.
[12] *Id.*
[13]  Moreover, it is quite possible if not likely that the narrowing of the class definition to exclude personal injury in the first part of the definition and the ensuing caveat that the geographic boundaries of the class are yet to be defined are integrally related, for reasons that bear directly on this motion.  Viewing the revised definition in its entirety, it appears that plaintiffs' counsel in the consolidated class actions are seeking to limit the class to property injury claimants, then draw a geographic boundary or boundaries in a manner that permits a quick settlement of those property injury claims from a fund that would be allocated to class members based on proximity to the Landfill.  Of course, any such settlement would by definition not include, and not resolve, claims for personal injury, anguish, suffering, lost wages, medical monitoring and the like that are raised by plaintiffs in the instant lawsuit.

later-filed mass action lawsuits involving the Jefferson Parish Landfill. Two of the lawsuits specifically allege that a total of fifty-two named plaintiffs suffer from respiratory diseases Including asthma, COPD and chronic bronchitis as a result releases from the Jefferson Parish Landfill.[14]

And most important, given the lack of identity of parties, the *Asiola* decision, which this Court believed to be binding commands that the stay be dissolved. As *Asiola* makes plain, the doctrine of *lis pendens* rests upon the principle of *res judicata*. That is, *lis pendens* applies to a second-filed action *only if* the judgment in the first action "would be conclusive and binding" on the plaintiffs in the second case. *Asiola,* 180 So. 3d at 271. Because the plaintiffs in the federal class action lawsuits do not allege or seek redress for personal injuries, it is now clear that any judgment rendered in those cases will not be conclusive and binding on Plaintiffs herein. This is also the case even with respect to alleged property damage, as the plaintiffs in the pending federal cases have not alleged a constitutional taking of their property, as Plaintiffs have alleged in this case.

There is, in short, absolutely no basis for the Defendants to continue to argue that that any judgment in the class actions will be *res judicata* as to any Plaintiff in this case.

Because the Court's authority to stay this litigation under Article 532 is predicated entirely on the applicability of *lis pendens* to this case, it follows that this Court has no authority to stay these proceedings, and therefore the Court should immediately and permanently lift the stay it previously put in place, and allow this case to proceed in accordance with the Louisiana Code of Procedure.[15]

### III.    CONCLUSION

It is respectfully submitted that this Court should grant Plaintiffs' motion and permanently lift the stay of this case entered so as to allow this action to proceed in accordance with the Louisiana Code of Procedure.

---

[14] *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*, docket No. 792-502 (Division "O"); and *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.,* Docket No. 793-088 (Division "O").

[15]   Defendants have asked this Court to lift the stay *temporarily* so as to allow it to consolidate this action with several subsequently filed actions filed in this Court involving the Jefferson Parish Landfill. We do not address here whether such a request for temporary lifting of the stay for such a purpose is appropriate. In our view, that request is in any event moot as the stay should be permanently be lifted for the reasons discussed herein. Plaintiffs reserve the right to file an opposition to Defendants' Motion to Consolidate within the timeframe provided by the Uniform District Rules.

Respectfully submitted,

**FORREST CRESSEY & JAMES, LLC**

*/s/ S. Eliza James*

_____
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com

*/s/ Barry S. Neuman*

_____
Barry S. Neuman (Admitted *Pro Hac Vice*)
Adrian Snead (Admitted *Pro Hac Vice*)
**WHITEFORD   TAYLOR   PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

**OF COUNSEL:**
C. Allen Foster
Erik Bolog
**WHITEFORD   TAYLOR   PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

6

**CERTIFICATE OF SERVICE**

I, S. Eliza James, hereby certify that the foregoing Motion was served on all parties of record via email or Federal Express this 23 day of April, 2019.

*/s/ S. Eliza James*

_____

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, Louisiana 70002
Fax: 504- 838-9901

WASTE CONNECTIONS, U.S.
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163
Fax: 504- 596-6301

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005
Fax: 202-789-6000

Michael D. Murphy
Megan R. Brillault
John H. Paul
477 Madison Avenue
15th Floor
New York, NY 10022

APTIM CORP.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company

7

501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

8

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**<br>**Plaintiff** | **CIVIL ACTION**<br><br>**NO. 18-7889**<br>**c/w 18-8071,** |
| **VERSUS** | **18-8218, 18-9312** |
| **PROGRESSIVE WASTE SOLUTIONS OF LA, INC., ET AL.,**<br>**Defendants** | **SECTION: "E" (5)** |

*Applies to: All Cases*

### AMENDING AND SUPERCEDING MASTER CLASS ACTION COMPLAINT FOR DAMAGES

NOW COME Plaintiffs ELIAS JORGE "GEORGE" ICTECH-BENDECK and SAVANNAH THOMPSON and NICOLE M. LANDRY-BOURDREAUX, and LARRY BERNARD, SR. and MONA BERNARD ("PLAINTIFFS"), as individuals, and on behalf of themselves, all others similarly situated, who, pursuant to the Order of the Court, file this Amending and Superseding Class Action Master Complaint for Damages seeking class certification, and complain and allege on information and belief the following against Waste Connections Bayou, Inc. f/k/a Progressive Waste Solutions of LA, Inc., Waste Connections US, Inc., Louisiana Regional Landfill Company, Inc. f/k/a IESI LA Landfill Corporation and Aptim Corporation ("Waste Connection Defendants"); and Jefferson Parish:

### PARTIES

1. PLAINTIFFS ELIAS JORGE "GEORGE" ICTECH-BENDECK and SAVANNAH THOMPSON and NICOLE M. LANDRY-BOURDREAUX, and LARRY

**EX. 1**

BERNARD, SR. and MONA BERNARD were at all relevant times persons of the full age of majority and residents of and domiciled in the Parish of Jefferson, state of Louisiana.

    2.    Made Defendants herein are:

        a.    WASTE CONNECTIONS BAYOU, INC., f/k/a PROGRESSIVE WASTE SOLUTIONS OF LA, INC., a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana;

        b.    WASTE CONNECTIONS, US, INC., a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana;

        c.    LOUISIANA REGIONAL LANDFILL COMPANY, f/k/a IESI LANDFILL CORPORATION, INC., a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana;

        d.    APTIM CORPORATION, a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana;

        e.    IESI-LA LANDFILL CORPORATION, a foreign corporation authorized to do and doing business in the Parish of Jefferson, state of Louisiana; and

        f.    PARISH OF JEFFERSON, a Louisiana municipal parish in the state of Louisiana.

    3.    Defendants are jointly, severally and in solido indebted unto Plaintiffs/Class Representatives and the persons they seek to represent, for general and special damages suffered by Petitioners and all those similarly situated in a sum sufficient to full compensate him/her/them for all of his/her/their damages, together with legal interest, and for all costs as described herein.

## JURISDICTION and VENUE

    4.    This Honorable Court has ruled that it has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy

exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business., and because no relevant exception to CAFA exists.

5.    Venue is proper in this District as it is where the conduct complained of herein occurred and is also where the injury occurred and where the Removing Defendants removed the underlying actions filed in Louisiana state court.

## FACTUAL ALLEGATIONS

6.    On or about August 1, 2017, the purported "sanitary solid waste" facility/landfill owned by Defendant Jefferson Parish located in Waggaman, Louisiana began to emit noxious odors, believed to consist primarily of methane and hydrogen sulfide gases, into areas surrounding the Jefferson Parish Landfill ("JP Landfill"). The surrounding neighborhoods, including but not limited to, those located in Waggaman, Louisiana, River Ridge, Louisiana and Harahan, Louisiana experienced said noxious odors on various days and at various times of the day and night depending upon the then prevailing wind direction crossing over and/or otherwise emanating from the site of the JP Landfill.

7.    At relevant times herein, Defendants, Waste Connections Bayou, Inc. f/k/a Progressive Waste Solutions of LA, Inc., Waste Connections US, Inc., Louisiana Regional Landfill Company, Inc. f/k/a IESI LA Landfill Corporation and Aptim Corporation ("Waste Connection Defendants") have co-managed and/or co-operated the JP Landfill and have been paid by Defendant Jefferson Parish to do so pursuant to the terms and conditions of a Contract to provide services to operate, manage, and/or maintain the Jefferson Parish Landfill (the "Landfill Operating Agreement").

3

8.      Following complaints by residents and putative class members, the Louisiana Department of Environmental Quality ("LDEQ") placed one or more mobile air monitoring labs in the area, and subsequently the LDEQ released a report that found higher-than-normal levels of methane and hydrogen sulfide in the areas surrounding the JP landfill.

9.      On or about July 23, 2018, Jefferson Parish President Mike Yenni outlined a number of actions the parish has taken to eliminate noxious odors that Jefferson Parish officials believe are coming from Jefferson Parish's landfill in Waggaman, including declaring the landfill's private operator [LRLC] to be in breach of its contract with Jefferson Parish, and accepting the resignation of the parish's landfill engineer.

10.     On or about July 23, 2018, Jefferson Parish President Mike Yenni stated that "properly operated landfills do not (produce) persistent offsite odors, and the corrective actions … are essential."  Moreover, on or about the same date (and at the same news conference), Keith Conley (Yenni's chief aid) admitted that the Jefferson Parish Landfill was a source of the noxious odors at issue.

11.     On information and belief, LRLC is able to collect only 20 percent of the gases produced by the landfill as a result of the antiquated leachate collection system, leaving much, if not all, of the rest to escape through the ground and into the air.

12.     The noxious odors have been so bad and/or persistent that on or about July 9, Jefferson Parish announced the creation of a hotline for citizens to report the stench.

13.     On or about July 9, 2018, in response to various complaints by residents, Jefferson Parish issued a formal news release, which stated in pertinent part as follows:

> Jefferson Parish recognizes there have been odor issues and complaints from residents in the River Ridge, Harahan and Waggaman area located along the river. As Jefferson Parish owns and operates one of the three landfills in Waggaman which

4

> services Jefferson Parish residents, we do realize we may be a
> contributory factor to the odor issue. Jefferson Parish is committed
> to take all steps necessary to identify the source or sources
> responsible and mitigate those sources. As of July 2, 2018,
> Jefferson Parish has advised our contractor to stop taking liquid
> waste and other material believed to have the potential over time to
> create an odor.

14.   The improper emission of the noxious odors from the Jefferson Parish Landfill into and onto neighboring properties located in Waggaman, Harahan and River Ridge since approximately August 1, 2017, has been pervasive and persistent, continues to occur, and is likely to continue into the foreseeable future such that the emission has been and will be a continuous tort into the foreseeable future.   Upon information and belief, the Jefferson Parish Landfill has been and is still being owned and/or co-operated by the defendant-operators with inadequate and/or antiquated leachate and/or gas collection systems such that landfill leachates and gases are emanating from the site improperly, and at levels that constitute a nuisance to neighboring persons and properties.   Further, the Jefferson Parish Landfill has been cited by the Louisiana Department of Environmental Quality (LDEQ for violation of relevant environmental rules and/or regulations.

15.   Defendants actions/inactions are the sole proximate cause of Plaintiff's and numerous other similarly situated persons' damages, which bad acts include but are not limited to the following:

    a)   Failing to maintain and/or operate the Jefferson Parish Landfill in such a manner
         such that noxious odors would not emanate and create a nuisance for its
         surrounding neighbors of Jefferson Parish;

b) Failing to maintain and/or operate and/or design the Jefferson Parish Landfill such that noxious odors would not interfere with the enjoyment of its neighbors' properties and be the cause of other legally cognizable damages to its neighbors;

c) Failing to operate the Jefferson Parish Landfill in such a way so as to prevent the emission of noxious odors into the surrounding areas;

d) Failing to maintain, attain, and/or implement measures at the Jefferson Parish Landfill to minimize the existence of gaseous emissions and/or leachate;

e) Failing to timely and/or efficiently correct the emission of noxious odors from the Jefferson Parish Landfill so as to not cause harm to others, and in particular, plaintiffs herein and those similarly situated;

f) Other action/inaction in violation of Louisiana Civil Code Article (La. C.C. art) 667 and Article 669's "rules of the police [LDEQ}", "customs of the place", and/or in violation of industry standards and/or in violation of the laws, rules, regulations and/or requirements of Louisiana as promulgated by the LDEQ and/or by Jefferson Parish, including but not limited to, those actions and/or inactions as outlined herein as well as others which will be proven at the adjudication of this matte

g) Defendants' actions/inactions are in violation of La. C.C. arts. 667, 669, 2315, 2316, 2317, 2317.1 and 2322..

The conduct of Defendants is equally applicable to all class members.

## **CLASS ALLEGATIONS**

16. Plaintiffs brought the underlying matters in State Court seeking class certification pursuant to La. C.C.P. Art. 591, *et seq*. on behalf of a class of plaintiffs similarly situated, as

6

plaintiffs herein represents that they have sustained damages common to themselves and all those similarly situated who incurred legally cognizable harm arising from the noxious emissions from the Jefferson Parish landfill, and/or such acts of negligence, nuisance, and trespass as may be proven upon trial.

17.    The proposed Class Representative(s) herein seek to represent the following proposed Class:

> All persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill into and/or onto their persons and/or properties (except for Defendants' employees and relevant court personnel).
> A more precise definition of the proposed class, including its geographic boundaries, will be set forth in Petitioners/proposed Class Representatives' class certification motion and supporting evidence.

18.    The proposed Class is so numerous that joinder is impracticable.  The disposition of the claims asserted herein through this proposed class action is the most efficient means of handling these claims and the best way to insure that the interests of the proposed Class Members are preserved, and class certification will also benefit the Court in the efficient adjudication of the claims asserted.

19.    There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

a)  Whether Defendants negligently maintained and/or operated the JP Landfill;

b)  Whether Defendants caused and/or contributed to the emission of noxious gases from the JP Landfill;

7

c) Whether Defendants negligently failed to take reasonable measures to prevent or otherwise minimize and contain the emission of noxious odors from the JP Landfill:

d) Whether Defendants collectively and/or individually owed a duty to the proposed Class Representatives and the Class they seek to represent to maintain the JP Landfill and operate the Landfill in a prudent manner so as to prevent the release/emission of noxious odors in and around the areas neighboring the JP Landfill.

e) Whether Defendants breached their respective duties owed to Petitioners and the Class they seek to represent;

f) Whether Defendants were negligent and whether such negligence was a proximate cause of the damages sustained by Petitioners and the proposed Class;

g) Whether Defendants were grossly negligent and whether such gross negligence was a proximate cause of the damages sustained by Petitioners and the proposed Class;

h) Whether Defendants violated applicable state and/or federal operating regulations;

i) Whether Defendants knew or should have known that their activities would cause legally cognizable damage to Petitioners and the proposed Class; and

j) Whether Defendants (or any of them) are strictly liable and/or at fault and whether their actions are the proximate cause of the damages complained herein.

20. Defendants engaged in a common course of conduct that raises common questions of law and fact applicable to all proposed class members and which predominate over individual questions.

21.     Plaintiffs will fairly and adequately represent the interests of the class, and the class representatives are represented by skilled attorneys who have experience handling class actions, as well as federal mass tort litigations, and who will handle this action in an expeditious and economic manner, and all in the best interests of all members of the class.

22.     Class Representatives and the Class Members have suffered similar harm as a result of Defendants' actions and/or inactions.

23.     This class may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered.  It is not necessary for the court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class.

24.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of the claims of all proposed Class Members is impracticable as there are believed to be thousands of similarly situated individuals and entities who sustained damages that were proximately caused by the negligence, fault, gross negligence, strict liability, willful misconduct, and/or other actions of one or more of the Defendants. Even if every Class Member could afford the cost of individual litigation, the judicial system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed.  Individual litigation presents a potential for inconsistent or contradictory judgments, the prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants conduct alleged herein. By

9

contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

25. The various claims asserted in this action are also certifiable under the provisions of Rules 23(b)(l), 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

a) The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants;

b) The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests;

c) The Defendants opposing the class have acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; and

d) The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION (NEGLIGENCE AND/OR GROSS NEGLIGENCE)

26. The Defendants owed a duty to Plaintiffs and the proposed Class Members to refrain from action that causes damage to Plaintiffs' and Plaintiffs' property, and of those they seek to represent, including the right to use and enjoy their property. The incidents descried

above that caused damage to Plaintiffs and Class Members were a proximate result of the negligence, fault, strict liability, gross negligence and/or misconduct of Defendants.

## SECOND CAUSE OF ACTION – NUISANCE

27.    Defendants created a nuisance through the emission of noxious odors into the air in and around the JP Landfill, which unreasonably interferes with Plaintiffs' use and enjoyment of their property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that a copy of this Amending and Superseding Master Complaint be served on each Defendant, and that they each be cited to answer same within the delays allowed by law, and that, after due proceedings are had, that the class be certified and that appropriate Notice be issued, and that judgment against Defendants be granted in favor of Plaintiff and all those similarly situated be entered in an amount to be determined at trial by the trier of fact reasonable in the premises for harms, damages, and losses as set forth above, special damages, applicable penalties (if any), costs, expert witness fees, attorneys' fees, filing fees, pre- and post-judgment interest, all other injuries and damages as shall be proven at trial, and such other further relief as the Court may deem appropriate, just, and proper as the law allows.

Respectfully submitted,

/s/ Val P. Exnicios
**Val Patrick Exnicios, TA (LA Bar #19563)**
**Hon. Max N. Tobias, Jr. (LA Bar # 12837)**
**Frances Lacy Radcliff (LA Bar #38061)**

11

*Liska, Exnicios & Nungesser*
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937

***FAVRET, DEMAREST, RUSSO,
LUTKEWITTE & SCHAUMBURG***
A Professional Law Corporation
**Seth H. Schaumburg, No. 24636**
**Anthony J. Russo, No. 8806**
**Dean J. Favret, No. 20186**
**Angela C. Imbornone, No. 19631**
**Lauren A. Favret, No. 33826**
1515 Poydras Street, Suite 1400
New Orleans, Louisiana 70112
Telephone: (504) 561-1006
Facsimile: (504) 523-0699

**Douglas Hammel, LA BAR #( 26915)**
Attorney at Law
3129 Bore Street
Metairie, La. 70001
504.304.9952 phone
504.304.9964 fax
***Attorneys for Plaintiff***

EDWIN M. SHORTY, JR. & ASSOC., APLC

By:     *Isl* Edwin M. Shorty, Jr.
        Edwin M. Shorty, Jr., T.A.
        Louisiana Bar Roll No. 28421

Hope L. Harper
Louisiana Bar Roll No. 33173
Dwayne P. Smith
Louisiana Bar Roll No. 21382 650
Poydras Street, Suite 2515 New
Orleans, Louisiana 70130 Phone:
(504) 207-1370
Fax: (504) 207-2850

THE KING LAW FIRM
Freddie King, III
Louisiana Bar Roll No. 33923

12

300 Huey P. Long Avenue, Suite E
Gretna, Louisiana 70053
Phone: (504) 982-5464
Fax: (504) 617-7755

*Counsel for Nichole M. Landry-Boudreaux*

IRPINO AVIN & HAWKINS

By:     */s/* Pearl A. Robertson
        Pearl A. Robertson
        Louisiana Bar Roll No. 34060

Anthony D. Irpino
Louisiana Bar Roll No. 24727
Pearl Robertson
Louisiana Bar Roll No. 34060
2216 Magazine Street
New Orleans, Louisiana 70130 Ph.
(504) 525-1500
Fax. (504) 525-1501

*Counsel for Savannah Thompson*

THE LAW OFFICE OF BRUCE C. BETZER A
PROFESSIONAL LIMITED LABILITY
COMPANY

By:     */s/* Bruce C. Betzer
        Bruce C. Betzer
        Louisiana Bar Roll No. 26800

3129 Bore Street
Metairie, Louisiana 70001
Telephone: (504) 832-9942
Facsimile: (504) 304-9964

*Counsel for Larry Bernard, Sr.*



835

$850

## 24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

No. 787-081

NICOLE M. LANDRY-BOUDREAUX

DIVISION K

### VERSUS

### PROGRESSIVE WASTE SOLUTIONS OF LA, INC., WASTE CONNECTIONS, US, INC., IESI LA LANDFILL CORPORATION, LOUISIANA REGIONAL LANDFILL COMPANY, INC. APTIM CORPORATION, AND JEFFERSON PARISH

FILED:_____          _____

                                        DEPUTY CLERK

### CLASS ACTION PETITION FOR DAMAGES

The petition of Nicole M. Landry-Boudreaux, a person of the full age of majority and a resident of and domiciled in the Parish of Jefferson, State of Louisiana, on behalf of himself and all other similarly situated persons residing in and/or domiciled in Jefferson Parish, in the area near the Jefferson Parish landfill, herein represent:

I.

Made Defendants herein are:

1. PROGRESSIVE WASTE SOLUTIONS OF LA, INC., a foreign corporation authorized to do and doing business in this Parish and State;

2. WASTE CONNECTIONS, US, INC., a foreign corporation authorized to do and doing business in this Parish and State;

3. IESI LA LANDFILL CORPORATION, a foreign corporation authorized to do· and doing business in this Parish and State;

4. LOUISIANA REGIONAL LANDFILL COMPANY, INC., a foreign corporation authorized to do and doing business in this Parish and State;

5. APTIM CORPORATION, a foreign corporation authorized to do and doing business in this Parish and State;

6. JEFFERSON PARISH, a Louisiana municipal parish in the State of Louisiana.

Ex. 1

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY jr

II.

Defendants are jointly, severally and in solido indebted unto Plaintiff and all those similarly situated, for general and special damages suffered, with legal interest and all costs, resulting from the improper operation of the Jefferson Parish landfill.  At all times pertinent the Jefferson Parish Landfill referred to in the instant litigation is located in Waggaman, Louisiana.

III.

Under information and belief that the sanitary solid waste landfill owned and operated by the Defendants began to emit noxious odors.  Said odors are believed to consist primarily of methane and hydrogen sulfide gases.  Said odors are being emitted into areas surrounding the Jefferson Parish landfill. The noxious odors continue to date and are likely to continue into the future such that the emissions have been and will continue to be a continuous tort.

Plaintiffs allege that the noxious odors have emanated from the landfill since August of 2017 and further allege that discovery may reveal that the emissions started before the aforementioned date.

IV.

The JP Landfill is owned by Defendant JEFFERSON PARISH and is, and/or was at all relevant times, being operated pursuant to contracts issued by JEFFERSON PARISH to Defendants IESI LA LANDFILL CORPORATION, (hereinafter IESI-LA)  a wholly owned subsidiary of Defendant PROGRESSIVE WASTE SOLUTIONS OF LA, INC., that was in turn acquired by Defendant WASTE CONNECTIONS, US, INC.

IESI-LA is controlled by its parent corporations PROGRESSIVE WASTE SOLUTIONS, OF LA, INC. and/or WASTE CONNECTIONS, US, INC. and is the "alter ego" of said parent corporation(s) and operates without autonomy and only pursuant to the directions, policies and procedures of its parent corporation(s); as such, said parent corporation(s) are liable for all negligent and/or otherwise bad acts of its wholly owned subsidiary(ies), IESI-LA. and/or LOUISIANA REGIONAL LANDFILL COMPANY,

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY jr

INC..

IESI-LA operated and managed the JP landfill from the date of the initial omissions of noxious odors in August of 2017 and it is thus liable for all damages sustained from August of 2017 to the date of its corporate name change, to wit: IESI-LA recently changed its corporate name in June, 2018 to LOUISIANA REGIONAL LAND FILL COMPANY, INC.(hereinafter LRLC) and LRLC is the current operator and manager (and/or mis-manager) of the JP Landfill and is thus liable for all damages sustained since its corporate name change to date of just and equitable adjudication, and into such future date as the emissions cease, if ever.

Defendant APTIM CORPORATION, based upon information and belief manages pursuant to contract and/or subcontract, the gas and/or leachate collection system(s) of JP Landfill that, in addition to the site's liquid industrial waste, residential sewerage, commercial waste, and improperly covered solid waste is at least one "point source" of the noxious odors and gases emanating from the JP landfill.

V.

The sole proximate cause of the above described emanations of noxious odors and gases is and was the strict liability, breach of contractual obligations and/or negligent acts of Defendants, which strict liability, breach of contractual obligations and/or negligence consists more particularly, but not exclusively, of the following:

1. Violation of Civil Code Articles 667, 669, 2315, 2316, 2317, 2317.1, 2322 and applicable environmental rules and regulations promulgated by the State of Louisiana and/or Louisiana Department of Environmental Quality (LDEQ);

2. Violation of rules and regulations promulgated by the Environmental Protection Agency and rules under the Clean Water Act;

3. Failure to properly operate and/or manage a solid waste "sanitary" landfill in a manner that does not cause harm to others, and in particular, to its neighbors;

4. Failure to take all reasonable action to avoid causing harm as set forth herein;

5. Failure to prevent the emission of noxious and harmful odors and gases into and onto

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY jr

the persons and properties of the surrounding neighborhoods;

6. Breach of contractual obligations of which Plaintiff and all those similarly situated are third party beneficiaries of the contract(s) between Defendant Jefferson Parish and all other Defendants named herein that cause(d) harm to Plaintiff and all those similarly situated that he seeks to represent.

VI.

As a consequence of the acts and/or failures to act and/or breach of duties and/or obligations and resulting legally cognizable damages, Plaintiff and all those similarly situated, sustained damages as follows:

A. Past, present and future nuisance damages;

B. Past, present and future diminution in property value;

C. Bodily injury;

D. Medical bills;

E. Lost wages.

VII.

Pursuant to La. Code of Civil Procedure Article 893, Plaintiff prays and/or asserts that the sum in damages sought by and for any individual Plaintiff herein· be and is greater than the jurisdictional amount necessary for trial by jury.

VIII.

Plaintiff seeks to proceed as a Class Action pursuant to Louisiana Code of Civil Procedure Article 591, et seq., individually and as class representative on behalf of a class of Plaintiffs similarly situated but as yet fully identified, as Plaintiff herein represents that he has sustained legally cognizable damages common to all those similarly situated who, incurred such damages arising from the direct and proximate result of the wrongful conduct of Defendants as set forth herein, and/or by those for whom they are legally responsible pursuant to the doctrine of respondiat superior, employer-employee, master-servant and/or as otherwise authorized by statutory law and/or jurisprudence.

IX.

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY jr

Petitioner/Plaintiff proposes that the Class be defined as:

"All persons domiciled of and/or within the Parish of Jefferson, (except Defendants' employees and appropriate court personnel involved in the subject action at the district and appellate levels), who sustained legally cognizable damages in the form of personal injury, lost wages, nuisance, interference with the enjoyment of their properties and/or diminution in value of their properties as a result of the Defendant(s)' acts that caused the emission of noxious odors and gases into and unto their persons and properties".

X.

This class action is proper pursuant to La. C. Civil Procedure Article 591. While the exact number of and identities of the class members are unknown at this time, they may be ascertained through appropriate discovery and Plaintiff is of the information and belief that the class of Plaintiffs clearly consists of persons presenting a level of numerosity better handled through the class action procedural device. There are common questions of law and fact applicable to all class members and which predominate over individual questions, which include, but are not limited to: whether the damages were a result of the wrongful conduct of Defendant(s);The claims of the class representative as named herein are typical of the class members he seeks to represent and the defenses of Defendants are typical as to the Plaintiff and class members in that all seek damages arising from the wrongful conduct of Defendants as alleged herein. Plaintiff will fairly and adequately represent the interests of the class, and the class representative herein is represented by skilled attorneys who will handle this action in an expeditious and economical manner, and all in the best interests of all members of the class; The prosecution of separate actions by individual members of the class would create a risk of inconsistent and/or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party(ies) opposing the class, or adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY jr

interests. Lastly, the Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable. Individual litigation by each of the class members, besides being unduly burdensome to the Plaintiffs, would also be unduly burdensome and expensive to the court system, as well as to the Defendants.

XI.

WHEREFORE, Petitioner prays:

1. That the Defendants be served with a copy of this petition and be cited to appear and answer the same.

2. That after due proceedings had, that this action be certified as a class action pursuant to the provisions of La. C. C. Art. 591 in the respect alleged herein above, for the purposes of determining the common issues of liability, damages and other common issues

3. That upon certification of the class action, the court call for the formulation of a suitable management plan

4. After due proceedings, there be judgment in this matter in favor of petitioners and the class against Defendants, determining that the Defendants are liable to Petitioners and all members of the class for all damages

5. That the rights of the members of the class to establish their entitlement to damages, and the amount thereof, be reserved for determination in their individual actions

6. Petitioners be allowed to recover the costs and interest of prosecution of this class action

Respectfully submitted,

**Edwin M. Shorty, Jr. & Associates**
Edwin M. Shorty, Jr. (LA Bar # 28421)
Dwayne P. Smith (LA Bar #21382)
Hope L. Harper (LA Bar # 33173)
650 Poydras Street, Suite 2515
New Orleans, LA 70112
Telephone: (504) 207-1370
Facsimile: (504) 207-2850

FREDDIE KING, III (LA Bar #33923)
**THE KING LAW FIRM**
300 Huey P. Long Avenue, Suite E
Gretna, LA 70053
Telephone: (504) 982-5464
Facsimile: (504) 617-7755

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY jr

**PLEASE SERVE:**

**PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**
Through its Agent
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**WASTE CONNECTIONS, US, INC.**
Via long arm through its Agent Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**IESI LA LANDFILL CORPORATION**
Through its Agent Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**LOUISIANA REGIONAL LANDFILL COMPANY, INC.**
Through its Agent Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**APTIM CORPORATION**
Through its Agent
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**JEFFERSON PARISH**
Through the Parish Attorney
Michael J. Power
1221 Elmwood Park Blvd., Suite-701
Jefferson, LA 70123

24th E-Filed: 08/27/2018 17:03:21 Case: 787081 Div:K Atty:028421 EDWIN M SHORTY jr



**JON A. GEGENHEIMER**

# JEFFERSON PARISH CLERK OF COURT

*24th Judicial District Court Civil Records Department*
P.O. BOX 10 • GRETNA LA 70054-0010 • (504) 364-3740

## CIVIL RECORDS TELEPHONE CALL LOG

### Call 1

Case No: 787-081   Div. "*K*"   8-28, 20 18
Deputy Clerk: s/ S. MAUTERER   Time: 8:51 AM
Deputy Clerk Spoke To: Rebecca   of
_____

Notes: $139.44 EBR

*Pending check*

### Call 2

Case No: _____ Div. "___"   ___, 20___
Deputy Clerk: s/ S. MAUTERER   Time: _____
Deputy Clerk Spoke To: _____ of
_____

Notes:

### Call 3

Case No: _____ Div. "___"   ___, 20___
Deputy Clerk: s/ S. MAUTERER   Time: _____
Deputy Clerk Spoke To: _____ of
_____

Notes:

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                          DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**WASTE CONNECTIONS DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION TO PERMANENTLY LIFT STAY**

Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections U.S., Inc. ("Waste Connections Defendants"), through undersigned counsel, submits this memorandum in opposition to Plaintiffs' Motion to Permanently Lift Stay, filed on April 23, 2019.

Plaintiffs' motion to permanently lift the stay in this action is simply an attempt to seek reargument of this Court's February 6, 2019 order staying this case until a decision is rendered on class certification in the pending federal proposed class actions. The federal class action plaintiffs consolidated their actions and filed an amended consolidated complaint, but that procedural reorganization does not create any new facts or circumstances that warrant that this Court revisit or overturn its lis pendens decision. As residents of Jefferson Parish who seek damages resulting from odors allegedly emanating from the Jefferson Parish Landfill, the *Addison* Plaintiffs are still putative members of the proposed consolidated class action pending in the Eastern District of Louisiana. Therefore, the *Addison* Plaintiffs and the proposed class plaintiffs are the same for purposes of the exception of lis pendens. In addition, the actions still arise from the same transaction or occurrence, regardless of the legal theories asserted or the relief sought. Because all of the elements of lis pendens continue to be met, the Court should deny Plaintiffs' motion to permanently lift the stay.

## BACKGROUND AND PROCEDURAL HISTORY

As this Court is aware, four putative class actions were filed in the 24th Judicial District Court in July and August 2018 on behalf of proposed classes of persons seeking damages for odors allegedly emanating from the Jefferson Parish Landfill located in Waggaman, Louisiana

("Landfill").[1] Defendants removed all four actions to federal court pursuant to the Class Action Fairness Act ("CAFA").  On December 13, 2018, the *Addison* Plaintiffs – 86 residents of Jefferson Parish – commenced this duplicative action against the same group of defendants that are named in the class actions: Jefferson Parish, the Waste Connections Defendants, and Aptim Corp. The *Addison* Plaintiffs allege that the Landfill is emitting odors that have resulted in loss of use and enjoyment of Plaintiffs' property, diminution of value of Plaintiffs' property, and various physical and emotional harms.[2]

Defendants filed an exception of lis pendens in this action on December 28, 2018, and oral arguments were held before this Court on January 24, 2019. The Court concluded that lis pendens applied because the present action (i) was commenced during the pendency of the earlier-filed putative class actions; (ii) arose out of the same transaction or occurrence as the putative class actions; (iii) involved the same defendants as the putative class actions; and (iv) based on the Louisiana Supreme Court's decision in *Aisola v. La. Citizens Prop. Ins. Corp.*, 2014-1708 (La. 10/14/15); 180 So. 3d 266, involved the same plaintiffs as the putative class actions because all of the *Addison* Plaintiffs were necessarily members of the putative classes in the federal class actions.[3] Accordingly, this Court stayed the present action pending the federal court's decision on class certification or remand of at least one of the putative class actions and noted that it was "fundamentally fair" for Defendants to be able to defend themselves in a single forum.[4]

After Judge Susie Morgan of the Eastern District denied the plaintiffs' motions to remand the four federal class actions,[5] the District Court consolidated the class actions.[6] On April 10, 2019, the class action plaintiffs filed a consolidated amended complaint: the Amending and Superseding [sic] Master Class Action Complaint for Damages ("Master Class Action

---

[1] *Ictech-Bendeck v. Progressive Waste Solutions,* No. 2:18-cv-07889 (E.D. La.) (filed in 24th JDC July 25, 2018); *Thompson v. Louisiana Regional Landfill Company,* No. 2:18-cv-08071 (E.D. La.) (filed in 24th JDC July 30, 2018); *Bernard v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-08218 (E.D. La.) (filed in 24th JDC Aug. 10, 2018); and *Landry-Boudreaux v. Progressive Waste Solutions of LA, Inc.,* 2:18-cv-09312 (E.D. La.) (filed in 24th JDC Aug. 27, 2018).
[2] *See Addison* Petition ¶¶ XXV-XXXII, XXXIX, XLVII.
[3] *See* Exhibit A, Transcript of Hearing at 32.
[4] *Id.* at 33.
[5] *Ictech-Bendeck,* __F.Supp.3d__, 2019 WL 1199105; *Thompson,* __F.Supp.3d__, 2019 WL 1199103; *Landry-Boudreaux,* __F.Supp.3d__, 2019 WL 1199104; *Bernard,* __F.Supp.3d__, 2019 WL 1199102.
[6] *Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.,* Case No. 18-7889 c/w 18-8071, 18-8218, 18-9312 (E.D. La.).

2

Complaint").[7] Like the individual class action complaints before it, the Master Class Action Complaint alleges that odors emanating from the Landfill have resulted in damages against the representative plaintiffs and proposed class members, and asserts claims against the owner of the Landfill, Jefferson Parish, and several of its alleged contractors (and related entities): the Waste Connections Defendants (Louisiana Regional Landfill Company f/k/a IESI LA Landfill Corporation, Waste Connections Bayou, Inc. f/k/a/ Progressive Waste Solutions of LA, Inc., and Waste Connections US, Inc.) and Aptim Corp. The proposed class in the consolidated class action is defined as "[a]ll persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill[.]"[8] The class action plaintiffs have offered to provide "[a] more precise definition of the proposed class, including its geographic boundaries," in their forthcoming class certification motion.[9]

Despite the fact that the proposed class, as it is currently defined, still includes all residents of Jefferson Parish that have incurred damages from odors allegedly emanating from the Landfill, the *Addison* Plaintiffs now move this Court to permanently lift its stay of the action. Perhaps frustrated that the court of appeal has thus far not acted on their writ application regarding the stay. The *Addison* Plaintiffs claim that the proposed class definition has changed and therefore that they are no longer putative members of the federal class. As explained below, Plaintiffs' motion should be denied, because they are improperly requesting that this Court speculate as to the effect of a potential revision to the federal class definition in order to conclude that they are not putative members of the currently proposed class.

---

[7] *See* Exhibit B, Master Class Action Complaint.
[8] *Id.* ¶ 17.
[9] *Id.*

# ARGUMENT

**I.      The Stay in *Addison* Should Be Maintained Because the Federal Class Action Continues to Be a Prior Pending Suit Involving the Same Parties and the Same Transaction.**

**A.      This Court should not consider future contingent events in determining whether lis pendens applies.**

The *Addison* Plaintiffs contend that they are no longer putative members of the federal consolidated class action because the class definition now includes a statement that the representative plaintiffs may provide a more precise definition at the time of class certification. The future and uncertain possibility of a revised class definition that may or may not exclude any of the *Addison* Plaintiffs is irrelevant to this Court's present analysis of whether lis pendens should continue its stay of the action.

When determining if the exception of lis pendens applies, the inquiry is on the factual and procedural circumstances as they exist at that time. *See Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc.,* 36, 723 (La. App. 2 Cir. 6/27/03); 850 So. 2d 1027, 1031 (citing *La. Cotton Ass'n Workers Comp. Self-Ins. Fund v. Tri-Parish Gin Co., Inc.*, 25490-CA (La. App. 2 Cir. 9/22/93); 624 So. 2d 461) ("[b]ecause *lis pendens* does not address the merits of the disputes between parties, the reviewing court considers *lis pendens* in the procedural and factual climate that exists at the time of review, rather than at the time of the trial court judgment.").

This Court understood this very principle when it dismissed the *Addison* Plaintiffs' argument that lis pendens should not apply because they could potentially opt out of the federal class in the future:

> I think given the . . . proposed class definition and the allegations alleged in plaintiffs' petition in the *Addison* matter that there is no way that this Court can envision that those same plaintiffs wouldn't be members of a class if a class is so certified.  *That doesn't mean that they can't opt-out, obviously, but that's not the question now.*[10]

This Court correctly analyzed the facts as they were presented to it at that time and concluded that this action should be stayed despite the possibility that the *Addison* Plaintiffs could opt out of the class if one was certified.

---

[10] Ex. A, Tr. at 32 (emphasis added).

The proposed class definition in the Master Class Action Complaint does not change the Court's prior analysis. The Court's inquiry should focus on whether the proposed class definition – as it presently stands – includes the *Addison* Plaintiffs as putative class members so that there is still an identity of parties in both actions. The class as defined in the Master Class Action Complaint includes:

> [a]ll persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill . . . . [11]

All of the *Addison* Plaintiffs fall squarely within this proposed class definition. They are all residents of Jefferson Parish and seek damages caused by the alleged emission of odors and gases from the Landfill.

The fact that the Master Class Action Complaint offers to provide a more precise definition in the future does not change the fact that the *Addison* Plaintiffs are currently putative class members.[12] If this Court were to give credit to the *Addison* Plaintiffs' argument, the Court would need to speculate whether a "more precise" class definition would meaningfully narrow the proposed class and the extent to which it might exclude any of the *Addison* Plaintiffs. This type of speculation would render the exception of lis pendens essentially useless in the context of federal class action suits because the Federal Rules of Civil Procedure allow classes to be subdivided and amended at any time before a final judgment is rendered. Fed. R. Civ. P. 23(c).

The *Addison* Plaintiffs cite no authority or other support for their argument that a potential change to the class definition excludes them from the proposed class. Instead, they simply attempt to re-argue the application of *Aisola* to this action now that the Master Class Action Complaint has been filed. But *Aisola* and Louisiana Civil Code article 532 continue to support the Court's prior judgment.

---

[11] Ex. B ¶ 17.

[12] This offer seemingly carries no legal significance in the consolidated class actions, and is rather mere posturing by the federal class action plaintiffs in anticipation of a potentially forth coming challenge to class certification by Defendants.

5

Accordingly, this Court should continue its stay of this action until the Eastern District of Louisiana rules on class certification – at which point the applicability of lis pendens can be reexamined based on a concrete factual and procedural setting, rather than mere speculation.

**B.     The *Addison* Plaintiffs are putative members of the proposed federal class because they continue to seek the same property-related damages as the federal plaintiffs.**

Plaintiffs next argue that they no longer fall within the proposed class because the new class definition purportedly limits the class members to only those seeking damages for "nuisance, trespass, interference with enjoyment of their properties," while the *Addison* Plaintiffs also seek damages for personal injuries. However, like the federal class action plaintiffs, the *Addison* Plaintiffs also seek redress for property-related damages including diminution in property value and loss of use and enjoyment of their immovable property, and therefore are still members of the putative class.[13]

Specifically, the proposed federal class definition encompasses all individuals "domiciled in and/or residing in the Parish of Jefferson . . . who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in the value of their properties . . ."[14] Critically, the federal class definition does not include any language that *excludes* individuals that have alleged other harms in addition to those listed in the Master Class Action Complaint. Therefore, it is irrelevant that the *Addison* Plaintiffs seek damages beyond those sought in the federal class action because they also assert the same type of property-related damages as the federal plaintiffs. Try as they might, the *Addison* Plaintiffs cannot escape the fact that their allegations of property-related damages place them squarely within the proposed federal class definition despite the fact that they are seeking additional damages for personal injuries.

**II.     The Federal Class Actions Will Be *Res Judicata* in the *Addison* Action Because They All Arise from the Same Underlying Transaction or Occurrence.**

The *Addison* Plaintiffs acknowledge that lis pendens applies to a second action if "a final judgment in the first suit would be *res judicata* in the subsequently filed suit."  *Aisola*, 2014-1708, 180 So. 3d. at 269; Pls' Br. at 5.   However, the *Addison* Plaintiffs misapprehend the

---

[13] *See Addison* Petition ¶ XLVII(a) (seeking damages for "loss of use and enjoyment of their homes, diminution in property value"); *see also id.* ¶¶ XXVIII, XXX, XXXII and XXXIX.
[14] *See* Ex. B ¶ 17.

application of *res judicata*.  Citing no authority at all, they contend that *res judicata* cannot apply here because unlike the federal class action plaintiffs, the *Addison* Plaintiffs seek redress for personal injuries and have alleged a constitutional takings claim.[15] This is not correct. The application of *res judicata* does not turn on whether two lawsuits assert identical claims or damages. Instead, the key question is whether the second action asserts a cause of action that arises out of the same transaction as the first-filed action.  Because the *Addison* action and the federal class actions plainly both arise from the alleged mismanagement and emission of odors of the Jefferson Parish Landfill, a final judgment in the federal class action would bar the *Addison* Plaintiffs' claims under *res judicata*.

Whether this Court applies federal or state law principles of *res judicata*,[16] the critical question "is not the relief requested or the theory asserted [by plaintiff] but whether plaintiff bases the two actions on the same nucleus of operative facts." *Matter of Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990); *see also Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313-14 (5th Cir. 2004) (*res judicata* barred city employees' race discrimination claims against city because, even though factual allegations articulated in the two complaints differed, "all of the claims in question originate[d] from the same continuing course of allegedly discriminatory conduct"); La. Stat. Ann. § 13:4231 (res judicata applies to "all causes of action . . . arising out of the transaction or occurrence that is the subject matter of [the earlier filed litigation]"); *Ave. Plaza, L.L.C. v. Falgoust*, 96-0173 (La. 7/2/96), 676 So. 2d 1077, 1080 ("the amended *res judicata* statute's chief inquiry is whether the second action asserts a cause of action which arises out of the transaction which was the subject matter of the first action.").

Under these principles, a party may not avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy; rather "the nucleus of facts defines the claim rather than the legal theory posed or recovery sought." *Howe*, 913 F.2d at 1144 n.10 (internal citation omitted). Therefore, the *Addison* Plaintiffs' assertion of distinct claims such as personal injury damages or a purported constitutional taking of property is not a factor in the *res judicata*

---

[15] Pls' Br. at 5.

[16] Because the earlier-filed actions are pending in federal court, federal *res judicata* principles would govern. *Armbruster v. Anderson*, 2018-0055 (La. App. 4 Cir. 6/27/18); 250 So. 3d 310, 317, writ denied, 2018-1276 (La. 11/5/18), 255 So. 3d 1054 ("[F]ederal law is applicable to consideration of whether a federal court judgment has *res judicata* effect.").

analysis. As this Court has already determined, the *Addison* Plaintiffs' claims arise from the same "transaction" or "nucleus of facts" as the consolidated federal class actions: the alleged emission of fumes or odors from the Landfill.[17] Plaintiffs' *res judicata* argument is without merit and the stay should not be lifted.

## CONCLUSION

Plaintiffs have cited no basis that warrants a departure from this Court's original decision staying the case pursuant to La. Civ. Code article 532. The minor revisions in the Master Class Action Complaint have not changed the fact that the *Addison* Plaintiffs are putative members of the proposed class action and therefore under the State's high court holding in *Aisola*, all of the elements of lis pendens continue to be met. Plaintiffs' motion to permanently lift the stay should be denied.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By: _____
         David R. Taggart
         (Louisiana Bar Roll No. 12626)
401 Edwards Street, Suite 1000
Shreveport, Louisiana 71101
Telephone: (318) 227-1131
Facsimile: (318) 227-1141

Michael C. Mims
(Louisiana Bar Roll No. 33991)
John B. Stanton
(Louisiana Bar Roll No. 36036)
1100 Poydras St., Suite 2700
New Orleans, Louisiana 70163
Telephone: (504) 596-6300
Fax: (504) 596-6301

AND

---

[17] *See* Ex. A, Tr. at 32.
It should also be noted that the original four federal class action complaints did not assert constitutional takings claims while the *Addison* petition did. Thus, the legal theories asserted in the state and federal actions were not entirely coextensive even at the time the Court issued the stay. The *Addison* Plaintiffs did not raise this issue when Defendants sought the stay, and it is improper for them to belatedly do so now.

8

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (admitted *pro hac vice*)
Michael G. Murphy (admitted *pro hac vice*)
John H. Paul (admitted *pro hac vice*)
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (admitted *pro hac vice*)
1350 I Street, N.W., Suite 700
Washington, DC 20005
(202) 789-6000

Counsel for Waste Connections Defendants

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above pleading on the following counsel

of record via PDF email this 1st day of May, 2019.

Byron M. Forrest
Nicholas V. Cressey
S. Eliza James
Forrest Cressey & James, LLC
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130

Barry S. Neuman
Adrian Snead
C. Allen Foster
Erik Bolog
Whiteford Taylor Preston, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036

William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick & Connick, LLC
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002

_____
OF COUNSEL

10

1   24TH JUDICIAL DISTRICT COURT

2        PARISH OF JEFFERSON

3        STATE OF LOUISIANA

4

5   FREDERICK ADDISON, BARBARA        NO. 790-369
    ADDISON, PERRY ANDRAS, ET AL

6

7   VERSUS

8   LOUISIANA REGIONAL LANDFILL
    COMPANY, IESI LA LANDFILL
8   CORPORATION, WASTE CONNECTIONS
9   BAYOU, INC., ET AL

10

11        EXCEPTION OF LIS PENDENS

12

13        Taken in the above entitled and numbered cause,

14   before Honorable Stephen Grefer, presiding on the 24th day

15   of January, 2019.

16

17   APPEARANCES:

18   BYRON FORREST, ESQUIRE
19   ELIZA JAMES, ESQUIRE
19   NICK CRESSY, ESQUIRE
20   BARRY NEUMAN, ESQUIRE
20        Counsel Representing Plantiffs

21

22   MICHAEL MIMS, ESQ.,
22   MEGAN BRILLAULT, ESQ.,
23        Counsel representing Defendant,
24        Waste Connections U.S, Inc.

25   MATT MOGHIS, ESQ.,
26   PETER CONNICK, ESQ.,
26   MIKE FUTREL, ESQ.,
27        Counsel representing Defendant,
27        Parish of Jefferson

28

29

30   Reported by:
31        Rosa Manale
32        Certified Court Reporter

1036

1    THE COURT:

2        Case number four on today's docket 790-369,

3    Addison versus Louisiana Regional Landfill.

4        Counsel, step up, state your names and

5    representations for the record, please.

6    MR. FORREST:

7        Good morning, Judge.  My name is Byron

8    Forrest.  I'm here on behalf of plaintiffs.  With

9    me I've got Eliza James, Nick Cressy and Barry

10   Neuman.  I'd like to introduce him.  He's from

11   D.C.

12   THE COURT:

13       Good morning.

14   MR. NEUMAN:

15       Good morning, Your Honor.

16   MR. MIMS:

17       Good morning, Your Honor.  Michael Mims on

18   behalf of Waste Connections U.S., Inc., also got

19   my co-counsel, Megan Brillault of the Beveridge &

20   Diamond firm.

21   MS. BRILLAULT:

22       Good morning, Your Honor.

23   THE COURT:

24       Good morning.

25   MR. MOGHIS:

26       Good morning, Judge.  Matt Moghis on behalf

27   of Jefferson Parish with co-counsel Peter Connick

28   and Mike Futrel.

29   THE COURT:

30       I hope nobody calls the office.  There's

31   nobody there.

32       All right, counselors, so it would appear to

2

1  the Court to take up the Exception of Lis Pendens

2  first because based upon that ruling, then the

3  other matter I think is going to be moot. If I

4  grant the Exception of Lis Pendens, I don't think

5  I have jurisdiction to rule on anything else. If

6  I deny it, then we can take up the Motion for

7  Expedited Discovery. So I guess, let's take up

8  that Exception first and then we'll go from

9  there. All right. Y'all can be seated.

10  MR. MIMS:

11       Good morning, Your Honor. Michael Mims on

12  behalf of Waste Connections U.S., Inc. I'll be

13  handling the Exception of Lis Pendens. My

14  colleague, Megan Brillault, if necessary, will

15  address the issue of plaintiff's request for

16  discovery.

17       The Addison petition should be stayed or

18  dismissed because it is a copycat lawsuit of four

19  previously filed proposed class actions that are

20  currently pending in the Eastern District of

21  Louisiana.

22  THE COURT:

23       Can I ask a question just off the top?

24  MR. MIMS:

25       Yes.

26  THE COURT:

27       Why not moot this one like all the other

28  ones? Why are we having this here? Why wasn't

29  this one removed like the others?

30  MR. MIMS:

31       The four previously filed actions were

32  removed pursuant to the Class Action Fairness

3

1    Act.

2    THE COURT:

3        So you don't have jursi --

4    MR. MIMS:

5        This is not a class action.

6    THE COURT:

7        You don't have diversity and what not.  I

8    got you.  Now I'm with you.  All right, go ahead.

9    MR. MIMS:

10       The test for lis pendens in Louisiana is

11    whether a final judgment in the previously filed

12    action would be res judicata in the subsequently

13    filed actions and that is the case here because

14    we have the same parties and the action arises

15    from the same transaction or occurrence.

16    THE COURT:

17       Give you same transaction and occurrence.

18    you don't have to go into that.  Obviously, the

19    big fight is same parties, right?

20    MR. MIMS:

21       Yes.

22    THE COURT:

23       So you've got this putative class action

24    over here which may or may not include these

25    plaintiffs over here.  You've got identified

26    plaintiffs over here.  Why do they get lumped

27    into there when they're going to say, well,

28    Judge, we're going to opt out and then we're not

29    part of the class action?

30    MR. MIMS:

31       Right.  So they don't seem to dispute that

32    we've got the same defendants here.  The issue is

1   are these the same plaintiffs? And, thankfully,

2   we've got a Louisiana Supreme Court opinion from

3   2015 that's right on point. That's the IESI LA

4   case. That case the trial court was looking at

5   an individually filed action, a Hurricane Katrina

6   insurance dispute. There had previously been

7   filed a class action and the individual plaintiff

8   was a member, or at least they fit within the

9   definition of the proposed class.

10   Now, that plaintiff said, well, I'm not a

11   named plaintiff in the class action, so there's

12   not an identity of the parties and the trial

13   court denied the Exception of Lis Pendens. Goes

14   to the Louisiana Supreme Court. Louisiana

15   Supreme Court reverses and says, no, whether

16   you're a named plaintiff or not, you are a member

17   of the proposed class and you have not opted out

18   yet and because you have not opted out yet, you

19   are represented by that class and there is an

20   identity of the parties and the Supreme Court

21   said the Exception of Lis Pendens should be

22   granted. That's exactly what we have here.

23   Now, the plaintiffs are trying to draw the

24   distinction that, well, in the IESI LA case, they

25   actually allege they were members of the class.

26   That's a distinction without a difference.

27   Whether these plaintiffs want to be members of

28   the class or whether they say they are members of

29   the class doesn't change the fact that they are

30   members of this proposed class. If you look at

31   the proposed class actions, they define the class

32   as all residents of Jefferson Parish who have

5

1040

1    been damaged by the odors emanating from the

2    Jefferson Parish Landfill.

3         If you look at the Addison plaintiffs'

4    petition, they allege that they are all residents

5    of Jefferson Parish who have been harmed by the

6    odors emanating from Jefferson Parish.  So they

7    may not claim that they're members of the class,

8    but in reality they are members of the class.

9         As far as opting out, first of all, if you

10   look at their pleadings here, they make it very

11   clear that they're reserving the right to join

12   that class.  But aside from that point, Louisiana

13   law is clear, and again, we've cited two

14   different Louisiana Supreme Court cases on the

15   point, Duckworth and Quinn, that say you can't

16   opt out until you go through the actual specific

17   Louisiana class action procedure, which has a

18   notice provision and a certification procedure

19   and then an opt out procedure.  But until you're

20   formally able to opt out, you're still a member

21   of that class.

22   THE COURT:

23        You can't opt out until there's a class to

24   opt out of.

25   MR. MIMS:

26        That's correct.  And as I mentioned, these

27   plaintiffs here apparently have not made up their

28   mind whether they will opt out or not.  So

29   pursuant to that IESI LA case, we do have an

30   identity of the plaintiffs.  We have an identity

31   of the defendants.  We've got the same

32   transaction or occurrence.  If there's a final

6

1041

1   judgment in the first filed action, that's the

2   Ictech-Bendeck action in the Eastern District,

3   that would be res judicata here.  So clearly, the

4   lis pendens test would apply.

5       What plaintiffs seem to really hang their

6   hat on is this fairness argument that, well, even

7   if all the lis pendens factors apply, it would

8   just be unfair to not let us go forward.

9   THE COURT:

10      Yes.  I mean, at this point, counsel,

11  they're stuck, right?  So if your argument holds

12  and if your argument is correct, they can't do

13  anything until some Federal Court that they're

14  not a part of rules on some case that they're not

15  a member of and makes a decision and they just

16  have to sit here saying, Judge, okay, so I have

17  no rights until a case that I have nothing to do

18  with makes some decision and that does seem

19  unfair, right?

20  MR. MIMS:

21      Well, two things.  I don't know that I would

22  go as far as to say they have no rights.

23  THE COURT:

24      Well, you're telling them they can't go

25  forward because there's a lis pendens with this

26  other case going on.

27  MR. MIMS:

28      They can't go forward with this action, this

29  action for damages that they filed relating to

30  the same transaction or occurrence.  That's

31  right.

32      We're dealing with environmental issues

7

8

1    here.   There are administrative remedies here.

2    I'm not saying they have no rights here until

3    something happens in the earlier action, but I am

4    saying that they cannot bring a parallel

5    proceeding asking for damages when four other

6    class actions were filed five months before

7    their's.

8          If you look at the class action allegations,

9    they say these odors have been going on since

10   August of 2017, almost a year and a half ago.

11   This group of plaintiffs, for whatever reason,

12   sat on their hands while those odors started.

13   They sat on their hands when all the other

14   plaintiffs filed their class actions and for

15   whatever reason, just before the Christmas

16   holidays here, they filed their lawsuit.

17          Now, when we talk about fairness --

18   THE COURT:

19          Sitting on their hands may not be a fair

20   characterization.  Perhaps, they were

21   interviewing plaintiffs to make sure they had

22   plaintiffs that actually suffered damages before

23   they just grabbed anybody who wanted to come in

24   and sign the letter, right?

25   MR. MIMS:

26          Well, and they waited until they had --

27   THE COURT:

28          Perhaps they were doing their due diligence

29   to make sure they had good plaintiffs before they

30   actually filed a lawsuit.

31   MR. MIMS:

32          Well, and they waited until they had 86

```
 1    plaintiffs --

 2    THE COURT:

 3         Yes.

 4    MR. MIMS:

 5         -- before they filed this action.

 6    THE COURT:

 7         Yes.

 8    MR. MIMS:

 9         But when we talk about fairness, you also

10    have to consider that the fairness not only to my

11    client, Waste Connections, a corporate entity,

12    but you've got Jefferson Parish.  This is a

13    landfill owned by the parish and the possibility

14    of duplicative litigation, defending itself in

15    multiple proceedings, conflicting judgments from

16    the Court.  It's a waste of resources when you

17    consider that at some point there's going to be a

18    final judgment in that Ictech-Bendeck action and

19    that's going to be res judicata here.

20    THE COURT:

21         So what they're really asking for right now

22    is, Judge, I don't want a judgment in favor of my

23    clients right now, right?  They're not asking for

24    me to award money at this point.  They're just

25    simply saying, Judge, let me do some immediate

26    discovery so I can lock down a few numbers ahead

27    of time so that when all these issues come up

28    later on down the road, we at least know this

29    baseline.  We know where we started.  What's the

30    harm in just letting them do that limited

31    discovery and then saying after you do that, I'm

32    going to grant the stay and everything is shut
```

9

10

1    down.  Why not do that?

2    MR. MIMS:

3         A couple things, Your Honor.  Again, when we

4    look at the proposed class actions, those were

5    filed by experienced, competent Louisiana

6    plaintiff attorneys, primarily Val Exnicios and

7    Anthony Irpino.  They've already proposed this

8    plaintiffs' steering committee.  The Addison

9    plaintiffs' counsel are not at the table for that

10   plaintiffs' steering committee.  Mr. Exnicos and

11   Irpino are going to want to do discovery of their

12   own.  So you're subjecting my client and the

13   parish to multiple rounds of discovery, the

14   potential for conflicting directives.

15        You know, we're talking about a physical

16   entry upon a landfill.  There's going to have to

17   be some sort of directives as to what is the

18   scope of this.  So there's almost the certainty

19   that we're going to have conflicting directives

20   about what is the scope of that discovery and the

21   waste of resources involved in doing this twice

22   when this action is going to be subject to res

23   judicata.  Why are we doing discovery in this

24   action that is not going to be going anywhere.

25   THE COURT:

26        Why is it wasted discovery if this group

27   gets subsumed into the class action, why can't

28   the class action group just simply use this

29   discovery, you know, to their advantage?

30   Perhaps, this group becomes part of the steering

31   committee, as well, because they hold this

32   discovery --

1    MR. MIMS:

2        Well, I think --

3    THE COURT:

4        -- that everybody wants.

5    MR. MIMS:

6        I think that's a fair point that the class

7    action can be discovery.  They have not asked for

8    discovery yet.  So we've got this group of

9    plaintiffs here claiming there's this emergency

10   at the landfill and we need this immediate

11   discovery at the landfill.  Again, we're talking

12   about Val Exnicios and Anthony Irpino.  If they

13   thought there was an emergency at the landfill, I

14   guarantee you they would have filed some motion

15   for emergency discovery at the landfill.  That

16   hasn't happened.

17       Now, maybe these attorneys are not happy

18   with the way that the class action plaintiffs are

19   running their case, but that's why you don't sit

20   on your hands for five months while all these

21   other lawsuits get filed first.  So they may not

22   be happy that they're not a part of that

23   plaintiffs' steering committee, but it's not this

24   Court's job to grant them that relief.

25   THE COURT:

26       No.  I'm not trying to put them on the

27   steering committee.  I guess my question is in

28   fairness to their clients, eighty or so, you

29   know, why is it fair to their clients, who at

30   this point again are not part of the class, at

31   least since the class hasn't been defined, that

32   they can't move forward with their case in the

1046

12

1    direction they want to move forward with them?  I

2    guess that's -- where is the harm?  You're

3    talking about there's wasted resources.  So

4    you're not wasting your experts to go in and take

5    samples.  It's their experts, if they want to pay

6    for their experts to go in and take air samples

7    and do what they need to do, where's the harm to

8    your client to do that other than having someone

9    there to stand next to them while they do this?

10   MR. MIMS:

11        Your Honor, I'll let Ms. Brillault elaborate

12   on exactly what such an inspection would involve,

13   but I can guarantee you it would involve some

14   experts and resources on our end to oversee that

15   sort of discovery.  It would not be as simple as

16   come on over to the landfill and do what you got

17   to do.  It would be a very precise procedure that

18   we'd have to pin down ahead of time about what is

19   this discovery going to entail.

20        And, again, you've got this other group of

21   plaintiffs that are going to want discovery of

22   their own and, frankly, I think it would be a

23   potential prejudice to them that you would have

24   an inconsistent discovery ruling from this Court

25   when they were the first filed group.

26        One thing I think that needs to be made

27   clear is that we are not saying that these

28   plaintiffs should be denied access to the courts.

29   When you look at Louisiana's Class --

30   THE COURT:

31        Just now.

32   MR. MIMS:

1        Well, when you look at Louisiana's Class

2   Action Law, it says that when you're a member of

3   the proposed class, as they are, you have access

4   to the courts through the class action procedure.

5   And Louisiana law, this is a quote from the IPSI

6   LA case, it says that the purpose and intent of

7   the class action procedure is to adjudicate and

8   obtain res judicata effect on all common issues

9   applicable not only to the representatives but

10  all other similarly situated.

11       You've got this plaintiff steering committee

12  that has already determined that the best way to

13  obtain relief for their clients is through the

14  class action procedure.  To allow these

15  plaintiffs to bypass that procedure results in

16  unfairness to my clients, to the parish, and also

17  to those plaintiffs that were the first filed.

18  So we're not trying to deny their access to the

19  courts.  They do have access through the class

20  action procedure.  Once there is a ruling on

21  class certification, they can choose either to

22  join that class, at which point there's no need

23  for another action, individual action, or at that

24  point they can opt out and they can bring their

25  own procedure in this court.

26       So, Your Honor, we think this issue is ripe

27  for a decision today and we would ask you to

28  decide on this that way we can avoid getting into

29  the technical discussion on the discovery issues.

30  THE COURT:

31       All right.  Mr. Moghis, you want to add

32  anything other than me too or --

13

1048

14

```
 1   MR. MOGHIS:
 2        We'll just adopt that argument and save
 3   our's for reply if the Court would allow.
 4   THE COURT:
 5        Sure.
 6   MR. MOGHIS:
 7        Thanks.
 8   THE COURT:
 9        Whoever is arguing.
10   MR. NEUMAN:
11        Thank you, Your Honor.  Good morning.
12   THE COURT:
13        Morning.
14   MR. NEUMAN:
15        Barry Newman on behalf of petitioners.
16        May it please the Court.  This is my maiden
17   argument in Louisiana State Court.  It's a
18   privilege to be here.
19   THE COURT:
20        Certainly.  Thank you.
21   MR. NEUMAN:
22        Appreciate the opportunity.
23        Your Honor, I'd like to begin with this
24   fairness notion that counsel addressed in terms
25   of questioning why we supposably sat on our hands
26   and Your Honor touched on it.  I think it's
27   important background for purposes of assessing
28   this motion and where the balance of equities
29   lie.
30        Mr. Forrest's law firm has been inundated
31   with over a thousand phone calls over the last
32   six months requesting that his firm and our firm
```

15

1    represent those people in connection with the

2    problems associated with the Jefferson Parish

3    Landfill.  We have, indeed, been not sitting on

4    our hands, but vetting those individuals before

5    we file and before we file this case, in contrast

6    to class actions that were filed right out of the

7    gate after the parish held a press conference

8    naming one individual.  Our clients -- and we're

9    continuing to vet additional phone calls, and I

10   doubt very much that this will be the last number

11   of plaintiffs on whose behalf we will ultimately

12   be filing complaint with respect to this matter.

13       The pendency of the other actions obviously

14   did not affect these individuals' requests that

15   we -- that they retain their own counsel and

16   bring this action now and that's what we have

17   done and we've acted with alacrity and as quickly

18   as we can once we're sure that we've got a sound

19   basis to name these individuals as our clients

20   now and as petitioners in this action.

21       We've heard about res judicata and counsel

22   has acknowledged that the test here, the test is

23   whether those class actions will act as res

24   judicata with respect to our clients.  We won't

25   know that unless and until a class is certified

26   in those cases and until, unless and until any of

27   our clients chooses to opt in or out of those

28   classes.  And obviously, we cannot -- I cannot,

29   as counsel for my clients, tell Your Honor today

30   that our clients would opt out of those cases.

31   It wouldn't be appropriate.  It's like an

32   advanced waiver.  But what we know is that

16

1   presently no class has been certified and there's

2   no reason to assume, therefore, that those cases

3   would act as res judicata with respect to our

4   clients.

5       I would point out in this regard that I have

6   no doubt, unless counsel here is willing to

7   stipulate today that they're not going to oppose

8   class certification once the jurisdictional

9   issues get sorted out in those class actions, I

10  have no doubt that counsel will be opposing class

11  certification in those cases when the time comes,

12  and under the cases that we cited -- I don't

13  propose to give a dissertation on class action

14  law, which I'm sure Your Honor is familiar with,

15  but under the cases we've cited, there is at

16  least a substantial issue as to whether classes

17  will ever be certified in those cases or not

18  given the fact, as counsel has pointed out, that

19  these individuals who are members of this

20  putative class live all over at different

21  distances from the landfill.  Their situations

22  are going to be different.  Their damages are

23  going to be different.  And under the case law

24  we've cited, it's going to be a uphill battle I

25  would respectfully submit for the petitioners in

26  those cases to be able to certify the class.  And

27  in any event, that isn't going to happen for a

28  long time.

29      These cases now are myriad in procedural

30  limbo based upon the defendant's choice to send

31  those cases to Federal Court, presumably for

32  their own benefit and for their own purposes.  We

1   don't know when those jurisdictional issues are

2   going to be determined and it's going to take a

3   long time after that before any class

4   certification issues are determined.

5        Now, because these actions are pending in

6   the Federal Courts at the election of these

7   defendants -- and by the way, I have read the

8   oral argument on the motions to remand that are

9   now pending in the Federal Court in at least one

10   of the cases, and they've made a very powerful

11   argument why those cases should stay in Federal

12   Court.  Because they are in Federal Court, it is

13   quite clear that if lis pendens applies at all

14   here, then it is Article 532 that applies and not

15   531, which means that at most, and the Court has

16   discretion whether or not to stay.  And it is

17   quite clear from the cases that the Court does

18   have that discretion and I would also point the

19   Court to a Louisiana Supreme Court decision,

20   Southwestern Electric Power Company versus Amax,

21   621 So.2d. 615, wherein a per curiam opinion the

22   Supreme Court reversed -- let me back up.  The

23   trial court had exercised its discretion not to

24   stay.  The appellate court reversed and on appeal

25   to the Supreme Court, the Supreme Court

26   reinstated the decision of the trial court to

27   allow the case to go forward saying even if the

28   predicate conditions of 532 are met, the decision

29   to stay a Louisiana suit rests in the sound

30   discretion of the trial court.

31   THE COURT:

32        All right.  So, counsel, given where we are

17

1    and given the IESI LA case and it's a Supreme

2    Court case, obviously, that I'm required to

3    follow, but given the IESI LA case, are you

4    basically saying, Judge, we don't think its lis

5    pendens, but it probably is under IESI LA and if

6    it is under IESI LA, you still shouldn't grant

7    the stay?

8    MR. NEUMAN:

9        We don't think it is under IESI LA either

10   and I'll tell you why.          .

11   THE COURT:

12       Okay.  Tell me why.

13   MR. NEUMAN:

14       Because IESI LA and the other cases that

15   they've cited all involve the question of whether

16   plaintiffs in a subsequently filed individual

17   action, who specifically allege that they are

18   members of a putative class in a previously filed

19   class action, in order to gain the benefit of the

20   suspension of prescription, should be allowed to

21   do that, or whether they should be deemed to be

22   members of the class and what the Court said in

23   IESI LA and what the Court said in Harris and the

24   other cases they've cited is that when the

25   petitioners choose to tell the Court that they

26   are members of the putative classes that are

27   pending in other actions, in order to gain the

28   benefit, in order to gain the benefit of the

29   suspension of prescription, then they can't have

30   it both ways.  They can't also say we're not

31   going to be bound by whatever happens in the

32   class action lawsuit.  So, in effect, in those

18

1    cases, the petitioners are telling a court we

2    want to be part of those cases. And so it's

3    clear that those cases, those class actions would

4    act as res judicata. That's not the situation

5    here. As I said earlier, Your Honor, we don't

6    know -- we're not going to know for a long time

7    whether or not --

8    THE COURT:

9         And I'm with you and I understand we're a

10   long way away from class certification and how

11   that class would ultimately be defined, but can

12   you envision any scenario where your plaintiffs

13   wouldn't be a member of a class as it's proposed?

14   I mean, I can't think how your plaintiffs would

15   be different than those members of the class.

16   MR. NEUMAN:

17        I think that if a class is certified, it

18   delineated the way they've asked for it, yes, as

19   described in the complaint. Then we would be

20   members of the -- then our clients would be

21   members of the class --

22   THE COURT:

23        Unless you opt out, obviously.

24   MR. NEUMAN:

25        -- unless they opt out. But, again, these

26   cases that they've cited all have to do with the

27   application of Article 596(a), the suspension of

28   liberal prescription and the courts in those

29   cases made very clear, in Duckworth and others,

30   we're basing this on the fact that we have to

31   read 596(a) very literally and 596(a) talks about

32   a previously filed class action in which these

19

20

1      plaintiffs who filed a new suit would be member

2      of the described class.  And the Courts said that

3      we have to read that 596(a) very literally.  That

4      has nothing to do with our situation.

5           So that's our first point, we do not think

6      that this is a situation where res -- where the

7      Court can say now res judicata necessarily

8      applies to our clients and, therefore, lis

9      pendens applies.  But you're correct, even if the

10     Court were to say that, then we are under 532 and

11     it's a matter of discretion.  And in that regard,

12     Your Honor, I think that the Court should

13     exercise its discretion for the reasons we've

14     laid out in the brief.  I mean, the fact is it

15     says we can get administrative relief,

16     administrative relief doesn't provide damages.

17     We're here to, in large part, to collect damages

18     for past and continuing harm.  No administrative

19     relief grants that.

20     THE COURT:

21          And, counselor, I know this is off topic,

22     but just while you're up there, what is it --

23     I've read your expert's affidavit.  Quite

24     honestly, I guess I don't understand the

25     technical aspects of it.  But what is it he's

26     actually trying to do?  What is involved in this

27     expedited discovery that he wants to conduct?

28     MR. NEUMAN:

29          At the site, what we want to do is we want

30     to go out to specific limited set of locations on

31     the site, a couple of wells where the gas is

32     collected.  We want to go to the inlet, to the --

1055

21

1    they're burning -- they're collecting gas and

2    occasionally burning it off in a flare.  And so

3    we want to go to the inlet, to the flare before

4    it's burned to get a sample there.  And we want

5    to get some samples of the leachate which is part

6    of the problem here and a sample at the edge of

7    the landfill to see if there's any migration

8    going out from the landfill.

9    THE COURT:

10       You can take the sample at the edge of the

11   landfill, regardless, right?  I mean, you can do

12   that from the street?

13   MR. NEUMAN:

14       Right on the property.  Right at the edge of

15   the property.

16   THE COURT:

17       You want to be inside the fence instead of

18   outside the fence?

19   MR. NEUMAN:

20       Right, inside the fence.  We want to take

21   samples there and analyze those samples for

22   specific suites of chemical compounds which are

23   typically found in landfill gases, which are

24   known to be toxic and which they haven't sought

25   to analyze for at all.

26   THE COURT:

27       So look down the road here a little bit,

28   right?  So here's, I guess, maybe a question that

29   I have and then just thinking down the road in

30   terms of damages.  Your clients aren't harmed if

31   the concentration at the flare level and the

32   concentration within the compound is at one

1   level, but that level doesn't migrate off the

2   premises across the river to Harahan and River

3   Ridge and wherever else.  The question is what is

4   the level in Harahan and River Ridge --

5   MR. NEUMAN:

6       That's correct.

7   THE COURT:

8       -- and perhaps right off the fence.  Why

9   can't you just now, without any authority from

10  anybody, go take whatever air samples you want on

11  Highway 90 and go take whatever air sample you

12  want on top of the levee in Harahan and River

13  Ridge?  What's preventing you from doing that and

14  doesn't that -- isn't that really the question,

15  is how high are those levels there as opposed to

16  inside the compound, the landfill?

17  MR. NEUMAN:

18      And that's a great question and the answer

19  is, the answer is that we can take all the

20  samples we want out in the field at somebody's

21  house, but in order to nail down whether or not

22  what we measure there is coming from the landfill

23  or as they go at great lengths to point out,

24  there are other sources in the area of potential

25  pollution --

26  THE COURT:

27      I think River Birch would disagree with

28  that, but go ahead.

29  MR. NEUMAN:

30      -- you need to have an understanding --

31  basically, it's fingerprinting, Your Honor, what

32  it is in the science.  You fingerprint the

22

1057

1    source at the landfill. That's the first step.

2    You need to know what's the suite of compounds

3    coming out at the landfill so that, yet, then if

4    you're going to sample at the location in the

5    field, you can correlate apples to apples.

6    THE COURT:

7         I'm with you, but isn't that information

8    being captured by the regulatory agencies that

9    are actually doing the testing out there on it

10   seems like a daily basis from the things that

11   I've seen in here?

12   MR. NEUMAN:

13        Well, the answer either way is no, but I'm

14   not sure if you're asking about on the landfill

15   or in the community.

16   THE COURT:

17        I was talking about in the landfill. It

18   appears that now the regulatory agencies are

19   aware of this issue and they seem to be doing

20   some increased testing at the landfill itself and

21   I don't know what they're taking at the flare

22   spot or somewhere else, but --

23   MR. NEUMAN:

24        No, Your Honor. The data that has been

25   collected on the landfill pertains -- or at least

26   the publically available data is hydrogen sulfide

27   and odor impressions. In other words, DEQ people

28   are going around they're taking field readings of

29   hydrogen sulfide, not necessarily the most

30   accurate way to do it, but they're taking

31   readings of hydrogen sulfide gas and they're

32   sniffing around. I smell the odor here. I don't

23

1058

24

```
 1   smell an odor here.  It's kind of strong.  It's

 2   kind of weak.  I don't detect it here.  Hydrogen

 3   sulfide --

 4   THE COURT:

 5        They seem to be looking at wind direction on

 6   occasion.

 7   MR. NEUMAN:

 8        Pardon?

 9   THE COURT:

10        They seem to be looking at wind direction,

11   too, depending on which way the wind's blowing.

12   The wind is blowing this way upon arrival and

13   this way upon departure.

14   MR. NEUMAN:

15        SCS engineers looked a little bit at wind,

16   but they're not -- again, we're talking about

17   hydrogen sulfide.  To understand the risks here,

18   we're talking about -- we have to be looking at a

19   lot more than hydrogen sulfide and that's really

20   the thrust of Dr. Chrostowski's affidavit.  Any

21   responsible, scientific analysis of the true

22   risks being posed by the landfill requires a

23   comprehensive source characterization as the

24   first step.  Nobody's done that.  Nobody's done

25   that.  And they can argue about how we want to do

26   it, what the methods are, whether the model that

27   we haven't even chosen yet is good or not, they

28   can argue about all of that, but that's all

29   diversion.  At the moment, we're the only --

30   we're the most important stakeholders in this

31   process.  We're the most directly impacted by

32   what's going on at the landfill.  We're ready,
```

1059

1   willing, and able to do this initial basic

2   testing at our own costs.

3   THE COURT:

4       Okay.  Thank you, counsel.

5   MR. NEUMAN:

6       Thank you.

7   MR. MIMS:

8       Your Honor, briefly, I'd like to just

9   address some of the legal issues on lis pendens.

10  I know we started to bleed a little bit to the

11  discovery issues.  If you would like to hear from

12  Ms. Brillault in order to help you rule on lis

13  pendens --

14  THE COURT:

15      Well, I guess, let me just ask Ms. Brillault

16  just a couple questions.  Ms. Brillault, I don't

17  care if you do it from there.  That's fine.

18      In terms of the testing that has been

19  requested, if you don't specifically know what

20  the testing is and how the method is going to be

21  done in order to do the testing, why is it going

22  to be such a disruption?  Why is that such a

23  problem?  Why can't they simply go in on one

24  day, take their air samples at the torch level,

25  take their air sample inside the compound, and

26  then say, okay, we're out of here?

27  MS. BRILLAULT:

28      I think, Your Honor, you put your thumb on

29  it earlier when you were indicating why can't

30  they go sample at their homes and right outside

31  the fence.  They're perfectly capable of doing

32  that.  And I think one of the prejudicial things

25

1060

26

1  to defendants is they're not just asking for a

2  couple of compounds.  They're asking to sample a

3  whole list of alleged chemicals that come from

4  landfill gas, but they haven't even made a

5  threshold showing that they've been exposed to

6  those chemicals at their house.

7       You know, EPA and LDQ, LDEQ, regulate the

8  landfill.  They have a Title 5 permit.  You know,

9  they're required to comply with NSPS, New Source

10  Performance Standards, and one of the chem -- one

11  of the gases that they measure for is methane and

12  that's because it's the largest constituent in

13  the landfill gas.  So they set a level for

14  methane, which, you know, as long as the surface

15  emissions don't exceed that level, the levels of

16  methane are safe and all the tracer compounds

17  that come in much smaller concentrations are at

18  safe levels and that's how they, you know, ensure

19  that the landfill gas is not going to be toxic.

20       And so that's -- you know, they could.  They

21  could stand right outside the fence.  It wouldn't

22  be a burden on us if they're standing right

23  outside the fence and they want to conduct the

24  air samples.  You know, it's not the leachate

25  that's getting to the property.  It's what, you

26  know, being dispersed of in the air.

27       You also pointed to a really good fact that,

28  you know, once it's emitted on the landfill, by

29  the time it gets a mile, two miles, three miles,

30  I think the furthest plaintiff away is four mile,

31  you know, that concentration of whatever the gas

32  is is incredibly, you know, decreased at that

1    point.  It's magnitudes lower.

2    THE COURT:

3         All right.  Mr. Moghis, you wanted to say

4    something?

5    MR. MOGHIS:

6         Thank you, Judge.  We were going to wait

7    until the ruling of lis pendens, but while we're

8    touching on it, Jefferson Parish's position is

9    that in response to the Court's question about,

10   well, if we let them go in, how does it prejudice

11   us, we also brought a motion to continue the

12   consideration of the motion depending on the

13   judgment on the Exception of Lis Pendens based on

14   the fact that none of the requirements under

15   1461, which is what they're seeking the motion

16   under, for entry onto land, 1462 that says that

17   they have to identify with particularity the

18   items to be tested, how they want to test it, the

19   time, date, and manner.  As counsel just stated,

20   quoting him, we haven't even chosen that yet.  We

21   don't know particularly.  As Your Honor pointed

22   out, you read the affi -- a 17 page expert

23   affidavit and you still don't know what they

24   want, or we don't know, and defendants can't tell

25   what they want.  They have no complied with what

26   the requirements of 1462.

27        And two things that I want to point out that

28   were alluded to earlier, first of all, Your

29   Honor, the very first paragraph of the affidavit

30   section regarding what their plan is, which

31   again, 1462 states that they have to particularly

32   identify what it is that they want to do and it

27

1062

28

1    has to be limited in scope to be as little

2    burdensome as possible, so that the details and

3    extent of this plan may change depending on what

4    is discovered once access to the site is obtained

5    and conditions are examined firsthand. So in

6    other words, Judge, we want you to open up the

7    door to the landfill and let us go in there and

8    then we'll figure out what we want to do and

9    that's just not in accordance with what the rules

10   set forth to avoid this type of ambush discovery

11   and inspection.

12       And the second thing out of that same

13   affidavit, again, from the section regarding what

14   data they're looking for, paragraph 19 of the

15   expert affidavit, theoretically, the best

16   possible evidence to determine such exposure that

17   harms have occurred would be the actual air

18   samples taken on a regular basis at each of

19   petitioner's home. None of that has been done.

20   We don't even know if what these folks are

21   alleging, what they're complaining of is even --

22   if there's anything at their house, much less if

23   it's anything that can be produced by a landfill.

24   And as the Court alluded to earlier, there's

25   nothing stopping them from doing that, which is

26   the practical first step in this process which

27   again has not been done. So we'll touch on that

28   more if we get pass the lis pendens, but --

29   THE COURT:

30       Are there any Louisiana cases in which the

31   expedited discovery rules have been applied or

32   allowed? Is there any cited cases?

29

1   MR. MOCHIS:

2       Judge, they do not --

3   THE COURT:

4       Are there?

5   MR. MOCHIS:

6       They do not cite any cases in support of

7   what they're asking for.  In fact, to the

8   contrary, I think the law and argument section,

9   the second sentence of that section specifically

10  says we have not found any Louisiana cases on

11  point.

12      This is certainly not the first landfill

13  case, certainly not the first emissions case, not

14  the first air quality case, yet, there's not case

15  on point with what they're asking the Court to do

16  here today.  That's the first thing.  So they

17  take a step further and go look at federal cases,

18  one of which or all of which or half of which

19  that they cited the request was denied.  The

20  other ones, there had already been discovery

21  conferences.  There had been response of

22  pleadings filed.  There had been written

23  discovery.  There had been conferences among

24  counsel.  There had been conferences with the

25  judge, written requests, all of this to vet out

26  what it is that they're asking for.  Are they

27  entitled to it before we present it to the Court.

28  None of that has been done here.  So, no, Your

29  Honor, there is no support for what they're

30  asking the Court for today.

31  THE COURT:

32      Some years ago there was some legislation

1    proposed to actually shut down the Jefferson

2    Parish Landfill and transfer all the waste stream

3    over to another landfill, as I recall. Wouldn't

4    be here today had that happened. Just a thought.

5         Mr. Neuman, I'm sorry, no, Mr. -- not Mr.

6    Neuman, sorry. Counsel, anything else you want

7    to add?

8    MR. MIMS:

9         Yes, Judge.   I just wanted to clarify

10   quickly some points on the Louisiana law on lis

11   pendens.

12        There was a discussion from Mr. Neuman about

13   whether the res judicata test would apply here

14   given that the plaintiffs, the Addison plaintiffs

15   have not opted out yet. Mr. Neuman says, well,

16   we just can't know until they opt out.   That's

17   not true and the IESI LA case makes that very

18   clear.   That was the same situation in IESI LA.

19   The IESI LA plaintiffs had not made a decision on

20   whether to opt out or not.

21   THE COURT:

22        Agreed, but in fairness and I think what Mr.

23   Neuman was pointing out is they sought basically

24   the protection of the class action statute so

25   that they could avoid the liberative prescription

26   issue.   I mean, they are actually alleging class

27   status so they wouldn't be -- their claims

28   wouldn't be prescribed.

29   MR. MIMS:

30        I understand that, Your Honor.   And when

31   you look at the IESI LA opinion, you'll see that

32   it was not limited.   That was not a

30

1065

1    distinguishing factor. If you look at IESI LA,

2    it's 180 So.3rd and I'm looking at page 270, the

3    finding, it says, "We find the trial court erred

4    in finding there exists no identity of the

5    parties for lis pendens purposes when a putative

6    class member, such as plaintiffs herein, is not a

7    named plaintiff or joined as a party in the class

8    action."

9         It doesn't say when a plaintiff who alleges

10   to be a putative class member. It says when they

11   are a putative class member. You just heard Mr.

12   Neuman concede that under the definition proposed

13   by the class members, they are putative class

14   members. So whether or not they have tried to

15   rely on that for prescription purposes doesn't

16   change the real question, which is do they fit

17   under the definition of the proposed class and

18   they clearly do.

19   THE COURT:

20        All right.  So I think as I indicated at the

21   beginning, I think it's incumbent upon the Court

22   to rule upon the Exception of Lis Pendens prior

23   to taking up any other issues as depending upon

24   that ruling there may be no other issues to be

25   addressed. Obviously, the issues have been well

26   briefed and well argued and the law, I think, is

27   fairly settled in this area. The relevant

28   articles include 531, 532 and the cases cited by

29   counsel for the plaintiff and defendant.

30        From a Court's perspective, and, obviously,

31   there's the requirement that I follow all binding

32   authority, and I just don't see a way around the

31

1066

32

1   IESI LA case as far as the exception goes.  I

2   think given the class definition, the proposed

3   class definition and the allegations alleged in

4   the plaintiffs' petition in the Addison matter

5   that there is no way that this Court can envision

6   that those same plaintiffs wouldn't be members of

7   the class if a class is so certified.  That

8   doesn't mean that they can't opt out, obviously,

9   but that's not the question now.  The question is

10  whether they are basically putative class members

11  and, again, I can't see a way that they would not

12  be.

13       As such, I think the last elements with

14  regard to lis pendens, again, whether there's an

15  identity of parties or the same parties is

16  actually satisfied by virtue of that.  I don't

17  think there's any question it's the same

18  transaction and occurrence and the other issues I

19  think if not conceded, I think basically

20  understood by counsel for the plaintiffs that

21  those issues would be satisfied.

22       So because I think there is also the same

23  parties involved based upon the classes that are

24  proposed in the federal litigation at this point,

25  I don't see a way around these plaintiffs being

26  included in that class and as such, I think you

27  do have the same parties.  Accordingly, I think

28  the rules of lis pendens would apply and as such,

29  the Court would grant the Exception of Lis

30  Pendens.

31       I understand, Mr. Neuman, that I have the

32  right to exercise discretion in this particular

1    matter.  I am reluctant, as always, to have

2    similar cases or same cases traveling down

3    different paths.  I think from a judicial

4    efficiency standpoint and I think in fairness to

5    the defendants to be able to defend these types

6    of actions in one forum I think is just

7    fundamentally fair.  So I'm not going to exercise

8    the discretion and allow this matter to continue,

9    as such.  Given that the federal action is

10   pending, it's incumbent upon the Court to stay

11   these proceedings, not to dismiss them, but to

12   simply stay them as I appreciate the law in this

13   matter.

14        So accordingly, the Court is going to grant

15   the Exception of Lis Pendens and stay the

16   proceedings in this case.  I'm not going to make

17   a ruling because I think at this point the issue

18   of whether or not the expedited discovery issue

19   is moot.  So I'm not going to make a ruling on

20   that particular issue.  However, if the Fifth

21   Circuit reverses me on lis pendens exception, I

22   will give you a hearing right away with regard to

23   that issue as soon as it comes back, if it comes

24   back, so that issue can be addressed in a

25   timely fashion at that point.

26        That being said, counsel, if you'll prepare

27   a judgment to that effect, Exception of Lis

28   Pendens is granted granting a stay of these

29   proceedings until such time as -- as what?

30        That's the question.  Until such time as the

31   federal litigation is either remanded or a class

32   is certified.

33

1  MR. MIMS:

2       I think certification would be the key

3  issue, whether that would be in --

4  THE COURT:

5       Well, if it's remanded, then it's going to

6  come back and then at this point, actually, this

7  case wouldn't be here because this case would

8  then go to the lowest filed number in Jefferson

9  Parish, which I think is Division E case.

10  MR. MIMS:

11      Well, whether it's remanded or not, it'll

12  still be a class action and so we would still be

13  in the same place of waiting.

14  THE COURT:

15      I guess you're right.  I guess it would be

16  remanded as a class action.  It wouldn't -- yeah,

17  unless -- I guess it would still be remanded as a

18  class action.

19  MR. MIMS:

20      I believe certification in either scenario

21  is going to be the key here.

22  THE COURT:

23      Well, that raises an interesting question,

24  though, because if at this point because it's a

25  federal action I grant the Exception of Lis

26  Pendens and order the stay of these proceedings,

27  if it's remanded and then the class action

28  becomes a state court action, then the Lis

29  Pendens Exception would be that this matter would

30  be dismissed?

31  MR. MIMS:

32      Correct, Your Honor.  Dismissed without

34

1069

1    prejudice pending the class certification

2    decision.

3    THE COURT:

4       That makes for a weird judgment.

5    MR. MIMS:

6       We'd be happy to work on that language and

7    I'm sure Mr. Neuman and I can come to some sort

8    of agreement on that.

9    THE COURT:

10      Yes.  All right.  So at this point let's

11   just take it one step at a time and that way I

12   won't get ahead of myself.  So let's just -- the

13   judgment will be that the Court is granting the

14   Exception of Lis Pendens and that this matter is

15   stayed pending a resolution of the federal action

16   by remand or class certification.  If it's

17   remanded, then, Mr. Neuman, obviously, you're

18   going to have some different issues that are

19   there that we'll have to deal with and then we'll

20   deal with those at the appropriate time, if

21   necessary.  But I still say if it gets remanded

22   back to state court, then this action should be

23   consolidated with the lowest filed number in

24   state court and I don't think that's going to be

25   me.  I think that's Division E, as I appreciated

26   the filing numbers, but that'll be a different

27   question.

28   MR. MIMS:

29      I agree.  At this point it makes sense to do

30   a stay until either remand or class

31   certification--

32   THE COURT:

35

1070

36

1    Class certification.

2    MR. MIMS:

3    -- and we can revisit those issues if we

4    need to down the road.

5    THE COURT:

6    All right.  Thank you.

7    (END OF PROCEEDINGS)

CERTIFICATE

STATE OF LOUISIANA

PARISH OF JEFFERSON

1    I, GINA RUIZ PATIN, CDR, Certified Digital Reporter,

2 in and for the State of Louisiana, employed as Official

3 Court Reporter for he Twenty-Fourth Judicial District

4 Court, for the State of Louisiana, was not the Court

5 Reporter on this case, however, do hereby certify that the

6 above was transcribed under my personal direction and

7 supervision, and is a true and correct transcription of

8 proceedings to the best of my ability and understanding

9 before Stephen Grefer, Presiding Judge, on January 24,

10 2019;

11    That I am not of counsel, nor related counsel or to

12 the parties hereto, nor am I otherwise interested in the

13 outcome of this matter.

14    This certification is valid only for a transcript

15 accompanied by my original signature and original seal on

16 this page.

17    Signed this 6th day of February, 2019.

GINA RUIZ PATIN

Certified Digital Reporter

Certificate #1032018

1072

**CONNICK AND CONNICK, L.L.C.**
**ATTORNEYS AT LAW**

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN

ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
BRENDAN P. CONNICK
ELIZABETH A. ZAVALA
LAURA M. BLOUIN
NOAH R. BORER

3421 NORTH CAUSEWAY BOULEVARD SUITE 408
METAIRIE, LOUISIANA 70002

TELEPHONE: (504) 838-8777
FACSIMILE: (504) 838-9903
WEBSITE: www.connicklaw.com

OF COUNSEL,

PAUL D. CONNICK, JR.

DIRECT DIAL: (504) 681-6658
EMAIL: moghis@connicklaw.com

May 1, 2019

CLERK OF COURT
24TH JUDICIAL DISTRICT COURT
200 Derbigny Street
Gretna, Louisiana 70053
Phone: (504) 364-2900
Fax:    (504) 364-3780

      Re:   *Addison, et al. v. Jefferson Parish, et al.*
           Court:  24th JDC, Case No. 790-369, Division "J"
           File No.: 81.182829

Dear Sir/Madam:

      Attached please find Jefferson Parish's Motion to Adopt Waste Connections Defendants Opposition to Plaintiff's Motion to Permanently Lift Stay and Exhibit "A", which I ask that you file in connection with the above-captioned matter.  Please advise of the costs associated with this request so that a check to cover same can be forwarded with the original.  Please return a filed copy of same to my office in the enclosed self-addressed stamped envelope.

      Thanking you in advance for your cooperation, I remain

                          Sincerely,

                          CONNICK AND CONNICK, L.L.C.

                          MATTHEW D. MOGHIS

MDM/js
Attachments
cc:    Barry Neuman (bneuman@wtplaw.com)
       Byron Forrest  (byron@fcjlaw.com)
       Eliza James (eliza@fcjlaw.com)
       Nicholas Cressy (nicholas@fcjlaw.com)
       Michael Mims (mmims@bradleyfirm.com)
       David Taggart (dtaggart@bradleyfirm.com)
       Jim Slaughter (jslaughter@bdlaw.com)
       William Barousse (wbarousse@glllaw.com)
       Mike Digiglia (mdigiglia@glllaw.com
       Megan Brillault (mbrillault@bdlaw.com

**24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**NO. 790-369**                                                    **DIVISION "J"**

**FREDERICK ADDISON, et. al.**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et. al.**

**FILED:** _____     _____
                                                        **DEPUTY CLERK**

## JEFFERSON PARISH'S MOTION TO ADOPT
## WASTE CONNECTIONS DEFENDANTS OPPOSITION TO
## PLAINTIFF'S MOTION TO PERMANENTLY LIFT STAY

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jefferson

Parish, who adopts and incorporates, as if copied here *in extenso*, the Memorandum in

Opposition to Plaintiff's Motion to Permanently Lift Stay filed by Waste Connections

Defendants, and further sets forth as follows:

Plaintiff's Motion to Permanently Lift Stay is more appropriately described as a

third attempt to reargue previously decided issues. This exact question has previously

been briefed and argued before this Court, extensively. Now, Plaintiffs are re-urging the

same argument under the guise that an inconsequential pleading in the Federal Court

case affects this Court's prior decision.[1] The analysis and law remain the same, as

should this Court's ruling.

On January 24, 2019, this Court initially considered the arguments set forth

herein and correctly ruled that the law mandated this case be stayed pending ruling on

class certification by Federal Court. On March 21, 2019, Plaintiffs filed an Application for

Supervisory Writ with the Louisiana Fifth Circuit Court of Appeal challenging that ruling

(currently pending). Now, Plaintiffs seek to reargue the same issues, citing an

inconsequential Joint Amended Complaint filed in the Federal Court actions. However,

Plaintiffs cite nothing to change the fact that the pending class actions are (1) between

_____

[1] Defendant notes that it has not been properly served with the Rule to Show Cause on Plaintiff's Motion
to Permanently Lift Stay. On the Rule to Show Cause (improperly labeled as an Order), Plaintiffs
requested service via U.S. Mail, which is in violation of Louisiana Code of Civil Procedure article 1313 (C).

**1 of 3**

the same parties and (2) arise out of the same transaction or occurrence as this case. The appropriate avenue for Plaintiffs to raise their issues with the application of Louisiana law is with the Fifth Circuit, not by re-urging the same argument with this Court.

As this Court noted during the prior hearing, the crux of the analysis was whether there was the same identity of the parties.[2] On that issue, Plaintiffs' counsel *previously admitted that these Plaintiffs would be class members if the class was certified*:

> "We have heard about res judicata and counsel has acknowledged that the test here, the test is whether those class actions will act as res judicata with respect to our clients. We will not know that unless and until a class is certified in those cases and until, unless and until any of our clients chooses to opt in or out of those classes. And obviously, we cannot - - I cannot, as counsel for my clients, tell your on today that our clients would opt out of those cases. It would not be appropriate. It is like an advanced waiver."[3]

Plaintiffs' argument then, and now, was essentially that fairness should allow them to move forward and that the Louisiana Supreme Court case, *Aisola v. Louisiana Citizens*, should not apply.[4] This argument was and remains clearly contrary to binding law, which this Court has previously ruled in accordance with.

The analysis here is <u>not</u> whether Plaintiffs can choose to opt out of the class action in the future, but whether "*a final judgment in the first suit would be res judicata in the subsequently filed suit.*"[5] As previously briefed and argued, res judicata is determined by looking at whether the actions are (1) between the <u>same parties</u> and (2) arise out of the <u>same factual allegations/alleged conduct</u>.[6] The analysis when applied to this case remains the same; Plaintiffs in this matter are putative members of the proposed class in the Federal Court cases.

As is their right, Plaintiffs have applied for supervisory writ with the Louisiana Fifth Circuit Court of Appeal. That is the appropriate avenue to address Plaintiff's

---

[2] Transcript of hearing on January 24, 2019, attached hereto and marked as "Exhibit A," at Page 4:16-29.
[3] "Exhibit A," at Pages 15:21 – 16:4.
[4] *Aisola v. Louisiana Citizens Prop. Ins. Corp.*, 2014-1708 (La. 10/14/15), 180 So.3d 266.
[5] *Aisola*, at 269.
[6] *See* Waste Connections Defendants' Memorandum in Opposition to Plaintiffs' Motion to Permanently Lift Stay, filed May 1, 2019, at Page 9.

disagreement with binding case law, not re-urging the same argument previously decided by this Court.

WHEREFORE, Defendant, Jefferson Parish, respectfully requests that this Court deny Plaintiffs' Motion to Permanently Lift Stay.

Respectfully submitted,

CONNICK AND CONNICK, LLC

WILLIAM P. CONNICK, LA. BAR NO. 14158
MICHAEL S. FUTRELL, LA BAR. NO. 20819
MATTHEW D. MOGHIS, LA BAR. NO. 33994
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone:   (504) 681-6658
Facsimile:   (504) 838-9903
E-mail:   moghis@connicklaw.com

*Counsel for Defendant, Jefferson Parish*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all known counsel of record in this proceeding by:

( )   Hand Delivery            ( )   Prepaid U.S. Mail
(X)   Email                    ( )   Facsimile

New Orleans, Louisiana this 1st day of May, 2019.

MATTHEW D. MOGHIS

3 of 3

1              24TH JUDICIAL DISTRICT COURT

2                    PARISH OF JEFFERSON

3                    STATE OF LOUISIANA

4

5     FREDERICK ADDISON, BARBARA        NO. 790-369
      ADDISON, PERRY ANDRAS, ET AL
6
      VERSUS
7
      LOUISIANA REGIONAL LANDFILL
8     COMPANY, IESI LA LANDFILL
      CORPORATION, WASTE CONNECTIONS
9     BAYOU, INC., ET AL

10

11                 **EXCEPTION OF LIS PENDENS**

12

13          Taken in the above entitled and numbered cause,

14    before Honorable Stephen Grefer, presiding on the 24th day

15    of January, 2019.

16

17    <u>APPEARANCES</u>:

18
      **BYRON FORREST, ESQUIRE**
19    **ELIZA JAMES, ESQUIRE**
      **NICK CRESSY, ESQUIRE**
20    **BARRY NEUMAN, ESQUIRE**
           Counsel Representing Plantiffs
21

22    **MICHAEL MIMS, ESQ.,**
      **MEGAN BRILLAULT, ESQ.,**
23         Counsel representing Defendant,
           Waste Connections U.S, Inc.
24

25    **MATT MOGHIS, ESQ.,**
      **PETER CONNICK, ESQ.,**
26    **MIKE FUTREL, ESQ.,**
           Counsel representing Defendant,
27         Parish of Jefferson

28

29

30
      Reported by:
31         Rosa Manale
           Certified Court Reporter
32



```
 1              THE COURT:
 2                   Case number four on today's docket 790-369,
 3              Addison versus Louisiana Regional Landfill.
 4                   Counsel, step up, state your names and
 5              representations for the record, please.
 6              MR. FORREST:
 7                   Good morning, Judge.  My name is Byron
 8              Forrest.  I'm here on behalf of plaintiffs.  With
 9              me I've got Eliza James, Nick Cressy and Barry
10              Neuman.  I'd like to introduce him.  He's from
11              D.C.
12              THE COURT:
13                   Good morning.
14              MR. NEUMAN:
15                   Good morning, Your Honor.
16              MR. MIMS:
17                   Good morning, Your Honor.   Michael Mims on
18              behalf of Waste Connections U.S., Inc., also got
19              my co-counsel, Megan Brillault of the Beveridge &
20              Diamond firm.
21              MS. BRILLAULT:
22                   Good morning, Your Honor.
23              THE COURT:
24                   Good morning.
25              MR. MOGHIS:
26                   Good morning, Judge.  Matt Moghis on behalf
27              of Jefferson Parish with co-counsel Peter Connick
28              and Mike Futrel.
29              THE COURT:
30                   I hope nobody calls the office.  There's
31              nobody there.
32                   All right, counselors, so it would appear to
```

2

1     the Court to take up the Exception of Lis Pendens

2     first because based upon that ruling, then the

3     other matter I think is going to be moot.  If I

4     grant the Exception of Lis Pendens, I don't think

5     I have jurisdiction to rule on anything else.  If

6     I deny it, then we can take up the Motion for

7     Expedited Discovery.  So I guess, let's take up

8     that Exception first and then we'll go from

9     there.  All right.  Y'all can be seated.

10    MR. MIMS:

11        Good morning, Your Honor.  Michael Mims on

12    behalf of Waste Connections U.S., Inc.  I'll be

13    handling the Exception of Lis Pendens.  My

14    colleague, Megan Brillault, if necessary, will

15    address the issue of plaintiff's request for

16    discovery.

17        The Addison petition should be stayed or

18    dismissed because it is a copycat lawsuit of four

19    previously filed proposed class actions that are

20    currently pending in the Eastern District of

21    Louisiana.

22    THE COURT:

23        Can I ask a question just off the top?

24    MR. MIMS:

25        Yes.

26    THE COURT:

27        Why not moot this one like all the other

28    ones?  Why are we having this here?  Why wasn't

29    this one removed like the others?

30    MR. MIMS:

31        The four previously filed actions were

32    removed pursuant to the Class Action Fairness

3

1      Act.

2      THE COURT:

3          So you don't have jursi --

4      MR. MIMS:

5          This is not a class action.

6      THE COURT:

7          You don't have diversity and what not.  I

8      got you.  Now I'm with you.  All right, go ahead.

9      MR. MIMS:

10         The test for lis pendens in Louisiana is

11     whether a final judgment in the previously filed

12     action would be res judicata in the subsequently

13     filed actions and that is the case here because

14     we have the same parties and the action arises

15     from the same transaction or occurrence.

16     THE COURT:

17         Give you same transaction and occurrence,

18     you don't have to go into that.  Obviously, the

19     big fight is same parties, right?

20     MR. MIMS:

21         Yes.

22     THE COURT:

23         So you've got this putative class action

24     over here which may or may not include these

25     plaintiffs over here.  You've got identified

26     plaintiffs over here.  Why do they get lumped

27     into there when they're going to say, well,

28     Judge, we're going to opt out and then we're not

29     part of the class action?

30     MR. MIMS:

31         Right.  So they don't seem to dispute that

32     we've got the same defendants here.  The issue is

4

```
 1          are these the same plaintiffs?  And, thankfully,
 2          we've got a Louisiana Supreme Court opinion from
 3          2015 that's right on point.  That's the IESI LA
 4          case.  That case the trial court was looking at
 5          an individually filed action, a Hurricane Katrina
 6          insurance dispute.  There had previously been
 7          filed a class action and the individual plaintiff
 8          was a member, or at least they fit within the
 9          definition of the proposed class.
10               Now, that plaintiff said, well, I'm not a
11          named plaintiff in the class action, so there's
12          not an identity of the parties and the trial
13          court denied the Exception of Lis Pendens.  Goes
14          to the Louisiana Supreme Court.  Louisiana
15          Supreme Court reverses and says, no, whether
16          you're a named plaintiff or not, you are a member
17          of the proposed class and you have not opted out
18          yet and because you have not opted out yet, you
19          are represented by that class and there is an
20          identity of the parties and the Supreme Court
21          said the Exception of Lis Pendens should be
22          granted.  That's exactly what we have here.
23               Now, the plaintiffs are trying to draw the
24          distinction that, well, in the IESI LA case, they
25          actually allege they were members of the class.
26          That's a distinction without a difference.
27          Whether these plaintiffs want to be members of
28          the class or whether they say they are members of
29          the class doesn't change the fact that they are
30          members of this proposed class.  If you look at
31          the proposed class actions, they define the class
32          as all residents of Jefferson Parish who have
```

5

1    been damaged by the odors emanating from the

2    Jefferson Parish Landfill.

3         If you look at the Addison plaintiffs'

4    petition, they allege that they are all residents

5    of Jefferson Parish who have been harmed by the

6    odors emanating from Jefferson Parish.  So they

7    may not claim that they're members of the class,

8    but in reality they are members of the class.

9         As far as opting out, first of all, if you

10   look at their pleadings here, they make it very

11   clear that they're reserving the right to join

12   that class.  But aside from that point, Louisiana

13   law is clear, and again, we've cited two

14   different Louisiana Supreme Court cases on the

15   point, Duckworth and Quinn, that say you can't

16   opt out until you go through the actual specific

17   Louisiana class action procedure, which has a

18   notice provision and a certification procedure

19   and then an opt out procedure.  But until you're

20   formally able to opt out, you're still a member

21   of that class.

22   THE COURT:

23        You can't opt out until there's a class to

24   opt out of.

25   MR. MIMS:

26        That's correct.  And as I mentioned, these

27   plaintiffs here apparently have not made up their

28   mind whether they will opt out or not.  So

29   pursuant to that IESI LA case, we do have an

30   identity of the plaintiffs.  We have an identity

31   of the defendants.  We've got the same

32   transaction or occurrence.  If there's a final

6

1    judgment in the first filed action, that's the

2    Ictech-Bendeck action in the Eastern District,

3    that would be res judicata here.  So clearly, the

4    lis pendens test would apply.

5        What plaintiffs seem to really hang their

6    hat on is this fairness argument that, well, even

7    if all the lis pendens factors apply, it would

8    just be unfair to not let us go forward.

9    THE COURT:

10        Yes.  I mean, at this point, counsel,

11    they're stuck, right?  So if your argument holds

12    and if your argument is correct, they can't do

13    anything until some Federal Court that they're

14    not a part of rules on some case that they're not

15    a member of and makes a decision and they just

16    have to sit here saying, Judge, okay, so I have

17    no rights until a case that I have nothing to do

18    with makes some decision and that does seem

19    unfair, right?

20    MR. MIMS:

21        Well, two things.  I don't know that I would

22    go as far as to say they have no rights.

23    THE COURT:

24        Well, you're telling them they can't go

25    forward because there's a lis pendens with this

26    other case going on.

27    MR. MIMS:

28        They can't go forward with this action, this

29    action for damages that they filed relating to

30    the same transaction or occurrence.  That's

31    right.

32        We're dealing with environmental issues

7

1        here.   There are administrative remedies here.

2        I'm not saying they have no rights here until

3        something happens in the earlier action, but I am

4        saying that they cannot bring a parallel

5        proceeding asking for damages when four other

6        class actions were filed five months before

7        their's.

8             If you look at the class action allegations,

9        they say these odors have been going on since

10       August of 2017, almost a year and a half ago.

11       This group of plaintiffs, for whatever reason,

12       sat on their hands while those odors started.

13       They sat on their hands when all the other

14       plaintiffs filed their class actions and for

15       whatever reason, just before the Christmas

16       holidays here, they filed their lawsuit.

17            Now, when we talk about fairness --

18       THE COURT:

19            Sitting on their hands may not be a fair

20       characterization.  Perhaps, they were

21       interviewing plaintiffs to make sure they had

22       plaintiffs that actually suffered damages before

23       they just grabbed anybody who wanted to come in

24       and sign the letter, right?

25       MR. MIMS:

26            Well, and they waited until they had --

27       THE COURT:

28            Perhaps they were doing their due diligence

29       to make sure they had good plaintiffs before they

30       actually filed a lawsuit.·

31       MR. MIMS:

32            Well, and they waited until they had 86

8

1      plaintiffs --

2      THE COURT:

3            Yes.

4      MR. MIMS:

5            -- before they filed this action.

6      THE COURT:

7            Yes.

8      MR. MIMS:

9            But when we talk about fairness, you also

10     have to consider that the fairness not only to my

11     client, Waste Connections, a corporate entity,

12     but you've got Jefferson Parish.  This is a

13     landfill owned by the parish and the possibility

14     of duplicative litigation, defending itself in

15     multiple proceedings, conflicting judgments from

16     the Court.  It's a waste of resources when you

17     consider that at some point there's going to be a

18     final judgment in that Ictech-Bendeck action and

19     that's going to be res judicata here.

20     THE COURT:

21           So what they're really asking for right now

22     is, Judge, I don't want a judgment in favor of my

23     clients right now, right?  They're not asking for

24     me to award money at this point.  They're just

25     simply saying, Judge, let me do some immediate

26     discovery so I can lock down a few numbers ahead

27     of time so that when all these issues come up

28     later on down the road, we at least know this

29     baseline.  We know where we started.  What's the

30     harm in just letting them do that limited

31     discovery and then saying after you do that, I'm

32     going to grant the stay and everything is shut

9

1       down.  Why not do that?

2       MR. MIMS:

3            A couple things, Your Honor.  Again, when we

4       look at the proposed class actions, those were

5       filed by experienced, competent Louisiana

6       plaintiff attorneys, primarily Val Exnicios and

7       Anthony Irpino.  They've already proposed this

8       plaintiffs' steering committee.  The Addison

9       plaintiffs' counsel are not at the table for that

10      plaintiffs' steering committee.  Mr. Exnicos and

11      Irpino are going to want to do discovery of their

12      own.  So you're subjecting my client and the

13      parish to multiple rounds of discovery, the

14      potential for conflicting directives.

15           You know, we're talking about a physical

16      entry upon a landfill.  There's going to have to

17      be some sort of directives as to what is the

18      scope of this.  So there's almost the certainty

19      that we're going to have conflicting directives

20      about what is the scope of that discovery and the

21      waste of resources involved in doing this twice

22      when this action is going to be subject to res

23      judicata.  Why are we doing discovery in this

24      action that is not going to be going anywhere.

25      THE COURT:

26           Why is it wasted discovery if this group

27      gets subsumed into the class action, why can't

28      the class action group just simply use this

29      discovery, you know, to their advantage?

30      Perhaps, this group becomes part of the steering

31      committee, as well, because they hold this

32      discovery --

                                                    10

1   MR. MIMS:

2     Well, I think --

3   THE COURT:

4     -- that everybody wants.

5   MR. MIMS:

6     I think that's a fair point that the class

7   action can be discovery.  They have not asked for

8   discovery yet.  So we've got this group of

9   plaintiffs here claiming there's this emergency

10   at the landfill and we need this immediate

11   discovery at the landfill.  Again, we're talking

12   about Val Exnicios and Anthony Irpino.  If they

13   thought there was an emergency at the landfill, I

14   guarantee you they would have filed some motion

15   for emergency discovery at the landfill.  That

16   hasn't happened.

17     Now, maybe these attorneys are not happy

18   with the way that the class action plaintiffs are

19   running their case, but that's why you don't sit

20   on your hands for five months while all these

21   other lawsuits get filed first.  So they may not

22   be happy that they're not a part of that

23   plaintiffs' steering committee, but it's not this

24   Court's job to grant them that relief.

25   THE COURT:

26     No.  I'm not trying to put them on the

27   steering committee.  I guess my question is in

28   fairness to their clients, eighty or so, you

29   know, why is it fair to their clients, who at

30   this point again are not part of the class, at

31   least since the class hasn't been defined, that

32   they can't move forward with their case in the

```
 1              direction they want to move forward with them?  I
 2              guess that's -- where is the harm?  You're
 3              talking about there's wasted resources.  So
 4              you're not wasting your experts to go in and take
 5              samples.  It's their experts, if they want to pay
 6              for their experts to go in and take air samples
 7              and do what they need to do, where's the harm to
 8              your client to do that other than having someone
 9              there to stand next to them while they do this?
10         MR. MIMS:
11              Your Honor, I'll let Ms. Brillault elaborate
12              on exactly what such an inspection would involve,
13              but I can guarantee you it would involve some
14              experts and resources on our end to oversee that
15              sort of discovery.  It would not be as simple as
16              come on over to the landfill and do what you got
17              to do.  It would be a very precise procedure that
18              we'd have to pin down ahead of time about what is
19              this discovery going to entail.
20              And, again, you've got this other group of
21              plaintiffs that are going to want discovery of
22              their own and, frankly, I think it would be a
23              potential prejudice to them that you would have
24              an inconsistent discovery ruling from this Court
25              when they were the first filed group.
26              One thing I think that needs to be made
27              clear is that we are not saying that these
28              plaintiffs should be denied access to the courts.
29              When you look at Louisiana's Class --
30         THE COURT:
31              Just now.
32         MR. MIMS:
```

                                                              12

1           Well, when you look at Louisiana's Class

2       Action Law, it says that when you're a member of

3       the proposed class, as they are, you have access

4       to the courts through the class action procedure.

5       And Louisiana law, this is a quote from the <u>IESI</u>

6       <u>LA</u> case, it says that the purpose and intent of

7       the class action procedure is to adjudicate and

8       obtain res judicata effect on all common issues

9       applicable not only to the representatives but

10      all other similarly situated.

11          You've got this plaintiff steering committee

12      that has already determined that the best way to

13      obtain relief for their clients is through the

14      class action procedure.  To allow these

15      plaintiffs to bypass that procedure results in

16      unfairness to my clients, to the parish, and also

17      to those plaintiffs that were the first filed.

18      So we're not trying to deny their access to the

19      courts.  They do have access through the class

20      action procedure.  Once there is a ruling on

21      class certification, they can choose either to

22      join that class, at which point there's no need

23      for another action, individual action, or at that

24      point they can opt out and they can bring their

25      own procedure in this court.

26          So, Your Honor, we think this issue is ripe

27      for a decision today and we would ask you to

28      decide on this that way we can avoid getting into

29      the technical discussion on the discovery issues.

30      THE COURT:

31          All right.  Mr. Moghis, you want to add

32      anything other than me too or --

13

```
1        MR. MOGHIS:

2            We'll just adopt that argument and save

3        our's for reply if the Court would allow.

4        THE COURT:

5            Sure.

6        MR. MOGHIS:

7            Thanks.

8        THE COURT:

9            Whoever is arguing.

10       MR. NEUMAN:

11           Thank you, Your Honor.  Good morning.

12       THE COURT:

13           Morning.

14       MR. NEUMAN:

15           Barry Newman on behalf of petitioners.

16           May it please the Court.  This is my maiden

17       argument in Louisiana State Court.  It's a

18       privilege to be here.

19       THE COURT:

20           Certainly.  Thank you.

21       MR. NEUMAN:

22           Appreciate the opportunity.

23           Your Honor, I'd like to begin with this

24       fairness notion that counsel addressed in terms

25       of questioning why we supposably sat on our hands

26       and Your Honor touched on it.  I think it's

27       important background for purposes of assessing

28       this motion and where the balance of equities

29       lie.

30           Mr. Forrest's law firm has been inundated

31       with over a thousand phone calls over the last

32       six months requesting that his firm and our firm
```

14

1     represent those people in connection with the

2     problems associated with the Jefferson Parish

3     Landfill.  We have, indeed, been not sitting on

4     our hands, but vetting those individuals before

5     we file and before we file this case, in contrast

6     to class actions that were filed right out of the

7     gate after the parish held a press conference

8     naming one individual.  Our clients -- and we're

9     continuing to vet additional phone calls, and I

10    doubt very much that this will be the last number

11    of plaintiffs on whose behalf we will ultimately

12    be filing complaint with respect to this matter.

13         The pendency of the other actions obviously

14    did not affect these individuals' requests that

15    we -- that they retain their own counsel and

16    bring this action now and that's what we have

17    done and we've acted with alacrity and as quickly

18    as we can once we're sure that we've got a sound

19    basis to name these individuals as our clients

20    now and as petitioners in this action.

21         We've heard about res judicata and counsel

22    has acknowledged that the test here, the test is

23    whether those class actions will act as res

24    judicata with respect to our clients.  We won't

25    know that unless and until a class is certified

26    in those cases and until, unless and until any of

27    our clients chooses to opt in or out of those

28    classes.  And obviously, we cannot -- I cannot,

29    as counsel for my clients, tell Your Honor today

30    that our clients would opt out of those cases.

31    It wouldn't be appropriate.  It's like an

32    advanced waiver.  But what we know is that

15

```
 1              presently no class has been certified and there's

 2              no reason to assume, therefore, that those cases

 3              would act as res judicata with respect to our

 4              clients.

 5                   I would point out in this regard that I have

 6              no doubt, unless counsel here is willing to

 7              stipulate today that they're not going to oppose

 8              class certification once the jurisdictional

 9              issues get sorted out in those class actions, I

10              have no doubt that counsel will be opposing class

11              certification in those cases when the time comes,

12              and under the cases that we cited -- I don't

13              propose to give a dissertation on class action

14              law, which I'm sure Your Honor is familiar with,

15              but under the cases we've cited, there is at

16              least a substantial issue as to whether classes

17              will ever be certified in those cases or not

18              given the fact, as counsel has pointed out, that

19              these individuals who are members of this

20              putative class live all over at different

21              distances from the landfill.  Their situations

22              are going to be different.  Their damages are

23              going to be different.  And under the case law

24              we've cited, it's going to be a uphill battle I

25              would respectfully submit for the petitioners in

26              those cases to be able to certify the class.  And

27              in any event, that isn't going to happen for a

28              long time.

29                   These cases now are myriad in procedural

30              limbo based upon the defendant's choice to send

31              those cases to Federal Court, presumably for

32              their own benefit and for their own purposes.  We
```

16

1       don't know when those jurisdictional issues are

2       going to be determined and it's going to take a

3       long time after that before any class

4       certification issues are determined.

5           Now, because these actions are pending in

6       the Federal Courts at the election of these

7       defendants -- and by the way, I have read the

8       oral argument on the motions to remand that are

9       now pending in the Federal Court in at least one

10      of the cases, and they've made a very powerful

11      argument why those cases should stay in Federal

12      Court.  Because they are in Federal Court, it is

13      quite clear that if lis pendens applies at all

14      here, then it is Article 532 that applies and not

15      531, which means that at most, and the Court has

16      discretion whether or not to stay.  And it is

17      quite clear from the cases that the Court does

18      have that discretion and I would also point the

19      Court to a Louisiana Supreme Court decision,

20      Southwestern Electric Power Company versus Amax,

21      621 So.2d. 615, wherein a per curiam opinion the

22      Supreme Court reversed -- let me back up.  The

23      trial court had exercised its discretion not to

24      stay.  The appellate court reversed and on appeal

25      to the Supreme Court, the Supreme Court

26      reinstated the decision of the trial court to

27      allow the case to go forward saying even if the

28      predicate conditions of 532 are met, the decision

29      to stay a Louisiana suit rests in the sound

30      discretion of the trial court.

31  THE COURT:

32          All right.  So, counsel, given where we are

17

1      and given the <u>IESI LA</u> case and it's a Supreme

2      Court case, obviously, that I'm required to

3      follow, but given the <u>IESI LA</u> case, are you

4      basically saying, Judge, we don't think its lis

5      pendens, but it probably is under <u>IESI LA</u> and if

6      it is under <u>IESI LA</u>, you still shouldn't grant

7      the stay?

8      MR. NEUMAN:

9          We don't think it is under <u>IESI LA</u> either

10     and I'll tell you why.

11     THE COURT:

12         Okay.  Tell me why.

13     MR. NEUMAN:

14         Because <u>IESI LA</u> and the other cases that

15     they've cited all involve the question of whether

16     plaintiffs in a subsequently filed individual

17     action, who specifically allege that they are

18     members of a putative class in a previously filed

19     class action, in order to gain the benefit of the

20     suspension of prescription, should be allowed to

21     do that, or whether they should be deemed to be

22     members of the class and what the Court said in

23     <u>IESI LA</u> and what the Court said in <u>Harris</u> and the

24     other cases they've cited is that when the

25     petitioners choose to tell the Court that they

26     are members of the putative classes that are

27     pending in other actions, in order to gain the

28     benefit, in order to gain the benefit of the

29     suspension of prescription, then they can't have

30     it both ways.  They can't also say we're not

31     going to be bound by whatever happens in the

32     class action lawsuit.  So, in effect, in those

18

```
 1            cases, the petitioners are telling a court we

 2            want to be part of those cases.  And so it's

 3            clear that those cases, those class actions would

 4            act as res judicata.  That's not the situation

 5            here.  As I said earlier, Your Honor, we don't

 6            know -- we're not going to know for a long time

 7            whether or not --

 8       THE COURT:

 9            And I'm with you and I understand we're a

10            long way away from class certification and how

11            that class would ultimately be defined, but can

12            you envision any scenario where your plaintiffs

13            wouldn't be a member of a class as it's proposed?

14            I mean, I can't think how your plaintiffs would

15            be different than those members of the class.

16       MR. NEUMAN:

17            I think that if a class is certified, it

18            delineated the way they've asked for it, yes, as

19            described in the complaint.  Then we would be

20            members of the -- then our clients would be

21            members of the class --

22       THE COURT:

23            Unless you opt out, obviously.

24       MR. NEUMAN:

25            -- unless they opt out.  But, again, these

26            cases that they've cited all have to do with the

27            application of Article 596(a), the suspension of

28            liberal prescription and the courts in those

29            cases made very clear, in Duckworth and others,

30            we're basing this on the fact that we have to

31            read 596(a) very literally and 596(a) talks about

32            a previously filed class action in which these
```

19

```
 1              plaintiffs who filed a new suit would be member

 2              of the described class.  And the Courts said that

 3              we have to read that 596(a) very literally.  That

 4              has nothing to do with our situation.

 5                   So that's our first point, we do not think

 6              that this is a situation where res -- where the

 7              Court can say now res judicata necessarily

 8              applies to our clients and, therefore, lis

 9              pendens applies.  But you're correct, even if the

10              Court were to say that, then we are under 532 and

11              it's a matter of discretion.  And in that regard,

12              Your Honor, I think that the Court should

13              exercise its discretion for the reasons we've

14              laid out in the brief.  I mean, the fact is it

15              says we can get administrative relief,

16              administrative relief doesn't provide damages.

17              We're here to, in large part, to collect damages

18              for past and continuing harm.  No administrative

19              relief grants that.

20         THE COURT:

21                   And, counselor, I know this is off topic,

22              but just while you're up there, what is it --

23              I've read your expert's affidavit.  Quite

24              honestly, I guess I don't understand the

25              technical aspects of it.  But what is it he's

26              actually trying to do?  What is involved in this

27              expedited discovery that he wants to conduct?

28         MR. NEUMAN:

29                   At the site, what we want to do is we want

30              to go out to specific limited set of locations on

31              the site, a couple of wells where the gas is

32              collected.  We want to go to the inlet, to the --
```

                                                              20

```
 1              they're burning -- they're collecting gas and
 2              occasionally burning it off in a flare.  And so
 3              we want to go to the inlet, to the flare before
 4              it's burned to get a sample there.  And we want
 5              to get some samples of the leachate which is part
 6              of the problem here and a sample at the edge of
 7              the landfill to see if there's any migration
 8              going out from the landfill.
 9         THE COURT:
10              You can take the sample at the edge of the
11              landfill, regardless, right?  I mean, you can do
12              that from the street?
13         MR. NEUMAN:
14              Right on the property.  Right at the edge of
15              the property.
16         THE COURT:
17              You want to be inside the fence instead of
18              outside the fence?
19         MR. NEUMAN:
20              Right, inside the fence.  We want to take
21              samples there and analyze those samples for
22              specific suites of chemical compounds which are
23              typically found in landfill gases, which are
24              known to be toxic and which they haven't sought
25              to analyze for at all.
26         THE COURT:
27              So look down the road here a little bit,
28              right?  So here's, I guess, maybe a question that
29              I have and then just thinking down the road in
30              terms of damages.  Your clients aren't harmed if
31              the concentration at the flare level and the
32              concentration within the compound is at one
```

21

1        level, but that level doesn't migrate off the

2        premises across the river to Harahan and River

3        Ridge and wherever else.  The question is what is

4        the level in Harahan and River Ridge --

5        MR. NEUMAN:

6              That's correct.

7        THE COURT:

8              -- and perhaps right off the fence.  Why

9        can't you just now, without any authority from

10       anybody, go take whatever air samples you want on

11       Highway 90 and go take whatever air sample you

12       want on top of the levee in Harahan and River

13       Ridge?  What's preventing you from doing that and

14       doesn't that -- isn't that really the question,

15       is how high are those levels there as opposed to

16       inside the compound, the landfill?

17       MR. NEUMAN:

18             And that's a great question and the answer

19       is, the answer is that we can take all the

20       samples we want out in the field at somebody's

21       house, but in order to nail down whether or not

22       what we measure there is coming from the landfill

23       or as they go at great lengths to point out,

24       there are other sources in the area of potential

25       pollution --

26       THE COURT:

27             I think River Birch would disagree with

28       that, but go ahead.

29       MR. NEUMAN:

30             -- you need to have an understanding --

31       basically, it's fingerprinting, Your Honor, what

32       it is in the science.  You fingerprint the

                                                        22

1        source at the landfill.  That's the first step.

2        You need to know what's the suite of compounds

3        coming out at the landfill so that, yet, then if

4        you're going to sample at the location in the

5        field, you can correlate apples to apples.

6        THE COURT:

7            I'm with you, but isn't that information

8        being captured by the regulatory agencies that

9        are actually doing the testing out there on it

10       seems like a daily basis from the things that

11       I've seen in here?

12       MR. NEUMAN:

13           Well, the answer either way is no, but I'm

14       not sure if you're asking about on the landfill

15       or in the community.

16       THE COURT:

17           I was talking about in the landfill.  It

18       appears that now the regulatory agencies are

19       aware of this issue and they seem to be doing

20       some increased testing at the landfill itself and

21       I don't know what they're taking at the flare

22       spot or somewhere else, but --

23       MR. NEUMAN:

24           No, Your Honor.  The data that has been

25       collected on the landfill pertains -- or at least

26       the publically available data is hydrogen sulfide

27       and odor impressions.  In other words, DEQ people

28       are going around they're taking field readings of

29       hydrogen sulfide, not necessarily the most

30       accurate way to do it, but they're taking

31       readings of hydrogen sulfide gas and they're

32       sniffing around.  I smell the odor here.  I don't

23

```
1            smell an odor here.  It's kind of strong.  It's
2            kind of weak.  I don't detect it here.  Hydrogen
3            sulfide --
4       THE COURT:
5            They seem to be looking at wind direction on
6       occasion.
7       MR. NEUMAN:
8            Pardon?
9       THE COURT:
10           They seem to be looking at wind direction,
11      too, depending on which way the wind's blowing.
12      The wind is blowing this way upon arrival and
13      this way upon departure.
14      MR. NEUMAN:
15           SCS engineers looked a little bit at wind,
16      but they're not -- again, we're talking about
17      hydrogen sulfide.  To understand the risks here,
18      we're talking about -- we have to be looking at a
19      lot more than hydrogen sulfide and that's really
20      the thrust of Dr. Chrostowski's affidavit.  Any
21      responsible, scientific analysis of the true
22      risks being posed by the landfill requires a
23      comprehensive source characterization as the
24      first step.  Nobody's done that.  Nobody's done
25      that.  And they can argue about how we want to do
26      it, what the methods are, whether the model that
27      we haven't even chosen yet is good or not, they
28      can argue about all of that, but that's all
29      diversion.  At the moment, we're the only --
30      we're the most important stakeholders in this
31      process.  We're the most directly impacted by
32      what's going on at the landfill.  We're ready,
```

24

1       willing, and able to do this initial basic

2       testing at our own costs.

3       THE COURT:

4           Okay.   Thank you, counsel.

5       MR. NEUMAN:

6           Thank you.

7       MR. MIMS:

8           Your Honor, briefly, I'd like to just

9       address some of the legal issues on lis pendens.

10      I know we started to bleed a little bit to the

11      discovery issues.   If you would like to hear from

12      Ms. Brillault in order to help you rule on lis

13      pendens --

14      THE COURT:

15          Well, I guess, let me just ask Ms. Brillault

16      just a couple questions.   Ms. Brillault, I don't

17      care if you do it from there.   That's fine.

18          In terms of the testing that has been

19      requested, if you don't specifically know what

20      the testing is and how the method is going to be

21      done in order to do the testing, why is it going

22      to be such a disruption?   Why is that such a

23      problem?   Why can't they just simply go in on one

24      day, take their air samples at the torch level,

25      take their air sample inside the compound, and

26      then say, okay, we're out of here?

27      MS. BRILLAULT:

28          I think, Your Honor, you put your thumb on

29      it earlier when you were indicating why can't

30      they go sample at their homes and right outside

31      the fence.   They're perfectly capable of doing

32      that.   And I think one of the prejudicial things

                                                    25

1    to defendants is they're not just asking for a

2    couple of compounds.  They're asking to sample a

3    whole list of alleged chemicals that come from

4    landfill gas, but they haven't even made a

5    threshold showing that they've been exposed to

6    those chemicals at their house.

7         You know, EPA and LDQ, LDEQ, regulate the

8    landfill.  They have a Title 5 permit.  You know,

9    they're required to comply with NSPS, New Source

10   Performance Standards, and one of the chem -- one

11   of the gases that they measure for is methane and

12   that's because it's the largest constituent in

13   the landfill gas.  So they set a level for

14   methane, which, you know, as long as the surface

15   emissions don't exceed that level, the levels of

16   methane are safe and all the tracer compounds

17   that come in much smaller concentrations are at

18   safe levels and that's how they, you know, ensure

19   that the landfill gas is not going to be toxic.

20        And so that's -- you know, they could.  They

21   could stand right outside the fence.  It wouldn't

22   be a burden on us if they're standing right

23   outside the fence and they want to conduct the

24   air samples.  You know, it's not the leachate

25   that's getting to the property.  It's what, you

26   know, being dispersed of in the air.

27        You also pointed to a really good fact that,

28   you know, once it's emitted on the landfill, by

29   the time it gets a mile, two miles, three miles,

30   I think the furthest plaintiff away is four mile,

31   you know, that concentration of whatever the gas

32   is is incredibly, you know, decreased at that

26

1102

1    point.  It's magnitudes lower.

2    THE COURT:

3        All right.  Mr. Moghis, you wanted to say

4    something?

5    MR. MOGHIS:

6        Thank you, Judge.  We were going to wait

7    until the ruling of lis pendens, but while we're

8    touching on it, Jefferson Parish's position is

9    that in response to the Court's question about,

10   well, if we let them go in, how does it prejudice

11   us, we also brought a motion to continue the

12   consideration of the motion depending on the

13   judgment on the Exception of Lis Pendens based on

14   the fact that none of the requirements under

15   1461, which is what they're seeking the motion

16   under, for entry onto land, 1462 that says that

17   they have to identify with particularity the

18   items to be tested, how they want to test it, the

19   time, date, and manner.  As counsel just stated,

20   quoting him, we haven't even chosen that yet.  We

21   don't know particularly.  As Your Honor pointed

22   out, you read the affi -- a 17 page expert

23   affidavit and you still don't know what they

24   want, or we don't know, and defendants can't tell

25   what they want.  They have no complied with what

26   the requirements of 1462.

27       And two things that I want to point out that

28   were alluded to earlier, first of all, Your

29   Honor, the very first paragraph of the affidavit

30   section regarding what their plan is, which

31   again, 1462 states that they have to particularly

32   identify what it is that they want to do and it

27

1   has to be limited in scope to be as little

2   burdensome as possible, so that the details and

3   extent of this plan may change depending on what

4   is discovered once access to the site is obtained

5   and conditions are examined firsthand.  So in

6   other words, Judge, we want you to open up the

7   door to the landfill and let us go in there and

8   then we'll figure out what we want to do and

9   that's just not in accordance with what the rules

10   set forth to avoid this type of ambush discovery

11   and inspection.

12     And the second thing out of that same

13   affidavit, again, from the section regarding what

14   data they're looking for, paragraph 19 of the

15   expert affidavit, theoretically, the best

16   possible evidence to determine such exposure that

17   harms have occurred would be the actual air

18   samples taken on a regular basis at each of

19   petitioner's home.  None of that has been done.

20   We don't even know if what these folks are

21   alleging, what they're complaining of is even --

22   if there's anything at their house, much less if

23   it's anything that can be produced by a landfill.

24   And as the Court alluded to earlier, there's

25   nothing stopping them from doing that, which is

26   the practical first step in this process which

27   again has not been done.  So we'll touch on that

28   more if we get pass the lis pendens, but --

29   THE COURT:

30     Are there any Louisiana cases in which the

31   expedited discovery rules have been applied or

32   allowed?  Is there any cited cases?

                   28

```
1        MR. MOGHIS:

2             Judge, they do not --

3        THE COURT:

4             Are there?

5        MR. MOGHIS:

6             They do not cite any cases in support of

7        what they're asking for.  In fact, to the

8        contrary, I think the law and argument section,

9        the second sentence of that section specifically

10       says we have not found any Louisiana cases on

11       point.

12            This is certainly not the first landfill

13       case, certainly not the first emissions case, not

14       the first air quality case, yet, there's not case

15       on point with what they're asking the Court to do

16       here today.  That's the first thing.  So they

17       take a step further and go look at federal cases,

18       one of which or all of which or half of which

19       that they cited the request was denied.  The

20       other ones, there had already been discovery

21       conferences.  There had been response of

22       pleadings filed.  There had been written

23       discovery.  There had been conferences among

24       counsel.  There had been conferences with the

25       judge, written requests, all of this to vet out

26       what it is that they're asking for.  Are they

27       entitled to it before we present it to the Court.

28       None of that has been done here.  So, no, Your

29       Honor, there is no support for what they're

30       asking the Court for today.

31       THE COURT:

32            Some years ago there was some legislation
```

29

```
 1              proposed to actually shut down the Jefferson
 2              Parish Landfill and transfer all the waste stream
 3              over to another landfill, as I recall.  Wouldn't
 4              be here today had that happened.  Just a thought.
 5                   Mr. Neuman, I'm sorry, no, Mr. -- not Mr.
 6              Neuman, sorry.  Counsel, anything else you want
 7              to add?
 8              MR. MIMS:
 9                   Yes, Judge.  I just wanted to clarify
10              quickly some points on the Louisiana law on lis
11              pendens.
12                   There was a discussion from Mr. Neuman about
13              whether the res judicata test would apply here
14              given that the plaintiffs, the Addison plaintiffs
15              have not opted out yet.  Mr. Neuman says, well,
16              we just can't know until they opt out.  That's
17              not true and the IESI LA case makes that very
18              clear.  That was the same situation in IESI LA.
19              The IESI LA plaintiffs had not made a decision on
20              whether to opt out yet or not.
21              THE COURT:
22                   Agreed, but in fairness and I think what Mr.
23              Neuman was pointing out is they sought basically
24              the protection of the class action statute so
25              that they could avoid the liberative prescription
26              issue.  I mean, they are actually alleging class
27              status so they wouldn't be -- their claims
28              wouldn't be prescribed.
29              MR. MIMS:
30                   I understand that, Your Honor.  And when
31              you look at the IESI LA opinion, you'll see that
32              it was not limited.  That was not a
```

                                                              30

1    distinguishing factor.  If you look at <u>IESI LA</u>,

2    it's 180 So.3rd and I'm looking at page 270, the

3    finding, it says, "We find the trial court erred

4    in finding there exists no identity of the

5    parties for lis pendens purposes when a putative

6    class member, such as plaintiffs herein, is not a

7    named plaintiff or joined as a party in the class

8    action."

9        It doesn't say when a plaintiff who alleges

10   to be a putative class member.  It says when they

11   are a putative class member.  You just heard Mr.

12   Neuman concede that under the definition proposed

13   by the class members, they are putative class

14   members.  So whether or not they have tried to

15   rely on that for prescription purposes doesn't

16   change the real question, which is do they fit

17   under the definition of the proposed class and

18   they clearly do.

19   THE COURT:

20       All right.  So I think as I indicated at the

21   beginning, I think it's incumbent upon the Court

22   to rule upon the Exception of Lis Pendens prior

23   to taking up any other issues as depending upon

24   that ruling there may be no other issues to be

25   addressed.  Obviously, the issues have been well

26   briefed and well argued and the law, I think, is

27   fairly settled in this area.  The relevant

28   articles include 531, 532 and the cases cited by

29   counsel for the plaintiff and defendant.

30       From a Court's perspective, and, obviously,

31   there's the requirement that I follow all binding

32   authority, and I just don't see a way around the

31

```
 1              IESI LA case as far as the exception goes.  I
 2         think given the class definition, the proposed
 3         class definition and the allegations alleged in
 4         the plaintiffs' petition in the Addison matter
 5         that there is no way that this Court can envision
 6         that those same plaintiffs wouldn't be members of
 7         the class if a class is so certified.  That
 8         doesn't mean that they can't opt out, obviously,
 9         but that's not the question now.  The question is
10         whether they are basically putative class members
11         and, again, I can't see a way that they would not
12         be.
13              As such, I think the last elements with
14         regard to lis pendens, again, whether there's an
15         identity of parties or the same parties is
16         actually satisfied by virtue of that.  I don't
17         think there's any question it's the same
18         transaction and occurrence and the other issues I
19         think if not conceded, I think basically
20         understood by counsel for the plaintiffs that
21         those issues would be satisfied.
22              So because I think there is also the same
23         parties involved based upon the classes that are
24         proposed in the federal litigation at this point,
25         I don't see a way around these plaintiffs being
26         included in that class and as such, I think you
27         do have the same parties.  Accordingly, I think
28         the rules of lis pendens would apply and as such,
29         the Court would grant the Exception of Lis
30         Pendens.
31              I understand, Mr. Neuman, that I have the
32         right to exercise discretion in this particular
```

                                                          32

```
 1          matter.  I am reluctant, as always, to have
 2          similar cases or same cases traveling down
 3          different paths.  I think from a judicial
 4          efficiency standpoint and I think in fairness to
 5          the defendants to be able to defend these types
 6          of actions in one forum I think is just
 7          fundamentally fair.  So I'm not going to exercise
 8          the discretion and allow this matter to continue,
 9          as such.  Given that the federal action is
10          pending, it's incumbent upon the Court to stay
11          these proceedings, not to dismiss them, but to
12          simply stay them as I appreciate the law in this
13          matter.
14              So accordingly, the Court is going to grant
15          the Exception of Lis Pendens and stay the
16          proceedings in this case.  I'm not going to make
17          a ruling because I think at this point the issue
18          of whether or not the expedited discovery issue
19          is moot.  So I'm not going to make a ruling on
20          that particular issue.  However, if the Fifth
21          Circuit reverses me on lis pendens exception, I
22          will give you a hearing right away with regard to
23          that issue as soon as it comes back, if it comes
24          back, so that that issue can be addressed in a
25          timely fashion at that point.
26              That being said, counsel, if you'll prepare
27          a judgment to that effect, Exception of Lis
28          Pendens is granted granting a stay of these
29          proceedings until such time as -- as what?
30          That's the question.  Until such time as the
31          federal litigation is either remanded or a class
32          is certified.
```

33

1    MR. MIMS:

2     I think certification would be the key

3    issue, whether that would be in --

4    THE COURT:

5     Well, if it's remanded, then it's going to

6    come back and then at this point, actually, this

7    case wouldn't be here because this case would

8    then go to the lowest filed number in Jefferson

9    Parish, which I think is Division E case.

10    MR. MIMS:

11     Well, whether it's remanded or not, it'll

12    still be a class action and so we would still be

13    in the same place of waiting.

14    THE COURT:

15     I guess you're right.  I guess it would be

16    remanded as a class action.  It wouldn't -- yeah,

17    unless -- I guess it would still be remanded as a

18    class action.

19    MR. MIMS:

20     I believe certification in either scenario

21    is going to be the key here.

22    THE COURT:

23     Well, that raises an interesting question,

24    though, because if at this point because it's a

25    federal action I grant the Exception of Lis

26    Pendens and order the stay of these proceedings,

27    if it's remanded and then the class action

28    becomes a state court action, then the Lis

29    Pendens Exception would be that this matter would

30    be dismissed?

31    MR. MIMS:

32     Correct, Your Honor.  Dismissed without

34

1      prejudice pending the class certification

2      decision.

3      THE COURT:

4          That makes for a weird judgment.

5      MR. MIMS:

6          We'd be happy to work on that language and

7      I'm sure Mr. Neuman and I can come to some sort

8      of agreement on that.

9      THE COURT:

10         Yes.  All right.  So at this point let's

11     just take it one step at a time and that way I

12     won't get ahead of myself.  So let's just -- the

13     judgment will be that the Court is granting the

14     Exception of Lis Pendens and that this matter is

15     stayed pending a resolution of the federal action

16     by remand or class certification.  If it's

17     remanded, then, Mr. Neuman, obviously, you're

18     going to have some different issues that are

19     there that we'll have to deal with and then we'll

20     deal with those at the appropriate time, if

21     necessary.  But I still say if it gets remanded

22     back to state court, then this action should be

23     consolidated with the lowest filed number in

24     state court and I don't think that's going to be

25     me.  I think that's Division E, as I appreciated

26     the filing numbers, but that'll be a different

27     question.

28     MR. MIMS:

29         I agree.  At this point it makes sense to do

30     a stay until either remand or class

31     certification--

32     THE COURT:

35

```
1                    Class certification.
2         MR. MIMS:
3              -- and we can revisit those issues if we
4         need to down the road.
5         THE COURT:
6              All right.  Thank you.
7                    (END OF PROCEEDINGS)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
```

36

```
 1                      CERTIFICATE

 2         STATE OF LOUISIANA

 3         PARISH OF JEFFERSON

 4             I, GINA RUIZ PATIN, CDR, Certified Digital Reporter,

 5     in and for the State of Louisiana, employed as Official

 6     Court Reporter for he Twenty-Fourth Judicial District

 7     Court, for the State of Louisiana, was not the Court

 8     Reporter on this case, however, do hereby certify that the

 9     above was transcribed under my personal direction and

10     supervision, and is a true and correct transcription of

11     proceedings to the best of my ability and understanding

12     before Stephen Grefer, Presiding Judge, on January 24,

13     2019;

14             That I am not of counsel, nor related counsel or to

15     the parties hereto, nor am I otherwise interested in the

16     outcome of this matter.

17             This certification is valid only for a transcript

18     accompanied by my original signature and original seal on

19     this page.

20             Signed this 6th day of February, 2019.

21

22

23     GINA RUIZ PATIN

24     Certified Digital Reporter

25     Certificate #1032018

26

27

28

29

30

31

32
```

37

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                    DIVISION "J"

FREDERICK ADDISON, et al.,

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et al.

FILED:_____          _____
                                                     DEPUTY CLERK

## PLAINTIFFS' OPPOSITION TO MOTION OF DEFEDNANT JEFFERSON PARISH TO TEMPORARILY LIFT STAY AND TO CONSOLIDATE

This Memorandum in Opposition is submitted on behalf of the Plaintiffs, Frederick

Addison, *et al.,* in response to the motion filed by the Defendant, Jefferson Parish (the "Parish"),

to consolidate this case with five subsequently filed lawsuits[1] for purposes of trial, and to

temporarily lift the stay in this matter "for the limited purpose of ruling" on its motion for

consolidation.

## I.      LAW AND ARGUMENT

The Parish asserts that consolidation is mandated by Uniform Rules for District Courts,

rule 9.4, because the subsequent lawsuits "include many of the same Plaintiffs in several of the

cases." Motion, at 1. Alternatively, the Parish asserts that consolidation is appropriate pursuant

to Louisiana Code of Civil Procedure article 1561 in the interest of judicial efficiency and justice,

because "all six (6) of these lawsuits assert identical claims relating to Plaintiffs' alleged damages

from the operation of the Jefferson Parish Landfill." Motion, ¶¶ XII and XIII.

As a matter of fact, and contrary to the Parish's assertion, all six lawsuits do not assert

"identical claims." For example, a total of more than fifty plaintiffs identified in the *Anderson* and

*Brunet* lawsuits specifically allege that they suffer from respiratory diseases as a result of the

harmful emissions emanating from the Landfill – including asthma, COPD, and chronic bronchitis.

*See Anderson* Petition, ¶ XXVI; *Brunet* Petition, ¶ XXVII. These diseases are not alleged to have

---

[1] *Anderson, et al. v. Louisiana Regional Landfill Co., et al.*, Dkt. No. 792-502 (Division "O"); *Brunet, et al. v. Louisiana Regional Landfill Co., et al.,* Dkt. No. 793-088 (Division "O"); *Winningkof, et al. v. Louisiana Regional Landfill Co., et al.,* Dkt. No. 793-784 (Division "M"); *Calligan, et al. v. Louisiana Regional Landfill Co., et al.,* Dkt. No. 793-908 (Division "L"); and *Griffin, et al. v. Louisiana Regional Landfill Co., et al.*, Dkt No. 794-011,(Division "A").

1

been suffered by plaintiffs in the other lawsuits.  Thus, consolidation is not warranted as a matter of judicial efficiency or justice pursuant to article 1561.

Plaintiffs do acknowledge, however, that the Petitions in each of the succeeding five lawsuits mistakenly named as a plaintiff at least one individual who also was named as a plaintiff either in this lawsuit or one of the other five lawsuits.  *See* Motion at 4.  Plaintiffs also acknowledge that this overlap, while unintentional, *could* justify consolidation pursuant to Uniform Rule 9.4 – but for the fact that the Court previously stayed this case.

Although the Parish has moved to "temporarily" lift the stay "for the limited purpose" of permitting consolidation, Plaintiffs contend that lifting the stay temporarily for this limited purpose would be *contrary* to the interests of justice.  As noted, dozens of plaintiffs named in the subsequent lawsuits allege serious, sustained and ongoing medical injuries as a result of the continuing emissions emanating from the Landfill.  To prohibit them from pursuing their claims until the U.S. District Court for the Eastern District of Louisiana has ruled on class certification issues in other litigation to which they are not even parties would be manifestly prejudicial and unfair.  Since this Court stayed this case in January 2019, plaintiffs in the putative federal class action lawsuits have redefined their proposed class so as to exclude personal injuries entirely – and instead to limit the proposed class to people who have suffered injury to property.  *See* Plaintiffs' Motion to Permanently Lift Stay herein filed on April 23, 2019.   In contrast, the petition in this action and the five subsequently filed lawsuits that the Parish seeks to consolidate all allege some form of personal harm (whether respiratory disease or otherwise) in addition to property injury. Indeed, many of the Plaintiffs in the lawsuit that are the subject of this consolidation motion are not even alleged to own any real property.  Accordingly, it is now plain that the proposed class definition in the federal litigation – even if certified by the federal court – will not dispose of all claims raised by plaintiffs in the six cases now before this Court, and the previously imposed stay should be permanently, not temporarily, lifted.

## II.    CONCLUSION

For all the foregoing reasons, and those set forth in Plaintiffs' Motion to Permanently Lift Stay, the Plaintiffs do not oppose the Parish's motion for consolidation, on the condition that the stay previously entered in this case is *permanently* lifted.

Respectfully submitted,

2

**FORREST CRESSEY & JAMES, LLC**

*/s/ S. Eliza James*
_____
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com


*/s/ Barry S. Neuman*
_____
Barry S. Neuman (Admitted *Pro Hac Vice*)
Adrian Snead (Admitted *Pro Hac Vice*)
**WHITEFORD    TAYLOR    PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

**OF COUNSEL:**
C. Allen Foster
Erik Bolog
**WHITEFORD    TAYLOR    PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

## <u>CERTIFICATE OF SERVICE</u>

I S. Eliza James, hereby certify that the foregoing Motion was served on all parties of record via email and Federal Express this 1 day of May, 2019.

*/s/ S. Eliza James*
_____

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, Louisiana 70002
Fax: 504- 838-9901

WASTE CONNECTIONS, U.S.

3

Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163
Fax: 504- 596-6301

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005
Fax: 202-789-6000

Michael D. Murphy
Megan R. Brillault
John H. Paul
477 Madison Avenue
15th Floor
New York, NY 10022

APTIM CORP.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

FREDERICK ADDISON, ET AL

VERSUS

LOUISIANA REGIONAL LANDFILL

COMPANY, ET AL

NO. 19-C-129

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

May 07, 2019

Susan Buchholz
First Deputy Clerk

**IN RE** FREDERICK ADDISON, ET AL

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE STEPHEN C. GREFER, DIVISION "J", NUMBER 790-369

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and Hans J. Liljeberg

**WRIT DENIED**

Plaintiffs seek review of the trial court's February 6, 2019 judgment which granted exceptions of *lis pendens* filed by defendants, Waste Connections US, Inc. and Jefferson Parish, pursuant to La. C.C.P. art. 532.[1]  In its judgment, the trial court stayed plaintiffs' lawsuit pending the resolution of motions to remand and motions for class certification filed in four similar class action lawsuits removed from the 24th Judicial District Court for the Parish of Jefferson to the United States District Court for the Eastern District of Louisiana.

After thorough review, we find that based on the posture of the cases at the time the trial court rendered its decision, the trial court did not err as a matter of law by finding an identity of parties existed between the plaintiffs in the present matter and the plaintiffs in the federal class actions.  *See Aisola v. Louisiana Citizens Prop. Ins. Corp.*, 14-1708 (La. 10/14/15), 180 So.3d 266, 270-71; *Harris v. Louisiana Citizens Property Insurance Company*, 14-120 (La. App. 5 Cir. 10/29/14), 164 So.3d 216, 220-222, *writ denied*, 14-2482 (La. 2/6/15), 158 So.3d 823; *Holmes v. Louisiana Citizens Property Insurance Company*, 14-599 (La. App. 5 Cir. 2/25/15), 168 So.3d 800, 807.  We further find the trial court did not abuse its discretion by granting a stay pending resolution of remand and class certification issues in the federal class actions.

---

[1] Plaintiffs include over 80 Jefferson Parish residents who have filed claims on an individual basis for alleged harm they suffered as a result of the emission of noxious odors from a landfill owned by Jefferson Parish and operated by Waste Connections US, Inc.

19-C-129

We recognize that in their reply memorandum, plaintiffs note the named plaintiffs in the consolidated federal class actions recently filed an "Amending and Superseding Master Class Action Complaint for Damages," which appears to change the scope of the proposed class definition.  Plaintiffs contend the stay granted by the trial court is no longer appropriate because the amended class definition does not include claims for personal injury, medical monitoring, lost wages and the unconstitutional taking of property, which they seek in their petition for damages.  We, however, are not a court of first impression and therefore, we refrain from considering this new information in determining whether the trial court erred in granting a stay pursuant to La. C.C.P. art. 532.  This issue is more appropriately raised with the trial court.

Accordingly, plaintiffs' application for supervisory writs is denied.

Gretna, Louisiana, this 7th day of May, 2019.

**HJL**
**FHW**
**SJW**

2

1119



SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

**FIFTH CIRCUIT**
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN
TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS
DAY **05/07/2019** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF
THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY

MARY E. LEGNON
INTERIM CLERK OF COURT

**19-C-129**

**E-NOTIFIED**

William Peter Connick (Respondent)

David R. Taggart (Respondent)
S. Eliza James (Relator)
Michael S. Futrell (Respondent)
Michael C. Mims (Respondent)

**MAILED**

John B. Stanton (Respondent)
Attorney at Law
1100 Poydras Street
Suite 2700
New Orleans, LA 70163

James B. Slaughter  (Respondent)
Pro Hac Vice
13501 Street, N.W.
Suite 700
Washington, DC 20005

Barry S. Neuman  (Relator)
Pro Hac Vice
1800 M Street N.W.
Suite 450N
Washington, DC 20036

Adrian F. Snead (Relator)
Pro Hac Vice
1800 M Street, N.W.
Suite 450N
Washington, DC 20036

Matthew D. Moghis (Respondent)
Attorney at Law
3421 North Causeway Boulevard
Suite 408
Metairie, LA 70002

Byron M. Forrest (Relator)
Nicholas V. Cressy (Relator)
Attorney at Law
365 Canal Street
Suite 1475
New Orleans, LA 70130

CT Corporation System  (Respondent)
Agent for Service
3867 Plaza Tower Drive
Baton Rouge, LA 70816

Megan R. Brillault (Respondent)
Michael G. Murphy  (Respondent)
John H. Paul (Respondent)
Pro Hac Vice
477 Madison Avenue
15th Floor
New York, NY 10022

Louisiana Regional Landfill Co. and Waste
Connectionsl Bayou, Inc.  (Respondent)
Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**CONNICK AND CONNICK, L.L.C.**
**ATTORNEYS AT LAW**

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN

ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
BRENDAN P. CONNICK
ELIZABETH A. ZAVALA
LAURA M. BLOUIN
NOAH R. BORER

3421 NORTH CAUSEWAY BOULEVARD SUITE 408
METAIRIE, LOUISIANA 70002

TELEPHONE: (504) 838-8777
FACSIMILE: (504) 838-9903
WEBSITE: www.connicklaw.com

OF COUNSEL,

PAUL D. CONNICK, JR.

DIRECT DIAL: (504) 681-6658
EMAIL: *moghis@connicklaw.com*

May 7, 2019

CLERK OF COURT
**24TH JUDICIAL DISTRICT COURT**
200 Derbigny Street
Gretna, Louisiana 70053
Phone: (504) 364-2900
Fax:    (504) 364-3780

Re:   *Addison, et al. v. Jefferson Parish, et al.*
      Court:  24th JDC, Case No. 790-369, Division "J"
      File No.: 81.182829

Dear Sir/Madam:

Attached please find Jefferson Parish's Reply Memorandum in Support of Motion to Temporarily Lift and Stay Motion to Consolidate, which I ask that you file in connection with the above-captioned matter. Please advise of the costs associated with this request so that a check to cover same can be forwarded with the original. Please return a filed copy of same to my office in the enclosed self-addressed stamped envelope.

Thanking you in advance for your cooperation, I remain

Sincerely,

CONNICK AND CONNICK, L.L.C.

MATTHEW D. MOGHIS

MDM/js
Attachments
cc:   Barry Neuman (bneuman@wtplaw.com)
      Byron Forrest  (byron@fcjlaw.com)
      Eliza James (eliza@fcjlaw.com)
      Nicholas Cressy (nicholas@fcjlaw.com)
      Michael Mims (mmims@bradleyfirm.com)
      David Taggart (dtaggart@bradleyfirm.com)
      Jim Slaughter (jslaughter@bdlaw.com)
      William Barousse (wbarousse@glllaw.com)
      Mike Digiglia (mdigiglia@glllaw.com)
      Megan Brillault (mbrillault@bdlaw.com)

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                    DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

FILED: _____          _____
                                                          DEPUTY CLERK

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO TEMPORARILY LIFT AND STAY MOTION TO CONSOLIDATE

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jefferson Parish, who submits the following Memorandum in Reply to Plaintiffs' Opposition to Jefferson Parish's Motion to Consolidate, as set forth below.

**i.     *Plaintiffs do not oppose consolidation.***

As a preliminary matter, Plaintiffs fail to substantively oppose the law set forth in the Motion to Consolidate. Instead, Plaintiffs continue to challenge this Court's prior ruling on Defendants' Exception of Lis Pendens, to which Plaintiffs have already sought supervisory review and were denied. In fact, Plaintiffs readily admit that they "do not oppose the Parish's Motion for Consolidation," but only "on the condition that the stay previously entered in this case is permanently lifted."[1] Defendant respectfully submits that the Motion to Consolidate is essentially uncontested.

**ii.    *Plaintiffs concede a violation of Uniform Rules for District Courts Rule 9.4.***

Plaintiffs have not set forth any opposition to the *mandatory* allocation of all subsequent actions to this Division, as required by Uniform Rules for District Courts, Rule 9.4. Despite admitting that they "unintentional[ly]" violated Rule 9.4, Plaintiffs take the position that the cases "could" be transferred to this Division.[2] The law contains no such discretionary language.

---

[1] Plaintiff's Opposition, at Conclusion.
[2] Plaintiff's Opposition, at first full paragraph on Page 2.

Rule 9.4 *mandates* that Plaintiffs/Plaintiffs' counsel "**shall** attach to any subsequent Petition a Notice of Prior Filing or Multiple Filing" when the attorney "files more than one Petition for the same party on the same cause of action."[3] Once that mandatory requirement is fulfilled, "all subsequent actions [...] **shall** be transferred to the division to which the first case filed was allotted."[4] Here, it is undisputed that each of the five (5) subsequent actions contain the same parties setting forth the same claim as they did in *Addison*. Accordingly, Rule 9.4 mandates that all actions be transferred to this Division.

### iii. Plaintiffs inherently concede consolidation is appropriate under Louisiana Code of Civil Procedure articles 253.2 and 1561.

Plaintiffs also assert that, because certain Plaintiffs in the *Anderson* and *Brunet* matters set forth claims of personal injury, consolidation is not appropriate. Plaintiffs' position is counterintuitive with respect to their own Petitions and inherently supports consolidation of all cases.

As Plaintiffs acknowledge, some, **not all**, Plaintiffs in the *Anderson* and *Brunet* matters seek damages for various alleged respiratory illnesses. *Ipso facto*, some Plaintiffs in those same cases **do not**. Accordingly, by filing certain claims involving alleged personal injuries with claims involving strictly property damage, Plaintiffs inherently concede that consolidation of these claims is appropriate and judicially efficient (as Plaintiffs have already cumulated different claims in *Anderson* and *Brunet*, see below).

Louisiana Code of Civil Procedure article 463 allows Plaintiffs to join in the same suit if there is "*a community of interests between the parties joined.*"[5] Through their own pleadings, Plaintiffs have tacitly admitted the community of interests and judicial efficiency in litigating these claims together. Certainly, filing a multitude of individual actions would be very costly and wildly inefficient for Plaintiffs and, thus, they chose to file the claims together.

---

[3] Uniform Rules for District Courts Rule 9.4(b).
[4] Uniform Rules for District Courts Rule 9.4(b).
[5] La. C.C.P. art. 463.

By way of example, despite *only 31* of the parties alleging a respiratory illness, Plaintiffs in *Brunet* chose to file *91 total* individual claims together in the interest of judicial efficiency and costs.[6] This same scenario is present in *Anderson*, as well (92 total Plaintiffs with only 21 alleging respiratory illness).

Without question, common issues of fact and law will predominate all of these cases. Plaintiffs' counsel has already cumulated a multitude of these claims due to the community of interests and judicial efficiency (all arising out of the same allegations pertaining to operation of the Jefferson Parish Landfill). Additionally, if consolidation were not ordered, it would force these same Defendants to relitigate the same issues (for instance the prior Exception of Lis Pendens) in several different divisions of this Court throughout the entirety of these lawsuits, wasting a vast amount of time and resources. As such, Defendant's Motion to Consolidate should be granted, ordering a limited lift of this day for the sole purpose of consolidating the cases identified in Defendant's Motion.

**WHEREFORE**, Defendant, Jefferson Parish, respectfully requests this Court (1) temporarily lift the stay in this matter for the limited purpose of ruling on this Motion to Consolidate, only and (2) issue an Order that the Related Lawsuits be consolidated with this action.

Respectfully submitted,

CONNICK AND CONNICK, LLC

_____
WILLIAM P. CONNICK, LA. BAR. NO. 14158
MICHAEL S. FUTRELL, LA BAR. NO. 20819
MATTHEW D. MOGHIS, LA BAR. NO. 33994
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone:   (504) 681-6658
Facsimile:    (504) 838-9903
E-mail:        *moghis@connicklaw.com*

*Counsel for Defendant, Jefferson Parish*

_____
[6] See Brunet Petition for Damages at ¶ I and XXVII. The figures include claims brought on behalf of minors.

**3 of 4**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all known counsel of record in this proceeding by:

| | | | |
|---|---|---|---|
| ( ) | Hand Delivery | ( ) | Prepaid U.S. Mail |
| (X) | Email | ( ) | Facsimile |

New Orleans, Louisiana this 7th day of May, 2019.

_____
MATTHEW D. MOGHIS

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                    DIVISION "J"

FREDERICK ADDISON, et al.,

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et al.

FILED:_____          _____
                                              DEPUTY CLERK

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO PERMANENTLY LIFT STAY**

MAY IT PLEASE THE COURT:

Plaintiffs, Frederick Addison *et. al.,* submit this memorandum in reply to Defendant Waste Connection's Opposition to Plaintiffs' Motion to Permanently Lift Stay.[1]

In their opposition, ("Opp."), the Waste Connections Defendants ("Waste Connections") acknowledge that the "Superseding Master Complaint" recently filed in the consolidated federal lawsuits defines the putative class as residents of Jefferson Parish who have suffered *property* damage. The class is *not* defined to include residents who suffered physical harm. In contrast, plaintiffs in the instant lawsuit allege physical harm – as do the plaintiffs in all five subsequently filed lawsuits that Defendants seek to consolidate with this case.[2] Consequently, it is now clear that Plaintiffs' claims of physical injury will *not* be adjudicated in the pending federal litigation under the proposed class definition. Despite this new development, Waste Connections maintains that Plaintiffs must continue to be delayed from pursuing their claims until the federal court rules on class certification – even though they will continue to suffer harm in the interim and even though it is now clear that the federal litigation will provide no redress for Plaintiffs' claims of physical harm and mental distress whether or not a class is certified. The doctrine of *lis pendens* (and *res judicata*) do not compel such an unfair and prejudicial result. To the contrary, Plaintiffs respectfully submit that the revised class definition virtually compels this Court, in the interests of

---

[1] On May 7, 2019, the Fifth Circuit Court of Appeal denied the supervisory writ taken by Plaintiffs from the Court's previous ruling granting the stay. *See* Exhibit 1 hereto. The Fifth Circuit, however, expressly left it to this Court to decide whether the stay should be lifted in light of the changed circumstances described herein.

[2] The Court should be aware that at least two more petitions naming more than 100 additional plaintiffs will be filed shortly.

justice, to lift the stay in this action so as to allow these plaintiffs to pursue their claims without further delay.

## I.    ARGUMENT

### a.    The Stay Should be Permanently Lifted Because, In Light of the Revised Class Definition, It is Now Clear That Even if Class Certification is Granted, Plaintiffs' Claims for Physical Harm Will Not Be Adjudicated in the Federal Litigation

Defendants concede, as they must, that the current revised class definition in the federal litigation includes only those Jefferson Parish residents who have sustained damages relating to their "properties." Opp. at 6. Contrary to Waste Connections' assertion, this definition does not include all Plaintiffs named in the *Addison* petition because **many of these Plaintiffs are minor children who own no property.** Further, **more than 300 adult plaintiffs and minor children named in the additional five lawsuits that Defendants seek to consolidate have not alleged any ownership interests in real property and therefore have no property-based claims.** Faced with this fact, Waste Connections is reduced to asserting: "Critically, the federal class definition does not include any language that *excludes* individuals that have alleged other harms in addition to those listed in the Master Class Action Complaint." *Id.* (emphasis original). Waste Connections' focus on what the class definition does *not* say stands matters on their head. It is the putative class representative's burden to define the class with sufficient specificity so that the trial court can properly determine whether class certification is warranted. Therefore, the parameters of the proposed class necessarily are informed by what the definition says – not what it omits. *See, e.g., Vickers v. Gen. Motors Corp.,* 204 F.R.D. 476, 477 (D. Kan. 2001) (It is plaintiff's burden to define the class, and plaintiff's definition is "critical" to the class action certification decision). As Waste Connections notes elsewhere, this Court must resolve the present motion based on "the procedural and factual and climate that exists at the time of review [*i.e.,* now], rather than at the time of the trial court judgment." Opp. at 4 (citing cases). Under the current facts, Plaintiffs' physical injury claims will not be adjudicated in the federal litigation.[3]

---

[3]  Waste Connections blithely asserts that the last sentence of the new class definition, which essentially states that the class is yet to be defined, "carries no legal significance" but rather is "mere posturing" by the plaintiffs. Opp. at 5 n.12. If their assertion is correct, then one must take the preceding portion of the definition as controlling – in which case it clearly does not include non-property injuries and non-property owning plaintiffs. If, on the other hand, the last sentence of the definition does have "legal significance," then this Court presently has no basis to even determine what the current class definition is, and therefore no basis to assume *lis pendens* applies.

2

We discuss below why, contrary to Waste Connections' assertion, the doctrine of *res judicata* is no longer applicable – in which case the stay must be lifted as the doctrine of *lis pendens* would no longer apply. *Robbins v. Delta Wire Rope, Inc.,* 196 So.3d 700, 705 (La. App. 1st Cir.) (requirements of *lis pendens* and *res judicata* converge). But if Waste Connections is correct that the doctrine of *res judicata* continues to apply even though the federal litigation will not adjudicate Plaintiffs' physical injury claims, such a result would require this Court to lift the stay as a matter of equity and justice under LA C.C.P. Article 532.[4]  Since their physical injury claims will not be litigated in the federal cases, Plaintiffs are now nearly certain to opt out of the federal case – *if* they have that opportunity – at which point they would be permitted to proceed with this action. Moreover, in light of the Superseding Master Class Action Complaint, ***this Court cannot assume that Plaintiffs will have the ability to opt out of the class if it is certified***. The amended federal complaint alleges that class certification is warranted under Fed. R. Civ. P. Rule 23(b)(1), (b)(2) *or* (b)(3) – each of which spells out different criteria for class certification. Master Class Action Complaint, ¶25. But notice of class certification is only required to be given to class members – and class members only have the right to opt out – if the class is certified pursuant to Rule ***23(b)(1)***. *See* Fed. R. Civ. P. Rule 23(c)(2), (c)(3) and (e)(4); Advisory Committee Notes to Rule 23, 2003 Amendment, Subdivision (c), Paragraph (2) ("There is no right to request exclusion from a (b)(1) or (b)(2) class."); and Subdivision (e), Paragraph (2) ("the opportunity to request exclusion from a proposed settlement is limited to members of a (b)(3) class.")  As Waste Connections emphasizes, the ability to opt out of a certified class was a principal assumption underlying the Court's decision to grant the stay. *See* Opp. at 4 (citing oral argument transcript). But in light of the amended class action complaint, Plaintiffs may not have the opportunity to opt out (and might not even receive notice), depending on which provision of Rule 23(b) is found to justify class certification.

Moreover, as discussed in the following section, the very fact that more than 500 named plaintiffs have filed separate lawsuits in this Court alleging physical harm substantially decreases the likelihood that the federal court will certify a class in the first place.

---

[4]  Moreover, unlike when the *lis pendens* issue was heard by this Court on January 27, there is no longer any basis for the Court to stay this case under Article 532 in the expectation that it may yet be required to dismiss it under Article 531, because the E.D. La. has denied the motions to remand the putative class actions back to this Court.

3

Under this current (and changed) "factual and procedural climate," it would work an extreme injustice on Plaintiffs if they were required to continue indefinitely to sit on their rights – and suffer continued harm –until the federal court rules on class certification even though their rights clearly will not be vindicated in the federal litigation whether nor not the class is certified. How can this Court, in the interests of justice, fairness and equity, continue to prevent Plaintiffs from proceeding with this case under these circumstances?

This Court originally granted a stay because of its concern over the burdens that would be imposed on the defendants if they are required to defend multiple actions in different courts: "From a judicial efficiency standpoint and I think in fairness to the defendants to be able to defend these types of action in one forum I think is just fundamentally fair." Transcript of January 24, 2019 oral argument ("Tr.") at 33. But now that the federal court has denied the motions to remand, it is inevitable that Defendants will be litigating in more than one forum given the failure of the proposed federal class to include physical injury.

More important, the Court's exercise of equitable discretion requires it to balance the harm and inconvenience to both parties. It is now clear that the potential inconvenience to the Defendants[5] of having to defend multiple lawsuits is dwarfed by the harm that would be caused to these Plaintiffs by a continued delay of this litigation. In short – and *especially* if Waste Connections is correct concerning the law of *res judicata* -- this Court must lift the stay pursuant to art. 532, in the interests of fairness, equity and justice.

**b. The Doctrine Of *Res Judicata* Does Not Apply Because (1) The Parties Are Not Identical And (2) It Is Now Clear That Plaintiffs In The Putative Class Action Will Not Adequately Represent The Interests Of These Plaintiffs.**

**i.  The parties are not identical.**

This Court must resolve any doubts as to the applicability of *lis pendens* (and hence *res judicata*) against its application. *Robbins, supra,* at 705. When it previously granted the stay, the Court previously found it dispositive that all Plaintiffs necessarily would be part of the class "as it's proposed" – *i.e.,* as it was defined as of January 24, 2019 Tr. at 19. That is no longer the case. As discussed above, in light of the amended class action complaint, the proposed class definition is *not* coextensive with all the Plaintiffs in this case, or in the five additional lawsuits that

---

[5]  The Defendants include substantial companies such as Waste Connections who clearly has been carrying the laboring oar in this litigation.

4

Defendants seek to consolidate, because many Plaintiffs do not own property. Since the parties in the putative class actions are no longer "the same" as the parties in the individual lawsuits, the doctrine of *lis pendens* no longer applies.

    **ii.**    **Plaintiffs' interests will not be adequately represented in the federal litigation.**

    Further, under the doctrine of *res judicata*, a party is bound by a previous judgment only if, among other things, the party in the prior litigation "adequately represented his interests in the prior proceeding." *Armbruster v. Anderson*, 250 So. 3d 310, 318 (La. App. 4 Cir. June 27, 2018), *writ denied*, 255 So. 3d 1054 (La. Nov. 5, 2018) (quoting *Latham v. Wells Fargo Bank, N.A.,* 896 F.2d 979, 983 (5th Cir. 1990)).  Given the recent developments in the federal litigation, it is difficult to imagine how Plaintiffs' interests are being and will be adequately represented in that case.  Right out of the gate and for whatever reasons,[6] putative class counsel have dropped all claims for personal injury – a key cause of action alleged by these Plaintiffs, which is potentially worth far more than their claims of property damage.  Moreover, Defendants cannot seriously contend that the fifty-plus plaintiffs in *Anderson* and *Brunet* who have alleged serious respiratory illnesses on account of the Landfill, or the numerous minor children and adult Plaintiffs who own no property, will be "adequately" represented by the putative class representatives, who allege only injury to "properties."  A "successful" outcome in the federal litigation will not redress the potentially serious physical harm suffered by these Plaintiffs at all.

    In fact, these considerations nearly ensure[7] that the federal court will deny class certification. Fed. R. Civ. P. 23(a)(1) requires that "the representative parties will fairly and accurately represent the interests of the class." It is difficult to see how that test could be met here given that the putative class representatives are limiting their claims to property damage. *See, e.g., Thompson v. American Tobacco Co., Inc.*, 189 F.R.D. 544, 550 (D. Minn. 1999) (where named plaintiffs in class action "have in fact jeopardized the class members' potential claims for personal injury damages, they would be deemed to have interests 'antagonistic' to those of the class."); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606 (S.D.N.Y. 1982) (denying class certification in part because, while plaintiffs narrowed their claims in an effort to improve meeting

---

[6]  As stated in our initial motion papers (at 4, n. 13), we believe that class counsel have dropped the personal injury claims in order to set up a quick settlement in the federal litigation

[7]  It has always been highly unlikely that the federal court will certify a class. *See* Plaintiffs' Opposition to Lis Pendens Exception filed Jan. 16, 2017, at 2; Tr. at 16.  It is even more unlikely now.

the commonality test for certification, "that improvement…was purchased at the price of presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action.") *Accord, Bowe v. Pub. Storage,* 318 F.R.D. 160, 175 (S.D. Fla. 2015) (proposed class representatives found to be inadequate where they abandoned "substantial and meaningful claims" that were available to many absent class members);[8] *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 634 (W.D. Wash. 2011) (Plaintiff's "attempt to split her putative class members' claim by excluding stigma damages creates a conflict between her interests and the interests of the putative class."). *See also*, Manual for Complex Litigation, Fourth (2004) at 259, §21.141 ("the proponents of class certification sometimes attempt to meet Rule 23's adequacy-of-representation requirement by suing for only one type of relief…on behalf of the class. In that case, the name plaintiffs may be inadequate representatives for class members…." (citing *Thompson*)).

Moreover, the very fact that more than 500 people (and counting)[9] have filed individual lawsuits involving the Landfill, all of whom are highly likely to opt out if given the chance in light of the limitations of claims asserted by the putative class representatives, makes it even more likely that the federal litigation will not be permitted to proceed as a class action. *Slade v. Progressive Security Ins. Co.,* 856 F.3d 408, 414-415 (5th Cir. 2017) (remanding case for trial court to consider all the foregoing considerations in deciding whether to certify a class) ("if the number of plaintiffs opting out demonstrated a cogent conflict, the district court could decertify the class").

## II.      CONCLUSION

For all the foregoing reasons and those set forth in Plaintiffs' Motion, this Court should permanently lift the stay in this action.

Respectfully submitted,

**FORREST CRESSEY & JAMES, LLC**

*/s/ S. Eliza James*
_____
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)

---

[8]   Courts sometimes find that a class representative's waiver of a claim does not create a conflict with other class members – where, for example, the value of the waived claim is clearly small or the unnamed class members likely will not be precluded from bringing those claims in the future because, for example, they can opt out. *See, e.g., O'Connor v. Uber Techs., Inc.*, 311 F.R.D. 547, 566 (N.D. Cal. 2015). But here, the potential value of the claims for physical harm is large, many plaintiffs have no property claims and the opportunity to opt out is uncertain.

[9]   *See* note 1, *supra*.

6

One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com


/s/ Barry S. Neuman

_____
Barry S. Neuman (Admitted *Pro Hac Vice*)
Adrian Snead (Admitted *Pro Hac Vice*)
**WHITEFORD   TAYLOR   PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800


**OF COUNSEL:**
C. Allen Foster (Pro hac   vice application
pending)
Erik Bolog
**WHITEFORD   TAYLOR   PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800


## CERTIFICATE OF SERVICE

I, S. Eliza James, hereby certify that the foregoing Motion was served on all parties of record via email and U.S. mail, properly addressed and postage prepaid this 7 day of May, 2019. Per Uniform District Rule, a copy of this pleading was also provided to the trial court via fax.

/s/ S. Eliza James

_____


JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, Louisiana 70002
Fax: 504- 838-9901

WASTE CONNECTIONS, U.S.
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC

7

1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163
Fax: 504- 596-6301

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005
Fax: 202-789-6000

Michael D. Murphy
Megan R. Brillault
John H. Paul
477 Madison Avenue
15th Floor
New York, NY 10022

APTIM CORP.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

8

FREDERICK ADDISON, ET AL                    NO. 19-C-129

VERSUS                                       FIFTH CIRCUIT

LOUISIANA REGIONAL LANDFILL                  COURT OF APPEAL

COMPANY, ET AL                               STATE OF LOUISIANA

May 07, 2019

Susan Buchholz
First Deputy Clerk

**IN RE** FREDERICK ADDISON, ET AL

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE STEPHEN C. GREFER, DIVISION "J", NUMBER 790-369

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and Hans J. Liljeberg

## WRIT DENIED

Plaintiffs seek review of the trial court's February 6, 2019 judgment which granted exceptions of *lis pendens* filed by defendants, Waste Connections US, Inc. and Jefferson Parish, pursuant to La. C.C.P. art. 532.[1]  In its judgment, the trial court stayed plaintiffs' lawsuit pending the resolution of motions to remand and motions for class certification filed in four similar class action lawsuits removed from the 24th Judicial District Court for the Parish of Jefferson to the United States District Court for the Eastern District of Louisiana.

After thorough review, we find that based on the posture of the cases at the time the trial court rendered its decision, the trial court did not err as a matter of law by finding an identity of parties existed between the plaintiffs in the present matter and the plaintiffs in the federal class actions.  *See Aisola v. Louisiana Citizens Prop. Ins. Corp.*, 14-1708 (La. 10/14/15), 180 So.3d 266, 270-71; *Harris v. Louisiana Citizens Property Insurance Company*, 14-120 (La. App. 5 Cir. 10/29/14), 164 So.3d 216, 220-222, *writ denied*, 14-2482 (La. 2/6/15), 158 So.3d 823; *Holmes v. Louisiana Citizens Property Insurance Company*, 14-599 (La. App. 5 Cir. 2/25/15), 168 So.3d 800, 807.  We further find the trial court did not abuse its discretion by granting a stay pending resolution of remand and class certification issues in the federal class actions.

---

[1] Plaintiffs include over 80 Jefferson Parish residents who have filed claims on an individual basis for alleged harm they suffered as a result of the emission of noxious odors from a landfill owned by Jefferson Parish and operated by Waste Connections US, Inc.

19-C-129          EX. 1

We recognize that in their reply memorandum, plaintiffs note the named plaintiffs in the consolidated federal class actions recently filed an "Amending and Superseding Master Class Action Complaint for Damages," which appears to change the scope of the proposed class definition.  Plaintiffs contend the stay granted by the trial court is no longer appropriate because the amended class definition does not include claims for personal injury, medical monitoring, lost wages and the unconstitutional taking of property, which they seek in their petition for damages.  We, however, are not a court of first impression and therefore, we refrain from considering this new information in determining whether the trial court erred in granting a stay pursuant to La. C.C.P. art. 532.  This issue is more appropriately raised with the trial court.

Accordingly, plaintiffs' application for supervisory writs is denied.

Gretna, Louisiana, this 7th day of May, 2019.

**HJL**
**FHW**
**SJW**

2

1135

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

**FIFTH CIRCUIT**
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## <u>NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY</u>

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN
TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS
DAY <u>05/07/2019</u> TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF
THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY

MARY E. LEGNON
INTERIM CLERK OF COURT

**19-C-129**

### <u>E-NOTIFIED</u>

William Peter Connick (Respondent)

David R. Taggart (Respondent)
S. Eliza James (Relator)
Michael S. Futrell (Respondent)
Michael C. Mims (Respondent)

### <u>MAILED</u>

John B. Stanton (Respondent)
Attorney at Law
1100 Poydras Street
Suite 2700
New Orleans, LA 70163

James B. Slaughter  (Respondent)
Pro Hac Vice
13501 Street, N.W.
Suite 700
Washington, DC 20005

Barry S. Neuman  (Relator)
Pro Hac Vice
1800 M Street N.W.
Suite 450N
Washington, DC 20036

Adrian F. Snead (Relator)
Pro Hac Vice
1800 M Street, N.W.
Suite 450N
Washington, DC 20036

Matthew D. Moghis (Respondent)
Attorney at Law
3421 North Causeway Boulevard
Suite 408
Metairie, LA 70002

Byron M. Forrest (Relator)
Nicholas V. Cressy (Relator)
Attorney at Law
365 Canal Street
Suite 1475
New Orleans, LA 70130

CT Corporation System  (Respondent)
Agent for Service
3867 Plaza Tower Drive
Baton Rouge, LA 70816

Megan R. Brillault (Respondent)
Michael G. Murphy  (Respondent)
John H. Paul (Respondent)
Pro Hac Vice
477 Madison Avenue
15th Floor
New York, NY 10022

Louisiana Regional Landfill Co. and Waste
Connectionsl Bayou, Inc.  (Respondent)
Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**SUIT NO.: 790-369**                                  **DIVISION: "J"**

**FREDERICK ADDISON, et. al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY et. al.**

**FILED: _____        _____**

                                                      **DEPUTY CLERK**

*EX PARTE* **MOTION FOR ADMISSION OF C. ALLEN FOSTER, ESQ AS CO-COUNSEL** *PRO HAC VICE*

  **PETITIONERS**, through undersigned counsel, respectfully moves this Honorable Court for an order admitting C. Allen Foster, Esq. a member in good standing admitted to practice in the District of Columbia and North Carolina, to serve as co-counsel of record in the above-captioned matter.

  In accordance with Rule XVII, Section 13A3(i), mover attaches Mr. Foster's *Pro Hac Vice* letter of approval from the Louisiana Attorney Disciplinary Board as exhibit "A". Undersigned counsel further verifies that a trial date has not been selected in this matter. Additionally, Plaintiffs request that this motion be considered on an expedited basis as the hearing on Jefferson Parish's Motion to Temporarily Lift Stay and Motion to Consolidate was filed on April 11, 2019 and requested *ex parte* relief, or alternatively, an expedited hearing. Said hearing, in addition to the hearing on Plaintiffs' Motion to Permanently Lift Stay, is scheduled for May 9, 2019, less than thirty days from the date of filing of Jefferson Parish's Motion. Plaintiffs' counsel received the letter of approval of Mr. Foster's application on May 8, 2019. Thus, Plaintiffs are requesting that this Motion be granted prior to or at the time of the May 9, 2019 hearing.

  **WHEREFORE**, Petitioners pray that this Honorable Court enter an order enrolling C. Allen Foster, Esq. as co-counsel *pro hac vice* in the above-captioned matter.

           RESPECTFULLY SUBMITTED:

*/s/ S. Eliza James*

_____

**Forrest Cressy & James, LLC**
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place Office Tower
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Telephone: 210-414-1723
Facsimile: 504-322-3884
eliza@fcjlaw.com

Barry S. Neuman (Admitted P*ro Hac Vice*)
Adrian Snead (Admitted *Pro Hac Vice*)
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

**OF COUNSEL:**
C. Allen Foster
Erik Bolog
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

## CERTIFICATE OF SERVICE

I hereby certify that on this 8 day of May, 2019, a copy of the above and foregoing Motion was served on the following parties by by depositing a copy of same in the United States mail, postage prepaid and properly addressed or by e-mail.

*/s/ S. Eliza James*

_____

**S. Eliza James**

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408

2

Metairie, Louisiana 70002
Fax: 504- 838-9901

WASTE CONNECTIONS, U.S.
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163
Fax: 504- 596-6301

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005
Fax: 202-789-6000

William Barousse
701 Poydras Street
Suite 4800
New Orleans, LA 70139
Fax: 504-561-1011

APTIM CORP.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

3

1139

**24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**SUIT NO.: 790-369**                                        **DIVISION: "J"**

**FREDERICK ADDISON, et. al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et. al.**

**FILED: _____        _____**

                                                        **DEPUTY CLERK**

**O R D E R**

Based on the foregoing *Ex Parte* Motion:

**IT IS HEREBY ORDERED** that C. Allen Foster, Esq., duly licensed practitioner in the

State of North Carolina and District of Columbia, be admitted as *pro hac vice* co-counsel in this

matter.

Gretna, Louisiana, this _____ day of _____, 2019.

_____

**J U D G E- DIV. "J"**

**PLEASE SERVE A COPY OF THIS SIGNED
ORDER ON ALL PARTIES OR COUNSEL OF RECORD
VIA U.S. MAIL.**

4



# LOUISIANA ATTORNEY DISCIPLINARY BOARD

## OFFICE OF THE DISCIPLINARY COUNSEL

4000 S. Sherwood Forest Blvd.
Suite 607
Baton Rouge, Louisiana 70816
(225) 293-3900 • 1-800-326-8022 • FAX (225) 293-3300

May 6, 2019

Charles Allen Foster, Esq.
Whiteford, Taylor & Preston, LLP
800 M. Street, NW – Suite 450 North
Washington, DC 20036

     Re: 19-PHV-262
        Frederick Addison, et al
        vs. Louisiana Regional Landfill Company (LRLC), et al
        Docket 3 790-369 – Div J

Dear Mr. Foster:

  The Louisiana Office of Disciplinary Counsel has received your application for *pro hac vice* admission in the State of Louisiana in connection with the matter of *Frederick Addison, et al vs. Louisiana Regional Landfill Company (LRLC), et al* pending before the *24th Judicial District Court* in *Jefferson Parish*. A review of your application indicates that you are supported by your sponsoring attorney *Sara Eliza James,* who is currently licensed and in good standing with the Louisiana State Bar. In all respects it appears that your application is in appropriate format. The Office of Disciplinary Counsel currently possesses no information upon which to base an opposition to your application.

  By copy of this correspondence to the presiding District Court Judge and your sponsoring attorney, we are advising them of our approval of your application.

       Very truly yours,

       CHARLES B. PLATTSMIER
       Chief Disciplinary Counsel

CBP/pab
cc: Honorable Stephen C. Grefer
  Sara Eliza James, Esq.

Exhibit A

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                                    DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**JOINT SUPPLEMENTAL MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION TO PERMANENTLY LIFT STAY BY
DEFENDANTS WASTE CONNECTIONS AND JEFFERSON PARISH**

Waste Connections U.S., Inc. ("Waste Connections") and Jefferson Parish, through

undersigned counsel and pursuant to the Court's instructions at the May 9, 2019 hearing, submit

this supplemental memorandum in opposition to Plaintiffs' Motion to Permanently Lift Stay,

filed on April 23, 2019.

The Fifth Circuit Court of Appeal agreed with this Court's decision that the *Addison*

Plaintiffs share an identity with the federal plaintiffs and therefore, under *Aisola v. La. Citizens*

*Prop. Ins. Corp.*, 14-1708 (La. 10/14/15), 180 So. 3d 266, this action was properly stayed under

the doctrine of lis pendens. The revised class definition in the Federal Class Action[1] – still

encompassing all residents in Jefferson Parish – does not change the analysis, and the Court

should reaffirm that a stay is warranted.

Nevertheless, the *Addison* Plaintiffs claim that they no longer share an identity with the

federal plaintiffs because they allegedly seek additional damages from the Defendants. Yet, all of

the *Addison* Plaintiffs allege that they are residents of Jefferson Parish and seek damages for

nuisance and interference with the use and enjoyment of property as a result of odors allegedly

emanating from the Jefferson Parish Landfill. They fit squarely within the definition of the

putative class – therefore each and every one of the *Addison* Plaintiffs are still putative class

members. The *Addison* Plaintiffs even conceded at the May 9th hearing that a final judgment in

the pending Federal Class Action would bar claims they assert in this action if the two actions

---

[1] *Ictech-Bendeck v. Progressive Waste Solutions of LA, Inc.*, Case No. 18-7889 c/w 18-8071, 18-8218, 18-9312
(E.D. La.) ("Federal Class Action").

shared an identity of parties. Given this concession, the *Addison* Plaintiffs try to manufacture an appearance of unfairness and speculate over what may or may not happen during the class certification process, premised on the argument that there is not an identity of the parties because some of the *Addison* Plaintiffs seek personal injury damages. However, no valid basis exists for this Court to permanently lift the stay. Plaintiffs' remedy is clear: if a class is certified in the Federal Class Action and the *Addison* Plaintiffs at that time do not believe the class representatives will adequately represent their interests then the *Addison* Plaintiffs may opt out and proceed to litigate their claims.

In addition to the reasons previously set forth in Defendants' memoranda in opposition to the *Addison* Plaintiffs' motion to lift the stay, this motion should be denied because: (1) an identity of parties continues to exist since the *Addison* Plaintiffs explicitly allege nuisance and property-related damages, which necessarily means they fall under the umbrella of the class definition proposed in the Federal Class Action; and (2) a final judgment in the Federal Class Action would have preclusive *res judicata* effect on the *Addison* Plaintiffs.

**A.     An identity of parties exists between the actions.**

      **1.     The *Addison* Plaintiffs continue to be putative class members of the Federal Class Action because they allege nuisance and property-related damages.**

The federal plaintiffs have proposed the following class definition:

> [a]ll persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill . . . .[2]

Just like the federal plaintiffs, there is no dispute that the *Addison* Plaintiffs are residents of Jefferson Parish and seek damages caused by the alleged emission of odors and gases from the Landfill. Likewise, there is no dispute that the *Addison* Plaintiffs allege that "each" of them has suffered nuisance damages and interference with the enjoyment of their homes.[3] These facts

---

[2] Ex. B ¶ 17, attached to Waste Connections' original opposition memorandum.

[3] *See* Petition, ¶ XXXIX ("Defendants have violated, *inter alia*, Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continued to cause **each** of the Petitioners damages including nuisance damages...and diminution in property value.") (emphasis added); *id.* ¶ XXXI ("Defendants are liable to the Petitioners for all damages they have suffered...on account of nuisance."); Petition at Introduction (alleging "discomfort and inconvenience"); *See* Petition, para. XXX (alleging that defendants caused "an unreasonable interference with **each** of the Petitioners' comfortable use and enjoyment of their homes.") (emphasis added); *id.* ¶ XXXII ("These physical

dispositively show that the *Addison* Plaintiffs are putative class members; therefore, the *Addison* Plaintiffs share an identity with the federal plaintiffs.

At the May 9 hearing, Plaintiffs argued that a certain subset of them are no longer class members – and therefore an identity between the plaintiffs in both actions does not exist – on the ground that the Federal Class Action relates only to property *owners*.[4] As the Court properly observed, there is nothing in the Master Class Action Complaint that limits the class to property owners.[5] The class is defined to include residents who have suffered nuisance damages and interference with the enjoyment of property. The federal plaintiffs assert claims for nuisance under Article 667 to 669 and for negligence, and seek relief for "all other injuries and damages as shall be proven at trial."[6] These types of claims and damages may be brought by and are recoverable by individuals that do not own, but merely reside at a property, *see, e.g., Inabnet v. Exxon Corp.*, 93-0681 (La. 9/6/94), 642 So. 2d 1243 (lessees); *Yokum v. Nicholas S. Karno II, Inc.*, 126 So.3d 723 (La. App. 4th Cir. 2013) (non-owner resident); *King v. W. Club, Inc.*, 587 So. 2d 122, 124 (La. App. 2nd Cir. 1991) (non-owner family members). And both claims may allow recovery for alleged personal injuries. *See infra* Section A.2. Thus, contrary to Plaintiffs' claims, neither the class definition nor the claims asserted on behalf of the proposed class require property ownership.

In addition, while the *Addison* petition spells out various specific injuries, which are not mentioned by name in the Master Class Action Complaint (e.g. difficulty breathing, coughing, nausea and burning eyes, ears, noses and throat) and which may or may not be asserted by the federal plaintiffs at trial – nothing in the Federal Class Action definition excludes individuals having additional damages from being a putative class member. Thus the question that this Court must answer is: Do the *Addison* Plaintiffs fit under the broad umbrella of the class definition proposed in the Master Class Action Complaint? Because the Master Class Action Complaint's proposed definition includes those who have suffered nuisance damages and interference with

---

invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, loss of enjoyment of property, as well as fear, anguish, and mental pain and suffering.").

[4] Transcript, p. 15.

[5] Transcript, p. 21

[6] Master Class Action Compl. at 11.

3

the enjoyment of their homes, arising from the same transaction or occurrence (alleged releases of odors from the Jefferson Parish landfill), it follows that all of the *Addison* Plaintiffs fit within this definition. Simply put, the *Addison* Plaintiffs may not escape the broad reach of the proposed class definition merely because they have alleged additional damages for injuries not specifically detailed in the Master Class Action Complaint. Nothing has changed: there remains an identity of parties in both actions. *Aisola,* 14-1708 at 4, 180 So. 3d at 269.

2. **The Master Class Action Complaint leaves open the possibility of seeking damages for personal injuries.**

Contrary to the Addison Plaintiffs' claims, the Master Class Action Complaint alleges broad categories of injury, including nuisance damages – an expansive category that includes personal injuries. *See* La. Civil Code art. 667 (allowing plaintiffs to seek relief for "any damage" caused by a neighbor's wrongdoing); *Dean v. Hercules, Inc.*, 328 So. 2d 69, 73 (La. 1976) ("C.C. 667 is not limited in its operation to damage to immovable property. Rather, the article specifically provides that the landowner cannot make any work on his estate 'which may be the cause of any damage to him' (his neighbor). **Article 667 seems to encompass liability for personal injuries.**") (emphasis added).[7] In addition, the federal plaintiffs also included a request damages on behalf of the class for "all other injuries and damages as shall be proven at trial."[8] Thus, damages for personal injuries are not excluded from the Federal Class Action, but are plainly encompassed within its claims.

More to the point, regardless of whether nuisance includes personal injury or whether the federal class action plaintiffs intend to seek damages for personal injuries at trial, the *Addison*

---

[7] The Second Circuit Court of Appeal similarly concluded that phrase "the cause of any damage" in Article 667 encompasses personal injuries:

One scholar has explained the meaning of the phrase "the cause of any damage" in Article 667:

Article 667 imposes civil responsibility for acts, constructions, and activities that may be "the cause of any damage" to neighboring landowners. This, however, does not mean that all damage, however caused, is compensable under this article....

The terms of Article 667 are sufficiently broad to support awards for structural damages to immovable property, for depreciation of land values, and for all injuries to persons. Most actions brought or decided under Article 667, however, involve claims for structural damage caused to immovable property. When such damage is shown, courts may also award damages for inconvenience, for injury to a person's health, and for mental anguish.

*Dumas v. Angus Chem. Co.,* 31,400 (La. App. 2 Cir. 1/11/99), 728 So. 2d 441, 451, writ denied, 99-0751 (La. 4/30/99), 741 So. 2d 19 (quoting 1 A.N. Yiannopoulos, Predial Servitudes § 51, at 143, in 4 Civil Law Treatise (1997)).

[8] Master Class Action Compl. at 11.

4

Plaintiffs are Jefferson Parish residents seeking damages for nuisance and interference with the enjoyment of their homes as a result of odors allegedly emanating from the Landfill. Thus, unless and until they opt out (if the class is certified), they still fall under the umbrella of the class definition proposed in the Master Class Action Complaint. This is all that is required for the exception of lis pendens to apply here.

        **3.**      **Plaintiffs improperly rely on speculation to argue that they may not be members of the class in the future.**

The *Addison* Plaintiffs also argue that because the federal plaintiffs have offered to provide a more precise class definition in the future, the *Addison* Plaintiffs are no longer members of the class. However, as discussed in detail in the Defendants' opposition briefs, the *Addison* Plaintiffs are *currently* putative class members. This is what the Court must consider.

Despite the clear law that a court must consider lis pendens based on the facts presented at that time, Plaintiffs have urged the Court to speculate as to how future events might unfold. Yet, courts have long recognized that "[h]ard questions cannot be avoided by a hypothetical reshuffling of the facts." *Trimble v. Gordon*, 430 U.S. 762, 774 (1977). This Court correctly recognized that the class definition in the Master Class Action Complaint, like any class action, is subject to potential narrowing until such time as the Eastern District formally orders that a class be certified.[9] However, this possibility – present in all class actions – is not a basis for declining to apply lis pendens, as the Louisiana Supreme Court has made clear. *See Aisola* 14-1708 at 4, 180 So. 3d at 269 (finding that there was an "identity of parties" and upholding exception of lis pendens where plaintiffs were putative class members of four earlier-filed class action suits); *Elfer v. Murphy Oil USA, Inc.*, 02-0020 (La. 3/15/02), 811 So. 2d 892 (same); *Quinn v. La. Citizens Prop. Ins. Corp.*, 2012-0152 (La. 11/2/12), 118 So. 3d 1011, 1022 (when a class action is pending in federal court, and a state individual action is filed later to protect any timeliness issues, a stay of the state court action is appropriate to ameliorate impacts on judicial efficiency).

The *Quinn* decision is particularly instructive here, as it addressed some of the difficulties that can arise from the uncertainty of whether a proposed class will be certified or not. *Quinn*

---

[9] Transcript, p. 9, lines 10–27.

addressed the question of whether a plaintiff in a later-filed state court suit may avail himself of

the prescription-tolling device of Louisiana Code of Civil Procedure article 596 when there is an

earlier-filed class action pending in federal court, referred to as cross-jurisdictional tolling. In

rejecting the application of cross-jurisdictional tolling, the Louisiana Supreme Court dismissed

the concern that plaintiffs would be forced to preemptively file suit in state courts to protect

against the risk that class certification might be denied, holding:

> any resultant blow to judicial efficiency occasioned by the necessity of protective filings in state court pending the resolution of the certification issue in federal court can be ameliorated by measures available to the state courts: [E]arly filings in state court by plaintiffs who are pursuing a class action elsewhere could not be entirely undesirable, as such filings would put that state's court system on notice of the potential claim. If necessary, **the state suit could be stayed pending [a decision on class certification by the federal court]**.

*Id.* (emphasis added) (internal citations omitted).

The *Quinn* Court explicitly recognized it was uncertain whether the court in the earlier-

filed would certify a class or not, and whether the class would include the plaintiffs in the later-

filed action. Still, *Quinn* affirms that a stay is appropriate, even in the face of such uncertainty.

In short, whether the class definition may be changed or not, the *Addison* Plaintiffs fall

under the proposed class definition in the Master Class Action Complaint, and thus they share a

legal identity with the federal plaintiffs.

**B.    Plaintiffs' claims would be barred in the future by a decision in the Federal Class Action based on principles of *res judicata*.**

As this Court concluded and the parties do not dispute, the *Addison* Plaintiffs' claims

arise from the same transaction or occurrence as the Federal Class Action – the alleged emission

of fumes or odors from the Landfill.[10] In addition, if the Federal Class Action is certified, *res*

*judicata* would bar any class member – including the *Addison* Plaintiffs because they are putative

class members, *see supra* Section A – from seeking damages not sought in the Federal Class

Action, unless they opt out of the class action once certified.[11]  This is the precise test for

determining whether a later-filed action should be stayed under lis pendens. *Aisola*, 14-1708 at 4,

---

[10] Transcript, pp. 25, 36.

[11] *Matter of Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990) (the critical question for res judicata "is not the relief requested or the theory asserted [by plaintiff] but whether plaintiff bases the two actions on the same nucleus of operative facts."); La. Stat. Ann. § 13:4231 (res judicata applies to "all causes of action . . . arising out of the transaction or occurrence that is the subject matter of [the earlier filed litigation]").

180 So. 3d at 269. Thus, the fact that the *Addison* Plaintiffs may assert different and/or additional claims and damages than those asserted in the Federal Class Action is immaterial to question of whether lis pendens applies, which is simply whether the suits involve matters arising out of the same transaction or occurrence between the same parties.[12] Accordingly, because a final judgment in the Federal Class Action would have preclusive *res judicata* effect on the *Addison* Plaintiffs, a stay under lis pendens continues to be warranted.

**C.   Whether or not the federal plaintiffs adequately represent the interests of the *Addison* Plaintiffs is a question for the Eastern District, not this Court.**

Finally, the Court should reject the *Addison* Plaintiffs' argument that the stay must be lifted because the federal plaintiffs allegedly do not adequately represent the interests of the *Addison* Plaintiffs. Plaintiffs have not cited a single authority suggesting that this is a basis for denying an exception of lis pendens. The reason is clear – the law plainly assigns the "adequate representation" question to the judge presiding over the class action, not this Court. *See* Fed. R. Civ. P. 23(a)(4).

In ruling on the federal plaintiffs' forthcoming motion to certify a class, the Eastern District will be required to determine, among other issues, whether federal plaintiffs adequately represent the class. If it determines the answer to be no, then a class will not be certified, and the *Addison* Plaintiffs can petition this Court to lift the stay. Even if Eastern District determines the answer to be yes and certifies a class, then the *Addison* Plaintiffs may still opt out and petition this Court to lift the stay.[13] In either event, the law affords the *Addison* Plaintiffs adequate

---

[12] Allowing claims for certain damages to proceed, such as damages for personal injuries, while staying others, such as property-related damages, would not only be inefficient (which Plaintiffs concede, Transcript, p. 16-17), but would be contrary to the doctrines of lis pendens and *res judicata*, which requires a stay or dismissal of an entire action, not certain claims. *Aisola*, 14-1708 at 4, 180 So. 3d at 269 (applying lis pendens and staying not only the "identical claims" raised by the later-filed plaintiffs, but the entire later-filed action); La. Stat. Ann. § 13:4231, comment ("For purposes of *res judicata* it would not matter whether the cause of action asserted in the second action was the same as that asserted in the first or different as long as it arose out of the transaction or occurrence that was the subject matter of the first action.").

[13] The Court should reject the *Addison* Plaintiffs' argument that lifting the stay is necessary to prevent the possibility that a class will be certified under Rule 23(b)(1) or Rule 23(b)(2), depriving them of the option to opt out. The Federal Class Action is neither a limited fund scenario, nor does it request injunctive relief – therefore, class certification under Rule 23(b)(1) or Rule 23(b)(2) will not be available. If a class is certified at all in the Federal Class Action, it will be certified under Rule 23(b)(3), the general provision for certification of class actions seeking damages, which requires notice to class members and an opportunity to opt out. Further, if the *Addison* Plaintiffs' speculative scenario bears out, and the federal plaintiffs move for certification under Rule 23(b)(1) or Rule 23(b)(2), the *Addison* Plaintiffs may seek appropriate relief from the Court at that time. Finally, the *Addison* Plaintiffs could only possibly be bound as class members under Rule 23(b)(1) or Rule 23(b)(2) if they in fact fit the definition of class members in the Master Class Action Complaint.

7

protection, making it entirely inappropriate for this Court to speculate on the "adequate representation" question at this time.

## CONCLUSION

The *Addison* Plaintiffs are unable to overcome the fact that they continue to share an identity with the federal plaintiffs. Although the *Addison* Plaintiffs may claim to seek additional damages, they cannot avoid the broad reach of the class definition in the Master Class Action Complaint, which encompasses all Jefferson Parish residents who have allegedly sustained nuisance damages and interference with the enjoyment of their properties, but does not exclude individuals seeking additional damages. The Fifth Circuit agreed with this Court's decision that putative members of a class share an identity with the class action plaintiffs for purposes of lis pendens and that a stay was properly granted in this action. For these reasons, and the additional reasons previously set forth in Defendants' memoranda in opposition, the Court should deny Plaintiffs' motion to permanently lift the stay.

Respectfully submitted,

| BRADLEY MURCHISON KELLY & SHEA LLC | BEVERIDGE & DIAMOND, P.C. | CONNICK AND CONNICK, LLC |
|---|---|---|
| By: [signature] | | By: /s/ Matthew D. Moghis |
| David R. Taggart (La. Bar No. 12626) 401 Edwards Street, Suite 1000 Shreveport, Louisiana 71101 Telephone: (318) 227-1131 Facsimile: (318) 227-1141 | Megan R. Brillault* Michael G. Murphy* John H. Paul* 477 Madison Avenue, 15th Floor New York, NY 10022 (212) 702-5400 | William P. Connick (La. Bar No. 14158) Michael S. Futrell (La Bar. No. 20819) Matthew D. Moghis (La Bar. No. 33994) 3421 N. Causeway Blvd., Suite 408 Metairie, Louisiana 70002 Telephone: (504) 681-6658 Facsimile: (504) 838-9903 |
| Michael C. Mims (La. Bar No. 33991) John B. Stanton (La. Bar No. 36036) 1100 Poydras St., Suite 2700 New Orleans, Louisiana 70163 Telephone: (504) 596-6300 Fax: (504) 596-6301 | James B. Slaughter* 1350 I Street, N.W., Suite 700 Washington, DC 20005 (202) 789-6000  *pro hac vice* | |
| **Counsel for Waste Connections US, Inc.** | | **Counsel for Jefferson Parish** |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above pleading on the following counsel of record via PDF email this 16th day of May, 2019.

Byron M. Forrest
Nicholas V. Cressey
S. Eliza James
Forrest Cressey & James, LLC
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130

Barry S. Neuman
Adrian Snead
C. Allen Foster
Erik Bolog
Whiteford Taylor Preston, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036

OF COUNSEL

24TH JUDICIAL DISTRICT COURT

PARISH OF JEFFERSON

STATE OF LOUISIANA

**FREDERICK ADDISON, BARBARA ADDISON,**
**PERRY ANDRAS ET AL**

**NO. 790-369**

**VERSUS**

**DIVISION J**

**LOUISIANA REGIONAL LANDFILL COMPANY,**
**IESI LA LANDFILL CORPORATION, WASTE**
**CONNECTIONS BAYOU INC., ET AL**

<u>**MOTION TO TEMPORARILY LIFT STAY, MOTION TO CONSOLIDATE,**
**AND REQUEST FOR EXECUTION OF ORDER. EX PARTE, OR, IN THE**
**ALTERNATIVE, REQUEST FOR EXPEDITED HEARING**</u>

<u>**MOTION TO PERMANENTLY LIFT STAY**</u>

Taken in the above entitled and numbered cause,

before Honorable Stephen C. Grefer, presiding on the 9th

day of May, 2019.

<u>APPEARANCES:</u>

**BARRY NEWMAN, ALLEN FOSTER, AND S. ELIZA JAMES**
    Counsels for Plaintiffs

**MATTHEW D. MOGHIS**
    Counsel for Jefferson Parish


**MICHAEL MIMS, DAVID TAGGART AND MEGAN BRILLAULT**
    Counsel for Waste Connections US, Inc.

Reported by:

    **ROSA MANALE, CCR, CDR, OCR**
    Certified Court Reporter

Transcribed by:

    **GINA PATIN, CCR, CDR, OCR**
    Certified Court Reporter

1

```
1                    P R O C E E D I N G S
2      THE COURT:
3            Let's take up the Addison case, which
4      is going to be 790-369, Frederick Addison,
5      et al versus Louisiana Regional Landfill
6      Company, et al.
7            Morning, counselors. Let me get out my
8      score sheet here. I'm going to ask you guys
9      to start wearing numbers so I can keep track
10     of everybody.
11           Let me hear who's representing who.
12     MR. MOGHIS:
13           Good morning, Your Honor. Matt Moghis
14     on behalf of Jefferson Parish.
15     MR. MIMS:
16           Good morning, Your Honor. Michael Mims,
17     David Taggart and Megan Brillault, on behalf
18     of Waste Connections US, INC.
19     MR. NEWMAN:
20           Good morning, Your Honor. Barry Newman
21     on behalf of plaintiffs.
22     MS. JAMES:
23           Good morning, Your Honor. Eliza James
24     on behalf of plaintiffs. Your Honor, I'd
25     also like to introduce Allen Foster. We
26     moved last night for his pro hac vice
27     admission. We received a letter saying his
28     application was approved late yesterday. Mr.
29     Foster, although he practices in D.C., is a
30     native son of Louisiana, growing up in
31     Monroe.
32     THE COURT:
```

2

```
 1              Ah, good for you. You needed help, Mr.
 2         Newman, you had to bring another big gun
 3         from D.C.? Everybody else is here?
 4    MR. NEWMAN:
 5              He's always with me in spirit, though.
 6    THE COURT:
 7              There you go.
 8    MR. NEWMAN:
 9              I'm here as a translator,
10    (laughter)Your Honor.
11    THE COURT:
12              (Laughter) Alright. So, I'm not sure
13         what order to take this up. So, Mr. Moghis,
14         Mr. Mims, you have a Motion to Temporarily
15         Lift the Stay imposed by the Court to have
16         the Court rule upon the Consolidation
17         Motion. Mr. Newman, you have asked for the
18         Court to also lift the Stay, but lift the
19         Stay on a permanent basis. At least we agree
20         on one thing. The Stay should be lifted. And
21         then, we have the larger issues of, I guess,
22         proceeds in terms of the class action, which
23         is pending out there in federal court. So,
24         if you've got a suggestion, Mr. Moghis, I'm
25         listening.
26    MR. MOGHIS:
27              What I would suggest, Your Honor, it is
28         our understanding in the opposition to the
29         Motion to Consolidate, which is the first
30         matter before the Court, that it kind of
31         bleeds in with the Motion to Permanently
32         Lift the Stay. I'm prepared to briefly
```

3

```
 1        address the consolidation issue. Mr. Mims
 2        would address the issue with permanently
 3        lifting the Stay. And we would prefer to
 4        take it in that order, and then hear from
 5        plaintiffs, if the Court would allow.
 6   THE COURT:
 7            That's fine.
 8   MR. MOGHIS:
 9            Judge, regarding the consolidation
10        issue, we'll start with -- and we put in our
11        Motion -- Rule 9.4, the District's Court
12        Rule 9.4 mandates that when a plaintiff
13        files a  -- the same action against the same
14        defendant that they did in a prior action,
15        they have to file a notice of prior filing
16        with the petition. Once they do that, that
17        alerts the clerk's office that that matter
18        is already before this court and needs to be
19        allotted to that first filed division, which
20        would be this court.
21            In this matter, I won't go through the
22        list exhaustively, but there were
23        overlapping plaintiffs in every single one
24        of these subsequently five filed actions
25        since the last time we were here before this
26        court. Mr. Newman has filed another set of
27        lawsuits to the count of five, I believe,
28        we're at now, all of which, again --
29   THE COURT:
30            Have two more coming.
31   MR. MOGHIS:
32            Two more coming. And all of those have
```

4

1     overlapping plaintiffs with Addison.

2        So, our initial contention is that we

3     really don't even get to the argument of

4     consolidation. This should have already been

5     here. It's mandatory that that be filed when

6     the plaintiff is suing the same defendant

7     under the same cause of action, which we

8     have here. And once that's filed, it's also

9     mandatory that it's allotted to this

10    division.

11       So, but moving beyond that, --

12    THE COURT:

13       Let me cut you off there, real quick,

14    Mr. Moghis, and let me just hear from Mr.

15    Newman.

16       Mr. Newman, were the overlapping

17    plaintiffs an accident on behalf of the

18    plaintiffs? I mean, did you intend to have

19    them in multiple lawsuits, or is that --

20    MR. NEWMAN:

21       Your Honor, it was accidental, but we

22    consent to the consolidation.

23    THE COURT:

24       That's interesting.

25    MR. MOGHIS:

26       This is where I sit down.

27    THE COURT:

28       Okay. It could be the best lawyer move

29    of the day for you, Mr. Moghis.

30       Okay.

31    MR. NEWMAN:

32       Hopefully this won't take long, either,

5

1        Your Honor, having agreed to consolidation.
2        THE COURT:
3            I don't think you're going to get a
4        consent to lift the Stay permanently, but
5        it's worth a shot.
6        MR. NEWMAN:
7            Well, we think you have to lift the
8        Stay temporarily to --
9        THE COURT:
10           Yeah, well, I guess, actually, to keep
11       things straight and for purposes of the
12       record, since obviously, that there may be
13       some appellate review of whatever decision I
14       make. I guess based upon the consent to the
15       consolidation, the Court is going to grant
16       the Motion to Temporarily Lift the Stay. To
17       consolidate, as that is required in order to
18       consolidate. So let's take the request to
19       permanently lift the Stay.
20       MR. NEWMAN:
21           Yes. And having consolidated the cases
22       in particular, we think it's incumbent upon
23       this Court now, based on what's happened in
24       the federal litigation, to lift the Stay
25       permanently and allow this case to proceed.
26       Your Honor, when we were here last time, and
27       only the Addison complaint had been filed,
28       the Court, in granting a Stay in its
29       discretion, found that after colloquy with
30       me, said given the proposed class
31       definition, given the then proposed class
32       definition in the federal lawsuits and the

6

1    allegations in this case, in the Addison,
2    there was no way this Court can envision
3    that those same plaintiffs wouldn't be
4    members -- wouldn't -- wouldn't, would not
5    be members of the class, if a class is so
6    certified. And, Your Honor, that's why we
7    are here today. Because in light of what has
8    transpired in the federal litigation, that
9    is no longer the case. We clearly have --
10   well, let me back up. The federal
11   litigation, the class has been redefined
12   now, and narrowed, as defendants have
13   acknowledged, to state explicitly that the
14   class includes the property owners who have
15   suffered property injuries, whereas
16   previously, we're going to rehear, one of
17   the class actions that was then pending, or
18   punitive class actions, explicitly included
19   physical injury. That's no longer
20   the case.
21        And so, as a result, what we now have
22   is that in the cases filed so far, we have
23   over three hundred plaintiffs who are either
24   adults who do not own property, or minors
25   who do not own property. And all of their
26   claims, therefore, are based on alleged
27   physical harm, which we have alleged, in
28   every one of those complaints. In addition,
29   in the Addison complaint itself, we have
30   sixteen minor children who own no property
31   and whose claims could only be, and are only
32   based, on alleged physical harm. And under

7

1157

1          those circumstances, Your Honor, not only

2          are there -- is there no identify of

3          plaintiffs, there is no way that the Court

4          can find that these plaintiffs would be

5          included in the class definition.

6               As a result, your Honor, the parties

7          are not the same. There is no res judicata.

8          For that reason alone, in addition, if we

9          need another reason, it's quite clear based

10         on the way the class was defined in the

11         federal case now, plaintiffs in -- the named

12         plaintiffs in the federal case cannot

13         adequately represent the interest of these

14         plaintiffs. Nor, by the way, can they

15         adequately represent the interest even of

16         the property owners in our cases who also

17         alleged physical injury. Some of them, many

18         of them, more than fifty total, allege very

19         serious physical injuries. Asthma, COPD, and

20         other respiratory ailments that we allege

21         and are prepared to prove were caused or

22         exacerbated by the emissions from the

23         landfill.

24              The flip side, so based on we think the

25         status now, res judicata does not apply.

26         Cannot be found to apply, even if a class is

27         certified in the federal case. Note lis

28         pendens does not apply and, therefore, there

29         is no basis for the Stay to stay in effect

30         as a matter of law.

31    THE COURT:

32              Okay. So, here's my question.

8

1158

1      MR. NEWMAN:

2          Yes, sir.

3      THE COURT:

4          And without getting to the stage just

5      yet of whether it should or shouldn't be

6      lifted under my discretion under 532.

7      MR. NEWMAN:

8          Yes, sir.

9      THE COURT:

10          But, putting that aside for just a

11      moment, the class still isn't certified.

12      There has been a new proposed definition of

13      the class. The class still hasn't been

14      certified. It's been amended once. It could

15      be amended again. The proposed class

16      definition could be amended again before

17      it's ever certified, and the judge could

18      take the proposed class certification and

19      say, you know what, I'm going to certify

20      this class, not what you proposed, and make

21      her own definition as to what the class is

22      ultimately going to be.

23          Am I not still in that same position

24      where, until the class is certified, I don't

25      know who the class is or who the class is

26      going to be. It may include personal

27      injuries at some point down the road.

28      MR. NEWMAN:

29          Well, Your Honor, that's a theoretical

30      possibility, but if that were controlling, I

31      would respectfully submit the court never

32      should have granted the Stay in the first

9

```
1          place, because there would have been no way
2          to find that res judicata would apply in
3          this case. And, as the Court is aware, the
4          doctrine of lis pendens, any doubts about
5          whether the doctrine of lis pendens should
6          apply, should be resolved against applying
7          the doctrine. So, if we're going to take the
8          position that we have -- we don't know
9          whether the class is going to be certified
10         until a later date, there is no way to say
11         now, the lis pendens applies or res judicata
12         would apply. And certainly, Your Honor, if
13         that's the case, I get to the equity
14         argument. Because in the interim, all of
15         these plaintiffs have alleged physical harm.
16         Some of them serious physical harm in the
17         second and third cases that we filed
18         Anderson and Brunette. And, under those
19         circumstances, Your Honor, it's our
20         position, respectfully, that there is no way
21         consistent with the interest of fairness,
22         justice and equity, that the Court can
23         continue to prevent these plaintiffs from
24         proceeding with their claims pending some
25         disposition down the road, which a) under
26         the court's construction, we don't know. We
27         really just don't know whether the class is
28         going to include these plaintiffs.
29    THE COURT:
30          Right. But, I mean, he admitted as much
31         as that, right Mr. Newman? I mean, in the
32         arguments, you know, and I'm just quoting
```

10

1       you from the argument that we last had, I
2       think that if the class is certified, it is
3       delineated that way that that if asked for,
4       then yes, as described in the complaint,
5       then we would be members of and our clients
6       would be members of the class.
7    MR. NEWMAN:
8           Yeah, it was true then.
9    THE COURT:
10          Right.
11   MR. NEWMAN:
12          It's not true now.
13   THE COURT:
14          Because the definition has been
15      amended. And you also said we won't know
16      that unless and until the class is
17      certified. In those cases, and until and
18      unless, and until any of our clients chose
19      to opt out of those classes, which, again, I
20      agree with you, but until that class is
21      certified, I'm -- am I not in the same
22      position, or is the same argument that you
23      stated back then still not hold. I don't
24      know whether your clients would or would not
25      be included in that class. They are still
26      potentially members of this punitive class
27      until such time as the judge says this is
28      the class. It's just going to be property
29      damage and that's all it's going to be. Or
30      the judge says nope, class is going to
31      include everything because we're not doing
32      this in seven different litigations, seven

11

1        different times.
2        MR. NEWMAN:
3             Well, it's up to the plaintiffs. First
4        of all, it's up to the plaintiffs in the
5        federal class litigation to define their
6        class.
7        THE COURT:
8             To try, right.
9        MR. NEWMAN:
10            They have defined it, now, specifically
11       not to include physical damage. And I
12       recognize the colloquy we had last time,
13       Your Honor, but I wind up where the court
14       wound up, in granting the Stay, saying given
15       the proposed class definition, at that time,
16       there was no way that the court could
17       envision that those plaintiffs wouldn't be
18       members of the class of certified. That was
19       the gravemente the court's holding. It was
20       the basis on which the court, I think the
21       primary basis -- I don't want to speak for
22       the court.
23       THE COURT:
24            No. I think that's a fair statement.
25       MR. NEWMAN:
26            The primary basis on which the court
27       granted -- um, decided to Stay. That,
28       simply, no longer is the case. And, again,
29       what we have is a situation where two
30       plaintiffs allege physical injury. As
31       matters now stand, that's not going to be
32       vindicated in the federal litigation. If

                          12

1          they have their way, it will be adjudicated
2          in the federal litigation in a way that
3          would prevent us from ever raising those
4          claims, if they were right on the issue of
5          res judicata. And, respectfully, Your Honor,
6          I think that their strategy is, I believe
7          what's going to happen in the federal case,
8          is there will be a settlement on the
9          property injury claims, and then want to
10         come back to this court and say we're barred
11         from raising physical injury claims.
12              Now, if we -- the other thing that's
13         changed here is, that given the definition
14         as it's now proposed or defined in the
15         federal case, we now know -- I couldn't say
16         this last time. But we now are virtually
17         certain that these plaintiffs, if given the
18         opportunity, will opt out of that case.
19         That's a changed circumstance.
20              What's also is new is that the
21         plaintiffs now in the federal case have
22         alleged -- have alleged that they're
23         entitled to certification under Rule
24         23(b)(1)(2) and (3). And our clients won't
25         even have the right to opt out if they're
26         not certified. If the class isn't certified
27         under (d)(3). And yet, they want to say that
28         we can't bring these claims now even though
29         we've got these physical injuries.
30              So, I think a lot has changed since we
31         were here before. Given the class
32         definition, there's no way we can say that

                              13

```
1              they will be included. In fact, we can say
2              they will not be included in class
3              definition. And, unlike the court's
4              assumption last time, there is no guarantee
5              that they will have an opportunity to opt
6              out. So, to me, Your Honor, the equity
7              argument is sort of the flip side of the res
8              judicata argument. It's two sides of the
9              same coin. Either way, under the
10             circumstances as they now exist, we
11             respectfully submit that the court is
12             virtually compelled in the interest of
13             justice, equity, and the law of res
14             judicata, to lift the Stay and let our
15             clients go forward.
16        THE COURT:
17             At what point in the analysis does the
18             type of damages claimed weigh in to the res
19             judicata/lis pendens argument? Where is that
20             ever in the -- I mean, we talked transaction
21             and occurrence, same facts and
22             circumstances, we talked that type of
23             language. Where do we ever talk about the
24             type of damages claimed?
25        MR. NEWMAN:
26             I would concede that if -- the doctrine
27             of res judicata, if applicable, precludes
28             claims splitting, essentially. It precludes
29             a subsequent lawsuit between the same
30             parties that raised claims that were or
31             could have been raised in the first case.
32             So, I agree that with respect to property
```

14

1      owners, if res judicata were to apply, that

2      a class action lawsuit, that is litigated to

3      conclusion and settles or reaches judgment

4      solely on property claims, would act as res

5      judicata as to injury claims, personal

6      injury claims, with respect to property

7      owners who, theoretically, could have

8      brought those claims in that case. It does

9      not apply, however, under any circumstances,

10     to people who don't own property, who is not

11     being the identity of parties in that

12     situation at all.

13     THE COURT:

14         So, you either have --

15     MR. NEWMAN:

16         In addition -- In addition, I would say

17     that res judicata would not apply even to

18     the property owners, because one of the

19     linchpins of res judicata is that the

20     plaintiffs in the first case have to

21     adequately represent the interest of the

22     plaintiffs in the second case. And we've

23     cited a lot of law that when courts -- And

24     this partly goes to the issue of whether the

25     class will be certified at all, which also

26     is a reason, frankly, why we should be

27     allowed to go forward now, because if it

28     wasn't clear before, it's even more clearer

29     now that the class may (sic) not be

30     certified. Because, because, given the fact

31     that those plaintiffs are not alleging

32     personal injury claims, it's really hard to

15

```
 1           say that they will adequately be
 2           representing the interests of these -- of
 3           our plaintiffs.
 4           THE COURT:
 5                So, do I lift the Stay as to the
 6           personal injury claimants and maintain the
 7           Stay as to the property damage claimants?
 8           MR. NEWMAN:
 9                No, Your Honor, because, again, given
10           -- Given the fact that plaintiffs in the
11           class action case clearly will not be
12           adequately representing the interest of the
13           property owners in this case who have
14           physical injuries. All those people who have
15           COPD and asthma and all the rest, res
16           judicata doesn't apply. That is one of the
17           criteria for whether res judicata applies.
18           THE COURT:
19                No, that's what I'm saying. I guess
20           what I'm saying is, is it possible to lift
21           the Stay as to those plaintiffs who claim
22           personal injuries and maintain the Stay as
23           to those plaintiffs that allege only
24           property damage?
25           MR. NEWMAN:
26                Well, I mean, I think it's
27           theoretically possible, but I have two
28           questions: Number 1) Since the plaintiffs in
29           the federal case won't be adequately
30           representing the interest of either group,
31           because they all have physical injury
32           claims. Why would the court do that? And,
```

16

1     secondly, why would that make sense from a

2     standpoint of case management? To only allow

3     those claims to go forward? I don't think it

4     does.

5     THE COURT:

6         I'm just concerned about the preclusive

7     effect of a class action resolution for all

8     property damage claims that doesn't effect

9     the property damage claims of your clients.

10    I guess I'm looking down the road, and I'm

11    concerned that there is going to be a

12    situation where you're going to get a class

13    action settlement or a judgment alleging

14    that every member who had owned property in

15    this area who was affected gets this amount

16    of damages, and I still have all these cases

17    pending over here. Then you're going to get

18    some motions from those guys, I think, for

19    sure, saying, wait, these claims were

20    resolved over there.

21    MR. NEWMAN:

22        That's why these claims should be

23    allowed to go forward at this time. And

24    that, in itself, is going to be a reason

25    when the federal court sees that we've got

26    500 residents, at least, opting out. They've

27    got the opportunity from that class or

28    asserting claims that the federal cases have

29    not. That's going to be the reason why those

30    classes aren't certified at all.

31    THE COURT:

32        And that may be.

17

```
 1          MR. NEWMAN:
 2               Pardon?
 3          THE COURT:
 4               That may be. They may never get
 5          certified. I don't know. That's -- I mean,
 6          that's possible. Obviously, that's a
 7          potential situation and, I guess at that
 8          point, they'd have to handle them as
 9          individual actions. But, you know, I'm not
10          sure.
11          MR. NEWMAN:
12               But, given all those uncertainties --
13          Again, I come back to the equity argument
14          here. Given all those uncertainties, and we
15          do think that in light of these changed
16          circumstances, it is more likely that a
17          class won't be certified than when I was
18          here a couple of months ago. Given all those
19          uncertainties, to tell our plaintiffs that
20          they cannot proceed now as a matter of
21          discretion, with their personal injury
22          claims, which they continue to incur during
23          this Stay, would be unjust and unfair. Okay.
24          THE COURT:
25               Mr. Moghis? Mr. Mims?
26          MR. NEWMAN:
27               Thank you, Your Honor.
28          THE COURT:
29               Yes, sir.
30          MR. MIMS:
31               Good morning, Your Honor. Michael Mims,
32          on behalf of Waste Connections US, Inc. We
```

18

1        heard a lot from Mr. Newman about the
2        different injuries alleged in the class
3        action versus this Addison action. We didn't
4        hear the words from him same transaction or
5        occurrence. That is the standard that
6        applies here.
7            We also didn't hear an explanation from
8        him of why, even though there may be
9        different harms alleged in both actions, why
10       aren't the Addison plaintiffs fall under the
11       umbrella of the class action proposed
12       definition. In January of this year, you
13       held that the Addison plaintiffs did fall
14       under that class definition. You held that
15       the Addison claim did arise out of the same
16       transaction or occurrence as the federal
17       class action. And just earlier this week,
18       the 5th Circuit Court of Appeals said yes,
19       Judge Grefer was correct. He properly
20       applied the Aisola case. We didn't just get
21       the usual, you know, one word, you know,
22       writ denied, one page order. We got an
23       actual explanation from the Court of Appeal
24       that said yes, Judge Grefer properly applied
25       the Aisola case.
26           Now, today, plaintiffs --
27       THE COURT:
28           And also said send it back to Judge
29       Grefer to consider the amendment to the
30       petition.
31       MR. MIMS:
32           And that's why we're here today. And

                            19

```
1        so, that's what I want to talk about.
2               Today, the plaintiffs are arguing that
3        there are new circumstances. But when you
4        look at the actual criteria that apply to
5        lis pendens, none of the material
6        circumstances have changed. So, let's go
7        back to the class definition.
8               When you looked at this in January, the
9        class definition is all residents of
10       Jefferson Parish who have alleged nuisance
11       and property related damages, allegedly
12       resulting from odors emanating from the
13       Jefferson Parish landfill. Today, the class
14       definition is all residents of Jefferson
15       Parish who have suffered nuisance and
16       property related damages allegedly resulting
17       from odors emanating from the landfill.
18              Now, the plaintiffs have added this one
19       sentence at the end saying that we reserve
20       the right to narrow the class and provide a
21       more specific geographic boundary. From a
22       legal perspective, that sentence has no
23       consequence in federal class action. It
24       doesn't change how that matter is going to
25       proceed. It shouldn't have any consequence
26       here on the lis pendens questions. Because
27       for lis pendens, it's your job to look at
28       what is the proposed class today. How is it
29       defined today. And today it's defined as all
30       residents of Jefferson Parish suffering
31       nuisance and property related damages.
32              We've heard a lot from Mr. Newman about
```

20

1        the proposed class definition being limited

2        to property owners. Your Honor, I've got the

3        proposed class definition right here.

4        THE COURT:

5            I'm with you. It's not property owners.

6        Obviously. Look, the question, Mr. Mims, to

7        cut to it, and I don't mean to cut you off,

8        but the question is, what do you do about

9        the personal injury plaintiffs? Are they

10       included in the revised class definition or

11       are they not included in the revised class

12       definition? And what happens to them? I

13       guess the ultimate question for the court is

14       going to be this is if I maintain the Stay

15       and the class is resolved and it is defined

16       as is proposed, the personal injury

17       plaintiffs never have a chance to allege

18       their damages for personal injuries?

19       MR. MIMS:

20           No, Your Honor.

21       THE COURT:

22           So, where do they get to do that, and

23       when does that happen, and how are they

24       protected?

25       MR. MIMS:

26           So, first of all, I disagree that

27       personal injury plaintiffs are not part of

28       the class action, but we can get to that,

29       because that's really not the issue. If

30       these plaintiffs are not satisfied with the

31       representation by the class members, they

32       can opt out. That is their remedy. Now, Mr.

21

```
 1              Newman has raised this argument that, well,
 2              maybe we won't even get a chance to opt out.
 3              That is a red herring, Your Honor. If you
 4              look at the, uh, the amended class action,
 5              yes, it has a boilerplate listing of all of
 6              the sections of Rule 23 upon which class
 7              certification could theoretically be
 8              granted. This is a Rule 23(b)(3) case. And
 9              23(b)(3) requires notice and an opportunity
10              to opt out. These other sections of Rule 23
11              that Mr. Newman would like to talk about are
12              not this case. They deal with cases where
13              there is a limited fund. They deal with
14              cases where it's an injunction case, which
15              the federal class action is not. 23(b)(3) is
16              your general compensatory damages class
17              action section of Rule 23. That is the
18              federal class action.
19                   If it's certified at all, which remains
20              to be seen, it will be under Rule 23(b)(3).
21              They will get notice. They will have an
22              opportunity to opt out.
23                   Now, in terms of whether they are
24              adequately represented by the class
25              plaintiffs, again, the question is
26              transaction or occurrence, not do the class
27              action plaintiffs allege all of the same
28              harms. You're not supposed to compare that
29              against the harms that the Addison
30              plaintiffs have alleged. It's transaction or
31              occurrence, some courts have said, a common
32              nucleus of operative fact. Same events, same
```

22

1    wrongdoing, and that is clearly the case

2    here. Those cases are about odors allegedly

3    emanating from the landfill.

4        So, that is the question. But, if you

5    were to go down this road of adequate

6    representation, it's entirely speculative to

7    say what damages the class action plaintiffs

8    are going to assert or not.

9        Mr. Newman would, apparently, like to

10   read this class definition as surrendering

11   personal injury damages. That's not what it

12   says. It says nuisance damages, which is

13   very broad under Louisiana law, and includes

14   personal injury damages. So it would be

15   entirely speculative for this court to today

16   try to guess about what causes of action or

17   what damages might or might not be class

18   action plaintiffs assert.

19        What the court is supposed to do, under

20   Aysola and the related cases is ask do these

21   Addison plaintiffs fall under the class

22   definition. The Addison plaintiffs are

23   clearly alleging nuisance and property

24   related damages. Maybe they're alleging some

25   other damages, too. But they're clearly

26   alleging nuisance and property related

27   damages. So they fall under the class

28   definition that's proposed in the federal

29   class action. They are punitive class

30   members.

31        The other question is, does their claim

32   arise from the same transaction or

23

1    occurrence, and it does. Now, if you want to

2    talk about fairness, the fact is, we've seen

3    no demonstration from these plaintiffs about

4    what irreparable harm they're suffering.

5    They argued fairness before you back in

6    January, and you correctly held that that

7    was not a basis for ignoring Louisiana law

8    on lis pendens. They argued fairness in

9    front of the 5th Circuit Court of Appeal.

10   And the 5th Circuit said it was appropriate

11   to Stay the case. We have seen no

12   demonstration today about allegedly

13   suffering irreparable harm. The fair result

14   is for them to wait until they have an

15   opportunity to opt out, which they will

16   have, and not to allow their duplicative and

17   late-filed action to proceed in this court

18   so that they can jump to the front of the

19   line, and start doing discovery, and making

20   the defendants, including Jefferson Parish,

21   go through duplicative rounds of discovery

22   and motion practice.

23        One other thing I wanted to address was

24   this idea that because the class definition

25   could change, that Stay should never have

26   been granted, period. Well, that's the case

27   in every class action. In every class

28   action, the judge, ultimately, is going to

29   define the contours of the class. When they

30   issue an opinion on certification. So, if

31   you will accept that line of thinking, then

32   that would mean that lis pendens would have

24

1          no application in class actions, and we know

2          that's not the case, because we have the

3          Aisola decision from the Louisiana Supreme

4          Court. And the Quinn decision from the

5          Louisiana Supreme Court. And all of those

6          cases that we've cited. So, that's clearly

7          not the law in Louisiana.

8               Your Honor, unless you've got any

9          further questions for me, I think that is

10         the position of Waste Connections. Thank

11         you.

12         THE COURT:

13              Mr. Newman?

14         MR. NEWMAN:

15              Thank you. Just a few points, Your

16         Honor.

17              First, there's no dispute -- Or, we

18         don't dispute that this case is arrived from

19         the same transaction. But contrary to what

20         you just heard, that is not all that it

21         takes to apply the doctrine of res judicata.

22         The parties have to be the same. Or at least

23         in privity. And it is simply the case now,

24         as it was not at the time, back in January,

25         but the parties are not the same. The

26         complaint in our case, Addison and all the

27         other cases, contrary to I think what we

28         just heard, specifically alleges that the

29         plaintiffs incurred substantial loss of not

30         only of use and enjoyment of their homes,

31         but physical harms and discomfort, anguish,

32         and distress. That was in our complaint from

25

1    the outset. In the Addison complaint.
2         It was also in one of the four class
3    actions as they were initially filed. So, at
4    that time, there was parity. A co-existence
5    of plaintiffs in the two cases. Now, I was
6    interested to hear counsel say that he now
7    disputes that the federal class action
8    definition is limited to personal property
9    claims. Because in their brief, they say it
10   is irrelevant that the Addison plaintiffs
11   seek damages beyond -- beyond those sought
12   in the federal class action. Because they
13   also assert the same type of property
14   related damages as the federal plaintiffs.
15   So, what they're saying in their brief, what
16   they were telling you is that simply because
17   many of the plaintiffs, and they erroneously
18   assumed all of the plaintiffs, but simply
19   because some of the plaintiffs allege
20   property damage, it's irrelevant that we
21   also allege physical damages that are not
22   now alleged in the federal case. There's no
23   question that the federal definition in the
24   federal case as it now stands excludes
25   physical harm.
26   THE COURT:
27        Does nuisance include physical harm?
28   MR. NEWMAN:
29        Pardon?
30   THE COURT:
31        Does nuisance include physical harm
32   under Louisiana law?

26

```
1          MR. NEWMAN:
2               Nuisance is -- If you read their
3          definition, it's -- bear with me.
4          THE COURT:
5               Sure.
6          MR. NEWMAN:
7               Because the way they defined it is
8          suffering harm to their property as a result
9          of various, uh, various injuries. It's all
10         predicated on that. Just bear with me, if I
11         may.
12         MR. MIMS:
13              Your Honor, I have the relevant article
14         in front of me if you'd like to hear it.
15         THE COURT:
16              Sure.
17         MR. MIMS:
18              Article 667, that's the article from
19         the Louisiana Civil Code on nuisance.
20         THE COURT:
21              Okay.
22         MR. MIMS:
23              Although a proprietor may do with his
24         estate whatever he pleases, he still cannot
25         make any work on it which may deprive his
26         neighbor of the liberty of enjoying his own,
27         or which may be the cause of any damage to
28         him. Any damage. And, if you look at the
29         Louisiana Supreme Court cases, there's one I
30         don't believe we cited in our brief, but was
31         Dean v. Hercules case, and I can get that
32         citation for you. It makes it very clear
```

27

1          that when Article 667 says any damage, that

2          includes personal injury.

3     MR. NEWMAN:

4          Just bear with me.

5     THE COURT:

6          Sure.

7     MR. NEWMAN:

8          The definition of plaintiffs is all

9          persons domiciled in and/or residing in the

10         Parish of Jefferson, State of Louisiana, who

11         have suffered -- who have sustained legally

12         cognizable damage in the form of nuisance,

13         trespass, interference with the enjoyment of

14         their properties and/or diminution in the

15         value of their properties as a result of the

16         emissions of noxious odors.

17         Now, the counsel noted the decision --

18         I think the court put its finger on it. I

19         think that that decision by the Court of

20         Appeals, at the very least, invited this

21         court to re-examine the facts based upon the

22         amended complaint.

23    THE COURT:

24         I took it more as an instruction, but

25         yes.

26    MR. NEWMAN:

27         Pardon?

28    THE COURT:

29         I took it more as an instruction --

30    MR. NEWMAN:

31         And I think all but invited the court

32         to lift the Stay, is my suggestion. But, in

28

1    any event, counsel also said that I want to

2    focus on the fact that the plaintiffs may

3    not be able to opt out. He said this is a

4    23(b)(3) case. Not according from the

5    plaintiffs in that case. And we don't know

6    that yet. So we don't know if our clients

7    are going to have a chance to opt out.

8        In terms of fairness, I think the court

9    has to look now, again, at the balance of

10    equities. The last time around, this court

11    said that it was going to exercise its

12    discretion to maintain a Stay in the lis

13    pendens because it found it unfair the

14    plaintiffs -- the defendants may have to

15    defend in more than one forum. Again, we

16    would respectfully submit that in light of

17    what the situation is now, that concern

18    pales in comparison to the unfairness of our

19    clients being precluded from proceeding with

20    their cases. Compared to the inconvenience

21    that they might suffer having to defend

22    cases in two forums, we think that the

23    balance clearly tips in our favor,

24    especially since it's now clear, given that

25    our clients have physical injury, it will

26    not be included in the federal case and

27    there won't be res judicata. We'll be

28    litigating in this court anyway. Thank you.

29    THE COURT:

30        Let me get one more thing in here, Mr.

31    Newman. Just let me get your opinion on

32    this.

29

```
 1              If the types of damages sought are
 2         sufficient to defeat the argument regarding
 3         res judicata and lis pendens, is it also not
 4         sufficient to defeat an argument against, or
 5         to sustain an argument, I guess, against
 6         consolidation. Should I be consolidating
 7         cases that are so different because of the
 8         types of damages sought that they don't
 9         share enough commonality that they should be
10         all grouped into one court room, so to
11         speak. Each one of these cases should be
12         brought into various court rooms where they
13         are currently filed. If the damage is enough
14         to make a difference in terms of res
15         judicata and lis pendens, is it also enough
16         to make a difference in terms of
17         consolidation?
18    MR. NEWMAN:
19              Well first, it's not -- It's not the
20         damages. It's -- In terms of as a matter of
21         law why res judicata does not apply is
22         because the plaintiffs aren't the same.
23         That's our first point. The plaintiffs are
24         not the same, and then we have explicitly
25         alleged physical harm. So res judicata does
26         not apply for that reason.
27    THE COURT:
28              Right, but that's why you say the
29         plaintiffs aren't the same is because your
30         plaintiffs allege physical harm, and the
31         plaintiffs in the class action only allege,
32         by your definition, only allege property
```

1    damage.

2    MR. NEWMAN:

3        Because many of our clients don't own

4    property. So they're not the same. By

5    definition, the plaintiffs in the class

6    action case, as presently defined, own

7    property. Because all of the alleged

8    injuries arise --

9    THE COURT:

10       I don't know that it requires property

11    ownership. I mean, if you look at the class

12    definition, individuals domiciled in and

13    residing in the Parish of Jefferson who have

14    sustained legally cognizable damages in the

15    form of nuisance, trespass, interference

16    with enjoyment of their properties and/or

17    diminution of their property values. There's

18    clearly those who own properties that have

19    suffered diminution of property values. But

20    in terms of nuisance, I don't know that

21    nuisance would require ownership. Could you

22    not be a renter and suffer a nuisance? Could

23    you not be a --

24    MR. NEWMAN:

25       Fair enough. Renter, as well. And I

26    would, you're absolutely right. I agree. I

27    stand corrected. And we have clients who

28    have alleged property damage as renters,

29    because a lease is a cognizable property

30    interest. But I'm saying, aside from renters

31    and property owners, we have clients who

32    have neither. Who just reside as these

31

```
 1              residences. At these locations and allege
 2              harm.
 3              THE COURT:
 4                   They would suffer nuisance injuries.
 5              MR. NEWMAN:
 6                   They're not included in the class
 7              action.
 8              THE COURT:
 9                   You don't think they are a resident in
10              the individual domiciled and/or residing in
11              Jefferson Parish who suffered a nuisance
12              injury if they were just simply residing
13              there?
14              MR. NEWMAN:
15                   Well, we're alleging physical harm, not
16              nuisance in those cases. I mean, it's not
17              nuisance. It's physical harm.
18              THE COURT:
19                   Okay. And that assumes that nuisance
20              doesn't include physical injuries. Mr. Mims
21              would suggest that nuisance includes
22              physical injuries, and that's why I was
23              asking if we had a definition. So, I may
24              need to look at that further.
25                   Alright. I got it. Mr. Mims, anything
26              else you want to add?
27              MR. MIMS:
28                   Very briefly, Your Honor.
29              THE COURT:
30                   And Mr. -- go ahead.
31              MR. MIMS:
32                   We maintain that the proper test is
```

32

1    transaction or occurrence, not whether the
2    harms alleged match up. But just so the
3    court is clear on Louisiana law and the fact
4    that in Louisiana, nuisance does include
5    physical injury. The case that I mentioned
6    earlier was <u>Dean v. Hercules, Inc</u>. 328 So.2d
7    69. It just reaffirms what 667 already says,
8    which is that nuisance includes any damage.
9         Lastly, regarding Mr. Newman's argument
10   that we don't know that the class will be
11   certified under Rule 23(b)(3). That's not a
12   reason to lift -- Well, first of all, I
13   would disagree with him. I think we do know
14   that if it's certified, that's the only
15   viable vehicle for certification. But, even
16   if we don't know that, that's not a basis
17   for lifting the Stay. If plaintiffs in the
18   federal class action file a motion to
19   certify the class under 23(b)(1) or
20   23(b)(2), I'm sure Mr. Newman can come to
21   this court and ask you to revisit this
22   issue. I don't think that's going to happen,
23   though.
24        Thank you.
25   THE COURT:
26        If you've got to say something, Mr.
27   Newman, okay, I'll give you the last word.
28   MR. NEWMAN:
29        One other point, Your Honor. The
30   nuisance provision that he is citing is
31   found in the real property section of the
32   statute. It's not in the tort section.

33

1 THE COURT:

2  Yes. It's in the 600's. You're correct.

3  Okay. Alright. Thank you gentlemen. I'm

4 just not prepared to render a decision

5 today. I do want to look at the nuisance

6 issue a bit further and I just did not have

7 a chance to read all of the cases cited. I

8 certainly read the memos, but there were

9 some cases with some nuance I think that

10 bear consideration. So, I want to take a

11 look at a few more cases before I render a

12 decision, so I am going to take this one

13 under advisement, and I'll render a decision

14 shortly.

15  Yes?

16 MR. MOGHIS:

17  Judge, just briefly revisiting the

18 consolidation issue. With respect to the two

19 lawsuits that are anticipated, and I'm

20 certain, some after that, does the court

21 have any guidance on what we can do to

22 potentially avoid having to file these

23 motions every single time a new one is? We

24 would suggest a Rule 9.4 Notice of Prior

25 Filing with all of them being included in

26 the order.

27 THE COURT:

28  Now, that only works if you have

29 overlapping plaintiffs, though. If you don't

30 have overlapping plaintiffs, then that

31 wouldn't work, and Mr. Newman has indicated

32 that the only reason you have overlapping

34

```
1              plaintiffs is because of an error on their
2              part that you shouldn't have the same
3              plaintiffs in multiple lawsuits. I'm not
4              misstating that, right, Mr. Newman?
5         MR. NEWMAN:
6              That's correct.
7         THE COURT:
8              So, I don't think the 9.4 thing would
9              work because you don't overlapping
10             plaintiffs. I think you're going have to
11             move to consolidate them afterwards, you
12             know, is the only way I can foresee that
13             happening.
14        MR. MIMS:
15             Your Honor, the only other point
16             similar to that, now that you have
17             consolidated these actions, we're now up to
18             six actions, two more coming. What we think
19             would make a lot of sense for best resources
20             of counsel and the court is if we could get
21             an extension on responsive pleadings in all
22             of these actions. That way we could file our
23             exceptions and motions to consolidate
24             together and get them heard together,
25             instead of having to come here every time.
26        THE COURT:
27             Well, as of now, I haven't lifted the
28             Stay, so you don't have to file anything.
29             So, depending on what I do with the Stay,
30             you may or may not be in that position. If,
31             in fact, I lift the Stay, I think based upon
32             your comments I will just put in the order
```

35

1 lifting the Stay that you have thirty days
2 to respond to any petition that has been
3 filed from the date of the order lifting the
4 Stay, or something along those lines, to
5 file responsive pleadings. And that way, it
6 will give you a defacto extension of time to
7 file responsive pleadings based upon the
8 court lifting the Stay, thirty days from the
9 date of lifting the Stay. If I don't lift
10 the Stay, then we'll see what the 5th
11 Circuit says and go from there. Okay.
12 Alright.
13 MR. NEWMAN:
14  Your Honor, one other question, if I
15 may. Can the parties have, say, a week to
16 file post hearing brief on the nuisance
17 issue that Your Honor raised during
18 argument?
19 THE COURT:
20  Yeah, that's fine. Because, look, I
21 think it is significant. I'm not, you know,
22 trying to hide the cat under the basket, or
23 whatever the phrase goes. I think the
24 question still remains the same under
25 Aisola, right? There's no question, I think
26 all would agree, that that case arises out
27 of the same nucleus of operative facts or
28 the same transaction and occurrence. I don't
29 think there's any question about that. So
30 the question is whether you have an identity
31 of plaintiffs, and under Aisola, under the
32 punitive class definitions and that sort of

36

1    thing, is where it really comes down. So, if
2    -- If the court is to rule prior to the
3    class being certified, and that's a question
4    I have, is if I am to rule prior to the
5    class being certified based upon the current
6    definition proposed by the plaintiff, then I
7    have to consider whether or not the current
8    definition proposed by the plaintiff
9    includes or doesn't include the plaintiffs
10   in this case and, as such, whether or not
11   they would be members of the punitive class
12   and, therefore, the Stay should be
13   maintained, in my opinion, and lis pendens
14   would apply. If, however, that definition
15   doesn't include them, then we don't have an
16   identity of plaintiffs and, therefore, I
17   should probably lift the Stay and the case
18   should move forward over here as
19   consolidated actions.
20       The other remaining question, I guess,
21   on a side note, would be is it appropriate
22   for the court to wait for certification to
23   see how the court actually defines a class
24   before allowing these actions to move
25   forward because depending on how the court
26   ultimately defines the class we may be back
27   in a situation where the Stay should be
28   appropriate and these claims are held within
29   the class itself.
30       So, those are the issues I'm looking
31   at. Does the current class definition as
32   proposed by the court include the plaintiffs

37

```
1            such as there is an identify of plaintiffs
2            and the previous law cited by the court
3            applies, or is it appropriate or mandatory,
4            whatever word you want to use, for the court
5            to wait until class certification is
6            actually completed and then make a decision
7            as to whether or not the case should move
8            forward, because the definition of the class
9            is always fluid until such time as the judge
10           says this is the class. So those -- If y'all
11           want to brief those issues, those are the
12           ones I'm still considering. And those are
13           the ones that I'm still looking at. So
14           obviously the nuisance definition becomes
15           significant in that, because I think Mr.
16           Mims has suggested that's where the
17           plaintiffs who have personal injury claims
18           are going to be covered under the class
19           certification if it includes the current
20           definition or is, ultimately, defined as
21           proposed by the plaintiffs. So, yes. And if
22           you want a week to send me something, I
23           guess I technically won't take it under
24           advisement. Then what I'll do is I'll give
25           both parties a week to submit a brief on
26           those issues, which today is the 9th? Today
27           is the 9th of May. One week from today would
28           be the 16th of May. So yeah. If y'all both
29           want to submit something, you're not
30           required to, but if you want to submit
31           something by the 16th of May regarding those
32           issues, then I'll take that into
```

38

1       consideration before rendering a decision.

2       MR. NEWMAN:

3           May I ask for one clarification, if I

4       may?

5       THE COURT:

6           Sure.

7       MR. NEWMAN:

8           In our view, the Aisola res judicata

9       lis pendens issue it is not just an identity

10      of parties but adequacy of representation

11      which are related, but --

12      THE COURT:

13          Yes.

14      MR. NEWMAN:

15          Include that as well. Thank you.

16      THE COURT:

17          Feel free to include that in there as

18      well.

19      MR. NEWMAN:

20          Thank you.

21      MR. MIMS:

22          Your Honor, just to clarify my earlier

23      question about responsive pleadings, now

24      that you have just inherited a few cases, I

25      just want to clarify. We have not filed

26      responsive pleadings yet in some of those

27      later cases. I'm not just talking about

28      Addison. So, in the Winningkof and Calligan

29      and Griffin cases, we're going to have to

30      file exceptions of lis pendens or other

31      responsive pleadings. What we think would be

32      appropriate is that we get an extension to

39

```
 1          file those until we get some guidance from
 2          the court.
 3          THE COURT:
 4               Any objection to an informal -- Or, a
 5          formal extension, I guess, Mr. Newman, until
 6          such time as the court renders its decision
 7          on this present Motion to Lift the Stay?
 8          MR. NEWMAN:
 9               Yes, Your Honor. In the event that the
10          court does not do so, that the lis pendens
11          issues and the subsequent "res" are the same
12          as here. I don't know why they need an
13          extension. It's the same briefing.
14          THE COURT:
15               Yeah. Well, I mean, I guess because
16          they would have to file those same pleadings
17          in each action, and it just seems to be a
18          bit cumbersome and expensive for no reason.
19          MR. NEWMAN:
20               But again, it prejudices to our
21          clients.
22          THE COURT:
23               I don't know that it prejudices your
24          clients. See, this is part of my problem
25          with ordering the consolidation prior to
26          resolving some of these issues.
27          MR. MIMS:
28               We're perfectly equipped to brief them
29          every time and show up every time, Your
30          Honor.
31          THE COURT:
32               I'm with you. You get paid by the hour.
```

40

```
 1          MR. NEWMAN:
 2              We're not, Your Honor.
 3          THE COURT:
 4              I'm trying to think of the best way to
 5          handle that. So, at this point, I have
 6          lifted the Stay for purposes of arguing the
 7          Motion to Consolidate only. There was no
 8          opposition to the Motion to Consolidate. I'm
 9          in a little bit of a weird situation there,
10          Mr. Newman. If I find that there are
11          sufficient issues and everything to
12          consolidate, I don't guess that necessarily
13          means I'm finding sufficient issues that the
14          cases are also subject to class
15          certification, but, it's close. I'm just
16          thinking it through in the long term.
17              Alright, so let me do this, Mr. Mims.
18          Since I did grant the Stay temporarily and
19          order consolidation of the cases, all of
20          those cases are under my purview as of this
21          moment, as I appreciate it. So I am going to
22          grant an extension to the defendants to file
23          responsive pleadings until further orders of
24          the court, and further orders of the court
25          will come in my decision on this Motion as
26          to whether or not the Stay should be lifted.
27          So it's going to be a short extension of
28          time based upon my decision to lift the Stay
29          overall. I will also put instructions in
30          that order as to how the responsive
31          pleadings should be filed or, again, if I
32          grant the Stay, it won't be necessary.
```

41

1    MR. MIMS:

2      And that extension would apply to the

3    six related cases that were the subject of

4    the Motion to Consolidate.

5    THE COURT:

6      Everything that was consolidated is now

7    under my purview, so I can make orders in

8    those cases. So yes.

9    MR. MIMS:

10      Thank you, Your Honor.

11    MR. NEWMAN:

12      Your Honor, thank you.

13    THE COURT:

14      Yes, sir.

15    MR. NEWMAN:

16      I'll have Mr. Foster translate it now.

17    THE COURT:

18      I'm not from Monroe, Mr. Foster, so

19    you're going to have to do your best to

20    translate Gretna. I don't know how that's

21    going to work.

22    MR. FOSTER:

23      There was a lot of translation between

24    Monroe and New Orleans, and in the old days

25    too, Judge.

26    MR. MOGHIS:

27      Your Honor? I'm sorry.

28    THE COURT:

29      Yes.

30    MR. MOGHIS:

31      Just because I want to make sure that

32    we do it right leaving here today. With

42

```
 1            respect to the Motion to Consolidate, can we
 2            submit an order on just that at this point?
 3            THE COURT:
 4                 I think you have to.
 5            MR. MOGHIS:
 6                 Yeah. I believe we have to attach it to
 7            the Motions to Transfer in the other
 8            divisions, correct?
 9            THE COURT:
10                 Yes. So, what has to happen is, I think
11            I have to order the consolidation, then they
12            have to agree to transfer it, is the way it
13            works. So they can't transfer to me unless I
14            say it's okay. So you've got to give me the
15            order saying it's okay to consolidate, and
16            then the orders by the other judges will
17            transfer them to me.
18            MR. MOGHIS:
19                 Understood. Thank you.
20            THE COURT:
21                 You will not get an opposition from
22            those other judges. That, I guarantee.
23
24
25       (Whereupon, these proceedings were concluded.)
26
27
```

43

**REPORTER'S PAGE**

      I, **GINA PATIN,   Certified Court Reporter**, in and for the State of Louisiana, the officer, as defined in Rule 28 of the Federal Rules of Civil Procedure and/or Article 1434(b) of the Louisiana Code of Civil Procedure, before who this proceeding was taken, do hereby state on the Record:

      That due to the interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talkovers; that same is the proper method for a Court Reporter's transcription of proceeding, and that the dashes (--) do not indicate that words or phrases have been left out of this transcript;

      That any words and/or names which could not be verified through reference material have been denoted with the phrase "(spelled phonetically)."

**GINA PATIN, CCR, CDR, OCR**
Certified Court Reporter

44

1194

## REPORTER'S CERTIFICATE

     This certification is valid only for a transcript accompanied by my original signature and original required seal on this page.

     I, **GINA PATIN, Certified Court Reporter,** Official Court Reporter in and for the State of Louisiana, employed as an Official Court Reporter by the Twenty-Fourth Judicial District Court, Parish of Jefferson, for the State of Louisiana, do hereby certify that this testimony was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding;

     That the transcript has been prepared in compliance with transcript format guidelines required by statute, or by rules of the board, or by the Supreme Court of Louisiana;

     That I am not of counsel, not related to counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

Signed this _13th_ day of _May_,
2019.

_Gina Patin_
**GINA PATIN**
Certified Court Reporter

45

**24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**SUIT NO.: 790-369**                                                    **DIVISION: "J"**

**FREDERICK ADDISON, et. al.,**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY et. al.**

**FILED:** _____        _____

                                                          **DEPUTY CLERK**

## PLAINTIFFS' POST-HEARING MEMORANDUM IN SUPPORT OF MOTION TO PERMANENTLY LIFT STAY

**MAY IT PLEASE THE COURT:**

I.       **INTRODUCTION**

The Plaintiffs, Frederick Addison, *et al.* respectfully submit this post-argument memorandum addressing the subjects specified by the Court at the conclusion of oral argument on May 9, 2019.  As demonstrated below, the dispositive issue is that more than 260 Plaintiffs in the cases now before this Court have no cognizable property interest and therefore are excluded from the revised class definition  in the "Amended and Superceding [sic] Master Complaint" in *Itech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.* [1] For this reason, there is no "identity of parties" between Plaintiffs in the cases *sub judice*  and the federal class actions for the purposes of *res judicata* and application of *lis pendens*.  Therefore, as demonstrated below, the stay must permanently be lifted.

A.  **Defendants' Motion to Dismiss the Federal Litigation**

---

[1]  EDLA Case No. 18-7889, Rec. Doc. 47. The new class definition in that case is:

> All persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference, with the enjoyment of their properties and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill into and/or onto their persons or properties (except for Defendants' employees and relevant court personnel)… A more precise definition of the proposed class including its geographic boundaries will be set forth in Petitioners/proposed Class Representatives' class certification motion and supporting evidence.

A preliminary note is in order.  Plaintiffs brought their motion to permanently lift the stay because of significantly changed circumstances – namely, that (1) the class definition had changed to preclude claims based on physical injury; and (2) the filing of five additional lawsuits in this Court, bringing the total number of Plaintiffs here to more than 500 – all of whom allege physical injury and more than 250 of whom neither own nor rent real property.

In the past several days, however, Plaintiffs have become aware of additional and significant new facts in the federal litigation, facts that were known to defense counsel but not disclosed during the hearing or in their opposition papers.  On April 24, 2019 – more than two weeks before the May 9, 2019 hearing – the Defendants filed a motion in the federal action to dismiss or alternatively stay the federal putative class action cases.  In their motion papers, Defendants asserted that the Louisiana Civil Code art. 667 "nuisance" claims should be dismissed because, among other reasons, ***an art. 667 claim may only be brought by one who has a legally protectable interest in immovable property***.[2]

As we demonstrate below, Defendants' legal position on this issue as argued to the federal court is correct.  For this reason alone, the stay in this case must be lifted as a matter of law because more than 260 Plaintiffs (more than half of all Plaintiffs) in the cases before this Court neither own nor lease their residences.  Consequently, they cannot be members of any class asserting claims under art. 667, and therefore neither *res judicata* nor *lis pendens* would apply to them even if the class is certified in the federal case.  On the other hand, if the federal court grants Defendants' motion to dismiss the art. 667 claims, then there clearly will be no *res judicata* impact on the Plaintiffs here.  Either way, these Plaintiffs cannot be precluded from pursuing the cases *sub judice* by virtue of the federal litigation.

For these and many other reasons discussed below, there is no doubt that the stay must be permanently lifted given the current (and changed) posture of the federal actions—both as a matter of law and as a matter of justice and fairness.  But if there were any lingering doubt, **the law requires this Court to resolve any doubts concerning the applicability of the doctrine of *lis**

---
[2] *See* Ex. 1 at 9-11.

2

*pendens against* its application.   *Robbins v. Delta Wire Rope, Inc.,* 196 So.3d 700, 705 (La. App. 1st

Cir. 2016).

### B.  Variations in the Plaintiffs in the Six Filed Petitions

For the sake of clarity, it is important to note that none of the six petitions filed to date

contain only one type of Plaintiff that could provide this Court with a basis on which to entirely

stay some Petitions while allowing others to proceed. For example, the *Addison* Petition includes

not just property owners, but 15 minor children and one adult who have no property interests, no

property injury claims and seek damages only for physical harm.   Each of the remaining five

petitions includes adults who own property, adults who rent property, and adults and minor

children who have no cognizable interests in immovable property and therefore assert only

damages for physical harm.  A total of more than 260 named Plaintiffs – roughly 121 adults and 146

minors -- neither own nor rent property, but only have physical injury claims.[3]   Moreover, the

*Anderson* and *Brunet* Petitions include a total of more than 50 individuals who allege serious

respiratory illnesses, including asthma and COPD, on account of the Landfill.  Of those, a total of

21 adults and minors either own nor rent the premises where they live, and thus only seek physical

injury damages.

For the Court's convenience, a chart showing the names of the Plaintiffs in each case who

neither own nor rent property is attached hereto as Ex. 2.

### II.    LAW AND ARGUMENT: THIS COURT MUST PERMANENTLY LIFT THE STAY AS A MATTER OF LAW BECAUSE MORE THAN 260 PLAINTIFFS IN THESE CASES DO NOT HOLD ANY LEGALLY COGNIZABLE INTEREST IN IMMOVABLE PROPERTY, AND THEREFORE THEY CANNOT BE MEMBERS OF THE PUTATIVE CLASS BECAUSE THE CLASS DEFINITION IS LIMITED TO INDIVIDUALS WITH PROPERTY INTERESTS.

### A.  The Court Must Decide This Issue Based on the Present Definition of the Putative Class.

The Court framed the issues to be briefed as whether:

---

[3] For the Court's convenience, a chart showing the names of the Plaintiffs in each case who neither own nor rent property is attached hereto as Ex. 2 *in globo*. Exhibit 2 is broken down by all adult non-owners/lessees and minor children that were named as Plaintiffs in the six pending actions. Exhibit 2 also includes a breakdown adult non-owners/lessees and minor children by Petition.

> The current class definition… include the Plaintiffs and whether there is an identity of Plaintiffs and the previous law cited by the Court applies, or is it appropriate or mandatory… for the Court to wait until class certification is actually completed and the make a decision as to whether or not the case should move forward, because the definition of the class is always flued until such time a the [federal] judge says this is the class. [4]

The Court proceeded to note that if the plaintiffs are not the same, "I should probably lift the stay and the case should move forward over here as consolidated actions."[5] The plaintiffs are not the same, and this Court must lift the stay.

As the Court is aware, it initially granted the stay based on the definitions of the putative class (and the allegations in the *Addison* Petition) as they were then defined, even though it recognized that the class definition might change. (*"given the…proposed class definition [at that time] and the allegations [in the Addison Petition]*, there is *no way* this Court can envision that those same plaintiffs wouldn't be members of the class".[6]  And further:  "*I don't see any way around these parties being included [in the federal class]* and, as such, I think you do *have* the same parties. Accordingly, I think the rules of *lis pendens* apply and, as such, the Court would grant the exception of *lis pendens*."[7]  *Asiola* itself makes plain that the issue of whether plaintiffs are to be considered parties to a separate, putative class action is to be determined based on the proposed class definition *as it then exists*.  If the Plaintiffs are members of the *putative* class, then the class action must be assumed to be res judicata as to those Plaintiffs. *Asiola v. Louisiana Citizens Ins. Prop. Corp.,* 2014-1708 (La. 10/14/15), 180 So. 3d 266, 269.  Defendants clearly agree, as they urged this very proposition at the May 9, 2019 hearing.[8]  ("For *lis pendens*, it's your job to look at the proposed class today. How is it defined today.")

As discussed below, the class definition as presently defined excludes more than 260 plaintiffs in these cases. There is thus no identity or privity between these plaintiffs and plaintiffs

---

[4] Hearing on Plaintiffs' Motion to Permanently Lift Stay, May 9, 2019, Tr. at 38 (attached as Ex. 3 hereto).
[5] *Id* at 37.
[6] Hearing on Waste Connection's Exception of Lis Pendens, January 29, 2019 Tr. at 32. (Emphasis added).
[7] *Id*. (Emphasis added).
[8] Ex. 3 at 20.

4

in the putative class action, and their interests certainly will not be "adequately represented" in the federal litigation.

Accordingly, the law requires the Court to permanently lift the stay.

**B.  The Proposed Class Definition Does Not Include All of the Named Plaintiffs in These Lawsuits Because La. C.C.P. Art. 667 Does Not Provide a Right of Action For Property or Personal Injury Damages to Those Who Have No Interest in Immovable Property**

When the Court first considered whether to stay this proceeding in January, the proposed class in the *Landry-Bourdeaux* petition was defined as residents of Jefferson Parish who have suffered "legally cognizable damages in the form of *personal injury, lost wages, nuisance,* interference with the enjoyment of their properties and/or diminution in the value of their properties as a result of [the Landfill]."[9]   In sharp contrast, the revised Master Class Action Complaint in the consolidated federal cases removed all specific reference to theories of recovery under delictual obligations (personal injury and lost wages) and instead defines the class as people "who have sustained legally cognizable damages *in the form of nuisance*, trespass, interference with the enjoyment of their properties and/or diminution in the value of their properties…."[10]  Thus, the putative class has been narrowed so as to includes only landowners who can assert personal injury damages as well as property damages through nuisance claims.

The Defendants' opposition papers conceded that the claims asserted in the instant cases (which explicitly include physical injury, mental suffering and anguish, *etc*. and are not limited to landowners or renters) are necessarily broader than the claims asserted in the revised class definition, but they asserted that this difference is irrelevant because the plaintiffs in the federal cases, just like the plaintiffs in these cases, purportedly are all property owners.  *See* Defendants' Opp. at 6 ("Try as they might, the *Addison* plaintiffs cannot escape the fact that their allegations of property-related damage place them squarely within the proposed class action definition despite the fact that they are seeking additional damages for personal injuries.")  Defendants' factual

---

[9] *Landry-Bourdeaux v. Progressive Waste Solutions of LA, Inc.*, et al., No. 2:18-cv-09312  ¶ IX (emphasis added)(copy attached as Ex. 1 to Plaintiffs' Memo in Support of Motion to Permanently Lift Stay).
[10] *See Ictech-Bendeck v. Progressive Waste Solutions of La., Inc. et. al.;* EDLA Case No. 18-7889, Rec. Doc. 47. (Emphasis added.)

5

premise was wrong because the *Addison* petition includes fifteen minor children and one adult who have no property claims, but *only* personal injury claims.

After Plaintiffs pointed out in their Reply and at oral argument that more than 260 plaintiffs presently before this Court neither own nor lease property, Defendants changed tack at oral argument and asserted, for the first time, that the art. 667 "nuisance" claims in the federal case *do* encompass claims for physical harm. ***But Defendants failed to note that art. 667 nuisance claims may only be brought by those holding an ownership or leasehold interest in immovable property, a position they fully briefed only two weeks before in the federal action.*** It is black-letter law that an individual who holds no legal interest in immovable property has no standing to maintain a claim under art. 667. *See generally*, 4 La. Civ. L. Treatise § 3:23 (4th ed.) ("Treatise"). (Houseguests, members of the landowner's family, members of the public and trespassers are not "proprietors" under art. 667 and 668). Therefore, it is axiomatic at least 260 plaintiffs in the six cases now before this Court will *not* be members of the class as it is presently defined in the federal litigation.

Defendants have presented this very legal principle convincingly to the federal court in support of their motion to dismiss the federal complaints. There, Defendants cited numerous federal and state court cases to support their arguments that:

(1) "Plaintiffs have not alleged that they have an interest in property neighboring the Landfill...."[11]

(2) "Plaintiffs' nuisance claim fails for the simple reason that they have not alleged any interest in land...To state a claim for nuisance, 'a plaintiff must have some interest in an immovable near the defendant-proprietor's immovable.'"[12]

(3) "Plaintiffs only allege that they are each 'a resident of and domiciled in' Jefferson Parish...They do not allege any ownership interest in real property. This alone is sufficient to defeat the nuisance claim."[13]

Defendants' articulation of the law on this issue is unquestionably correct. *See* Treatise, *supra*; *Bd. Of Comm'rs of Se. La. Flood Prot. Auth.-E v. Tenn. Gas Pipeline Co.*, 850 F. 3d 714, 731 (5th Cir. 2017) (art. 667 nuisance claim requires plaintiff to "have some interest in an immovable

---

[11] *See* Ex. 1 at 9.
[12] *Id* at 10 (citing cases).
[13] *Id* at 11 (citing cases).

near the defendant-proprietor's immovable." (quoting *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 386 (5th Cir. 2001); *Inabnett v. Exxon Corp.*, 93-0681, p. 10 (La. 9/6/94), 642 So. 2d 1243, 1251 ("Article 667 establishes standards of conduct giving rise to liability when 'activity by one party holding a right to immovable property has caused damages to a party holding a right to neighboring property.");[14] *La. Crawfish Producers Ass'n v. Amerada Hess Corp.*, 05-1156, p. 7 (La. App. 3 Cir. 7/12/06), 935 So. 2d 380, 385 (dismissing art. 667 claim where plaintiffs lacked any ownership interest or other legal interest in property derived from the landowner); (*Barasich v. Shell Pipeline Co.*, No. 05-cv-4180, 2006 WL 3913403, at *8 (E.D.La. Nov. 20, 2006) (nuisance claim dismissed because plaintiffs did not allege any "ownership interest or other rights derived from landowners in any lands or waters allegedly damaged.")

In light of this well-settled law, it is clear that more than 260 plaintiffs (and counting) in the cases presently before this Court have no claims for any damage under art. 667; the vast majority of those 260 people are relatives of the homeowner/renter, and the remainder are non-relative residents with no ownership or leasehold interests in the premises. Consequently, it is indisputable that they are *not* members of the federal class as defined. They are not the "same" as or in privity with the putative class member. Critically, any disposition of the federal litigation will *not* act as *res judicata* against them because their personal injury claims cannot be vindicated in the federal litigation; and they certainly will not be "adequately" represented there.

For all the foregoing reasons, this Court is *compelled* to find that *lis pendens* does not apply and to permanently lift the stay.

### C. It Would Be Inappropriate in Any Event for This Court to Maintain the Stay.

> #### 1. The Court Cannot Fairly Rely on Hypothetical Future Revision to the Class Definition to Continue the Stay in Effect When it Previously Rejected the Relevance of Such Hypotheticals in Granting the Stay in the First Place.

---

[14] Defendants also seek to dismiss the art. 667 claims in the federal case because "Louisiana nuisance law specifically requires that a plaintiff be a 'neighbor' of the allegedly offending property." (citing *Inabnett* and other cases). This argument, if correct, is an additional reason why there is no identity of plaintiffs, because the Plaintiffs in the instant cases (who have identified their addresses in the Petitions) have specifically alleged physical injury independent of nuisance claims, and reside at locations that do not abut the Landfill.

As discussed above, since more than 260 Plaintiffs in these cases who allege physical harm and have no cognizable property interests are not included in the putative class, the stay must be lifted as a matter of law because there simply is not an identity of parties. Indeed, there is a wide divergence of parties, as the putative class definition excludes more than half of the named Plaintiffs now before this Court. In granting the stay initially, the Court held that it should apply the putative class definition as then in effect. The Court then rejected the notion that hypothetical future changes to the class definition should have any bearing on the Court's ruling. Now that the putative class definition has changed in a way that clearly excludes hundreds of Plaintiffs, it would be patently inequitable for the Court to rely on the same hypothetical as a basis to continue the stay in effect.

### 2. Plaintiffs Are Now Virtually Certain to Opt Out of any Class That is Certified in the Federal Litigation, If Allowed to Do So.

During oral argument, Defendants' counsel confidently opined that a class in the pending federal litigation could be certified, if at all, only pursuant to Rule 23(b)(3).[15] If that is so, Plaintiffs are virtually certain to opt out of the class. Undersigned counsel could not make that representation in good faith last January given the proposed class definition at that time, but can do so now. Given the new class definition's abdication of any specific reference to physical harm and its removal of any delictual theory of liability, and the Defendants' own argument to the federal court that art. 667 may only include owners or renters, Plaintiffs have every reason to believe their interests in vindicating their claims of physical harm, mental anguish and the like will not be adequately represented in the federal litigation. This is also the case as to the Plaintiffs who own or rent property, all of whom have alleged physical injury, some quite serious illnesses. In the interim, it will take the federal court many months resolve class certification.

Further, the very fact that at least 260 Plaintiffs (and probably hundreds more) will opt out if permitted to do so are powerful factors that would militate against class certification. *See, e.g., Slade v. Progressive Security Ins. Co.*, 856 F. 3d 408, 414-415 (5th Cir. 2017) ("if the number of plaintiffs opting out demonstrated a cogent conflict, the district court could decertify the class").

---

[15] Ex. 3 at 22.

8

Of course, if no class is certified, the federal litigation will not act as *res judicata*, and there would be no basis to apply *lis pendens*, to the instant cases. For these reasons as well it would be highly inappropriate, inequitable, and unjust for this Court to continue to leave the stay in place pending a decision on class certification in the federal litigation. A stay would only serve to delay the day when these plaintiffs *will* proceed with their own litigation and vigorously pursue *all* their claims. In the interim, they would be required to continue suffering the very harm that they seek to redress and vindicate immediately, evidence and witness recollections will continue to erode, and justice thereby delayed and impeded.

### 3. The Balance of Hardships Requires This Court to Lift the Stay As to *All* Plaintiffs

Since the Court must lift the stay as to more than 260 Plaintiffs, the interests of justice and balance of hardships likewise compel the Court to allow the remaining Plaintiffs to proceed as well. The Defendants' interests in avoiding duplicative litigation – the primary concern that led this Court to grant the stay in January -- will no longer be a concern as this case must proceed at least as to the 260+ plaintiffs who have no property interests. The incremental burden to the Defendants of having to litigate the remaining claims is extremely small, especially when compared to the harm that the additional plaintiffs who own or rent homes would continue to suffer if their cases are stayed.

Moreover, as noted above, there is no basis on which the Court could stay some of the Petitions in their entirety and not others. Each of the six Petitions includes Plaintiffs who are minor children with no property interests, adults with no property interests, adults who own property, and adults who rent property. Consequently, the Court has no basis on which to stay some Petitions in their entirety and allow others to proceed. The *Addison* Petition alone includes 15 minor children and one major who hold no interests in property. The subsequently filed five petitions have an even greater diversity of Plaintiffs, including numerous adults as well as minors who do not own or rent property. Given the cross-cutting nature of plaintiffs and claims within and among the six Petitions, from the standpoint of case management and judicial resources, it would

greatly complicate the adjudication of all cases to stay the litigation as to some plaintiffs and not as to others .

In any event, it is now absolutely clear that the hardship to the defendants in having to litigate these cases now is dwarfed by the substantial harm that Plaintiffs will suffer if these cases remain stayed. Given the changed circumstances, there is no longer any question that to require these Plaintiffs to delay pursuing their own claims pending some future rulings in the federal case – none of which would defeat the instant litigation from proceeding – would be extremely unfair and unjust.

### 4.   Defendants Have Moved To Dismiss *or Stay* the Federal Litigation

The Defendants have not only sought to dismiss the federal cases (in which case the present litigation clearly would be allowed to proceed), but they have alternatively asked the federal Court to *stay* that litigation until the Louisiana environmental authorities complete their "enforcement" activities relating to the Landfill.  *See* Ex. 1 at 19.  To say that any such a stay would entail a hiatus of uncertain duration would not adequately capture the reality.  In fact, such a hiatus would undoubtedly be of a very, very long duration, given the clear failure of the responsible State agencies to discover, let alone seek to mitigate, the failures of the Landfill's inadequate gas collection system until a sustained and mounting public outcry – and even then, the State has failed to adequately investigate the potential risks posed by the Landfill.[16]  The State may or may not eventually ensure adequate remedial measures are taken at the Landfill, but those measures, if and whenever completed, will not compensate Plaintiffs for the damages they have suffered in the interim.  This is another reason why it would be unjust for this Court to stay the present litigation until there is a disposition of the federal litigation.

### III.   CONCLUSION

For all the foregoing reasons and those presented in Plaintiffs' Motion papers and at oral argument, the stay should permanently be lifted and the Plaintiffs should be permitted to proceed with this litigation.

---

[16]   *See* Declaration of Paul Chrostowski sworn to Dec. 19, 2018.

10

Respectfully submitted,

**FORREST CRESSEY & JAMES, LLC**

*/s/ S. Eliza James*
_____
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com


*/s/ Barry S. Neuman*
_____
C. Allen Foster (Admitted *Pro Hac Vice*)
Barry S. Neuman (Admitted *Pro Hac Vice*)
Adrian Snead (Admitted *Pro Hac Vice*)
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800


**OF COUNSEL:**
Erik Bolog
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

11

## CERTIFICATE OF SERVICE

I,  S. Eliza James, hereby certify that the foregoing Motion was served on all parties of record via email or U. S. mail, properly addressed and postage pre-paid on this 16 day of May, 2019.

*/s/ S. Eliza James*

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, Louisiana 70002

WASTE CONNECTIONS, U.S.
Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005

Michael D. Murphy
Megan R. Brillault
John H. Paul
477 Madison Avenue
15th Floor
New York, NY 10022

APTIM CORP.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company

12

501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

13

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK,<br>　　　**Plaintiff,**<br><br>**VERSUS**<br><br><br>PROGRESSIVE WASTE SOLUTIONS OF LA, INC., *ET AL.*,<br>　　　**Defendants.** | **CIVIL ACTION**<br><br>**NO. 18-7889**<br>　　**c/w 18-8071,**<br>　　**18-8218, 18-9312**<br><br>**SECTION: "E"(5)**<br><br><br>**JUDGE: Morgan**<br><br>**MAGISTRATE JUDGE: North** |

*Applies to: All Cases*

---

## DEFENDANTS' JOINT MOTION TO DISMISS OR STAY THE COMPLAINT AND MOTION TO STRIKE CLASS ALLEGATIONS

NOW INTO COURT, through their undersigned respective counsel, come Louisiana Regional Landfill Company,[1] Waste Connections US, Inc., Waste Connections Bayou, Inc. (collectively the "Waste Connections Defendants"), Jefferson Parish and Aptim Corp. (collectively the Waste Connections Defendants, Jefferson Parish and Aptim Corp. are referred to as "Defendants") who pursuant to the Order of the Court dated March 29, 2019 [R. Doc. 44] and Order of the Court dated April 23, 2019 [R. Doc. 51], jointly move to dismiss the consolidated Master Complaint [R. Doc. 48] pursuant to Federal Rule of Civil Procedure 12 (b)(6), to strike the class allegations pursuant to Federal Rule of Civil Procedure 23, or stay this action under the Louisiana doctrine of primary jurisdiction, for the reasons set forth in the supporting memorandum filed herewith.

---

[1] Formerly known as IESI LA Landfill Corporation.

<span style="color:red">EXHIBIT 1</span>

WHEREFORE, after due proceedings, the Defendants pray that this motion to dismiss be granted in its entirety and the consolidated claims of the Plaintiffs be dismissed at Plaintiffs sole cost.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By:    /s/ David R. Taggart
           David R. Taggart
           (Louisiana Bar Roll No. 12626)
           401 Edwards Street, Suite 1000
           Shreveport, Louisiana 71101
           Telephone: (318) 227-1131
           Facsimile: (318) 227-1141

           Michael C. Mims
           (Louisiana Bar Roll No. 33991)
           John B. Stanton
           (Louisiana Bar Roll No. 36036)
           1100 Poydras Street, Suite 2700
           New Orleans, Louisiana 70163
           Telephone: (504) 596-6300
           Facsimile: (504) 596-6301

           BEVERIDGE & DIAMOND, P.C.

           Megan R. Brillault (*pro hac vice*)
           Michael G. Murphy (*pro hac vice*)
           John H. Paul (*pro hac vice*)
           477 Madison Avenue, 15th Floor
           New York, NY 10022
           (212) 702-5400

           James B. Slaughter (*pro hac vice*)
           1350 I Street, N.W., Suite 700
           Washington, DC 20005
           (202) 789-6000

           *Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

2

CONNICK AND CONNICK, LLC

By:    /s/ William P. Connick
       William P. Connick, La. Bar No. 14158
       Michael S. Futrell, La. Bar. No. 20819
       Matthew D. Moghis, La. Bar. No. 33994
       3421 N. Causeway Blvd., Suite 408
       Metairie, Louisiana 70002
       Telephone: (504) 681-6658
       Facsimile: (504) 838-9903
       E-mail: moghis@connicklaw.com

       *Counsel for Defendant Jefferson Parish*

GIEGER, LABORDE & LAPEROUSE , L.L.C.

By:    /s/ Earnest P. Gieger, Jr.
       Ernest P. Gieger, Jr. (6154)
       William A. Barousse (29748)
       J. Michael DiGiglia (24378)
       Jonathan S. Ord (35274)
       Gieger, Laborde & Laperouse , L.L.C.
       Hancock Whitney Center
       701 Poydras Street, Suite 4800
       New Orleans, Louisiana 70139
       Telephone: (504) 561-0400
       Facsimile: (504) 561-1011

       *Counsel for Defendant Aptim Corp.*

3

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on April 24, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/ David R. Taggart_____
OF COUNSEL

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**ELIAS JORGE "GEORGE"**
**ICTECH-BENDECK,**
      **Plaintiff,**

**VERSUS**


**PROGRESSIVE WASTE SOLUTIONS**
**OF LA, INC.,** *ET AL.*,
      **Defendants.**

**CIVIL ACTION**

**NO. 18-7889**
      **c/w 18-8071,**
      **18-8218, 18-9312**

**SECTION: "E"(5)**


**JUDGE: Morgan**

**MAGISTRATE JUDGE: North**

*Applies to: All Cases*


# DEFENDANTS' JOINT MEMORANDUM OF LAW IN
# SUPPORT OF THEIR MOTION TO DISMISS OR STAY THE COMPLAINT AND
# MOTION TO STRIKE CLASS ALLEGATIONS

EXHIBIT 1-1

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ......................................4

ARGUMENT .....................................................................................................8

  I.   Legal Standard For Motion to Dismiss ....................................................8

  II.  Plaintiffs Fail to State a Claim for Nuisance. ..........................................9

      A.   Plaintiffs do not allege an interest in real property that is adjacent or proximate to the Landfill. ...............................................10

      B.   Plaintiffs do not allege that the purported odors are anything more than an inconvenience. ................................................12

  III.  Plaintiffs Fail to State a Claim for Negligence. ....................................14

      A.   Plaintiffs' negligence claims are no more than a restatement of their deficient nuisance claims. ..................................................15

      B.   Plaintiffs fail to state the basic elements of custodial or premises liability ............17

  IV.  The Court Should Dismiss and/or Strike Plaintiffs' Class Allegations. ........................19

      A.   Plaintiffs fail to allege the minimum requirements of Rule 23. .................................19

      B.   Plaintiffs fail to plead an ascertainable class. ...........................................23

  V.  In the Alternative, The Court Should Stay this Action Pending Resolution or Dismissal of LDEQ's Ongoing Enforcement Proceedings...........................................29

CONCLUSION...............................................................................................34

i

# TABLE OF AUTHORITIES

Page

## <u>Cases</u>

*A to Z Paper Co. v. Carlo Ditta, Inc.*,
    99-1189 (La. App. 4 Cir. 10/4/00), 775 So. 2d 42 ........................................................13

*Aguilar v. Allstate Fire & Cas. Ins. Co.*,
    No. 06-cv-4660, 2007 WL 734809 (E.D. La. Mar. 6, 2007) ........................................9, 19

*Allen v. Albright*,
    151 So. 2d 554 (La. App. 2d Cir. 1963) .................................................................13, 25

*Allen v. Walmart Stores, LLC*,
    907 F.3d 170 (5th Cir. 2018) ...................................................................................8, 18

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) .................................................................................21, 22

*Arnett v. Strayhorn*,
    515 F. Supp. 2d 690, 698 (W.D. Tex. 2006),
    *aff'd sub nom. Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007) ......................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................8

*Audler v. CBC Innovis Inc.*,
    519 F.3d 239 (5th Cir. 2008) ...................................................................................20

*Barasich v. Shell Pipeline Co.*,
    No. 05-cv-4180, 2006 WL 3913403 (E.D. La. Nov. 20, 2006) ........................................11

*Barrett v. T.L. James & Co.*,
    28,170 (La. App. 2 Cir. 4/3/96), 671 So. 2d 1186 ......................................................12, 13

*Bauer v. Dean Morris, L.L.P.*,
    No. 08-cv-5013, 2011 WL 3924963 (E.D. La. Sept. 7, 2011) .........................................26

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*,
    850 F.3d 714 (5th Cir. 2017) .............................................................10, 11, 12, 16, 18

*Bell Atl. Corp. v. AT&T Corp.*,
    339 F.3d 294 (5th Cir. 2003) ...................................................................................22

ii

*Belle Co. v. State ex rel. Dep't of Envtl. Quality*,
08-2382 (La. App. 1 Cir. 6/12/09), 25 So. 3d 847 ...........................................................31

*Brandner v. Abbott Labs., Inc.*,
No. 10-cv-3242, 2012 WL 27696 (E.D. La. Jan. 5, 2012) ..........................................23, 28

*Brew v. Univ. Healthcare Sys., LC*,
15-cv-4569, 2015 WL 8259583 (E.D. La. Dec. 9, 2015) ..................................................28

*Brown v. Olin Chem. Corp.*,
231 F.3d 197 (5th Cir. 2000) ...........................................................................................10

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
624 F.3d 185 (5th Cir. 2010) .....................................................................................21, 22

*Cent. La. Elec. Co. v. La. Pub. Serv. Comm'n*,
601 So. 2d 1383 (La. 1992) ..............................................................................................30

*Dean v. Hercules, Inc.*,
328 So. 2d 69 (La. 1976) ...................................................................................................16

*DeBremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970) .....................................................................................23, 24

*Duncan v. Wal-Mart La., L.L.C.*,
863 F.3d 406 (5th Cir. 2017) ...........................................................................................15

*Duvio v. Viking Range Corp.*,
No. 12-cv-1430, 2013 WL 1180948 (E.D. La. Mar. 20, 2013) ........................................24

*Ellis v. Tribune Television Co.*,
443 F.3d 71 (2d Cir. 2006)................................................................................................33

*Far E. Conference v. United States*,
342 U.S. 570 (1952)..........................................................................................................30

*Forbush v. J.C. Penney Co.*,
994 F.2d 1101 (5th Cir. 1993), *abrogated on other grounds*
*by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................27

*Frederick v. Brown Funeral Homes, Inc.*,
222 La. 57, 62 So. 2d 100 (1952) .......................................................................................9

*Frith v. Sw. Ouachita Waterworks, Inc.*,
50,749 (La. App. 2 Cir. 10/12/16), 207 So. 3d 1121 .......................................................30

iii

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ................................................................................6

*Gov't of Canal Zone v. Burjan*,
    596 F.2d 690 (5th Cir. 1979) ................................................................................5

*Hollinger v. Home State Mut. Ins. Co.*,
    654 F.3d 564 (5th Cir. 2011) ................................................................................8

*In Matter of Marquette Transp. Co. Gulf-Inland, LLC*,
    No. 13-cv-5114, 2016 WL 1587382 (E.D. La. Apr. 20, 2016)..........................16

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*,
    570 F. Supp. 2d 851 (E.D. La. 2008) ...................................................................9

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) ..............................................................................21

*In re Rodriguez*,
    695 F.3d 360 (5th Cir. 2012) .......................................................................27, 28

*In re Vioxx Prod. Liab. Litig.*,
    No. 09-cv-3713, 2012 WL 2061883 (E.D. La. June 6, 2012) .....................25, 26

*Inabnet v. Exxon Corp.*,
    93-0681 (La. 9/6/94), 642 So. 2d 1243 ........................................10, 11, 12, 16

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*,
    -- F.3d --, No. 17-10943, 2019 WL 1529692 (5th Cir. Apr. 9, 2019) ............4, 8

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) .......................................................................9, 19, 24

*La. Crawfish Producers Ass'n-W. v. Amerada Hess Corp.*,
    05-1156 (La. App. 3 Cir. 7/12/06), 935 So. 2d 380 ........................................11

*LeBlanc v. Exxon Mobil Corp.*,
    No. 14-cv-201-SDD-RLB, 2015 WL 1221560 (M.D. La. Mar. 17, 2015).......26, 28

*Lewis v. Casey*,
    518 U.S. 343 (1996).............................................................................................9

*Magee v. Glacier Water Servs., Inc.*,
    No. 16-cv-4364, 2017 WL 396287 (E.D. La. Jan. 30, 2017) .............................5

iv

*MCI Telecommunications Corp. v. Teleconcepts, Inc.*,
    71 F.3d 1086 (3d Cir. 1995)............................................................................31

*Meyer v. Kemper Ice Co.*,
    180 La. 1037, 158 So. 378 (1934) ...............................................12, 13, 14, 25

*Mills v. Davis Oil Co.*,
    11 F.3d 1298 (5th Cir. 1994) ...................................................................29, 30

*Miss. Power & Light Co. v. United Gas Pipeline Co.*,
    532 F.2d 412 (5th Cir. 1976) ........................................................................33

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ........................................................................27

*Neitzke v. Williams*,
    490 U.S. 319 (1989)........................................................................................8

*Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*,
    69 F.3d 1304 (5th Cir. 1995) ........................................................................30

*Pitre v. Yamaha Motor Co.*,
    51 F. Supp. 3d 644 (E.D. La. 2014)............................................................8, 9

*Plaza 22, LLC v. Waste Mgmt. of La., LLC*,
    No. 13-cv-618-SDD-SCR, 2015 WL 1120320 (M.D. La. Mar. 12, 2015)......28

*Price v. Martin*,
    11-0853 (La. 12/6/11), 79 So. 3d 960...........................................................28

*Reymond v. State through Dep't of Highways*,
    255 La. 425, 231 So. 2d 375 (1970) .............................................................11

*Richards v. Baton Rouge Water Co.*,
    13-0873 (La. App. 1 Cir. 3/21/14), 142 So. 3d 1027.....................................29

*Rogers v. Columbia/HCA of Cent. La., Inc.*,
    961 F. Supp. 960 (W.D. La. 1997).................................................................30

*Russell v. Forest Isle, Inc.*,
    18-0602 (La. App. 4 Cir. 12/5/18), 261 So. 3d 47...............................17, 18, 19

*S.-W. Utils. v. S. Cent. Bell Tel.*,
    339 So. 2d 425 (La. App. 1st Cir. 1976)........................................................29

*Smith v. XTO Offshore, Inc.*,
    No. 11-cv-01487, 2012 WL 1247224 (E.D. La. Apr. 12, 2012)........................................16

*Steering Comm. v. Exxon Mobil Corp.*,
    61 F.3d 598 (5th Cir. 2006) ........................................................................................23

*Taylor v. Denka Performance Elastomer LLC*,
    332 F. Supp. 3d 1039 (E.D. La. 2018) ............................................................10, 14, 18

*Terrebonne v. Allstate Ins. Co.*,
    251 F.R.D. 208, 212 (E.D. La. 2007)......................................................................21, 23

*TS & C Invs., LLC v. Beusa Energy, Inc.*,
    637 F. Supp. 2d 370 (W.D. La. 2009)......................................................................11, 25

*Wal-mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................................................22

*Yokum v. 615 Bourbon St., L.L.C.*,
    07-1785 (La. 2/26/08), 977 So. 2d 859 ........................................................................16

*Zen-Noh Grain Corp. v. Consol. Envtl. Mgmt., Inc.*,
    No. 12-cv-1011, 2012 WL 6201871 (E.D. La. Dec. 12, 2012) ....................................6, 7

## **Statutes**

FED. R. CIV. P. 12(b) ................................................................................................................9, 19

FED. R. CIV. P. 23 ..............................................................................................................3, 19, 20

FED. R. CIV. P. 23(a) ..........................................................................................................19, 20

FED. R. CIV. P. 23(b) ......................................................................................3, 19, 20, 21, 22, 23

FED. R. CIV. P. 23(d) ..................................................................................................9, 19, 24

FED. R. EVID. 201 ......................................................................................................................5

40 C.F.R. Part 60, Subpart WWW ......................................................................................5, 32

LA. STAT. ANN. § 30:2011(A)(1) (2018) ................................................................................31

LA. STAT. ANN. § 30:2012 (2018)........................................................................................6, 31

LA. STAT. ANN. § 30:2023 (2018)........................................................................................6, 31

vi

La. Stat. Ann. § 30:2025 (2018) ...................................................................................6, 31

La. Stat. Ann. § 30:2050.2 (2018) ...............................................................................6, 31

La. Stat. Ann. § 30:2154(A)(3) (2018) ............................................................................31

La. Civ. Code Ann. art. 667 (2018) .......................................1, 2, 10, 11, 14, 16, 17

La. Civ. Code Ann. art. 668 (2018) .................................1, 2, 10, 11, 12, 14, 15, 16

La. Civ. Code Ann. art. 669 (2018) .................................1, 2, 10, 11, 12, 14, 16

La. Civ. Code Ann. art. 2315 (2018) .........................................................................15, 16

La. Civ. Code Ann. art. 2316 (2018) .........................................................................15, 16

La. Civ. Code Ann. art. 2317 (2018) .................................................................................17

La. Civ. Code Ann. art. 2317.1 (2018) .............................................................................17

La. Civ. Code Ann. art. 2322 (2018) .................................................................................17

La. Admin. Code tit. 33, § 711 ...................................................................................5, 32

La. Admin. Code tit. 33, pt. VII .........................................................................................31

La. Admin. Code tit. 33, pt .VII,  § 101 ......................................................................6, 31

La. Admin. Code tit. 33, § 315(B) .....................................................................................32

La. Admin Code tit. 33, § 525 ...........................................................................................32

LR 23.1 ...............................................................................................................................20

## **Other**

Louisiana Department of Health Report, dated Jan. 14, 2019, http://tinyurl.com/y5dewwnq (last visited Apr. 15, 2019) ....................................................................................................6

U.S. Census Bureau, *Jefferson Parish, Louisiana*, https://www.census.gov/quickfacts/ jeffersonparishlouisiana (last visited Apr. 24, 2019) ..............................................8, 25

U.S. Census Bureau, *Louisiana: 2010 Population and Housing Unit Counts*, 19 (July 2012), https://www.census.gov/prod/cen2010/cph-2-20.pdf ....................................................12

# INTRODUCTION

That a landfill in an industrial neighborhood may smell occasionally does not give rise to a nuisance or negligence claim, and certainly not to a class action on behalf of every resident of Jefferson Parish who may have smelled an odor that their lawyers hope to attribute to the Jefferson Parish Landfill ("Landfill"). Five residents of Jefferson Parish have sued the owner and certain alleged contractors of the Landfill individually and on behalf of a proposed class for odors they allege are emanating from the Landfill. Located in Waggaman, Louisiana, the Landfill is in a highly industrial area of Jefferson Parish surrounded by numerous other potential sources of odors, including other active and closed landfills, chemical plants, wastewater treatment plants, and grain loading and unloading operations along the river. Despite this, Plaintiffs target only the Landfill—a major component of southeastern Louisiana's public infrastructure that provides a vital service to Jefferson Parish and is heavily regulated by the state and federal government—as the source of odors that they allegedly experience. Louisiana nuisance and negligence law and federal class action law do not fit the circumstances here, and Plaintiffs have failed to plead viable or plausible claims in their amended master complaint ("Complaint") [Rec. Doc. 48]. Alternatively, the Court should defer to the special expertise of the Louisiana Department of Environmental Quality ("LDEQ") in regulating landfills and stay this action under the doctrine of primary jurisdiction pending resolution or dismissal of LDEQ's ongoing enforcement actions against the Landfill.

The Complaint sets forth two causes of action: nuisance and negligence/gross negligence. With respect to Plaintiffs' nuisance claim, they assert in formulaic and conclusory terms that Defendants have created a nuisance through the emission of odors from the Landfill. The nuisance claim fails, however, because Plaintiffs do not allege that any of them are a neighbor of the Landfill, a key requirement of bringing a nuisance claim under Louisiana Civil Code articles

1

667–669. Nor do Plaintiffs allege that they have a property interest in land or that such land is adjacent or proximate to the Landfill. Moreover, Plaintiffs provide no plausible details about how they have determined that the purported odors originated from the Landfill rather than from one or more of the many other recognized sources of odor in the area, how the purported odors affect them individually, or the nature and degree of the alleged odors, and therefore fail to allege that the odors are unreasonable or excessive as required under Louisiana law—especially for individuals downwind of three landfills and other recognized odor sources.

Plaintiffs' negligence/gross negligence claim fails for the same reasons. Specifically, Plaintiffs allege property diminution and nuisance damages caused by a neighbor-to-neighbor harm. As a result, any duty owed by Defendants must arise under and is defined by the duty owed by a proprietor to its neighbors under Louisiana Civil Code articles 667–669. Because Defendants' obligations to Plaintiffs, if any, are governed by Louisiana's nuisance laws, Plaintiffs' negligence/gross negligence cause of action fails because they are unable to meet the requirements of Articles 667–669. As noted, Plaintiffs do not allege that any of them are a neighbor of the Landfill or that the odors are more than a mere inconvenience.

Without asserting custodial or premises liability as a cause of action, the Complaint suggests that Defendants may be liable for such a claim. To the extent that Plaintiffs intend to assert custodial or premises liability (which are akin to negligence) as a distinct cause of action, Plaintiffs have failed to plead the requisite elements for the same reasons they have not stated a claim for negligence. Nor do Plaintiffs identify with specificity any permanent defect at the Landfill or allege that such a defect presents an unreasonable risk of harm—essential elements of a custodial or premises liability claim. Plaintiffs state, without elaboration, that the Landfill's

leachate and gas collection systems are "inadequate" and "antiquated," but "inadequate" is nothing more than a conclusory assertion and antiquated systems are not necessarily defective.

The Complaint's class allegations fail because Plaintiffs have only made conclusory statements regarding the adequacy of the class representatives and their ability to maintain a class action under at least one of the three criteria set forth in Federal Rule of Civil Procedure 23(b). Plaintiffs simply restate the operative language in Rule 23 without setting forth any supporting factual allegations. Nor have Plaintiffs pleaded an ascertainable class that can be identified by objective standards. The class definition relies on individuals who have suffered "legally cognizable harm," but it lacks any objective criteria to determine whether the purported harm Plaintiffs suffered is sufficient to warrant class membership. Plaintiffs will have to prove they suffered more than "some inconvenience" from the odors to possess a cognizable claim, turning the determination of class membership into a fact-intensive and highly individualized inquiry into each putative class member's claim. Even if a Plaintiff establishes a cognizable harm, they would still need to engage in a fact-intensive inquiry to determine that the odors can be traced to the Landfill as opposed to any of the other recognized sources of odor in the area (especially the two surrounding landfills), including consideration of variables such as wind speed, wind direction, distance from the Landfill and intervening odor sources. Such individualized determinations undermine the utility of the class action and warrant dismissal of the class allegations on the pleadings.

If any of Plaintiffs' claims survive dismissal, the doctrine of primary jurisdiction supports a stay of this action pending resolution or dismissal of LDEQ's enforcement actions against the Landfill. Landfills are complex, highly engineered industrial operations controlled by a myriad of regulations, permits, and industry standards for soil, water, air, and all other aspects of

operations. Plaintiffs' tort claims require technical determinations with respect to the Landfill's compliance with permits and regulations, including whether the design, operation, and maintenance of the Landfill contributed to the alleged odors. Because the State Legislature established a comprehensive regulatory scheme in which LDEQ is charged with regulating landfills and enforcing permits and laws, the Court should defer to the agency's special expertise in this area and allow it to make these preliminary findings—as LDEQ is already doing.

## BACKGROUND AND PROCEDURAL HISTORY[1]

The Landfill is a municipal solid waste landfill located in Waggaman, Louisiana, within Jefferson Parish. Compl. ¶ 6. Jefferson Parish is generally located west and south of New Orleans. It covers a large area on the east and west banks of the Mississippi River, spanning as far north as Lake Pontchartrain and meandering all the way to the Gulf of Mexico at Grand Isle.

[IMAGE ON PAGE 5]

---

[1] Defendants assume Plaintiffs' factual allegations to be true for purposes of this motion only. *See Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, -- F.3d --, No. 17-10943, 2019 WL 1529692, at *5 (5th Cir. Apr. 9, 2019).

4



*Google Earth Image of the JP Landfill. Printed April 22, 2019.[2]

Jefferson Parish owns the Landfill, and Louisiana Regional Landfill Company and Aptim Corp. are alleged to operate portions of the Landfill under contract. *Id.* ¶ 7. The Landfill is highly regulated by LDEQ. Federal and state solid waste and air quality regulations govern the operation of the Landfill's leachate and gas collection systems, mandate annual and quarterly monitoring of methane and other emissions, and specify the types and quantities of waste that the Landfill may accept, among numerous other requirements. *See, e.g.*, 40 C.F.R. Part 60, Subpart WWW; La. Admin. Code tit. 33, § 711. LDEQ enforces these regulations through the Landfill's

---

[2] Courts will take judicial notice of geographic locations and features where they are "not subject to reasonable dispute." Fed. R. Evid. 201; *see, e.g.*, *Gov't of Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979) (geographic locations); *Magee v. Glacier Water Servs., Inc.*, No. 16-cv-4364, 2017 WL 396287, at *3 (E.D. La. Jan. 30, 2017) (Vance, J.) (Google map and satellite image).

permits and regular inspections, and LDEQ has authority to issue compliance orders and initiate enforcement actions. *See* LA. STAT. ANN. §§ 30:2012, 2023, 2025, 2050.2; LA. ADMIN. CODE tit. 33, pt. VII, § 101, *et seq.*

The Landfill is sandwiched between two other immediately adjacent landfills—a municipal solid waste landfill to the east and a construction and demolition debris landfill to the west (both privately owned).[3] The active landfills are among numerous industrial properties and diverse uses that are recognized odor sources in Jefferson Parish. Other potential odor sources include a chemical manufacturer, petroleum storage, and barge loading/unloading operation.[4] LDEQ has in fact officially recognized these other sources of odors in the area: "Jefferson Parish Landfill may in fact not be the source of all odor events. Besides the Jefferson Parish Landfill there are two other landfills nearby, along with industrial facilities and shipping operations that could be contributing factors for odor episodes in the area."[5] Despite these numerous recognized sources of odors in Jefferson Parish, Plaintiffs' barebones Complaint centers on the conclusory claim that on or about August 1, 2017, the Landfill—and no other source—"began to emit noxious odors, believed to consist primarily of methane and hydrogen sulfide gases" into the "surrounding neighborhoods." Compl. ¶ 6.

---

[3] The locations of the adjacent active landfills, and other potential sources of odors in Jefferson Parish, are included in the Louisiana Department of Health's report on the results of air monitoring conducted by LDEQ from February 2018 through December 2018. Louisiana Department of Health Report, dated Jan. 14, 2019, http://tinyurl.com/y5dewwnq (last visited Apr. 15, 2019) ("LDH Report"). This Court may take judicial notice of the LDH Report. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (FDA letter was publicly available official document); *Zen-Noh Grain Corp. v. Consol. Envtl. Mgmt., Inc.*, No. 12-cv-1011, 2012 WL 6201871, at *7 (E.D. La. Dec. 12, 2012) (public LDEQ document). The LDH Report is attached as Exhibit 1 to the Declaration of David Taggart ("Taggart Decl.").

[4] Taggart Decl., Exhibit 1 at 2–3.

[5] LDEQ July 20, 2018 Mobile Air Monitoring Laboratory Report, Section 5 Conclusion, at 11, attached as Exhibit 2 to the Taggart Decl.

Plaintiffs propose a geographically expansive class, to include potentially all residents of Jefferson Parish, and purport to reserve the right to define more precise geographic boundaries on a motion for class certification. *Id.* ¶¶ 6, 17. Without elaboration, Plaintiffs assert that these neighborhoods, including Harahan, River Ridge, and Waggaman, experienced the odors "on various days and at various times of the day and night depending upon the prevailing wind direction." *Id.* ¶ 6.

As Plaintiffs acknowledge, LDEQ is currently investigating the alleged odors. LDEQ issued three compliance orders to the Landfill on June 22, 2018, September 18, 2018, and March 11, 2019, alleging violations of permit conditions and regulations governing the Landfill's gas and leachate collection systems, as well as the Landfill's compliance with operational, recordkeeping, and stormwater management requirements.[6] *Id.* ¶ 14. Two of the compliance orders are presently the subject of an administrative hearing process before the Louisiana Division of Administrative Law.[7] The enforcement proceedings have not yet been resolved.

When pieced together, Plaintiffs' allegations appear to claim that, despite all of the recognized odor sources in the area, these alleged odors were the result of Defendants' negligence in maintaining and/or operating the Landfill and that Plaintiffs have sustained damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and diminution in property value. *Id.* ¶¶ 14, 15, 17. Plaintiffs assert two causes of action— (i) negligence and/or gross negligence and (ii) nuisance—and seek general and special damages. *Id.* ¶¶ 26, 27.

---

[6] Copies of the compliance orders are attached as Exhibits 3, 4, and 5 to the Taggart Decl. The Court may take judicial notice of these public LDEQ documents. *See Zen-Noh Grain Corp.*, 2012 WL 6201871, at *7.

[7] LA Div. of Admin. Law, Order of Consolidation and Letter re Hearing Procedures, Docket # 2018-10122-DEQ (Dec. 13, 2018), attached as Exhibit 6 to the Taggart Decl.

7

Plaintiffs assert these allegations as individuals and on behalf of the broadly defined proposed class of:

> All persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill into and/or onto their persons and/or properties (except for Defendants' employees and relevant court personnel).

*Id.* ¶ 7. As of July 1, 2018, shortly before Plaintiffs allege the "noxious odors" began, the population of Jefferson Parish was 434,051 individuals.[8]

## ARGUMENT

## I.    LEGAL STANDARD FOR MOTION TO DISMISS

"[C]laims may be dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law' . . . [or] if the complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Inclusive Communities Project, Inc.*, 2019 WL 1529692, at *4 (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *accord Pitre v. Yamaha Motor Co.*, 51 F. Supp. 3d 644, 658 (E.D. La. 2014) (Brown, J.) (class claims dismissed in part under state law for failure to state a claim). While a court will accept "well-pleaded facts as true, . . . '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim upon which relief can be granted. *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

---

[8]   U.S. Census Bureau, Jefferson Parish, Louisiana, https://www.census.gov/quickfacts/jeffersonparishlouisiana (last visited Apr. 24, 2019); *see Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571–72 (5th Cir. 2011) (taking judicial notice of United States census data as "an appropriate and frequent subject of judicial notice").

Where the named plaintiffs have failed to state a claim, they cannot maintain an action on behalf of putative class members. *Pitre*, 51 F. Supp. 3d at 671 ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured . . . ." (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996))); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 570 F. Supp. 2d 851, 856 (E.D. La. 2008) (dismissing class pursuant to Rule 12(b)(1) where complaint did not allege that any particular plaintiff was harmed). The Court may also dismiss Plaintiffs' class allegations at the pleading stage for failure to state a claim pursuant to Rule 12(b)(6). *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (dismissing class allegations for failure to state a claim pursuant to Rule 12(b)(6)). In the alternative, the Court may strike Plaintiffs' class allegations pursuant to Rule 23(d)(1)(D) where the pleadings fail to set forth the "minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate." *Aguilar v. Allstate Fire & Cas. Ins. Co.*, No. 06-cv-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007) (striking class allegations requiring intensive review of individual facts for each class members' damage claim, rendering claims inappropriate for class treatment).

## II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR NUISANCE.

Plaintiffs do not specify whether they are bringing a claim for private or public nuisance, but either way, they have failed to allege facts sufficient to state a plausible claim—even when afforded the opportunity to prepare a new master Complaint. Specifically, Plaintiffs have not alleged that they have an interest in property neighboring the Landfill or that the purported odors are unreasonable and excessive, essential elements of a nuisance under Louisiana law.

A proprietor "has a right to do with his estate as he pleases provided he does not cause damage to his neighbor." *Frederick v. Brown Funeral Homes, Inc.*, 222 La. 57, 87, 62 So. 2d

100, 110 (1952). Articles 667–669 of the Louisiana Civil Code, which codify the law of nuisance, reflect this long-standing principle:

> Article 667 prohibits uses which cause damage to neighbors or deprive them of the enjoyment of their property, while Article 668 permits uses which merely cause neighbors some inconvenience. Article 669 allows suppression of certain inconveniences, if excessive under local ordinances and customs, and requires tolerance of lesser inconveniences.

*Inabnet v. Exxon Corp.*, 93-0681, p. 10 (La. 9/6/94), 642 So. 2d 1243, 1251.[9] Article 667 further provides that a "proprietor" (e.g., a landowner) may be liable for nuisance damages only when they act negligently—i.e., where they "knew or, in the exercise of reasonable care, should have known that [their] works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that [they] failed to exercise such reasonable care." LA. CIV. CODE ANN. art. 667 (2018); *see also Brown*, 231 F.3d at 200.

Articles 667–669 therefore require Plaintiffs to allege (i) that they and Defendants are "neighbors"; (ii) that they suffered unreasonable and excessive harm; and (iii) that Defendants acted negligently in creating the nuisance. Plaintiffs' scant allegations fall short of these minimum requirements.

### A. Plaintiffs do not allege an interest in real property that is adjacent or proximate to the Landfill.

Plaintiffs' nuisance claim fails for the simple reason that they have not alleged any interest in land, let alone land that could be considered a neighbor to the Landfill. To state a claim for nuisance, "a plaintiff must have some interest in an immovable near the defendant-proprietor's immovable." *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 731 (5th Cir. 2017) (internal citations omitted); *see also Inabnet*, 642 So. 2d

---

[9] While the Louisiana State Legislature amended Article 667 in 1996 to require a showing of negligence, *see Brown v. Olin Chem. Corp.*, 231 F.3d 197, 200 (5th Cir. 2000), this principle remains unchanged, *see Taylor v. Denka Performance Elastomer LLC*, 332 F. Supp. 3d 1039, 1053–54 (E.D. La. 2018).

10

at 1251–52 (Articles 667–669 establish standards of conduct that gives rise to liability when "activity by one party holding a right to immovable property has caused damages to a party holding a right to neighboring property").

Plaintiffs only allege that they are each "a resident of and domiciled in" Jefferson Parish. Compl. ¶ 1. They do not allege any ownership interest in real property. This alone is sufficient to defeat the nuisance claim. *See La. Crawfish Producers Ass'n-W. v. Amerada Hess Corp.*, 05-1156, p. 7 (La. App. 3 Cir. 7/12/06), 935 So. 2d 380, 385 (dismissing claim where plaintiffs did not have a proprietary interest in the property allegedly damaged); *see also Barasich v. Shell Pipeline Co.*, No. 05-cv-4180, 2006 WL 3913403, at *8 (E.D. La. Nov. 20, 2006) (dismissing nuisance claim where "Plaintiffs have not alleged that they hold an ownership interest or other rights derived from landowners in any lands or waters allegedly damaged").

Plaintiffs' nuisance claim also fails because they have not alleged that their properties are located near the Landfill. Louisiana nuisance law specifically requires that a plaintiff be a "neighbor" of the allegedly offending property. LA. CIV. CODE ANN. art. 667 (2018); *Inabnet*, 642 So. 2d at 1251. "In its ordinary meaning, 'neighbor' is a person who lives near another." *TS & C Invs., LLC v. Beusa Energy, Inc.*, 637 F. Supp. 2d 370, 390 (W.D. La. 2009) (class action nuisance claim dismissed because plaintiffs did not demonstrate which properties were "physically adjacent, closely adjacent or remote from the well site"). Thus, "[a] complaint [asserting nuisance] . . . must establish *some* degree of propinquity, so as to substantiate the allegation that activity on one property has caused damage on another." *Bd. of Comm'rs*, 850 F.3d at 731 (complaint must allege "that the relevant properties were near to each other"); *see also Reymond v. State through Dep't of Highways*, 255 La. 425, 444–445, 231 So. 2d 375, 382

11

1231

(1970) ("The redress which [Article 667] affords, if any, exists only in favor of a proprietor and then only against the proprietor of a nearby estate . . . .").

Plaintiffs neither provide their addresses nor describe their locations in relation to the Landfill. They merely assert that they reside somewhere in Jefferson Parish—an area covering 665.42 square miles and meandering all the way from the south shore of Lake Pontchartrain to the Gulf of Mexico at Grand Isle.[10] Compl. ¶ 1. In fact, no residents live adjacent to the Landfill. The Landfill is bordered on two sides by two other landfills and is otherwise surrounded by closed landfills or other uninhabited property.[11] Plaintiffs' failure to plead any facts to show that they are neighbors of the Landfill—which would be factually impossible—is further grounds to dismiss this claim. *See Bd. of Comm'rs*, 850 F.3d at 731 ("[I]n the absence of allegations that the relevant properties [are] near to each other, [a plaintiff] has not stated a claim for nuisance.").

### B. Plaintiffs do not allege that the purported odors are anything more than an inconvenience.

Plaintiffs' nuisance claim fails for the additional reason that they do not allege that the purported odors are excessive or unreasonable. Article 668 explicitly provides that a proprietor may permissibly cause "some inconvenience" to a neighbor. LA. CIV. CODE ANN. art. 668 (2018). Likewise, Article 669 "requires tolerance of lesser inconveniences." *Inabnet*, 642 So. 2d at 1251. Therefore, odors do not constitute a nuisance unless they are "excessive, unreasonable in degree, and of such character as to produce actual, physical discomfort and annoyance to a person of ordinary sensibilities." *Meyer v. Kemper Ice Co.*, 180 La. 1037, 1044, 158 So. 378, 380 (1934). As the Louisiana Courts of Appeal have repeatedly emphasized, nuisances that are not significant and regular are not actionable. *See*, *e.g.*, *Barrett v. T.L. James & Co.*, 28,170, pp. 1,

---

[10] U.S. Census Bureau, *Louisiana: 2010 Population and Housing Unit Counts*, 19 (July 2012), https://www.census.gov/prod/cen2010/cph-2-20.pdf.
[11] Taggart Decl., Exhibit 1 at 3.

11 (La. App. 2 Cir. 4/3/96), 671 So. 2d 1186, 1188, 1193 (concrete recycling operation was not nuisance where its operations were not continuous and the noise and dust levels were not "inordinate"); *Allen v. Albright*, 151 So. 2d 554, 556–57 (La. App. 2d Cir. 1963) (odors, cinders, smoke, and noise were not a nuisance where they were "only an occasional thing" and "caused only slight discomfort and inconvenience to plaintiff").

Odors that are not unreasonable or excessive must be withstood even though they are "to some extent annoying to plaintiff." *Meyer*, 158 So. at 380. Consequently, a plaintiff must plead enough facts about the alleged odors to indicate that they are excessive and more than an inconvenience to the plaintiff. Applying these criteria to longstanding public infrastructure located in a highly industrial area and surrounded by two other landfills raises the bar even higher. *See*, *e.g.*, *A to Z Paper Co. v. Carlo Ditta, Inc.*, 99-1189, pp. 9–10 (La. App. 4 Cir. 10/4/00), 775 So. 2d 42, 47–48 ("in view of the industrial nature of the neighborhood, the Ditta plant did not constitute a nuisance" because the "character of the neighborhood" must be considered); *Barrett*, 671 So. 2d at 1188, 1193 (concrete recycling operation was not nuisance in part because facility was located in rural area). Plaintiffs have not met the requirement to make plausible factual allegations of an actionable nuisance.

Plaintiffs allege that the Landfill emits "noxious odors," and that the "surrounding neighborhoods . . . experienced said odors on various days and at various times of the day and night depending upon the then prevailing wind direction . . . ." Compl. ¶ 6. They assert that an LDEQ report found "higher-than-normal levels of methane and hydrogen sulfide in the areas surrounding the . . . Landfill" and that a hotline was created to report odors. *Id.* ¶¶ 8, 12. Without further elaboration they conclude that "landfill leachates and gases are emanating from the site improperly, and at levels that constitute a nuisance to neighboring persons and properties." *Id.* ¶

13

14. These allegations are impermissibly vague, as demonstrated by the analogous case of *Taylor*. There, the plaintiffs asserted that the defendant's chloroprene emissions constituted a nuisance that "deprived them of enjoyment of their property" and caused "physical discomfort and annoyance to [p]laintiffs, who must confine themselves indoors to escape [the emissions]." *Taylor*, 332 F. Supp. 3d at 1053–54. The Eastern District of Louisiana dismissed the nuisance claim because the plaintiffs "omit[ted] any facts that might indicate the nature or degree of intrusion, or its relative persistence" as well as "any individualized allegations regarding each plaintiff's experience," and therefore offered nothing more than "generic and formulaic conclusions." *Id.*

Plaintiffs' allegations here are more ambiguous than those found wanting in *Taylor*, particularly considering the Landfill's industrial setting. Plaintiffs allege no facts about how the odors affect them personally, nor do they explain how the alleged odors "produce actual, physical discomfort and annoyance to a person of ordinary sensibilities." *Meyer*, 158 So. at 380. Because Plaintiffs allege no facts indicating that the odors are more than an inconvenience, they fail to adequately plead a nuisance claim under Louisiana law. *Cf. Taylor*, 332 F. Supp. 3d at 1054–55.

## III. PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE.

Plaintiffs' negligence claim is simply a repackaging of their flawed nuisance claim and should likewise be dismissed. Where a harm between neighboring property owners is alleged, Defendants' duty of care for the purposes of imposing negligence liability is coextensive with the duty owed by a proprietor to its neighbors under Louisiana's nuisance statutes. Plaintiffs allege that the purported odors harmed them in the use and enjoyment of their property or residences and diminished their property value, therefore any duty of care owed by Defendants extends no further than the nuisance obligations set forth in Articles 667–669.

14

As outlined above, Louisiana's nuisance laws do not require Defendants to completely prevent the migration of odors over neighboring properties. The Landfill may permissibly cause some inconvenience to its neighbors, and Louisiana nuisance law even *requires* the Landfill's neighbors to tolerate lesser inconveniences. *See* LA. CIV. CODE ANN. art. 668 (2018). Plaintiffs have not pled the essential elements of the nuisance statutes, including interest in real property that neighbors the Landfill, and consequently they cannot maintain their negligence claim.

Plaintiffs also passingly assert that Defendants are in violation of Louisiana's custodial liability and premises liability statutes. Compl. ¶ 15(g). The Complaint does not set forth these purported violations as causes of action and provides no elaboration about them. In any case, under Louisiana law, these claims are essentially identical to a claim for negligence, and fail for the same reasons as Plaintiffs' nuisance claim. Furthermore, Plaintiffs fail to assert even the basic elements of custodial and premises liability, such as identifying a purported defect at the Landfill or asserting that Defendants were aware of any alleged defect. Thus, insofar as Plaintiffs even attempt to plead claims for custodial or premises liability, those claims should also be dismissed.

### A. Plaintiffs' negligence claims are no more than a restatement of their deficient nuisance claims.

To sustain a claim for negligence under Articles 2315 and 2316, a plaintiff must allege five elements:

> [F]irst, that the defendant had a duty to conform his conduct to a specific standard (duty); second, that the defendant's conduct failed to conform to the appropriate standard (breach); third, that the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (cause in fact); fourth, that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (legal cause); and fifth, that the plaintiff suffered actual damages (damages).

*Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 409 (5th Cir. 2017). Furthermore, "[t]he extent of a duty is 'a question of policy as to whether a particular risk falls within the scope of the

duty,'" and "[a] court must determine 'whether the enunciated rule or principle of law extends to or is intended to protect *this plaintiff* from *this type of harm* arising in *this manner*.'" *Bd. of Comm'rs*, 850 F.3d at 726 (emphases in original).

Here, Plaintiffs purportedly assert claims for property-related damage based on neighbor-to-neighbor harm. *See* Compl. ¶ 14 (alleging the release of noxious odors from the Landfill "into and onto neighboring properties."); *id.* ¶ 19(d) (alleging a duty to prevent the release of noxious odors "in and around the areas neighboring the Landfill"); *id.* ¶ 26 (alleged damage includes "the right to use and enjoy their property"). When a negligence claim is based on a harm to a neighboring property, the applicable duty of care arises from and is defined by Articles 667–669. *See Yokum v. 615 Bourbon St. L.L.C.*, 07-1785, p. 19 (La. 2/26/08), 977 So. 2d 859, 872–73 ("[T]his Court has previously found that the corresponding rights and obligations of neighboring proprietors, arising from that relationship between proprietors, are principally governed by Louisiana Civil Code articles 667, 668, and 669."); *Inabnet*, 642 So. 2d at 1251 ("The courts have referred to Articles 667–669 to determine the conduct which constitutes 'fault' under Article 2315 in the context of neighboring proprietors."); *Dean v. Hercules, Inc.*, 328 So. 2d 69, 73 (La. 1976) ("[A] violation of [A]rticle 667 constitutes fault within the meaning of [A]rticle 2315 . . . [because Article] 2315 is broad enough to include the obligations imposed by [Article] 667."). Therefore, the same limits attendant to Defendants' obligations under Articles 667–669 apply to Defendants' duty under a theory of negligence. Plaintiffs' negligence claim thus fails for the same reasons as their nuisance claim. *See supra* Argument Part I.

Plaintiffs' gross negligence claim should likewise be dismissed because Plaintiffs' exclusive remedy under Articles 2315 and 2316 is in ordinary negligence. *Smith v. XTO Offshore, Inc.*, No. 11-cv-01487, 2012 WL 1247224, at *2 (E.D. La. Apr. 12, 2012) (holding

16

exclusive tort remedy under Louisiana law is based on an ordinary negligence standard). Even if Louisiana law provided for a gross negligence standard, Plaintiffs have not pled a willful, wanton and reckless disregard for safety. *In Matter of Marquette Transp. Co. Gulf-Inland, LLC*, No. 13-cv-5114, 2016 WL 1587382, at *4 (E.D. La. Apr. 20, 2016) (Vance, J.) (gross negligence claim not actionable where plaintiff provided no factual allegations to support conclusion defendants' actions were willful and wanton).

**B.     Plaintiffs fail to state the basic elements of custodial or premises liability.**

Plaintiffs do not assert custodial or premises liability as a cause of action, but make only a single passing reference to the underlying Louisiana Code provisions with no explanation of how the alleged facts support that liability. Moreover, Plaintiffs entirely fail to allege the most basic elements of custodial or premises liability and so fail to state a claim under these theories of liability. To the extent Plaintiffs intend custodial or premises liability as a distinct cause of action, the Court should dismiss this claim.

Louisiana Civil Code articles 2317 and 2317.1 (custodial or "strict" liability)[12] and 2322 (premises liability) may impose liability only where Plaintiffs allege:

> (1) ownership [or control] of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the damage could have been prevented by the exercise of reasonable care; (4) the defendant failed to exercise such reasonable care; and (5) causation.

*Russell v. Forest Isle, Inc.*, 18-0602, p. 4 (La. App. 4 Cir. 12/5/18), 261 So. 3d 47, 50 (citations omitted). Furthermore, Louisiana law "requires that the ruinous building or its defective component part create an unreasonable risk of harm." *Id.* (citation omitted).

---

[12] In Louisiana, "custodial liability" and "strict liability" are often used interchangeably in reference to Article 2317 and 2317.1. To the extent Plaintiffs assert Defendants are "strictly liable" in the traditional common-law sense, that was largely eliminated by the 1996 revisions to the Louisiana Civil Code except for narrow exceptions inapplicable to this case. *See*, *e.g.*, Article 667 (limiting strict liability to "pile driving or blasting with explosives").

17

As a preliminary matter, "[u]nder Louisiana law, a claim for [custodial] liability requires that a duty of care was breached, just as a negligence claim does. There is essentially no difference between the two types of claim under Louisiana law." *Bd. of Comm'rs*, 850 F.3d at 729. As the Fifth Circuit stated in dismissing a custodial liability claim, "[b]ecause the [plaintiff] has not stated a claim that Defendants owed it a duty of care, its [custodial] liability claim fails along with its negligence claim." *Id.* Thus, because Plaintiffs fail to state a claim for negligence, their apparent custodial and premises liability claims fail as well.

Furthermore, the Complaint makes only broad and general allegations related to the operation and management of the Landfill, with no specific allegation of a defect or ruin that caused them harm. *See Taylor*, 332 F. Supp. 3d at 1057 (plaintiffs' "focus on the operation of [defendant's manufacturing facility] undermines any attempt to claim that a 'ruin, vice, or defect' caused the plaintiffs' harm."). In fact, the only details Plaintiffs provide about the actual Landfill are vague allegations that the leachate and gas collection systems are "inadequate and/or antiquated." Compl. ¶¶ 11, 14. These conclusory labels provide no detail as to *how* the leachate and gas collection systems are defective. *Allen*, 907 F.3d at 177 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a claim upon which relief can be granted."). "Inadequate" is little more than a restatement of the "defective" element of liability, and systems that are purportedly old or "antiquated" are not necessarily defective.

Plaintiffs fail to allege additional basic elements of custodial and premises liability. Even assuming *arguendo* that Plaintiffs do plausibly allege that the Landfill gas and leachate collection systems are defective or in ruin, Plaintiffs do not assert that such defects present an unreasonable risk of harm. *Russell*, 261 So. 3d at 50. Likewise, Plaintiffs do not allege that any

Defendant knew or should have known about any purported defect in the Landfill gas and leachate collection systems. *Id.* Plaintiffs' failure to plead these foundational elements is fatal to any custodial and premises liability claims that may be inferred in the Complaint.

## IV. THE COURT SHOULD DISMISS AND/OR STRIKE PLAINTIFFS' CLASS ALLEGATIONS.

The Court should also dismiss and/or strike Plaintiffs' class allegations because Plaintiffs' class claims fail to meet the requirements of Rule 23. It is apparent from the face of the pleadings that Plaintiffs have failed to allege the minimum facts necessary to establish this action is appropriate for class treatment. Moreover, Plaintiffs have not defined the class in a manner that is "clearly ascertainable." FED. R. CIV. P. 23. The Court should dismiss pursuant to Rule 12(b)(6), or in the alternative strike pursuant to Rule 23(d)(1)(D), Plaintiffs class allegations in their entirety. *John*, 501 F.3d at 445 (dismissing class allegations pursuant to Rule 12(b)(6) for failure to plead an ascertainable class); *Aguilar*, 2007 WL 734809, at *2 (striking class allegations pursuant to Rule 23(d)(1)(D)).

### A. Plaintiffs fail to allege the minimum requirements of Rule 23.

To maintain a class action, Plaintiffs are required to allege and demonstrate the four pre-requisites of (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FED. R. CIV. P. 23(a). Plaintiffs are also required to plead requisite facts demonstrating they can maintain a class action under at least one of the three criteria in Rule 23(b). FED. R. CIV. P. 23(b). Plaintiffs have not met either requirement.

Consistent with the adequacy requirement in Rule 23, this Court's Local Rules require that Plaintiffs "[m]ake allegations thought to justify the maintenance of the claim as a class action" including the ground on which Plaintiffs claim "to be an adequate representative of the

class." LR 23.1(A)(2). In other words, the named Plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

The Complaint's sole allegation with respect to adequacy of the class representatives is that "Plaintiffs will fairly and adequately represent the interests of the class." Compl. ¶ 21. Plaintiffs do not allege any facts that pertain to a particular plaintiff to demonstrate how or why the named Plaintiffs are adequate representatives, nor do they allege any type of individualized harm or the necessary elements of nuisance and negligence sufficient to demonstrate they have standing to maintain their claims in this action. *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (dismissing class action where named plaintiff did not allege an injury-in-fact from defendants' conduct); *see* Part II, *supra.* Accordingly, Plaintiffs are not adequate class representatives and cannot meet the prerequisites of Rule 23(a). *Arnett v. Strayhorn*, 515 F. Supp. 2d 690, 698 (W.D. Tex. 2006), *aff'd sub nom. Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007) (affirming order that plaintiff without standing is not an adequate class representative).

In addition, Local Rule 23.1(A)(1) requires that the Complaint refer to the portions of Federal Rule of Civil Procedure 23 under which Plaintiffs claim the matter is properly maintainable as a class action. LR 23.1(A)(1). Plaintiffs allege that this action is certifiable under the provisions of Rules 23(b)(1), 23(b)(2), and/or 23(b)(3). Compl. ¶ 25. However, Plaintiffs have failed to allege the minimum facts necessary to demonstrate that class treatment is appropriate under any of the three standards – they have only reiterated the language of each section as the basis for their claim that the action should be maintained as a class. *Id.*

Rule 23(b)(1) provides two potential grounds for maintaining a class action, which are not met here. Plaintiffs must demonstrate that prosecuting separate actions would create either (i) a risk of "inconsistent or varying adjudications that would establish incompatible standards of

conduct" for defendants; or (ii) a risk of individualized determinations that would be "dispositive of the interests" of other parties or "substantially impair or impede their ability to protect their interests." FED. R. CIV. P. 23(b)(1)(A) & (B). There is no risk of inconsistent adjudications where, as here, the facts will vary from plaintiff to plaintiff with respect to the nature and extent of the damages sustained and the specific cause of the damage. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 421, n. 16 (5th Cir. 1998); *see* Point IV.b, *infra*. In addition, Plaintiffs only seek monetary relief. Individualized determinations of money damages are insufficient to warrant class certification under Rule 23(b)(1)(A). *Id.*; *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 197 (5th Cir. 2010) (holding "certification under [Rule] (b)(1)(A) is seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs"); *Terrebonne v. Allstate Ins. Co.*, 251 F.R.D. 208, 212 (E.D. La. 2007) (striking class allegations at pleading stage as inappropriate under Rule 23(b)(1)(A) where plaintiffs predominantly sought monetary relief).

Class actions under Rule 23(b)(1)(B) are intended where there are claims against a fund with an ascertained limit that is insufficient to satisfy all potential claims. *Allison*, 151 F.3d at 412; *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 191 (5th Cir. 2010) (recognizing Supreme Court precedent counseling against use of Rule 23(b)(1)(B) outside of limited fund context). Plaintiffs have not stated any allegations as to why adjudication of their individual claims would affect the claims of any other class members. In addition, separate actions by individual plaintiffs would be highly individualized, and likely would not have res judicata effect on the individual claims of other members.

 Rule 23(b)(2) allows class actions to be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Rule 23(b)(2) does not apply here because Plaintiffs have not sought injunctive relief, and therefore it is not an action where "injunctive relief predominates over monetary relief." *See Casa Orlando Apartments,* 624 F.3d at 197. Plaintiffs seek monetary damages that are not capable of a uniform remedy, and instead will require individualized inquiries into the merits of each case. *Allison*, 151 F.3d at 414–18 (holding certification pursuant to Rule 23(b)(2) inappropriate where relief is not capable of uniform group remedies); *c.f. Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011) (holding Rule 23(b)(2) does not authorize class certification where class members would be entitled to individualized awards of monetary damages).

Plaintiffs also fail to meet the requirements of Rule 23(b)(3). Under Rule 23(b)(3), Plaintiff must demonstrate (1) "that questions common to the class members predominate over questions affecting only individual members;" and (2) "that class resolution is superior to alternative methods for adjudication of the controversy." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). Although Plaintiffs' assert that there are common questions with respect to Defendants' liability, they fail to allege how these issue predominate over the myriad individualized issues of causation and damages that dominate this action. *See* Compl. ¶ 19.

Plaintiffs' purported class will require numerous highly individualized determinations with respect to proximate cause, and the nature and amount of damages. *Bell Atl. Corp.*, 339 F.3d at 302 (holding class certification inappropriate where issue of the fact of damages and the amount was individual to each plaintiff and could not be established "through proof common to

the class"); *Terrebonne*, 251 F.R.D. at 212 (striking class allegation under Rule 23(b)(3) at pleading stage where the unique factual circumstances of each claim outweighed common legal issues). Each class members' property will be located in different locations with respect to the Landfill and other potential sources of odors. Members will have different impacts as to the use and enjoyment of their home dependent upon the time spent there (each day and year round) or their ability to smell various odors. The value of each class members' property and their ability to enjoy it will be subject to individual questions that may have no relation to odors, but instead to other factors that affect property values and use of property.

There is also no "common proof" to establish damages for the class, nor is there a formula that can determine the amount of damages, which would need to be based on specific determinations as to diminution in property value and qualitative determinations as to interference with each Plaintiff's use and enjoyment of his property. Such fact-specific determinations are not appropriate for a class wide remedy. *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (holding intangible injuries dependent on "subjective differences in each plaintiff's circumstances" not appropriate for class certification).

### B. Plaintiffs fail to plead an ascertainable class.

The Court should also dismiss and/or strike Plaintiffs' class allegations because Plaintiffs fail to plead a class both "adequately defined" and "clearly ascertainable" by objective standards. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970);[13] Compl. ¶ 17. A court may dismiss

---

[13] Plaintiffs concede their proposed class definition is too vague, promising the Court that a "more precise" definition will be set forth in Plaintiffs' motion for class certification. Defendants are not aware of authority that permits a plaintiff to plead a facially inadequate class, but reserve the right to plead an adequate class at a later date. Even if Plaintiffs were to amend the class definition, as set forth herein, such amendment would be futile because Plaintiffs' proposed class of individuals who allegedly suffered harm from odors is not definable by any objective standards. *See Brandner v. Abbott Labs., Inc.*, No. 10-cv-3242, 2012 WL 27696, at *4 (E.D. La.

class allegations at the pleading stage where it is apparent that there is no ascertainable class from the face of the pleadings. *John*, 501 F.3d at 445; *Duvio v. Viking Range Corp.*, No. 12-cv-1430, 2013 WL 1180948, at *7 (E.D. La. Mar. 20, 2013) (striking class allegations pursuant to Rule 23(d)(1)(D) where plaintiffs did not plead an ascertainable class).

The class allegations here are defective because Plaintiffs fail to set forth any objective standards to delineate the putative class. Plaintiffs define the class as:

> All persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill into and/or onto their persons and/or properties (except for Defendants' employees and relevant court personnel).

Compl. ¶ 17. Plaintiffs' proposed definition of all persons "domiciled" or "residing" in Jefferson Parish that have sustained "legally cognizable damages" "as a result of the emission of noxious odors from the [Landfill] into and/or onto their persons or properties" does not provide objective criteria to delineate class membership. *DeBremaecker*, 433 F.2d at 734. Without objective standards to ascertain who has suffered "legally cognizable damages," the Court would be required to engage in countless individualized inquiries such as whether a person was actually exposed to odors from Landfill as opposed to one of the other two landfills or one of the other recognized odor sources in the area;[14] whether a person's use and enjoyment of property was impacted; whether a person's property value decreased at all, much less as a result of the odors (which also would require information as to when the property was purchased, the purchase price, what the levels/impact of odors may have been at the time the property was purchased, and

---

Jan. 5, 2012) (denying leave to amend class of future purchasers of infant formula where class was fatally amorphous by nature as futile).

[14] This would require a time-consuming and highly technical investigation to establish causation, including the study of the wind direction at the time each Plaintiff experienced each alleged odor to determine if the odor originated from the Landfill, one of the two other adjacent landfills, or one of the other recognized sources of odors in the area.

any localized or intervening impacts); and whether a person otherwise sustained a nuisance or trespass—i.e., a final determination on the merits of each claim—in order to determine class membership. This expanse of individualized inquiries is exactly what the requirement of an ascertainable class is meant to avoid. *See In re Vioxx Prod. Liab. Litig.*, No. 09-cv-3713, 2012 WL 2061883, at *4 (E.D. La. June 6, 2012) (striking class claims lacking objective standards and requiring individualized inquiry into each plaintiff's decision to join a settlement).

The lack of objective criteria is easily visible in Plaintiffs' nuisance claim. For Plaintiffs to possess a legally cognizable nuisance claim as a result of odors, it is not sufficient that Plaintiffs merely experience "odors." Plaintiffs must be neighbors of the Landfill, the odors must have originated from the Landfill, and the odors be excessive and unreasonable to the degree that they cause "actual, physical discomfort and annoyance to a person of ordinary sensibilities." *Meyer*, 158 So. at 380. As the class is defined, in each instance the Court will need to examine the putative class members' unique circumstances and whether their purported "discomfort" or "annoyance" amounts to more than a minor inconvenience. *See Allen*, 151 So. 2d at 556–57 (slight discomfort or inconvenience insufficient to establish nuisance). The Court will also need to determine whether Plaintiffs have a property interest proximate to the Landfill, which would require countless individualized inquiries into land records or other documentation of each Plaintiff's property interest. *See TS & C Invs., LLC*, 637 F. Supp. 2d at 390. Considering the breadth of Plaintiffs' definition encompassing all persons "domiciled" or "residing" anywhere in Jefferson Parish regardless of time frame, even just considering individuals residing in Jefferson Parish shortly before the odors allegedly began in summer 2018, potentially 434,051 individuals would be subject to these individualized inquiries.[15] This type of individualized fact-finding on a

---

[15] U.S. Census Bureau, *supra*, n. 8.

plaintiff-by-plaintiff basis would not only place a massive burden on the parties and the Court, but also defeats any plausible allegation of an ascertainable class based upon objective standards. *See Bauer v. Dean Morris, L.L.P.*, No. 08-cv-5013, 2011 WL 3924963, at *3 (E.D. La. Sept. 7, 2011) (need to conduct individualized inquiries to ascertain if each plaintiff had been charged excessive fees by defendant would undermine the "administrative benefits of Rule 23").

For these same reasons, class definitions similar to Plaintiffs' that rely on ultimate issues of causation are disfavored as "fail-safe" classes. *See, e.g.*, *LeBlanc v. Exxon Mobil Corp.*, No. 14-cv-201-SDD-RLB, 2015 WL 1221560, at *4 (M.D. La. Mar. 17, 2015) (class certification inappropriate where a determination of class membership "is entangled with the underlying merits of the claim"); *In re Vioxx Prods. Liab. Litig.*, 2012 WL 2061883, at *5 (striking class allegations where determination of class membership was "entangled with the underlying merits of the claim"). Here, Plaintiffs define the class as persons that have suffered damages "as a result of the emission of noxious odors from the [Landfill]." Compl. ¶ 17. Thus, class membership is inextricably intertwined with a determination of the merits of Plaintiffs' claims, undermining the benefits of the class action vehicle. *See Bauer*, 2011 WL 3924963, at *3.

Specifically, Plaintiffs' class definition would require the Court to undertake a proximate cause analysis for every prospective plaintiff to determine class membership. This would be a nearly insurmountable task given the large number of other recognized sources of odor in the area that are just as likely to have caused any alleged damages to Plaintiffs and the putative class members, which would include the two immediately adjacent landfills, a chemical manufacturing complex that houses four different chemical facilities, a wastewater treatment plant, a bulk petroleum storage terminal facility, and a mid-stream grain loader located in the Mississippi River, as documented by the Louisiana Department of Health's January 2019 air

monitoring report.[16] To establish causation, putative class members would need to provide proof of their property interest, proximity to the Landfill, and the nature of each odor they experienced. Plaintiffs would then need to tie each odor incident to the Landfill, all while accounting for numerous variables including wind speed, wind direction, and air release events from the myriad of intervening odor sources at the time each Plaintiff experienced each alleged odor. Such highly individualized inquiries that rely on the merits of each potential class members' claim, in an area that encompasses over 665 square miles, create the exact inefficiency class actions are meant to avoid.

While the Fifth Circuit in *In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012), rejected an outright prohibition on fail-safe class definitions, *Rodriguez* did not conclude that all fail-safe definitions are appropriate. Indeed, the class definition in *Rodriguez* and the cases cited therein are clearly distinguishable because they involved plaintiffs that were harmed in a uniform manner from an easily identifiable discrete source of harm.[17] For example, in *Rodriguez*, Chapter 13 debtors sought class certification based on defendant's uniform practice of improperly charging mortgage service fees and alleging the same type of harm. *In re Rodriguez*, 695 F.3d 360. In upholding the class, the court considered that many of the items that would have required individualized assessment were identifiable and readily searchable on the mortgage servicer's database without court intervention. *Id.* at 367. The court was not faced with multiple mortgagors that may have charged improper fees, or tasked with determining which mortgagor charged

---

[16] Taggart Decl., Exhibit 1 at 2–3.

[17] In rejecting a prohibition on all "fail-safe" classes, *Rodriguez* relied on *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 622 (5th Cir. 1999). Neither *Forbush* nor *Mullen* support an outright rejection of the fail-safe prohibition, and similar to *Rodriguez*, both involved uniform harm based on a single defendant's common practice, which is not the situation presented here.

27

which class member. In contrast, the odors Plaintiffs allege they have experienced in the instant matter cannot be linked to a single, readily-identifiable source as there are over ten recognized odor sources in the area. In addition, Plaintiffs' injuries cannot be readily ascertained in a uniform manner but will instead require the Court to determine whether each plaintiff experienced legally cognizable harm and whether that harm can be linked to the Landfill.

Since *Rodriguez*, Louisiana federal district courts have continued to disapprove of class definitions that rely on ultimate issues of causation. *See, e.g.*, *Plaza 22, LLC v. Waste Mgmt. of La., LLC*, No. 13-cv-618-SDD-SCR, 2015 WL 1120320, at \*3 (M.D. La. Mar. 12, 2015) (purchasers of hauling services injured as a result of defendant's contract impermissibly relied on the merits to determine class membership); *LeBlanc*, 2015 WL 1221560, at \*4 (rejecting class definition that required individualized determination into whether purchasers of "defective" gasoline suffered inconvenience to the degree that they would not have purchased the gasoline); *Brew v. Univ. Healthcare Sys., LC*, 15-cv-4569, 2015 WL 8259583, at \*2 (E.D. La. Dec. 9, 2015) (Feldman, J.) (construing class definition to avoid improper reliance on merits of each member's claim). The Court should similarly reject Plaintiffs' fail-safe class definition in this instance.

Where, as here, the nature of Plaintiffs' claims necessarily results in individualized harm that cannot be determined in a uniform manner, class treatment is inappropriate and attempts to resolve this deficiency would be futile. *Price v. Martin*, 11-0853, p. 23 (La. 12/6/11), 79 So. 3d 960, 976 (putative class claiming personal injury and property damage from facility emissions not capable of class resolution because merits would require individual proof of liability); *Brandner*, 2012 WL 27696, at \*4 (denying leave to amend class definition as futile where

proposed amendment would still result in a fatally amorphous class). Accordingly, Plaintiffs'

class allegations should be dismissed or struck in the entirety.

## V.  IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION PENDING RESOLUTION OR DISMISSAL OF LDEQ'S ONGOING ENFORCEMENT PROCEEDINGS.

In the event that any of Plaintiffs' claims survive dismissal, the Court should stay this

action under the doctrine of primary jurisdiction until LDEQ's current enforcement actions are

resolved or dismissed. Plaintiffs' claims for nuisance and negligence require administrative and

technical determinations about the Landfill's compliance with its permits and applicable

regulations, and whether the design, operation, and maintenance of the Landfill could have been

the source of the odors allegedly experienced by Plaintiffs. *See* Compl. ¶¶ 15, 19. LDEQ

regulates landfills in Louisiana, and the agency enforces the relevant state and federal air quality

and solid waste regulations. The Court should therefore defer to LDEQ's special expertise and

authority in this area.

Under the doctrine of primary jurisdiction, a court has discretion to stay an action

"pending referral to the administrative agency of issues, which under a regulatory scheme, are

within the agency's special competence." *Richards v. Baton Rouge Water Co.*, 13-0873, p. 10

(La. App. 1 Cir. 3/21/14), 142 So. 3d 1027, 1033 (claims for damages stayed until the resolution

of a Louisiana Public Service Commission proceeding addressing related issues); *Mills v. Davis

Oil Co.*, 11 F.3d 1298, 1304 (5th Cir. 1994) (Louisiana's doctrine of primary jurisdiction

provided basis to stay action pending state commission's initial determination in well cost

dispute against former mineral lessee). The doctrine of primary jurisdiction furthers "the need for

uniformity in various areas of regulated industry," and recognizes the "special administrative

expertise attributable to agencies due to their intimate working associations with industries they

regulate." *Mills*, 11 F.3d at 1304 (citing *S.-W. Utils. v. S. Cent. Bell Tel.*, 339 So. 2d 425 (La.

29

App. 1st Cir. 1976)). Particularly when a controversy concerns a regulated industry and involves technical questions of fact, "the limited functions of judicial review would be more rationally exercised by preliminary resort to the specialized agency for ascertaining and interpreting the circumstances underlying the legal issues." *Cent. La. Elec. Co. v. La. Pub. Serv. Comm'n*, 601 So. 2d 1383, 1388 (La. 1992) (Lemmon, J., concurring) (citing *Far E. Conference v. United States*, 342 U.S. 570, 573–75 (1952)).

A court may stay an action where: "(1) the court has original jurisdiction over the claim before it; (2) the adjudication of the claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body." *Rogers v. Columbia/HCA of Cent. La., Inc.*, 961 F. Supp. 960, 966 (W.D. La. 1997) (citing *Northwinds Abatement, Inc. v. Emp'rs Ins. of Wausau*, 69 F.3d 1304, 1311 (5th Cir. 1995)).[18] Consequently, staying an action is appropriate where, as here, plaintiffs' tort claims require a determination normally confided to an agency. *See Frith v. Sw. Ouachita Waterworks, Inc.*, 50,749 (La. App. 2 Cir. 10/12/16), 207 So. 3d 1121, 1126 (staying tort and contract claims for damages under the doctrine of primary jurisdiction until the Louisiana Public Service Commission ruled on the adequacy of the water service provided by defendant and the need for a change in water service provider). In these circumstances, the Court should allow the agency to make initial findings of liability before ruling on the tort claims. *See Northwinds*, 69 F. 3d at 1311 ("[T]he district court should have abstained from resolving the damages claims asserted by Northwinds until the administrative and judicial review procedures prescribed by the

---

[18] While a federal court in a diversity action applies Louisiana state law on the issue of primary jurisdiction, federal caselaw is instructive because the state doctrine is "very similar" to the federal doctrine. *Mills*, 11 F.3d at 1304.

[administrative code] had yielded final determinations on the issue of whether [the defendant] improperly paid the contested workers' compensation claims."); *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1105–06 (3d Cir. 1995) (directing district court to transfer claim for damages to agency for a determination of liability under the doctrine of primary jurisdiction before the district court may make an award).

The Court should stay this action and defer to LDEQ's special expertise in regulating landfills because (i) the legislature committed the regulation of landfills to LDEQ; and (ii) Plaintiffs' tort claims require preliminary findings about the Landfill's compliance with its permits and solid waste and air quality regulations. The Louisiana State Legislature deems LDEQ "the primary agency in the state concerned with environmental protection and regulation," with specific jurisdiction over the regulation of solid waste disposal. LA. STAT. ANN. § 30:2011(A)(1) (2018); *see also* LA. STAT. ANN. § 30:2154(A)(3). LDEQ is directed to investigate landfills; issue compliance orders; issue, modify or revoke permits; seek penalties; and bring lawsuits to restrain violations of its regulations or to seek damages. LA. STAT. ANN. §§ 30:2012, 2023, 2025, 2050.2; LA. ADMIN. CODE tit. 33, pt. VII, § 101, *et seq.* LDEQ has in fact inspected the Landfill on a regular basis for many years, and recently began inspecting the Landfill on nearly a daily basis.[19]

Federal and state solid waste and air quality regulations, as enforced by LDEQ through the Landfill's permits, govern every aspect of the Landfill's operation. *See* LA. ADMIN. CODE tit. 33, pt. VII; *Belle Co. v. State ex rel. Dep't of Envtl. Quality*, 08-2382 (La. App. 1 Cir. 6/12/09), 25 So. 3d 847, 856–57 (solid waste landfills are "subject to pervasive government control" by LDEQ). The regulations dictate the types and quantities of waste that the Landfill may accept;

---

[19] Taggart Decl., Exhibit 5 at p. 2, ¶¶ II–V (summarizing LDEQ's recent inspections of the Landfill).

31

the materials and standards for its daily, interim, and final cover; the operation of its leachate collection and treatment system; the operation of its Landfill gas collection and control system; the control of odors; and limitations on emissions from the Landfill. *See, e.g.*, LA. ADMIN. CODE tit. 33, § 711. The solid waste regulations further prohibit landfills from causing nuisances "as determined by the administrative authority." LA. ADMIN. CODE tit. 33, § 315(B).

Additionally, the Landfill's air emissions and gas collection and control systems are regulated by the Clean Air Act's New Source Performance Standards. 40 C.F.R. Part 60, Subpart WWW, as incorporated by LDEQ's regulations and the Landfill's air permit.[20] The Landfill must perform quarterly surface emission monitoring to monitor the presence and concentration of fugitive emissions of methane from the Landfill to ensure the effectiveness of landfill gas controls that are designed to prevent or minimize such fugitive emissions. The Landfill's permit under the Clean Air Act further regulates other potential air emissions from the Landfill's flares and certain other equipment.[21] For example, the permit establishes operating and monitoring requirements for flares and limits emissions from flares. Title V permit at 24. The Landfill provides to LDEQ annual and quarterly air emission monitoring data, *id.* at 29–30, and the facility must comply with additional annual reporting requirements under the solid waste regulations. LA. ADMIN CODE tit. 33, § 525.

Plaintiffs' tort claims require determinations that are committed to LDEQ's judgment and within LDEQ's special expertise. For example, Plaintiffs allege that Defendants failed to properly maintain, operate, and design the Landfill; failed to maintain, attain, and implement measures to minimize the existence of gaseous emissions and leachate; failed to timely correct the emission of odors from the Landfill; and violated the "laws, rules, regulations and/or

---

[20] The Title V permit issued by LDEQ is attached as Exhibit 7 to the Taggart Decl.
[21] Taggart Decl., Exhibit 7 at 23–32.

requirements of Louisiana as promulgated by LDEQ[.]" Compl. ¶ 15; *see also* ¶ 19. Based on these allegations, the Court will need to determine whether Defendants were operating the Landfill in a manner that complied with its permits and applicable solid waste and air quality regulations, and whether the design, operation, and maintenance of the Landfill led to the alleged odors. As these preliminary factual determinations fall squarely within the special expertise of LDEQ, and LDEQ is currently enforcing three compliance orders involving these same issues, deferring to the agency under the doctrine of primary jurisdiction is appropriate.

As Plaintiffs acknowledge, LDEQ has already taken—and continues to take—enforcement actions to ensure that the Landfill is operating in accordance with its permits and solid waste and air quality regulations. Compl. ¶ 14. LDEQ issued three compliance orders to the Landfill over the past year for alleged violations related to the leachate and gas collection systems, application of daily and interim cover, and the control of fugitive emissions, based on LDEQ's on-site inspections and reviews of regulatory submissions for the Landfill.[22] The Louisiana Division of Administrative Law is addressing two of the compliance orders in an enforcement hearing process.[23] Through these compliance orders, LDEQ is already ensuring that the Landfill is properly designed, operated, and maintained as well as determining the Landfill's compliance with its permits and the solid waste and air quality regulations.

As explained by the Fifth Circuit, "[t]he advisability of invoking primary jurisdiction is greatest when the issue is already before the agency." *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 420 (5th Cir. 1976); *see also Ellis v. Tribune Television Co.*, 443 F.3d 71, 87–88, 92 (2d Cir. 2006) (district court should have applied the doctrine of primary jurisdiction: "Courts should be especially solicitous in deferring to agencies that are

---

[22] *See* Taggart Decl., Exhibits 3, 4, 5.
[23] Taggart Decl., Exhibit 6.

simultaneously contemplating the same issues."). Thus, in the event the Court declines to dismiss any of Plaintiffs' claims, it should stay this action pending resolution or dismissal of LDEQ's current enforcement proceedings.

## CONCLUSION

The Landfill has served the State under LDEQ oversight for over four decades with no significant changes in its operations. The sweeping claims that the Landfill now constitutes a nuisance to thousands upon thousands of individuals who reside miles away from the facility is unprecedented and unsupported by Louisiana law. The ancient torts of nuisance and negligence do not apply to this infrastructure on the bare claims pled here. This Court should dismiss Plaintiffs' claims in their entirety, or, in the alternative, stay this action pending resolution or dismissal of LDEQ's ongoing enforcement proceedings.

Respectfully submitted,

BRADLEY MURCHISON KELLY & SHEA LLC

By:   /s/ David R. Taggart
          David R. Taggart
          (Louisiana Bar Roll No. 12626)
          401 Edwards Street, Suite 1000
          Shreveport, Louisiana 71101
          Telephone: (318) 227-1131
          Facsimile: (318) 227-1141

          Michael C. Mims
          (Louisiana Bar Roll No. 33991)
          John B. Stanton
          (Louisiana Bar Roll No. 36036)
          1100 Poydras Street, Suite 2700
          New Orleans, Louisiana 70163
          Telephone: (504) 596-6300
          Facsimile: (504) 596-6301

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
477 Madison Avenue, 15th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1350 I Street, N.W., Suite 700
Washington, DC 20005
(202) 789-6000

*Counsel for Defendants Louisiana Regional
Landfill Company, Waste Connections
Bayou, Inc., and Waste Connections US,
Inc.*

CONNICK AND CONNICK, LLC

By:    /s/ William P. Connick
       William P. Connick, La. Bar No. 14158
       Michael S. Futrell, La. Bar. No. 20819
       Matthew D. Moghis, La. Bar. No. 33994
       3421 N. Causeway Blvd., Suite 408
       Metairie, Louisiana 70002
       Telephone: (504) 681-6658
       Facsimile: (504) 838-9903
       E-mail: moghis@connicklaw.com

*Counsel for Defendant, Jefferson Parish*

GIEGER, LABORDE & LAPEROUSE , L.L.C.

By:    /s/ Ernest P. Gieger, Jr.
       Ernest P. Gieger, Jr. (6154)
       William A. Barousse (29748)
       J. Michael DiGiglia (24378)
       Jonathan S. Ord (35274)

35

Gieger, Laborde & Laperouse , L.L.C.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

*Attorneys for Aptim Corp.*

36

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed on April 24, 2019.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>   /s/ David R. Taggart   </u>
OF COUNSEL

| Minor Children | | Residents (Non-homeowners/renters) | |
|---|---|---|---|
| LAST NAME | FIRST NAME | LAST NAME | FIRST NAME |
| Adams | Sarah | Alexander | Devin |
| Adams | Tabitha | Alexander | Lionel |
| Alexander | Aubree | Alexie | Anna |
| Austin | Amir | Anderson | Brejeanne |
| Bailey, Jr. | Blake | Barconey | Kieoka |
| Barconey | Marahj | Barnes | Jayln |
| Bates | Kyron | Barnes III | James |
| Bates | Lee | Bates | La'Shea |
| Bates | O'Shea | Bell | Dabnis |
| Bell | Connor | Bell | Darius |
| Bell | Journi | Bell | Jared |
| Blanchard | Briya | Bell | Mildred |
| Blanchard | Bryce | Bell | Stephanie Thomas |
| Bloodsworth | Brin | Blanchard | Breanna |
| Bloodsworth | Cord | Blanchard | Holly |
| Bloodsworth | Jillian | Boatner | Willie |
| Brignac | Kadence | Bridgett | Cornelius |
| Brown | Melissa | Brooks | Kayla |
| Bruce | Ke'Darrius | Brooks | Kevin |
| Burnett | Kate | Brooks | Shiquita |
| Burnett | Michael | Brown | Adam |
| Burnett | Patrick | Brown | Arthur |
| Cage | Daney | Brown | Bernice |
| Camardella | Prudence | Brown | Eric |
| Campbell | Journie | Brown | Michael |
| Capo | Kaitlin | Cage | Kizzie |
| Capo IV | Vincent | Calligan | Rickey |
| Carter | Jameisha | Campbell | Jessica |
| Celestine | Julissa | Carter | Lora |
| Celestine | Jaesean | Chairs | Orah |
| Coleman | Makiyah | Champagne | Mark |
| Coleman | Kalial | Chirlow, Jr. | Kevin |
| Collins | Zanai | Clark | Jenae |
| Crockett | Brittany | Collins | Alysia |
| Crockett | Jonathan | Crockett | Courtney |
| Daigle | Desirae | Crockett | Jeanelle |
| Deteige, Jr. | Demone | Crockett | Jeanie |
| Dixon | Crayonna | Crosley | Jarrie |
| Dixon | Rashad | Daigle | Timothy |
| Domangue | Cole | Dandridge | Derrick |
| Eaton | Adelaide | Daniels | Lakeisha |
| Eaton | Aline | Davis | Lekesha |
| Eaton | Lucile | Dawson | Corneal |
| Edgerson | Dontrell | Delaney, Jr. | Cornell |
| Evans | Destiny | Delanue | Dustin |
| Evans | Faith | Dimaggio | Alysia |
| Ferrell | Olivia | Earl | Cherly |
| Ferrell | Sabyron | Edgerson | Donald |
| Ferrell | Shawndia | Edwards | Destin |
| Ferrell | Syour | Ferrell | Lawrence |
| Gibson | Kiara | Fisher | Samuel |
| Gordon | Gavin | Frazier | Evan |
| Gray | Cailem | Frederick | Linda |
| Gremillion | Adelyn | Fredrick | Tharen |
| Gremillion | Braxton | Frickey | Randy |
| Hammond | Miracle | Gabriel | Jarmal |
| Hartford | Charm | Gambino | Kimberly |

EXHIBIT 2

1258

| | | | |
|---|---|---|---|
| Hartford | Chase | Garner | Sandra |
| Hartford | Saige | Green | D'Lisa |
| Hawkins | Sky | Green | Felton |
| Hernandez | Lucianna | Green | Tiara |
| Hernandez | Miles | Guilbeau | Daniel |
| Hernandez | Sophia | Guilbeau | Felton |
| Humphrey | Lyndayle | Guillard, Jr. | Leroy |
| Hybart | Abigail | Hammond | Calisa |
| Hybart | Aubree | Hampton | Devora |
| Hybart | Decal | Harris | Antoine |
| Hybart | Jaxon | Harris | Devonta |
| Isidore | Natory | Hartford | Leroniesha |
| Jackson | Kennedy | Hernandez | Liz |
| Jackson | Miracle | Hervey | William |
| Jacob | Gregory | Irvin | Edith |
| Janicki | Kate | Jackson | Ernest |
| Janicki | Sophia | Jackson | Jarvis |
| Jason | Amiaya | Jackson, Jr. | Andrew |
| Johnson | Joshua | Janicki | Zane |
| Johnson | Ronkiea | Jasmine | Jhi |
| Johnson | Shyna | Jefferson | Helena |
| Jones | Jo'vonta | Johnson | Alexis |
| Jones | Kamille | Johnson | Bonalyn |
| Kelly | Jacayla | Johnson | Javine |
| Kelly | Jyia | Johnson | Quentin |
| Kelly III | John | Jones | Eric |
| Kennedy | Ryan | Kimble | Cameron |
| Kennedy Jr. | Rayvin | Lanus | Clark |
| Lanieux | Marcus | Lestrick | Chayla |
| Lanus | Cailee | Lestrick | Leo |
| Lanus | Ty'Leah | Lewis | Bernie |
| Lebranch | Diznee | Lightell | Brittany |
| Lestrick III | Charles | Mahl | Gavin |
| Livious | Sidney Alexander | Martin | Augusta |
| Long | Kaison | Mason | Janay |
| Lowe | Charlotte | McKanick | Jessica |
| McClinton | Melvin | Meyer | Michelle |
| McInnis | Emmerson | Mitchell | Katie |
| McInnis | Jake | Mitchell | Regina |
| McKanick | Haiden | Murphy | Anthony |
| McKanick | Hakeem | Murphy | Vanessa |
| Medina, Jr. | Alexander | Nelson | Bret |
| Motion | Julian | Palazzolo | Chance |
| Nunnery | Arman | Pinkley | Jalisa |
| Pete | August | Reed | Brady |
| Pete III | Joseph | Reed | Verna |
| Pinkley | Miala | Richard | Dolores |
| Rigney | Gabe | Robichaux | Mark |
| Rigney | Graham | Robichaux | Raquel |
| Rigney | Grant | Scott | Daveniesha |
| Robichaux | Angel | Simmons | James |
| Robinson | Darrell | Singleton | Javon |
| Rodrigue | Terrell | Singleton | Mozella |
| Ross | Jared | Stermer | James |
| Ross | Jermaine | Tate | Jonathan |
| Ross | Tyrese | Thomas | Robert |
| Rowell | Marco | Tillman | Vellis |
| Scallan | Sydney | Triche | Ernest |
| Serpas | Chase | Trotter | Jahremy |

| | | | |
|---|---|---|---|
| Serpas | Grace | Ursin | Deborah |
| Smith | John | Vaughn | Monterio |
| Smith | Kedrick | Volpi | Kyleigh |
| Smith | Savannah | Walker | Delice |
| Smith | Tre'Avallie | Weathersby | Kerner |
| Solomon | Dewight | | |
| Solomon | Dewitt | Total=121 | |
| Steffens | Aidan | Total Residents and Children=267 | |
| Stermer-Sutton | Chelsia | | |
| Stermer-Sutton | James | | |
| Stermer-Sutton | Kameron | | |
| Sunday | Canyon | | |
| Tate | Jayden | | |
| Taylor | Jordan | | |
| Tigler | Obraina | | |
| Trice | Destini | | |
| Ursin | Ce'Vanne | | |
| Ursin | Chapelle | | |
| Ursin | Zaniah | | |
| Walker | Zareyan | | |
| Walker | Zywren | | |
| Watkins | London | | |
| Wells | Addyson | | |
| Wells | Joseph | | |
| Wells | Karlie | | |
| Williams | Chevrone | | |
| Williams | Joseph | | |
| Williams | Josiah | | |
| Williams | Sinaya | | |
| Williams, Jr. | Marcus | | |

Total=146

| Addison Petition | | Anderson Petition | | Brunet Petition | |
| --- | --- | --- | --- | --- | --- |
| LAST NAME | FIRST NAME | LAST NAME | FIRST NAME | LAST NAME | FIRST NAME |
| Mitchell | Regina | Barnes | Jayln | Austin | Amir |
| Gremillion | Adelyn | Barnes III | James | Bates | La'Shea |
| Gremillion | Braxton | Camardella | Prudence | Bates | O'Shea |
| Hernandez | Lucianna | Davis | Lekesha | Bell | Connor |
| Hernandez | Miles | Ferrell | Lawrence | Blanchard | Breanna |
| Lestrick III | Charles | Ferrell | Shawndia | Blanchard | Briya |
| Pete | August | Frickey | Randy | Blanchard | Bryce |
| Pete III | Joseph | Garner | Sandra | Blanchard | Holly |
| Ross | Jared | Gibson | Kiara | Bloodsworth | Brin |
| Ross | Jermanie | Gordon | Gavin | Bloodsworth | Cord |
| Ross | Tyrese | Green | D'Lisa | Bloodsworth | Jillian |
| Serpas | Chase | Green | Felton | Brignac | Kadence |
| Serpas | Grace | Guilbeau | Daniel | Crockett | Courtney |
| Tigler | Obraina | Guilbeau | Felton | Crockett | Jonathan |
| Wells | Addyson | Hammond | Calisa | Daniels | Lakeisha |
| Wells | Joseph | Hammond | Miracle | Detiege, Jr. | Demone |
| | | Hybart | Abigail | Evans | Destiny |
| Total=16 | | Hybart | Aubree | Evans | Faith |
| | | Hybart | Decal | Ferrell | Olivia |
| | | Hybart | Jaxon | Ferrell | Sabyron |
| | | Johnson | Ronkiea | Ferrell | Syour |
| | | Johnson | Shyna | Janicki | Kate |
| | | Kelly | Jacayla | Janicki | Sophia |
| | | Kelly | Jyia | Janicki | Zane |
| | | Lanieux | Marcus | Kelly III | John |
| | | Lebranch | Diznee | Lanus | Cailee |
| | | Lestrick | Leo | Lanus | Clark |
| | | McClinton | Melvin | Lanus | Ty'Leah |
| | | Meyer | Michelle | Livious | Sidney Alexander |
| | | Nunnery | Arman | Mason | Janay |
| | | Palazzolo | Chance | McKanick | Haiden |
| | | Reed | Brady | McKanick | Hakeem |
| | | Reed | Verna | McKanick | Jessica |
| | | Rigney | Gabe | Stermer | James |
| | | Rigney | Graham | Stermer-Sutton | Chelsia |
| | | Rigney | Grant | Stermer-Sutton | James |
| | | Rodrigue | Terrell | Stermer-Sutton | Kameron |
| | | Solomon | Dewight | Tate | Jayden |
| | | Solomon | Dewitt | Watkins | London |
| | | Steffens | Aidan | Williams | Joseph |
| | | Vaughn | Monterio | Williams | Josiah |
| | | Weathersby | Kerner | Williams | Sinaya |
| | | Wells | Karlie | | |
| | | Williams | Chevrone | Total=42 | |
| | | | | | |
| | | Total=44 | | | |

| Calligan Petition | | Griffin Petition | | Winningkof Petition | |
|---|---|---|---|---|---|
| LAST NAME | FIRST NAME | LAST NAME | FIRST NAME | LAST NAME | FIRST NAME |
| Alexander | Aubree | Bailey, Jr. | Blake | Adams | Sarah |
| Anderson | Brejeanne | Boatner | Willie | Adams | Tabitha |
| Barconey | Kieoka | Bridgett | Cornelius | Alexander | Devin |
| Barconey | Marahj | Brooks | Kayla | Alexander | Lionel |
| Bates | Kyron | Brown | Arthur | Alexie | Anna |
| Bates | Lee | Brown | Bernice | Bell | Dabnis |
| Cage | Daney | Brown | Eric | Bell | Darius |
| Cage | Kizzie | Brown | Melissa | Bell | Jared |
| Calligan | Rickey | Brown | Michael | Bell | Journi |
| Campbell | Jessica | Bruce | Ke'Darrius | Bell | Mildred |
| Campbell | Journi | Carter | Jameisha | Bell | Stephanie Thomas |
| Capo | Kaitlin | Carter | Lora | Brooks | Kevin |
| Capo IV | Vincent | Chairs | Orah | Brooks | Shiquita |
| Champagne | Mark | Coleman | Kalial | Brown | Adam |
| Collins | Zanai | Coleman | Makiyah | Burnett | Kate |
| Crockett | Brittany | Crosley | Jarrie | Burnett | Michael |
| Crockett | Jeanelle | Domangue | Cole | Burnett | Patrick |
| Crockett | Jeanie | Earl | Cherly | Celestine | Jaesean |
| Daigle | Desirae | Frederick | Linda | Celestine | Julissa |
| Daigle | Timothy | Fredrick | Tharen | Chirlow, Jr. | Kevin |
| Dandridge | Derrick | Gabriel | Jarmal | Clark | Jenae |
| Dawson | Corneal | Gray | Cailem | Collins | Alysia |
| Delaney, Jr. | Cornell | Green | Tiara | Dixon | Crayonna |
| Delaune | Dustin | Guillard, Jr. | Leroy | Dixon | Rashad |
| Dimaggio | Alysia | Harris | Antoine | Eaton | Adelaide |
| Edgerson | Donald | *Hartford | Charm | Eaton | Aline |
| Edgerson | Dontrell | *Hartford | Chase | Eaton | Lucile |
| Frazier | Evan | *Hartford | Leroniesha | Edwards | Destin |
| Gambino | Kimberly | *Hartford | Saige | Fisher | Samuel |
| Hartford | Charm | Isidore | Natory | Hampton | Devora |
| Hartford | Chase | Jackson | Ernest | Harris | Devonta |
| Hartford | Leroniesha | Jackson | Jarvis | Hawkins | Sky |
| Hartford | Saige | Jackson | Kennedy | Hernandez | Liz |
| Jasmin | Jhi | Jackson | Miracle | Hernandez | Sophia |
| Jason | Amiaya | Johnson | Alexis | Hervey | Wiliam |
| Jefferson | Helena | Johnson | Bonalyn | Humphrey | Lyndayle |
| Johnson | Joshua | Johnson | Javine | Irvin | Edith |
| Jones | Eric | Jones | Kamille | Jackson, Jr. | Andrew |
| Jones | Jo'Vonta | Long | Kaison | Jacob | Gregory |
| Lestrick | Chayla | Motion | Julian | Johnson | Quentin |
| Lightell | Brittany | Murphy | Anthony | Kennedy, Jr. | Rayvin |
| Lowe | Charlotte | Murphy | Vanessa | Kennedy, Jr. | Ryan |
| Martin | Augusta | Nelson | Bret | Kimble | Cameron |
| McInnis | Emmerson | Rowell | Marco | Lewis | Bernie |
| McInnis | Jake | Simmons | James | Mahl | Gavin |
| Medina, Jr. | Alexander | Smith | John | Mitchell | Katie |
| Pinkley | Jalisa | Smith | Kedrick | Richard | Dolores |
| Pinkley | Miala | Smith | Savannah | Robichaux | Angel |
| Robinson | Darrell | Smith | Tre'Avallie | Robichaux | Mark |
| Singleton | Javon | Sunday | Canyon | Robichaux | Raquel |
| Singleton | Mozella | Tate | Jonathan | Scallan | Sydney |
| Taylor | Jordan | Ursin | Ce'Vanne | Scott | Daveniesha |
| Tillman | Vellis | Walker | Delice | Thomas | Robert |
| Trice | Destini | Walker | Zareyan | Triche | Ernest |
| Trotter | Jahremy | Walker | Zywren | Ursin | Chapelle |
| *Wells | Addyson | | | Ursin | Deborah |
| *Wells | Joseph | Total=55 | | Ursin | Zaniah |
| | | Total=51 without duplicates | | Volpi | Kyleigh |
| | | *=Duplicate | | Williams, Jr. | Marcus |

Total=57
Total=55 without duplicates
*=Duplicate

Total=59

24TH JUDICIAL DISTRICT COURT

PARISH OF JEFFERSON

STATE OF LOUISIANA

**FREDERICK ADDISON, BARBARA ADDISON,**
**PERRY ANDRAS ET AL**

NO. 790-369

**VERSUS**

DIVISION J

**LOUISIANA REGIONAL LANDFILL COMPANY,**
**IESI LA LANDFILL CORPORATION, WASTE**
**CONNECTIONS BAYOU INC., ET AL**

<u>**MOTION TO TEMPORARILY LIFT STAY, MOTION TO CONSOLIDATE,**</u>
<u>**AND REQUEST FOR EXECUTION OF ORDER. EX PARTE, OR, IN THE**</u>
<u>**ALTERNATIVE, REQUEST FOR EXPEDITED HEARING**</u>

<u>**MOTION TO PERMANENTLY LIFT STAY**</u>

Taken in the above entitled and numbered cause,

before Honorable Stephen C. Grefer, presiding on the 9th

day of May, 2019.

<u>APPEARANCES:</u>

**BARRY NEWMAN, ALLEN FOSTER, AND S. ELIZA JAMES**
        Counsels for Plaintiffs

**MATTHEW D. MOGHIS**
        Counsel for Jefferson Parish


**MICHAEL MIMS, DAVID TAGGART AND MEGAN BRILLAULT**
        Counsel for Waste Connections US, Inc.

Reported by:

        **ROSA MANALE, CCR, CDR, OCR**
        Certified Court Reporter

Transcribed by:

        **GINA PATIN, CCR, CDR, OCR**
        Certified Court Reporter

EXHIBIT 3                            1

1      **P R O C E E D I N G S**

2      THE COURT:

3          Let's take up the Addison case, which

4      is going to be 790-369, Frederick Addison,

5      et al versus Louisiana Regional Landfill

6      Company, et al.

7          Morning, counselors. Let me get out my

8      score sheet here. I'm going to ask you guys

9      to start wearing numbers so I can keep track

10     of everybody.

11         Let me hear who's representing who.

12     MR. MOGHIS:

13         Good morning, Your Honor. Matt Moghis

14     on behalf of Jefferson Parish.

15     MR. MIMS:

16         Good morning, Your Honor. Michael Mims,

17     David Taggart and Megan Brillault, on behalf

18     of Waste Connections US, INC.

19     MR. NEWMAN:

20         Good morning, Your Honor. Barry Newman

21     on behalf of plaintiffs.

22     MS. JAMES:

23         Good morning, Your Honor. Eliza James

24     on behalf of plaintiffs. Your Honor, I'd

25     also like to introduce Allen Foster. We

26     moved last night for his pro hac vice

27     admission. We received a letter saying his

28     application was approved late yesterday. Mr.

29     Foster, although he practices in D.C., is a

30     native son of Louisiana, growing up in

31     Monroe.

32     THE COURT:

2

```
 1              Ah, good for you. You needed help, Mr.
 2       Newman, you had to bring another big gun
 3       from D.C.? Everybody else is here?
 4       MR. NEWMAN:
 5              He's always with me in spirit, though.
 6       THE COURT:
 7              There you go.
 8       MR. NEWMAN:
 9              I'm here as a translator,
10       (laughter) Your Honor.
11       THE COURT:
12              (Laughter) Alright. So, I'm not sure
13       what order to take this up. So, Mr. Moghis,
14       Mr. Mims, you have a Motion to Temporarily
15       Lift the Stay imposed by the Court to have
16       the Court rule upon the Consolidation
17       Motion. Mr. Newman, you have asked for the
18       Court to also lift the Stay, but lift the
19       Stay on a permanent basis. At least we agree
20       on one thing. The Stay should be lifted. And
21       then, we have the larger issues of, I guess,
22       proceeds in terms of the class action, which
23       is pending out there in federal court. So,
24       if you've got a suggestion, Mr. Moghis, I'm
25       listening.
26       MR. MOGHIS:
27              What I would suggest, Your Honor, it is
28       our understanding in the opposition to the
29       Motion to Consolidate, which is the first
30       matter before the Court, that it kind of
31       bleeds in with the Motion to Permanently
32       Lift the Stay. I'm prepared to briefly
```

3

1    address the consolidation issue. Mr. Mims
2    would address the issue with permanently
3    lifting the Stay. And we would prefer to
4    take it in that order, and then hear from
5    plaintiffs, if the Court would allow.
6    THE COURT:
7        That's fine.
8    MR. MOGHIS:
9        Judge, regarding the consolidation
10   issue, we'll start with -- and we put in our
11   Motion -- Rule 9.4, the District's Court
12   Rule 9.4 mandates that when a plaintiff
13   files a  -- the same action against the same
14   defendant that they did in a prior action,
15   they have to file a notice of prior filing
16   with the petition. Once they do that, that
17   alerts the clerk's office that that matter
18   is already before this court and needs to be
19   allotted to that first filed division, which
20   would be this court.
21       In this matter, I won't go through the
22   list exhaustively, but there were
23   overlapping plaintiffs in every single one
24   of these subsequently five filed actions
25   since the last time we were here before this
26   court. Mr. Newman has filed another set of
27   lawsuits to the count of five, I believe,
28   we're at now, all of which, again --
29   THE COURT:
30       Have two more coming.
31   MR. MOGHIS:
32       Two more coming. And all of those have

4

```
 1              overlapping plaintiffs with Addison.
 2                   So, our initial contention is that we
 3              really don't even get to the argument of
 4              consolidation. This should have already been
 5              here. It's mandatory that that be filed when
 6              the plaintiff is suing the same defendant
 7              under the same cause of action, which we
 8              have here. And once that's filed, it's also
 9              mandatory that it's allotted to this
10              division.
11                   So, but moving beyond that, --
12              THE COURT:
13                   Let me cut you off there, real quick,
14              Mr. Moghis, and let me just hear from Mr.
15              Newman.
16                   Mr. Newman, were the overlapping
17              plaintiffs an accident on behalf of the
18              plaintiffs? I mean, did you intend to have
19              them in multiple lawsuits, or is that --
20              MR. NEWMAN:
21                   Your Honor, it was accidental, but we
22              consent to the consolidation.
23              THE COURT:
24                   That's interesting.
25              MR. MOGHIS:
26                   This is where I sit down.
27              THE COURT:
28                   Okay. It could be the best lawyer move
29              of the day for you, Mr. Moghis.
30                   Okay.
31              MR. NEWMAN:
32                   Hopefully this won't take long, either,
```

5

1      Your Honor, having agreed to consolidation.

2      THE COURT:

3          I don't think you're going to get a

4      consent to lift the Stay permanently, but

5      it's worth a shot.

6      MR. NEWMAN:

7          Well, we think you have to lift the

8      Stay temporarily to --

9      THE COURT:

10         Yeah, well, I guess, actually, to keep

11     things straight and for purposes of the

12     record, since obviously, that there may be

13     some appellate review of whatever decision I

14     make. I guess based upon the consent to the

15     consolidation, the Court is going to grant

16     the Motion to Temporarily Lift the Stay. To

17     consolidate, as that is required in order to

18     consolidate. So let's take the request to

19     permanently lift the Stay.

20     MR. NEWMAN:

21         Yes. And having consolidated the cases

22     in particular, we think it's incumbent upon

23     this Court now, based on what's happened in

24     the federal litigation, to lift the Stay

25     permanently and allow this case to proceed.

26     Your Honor, when we were here last time, and

27     only the Addison complaint had been filed,

28     the Court, in granting a Stay in its

29     discretion, found that after colloquy with

30     me, said given the proposed class

31     definition, given the then proposed class

32     definition in the federal lawsuits and the

6

```
 1              allegations in this case, in the Addison,
 2              there was no way this Court can envision
 3              that those same plaintiffs wouldn't be
 4              members -- wouldn't -- wouldn't, would not
 5              be members of the class, if a class is so
 6              certified. And, Your Honor, that's why we
 7              are here today. Because in light of what has
 8              transpired in the federal litigation, that
 9              is no longer the case. We clearly have --
10              well, let me back up. The federal
11              litigation, the class has been redefined
12              now, and narrowed, as defendants have
13              acknowledged, to state explicitly that the
14              class includes the property owners who have
15              suffered property injuries, whereas
16              previously, we're going to rehear, one of
17              the class actions that was then pending, or
18              punitive class actions, explicitly included
19              physical injury. That's no longer
20              the case.
21                   And so, as a result, what we now have
22              is that in the cases filed so far, we have
23              over three hundred plaintiffs who are either
24              adults who do not own property, or minors
25              who do not own property. And all of their
26              claims, therefore, are based on alleged
27              physical harm, which we have alleged, in
28              every one of those complaints. In addition,
29              in the Addison complaint itself, we have
30              sixteen minor children who own no property
31              and whose claims could only be, and are only
32              based, on alleged physical harm. And under
```

7

1    those circumstances, Your Honor, not only
2    are there -- is there no identify of
3    plaintiffs, there is no way that the Court
4    can find that these plaintiffs would be
5    included in the class definition.
6        As a result, your Honor, the parties
7    are not the same. There is no res judicata.
8    For that reason alone, in addition, if we
9    need another reason, it's quite clear based
10   on the way the class was defined in the
11   federal case now, plaintiffs in -- the named
12   plaintiffs in the federal case cannot
13   adequately represent the interest of these
14   plaintiffs. Nor, by the way, can they
15   adequately represent the interest even of
16   the property owners in our cases who also
17   alleged physical injury. Some of them, many
18   of them, more than fifty total, allege very
19   serious physical injuries. Asthma, COPD, and
20   other respiratory ailments that we allege
21   and are prepared to prove were caused or
22   exacerbated by the emissions from the
23   landfill.
24       The flip side, so based on we think the
25   status now, res judicata does not apply.
26   Cannot be found to apply, even if a class is
27   certified in the federal case. Note lis
28   pendens does not apply and, therefore, there
29   is no basis for the Stay to stay in effect
30   as a matter of law.
31   THE COURT:
32       Okay. So, here's my question.

8

|    |                                                    |
|----|----------------------------------------------------|
| 1  | MR. NEWMAN:                                         |
| 2  | Yes, sir.                                           |
| 3  | THE COURT:                                          |
| 4  | And without getting to the stage just              |
| 5  | yet of whether it should or shouldn't be            |
| 6  | lifted under my discretion under 532.               |
| 7  | MR. NEWMAN:                                         |
| 8  | Yes, sir.                                           |
| 9  | THE COURT:                                          |
| 10 | But, putting that aside for just a                 |
| 11 | moment, the class still isn't certified.            |
| 12 | There has been a new proposed definition of         |
| 13 | the class. The class still hasn't been              |
| 14 | certified. It's been amended once. It could         |
| 15 | be amended again. The proposed class                |
| 16 | definition could be amended again before            |
| 17 | it's ever certified, and the judge could            |
| 18 | take the proposed class certification and           |
| 19 | say, you know what, I'm going to certify            |
| 20 | this class, not what you proposed, and make         |
| 21 | her own definition as to what the class is          |
| 22 | ultimately going to be.                             |
| 23 | Am I not still in that same position               |
| 24 | where, until the class is certified, I don't        |
| 25 | know who the class is or who the class is            |
| 26 | going to be. It may include personal                |
| 27 | injuries at some point down the road.               |
| 28 | MR. NEWMAN:                                         |
| 29 | Well, Your Honor, that's a theoretical              |
| 30 | possibility, but if that were controlling, I        |
| 31 | would respectfully submit the court never           |
| 32 | should have granted the Stay in the first           |

9

```
 1            place, because there would have been no way
 2            to find that res judicata would apply in
 3            this case. And, as the Court is aware, the
 4            doctrine of lis pendens, any doubts about
 5            whether the doctrine of lis pendens should
 6            apply, should be resolved against applying
 7            the doctrine. So, if we're going to take the
 8            position that we have -- we don't know
 9            whether the class is going to be certified
10            until a later date, there is no way to say
11            now, the lis pendens applies or res judicata
12            would apply. And certainly, Your Honor, if
13            that's the case, I get to the equity
14            argument. Because in the interim, all of
15            these plaintiffs have alleged physical harm.
16            Some of them serious physical harm in the
17            second and third cases that we filed
18            Anderson and Brunette. And, under those
19            circumstances, Your Honor, it's our
20            position, respectfully, that there is no way
21            consistent with the interest of fairness,
22            justice and equity, that the Court can
23            continue to prevent these plaintiffs from
24            proceeding with their claims pending some
25            disposition down the road, which a) under
26            the court's construction, we don't know. We
27            really just don't know whether the class is
28            going to include these plaintiffs.
29       THE COURT:
30            Right. But, I mean, he admitted as much
31       as that, right Mr. Newman? I mean, in the
32       arguments, you know, and I'm just quoting
```

10

1       you from the argument that we last had, I
2       think that if the class is certified, it is
3       delineated that way that that if asked for,
4       then yes, as described in the complaint,
5       then we would be members of and our clients
6       would be members of the class.
7       MR. NEWMAN:
8           Yeah, it was true then.
9       THE COURT:
10          Right.
11      MR. NEWMAN:
12          It's not true now.
13      THE COURT:
14          Because the definition has been
15      amended. And you also said we won't know
16      that unless and until the class is
17      certified. In those cases, and until and
18      unless, and until any of our clients chose
19      to opt out of those classes, which, again, I
20      agree with you, but until that class is
21      certified, I'm -- am I not in the same
22      position, or is the same argument that you
23      stated back then still not hold. I don't
24      know whether your clients would or would not
25      be included in that class. They are still
26      potentially members of this punitive class
27      until such time as the judge says this is
28      the class. It's just going to be property
29      damage and that's all it's going to be. Or
30      the judge says nope, class is going to
31      include everything because we're not doing
32      this in seven different litigations, seven

11

1   different times.
2   MR. NEWMAN:
3       Well, it's up to the plaintiffs. First
4   of all, it's up to the plaintiffs in the
5   federal class litigation to define their
6   class.
7   THE COURT:
8       To try, right.
9   MR. NEWMAN:
10      They have defined it, now, specifically
11  not to include physical damage. And I
12  recognize the colloquy we had last time,
13  Your Honor, but I wind up where the court
14  wound up, in granting the Stay, saying given
15  the proposed class definition, at that time,
16  there was no way that the court could
17  envision that those plaintiffs wouldn't be
18  members of the class of certified. That was
19  the gravemente the court's holding. It was
20  the basis on which the court, I think the
21  primary basis -- I don't want to speak for
22  the court.
23  THE COURT:
24      No. I think that's a fair statement.
25  MR. NEWMAN:
26      The primary basis on which the court
27  granted -- um, decided to Stay. That,
28  simply, no longer is the case. And, again,
29  what we have is a situation where two
30  plaintiffs allege physical injury. As
31  matters now stand, that's not going to be
32  vindicated in the federal litigation. If

12

```
 1        they have their way, it will be adjudicated
 2        in the federal litigation in a way that
 3        would prevent us from ever raising those
 4        claims, if they were right on the issue of
 5        res judicata. And, respectfully, Your Honor,
 6        I think that their strategy is, I believe
 7        what's going to happen in the federal case,
 8        is there will be a settlement on the
 9        property injury claims, and then want to
10        come back to this court and say we're barred
11        from raising physical injury claims.
12            Now, if we -- the other thing that's
13        changed here is, that given the definition
14        as it's now proposed or defined in the
15        federal case, we now know -- I couldn't say
16        this last time. But we now are virtually
17        certain that these plaintiffs, if given the
18        opportunity, will opt out of that case.
19        That's a changed circumstance.
20            What's also is new is that the
21        plaintiffs now in the federal case have
22        alleged -- have alleged that they're
23        entitled to certification under Rule
24        23(b)(1)(2) and (3). And our clients won't
25        even have the right to opt out if they're
26        not certified. If the class isn't certified
27        under (d)(3). And yet, they want to say that
28        we can't bring these claims now even though
29        we've got these physical injuries.
30            So, I think a lot has changed since we
31        were here before. Given the class
32        definition, there's no way we can say that
```

13

```
 1        they will be included. In fact, we can say
 2        they will not be included in class
 3        definition. And, unlike the court's
 4        assumption last time, there is no guarantee
 5        that they will have an opportunity to opt
 6        out. So, to me, Your Honor, the equity
 7        argument is sort of the flip side of the res
 8        judicata argument. It's two sides of the
 9        same coin. Either way, under the
10        circumstances as they now exist, we
11        respectfully submit that the court is
12        virtually compelled in the interest of
13        justice, equity, and the law of res
14        judicata, to lift the Stay and let our
15        clients go forward.
16   THE COURT:
17        At what point in the analysis does the
18        type of damages claimed weigh in to the res
19        judicata/lis pendens argument? Where is that
20        ever in the -- I mean, we talked transaction
21        and occurrence, same facts and
22        circumstances, we talked that type of
23        language. Where do we ever talk about the
24        type of damages claimed?
25   MR. NEWMAN:
26        I would concede that if -- the doctrine
27        of res judicata, if applicable, precludes
28        claims splitting, essentially. It precludes
29        a subsequent lawsuit between the same
30        parties that raised claims that were or
31        could have been raised in the first case.
32        So, I agree that with respect to property
```

14

```
1          owners, if res judicata were to apply, that
2          a class action lawsuit, that is litigated to
3          conclusion and settles or reaches judgment
4          solely on property claims, would act as res
5          judicata as to injury claims, personal
6          injury claims, with respect to property
7          owners who, theoretically, could have
8          brought those claims in that case. It does
9          not apply, however, under any circumstances,
10         to people who don't own property, who is not
11         being the identity of parties in that
12         situation at all.
13     THE COURT:
14          So, you either have --
15     MR. NEWMAN:
16          In addition -- In addition, I would say
17         that res judicata would not apply even to
18         the property owners, because one of the
19         linchpins of res judicata is that the
20         plaintiffs in the first case have to
21         adequately represent the interest of the
22         plaintiffs in the second case. And we've
23         cited a lot of law that when courts -- And
24         this partly goes to the issue of whether the
25         class will be certified at all, which also
26         is a reason, frankly, why we should be
27         allowed to go forward now, because if it
28         wasn't clear before, it's even more clearer
29         now that the class may (sic) not be
30         certified. Because, because, given the fact
31         that those plaintiffs are not alleging
32         personal injury claims, it's really hard to
```

15

1        say that they will adequately be

2        representing the interests of these -- of

3        our plaintiffs.

4        THE COURT:

5           So, do I lift the Stay as to the

6        personal injury claimants and maintain the

7        Stay as to the property damage claimants?

8        MR. NEWMAN:

9           No, Your Honor, because, again, given

10       -- Given the fact that plaintiffs in the

11       class action case clearly will not be

12       adequately representing the interest of the

13       property owners in this case who have

14       physical injuries. All those people who have

15       COPD and asthma and all the rest, res

16       judicata doesn't apply. That is one of the

17       criteria for whether res judicata applies.

18       THE COURT:

19          No, that's what I'm saying. I guess

20       what I'm saying is, is it possible to lift

21       the Stay as to those plaintiffs who claim

22       personal injuries and maintain the Stay as

23       to those plaintiffs that allege only

24       property damage?

25       MR. NEWMAN:

26          Well, I mean, I think it's

27       theoretically possible, but I have two

28       questions: Number 1) Since the plaintiffs in

29       the federal case won't be adequately

30       representing the interest of either group,

31       because they all have physical injury

32       claims. Why would the court do that? And,

16

```
 1              secondly, why would that make sense from a
 2              standpoint of case management? To only allow
 3              those claims to go forward? I don't think it
 4              does.
 5         THE COURT:
 6              I'm just concerned about the preclusive
 7              effect of a class action resolution for all
 8              property damage claims that doesn't effect
 9              the property damage claims of your clients.
10              I guess I'm looking down the road, and I'm
11              concerned that there is going to be a
12              situation where you're going to get a class
13              action settlement or a judgment alleging
14              that every member who had owned property in
15              this area who was affected gets this amount
16              of damages, and I still have all these cases
17              pending over here. Then you're going to get
18              some motions from those guys, I think, for
19              sure, saying, wait, these claims were
20              resolved over there.
21         MR. NEWMAN:
22              That's why these claims should be
23              allowed to go forward at this time. And
24              that, in itself, is going to be a reason
25              when the federal court sees that we've got
26              500 residents, at least, opting out. They've
27              got the opportunity from that class or
28              asserting claims that the federal cases have
29              not. That's going to be the reason why those
30              classes aren't certified at all.
31         THE COURT:
32              And that may be.
```

17

1279

1    MR. NEWMAN:

2      Pardon?

3    THE COURT:

4      That may be. They may never get

5    certified. I don't know. That's -- I mean,

6    that's possible. Obviously, that's a

7    potential situation and, I guess at that

8    point, they'd have to handle them as

9    individual actions. But, you know, I'm not

10    sure.

11   MR. NEWMAN:

12     But, given all those uncertainties --

13   Again, I come back to the equity argument

14   here. Given all those uncertainties, and we

15   do think that in light of these changed

16   circumstances, it is more likely that a

17   class won't be certified than when I was

18   here a couple of months ago. Given all those

19   uncertainties, to tell our plaintiffs that

20   they cannot proceed now as a matter of

21   discretion, with their personal injury

22   claims, which they continue to incur during

23   this Stay, would be unjust and unfair. Okay.

24   THE COURT:

25     Mr. Moghis? Mr. Mims?

26   MR. NEWMAN:

27     Thank you, Your Honor.

28   THE COURT:

29     Yes, sir.

30   MR. MIMS:

31     Good morning, Your Honor. Michael Mims,

32   on behalf of Waste Connections US, Inc. We

18

1    heard a lot from Mr. Newman about the
2    different injuries alleged in the class
3    action versus this Addison action. We didn't
4    hear the words from him same transaction or
5    occurrence. That is the standard that
6    applies here.
7         We also didn't hear an explanation from
8    him of why, even though there may be
9    different harms alleged in both actions, why
10   aren't the Addison plaintiffs fall under the
11   umbrella of the class action proposed
12   definition. In January of this year, you
13   held that the Addison plaintiffs did fall
14   under that class definition. You held that
15   the Addison claim did arise out of the same
16   transaction or occurrence as the federal
17   class action. And just earlier this week,
18   the 5th Circuit Court of Appeals said yes,
19   Judge Grefer was correct. He properly
20   applied the _Aisola_ case. We didn't just get
21   the usual, you know, one word, you know,
22   writ denied, one page order. We got an
23   actual explanation from the Court of Appeal
24   that said yes, Judge Grefer properly applied
25   the _Aisola_ case.
26        Now, today, plaintiffs --
27   THE COURT:
28        And also said send it back to Judge
29   Grefer to consider the amendment to the
30   petition.
31   MR. MIMS:
32        And that's why we're here today. And

19

1        so, that's what I want to talk about.

2             Today, the plaintiffs are arguing that

3        there are new circumstances. But when you

4        look at the actual criteria that apply to

5        lis pendens, none of the material

6        circumstances have changed. So, let's go

7        back to the class definition.

8             When you looked at this in January, the

9        class definition is all residents of

10       Jefferson Parish who have alleged nuisance

11       and property related damages, allegedly

12       resulting from odors emanating from the

13       Jefferson Parish landfill. Today, the class

14       definition is all residents of Jefferson

15       Parish who have suffered nuisance and

16       property related damages allegedly resulting

17       from odors emanating from the landfill.

18            Now, the plaintiffs have added this one

19       sentence at the end saying that we reserve

20       the right to narrow the class and provide a

21       more specific geographic boundary. From a

22       legal perspective, that sentence has no

23       consequence in federal class action. It

24       doesn't change how that matter is going to

25       proceed. It shouldn't have any consequence

26       here on the lis pendens questions. Because

27       for lis pendens, it's your job to look at

28       what is the proposed class today. How is it

29       defined today. And today it's defined as all

30       residents of Jefferson Parish suffering

31       nuisance and property related damages.

32            We've heard a lot from Mr. Newman about

20

```
 1              the proposed class definition being limited
 2              to property owners. Your Honor, I've got the
 3              proposed class definition right here.
 4         THE COURT:
 5              I'm with you. It's not property owners.
 6              Obviously. Look, the question, Mr. Mims, to
 7              cut to it, and I don't mean to cut you off,
 8              but the question is, what do you do about
 9              the personal injury plaintiffs? Are they
10              included in the revised class definition or
11              are they not included in the revised class
12              definition? And what happens to them? I
13              guess the ultimate question for the court is
14              going to be this is if I maintain the Stay
15              and the class is resolved and it is defined
16              as is proposed, the personal injury
17              plaintiffs never have a chance to allege
18              their damages for personal injuries?
19         MR. MIMS:
20              No, Your Honor.
21         THE COURT:
22              So, where do they get to do that, and
23              when does that happen, and how are they
24              protected?
25         MR. MIMS:
26              So, first of all, I disagree that
27              personal injury plaintiffs are not part of
28              the class action, but we can get to that,
29              because that's really not the issue. If
30              these plaintiffs are not satisfied with the
31              representation by the class members, they
32              can opt out. That is their remedy. Now, Mr.
```

21

```
 1              Newman has raised this argument that, well,
 2              maybe we won't even get a chance to opt out.
 3              That is a red herring, Your Honor. If you
 4              look at the, uh, the amended class action,
 5              yes, it has a boilerplate listing of all of
 6              the sections of Rule 23 upon which class
 7              certification could theoretically be
 8              granted. This is a Rule 23(b)(3) case. And
 9              23(b)(3) requires notice and an opportunity
10              to opt out. These other sections of Rule 23
11              that Mr. Newman would like to talk about are
12              not this case. They deal with cases where
13              there is a limited fund. They deal with
14              cases where it's an injunction case, which
15              the federal class action is not. 23(b)(3) is
16              your general compensatory damages class
17              action section of Rule 23. That is the
18              federal class action.
19                   If it's certified at all, which remains
20              to be seen, it will be under Rule 23(b)(3).
21              They will get notice. They will have an
22              opportunity to opt out.
23                   Now, in terms of whether they are
24              adequately represented by the class
25              plaintiffs, again, the question is
26              transaction or occurrence, not do the class
27              action plaintiffs allege all of the same
28              harms. You're not supposed to compare that
29              against the harms that the Addison
30              plaintiffs have alleged. It's transaction or
31              occurrence, some courts have said, a common
32              nucleus of operative fact. Same events, same
```

22

1    wrongdoing, and that is clearly the case
2    here. Those cases are about odors allegedly
3    emanating from the landfill.
4         So, that is the question. But, if you
5    were to go down this road of adequate
6    representation, it's entirely speculative to
7    say what damages the class action plaintiffs
8    are going to assert or not.
9         Mr. Newman would, apparently, like to
10   read this class definition as surrendering
11   personal injury damages. That's not what it
12   says. It says nuisance damages, which is
13   very broad under Louisiana law, and includes
14   personal injury damages. So it would be
15   entirely speculative for this court to today
16   try to guess about what causes of action or
17   what damages might or might not be class
18   action plaintiffs assert.
19        What the court is supposed to do, under
20   Aisola and the related cases is ask do these
21   Addison plaintiffs fall under the class
22   definition. The Addison plaintiffs are
23   clearly alleging nuisance and property
24   related damages. Maybe they're alleging some
25   other damages, too. But they're clearly
26   alleging nuisance and property related
27   damages. So they fall under the class
28   definition that's proposed in the federal
29   class action. They are punitive class
30   members.
31        The other question is, does their claim
32   arise from the same transaction or

23

1    occurrence, and it does. Now, if you want to
2    talk about fairness, the fact is, we've seen
3    no demonstration from these plaintiffs about
4    what irreparable harm they're suffering.
5    They argued fairness before you back in
6    January, and you correctly held that that
7    was not a basis for ignoring Louisiana law
8    on lis pendens. They argued fairness in
9    front of the 5th Circuit Court of Appeal.
10   And the 5th Circuit said it was appropriate
11   to Stay the case. We have seen no
12   demonstration today about allegedly
13   suffering irreparable harm. The fair result
14   is for them to wait until they have an
15   opportunity to opt out, which they will
16   have, and not to allow their duplicative and
17   late-filed action to proceed in this court
18   so that they can jump to the front of the
19   line, and start doing discovery, and making
20   the defendants, including Jefferson Parish,
21   go through duplicative rounds of discovery
22   and motion practice.
23        One other thing I wanted to address was
24   this idea that because the class definition
25   could change, that Stay should never have
26   been granted, period. Well, that's the case
27   in every class action. In every class
28   action, the judge, ultimately, is going to
29   define the contours of the class. When they
30   issue an opinion on certification. So, if
31   you will accept that line of thinking, then
32   that would mean that lis pendens would have

24

1      no application in class actions, and we know

2      that's not the case, because we have the

3      Aisola decision from the Louisiana Supreme

4      Court. And the Quinn decision from the

5      Louisiana Supreme Court. And all of those

6      cases that we've cited. So, that's clearly

7      not the law in Louisiana.

8          Your Honor, unless you've got any

9      further questions for me, I think that is

10     the position of Waste Connections. Thank

11     you.

12     THE COURT:

13         Mr. Newman?

14     MR. NEWMAN:

15         Thank you. Just a few points, Your

16     Honor.

17         First, there's no dispute -- Or, we

18     don't dispute that this case is arrived from

19     the same transaction. But contrary to what

20     you just heard, that is not all that it

21     takes to apply the doctrine of res judicata.

22     The parties have to be the same. Or at least

23     in privity. And it is simply the case now,

24     as it was not at the time, back in January,

25     but the parties are not the same. The

26     complaint in our case, Addison and all the

27     other cases, contrary to I think what we

28     just heard, specifically alleges that the

29     plaintiffs incurred substantial loss of not

30     only of use and enjoyment of their homes,

31     but physical harms and discomfort, anguish,

32     and distress. That was in our complaint from

                              25

1       the outset. In the Addison complaint.

2              It was also in one of the four class

3       actions as they were initially filed. So, at

4       that time, there was parity. A co-existence

5       of plaintiffs in the two cases. Now, I was

6       interested to hear counsel say that he now

7       disputes that the federal class action

8       definition is limited to personal property

9       claims. Because in their brief, they say it

10      is irrelevant that the Addison plaintiffs

11      seek damages beyond -- beyond those sought

12      in the federal class action. Because they

13      also assert the same type of property

14      related damages as the federal plaintiffs.

15      So, what they're saying in their brief, what

16      they were telling you is that simply because

17      many of the plaintiffs, and they erroneously

18      assumed all of the plaintiffs, but simply

19      because some of the plaintiffs allege

20      property damage, it's irrelevant that we

21      also allege physical damages that are not

22      now alleged in the federal case. There's no

23      question that the federal definition in the

24      federal case as it now stands excludes

25      physical harm.

26      THE COURT:

27             Does nuisance include physical harm?

28      MR. NEWMAN:

29             Pardon?

30      THE COURT:

31             Does nuisance include physical harm

32      under Louisiana law?

26

```
 1      MR. NEWMAN:
 2          Nuisance is -- If you read their
 3      definition, it's -- bear with me.
 4      THE COURT:
 5          Sure.
 6      MR. NEWMAN:
 7          Because the way they defined it is
 8      suffering harm to their property as a result
 9      of various, uh, various injuries. It's all
10      predicated on that. Just bear with me, if I
11      may.
12      MR. MIMS:
13          Your Honor, I have the relevant article
14      in front of me if you'd like to hear it.
15      THE COURT:
16          Sure.
17      MR. MIMS:
18          Article 667, that's the article from
19      the Louisiana Civil Code on nuisance.
20      THE COURT:
21          Okay.
22      MR. MIMS:
23          Although a proprietor may do with his
24      estate whatever he pleases, he still cannot
25      make any work on it which may deprive his
26      neighbor of the liberty of enjoying his own,
27      or which may be the cause of any damage to
28      him. Any damage. And, if you look at the
29      Louisiana Supreme Court cases, there's one I
30      don't believe we cited in our brief, but was
31      Dean v. Hercules case, and I can get that
32      citation for you. It makes it very clear
```

27

1        that when Article 667 says any damage, that

2        includes personal injury.

3        MR. NEWMAN:

4            Just bear with me.

5        THE COURT:

6            Sure.

7        MR. NEWMAN:

8            The definition of plaintiffs is all

9        persons domiciled in and/or residing in the

10       Parish of Jefferson, State of Louisiana, who

11       have suffered -- who have sustained legally

12       cognizable damage in the form of nuisance,

13       trespass, interference with the enjoyment of

14       their properties and/or diminution in the

15       value of their properties as a result of the

16       emissions of noxious odors.

17           Now, the counsel noted the decision --

18       I think the court put its finger on it. I

19       think that that decision by the Court of

20       Appeals, at the very least, invited this

21       court to re-examine the facts based upon the

22       amended complaint.

23       THE COURT:

24           I took it more as an instruction, but

25       yes.

26       MR. NEWMAN:

27           Pardon?

28       THE COURT:

29           I took it more as an instruction --

30       MR. NEWMAN:

31           And I think all but invited the court

32       to lift the Stay, is my suggestion. But, in

28

1    any event, counsel also said that I want to
2    focus on the fact that the plaintiffs may
3    not be able to opt out. He said this is a
4    23(b)(3) case. Not according from the
5    plaintiffs in that case. And we don't know
6    that yet. So we don't know if our clients
7    are going to have a chance to opt out.
8         In terms of fairness, I think the court
9    has to look now, again, at the balance of
10   equities. The last time around, this court
11   said that it was going to exercise its
12   discretion to maintain a Stay in the lis
13   pendens because it found it unfair the
14   plaintiffs -- the defendants may have to
15   defend in more than one forum. Again, we
16   would respectfully submit that in light of
17   what the situation is now, that concern
18   pales in comparison to the unfairness of our
19   clients being precluded from proceeding with
20   their cases. Compared to the inconvenience
21   that they might suffer having to defend
22   cases in two forums, we think that the
23   balance clearly tips in our favor,
24   especially since it's now clear, given that
25   our clients have physical injury, it will
26   not be included in the federal case and
27   there won't be res judicata. We'll be
28   litigating in this court anyway. Thank you.
29   THE COURT:
30        Let me get one more thing in here, Mr.
31   Newman. Just let me get your opinion on
32   this.

29

1291

1          If the types of damages sought are
2     sufficient to defeat the argument regarding
3     res judicata and lis pendens, is it also not
4     sufficient to defeat an argument against, or
5     to sustain an argument, I guess, against
6     consolidation. Should I be consolidating
7     cases that are so different because of the
8     types of damages sought that they don't
9     share enough commonality that they should be
10    all grouped into one court room, so to
11    speak. Each one of these cases should be
12    brought into various court rooms where they
13    are currently filed. If the damage is enough
14    to make a difference in terms of res
15    judicata and lis pendens, is it also enough
16    to make a difference in terms of
17    consolidation?
18  MR. NEWMAN:
19         Well first, it's not -- It's not the
20    damages. It's -- In terms of as a matter of
21    law why res judicata does not apply is
22    because the plaintiffs aren't the same.
23    That's our first point. The plaintiffs are
24    not the same, and then we have explicitly
25    alleged physical harm. So res judicata does
26    not apply for that reason.
27  THE COURT:
28         Right, but that's why you say the
29    plaintiffs aren't the same is because your
30    plaintiffs allege physical harm, and the
31    plaintiffs in the class action only allege,
32    by your definition, only allege property

30

1      damage.

2      MR. NEWMAN:

3      Because many of our clients don't own

4      property. So they're not the same. By

5      definition, the plaintiffs in the class

6      action case, as presently defined, own

7      property. Because all of the alleged

8      injuries arise --

9      THE COURT:

10     I don't know that it requires property

11     ownership. I mean, if you look at the class

12     definition, individuals domiciled in and

13     residing in the Parish of Jefferson who have

14     sustained legally cognizable damages in the

15     form of nuisance, trespass, interference

16     with enjoyment of their properties and/or

17     diminution of their property values. There's

18     clearly those who own properties that have

19     suffered diminution of property values. But

20     in terms of nuisance, I don't know that

21     nuisance would require ownership. Could you

22     not be a renter and suffer a nuisance? Could

23     you not be a --

24     MR. NEWMAN:

25     Fair enough. Renter, as well. And I

26     would, you're absolutely right. I agree. I

27     stand corrected. And we have clients who

28     have alleged property damage as renters,

29     because a lease is a cognizable property

30     interest. But I'm saying, aside from renters

31     and property owners, we have clients who

32     have neither. Who just reside as these

31

```
 1                    residences. At these locations and allege
 2                    harm.
 3                    THE COURT:
 4                         They would suffer nuisance injuries.
 5                    MR. NEWMAN:
 6                         They're not included in the class
 7                    action.
 8                    THE COURT:
 9                         You don't think they are a resident in
10                    the individual domiciled and/or residing in
11                    Jefferson Parish who suffered a nuisance
12                    injury if they were just simply residing
13                    there?
14                    MR. NEWMAN:
15                         Well, we're alleging physical harm, not
16                    nuisance in those cases. I mean, it's not
17                    nuisance. It's physical harm.
18                    THE COURT:
19                         Okay. And that assumes that nuisance
20                    doesn't include physical injuries. Mr. Mims
21                    would suggest that nuisance includes
22                    physical injuries, and that's why I was
23                    asking if we had a definition. So, I may
24                    need to look at that further.
25                         Alright. I got it. Mr. Mims, anything
26                    else you want to add?
27                    MR. MIMS:
28                         Very briefly, Your Honor.
29                    THE COURT:
30                         And Mr. -- go ahead.
31                    MR. MIMS:
32                         We maintain that the proper test is
```

32

1    transaction or occurrence, not whether the
2    harms alleged match up. But just so the
3    court is clear on Louisiana law and the fact
4    that in Louisiana, nuisance does include
5    physical injury. The case that I mentioned
6    earlier was <u>Dean v. Hercules, Inc</u>. 328 So.2d
7    69. It just reaffirms what 667 already says,
8    which is that nuisance includes any damage.
9         Lastly, regarding Mr. Newman's argument
10   that we don't know that the class will be
11   certified under Rule 23(b)(3). That's not a
12   reason to lift -- Well, first of all, I
13   would disagree with him. I think we do know
14   that if it's certified, that's the only
15   viable vehicle for certification. But, even
16   if we don't know that, that's not a basis
17   for lifting the Stay. If plaintiffs in the
18   federal class action file a motion to
19   certify the class under 23(b)(1) or
20   23(b)(2), I'm sure Mr. Newman can come to
21   this court and ask you to revisit this
22   issue. I don't think that's going to happen,
23   though.
24        Thank you.
25   THE COURT:
26        If you've got to say something, Mr.
27   Newman, okay, I'll give you the last word.
28   MR. NEWMAN:
29        One other point, Your Honor. The
30   nuisance provision that he is citing is
31   found in the real property section of the
32   statute. It's not in the tort section.

33

```
1    THE COURT:
2              Yes. It's in the 600's. You're correct.
3              Okay. Alright. Thank you gentlemen. I'm
4    just not prepared to render a decision
5    today. I do want to look at the nuisance
6    issue a bit further and I just did not have
7    a chance to read all of the cases cited. I
8    certainly read the memos, but there were
9    some cases with some nuance I think that
10   bear consideration. So, I want to take a
11   look at a few more cases before I render a
12   decision, so I am going to take this one
13   under advisement, and I'll render a decision
14   shortly.
15             Yes?
16   MR. MOGHIS:
17             Judge, just briefly revisiting the
18   consolidation issue. With respect to the two
19   lawsuits that are anticipated, and I'm
20   certain, some after that, does the court
21   have any guidance on what we can do to
22   potentially avoid having to file these
23   motions every single time a new one is? We
24   would suggest a Rule 9.4 Notice of Prior
25   Filing with all of them being included in
26   the order.
27   THE COURT:
28             Now, that only works if you have
29   overlapping plaintiffs, though. If you don't
30   have overlapping plaintiffs, then that
31   wouldn't work, and Mr. Newman has indicated
32   that the only reason you have overlapping
```

34

1        plaintiffs is because of an error on their

2        part that you shouldn't have the same

3        plaintiffs in multiple lawsuits. I'm not

4        misstating that, right, Mr. Newman?

5        MR. NEWMAN:

6            That's correct.

7        THE COURT:

8            So, I don't think the 9.4 thing would

9        work because you don't overlapping

10       plaintiffs. I think you're going have to

11       move to consolidate them afterwards, you

12       know, is the only way I can foresee that

13       happening.

14       MR. MIMS:

15           Your Honor, the only other point

16       similar to that, now that you have

17       consolidated these actions, we're now up to

18       six actions, two more coming. What we think

19       would make a lot of sense for best resources

20       of counsel and the court is if we could get

21       an extension on responsive pleadings in all

22       of these actions. That way we could file our

23       exceptions and motions to consolidate

24       together and get them heard together,

25       instead of having to come here every time.

26       THE COURT:

27           Well, as of now, I haven't lifted the

28       Stay, so you don't have to file anything.

29       So, depending on what I do with the Stay,

30       you may or may not be in that position. If,

31       in fact, I lift the Stay, I think based upon

32       your comments I will just put in the order

35

1    lifting the Stay that you have thirty days
2    to respond to any petition that has been
3    filed from the date of the order lifting the
4    Stay, or something along those lines, to
5    file responsive pleadings. And that way, it
6    will give you a defacto extension of time to
7    file responsive pleadings based upon the
8    court lifting the Stay, thirty days from the
9    date of lifting the Stay. If I don't lift
10   the Stay, then we'll see what the 5th
11   Circuit says and go from there. Okay.
12   Alright.
13   MR. NEWMAN:
14       Your Honor, one other question, if I
15   may. Can the parties have, say, a week to
16   file post hearing brief on the nuisance
17   issue that Your Honor raised during
18   argument?
19   THE COURT:
20       Yeah, that's fine. Because, look, I
21   think it is significant. I'm not, you know,
22   trying to hide the cat under the basket, or
23   whatever the phrase goes. I think the
24   question still remains the same under
25   Aisola, right? There's no question, I think
26   all would agree, that that case arises out
27   of the same nucleus of operative facts or
28   the same transaction and occurrence. I don't
29   think there's any question about that. So
30   the question is whether you have an identity
31   of plaintiffs, and under Aisola, under the
32   punitive class definitions and that sort of

36

1    thing, is where it really comes down. So, if

2    -- If the court is to rule prior to the

3    class being certified, and that's a question

4    I have, is if I am to rule prior to the

5    class being certified based upon the current

6    definition proposed by the plaintiff, then I

7    have to consider whether or not the current

8    definition proposed by the plaintiff

9    includes or doesn't include the plaintiffs

10   in this case and, as such, whether or not

11   they would be members of the punitive class

12   and, therefore, the Stay should be

13   maintained, in my opinion, and lis pendens

14   would apply. If, however, that definition

15   doesn't include them, then we don't have an

16   identity of plaintiffs and, therefore, I

17   should probably lift the Stay and the case

18   should move forward over here as

19   consolidated actions.

20        The other remaining question, I guess,

21   on a side note, would be is it appropriate

22   for the court to wait for certification to

23   see how the court actually defines a class

24   before allowing these actions to move

25   forward because depending on how the court

26   ultimately defines the class we may be back

27   in a situation where the Stay should be

28   appropriate and these claims are held within

29   the class itself.

30        So, those are the issues I'm looking

31   at. Does the current class definition as

32   proposed by the court include the plaintiffs

37

1    such as there is an identify of plaintiffs
2    and the previous law cited by the court
3    applies, or is it appropriate or mandatory,
4    whatever word you want to use, for the court
5    to wait until class certification is
6    actually completed and then make a decision
7    as to whether or not the case should move
8    forward, because the definition of the class
9    is always fluid until such time as the judge
10   says this is the class. So those -- If y'all
11   want to brief those issues, those are the
12   ones I'm still considering. And those are
13   the ones that I'm still looking at. So
14   obviously the nuisance definition becomes
15   significant in that, because I think Mr.
16   Mims has suggested that's where the
17   plaintiffs who have personal injury claims
18   are going to be covered under the class
19   certification if it includes the current
20   definition or is, ultimately, defined as
21   proposed by the plaintiffs. So, yes. And if
22   you want a week to send me something, I
23   guess I technically won't take it under
24   advisement. Then what I'll do is I'll give
25   both parties a week to submit a brief on
26   those issues, which today is the 9th? Today
27   is the 9th of May. One week from today would
28   be the 16th of May. So yeah. If y'all both
29   want to submit something, you're not
30   required to, but if you want to submit
31   something by the 16th of May regarding those
32   issues, then I'll take that into

38

1          consideration before rendering a decision.
2          MR. NEWMAN:
3              May I ask for one clarification, if I
4          may?
5          THE COURT:
6              Sure.
7          MR. NEWMAN:
8              In our view, the <u>Aisola</u> res judicata
9          lis pendens issue it is not just an identity
10         of parties but adequacy of representation
11         which are related, but --
12         THE COURT:
13             Yes.
14         MR. NEWMAN:
15             Include that as well. Thank you.
16         THE COURT:
17             Feel free to include that in there as
18         well.
19         MR. NEWMAN:
20             Thank you.
21         MR. MIMS:
22             Your Honor, just to clarify my earlier
23         question about responsive pleadings, now
24         that you have just inherited a few cases, I
25         just want to clarify. We have not filed
26         responsive pleadings yet in some of those
27         later cases. I'm not just talking about
28         Addison. So, in the <u>Winningkof</u> and <u>Calligan</u>
29         and <u>Griffin</u> cases, we're going to have to
30         file exceptions of lis pendens or other
31         responsive pleadings. What we think would be
32         appropriate is that we get an extension to

39

```
1          file those until we get some guidance from
2          the court.
3          THE COURT:
4               Any objection to an informal -- Or, a
5          formal extension, I guess, Mr. Newman, until
6          such time as the court renders its decision
7          on this present Motion to Lift the Stay?
8          MR. NEWMAN:
9               Yes, Your Honor. In the event that the
10         court does not do so, that the lis pendens
11         issues and the subsequent "res" are the same
12         as here. I don't know why they need an
13         extension. It's the same briefing.
14         THE COURT:
15              Yeah. Well, I mean, I guess because
16         they would have to file those same pleadings
17         in each action, and it just seems to be a
18         bit cumbersome and expensive for no reason.
19         MR. NEWMAN:
20              But again, it prejudices to our
21         clients.
22         THE COURT:
23              I don't know that it prejudices your
24         clients. See, this is part of my problem
25         with ordering the consolidation prior to
26         resolving some of these issues.
27         MR. MIMS:
28              We're perfectly equipped to brief them
29         every time and show up every time, Your
30         Honor.
31         THE COURT:
32              I'm with you. You get paid by the hour.
```

40

1      MR. NEWMAN:

2          We're not, Your Honor.

3      THE COURT:

4          I'm trying to think of the best way to

5      handle that. So, at this point, I have

6      lifted the Stay for purposes of arguing the

7      Motion to Consolidate only. There was no

8      opposition to the Motion to Consolidate. I'm

9      in a little bit of a weird situation there,

10     Mr. Newman. If I find that there are

11     sufficient issues and everything to

12     consolidate, I don't guess that necessarily

13     means I'm finding sufficient issues that the

14     cases are also subject to class

15     certification, but, it's close. I'm just

16     thinking it through in the long term.

17          Alright, so let me do this, Mr. Mims.

18     Since I did grant the Stay temporarily and

19     order consolidation of the cases, all of

20     those cases are under my purview as of this

21     moment, as I appreciate it. So I am going to

22     grant an extension to the defendants to file

23     responsive pleadings until further orders of

24     the court, and further orders of the court

25     will come in my decision on this Motion as

26     to whether or not the Stay should be lifted.

27     So it's going to be a short extension of

28     time based upon my decision to lift the Stay

29     overall. I will also put instructions in

30     that order as to how the responsive

31     pleadings should be filed or, again, if I

32     grant the Stay, it won't be necessary.

41

```
 1          MR. MIMS:
 2               And that extension would apply to the
 3          six related cases that were the subject of
 4          the Motion to Consolidate.
 5          THE COURT:
 6               Everything that was consolidated is now
 7          under my purview, so I can make orders in
 8          those cases. So yes.
 9          MR. MIMS:
10               Thank you, Your Honor.
11          MR. NEWMAN:
12               Your Honor, thank you.
13          THE COURT:
14               Yes, sir.
15          MR. NEWMAN:
16               I'll have Mr. Foster translate it now.
17          THE COURT:
18               I'm not from Monroe, Mr. Foster, so
19          you're going to have to do your best to
20          translate Gretna. I don't know how that's
21          going to work.
22          MR. FOSTER:
23               There was a lot of translation between
24          Monroe and New Orleans, and in the old days
25          too, Judge.
26          MR. MOGHIS:
27               Your Honor? I'm sorry.
28          THE COURT:
29               Yes.
30          MR. MOGHIS:
31               Just because I want to make sure that
32          we do it right leaving here today. With
```

42

```
 1              respect to the Motion to Consolidate, can we
 2              submit an order on just that at this point?
 3              THE COURT:
 4                  I think you have to.
 5              MR. MOGHIS:
 6                  Yeah. I believe we have to attach it to
 7              the Motions to Transfer in the other
 8              divisions, correct?
 9              THE COURT:
10                  Yes. So, what has to happen is, I think
11              I have to order the consolidation, then they
12              have to agree to transfer it, is the way it
13              works. So they can't transfer to me unless I
14              say it's okay. So you've got to give me the
15              order saying it's okay to consolidate, and
16              then the orders by the other judges will
17              transfer them to me.
18              MR. MOGHIS:
19                  Understood. Thank you.
20              THE COURT:
21                  You will not get an opposition from
22              those other judges. That, I guarantee.
23
24
25     (Whereupon, these proceedings were concluded.)
26
27
```

43

**REPORTER'S PAGE**

   I, **GINA PATIN**, **Certified Court Reporter**, in and for the State of Louisiana, the officer, as defined in Rule 28 of the Federal Rules of Civil Procedure and/or Article 1434(b) of the Louisiana Code of Civil Procedure, before who this proceeding was taken, do hereby state on the Record:

   That due to the interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talkovers; that same is the proper method for a Court Reporter's transcription of proceeding, and that the dashes (--) do not indicate that words or phrases have been left out of this transcript;

   That any words and/or names which could not be verified through reference material have been denoted with the phrase "(spelled phonetically)."


**GINA PATIN, CCR, CDR, OCR**
Certified Court Reporter

44

## REPORTER'S CERTIFICATE

This certification is valid only for a transcript accompanied by my original signature and original required seal on this page.

I, **GINA PATIN**, **Certified Court Reporter**, Official Court Reporter in and for the State of Louisiana, employed as an Official Court Reporter by the Twenty-Fourth Judicial District Court, Parish of Jefferson, for the State of Louisiana, do hereby certify that this testimony was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding;

That the transcript has been prepared in compliance with transcript format guidelines required by statute, or by rules of the board, or by the Supreme Court of Louisiana;

That I am not of counsel, not related to counsel or to the parties herein, nor am I otherwise interested in the outcome of this matter.

Signed this _13_ day of _May_____,
2019.


_____
**GINA PATIN**
Certified Court Reporter

45

1307

Filed by: **Fax**

Date: _May 17, 2019_

Time: _11:46 AM_

Deputy Clerk: _____

(SEE ATTACHED LOG)

D7 1634

FILED FOR RECORD 05/22/2019 11:17:09
Jessica F. Matherne, DY CLERK
JEFFERSON PARISH, LA

D7  713
      634

## 24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

**NO. 790-369**                                            **DIVISION "J"**

### FREDERICK ADDISON, et. al.

### VERSUS

### LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

FILED: _____        _____
                                                          **DEPUTY CLERK**

### JUDGMENT ON DEFENDANT JEFFERSON PARISH'S MOTION TO TEMPORARILY LIFT STAY AND MOTION TO CONSOLIDATE AND ON PLAINTIFFS FREDERICK ADDISON ET. AL.'S MOTION TO PERMENANTLY LIFT STAY

**ON MAY 9, 2019,** hearing was held on Jefferson Parish's Motion to Temporarily Lift Stay and Motion to Consolidate, which was adopted by Waste Connections US, Inc and Plaintiffs Frederick Addison *et. al.*'s Motion to Permanently Lift Stay. Present at the hearing were:

MATTHEW D. MOGHIS, *counsel for Jefferson Parish*;

DAVID TAGGART, MICHAEL MIMS and MEGAN R. BRILLAULT, *counsel for Waste Connections US, Inc.*; and

BARRY S. NEUMAN, **C. Allen Foster**, **S. Eliza James**, Byron Forrest, and Nicholas Cressy *counsel for Plaintiffs*.

**CONSIDERING** the law, evidence, and argument of counsel, for the reasons orally assigned:

**IT IS ORDERED, ADJUDGED, AND DECREED** that Jefferson Parish's Motion to Temporarily Lift Stay and Motion to Consolidate be and is hereby GRANTED, consolidating and transferring the following matters to this Division with the above-titled matter:

1. *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 792-502
   Division "O"

2. *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-088
   Division "O"

**1 of 2**

1308

3.  *Mary Ann Winningkof, et al. v. Louisiana Regional Landfill Company, et al.*
    Docket No. 793-784
    Division "M"

4.  *Rickey Calligan, et al. v. Louisiana Regional Landfill Company, et al.*
    Docket No. 793-908
    Division "L"

5.  *Regenia Griffin, et al. v. Louisiana Regional Landfill Company, et al.*
    Docket No. 794-011
    Division "A"

    (collectively, the "Related Actions")

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, upon execution of this Judgment, Jefferson Parish will submit Motions to Transfer, attaching this Judgment, in the respective Divisions where each of the above-listed cases is currently pending.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the parties shall have until and including May 16, 2019 to submit post-hearing memoranda with respect to Plaintiffs' Motion to Permanently Lift Stay, after submission of which the Court will issue a ruling on Plaintiffs' Motion.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that all Defendants shall have an extension of time to file responsive pleadings in the Related Actions pending further instructions by this Court.

Gretna, Louisiana, this _22nd_ day of _May_, 2019.

_____
**JUDGE STEPHEN C. GREFER**

DT owes GOVT

**CONNICK AND CONNICK, L.L.C.**
**ATTORNEYS AT LAW**

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN

ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
BRENDAN P. CONNICK
ELIZABETH A. ZAVALA
LAURA M. BLOUIN
NOAH R. BORER

3421 NORTH CAUSEWAY BOULEVARD SUITE 408
METAIRIE, LOUISIANA 70002

TELEPHONE: (504) 838-8777
FACSIMILE: (504) 838-9903
WEBSITE: www.connicklaw.com

OF COUNSEL,

PAUL D. CONNICK, JR.

DIRECT DIAL: (504) 681-6658
EMAIL: moghis@connicklaw.com

May 28, 2019

CLERK OF COURT
24TH JUDICIAL DISTRICT COURT
200 Derbigny Street
Gretna, Louisiana 70053
Phone: (504) 364-2900
Fax:    (504) 364-3780

      Re:   *Addison, et al. v. Jefferson Parish, et al.*
          24th JDC, Case No. 790-369, Division "J"
          File No. 81.182829

Dear Sir/Madam:

    Attached please find Jefferson Parish's Motion and Incorporated Memorandum in Support to Temporarily Lift Stay and Consolidate, and Request for Expedited Hearing, which I ask that you file in connection with the above-captioned matter.

    Thanking you in advance for your cooperation, I remain

                 Sincerely,

                 CONNICK AND CONNICK, L.L.C.

                 MATTHEW D. MOGHIS

MDM/js
Attachment
cc: Thomas Sanderson/Honorable Stephen C. Grefer (thomass@24jdc.us)

**24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 790-369                                                      DIVISION "J"

**FREDERICK ADDISON, et. al.**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et. al.**

FILED: _____      _____

                                                    **DEPUTY CLERK**

<u>**MOTION AND INCORPORATED MEMORANDUM IN SUPPORT TO TEMPORARILY LIFT STAY AND CONSOLIDATE, AND REQUEST FOR EXPEDITED HEARING**</u>

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jefferson Parish, who submits this Motion and Incorporated Memorandum in Support to Temporarily Lift Stay and Consolidate, and Request for Expedited Hearing, and sets forth as follows:

**<u>CONSOLIDATION</u>**

Defendant, Jefferson Parish, moves this Court for an Order consolidating Case No. 795-404, *Mary Paul, et al. v. Louisiana Regional Landfill Company, et al.* ("*Paul*"), currently pending in Division "A" of the 24th Judicial District Court for the Parish of Jefferson with the above-titled matter.[1] This Court previously consolidated five (5) related lawsuits with the above-titled case, <u>all of which set forth virtually identical allegations as  the *Paul* matter.</u>[2] Curiously, <u>despite previously **consenting** to the consolidation of the five (5) other actions, Plaintiff counsel now opposes doing so with</u> *<u>Paul.</u>*[3]

As this Court is aware, consolidation was previously ordered in *Addison* with five (5) related lawsuits.[4] In each of those cases, a group of Plaintiffs filed suit for various

---

[1] Petition for Damages and Injunctive Relief, filed May 20, 2019, attached hereto and marked as "Exhibit A."

[2] Judgment on Motion to Temporarily Lift Stay and Motion to Consolidate, executed on May 22, 2019, attached hereto and marked as "Exhibit B."

[3] Email from Barry Neuman, dated May 28, 2019, attached hereto and marked as "Exhibit C."

[4] *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*, Docket No. 792-502, Division "O"; *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.*, Docket No. 793-088, Division "O"; *Mary Ann Winningkof, et al. v. Louisiana Regional Landfill Company, et al.*, Docket No. 793-784, Division "M"; *Rickey Calligan, et al. v. Louisiana Regional Landfill Company, et al.*, Docket No. 793-908,

damages allegedly caused by the "*failure of each of the Defendants to ensure that the design, operation, and maintenance of the Jefferson Parish Landfill complies with applicable environmental laws and adequately protects Petitioner's human health and environment.*"[5] This language is **identical** in *Addison*, all of the above-listed lawsuits, and *Paul*.[6]

In addition to the identical factual allegations, many of the Plaintiffs in *Paul* set forth claims arising out of the same residences as Plaintiffs in the already consolidated cases. For instance, Plaintiff in *Paul*, Frank McKnight, sets forth claims as the "owner of [...] 612 Hester Avenue, River Ridge, LA 70123."[7] This is the same address used by Gary and Rhonda Meyer in the *Addison* lawsuit.[8] These overlapping addresses permeate these lawsuits. It is readily apparent based on Plaintiffs' own pleadings that these lawsuits, including *Paul*, allege the same set of facts and are endlessly intertwined, making consolidation appropriate.

> "When two or more separate actions are pending in the same court, the section or division of the Court in which the first filed action is pending may order consolidation of the actions for trial after a contradictory hearing, and upon a finding **that common issues of fact and law predominate**[.]"[9]

All of the lawsuits mentioned above (1) name the same Defendants, (2) make the same factual allegations pertaining to allegations of odors emanating from the Jefferson Parish Landfill, and (3) seek the same damages. Undoubtedly, all of these lawsuits allege "common issues of fact and law," a point which Plaintiffs previously conceded.

Plaintiffs previously consented to consolidation of cases identical in all material respects to *Paul*. Despite filing a pleading titled as an "Opposition," Plaintiffs noted in both that pleading and during hearing that they "*do not oppose the Parish's Motion for Consolidation.*"[10] Instead, Plaintiff counsel took the opportunity to use the "Opposition" to continue to beg this Court to permanently lift the aforementioned stay. By that point,

---

Division "L"; and *Regenia Griffin, et al. v. Louisiana Regional Landfill Company, et al.*, Docket No. 794-011, Division "A."

[5] See also "Exhibit A," at introductory paragraph.

[6] Petition for Damages and Injunctive Relief, filed December 13, 2018, attached hereto and marked as "Exhibit D," at ¶ "Introduction."

[7] "Exhibit A," at Page 2.

[8] "Exhibit D," at Page 5.

[9] La. Code Civ. Proc. Ann. art. 1561(A).

[10] Plaintiff's Opposition to Motion of Defendant Jefferson Parish to Temporarily Lift Stay and to Consolidate, filed May 1, 2019, attached hereto and marked as "Exhibit E," at ¶ "Conclusion."

Plaintiffs had already lost that argument before this Court, before the Louisiana Fifth Circuit Court of Appeal, and filed another Motion raising the same issue. In other words, Plaintiffs used the guise of an "Opposition to Consolidation" to belabor an issue already ruled upon on numerous occasions.

There is no genuine reason to consolidate the other six (6) lawsuits and not *Paul*, and Plaintiffs' current position can only be viewed as a continued effort to abuse the procedural process. Plaintiff's counsel has provided no basis for his opposition here, other than that it is "neither required nor justified."[11] Accordingly, Defendant respectfully requests this Court issue an Order consolidating *Paul* with the above-titled matter.

## MOTION TO TEMPORARILY LIFT STAY

As this Court is aware, on December 13, 2018, counsel for *Addison* filed that lawsuit asserting various alleged damages relative to the Jefferson Parish Landfill. The *Addison* case was allotted to this Division (Docket No. 790-369). On January 24, 2019, hearings were held by this Court on Exceptions of Lis Pendens filed by Jefferson Parish and the Waste Connection Defendants. Those Exceptions were granted, and the Court signed the appropriate Judgment on February 6, 2019. As part of that Judgment, this matter (Docket No. 790-369) was ordered stayed pending the ruling by Judge Susie Morgan as to class certification in related class action matters, currently pending in United States District Court for the Eastern District of Louisiana.

Plaintiffs subsequently sought supervisory writ with the Louisiana Fifth Circuit, which was denied.

Jefferson Parish requests that the Stay Order currently in place be temporarily lifted for the limited purpose of allowing this Court to rule upon this Motion to Consolidate *Paul* with the above-captioned matter, only.

## REQUEST FOR EXPEDITED CONSIDERATION

Defendant also respectfully requests expedited consideration of this matter. Plaintiffs declined to enter into an agreement as it pertains to *Paul* consistent with this Court's prior ruling from May 22, 2019, allowing for an extension of the responsive

---

[11] "Exhibit C."

pleading deadline while consolidation is addressed (and potentially completed). Accordingly, given the upcoming responsive pleading deadline, Defendant respectfully requests expedited consideration of this matter. According to Court staff, June 10, 2019 at 9:00 AM is the first available hearing date.

**WHEREFORE**, Defendant, Jefferson Parish, respectfully requests this Court (1) temporarily lift the stay in this matter for the limited purpose of ruling on this Motion to Consolidate, only, (2) set an expedited hearing on this Motion to Consolidate, and (3) order that the *Paul* matter be consolidated with the above-titled matter.

Respectfully submitted,

**CONNICK AND CONNICK, LLC**

WILLIAM P. CONNICK, LA. BAR NO. 14158
MICHAEL S. FUTRELL, LA BAR. NO. 20819
MATTHEW D. MOGHIS, LA BAR. NO. 33994
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone:    (504) 681-6658
Facsimile:     (504) 838-9903
E-mail:        *moghis@connicklaw.com*

*Counsel for Defendant, Jefferson Parish*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all known counsel of record in this proceeding by:

( )    Hand Delivery              ( )    Prepaid U.S. Mail
(X)   Email                      ( )    Facsimile

New Orleans, Louisiana this 28th day of May, 2019.

MATTHEW D. MOGHIS

**4 of 5**

### 24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

### STATE OF LOUISIANA

**NO. 790-369**                                                                     **DIVISION "J"**

### FREDERICK ADDISON, et. al.

### VERSUS

### LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

**FILED:** _____        _____
                                                                    **DEPUTY CLERK**

### <u>RULE TO SHOW CAUSE</u>

**CONSIDERING** the Motion to Consolidate filed by Defendant, Jefferson Parish,

**IT IS ORDERED** that Plaintiffs show cause on the 10th day of June, 2019 at 9:00

AM why the Motion to Consolidate should not be granted, consolidating Case No. 795-

404, *Mary Paul, et al. v. Louisiana Regional Landfill Company, et al.*, currently pending

in Division "A" of the 24th Judicial District Court for the Parish of Jefferson, with the

above-captioned matter, *Frederick Addison, et al. v. Louisiana Regional Landfill*

*Company, et al.*, No. 790-369, Division "J."

Gretna, Louisiana, this _____ day of April, 2019.


_____
JUDGE STEPHEN C. GREFER


*SERVICE WILL BE MADE ON COUNSEL FOR PLAINTIFFS IN ACCORDANCE WITH LOUISIANA CODE*
*OF CIVIL PROCEDURE ARTICLE 1313.*

$11,132.00
835

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO.: 795-404                                    DIVISION: *A*

MARY PAUL; FRANK MCKNIGHT, in his individual capacity and as parent of his minor
children, ISABELLE MCKNIGHT and LILY GRACE MCKNIGHT; STACEY HOBBS, in
her individual capacity and as a parent of her minor children, TRINITY CLARK, AYSIA
CLARK, and MARIYAH CLARK; DANITRE ABBOTT, in her individual capacity and as
parent of her minor children COBY ABBOTT and CARTER LAWRENCE; JOHN
AUGILLARD, in his individual capacity and as parent of his minor children KESEAN
COUSIN and KEVON COUSIN; JOYCE AUGILLARD; KEISION WAYNE
AUGILLARD; KIERA AUGILLARD; KEION BARDELL, in his individual capacity and as
parent of his minor children, NATHANIEL BORSKEY, BRIANA GIBSON, and JORDAN
GIBSON; JOUVANDA BLAKE, in her individual capacity and as parent of her minor children
BRIANNA TAYLOR, BRANDON TAYLOR, and BRYAN BOSWELL,
JR.; DONNA BUTLER, in her individual capacity and as parent of her minor child, SCOREY
HOLMES; GINA CARTER, in her individual capacity and as parent of her minor children,
ISAHA DINET, JORDAN DINET, and KEDRICK MORGAN; LORENA CARTER;
JAMES CARTER; JARELL CARTER; BRIAN CHISHOLM; EDITH CHISHOLM;
ALICIA COLLINS; LLOYD DANIELS; TIFFANY DURANT, in her individual capacity
and as parent of her minor child MONROE GARDNER; NANCY JOHNSON; SEMAJ
JOHNSON; WILLIAM PARKER JOHNSON, III; JOSEPH CORNELL; KIARA
KEASLEY, in her individual capacity and as parent of her minor child, CURTIS JOHNSON;
JOYCE LEE; GENEVA LOCKETT; NORA LONDON; JAWON MCGEE; NATASHA
MCGLOTHEN; JANET MCKEEL; TYRONE MCKINLEY; MARIYA MERRICKS;
VINCENT MITCHELL; ADRIENNE GABRIEL MOILANEN; PHILLIP MONROE;
ESSENCE MORGAN, in her individual capacity and as parent of her minor children,
LON'DYN BURNS and LEI'LONNI BURNS; DELLA MOSLEY; EDNA REED; JOSEPH
RIDGLEY; MARION RIDGLEY; DEBORAH SAVAGE, in her individual capacity and as
legal guardian of DEBORAH COLLINS and CHARLIE BROWN; LARRY SAVAGE;
ROLAND SCHIPPLEIN;  ANDREW SECTION; JOYCE SIMON; LATOYA
SINGLETON; CLARENCE SMITH; LASHANDRA SMITH, in her individual capacity and
as a parent of her minor children, CHRISTIAN EVANS, JAQUAN EVANS, KAJON SMITH,
and NAJAE SMITH; LEROY SMITH; RAYFIELD SMITH; MYKELL STEWARD;
RHONDA STEWARD, in her individual capacity and as parent of her minor child, MARKEZ
WHITE; MARY SUMMERALL; VICTORIA SYLVE; BRIAN WALKER, JR.; BRIAN
WALKER, III; MELANIE WARD, ANNIE WASHINGTON; GREANNA
WASHINGTON; EMMA WHITE; and LLOYD WHITE, JR..

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL
CORPORATION; WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE
WASTE SOLUTIONS OF LA, INC; WASTE CONNECTIONS US, INC; APTIM CORP;
PARISH OF JEFFERSON; ABC CORP; DEF CORP; GHI CORP; JKL CORP; and
MNO CORP.

FILED:_____

                                            _____
                                            DEPUTY CLERK

_____

PETITION FOR DAMAGES AND INJUNCTIVE RELIEF

128
pd

1

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA  JAMES


EXHIBIT
A

This action arises from the continuing, significant and unabated harm suffered by each of the named Petitioners as a result of the ongoing – and admitted – failure of each of the Defendants to ensure that the design, operation and maintenance of the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable environmental laws and adequately protects Petitioners' human health and environment. At all relevant times, the J.P. Landfill and has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.

These unlawful, harmful and toxic releases have caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things: difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience. These emissions also have caused diminution in the value of Petitioners' homes.

Accordingly, Petitioners seek redress from the Defendants for the direct and consequential injury and damage they have suffered and will continue to suffer as a direct result of the releases of noxious odors and chemicals from the J.P. Landfill.

Petitioners are:

**MARY PAUL,** an individual of full age of majority residing at 717 Richard Ave., River Ridge, LA 70123 and owner of said immovable property.

**FRANK MCKNIGHT,** an individual of full age of majority residing at 612 Hester Ave., River Ridge, LA 70123 and owner of said immovable property, in his individual capacity and as parent of his minor children, **ISABELLE MCKNIGHT** and **LILY GRACE MCKNIGHT.**

**STACEY HOBBS,** an individual of full age of majority residing at 1324 Hickory Ave., Harahan, LA 70123 and owner of a leasehold interest in said premises, in her individual capacity and as a parent of her minor children, **TRINITY CLARK, AYSIA CLARK,** and **MARIYAH CLARK.**

**DANITRE ABBOTT,** an individual of full age of majority residing at 3120 Phoenix St., Apt. C, Kenner, LA 70062 and owner of a leasehold interest in said premises, in her individual capacity and as parent of her minor children, **COBY ABBOTT** and **CARTER LAWRENCE.**

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA  JAMES

2

**JOHN AUGILLARD,** an individual of full age of majority residing at 209 N Sibley St., Metairie, LA 70003 and owner of said immovable property, in his individual capacity and as parent of his minor children, **KESEAN COUSIN** and **KEVON COUSIN.**

**JOYCE AUGILLARD,** an individual of full age of majority residing at an individual of full age of majority residing at 209 N Sibley St., Metairie, LA 70003 and owner of said immovable property.

**KEISION WAYNE AUGILLARD,** an individual of full age of majority residing at an individual of full age of majority residing at 209 N Sibley St Metairie, LA 70003.

**KIERA AUGILLARD,** an individual of full age of majority residing at an individual of full age of majority residing at 209 N Sibley St Metairie, LA 70003.

**KEION BARDELL,** an individual of full age of majority residing at 44 Megehee Ct., Waggaman, LA 70094 and owner of a leasehold interest in said premises, in his individual capacity and as parent of his minor children, **NATHANIEL BORSKEY, BRIANA GIBSON,** and **JORDAN GIBSON.**

**JOUVANDA BLAKE,** an individual of full age of majority residing at 839 Lander St., Bridge City, LA 70094 and owner of a leasehold interest in said premises, in her individual capacity and as parent behalf of her minor children, **BRIANNA TAYLOR, BRANDON TAYLOR,** and **BRYAN BLAKE.**

**DANNY BOSWELL, JR.,** an individual of full age of majority residing at 213 Rosebud St., Apt. B Metairie, LA 70005 and owner of a leasehold interest in said premises.

**DONNA BUTLER,** an individual of full age of majority residing at 328 South Upland Ave., River Ridge, LA. 70123 and owner of said immovable property, in her individual capacity and as parent of her minor child, **SCOREY HOLMES.**

**GINA CARTER,** an individual of full age of majority residing at 6624 Benedict Dr, Marrero, LA 70072 in her individual capacity and on behalf of her minor children, **ISAHA DINET, JORDAN DINET,** and **KEDRICK MORGAN.**

**JAMES CARTER,** an individual of full age of majority residing at 6624 Benedict Dr., Marrero, LA 70072.

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

3

**JARELL CARTER,** an individual of full age of majority residing at 80 Clifford Ct., Waggaman, LA 70094 and owner of a leasehold interest in said premises.

**LORENA CARTER,** an individual of full age of majority residing at 6624 Benedict Dr,, Marrero, LA 70072.

**BRIAN CHISHOLM,** an individual of full age of majority residing at 334 Providence Lane, Kenner, LA 70062.

**EDITH CHISHOLM,** an individual of full age of majority residing at 334 Providence Lane, Kenner, LA 70062.

**ALICIA COLLINS,** an individual of full age of majority residing at 934 Belleville St., Algiers, LA 70114 and owner of a leasehold interest in said premises.

**LLOYD DANIELS,** an individual of full age of majority residing at 228 Della Lane, Avondale, LA 70094.

**TIFFANY DURANT,** an individual of full age of majority residing at 231 5th St., Bridge City, LA 70094 and owner of said premises, in her individual capacity and on behalf of her minor child, **MONROE GARDNER.**

**NANCY JOHNSON,** an individual of full age of majority residing at 712 Starrett Rd., River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**SEMAJ JOHNSON,** an individual of full age of majority residing at 112 Marie Drive, Avondale, LA 70094.

**WILLIAM PARKER JOHNSON, III,** an individual of full age of majority residing at 341 Providence Lane, Apt. A, Kenner, LA 70062 and owner of a leasehold interest in said premises.

**JOSEPH CORNELL,** an individual of full age of majority residing at 1005 S. Bengal Rd., Metairie, LA 70003 and owner of said immovable property.

**KIARA KEASLEY,** an individual of full age of majority residing at 1324 S. Dilton St., Metairie, LA 70003, in her individual capacity and as parent of her minor child, **CURTIS JOHNSON.**

**JOYCE LEE,** an individual of full age of majority residing at 521 S. Bengal St., River Ridge, LA 70123 and owner of said immovable property.

4

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA JAMES

**GENEVA LOCKETT,** an individual of full age of majority residing at 863 Reverend Richard Wilson Drive, Apt 7E, Kenner, LA 70062.

**NORA LONDON,** an individual of full age of majority residing at 7928 Macon St., Metairie, LA 70003 and owner of said immovable property.

**JAWON MCGEE,** an individual of full age of majority residing at 18 Sharen Place, Westwego, LA 70094.

**NATASHA MCGLOTHEN,** an individual of full age of majority residing at 1305 Lincoln Ave., Marrero, LA 70072 and owner of a leasehold interest in said premises.

**JANET MCKEEL,** an individual of full age of majority residing at 537 George St., Avondale, LA 70094.

**TYRONE MCKINLEY,** an individual of full age of majority residing at 18 Sharen Place, Westwego, LA 70094 and owner a leasehold interest in said premises.

**MARIYA MERRICKS,** an individual of full age of majority residing at 10950 Jefferson Hwy., Apt S5, River Ridge, LA 70123.

**VINCENT MITCHELL,** an individual of full age of majority residing at 11104 Newton St., Apt C, River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**ADRIENNE GABRIEL MOILANEN,** an individual of full age of majority residing at 512 Avondale Garden Road, Avondale, LA 70094.

**PHILLIP MONROE,** an individual of full age of majority residing at 124 Prairie View Court, Avondale, LA 70094 and owner of said immovable property.

**ESSENCE MORGAN,** an individual of full age of majority residing at 318 Pollock Place, Kenner, LA 70062, in her individual capacity and as parent of her minor children, **LON'DYN BURNS** and **LEI'LONNI BURNS.**

**DELLA MOSLEY,** an individual of full age of majority residing at 627 1/2 Webster St., Apt B, Kenner, LA 70062 and owner of a leasehold interest in said premises.

**EDNA REED,** an individual of full age of majority residing at 509 George Street, Avondale, LA 70094 and owner of said immovable property.

**JOSEPH RIDGLEY,** an individual of full age of majority residing at 516 South Cumberland St., River Ridge, LA 70123 and owner of a leasehold interest in said premises.

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA JAMES

5

**MARION RIDGLEY,** an individual of full age of majority residing at 1457 S Laurel St., Metairie, LA 70003.

**DEBORAH SAVAGE,** an individual of full age of majority residing at 21 Richelle St., Westwego, LA 70094 and owner of a leasehold interest in said premises, in her individual capacity and as legal guardian of **DEBORAH COLLINS** and **CHARLIE BROWN.**

**LARRY SAVAGE,** an individual of full age of majority residing at 21 Richelle St., Westwego, LA 70094 and owner of a leasehold interest in said premises.

**ROLAND SCHIPPLEIN,** an individual of full age of majority residing at 256 Azalea St., Waggaman, LA 70094 and owner of said immovable property.

**ANDREW SECTION,** an individual of full age of majority residing at 537 George St., Avondale, LA 70094 and owner of said immovable property.

**JOYCE SIMON,** an individual of full age of majority residing at 859 Rev. Richard Wilson Dr., Apt. 9A, Kenner, LA 70062 and owner of a leasehold interest in said premises.

**LATOYA SINGLETON,** an individual of full age of majority residing at 124 Dillard Dr., Avondale, LA 70094.

**CLARENCE SMITH,** an individual of full age of majority residing at 226 Coleman Place, Kenner, LA 70062 and owner of a leasehold interest in said premises.

**LASHANDRA SMITH,** an individual of full age of majority residing at 317 Church St. Avondale, LA 70094 in her individual capacity and as a parent of her minor children, **CHRISTIAN EVANS, JAQUAN EVANS, KAJON SMITH,** and **NAJAE SMITH.**

**LEROY SMITH,** an individual of full age of majority residing at 10950 Jefferson Highway, Apt Y10, River Ridge, LA 70123 and owner of a leasehold interest in said immovable property.

**RAYFIELD SMITH,** an individual of full age of majority residing at 1224 Webster Street Kenner, LA 70062 and owner of said immovable property.

**MYKELL STEWARD,** an individual of full age of majority residing at 18 Sharen Place, Westwego, LA 70094.

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA JAMES

6

**RHONDA STEWARD,** an individual of full age of majority residing at 18 Sharen Place, Westwego, LA 70094 owner a leasehold interest in said premises, in her individual capacity and as parent of her minor child, **MARKEZ WHITE.**

**MARY SUMMERALL,** an individual of full age of majority residing at 1100 Newton St., Apt. A, River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**VICTORIA SYLVE,** an individual of full age of majority residing at 261 Capitol Dr., Avondale, LA 70084.

**BRIAN WALKER, JR.,** an individual of full age of majority residing at 328 S. Upland Ave., River Ridge LA. 70123.

**BRIAN WALKER, III,** an individual of full age of majority residing at 328 S. Upland Ave., River Ridge, LA 70123.

**MELANIE WARD,** an individual of full age of majority residing at 116 Rosalie Dr., Avondale, LA 70094 and owner of a leasehold interest in said premises.

**ANNIE WASHINGTON,** an individual of full age of majority residing at 1320 S. Meadow St., Metairie, LA 70003 and owner of a leasehold interest in said premises.

**GREANNA WASHINGTON,** an individual of full age of majority residing at 1320 S. Meadow Street, Metairie, LA 70003 and owner of a leasehold interest in said premises.

**EMMA WHITE,** an individual of full age of majority residing at 11036 Newton St., Apt A, River Ridge, LA 70123 and owner of a leasehold interest in said premises.

**LLOYD WHITE, JR.,** an individual of full age of majority residing at 444 Liska St., Waggaman, LA 70094 and owner of said immovable property.

## I.

Made Defendants herein are:

a. **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION (IESI"),** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State. On information and belief, LRLC is a wholly owned subsidiary of Defendant Waste Connections Bayou, Inc., Inc., which in turn was acquired by Defendant Waste Connections US, Inc. On information and belief, Defendant LRLC is controlled by Defendants Waste Connections Bayou,

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA  JAMES

Inc., and/or Waste Connections, US, Inc., and is the "alter ego" of those Defendants, operating without autonomy and only pursuant to the direction, policies and procedures of its parent corporations;

b. **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized to do and doing business in this Parish and State;

c. **WASTE CONNECTIONS US, INC.,** a foreign corporation authorized to do and doing business in this Parish and State; and

d. **APTIM CORP.,** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State;

e. **PARISH OF JEFFERSON,** a Louisiana municipal parish in and political subdivision of the State of Louisiana (the "Parish";

f. **ABC CORPORATION,** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), F/K/A IESI LA LANDFILL CORPORATION ("IESI"),** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

g. **DEF CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

h. **GHI CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

8

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

i. **JKL CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **APTIM CORP**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

j. **MNO CORPORATIONS** foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **PARISH OF JEFFERSON**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein.

## II.

### JURISDICTION AND VENUE

Venue is proper in accordance with La. R.S. 13:5104(B), which states, in part, that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." Venue is further proper as to all other defendants as the wrongful conduct giving rise to the Petitioner's claims occurred within the jurisdictional limits of Jefferson Parish, State of Louisiana.

## III.

### FACTS

The Parish is the owner of the Jefferson Parish Landfill (the "J.P. Landfill"), located at 5800 Highway 90 West in Avondale, Jefferson Parish, LA.

## IV.

At all relevant times, the J.P. Landfill has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.* (the "Act") as well as federal laws and regulations implemented by the United States Environmental Protection Agency ("USEPA").

## V.

9

The J.P. Landfill is authorized to operate pursuant to and only in accordance with the terms and conditions of, among other things, Standard Permit P-0297R1(the "Standard Permit") as issued, approved, and subject to periodic review and renewal by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to the Act. The Standard Permit was most recently renewed by the LDEQ on or about January 22, 2010.

## VI.

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the J.P. Landfill (the "IESI Operating Contract"). Among other things, the IESI Operating Contract provides that:

(a) Operation of the J.P. Landfill will be conducted "in strict compliance and conformity with all Federal, State and local laws, ordinances, and regulations, including the rules and regulations of the USEPA, LDEQ, and all State of Louisiana agencies, and in accordance with the Permit Documents."

(b) "IESI shall be responsible for compliance with all Federal, State and local regulations, laws and ordinances in its performance of the Service/Work associated with the operation [and maintenance] of the Landfill."

(c) IESI is required to "provide all labor, equipment, materials and incidentals to assume all daily operations of the Landfill."

(d) The Parish Engineer has the authority to "decide any and all questions as to...the manner of performance and rate of progress of the Services/Work...the interpretation of the Contract Documents, and all questions as to the acceptable Completion" of the Contract "in his reasonable and good faith opinion." The Parish Engineer is further authorized to "suspend operations at any time when the Service/Work, in his good faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits."

## VII.

Defendant APTIM is and at all relevant times has been a co-operator of the gas and leachate collection system of the J.P. Landfill.

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

## VIII.

Jefferson Parish, in addition to being an owner of the J.P. Landfill, is and at all relevant times has been a co-manager and co-operator of the J.P. Landfill with IESI/LRLP and APTIM.

## IX.

The Parish has admitted that improper operation of the J.P. Landfill is a major source of the odors suffered by Petitioners as well as the adverse consequences thereof.  At a public press conference on July 23, 2018, Parish President Mike Yenni stated that:

    (a) The J.P. Landfill's system designed to "contain and deodorize landfill gases" has not been in "proper working order."

    (b) The landfill's leachate collection system has not been operated properly.

    (c) "Properly operated landfills do not operate persistent off-site odors and corrective actions…are essential."

    (d) The Parish has notified IESI that it is in breach of its contract to properly operate the J.P. Landfill.

## X.

At the same press conference, Parish Sheriff Mark Conley stated that the J.P. Landfill gas collection system has been collecting only twenty percent (20%) of the gas emitted from landfill operations, whereas a properly operating system would collect ninety-seven to ninety-eight percent of gas emissions, "[s]o that is why the Parish president is stressing that we realize we have problems…right now, a lot of our priority, in the name of public safety and our police powers, is to address the existing system, get it operational, and to pull as much gas out of that landfill as we can."

## XI.

At the same press conference, Parish Councilman Paul Johnson stated that the odor from the J.P. Landfill

"has gotten really bad in the past for our five months…we are all going to experience odors from the landfill because it's a landfill.  But, not those we have been having for the past three or five months.  It's been really bad.  I have been woken up at night with my nose burning and couldn't breathe at three or four o'clock in the morning.  This has happened

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

11

to me more than one time...we know the landfill is causing problems and we know it is a big source of problems...."

## XII.

At the same press conference, Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to, leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[1]]

## XIII.

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which, among other things, found that the Parish has violated its Landfill Permit and applicable environmental regulations by (i) failing to provide daily cover and (ii) failing to properly operate the system that is intended to collect leachate – the liquid brew that drains from a landfill and carries with it numerous harmful chemicals.

## XIV.

The LDEQ inspectors found areas of pooled leachate and leachate flowing downhill from the pooled leachate.

## XV.

The United States Environmental Protection Agency ("EPA") has established general screening levels for various pollutants.   These screening levels are chemical-specific concentrations for individual contaminants in air that may warrant further investigation or site cleanup.[2]  A chronic screening level addresses potential chronic exposure to a chemical.

## XVI.

Air samples collected by the LDEQ in the communities of River Ridge, Harahan and Waggaman between July 20, 2018 through approximately July 28, 2018 were found to contain numerous chemical compounds at concentrations that exceed EPA's chronic screening levels,

---

[1] A video recording of the July 23 press conference can be accessed at
https://www.facebook.com/NOLAnews/videos/10155793116437060/ (last visited Aug. 4, 2018).
[2] https://www.epa.gov/risk/regional-screening-levels-rsls-users-guide (last visited, Nov. 21, 2018).

12

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA  JAMES

including acrolein, 1, 2-dichloroethane, benzene, carbon tetrachloride, and naphthalene. All of these compounds are multimodal toxicants, in that they are potential or actual human carcinogens and also have other toxic effects. The air samples collected by LDEQ also contained hydrogen sulfide at concentrations that exceed EPA's chronic screening levels. Hydrogen sulfide is a potentially toxic compound. All of these compounds are typically found in the gases generated by landfills like the Jefferson Parish Landfill.

## XVII.

In a report dated August 15, 2018, prepared for the Parish by its environmental consultant, Carson Environmental Consulting ("CEC"), CEC made several findings, including, among other things, that there are numerous deficiencies in "the landfill gas condensate and leachate collection pumping systems[,]" and that the infrastructure for these systems requires immediate improvement "to meet the Parish's performance objectives." In addition, CEC concluded that improved operation and maintenance of the J.P. Landfill requires the Parish's "focused attention."

## XX.

On information and belief, on or about December 5, 2018 the Commissioner of the LDEQ informed the Parish that there is "no doubt" in his mind that the JP Landfill is the primary source the odors experienced by residents of the communities in which Petitioners reside.

## XXI.

On information and belief, Defendant ABC Corporation has issued a policy of insurance to Defendant Louisiana Regional Landfill Company that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify ABC Corporation once its identity is known.

## XXII.

On information and belief, Defendant DEF Corporation has issued a policy of insurance to Defendant Waste Connections Bayou, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify DEF Corporation once its identity is known.

## XXIII.

On information and belief, Defendant GHI Corporation has issued a policy of insurance to Defendant Waste Connections US, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify GHI Corporation once its identity is known.

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

13

## XXIV.

On information and belief, Defendant JKL Corporation has issued a policy of insurance to Defendant Aptim Corporation that covers the acts and omissions alleged herein.  Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## XXV.

On information and belief, Defendant MNO Corporation has issued a policy of insurance to Defendant Parish of Jefferson that covers the acts and omissions alleged herein.  Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## XXVI.

### PROXIMATE CAUSE AND BAD ACTS

The Defendants' failure to properly design, operate and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals.

## XXVII.

These odors and chemicals have also caused these Petitioners to suffer physical and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness, loss of appetite, fatigue and lethargy, as well as fear, anguish, anxiety and mental pain and suffering.

## XXVIII.

Defendants' actions and omissions with respect to the design, operation and maintenance of the J.P. Landfill are the direct and proximate cause of the injuries and harm suffered by each of the Petitioners as alleged above.

## XXVIX.

Defendants' actions and omissions as outlined above also have caused a diminution in the value of Petitioners' immovable property.

## XXX.

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

14

These odors have been pervasive and persistent. They have continued to the present and are likely to continue for the foreseeable future. The emissions constitute a continuing tort.

### XXXI.

Defendants' acts and omissions in owning, designing, operating and/or maintaining the J.P. Landfill as described above constitute an unreasonable interference with each of the Petitioners' comfortable use and enjoyment of their homes.

### XXXII.

Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.

### XXXIII.

These physical invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, loss of enjoyment of property, as well as fear, anguish and mental pain and suffering.

### XXXV.

The emissions of these harmful odors and chemicals have been pervasive and persistent and constitute a continuing tort.

### XXXVI.

The Defendants' illegal actions and omissions in owning and operating the J.P. Landfill continue to this day and, unless enjoined by this Court, will continue for the indefinite future. Accordingly, Petitioners are entitled to a permanent injunction ordering the Defendants to abate the continuing nuisance and cease the trespasses caused and created by the J.P. Landfill, including the emission of noxious odors and chemicals, and to take all necessary reasonable actions required to accomplish same.

### XXXVII.

Each of the Defendants had a duty to Petitioners to exercise reasonable care in the design, ownership and/or operation of the Landfills, including without limitation the duty to comply with applicable environmental laws and regulations and otherwise to ensure that the Landfills were

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

15

operated in a manner that does not jeopardize their health, immovable property, environment, and quality of life.

## XXXVIII.

Each of the Defendants breached such duties of care to the Petitioners by, among other things:

i.   Failing to properly design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods;

ii.  Failing to take careful and prudent precautionary measures to ensure that these releases would not occur;

iii. Failing to design, operate and maintain the J.P. Landfill in a manner that does not cause harm to others and, in particular, its neighbors;

iv.  Failing to comply with applicable regulations governing the design, operation and maintenance of the J.P. Landfill;

v.   Being inattentive and careless in the overall design, operation and maintenance of the J.P. Landfill;

vi.  Failing to remediate and repair the failures in design, operation and maintenance of the J.P. Landfill as they became known to the Defendants;

vii. Any and all other acts of negligence which may be revealed between now and the time of trial.

## XXXIX.

The Defendants' failure to comply with their duties of care to the Petitioners were and are a cause in fact and a legal cause of Petitioners' injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their immovable property and diminution in the value of said property.

## XL.

The Parish's ownership and operation of the J.P. Landfill has caused substantial damage to the value of Petitioners' respective interests in their immovable property.

16

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

### XLI.

The Parish knew, or in the exercise of reasonable care, should have known, that its failure to properly design, operate and maintain the J.P. Landfill would cause damage to Petitioners, and such damage could have been prevented by the exercise of reasonable care. The Parish, as owner of the J.P. Landfill, failed to exercise such reasonable care.

### XLII.

In committing the acts and omissions described above, the Defendants have breached their contractual obligations, of which Petitioners are third party beneficiaries, arising under the contracts between the Parish and all other Defendants herein pertaining to the design, operation and maintenance of the J.P. Landfill.

### XLIII.

In committing the foregoing acts and omissions, Defendants have violated, *inter alia*, Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continues to cause each of the Petitioners damages including nuisance damages; physical harm and mental fear, anguish, pain and suffering; and diminution in property value.

### XLIV.

Further, Petitioners' interest is their immovable property is a property right protected by the Louisiana Constitution.

### XLV.

Petitioners' interest in their real property has been taken and damaged by the actions of Jefferson Parish as set forth above.

### XLVI.

Such taking and damage was for a public purpose – to wit, the operation of a public landfill for the purpose of handling and disposing of waste generated by the citizens of Jefferson Parish and others.

### XLVII.

The Parish is liable to the Petitioners for damages caused by the Parish's unconstitutional taking of their immovable property without paying just compensation pursuant to Article I, Section 4(B) of the Louisiana Constitution.

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA  JAMES

17

### XLVIII.

The Parish's taking of Petitioners' property without just compensation constitutions a deprivation of their property without due process of law pursuant to Article I, Section 2 of the Louisiana Constitution.

### XLIX.

The Parish is liable to the Petitioners for damages caused by the Parish's violation of Petitioners' due process rights.

### L.

### REQUEST FOR TRIAL BY JURY

**PETITIONERS REQUEST A JURY TRIAL AS TO ALL CLAIMS TRIABLE BY JURY.**

### LI.

### PRAYER FOR RELIEF

**WHEREFORE,** Petitioners pray that:

(a) Judgment be entered declaring each of the Defendants jointly, severally and *in solido* liable to each of the Petitioners for all damages (and awarding all such damages), including physical and bodily harm, loss of use and enjoyment of their homes, diminution in property value, lost wages, medical expenses and mental pain and suffering;

(b) Judgment be entered against the Parish declaring it liable for inverse condemnation, and awarding to each of the Petitioners just compensation for the unconstitutional taking of their interests in real property and/or a deprivation of due process;

(c) Judgment be entered against all Defendants for all additional damages as are just and reasonable under the circumstances, including but not limited to the cost of alternative housing and medical testing;

(d) The Defendants be permanently enjoined and ordered to abate the nuisances and trespasses, and to take all reasonable and necessary measures to cease the harmful emissions from the J.P. Landfill.

18

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA JAMES

(e) The Defendants be required to provide medical monitoring for all Petitioners as appropriate;

(f) Prejudgment and post-judgment interest on all damages be awarded;

(g) Petitioners be awarded all costs for prosecution of this action and attorney fees;

(h) Damages be awarded for all other injuries that may be proved at trial; and

(i) This Court award such other and further relief as it may deem just and proper.

**Respectfully submitted,**

FORREST CRESSEY & JAMES, LLC

/s/ S. Eliza James

_____
Byron Forrest (La. Bar No. 35481)
Nicholas Cressey (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Byron@fcjlaw.com
Eliza@fcjlaw.com
Tele: 504.605.0777
Fax:  504.322.3884

OF COUNSEL:
Barry S. Neuman (*Pro Hac Vice* application
to be submitted)
Erik Bolog
C. Allen Foster
Adrian Sneed
WHITEFORD TAYLOR PRESTON, LLP
1800 M Street, NW
Suite 450N
Washington, DC 20036
(202) 659-6800

**(SERVICE INSTRUCTIONS ON FOLLOWING PAGE.)**

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

19

**PLEASE SERVE:**

**LOUISIANA REGIONAL LANDFILL COMPANY**
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**WASTE CONNECTIONS BAYOU, INC.**
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**WASTE CONNECTIONS US, INC.**
Through its Agent for Service
Via long arm through its Agent
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**APTIM CORP.**
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**PARISH OF JEFFERSON**
Through its Agent for Service
Parish Attorney for the Parish of Jefferson
1221 Elmwood Park Blvd., Suite 701
Jefferson, LA 70123

**ABC CORP.**
*Address unknown at this time.*

**DEF CORP.**
*Address unknown at this time.*

**GHI CORP.**
*Address unknown at this time.*

**JKL CORP.**
*Address unknown at this time.*

**MNO CORP.**
*Address unknown at this time.*

24th E-Filed: 05/20/2019 13:13:14 Case: 795404 Div:A Atty:035182 S ELIZA   JAMES

Filed by: **Fax**
Date: _May 17, 2019_
Time: _11:49 AM_
Deputy Clerk: _Jene Jackson_
(SEE ATTACHED LOG)

D7 1034

FILED FOR RECORD 05/22/2019 11:17:09
Jessica F. Matherne, DY CLERK
JEFFERSON PARISH, LA

D7 713
1034

## 24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

**NO. 790-369**                                                          **DIVISION "J"**

### FREDERICK ADDISON, et. al.

### VERSUS

### LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

FILED: _____          _____
                                                                   **DEPUTY CLERK**

### JUDGMENT ON DEFENDANT JEFFERSON PARISH'S MOTION TO TEMPORARILY LIFT STAY AND MOTION TO CONSOLIDATE AND ON PLAINTIFFS FREDERICK ADDISON ET. AL.'S MOTION TO PERMENANTLY LIFT STAY

**ON MAY 9, 2019,** hearing was held on Jefferson Parish's Motion to Temporarily

Lift Stay and Motion to Consolidate, which was adopted by Waste Connections US, Inc

and Plaintiffs Frederick Addison *et. al.*'s Motion to Permanently Lift Stay. Present at the

hearing were:

MATTHEW D. MOGHIS, *counsel for Jefferson Parish*;

DAVID TAGGART, MICHAEL MIMS and MEGAN R. BRILLAULT, *counsel for Waste Connections US, Inc.*; and

BARRY S. NEUMAN, C. ALLEN FOSTER, S. ELIZA JAMES, Byron Forrest, and Nicholas Cressy *counsel for Plaintiffs.*

**CONSIDERING** the law, evidence, and argument of counsel, for the reasons orally

assigned:

**IT IS ORDERED, ADJUDGED, AND DECREED** that Jefferson Parish's Motion to

Temporarily Lift Stay and Motion to Consolidate be and is hereby GRANTED,

consolidating and transferring the following matters to this Division with the above-titled

matter:

1. *Charles Anderson, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 792-502
   Division "O"

2. *Michael Brunet, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-088
   Division "O"

**1 of 2**

1336

EXHIBIT
**B**

3. *Mary Ann Winningkof, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-784
   Division "M"

4. *Rickey Calligan, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 793-908
   Division "L"

5. *Regenia Griffin, et al. v. Louisiana Regional Landfill Company, et al.*
   Docket No. 794-011
   Division "A"

(collectively, the "Related Actions")

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, upon execution of this Judgment, Jefferson Parish will submit Motions to Transfer, attaching this Judgment, in the respective Divisions where each of the above-listed cases is currently pending.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the parties shall have until and including May 16, 2019 to submit post-hearing memoranda with respect to Plaintiffs' Motion to Permanently Lift Stay, after submission of which the Court will issue a ruling on Plaintiffs' Motion.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that all Defendants shall have an extension of time to file responsive pleadings in the Related Actions pending further instructions by this Court.

Gretna, Louisiana, this _22nd_ day of _May_____, 2019.

_____
JUDGE STEPHEN C. GREFER

DT owes GOVT

**2 of 2**

**Matthew Moghis**

| | |
|---|---|
| **From:** | Neuman, Barry S. <BNeuman@wtplaw.com> |
| **Sent:** | Tuesday, May 28, 2019 11:51 AM |
| **To:** | Matthew Moghis; Eliza James |
| **Subject:** | RE: Consolidation of Paul Case (Addison) |

It is neither required nor justified.

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:   202.327.6151

**From:** Matthew Moghis <moghis@connicklaw.com>
**Sent:** Tuesday, May 28, 2019 12:36 PM
**To:** Neuman, Barry S. <BNeuman@wtplaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** [EXTERNAL] RE: Consolidation of Paul Case (Addison)

May I ask on what basis?

**From:** Neuman, Barry S. <BNeuman@wtplaw.com>
**Sent:** Tuesday, May 28, 2019 11:35 AM
**To:** Matthew Moghis <moghis@connicklaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** RE: Consolidation of Paul Case (Addison)

Matt – Plaintiffs do not consent to, and will oppose, transfer and consolidation of the *Paul* lawsuit.

Thank you for your inquiry.

Best regards,

Barry.

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:   202.327.6151

**From:** Matthew Moghis <moghis@connicklaw.com>
**Sent:** Tuesday, May 28, 2019 12:14 PM

1



EXHIBIT
C

**To:** Neuman, Barry S. <BNeuman@wtplaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** [EXTERNAL] Consolidation of Paul Case (Addison)

Barry and Eliza,

I tried to call you both this morning, but was unable to reach either of you. On the new *Paul* lawsuit, do you all consent to consolidation with the others in *Addison*/Division "J"? If so, we can prepare an Unopposed Motion to Consolidate to file with Judge Grefer, and then a Motion to Transfer once that Order is signed by Judge Grefer. Please let us know.

Additionally, while we are waiting for all of the transfers and consolidation to be completed, will you all agree to the ruling in *Addison* regarding the extension of time until further instructions by the Court being applicable to *Paul*?

Please let us know your response.

Thank you,

MATTHEW D. MOGHIS
CONNICK AND CONNICK, L.L.C.
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana  70002
Telephone:  (504) 681-6658
Facsimile:  (504) 838-9903
E-mail:     moghis@connicklaw.com
Website:    www.connicklaw.com [connicklaw.com]

This e-mail transmission and any attachments it may contain is confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this e-mail in error, please immediately notify us by telephone.

This transmission contains information from the law firm of Whiteford, Taylor & Preston LLP which may be confidential and/or privileged. The information is intended to be for the exclusive use of the planned recipient. If you are not the intended recipient, be advised that any disclosure, copying, distribution or other use of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

2

FILED FOR RECORD 12/13/2018 09:42:50
Michelle S. Bruner, DY CLERK
JEFFERSON PARISH, LA

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

NO.: 790 369                                    DIVISION: "J"

FREDERICK ADDISON; BARBARA ADDISION; PERRY ANDRAS; SHEILA BASKIN; WILLIE FAY BROOKS; ERIC BROWN; RAMONA BYRD; EDWARD CLOUDET; MONICA COLEMAN-LESTRICK, individually and on behalf of her minor child CHARLES LESTRICK III; DORIS COLLINS; LULA DARDEN; DEMONTE DETEIGE; VINCENT EATON; KIMBERLY ENGEL; ADELAINE FITZPATRICK; CARLA FORD; GERALD FORD; VERNA MAE GABRIEL; MERLENE GRANT; ETHEL GREEN; WENDY GREMILLION, individually and on behalf of her minor children ADELYN S. GREMILLION and BRAXTON C. GREMILLION; SCOTT GREMILLION; REGINA PIERRE GRIFFIN; GLENDA BUILBEAU; ALBERTINE HARGRAVE; JOWE HERNANDEZ, individually and on behalf of his minor children, MILES HERNANDEZ AND LUCIANNA HERNANDEZ; LIZ HERNANDEZ; KIMBERLY HIMEL; CORY HIMEL; ADA JACKSON; BRIDGETT JOHNSON; MARGARITE JOHNSON; MELODIE JONES; RITA JONES; JESSE KOEHL; ELIZABETH LALA; LUCINDA LIGHTELL; ELIZABETH LOWE; JOHN LOWE; GARY MEYER; RHONDA MEYER; ALEXANDER MITCHELL; REGINA MITCHELL; JOSEPH PETE, JR.; TERRY PEETE, individually and on behalf of her minor children JOSEPH PETE, III AND AUGUST PEETE; ANDREA PICKNEY; WARREN PICKNEY; PEARL PINKLEY; CAROLYN POLK; GERALD POLK; GLENDA PRIMUS; JULIANE RAYBURN; KIAN RILEY; KAREN ROSS, individually and on behalf of her minor children JARED ROSS, TYRENE ROSS and JERMAINE ROSS; TONY ROSS; ALETHA SCOTT; DAVID SCOTT; CARI SERPAS, individually and on behalf of her minor children GRACE SERPAS AND CHASE SERPAS; STEVEN SERPAS; JOHN THOMPSON; CHANDRA TIGLER, individually and on behalf of her minor child OBRAINA TIGLER; OSCAR TIGLER; GLORIA TOLODANO; ROY TOLODANO; MELVIN URSIN; SANTANA UTHAISANG; KIRK WELLS, individually and on behalf of his minor children ADDYSON WELLS and JOSEPH WELLS; REBECCA WELLS;  KEVIN WOOD; and MARY WOOD.

## VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION; WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC; WASTE CONNECTIONS US, INC; APTIM CORP; PARISH OF JEFFERSON; ABC CORP; DEF CORP; GHI CORP; JKL CORP; and MNO CORP.

FILED:_____          _____
                                                DEPUTY CLERK

## PETITION FOR DAMAGES AND REQUEST FOR INJUNCTIVE RELIEF

NOW INTO COURT, come Petitioners, who allege and aver the following in support of their Petition for Damages and Request for Injunctive Relief:


EXHIBIT D

## INTRODUCTION

This action arises from the continuing, significant and unabated harm suffered by each of the named Petitioners as a result of the ongoing – and admitted – failure of each of the Defendants to ensure that the design, operation and maintenance of the Jefferson Parish Landfill (the "J.P. Landfill") complies with applicable environmental laws and adequately protects Petitioners' human health and environment. At all relevant times, the J.P. Landfill and has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.

These unlawful, harmful and toxic releases have caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms including, among other things: difficulties breathing, coughing, nausea, burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as fear, anguish, discomfort and inconvenience. These emissions also have caused diminution in the value of Petitioners' homes.

Accordingly, Petitioners seek redress from the Defendants for the direct and consequential injury and damage they have suffered and will continue to suffer as a direct result of the releases of noxious odors and chemicals from the J.P. Landfill.

## PETITIONERS

### III.

Named Petitioners herein are:

**FREDERICK ADDISON** an individual of full age of majority residing at 41 Morning Glory Lane, Waggaman, LA 70094, and owner of said immovable property.

**BARBARA ADDISON**, an individual of full age of majority residing at 41 Morning Glory Lane, Waggaman, LA 70094, and owner of said immovable property.

**PERRY ANDRAS**, an individual of full age of majority residing at 37 Morning Glory Lane, Waggaman, LA 70094, and owner of said immovable property.

**SHEILA BASKIN**, an individual of full age of majority residing at 648 Sweet Olive Lane, Waggaman, LA 70094, and owner of said immovable property.

**WILLIE FAYE BROOKS**, an individual of full age of majority residing at 20 Winifred St., Waggaman, LA, 70094, and owner of said immovable property.

**ERIC BROWN**, an individual of full age of majority residing at an individual of full age of majority residing at 275 Capitol Drive Avondale, LA 70094, and owner of said immovable property.

**RAMONA BYRD**, an individual of full age of majority residing at 322 Hanson Place, Kenner, LA 70062, and owner of said property.

**DORIS COLLINS**, an individual of full age of majority residing at 352 Deacon St., Avondale, LA . 70094, and owner of said immovable property.

**EDWARD CLOUDET**, an individual of full age of majority residing at 601 S. Bengal, River Ridge, LA 70123, and owner of said immovable property.

**MONICA COLEMAN-LESTRICK**, an individual of full age of majority residing at 2 Jasmine Lane, Waggaman, LA 70094, and owner of said immovable property, in her individual capacity and as parent of her minor child, **CHARLES LESTRICK III.**

**LULA DARDEN**, an individual of full age of majority residing at 408 Upland Ave., River Ridge, LA 70123 and owner of said immovable property.

**DEMONE DETEIGE**, an individual of full age of majority residing at 528 Ruth Dr., Avondale, LA 70094 and owner of said immovable property.

**VINCENT EATON**, an individual of full age of majority residing at 513 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**KIMBERLY ENGEL**, an individual of full age of majority residing at 601 Hester Ave., River Ridge LA 70123, and owner of said immovable property.

**ADELAINE FITZPATRICK**, an individual of full age of majority residing at 324 Counsel Dr., Avondale, LA 70094 and owner of said immovable property.

**CARLA FORD**, an individual of full age of majority residing at 49 Judith St., Waggaman, LA 70094, and owner of said immovable property.

**GERALD FORD**, an individual of full age of majority residing at 49 Judith St., Waggaman, LA 70094, and owner of said immovable property.

**VERNA MAE GABRIEL**, an individual of full age of majority residing at 512 Avondale Garden Rd., Avondale LA 70094, and owner of said immovable property.

**MERLENE GRANT**, an individual of full age of majority residing at 1811 Moisant St., Kenner, LA 70062, and owner of said immovable property.

**ETHEL GREEN**, an individual of full age of majority residing at 341 Providence Lane, Kenner LA 70062, and owner of said immovable property.

**WENDY GREMILLION**, an individual of full age of majority residing at 9701 Robin Lane, River Ridge, LA 70123, and owner of said immovable property, in her individual capacity and as parent of her minor children, **ADELYN S. GREMILLION** and **BRAXTON C. GREMILLION**.

**SCOTT GREMILLION**, an individual of full age of majority residing at 9701 Robin Lane, River Ridge, LA 70123, and owner of said immovable property.

**REGINIA PIERRE GRIFFIN**, an individual of full age of majority residing at 612 Filmore St., Kenner, La 70062 and owner of said immovable property.

**GLENDA GUILBEAU**, an individual of full age of majority residing at 600 Wilker Neal Ave., River Ridge, LA 70123, and owner of said immovable property.

**ALBERTINE HARGRAVE**, an individual of full age of majority residing at 8721 Milan St., Metairie, LA 70003, and owner of said immovable property.

**JOSE HERNANDEZ**, an individual of full age of majority residing at 721 Randolph Ave., Harahan, LA 70123, and owner of said immovable property, in his individual capacity and as parent of his minor children, **MILES HERNANDEZ** and **LUCIANNA HERNANDEZ**.

**LIZ HERNANDEZ**, an individual of full age of majority residing at 721 Randolph Ave., Harahan, LA 70123, and owner of said immovable property.

**KIMBERLY HIMEL**, an individual of full age of majority residing at 642 Grove Avenue, Harahan, LA 70123, and owner of said immovable property.

**CORY HIMEL**, an individual of full age of majority residing at 642 Grove Ave., Harahan, LA 70123, and owner of said immovable property.

**ADA JACKSON**, an individual of full age of majority residing at 513 S. Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

4

**BRIDGETTE JOHNSON,** an individual of full age of majority residing at 325 Georgetown Dr., Westwago, LA 70094, and owner of said immovable property.

**MARGARITE JOHNSON,** an individual of full age of majority residing at 112 Marie Dr., Avondale, LA 70094, and owner of said immovable property.

**MELODIE JONES,** an individual of full age of majority residing at 413 Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

**RITA JONES,** an individual of full age of majority residing at 248 Glen Della Dr., Avondale, LA 70094, and owner of said immovable property.

**ELIZABETH LALA,** an individual of full age of majority residing at 8701 Steamboat Lane, River Ridge, LA 70123, and owner of said immovable property.

**BRUCE LIGHTELL,** an individual of full age of majority residing at 51 Winifred St., Waggaman, LA 70094, and owner of said immovable property.

**LUCINDA LIGHTELL,** an individual of full age of majority residing at 51 Winifred St., Waggaman, LA 70094, and owner of said immovable property.

**ELIZABETH LOWE,** an individual of full age of majority residing at 604 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**JOHN LOWE,** an individual of full age of majority residing at 10120 St. Paul Ave., River Ridge, LA 70123, and owner of said immovable property.

**GARY MEYER,** an individual of full age of majority, residing at 612 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**RHONDA MEYER,** an individual of full age of majority residing at 612 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**ALEXANDER MITCHELL,** an individual of full age of majority residing at 204 Hanson Ave., Kenner, LA 70062, and owner of said immovable property.

**REGINA MITCHELL,** an individual of full age of majority residing at 204 Hanson Ave. Kenner, LA 70062.

**JOSEPH PETE, JR.,** an individual of full age of majority residing at 149 Southern Ct., Avondale, LA 70094, and owner of said immovable property.

5

**TERRY PETE,** an individual of full age of majority residing at 149 Southern Ct., Avondale, LA 70094 and owner of said immovable property, in her individual capacity and as parent of her minor children **JOSEPH PETE, III** and **AUGUST PETE.**

**ANDREA PICKNEY,** an individual of full age of majority residing at 657 Richard Ave., River Ridge, LA 70123, and owner of said immovable property.

**WARREN PICKNEY,** an individual of full age of majority residing at 657 Richard Ave., River Ridge, LA 70123, and owner of said immovable property.

**PEARL PINKLEY,** an individual of full age of majority residing at 511 Wilker Neal Ave., River Ridge, LA 701235, and owner of said immovable property.

**CAROLYN POLK,** an individual of full age of majority residing at 305 S. Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

**GERALD POLK,** an individual of full age of majority residing at 305 S. Bengal Rd., River Ridge, LA 70123, and owner of said immovable property.

**GLENDA PRIMUS,** an individual of full age of majority residing at 8521 Milan St., Metairie, LA 70003, and owner of said immovable property.

**JULIANE RAYBURN,** an individual of full age of majority residing at  513 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**KIAN RILEY,** an individual of full age of majority residing at 6 Jasmine Lane, Waggaman, LA 70094, and owner of said immovable property.

**KAREN ROSS,** an individual of full age of majority residing at 52 Winifred St., Waggaman, LA70094, and owner of said immovable property, in her individual capacity and on behalf of her minor children, **JARED ROSS, JERMANIE ROSS** and **TYRESE ROSS.**

**TONY ROSS,** an individual of full age of majority residing at 52 Winifred St., Waggaman, LA 70094, and owner of said immovable property.

**ALETHA SCOTT,** an individual of full age of majority residing at 629 South Cumberland St., River Ridge, LA 70123, and owner of said immovable property.

**DAVID SCOTT,** an individual of full age of majority, residing at 629 South Cumberland St., River Ridge, LA 70123, and owner of said immovable property.

6

**CARI SERPAS**, an individual of full age of majority residing at 609 Hester Ave., River Ridge, LA 70123, and owner of said immovable property, in her individual capacity and as parent of her minor children, **GRACE SERPAS** and **CHASE SERPAS**.

**STEVEN SERPAS**, an individual of full age of majority residing at 609 Hester Ave., River Ridge, LA 70123, and owner of said immovable property.

**JOHN THOMPSON**, an individual of full age of majority residing at 412 Wilker Neal Ave., River Ridge, LA 70123 and owner of said immovable property.

**CHANDRA TIGLER**, an individual of full age of majority residing at 29 Richelle St., Waggaman, LA 70094, and owner of said immovable property, in her individual capacity and as parent of her minor child, **OBRAINA TIGLER**.

**OSCAR TIGLER**, an individual of full age of majority residing at 29 Richelle St., Waggaman, LA 70094, and owner of said immovable property.

**GLORIA TOLODANO**, an individual of full age of majority residing at 225 Helis Dr., Waggaman, LA 70094 and owner of said immovable property.

**ROY TOLODANO**, an individual of full age of majority residing at 225 Helis Dr., Waggaman, LA 70094, and owner of said immovable property.

**MELVIN URSIN**, an individual of full age of majority residing at 500 Cumberland Str., River Ridge, LA 70123, and owner of said immovable property.

**SANTANA UTHAISANG**, an individual of full age of majority residing at 2033 Generes Dr., Harahan, LA 70123 and owner of said immovable property.

**KIRK WELLS**, an individual of full age of majority residing at 153 Rebel Ave., River Ridge, LA 70123, and owner of said immovable property, in his individual capacity and as parent of his minor children, **ADDYSON WELLS** and **JOSEPH WELLS**.

**REBECCA WELLS**, an individual of full age of majority residing at 153 Rebel Ave., River Ridge, LA 70123, and owner of said immovable property.

**KEVIN WOOD**, an individual of full age of majority, residing at 824 Colonial Club Dr., Harahan, LA 70123, and owner of said immovable property.

**MARY WOOD**, an individual of full age of majority, residing at 824 Colonial Club Dr., Harahan, LA 70123, and owner of said immovable property.

II.

Made Defendants herein are:

a. **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), f/k/a IESI LA LANDFILL CORPORATION ("IESI")**, a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State.  On information and belief, LRLC is a wholly-owned subsidiary of Defendant Waste Connections Bayou, Inc., Inc., which in turn was acquired by Defendant Waste Connections US, Inc.  On information and belief, Defendant LRLC is controlled by Defendants Waste Connections Bayou, Inc., and/or Waste Connections, US, Inc., and is the "alter ego" of those Defendants, operating without autonomy and only pursuant to the direction, policies and procedures of its parent corporations;

b. **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.,** a foreign corporation authorized to do and doing business in this Parish and State;

c. **WASTE CONNECTIONS US, INC.,** a foreign corporation authorized to do and doing business in this Parish and State; and

d. **APTIM CORP.,** a foreign corporation domiciled in Delaware authorized to do and doing business in this Parish and State;

e. **PARISH OF JEFFERSON,** a Louisiana parish in and political subdivision of the State of Louisiana (the "Parish";

f. **ABC CORPORATION,** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant **LOUISIANA REGIONAL LANDFILL COMPANY (LRLC), F/K/A IESI LA LANDFILL CORPORATION ("IESI"),** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

g. **DEF CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of

8

insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.** that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

h.  **GHI CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **WASTE CONNECTIONS BAYOU, INC., f/k/a/ PROGRESSIVE WASTE SOLUTIONS OF LA, INC.**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein;

i.  **JKL CORPORATION**; a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **APTIM CORP**, that may provide coverage for acts occurrences, and/or omissions more specifically described herein;

j.  **MNO CORPORATION** a foreign or domestic insurance company whose identity is unknown to the Petitioners, who upon information and belief wrote a policy of insurance coverage for Defendant, **PARISH OF JEFFERSON**, that may provide coverage for acts, occurrences, and/or omissions more specifically described herein.

III.

### JURISDICTION AND VENUE

Venue is proper in accordance with La. R.S. 13:5104(B), which states, in part, that "[a]ll suits filed against a political subdivision of the state ... shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause of action arises." Venue is further proper as to all other defendants as the wrongful conduct giving rise to the Petitioner's claims occurred within the jurisdictional limits of Jefferson Parish, State of Louisiana.

IV.

### FACTS

The Parish is the owner of the Jefferson Parish Landfill (the "J.P. Landfill"), located at 5800 Highway 90 West in Avondale, Jefferson Parish, State of Louisiana.

V.

9

At all relevant times, the J.P. Landfill has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste pursuant to the Louisiana Environmental Quality Act, La. R.S. 30:2001, *et seq.* (the "Act") as well as federal laws and regulations implemented by the United States Environmental Protection Agency ("USEPA").

## VI.

The J.P. Landfill is authorized to operate pursuant to and only in accordance with the terms and conditions of, among other things, Standard Permit P-0297R1(the "Standard Permit") as issued, approved, and subject to periodic review and renewal by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to the Act. The Standard Permit was most recently renewed by the LDEQ on or about January 22, 2010.

## VII.

On or about May 17, 2012, the Parish entered into a contract with the Defendant IESI (since renamed the Louisiana Regional Landfill Company) under which IESI agreed, among other things, to "manage all tasks of the operation, management and maintenance" of the J.P. Landfill (the "IESI Operating Contract"). The IESI Operating Contract provides that:

a. Operation of the J.P. Landfill will be conducted "in strict compliance and conformity with all Federal, State and local laws, ordinances, and regulations, including the rules and regulations of the USEPA, LDEQ, and all State of Louisiana agencies, and in accordance with the Permit Documents."

b. "IESI shall be responsible for compliance with all Federal, State and local regulations, laws and ordinances in its performance of the Service/Work associated with the operation [and maintenance] of the Landfill."

c. IESI is required to "provide all labor, equipment, materials and incidentals to assume all daily operations of the Landfill."

d. The Parish Engineer has the authority to "decide any and all questions as to...the manner of performance and rate of progress of the Services/Work...the interpretation of the Contract Documents, and all questions as to the acceptable Completion" of the

Contract "in his reasonable and good faith opinion." The Parish Engineer is further authorized to "suspend operations at any time when the Service/Work, in his good faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits."

VIII.

Defendant APTIM is and at all relevant times has been a co-operator of the gas and leachate collection system of the J.P. Landfill.

IX.

Jefferson Parish, in addition to being an owner of the J.P. Landfill, is and at all relevant times has been a co-manager and co-operator of the J.P. Landfill with IESI/LRLP and APTIM.

X.

The Parish has admitted that improper operation of the J.P. Landfill is a major source of the odors suffered by Petitioners as well as the adverse consequences thereof. At a public press conference on July 23, 2018, Parish President Mike Yenni stated that:

a. The J.P. Landfill's system designed to "contain and deodorize landfill gases" has not been in "proper working order."

b. The landfill's leachate collection system has not been operated properly.

c. "Properly operated landfills do not operate persistent off-site odors and corrective actions...are essential."

d. The Parish has notified IESI that it is in breach of its contract to properly operate the J.P. Landfill.

XI.

At the same press conference, Parish Deputy Sheriff Mark Conley stated that the J.P. Landfill gas collection system has been collecting only twenty percent of the gas emitted from landfill operations, whereas a properly operating system would collect ninety-seven to ninety-eight percent of gas emissions, "[s]o that is why the Parish president is stressing that we realize we have problems...right now, a lot of our priority, in the name of public safety and our police powers, is to address the existing system, get it operational, and to pull as much gas out of that landfill as we can."

11

### XII.

At the same press conference, Parish Councilman Paul Johnson stated that the odor from the J.P. Landfill

"has gotten really bad in the past for our five months…we are all going to experience odors from the landfill because it's a landfill. But, not those we have been having for the past three or five months. It's been really bad. I have been woken up at night with my nose burning and couldn't breathe at three or four o'clock in the morning. This has happened to me more than one time…we know the landfill is causing problems and we know it is a big source of problems.…"

### XIII.

At the same press conference, Doctor Joseph Cantor, Medical Director and Administrator for Region 1 of the Louisiana Department of Health, warned that when the odors are at "a high level, residents should, if they are able to, leave the area and particularly if they have certain chronic conditions which put them at increased risk mainly pulmonary disease and asthma COPD."[1]

### XIV.

On or about June 22, 2018, the LDEQ issued a Compliance Order to the Parish which, among other things, found that the Parish has violated its Landfill Permit and applicable environmental regulations by (i) failing to provide daily cover and (ii) failing to properly operate the system that is intended to collect leachate – the liquid brew that drains from a landfill and carries with it numerous harmful chemicals.

### XV.

The LDEQ inspectors found areas of pooled leachate and leachate flowing downhill from the pooled leachate.

### XVI.

---

[1] A video recording of the July 23 press conference can be accessed at https://www.facebook.com/NOLAnews/videos/10155793116437060/ (last visited Aug. 4, 2018).

The United States Environmental Protection Agency ("EPA") has established general screening levels for various pollutants. These screening levels are chemical-specific concentrations for individual contaminants in air that may warrant further investigation or site cleanup. https://www.epa.gov/risk/regional-screening-levels-rsls-users-guide (last visited, Nov. 21, 2018). A chronic screening level addresses potential chronic exposure to a chemical.

XVII.

Air samples collected by the LDEQ in the Jefferson Parish communities of River Ridge, Harahan, and Waggaman between July 20, 2018 through approximately July 28, 2018 were found to contain numerous chemical compounds at concentrations that exceed EPA's chronic screening levels, including acrolein, 1.2-dichloroethane, benzene, carbon tetrachloride, and naphthalene. All of these compounds are multimodal toxicants, in that they are potential or actual human carcinogens and also have other toxic effects.

XVII.

The air samples collected by LDEQ also contained hydrogen sulfide at concentrations that exceed EPA's chronic screening levels. Hydrogen sulfide is a potentially toxic compound. All of these compounds are typically found in the gases generated by landfills like the J.P. Landfill.

XVIII.

In a report dated August 15, 2018, prepared for the Parish by its environmental consultant, Carson Environmental Consulting ("CEC"), CEC made several findings, including, among other things, that there are numerous deficiencies in "the landfill gas condensate and leachate collection pumping systems[,]" and that the infrastructure for these systems requires immediate improvement "to meet the Parish's performance objectives." In addition, CEC concluded that improved operation and maintenance of the J.P. Landfill requires the Parish's "focused attention."

XIX.

On information and belief, on or about December 5, 2018 the Commissioner of the LDEQ informed the Parish that there is "no doubt" in his mind that the JP Landfill is the primary source the odors experienced by residents of the communities in which Petitioners reside.

XX.

13

On information and belief, Defendant ABC Corporation has issued a policy of insurance to Defendant Louisiana Regional Landfill Company that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify ABC Corporation once its identity is known.

### XXI.

On information and belief, Defendant DEF Corporation has issued a policy of insurance to Defendant Waste Connections Bayou, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify DEF Corporation once its identity is known.

### XXII.

On information and belief, Defendant GHI Corporation has issued a policy of insurance to Defendant Waste Connections US, Inc. that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify GHI Corporation once its identity is known.

### XXIII.

On information and belief, Defendant JKL Corporation has issued a policy of insurance to Defendant Aptim Corporation that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

### XXIV.

On information and belief, Defendant MNO Corporation has issued a policy of insurance to Defendant Parish of Jefferson that covers the acts and omissions alleged herein. Petitioners will amend this Petition to identify JKL Corporation once its identity is known.

## PROXIMATE CAUSE AND BAD ACTS

### XXV.

The Defendants' failure to properly design, operate, manage, and maintain the J.P. Landfill, including its gas and leachate collection systems, have caused harmful, noxious and repulsive odors and chemicals to be released from the J.P. Landfill into the surrounding environment on and in to Petitioners' homes and immovable property, resulting in Petitioners' continuing exposure to these odors and chemicals.

### XXVI.

These odors and chemicals have also caused these Petitioners to suffer physical, mental, and other harm including, but not limited to difficulties breathing, coughing, nausea, burning eyes,

14

ears, noses and throats, dizziness, loss of appetite and lethargy, as well as fear, anguish, anxiety and mental pain and suffering.

## XXVII.

Defendants' actions and omissions with respect to the design, operation and maintenance of the J.P. Landfill are the direct and proximate cause of the injuries and harm suffered by each of the Petitioners as alleged above.

## XXVIII.

Defendants' actions and omissions as outlined above also have caused a diminution in the value of Petitioners' immovable property.

## XXIX.

These odors have been pervasive and persistent. They have continued to the present and are likely to continue for the foreseeable future. The emissions constitute a continuing tort.

## XXX.

Defendants' acts and omissions in owning, designing, operating and/or maintaining the J.P. Landfill as described above constitute an unreasonable interference with each of the Petitioners' comfortable use and enjoyment of their homes.

## XXXI.

Defendants are liable to the Petitioners for all damages they have suffered, including bodily harm, diminution of property value and fear, anguish, and mental pain and suffering, on account of nuisance.

## XXXII.

These physical invasions of noxious odors and chemicals constitute a trespass causing Petitioners to suffer physical harm, diminution in property value and rental value, inconvenience, loss of enjoyment of property, as well as fear, anguish and mental pain and suffering.

## XXXIII.

The emissions of these harmful odors and chemicals have been pervasive and persistent and constitute a continuing tort.

## XXXIV.

15

The Defendants' illegal actions and omissions in owning and operating the J.P. Landfill continue to this day and, unless enjoined by this Court, will continue for the indefinite future. Accordingly, Petitioners are entitled to a permanent injunction ordering the Defendants to abate the continuing nuisance and cease the trespasses caused and created by the J.P. Landfill, including the emission of noxious odors and chemicals, and to take all necessary reasonable actions required to accomplish same.

XXXV.

Each of the Defendants had a duty to Petitioners to exercise reasonable care in the design, ownership and/or operation of the Landfills, including without limitation the duty to comply with applicable environmental laws and regulations and otherwise to ensure that the Landfills were operated in a manner that does not jeopardize their health, immovable property, environment, and quality of life.

XXXVI.

Each of the Defendants breached such duties of care to the Petitioners by, among other things:

a. Failing to properly design, operate and maintain the J.P. Landfill, thus allowing noxious and harmful odors and chemicals to be released from the J.P. Landfill and introduced in the atmosphere and surrounding neighborhoods;

b. Failing to take careful and prudent precautionary measures to ensure that these releases would not occur;

c. Failing to design, operate and maintain the J.P. Landfill in a manner that does not cause harm to others and, in particular, its neighbors;

d. Failing to comply with applicable regulations governing the design, operation and maintenance of the J.P. Landfill;

e. Being inattentive and careless in the overall design, operation and maintenance of the J.P. Landfill;

f. Failing to remediate and repair the failures in design, operation and maintenance of the J.P. Landfill as they became known to the Defendants;

16

g. Any and all other acts of negligence which may be revealed between now and the time of trial.

## XXXV.

The Defendants' failure to comply with their duties of care to the Petitioners were and are a cause in fact and a legal cause of Petitioners' injuries, and each of the Petitioners has suffered damages as a result thereof, including physical harm, diminution in property value and fear, anguish and mental pain and suffering as well as loss of use and enjoyment of their immovable property and diminution in the value of said property.

## XXXVII.

The Parish's ownership and operation of the J.P. Landfill has caused substantial damage to the value of Petitioners' respective interests in their immovable property.

## XXVIII.

The Parish knew, or in the exercise of reasonable care, should have known, that its failure to properly design, operate and maintain the J.P. Landfill would cause damage to Petitioners, and such damage could have been prevented by the exercise of reasonable care. The Parish, as owner of the J.P. Landfill, failed to exercise such reasonable care.

## XXXVIII.

In committing the acts and omissions described above, the Defendants have breached their contractual obligations, of which Petitioners are third party beneficiaries, arising under the contracts between the Parish and all other Defendants herein pertaining to the design, operation and maintenance of the J.P. Landfill.

## XXXIX.

In committing the foregoing acts and omissions, Defendants have violated, *inter alia*, Civil Code Articles 667, 669, 2315, 2316, and 2317.1, which has caused and continues to cause each of the Petitioners damages including nuisance damages; physical harm and mental fear, anguish, pain and suffering; and diminution in property value.

## XL.

Further, Petitioners' interest is their immovable property is a property right protected by the Louisiana Constitution.

17

### XLI.

Petitioners' interest in their real property has been taken and damaged by the actions of Jefferson Parish as pled herein.

### XLII.

Such taking and damage was for a public purpose – to wit, the operation of a public landfill for the purpose of handling and disposing of waste generated by the citizens of Jefferson Parish and others.

### XLIII.

The Parish is liable to the Petitioners for damages caused by the Parish's unconstitutional taking of their immovable property without paying just compensation pursuant to Article I, Section 4(B) of the Louisiana Constitution.

### XLIV.

The Parish's taking of Petitioners' property without just compensation constitutions a deprivation of their property without due process of law pursuant to Article I, Section 2 of the Louisiana Constitution.

### XLV.

The Parish is liable to the Petitioners for all damages caused by the Parish's violation of Petitioners' due process rights.

### XLVI.

**REQUEST FOR TRIAL BY JURY**

Petitioners request a jury trial to all claims triable by a jury.

### XLVII.

**PRAYER FOR RELIEF**

**WHEREFORE,** Petitioners pray that:

a.  Judgment be entered declaring each of the Defendants jointly, severally and *in solido* liable to each of the Petitioners for all damages (and awarding all such damages), including physical and bodily harm, loss of use and enjoyment of their homes, diminution in property value, lost wages, medical expenses and mental pain and suffering;

18

b. Judgment be entered against the Parish declaring it liable for inverse condemnation, and awarding to each of the Petitioners just compensation for the unconstitutional taking of their interests in real property and/or a deprivation of due process;

c. Judgment be entered against all Defendants for all additional damages as are just and reasonable under the circumstances, including but not limited to the cost of alternative housing and medical testing;

d. The Defendants be permanently enjoined and ordered to abate the nuisances and trespasses, and to take all reasonable and necessary measures to cease the harmful emissions from the J.P. Landfill.

e. The Defendants be required to provide medical monitoring for all Petitioners as appropriate;

f. Prejudgment and post-judgment interest on all damages be awarded;

g. Petitioners be awarded all costs for prosecution of this action including attorney's fees and costs;

h. Damages be awarded for all other injuries that may be proved at trial; and

i. This Court award such other and further relief as it may deem just and proper.

Respectfully submitted,

**FORREST CRESSY & JAMES, LLC**

Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele: (504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com

OF COUNSEL:
Barry S. Neuman
Erik Bolog
C. Allen Foster
Adrian Sneed
**WHITEFORD   TAYLOR   PRESTON, LLP**
1800 M Street, NW
Suite 450N

19

Washington, DC 20036
Tele: (202) 659.6800
(Applications for Admission *Pro Hac Vice* Pending)

**<u>SERVICE INSTRUCTIONS ON FOLLOWING PAGE.</u>**

20

**PLEASE SERVE:**

**LOUISIANA REGIONAL LANDFILL COMPANY**
**Through its Agent for Service**
**Corporation Service Company**
**501 Louisiana Avenue**
**Baton Rouge, LA 70802**

**WASTE CONNECTIONS BAYOU, INC.**
**Through its Agent for Service**
**Corporation Service Company**
**501 Louisiana Ave.**
**Baton Rouge, LA 70802**

**WASTE CONNECTIONS US, INC.**
**Through its Agent for Service**
**Via long arm through its Agent**
**Corporation Service Company**
**251 Little Falls Drive**
**Wilmington, DE 19808**

**APTIM Corp.**
**Through its Agent for Service**
**CT Corporation System**
**3867 Plaza Tower Dr.**
**Baton Rouge, LA 70816**

**PARISH OF JEFFERSON**
**Through its Agent for Service**
**Michael J. Power**
**1221 Elmwood Park Blvd., Suite 701**
**Jefferson, LA 70123**

21

24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                              DIVISION "J"

FREDERICK ADDISON, et al.,

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et al.

FILED:_____   _____
                                              DEPUTY CLERK

### PLAINTIFFS' OPPOSITION TO MOTION OF DEFENDANT JEFFERSON PARISH TO TEMPORARILY LIFT STAY AND TO CONSOLIDATE

This Memorandum in Opposition is submitted on behalf of the Plaintiffs, Frederick Addision, *et al.,* in response to the motion filed by the Defendant, Jefferson Parish (the "Parish"), to consolidate this case with five subsequently filed lawsuits[1] for purposes of trial, and to temporarily lift the stay in this matter "for the limited purpose of ruling" on its motion for consolidation.

## I.      LAW AND ARGUMENT

The Parish asserts that consolidation is mandated by Uniform Rules for District Courts, rule 9.4, because the subsequent lawsuits "include many of the same Plaintiffs in several of the cases." Motion, at 1. Alternatively, the Parish asserts that consolidation is appropriate pursuant to Louisiana Code of Civil Procedure article 1561 in the interest of judicial efficiency and justice, because "all six (6) of these lawsuits assert identical claims relating to Plaintiffs' alleged damages from the operation of the Jefferson Parish Landfill." Motion, ¶¶ XII and XIII.

As a matter of fact, and contrary to the Parish's assertion, all six lawsuits do not assert "identical claims." For example, a total of more than fifty plaintiffs identified in the *Anderson* and *Brunet* lawsuits specifically allege that they suffer from respiratory diseases as a result of the harmful emissions emanating from the Landfill – including asthma, COPD, and chronic bronchitis. *See Anderson* Petition, ¶ XXVI; *Brunet* Petition, ¶ XXVII. These diseases are not alleged to have

---

[1] *Anderson, et al. v. Louisiana Regional Landfill Co., et al.,* Dkt. No. 792-502 (Division "O"); *Brunet, et al. v. Louisiana Regional Landfill Co., et al.,* Dkt. No. 793-088 (Division "O"); *Winningkof, et al. v. Louisiana Regional Landfill Co., et al.,* Dkt. No. 793-784 (Division "M"); *Calligan, et al. v. Louisiana Regional Landfill Co., et al.,* Dkt. No. 793-908 (Division "L"); and *Griffin, et al. v. Louisiana Regional Landfill Co., et al.,* Dkt No. 794-011,(Division "A").

1



EXHIBIT

E

been suffered by plaintiffs in the other lawsuits.  Thus, consolidation is not warranted as a matter of judicial efficiency or justice pursuant to article 1561.

Plaintiffs do acknowledge, however, that the Petitions in each of the succeeding five lawsuits mistakenly named as a plaintiff at least one individual who also was named as a plaintiff either in this lawsuit or one of the other five lawsuits.  *See* Motion at 4.  Plaintiffs also acknowledge that this overlap, while unintentional, *could* justify consolidation pursuant to Uniform Rule 9.4 – but for the fact that the Court previously stayed this case.

Although the Parish has moved to "temporarily" lift the stay "for the limited purpose" of permitting consolidation, Plaintiffs contend that lifting the stay temporarily for this limited purpose would be *contrary* to the interests of justice. As noted, dozens of plaintiffs named in the subsequent lawsuits allege serious, sustained and ongoing medical injuries as a result of the continuing emissions emanating from the Landfill.  To prohibit them from pursuing their claims until the U.S. District Court for the Eastern District of Louisiana has ruled on class certification issues in other litigation to which they are not even parties would be manifestly prejudicial and unfair.  Since this Court stayed this case in January 2019, plaintiffs in the putative federal class action lawsuits have redefined their proposed class so as to exclude personal injuries entirely – and instead to limit the proposed class to people who have suffered injury to property.  *See* Plaintiffs' Motion to Permanently Lift Stay herein filed on April 23, 2019.   In contrast, the petition in this action and the five subsequently filed lawsuits that the Parish seeks to consolidate all allege some form of personal harm (whether respiratory disease or otherwise) in addition to property injury. Indeed, many of the Plaintiffs in the lawsuit that are the subject of this consolidation motion are not even alleged to own any real property. Accordingly, it is now plain that the proposed class definition in the federal litigation – even if certified by the federal court – will not dispose of all claims raised by plaintiffs in the six cases now before this Court, and the previously imposed stay should be permanently, not temporarily, lifted.

## II.   CONCLUSION

For all the foregoing reasons, and those set forth in Plaintiffs' Motion to Permanently Lift Stay, the Plaintiffs do not oppose the Parish's motion for consolidation, on the condition that the stay previously entered in this case is *permanently* lifted.

Respectfully submitted,

2

FORREST CRESSEY & JAMES, LLC

*/s/ S. Eliza James*

_____

Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
One Canal Place
365 Canal Street, Suite 1475
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: eliza@fcjlaw.com


*/s/ Barry S. Neuman*

_____

Barry S. Neuman (Admitted *Pro Hac Vice*)
Adrian Snead (Admitted *Pro Hac Vice*)
**WHITEFORD   TAYLOR   PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800


**OF COUNSEL:**
C. Allen Foster
Erik Bolog
**WHITEFORD   TAYLOR   PRESTON,
LLP**
1800 M Street, NW
Suite 450N
Washington, DC 20036
Tele: (202) 659.6800

## CERTIFICATE OF SERVICE

I S. Eliza James, hereby certify that the foregoing Motion was served on all parties of record via email and Federal Express this 1 day of May, 2019.

*/s/ S. Eliza James*

_____

JEFFERSON PARISH
Through its attorneys of record:
William P. Connick
Michael S. Futrell
Matthew D. Moghis
Connick and Connick, LLC
3421 N. Causeway Blvd.
Suite 408
Metairie, Louisiana 70002
Fax: 504- 838-9901

WASTE CONNECTIONS, U.S.

3

Through its attorneys of record:
David R. Taggart
Michael C. Mimms
Bradley Murchison
Kelly & Shae, LLC
1100 Poydras Street
Suite 2700
New Orleans, Louisiana 70163
Fax: 504- 596-6301

James B. Slaughter
Beveridge & Diamond, P.C.
1350 I Street, N.W.
Suite 700
Washington, DC 20005
Fax: 202-789-6000

Michael D. Murphy
Megan R. Brillault
John H. Paul
477 Madison Avenue
15th Floor
New York, NY 10022

APTIM CORP.
Through its Agent for Service
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

LOUISIANA REGIONAL LANDFILL COMPANY
Through its Agent for Service
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

WASTE CONNECTIONS BAYOU, INC.
Through its Agent for Service
Corporation Service Company
501 Louisiana Ave.
Baton Rouge, LA 70802

**Matthew Moghis**

| | |
|---|---|
| **From:** | Neuman, Barry S. <BNeuman@wtplaw.com> |
| **Sent:** | Tuesday, May 28, 2019 3:43 PM |
| **To:** | Matthew Moghis |
| **Cc:** | S. Eliza (eliza@fcjlaw.com) |
| **Subject:** | RE: Consolidation of Paul Case (Addison) |

We do not consent.

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:  202.327.6151

**From:** Matthew Moghis <moghis@connicklaw.com>
**Sent:** Tuesday, May 28, 2019 3:31 PM
**To:** Neuman, Barry S. <BNeuman@wtplaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** [EXTERNAL] RE: Consolidation of Paul Case (Addison)

Do you all agree to an extension of time for responsive pleadings in Paul while we moved to consolidate (consistent with the other cases)? We propose an extension through the Court's ruling on the anticipated Motion to Consolidate.

Please advise.

**From:** Neuman, Barry S. <BNeuman@wtplaw.com>
**Sent:** Tuesday, May 28, 2019 11:53 AM
**To:** Matthew Moghis <moghis@connicklaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** RE: Consolidation of Paul Case (Addison)

Glad to accommodate.

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:  202.327.6151

**From:** Matthew Moghis <moghis@connicklaw.com>
**Sent:** Tuesday, May 28, 2019 12:52 PM
**To:** Neuman, Barry S. <BNeuman@wtplaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** [EXTERNAL] RE: Consolidation of Paul Case (Addison)

That's an interesting position. Appreciate the response.

1



EXHIBIT

F

**From:** Neuman, Barry S. <BNeuman@wtplaw.com>
**Sent:** Tuesday, May 28, 2019 11:51 AM
**To:** Matthew Moghis <moghis@connicklaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** RE: Consolidation of Paul Case (Addison)

It is neither required nor justified.

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:   202.327.6151

**From:** Matthew Moghis <moghis@connicklaw.com>
**Sent:** Tuesday, May 28, 2019 12:36 PM
**To:** Neuman, Barry S. <BNeuman@wtplaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** [EXTERNAL] RE: Consolidation of Paul Case (Addison)

May I ask on what basis?

**From:** Neuman, Barry S. <BNeuman@wtplaw.com>
**Sent:** Tuesday, May 28, 2019 11:35 AM
**To:** Matthew Moghis <moghis@connicklaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** RE: Consolidation of Paul Case (Addison)

Matt – Plaintiffs do not consent to, and will oppose, transfer and consolidation of the *Paul* lawsuit.

Thank you for your inquiry.

Best regards,

Barry.

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:   202.327.6151

**From:** Matthew Moghis <moghis@connicklaw.com>
**Sent:** Tuesday, May 28, 2019 12:14 PM
**To:** Neuman, Barry S. <BNeuman@wtplaw.com>; Eliza James <eliza@fcjlaw.com>
**Subject:** [EXTERNAL] Consolidation of Paul Case (Addison)

Barry and Eliza,

2

I tried to call you both this morning, but was unable to reach either of you. On the new *Paul* lawsuit, do you all consent to consolidation with the others in *Addison*/Division "J"? If so, we can prepare an Unopposed Motion to Consolidate to file with Judge Grefer, and then a Motion to Transfer once that Order is signed by Judge Grefer. Please let us know.

Additionally, while we are waiting for all of the transfers and consolidation to be completed, will you all agree to the ruling in *Addison* regarding the extension of time until further instructions by the Court being applicable to *Paul*?

Please let us know your response.

Thank you,

MATTHEW D. MOGHIS
**CONNICK AND CONNICK, L.L.C.**
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana  70002
Telephone:   (504) 681-6658
Facsimile:    (504) 838-9903
E-mail:        moghis@connicklaw.com
Website:      www.connicklaw.com [connicklaw.com]

This e-mail transmission and any attachments it may contain is confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this e-mail in error, please immediately notify us by telephone.

---

This transmission contains information from the law firm of Whiteford, Taylor & Preston LLP which may be confidential and/or privileged. The information is intended to be for the exclusive use of the planned recipient. If you are not the intended recipient, be advised that any disclosure, copying, distribution or other use of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately.

3

```
* * * COMMUNICATION RESULT REPORT ( JUN. 4.2019  2:30PM ) * * *
```

| | | FAX HEADER 1: CONNICK AND CONNICK, L.L.C. |
| | | FAX HEADER 2: S. GUY DELAUP |

TRANSMITTED/STORED : JUN. 4. 2019  2:23PM

| FILE MODE | OPTION | ADDRESS | RESULT | PAGE |
|-----------|--------|---------|--------|------|
| 5197 MEMORY TX | | Clerk of Court | OK | 5/5 |

```
REASON FOR ERROR
E-1) HANG UP OR LINE FAIL          E-2) BUSY
E-3) NO ANSWER                     E-4) NO FACSIMILE CONNECTION
```

## CONNICK AND CONNICK, L.L.C.
### ATTORNEYS AT LAW

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN

ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
BRENDAN P. CONNICK
ELIZABETH A. ZAVALA
LAURA M. BLOUIN
NOAH R. BORER

3421 NORTH CAUSEWAY BOULEVARD SUITE 408
METAIRIE, LOUISIANA 70002

TELEPHONE: (504) 836-8777
FACSIMILE: (504) 836-9903
WEBSITE: www.connicklaw.com

OF COUNSEL

PAUL D. CONNICK, JR.

DIRECT DIAL: (504) 681-6668
EMAIL: moghis@connicklaw.com

June 4, 2019

CLERK OF COURT
24TH JUDICIAL DISTRICT COURT
200 Derbigny Street
Gretna, Louisiana 70053
Phone:  (504) 364-2900
Fax:    (504) 364-3780

Re:   *Addison, et al. v. Jefferson Parish, et al.*
      24th JDC, Case No. 790-369, Division "J"
      File No. 81.182829

Dear Sir/Madam:

Attached please find Jefferson Parish's (1) Supplemental Memorandum to Motion to Temporarily Lift Stay and Consolidate and (2) Order of Consolidation, which I ask that you file in connection with the above-captioned matter.

Thanking you in advance for your cooperation, I remain

Sincerely,

CONNICK AND CONNICK, L.L.C.

MATTHEW D. MOGHIS

MDM/js
Attachment
cc: Thomas Sanderson/Honorable Stephen C. Grefer (thomass@24jdc.us)

**CONNICK AND CONNICK, L.L.C.**
**ATTORNEYS AT LAW**

WILLIAM PETER CONNICK
MICHAEL S. FUTRELL
MICHAEL F. NOLAN

ELIZABETH O. CLINTON
MICHAEL J. MONISTERE
MATTHEW D. MOGHIS
BRENDAN P. CONNICK
ELIZABETH A. ZAVALA
LAURA M. BLOUIN
NOAH R. BORER

3421 NORTH CAUSEWAY BOULEVARD SUITE 408
METAIRIE, LOUISIANA 70002

TELEPHONE: (504) 838-8777
FACSIMILE: (504) 838-9903
WEBSITE: www.connicklaw.com

OF COUNSEL,

PAUL D. CONNICK, JR.

DIRECT DIAL: (504) 681-6658
EMAIL: *moghis@connicklaw.com*

June 4, 2019

CLERK OF COURT
24TH JUDICIAL DISTRICT COURT
200 Derbigny Street
Gretna, Louisiana 70053
Phone:  (504) 364-2900
Fax:       (504) 364-3780

      Re:    *Addison, et al. v. Jefferson Parish, et al.*
             24th JDC, Case No. 790-369, Division "J"
             File No. 81.182829

Dear Sir/Madam:

    Attached please find Jefferson Parish's (1) Supplemental Memorandum to Motion to Temporarily Lift Stay and Consolidate and (2) Order of Consolidation, which I ask that you file in connection with the above-captioned matter.

    Thanking you in advance for your cooperation, I remain

                        Sincerely,

                        CONNICK AND CONNICK, L.L.C.

                        MATTHEW D. MOGHIS

MDM/js
Attachment
cc: Thomas Sanderson/Honorable Stephen C. Grefer (thomass@24jdc.us)

**24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

**NO. 790-369**                                                                 **DIVISION "J"**

**FREDERICK ADDISON, et. al.**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, et. al.**

**FILED:** _____          _____
                                                               **DEPUTY CLERK**

**SUPPLEMENTAL MEMORANDUM TO**
**MOTION TO TEMPORARILY LIFT STAY AND CONSOLIDATE**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Jefferson

Parish, who submits this Supplemental Memorandum to its Motion to Temporarily Lift

Stay and Consolidate as follows:

Defendant previously filed a Motion to Temporarily Lift Stay and Consolidate on

May 28, 2019, which is currently set for contradictory hearing on July 25, 2019.

However, since the filing of that Motion, counsel for Plaintiffs in both this case and the

*Paul* case, Barry Neuman, has consented to consolidation.[1] Defendants, Waste

Connections US, Inc., Waste Connections Bayou, Inc., Louisiana Regional Landfill

Company, and Aptim Corp. also consent to consolidation of these matters.

Given the consent of all parties, Defendant submits that contradictory hearing on

this matter is no longer required under Louisiana Code of Civil Procedure article

1561(A):

> *The contradictory hearing may be waived upon the certification by the*
> *mover that all parties in all cases to be consolidated consent to the*
> *consolidation.*[2]

Accordingly, Defendant submits the attached Order of Consolidation for

execution in lieu of the contradictory hearing currently set for July 25, 2019.

*(Continued on next page)*

_____

[1] See email from Barry S. Neuman, dated June 3, 2019 at 4:17 PM, attached hereto and marked as
"Exhibit A."
[2] La. Code Civ. Proc. Ann. art. 1561(A).

**1 of 3**

**WHEREFORE**, Defendant, Jefferson Parish, respectfully requests this Court execute the attached Order of Consolidation, consolidating Case No. 795-404, *Mary Paul, et al. v. Louisiana Regional Landfill Company, et al.* with the above-titled matter.

Respectfully submitted,

**CONNICK AND CONNICK, LLC**

_____
WILLIAM P. CONNICK, LA. BAR NO. 14158
MICHAEL S. FUTRELL, LA BAR. NO. 20819
MATTHEW D. MOGHIS, LA BAR. NO. 33994
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone:   (504) 681-6658
Facsimile:   (504) 838-9903
E-mail:   *moghis@connicklaw.com*

*Counsel for Defendant, Jefferson Parish*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all known counsel of record in this proceeding by:

( )   Hand Delivery          ( )   Prepaid U.S. Mail
(X)   Email                  ( )   Facsimile

New Orleans, Louisiana this 4th day of June, 2019.

_____
MATTHEW D. MOGHIS

24TH JUDICIAL DISTRICT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 790-369                                                                    DIVISION "J"

FREDERICK ADDISON, et. al.

VERSUS

LOUISIANA REGIONAL LANDFILL COMPANY, et. al.

FILED: _____          _____
                                                                          DEPUTY CLERK

## ORDER OF CONSOLIDATION

**CONSIDERING** the Motion to Consolidate filed by Defendant, Jefferson Parish, as well as the Supplemental Memorandum certifying that all parties have consented to consolidation:

**IT IS ORDERED** that Case No. 795-404, *Mary Paul, et al. v. Louisiana Regional Landfill Company, et al.*, currently pending in Division "A" of the 24th Judicial District Court for the Parish of Jefferson, is consolidated with the above-titled matter, *Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al.*, No. 790-369, and should be transferred to Division "J."

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, upon execution of this Order, Jefferson Parish will submit a Motion to Transfer, attaching this Order, to Division "A," where the *Paul* case is currently pending.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that all Defendants shall have an extension of time to file responsive pleadings in the *Paul* case pending further instructions by this Court.

Gretna, Louisiana, this _____ day of _____, 2019

_____
JUDGE STEPHEN C. GREFER

**Matthew Moghis**

| | |
|---|---|
| **From:** | Neuman, Barry S. <BNeuman@wtplaw.com> |
| **Sent:** | Monday, June 3, 2019 4:17 PM |
| **To:** | Matthew Moghis; eliza@fcjlaw.com |
| **Subject:** | RE: Consolidation Requires Consent RG No Hearing (Addison/Paul) |

Matt —  You may represent that all plaintiffs in the Paul and (now-consolidated) Addison petitions consent to consolidation of the Paul petition.

*Barry S. Neuman*
Whiteford, Taylor & Preston LLP
1800 M Street NW
Suite 450N
Washington, DC 20036
Tele:  202.659.6761
Fax:   202.327.6151

**From:** Matthew Moghis <moghis@connicklaw.com>
**Sent:** Monday, June 3, 2019 3:56 PM
**To:** Neuman, Barry S. <BNeuman@wtplaw.com>; eliza@fcjlaw.com
**Subject:** [EXTERNAL] Consolidation Requires Consent RG No Hearing (Addison/Paul)

Barry,

Will call you momentarily, but, following up on our conversation, please see below.

"The contradictory hearing may be waived upon the certification by the mover that all parties in all cases to be consolidated consent to the consolidation."

Art. 1561. Consolidation for trial, LA C.C.P. Art. 1561

Given this, I think we would need to have something from you saying that you consent to consolidation rather than that you will not oppose it. We are happy to file a supplemental pleadings with the Court regarding either, but I think simply stating that you don't plan to oppose it will not change the requirement that we need to attend the hearing.

Practically, I'm not sure there is any difference to your clients if you note your consent rather than absence of opposition, unless I'm missing something...?

I will call you momentarily.

Matthew D. Moghis
**Connick and Connick, L.L.C.**
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana  70002
Telephone:   (504) 681-6658
Facsimile:   (504) 838-9903

1



FILED FOR RECORD 06/07/2019 11:58:12
Jessica F. Matherne, DY CLERK
JEFFERSON PARISH, LA

**24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON**

**STATE OF LOUISIANA**

NO. 790-369                                                 DIVISION "J"

**FREDERICK ADDISON, ET AL**

**VERSUS**

**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL**

FILED:_____          _____
                                                                          **DEPUTY CLERK**

## ORDER

This matter came for hearing before the Court on May 9, 2019, on various motions filed by the parties. The only matter taken under advisement was Plaintiffs' Motion to Permanently Lift the Stay. All other matters taken up at the hearing were ruled upon and resolved as articulated in the Court's Judgment dated May 22, 2019.

PRESENT:   Barry Neuman, Charles Foster, S. Eliza James, and Byron Forrest
           **Counsel for Plaintiffs**

           Michael Mims, David R. Taggart, and Megan Brillault
           **Counsel for Defendant, Waste Connections Bayou Inc.**

           Matthew Moghis,
           **Counsel for Defendant, Parish of Jefferson**

On February 6, 2019, the Court granted the Defendants' Exception of Lis Pendens under La. C.C.P. art. 532 and in its discretion stayed all proceedings in this case. Plaintiffs filed a supervisory writ with the appellate court for review of this Court's decision. The Fifth Circuit in denying the writ stated, "After thorough review, we find that based on the posture of the cases at the time the trial court rendered its decision, the trial court did not err as a matter of law by finding an identity of parties existed between the plaintiffs in the present matter and the plaintiffs in the federal class actions...We further find that the trial court did not abuse its discretion by granting a stay pending resolution of remand and class certification issues in the federal class actions."

Additional related actions were filed in the Twenty-Fourth Judicial District Court; thereafter, Defendants filed a Motion to Temporarily Lift the Stay in order for this Court to grant an order consolidating all of these related cases. The Motion to Temporarily Lift the Stay and the

1

Motion to Consolidate were granted without opposition. Also following the Fifth Circuit's decision, Plaintiffs filed a Motion to Permanently Lift the Stay in light of a newly proposed class definition in the federal class actions. Although Plaintiffs requested the stay to be lifted permanently, no party filed any pleading to reconsider the Court's granting of the Lis Pendens Exception. Therefore, this Court is left only with deciding whether the previously ordered stay should be lifted.

Plaintiffs' request to modify the stay is based on a change to the proposed class definition for the federal class actions. The proposed new class definition includes:

> All persons domiciled in and/or residing in the Parish of Jefferson, State of Louisiana, who have sustained legally cognizable damages in the form of nuisance, trespass, interference with the enjoyment of their properties, and/or diminution in the value of their properties as a result of the emission of noxious odors from the Jefferson Parish Landfill into and/or onto their persons and/or properties (except for Defendants' employees and relevant court personnel).
> A more precise definition of the proposed class, including its geographic boundaries, will be set forth in Petitioners/proposed Class Representatives' class certification motion and supporting evidence.

Plaintiffs argue that this class definition will exclude personal injury claims made by the putative class members, thus denying them the chance to recover potential damages. The wording of the class definition does not, on its face, necessarily exclude personal injury claims. Subsequent to the hearing, the Court conducted a phone conference with counsel for each of the parties, on May 31, 2019, in response to email correspondence that was submitted to the Court by defendant Waste Connections and Plaintiffs.[1] In its email, Waste Connections made the Court aware that the federal class action plaintiffs filed a memorandum in opposition to a motion to dismiss filed by the federal class action defendants, whereby the plaintiffs asserted they would seek damages for a number of different types of injuries, sounding in personal injury claims, and a cause of action under general negligence principals. Based upon the continued litigation and pleadings being filed in the federal class actions, the Court does not believe its prior analysis under *Asoila v. Louisiana Citizens Prop. Ins. Corp.*, 14-1708 (La. 10/14/15), 180 So.3d 266, should be modified.

However, the analysis does not end with the granting of the exception. La. C.C.P. art. 532 grants discretion to the Court to stay the state court proceedings pending resolution of the federal case. Previously, the Court exercised that discretion, finding that it placed a significant burden on the defendants to defend actions in state and federal court simultaneously. At that time, there was

---

[1] During the phone conference, the parties agreed to waive any objections to the Court considering the content and arguments contained in said emails.

also the possibility that the cases would be remanded shortly, thus mandating only a short stay of the state court proceedings. Since that decision, the federal court denied the Motion to Remand and the defendants are opposing class certification. Additionally, the defendants sought a stay in federal court pending the results of a Louisiana Department of Environmental Quality investigation. Accordingly, it appears that little, if any, of the defendants' efforts are directed to the merits of the plaintiffs' claims regarding either liability or damages.

Moreover, in light of the strict requisites outlined in Federal Rule 23(b) and interpreting caselaw, it is possible that a class may never be certified in the federal cases. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it **does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.**" **(Emphasis added.)** *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011); *see also*, *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (5th Cir. 2012). Plaintiffs have alleged various levels of personal injury from minor to severe. Presumably, the federal court plaintiffs would have similar disparity in their injuries. Thus, uniform monetary awards seem unlikely.

Based upon these factors it appears that the Court's concerns that denying the stay would be placing an undue burden on the defendants and their resources is now outweighed by the possibility of an indeterminable and possibly lengthy stay of the state court proceedings. The Court must consider the impact of a stay on both the defendants and the plaintiffs and believes that for the reasons stated the current posture of the federal and state court proceedings dictate that the Court not exercise its discretion to stay the state court cases at this time. To indefinitely delay Plaintiffs' ability to pursue their claims, while Defendants are seeking to dismiss or stay the federal actions and in which the putative class members may not ever obtain class certification, would be inequitable.

Should class certification take place in the federal actions and should the definition of that certified class include the Plaintiffs in these consolidated state cases, this Court would be willing to reconsider its ruling herein. Until such time, the Court lifts the stay previously ordered.

Therefore, after considering the pleadings, evidence, applicable law, and arguments of counsel, **IT IS ORDERED, ADJUDGED, and DECREED** that the Motion to Permanently Lift the Stay is hereby **GRANTED**.

Gretna, Louisiana, this _____7th_____ day of _____June_____, 2019.

_____
**HONORABLE STEPHEN C. GREFER**
**DISTRICT COURT JUDGE**