## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**     **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-7889**<br>    **c/w 18-8071,**<br>    **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,**     **Defendants** | **SECTION: "E" (5)** |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**     **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-11133**<br>    **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**     **Defendants** | **SECTION: "E"(5)** |

*Applies to: All Cases*

## <u>ORDER AND REASONS</u>

Defendants in all cases jointly filed a motion in limine to exclude certain expert testimony by Dr. Jaana Pietari and Nestor Soler.[1] Plaintiffs in all cases jointly filed an opposition.[2] Defendants in all cases have jointly filed a reply.[3]

---

[1] No. 18-7889, R. Doc. 166; No. 19-11133, R. Doc. 207.
[2] No. 18-7889, R. Doc. 181; No. 19-11133, R. Doc. 221.
[3] No. 18-7889, R. Doc. 196; No. 19-11133, R. Doc. 236.

Plaintiffs in all cases filed a motion in limine to exclude certain expert testimony by Dr. Tarek Abichou and Dr. Paolo Zannetti.[4] Defendants in all cases jointly filed an opposition.[5] Plaintiffs in all cases jointly filed a reply.[6]

Plaintiffs in all cases filed a motion in limine to exclude certain expert testimony by Barry Kline and Gale Hoffnagle.[7] Defendants in all cases jointly filed an opposition.[8] Plaintiffs in all cases jointly filed a reply.[9]

Plaintiffs in all cases filed a motion in limine to exclude certain expert testimony by Jeffrey Marshall.[10] Defendants in all cases jointly filed an opposition.[11] Plaintiffs in all cases jointly filed a reply.[12]

Plaintiffs in all cases filed a motion in limine to exclude certain expert testimony by Dr. Karen Vetrano and Dr. John Kind.[13] Defendants in all cases jointly filed an opposition.[14]

Plaintiffs in all cases filed a motion in limine to exclude certain expert testimony by Matthew Stutz.[15] Defendants in all cases jointly filed an opposition.[16]

Plaintiffs in all cases filed a motion in limine to exclude certain expert testimony by Dr. Mark Yocke.[17] Defendants in all cases jointly filed an opposition.[18]

---

[4] No. 18-7889, R. Doc. 169; No. 19-11133, R. Doc. 209.
[5] No. 18-7889, R. Doc. 183; No. 19-11133, R. Doc. 223.
[6] No. 18-7889, R. Doc. 200; No. 19-11133, R. Doc. 233.
[7] No. 18-7889, R. Doc. 170; No. 19-11133, R. Doc. 210.
[8] No. 18-7889, R. Doc. 182; No. 19-11133, R. Doc. 222.
[9] No. 18-7889, R. Doc. 194; No. 19-11133, R. Doc. 232.
[10] No. 18-7889, R. Doc. 171; No. 19-11133, R. Doc. 212.
[11] No. 18-7889, R. Doc. 187; No. 19-11133, R. Doc. 227.
[12] No. 18-7889, R. Doc. 193; No. 19-11133, R. Doc. 234.
[13] No. 18-7889, R. Doc. 172; No. 19-11133, R. Doc. 211.
[14] No. 18-7889, R. Doc. 185; No. 19-11133, R. Doc. 225.
[15] No. 18-7889, R. Doc. 173; No. 19-11133, R. Doc. 213.
[16] No. 18-7889, R. Doc. 186; No. 19-11133, R. Doc. 226.
[17] No. 18-7889, R. Doc. 174; No. 19-11133, R. Doc. 224.
[18] No. 18-7889, R. Doc. 184; No. 19-11133, R. Doc. 224.

Plaintiffs in all cases filed a motion in limine to exclude certain expert testimony based on data compiled by SCS Engineers.[19] Defendants in all cases jointly filed an opposition.[20] Plaintiffs in all cases jointly filed a reply.[21]

The Court has considered the briefs, the record, and the applicable law and now issues its ruling.

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors Plaintiffs allege were emitted in 2017 and 2018.[22] Plaintiffs, who are Jefferson Parish residents, filed several class action and individual lawsuits in 2018 that were consolidated into these cases.[23] Plaintiffs sue Jefferson Parish, which owns and contracts with others to operate the Landfill; Aptim Corporation, which manages the gas and leachate collection systems of the Landfill; and three entities that operate the Landfill: Louisiana Regional Landfill Company (formerly known as IESI LA Landfill Corporation); Waste Connections Bayou, Inc. (f/k/a Progressive Waste Solutions of LA, Inc.); and Waste Connections US, Inc.[24] In their complaints, Plaintiffs allege odors from the Landfill have unreasonably interfered with their use and enjoyment of immovable property in violation of Louisiana law.[25]

## LEGAL STANDARD

Under Federal Rules of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[19] No. 18-7889, R. Doc. 176; No. 19-11133, R. Doc. 208.
[20] No. 18-7889, R. Doc. 188; No. 19-11133, R. Doc. 228.
[21] No. 18-7889, R. Doc. 202; No. 19-11133, R. Doc. 231.
[22] No. 18-7889, R. Doc. 48 ¶ 6; No. 19-11133, R. Doc. 109 ¶ 1.
[23] *See* No. 18-7889, R. Doc. 48; No. 19-11133, R. Doc. 109.
[24] No. 18-7889, R. Doc. 48 ¶ 2; No. 19-11133, R. Doc. 109 ¶ 2.
[25] No. 18-7889, R. Doc. 48 ¶¶ 26-27; No. 19-11133, R. Doc. 109 ¶¶ 22-52.

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.[26]

Testimony from a qualified expert is admissible only if it is both relevant and reliable.[27] The threshold inquiry is whether the expert possesses the requisite qualifications to render an opinion on particular subject matter.[28] If the expert's qualifications are found to be sufficient, the court then must examine whether the expert's opinions are reliable and relevant.[29]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* provides the analytical framework for determining whether expert testimony is admissible under Rule 702.[30] Under Rule 702 and *Daubert*, district courts are tasked with a gatekeeping role, requiring the court to ensure that the expert's opinion is both relevant and reliable before it may be admitted.[31] To reach this finding, the Court must evaluate whether the "reasoning and methodology underlying the [expert's] testimony is valid and can be reliably applied to the facts of the case."[32] The Court also "must be assured that the proffered witness is qualified to testify by virtue of his

---

[26] Fed. R. Evid. 702.
[27] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).
[28] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 799 (E.D. La. 2011). *See also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").
[29] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).
[30] 509 U.S. 579 (1993).
[31] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert*, 509 U.S. at 592–93).
[32] *United States v. Valencia*, 600 F.3d 389, 423–24 (5th Cir. 2010).

'knowledge, skill, experience, training, or education.'"[33] The party offering the expert opinion must prove by a preponderance of the evidence that Rule 702 is satisfied.[34]

In *Daubert*, the Supreme Court enumerated several non-exclusive factors courts may consider in evaluating the reliability of expert testimony.[35] These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community.[36] Generally, reliable scientific theories are those that have been formulated, studied, measured, and tested scientifically so as to accomplish the following: establish the validity or invalidity of the theory, and identifying the known or potential rate of error in application of the theory; the results of the rigorous testing of the theory have been submitted for peer review and, optimally, have been published in a peer reviewed journal; and the theory has been generally accepted by the scientific community.[37] The district court has broad latitude in making determinations regarding the admissibility of expert testimony and theories.[38]

## LAW AND ANALYSIS

For the most part, the parties' objections go to the weight of the experts' testimony. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the

---

[33] *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702).
[34] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[35] *Daubert,* 509 U.S. at 592–96.
[36] *Bocanegra v. Vicmar Servs. Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 593–94).
[37] *See Daubert*, 509 U.S. 579.
[38] *See, e.g., Kumho Tire*, 526 U.S. 137, 151–53 (1999).

adversary system."[39] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[40] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [factfinder's] consideration."[41] "Furthermore, experts may rely on one version of disputed facts in forming their opinions."[42] Even "arguments [that] attack the weight of [an expert's] methodology . . . may be explored on cross-examination."[43] It is "the role of the adversarial system, not the court, to highlight weak evidence."[44] "Courts break from this general rule in exceptional circumstances, such as when an expert's testimony relies on 'completely unsubstantiated factual assertions.'"[45]

Moreover, the Court's "role as the 'gate-keeper' is diminished in a bench trial."[46] "[T]he purpose of *Daubert* motion[s] is 'to ensure that only reliable and relevant expert testimony is presented to the jury.'"[47] "Thus, '[m]ost of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of

---

[39] *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996).

[40] *Daubert*, 509 U.S. at 596; *see also 14.68 Acres of Land*, 80 F.3d at 1078 (quoting *Daubert*, 509 U.S. at 596).

[41] United States v. 14.38 Acres of Land, 80 F.3d 1074, 1077 (5th Cir. 1996).

[42] *McCrary v. John W. Stone Oil Distrib., L.L.C.*, No. 14-880, 2016 WL 760744, at *3 (E.D. La. Feb. 26, 2016) (first citing *Moore v. Int'l Paint, L.L.C.*, 547 Fed. App'x 513, 515 (5th Cir. 2013); and then *citing Paz v. Brush Engineered Materials, Inc.*, 482 F.3d 383, 389 (5th Cir. 2009)).

[43] *See Henson v. Deepwell Energy Sers., LLC*, No. 20-141, 2021 WL 3388036, at *10 (E.D. La. June 14, 2021); *see also Dutch Bro LLC v. DucthPro B.V.*, No. A-16-CV-509-LY, 2017 WL 7052291, at *5 (W.D. Tex. Oct. 31, 2017) ("Given Plaintiff's explanation for the expert's methodology  and the fact that this case will be tried to a bench experienced in evaluating expert testimony, Defendant's concerns about the expert's methodology will be best addressed through 'vigorous cross-examination [and] presentation of contrary evidence.'" (quoting *Daubert*, 509 U.S. at 596)).

[44] Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 563 (5th Cir. 2004).

[45] *McCrary*, 2016 WL 760744, at *3 (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 n.4 (5th Cir. 2007)).

[46] *Kinnerson v. Arean Offshire, LP*, No. 16-720, 2019 WL 2571627, at *2 (E.D. La. June 21, 2019).

[47] *Thompson v. Rowan Cos., Inc.*, No. 06-3218, 2007 WL 724646, at *1 (Barbier, J.) (quoting *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 506 (5th Cir.1999), *superseded by statute on other grounds*, Fed. R. Evid. 103(a)).

fact in place of a jury.'"[48] "'*Daubert* requires a binary choice-admit or exclude-and a judge in a bench trial should have discretion to admit questionable technical evidence, though of course [s]he must not give it more weight than it deserves."[49]

The Court does note with respect to Dr. Vetrano and Dr. Kind that their testimony is in part intended to rebut that of Plaintiffs' expert, Dr. Susan Schiffman, concerning the physiological effects caused by exposure to odors from the Landfill.[50] However, the Court has limited Dr. Schiffman to testimony regarding "the psychological effects of exposure to odors on humans" and certain related symptoms.[51] To the extent Dr. Vetrano and Dr. Kind's testimony relates to topics on which the Court has prevented Dr. Schiffman from opining, Dr. Vetrano and Dr. Kind's testimony is irrelevant and excluded.  Additionally, to the extent Dr. Vetrano and Dr. Kind's testimony is cumulative of each other and Dr. Pamela Dalton's criticisms of Dr. Schiffman's opinions, Dr. Vetrano and Dr. Kind's testimony is excluded.

The Court also notes that, in their motion to exclude data compiled by SCS Engineers, Plaintiffs argue the data should be excluded for failure to supplement disclosures under Federal Rule of Civil Procedure 37.[52] Several of Defendants' experts rely on the SCS data. However, at the pre-trial conference, Plaintiffs admitted they received the SCS data in the May 2020 production of documents and were provided the relevant Bates numbers for these documents in a list of the documents reviewed by the

---

[48] *Id.* (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)).
[49] *Id.* (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1042 (N.D. Ill. 2003)).
[50] No. 18-7889, R. Doc. 185 at 3-4 (citations omitted) ("While Plaintiffs concede in their motion that JPLF emissions are not of 'toxicological concern,' they have not withdrawn their claims for physical injuries, their wrongful death action(s), or their expert's opinions asserting that the JPLF is the 'major contributor' to adverse health conditions. Unless and until Plaintiffs do so, Dr. Kind and Dr. Vetrano's opinions on the (lack of) potential for adverse health effects remain relevant."); No. 19-11133, R. Doc. 225 at 3-4 (same).
[51] No. 18-7889, R. Doc. 214 at 3-4; No. 19-11133, R. Doc. 249 at 3-4.
[52] No. 18-7889, R. Doc. 176; No. 19-11133, R. Doc. 208.

representative of Waste Connections Bayou, Inc. and Waster Connections US, Inc. in advance of his November 20, 2020, deposition. Furthermore, Plaintiffs were informed Defendants' experts were relying on the SCS data when expert reports were exchanged in March and April 2021. Plaintiffs had ample opportunity to request relief from the Court to address any disclosure issues. In fact, Plaintiffs requested a status conference in August 2021 regarding other data that Defendants disclosed late.[53] At that time, the Court allowed Plaintiffs' experts to provide supplemental reports. No mention was made at that time of the SCS data.

In determining whether evidence should be excluded, a court generally considers: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."[54] Because the Plaintiffs actually received the SCS data in 2020 and knew Defendants' experts were relying on it in March and April of 2021, the prejudice to Plaintiffs does not justify exclusion of the SCS data in light of the importance of the data to Defendants. .[55]

## CONCLUSION

**IT IS ORDERED** that all Plaintiffs' motion to exclude certain testimony of Dr. Karen Vetrano and Dr. John Kind[56] is **GRANTED IN PART**, to the extent the Court excludes testimony related to topics on which the Court has prevented Dr. Susan Schiffman from opining and to the extent testimony is cumulative.

---

[53] *See* No. 18-7889, R. Docs. 159 (minute entry allowing Plaintiffs' experts to provide supplemental reports for data taken at the Landfill on or about October 2, 2019); No. 19-11133, R. Doc. 199 (same).
[54] *Texas A & M Research Foundation v. Magna Transp. Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).
[55] Admittedly, it would have been better practice for the Defendants to have highlighted the production of the SCS data in their May 2020 production of documents and in the list of documents provided in advance of the November 20, 2020, deposition.
[56] No. 18-7889, R. Doc. 172; No. 19-11133, R. Doc. 211.

**IT IS FURTHER ORDERED** that all Defendants' motion in limine to exclude certain expert testimony by Dr. Jaana Pietari and Dr. Nestor Soler is **DENIED**.[57]

**IT IS FURTHER ORDERED** that all Plaintiffs' motions in limine to exclude certain expert testimony by Dr. Tarek Abichou and Dr. Paolo Zannetti,[58] Barry Kline and Gale Hoffnagle,[59] Jeffrey Marshall,[60] Matthew Stutz,[61] Dr. Mark Yocke,[62] and that testimony based on data compiled by SCS Engineers[63] are **DENIED**.

**New Orleans, Louisiana, this 8th day of November, 2021.**

SUSIE MORGAN

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[57] No. 18-7889, R. Doc. 166; No. 19-11133, R. Doc. 207.
[58] No. 18-7889, R. Doc. 169; No. 19-11133, R. Doc. 209.
[59] No. 18-7889, R. Doc. 170; No. 19-11133, R. Doc. 210.
[60] No. 18-7889, R. Doc. 171; No. 19-11133, R. Doc. 212.
[61] No. 18-7889, R. Doc. 173; No. 19-11133, R. Doc. 213.
[62] No. 18-7889, R. Doc. 174; No. 19-11133, R. Doc. 214.
[63] No. 18-7889, R. Doc. 176; No. 19-11133, R. Doc. 208.

9