UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**<br>      Plaintiff<br><br>**VERSUS**<br><br>**WASTE CONNECTIONS BAYOU, INC., ET AL.,**<br>            Defendants<br><br>*Related Case:*<br><br>**FREDERICK ADDISON, ET AL.,**<br>      Plaintiffs<br><br>**VERSUS**<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>            Defendants<br><br>*Applies to: Both Cases* | CIVIL ACTION<br><br>NO. 18-7889<br>c/w 18-8071,<br>18-8218, 18-9312<br><br><br>SECTION: "E" (5)<br><br><br><br>CIVIL ACTION<br><br>NO. 19-11133, c/w 19-14512<br><br>SECTION: "E" (5)<br><br><br>JUDGE: Morgan<br>MAGISTRATE JUDGE: North |

## PLAINTIFFS' RULE 26(a) INITIAL DISCLOSURES

The following disclosures are made based on the information reasonably available to the initial trial plaintiffs (the "Trial Plaintiffs") as of the date hereof. Accordingly, Plaintiffs reserve all rights, consistent with Federal Rule of Civil Procedure 26(e), to modify, amend, and/or supplement the disclosures made herein as additional evidence and information become available.

By making these disclosures, Plaintiffs do not represent that they are identifying every document, tangible thing, or witness possibly relevant to this lawsuit. Rather, these disclosures represent a good faith effort to identify information they reasonably believe at this time that they may use to support their claims or defenses, as required by Rule 26(a)(1). Plaintiffs do not waive their rights to object to the production of any document or tangible thing disclosed herein on the basis of any privilege, the work product doctrine, relevancy, undue burden, or any other valid

EXHIBIT C

49. Documents to be produced by Stearns, Conrad & Schmidt;

50. Documents to be produced by Pivotal Engineering;

51. Any documents subpoenaed by the defendants;

52. Any and all medical records regarding the Trial Plaintiffs produced in this action;

53. All correspondence sent to Plaintiffs from Defendant;

54. All documents identified in Plaintiffs' Initial Disclosures;

55. All documents identified in Defendants' Initial Disclosures;

56. All documents filed into the record by Defendants;

57. Plaintiffs' investigation is ongoing and it is likely that there will be additional documents and tangible things identified. Plaintiffs reserve their right to supplement this response, in a timely manner, should additional information become available.

**(C)    Rule 26 (a)(1)(A)(iii) – Information Related to Calculation of Damages**: Plaintiffs each seek damages for (1) psychological effects, and the physiological bases for same, including (a) headaches, (b) nausea, (c) vomiting, (d) loss of appetite, (e) sleep deprivation, (f) dizziness, (g) fatigue, (h) anxiety and worry, and for (2) loss of use and enjoyment of their property and interference with their overall quality of life. Plaintiffs measure those damages in two components:

1. Daily damages of at least $500 per day for each plaintiff for 942 days (the relevant period) for constant exposure to the existence, unpredictable recurrence and/or fear of recurrence of the malodors, because, while an onslaught of malodors may not have occurred or recurred, or been of the same duration or intensity, each day, the malodors permeated the Plaintiffs' homes, heating and cooling systems and personal property so that they were present each day and caused the psychological and associated physiological damages to each Plaintiff each day. While one or more plaintiffs may have been away from their property for short periods, such absences were caused by the malodors and/or plaintiffs are still entitled to daily damages because their anxiety

concerning recurrence and the effect of the malodors was still present and the malodors deprived plaintiffs of the use and enjoyment of their property and their overall quality of life was decreased, whether they were present or not. Further, the recurrent nature of the onset of new waves of malodors and the variability of their potency intensified their psychological effect and added to the anxiety of uncertainty as to when the next onslaught would occur for each Plaintiff. In other words, the intermittent and unpredictable nature of the landfill malodors intensified the stressor which increased the poignancy of that stimulus. Similarly, both the persistence of the malodors in their homes and the recurring, but unpredictable, waves of malodors deprived each Plaintiff each day of his or her use and enjoyment of their property and interfered with their quality of life. $500 per day is the minimum that any Plaintiff should receive for having been exposed to, and having to suffer from, the entire history of the malodors in this case.

2. Occurrence damages of at least $300 per occurrence when a plaintiff was forced to endure a specific onslaught of malodors above the threshold established by the Court, i.e., malodors caused by concentrations of H2S at or above 5 ppb on average for 30 minutes or more.

In the case of the Gremillions, the expenses and out of pocket costs which they incurred in having to move from River Ridge to Seneca, SC because of the malodors, in the amount to be determined and supplemented, but not likely to exceed $150,000.00.

**(D)** **Rule 26 (a)(1)(A)(iv) – Insurance Agreements**: For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part

27