Page 1

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3
    FREDERICK ADDISON, ET AL.,    CIVIL ACTION NO.
 4           Plaintiffs,          19-11133,
    VS.                           C/W 19-14512
 5
    LOUISIANA REGIONAL            SECTION: "E"(5)
 6  LANDFILL COMPANY, ET AL.,
             Defendants.          JUDGE:  MORGAN
 7
                                  MAGISTRATE JUDGE:
 8                                NORTH
 9  * * * * * * * * * * * * * * * * * * * * * * *
10
11       The videotaped deposition of JONATHAN TATE,
12   taken in connection with the captioned cause,
13   pursuant to the following stipulations before
14   RITA A. DEROUEN, Certified Court Reporter, on the
15   4th of April, 2023, beginning at 12:29 p.m.
16
17
18
19
20
21
22
23
24
25
```

EXHIBIT 5

Page 139

1       A.   No.
2            MR. CHILDERS:
3                 Sorry, that was just funny.
4    BY MR. PAUL:
5       Q.   So you might not -- so like if it was a
6    big party, you wouldn't drink a lot during like a
7    big party or something?
8            MR. CHILDERS:
9                 Objection; form.
10      A.   No, sir.
11   BY MR. PAUL:
12      Q.   What about marijuana?
13           MR. CHILDERS:
14                Objection; form.  What about it?
15           MR. PAUL:
16                All right, let me start over.
17           MR. CHILDERS:
18                Yeah, thanks.
19   BY MR. PAUL:
20      Q.   During the time period 2015 through 2020,
21   do you -- did you use marijuana?
22           MR. CHILDERS:
23                Objection.  I'm going to ask you to
24           proffer the relevance of that.  You're
25           asking him in a deposition whether or not

Page 140

1  he's used an illegal drug, and it has
2  nothing to do with this case.  So...
3  MR. PAUL:
4      I think the relevance is obvious,
5  Masten.
6  MR. CHILDERS:
7      I don't.  I'm asking you to proffer
8  it.  What is the relevance?
9  MR. PAUL:
10     The relevance is that we would be
11 talking about an aromatic smoke-inducing
12 substance inside the house or on the
13 property during a time period when he's
14 complaining about odors, so it would have
15 an effect on the odors.
16 MR. CHILDERS:
17     I'm going to think about that one.
18 Why don't you put a pin in it and we can
19 come back to it.  Is that cool?
20     If not, then I'm going to instruct him
21 not to answer and we can talk about it
22 later and maybe you can ask him it later,
23 but I want to think about it.
24 MR. PAUL:
25     Okay.

1      MR. CHILDERS:
2           Okay?
3      MR. PAUL:
4           I'll come back to it regardless.
5      MR. CHILDERS:
6           That's fine.
7      MR. MOGHIS:
8           I'm wondering if, while we are still
9      within business hours, we may just need to
10     give a quick call.  Because I know y'all
11     did that a couple of times yesterday, and
12     I don't --
13     MR. CHILDERS:
14          We did it once, and it was on a
15     totally unrelated issue.  If you want to
16     have this discussion off the record, we
17     can.  But if you -- I've asked him to
18     proffer, I don't agree.
19     MR. MOGHIS:
20          Well, on this one, I'm not sure
21     there's a basis of him not to answer.
22     MR. CHILDERS:
23          I'd like to think about it.  It's not
24     your question.  If you'd like --
25     MR. MOGHIS:

```
 1              I'm asking the same question.  I mean,
 2         it's certainly reasonably calculated to
 3         lead to the discovery of admissible
 4         evidence.  He's claiming an upper
 5         respiratory infection at some point.  He's
 6         also complained of smells, which marijuana
 7         smells when you smoke.  We're entitled to
 8         know that.
 9    MR. CHILDERS:
10              Is your position that upper
11         respiratory infections are valid claims in
12         this case still?
13    MR. MOGHIS:
14              Our position is that he's making these
15         claims about these symptoms that can be
16         brought on by marijuana use.
17    MR. CHILDERS:
18              Okay.  Then I would ask that we take a
19         break and let me take a look at a couple
20         things, and then I'll come back to you.
21    MR. PAUL:
22              We do have a question pending.
23    MR. CHILDERS:
24              I've asked you to proffer.  I don't
25         agree with your argument on relevance.
```

1  I'd like to take a look at a couple of
2  things and we can come back on the record.
3  He can sit right here.
4  MR. MOGHIS:
5      As long as he doesn't go --
6  MR. CHILDERS:
7      I don't need to talk to him.  I need
8  to take a look at a couple of things.
9  MR. PAUL:
10     Okay.
11 MR. CHILDERS:
12     Okay.
13 THE VIDEOGRAPHER:
14     We are off the record at 3:25 p.m.
15 (A break was taken from 3:25 p.m. to
16 3:35 p.m.)
17 THE VIDEOGRAPHER:
18     We are back on the record at 3:35 p.m.
19 MR. CHILDERS:
20     John, if you don't mind, please reask
21 your question.
22 MR. PAUL:
23     Can you read the question back,
24 please.
25 THE COURT REPORTER:

Page 144

1           Question: "During the time period
2       2015 through 2020, did you use marijuana?
3           MR. CHILDERS:
4               Go ahead.  Objection; form.  You can
5       answer.
6       A.  No.  I have too much to lose.
7   BY MR. PAUL:
8       Q.  So during that time period, you did not
9   use marijuana?
10          MR. CHILDERS:
11              Objection; form.
12      A.  No.  I've never used marijuana.
13  BY MR. PAUL:
14      Q.  Have you ever posted information -- sorry.
15          Have you ever done a Facebook post that
16  related to marijuana use?
17          MR. CHILDERS:
18              Objection; form.
19      A.  Can you elaborate on that.
20  BY MR. PAUL:
21      Q.  Have you ever posted images of marijuana
22  or images of marijuana use on your Facebook
23  account?
24          MR. CHILDERS:
25              Objection; form.

Page 145

1    A.  I haven't posted a picture of marijuana
2    use.  I might share a post that somebody else
3    shared that probably had a picture of something.
4    I don't -- can't recall exactly.  But me
5    personally, I haven't posted any kind of marijuana
6    use.
7    BY MR. PAUL:
8        Q.  In your house, do you or any members of
9    your family use any other recreational drugs?
10             MR. CHILDERS:
11                  Objection; form.  Listen, I'm going to
12             ask you to proffer the relevance of any
13             other recreational drugs.  You're asking
14             him to testify about whether anybody in
15             his family uses illegal drugs.  I don't
16             think that's relevant to his claims.
17                  If you can proffer why they are,
18             great, I can think about it; if not, then
19             I'm going to shut this deposition down,
20             we're going to seek a protective order,
21             and we'll see you tomorrow.
22             MR. PAUL:
23                  Same relevance.  His ability to
24             perceive odors, any other creation of
25             odors within the house, any activities

1      that would affect his perception of odors
2      or his reaction to any stimuli or his
3      health conditions.
4           MR. CHILDERS:
5               Then you need to specify which drug
6           and then we can go step by step.  But I
7           need a separate proffer for each drug.
8           You can't say blanket recreational drugs,
9           because I don't think that's a fair
10          question.  So...
11          MR. PAUL:
12              Let me rephrase the question.
13  BY MR. PAUL:
14     Q.   During the time period between 2015 and
15  2020, did you use any other smoking drug within
16  the house -- within your house?
17          MR. CHILDERS:
18              Objection; form.  Proffer to me why
19          you have to qualify it with a drug.  Why
20          can't it just be smoke anything?  What's
21          the relevance of it being a drug?
22          MR. PAUL:
23              Because it would affect his
24          perceptions and it would affect his
25          health.

Page 147

1        MR. CHILDERS:
2            How so?
3        MR. PAUL:
4            What do you mean, how so?
5        MR. CHILDERS:
6            What drug and how would that
7        particular drug affect a perception or his
8        ability to however you phrased it?
9        MR. PAUL:
10           Do we want to go through a laundry
11       list of drugs here?
12       MR. CHILDERS:
13           I mean, I'm not sure there's relevance
14       with -- you're not -- I'm not -- your
15       proffer isn't sufficient when it comes to,
16       Have you smoked any drug, right?  Like
17       isn't your relevance whether or not he's
18       smoked anything, sage, marijuana, incense?
19       MR. PAUL:
20           "Drug" is not too precise a term here.
21       MR. CHILDERS:
22           But you said recreational drug.  So
23       what's the relevance of it being a
24       recreational drug as opposed to incense or
25       sage or something else that is being

1        smoked in the home?
2        MR. PAUL:
3            Again, the affect on senses and the
4        ability to perceive and one's reactions to
5        sensory stimuli.
6        MR. MOGHIS:
7            And I'm also going to add, I mean,
8        some of the symptoms that he's
9        representing that he has related to the
10       landfill, anxiety, vomiting, those are
11       also things that can be brought about by
12       drug use or whatever he may be ingesting.
13       So I'm going to proffer that for relevance
14       as well.
15       THE WITNESS:
16           Let me ask you a question.
17       MS. JAMES:
18           Hang on.
19       MR. CHILDERS:
20           What's the -- look, I'm going to let
21       you ask the question or have her read it
22       back one more time.  It's about to the
23       point where this is borderline harassment,
24       and I am going to shut it down and seek a
25       protective order and we'll see you

Case 2:19-cv-11133-SM-MBN Document 437-5 Filed 11/20/23 Page 12 of 14

JONATHAN TATE

Page 149

```
1           tomorrow.  But go ahead, let's see how he
2           answers.
3        MR. PAUL:
4           Can you read that question back.
5        THE COURT REPORTER:
6           Question:  "During the time period
7           2015 through 2020, did you use any other
8           smoking drug within the house -- within
9           your house?"
10     A.   To answer the question, I have not used
11   any kind of smoking drug in my house.  I haven't
12   used any kind of recreational or any other drug,
13   never have and never will.
14   BY MR. PAUL:
15     Q.   And, of course, that response will be
16   qualified by the prescription drugs that you did
17   take, right?
18        MR. CHILDERS:
19           Objection; form.
20   BY MR. PAUL:
21     Q.   I mean, you have taken prescription drugs,
22   right?
23     A.   Yes, but nothing that would affect my
24   sensory.  What I took was cough syrup or a cough
25   suppressant medication, nothing that's going to
```

Veritext Legal Solutions
212-279-9424    www.veritext.com    212-490-3430

Page 201

1    any of those drugs -- any drug test?
2         A.   No, sir.
3         Q.   Okay.  Are you offended by the questions
4    that were asked of you today?
5         A.   I am.
6              MR. CHILDERS:
7                   I don't have any further questions.
8              Thank you very much.
9                        EXAMINATION
10   BY MR. PAUL:
11        Q.   I have a couple of follow-up questions to
12   clarify your answers to Mr. Childers' questions.
13             When you noticed that it -- you said that
14   it smelled even worse when you visited the
15   landfill, correct?
16        A.   Correct.
17        Q.   Were you on landfill property when you
18   made that observation?
19        A.   Correct.
20        Q.   Do you receive copies of those drug test
21   results or does somebody just tell you?
22        A.   No, sir, the unit gets the results, and if
23   we test positive, they post it up and we get a
24   counseling statement and go through a whole
25   process.  They tell you if you fail or not, pass

Page 74

1      A.   No.
2      Q.   Any other outdoor kind of like livestock
3  animals, like a goat or anything?
4      A.   Not that I know of.
5      Q.   Do any parts of the property around your
6  house ever become soggy?
7      A.   No.
8      Q.   So after it rains, do you get ponding on
9  the property?
10     A.   No, sir.
11     Q.   Have you ever had any issues with flooding
12  on the property?
13     A.   No, sir.
14     Q.   Have you ever had it flood in the house?
15     A.   No.
16     Q.   Have you ever had any testing done for
17  environmental conditions on your property?
18     A.   No, sir.
19     Q.   So you've never had air sampling done on
20  the property?
21     A.   No, sir.
22     Q.   What about mold, have you had any mold
23  testing?
24     A.   No, sir.
25     Q.   Have you ever had any issues with mold in