UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>Plaintiffs<br><br>VERSUS<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>Defendants<br><br>*Applies to: Both Cases* | CIVIL ACTION<br><br>NO. 19-11133, c/w 19-14512<br><br>SECTION: "E" (5)<br><br><br>JUDGE: Morgan<br>MAGISTRATE JUDGE: North |

**PLAINTIFFS' COMBINED OPPOSITION TO THE DEFENDANTS' CROSS-MOTIONS TO DISMISS DECEASED PLAINTIFFS (REC. NOS. 441 AND 442)**

Plaintiffs oppose Defendants' motions to dismiss deceased Plaintiffs Geraldine Batiste, Liz Everson, Devora Hampton, Doris Collins, Jake James, Jr., Leon Bradley, Verna Gabriel, Ernest Newell, Joseph Pete, Jr., Wiley Pinkley, Barbara Ridgely, Kerry Ridgley, Jr., Karen Ross, and David Scott. (Rec No. 441) and Paul Davis, Jr., and Warren Pickney (Rec. No. 442) (collectively "the Motions").

For the reasons stated herein, the Motions should be denied.

I.      **INTRODUCTION AND BACKGROUND FACTS.**

Throughout the pendency of this case, the substitution of deceased Plaintiffs has been treated as an administrative matter to be accomplished by consent order.[1] None of the deceased Plaintiffs are involved in the trial scheduled for August 5, 2024, and discovery relating to all of them has been stayed by the current Case Management Order. At the same time, given the number of deceased Plaintiffs; it has been logistically simpler (and easier on the parties and Court's staff)

---

[1] *See* Rec. Nos. 194 and 195 (consent motion substituting for Plaintiff Ernest Triche, Jr.); Rec Nos. 237 and 246 (consent motion and order to substitute for seven deceased Plaintiffs); Rec. Nos 314 and 315 (consent motion and order substituting for Plaintiff Linda Frickey).

1

to make multiple substitutions at once in an omnibus order, rather than in piecemeal fashion. As a result, throughout the pendency of this case, the substitution of deceased Plaintiffs has been treated as an administrative matter to be accomplished by consent order.[2]

Case Management Order #9 (entered on April 26, 2023) set a deadline of August 1, 2023, for Plaintiffs to file an amended complaint to reflect, *inter alia*, the substitutions for deceased Plaintiffs. Rec. No.385 at 2, ¶ II.3. However, Rule 25(a) provides, "If a party dies and the claim is not extinguished, the court may order substitution of the proper party." Thus, the substitution should be made by order.[3] While Rule 25(a) also contains a 90-day time period for substitution, that 90-day time period is fully waivable and is not jurisdictional. In addition, the 90-day time period runs from the date of "service of a statement noting the death," a date that is different for each of the successors and representatives. As a result, the CMO could not contain a date certain for the motion to substitute and the motion to substitute (which all parties had agreed would be a consent motion) merely needed to be done before the amended complaint so that the amended complaint could reflect all of the substitutions to date.

On May 23, 2023, Plaintiffs' counsel wrote to the Defendants, "We are preparing to file our Rule 25 substitutions for deceased plaintiffs. Please let me know if defendants agree to an ex parte consent substitution, similar to what we've done previously in this case." **Exhibit 1.** That same day, attorney Megan Brillault, responded, "Generally this should be fine. But can you please provide a list of the plaintiffs you will be substituting and who will be stepping in? in [sic] the past, I believe you have sent draft motions over with your request, but a list should be fine." **Id..** Thus, Defendants agreed in writing to a process under which substitution for deceased Plaintiffs

---

[2] *See* Rec. Nos. 194 and 195 (consent motion substituting for Plaintiff Ernest Triche, Jr.); Rec Nos. 237 and 246 (consent motion and order to substitute for seven deceased Plaintiffs); Rec. Nos 314 and 315 (consent motion and order substituting for Plaintiff Linda Frickey).

[3] This is the reason that the Case Management Order provides that substitutions be made as required by Rule 25.

2

would occur by consent order involving multiple substitutions at once, just as had been done previously.

Case Management Order #10 was entered the very next day, on May 24, 2023, and it repeated the deadline of August 1, 2023, for Plaintiffs to file an amended complaint to reflect, *inter alia*, the substitutions for deceased Plaintiffs.  Rec. No. 398.  In the current Motions, by contrast, Defendants now assert that, by May 24, 2023, the 90-day period had already run for a number of Plaintiffs (having expired, they now say, just one day earlier).  Yet Defendants filed no motion to dismiss and said nothing to indicate that they would oppose an omnibus consent order.

On June 8, 2023, upon the motion of the Defendants, the Fifth Circuit stayed all proceedings in this case.

Following the dissolution of the Fifth Circuit stay order, on August 24, 2023, and following the denial of Defendants' petition for a rehearing *en banc* in the Fifth Circuit, the parties negotiated, and the Court entered, the 11th Case Management Order, which extended the deadline for the Second Amended Complaint to November 10, 2023.  The CMO also required that Defendants be provided an advanced copy of the proposed Complaint, and provided that "comments and concerns" should be sent to Plaintiffs by November 7, 2023.  The entire purpose of the Second Amended Complaint was to consolidate all of the proper Plaintiffs into a single pleading, including the minors who had reached the age of majority and the substitution of representatives of Plaintiffs who had died.

During this time, there was no inkling from Defendants that they would go back on their prior agreement to substitute the deceased Plaintiffs by an omnibus consent order.  No demand was made to file the motion to substitute, and no motion was filed asserting that any of the deceased

Plaintiffs should be dismissed.[4]  Instead, in order to ensure that all parties were in agreement as to the identities of the Plaintiffs going forward (the whole purpose of the amendment), Defendants asked that the CMO require Plaintiffs to provide the Defendants with a draft of the Second Amended Complaint before it was filed.  Plaintiffs agreed to do so, and the Court so ordered:

> 2. On or before Friday, November 10, 2023, the Addison counsel shall file a Second Amended Complaint to reflect the substitution and dismissal of parties, and the change in status of minor Plaintiffs who have reached the age of majority. On or before Friday, November 3, 2023, the Addison counsel shall provide Defendants with a draft of the Second Amended Complaint. to, Defendants will provide to the Addison counsel any comments or concerns on the draft Second Amended Complaint on or before Tuesday, November 7, 2023, so that the parties may confer in good faith concerning any amendments prior to filing.

Rec. No. 427 at 3.

Plaintiffs provided the draft Second Amended Complaint to Defendants on November 3, 2023, as required.  On November 7, 2023, Ms. Brillault (on behalf of all Defendants) provided comments on the draft Second Amended Complaints, stating "Additionally, we do not consent to substituting the deceased Plaintiffs … *through the Second Amended Complaint only*. These substitutions must be made through the required motion to substitute pursuant to Rule 25 of the Federal Rules of Civil Procedure…."  **Exhibit 2.**  This was merely a reminder that Rule 25 provided for substitutions to be made by order.  Defendants did not say they were revoking their prior agreement to substitution by consent order, and there was no indication they would oppose the motion to substitute.

On November 8, 2023, Plaintiffs responded to the comments on the Second Amended Complaint, and notified Defendants they would circulate a consent order to reflect the substitutions for deceased Plaintiffs:

> Hi Megan,

---

[4] By this time, according to the Defendants, the 90-day time period had expired for most of the deceased Plaintiffs.  Yet there was no mention of this in the discussions of the case management order and no motion from the defendants was forthcoming.

4

> I will be circulated [sic] revised drafts incorporating the edits included in the chart below, as well as a correction in the language of paragraph 9 to reflect the original wording.
>
> Regarding the deceased plaintiffs, I will also send a separate draft of a consent motion to substitute the plaintiffs who were not previously substituted.
>
> I do not think a meet and confer is necessary since we are in agreement with your suggested revisions, however feel free to call me if you'd like to discuss in more detail.
>
> Thanks,
>
> Eliza

**Exhibit 3.** There was no response that the consent motion would not be consented to.

On the following day, November 9, 2023, Plaintiffs provided the consent motion, **Exhibit 4,** and followed that with the final version of the Second Amended Complaint. **Exhibit 5.** Again, there was no indication that the Defendants intended to oppose the consent motion to substitute.

Having not heard from the Defendants, Plaintiffs inquired at 12:59 p.m. on November 10, the due date: "Hi Megan-Do you have an idea of when I can expect comments on the motion and the complaint?" **Exhibit 6.** Ms. Brillault responded 23 minutes later, "Let me check with Katrina. She was reviewing the complaint. I'll get back to you shortly." **Id.** (Again, no mention was made that Defendants would oppose the consent motion to substitute.) Plaintiffs' counsel responded five minutes after that, "Thanks- we'll need to file the motion first so I can reference the rec doc number for the newly substituted plaintiffs." **Id.** As shown by this email, Plaintiffs were always acting under the belief that substitution would occur by consent order.

Despite these reminders that the papers needed to be filed that day, Defendants waited until 4:10 p.m. Central (after 5:00 Eastern) to respond. This was less than an hour before the close of business on the Friday due date. That response, from attorney Brillault, is set out in full:

> Hi Eliza—
>
> Thank you for sending the proposed motion to substitute. We consent to the substitution of Rashaud Robinson as legal representative for Samantha Robinson. While the 90-day deadline for substitution has passed for Plaintiffs Adeline Fitzpatrick and Dolores Richard, we consent to the substitution of legal representatives for these Plaintiffs, as set forth in your motion, because Plaintiffs

5

> provided notice to Defendants of the proposed substitutions prior to the 90-day deadline.
>
> We consent to Kerry Ridgley, Sr., proceeding as a legal representative for Barbara Ridgley. However, Kerry Ridgley, Sr.—the husband of Barbara Ridgley—is not a Plaintiff in the action, as the proposed motion states. Rather, Kerry Ridgley, Jr. is a Plaintiff in the action. We therefore do not consent to Kerry Ridgley, Sr., proceeding in his individual capacity.
>
> We do not consent to the substitution of Geraldine Batiste, Liz Everson, Devora Hampton, Doris Collins, Leon Bradley, Verna Gabriel, Ernest Newell, Joseph Pete, Jr., Wiley Pinkley, Kerry Ridgley, Jr., Karen Ross, and David Scott because the 90-day deadline for substitution passed prior to Defendants receiving notice of the proposed substitutions. See Fed. R. Civ. P. 25(a)(1). We also do not consent to the substitution of Jake James, Jr., as his Fact Sheet states that he has two children, Derrick James and Falicia Lewis—meaning that his sister Lizzie Aaron is not the correct legal representative under Louisiana civil code article 2315.1—and the 90-day deadline for substitution has passed. We will be seeking to dismiss these Plaintiffs pursuant to Rule 25.
>
> Please let me know if you have questions or would like to discuss.
>
> -Megan

**Exhibit 7.** This was the first indication that Defendants were refusing to abide by their agreement that substitutions would occur through and omnibus consent order. The Defendants had mentioned none of these issues in their comments to the draft Second Amended Complaint during the period the CMO ordered that such "comments and concerns" could be addressed.

Please note that Defendants *expressly waived* the 90-day limit in Rule 25 for some of the deceased Plaintiffs, thus conceding that the time limit in Rule 25 is both waivable and non-jurisdictional. As a result, Defendants' only argument for "untimeliness" is that Plaintiffs did not tell them who was being substituted sooner. But Defendants already knew this information. Indeed, Defendants had themselves undertaken to serve the heirs and successors of the deceased Plaintiffs and Defendants knew full well who they were.

Under these circumstances, and particularly given that none on the deceased Plaintiffs' cases will be set for trial in the foreseeable future and that all discovery involving them is stayed, there is no prejudice to the Defendants in not learning earlier the specific names of the persons to be substituted in the Second Amended Complaint.

After receiving the late notice that Defendants were reneging on their prior agreement, Plaintiffs' counsel wrote:

> Megan-
>
> As you are aware, we sent you a draft of the amended complaint in accordance of with the CMO last Friday. In the complaint we included all the party substitutions that needed to be made. As you can see from our initial draft, it was our interpretation of the parties' agreement and prior and controlling CMOs that the substitutions would be done on an omnibus fashion through the Amended Complaint.
>
> In your response email that included edits, you raised a procedural issue of substituting the parties through the complaint. We timely responded noting that we would supply a motion, and to call me with any questions or things that needed to be discussed. We were in agreement with all other changes. Thereafter I circulated a Motion to Substitute and corresponding order relating to the party substitutions as well as a revised Amended Complaint, Redacted Complaint, and Notice.
>
> Other than your email, thirty minutes before COB on the date that the Amended Complaint is due, I have not received any communications from the defendants objecting to the party substitutions. You had ample time to discuss this with us prior to the deadline so this could be resolved (as well as my cell number, to discuss if you couldn't reach me at the office or need to speak after hours.) However, once again we are blindsided.
>
> We disagree with your interpretation of the CMO, prior party discussions relating to substitutions, and how the stay that the defendants' requested and in fact received, affects the timeline of the substitutions. Therefore we are moving forward with filing the Second Amended Complaint as we are required to do under the CMO. We will request that the issues relating to deceased party substitutions be raised with the Judge during our conference call on Monday, and are also filing our Motion to Substitute. I will note that it is contested.
>
> Thank you, and have a nice weekend-
>
> Eliza

**Exhibit 8**, The issue of the substitution did not come up at the status conference, however.

Defendants did not file their motion to dismiss until eleven days later, after the Plaintiffs filed their motion to substitute, which further demonstrates their prior waiver of the 90-day time period.

As a result, the motion should be denied because the Defendants should be estopped from asserting the 90-day deadline. Alternatively, the 90-day time period can be extended under Rule 6(b) because Defendants' reliance upon opposing counsel qualifies as excusable neglect.

7

## II.    RULE 25(A) IS NOT INTENDED TO BE BAR TO MERITORIOUS CLAIMS.

Rule 25(a), like the other Federal Rules of Civil Procedure, "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." F.R.Civ.P., Rule 1.  As a result, the Second Circuit determined that the fact that a substituting party missed the ninety-day filing deadline by two days was not a bar to the party's claim, and that the trial court had erred by not accepting the substitution motion as timely. *See Staggers v. Otto Gerdau Co*., 359 F.2d 292, 296 (2d Cir. 1966) ("[T]he history of the 1963 amendment to Rule 25 makes clear that the 90 day period was not intended to act as a bar to otherwise meritorious actions."); *Accord Zanowick v. Baxter Healthcare Corp*., 850 F.3d 1090, 1094 (9th Cir. 2017).

Thus, the district court has "considerable discretion in addressing the timing of substitution in the event of the death of a party" *Jones Inlet Marina, Inc. v. Inglima*, 204 F.R.D. 238, 239 (E.D.N.Y. 2001).  Rules 6(b)(2) and 25(a)(1) work together to provide flexibility in enlarging the time for substitution.  *George v. United States*, 208 F.R.D. 29, 32 (D. Conn. 2001) .  "Rule 25(a)(1)'s underlying purpose is to allow flexibility in substitution. *Id.,,* (*quoting Zeidman v. Gen. Acc. Ins. Co*., 122 F.R.D. 160, 161 (S.D.N.Y. 1988)))*; Accord Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (citation omitted); *see also United States v. Miller Bros. Constr. Co*., 505 F.2d 1031, 1035 (10th Cir. 1974) (stating that under Rule 25, a "discretionary extension should be liberally granted absent a showing of bad faith on the part of the movant for substitution or undue prejudice to other parties to the action"); 7C Charles Alan Wright et al., Federal Practice and Procedure § 1955 (3d ed. 2017) ("Dismissal is not mandatory, despite the use of the word 'must' in the amended rule.").

## III.   HAVING AGREED TO SUBSTITUTION BY CONSENT ORDER, DEFENDANTS WAIVED THE 90-DAY LIMIT OR SHOULD BE ESTOPPED FROM ASSERTING IT.

When Defendants agreed to the substitution of deceased plaintiffs by consent order in

advance of the amended complaint, they waived the 90-day limit, at least with respect to those deceased Plaintiffs who would be included in the amended complaint. In the last status conference, the Court complimented the Parties on how well they had been working together in dealing with the administrative aspects of the case, in particular the case management orders. To preserve that collegiality, sharp tactics, like those displayed by the Defendants here, should not be permitted.

In *Davis v. Supreme Lab. Source, LLC*, No. EP-23-CV-00046-KC, 2023 WL 6612902 (W.D. Tex. Oct. 10, 2023), for example, defense counsel asked plaintiff's counsel to agree to an extension of time to file an answer, and plaintiff's counsel agreed. When the defendant filed a motion to dismiss instead, plaintiff's counsel contended the motion was late, asserting that the agreement for the time extension was limited to filing an answer only. The court ruled that a retroactive extension of time under Rule 6(b)(1)(.B) was appropriate. Id at 4. *See also Garcia v. Pro. Cont. Servs., Inc.,* No. A-15-CV-585-DAE, 2017 WL 2734057, at *3 (W.D. Tex. June 23, 2017) ("[T]this case has garnered the unwelcome designation of being a "high maintenance" case. This is largely due to what the Court sees as gamesmanship and sharp tactics of counsel for both sides in this case. This must stop, or there will be a price to pay."); *Nationwide Mut. Ins. Co. v. Bushnell Landscape Indus., In*c., No. 2:14-CV-2305-MCE-CKD, 2016 WL 951041, at *3 (E.D. Cal. Mar. 14, 2016) ("Nationwide's discovery games and sharp tactics have absolutely inconvenienced this Court. Nationwide's misleading Initial Disclosure Statement and refusal to stipulate to an extension permitting Bushnell to depose the only Nationwide employee present when the Agreement was discussed not only required the Court to spend its extremely limited resources addressing a dispute that should have been easily resolved without its involvement, but also speak to a troubling lack of professionalism and courtesy.").

Here, the Waste Connections Defendants agreed to substitution by omnibus consent order, knew that the Plaintiffs were relying upon that agreement, and said nothing to the contrary until

9

minutes before the filing deadline in the Case Management Order. Under these circumstances, and given that there is no prejudice at all to the Defendants, these tactics should not be permitted, and Defendants should be held to their waiver of the 90-day time limit.

### IV. IN THE ALTERNATIVE, THE 90-DAY LIMIT SHOULD BE EXTENDED UNDER RULE 6(B).

Before the 1963 amendment to Rule 25, Rule 25 imposed an immutable and harsh deadline for substitution of deceased partes,[5] and Rule 6 prohibited the court from extending the time for such a motion.[6] However, the amendment 60 years ago changed that.

Under Rule 6(b)(1)(B), the court can extend a deadline on motion made even after the time has expired if the party failed to act because of excusable neglect. In deciding whether such a time extension is appropriate, the court can consider the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161–62 n.8 (5th Cir. 2006).

Here, there is no danger of prejudice to the Defendants and there is no delay. None of the deceased Plaintiffs are set for trial, and discovery involving all of them has been stayed. The Case Management Order set the deadline for filing the amended complaint to reflect the substitutions as November 10, and there was no delay beyond that day. As to the reasons for delay, Plaintiffs were

---

[5] See Advisory Committee note to Rule 25(a), 1963 amendments, stating "Present Rule 25(a)(1), together with present Rule 6(b), results in an inflexible requirement that an action be dismissed as to a deceased party if substitution is not carried out within a fixed period measured from the time of the death. The hardships and inequities of this unyielding requirement plainly appear from the cases.

[6] *See* Advisory Committee note to Rule 6(b), 1963 amendments, stating "With regard to Rule 25(a) for substitution, it was held in *Anderson v. Brady*, Ky.1941, 1 F.R.D. 589, 4 Fed.Rules Service 25a.1, Case 1, and in *Anderson v. Yungkau*, C.C.A.6, 1946, 153 F.2d 685, certiorari granted 66 S.Ct. 1025, 328 U.S. 829, 90 L.Ed. 1606, that under Rule 6(b) the court had no authority to allow substitution of parties after the expiration of the limit fixed in Rule 25(a)."

10

under the belief that they were acting cooperatively with the Defendants with respect to what was, in all respects, an administrative issue. And there is no suggestion that any of the delay (if there was any) was the result of bad faith on the part of the Plaintiffs.

Whether a party is entitled to relief for excusable neglect is a determination that is at bottom an equitable one, taking account of all relevant circumstances." *Coleman Hammons Constr. Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 942 F.3d 279, 282–83 (5th Cir. 2019) (cleaned up, citation omitted). Thus, the Court has discretion to grant a retroactive extension of time when circumstances require. *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007) ("Given the leeway granted to district courts under this standard, the minimal delay and prejudice involved, and the excuse provided by Dr. Stotter, we conclude that the district court did not abuse its discretion in granting the motion to extend the time for filing a notice of appeal.").

Here the proper exercise of discretion requires denial of the motion to dismiss.

## V. PAUL DAVIS, JR. AND WARREN PINKNEY

Neither Paul Davis, Jr. nor Warren Pinkney are subject to the Motion to Substitute, and Plaintiffs do not contest the fact that no successor has come forward to assume the prosecution of their claims. However, to achieve dismissal, Defendants must show that all of the heirs or representatives of the decedent have been served, and Defendants have made no such showing.

## VI. DEFENDANTS HAVE NOT PROPERLY SERVED ANY OF THE REPRESENTATIVES UNDER RULE 4, WITH THE RESULT THAT THE 90-DAY CLOCK HAS NOT YET STARTED.

Defendants have not shown exactly what was served on the purported heirs. Service of the suggestion of death, by itself, with no indication as to what the recipient is required to do upon receipt of the notice, raises significant due process concerns.[7] Rule 25 requires non-parties (like

---

[7] Some courts have required the suggestion of death itself to identify the representative of the deceased, which others have concluded that only the fact of death needs to be stated. *Compare Dummar v. Lummis*, 2:07–CV–459J, 2007 WL 4623623, at *3 (D.Nev. Dec.26, 2007) ("To be valid and trigger the 90–day limitation period ... a suggestion of death must identify the successor

11

Mr. Davis' daughter) to be served "in accordance with Rule 4," and Rule 4 in turn requires a summons to state the time within which the defendant must appear and defend. F.R.Civ.P., Rule 4(a)(1). Thus, to be served "in accordance with Rule 4," the notice should inform the recipient not only of the death but of the time limits to move to substitute. Where the non-party recipients are not given notice that they need to act, they cannot be faulted for failing to do.

Defendants seek dismissal based on Rule 4 service with respect to Plaintiffs Batiste, Everson, Hampton, Collins, James, and Davis. Because the service did not notify these Plaintiffs of their need to act, service was not in accordance with Rule 4, and the 90 day clock has not yet started.[8] *See Sampson v. ASC Industries*, 780 F.3d 679, 683 (5th Cir. 2015) (notice of the suggestion of death that is not served in compliance with Rule 4 is insufficient to begin the ninety-day time period).

In any event, even if the Court were inclined to dismiss these parties, the dismissal should be without prejudice. As one court explained,

> In case there is any doubt, the court is no longer required to dismiss with prejudice under Rule 25(a). The original Rule 25(a) functioned as a statute of limitations. As such, Rule 25(a) dismissals were with prejudice because "the normal policy of a statute of limitation is to close the door – finally, not qualifiedly or conditionally.". However, the 1963 amendments that provide the current Rule 25(a) were meant to liberalize substitution after death. Therefore, the court is no longer required to dismiss with prejudice under Rule 25(a).

*Sydow v. Weyerhaeuser Co.*, No. 14-CV-219-WMC, 2015 WL 6962698, at *1 n.2 (W.D. Wis. Nov. 10, 2015) (citations omitted). *See Zanowick v. Baxter Healthcare Corp.*, 850 F.3d 1090,

---

or representative who may be substituted for the decedent."), *with Jackson v. Rowlett*, No. CIV S–04–0741, 2007 WL 397114, at *1 (E.D.Cal. Jan.31, 2007) ("Rule 25's sole requirement concerning the content of a suggestion of death on the record is that it must contain a statement of the fact of the death.").

[8] Plaintiffs have not located case holding either way on this specific issue. However, the requirement that notice be given of the 90-day deadline is fully consistent with the requirements of Rule 4(a). Similarly, subpoenas issued under Rule 45 must instruct the recipients of their obligations upon service of the document. Because the non-party heirs may lose valuable rights, due process can require no less.

1094–95 (9th Cir. 2017) (discussing the interplay between Rule 25(a) and Rule 6(b).

### VII. KERRY RIDGLEY

Defendants assert that they object to Kerry Ridgely proceeding in his individual capacity, in addition to his legal capacity as successor to his wife, Plaintiff Barbara Ridgley. However, the Second Amended Complaint, Rec No. 431 at page 24, asserts that Mr. Ridgley is proceeding only is his capacity as successor and not in his individual capacity.

### VIII. WHAT'S GOOD FOR THE GOOSE IS GOOD FOR THE GANDER, AND DEFENDANTS CANNOT DEMAND STRICT COMPLIANCE WITH DEADLINES IN THE RULES FOR THE PLAINTIFFS AND SEEK RELAXED DEADLINES FOR THEMSELVES.

Defendants' responses to the Second Amended Complaint were due on Monday, November 27, 2023, as required by Rule 15. That evening, after the close of business, the Waste Connections Defendants wrote to the Court asserting that, under their interpretation of the Case Management Order, the answer was not yet due, expressing their opinion "that the Court's acceptance of the Second Amended Complaint hinged on the parties' reaching agreement, or on the Court's resolution of the parties' objections – neither of which has yet occurred." **Exhibit 9.** However, the Case Management Order said no such thing, as pointed out by the *Addison* Plaintiffs in their response to the letter. **Exhibit 10.** Nevertheless, the Court notified the Parties that answers to the amended complaint were not yet required.

What's good for the goose is good for the gander. Under the *Addison* Plaintiffs' interpretation of the Case Management Order, the consent motion for substitution of deceased Plaintiffs need only precede the filing of the Second Amended Complaint. Defendants cannot demand strict adherence of the deadlines by the Plaintiffs and seek a looser application of the deadlines for themselves. For this additional reason, the Motions should be denied.

### IX. CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: November 28, 2023

Respectfully submitted,

_____S. Eliza James_____
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
FORREST CRESSY & JAMES, LLC
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fcjlaw.com
eliza@fcjlaw.com

_____/s/ Eric C. Rowe_____
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@wtplaw.com
erowe@wtplaw.com
mchilders@wtplaw.com

*Counsel For Addison Plaintiffs*