**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK,**<br>        **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-7889**<br>        **c/w 18-8071,**<br>     **18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL.,**<br>        **Defendants** | **SECTION: "E" (5)** |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>        **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  19-11133**<br>        **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>        **Defendants** | **SECTION: "E" (5)** |

*Applies to: All Cases*

## ORDER AND REASONS

Before the Court are two contested discovery motions: Plaintiffs' Motion to Compel Discovery Against the Waste Connections Defendants (hereinafter "Motion to Compel")[1] and a Motion to Quash the *Addison* Plaintiffs' Subpoena to SCS Engineers (hereinafter "Motion to Quash") filed by Defendants Waste Connections Bayou, Inc., Waste Connections US, Inc., and Louisiana Regional Landfill Company (collectively the "Waste

---

[1] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). Defendants opposed. R. Doc. 329 (18-7889); R. Doc. 383 (19-11133). Plaintiffs replied. R. Doc. 389 (19-11133). Plaintiffs filed a supplemental memorandum. R. Doc. 393 (19-11133). Defendants filed a supplemental reply. R. Doc. 394 (19-11133).

Connections Defendants" or "Defendants").[2] Presently, the only outstanding issues in these contested motions relate to documents involving Stearns, Conrad & Schmidt, Consulting Engineers, Inc. ("SCS Engineers"),[3] which are categorized into nine "Categories of Work" as identified in the Waste Connections Defendants' December 1, 2023 letter to the Court.[4] This Order concerns certain documents related to Category #2, the Jefferson Parish Landfill Site Evaluation with Respect to Odors, dated October 24, 2018 (the "October 2018 Report"), identified in Attachment A to this Order and Reasons.[5]

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019. The Court's Order and Reasons issued on January 2, 2024 presents background relevant to the discovery motions.[6]

## LEGAL STANDARD

Subject matter waiver of the attorney-client privilege and the work product privilege in federal proceedings is governed by Rule 502(a) of the Federal Rules of Evidence, which applies to intentional disclosures of information otherwise covered by the privileges.[7] Rule 502(a) states:

---

[2] R. Doc. 368 (19-11133). Plaintiffs filed a Motion to Enforce Subpoena, which the Court construes as an opposition to the Motion to Quash. R. Doc. 381 (19-11133). Defendants filed a Reply Memorandum in Support of Their Motion to Quash. R. Doc. 388 (19-11133). *See also* Subpoena to Produce Documents Issued to SCS Engineers, R. Doc. 381-5 (19-11133).

[3] *See* Requests for Production 58-66, *Addison* Plaintiffs' Second Set of Requests for Production of Documents to the Waste Connections Defendants, R. Doc. 329-2 at 8, 12 (18-7889).

[4] *See* Appendix A to Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to the Court (Dec. 1, 2023). The "Chart Showing Status of Production" attached to the December 1, 2023 Letter contained comments from both the Waste Connections Defendants and Plaintiffs. The Court assigned numbers to the Categories of Work for ease of reference.

[5] Category #2 concerns documents related to the Jefferson Parish Landfill Site Evaluation with Respect to Odors, dated October 24, 2018. *See* Attachment A.

[6] R. Doc. 397 (18-7889); R. Doc. 468 (19-11133).

[7] "In diversity cases, the Court must apply the state law of attorney-client privilege." *Gulf Coast Facilities Management, L.L.C. v. BG LNG Servs., L.L.C.*, 09-3822, 2010 WL 11707290, at *2 (E.D. La. Mar. 24, 2010) (citing FED. R. EVID. 501). Notwithstanding Rule 501, however, Rule 502(f) clarifies that Rule 502 applies to the issue of waiver even if state law provides the rule of decision. FED. R. EVID. 502(f).

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>> (1) the waiver is intentional;
>> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>> (3) they ought in fairness to be considered together.[8]

"There is no subject matter waiver unless all three elements are satisfied."[9] A subject matter waiver "entitles [a proponent] to discover documents and information reflecting counsel's advice as to the subjects of the waiver even though [the objecting party] may assert they ultimately did not rely on that advice."[10]

The Advisory Committee notes to Rule 502 explain the "animating principle" of "fairness [] is taken from Rule 106."[11] Rule 106 of the Federal Rules of Evidence governs the admissibility of the remainder of or related writings or recorded statements:

> If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement--that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.[12]

"Rule 106 requires the introduction of a writing or recorded statement only when the omitted portion is 'necessary to qualify, explain, or place into context the portion already introduced[.]'"[13] Under Rule 106, a party may "correct an incomplete and misleading impression created by the introduction of part of a writing or recorded statement," but the rule "does not permit a party to introduce writings or recorded statements to affirmatively advance their own, alternative theory of the case."[14] The 2023 amendment

---

[8] FED. R. EVID. 502(a).
[9] *Gulf Coast Facilities Management*, 2010 WL 11707290, at *2.
[10] *U.S. Securities and Exchange Comm'n v. Commonwealth Advisors, Inc.*, 2015 WL 5725778, at *2 (M.D. La. Sept. 29, 2015).
[11] FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).
[12] FED. R. EVID. 106.
[13] *U.S. v. Herman*, 997 F.3d 251, 264 (5th Cir. 2021).
[14] *Id.*

to Rule 106 allows for the admission of evidence to complete a statement over the objection of a party when "necessary to correct [a] misimpression" or "to provide context for the initially proffered statement."[15]

Thus, "[u]nder both Rules, a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation."[16] "Courts have provided additional clarification, finding that subject matter waiver under [Rule] 502(a) 'is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.'"[17]

## LAW AND ANALYSIS

In their motion, Plaintiffs seek to compel discovery of hundreds of documents.[18] After discussions with the parties, the Court categorized documents pertaining to the outstanding discovery requests into nine categories. This Order and Reasons addresses discovery issues involving documents related to Category #2 as identified in Attachment A. The Waste Connections Defendants argue the following documents in the privilege log produced on November 13, 2023 (the "November 13 Privilege Log"), which relate to

---

[15] FED. R. EVID. 106 advisory committee's explanatory note to 2023 amendments. The Advisory Committee Comments further provide:

> [T]he amendment provides that if the existing fairness standard requires completion, then that completing statement is admissible over a hearsay objection. . . . The Committee has determined that the rule of completeness, grounded in fairness, cannot fulfill its function if the party that creates a misimpression about the meaning of a proffered statement can then object on hearsay grounds and exclude the statement that would correct the misimpression. . . . A party that presents a distortion can fairly be said to have forfeited its rights to object on hearsay grounds to a statement that would be necessary to correct the misimpression."

*See also U.S. v. Crowell*, CR23-8, 2023 WL 8642213, at *1 (S.D. Ohio Dec. 14, 2023) ("[T]he amended rule still requires the creation of a misimpression before an out-of-court statement will be admitted for completeness.").

[16] FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).

[17] *Williams v. Nationstar Mortgage LLC*, 19-663, 2022 WL 391494, at *2 (M.D. La. Feb. 8, 2022) (quoting *RLIS, Inc. v. Cerner Corp.*, 12-209, 2014 WL 12599509, at *1 (S.D. Tex. Dec. 24, 2014)); *see also Mills v. Iowa*, 285 F.R.D. 411, 416 (S.D. Iowa 2012); *Schnatter v. 247 Group, LLC*, 20-3, 2021 WL 5018741, at *11 (W.D. Ky. Oct. 28, 2021).

[18] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133).

Category #2, are privileged based on the attorney-client privilege, work product privilege, and/or consulting expert work product protection: 0484, 0485, 0486, 0487, 0491, 0492, 0493, 0494, 0495, 0496, 0497, and 0501. Defendants further argue the following documents in the privilege log produced on December 4, 2023 (the "December 4 Privilege Log"), which relate to Category #2, are privileged based on the attorney-client privilege, work product privilege, and/or consulting expert work product protection: 0016, 0019, 0020, 0021, 0022, 0023, 0026, 0027, 0028, 0029, 0030, 0031, 0032, 0033, 0034, 0035, 0036, 0037, 0038, 0039, 0040, 0044, 0046, 0047, 0048, 0050, 0052, 0053, 0054, 0055, 0056, 0057, 0058, 0059, 0060, 0061, 0062, 0063, 0064, 0066, 0067, 0069, 0070, 0071, 0076, 0077, 0078, 0079, 0080, 0081, 0082, 0085, 0086, 0087, 0088, 0089, 0090, 0091, 0094, 0097, 0098, 0101, 0102, 0110, 0111, 0112, 0113, 0114, 0115, 0116, 0117, 0118, 0121, 0122, 0123, 0125, 0126, 0130, 0131, 0133, 0134, 0135, 0136, 0137, 0138, 0139, 0140, 0141, 0142, 0143, 0144, 0145, 0147, 0148, 0149, 0150, 0151, 0152, 0153, 0154, 0155, 0156, 0157, 0158, 0159, 0160, 0161, 0162, 0163, 0164, 0165, 0166, 0183, 0184, 0185, 0186, 0187, 0188, 0189, 0190, 0192, 0206, 0876, and 0944.

Defendants claim the relevant documents listed in the privilege logs and provided to the Court in camera are properly withheld because the documents are privileged under attorney-client privilege, work product privilege, and/or consulting expert work product protection.[19] Plaintiffs argue "any confidentiality that might have attached was waived by the public use and dissemination of the October 2018 Report."[20] Plaintiffs contend that, "[h]aving placed [the Report's] credibility and the credibility of SCS firmly at issue in the public square, Waste Connections cannot now hide behind purported work product immunity to prevent Plaintiffs from discovering information likely to undermine their

---

[19] R. Doc. 386 (18-7889); R. Doc. 438 (19-11133).
[20] R. Doc. 381-1, p. 7 (19-11133).

credibility in this litigation."[21] The Court addresses each element of Rule 502(a) to construe the scope of the Waste Connections Defendants' waiver with respect to the October 2018 Report.

First, the Waste Connections Defendants intentionally waived the attorney-client and work product privileges with respect to the October 2018 Report by disclosing the Report to Plaintiffs.[22] Second, having conducted in camera review of the documents related to Category #2 for which Defendants assert privilege, the Court finds the undisclosed documents and communications concern the same subject matter as the disclosed October 2018 Report. The inquiry thus turns on the third element—fairness.

To analyze the third prong of Rule 502(a), the Advisory Committee points to the fairness standard presented in Rule 106.[23] Courts limit the scope of evidence admissible under Rule 106 to only that which is necessary to "set[] the context and clarify[] the answers given on cross-examination."[24] For example, in *U.S. v. Ramos-Caraballo*, the U.S. Court of Appeals for the Eighth Circuit held that the trial court erroneously admitted an officer's police report and transcripts of his grand jury and suppression hearing testimonies when his testimony at trial only presented a few inconsistencies with those out-of-court statements.[25] The court reasoned that Rule 106 did not require the introduction of the officer's out-of-court statements to clarify his in-court testimony because the rule "does not come into play when 'a few inconsistencies between out-of-court and in-court statements are revealed through cross-examination; rather, it operates

---

[21] R. Doc. 389, p. 4 (19-11133) ("Waste Connections sent [the Report] to reporters all over town and relied upon it as the centerpiece of its public relations campaign.").

[22] In their Response to Plaintiffs' Privilege Log Objections, the Waste Connections Defendants aver that they "voluntarily produced the October 2018 Report, including the field notes and other data collected and considered by SCS." R. Doc. 386, p. 8 (18-7889).

[23] *See* FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).

[24] *U.S. v. Ramos-Caraballo*, 375 F.3d 797, 804 (8th Cir. 2004).

[25] *Id.* at 800, 804.

to ensure fairness where a misunderstanding or distortion created by the other party can only be averted by the introduction of the full text of the out-of-court statement.'"[26]

The Advisory Committee notes to Rule 502 interpret "fairness" similarly and advise that the waiver be reserved for exceptional circumstances in which failure to recognize the waiver would unfairly disadvantage a party.[27] More specifically, the notes explain:

> [A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary ... Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.[28]

Opinions of other federal courts demonstrate circumstances under which the fairness inquiry ultimately led to a finding that a party's voluntary disclosure of allegedly protected information constituted a subject matter waiver under the Rule 502(a) inquiry. For example, in *Mills v. Iowa*, the U.S. District Court for the Southern District of Iowa ordered disclosure of documents and communications related to a report that the defendant intentionally disclosed, reasoning that subject matter waiver enables "fairness to all parties, ensuring the full story emerges, and [mitigates] concern[s] about the impact of selective disclosure on the fact-finding process."[29] Similarly, in *Schnatter v. 247 Group, LLC*, the U.S. District Court for the Western District of Kentucky found plaintiff's publication of a consulting expert's report on the internet constituted a subject matter waiver of all privilege asserted over documents and communications related to the

---

[26] *Id.* at 803 (quoting *U.S. v. Awon*, 135 F.3d 96, 101 (1st Cir. 1998)).
[27] *See* FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).
[28] FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).
[29] *Mills*, 285 F.R.D. at 416-17 (further explaining "[f]requent communication and exchange of information affords an opportunity for influence, even unintended, which disclosure may rule out or support").

report.[30] There, the court reasoned that the plaintiff "engaged in a campaign to expose members of the public to the [] Report, including potential jurors in this case," and therefore, "fairness principles dictate that the disclosed [Report] and undisclosed information be considered together."[31]

Documents produced by Defendants to Plaintiffs demonstrate Waste Connections distributed the Report to media outlets. The Defendants' communications with the media regarding the Report convey the misimpression that the Report was prepared by a highly qualified and unbiased third party.[32] For instance, in a July 2018 press release responding to a notice of breach of contract by Jefferson Parish, Defendants asserted that they, "at [their] own expense, [] hired a nationally known odor mitigation firm in order to assist the Parish in identifying all sources of local odors . . . [and advised that] [a] final report detailing those findings [would] be made public in the coming weeks."[33] Additionally, in an attachment to an on-the-record email to Chad Calder at The Advocate summarizing the October 2018 Report, Waste Connections Defendants lauded SCS as "a national engineering company that is a recognized expert in landfill gas systems, landfill operations, and odor assessment studies" and explained that "SCS Engineers has issued a report on behalf of [Defendants] . . . [and] SCS's report concludes that the Jefferson Parish Landfill is not a significant source of nuisance odors experienced in Jefferson Parish."[34] In another email to reporter Drew Broach, Defendants asserted that the

---

[30] *Schnatter*, 2021 WL 5018741, at *11.

[31] *Id.* (finding plaintiff "has enjoyed a 'benefit from using evidence from which the Defendants had been excluded'" (quoting *U.S. ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp. Inc.*, 400 F.3d 428, 440 (6th Cir. 2005))).

[32] *See, e.g.*, R. Doc. 381-19, 381-20, 381-21, 381-22, 381-23, & 381-24 (19-11133).

[33] WC_JPLF_PRIV_0260. The Court ordered Defendants to produce this document to Plaintiffs on May 26, 2023, which reflects Waste Connections' intent to distribute the statement to the press. *See* R. Doc. 402 (19-11133).

[34] R. Doc. 381-19, p. 2 (19-11133). *See also id.* at p. 6 (press release attached to Defendants' email to Chad Calder).

October 2018 Report "is legit, based in science."[35] Further, Defendants' December 20, 2018 letter to the Louisiana Department of Environmental Quality ("LDEQ") proclaimed that the Landfill "independently retained SCS Engineers to perform an odor survey of the Jefferson Parish Landfill and the area of odor complaints, . . . [and extolled] [t]he report [as] the most detailed and thorough scientific effort to date" on the issue.[36]

Adopting the fairness standards expressed in the Advisory Committee notes to Rule 502 and opinions of other federal courts interpreting Rules 106 and 502, the Court finds fairness principles require the disclosed October 2018 Report and certain undisclosed documents related to Category #2 be considered together.[37] Having conducted in camera review, the Court finds several documents suggesting SCS acted at the direction of and in collaboration with defense counsel to prepare the October 2018 Report. Indeed, defense counsel was heavily involved in editing the Report despite the misimpression given to the public that the nationally known engineering firm, alone, authored it and that the engineering firm was independent and unbiased. Defendants' failure to acknowledge defense counsel's involvement with the Report in communications with the media is particularly misleading, as this omission may have led to the misrepresentation of SCS's independence to the public. For example, in communications with the media, Defendants praised the Report as "legit, based in science"[38] and "the most detailed and thorough scientific effort to date."[39] Applying Rule 502(a), the Court finds Defendants' misleading representation that the Report was prepared by a highly qualified, unbiased independent third party "opens itself to a more complete and accurate

---

[35] R. Doc. 381-20 (19-11133).
[36] R. Doc. 381-21 (19-11133).
[37] *See* Fed. R. Evid. 502(a).
[38] R. Doc. 381-20 (19-11133).
[39] R. Doc. 381-21 (19-11133).

presentation."[40] Having found in favor of Plaintiffs with respect to all three elements of Rule 502(a), the Court finds Defendants waived privilege as to certain documents and communications related to the October 2018 Report. Accordingly, the Court now turns to an analysis of the scope of Defendants' subject matter waiver.

A waiver extending to all documents with no limitation on the topic is not supported by Rules 106 or 502 and would not be proportionate to the purposeful disclosures made by the Waste Connections Defendants. Rule 106 limits the scope of admissible evidence to only what is necessary to contextualize and clarify misimpressions.[41] In this case, Defendants' communications created a misimpression concerning the unbiased and independent creation of the October 2018 Report. Thus, the scope of the waiver extends only to those documents pertaining to defense counsel's involvement in preparation of the Report that will enable Plaintiffs to qualify, explain, contextualize, and otherwise cure the misimpression created by Defendants.[42] Specifically, the Court specifically makes the following findings:

- Entries 0066, 0077, 0077_001, 0078, 0078_001, 0079, 0080, 0082, 0097, 0101, 0102, 0110, 0113, 0113_001, 0114, 0117, 0122, 0126, 0134, 0142, 0149, 0149_001, 0153, 0154, 0156, 0185, 0188, 0188_001, 0188_002, 0189, 0190, and 0192 in the December 4 Privilege Log are within the scope of Defendants' subject matter

---

[40] *See* FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).
[41] *See Ramos-Caraballo*, 375 F.3d at 804.
[42] *See Herman*, 997 F.3d at 264; FED. R. EVID. 106 advisory committee's explanatory note to 2023 amendments.

waiver.[43] Accordingly, the documents must be produced in full, without redactions.[44]

- The privileges asserted by Defendants protect the remaining documents related to Category #2. Accordingly, Defendants properly withheld those documents and are not required to produce them to Plaintiffs.

## <u>CONCLUSION</u>

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART and DEFERRED IN PART**[45] as stated herein.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash is **DENIED IN PART and DEFERRED IN PART**.[46]

**IT IS FURTHER ORDERED** that the Waste Connections Defendants produce the following documents in full, without redactions, by **January 17, 2024**:

- Entries 0066, 0077, 0077_001, 0078, 0078_001, 0079, 0080, 0082, 0097, 0101, 0102, 0110, 0113, 0113_001, 0114, 0117, 0122, 0126, 0134, 0142, 0149, 0149_001,

---

[43] Because the Court finds Defendants' intentional disclosure of the October 2018 Report and creation of misimpression with respect to the Report waived all privileges asserted to these documents, this Order and Reasons makes no findings as to whether the attorney-client privilege, work product protection, or consulting expert work product protection attach to these documents and communications related to Category #2. Facts, however, suggest communications between the Waste Counsel Defendants, SCS Engineers, and defense counsel were not made "for the purpose of obtaining legal advice" as required for attorney-client privilege to attach. *See Tonti Management Co., Inc. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *9 (E.D. La. June 25, 2020). Rather, these communications reflect counsel's participation in "decision[s] regarding public relations, and therefore business more generally." *Slocum v. International Paper Co.*, 549 F. Supp. 3d 519, 525 (E.D. La. June 28, 2021). Further, the facts suggest Defendants prepared the October 2018 Report and related documents with the primary purpose of bolstering their public relations effort rather than aiding in possible future litigation as required for work product and consulting expert work product protection. *See* Fed. R. Civ. P. 26(B)(3)(A); *Louisiana Corral Mgmt., LLC v. Axis Surplus Ins. Co.*, 650 F. Supp. 3d 491, 498 (E.D. La. Jan. 11, 2023).

[44] It is also true that, with respect to many of these documents, Plaintiffs are unable to "obtain the substantial equivalent" elsewhere and are entitled to their production under *Southern Scrap Material Co. v. Fleming*. 2003 WL 21474516, at *5 (E.D. La. June 18, 2003) (quoting Fed. R. Civ. P. 26(b)(3)).

[45] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). The Court has ruled on the relevant documents related to Category #2 only in this Order. The Court defers ruling on the remaining issues raised in Plaintiffs' motion to compel at this time.

[46] R. Doc. 368 (19-11133).

0153, 0154, 0156, 0185, 0188, 0188_001, 0188_002, 0189, 0190, and 0192 in the December 4 Privilege Log.

**New Orleans, Louisiana, this 12th day of January, 2024.**

_Susie Morgan_

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**