**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELIAS JORGE "GEORGE" ICTECH-BENDECK, Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-7889 c/w 18-8071, 18-8218, 18-9312** |
| **WASTE CONNECTIONS BAYOU, INC., ET AL., Defendants** | **SECTION: "E" (5)** |

***Related Case:***

| | |
|---|---|
| **FREDERICK ADDISON, ET AL., Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11133 c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL., Defendants** | **SECTION: "E" (5)** |

***Applies to: All Cases***

**ORDER AND REASONS**

Before the Court are two contested discovery motions: Plaintiffs' Motion to Compel Discovery Against the Waste Connections Defendants (hereinafter "Motion to Compel")[1] and a Motion to Quash the *Addison* Plaintiffs' Subpoena to SCS Engineers (hereinafter "Motion to Quash") filed by Defendants Waste Connections Bayou, Inc., Waste Connections US, Inc., and Louisiana Regional Landfill Company (collectively the "Waste

[1] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). Defendants opposed. R. Doc. 329 (18-7889); R. Doc. 383 (19-11133). Plaintiffs replied. R. Doc. 389 (19-11133). Plaintiffs filed a supplemental memorandum. R. Doc. 393 (19-11133). Defendants filed a supplemental reply. R. Doc. 394 (19-11133).

Connections Defendants" or "Defendants").[2] Presently, the only outstanding issues in these contested motions relate to documents involving Stearns, Conrad & Schmidt, Consulting Engineers, Inc. ("SCS Engineers"),[3] which are categorized into nine "Categories of Work" as identified in Attachment A to the Court's Order and Reasons issued on January 12, 2024.[4] This Order concerns certain documents related to Category #1, the Leachate Collection System Pump Evaluation Report for the Jefferson Parish Landfill, dated November 2018 (the "Pump Evaluation Report").

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019. The Court's Order and Reasons issued on January 2, 2024 presents background relevant to the discovery motions.[5]

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[6] "Information within the scope of discovery need not be admissible in evidence to be discovered."[7] At the discovery stage, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in

---

[2] R. Doc. 368 (19-11133). Plaintiffs filed a Motion to Enforce Subpoena, which the Court construes as an opposition to the Motion to Quash. R. Doc. 381 (19-11133). Defendants filed a Reply Memorandum in Support of Their Motion to Quash. R. Doc. 388 (19-11133). *See also* Subpoena to Produce Documents Issued to SCS Engineers, R. Doc. 381-5 (19-11133).

[3] *See* Requests for Production 58-66, *Addison* Plaintiffs' Second Set of Requests for Production of Documents to the Waste Connections Defendants, R. Doc. 329-2 at 8, 12 (18-7889).

[4] *See* R. Doc. 406-1 (18-7889); R. Doc. 483-1 (19-11133). Attachment A is based on Attachment A to the Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to the Court (Dec. 1, 2023). The "Chart Showing Status of Production" attached to the December 1, 2023 Letter contained comments from both the Waste Connections Defendants and Plaintiffs. The Court assigned numbers to the Categories of Work for ease of reference.

[5] R. Doc. 397 (18-7889); R. Doc. 468 (19-11133).

[6] FED. R. CIV. PRO. 26(b); *see also Miller v. Sam Houston Univ.*, 986 F.3d 880, 891 (5th Cir. 2021).

[7] *Id.*

that case."[8] "[T]he threshold for relevance at the discovery stage [under Rule 26(b) of the Federal Rules of Civil Procedure] is lower than at the trial stage" under Federal Rule of Evidence 401.[9] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[10] If relevance is in doubt, the court should be permissive in allowing discovery.[11] This broad scope is necessary given the nature of litigation, where determinations of discoverability are made well in advance of trial.[12] Likewise, "broad discretion is afforded to the district court when deciding discovery matters,"[13] and the Court must determine the scope of discovery "in light of the relevant facts of the particular case."[14]

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[15] discovery does have "'ultimate and necessary boundaries.'"[16] Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;

---

[8] *Stevenson v. Benjamin*, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978); *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011).
[9] *Id.*
[10] *Dotson v. Edmonson*, 2017 WL 11535244, at *2 (E.D. La. 11/21/2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2/4/2005)).
[11] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 5/11/2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).
[12] *Rangel*, 274 F.R.D. at 590 n.5.
[13] *Miller*, 986 F.3d at 891 (citing *Crosby v. la. Health Serv. & Indemnity Co.*, 647 F.3d 258, 261 (5th Cir. 2011)).
[14] *See Conboy v. Edward D. Jones & Co.*, 140 F. App'x 510, 517 (5th Cir. 2005).
[15] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).
[16] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

or (iii) the proposed discovery is outside the scope of Rule 26(b)(1)."[17] Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[18] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[19]

"The party filing the motion to compel bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."[20] "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[21] "[T]he party asserting a privilege exemption from discovery . . . bears the burden of demonstrating the applicability of that privilege."[22] "Blanket assertions of privilege" are insufficient to carry a party's burden.[23]

## LAW AND ANALYSIS

In their motion, Plaintiffs seek to compel discovery of hundreds of documents.[24] After discussions with the parties, the Court categorized documents pertaining to the outstanding discovery requests into nine categories. This Order and Reasons addresses discovery issues involving documents related to Category #1. Defendants claim the relevant documents in the Privilege Logs they provided to the Court are properly withheld

---

[17] FED. R. CIV. PRO. 26(b)(2)(C)(i)–(iii).
[18] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).
[19] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. 7/14/2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. 3/4/2020) (Morgan, J.).
[20] *Summers v. Louisiana*, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations omitted).
[21] *Id.*
[22] *Zahid Hotel Group, L.L.C. v. AmGUARD Insurance Co.*, 22-2792, 2023 WL 4353132, at *2 (E.D. La. July 5, 2023).
[23] *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981).
[24] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133).

because the documents are privileged under the work product doctrine, consulting expert work product protection, and/or attorney-client privilege.[25] The Court addresses the arguments in turn.

## I. The Work Product Doctrine and Consulting Expert Work Product Privilege

The Waste Connections Defendants argue the following documents in the privilege log produced on November 13, 2023 (the "November 13 Privilege Log"), which relate to Category #1, are privileged based on the work product doctrine and consulting expert work product privilege: Entries 0483, 0488, 0489, 0490, 0498, 0499, 0500, 0502, 0503, 0504, 0505, 0506, 0507, 0508, 0509, 0510, 0511, 0512, 0513, and 0514. Defendants further argue the following documents in the privilege log produced on December 4, 2023 (the "December 4 Privilege Log"), which relate to Category #1, are privileged based on the work product doctrine and consulting expert work product privilege: Entries 0001, 0002, 0003, 0004, 0005, 0006, 0009, 0015, 0017, 0018, 0019, 0020, 0021, 0022, 0023, 0029, 0031, 0032, 0033, 0034, 0035, 0036, 0037, 0041, 0043, 0045, 0049, 0051, 0072, 0073, 0074, 0075, 0092, 0093, 0095, 0099, 0103, 0104, 0105, 0106, 0107, 0108, 0109, 0119, 0120, 0124, 0127, 0128, 0129, 0132, 0146, 0167, 0168, 0169, 0170, 0171, 0172, 0173, 0174, 0175, 0176, 0177, 0178, 0179, 0180, 0181, 0191, 0193, 0194, 0195, 0196, 0197, 0198, 0199, 0202, 0207, 0937, 0938, 0939, 0940, 0952, 0953, and 0954.

"Federal law governs . . . parties' assertions that certain information is protected from disclosure by the work product doctrine."[26] "The work product doctrine is not an umbrella that shades all materials prepared by a lawyer. The work product doctrine focuses only on materials assembled and brought into being in anticipation of

[25] R. Doc. 386 (18-7889); R. Doc. 438 (19-11133).
[26] *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, at *5 (E.D. La. June 18, 2003) (citing *Naquin v. Unocal Corp.*, 2002 WL 1837838, at *2 (E.D. La. 2002)).

litigation."[27] The work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[28] "Excluded from the work-product doctrine are materials assembled in the ordinary course of business."[29] The doctrine does not place work product outside the scope of discovery, but instead "creates a form of qualified immunity from discovery" for materials prepared in anticipation of litigation.[30] "Rule 26(b)(3) protects documents prepared by a party's agent from discovery, as long as they were prepared in anticipation of litigation."[31]

The level of protection depends on whether the materials prepared in anticipation of litigation constitute "opinion" work product or non-opinion, "fact" work product.[32] The "mental impressions, conclusions, opinions or legal theories of an attorney" are opinion work product subject to a higher showing for production.[33] "Fact work product, on the other hand, is any material 'prepared in anticipation of litigation or for trial by or for another party or its representative' under Rule 26(b)(3)(A) but 'not the "mental impressions, conclusions, opinions or legal theories of an attorney"' under subsection (b)(3)(B)."[34] A party seeking discovery of ordinary fact work product must make a showing of "substantial need and the inability to obtain the substantial equivalent elsewhere."[35] "However, absent a showing of *compelling* need and the inability to discover

---

[27] *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).
[28] FED. R. CIV. P. 26(b)(3)(A).
[29] *Treece v. Perrier Condominium Owners Ass'n, Inc.*, 2019 WL 12289568, at *4 (E.D. La. Jun 20, 2019); *see also Hill Tower, Inc. v. Dep't of Navy*, 718 F. Supp. 562, 565 (N.D. Tex. 1988) ("The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation when this document was drafted.").
[30] *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993).
[31] *Southern Scrap Material*, 2003 WL 21474516, at *6.
[32] *Id.* at *7.
[33] *In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1240 (5th Cir. 1982).
[34] *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 487 (W.D. Tex. 2020).
[35] *Southern Scrap Material*, 2003 WL 21474516, at *7, 13.

the substantial equivalent by other means, work product evidencing mental impressions of counsel, conclusions, opinions and legal theories of an attorney are not discoverable."[36]

Under Rule 26(b)(4)(D), a party may discover "facts known or opinions held" by a non-testifying expert retained "in anticipation of litigation . . ., only upon showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[37] The rule "creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances."[38]

Plaintiffs argue SCS prepared the Pump Evaluation Report in the ordinary course of business with Waste Connections rather than in anticipation of litigation at the direction of counsel.[39] Specifically, Plaintiffs contend SCS performed the work related to Category #1 between July 25 and 27, 2018 at the direction of Waste Connections employee Brett O'Connor pursuant to its Master Services Agreement with Waste Connections.[40] Plaintiffs note "SCS had been asked to perform the work [related to Category #1], and had completed the work, before its outside counsel was even hired, pursuant to the same Master Services Agreement that governed construction and engineering work done for Waste Connections by SCS across the country."[41]

Defendants argue "the subject matter and timing of SCS's reports for Waste Connections' attorneys demonstrate that the primary motivating purpose behind the reports was to assist with Waste Connections' legal defense," citing SCS's late July field inspection in preparation of the Pump Evaluation Report, which was conducted "just one

---

[36] *Id.* at *7.
[37] FED. R. CIV. PRO. 26(b)(4)(D).
[38] *Will Uptown, LLC v. B&P Restaurant Group, LLC*, 15-51, 2016 WL 4620200, at *5 (M.D. La. Sept. 6, 2016).
[39] R. Doc. 381-1, p. 4 (19-11133).
[40] *Id.*
[41] R. Doc. 385, pp. 4-5 (18-7889).

month after [the Louisiana Department of Environmental Quality] issued an administrative compliance order alleging leachate system violations at the [Landfill]."[42] Defendants, however, concede "SCS was retained for its work on the gas collection system and leachate tie-in projects separately from its assistance with [counsel's] defense of Waste Connections in the litigation" and further admit defense counsel "was not involved in these projects."[43]

The Court finds SCS's work related to Category #1, which was conducted prior to its official agreement with counsel for the Waste Connections Defendants, was performed "in the ordinary course of business" for Waste Connections rather than in anticipation of litigation.[44] Having conducted in camera review of documents related to Category #1 for which Defendants assert work product and consulting expert work product privilege, the Court finds counsel's assertion that the investigation underlying the Pump Evaluation Report was performed in anticipation of litigation is a post hoc justification unsupported by documents and communications. One document (WC_JPLF_SCS_PRIV_0009) demonstrates that on August 28, 2019, defense counsel declared "[w]e would like to use SCS as a consulting expert, as opposed to a testifying expert - particularly because SCS has already done some work that we intend to use in a consulting fashion (i.e. want to keep it protected)." It was not until September 5, 2018 that SCS and counsel for the Waste Connections Defendants executed the contractor agreement, in which defense counsel formally retained SCS as an expert. The Court finds certain documents, concerning work conducted by SCS prior to September 5, 2018 are not protected by the work product

---

42 R. Doc. 388, p. 7 (19-11133).

43 R. Doc. 368-1, p. 6 (19-11133). Waste Connections Defendants explain that that SCS was first contracted by the Landfill in 2014 to install a gas collection system in Phase B, which was completed prior to the commencement of this litigation, and was contracted by the Waste Connections Defendants in 2018 to tie in the leachate piping to the gas collection system in Phase 4A.

44 *See Treece*, 2019 WL 12289568, at *4.

privilege because the work was not performed in anticipation of litigation.[45] Accordingly, the Court denies Defendants' claims of privilege based on work product and consulting expert work product protection with respect to the following documents:

- Entries 0483, 0488, and 0490 in the November 13 Privilege Log; and
- Entries 0001, 0001_001, 0002, 0002_001, 0003, 0004_001, 0006, 0009, 0049, and 0197 in the December 4 Privilege Log.

Having conducted in camera review, the Court finds certain documents related to Category #1 dated on or after September 5, 2018 constitute "fact" work product, which contain no "mental impressions, conclusions, opinions or legal theories of an attorney."[46] Plaintiffs have demonstrated the requisite "substantial need" and "inability to obtain the substantial equivalent elsewhere,"[47] and "exceptional circumstances" that hinder their ability to obtain facts on the same subject matter by other means to render these documents discoverable.[48] Further, to the extent these documents contain opinion work product, Plaintiffs demonstrate the requisite "compelling need and inability to discovery the substantial equivalent by other means."[49] Accordingly, the Court denies Defendants' claims of privilege based on work product and consulting expert work product protection with respect to the following documents:

- Entries 499 and 500 in the November 13 Privilege Log; and
- Entries 0072, 0073, 0073_001, 0073_002, 0095, 0095_001, 0099, 0103, 0103_001, 0104, 0105, 0105_001, 0105_002, 0105_003, 0106, 0106_001, 0107, 0107_001, 0108, 0109, 0109_001, 0109_003, 0119, 0120, 0124, 0124_001,

---

[45] *See id.*
[46] *See In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d at 1240.
[47] *See Southern Scrap Material*, 2003 WL 21474516, at *7, 13.
[48] FED. R. CIV. PRO. 26(b)(4)(D).
[49] *See id.* at *7.

0127_001, 0127_002, 0128_001, 0128_002, 0129_001, 0132, 0132_003, 0132_005, 0132_007, 0132_009, 0132_011, 0132_013, 0146_002, 0146_003, 0146_004, 0168, 0169, 0171, 0173, 0174, 0176, 0176_003, 0176_004, and 0938 in the December 4 Privilege Log.

## II. The Attorney-Client Privilege

Defendants argue that the following documents in the November 13 Privilege Log, which relate to Category #1, are privileged attorney-client communications: Entries 0483, 0488, 0489, 0490, 0498, 0499, 0502, 0503, 0504, 0505, 0506, 0507, 0508, 0509, 0510, 0511, 0512, 0513, and 0514. Defendants further argue that the following documents in the December 4, 2023 Privilege Log, which relate to Category #1, are privileged attorney-client communications: Entries 0005, 0006, 0009, 0019, 0020, 0021, 0022, 0023, 0029, 0031, 0032, 0033, 0034, 0035, 0036, 0037, 0041, 0043, 0051, 0074, 0075, 0093, 0124, 0170, 0175, 0177, 0178, 0180, 0181, 0193, 0194, 0195, 0196, 0197, 0198, 0199, and 0207 in the December 4 Privilege Log.

The work-product doctrine is distinct from and broader than the attorney-client privilege.[50] "[T]he work product privilege [exists] . . . to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent," whereas "[t]he attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship."[51]

"The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged

[50] *See United States v. Nobles*, 422 U.S. 225, 238 (1975).
[51] *Shields v. Sturm, Ruger, & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

communications from the client."[52] "The purpose of the attorney-client privilege is to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[53] "For a communication to be protected under the privilege, the proponent 'must prove: (1) that . . . a confidential communication [was made]; (2) to a lawyer or his subordinate, (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'"[54] "Communications by the lawyer to the client are protected 'if they would tend to disclose the client's confidential communications.'"[55] "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'apply only where necessary to achieve its purpose.'"[56] "Further, 'the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.'"[57]

"Application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'"[58] "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof.'"[59] "'Attorney-client privilege is

[52] *Earl v. Boeing Co.*, 2021 WL 963405, at *2 (E.D. Tex. Mar. 15, 2021) (quoting *United States v. Mobil Corp.*, No. 4:19-cv-507, 149 F.R.D. 533, 536 (N.D. Tex. 1993)) (vacated in part, on other grounds, by *In re Boeing Co.*, No. 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021)).
[53] *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).
[54] *Id.* (quoting *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017)).
[55] *Id.* (quoting *O'Malley v. Pub. Belt R.R. Comm'n for City of New Orleans*, No. 17-4812, 2018 WL 814190, at *2 (E.D. La. Feb. 9, 2018)).
[56] *Id.* (quoting *BDO USA*, 876 F.3d at 695).
[57] *Id.* (quoting *Upjohn*, 449 U.S. at 395).
[58] *Id.* at *3 (quoting *In re Auclair*, 961 F.3d 65, 68 (5th Cir. 1992)).
[59] *Id.* (quoting *BDO USA*, 986 F.3d at 695).

not presumed'[60] . . . and 'ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent.'"[61]

When a corporate setting is involved, courts have recognized the attorney-client privilege analysis "presents unique challenges."[62] In *Stoffels v. SBC Communications, Inc.*, the United States District Court for the Western District of Texas stated:

> The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. The critical inquiry is, therefore, whether any particular communication facilitated the rendition of *predominantly legal advice or services* to the client.[63]

"Even though this standard is 'time-consuming' and 'requires a document-by-document analysis,' it 'ensures a balance between forbidding a company from trying to cloak non-privileged communications with protection by unnecessarily sending them to attorneys and encouraging in-house counsel involvement early and often in corporate decision-making.'"[64]

"Legal advice, as contrasted with business advice, 'involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.'"[65] "If advice offered by in-house counsel intertwines business and legal advice, attorney-client privilege protects the communication only if the legal advice predominates."[66] "Simply labeling communications as 'legal advice' is conclusory and insufficient to satisfy the

---

[60] *Id.* (quoting *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986)).
[61] *Id.* (quoting *BDO USA*, 986 F.3d at 695).
[62] *Id.* at *4.
[63] *Id.* (quoting *Stoffels v. SBC Comms., Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)).
[64] *Id.* at *3 n.3 (quoting *Corporate Attorney-Client Privilege in the Digital Age: War on Two Fronts?*, 16 STAN. J. L. BUS. & FIN. 288, 307 (2011)).
[65] *Id.* (quoting *BDO USA*, 856 F.3d at 365).
[66] *Id.* (quoting *Neuder v. Battelle Pac. Nw. Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000)).

privilege-proponent's burden."[67] Moreover, "[w]hen a corporation simultaneously sends communications to both lawyers and non-lawyers, . . . 'it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.'"[68]

Plaintiffs point to several documents that demonstrate Waste Connections' intent to distribute the Pump Evaluation Report to Jefferson Parish and neighboring landfill, River Birch, which suggest the Waste Connections Defendants did not hire SCS to advise defense counsel on a confidential basis.[69] Having conducted in camera review, the Court agrees, and finds in the Plaintiffs' favor with respect to certain documents related to Category #1. "[T]he attorney-client privilege does not apply to every communication involving counsel," but only those "communications made in confidence between a client and his lawyer for the purpose of obtaining legal advice."[70] Defendants have not met the burden of demonstrating that the primary purpose of the following documents was to obtain advice on specified legal issues as required for attorney-client privilege to attach:[71]

- Entry 0483, 0488, 0490, and 0499 in the November 13 Privilege Log; and
- Entries 0006, 0009, 0051, 0124, 0124_001, and 0197 in the December 4 Privilege Log.

Defendants' assertions of work product, consulting expert work product, and attorney-client privileges on the remaining documents related to Category #1 are proper. Accordingly, Defendants are not required to produce them to Plaintiffs.

---

[67] *Id.* (citing *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000)).
[68] *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 524 (E.D. La. 2021) (quoting *In re Vioxx Prod. Liability Lit.*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007)).
[69] R. Doc. 381-1, p. 4 (19-11133).
[70] *Tonti Management Co., Inc. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *9 (E.D. La. June 25, 2020).
[71] *See id.*

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART and DEFERRED IN PART**[72] as stated herein.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash is **DENIED IN PART and DEFERRED IN PART**.[73]

**IT IS FURTHER ORDERED** that the Waste Connections Defendants produce the following documents in full, without redactions, by **January 24, 2024**:

- Entries 0483, 0488, 0490, 0499, and 0500 in the November 13 Privilege Log.
- Entries 0001, 0001_001, 0002, 0002_001, 0003, 0004_001, 0006, 0009, 0049, 0051, 0072, 0073, 0073_001, 0073_002, 0095, 0095_001, 0099, 0103, 0103_001, 0104, 0105, 0105_001, 0105_002, 0105_003, 0106, 0106_001, 0107, 0107_001, 0108, 0109, 0109_001, 0109_003, 0119, 0120, 0124, 0124_001, 0127_001, 0127_002, 0128_001, 0128_002, 0129_001, 0132, 0132_003, 0132_005, 0132_007, 0132_009, 0132_011, 0132_013, 0146_002, 0146_003, 0146_004, 0168, 0169, 0171, 0173, 0174, 0176, 0176_003, 0176_004, 0197, and 0938 in the December 4 Privilege Log.

**New Orleans, Louisiana, this 23rd day of January, 2024.**

Susie Morgan

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

[72] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). The Court has ruled on the relevant documents related to Category #1 only in this Order. The Court defers ruling on the remaining issues raised in Plaintiffs' motion to compel at this time.
[73] R. Doc. 368 (19-11133).