**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ELIAS JORGE "GEORGE"** | **CIVIL ACTION** |
| **ICTECH-BENDECK,** | |
|     **Plaintiff** | |
| | |
| **VERSUS** | **NO.  18-7889** |
| |     **c/w 18-8071,** |
| |     **18-8218, 18-9312** |
| | |
| **WASTE CONNECTIONS** | **SECTION: "E" (5)** |
| **BAYOU, INC., ET AL.,** | |
|     **Defendants** | |

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
|     **Plaintiffs** | |
| | |
| **VERSUS** | **NO.  19-11133** |
| |     **c/w 19-14512** |
| | |
| **LOUISIANA REGIONAL** | **SECTION: "E" (5)** |
| **LANDFILL COMPANY, ET AL.,** | |
|     **Defendants** | |

*Applies to: All Cases*

## ORDER AND REASONS

Before the Court are two contested discovery motions: Plaintiffs' Motion to Compel

Discovery Against the Waste Connections Defendants (hereinafter "Motion to Compel")[1]

and a Motion to Quash the *Addison* Plaintiffs' Subpoena to SCS Engineers (hereinafter

"Motion to Quash") filed by Defendants Waste Connections Bayou, Inc., Waste

Connections US, Inc., and Louisiana Regional Landfill Company (collectively the "Waste

---

[1] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). Defendants opposed. R. Doc. 329 (18-7889); R. Doc. 383 (19-11133). Plaintiffs replied. R. Doc. 389 (19-11133). Plaintiffs filed a supplemental memorandum. R. Doc. 393 (19-11133). Defendants filed a supplemental reply. R. Doc. 394 (19-11133).

Connections Defendants" or "Defendants").[2] Presently, the only outstanding issues in these contested motions relate to documents involving Stearns, Conrad & Schmidt, Consulting Engineers, Inc. ("SCS Engineers").[3]

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019. The Court's Order and Reasons issued on January 2, 2024 presents background relevant to the discovery motions.[4]

On January 31, 2024, the Court held a video status conference (the "January 31 Conference") at which "[t]he parties agreed to produce to each other invoices for all testifying expert witnesses, commencing with the inception of issues related to this litigation in 2018 through the present."[5] In the minute entry memorializing the January 31 Conference, the Court ordered the Waste Connections Defendants to "produce invoices for all testifying experts and for any work performed by SCS Engineers for Waste Connections Defendants or for counsel for the Waste Connections Defendants."[6] On February 12, 2024, counsel for the Waste Connections Defendants notified the Court and Plaintiffs that they produced to Plaintiffs 222 invoices from the Waste Connections Defendants' testifying expert witnesses and for work performed by SCS Engineers.[7] The Waste Connections Defendants withheld in full or partially redacted 22 invoices from

---

[2] R. Doc. 368 (19-11133). Plaintiffs filed a Motion to Enforce Subpoena, which the Court construes as an opposition to the Motion to Quash. R. Doc. 381 (19-11133). Defendants filed a Reply Memorandum in Support of Their Motion to Quash. R. Doc. 388 (19-11133). *See also* Subpoena to Produce Documents Issued to SCS Engineers, R. Doc. 381-5 (19-11133).

[3] *See* Requests for Production 58-66, *Addison* Plaintiffs' Second Set of Requests for Production of Documents to the Waste Connections Defendants, R. Doc. 329-2 at pp. 4-7 (18-7889).

[4] R. Doc. 397 (18-7889); R. Doc. 468 (19-11133).

[5] R. Doc. 415 at p. 2 (18-7889); R. Doc. 495 (19-11133).

[6] *Id.*

[7] Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to Eric C. Rowe and Jason Z. Landry, Counsel for Plaintiffs (Feb. 12, 2024).

production "related to litigation support tasks and other non-produced work product by SCS [Engineers]" (the "Withheld Invoices"), and provided the withheld invoices to the Court for in camera review.[8]

On February 28, 2024, the Waste Connections Defendants confirmed to the Court that certain documents gathered or prepared by SCS Engineers, which underlie the Withheld Invoices, are described in the privilege logs produced on November 13, 2023 and December 4, 2023 (respectively, the "November 13 Privilege Log" and "December 4 Privilege Log"). These groups of work product[9] are identified as: Group #1, "Consultation with SCS as consulting expert for use in providing legal advice" (hereinafter "General Consulting Tasks"); Group #2, "Off-site survey of area odor sources, July and August 2019" (the "July/August 2019 Off-Site Survey"); Group #3, "November 2019 off-site odor samples" (the "November 2019 Off-Site Sampling Event"); and Group #4, "September 2019 site inspection by Dave Fisher (SCS)" (the "September 2019 Site Inspection"). The Waste Connections Defendants have withheld from Plaintiffs the documents included in the four groups of work product but provided them to the Court for in camera review. This Order and Reasons concerns the Withheld Invoices and the documents included in the four aforementioned groups of work product.

## **LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[10] "[I]nformation

---

[8] *Id.*

[9] The Court categorizes the work product discussed into "groups of work product" in this Order and Reasons to distinguish it from the nine "Categories of Work" referenced in Attachment A to the Court's Order and Reasons issued on January 12, 2024. R. Doc. 406-1 (18-7889); R. Doc. 483-1 (19-11133). The groups of work product discussed in this Order and Reasons concern work performed by SCS Engineers, however, unlike the Categories of Work discussed in other Orders and Reasons, SCS did not prepare reports associated with the groups of work product discussed herein.

[10] FED. R. CIV. P. 26(b); *see also Miller v. Sam Houston Univ.*, 986 F.3d 880, 891 (5th Cir. 2021).

within the scope of discovery need not be admissible in evidence to be discovered."[11] At the discovery stage, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in that case."[12] "[T]he threshold for relevance at the discovery stage [under Rule 26(b) of the Federal Rules of Civil Procedure] is lower than at the trial stage" under Federal Rule of Evidence 401.[13] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[14] If relevance is in doubt, the court should be permissive in allowing discovery.[15] This broad scope is necessary given the nature of litigation, where determinations of discoverability are made well in advance of trial.[16] Likewise, "broad discretion is afforded to the district court when deciding discovery matters,"[17] and the Court must determine the scope of discovery "in light of the relevant facts of the particular case."[18]

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[19] discovery does have "'ultimate and necessary boundaries.'"[20] Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery

---

[11] FED. R. CIV. P. 26(b)(1).

[12] *Stevenson v. Benjamin*, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978); *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011).

[13] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. at 590.

[14] *Dotson v. Edmonson*, 2017 WL 11535244, at *2 (E.D. La. 11/21/2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2/4/2005)).

[15] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 5/11/2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).

[16] *Rangel*, 274 F.R.D. at 590 n.5.

[17] *Miller*, 986 F.3d at 891 (citing *Crosby v. la. Health Serv. & Indemnity Co.*, 647 F.3d 258, 261 (5th Cir. 2011)).

[18] *See Conboy v. Edward D. Jones & Co.*, 140 F. App'x 510, 517 (5th Cir. 2005).

[19] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).

[20] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

4

sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope of Rule 26(b)(1)."[21] Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[22] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[23]

"The party filing the motion to compel bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."[24] "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[25] "[T]he party asserting a privilege exemption from discovery . . . bears the burden of demonstrating the applicability of that privilege."[26] "Blanket assertions of privilege" are insufficient to carry a party's burden.[27]

## LAW AND ANALYSIS

In their motion, Plaintiffs seek to compel discovery of hundreds of documents.[28] After the January 31 Conference, the Court ordered the Waste Connections Defendants to

---

[21] FED. R. CIV. P. 26(b)(2)(C)(i)–(iii).

[22] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

[23] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. 7/14/2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. 3/4/2020) (Morgan, J.).

[24] *Summers v. Louisiana*, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations omitted).

[25] *Id.*

[26] *Zahid Hotel Group, L.L.C. v. AmGUARD Insurance Co.*, 22-2792, 2023 WL 4353132, at *2 (E.D. La. July 5, 2023).

[27] *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981).

[28] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133).

produce invoices for all testifying experts and for any work performed by SCS Engineers.[29] In their February 12, 2024 letter, Defendants notified the Court and Plaintiffs that they withheld from production in full or partially redacted 22 invoices that are "related to litigation support tasks and other non-produced work product by SCS."[30] In the Withheld Invoices, SCS Engineers billed the Waste Connections Defendants for its work represented by documents included in the four groups of work product. The November 13 and December 4 Privilege Logs include documents included in all four groups. This Order and Reasons addresses discovery issues involving the Withheld Invoices and the withheld documents included in the foregoing groups of work product.

## I.   The Work Product Doctrine and Consulting Expert Work Product Privilege

The Waste Connections Defendants argue all Withheld Invoices[31] and all documents in the November 13 and December 4 Privilege Logs included in Groups #1 through #4 are privileged based on the work product doctrine and/or consulting expert work product privilege.[32]

---

[29] R. Doc. 415 (18-7889); R. Doc. 495 (19-11133).

[30] Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to Eric C. Rowe and Jason Z. Landry, Counsel for Plaintiffs (Feb. 12, 2024).

[31] Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to Eric C. Rowe and Jason Z. Landry, Counsel for Plaintiffs (Feb. 12, 2024) (contending Defendants "withheld 20 invoices and partially redacted two invoices from SCS Engineers pursuant to the attorney-client privilege, work product doctrine, and Rule 26(b)(4)(D)").

[32] Specifically, Defendants argue the following documents in Group #1 are privileged based on the work product doctrine and/or consulting expert work product privilege: 0065, 0068, 0077, 0084, 0100, 0126, 0182, 0201, 0283, 0284, 0285, 0286, 0305, 0346, 0347, 0348, 0349, 0350, 0351, 0352, 0353, 0354, 0356, 0357, 0358, 0359, 0360, 0361, 0362, 0363, 0364, 0365, 0366, 0367, 0368, 0369, 03670, 0371, 0372, 0373, 0374, 0375, 0376, 0458, 0459, 0466, 0467, 0518, 0519, 0594, 0597, 0609, 0614, 0615, 0622, 0623, 0655, 0663, 0664, 0665, 0684, 0685, 0688, 0708, 0722, 0725, 0728, 0729, 0730, 0731, 0732, 0733, 0734, 0754, 0759, 0765, 0774, 0795, 0796, 0798, 0801, 0802, 0803, 0806, 0807, 0809, 0810, 0811, 0812, 0813, 0815, 0816, 0817, 0818, 0819, 0820, 0821, 0822, 0823, 0824, 0825, 0826, 0827, 0828, 0829, 0830, 0831, 0832, 0833, 0834, 0835, 0836, 0837, 0838, 0839, 0840, 0841, 0842, 0843, 0844, 0845, 0847, 0848, 0849, 0850, 0851, 0852, 0853, 0854, 0855, 0856, 0857, 0858, 0859, 0860, 0861, 0862, 0863, 0864, 0865, 0866, 0867, 0868, 0869, 0870, 0871, 0872, 0873, 0874, 0878, 0879, 0880, 0881, 0882, 0883, 0884, 0885, 0886, 0887, 0888, 0889, 0890, 0891, 0892, 0893, 0941, 0942, 0943, 0949, 0950, and 0951 in the December 4 Privilege Log. Pursuant to the Court's Order and Reasons issued on January 12, 2024, the Waste Connections Defendants produced to Plaintiffs documents 0077 and 0126 in the December 4 Privilege Log. *See* R. Doc. 406 (18-7889); R. Doc. 483 (19-11133). Defendants argue the following documents in Group #2 are privileged based on the work product doctrine and/or consulting expert privilege: 0553 in the November

"Federal law governs . . . parties' assertions that certain information is protected from disclosure by the work product doctrine."[33] "The work product doctrine is not an umbrella that shades all materials prepared by a lawyer. The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation."[34] The work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[35] "Excluded from the work-product doctrine are materials assembled in the ordinary course of business."[36] The doctrine does not place work product outside the scope of discovery, but instead "creates a form of qualified immunity from discovery" for materials prepared in anticipation of litigation.[37] "Rule 26(b)(3) protects documents prepared by a party's agent from discovery, as long as they were prepared in anticipation of litigation."[38]

The level of protection depends on whether the materials prepared in anticipation of litigation constitute "opinion" work product or non-opinion, "fact" work product.[39] The "mental impressions, conclusions, opinions or legal theories of an attorney" are opinion

---

13 Privilege Log; and 0212, 0213, 0215, 0482, 0501, 0502, 0593, 0598, 0601, 0603, 0604, 0605, 0608, 0610, 0613, 0621, and 0804 in the December 4 Privilege Log. Defendants argue the following documents in Group #3 are privileged based on the work product doctrine and/or consulting expert privilege: 0583 in the November 13 Privilege Log; and 0651, 0652, 0703, 0711, 0712, 0715, 0719, 0720, 0721, 0724, 0726, 0735, 0743, 0750, 0751, 0763, 0766, 0769, 0790, and 0934 in the December 4 Privilege Log. Defendants argue the following documents in Group #4 are privileged based on the work product doctrine and/or consulting expert privilege: 0568 and 0582 in the November 13 Privilege Log; and 0625, 0649, 0658, 0659, 0660, and 0661 in the December 4 Privilege Log.

33 *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, at *5 (E.D. La. June 18, 2003) (citing *Naquin v. Unocal Corp.*, 2002 WL 1837838, at *2 (E.D. La. 2002)).

34 *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).

35 FED. R. CIV. P. 26(b)(3)(A).

36 *Treece v. Perrier Condominium Owners Ass'n, Inc.*, 2019 WL 12289568, at *4 (E.D. La. Jun 20, 2019); *see also Hill Tower, Inc. v. Dep't of Navy*, 718 F. Supp. 562, 565 (N.D. Tex. 1988) ("The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation when this document was drafted.").

37 *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993).

38 *Southern Scrap Material*, 2003 WL 21474516, at *6.

39 *Id.* at *7.

work product subject to a higher showing for production.[40] "Fact work product, on the other hand, is any material 'prepared in anticipation of litigation or for trial by or for another party or its representative' under Rule 26(b)(3)(A) but 'not the "mental impressions, conclusions, opinions or legal theories of an attorney"' under subsection (b)(3)(B)."[41] A party seeking discovery of ordinary fact work product must make a showing of "substantial need and the inability to obtain the substantial equivalent elsewhere."[42] "However, absent a showing of *compelling* need and the inability to discover the substantial equivalent by other means, work product evidencing mental impressions of counsel, conclusions, opinions and legal theories of an attorney are not discoverable."[43]

Under Rule 26(b)(4)(D), a party may discover "facts known or opinions held" by a non-testifying expert retained "in anticipation of litigation . . ., only upon showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[44] The rule "creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances."[45]

In their motion to enforce subpoena, Plaintiffs argue "the documents [] must be disclosed because this case involves exceptional circumstances under which it is impracticable for Plaintiffs to obtain facts or opinions on the same subject by other means."[46] In their objections to the November 13 Privilege Log, Plaintiffs similarly assert certain documents in Groups #1 through #4 fall within the "exceptional circumstances"

---

[40] *In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1240 (5th Cir. 1982).
[41] *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 487 (W.D. Tex. 2020).
[42] *Southern Scrap Material*, 2003 WL 21474516, at *7, 13.
[43] *Id*. at *7.
[44] Fed. R. Civ. Pro. 26(b)(4)(D).
[45] *Will Uptown, LLC v. B&P Restaurant Group, LLC*, 15-51, 2016 WL 4620200, at *5 (M.D. La. Sept. 6, 2016).
[46] R. Doc. 381 at pp. 23-24 (19-11133).

exception defined under Rule 26(b)(4)(D).[47] Further, concerning documents included in the July/August 2019 Off-Site Survey and November 2019 Off-Site Sampling Event (Groups #2 and #3), Plaintiffs contend "a proper assessment of the privilege cannot be done based on the privilege log [because] the factual descriptions in the withheld documents may provide information that is unavailable to the Plaintiffs due to lack of access, even including during Plaintiffs' site visit."[48] Plaintiffs also argue documents included in the September 2019 Site Inspection (Group #4) contain "[f]acts observed by Mr. [David] Fisher [that] are not privileged[,] [a]nd even if they were, there is no other source for Plaintiffs to learn this information."[49]

In opposition, the Waste Connections Defendants argue the work performed by SCS Engineers for the Waste Connections Defendants is non-testifying expert work protected from discovery under Rule 26(b)(4)(D), the work product doctrine, and the attorney-client privilege.[50] Defendants contend "Plaintiffs cannot claim prejudice and have not shown exceptional circumstances necessary to require disclosure of otherwise privileged and protected communications between counsel, its consulting expert SCS [Engineers], and the client."[51] Concerning documents in the General Consulting Tasks (Group #1), Defendants argue Plaintiffs "are not entitled to SCS's consulting work product and related communications for several analyses performed at outside counsel's direction

---

[47] *See* R. Doc. 385 at p. 15 (18-7889).
[48] *Id.* at p. 15. Under Rule 26(b)(5)(A), a party withholding information that is otherwise discoverable by claiming the information is privileged must expressly make the claim and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A). In their motion to enforce subpoena, Plaintiffs likewise argue Defendants did not satisfy their burden of asserting privilege under Rule 45(e)(2), which requires the person withholding subpoenaed information under a claim of privilege "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." R. Doc. 381 at p. 11 (19-11133).
[49] R. Doc. 385 at p. 18 (18-7889).
[50] *See* R. Doc. 368-1 (19-11133).
[51] R. Doc. 386 at p. 11 (18-7889).

that have not been produced to Plaintiffs."[52] Defendants contend they "should not be further punished by being forced to disclose privileged communications and mental impressions" contained in certain documents in the July/August 2019 Off-Site Survey (Group #2) "because they [already] disclosed a thorough set of data and reports to the Plaintiffs."[53] Similarly, with respect to documents in the November 2019 Off-Site Sampling Event (Group #3), Defendants argue Plaintiffs conducted their own independent sampling concurrently and, therefore, "can reach their own opinions and analysis, and . . . cannot establish exceptional circumstances to warrant disclosure of protected communications."[54] Defendants claim certain documents in the September 2019 Site Inspection (Group #4) are "communications of a non-testifying consulting expert advising counsel and the client on the expert's evaluation of technical issues" and "Plaintiffs have not shown 'exceptional circumstances' necessary to deliver" the privileged documents.[55]

Having conducted in camera review, the Court finds the 22 Withheld Invoices and certain documents in Groups #1 through #4 constitute "fact" work product, which contain no "mental impressions, conclusions, opinions or legal theories of an attorney."[56] Plaintiffs have demonstrated the requisite "substantial need," "inability to obtain the substantial equivalent elsewhere,"[57] and "exceptional circumstances" that hinder their ability to obtain facts on the same subject matter by other means to render these documents discoverable.[58] Further, to the extent these documents contain opinion work product, Plaintiffs demonstrate the requisite "compelling need and inability to discovery

---

[52] *Id.* at p. 18.
[53] *Id.* at p. 11.
[54] *Id.* at p. 14.
[55] *Id.* at pp. 14-15.
[56] *See In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d at 1240.
[57] *See Southern Scrap Material*, 2003 WL 21474516, at *7, 13.
[58] FED. R. CIV. PRO. 26(b)(4)(D).

the substantial equivalent by other means."[59] Accordingly, the Court denies Defendants'

claims of privilege based on work product and consulting expert work product protection

with respect to the following documents:

- The 22 Withheld Invoices;[60]

- Entries 0568, 0568_001, and 0582 in the November 13 Privilege Log; and

- Entries 0284, 0285_001, 0305, 0346, 0347, 0348, 0349, 0350, 0351, 0352, 0353, 0356, 0357, 0358, 0359, 0360, 0361, 0362, 0363, 0364, 0365, 0366, 0367, 0368, 0369, 0370, 0371, 0372, 0373, 0374, 0375, 0376, 0466_001, 0518, 0518_001, 0623_001, 0658, 0659, 0660_001, 0660_002, 0664_001, 0665, 0721_001, 0721_003, 0725, 0728, 0729, 0730, 0731, 0732, 0733, 0734, 0759_001, 0798, 0801_001, 0801_002, 0801_003, 0801_004, 0804_001, 0848_001, 0848_002, 0857_001, 0857_002, 0857_003, 0858_001, 0859, 0862_001, 0862_003, 0862_004, 0862_005, 0862_006, 0862_007, 0863_001, 0863_003, 0863_004, 0863_005, 0863_006, 0863_007, 0865_001, 0867_001, 0878, 0879, 0880, 0881, 0882, 0883, 0884, 0885, 0886, 0887, 0888, 0889, 0890, 0891, 0892, 0893, 0950, and 0951 in the December 4 Privilege Log.[61]

## II.    The Attorney-Client Privilege

The work-product doctrine is distinct from and broader than the attorney-client

privilege.[62] "[T]he work product privilege [exists] . . . to promote the adversary system by

safeguarding the fruits of an attorney's trial preparations from the discovery attempts of

an opponent," whereas "[t]he attorney-client privilege exists to protect confidential

communications and to protect the attorney-client relationship."[63]

"The attorney-client privilege protects two related, but different communications:

(1) confidential communications made by a client to his lawyer for the purpose of

obtaining legal advice; and (2) any communication from an attorney to his client when

---

[59] *See Southern Scrap Material*, 2003 WL 21474516, at *7.

[60] *See* Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to Eric C. Rowe and Jason Z. Landry, Counsel for Plaintiffs (Feb. 12, 2024).

[61] Of these documents, the Waste Connections Defendants also argue the following are properly withheld under the attorney-client privilege: Entries 0568 and 0582 in the November 13 Privilege Log; and Entries 0284, 0285, 0466, 0518, 0623, 0660, 0664, 0665, 0721, 0725, 0759, 0798, 0801, 0804, 0848, 0857, 0858, 0862, 0863, 0865, 0867, and 0950 in the December 4 Privilege Log.

[62] *See United States v. Nobles*, 422 U.S. 225, 238 (1975).

[63] *Shields v. Sturm, Ruger, & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client."[64] "The purpose of the attorney-client privilege is to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[65] "For a communication to be protected under the privilege, the proponent 'must prove: (1) that . . . a confidential communication [was made]; (2) to a lawyer or his subordinate, (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'"[66] "Communications by the lawyer to the client are protected 'if they would tend to disclose the client's confidential communications.'"[67] "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'apply only where necessary to achieve its purpose.'"[68] "Further, 'the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.'"[69]

"Application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'"[70] "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof.'"[71] "'Attorney-client privilege is not

---

[64] *Earl v. Boeing Co.*, 2021 WL 963405, at *2 (E.D. Tex. Mar. 15, 2021) (quoting *United States v. Mobil Corp.*, No. 4:19-cv-507, 149 F.R.D. 533, 536 (N.D. Tex. 1993)) (vacated in part, on other grounds, by *In re Boeing Co.*, No. 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021)).

[65] *Id*. (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

[66] *Id*. (quoting *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017)).

[67] *Id*. (quoting *O'Malley v. Pub. Belt R.R. Comm'n for City of New Orleans*, No. 17-4812, 2018 WL 814190, at *2 (E.D. La. Feb. 9, 2018)).

[68] *Id*. (quoting *BDO USA*, 876 F.3d at 695).

[69] *Id*. (quoting *Upjohn*, 449 U.S. at 395).

[70] *Id*. at *3 (quoting *In re Auclair*, 961 F.3d 65, 68 (5th Cir. 1992)).

[71] *Id*. (quoting *BDO USA*, 986 F.3d at 695).

presumed'[72] . . . and 'ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent.'"[73]

When a corporate setting is involved, courts have recognized the attorney-client privilege analysis "presents unique challenges."[74] In *Stoffels v. SBC Communications, Inc.*, the United States District Court for the Western District of Texas stated:

> The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. The critical inquiry is, therefore, whether any particular communication facilitated the rendition of *predominantly legal advice or services* to the client.[75]

"Even though this standard is 'time-consuming' and 'requires a document-by-document analysis,' it 'ensures a balance between forbidding a company from trying to cloak non-privileged communications with protection by unnecessarily sending them to attorneys and encouraging in-house counsel involvement early and often in corporate decision-making.'"[76]

"Legal advice, as contrasted with business advice, 'involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.'"[77] "If advice offered by in-house counsel intertwines business and legal advice, attorney-client privilege protects the communication only if the legal advice predominates."[78] "Simply labeling communications as 'legal advice' is conclusory and insufficient to satisfy the

---

[72] *Id.* (quoting *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986)).
[73] *Id.* (quoting *BDO USA*, 986 F.3d at 695).
[74] *Id.* at \*4.
[75] *Id.* (quoting *Stoffels v. SBC Comms., Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)).
[76] *Id.* at \*3 n.3 (quoting *Corporate Attorney-Client Privilege in the Digital Age: War on Two Fronts?*, 16 Stan. J. L. Bus. & Fin. 288, 307 (2011)).
[77] *Id.* (quoting *BDO USA*, 856 F.3d at 365).
[78] *Id.* (quoting *Neuder v. Battelle Pac. Nw. Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000)).

privilege-proponent's burden."[79] Moreover, "[w]hen a corporation simultaneously sends communications to both lawyers and non-lawyers, . . . 'it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.'"[80]

Of the Withheld Invoices and the documents in Groups #1 through #4 to which the Court determined work product doctrine and consulting expert work product privileges do not attach, the Waste Connections Defendants argue the following are properly withheld pursuant to the attorney-client privilege:

- The 22 Withheld Invoices;

- Entries 0568 and 0582 in the November 13 Privilege Log; and

- Entries 0284, 0285, 0466, 0518, 0623, 0660, 0664, 0665, 0721, 0725, 0759, 0798, 0801, 0804, 0848, 0857, 0858, 0862, 0863, 0865, 0867, and 0950 in the December 4 Privilege Log.

"[T]he attorney-client privilege does not apply to every communication involving counsel," but only those "communications made in confidence between a client and his lawyer for the purpose of obtaining legal advice."[81] Defendants have not met the burden of demonstrating that the primary purpose of certain documents was to obtain advice on specified legal issues as required for attorney-client privilege to attach.[82] Further, the Court finds that, with respect to certain documents, Plaintiffs are unable to "obtain the substantial equivalent" elsewhere and are entitled to their production.[83] Specifically, the Court makes the following findings:

- Page 1 of Entry 0568 in the November 13 Privilege Log contains legal advice. The remainder of Entry 0568 does not contain communications made predominantly

---

[79] *Id.* (citing *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000)).

[80] *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 524 (E.D. La. 2021) (quoting *In re Vioxx Prod. Liability Lit.*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007)).

[81] *Tonti Management Co., Inc. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *9 (E.D. La. June 25, 2020).

[82] *See id.*

[83] *See Southern Scrap Material*, 2003 WL 21474516, at *5 (quoting FED. R. CIV. P. 26(b)(3)).

for the purpose of giving or obtaining legal advice or services and is therefore not subject to the attorney-client privilege. Accordingly, Defendants must produce the document to Plaintiffs but, prior to disclosure, may redact all of page 1 until the paragraph beginning "Here is my summary of observations."

- Pages 1, 2, and 3 of Entry 0582 in the November 13 Privilege Log contain legal advice. The remainder of Entry 0582 does not contain communications made predominantly for the purpose of giving or obtaining legal advice or services and is therefore not subject to the attorney-client privilege. Accordingly, Defendants must produce the document to Plaintiffs but may redact the following prior to disclosure:
   - The email from Megan Brillault to Matt Crockett dated September 20, 2019 on page 1;
   - All of page 2; and
   - The first two emails on page 3.[84]

- Entry 0568_001 attached to Entry 0568 in the November 13 Privilege Log does not contain communications made predominantly for the purpose of giving or obtaining legal advice or services and is therefore not subject to the attorney-client privilege. Accordingly, Defendants must produce the document in full, without redaction.

- Entries 0284, 0285_001, 0466_001, 0518, 0518_001, 0623_001, 0660_001, 0660_002, 0664_001, 0665, 0721_001, 0721_003, 0725, 0759_001, 0798, 0801_001, 0801_002, 0801_003, 0801_004, 0804_001, 0848_001, 0848_002, 0857_001, 0857_002, 0857_003, 0858_001, 0862_001, 0862_003, 0862_004, 0862_005, 0862_006, 0862_007, 0863_001, 0863_003, 0863_004, 0863_005, 0863_006, 0863_007, 0865_001, 0867_001, and 0950 in the December 4 Privilege Log do not contain communications made predominantly for the purpose of giving or obtaining legal advice or services and are therefore not subject to the attorney-client privilege. Accordingly, Defendants must produce the documents in full, without redactions.

Defendants' assertions of work product, consulting expert work product, and attorney-client privileges on the remaining documents involving Groups #1 through #4 are proper. Accordingly, Defendants are not required to produce them to Plaintiffs.

---

[84] To clarify, Defendants must produce the third email on page three from Darren Ledet dated September 19, 2019, which contains the manual water depths for the gas wells.

## **CONCLUSION**

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion to Compel is **GRANTED IN PART and DEFERRED IN PART**[85] as stated herein.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash is **DENIED IN PART and DEFERRED IN PART**.[86]

**IT IS FURTHER ORDERED** that the Waste Connections Defendants produce the following documents in full, without redactions, by **March 15, 2024**:

- The 22 Withheld Invoices "related to litigation support tasks and other non-produced work product by SCS Engineers";[87]
- Entry 0568_001 in the November 13 Privilege Log; and
- Entries 0284, 0285_001, 0305, 0346, 0347, 0348, 0349, 0350, 0351, 0352, 0353, 0356, 0357, 0358, 0359, 0360, 0361, 0362, 0363, 0364, 0365, 0366, 0367, 0368, 0369, 0370, 0371, 0372, 0373, 0374, 0375, 0376, 0466_001, 0518, 0518_001, 0623_001, 0658, 0659, 0660_001, 0660_002, 0664_001, 0665, 0721_001, 0721_003, 0725, 0728, 0729, 0730, 0731, 0732, 0733, 0734, 0759_001, 0798, 0801_001, 0801_002, 0801_003, 0801_004, 0804_001, 0848_001, 0848_002, 0857_001, 0857_002, 0857_003, 0858_001, 0859, 0862_001, 0862_003, 0862_004, 0862_005, 0862_006, 0862_007, 0863_001, 0863_003, 0863_004, 0863_005, 0863_006, 0863_007, 0865_001, 0867_001, 0878, 0879, 0880, 0881, 0882, 0883, 0884, 0885, 0886, 0887, 0888, 0889, 0890, 0891, 0892, 0893, 0950, and 0951 in the December 4 Privilege Log.

**IT IS FURTHER ORDERED** that the Waste Connections Defendants produce Entries 0568 and 0582 in the November 13 Privilege Log to Plaintiffs by **March 15, 2024.** Prior to disclosure, Defendants may redact the following:

---

[85] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). The Court has ruled on the Withheld Invoices and documents included in Groups #1, #2, #3, and #4 only in this Order. The Court defers ruling on the remaining issues raised in Plaintiffs' motion to compel at this time.

[86] R. Doc. 368 (19-11133).

[87] *See* Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to Eric C. Rowe and Jason Z. Landry, Counsel for Plaintiffs (Feb. 12, 2024).

- For Entry 0568, Defendants may redact all of page 1 until the paragraph beginning "Here is my summary of observations."
- For Entry 0582, Defendants may redact the following:
  - The email from Megan Brillault to Matt Crockett dated September 20, 2019 on page 1;
  - All of page 2; and
  - The first two emails on page 3.

**New Orleans, Louisiana, this 6th day of March, 2024.**


**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**