## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** **Plaintiffs** | **CIVIL ACTION** |
| | **NO. 19-11133, c/w 19-14512** |
| **VERSUS** | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** **Defendants** | |
| | **JUDGE: Morgan** **MAGISTRATE JUDGE: North** |
| *Applies to: All Cases* | |

## MEMORANDUM IN SUPPORT OF
## WASTE CONNECTIONS DEFENDANTS' MOTION TO COMPEL
## <u>PRODUCTION OF PLAINTIFFS' AIR SAMPLING DATA</u>

## TABLE OF CONTENTS

Introduction ................................................................................................................... 1

Background .................................................................................................................... 3

Argument ...................................................................................................................... 8

   I. Plaintiffs have not satisfied their burden of establishing the air sampling data is privileged.  8

   II. Exceptional circumstances warrant production of the air sampling data. ........................... 10

     A. The air sampling data is fact work product. .................................................... 11

     B. Defendants have a substantial need for the air sampling data. ......................... 12

       1. Plaintiffs' sampling is one of only a few sets of available sampling data in Jefferson Parish during the relevant time period. .................................................. 12

       2. The air sampling data is highly probative of the issues to be tried. ............................ 14

     C. Defendants have not waived their demand for the air sampling data. ............................ 15

   CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Byrd v. BP Expl. & Prod., Inc.,*
No. 22-cv-30654, 2023 WL 4046280 (5th Cir. June 16, 2023)................................................... 3

*Coldwell Banker Real Estate Corp. v. Danette O'Neal,*
No. 06-cv-2515, 2006 WL 3845011 (E.D. La. Dec. 29, 2006) ................................................ 10

*Diamond State Ins. Co. v. Rebel Oil Co.,*
157 F.R.D. 691 (D. Nev. 1994)) ............................................................................................... 3

*Doe 1 v. Baylor Univ.,*
335 F.R.D. 476 (W.D. Tex. 2020) ........................................................................................... 10

*Galley v. ZOLL Med. Corp.,*
No. 18-cv-223, 2019 WL 13193899 (N.D. Tex. May 21, 2019) ............................................. 13

*Horan v. Sun Company, Inc.,*
152 F.R.D. 437 (D. R.I. 1993) ................................................................................................ 11

*In re Int'l Sys. & Controls Corp. Sec. Litig.,*
693 F.2d 1235 (5th Cir. 1982) ................................................................................................ 10

*In re Shell Oil Refinery,*
132 F.R.D. 437 (E.D. La. 1990)............................................................................................... 14

*Jolivet v. Compass Grp. USA, Inc.,*
340 F.R.D. 7 (N.D. Tex. 2021) ................................................................................................. 3

*Little Hocking Water Ass'n, Inc. v. E.I. Du Pont De Nemours & Co.,*
No. 09-cv-1081, 2013 WL 607969 (S.D. Ohio Feb. 19, 2013) ............................................... 11

*Lou v. Lopinto,*
No. 21-cv-80, 2022 WL 1447554 (E.D. La. Mar. 24, 2022) .................................................... 8

*MacNair v. Chubb Eur. Grp. SE,*
No. 23-cv-761, 2024 WL 663652 (E.D. La. Feb. 16, 2024)..................................................... 9

*Maxwell v. Bexar Cnty. Hosp. Dist.,*
No. 06-cv-368, 2007 WL 9710427 (W.D. Tex. Apr. 2, 2007) ................................................. 8

*S. Scrap Material Co. v. Fleming,*
No. 01-cv-2554, 2003 WL 21474516 (E.D. La. June 18, 2003)............................. 1, 10, 11, 12

*U.S. ex rel. Ghaprial v. Quorum Health Res., Inc.*,
   No. 97-cv-1051, 1998 WL 865201 (E.D. La. Dec. 11, 1998) ................................................... 8

**Rules**

Fed. R. Civ. P. 26(b)(4)(D)(ii) ................................................................................................. 10
Fed. R. Civ. P. 26(b)(5) ............................................................................................................. 8

## INTRODUCTION

Plaintiffs refuse to produce air sampling data they admit they have collected and which constitutes one of only a few sets of sampling data available in the Jefferson Parish region during the relevant time period, from July 1, 2017 to December 31, 2019. Plaintiffs assert that the data is privileged, and refuse to disclose even basic non-privileged information about the time and place that such data was collected or the basis for their claim of privilege. In ordering the disclosure of similar sampling data collected by the Defendants' consultants, this Court has held that the "inability to obtain the substantial equivalent elsewhere" demonstrates the requisite special need for the factual work product of non-testifying consultants, and Plaintiffs' air sampling should be produced on the same basis.[1]

Plaintiffs' air sampling data is particularly important because the Waste Connections Defendants[2] suspect that such air samples were taken during the relevant time period at or near the homes of *Addison* Plaintiffs—potentially including on Plaintiffs' private properties. Plaintiffs have refused to either admit or deny the existence or scope of this sampling over many months, while the clock on discovery was ticking. After several attempts to confer with Plaintiffs on this issue, Defendants are now forced to file this motion to compel.

Plaintiffs' recent discovery responses, along with their comments at recent status conferences, have revealed for the first time in this action that they possess air sampling data within Jefferson Parish from the relevant time period. Neither the data nor any related materials have ever been produced or included on a privilege log. These data and any supporting materials are factual

---

[1] Order and Reasons (R. Doc. 505) at 8 (citing *S. Scrap Material Co. v. Fleming,* No. 01-cv-2554, 2003 WL 21474516, at *7, 13 (E.D. La. June 18, 2003)).

[2] The Waste Connections Defendants refers to Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.

1

information that are highly probative of the issues to be tried in the August 2024 trial. Plaintiffs have alleged that the Jefferson Parish Landfill emitted hydrogen sulfide ("H$_2$S") into the surrounding communities at sufficient concentrations to cause a widespread, near-constant odor nuisance, including at the homes of the 13 *Addison* Plaintiffs who are going to trial in August 2024 ("Trial Plaintiffs"). Plaintiffs are seeking an average of more than $655,000 *per Trial Plaintiff*. Now Plaintiffs are hiding some of the only available air sampling data in their neighborhoods from the relevant time period. The data could be used to assess their allegations of near-constant nuisance impacts, the extent of their alleged damages, and the opinions of their air dispersion modeling expert, who relied on modeled emissions estimates without comparison to real-world data that Plaintiffs possess.

The Waste Connections Defendants have a substantial need for this information, and it is impossible for them to obtain this information by any other means, satisfying the "exceptional circumstances" test of Fed. R. Civ. P. 26(b)(4)(D)(ii). Plaintiffs' production of the data is also required under the truth-seeking principles of the judicial process, principles the Court has enforced throughout the discovery process. The Waste Connections Defendants have attempted in good faith to evaluate Plaintiffs' claims of privilege, and while they understand the protections rightfully afforded to privileged information, Plaintiffs have failed to substantiate their privilege claim as plainly required by Fed. R. Civ. P. 26(b)(5). Expert discovery ends on April 30. Defendants' experts need access to the data as soon as possible to allow them to timely supplement their expert reports, if appropriate. Without a showing that attorney opinions are in any individual document containing this air sampling data or necessary supporting information, the additional safeguard of *in camera* review is unnecessary and would only serve to reward Plaintiffs for their

2

obstructive tactics.[3] Accordingly, the Waste Connections Defendants respectfully request an order compelling the immediate production of Plaintiffs' air sampling data,[4] excluding any portions of those documents that contain the mental impressions of attorneys or that reveal the identity of the consulting expert witness.

## BACKGROUND

In November 2019, this Court's First Case Management Order ("CMO") prioritized discovery of "general causation" information, which the Court described as "whether odors and gases were being emitted by the Jefferson Parish Landfill during the relevant time period and whether any such odors and gases were capable of producing the injuries claimed by any one [or] more of the Plaintiffs in this case."[5] The Court's general causation framework called for discovery related to "all non-privileged data, reports, and documents concerning all sampling or monitoring" at "any location in Jefferson Parish other than the Jefferson Parish Landfill."[6] Discovery was also required as to the "concentrations…experienced at the locations within the area at which Plaintiffs reside," but it was not necessary "to show that any such data is specific as to any particular plaintiff."[7] In line with these considerations, the Court explained, in an order regarding the First CMO, that "sampling or monitoring conducted by Plaintiffs' non-testifying experts[]" was

---

[3] *See Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 21 (N.D. Tex. 2021) (citing *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 700 (D. Nev. 1994)) ("In camera review 'is not to be used as a substitute for a party's obligation to justify its withholding of documents' and 'should not replace the effective adversarial testing of the claimed privileges and protections.'").

[4] Defendants would offer a more precise description of the documents they seek—but Plaintiffs have wholly refused to create a privilege log or otherwise disclose what documents they possess related to the air sampling they have conducted.

[5] R. Doc. 80 at 2.

[6] *Id.* at 5-6.

[7] *Id.* at 2-3. This is consistent with the Fifth Circuit's view on which data is relevant to general and specific causation respectively. *See Byrd v. BP Expl. & Prod., Inc.*, No. 22-cv-30654, 2023 WL 4046280, at *2 (5th Cir. June 16, 2023) ("Exposure data collected (or not) from the incident almost always bears on *specific* causation. It does not bear on whether, per the scientific literature, exposure to a chemical can cause a specific injury in the *general population*.") (emphasis in original).

excluded from production, but Defendants' rights to request, Plaintiffs' right to object, and, if necessary, Defendant's right to seek to compel such information was preserved.[8] Accordingly, Defendants proceeded with discovery focused on general causation issues, which did not involve the question of whether individual Plaintiffs were exposed to landfill emissions.

After general causation was resolved, this Court's Eighth CMO provided for an initial set of *Addison* Plaintiffs to proceed to trial and called for discovery "relating to issues beyond General Causation, namely liability, *specific causation*, and damages…"[9] In the course of discovery directed at the Trial Plaintiffs, certain of the Trial Plaintiffs' discovery responses and counsel's statements at court conferences indirectly revealed that they or their counsel had conducted air sampling, seemingly conducted in Jefferson Parish during the relevant time period.

The Waste Connections Defendants served their First Requests for Production on each of the Trial Plaintiffs in May 2023, seeking documents related to the alleged impact of emissions from the Jefferson Parish Landfill on their property (**Request for Production 9**) and any consultant or expert reports relating to emissions at the Plaintiffs' property or elsewhere in Jefferson Parish (**Request for Production 14**).[10] The requests for production defined "you" to mean the "individual Plaintiff responding to these discovery requests, and counsel, experts, investigators, or other persons acting on Plaintiff's behalf."[11] Each Plaintiff responded that no

---

[8] R. Doc. 73 at 2.

[9] R. Doc. 378 at 2 (emphasis added).

[10] *See, e.g.*, May 2, 2023 Waste Connections Defendants' First Set of Requests for Production to Plaintiff Mary Ann Winningkoff, attached hereto as Exhibit A ("First RFPs"). Please see the request for production for the full language of the request. Identical requests for production were served on each of the Trial Plaintiffs, but with respect to Request for Production 14 quoted above the numbering varied by Trial Plaintiff. This request was Request for Production 15 for Andrew Section, Stanley Meyers, Terrance Thompson, Tyrone Thompson, Vernice Lewis, Wendy Gremillion, Scott Gremillion, Braxton Gremillion, Adelyn Gremillion and Reshaun Richardson, and Request for Production 16 for Jonathan Tate.

[11] Ex. A, First RFPs at Appendix A ¶ 18.

documents were withheld in response to Request for Production 9, but indicated that documents

were being withheld in response to Request for Production 14:

> **Request for Production 9:** All documents from January 1, 2015, to present, relating to the alleged impact on you or your property of emissions, including odors, gases, and particulates, that you assert originated from the Jefferson Parish Landfill. . .
>
> ***Plaintiffs' Response:*** *. . . No documents are being withheld based on the objections.[12]*
>
> \*       \*       \*
>
> **Request for Production 14**: Any consultant or expert reports in your possession or the possession of your counsel relating to emissions, including odors, gases, and particulates, you have smelled at your property or elsewhere in Jefferson Parish.
>
> ***Plaintiffs' Objections***: Plaintiff objects to Request for Production No. 14 because Defendant has exceeded the number of Requests for Production of Documents permitted under the 9th CMO. Until Defendant narrows the scope of its Requests for Production of documents, Plaintiff cannot respond. Plaintiff objects to this request because it improperly seeks production that is privileged or is attorney work product. In particular, the work product of a consulting expert is not discoverable under FRCP 26(b)(3). Plaintiff further objects as this request is premature. Plaintiff will produce responsive, non- privileged, non-work product documents pursuant to the applicable deadlines established by the 9th CMO. Pursuant to Rule 34, documents are being withheld based on the foregoing objection.
>
> ***Plaintiffs' Response:*** *Pursuant to Rule 26(b)(4)(D), reports of consulting experts are not discoverable. The reports of testifying experts have previously been produced or will be produced in accordance with the Ninth CMO. As to any other documents, the Request seeks a copy of what Plaintiffs' counsel has, which is information that invades the attorney client privilege and work product immunity. These documents will not be produced.*

---

[12] May 23, 2023 Plaintiff Mary Ann Winningkoff's Objections and Responses to Waste Connections' Interrogatories and Request for Production of Documents at 18, attached hereto as Exhibit B ("Winningkoff Responses"). Please see the Winningkoff Response for Plaintiffs' full responses and objections to each request for production.

> *Documents are being withheld base[d] on the foregoing objections.[13]*

Plaintiffs produced documents on a rolling basis between May 2023 and February 2024, but did not provide a privilege log to identify the nature of the documents being withheld for Requests for Production 9 or 14.[14]

It was not until a December 2023 status conference with the Court on pending discovery issues that Plaintiffs made a cryptic reference that indicated they may possess air sampling data that have never been produced or included on a privilege log. Seeking a definitive statement on whether any sampling was performed, the Waste Connections Defendants served requests for admission on each of the Trial Plaintiffs on December 28 requesting they "[a]dmit that neither You nor Your attorneys have ever conducted air sampling or monitoring" at locations offsite of the Jefferson Parish Landfill or at any location where they resided during the relevant time period.[15] Plaintiffs refused to admit or deny the existence of such sampling data, instead listing various objections and denying the requests "as written."[16]

The Waste Connections Defendants again promptly asked Plaintiffs for a definitive answer on whether such sampling was performed.[17] Plaintiffs refused and threatened to seek fees and costs if Defendants pursued the matter any further.[18] At a meet and confer held on March 12, 2024,

---

[13] Ex. B, Winningkoff Responses at 22.

[14] Plaintiffs provided an informal privilege log in letter format for Requests for Production 18 and 19 only, which made no mention of air sampling data. The privilege log letter is attached hereto as Exhibit C.

[15] *See*, *e.g.*, December 28, 2023 Waste Connections Defendants' Requests for Admission to Mary Ann Winningkoff, attached hereto as Exhibit D. Identical requests were served on each of the Trial Plaintiffs.

[16] *See* January 29, 2024 Plaintiff Mary Ann Winningkoff's Objections and Responses to the Waste Connections Defendants' Requests for Admissions, attached hereto as Exhibit E.

[17] *See* February 12, 2024 Email from Defense Counsel, attached hereto as Exhibit F, at 6; *See* e-mail of Michael Mims dated March 12, 2024 (*id.* at 3).

[18] *See* February 17, 2024 Email from Plaintiffs' Counsel, *id.* at 5.

6

counsel for Defendants attempted to resolve this dispute without involving the Court by asking Plaintiffs to provide some background on these sampling results (e.g., time and location that the samples were collected) in order to evaluate Plaintiffs' claim of privilege and whether exceptional circumstances might exist to warrant production of the data. Plaintiffs took the position "we don't have to tell you anything about this data" and refused to provide any basic background information about how the data were collected, other than indicating that some form of air sampling was conducted by a consulting expert but that it was not "continuous monitoring" and that the data was never provided to anyone other than Plaintiffs' counsel.[19] Plaintiffs' counsel explicitly refused to confirm whether air sampling was conducted at any of the homes of the Trial Plaintiffs.

Defendants followed up in writing to give Plaintiffs another opportunity to establish why their withholding the air sampling data was appropriate, and Plaintiffs responded by reiterating their refusal to provide any additional information regarding their sampling data.[20] Plaintiffs' counsel asserts, without any legal support, that because the factual data they are hiding was not made public or provided to third parties, it is somehow exempt from disclosure under any circumstances, even if Defendants establish "exceptional circumstances" under Fed. R. Civ. P. 26(b)(4)(D)(ii).

But that is not the law—rather, the law requires, and this Court has repeatedly held, that relevant "fact" work product, even when generated by a non-testifying expert, is discoverable when the opposing party has a substantial need for the data, i.e., when the data cannot be recreated.[21] The Court has also stated at multiple status conferences that it will not allow either

---

[19] *See* March 12, 2024 Email from Defense Counsel, *id.* at 3.

[20] *Id.* at 1-3.

[21] *See* R. Doc. 505 at 10 (compelling production of SCS air sampling data – which was never made public—not based on waiver, but because Plaintiffs were experiencing "substantial need, inability to obtain the substantial

side to hide any data, as it wants the jury members to hear all of the data to help them arrive at the truth. In light of Plaintiffs' refusal to provide basic information that would allow Defendants to evaluate whether the air sampling data is being properly withheld, Defendants were left with no choice but to file this motion.

## ARGUMENT

### I.  Plaintiffs have not satisfied their burden of establishing the air sampling data is privileged.

Plaintiffs are withholding air sampling data that is responsive to Defendants' discovery requests on the basis of privilege, but they have refused to satisfy their burden of establishing that any privilege exists. Rule 34 requires that a party's discovery responses must clearly identify the responsive documents, including whether any documents are being withheld.[22] A party withholding information by claiming privilege or work product "*must* (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5) (emphasis added). The use of the word "must" indicates that Plaintiffs must identify each withheld document, including the details specified by Rule 26(b)(5)(A)(i) and (ii), absent some alternative agreement. *Lou v. Lopinto*, No. 21-cv-80, 2022 WL 1447554, at *8 (E.D. La. Mar. 24, 2022). Such identification is

---

equivalent elsewhere, and exceptional circumstances that hinder their ability to obtain facts on the same subject matter by other means to render these documents discoverable.") (internal quotation marks omitted).

[22] *See U.S. ex rel. Ghaprial v. Quorum Health Res., Inc*., No. 97-cv-1051, 1998 WL 865201 at *2 (E.D. La. Dec. 11, 1998) (explaining that responses to requests for production that "fail to state clearly whether all requested items are being produced, whether plaintiff himself has no other responsive documents in his possession, custody or control, or whether other items that are also responsive to particular requests are being withheld" are "unclear, evasive and fail to comply with Fed. R. Civ. P. 34(b)"); *see also Maxwell v. Bexar Cnty. Hosp. Dist*., No. 06-cv-368, 2007 WL 9710427 at *2 (W.D. Tex. Apr. 2, 2007) (The party must "state that any requested documents are not in [his] possession if [he] does not have them…").

necessary to allow the requesting party to evaluate whether the claim of privilege is appropriate—and any claim of privilege is particularly suspect when the information sought is purely factual.

While Plaintiffs have belatedly made a privilege claim, they did not comply in any respect with Rule 26(b)(5)(A)(ii) and instead rebuffed Defendants for many months regarding the existence of the air sampling data. Plaintiffs have further refused to provide any information necessary to enable Defendants to evaluate their claim of privilege over the withheld sampling results, such as the date(s) of the sampling, the specific location(s) sampled, the sampling method used, and the specific substances tested for. Plaintiffs have averred that because the sampling results were not made public or promised to third parties, these disclosures are not required—but neither Rule 26 nor any other federal authority provides an exemption on that basis.[23]

Plaintiffs also cannot fall back on the First CMO as a basis for avoiding Rule 26(b)(5)(A)(ii)'s disclosure requirements. While the First CMO provided a "do not log" provision as to ongoing communications between defense counsel,[24] it says nothing about Plaintiffs' communications with their consulting experts and plainly does not obviate Plaintiffs' duty to substantiate claims of privilege under Fed. R. Civ. P. 26(b)(5). The parties expressly reserved the right to demand unlogged information when, as here, Defendants have a legitimate basis to challenge the claims of privilege.

---

[23] *See* March 13, 2024 Email from Plaintiffs' Counsel, Exhibit F at 1-2. Plaintiffs have no defense that the discovery requests were directed at the individual Plaintiffs, as Plaintiffs' discovery obligations extend to documents and information in the custody, possession, or control of counsel. Documents owned or possessed by agents, attorneys, hired consultants and other third parties hired by a party that the party can reasonably obtain the requested information from upon its own request fall within that party's custody or control. *MacNair v. Chubb Eur. Grp. SE*, No. 23-cv-761, 2024 WL 663652, at *6 (E.D. La. Feb. 16, 2024). Defendants' discovery requests also specifically defined "you" to include "counsel." Ex. A, First RFPs at Appendix A ¶ 18; *see also* Ex. D at 1.

[24] *See* R. Doc. 80 at 5-6, in which no time limitation is placed on the documents Plaintiffs must include on their privilege log as opposed to the defense.

Plaintiffs cannot cut off Defendants' ability to demonstrate a substantial need for the documents by withholding the basic information (required to be disclosed under the federal rules) that would evidence such a need. *See Coldwell Banker Real Estate Corp. v. Danette O'Neal*, No. 06-cv-2515, 2006 WL 3845011, at *1 (E.D. La. Dec. 29, 2006) ("The parties resisting discovery by asserting any privilege bear the burden of proof sufficient to substantiate their privilege claims and cannot rely merely on a blanket assertion of privilege.") (internal citations omitted). Plaintiffs have not disclosed even the minimum information necessary to establish that they have a basis to assert a privilege, and therefore should be ordered to produce the air sampling data.

## II. Exceptional circumstances warrant production of the air sampling data.

Even if Plaintiffs can establish that the air sampling data was consulting expert work product, Defendants have a substantial need for the information, which warrants production under the federal rules and this Court's prior discovery orders. The federal rules explicitly provide for production of work product, including that generated by a consulting expert, on a showing of "exceptional circumstances." Fed. R. Civ. P. 26(b)(4)(D)(ii). The requirements to establish "exceptional circumstances" depend on whether the information sought is considered "opinion" work product or "fact" work product.[25] "A party seeking discovery of ordinary fact work product must make a showing of 'substantial need and the inability to obtain the substantial equivalent elsewhere.'"[26] Generally, purely factual information is discoverable. *See S. Scrap Material*, 2003 WL 21474516, at *16-17 ("Insofar as documents sought recount factual information relevant to the claims [] in the underlying litigation, whether it is simply unannotated raw data, test results,

---

[25] *See* R. Doc. 505 at 7-8 (noting the differing standards) (citing *S. Scrap Material,* 2003 WL 21474516, at *6; *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1240 (5th Cir. 1982); and *Doe 1 v. Baylor Univ.,* 335 F.R.D. 476, 487 (W.D. Tex. 2020)).

[26] *Id.* at 8 (citing *S. Scrap Material,* 2003 WL 21474516, at *7, 13).

maps indicating where samples were taken from, or a graphic display of test sample results, these factual matters are fully discoverable.").[27]

### A.  The air sampling data is fact work product.

Defendants are not seeking to discover the mental impressions of Plaintiffs' counsel, but rather the factual results of sampling undertaken at relevant times and locations, as well as other documents and communications that would provide underlying factual information related to the air sampling.[28] The air sampling data is purely factual as Plaintiffs have not disclosed that any reports or opinions were prepared by their consulting experts from these sampling results, nor do the Defendants presently seek such "opinion" work product. Based on the limited representations made by Plaintiffs' counsel, the sampling data Defendants are seeking appears no different than the Waste Connections Defendants' own July and August 2019 off-site survey data (Group #2) that the Court recently ordered for production in its March 6, 2024 Order.[29]

The Waste Connections Defendants' July and August 2019 off-site survey data was collected by SCS Engineers in various public locations in Jefferson Parish. It was collected at outside counsel's direction and was never included in a report, shared with third parties, or provided to any testifying expert.[30] After considering Plaintiffs' argument that it was

---

[27]A similar issue was addressed in the case of *Horan v. Sun Company, Inc.* in which the court noted that "environmental test results contain relevant, non-privileged facts." 152 F.R.D. 437, 439 (D. R.I. 1993) (granting motion compelling party to respond to an interrogatory seeking the environmental assessment and testing results, test specifications, the person conducting the test and their qualifications, the testing location, and quality assurance for the testing). *See also Little Hocking Water Ass'n, Inc. v. E.I. Du Pont De Nemours & Co.*, No. 09-cv-1081, 2013 WL 607969, at *15 (S.D. Ohio Feb. 19, 2013), aff'd sub nom. 09-cv-1081, 2014 WL 5857994 (S.D. Ohio Nov. 12, 2014) (plaintiff did not oppose the production of underlying sampling data).

[28] *See* R. Doc. 505 at 10 (distinguishing between a consulting expert's "fact" work product as opposed to work product which reveals the mental impressions, conclusions, opinions or legal theories of an attorney); R. Doc. 506 at 8 (same).

[29] R. Doc. 505. That data was produced to Plaintiffs on March 15, 2024.

[30] In ordering production of the data, the Court did not find a waiver of the consulting expert privilege, but instead found it was fact work product and that the exceptional circumstances of Plaintiffs' inability to obtain the data by other means warranted disclosure.

"impracticable for Plaintiffs to obtain facts or opinions on the same subject by other means" and

that the data "may provide information that is unavailable to the Plaintiffs due to lack of access,"

the Court found the data was fact work product and that exceptional circumstances existed to

warrant its production.[31] This was despite the fact that Plaintiffs had equal opportunity to collect

off-site sampling data in summer 2019, and very well may have done so. The Court also found the

attorney-client privilege did not attach to the data.[32] There is no difference between the SCS

Engineers data and the Plaintiffs' air sampling data that Defendants are seeking. Production should

be ordered on a showing of "substantial need" and "inability to obtain the substantial equivalent

elsewhere."[33]

### B. Defendants have a substantial need for the air sampling data.

#### 1. Plaintiffs' sampling is one of only a few sets of available sampling data in Jefferson Parish during the relevant time period.

Plaintiffs have repeatedly criticized the Waste Connections Defendants for allegedly

"shield[ing]" data and information from Plaintiffs, and have argued that exceptional circumstances

"exist if the condition observed by the expert is no longer observable or the cost of replicating the

data or condition is judicially prohibitive."[34] The Court has also admonished the parties at multiple

status conferences that the parties should not withhold data when the opposing side did not have

an opportunity to collect parallel data. The Court's discovery rulings have compelled disclosure

without finding any waiver of privilege, on the ground that exceptional circumstances exist when

---

[31] R. Doc. 505 at 8-11.

[32] *Id.* at 15.

[33] *Id.* at 8. (citing *S. Scrap Material,* 2003 WL 21474516, at *7, 13).

[34] R. Doc. 381-1 at 5 (alleging Waste Connections Defendants shielded purportedly harmful data from the public); *id.* at 9 (alleging SCS has information on site conditions that is different from when Plaintiffs' experts visited the site); *id.* at 24. In contrast to Plaintiffs, Defendants voluntarily produced the SCS data reports from the September 2018 and March and June 2019 site visits to Plaintiffs, acknowledging that Plaintiffs did not have access to the site at the time and the likelihood the Court would find exceptional circumstances existed for disclosure of that data.

the consultant has collected air samples that the opposing party cannot access or recreate.[35] This accords with the general rule that courts look to the specific importance in compelling production of otherwise protected data.[36]

Defendants cannot access or reproduce Plaintiffs' data, and it is possible Defendants would not have had access to the sampling locations in any event. Plaintiffs have collected air sampling data at or near Plaintiffs' residences during the relevant time period, a period when there is scant sampling data available and data which Defendants cannot recreate. As the relevant homes of the Trial Plaintiffs are spread across Jefferson Parish,[37] it is almost certain that some of the air samples collected by Plaintiffs were proximate to the Trial Plaintiffs' homes (either at their homes, near their homes, or upwind or downwind of their homes) and therefore of specific importance. Given Plaintiffs' refusal to answer even basic questions concerning the times and locations of the withheld sampling results, the Defendants necessarily must assume it is highly probative of the issues in this matter, further supporting the specific importance of this data and "exceptional circumstances" justifying production of the air sampling data.

Plaintiffs have disingenuously contended the Defendants had an equal opportunity to conduct air monitoring, ignoring that Defendants were obviously not free to conduct testing on

---

[35] *See* R. Doc. 505 at 10 (compelling production of SCS air sampling data – which was never made public – not based on waiver, but because Plaintiffs evinced "substantial need, inability to obtain the substantial equivalent elsewhere, and exceptional circumstances that hinder their ability to obtain facts on the same subject matter by other means to render these documents discoverable.") (internal quotation marks omitted); *see also* R. Doc. 506 at 8 (compelling production of consulting expert communications finding exceptional circumstances).

[36] *See Galley v. ZOLL Med. Corp.*, No. 18-cv-223, 2019 WL 13193899, at *5 (N.D. Tex. May 21, 2019) (holding that in situations with "constantly changing conditions" the sought data or observations must "relate to 'a special moment of consequence ... after which crucial information now in the hands of [the observing party] is no longer available to [the other party].'") (citation omitted).

[37] During the relevant time period, the Trial Plaintiff home were located on the East Bank (Metairie, River Ridge, and Harahan) and the West Bank (Waggaman and Avondale).

private property belonging to others, such as the Plaintiffs' homes.[38] And even if Plaintiffs' air sampling was conducted entirely on public property (which they have refused to confirm), Defendants were not invited to conduct parallel samplings and thus could not have foreseen the times and places that Plaintiffs chose to conduct their air sampling. The specific Trial Plaintiffs were also not known at the time that Plaintiff's air sampling was seemingly conducted (which Defendants believe occurred prior to the Court's November 2022 decision on general causation).[39] Thus, Plaintiffs are in possession of factual data on a crucial issue in this case (the concentration of $H_2S$ at relevant locations within Jefferson Parish), for which Defendants have no access or ability to recreate the data.

### 2. The air sampling data is highly probative of the issues to be tried.

Plaintiffs' entire theory of the case—which Defendants deny as lacking support from real-world evidence—is that the Jefferson Parish Landfill emitted $H_2S$ into the surrounding communities at sufficient concentrations to cause a widespread, near-constant odor nuisance, including at the homes of the 13 Trial Plaintiffs.[40] Plaintiffs offer this story in an attempt to justify the exorbitant damages they seek—an average of more than $655,000 *per Trial Plaintiff*.[41] As part of weaving this story, Plaintiffs have offered the air modeling opinions of James Lape regarding

---

[38] Consulting expert data is sometimes shielded from discovery, but generally only in situations when both sides had an equal opportunity to gather the data. *See In re Shell Oil Refinery*, 132 F.R.D. 437 (E.D. La. 1990), opinion clarified, 134 F.R.D. 148 (E.D. La. 1990). That is not the circumstances here.

[39] Thus, it is not a lack of diligence which prevented the Defendants from obtaining more proximate data, distinguishing this case from *In re Shell Oil Refinery,* 132 F.R.D. 437 (holding that exceptional circumstances did not exist where party seeking production of consulting expert work product was presented with and still had equal opportunity to conduct tests.).

[40] *See, e.g.*, R. Doc. 431 at 1-2 ("At all relevant times, the J.P. Landfill has persistently emitted harmful and toxic odors and chemicals into the surrounding areas, including where each of the Petitioners resides.").

[41] *See* Plaintiffs' Supplemental Initial Disclosures, attached hereto as Exhibit G (seeking $500 per plaintiff per day for 942 days—which equals $471,000—plus an additional $300 for each specific occurrence when $H_2S$ was present at 5 ppb or greater for an average of 30 minutes). Applying this formula to the exposure figures calculated by Plaintiffs' experts reveals that Plaintiffs are seeking more than $8.5 million for the 13 Trial Plaintiffs, or an average of $655,615.38 per Trial Plaintiff.

allegedly frequent H$_2$S impacts at the residences of each of the Trial Plaintiffs during the relevant time period. Mr. Lape reached these conclusions based on a theoretical model, which assumed theoretical volumes of gas generated inside the landfill, theoretical H$_2$S concentrations in that gas, and theoretical rates at which the gas escaped from the Jefferson Parish Landfill. Now Plaintiffs are withholding real-world air sampling data that has the potential to show the jury whether or not Mr. Lape's modeling is backed up by the facts and which can be used for assessing Plaintiffs' claims of H$_2$S impacts—such data is crucial to the Defendants' preparation for trial.[42]

### C. Defendants have not waived their demand for the air sampling data.

In further effort to hide the air sampling data, Plaintiffs fall back on an empty argument of waiver, claiming that Defendants should have sought production of the data years ago —an argument which is wholly without merit.[43] During the *general causation* phase of this litigation, Defendants were not aware of the sampling data and relied on the discovery scope set out in the First CMO. Plaintiffs likewise initiated their demands for information collected by SCS Engineers after the Court's decision on general causation, for similar reasons. Plaintiffs' discovery responses that would potentially implicate air sampling data were vague, Plaintiffs never provided a privilege log, and Plaintiffs obfuscated for months when Defendants requested a specific response on whether such sampling was performed. Since learning of the air sampling data, the Waste Connections Defendants have diligently pursued its production.

### CONCLUSION

Without in any way substantiating their claims of privilege, Plaintiffs are hiding highly relevant air sampling data that is uniquely probative to the issues in this case, and to which the

---

[42] Mr. Lape recognized in his expert report that there was insufficient off-site data to reliably assess any potential correlation between an emissions source and a downwind receptor.

[43] Ex. F at 5, February 17, 2024 Email from Eric Rowe.

15

Court, the parties, and the jury should have access. Even if Plaintiffs can establish that the air sampling data is consulting expert work product, the information sought by Defendants is "fact" work product for which "exceptional circumstances" exist justifying its production, consistent with this Court's rulings on Plaintiffs' demands for the defense consultants' work. The air sampling data may be directly relevant to the reliability of Plaintiffs' opinions on air modeling and exposure to $H_2S$, but Defendants are wholly unable to access or acquire the information absent production by Plaintiffs. The Waste Connections Defendants respectfully request that this Court grant this motion to compel and order that Plaintiffs immediately produce the air sampling data.

Respectfully submitted,

LISKOW & LEWIS, APLC

_/s/ Michael C. Mims_
Michael C. Mims (#33991)
Michael Cash (#31655)
Cherrell Simms Taplin (#28227)
Brady M. Hadden (#37708)
J. Hunter Curtis (#39150)
Alex Andrade (#38659)
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone:  (504) 581-7979
Telefax: (504) 556-4108

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Ave., 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)

1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional*
*Landfill Company, Waste Connections*
*Bayou, Inc., and Waste Connections US, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 19, 2024, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

<u>/s/ *Michael C. Mims*          </u>
Michael C. Mims
