UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ELIAS JORGE "GEORGE" ICTECH-BENDECK, **Plaintiff** | CIVIL ACTION |
| | |
| **VERSUS** | NO. 18-7889 c/w 18-8071, 18-8218, 18-9312 |
| | |
| WASTE CONNECTIONS BAYOU, INC., ET AL., **Defendants** | SECTION: "E" (5) |

*Related Case:*

| | |
|---|---|
| FREDERICK ADDISON, ET AL., **Plaintiffs** | CIVIL ACTION |
| | |
| **VERSUS** | NO. 19-11133 c/w 19-14512 |
| | |
| LOUISIANA REGIONAL LANDFILL COMPANY, ET AL., **Defendants** | SECTION: "E" (5) |

*Applies to: All Cases*

**ORDER AND REASONS**

Before the Court are two contested discovery motions: Plaintiffs' Motion to Compel

Discovery Against the Waste Connections Defendants (hereinafter "Motion to Compel")[1]

and a Motion to Quash the *Addison* Plaintiffs' Subpoena to SCS Engineers (hereinafter

"Motion to Quash") filed by Defendants Waste Connections Bayou, Inc., Waste

Connections US, Inc., and Louisiana Regional Landfill Company (collectively the "Waste

---

[1] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). Defendants opposed. R. Doc. 329 (18-7889); R. Doc. 383 (19-11133). Plaintiffs replied. R. Doc. 389 (19-11133). Plaintiffs filed a supplemental memorandum. R. Doc. 393 (19-11133). Defendants filed a supplemental reply. R. Doc. 394 (19-11133).

Connections Defendants" or "Defendants").[2] Presently, the only outstanding issues in these contested motions relate to documents involving Stearns, Conrad & Schmidt, Consulting Engineers, Inc. ("SCS Engineers"),[3] which are categorized into nine "Categories of Work" as identified in Attachment A to the Court's Order and Reasons issued on January 12, 2024.[4] This Order and Reasons concerns certain documents related to Category #5, two onsite landfill surface pollutant concentration reports[5] and accompanying memorandum,[6] and Category #8, the Hydrogen Sulfide (H2S) Sampling in the Jefferson Parish Region (November 4 through 8, 2019) Report[7] (collectively, the "Data Reports").

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill (the "Landfill") and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019. The Court's Order and Reasons issued on January 2, 2024 ("the January 2 Order") presents background relevant to the discovery motions.[8]

---

[2] R. Doc. 368 (19-11133). Plaintiffs filed a Motion to Enforce Subpoena, which the Court construes as an opposition to the Motion to Quash. R. Doc. 381 (19-11133). Defendants filed a Reply Memorandum in Support of Their Motion to Quash. R. Doc. 388 (19-11133). *See also* Subpoena to Produce Documents Issued to SCS Engineers, R. Doc. 381-5 (19-11133).

[3] *See* Requests for Production 58-66, *Addison* Plaintiffs' Second Set of Requests for Production of Documents to the Waste Connections Defendants, R. Doc. 329-2 at pp. 4-7 (18-7889).

[4] *See* R. Doc. 406-1 (18-7889); R. Doc. 483-1 (19-11133). Attachment A is based on Attachment A to the Letter from Megan R. Brillault, Counsel for the Waste Connections Defendants, to the Court (Dec. 1, 2023). The "Chart Showing Status of Production" attached to the December 1, 2023 Letter contained comments from both the Waste Connections Defendants and Plaintiffs. The Court assigned numbers to the Categories of Work for ease of reference.

[5] The two onsite landfill surface pollutant concentration reports are titled: (1) "Surface Pollutant Concentration Measurements at the Jefferson Parish Landfill – Data Report, May 31, 2019" (Bates: WC_JPLF_00210878); and (2) "Surface Pollutant Concentration Measurements at the Jefferson Parish Landfill – Supplemental Data Report, July 10, 2019" (Bates: WC_JPLF_00210732).

[6] The memorandum that accompanies the two surface pollutant concentration reports is titled "Memorandum – Surface Pollutant Concentration Measurements at the Jefferson Parish Landfill, April 23, 2021" (Bates: WC_JPLF_00403662).

[7] Bates: WC_JPLF_00203231.

[8] R. Doc. 397 (18-7889); R. Doc. 468 (19-11133).

**LEGAL STANDARD**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[9] "Information within the scope of discovery need not be admissible in evidence to be discovered."[10] At the discovery stage, relevant evidence includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in that case."[11] "[T]he threshold for relevance at the discovery stage [under Rule 26(b) of the Federal Rules of Civil Procedure] is lower than at the trial stage" under Federal Rule of Evidence 401.[12] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[13] If relevance is in doubt, the court should be permissive in allowing discovery.[14] This broad scope is necessary given the nature of litigation, where determinations of discoverability are made well in advance of trial.[15] Likewise, "broad discretion is afforded to the district court when deciding discovery matters,"[16] and the Court must determine the scope of discovery "in light of the relevant facts of the particular case."[17]

---

[9] FED. R. CIV. PRO. 26(b); *see also Miller v. Sam Houston Univ.*, 986 F.3d 880, 891 (5th Cir. 2021).
[10] FED. R. CIV. PRO. 26(b).
[11] *Stevenson v. Benjamin*, 2022 WL 12309062, *1 (5th Cir. 10/21/2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991)); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978); *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 4/11/2011).
[12] *Rangel*, 274 F.R.D. at 590.
[13] *Dotson v. Edmonson*, 2017 WL 11535244, at *2 (E.D. La. 11/21/2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2/4/2005)).
[14] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 5/11/2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).
[15] *Rangel*, 274 F.R.D. at 590 n.5.
[16] *Miller*, 986 F.3d at 891 (citing *Crosby v. la. Health Serv. & Indemnity Co.*, 647 F.3d 258, 261 (5th Cir. 2011)).
[17] *See Conboy v. Edward D. Jones & Co.*, 140 F. App'x 510, 517 (5th Cir. 2005).

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[18] discovery does have "'ultimate and necessary boundaries.'"[19] Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope of Rule 26(b)(1)."[20] Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[21] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[22]

"The party filing the motion to compel bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."[23] "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted."[24] "[T]he party asserting a privilege exemption from discovery . . . bears the burden of demonstrating the

---

[18] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).
[19] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).
[20] FED. R. CIV. PRO. 26(b)(2)(C)(i)–(iii).
[21] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).
[22] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. 7/14/2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. 3/4/2020) (Morgan, J.).
[23] *Summers v. Louisiana*, 2021 WL 4392309, *3 (M.D. La. 9/24/2021) (internal quotations and citations omitted).
[24] *Id.*

applicability of that privilege."[25] "Blanket assertions of privilege" are insufficient to carry a party's burden.[26]

## LAW AND ANALYSIS

In their motion, Plaintiffs seek to compel discovery of hundreds of documents.[27] After discussions with the parties, the Court categorized documents pertaining to the outstanding discovery requests into nine categories. This Order and Reasons addresses discovery issues involving documents related to the Category #5 and Category #8 Data Reports. Plaintiffs' discovery requests related to the Data Reports seek correspondence between the Waste Connections Defendants and SCS Engineers, field reports and other records of measurements taken at the Landfill and/or in the areas surrounding the Landfill, and drafts of the reports.[28] Defendants claim the relevant documents, which are described in the privilege logs provided to the Court on November 13, 2023 and December 4, 2023 (respectively, the "November 13 Privilege Log" and the "December 4 Privilege Log"), are properly withheld under the work product doctrine, consulting expert work product protection, and/or the attorney-client privilege.[29] Several orders and reasons issued by the Court in early 2024 resolved issues concerning certain Category #5[30] and

---

[25] *Zahid Hotel Group, L.L.C. v. AmGUARD Insurance Co.*, 22-2792, 2023 WL 4353132, at *2 (E.D. La. July 5, 2023).
[26] *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981).
[27] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133).
[28] Plaintiffs' production requests Nos. 60 through 62 in their Second Set of Requests for Production of Documents seek discovery of documents related to the Categories #5 and #8 Data Reports from the Waste Connections Defendants. R. Doc. 329-2, at pp. 5-6 (18-7889). Plaintiffs' production requests Nos. 5 through 7 in the Subpoena to Produce Documents seek discovery of documents related to the Categories #5 and #8 Data Reports from SCS Engineers. R. Doc. 381-5, pp. 9-10 (19-11133).
[29] R. Doc. 386 (18-7889); R. Doc. 438 (19-11133).
[30] In the January 2 Order, the Court ordered the Waste Connections Defendants to produce in full, without redactions Entry 0528 in the November 13 Privilege Log and Entries 0288, 0290, and 0425 in the December 4 Privilege Log. R. Doc. 397 (18-7889); R. Doc. 468 (19-11133). Defendants moved the Court for reconsideration of that order and the Court granted in part, determining Defendants did not need to produce document 0288 (email only) and 0290, and allowed Defendants to redact portions of document 0288_001. R. Doc. 398 (18-7889); R. Doc. 470 (19-11133). In the Order and Reasons dated January 30, 2024, the Court resolved discovery issues related to Entries 0287, 0289, 0296, 0297, 0300, 0355, and 0386 in the December 4 Privilege Log, which are also associated with Category #7. R. Doc. 414 (18-7889); R. Doc. 494 (19-11133). In the Order and Reasons dated March 6, 2024, the Court resolved discovery issues related

5

Category #8[31] documents. Accordingly, this Order and Reasons considers only documents related to Category #5[32] and Category #8[33] that have not yet been resolved by the Court.

## I.   The Work Product Doctrine and Consulting Expert Work Product Privilege

"Federal law governs . . . parties' assertions that certain information is protected from disclosure by the work product doctrine."[34] "The work product doctrine is not an umbrella that shades all materials prepared by a lawyer. The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation."[35] The work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[36] "Excluded from the work-product doctrine are materials assembled in

---

to Entries 0354, 0593, 0603, and 0610 in the December 4 Privilege Log, which are also associated with two groups of work—Group #1, "consultation with SCS as consulting expert for use in providing legal advice," and Group #2, "off-site survey of area odor sources" performed by SCS Engineers in July and August 2019. R. Doc. 421 (18-7889); R. Doc. 505 (19-11133). In the Order and Reasons dated March 13, 2024, the Court resolved discovery issues related to Entries 0468, 0469, 0475, 0476, 0491, 0492, and 0599 in the December 4 Privilege Log, which are also associated with Category #6. R. Doc. 422 (18-7889); R. Doc. 506 (19-11133).

[31] In the Order and Reasons dated March 6, 2024, the Court resolved discovery issues related to Entry 0583 in the November 13 Privilege Log and Entries 0651, 0652, 0684, 0703, 0711, 0712, 0715, 0719 through 0721, 0724, 0726, 0728 through 0735, 0743, 0750, 0751, 0759, 0763, 0766, 0796, 0878 through 0893, and 0934 in the December 4 Privilege Log, which are also associated with two groups of work—Group #1, "consultation with SCS as consulting expert for use in providing legal advice," and Group #3, "November 2019 off-site odor samples" performed by SCS Engineers. R. Doc. 421 (18-7889); R. Doc. 505 (19-11133).

[32] Defendants argue the following documents related to Category #5, which have not yet been resolved by the Court, are privileged based on the work product doctrine, consulting expert work product privilege, and/or the attorney-client privilege: 0518, 0519, 0522, 0523, 0527, 0529, 0530, 0538, 0541, 0552, 0554, 0555, 0556, and 0558 through 0561 in the November 13 Privilege Log; and 0291, 0295, 0298, 0299, 0301, 0302, 0306 through 0338, 0340, 0342 through 0345, 0377, 0378, 0381 through 0383, 0388 through 0403, 0405 through 0410, 0412 through 0422, 0424, 0426, 0431 through 0446, 0449, 0450, 0461, 0465, 0481, 0489, 0490, 0498 through 0500, 0503, 0514, 0520 through 0543, 0547 through 0564, 0569 through 0592, 0595, 0596, 0600, 0602, 0606, 0607, 0611, 0612, 0617 through 0619, 0629, 0771 through 0773, 0775, 0846, 0918 through 0932, 0935, 0936, 0945, and 0948 in the December 4 Privilege Log.

[33] Defendants argue the following documents related to Category #8, which have not yet been resolved by the Court, are privileged based on the work product doctrine, consulting expert work product privilege, and/or the attorney-client privilege: 0570 and 0574 through 0581 in the November 13 Privilege Log; and 0404, 0631 through 0648, 0650, 0653, 0654, 0656, 0657, 0662, 0678 through 0683, 0686, 0687, 0689 through 0702, 0704 through 0707, 0709, 0713, 0714, 0716 through 0718, 0723, 0727, 0737 through 0742, 0744 through 0749, 0752, 0753, 0755 through 0758, 0760, 0762, 0764, 0767, 0768, 0770, 0776 through 0789, 0814, 0894 through 0917, and 0933 in the December 4 Privilege Log.

[34] *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, at *5 (E.D. La. June 18, 2003) (citing *Naquin v. Unocal Corp.*, 2002 WL 1837838, at *2 (E.D. La. 2002)).

[35] *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).

[36] FED. R. CIV. P. 26(b)(3)(A).

the ordinary course of business."[37] The doctrine does not place work product outside the scope of discovery, but instead "creates a form of qualified immunity from discovery" for materials prepared in anticipation of litigation.[38] "Rule 26(b)(3) protects documents prepared by a party's agent from discovery, as long as they were prepared in anticipation of litigation."[39]

The level of protection depends on whether the materials prepared in anticipation of litigation constitute "opinion" work product or non-opinion, "fact" work product.[40] The "mental impressions, conclusions, opinions or legal theories of an attorney" are opinion work product subject to a higher showing for production.[41] "Fact work product, on the other hand, is any material 'prepared in anticipation of litigation or for trial by or for another party or its representative' under Rule 26(b)(3)(A) but 'not the "mental impressions, conclusions, opinions or legal theories of an attorney"' under subsection (b)(3)(B)."[42] A party seeking discovery of ordinary fact work product must make a showing of "substantial need and the inability to obtain the substantial equivalent elsewhere."[43] "However, absent a showing of *compelling* need and the inability to discover the substantial equivalent by other means, work product evidencing mental impressions of counsel, conclusions, opinions and legal theories of an attorney are not discoverable."[44]

Under Rule 26(b)(4)(D), a party may discover "facts known or opinions held" by a non-testifying expert retained "in anticipation of litigation . . . only upon a showing of

---

[37] *Treece v. Perrier Condominium Owners Ass'n, Inc.*, 2019 WL 12289568, at *4 (E.D. La. Jun 20, 2019); *see also Hill Tower, Inc. v. Dep't of Navy*, 718 F. Supp. 562, 565 (N.D. Tex. 1988) ("The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation when this document was drafted.").
[38] *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993).
[39] *Southern Scrap Material*, 2003 WL 21474516, at *6.
[40] *Id.* at *7.
[41] *In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d 1235, 1240 (5th Cir. 1982).
[42] *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 487 (W.D. Tex. 2020).
[43] *Southern Scrap Material*, 2003 WL 21474516, at *7, 13.
[44] *Id.* at *7.

exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[45] The rule "creates a safe harbor whereby facts and opinions of nontestifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances."[46]

Defendants argue "SCS prepared the [Data] [R]eports . . . in its capacity as a non-testifying consulting expert for Waste Connections."[47] Defendants contend all "drafts of these reports, communications among and between SCS and Waste Connections and its lawyers related to the reports, field notes and measurements taken by SCS, and assessments and drafts of assessments made by SCS" are protected by Rule 26(b)(4)(D) and the work product doctrine.[48] Further, Defendants argue "[t]he data disclosed in the SCS reports produced during discovery is available for Plaintiffs to use however they deem appropriate."[49]

Plaintiffs argue the documents at issue fall within the exception to Rule 26(b)(4)(D), which renders the privileged work product of consulting experts discoverable when it is impracticable for a party to obtain facts or opinions on the same subject by other means.[50] Plaintiffs contend the data underlying the Data Reports constitutes "condition[s] observed by the expert [that are] no longer observable" because the conditions of the Landfill have since changed.[51]

In opposition, Defendants argue they "produced to Plaintiffs the data and resulting reports, which describe in detail the methodology, equipment used, and field notes

---

[45] FED. R. CIV. PRO. 26(b)(4)(D).
[46] *Will Uptown, LLC v. B&P Restaurant Group, LLC*, 15-51, 2016 WL 4620200, at *5 (M.D. La. Sept. 6, 2016).
[47] R. Doc. 368-1 at p. 23 (19-11133).
[48] R. Doc. 368-1 at p. 23 (19-11133).
[49] R. Doc. 368-1 at p. 17 (19-11133).
[50] R. Doc. 381-1 at pp. 23-24 (19-11133).
[51] R. Doc. 381-1 at p. 24 (19-11133).

related to the [Data Reports]."[52] Thus, Defendants attest, "Plaintiffs have all information

relevant to understanding or using the disclosed reports and have not identified any

exceptional circumstance that would warrant" disclosure.[53]

Having conducted in camera review, the Court finds certain documents related to

Categories #5 and #8 constitute "fact" work product, which contain no "mental

impressions, conclusions, opinions or legal theories of an attorney."[54] Plaintiffs have

demonstrated the requisite "substantial need" and "inability to obtain the substantial

equivalent elsewhere,"[55] and "exceptional circumstances" that hinder their ability to

obtain facts on the same subject matter by other means to render these documents

discoverable.[56] Further, to the extent these documents contain opinion work product,

Plaintiffs demonstrate the requisite "compelling need and the inability to discover the

substantial equivalent by other means."[57] Accordingly, the Court denies Defendants'

claims of privilege based on work product and consulting expert work product protection

with respect to the following documents related to the Data Reports:

- Entry 0541 in the November 13 Privilege Log; and

- Entries 0291_001, 0306_001, 0319_001, 0404, 0405, 0438_001, 0439_001,
  0439_002, 0441_002, 0441_005, 0441_007, 0442_001, 0445, 0445_001,
  0445_002, 0445_003, 0445_004, 0445_005, 0445_006, 0445_007, 0446_001,
  0446_002, 0481_002, 0489, 0489_002, 0490_001, 0490_002, 0498_001,
  0524, 0525, 0526, 0527, 0528, 0529, 0530_001, 0535, 0557_001, 0557_002,
  0557_003, 0557_004, 0561_001, 0570, 0571, 0572, 0573_001, 0576, 0582, 0591,
  0592_001, 0596_001, 0600, 0611, 0633_001, 0656_001, 0727, 0741, 0744, 0747,
  0748, 0749, 0752, 0753, 0755, 0756, 0757_001, 0758, 0768, 0782, 0783, 0784,
  0785, 0786, 0787, 0814, 0846, 0894, 0895, 0896, 0897, 0898, 0899, 0900, 0901,
  0902, 0903, 0904, 0905, 0906, 0907, 0908, 0909, 0910, 0911, 0912, 0913, 0914,

---

[52] R. Doc. 386 at p. 11 (18-7889).
[53] R. Doc. 388 at p. 12 (19-11133).
[54] *See In re Int'l Sys. & Controls Corp. Sec. Lit.*, 693 F.2d at 1240.
[55] *See Southern Scrap Material*, 2003 WL 21474516, at *7, 13.
[56] FED. R. CIV. PRO. 26(b)(4)(D).
[57] *See Southern Scrap Material*, 2003 WL 21474516, at *7.

0915, 0916, 0917, 0918, 0919, 0920, 0921, 0922, 0923, 0924, 0925, 0926, 0927, 0928, 0929, 0931, 0932, 0945, and 0948 in the December 4 Privilege Log.[58]

## II.    The Attorney-Client Privilege

The work-product doctrine is distinct from and broader than the attorney-client privilege.[59] "[T]he work product privilege [exists] . . . to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent," whereas "[t]he attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship." [60]

"The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client."[61] "The purpose of the attorney-client privilege is to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[62] "For a communication to be protected under the privilege, the proponent 'must prove: (1) that . . . a confidential communication [was made]; (2) to a lawyer or his subordinate, (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'"[63] "Communications by the lawyer to the client are protected 'if they would tend to disclose the client's confidential

---

[58] Of these documents, the Waste Connections Defendants also argue the following are properly withheld under the attorney-client privilege: Entries 0291, 0306, 0441, 0442, 0446, 0481, 0490, 0530, 0557, 0561, 0572, 0573, 0592, 0596, 0633, 0656, and 0757 in the December 4 Privilege Log.
[59] *See United States v. Nobles*, 422 U.S. 225, 238 (1975).
[60] *Shields v. Sturm, Ruger, & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).
[61] *Earl v. Boeing Co.*, 17-10153, 2021 WL 963405, at *2 (E.D. Tex. Mar. 15, 2021) (quoting *United States v. Mobil Corp.*, No. 4:19-cv-507, 149 F.R.D. 533, 536 (N.D. Tex. 1993)), *vacated in part, on other grounds, by In re Boeing Co.*, 21-40190, 2021 WL 3233504 (5th Cir. July 29, 2021).
[62] *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).
[63] *Id.* (quoting *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017)).

communications.'"[64] "Because the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'apply only where necessary to achieve its purpose.'"[65] "Further, 'the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.'"[66]

"Application of the attorney-client privilege is a 'question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents.'"[67] "Determining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof.'"[68] "'Attorney-client privilege is not presumed'[69] . . . and 'ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent.'"[70]

When a corporate setting is involved, courts have recognized the attorney-client privilege analysis "presents unique challenges."[71] In *Stoffels v. SBC Communications, Inc.*, the United States District Court for the Western District of Texas stated:

> The attorney-client privilege applies in a corporate setting. However, because in-house counsel has an increased level of participation in the day-to-day operations of the corporation, it is more difficult to define the scope of the privilege when a communication is made to in-house counsel. Thus, in such a setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. The critical inquiry is, therefore, whether any particular communication facilitated the rendition of *predominantly legal advice or services* to the client.[72]

---

[64] *Id.* (quoting *O'Malley v. Pub. Belt R.R. Comm'n for City of New Orleans*, 17-4812, 2018 WL 814190, at *2 (E.D. La. Feb. 9, 2018)).

[65] *Id.* (quoting *BDO USA*, 876 F.3d at 695).

[66] *Id.* (quoting *Upjohn*, 449 U.S. at 395).

[67] *Id.* at *3 (quoting *In re Auclair*, 961 F.3d 65, 68 (5th Cir. 1992)).

[68] *Id.* (quoting *BDO USA*, 986 F.3d at 695).

[69] *Id.* (quoting *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986)).

[70] *Id.* (quoting *BDO USA*, 986 F.3d at 695).

[71] *Id.* at *4.

[72] *Id.* (quoting *Stoffels v. SBC Comms., Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009)).

"Even though this standard is 'time-consuming' and 'requires a document-by-document analysis,' it 'ensures a balance between forbidding a company from trying to cloak non-privileged communications with protection by unnecessarily sending them to attorneys and encouraging in-house counsel involvement early and often in corporate decision-making.'"[73]

"Legal advice, as contrasted with business advice, 'involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.'"[74] "If advice offered by in-house counsel intertwines business and legal advice, attorney-client privilege protects the communication only if the legal advice predominates."[75] "Simply labeling communications as 'legal advice' is conclusory and insufficient to satisfy the privilege-proponent's burden."[76] Moreover, "[w]hen a corporation simultaneously sends communications to both lawyers and non-lawyers, . . . 'it usually cannot claim that the primary purpose of the communication was for legal advice or assistance because the communication served both business and legal purposes.'"[77]

Of the documents related to the Category #5 and Category #8 Data Reports to which the Court determined work product doctrine and consulting expert work product privileges do not attach, the Waste Connections Defendants argue Entries 0291, 0306, 0441, 0442, 0446, 0481, 0490, 0530, 0557, 0561, 0572, 0573, 0592, 0596, 0633, 0656, and 0757 in the December 4 Privilege Log are privileged attorney-client communications. "[T]he attorney-client privilege does not apply to every communication involving counsel," but only those "communications made in confidence between a client and his

---

[73] *Id.* at \*3 n.3 (quoting *Corporate Attorney-Client Privilege in the Digital Age: War on Two Fronts?*, 16 STAN. J. L. BUS. & FIN. 288, 307 (2011)).
[74] *Id.* (quoting *BDO USA*, 856 F.3d at 365).
[75] *Id.* (quoting *Neuder v. Battelle Pac. Nw. Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000)).
[76] *Id.* (citing *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000)).
[77] *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 524 (E.D. La. 2021) (quoting *In re Vioxx Prod. Liability Lit.*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007)).

lawyer for the purpose of obtaining legal advice."[78] The Court finds the emails logged as

Entries 0291, 0306, 0441, 0442, 0446, 0481, 0490, 0530, 0557, 0561, 0573, 0592, 0596,

0633, 0656, and 0757 are protected by the attorney-client privilege. Defendants, however,

fail to satisfy the burden of demonstrating that the primary purpose of certain documents

attached to the email communications was to obtain advice on specified legal issues as

required for the attorney-client privilege to attach.[79] Further, the Court finds that, with

respect to the following documents, Plaintiffs are unable to "obtain the substantial

equivalent" elsewhere and are entitled to their production:[80]

- Entries 0291_001, 0306_001, 0441_002, 0441_005, 0441_007, 0442_001, 0446_001, 0446_002, 0481_002, 0490_001, 0490_002, 0530_001, 0557_001, 0557_002, 0557_003, 0557_004, 0561_001, 0572, 0573_001, 0592_001, 0596_001, 0633_001, 0656_001, and 0757_001 in the December 4 Privilege Log.

Defendants' assertions of work product, consulting expert work product, and

attorney-client privileges on the remaining documents related to Categories #5 and #8

are proper.

### III.  Subject Matter Waiver

The Court next considers whether Defendants' production of the Data Reports to

Plaintiffs in discovery constitutes a subject matter waiver of the privileges that the Court

determined Defendants properly asserted over certain documents related to Categories

#5 and #8. Subject matter waiver of the attorney-client privilege and the work product

privilege in federal proceedings is governed by Rule 502(a) of the Federal Rules of

Evidence, which applies to intentional disclosures of information otherwise covered by

the privileges.[81] Rule 502(a) states:

---

[78] *Tonti Management Co., Inc. v. Soggy Doggie, LLC*, 19-13134, 2020 WL 9172077, at *9 (E.D. La. June 25, 2020).
[79] *See id.*
[80] *Southern Scrap Material*, 2003 WL 21474516, at *5 (quoting FED. R. CIV. P. 26(b)(3)).
[81] "In diversity cases, the Court must apply the state law of attorney-client privilege." *Gulf Coast Facilities Management, L.L.C. v. BG LNG Servs., L.L.C.*, 09-3822, 2010 WL 11707290, at *2 (E.D. La. Mar. 24, 2010)

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>     (1) the waiver is intentional;
>     (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>     (3) they ought in fairness to be considered together.[82]

"There is no subject matter waiver unless all three elements are satisfied."[83] A subject matter waiver "entitles [a proponent] to discover documents and information reflecting counsel's advice as to the subjects of the waiver even though [the objecting party] may assert they ultimately did not rely on that advice."[84]

The Advisory Committee notes to Rule 502 explain the "animating principle" of "fairness [] is taken from Rule 106."[85] Rule 106 of the Federal Rules of Evidence governs the admissibility of the remainder of or related writings or recorded statements:

> If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement-- that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.[86]

"Rule 106 requires the introduction of a writing or recorded statement only when the omitted portion is 'necessary to qualify, explain, or place into context the portion already introduced[.]'"[87] Under Rule 106, a party may "correct an incomplete and misleading impression created by the introduction of part of a writing or recorded statement," but the rule "does not permit a party to introduce writings or recorded statements to

---

(citing FED. R. EVID. 501). Notwithstanding Rule 501, however, Rule 502(f) clarifies that Rule 502 applies to the issue of waiver even if state law provides the rule of decision. FED. R. EVID. 502(f).

[82] FED. R. EVID. 502(a).

[83] *Gulf Coast Facilities Management*, 2010 WL 11707290, at *2.

[84] *U.S. Securities and Exchange Comm'n v. Commonwealth Advisors, Inc.*, 2015 WL 5725778, at *2 (M.D. La. Sept. 29, 2015).

[85] FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).

[86] FED. R. EVID. 106.

[87] *U.S. v. Herman*, 997 F.3d 251, 264 (5th Cir. 2021).

affirmatively advance their own, alternative theory of the case."[88] The 2023 amendment to Rule 106 allows for the admission of evidence to complete a statement over the objection of a party when "necessary to correct [a] misimpression" or "to provide context for the initially proffered statement."[89]

Thus, "[u]nder both Rules, a party that makes a selective, misleading presentation that is unfair to the adversary opens itself to a more complete and accurate presentation."[90] "Courts have provided additional clarification, finding that subject matter waiver under [Rule] 502(a) 'is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.'"[91]

Plaintiffs argue the Waste Connections Defendants waived any privilege as to the documents related to the Data Reports because their production of the Data Reports to Plaintiffs in discovery constituted a subject matter waiver.[92] Plaintiffs assert that "[e]ven if the[] documents were prepared to assist the lawyers[,] . . . when a party agrees to share the report of its consulting expert, it cannot at the same time contend that the report is

---

[88] *Id.*

[89] FED. R. EVID. 106 advisory committee's explanatory note to 2023 amendments. The Advisory Committee Comments further provide:

> [T]he amendment provides that if the existing fairness standard requires completion, then that completing statement is admissible over a hearsay objection. . . . The Committee has determined that the rule of completeness, grounded in fairness, cannot fulfill its function if the party that creates a misimpression about the meaning of a proffered statement can then object on hearsay grounds and exclude the statement that would correct the misimpression. . . . A party that presents a distortion can fairly be said to have forfeited its rights to object on hearsay grounds to a statement that would be necessary to correct the misimpression."

*See also U.S. v. Crowell*, CR23-8, 2023 WL 8642213, at *1 (S.D. Ohio Dec. 14, 2023) ("[T]he amended rule still requires the creation of a misimpression before an out-of-court statement will be admitted for completeness.").

[90] FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).

[91] *Williams v. Nationstar Mortgage LLC*, 19-663, 2022 WL 391494, at *2 (M.D. La. Feb. 8, 2022) (quoting *RLIS, Inc. v. Cerner Corp.*, 12-209, 2014 WL 12599509, at *1 (S.D. Tex. Dec. 24, 2014)); *see also Mills v. Iowa*, 285 F.R.D. 411, 416 (S.D. Iowa 2012); *Schnatter v. 247 Group, LLC*, 20-3, 2021 WL 5018741, at *11 (W.D. Ky. Oct. 28, 2021).

[92] R. Doc. 381-1 at pp. 18-19.

protected."[93] Defendants argue "[v]oluntary disclosure of work product 'generally results in a waiver *only* of the communication or information disclosed.'"[94] With respect to Categories #5 and #8, Defendants contend the reports are "entirely pure *data* reports, and the parties are on equal footing to use or ignore that data as they deem appropriate."[95] Accordingly, Defendants argue, the voluntary disclosure of the Data Reports to Plaintiffs was not "selective, misleading and unfair, as required for a subject matter waiver under Rule 502(a)."[96] The Court addresses each element of Rule 502(a) to construe whether the Waste Connections Defendants' waived privilege with respect to the Data Reports.

First, the Waste Connections Defendants intentionally waived the attorney-client and work product privileges with respect to the Data Reports by disclosing them to Plaintiffs. Second, having conducted in camera review of the documents related to Categories #5 and #8 for which Defendants assert privilege, the Court finds the undisclosed documents and communications concern the same subject matter as the disclosed Data Reports. The inquiry thus turns on the third element—fairness.

To analyze the third prong of Rule 502(a), the Advisory Committee points to the fairness standard presented in Rule 106.[97] Courts generally limit the subject matter waiver under Rule 502(a) "'to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.'"[98] Indeed, the Advisory Committee notes to Rule 502 interpret "fairness" similarly and advise that

---

[93] R. Doc. 381-1 at p. 19.

[94] R. Doc. 388 at p. 8 (citing FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007)).

[95] R. Doc. 388 at p. 9.

[96] R. Doc. 388 at p. 9 (citations omitted).

[97] *See* FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).

[98] *Williams v. Nationstar Mortgage LLC*, 19-663, 2022 WL 391494, at *2 (M.D. La. Feb. 8, 2022) (quoting *RLIS, Inc. v. Cerner Corp.*, 12-209, 2014 WL 12599509, at *1 (S.D. Tex. Dec. 24, 2014)); *see also Mills v. Iowa*, 285 F.R.D. 411, 416 (S.D. Iowa 2012); *Schnatter v. 247 Group, LLC*, 20-3, 2021 WL 5018741, at *11 (W.D. Ky. Oct. 28, 2021).

the waiver be reserved for exceptional circumstances in which failure to recognize the

waiver would unfairly disadvantage a party.[99] More specifically, the notes explain:

> [A] subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary … Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.[100]

Adopting the fairness standards expressed in the Advisory Committee notes to

Rule 502, the Court finds that Defendants did not waive privilege as to the subject matter

of the disclosed Data Reports.[101] Accordingly, Defendants are not required to produce to

Plaintiffs the documents related to Categories #5 and #8 to which the Court determined

work product, consulting expert work product, and attorney-client privileges attach.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiffs' Motion to Compel is

**GRANTED IN PART and DENIED IN PART**[102] as stated herein.

**IT IS FURTHER ORDERED** that Defendants' Motion to Quash is **DENIED IN**

**PART and GRANTED IN PART**.[103]

**IT IS FURTHER ORDERED** that the Waste Connections Defendants produce

the following documents in full, without redactions, by **April 15, 2024**:

- Entry 0541 in the November 13 Privilege Log; and

- Entries 0291_001, 0306_001, 0319_001, 0404, 0405, 0438_001, 0439_001, 0439_002, 0441_002, 0441_005, 0441_007, 0442_001, 0445, 0445_001, 0445_002, 0445_003, 0445_004, 0445_005, 0445_006, 0445_007, 0446_001,

---

[99] *See* FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).

[100] FED. R. EVID. 502 advisory committee's explanatory note (revised Nov. 28, 2007).

[101] *See* FED. R. EVID. 502(a).

[102] R. Doc. 326 (18-7889); R. Doc. 380 (19-11133). This order resolves all issues related to Plaintiffs' Motion to Compel.

[103] R. Doc. 368 (19-11133). This Order resolves all issues related to Defendants' Motion to Quash. This Order further resolves all issues related to Defendants' Motion for Protective Order. R. Doc. 333 (18-7889); R. Doc. 390 (19-11133).

0446_002, 0481_002, 0489, 0489_002, 0490_001, 0490_002, 0498_001, 0524, 0525, 0526, 0527, 0528, 0529, 0530_001, 0535, 0557_001, 0557_002, 0557_003, 0557_004, 0561_001, 0570, 0571, 0572, 0573_001, 0576, 0582, 0591, 0592_001, 0596_001, 0600, 0611, 0633_001, 0656_001, 0727, 0741, 0744, 0747, 0748, 0749, 0752, 0753, 0755, 0756, 0757_001, 0758, 0768, 0782, 0783, 0784, 0785, 0786, 0787, 0814, 0846, 0894, 0895, 0896, 0897, 0898, 0899, 0900, 0901, 0902, 0903, 0904, 0905, 0906, 0907, 0908, 0909, 0910, 0911, 0912, 0913, 0914, 0915, 0916, 0917, 0918, 0919, 0920, 0921, 0922, 0923, 0924, 0925, 0926, 0927, 0928, 0929, 0931, 0932, 0945, and 0948 in the December 4 Privilege Log.

**New Orleans, Louisiana, this 8th day of April, 2024.**


_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**