UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>    Plaintiffs | CIVIL ACTION<br><br>NO. 19-11133, c/w 19-14512 |
| **VERSUS** | SECTION: "E" (5) |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>    Defendants | <br>JUDGE: Morgan<br>MAGISTRATE JUDGE: North |
| *Applies to: Both Cases* | |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. PAMELA DALTON

Pursuant to § VI.2 of the Thirteenth Case Management Order, Plaintiffs submit this motion to exclude or limit testimony of defense expert Dr. Pamela Dalton. The testimony that Dr. Dalton will offer at trial consists of issues that have already been decided by the Court and included in the Court's Findings of Fact and Conclusions of Law. Plaintiffs specifically incorporate all arguments cited in Plaintiffs' Motion to Exclude Testimony on issues Resolved in General Causation as if specifically stated herein.

The focus of this motion is Dr. Dalton's testimony on the issue of whether the Jefferson Parish Landfill ("JPLF") produced odors that traveled offsite at an intensity, frequency, or duration that would be a nuisance level at the Trial Plaintiffs' properties. Put more simply- whether the odors from the JPLF experienced by the Plaintiffs were in fact an annoyance to them (a subject on which Dr. Dalton could not possibly testify). In the General Causation Phase, the Court ruled that "[i]n the ambient air, the Court finds the exposure at which people generally are able to smell hydrogen sulfide and which is capable of causing a reaction in those exposed is an average

1

exposure over a thirty-minute period of at least 5 ppb.."[1] But more importantly, *Dr. Dalton herself has already been limited by the United States Court of Appeals for the Fourth Circuit on this very issue.* (*See McKiver v. Murphy-Brown*, LLC 980 F.3d 937 (2020). In *McIver*, the court affirmed an order precluding Dr. Dalton from testifying regarding "her opinion regarding the lack of odor nuisance emanating from Kinler Farms".) *Id*. For the reasons more thoroughly briefed below, Dr. Dalton's opinions on what is, and what is not a nuisance to the Trial Plaintiffs, as well as her opinions relating to whether a Plaintiff would experience an annoyance each instant that they perceived an odor are not relevant, duplicative, and will be confusing and misleading to the trier of fact. Therefore, her opinions should be excluded in their entirety or limited in scope.

## I. LAW AND ARGUMENT

Federal Rule of Evidence 702 ("Rule 702") permits an expert to testify in the form of an opinion *if* (among other factors) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a). (emphasis added). Prior to admitting expert testimony, the court must make a threshold determination of the admissibility of it. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 597 (1993).

### A. The Court should adopt the United States Fourth Circuit Court of Appeals Reasoning in *McKiver* to Exclude Dr. Dalton's Testimony Regarding Whether Odors Emanating from the JPLF Were a Nuisance to the Trial Plaintiffs.

In this case, as well as *McKiver*, Dr. Dalton seeks to offer expert testimony on whether odors emanating from a particular source constituted a nuisance to the Trial Plaintiffs. In *McKiver*, Dr. Dalton served as a defense expert on human odor perception. During her engagement, she conducted an odor study utilizing a Nasal Ranger device to gather data at two sites that engaged

---

[1] Rec. Doc. 323 at 31.

2

in hog farm operations. Her report incorporated the results of her odor study. She offered opinions as to whether odors reaching Appellees' properties constituted a nuisance, and she opined to what the nuisance standard was (or was not) for odors in North Carolina. ("to a reasonable degree of scientific certainty ... that the normal operating activities at the farm do not produce odors that travel offsite at an intensity, frequency or duration that would be considered a nuisance level at the [Appellees'] properties." and "It is generally agreed that unless an odor can be detected at a 7:1 dilution or higher, it is not an objectionable odor.") *Id*.

Noting that North Carolina has not established an objective standard (i.e. nuisance standard) for assessing whether an odor is objectionable and noting that Dr. Dalton herself stated that odors are a "highly subjective experience," the Fourth Circuit affirmed the District Court's exclusion of Dr. Dalton's testimony relating to her odor study and odor-nuisance threshold under Rule 702 as it was ultimately "not helpful to the trier of fact" even if such an opinion "embraces the ultimate issue to be decided by the trier of fact." *Id* citing *Kopf v. Skyrm*, 993 F.2d 374, 377–78 (4th Cir. 1993). *See also* Fed. R. Evid. 704(a). Critically, the Court held:

> Dr. Dalton purported to provide objective evidence as to whether Kinlaw Farms was giving off odors constituting a nuisance and asserted that odors below a particular threshold were not considered objectionable. **Given that North Carolina has not adopted an objective measurement for nuisance odors, and that Plaintiffs themselves would be testifying about their experiences relative to the nuisance at their respective properties**, the district court's judgment that Dr. Dalton's testimony would not be helpful and would in fact confuse the jury was not an abuse of discretion. *Id*. (Emphasis added.)

Dr. Dalton's opinions in this case are identical to those as to which the Fourth Circuit excluded her testimony in *McKiver*, and the facts and procedural history in this case mandate that such ruling be applied here, as well.

The exposure level of hydrogen sulfide that constitutes a nuisance was a central issue at the General Causation trial- and one which the Court determined was exposure to hydrogen sulfide

3

as 5ppb/30 minutes.[3] Like North Carolina, Louisiana does not have a state established nuisance threshold for odor, a fact which Dalton acknowledged in her deposition.[4] And, given the fact that the Court expended so much time and resources in hearing testimony and rendering a well-crafted and thoughtful opinion, it is nonsensical to think that such time and expense would have been expended on an already established matter of law.

But paramount to the Fourth Circuit's holding in *McKiver* is the acknowledgment that one's perception of odors is inherently subjective, and absent an established threshold, it is improper for an expert to supplant the Plaintiffs' experiences as to what level of odor is and is not objectionable to them. This is exactly what Dr. Dalton attempts to do. In her report, Dr. Dalton opines "It is my opinion to a reasonable degree of scientific certainty that the Trial Plaintiffs' exposure at an average of 5ppb of hydrogen sulfide for 30 minutes was not always a nuisance or likely ever a nuisance to them."[5] Thus, Dr. Dalton's opinions as reflected in her report and deposition testimony are both directly contrary to this Court's findings, they attempt to insert in this case opinions which the Fourth Circuit has recognized are unhelpful and would confuse the jury.

The Trial Plaintiffs will all testify about their experience with the odors from the Jefferson Parish Landfill. They will testify about how such odors made them feel and how the odors disrupted their lives and impeded the use and enjoyment of their home. As such, Dr. Dalton's

---

[3] The Court cited to the World Health Organization Guidelines the provided, ""[i]n order to avoid substantial complaints about odor annoyance among the exposed population, hydrogen sulfide concentrations should not be allowed to exceed 7 μg/m3, with a 30-minute averaging period." R.Doc. 323 at 31. Seven μg/m3 is approximately 5 ppb.

[4] *See* Exhibit 1- Dalton Dep. at 153:10-16, May 13, 2024. It is worth noting that an objective standard for nuisance purposes is different than a standard of occupational exposure. Both Louisiana and North Carolina have an occupational exposure limit for hydrogen sulfide.

[5] *See* Exhibit 2- Dalton Report at 6, March 8, 2024.

4

testimony about whether the odors emanating from the JPLF were a nuisance to the Trial Plaintiffs will not be helpful by the trier of fact and should be excluded under Fed. R. Evid. 704(a).

      **B.    The Court Should Exclude Dalton from Testifying That Any of the Trial Plaintiffs Are Unable to Smell or Otherwise Detect Hydrogen Sulfide, And That Self-Reports of Experiences With Odors Are Not Credible.**

Dalton's expert report is riddled with the proposition that, as a threshold matter, Plaintiffs have not proven that any of the Trial Plaintiffs are able to smell hydrogen sulfide. Specifically, Dalton writes "Neither Dr. Schiffman nor any of the Trial Plaintiffs' experts provided objective evidence to demonstrate that any of the 13 Trial Plaintiffs can detect, and also be annoyed by concentration of H2S at 5 ppb (or any other concentration) in the natural environment. Nor am I aware of any tests that have been performed to demonstrate that any of the 13 Trial Plaintiffs fall within the most sensitive population that can detect H2S at this level."[6] And "Dr. Schiffman's assumption that each of the Trial Plaintiffs would experience a nuisance at 5ppb over 30 minutes is particularly flawed give that the Trial Plaintiffs vary in age, sex, and pre-existing health status…"[7]

Indeed, her deposition makes clear that the *only* basis for her conclusion that the Plaintiffs' symptoms resulted from some other cause (like age, health status, medication, sex) was that she did not have evidence that the Plaintiffs *could actually smell* H2S at 5 ppb.[8] Of course, Dr. Dalton's perception of lack of evidence does not prove anything about whether they could or could not smell odors. The Plaintiffs' testimony is, itself, amply sufficient evidence to conclude that they could smell H2S at 5 ppb over 30-minutes. Given that evidence, it was the Defendants' burden to rebut it. Indeed, Defendants demanded independent medical examinations of each of the

---

[6] *Id*.
[7] *Id*.
[8] *Id.* (Emphasis added.) *See also* Ex. 2 at 180:12-25.

Plaintiffs—at which each Trial Plaintiff voluntarily appeared for an examination by the physician and at location of Defendants' choosing. However, Defendants' doctors did not request a smell test for any of them at this examination. Defendants also served hundreds of subpoenas seeking medical records for each of the Plaintiffs going back 20 years or more (and for the minor plaintiffs, for their entire lives). *Yet the medical records revealed no impairment of the sense of smell for any Plaintiffs*. Thus, despite having every opportunity to try to rebut Plaintiffs' testimony, Defendants made a tactical decision to argue that it was Plaintiffs' burden to re-prove that which their testimony already proved.

While the Plaintiffs' inability to perceive H2S is a general theme of Dr. Dalton's March 8, 2024 report, she extends this assumption to create a foundational issue with Plaintiffs' experiences with the odors. As an example, Opinion 2 concludes:

> The Trial Plaintiffs' testimony regarding their odor experiences is not credible, or at least may not accurately represent their experience with odors as explained in Opinion 7, because it is contradicted by the evidence of human chemosensory function. Exhibit 6 at 9-10.

However, experts are not permitted to opine on the credibility of witness. <u>Nale v. Finley</u>, 505 F. Supp. 3d 635, 645 (W.D. La. 2020) ("As a general rule, an expert may not opine on another witness's credibility because this testimony does not help the trier of fact, who can make its own credibility determinations."); *Schmidt v. MTD Prod., In*c., No. CIV.A. 04-3412, 2006 WL 5127539, at *3 (E.D. La. July 5, 2006) ("Plamper's opinions about the veracity of Plaintiff's testimony are not appropriate expert testimony and should, therefore, be excluded.").

Putting aside the minuscule statistical chance *that all 13 Trial Plaintiffs*- half of which were essentially chosen independently by either Plaintiffs or Defendants without input from the other, had no ability to smell or perceive odors from the JPLF, Dr. Dalton's new theory conflicts with

6

the subjective nature of odor perception and Dalton's prior testimony during the General Causation phase of her reliance on self-reports:

> Well, almost by definition, symptoms are a personal experience. So I cannot tell -- if you tell me you're having a headache, I have no way of objectively verifying that or if you're feeling nauseated or if your eyes are irritated. Those are symptoms. I mean, if you tell me that you feel feverish, I can take your temperature, you know. But that's an objective way of confirming that. We don't usually have an objective way of confirming symptoms. We rely on people's report.[9]

Dr. Dalton's new opinion directly states that the Plaintiffs' self-reports are not "credible" or "accurate" and therefore can be supplanted for her opinions about what a particular Plaintiff did (or did not) experience. Thus, Dr. Dalton attacks both the "reality" and the "credibility" of the complaints (including some reports made to the Harahan/River Ridge Air Quality Facebook page, and LDEQ by Trial Plaintiffs Wendy Gremillion and Mary Ann Winningkoff) which she, and the Court, previously found to be "real" and "credible."[10] As stated above, as an expert witness, Dr. Dalton may not opine on the credibility of the Plaintiffs.

Further, as discussed above, *McKiver* makes clear that experts should not, and cannot, testify about what level of an exposure constitutes an annoyance to a particular Plaintiff. ("Given that North Carolina has not adopted an objective measurement for nuisance odors, and that *Plaintiffs themselves would be testifying about their experiences relative to the nuisance at their respective properties*…Dr. Dalton's testimony would not be helpful and would in fact confuse the jury...") *McKiver* at 962. (Emphasis added.)

## II.     CONCLUSION

Dalton's opinions that any of the Trial Plaintiffs were unable to perceive H2S and that their self-reports of experiences with the odors should be discarded and replaced by her opinions as to

---

[9] Rec. Doc. 300 at 810:12-23.
[10] Rec. Doc. 323 at 30.

7

their odor experience (or lack thereof) have no basis in fact. Therefore, Dr. Dalton testimony and arguments of counsel as to these issues should be excluded pursuant to *Dauber*t and Fed.R.Evid. 702 as they are highly misleading, confusing, and will not assist the trier of fact. For these reasons, Plaintiffs' Motion should be granted.

Dated:  June 6, 2024

/s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

Harry S. Johnson, (Admitted Pro Hac Vice)
James R. Jeffcoat (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636
410) 347-8700
hjohnson@whitefordlaw.com
jjeffcoat@whitefordlaw.com

FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com
eliza@fcjlaw.com

*Counsel For Addison Plaintiffs*