Agreement

Between

The Parish of Jefferson

And

CB&I Environmental & Infrastructure, Inc.

THIS AGREEMENT, (the "Agreement") is made and entered into on this _28th_ day of _December_ , 20_15_, by and between the Parish of Jefferson, State of Louisiana, herein represented by its Council Chairman, Christopher L. Roberts of the Jefferson Parish Council (hereinafter referred to as the PARISH), duly authorized to act by Resolution No. 125832 on the 21ˢᵗ day of October, 2015 and Resolution No. _126170_ , adopted on the _9_ day of _December_ , 20_15_, and CB&I Environmental & Infrastructure, Inc., duly authorized to do and doing business in the State of Louisiana, represented herein by Stephen Martin, its Senior Director, (hereinafter referred to as the FIRM). PARISH and FIRM may be referred to herein as "PARTY", individually, and "PARTIES", collectively.

**1.0** <u>Administration of Agreement.</u>   All work shall be under the direction of the Director of the Department of Environmental Affairs or her designee, hereinafter called MANAGER, and all requests, plans, reports, etc. shall be submitted to it and all approvals and administration of this Agreement shall be through it.

**2.0** <u>Scope of Agreement.</u>  FIRM shall provide Landfill Gas Collection and Control System Operation and Maintenance Services for the Jefferson Parish Sanitary Landfill for the Department of Environmental Affairs under RFP 0338. FIRM shall meet the scope of services as per the RFP No. 0338 as amended and the FIRM'S written proposal dated August 21, 2015, copies of which are on file in the Office of the Chief Buyer for the Parish of Jefferson under RFP No. 0338. The scope of services for RFP No. 0338 is included in this contract as Exhibit "B."

    **2.1**  All labor (including labor needed to pump leachate or condensate from gas extraction wells) shall be considered Routine Services as long as the services are performed within a 40-hour work week as provided in the Base O&M Service. Any labor provided beyond 40-hours per week may be invoiced at the applicable rate for Additional Labor. FIRM shall submit a request for Additional Labor to the PARISH, prior to providing any Additional Labor. The PARISH shall respond within 24 hours with approval of the request or shall provide the services with other personnel.

    **2.2**  All pumps in condensate sumps and gas extraction wells shall be removed and inspected for cleaning and maintenance once every three months. The FIRM shall maintain a schedule for routine pump maintenance, and shall include a summary of pump inspection and maintenance in the monthly report.

    **2.3**  The FIRM shall provide all vehicles, fuel, tools, equipment, safety gear, supplies, consumable materials (nuts, bolts, gaskets, tape, clamps, sealant, lubricants [excluding compressor and blower lubricants], calibration gases, office supplies, and similar materials) with the Routine Services.

12/28/2015 10:50:54 AM JEFF PAR 4657944 cfm 11559205 MORTGAGE BOOK 4676 PAGE 933

EXHIBIT

A

tabbies

2.4    The costs of materials, supplies, equipment repair, replacement or rental charges for Non-Routine Services may be invoiced monthly and reimbursed by PARISH at the FIRM's invoice cost with no mark-up. All charges invoiced for reimbursement shall be itemized on the invoice and copy of the vendor's invoice shall be provided with the FIRM's request for reimbursement.

2.5    Any supplies or equipment which cost greater than One Thousand Five Hundred Dollars ($1,500.00) require three quotes from vendors and prior approval from the PARISH Representative. If a specialty material or product is not available from three vendors, or if three vendors cannot supply the material or product within the time frame needed for continuing operation of the gas collection and control system, then the FIRM shall provide a justification for the quote. PARISH will respond within 72 hours of any request for Non-Routine Service, but PARISH reserves the right to provide any materials, equipment or services which cost more than One Thousand Five hundred Dollars ($1,500.00) through other vendors. Any materials, supplies or equipment which cost less than One Thousand Five hundred Dollars ($1,500.00) do not require prior approval from the PARISH.

## 3.0   Operations.

3.1   Term.   The term of the contract shall be for two years commencing on January 1, 2016 and shall expire on December 31, 2018. PARISH shall have the option to extend the contract for two (2), one-year periods. In the event that PARISH chooses not to exercise the option to extend the contract, PARISH shall provide written notice to FIRM at least six (6) months prior to expiration of the contract.

3.2   Location. The location where service is to be performed is the Jefferson Parish Sanitary Landfill, 5800 Highway 90 West, Avondale, Louisiana 70094.

3.3   Hours.   FIRM shall maintain such hours as necessary to meet the requirements of this Agreement.

3.4   Efficient and High Quality Operation.   FIRM shall maintain an operation which is efficient and of a level of quality equal to or greater than industry standards.

3.5   Products and Necessities.   FIRM shall furnish all working capital, services, inventory, personnel, materials, tools, machinery, equipment and other items necessary to perform FIRM's obligations under this Agreement.

3.6   Items.   FIRM shall not advertise its services rendered for Jefferson Parish without prior written consent of the PARISH.

3.7   Licenses and Permits.   FIRM shall obtain and keep at its own expense all federal, state and local licenses and permits required to be in its name in connection with this Agreement.

3.8   Compliance with Law, Rules and Regulation.   FIRM shall comply with all applicable laws, rules and regulations.

3.9   Duty and Responsibilities.   FIRM owes to MANAGER a duty to perform FIRM'S obligation under this agreement with integrity and good faith and in a

JP JPLF 0017212

manner that is in the best interests of the MANAGER and FIRM and consistent with the terms of this Agreement.

4.0 <u>Financial Matters.</u>

4.1 **Operating Expenses.** FIRM is responsible for the payment of all operating expenses required as a result of providing services herein.

4.2 **Payments.** PARISH shall pay FIRM in accordance with Exhibit A on a net thirty (30) basis from the date of receipt by PARISH. The annual contract cap shall not exceed Two Hundred Thirty Thousand and 00/100 Dollars ($230,000.00).

4.3 **Appropriation Dependency.** Agreement is contingent upon the appropriation of funds by PARISH. If the Jefferson Parish Council fails to appropriate sufficient monies to provide for the continuation of this Agreement, the Agreement shall terminate on the last day of the fiscal year for which funds were appropriated. Such termination shall be without penalty or expense to the PARISH except for payments which have been earned prior to the termination date. Termination of this Agreement by the PARISH under the provision of this section shall not constitute an event of default. The decision to fund or not to fund this Agreement for the next fiscal year will be made by the Parish Council in its unfettered discretion based upon what the Parish Council believes to be in the best interests of the PARISH. The Parish Council may in its discretion opt not to fund this Agreement for a subsequent fiscal year or years for any reason.

4.4 **Performance Bond.** Contemporaneous with the execution of this Agreement, FIRM shall provide a performance (surety) bond with Federal Insurance Company in the amount of One Hundred Thousand Dollars ($100,000.00) to insure the successful performance of the agreement in accordance with the negotiated terms and conditions of the PARTIES. The FIRM acknowledges and agrees that the performance bond may be forfeited for FIRM's failure to fully and faithfully perform its obligations in accordance with the negotiated and executed agreement.

4.5 **Reimbursement for Sales Tax.** The FIRM is responsible for paying all taxes associated equipment and materials purchased or rented for this contract. PARISH will reimburse FIRM for eligible equipment and materials at the invoice cost. For those materials and equipment purchased from out-of-state vendors, who may not apply the appropriate sales tax, FIRM shall calculate the sales tax and remit the amount to the Jefferson Parish Sheriff's Office, Sales Tax Division. Any sales tax remitted to the Jefferson Parish Sheriff's Office may be added to the monthly invoice with proper documentation of the tax calculation. FIRM must also provide PARISH with documentation of any sales tax remitted to the Jefferson Parish Sheriff's Office for this purpose.

5.0 <u>Records, Accounts and Reports.</u>

5.1 **Books and Records.** FIRM shall maintain adequate books of account with respect to its services, in accordance with generally accepted accounting principles (GAAP) in a form and method acceptable to MANAGER, within Jefferson Parish for a period not to exceed three (3) years after termination of

JP JPLF 0017213

this Agreement. FIRM shall permit MANAGER and MANAGER's agents from time-to-time within forty-eight (48) hours written notice, to inspect, copy and audit during FIRM'S normal business office hours, the books and records pertaining to the services provided under this Agreement. MANAGER's right to audit, inspect, and make copies of FIRM's records shall be at the sole expense of MANAGER.

5.2  **Periodic and/or Annual Reports.**  At any time, the MANAGER may request that the FIRM, with the minimum of ten (10) days written notice, prepare and/or produce a report of the results of operations, as it pertains to this Agreement, in the previous fiscal year prepared in accordance with generally accepted accounting principles (GAAP). The report must be prepared and certified by an independent certified public accounting firm. (For purposes of this Agreement, each "fiscal year" begins on January 1 and ends on December 31 of the same year.)

## 6.0  Personnel.

6.1  **Employees.**  FIRM shall employ, train and supervise personnel with appropriate qualifications and experience and in sufficient numbers to provide all services required under this Agreement. All persons engaged by FIRM shall be the sole and exclusive employees of FIRM and shall be paid by FIRM. FIRM shall pay all applicable social security, unemployment, workers' compensation and other employment taxes.

6.2  **Appropriate Personnel.**  FIRM shall provide only trained personnel. FIRM'S employees shall conduct themselves at all times in a proper and respectful manner in accordance with MANAGER's employee policy. If MANAGER determines that any employee of the FIRM is unsatisfactory in any material respect, MANAGER shall request FIRM to exclude the employee or employees from work under this contract, and FIRM shall so comply with such request.

6.3  **Non-Discrimination.**  FIRM shall not discriminate against any employee or applicant for employment because of age, race, creed, sex, color national origin, or disability.

6.4  **Substitution of Personnel.**  FIRM acknowledges that this Agreement is contingent upon the personnel defined in FIRM's written proposal, and that if during the term of this Agreement, the FIRM is unable to provide those defined personnel, FIRM shall substitute personnel which shall meet or exceed the requirements stated herein. A detailed resume of qualifications and justifications shall be submitted to the PARISH for approval prior to each personnel substitution request, said approval not to be unreasonably withheld conditioned or delayed.

## 7.0  Termination or Suspension.  The terms of this Agreement shall be binding upon the PARTIES hereto until the work has been completed and accepted by the PARISH; but this Agreement may be terminated under any or all of the following conditions:

a.  By mutual agreement and consent of the PARTIES hereto;

b.  By the PARISH as a consequence of the failure of FIRM to comply with the terms or quality of work in a satisfactory manner, proper allowance

JP JPLF 0017214

being made for circumstances beyond the control of FIRM, provided the PARISH will give FIRM written notice of any such failure and ten (10) days (or more if authorized in writing by the MANAGER) to cure any such failure.

c. By either PARTY upon failure of the other PARTY to fulfill its obligation as set forth in the Agreement.

d. By the PARISH for convenience by issuing FIRM thirty (30) days written notice.

**8.0   Notice.**  Any communications to be given hereunder by either PARTY to the other shall be deemed to be duly given if set forth in writing and personally delivered or sent by mail, registered or certified, postage prepaid with return receipt requested, as follows:

PARISH:          Christopher L. Roberts
                 Council Chairman
                 Jefferson Parish Council
                 200 Derbigny Street, Suite 6200
                 Gretna, Louisiana 70053
                 Phone No.: (504) 364-2626.

FIRM:            Stephen Martin
                 Senior Director
                 838 N. Causeway Boulevard , Suite 3200
                 Metairie, Louisiana 70002
                 504-832-4878
                 steve.martin@cbi.com

8.1   Written notices hereunder delivered personally shall be deemed communicated as of actual receipt; mailed notices shall be deemed communicated five (5) days after deposit in the mail, post prepaid, certified, in accordance with this Paragraph.

**9.0   Independent Contractor.**  While in the performance of services or carrying out the obligations under this agreement, FIRM shall be acting in the capacity of independent contractor and not as employee of the PARISH, and not as partner of, or joint venturer of PARISH. The PARISH shall not be obliged to any person, firm or corporation for any obligations of FIRM arising from the performance of their services under this Agreement.

The PARTIES hereto acknowledge and agree that PARISH shall not:

a. withhold federal or state income taxes;
b. withhold federal social security tax (FICA);
c. pay federal or state unemployment taxes for the account of FIRM; or
d. pay workman's compensation insurance premiums for coverage for FIRM.

9.1   FIRM agrees to be responsible for and to pay all applicable federal income taxes, federal social security tax (or self-employment tax in lieu thereof) and any other applicable federal or state unemployment taxes.

JP JPLF 0017215

9.2  FIRM agrees to indemnify and hold PARISH harmless from any and all federal and/or state income tax liability, including taxes, interest and penalties, resulting from PARISH'S treatment of FIRM as an independent contractor. FIRM further agrees to reimburse PARISH for any and all costs it incurs, including, but not limited to, accounting fees and legal fees, in defending itself against any such liability.

10.0  Insurance.  FIRM shall secure and maintain at its expense such insurance that will protect it, and the PARISH, from claims under the Workmen's Compensation Acts and from claims for bodily injury, death or property damage which may arise from the performance of services under this Agreement. All certificates of insurance shall be furnished to the PARISH and shall provide that insurance shall not be canceled without notice of cancellation given to the Parish of Jefferson, in writing, on all of the required coverage provided to Jefferson Parish. All notices will name FIRM, and identify the Council Resolution approving the terms of this Agreement. The PARISH may examine the policies at any time and without notice.

10.1  All policies and certificates of insurance of the firm shall contain the following clauses:
    a.  FIRM insurers will have no right of recovery or subrogation against the PARISH, it being the intention of the PARTIES that the insurance policy so affected shall protect both PARTIES and be the primary coverage for any and all losses covered by the below described insurance.
    b.  The PARISH shall be named as additional insured as regards to general liability with respect to negligence by FIRM.
    c.  The insurance company(ies) issuing the policy or policies shall have no recourse against the PARISH for payment of any premiums or for assessments under any form of policy.
    d.  Any and all deductibles in the below described insurance policies shall be assumed by and be at the sole risk of FIRM.

10.2  Prior to the execution of this Agreement, FIRM shall provide at its own expense, proof of the following insurance coverage required by the contract to the PARISH by insurance companies authorized to do business in the State of Louisiana. Insurance is to be placed with insurers with an A.M. Best Rating of no less than A:VI.

    a.  In the event FIRM hires workers within the State of Louisiana it shall obtain Worker's Compensation Insurance. As required by Louisiana State Statute exception; employer's liability shall be at least $1,000,000 per occurrence when work is to be over water and involves maritime exposures, otherwise this limit shall be no less than $500,000 per occurrence.
    b.  Commercial General Liability Insurance with a Combined Single Limit of at least $1,000,000.00 per occurrence for bodily injury and property damage. This insurance shall include coverage for bodily injury and property damage.
    c.  Business Automobile Liability Insurance with a Combined Single Limit of $1,000,000.00 per occurrence for bodily injury and property damage, unless otherwise indicated. This insurance shall include for bodily injury and property damage the following coverage.

JP JPLF 0017216

10.3 All policies of insurance shall meet the requirements of the PARISH prior to the commencing of any work. The PARISH has the right but not the duty to approve all insurance policies prior to commencing of any work. If at any time any of the said policies shall be or becomes unsatisfactory to the PARISH as to form or substance, or if a company issuing any such policy shall be or become unsatisfactory to the PARISH, FIRM shall promptly obtain a new policy, submit the same to the PARISH for approval and submit a certificate thereof as provided above.

10.4 Upon failure of FIRM to furnish, to deliver and maintain such insurance as above provided, this contract, at the election of the PARISH, may be forthwith declared suspended, discontinued or terminated. Failure of FIRM to take out and/or to maintain insurance shall not relieve FIRM from any liability under the contract, nor shall the insurance requirements be construed to conflict with the obligation of FIRM concerning indemnification.

## 11.0 General:

11.1 FIRM shall indemnify and hold harmless the PARISH against any and all claims, demands, suits, costs, liabilities or judgments for sums of money; and fines or penalties asserted by any PARTY, firm or organization for loss of life or injury or damages to person or property, to the extent caused by the negligent acts, errors, and/or omissions by FIRM, its agents, servants or employees, while engaged upon or in connection with the services required to be performed by FIRM under this Agreement.

11.2 Further, FIRM hereby agrees to indemnify the PARISH for all reasonable expenses and attorney's fees incurred by or imposed upon the PARISH in connection therewith for any loss, damage, injury or other casualty pursuant to this section. FIRM further agrees to pay all reasonable expenses and attorney's fees incurred by the PARISH in establishing the right to indemnity pursuant to the provisions of this Section.

11.3 FIRM acknowledges and agrees that the rights and obligations conferred and contained herein shall be non-exclusive in nature, and the PARISH makes no representations or warranties to the contrary.

11.4 FIRM warrants that it has not employed or retained any company or person, other than a bona-fide employee working solely for the FIRM, to solicit or secure this contract, and that it has not paid or agreed to pay any company or person, other than bona-fide employees working solely for the FIRM, any fee, commission, percentage, brokerage fee, gifts, or any other consideration, contingent upon or resulting from the award or making of this Agreement. For breach or violation of this warranty, the PARISH shall have the right to annul this Agreement without liability.

11.5 This Agreement shall be binding upon the successors and assigns for the PARTIES hereto. This Agreement being for the personal services of FIRM, shall not be assigned or subcontracted in whole or in part by FIRM as to the services to be performed hereunder without the written consent of the PARISH, in PARISH'S sole discretion.

11.6 This Agreement shall be deemed to be made under the laws of the State of Louisiana, and for all purposes shall be interpreted in its entirety in accordance with the laws of said State. The FIRM hereby agrees and consents to the jurisdiction of the courts of the State of Louisiana over its

JP JPLF 0017217

person. The PARTIES hereto agree that the sole and exclusive jurisdiction and venue for any suit or proceeding brought pursuant to this contract shall be the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

11.7 It shall be the duty of every PARISH officer, employee, department, agency, special district, board, and commission; and the duty of every contractor, subcontractor, and licensee of the PARISH, and the duty of every applicant for certification of eligibility for a PARISH contract or program, to cooperate with the inspector general in any investigation, audit, inspection, performance review, or hearing pursuant to Jefferson Parish Code of Ordinances Section 2-155.10(19). Every PARISH contract and every bid, proposal, application or solicitation for a PARISH contract, and every application for certification of eligibility for a PARISH contract or program shall contain a statement that the corporation, partnership, or person understands and will abide by all provisions of the Jefferson Parish Code of Ordinances Section 2-155.10(19).

11.8 This Agreement represents the entire Agreement between PARISH and FIRM. This Agreement may only be amended in writing by authority of a Jefferson Parish Council Resolution, and must be signed by both PARISH and FIRM. Should there be any conflict among contract documents, the RFP and the FIRM'S proposal, the following order of precedence shall govern the resolution of the conflict:

    1)   This Agreement;
    2)   RFP 0338 & addenda;
    3)   Resolution No. 113646
    4)   FIRM's written proposal;

*[Remainder of page intentionally left blank, signature page to follow]*

JP_JPLF_0017218

IN TESTIMONY WHEREOF, this Agreement is executed in four (4) originals, the day and year first above written.

Witnesses:                                          Parish of Jefferson

_Karen B. Dzeguca_                          By: _____
Printed Name: _Karen B. Dzeguca_            CHRISTOPHER L. ROBERTS
                                            Chairman, Jefferson Parish Council
                                            Jefferson Parish Council

_Ann H. Guidry_
Printed Name: _Ann H. Guidry_

Witnesses:                                          CB&I Environmental & Infrastructure, Inc.

_Karen B. Dzeguca_                          By: _____
Printed Name: _Karen B. Dzeguca_            Stephen Martin
                                            Senior Director

_Ann H. Guidry_
Printed Name: _Ann H. Guidry_

[Remainder of page intentionally left blank.]

JP JPLF 0017219

## EXHIBIT A

## PRICING SCHEDULE/FEE SCHEDULE

COST PROPOSAL

RFP NO: 0338

JEFFERSON PARISH SANITARY LANDFILL GAS COLLECTION AND CONTROL
SYSTEM OPERATION AND MAINTENANCE SERVICES

Base O&M Service
Provide a full-time technician on-site 40 hours per week for O&M, including all
tools, equipment, safety gear, supplies, consumable materials, vehicles, etc. Also
provide technical and management support. Routine monthly, quarterly, semi-
annual and annual reports required by permit and regulations will be prepared
and submitted.

Cost per Month:   $ 14,000          Annual Cost $168,000

Additional Labor
O&M Technician Overtime beyond 40-hours/week; Est. 360 hr./year
Cost per Hour:     $ 60              Est. Annual Cost $ 21,600
Additional Technician working with primary Tech.; Est. 120 hr./year
Cost per Hour:     $ 55              Est. Annual Cost $ 6,600
Laborer working with primary Tech.; Est. 120 hr./year
Cost per Hour:     $50               Est. Annual Cost $6,000

Total Est. Annual Cost $202,000

Name of Proposer:   CB&I Environmental & Infrastructure, Inc.

Type Name of Person Authorized to Sign:   Stephen Martin

Title of Person Authorized to Sign:   Senior Director of Operations

Signature of Person Authorized to Sign:   _____

38

*[Remainder of page intentionally left blank.]*

JP_JPLF_0017220

EXHIBIT B

SCOPE OF WORK/SERVICES FROM RFP 0338

1.1 Routine Work

Routine Work is (a) the performance of preventive maintenance and repair of the LGCCS in accordance with Industry Standards and the recommendation of the manufacturers of its component parts and (b) operation of the LGCCS in accordance with the Air Permit, Applicable Environmental Regulations and all other applicable laws, rules and regulations.

<u>Industry Standards/Tests/Recommendations</u>: The FIRM shall comply with the industry standards, test procedures, regulations, and recommended methods of the following organizations:

a) National Electrical Code (NEC)
b) National Electrical Manufacturer's Association (NEMA)
c) American National Safety Institute (ANSI)
d) Underwriter's Laboratory (UL)
e) Electronics Industries Association (EIA)
f) Occupational Safety and Health Administration (OSHA)
g) Solid Waste Association of North America (SWANA)
h) U. S. Environmental Protection Agency (USEPA)
i) Louisiana Department of Environmental Quality (LDEQ)

<u>Warranties:</u> For any equipment installed by the FIRM, the FIRM shall provide the description, manufacturer, model, and serial number, and submit any manufacturer's warranty or registration forms. If the manufacturer's warranty is longer than one year, such warranty shall be provided to the owner. The FIRM shall warrant all equipment to be free of defects in materials and workmanship for one year from the date of substantial completion of the project. For any failures within the warranty period, provide answers to service calls and requests for information within a 24-hour period and repair or replace any faulty item within a 23-hour period without charge, including parts and labor.

Routine Work includes, but is not limited to, the following:

<u>1.1.1 Operation and Maintenance</u>

Routine operations and maintenance of the LGCCS includes balancing the wellfield to maintain oxygen, temperature and pressure limits and to maximize LFG quality and flow rate; pumping leachate from gas wells as needed; monitoring component performance at the flare station and repairing those components as necessary; monitoring the above ground portion of the LFG wellheads, repairing when required; monitoring the performance of the condensate sumps and pumps, repairing or replacing, as necessary; and implementing solutions.

JP_JPLF_0017221

Balancing the wellfield includes monitoring the methane, oxygen, carbon dioxide, balance gases, temperature, pressure, and flow in the LFG extraction wells, and adjusting control valves as needed for compliance using a Landtec GEM2000 or comparable instrument. Monitoring data will be compiled in a database and used to maximize LFG collection, minimize overdraw, identify problem areas, and maintain compliance with regulations and Title V Permit.

Maintenance of the LFG extraction wellheads consists of checking such items as: proper valve operation, obstructions in the sampling and testing ports, deterioration of hoses, and tightness of bolts and clamps. Minor repairs include such items as maintaining vegetative growth immediately around the well and lateral riser, repair or replacement of sample ports, small lateral valves up to 4-inch, adjusting and/or replacing flex joints up to 4-inch diameter, sealing air leaks, and adjusting pipe supports to account for differential settlement.

Maintenance of the flare station includes such items as: rotation of the blower operation, maintaining vegetative growth inside, as well as around the fence enclosure, replacement of filters, testing voltage output and operation of the blowers; checking condensate knock-out vessel drainage, lubricating the blower bearings, checking for blower belt wear and adjusting belt tension, inspecting the flame arrester, checking flow recorder and down-loading digital data, checking flare pilot system and pilot gas fuel tank levels, and checking flare controller set points in accordance with the manufacturer's recommendations and maintenance schedules.

Maintenance of the pneumatic condensate and leachate pumps includes routine inspection of the valves, connections, actuator, and air and discharge lines to determine the operational status of the pump. Minor repairs shall be made on a routine basis. Each pump shall be removed and visually inspected quarterly for clogging, corrosion, cleaning and repair or replacement, as necessary. A pump maintenance schedule will be prepared, updated and submitted with the monthly report (see below).

FIRM shall prepare a written maintenance schedule for the LGCCS in accordance with industry Standards and manufacturer's recommendations. FIRM shall up-date the maintenance schedule on an as-needed basis. FIRM shall provide the Parish Project Representative with a copy of the maintenance schedule and all up-dates thereto.

A written monthly report itemizing the summary of Routine Work conducted onsite will be prepared and submitted to the Parish within 10 days of the end of each month. The monthly summary will include the tabulated monitoring results recorded for that month, problems encountered and solutions implemented, tracking of oxygen, temperature, or vacuum exceedances in any wells, adjustments made to the wellfield or flare system, and scheduled maintenance performed on the LGCCS and condensate/leachate removal pumps.

### 1.1.2 Regulatory Compliance Activities

The FIRM shall maintain compliance with the Air Permit and the Applicable Environmental Regulations including all reporting, monitoring and record keeping as they presently required or may hereinafter be amended. If future revisions to regulations cause an increase in the cost of operation and maintenance, the FIRM may negotiate a reasonable amendment to the Contract with Jefferson Parish, subject to the approval of the Jefferson Parish Council.

JP_JPLF_0017222

The FIRM shall perform quarterly Surface Emissions Monitoring (SEM) as required by the Permit, the Applicable Environmental Laws and/or referenced in the LAC. 33: III (which references NSPS regulations). Follow-up efforts in response to any emission detected in excess of 500 ppm shall be completed, re-monitored, and documented within the regulatory time limits. A quarterly SEM report including a description of SEM activities, dates, times and locations of SEM, personnel and equipment used, equipment calibration, locations of any emissions exceeding regulatory limits, actions taken to reduce emissions, and re-monitoring, shall be submitted within 30 days of completion.

FIRM will compile those data necessary and prepare the semi-annual and annual reports of LGCCS operations and subsequent periodic reports required by the Air Permit and Applicable Environmental Regulations. FIRM will prepare and submit annual Emissions Inventory Calculations to LDEQ and Greenhouse Gas (GHG) emissions to USEPA in the format required, and in accordance with the Air Permit and Environmental Regulations. Jefferson Parish will provide all Landfill data not related to the LGCCS required for the calculations in a timely manner when requested by the FIRM.

The FIRM shall be available and make his files available to the Parish Representative or LDEQ and USEPA inspectors upon request.

### 1.1.3 Record-Keeping

The FIRM shall maintain a site file, and provide copies of all required materials to the Parish Representative so that the Parish can also maintain a file for the LGCCS. The Parish will provide an AutoCAD file of the LGCCS record drawing showing all wells, laterals, headers, condensate sumps, compressed air and leachate/condensate discharge lines. FIRM will assemble and provide the Parish with the following information:

1.      Record drawings for the LGCCS, showing any revisions to wells, header and lateral lines, leachate and condensate pumps, condensate sumps, isolation valves, air compressors, controls, monitoring and recording equipment, air, leachate or condensate lines, or any blower or flare components, in electronic (AutoCAD) and printed form;

2.      Monthly monitoring results from each well and documentation of occurrences when vacuum was not present, or oxygen, nitrogen, or temperature regulatory limits were exceeded at any well;

3.      Documentation that the flare temperature monitoring or heat sensing device, and LFG flow device were in continuous operation;

4.      In coordination with Renovar, document the duration of periods and flow rate when the LFG was diverted through the Primary Control Device, the duration and flow rate when LFG was burned by the flare, and durations of time periods when both control devices were inoperable and the reasons;

JP JPLF 0017223

5.      Documentation and notification of periods when both control devices of the LGCCS were inoperable in excess of 5 days;

6.      Documentation of any exceedances of the 500 ppm limit during quarterly surface emissions monitoring;

7.      Scheduled maintenance activities; and

8.      Documentation of any other pertinent information that may be required for continued operation and maintenance of the LGCCS, regulatory compliance, compliance inspections, safety, or contract administration.

### 1.1.4 Technical Support

The FIRM shall provide Technical Support, as needed, for minor compliance or operational issues that may arise during the term of the Contract. The Parish may request advice to mitigate recurring issues, such as, exceedance of well head oxygen, temperature or pressure limits, well dewatering, header or lateral clogging, equipment repair or replacement, and similar issues. The parish representative may request the FIRM to draft letters to LDEQ requesting alternate timelines for compliance, higher operating values, or other compliance issues. The FIRM shall provide management and support services for the on-site technician during the term of the contract.

### 1.2     Non-Routine Work

Non-Routine Work is work beyond the scope of Routine Work as defined above.

Non-routine work will include items such as follow-up related to excessive blower vibration; repair of broken or leaking piping not caused by FIRM; repair of condensate or leachate pumps requiring replacement of parts; extending well casing as waste fill increases; or pumping leachate from wells. This work is essential to achieving the LGCCS operational goal; however, it is considered work that can be scheduled to allow for efficient procurement of materials, rental of equipment, and scheduling of additional personnel that may be required. FIRM will provide necessary labor, equipment, tools, and materials required to perform these types of services on an as-needed basis. Non-routine scheduled services consist mainly of major corrective repair or maintenance work identified during the Routine Work.

Prior to the performance of any Non-Routine Work (except for Emergency Services), FIRM shall provide the Parish the notice and cost of service. If the cost of Non-Routine Work is less than $1,500.00, the FIRM may proceed with the Work without prior approval by the Parish Representative. Any Non-Routine Work in excess of $1,500.00 requires approval by the Parish Representative before the FIRM provides the service or procures any materials or equipment for the Work. The Parish reserves the right to provide any Non-Routine Work with Parish personnel and equipment or other contractors.

JP_JPLF_0017224

**1.3 Emergency Services**

Emergency services include any situation related to the LGCCS that constitutes a potential safety hazard or violation of regulations or permit conditions. Emergency services consist of responding to conditions that would require an immediate response and restoration of the operation of the LGCCS. These can include, but are not limited to, response to blower failure; response to flame failures; response to alarm conditions and alarm failures; response to flare exhaust temperature sensors or controller failure; leaks that cause excessive oxygen concentrations at the primary control device; and repair of main LFG pipe breaks that disrupt LFG flow. The urgent nature of these items is such that response cannot be delayed.

FIRM shall respond to these conditions, as needed on an event by event basis, seven (7) days per week twenty-four (24) hours per day, as soon as possible, but no later than twelve (12) hours from oral or written notification of the problem unless otherwise required by Applicable Environmental Laws or there is an immediate safety threat to life or property (including any part of the Collection System), in which case the response time shall be as soon as possible. If upon response to an emergency call, it is determined that the facets of the "emergency" do not constitute an immediate safety threat; the technician will perform only the work required to eliminate any related safety hazard. Once the safety hazard has been mitigated, FIRM will then coordinate and schedule the non-emergency repairs as described above in non-routine services.

IP_IPLF_0017225