UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | CIVIL ACTION |
| Plaintiffs | NO. 19-11133, c/w 19-14512 |
| V. | |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | SECTION: "E" (5) |
| Defendants | |
| | JUDGE: Morgan |
| | MAGISTRATE JUDGE: North |
| *Applies to: Both Cases* | |

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
### EXPERT TESTIMONY OF JOSEPH GARDEMAL

Pursuant to §VI.2 of the Thirteenth Case Management Order, Plaintiffs submit this Brief in support of their motion to exclude the testimony of proposed defense expert, Joseph Gardemal. For the reasons stated herein, his testimony should be excluded in its entirety. A copy of the Gardemal report is attached as **Exhibit 1.**

**I.    INTRODUCTION.**

In their answer to Plaintiffs' Second Amended Complaint, the Waste Connections Defendants pled that "Plaintiffs failed to mitigate their damages." R.Doc. 502 at 2. Defendants asked at least one of Plaintiffs in deposition about moving to escape the odors. (**Exhibit 2, Terrance Thompson Dep. at 72-73**) ("Q. Did you ever think about moving from 1116 South Starrett because of the odors? A. No."). At a recent conference with the Court, Defense counsel has made clear their belief that asking the Plaintiffs, "if the odors were so bad, why didn't you move?" is a legitimate line of inquiry.

At the same time, the cost of moving to escape the odors is a proxy for some of the general damages suffered by the Plaintiffs because it is representative of the cost of having to put up with the odors. With Defendants having placed the possibility of relocation in issue, Plaintiffs asked one of their expert witnesses to calculate the cost of such relocation. Plaintiffs' expert, Mr. Malcolm Deines, did so. (*See* **Exhibit 3, Deines Report**.) Having themselves raised the issue, Defendants can hardly complain about evidence that bears upon the cost of moving. Yet, Defendants offer the expert report of Mr. Joseph Gardemal, the Managing Director of a New York City-based international consulting firm, to discuss it.[1]

Mr. Gardemal does not himself offer any opinions on the costs of the Plaintiffs to relocate to escape the odors. He does NOT say relocation costs were minimal such that Plaintiffs could, as a practical matter, have mitigated their damages by moving. He does NOT calculate what a "reasonable" cost of moving might be. Instead, he was asked to do two things and two things only: (1) review and criticize the analysis performed by Mr. Deines, and (2) "evaluate the financial performance of Paradise Manor Community Club." His first opinion is nothing but argument that can be made by lawyers. His second opinion is not based upon any claim of expertise in the effect

---

[1] The Gremillions did move. When asked "how prevalent" the odors were in the decision to move, Scott Gremillion replied, "We wouldn't even started to have the conversation if the odors weren't present." (**Exhibit 4, Scott Gremillion Dep. at 127.**) He explained, "The safety of my family is the most important thing to me. When I had my daughter for the first time, it changed my perspective on life, and my son. And when we went through this and saw the effect it was having on overall family health, we were very concerned about the long-term health. And that's what I mean when I said the smell was so bad, we had to move. We didn't know -- you know, the overall lifestyle. It was affecting their activities. It was affecting our activities. We were scared. We were stressed. It was not an easy decision to move. We've lived -- my wife has lived here her whole life. We're not -- we're not -- I don't know the correct word, but we don't jump to decisions. We're very analytical, both of us.. We thought about this thoroughly. We were taking the kids away from their – you know, family, their friends, their schools, their team sports. We were leaving our family, our friends, community we loved. And we were that nervous about what this was going to do to us long term." (**Id. at 107-108.**)

of odors on Community Club revenues or, for that matter, any scientific or technical basis whatsoever. As a result, his opinions must be excluded.

Federal Rule of Evidence 702 ("Rule 702") permits an expert to testify in the form of an opinion *if* (among other factors) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a). (emphasis added). Prior to admitting expert testimony, the court must make a threshold determination of the admissibility of it. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). *Daubert* commands that expert testimony be relevant. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). FRE Rule 401 provides that "evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Mr. Gardemal's opinions and testimony do not bear upon any fact of consequence in this case.

## II. AS TO THE FIRST OF MR. GARDEMAL'S ASSIGNMENTS, HE MERELY RECITES ARGUMENTS THAT CAN BE MADE BY THE LAWYERS, WHICH EXPERTS ARE NOT PERMITTED TO DO.

As to the first of these assignments, Mr. Gardemal offers nothing more than arguments that the lawyers can make. No special knowledge, skill, experience, training, or education is required the opinions expressed. Mr. Gardemal's proposed testimony must be excluded in its entirety.

First, Mr. Gardemal states that Mr. Deines "incorrectly assumes that monetary damages should be measured by reference to hypothetical costs the Trial Plaintiffs might have incurred had they moved away from their homes despite the fact that they did not incur any such costs." (**Exhibit 1, Gardemal Report at 4**.) Apart from the Gremillions, it is true that none of the trial Plaintiffs incurred any moving costs, and it is true that the non-Gremillion trial Plaintiffs are not seeking moving costs as actual damages. Instead, the cost of moving is relevant to refute the defense that Plaintiffs failed to mitigate, and because the cost of escaping the odors stands as a proxy for the

3

general damages in having to put up with them. So Mr. Gardemal appears to be critical of an argument that Plaintiffs are not making, and in any event this criticism is one that can be advanced by the lawyers. There is no need for expert testimony on this point.

Second, Mr. Gardemal complains that Mr. Deines did not apportion the claimed damages to other sources. (**Exhibit 1, Gardemal Report at 4**.) But that is not Mr. Deines' role in this case and Mr. Deines had no obligation do so. Apportionment of the damages is a defense upon which the Defendants have the burden of proof, and there has been no evidence produced in this case that any of the other sources identified by the Defendants are even contended by the Defendants to have caused Plaintiffs' injuries in this case. Indeed, at least three of the defense experts (including Mr. Gardemal himself) have opined that were no injuries from any odor from any source.

Third, Mr. Gardemal complains "Dienes incorrectly assumes that every Trial Plaintiff suffered monetary damages every day during the Relevant Period. (**Exhibit 1, Gardemal Report at 4**.) No such assumption appears anywhere in Mr. Deines' report. In this case, when the odors began, it was unknown how long they would last. And, as concluded by the Court in its Findings and Conclusions on General Causation, part of the damages resulted from the fact that the odors were intermittent. As a result, Mr. Deines properly calculated the relocation costs for the entire period. Any arguments that the evidence in the case should have resulted in a shorter time period can be made by counsel. No expert testimony is needed on this issue.

Fourth, Mr. Gardemal asserts that the amounts calculated by Mr. Deines were overstated because they did not take into account: (a) the number of days each Trial Plaintiff resided away from their homes for non-odor related reasons;[2] (b) that three of the thirteen Trial Plaintiffs resided

---

[2] Forgetting, of course, that rent or a mortgage is still due while you are vacation, or in the case of Mr. Tate, deployed on National Guard duty.

4

in rental properties from which they could have moved immediately without incurring additional lodging costs; (c) that "Trial Plaintiffs could have moved to a rental property that was less expensive than an extended stay facility; (d) that Trial Plaintiffs would have incurred meal costs regardless of any odors; and (5) that Trial Plaintiffs do not seek physical property damages so estimated costs of storage and cleaning should be rejected (how storage is affected, he does not say).[3] (**Exhibit 1, Gardemal Report at 5-6**.) Notably, Mr. Gardemal does not offer any calculations of his own to show what his opinion as to a proper cost might be. As a result, his criticisms are nothing more than arguments that can be made by the lawyers, and it is unduly prejudicial to elevate argument into some higher status through the imprimatur of expert testimony.

If the expert's proposed testimony consists of arguments or observations that can be made by counsel, then the expert's "scientific, technical, or other specialized knowledge" adds nothing the equation, then the proposed testimony should be excluded. *See*, *e.g.*, *Pugh v. LaQuinta Motor Inns, Inc.*, No. CIV.A. 94-510, 1996 WL 44170, at *2 (E.D. La. Feb. 2, 1996) ("Mr. Trapolin's observations regarding the management's installation and placement of a grab bar and warning sticker can just as easily be made by jurors who have seen pictures of the bathroom at issue. These portions of the expert report do not bring to the jury more than the lawyers can offer in argument.")

In *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. MDL 07-1873, 2009 WL 2169224, at *3 (E.D. La. July 15, 2009), the court excluded testimony that "consists of a cumulative appreciation of other experts' testimony-something the jury can and will do, with the benefit of counsel's arguments to such extent." And in *McNabb v. Graham Gulf, Inc.*, No. CIV.A.

---

[3] Mr. Gardemal further states that "that the Court did not allow recovery for any physical property damage in its General Causation decision." (**Exhibit 1, Gardemal Report at 5-6**.) Of course, the Court did not award any damages for any injury in the General Causation decision, as that was not purpose of the ruling.

5

03-2904, 2005 WL 1038024, at *2 (E.D. La. Apr. 27, 2005), the court explained, "Why the plaintiff may have misperceived what happened during an accident which occurred in the matter of seconds is certainly an issue to which members of the jury can relate, and can understand, without expert testimony which clearly does not offer "more than the lawyers can offer in argument."

This conclusion is particularly true when the expert undertakes to criticize other experts. For example, in *deWit v. UPS Ground Freight, Inc*., No. 1:16CV36-MW/CAS, 2017 WL 5905575, at *2 (N.D. Fla. July 25, 2017), the court explained that when a purported expert opinion "merely takes a commonsense concept and applies it to a specific field" that effort "does not concern matters that are beyond the understanding of the average lay person." (cleaned up) *citing United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (en banc) (*citing United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). Such testimony therefore would not be helpful to the jury and "offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63 (citation omitted). Similarly, in *Cordoves v. Miami-Dade Cnty*., 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015), the court excluded an expert's critique that "reads less like an expert's opinion and more like a lawyer's *Daubert* motion," and when the expert sought to testify that his counterpart's opinions rested on "pseudo, otherwise non-existent, requirements" that ran afoul of the applicable regulations, the court ruled "that is a legal argument for the lawyers to make, not [this expert]" Id.

### III. MR. GARDEMAL IS NOT QUALIFIED TO OPINE THAT THERE WERE NO ODORS BASED ON HIS CONCLUSION THAT THE REVENUES OF THE PARADISE MANOR COMMUNITY CLUB DID NOT DECREASE.

Finally, Mr. Gardemal opines that the alleged odors from the Jefferson Parish Landfill did not have any significant impact on its operations, and thus did not affect its members' use of the Paradise Manor Community Club. (**Exhibit 1, Gardemal Report at 5-6**.) He reached this opinion by reviewing the financials of the Club and determining that they did not decrease. Therefore, he

6

concludes, there were no odors. Like the opinions of defense experts Baldwin Justice and Dr. Brobson Lutz, this conclusion (if valid) means that there were no odors, from any source, that affected the revenues of the Club. Thus, not only does Mr. Gardemal directly contradict the findings of the Court in the General Causation phase that emissions from the Jefferson Parish Landfill were capable of causing Plaintiffs' injuries, (R.Doc. 323 at 46) he also directly contradicts Defendants' argument in this case that odors from some other source were to blame.

In addition, Mr. Gardemal's assumption that, if odors existed, then the revenues would have decreased is based upon neither: any claim by him to have expertise in the operation of community clubs; any experience he has regarding the effect of odors on community clubs; nor any other empirical data or published literature.

At best, Mr. Gardemal could testify that the revenues of the club did not decrease during the Relevant Time Period, for whatever relevance that might have (which is none). But he has shown no specialized knowledge, training or expertise to allow him to testify that the presence of odors would have caused a decrease in revenues.[4] Mr. Gardemal lacks both the qualifications and any scientific or other basis upon which to opine that odors would have decreased the revenues, much less to reach the secondary conclusion that the lack of a decrease in revenue proves there were no odors. Neither Daubert nor the Federal Rules of Evidence "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." Brandner v. State Farm Mut . Auto. Ins. Co., No. CV 18-982, 2019 WL 636423, at *4 (E.D. La. Feb. 14, 2019), quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (Morgan, J.).

---

[4] This is particularly true when many of the odors occurred in the early morning, before the Club opened, and in the late evening, after the Club closed. Moreover, the Club started permitting the use of credit cards to pay for food in 2018, which change by itself led to an increase in revenues.

7

If Defendants contend that the proposition that revenues would have decreased if there were odors derives from common sense, then expert testimony is not admissible to show it. Expert testimony is inadmissible "as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Conday v. Offshore Drilling Co.*, No. CV 07-0882, 2010 WL 11575031, at *2 (W.D. La. Jan. 5, 2010), *citing Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986). Expert testimony does not assist the trier of fact if the court finds "the jury adeptly can assess the situation using only their common experience and knowledge." *Lee v. Offshore Logistical & Transp., LLC*, No. CV 15-2528, 2017 WL 6501151, at *3 (E.D. La. Dec. 19, 2017) (cleaned up) *citing Peters v. Fiver Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990). *See also Matherne v. MISR Shipping Co.*, No. CIV. A. 88-2261, 1991 WL 99426, at *1 (E.D. La. May 31, 1991) ("Scientific, technical or specialized testimony would not assist the jury in reaching a decision on the vessel's liability in a routine "fall on a vessel" case such as this one and would offer little more than argument.); *Araujo v. Treasure Chest Casino*, No. CIV A. 97-3043, 1999 WL 219771, at *2 (E.D. La. Apr. 14, 1999) (finding opinions "unhelpful because they relate to issues within the common knowledge, experience, and understanding of the average lay juror" and the experts' testimony "would bring to the jury no more than the lawyers can offer in argument and through presentation of fact witnesses").

Mr. Gardemal also seeks to testify as to issues of law, even citing cases in his report, (See Report at 9-10) which experts are not permitted to do.  But, "an expert may never render conclusions of law." *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009). *See Snap-Drape, Inc. v. Commissioner of Internal Revnue*, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that [Rule 702] does not allow an expert to render conclusions of law.").

8

This Court has repeatedly ruled that expert testimony that offers a legal opinion is inadmissible. *Marks v. Smith*, No. CV 15-5454, 2017 WL 988787, at *3 note 39 (E.D. La. Mar. 14, 2017) (Morgan, J.) *citing Estate of Sowell v. United States of America*, 198 F.3d 169, 171 (5th Cir. 1999) and *Askanase v. Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997); *Ratliff v. Seadrill Americas, Inc.*, No. CV 17-11581, 2018 WL 6523479, at *2 (E.D. La. Dec. 12, 2018) (Morgan, J.) (an expert witness "is not permitted to offer conclusions of law"). *See Howard v. Offshore Liftboats, LLC*, No. CV 13-4811, 2016 WL 232238, at *3 (E.D. La. Jan. 19, 2016) (Morgan, J.) ("Whether the Plaintiffs contributed to their injuries and, as a result, were contributorily negligent is a legal issue which must be decided by the jury."); *Spikes v. McVea*, No. CV 17-8164, 2018 WL 6448846, at *2 (E.D. La. Dec. 10, 2018) (Morgan, J.) ("Dr. Ochella's opinion that certain conduct constituted deliberate indifference is an inadmissible legal conclusion."); *Fick v. Exxon Mobil Corp.*, No. CV 13-6608, 2017 WL 11673924, at *3 (E.D. La. Mar. 14, 2017) (Morgan, J.) ("Mr. Davidson will not be allowed to testify that Exxon agreed to remove the remaining flowlines in the field. This is a legal opinion, which is not allowed."); *Versai Mgmt. Corp. v. Landmark Am. Ins. Corp.*, No. CIV.A. 11-2139, 2013 WL 681902, at *2 (E.D. La. Feb. 22, 2013) (Morgan, J.) ("Whether the Policy is a valued policy within the meaning of the VPL is a question of law for the Court, not a question of fact for the jury.").

When an expert who critiques the work of another expert is actually rendering a legal opinion, the testimony is inadmissible. *In re Heparin Prod. Liab. Litig.*, 803 F. Supp. 2d 712, 751 (N.D. Ohio 2011), *aff'd sub nom. Rodrigues v. Baxter Healthcare Corp.*, 567 F. App'x 359 (6th Cir. 2014) ("Although an expert may critique the methods of another expert, this opinion strays into a legal conclusion. 'An expert opinion on a question of law is inadmissible.'").

These rules are imposed because an expert professing to testify regarding the governing law invades "the province of the court to determine the applicable law and to instruct the jury as to that law." *Willette v. Finn*, 778 F. Supp. 10, 11 (E.D. La. 1991). In addition, "admitting expert legal testimony would pose the risk that jurors would confuse the Court's instructions with the views put forward by the parties' experts." *Id*. As a result, whatever value testimony on legal issues might have (which is usually none), that value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," requiring its exclusion under FRE 403, and such testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue," requiring its exclusion under FRE 702.[5] *Cf. David v. Signal Int'l, LLC*, No. CV 13-6219, 2015 WL 14018914, at *2 (E.D. La. Jan. 11, 2015) ("the Court finds testimony regarding the language and applicability of immigration statutes and regulations and whether conduct generally would be consistent or inconsistent with these laws does not amount to a legal conclusion in this case and will be helpful to the jury") (Morgan, J.).

## IV.   CONCLUSION.

Mr. Gardemal's opinions will not help the trier of fact to understand the evidence or to determine a fact in issue. Therefore, the opinions are not admissible under FRE 702 should be excluded.

---

[5] As noted in the Advisory Committee Notes to FRE 704, under which opinions by experts on the ultimate issue in the case are not automatically objectionable, FRE Rules 403 and 702 "stand ready to exclude opinions phrased in terms of inadequately explored legal criteria." F.R.Evid. 704, Advisory Committee Notes 1972.

Respectfully submitted, this 6th day June, 2024.

          **/s/** S. Eliza James
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
FORREST CRESSY & JAMES, LLC
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fcjlaw.com
eliza@fcjlaw.com

          /s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Harry S. Johnson (Admitted Pro Hac Vice)
James Jeffcoat (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@wtplaw.com
erowe@wtplaw.com
mchilders@wtplaw.com

*Counsel For Addison Plaintiffs*

11