HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY



**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| Frederick Addison, et al.<br><br>*Plaintiffs*,<br><br>vs.<br><br>Louisiana Regional Landfill Company, et al.<br><br>*Defendants.* | Civil Action No. 19-CV-11133, 19-CV-14512 |

**EXPERT REPORT OF**

**JOSEPH T. GARDEMAL III
CPA/ABV, CVA, CFE, CDBV**

**MARCH 8, 2024**

**ALVAREZ & MARSAL DISPUTES AND INVESTIGATIONS, LLC
METROPOLITAN SQUARE, 655 15TH STREET, NW
WASHINGTON, DC 20005**





**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

## TABLE OF CONTENTS

I.      Qualifications .................................................................................................1

II.     Introduction ...................................................................................................2

III.    Assignment ...................................................................................................3

IV.     Summary of Findings......................................................................................4

V.      Background Information ..................................................................................6

VI.     Commentary on the Dienes Report...................................................................7

VII.    Critique of Dienes' Inappropriate Assumptions ..............................................9

        A. Dienes Incorrectly Assumes Damages Should Include Hypothetical Costs that
           the Trial Plaintiffs Did Not Incur..........................................................9

        B. Dienes Incorrectly Assumes that JPLF is the Sole Source of Odors that have
           Allegedly Caused the Trial Plaintiffs' Monetary Damages ...................11

        C. Dienes Incorrectly Assumes that Every Trial Plaintiff Suffered Monetary
           Damages Every Day During the Relevant Period.................................15

VIII.   Critique of Dienes' Calculation of Damages ..................................................19

        A. Lodging Costs ......................................................................................20

        B. Meal Costs ...........................................................................................24

        C. Storage and Cleaning Costs ..................................................................25

IX.     Paradise Manor .............................................................................................28

X.      Summary of Findings.....................................................................................30


Appendix A – Facts and Data Relied On

Appendix B – Curriculum Vitae



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

## I.   QUALIFICATIONS

1.   My name is Joseph T. Gardemal III, and I am a Managing Director with Alvarez & Marsal, an international consulting firm with headquarters in New York. In addition to other services, Alvarez & Marsal provides a range of analytical, investigative, and financial consulting services to law firms, corporate counsel, and company management and boards involved in complex financial disputes and investigations. Before assuming my present position in 2006, I served as a Managing Principal with The CapAnalysis Group, LLC, a financial and economic consulting firm affiliated with the law firm Howrey, LLP, and with other financial consulting and certified public accounting firms where my work also involved serving as an expert in commercial business disputes and investigations. From 1990 through 1992, I served as the Chief Fiscal Officer of the New Orleans District Attorney's Office, where my work included the investigation of economic crimes. Prior to 1990, I worked in public accounting as an auditor. I served in the United States Army from 1985 until 2005. I am a Certified Public Accountant, a Certified Valuation Analyst, a Certified Fraud Examiner, and hold a Certification in Distressed Business Valuation. I am also Accredited in Business Valuation by the American Institute of Certified Public Accountants. In 1988, I received a B.B.A. in Accounting from Loyola University in New Orleans. I am the author of several articles for professional journals and have made numerous presentations on valuation, damages, and accounting-related topics.

2.   I have served as an expert in damages, accounting, and valuation in numerous matters. In addition, I have testified before regulatory agencies, arbitration panels, and the courts, both in the United States and abroad, and have submitted several expert reports as more fully described in my curriculum vitae, which is attached as Appendix C. In addition, I served as a court-appointed valuation expert in the matter *Froelich v. Senior Campus Living, LLC* in the United States District Court for the District of Maryland.[1]

---

1   *Froelich v. Senior Campus Living, LLC*, (No. 02-2305) 355 F.3d 802 (4th Cir. 2004). In its opinion, the 4th Circuit affirmed the decision of the trial court and the $176 million valuation conclusion of the Appraisal Panel.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

3.      Since February 2021, I have served as the Court-appointed Independent Monitor over
GPB Capital, LLC, in connection with the matter *Securities and Exchange Commission
v. GPB Capital LLC, et al.*, filed in United States District Court for the Eastern District
of New York.[2] The founder of GPB and others face criminal securities fraud charges.
One defendant has pled guilty and the two remaining defendants face trial in mid-2024.
GPB raised approximately $1.8 billion from 17,000 investors and current management,
and my team have recovered over $1 billion in assets to date.

## II.      INTRODUCTION

4.      In the instant matter, Plaintiffs Reshaun Richardson, the Lewis family,[3] Jonathan Tate,
Stanley Meyers, the Gremillion family,[4] Mary Ann Winningkoff, Andrew Section, and
Geneva Green (collectively the "Trial Plaintiffs"), and certain other residents of Jefferson
Parish, Louisiana, allege that the Jefferson Parish Landfill (the "JPLF"), which is owned
by Jefferson Parish and certain portions were operated by Louisiana Regional Landfill
Company ("LRLC") (formerly known as IESI LA Landfill Corporation) and APTIM
Corporation, has persistently emitted harmful and toxic odors and chemicals into the
surrounding areas due to the Defendants' failure to design, operate, and maintain the JPLF
in compliance with applicable environmental laws.[5] Moreover, the Trial Plaintiffs allege
that, "[t]hese unlawful, harmful and toxic releases have caused Petitioners substantial loss
of the use and enjoyment of their homes and immovable property, and have caused
physical harms including, among other things: difficulties breathing, coughing, nausea,
burning eyes, ears, noses and throats, dizziness loss of appetite and lethargy, as well as

---

[2]     *Securities and Exchange Commission v. GPB Capital LLC, et al.*, (No. 21-cv-00583-MKB-VMS) U.S. District
Court for Eastern District of New York, Amended Order Appointing Monitor, April 14, 2021.

[3]     The Lewis family includes Vernice Lewis, Terrance Thompson, and Tyrone Thompson.

[4]     The Gremillion family includes Scott Gremillion, Wendy Gremillion, Adelyn Gremillion, and Braxton
Gremillion.

[5]     Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-CV-11133, 19-
CV-14512, Plaintiffs' Second Amended Omnibus Complaint for Damages and Injunctive Relief ("Second
Amended Complaint"), pp. 1-2.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

fear, anguish, discomfort and inconvenience."[6] As a result, the Trial Plaintiffs allege that they have suffered damages, including fear, anguish, and mental pain and suffering as well as loss of use and enjoyment of their immovable property.[7]

## III.   ASSIGNMENT

5.   On February 8, 2024, Malcolm M. Dienes, LLC submitted a report prepared by John W. Theriot, Jonathan A. Stoltz, and Jason R. Schellhaas (the "Dienes Report" or "Dienes") that purports to calculate the damages allegedly suffered by the Trial Plaintiffs during the period from July 1, 2017, through December 31, 2019 (the "Relevant Period"). Beveridge & Diamond P.C., counsel for defendants Louisiana Regional Landfill Company, Waste Connections US, Inc., and Waste Connections Bayou, Inc., and Connick & Connick, LLC, counsel for defendant Jefferson Parish, Louisiana ("Counsel"), retained me for this engagement.[8] Counsel requested that I review, analyze, and respond to the opinions and analysis contained in the Dienes Report. In addition, Counsel requested that I evaluate the financial performance of Paradise Manor Community Club during the period 2016 through 2019.

6.   My analysis and opinions rely upon information produced by the parties and considered by Dienes, as well as additional materials that I have obtained and reviewed independently. A list of facts and data that I have relied on in forming and rendering the opinions set forth in this report is attached at Appendix A.

7.   My opinions are based upon information available as of the date of this report. I respectfully reserve the right to supplement or amend the report, or submit a rebuttal report, should additional relevant information become available to me subsequent to its submission. I have formulated my opinions to a reasonable degree of professional

---

6   Second Amended Complaint, p. 2.

7   Second Amended Complaint, p. 63.

8   I refer to Beveridge & Diamond P.C. and Connick & Connick, LLC collectively as "Counsel."



certainty. I understand that this report may be supplemented by deposition and hearing testimony.

8.  I am compensated at the rate of $850 per hour. Alvarez & Marsal personnel assisting me in connection with my work on this matter are being billed at their standard hourly rates. No portion of the compensation related to my work is dependent on the opinions rendered or on the outcome of this matter.

## IV.   SUMMARY OF FINDINGS

9.  I have developed the following opinions regarding the Dienes Report:

  a)  Dienes relies on inappropriate assumptions that overstate any possible reasonable measure of damages. These assumption errors render the damages analysis unreliable.

    1)  Dienes incorrectly assumes that monetary damages should be measured by reference to hypothetical costs the Trial Plaintiffs <u>might have incurred</u> had they moved away from their homes despite the fact that they <u>did not incur</u> any such costs.

    2)  Dienes incorrectly assumes that JPLF is the <u>sole source</u> of the complained of odors and fails to account for or apportion the claimed damages among the other sources of such odors, including the Highway 90 Construction & Demolition Debris ("C&D") landfill and River Birch landfill.

    3)  Dienes incorrectly assumes that <u>every Trial Plaintiff</u> suffered monetary damages <u>every day</u> during the Relevant Period and ignores the Trial Plaintiffs' own expert analysis that alleges that the Trial Plaintiffs were, in the worst case, potentially impacted only 16 to 35 percent of the days in the Relevant Period. Additionally, Dienes assumes without any evidence that every Trial Plaintiff experienced chronic conditions such as <u>pulmonary disease, asthma, or COPD</u> and would have to leave the area during the Relevant Period.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

b) Even accepting the inappropriate assumptions described above, Dienes overstates any potential damages because they fail to consider a number of relevant facts, including those described below. These calculation errors render the Dienes analysis unreasonable and unreliable for purposes of estimating potential damages.

1) In calculating lodging costs, Dienes fails to consider and account for the number of days each Trial Plaintiff resided away from their homes for non-odor related reasons during the Relevant Period. This error overstates any potential damages.

2) Also, in their calculation of lodging costs, Dienes fails to consider the fact that, during the Relevant Period, three of the thirteen Trial Plaintiffs resided in rental properties from which they could have moved immediately without incurring additional lodging costs. For these Trial Plaintiffs, the lodging costs should be rejected in their entirety.

3) Also, in their calculation of lodging costs, Dienes fails to consider that Trial Plaintiffs could have moved to a rental property that was less expensive than an extended stay facility (e.g., to a rental property similar to their then-current property). Moreover, Dienes incorrectly relies on the cost of the extended stay facility from January 2024 instead of the cost during the Relevant Period. These errors overstate any potential damages.

4) In their calculation of meal costs, Dienes fails to consider the fact that Trial Plaintiffs would have incurred meal costs regardless of any odors that they were exposed to during the Relevant Period. Therefore, these estimated damages should be rejected in their entirety.[9]

---

[9] Dienes also calculates meal costs of $3,061 for Ms. Winningkoff's husband, even though he is not a Trial Plaintiff. Dienes Report, p. 20.

HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

5) Dienes fails to consider the fact that Trial Plaintiffs do not seek physical property damages and that the Court did not allow recovery for any physical property damage in its General Causation decision,[10] including odor-related damages to physical property such as furniture, drapes, and carpets. Therefore, Dienes' estimate of damages for storage and cleaning costs should be rejected in its entirety. Moreover, Dienes incorrectly relies on estimated storage and cleaning costs from January 2024 instead of costs during the Relevant Period. This error overstates any potential damages even if the Trial Plaintiffs could be awarded storage and cleaning costs.

10. Based on my review of financial data for the Paradise Manor Community Club, located in Jefferson Parish and the alleged impact area, I determined that there was no decline in its revenue from 2016, the full year before the Relevant Period, to 2019, the end of the Relevant Period, indicating that any alleged odors from JPLF or any other source did not have any significant impact on its operations, and thus its members' use of the Paradise Manor Community Club.

## V.   BACKGROUND INFORMATION

11. Jefferson Parish is a municipal parish in the state of Louisiana.[11] Jefferson Parish owns the JPLF located at 5800 Highway 90 West, Avondale, Jefferson Parish, LA.[12] JPLF has been used as a Type I/II landfill permitted to accept municipal and commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste,

---

[10]   Elias Jorge "George" Ictech-Bendeck v. Waste Connections Bayou, Inc. et al., Civil Action No. 18-7880, 18-8071, 18-8218, 18-9312 and Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, 19-14512: Court Order, March 23, 2021, p. 1. The court order also states that Dr. Susan Schiffman will be allowed to testify at the Daubert hearing on general causation with respect to her opinion that odors permeating fabrics and textiles within the Plaintiffs' homes caused higher concentrations of odors indoors.

[11]   Jefferson Parish Profile. Accessed March 7, 2024: https://www.louisiana.gov/local-louisiana/jefferson-parish.

[12]   Contract to Provide Services to Operate, Manage, and Maintain the Jefferson Parish Sanitary Landfill Site between IESI LA Landfill Corporation and The Parish of Jefferson dated May 17, 2012.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste.[13]

12. In May 2012, LRLC entered into a contract with Jefferson Parish to "manage all tasks of the operation, management and maintenance" of JPLF.[14] During the period from May 2013 to December 2020, LRLC operated certain portions of JPLF.[15] In addition, from July 2017 to May 2019, APTIM Corporation managed the gas and leachate collection system of JPLF.[16]

13. Plaintiffs allege that JPLF has persistently emitted harmful and toxic odors and chemicals into the surrounding areas.[17] In November 2022, the Hon. Susie Morgan, Judge in the United States District Court for the Eastern District of Louisiana, determined that July 1, 2017, through December 31, 2019, is the Relevant Period.[18]

## VI.   COMMENTARY ON THE DIENES REPORT

14. Dienes assumes that: 1) "the [Trial Plaintiffs] analyzed in this report were impacted by the actions of the defendants and are owed damages as a result of the defendant's actions," 2) "the jury will find that a potential measure of damages for personal injury as a result of the odors is based on the costs that the [Trial] Plaintiffs would have incurred had they been able to move away from the odors," and 3) "[t]he lodging costs are owed whether

---

13  Second Amended Complaint, p. 53.

14  Contract to Provide Services to Operate, Manage, and Maintain the Jefferson Parish Sanitary Landfill Site between IESI LA Landfill Corporation and The Parish of Jefferson dated May 17, 2012, p. 5.

15  Elias Jorge "George" Ictech-Bendeck v. Waste Connections Bayou, Inc. et al., Civil Action No. 18-7880, 18-8071, 18-8218, 18-9312 and Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, 19-14512: Findings of Fact and Conclusions of Law, November 29, 2022, p. 2.

16  Ibid.

17  Second Amended Complaint, pp. 1-2.

18  Elias Jorge "George" Ictech-Bendeck v. Waste Connections Bayou, Inc. et al., Civil Action No. 18-7880, 18-8071, 18-8218, 18-9312 and Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, 19-14512: Findings of Fact and Conclusions of Law, November 29, 2022, p. 1.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

the [Trial] Plaintiff owned their home or was renting during the relevant time period."[19] Based on these assumptions, Dienes attempts to estimate the Trial Plaintiffs' alleged damages by calculating the following costs:

a)  Lodging costs for temporary lodging away from the area impacted by the odors;

b)  Replacement costs of meals;

c)  Moving and storage costs for furniture and personal property; and

d)  Cleaning costs at the end of the Relevant Period.[20]

15.  Using these assumptions, Dienes estimates damages totaling $779,654, as summarized in the table below.

**Summary of Alleged Damages as Estimated in the Dienes Report**

| Plaintiff | Lodging | | Meals | | Storage | | Cleaning | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| Richardson, Reshaun | $ | 53,237 | $ | 7,719 | $ | 8,370 | $ | 1,888 | $ | 71,214 |
| Lewis Family | | 106,475 | | 26,511 | | 8,370 | | 1,753 | | 143,109 |
| Tate, Jonathan | | 53,237 | | 9,062 | | 8,370 | | 1,296 | | 71,965 |
| Meyers, Stanley | | 53,237 | | 8,505 | | 8,370 | | 1,852 | | 71,964 |
| Germillion Family | | 159,712 | | 31,101 | | 8,370 | | 3,149 | | 202,332 |
| Winningkoff, Mary Ann | | 53,237 | | 10,588 | | 8,370 | | 2,099 | | 74,294 |
| Section, Andrew | | 53,237 | | 8,505 | | 8,370 | | 2,838 | | 72,950 |
| Green, Geneva | | 53,237 | | 7,631 | | 8,370 | | 2,588 | | 71,826 |
| **Total** | **$** | **585,609** | **$** | **109,622** | **$** | **66,960** | **$** | **17,463** | **$** | **779,654** |

**Table 1**

---

[19]  Dienes Report, p. 5.

[20]  Ibid.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

## VII.  CRITIQUE OF DIENES' INAPPROPRIATE ASSUMPTIONS

16.  Dienes relies on inappropriate assumptions that overstate any reasonable measure of damages, to the extent that any damages exist. These assumption errors render the damages analysis unreliable as described below:

   a)  Dienes incorrectly assumes that monetary damages should be measured by reference to hypothetical costs the Trial Plaintiffs <u>might have incurred</u> had they moved away from their homes despite the fact that they <u>did not incur</u> any such costs.

   b)  Dienes incorrectly assumes that JPLF is the <u>sole source</u> of the complained of odors and fails to account for or apportion the claimed damages among the other sources of such odors, including the Highway 90 C&D landfill and River Birch landfill.

   c)  Dienes incorrectly assumes that <u>every Trial Plaintiff</u> suffered monetary damages <u>every day</u> during the Relevant Period and ignores the Trial Plaintiffs' own expert analysis that alleges that the Trial Plaintiffs were, in the worst case, potentially impacted only 16 to 35 percent of the days in the Relevant Period. Additionally, Dienes assumes without any evidence that every Trial Plaintiff experienced chronic conditions such as <u>pulmonary disease, asthma, or COPD</u> and would have to leave the area during the Relevant Period.

   **A.   Dienes Incorrectly Assumes Damages Should Include Hypothetical Costs that the Trial Plaintiffs Did Not Incur**

17.  As noted above, Dienes assumes that: 1) "the [Trial] Plaintiffs analyzed in this report were impacted by the actions of the defendants and are owed damages as a result of the defendant's actions," and 2) "the jury will find that a potential measure of damages for personal injury as a result of the odors is based on the costs that the [Trial] Plaintiffs would have incurred had they been able to move away from the odors."[21] For damages to be awarded, the requirement that plaintiffs suffer an actual loss is a well-established principle, and estimating actual loss is a generally accepted method for assessing potential

---

[21]  Dienes Report, p. 5.



HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

economic damages. The *Comprehensive Guide to Economic Damages*, a generally accepted, extensive body of knowledge that combines: 1) the economic expert's knowledge of damages calculations and methods with 2) legal and case analysis, states:

> Compensatory damages, commonly known as actual damages, are the damages that are necessary to make a plaintiff whole for harm that it suffered as a result of a defendant's wrongdoing.[22]

18.  Additionally, Louisiana courts have stated that:

> Compensatory damages encompass those damages "designed to place the plaintiff in the position in which he would have been if the tort had not been committed."[23]

19.  Dienes assumes that damages may be measured, in part, by the costs that Trial Plaintiffs might have incurred had they moved away from the area during the entire Relevant Period. Even if this was the generally accepted method for assessing damages, which it is not, Trial Plaintiffs never incurred any of these costs. To the extent that Plaintiffs did not incur any of the costs estimated by Dienes, they have experienced no actual losses and therefore have no entitlement to compensatory damages. In other words, but for the alleged odors from JPLF, Trial Plaintiffs would be in no different position than they are today. As a result, an award of these damages would result in a windfall to the Trial Plaintiffs as they would receive compensation for costs not incurred. Due to this inappropriate assumption, Dienes' estimate of damages should be rejected.

---

[22] Fannon, Nancy J., Dunitz, Jonathan M., *The Comprehensive Guide to Economic Damages*, Vol 1, Chapter 24: Franchise and Dealership Litigation Damages, p. 466.

[23] Frank L. Maraist Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-1 (Michie 1996).



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

### B.   Dienes Incorrectly Assumes that JPLF is the Sole Source of Odors that have Allegedly Caused the Trial Plaintiffs' Monetary Damages

20.   The need to isolate the impact of the alleged improper conduct from potential impacts resulting from intervening causes is well established and the generally accepted method for assessing potential economic damages. The *Litigation Services Handbook, the Role of the Financial Expert*, an often-cited treatise on the study of economic damages, states:

> If a damages analysis includes the effects not caused by the defendant, it is a defective analysis. It has not followed the standard format for damages, which, by its nature, isolates the effects of the harmful act on the plaintiff. The proper response is not for the expert to disaggregate, but rather to carry out a valid damages analysis that includes only damages and not the effects of other events.[24]

21.   When determining whether expert testimony is sufficiently reliable, courts have also found that the trier of fact should consider whether the expert has adequately accounted for obvious alternative explanations for the  alleged harm.[25] Accordingly, in calculating damages, "even where a damages expert does not undertake to prove causation, he or she, as part of setting up the damages calculation, must decide what losses can be attributed to the alleged (or assumed) cause and what losses must be excluded."[26]

22.   In this case, the estimates produced by Dienes fail to consider independent intervening causes of odor in Jefferson Parish that would impact Trial Plaintiffs' damages estimate.

---

[24] Weil, Roman L., Wagner, Michael J., and Frank, Peter B., *Litigation Services Handbook, The Role of the Financial Expert,* Third Ed., Chapter 5: "Issues Common To Most Damages Studies," p. 21.

[25] *See Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994).

[26] Greg J. Regan, and Christopher J. Lovrien, J.D., Dunn on Damages, Causation Scenarios for the Damages Expert, Winter 2011, p. 20.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

23. Dienes' assumption that, "the jury will find that a potential measure of damages for personal injury as a result of the odors is based on the costs that the [Trial] Plaintiffs would have incurred had they been able to move away from the odors,"[27] is based in part on a press conference on July 23, 2018, during which Jefferson Parish, "admitted that [JPLF] was a major source of the odors suffered by the [Trial] Plaintiffs."[28] However, during this event, Councilman Paul Johnston also indicated that JPLF was not the only potential source of odors in the area. Mr. Johnston stated, "I think we have other odors around the area that are causing problems…I think we have issues in the area with chemical plants [and] loading grain [operations]."[29] Additionally, expert analysis of Dr. Paolo Zannetti, the President and Founder of The EnviroComp Institute, indicates that odors experienced by the Trial Plaintiffs were caused by multiple sources - JPLF, Highway 90 C&D landfill, and/or River Birch landfill, as described below.

24. In November 2022, the Hon. Susie Morgan concluded that, "the Court finds the exposure at which people generally are able to smell hydrogen sulfide and which is capable of causing a reaction in those exposed is an average exposure over a thirty-minute period of at least 5 [parts per billion ('ppb')]."  Dr. Zannetti in his report dated March 8, 2024, modeled and estimated the number of potential "odor events" (i.e., a thirty-minute period of an average hydrogen sulfide concentration greater than 5 ppb) at the Trial Plaintiffs' locations during the Relevant Period based on hydrogen sulfide emissions from the JPLF. Dr. Zannetti also modeled hydrogen sulfide emissions from the Highway 90 C&D landfill and the River Birch landfill. With respect to emissions from the JPLF only, Dr. Zannetti concluded that, in the 43,870 30-minute periods within the Relevant Period:[30]

---

27  Dienes Report, p. 5.

28  Ibid.

29  Jefferson Parish Press Conference held by Jefferson Parish President Mike Yenni on July 23, 2018.

30  According to Dr. Zannetti's model, there were 8,932 30-minute intervals from July 1,2017 to December 31, 2017, 17,520 30-minute intervals in 2018, and 17,518 30-minute intervals in 2019, totaling 43,870 intervals. Expert Report of Dr. Paolo Zannetti dated March 8, 2014, p. 55.

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

a) Trial Plaintiffs Richardson, Lewis, Tate, Gremillion, and Myers did not experience any "odor event" caused by JPLF individually during the Relevant Period;

b) Trial Plaintiff Winningkoff experienced 2 "odor event" (i.e., 0.005 percent of the total 43,870 30-minute periods) caused by JPLF individually during the Relevant Period;

c) Trial Plaintiff Green experienced 34 "odor events" (i.e., 0.08 percent of the total 43,870 30-minute periods) caused by JPLF individually during the Relevant Period; and

d) Trial Plaintiff Section experienced 5 "odor events" (i.e., 0.01 percent of the total 43,870 30-minute periods) caused by JPLF individually during the Relevant Period.[31]

25. In contrast, James F. Lape, an expert hired by Trial Plaintiffs, measured the number of "odor events" at the Trial Plaintiffs' locations during the Relevant Period at a significantly higher rate, as shown in the table below:[32]

**Zannetti v. Lape's Modeling: The No. of Odor Events at Plaintiffs' Locations from July '17 – Dec '2019**

| Plaintiff | Zannetti's Report | | | | Lape Report | |
|---|---|---|---|---|---|---|
| | Total # of Odor Events from All 3 Landfills | # of Odor Events caused by HWY 90 C&D Individually | # of Odor Events caused by River Birch Individually | # of Odor Events caused by JPLF Individually | # of Odor Events caused by JPLF | Difference in # of Odor Events caused by JPLF |
| | [A] | [B] | [C] | [D] | [E] | [F] = [D] / [E] - 1 |
| Richardson | 14 | 9 | 0 | 0 | 413 | -100% |
| Thompson/Lewis | 9 | 7 | 0 | 0 | 302 | -100% |
| Tate | 46 | 26 | 0 | 0 | 1,059 | -100% |
| Gremillion | 43 | 34 | 0 | 0 | 701 | -100% |
| Meyers | 25 | 20 | 0 | 0 | 464 | -100% |
| Winningkoff | 447 | 397 | 0 | 2 | 830 | -100% |
| Green | 962 | 867 | 0 | 34 | 973 | -97% |
| Section | 320 | 247 | 0 | 5 | 551 | -99% |

**Table 2**[33]

---

[31] Expert Report of Dr. Paolo Zannetti dated March 8, 2024, Tables 8 - 11.

[32] Expert Report of James Lape dated February 16, 2024, Tables 4 - 6.

[33] "Individually" refers to Dr. Zannetti's CALPUFF model predicting an "odor event" of at least 5 ppb from the referenced landfill, alone. Expert Report of Dr. Paolo Zannetti dated March 8, 2024, Tables 8 – 11 and Expert Report of James Lape dated February 16, 2024, Tables 4-6.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

26. However, Mr. Lape in his analysis does not account for odors from sources other than JPLF. Dr. Zannetti critiques Mr. Lape as follows:

> In addition to his use of JPLF emission rates that are unreasonably high, Lape ignored the emissions from sources other than the JPLF. This includes the other two landfills immediately adjacent to the JPLF—with emissions that are even larger than those from JPLF…
>
> My conclusion is that the choice of Lape to focus only on JPLF emissions is incorrect and his concentration simulations cannot explain the complexity of the combined emissions from the three landfills. By simulating only JPLF emissions, Lape introduces a very incorrect presumptive, *a priori* scenario, i.e., the implication that all concentration impacts can be explained solely by the contribution of JPLF. This scenario is clearly incorrect.[34]

27. Like Mr. Lape, Dienes incorrectly assumes that damages flowed only from JPLF. For example, they assume that Trial Plaintiffs would leave the area and incur lodging costs on account of odors only from JPLF and not from Highway 90 C&D landfill or River Birch landfill. Similarly, Dienes assumes that Trial Plaintiffs need to clean their house and incur cleaning costs on account of odors only from JPLF and not from Highway 90 C&D landfill or River Birch landfill. In fact, based on the expert analysis of Dr. Zannetti, the calculations performed by Dienes relate to several sources including JPLF, Highway 90 C&D landfill, and River Birch landfill. At best, only 0.08 percent of the dollar value calculated by Dienes flowed from "odor events" by JPLF emissions. Dienes' estimate of damages should be rejected because it fails to attribute any portion of the alleged damages to the other potential sources of odors.

---

[34] Expert Report of Dr. Paolo Zannetti dated March 8, 2024, p. 82.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

### C.    Dienes Incorrectly Assumes that Every Trial Plaintiff Suffered Monetary Damages Every Day During the Relevant Period

28.    Dienes assumes that, "the jury will find that a potential measure of damages for personal injury as a result of the odors is based on the costs that the [Trial] Plaintiffs would have incurred had they been able to move away from the odors."[35] Dienes states that this assumption is based on a July 2018 recommendation by Dr. Joseph Kanter, then medical director and administrator for Region 1 of the Louisiana Department of Health, that, "residents should, if they are able to, leave the area."[36]

29.    However, Dienes fails to accurately describe Dr. Kanter's statement. During the July 23, 2018, press conference, Dr. Kanter stated, "<u>when the odors are at a high level</u>… residents should, if they are able to, leave the area <u>particularly if they have certain chronic conditions that put them at increased risk mainly pulmonary disease, asthma, COPD…</u>"[37] Further, prior to the issuance of the Dienes Report, Dr. Kanter had the opportunity to clearly explain his recommendation:

> To the best of my recollection, what I had attempted to communicate there was that certain people who are predisposed to exacerbations of chronic conditions, usually pulmonary conditions, asthma and COPD, that can be exacerbated by noxious odors, that those individuals, when the odors are bad, if they can leave, that's feasible that they should do so.[38]

---

[35]    Dienes Report, p. 5.

[36]    Ibid.

[37]    Jefferson Parish Press Conference held by Jefferson Parish President Mike Yenni on July 23, 2018.

[38]    Deposition of Joseph Kanter, MD, MPH, dated January 25, 2024, p. 60.



| HIGHLY CONFIDENTIAL |
| ATTORNEYS' EYES ONLY |

30.     Given the actual statement made by Dr. Kanter in July 2018, Dienes' assumption that all Trial Plaintiffs had been advised to leave the area during the entire Relevant Period is unreasonable. Dienes notes no evidence to support an assumption that odors, whether from JPLF or other sources, were "at a high level" throughout the Relevant Period.

31.     Trial Plaintiffs' own expert analysis in this case directly rebuts this assumption that odors were "at a high level" throughout the Relevant Period. James F. Lape, an expert hired by Trial Plaintiffs, measured the number of days with an "odor event" (i.e., a thirty-minute period of at least 5 ppb) at the Trial Plaintiffs' locations during the Relevant Period and concluded that Trial Plaintiffs were potentially impacted, by at least one 30 minute odor period in a day, only 16 percent to 35 percent of the total number of days during the Relevant Period.[39]

**Lape's Modeling: The Number of Days with an Odor Event at Plaintiffs' Locations from July '17 - Dec '2019**

| Plaintiff | Jul - Dec 2017 | Jan - Dec 2018 | Jan - Dec 2019 | Total # of Days with Odor Events | Total # of Days During the Relevant Period | % of Days with Odor Events During the Relevant Period |
|---|---|---|---|---|---|---|
| | [A] | [B] | [C] | [D] = [A]+[B]+[C] | [F] | [G] = [D] / [F] |
| Richardson | 36 | 89 | 56 | 181 | 914 | 20% |
| Lewis | 27 | 76 | 46 | 149 | 914 | 16% |
| Tate | 69 | 147 | 106 | 322 | 914 | 35% |
| Gremillion | 66 | 121 | 63 | 250 | 914 | 27% |
| Meyers | 52 | 97 | 45 | 194 | 914 | 21% |
| Winningkoff | 63 | 119 | 86 | 268 | 914 | 29% |
| Green | 63 | 132 | 100 | 295 | 914 | 32% |
| Section | 53 | 102 | 73 | 228 | 914 | 25% |

**Table 3**[40]

---

[39]   Expert Report of James Lape dated February 16, 2024, Tables 7-9.

[40]   Mr. Lape's analysis also indicates that "odor events" occurred less frequently in the fall and winter months of October through March compared to the spring and summer months of April through September. In the Relevant Period, of the total days with "odor events", 31 percent are in the fall and winter months of October through March compared to 69 percent in the spring and summer months of April through September. [Expert Report of James Lape dated February 16, 2024, Tables 7-9].



HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

32.   First, there is no evidence that an average of 5 ppb for 30 minutes is a "high level." But, even assuming that such a level is "high" and that Trial Plaintiffs' own expert modeling and analysis is accurate, then at most the Trial Plaintiffs were only potentially impacted 16 to 35 percent of the total number of days in the Relevant Period (which also assumes they were at their residence during each "odor event"). Yet, Dienes incorrectly assumes that the Trial Plaintiffs suffered damages every day during the Relevant Period. To the extent that the Trial Plaintiffs did not experience an "odor event" on specific days within the Relevant Period, there would be no need to "leave the area" for those specific days, even assuming that they met the "chronic conditions" criterion described by Dr. Kanter. Therefore, lodging costs would not have been incurred during those non-event days. When Dienes' lodging costs are adjusted to exclude the non-odor event days identified by the Trial Plaintiffs' expert, lodging costs are reduced from $585,609 to $141,189 as shown in the table below.

**Summary of Revised Lodging Costs Attributable to Odor Events Identified by James Lape**

| Plaintiff | Lodging Costs per Dienes Report | % of Days with Odor Events During the Relevant Period per James Lape | Revised Lodging Costs per Dienes Report |
|---|---|---|---|
| Richardson, Reshaun | $    53,237 | 20% | $    10,543 |
| Lewis Family | 106,475 | 16% | 17,358 |
| Tate, Jonathan | 53,237 | 35% | 18,755 |
| Meyers, Stanley | 53,237 | 27% | 14,562 |
| Germillion Family | 159,712 | 21% | 33,899 |
| Winningkoff, Mary Ann | 53,237 | 29% | 15,610 |
| Section, Andrew | 53,237 | 32% | 17,183 |
| Green, Geneva | 53,237 | 25% | 13,280 |
| **Total** | **$    585,609** | | **$    141,189** |

**Table 4**

33.   Additionally, Dienes, in calculating the adjusted lodging costs in Table 4, assumes that the Trial Plaintiffs suffered damages on all days when the odors exceeded the 5 ppb



threshold set by the Court as <u>capable of causing</u> a reaction in those exposed.[41]  Dr. John Kind, Principal Toxicologist at CTEH, in his report dated March 8, 2024, states that:

> [G]uidance values for hydrogen sulfide exposures, including the [World Health Organization] odor nuisance value of 5 ppb for 30 minutes, are inherently conservative and risk protective. The [C]ourt's general causation standard, which tracks the WHO guidance level, does not establish that any of the trial Plaintiffs in fact experienced health conditions or annoyance caused by exposure to hydrogen sulfide emissions modeled by the experts in this case because it is unlikely that the 13 trial Plaintiffs would fall within the 5% of the population that would be bothered by such concentrations.[42]

34.  Given Dr. Kind's conclusion that it is less likely that Trial Plaintiffs will experience health conditions or annoyance on account of "odor events" and, as a result, suffer damages, Dienes' adjusted lodging costs of $141,189 shown in Table 4, are overstated.

35.  In addition, in calculating damages, Dienes implicitly assumes every Trial Plaintiff experienced one of the chronic conditions listed by Dr. Kanter, and, as a result, incorrectly calculates the hypothetical costs that every Trial Plaintiff would have incurred to leave the area during the Relevant Period.[43] However, Dienes references no evidence to indicate which, if any, of the Trial Plaintiffs experienced one or more of the chronic conditions identified by Dr. Kanter. If the Trial Plaintiffs did not have a chronic condition

---

[41]  Elias Jorge "George" Ictech-Bendeck v. Waste Connections Bayou, Inc. et al., Civil Action No. 18-7880, 18-8071, 18-8218, 18-9312 and Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, 19-14512: Findings of Fact and Conclusions of Law, November 29, 2022, p. 31.

[42]  Expert Report of Dr. John Kind dated March 8, 2024.

[43]  Dienes Report, p. 5.



HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

listed by Dr. Kanter, then there would be no need to "leave the area" as recommended by Dr. Kanter and therefore lodging costs would not be applicable to the Trial Plaintiffs.

36.     In summary, Dienes incorrectly assumes that every Trial Plaintiff would incur lodging costs every day during the Relevant Period, notwithstanding: 1) the fact that the Trial Plaintiffs' own expert acknowledges that there were no events requiring relocation on the vast majority of days during the Relevant Period, and 2) the lack of evidence that any of the Trial Plaintiffs experienced any of the chronic conditions that Dr. Kanter identified as those giving rise to a potential need to relocate during those impacted periods. Even accepting that it is appropriate to award lodging costs, which I do not as explained above, the lodging costs are:

　　　a)   At a minimum, reduced from $585,609 to $141,189, when non-odor event days identified by Mr. Lape are excluded; or

　　　b)   Eliminated in their entirety if none of the Trial Plaintiffs experienced a chronic condition and therefore had no reason to "leave the area" as recommended by Dr. Kanter.

## VIII.   CRITIQUE OF DIENES' CALCULATION OF DAMAGES

37.     Even accepting, which I do not, the inappropriate assumptions and employment of a methodology not generally accepted as described in Section VII above, Dienes overstates any potential damages because they fail to consider the relevant factors described below. These calculation errors render the Dienes analysis unreasonable and unreliable for purposes of estimating potential damages.

　　　a)   First, in calculating lodging costs, Dienes fails to consider and account for the number of days each Trial Plaintiff resided away from their homes for non-odor related reasons during the Relevant Period. This error overstates any potential damages.

　　　b)   Second, also in their calculation of lodging costs, Dienes fails to consider the fact that three of the thirteen Trial Plaintiffs resided in rental properties from which they could have moved immediately without incurring additional lodging costs during the



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

Relevant Period. For these Trial Plaintiffs, the lodging costs should be rejected in their entirety.

c) Third, in their calculation of lodging costs, Dienes fails to consider that Trial Plaintiffs could have moved to a rental property that was less expensive than an extended stay facility (e.g., to a rental property similar to their then-current property). Moreover, Dienes incorrectly relies on the cost of the extended stay facility from January 2024 instead of the cost during the Relevant Period. These errors overstate any potential damages.

d) Fourth, Dienes fails to consider the fact that Trial Plaintiffs would have incurred meal costs regardless of any odors that they were exposed to during the Relevant Period. These purposed damages should be rejected in their entirety.

e) Finally, Dienes fails to consider the fact that the Court rejected any claims of physical property damages in its General Causation decision, including odor-related damages to physical property such as furniture, drapes, and carpets.[44] Therefore, Dienes' estimate of damages for storage and cleaning costs should be rejected in its entirety.

### A.  Lodging Costs

38. Dienes states that, "[a]ssuming that the jury were to find that lodging costs are an appropriate measure of damages related to the exposure of odors suffered by the [Trial] Plaintiffs, we computed what we believe to be reasonable costs of this lodging that would have been incurred had the [Trial Plaintiffs'] been able to utilize such lodging."[45] As a result, Dienes estimated total lodging costs to be $585,609.[46] This is based on an

---

[44] Elias Jorge "George" Ictech-Bendeck v. Waste Connections Bayou, Inc. et al., Civil Action No. 18-7880, 18-8071, 18-8218, 18-9312 and Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, 19-14512: Court Order, March 23, 2021, p. 1. The court order also states that Dr. Susan Schiffman will be allowed to testify at the Daubert hearing on general causation with respect to her opinion that odors permeating fabrics and textiles within the Plaintiffs' homes caused higher concentrations of odors indoors.

[45] Dienes Report, p. 5.

[46] Dienes Report, p. 6.



estimated daily lodging rate of $58 multiplied by the estimated number of rooms for each Trial Plaintiff and the total number of days during the Relevant Period.[47]

39.   However, Dienes fails to consider and account for the days each Trial Plaintiff resided away from his/her home during the Relevant Period. For example, Jonathan Tate was deployed away from his home for military duties and training on behalf of the National Guard for one week or more over the following dates within the Relevant Period:

   a)   July 10, 2017, to July 24, 2017.

   b)   August 27, 2017, to September 5, 2017.

   c)   End of May 2018 to early June 2018 for three weeks.

   d)   End of May 2019 to early June 2019 for four weeks.[48]

40.   Dienes incorrectly calculates lodging costs for Mr. Tate during the entire Relevant Period, even for days when he resided at a location other than his home in Jefferson Parish. Also, Adelyn Gremillion, attended a two-week sleep away camp every summer and her parents Scott and Wendy Gremillion would, at times, take a vacation for a few days when dropping their daughter at summer camp.[49] Tyrone Thompson and Vernice Lewis took a week-long cruise in 2018.[50] Similarly, Dienes does not consider whether any of the other Trial Plaintiffs resided away from their homes in Jefferson Parish during the Relevant Period.  Because the Trial Plaintiffs could not have been impacted by the

---

[47]   Dienes Report, Exhibits.

[48]   Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, c/w 19-14512, Plaintiff Jonathan Tate's Objections and Responses to the Waste Connections Defendants Third Supplemental Set of Interrogatories, Response to Interrogatory No. 1.

[49]   Deposition of Wendy Gremillion dated June 7, 2023, pp. 64 – 66.

[50]   Deposition of Tyrone Thompson dated June 2, 2023, pp. 72 – 74, and Deposition of Vernice Lewis dated November 29, 2023, pp. 70 - 71.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

complained of odors (from any source) during these periods, Dienes' failure to exclude these periods renders their damages analysis overstated and unreliable.

41. Dienes also incorrectly calculates lodging costs for the Trial Plaintiffs who rented property during the Relevant Period. According to Dienes, "[t]he lodging costs are owed whether the [P]laintiff owned their home or was renting during the relevant time period."[51] Three of the thirteen Trial Plaintiffs rented the property in which they resided as described below:

a) <u>Stanley Meyers:</u> Claims to have rented an apartment at 2100 Sawmill Rd, Apartment 12-101, in River Ridge, LA, during the Relevant Period.[52] However, Stephanie Brooks, Mr. Meyers' then girlfriend, was the only named tenant on the lease agreement.[53]

b) <u>Reshaun Richardson</u>: Rented an apartment at 624 Wilker Neal St. in River Ridge, LA, during the Relevant Period.[54] Her lease started as a one-year lease and then converted to a month-to-month lease in February 2015.[55] Therefore, throughout the Relevant Period, Ms. Richardson was renting on a month-to-month lease.

---

[51] Dienes Report, p. 5.

[52] Deposition of Stanley Meyers dated April 20, 2023, pp. 16 and 21. Deposition of Stephanie Brooks dated December 4, 2023, pp. 14 - 15.

[53] Rental agreement between 1st Lake Properties, Inc., as agent for Sawmill Creek, and Stephanie Brooks for an apartment located at 2100 Sawmill Rd, River Ridge, LA, dated May 9, 2018.

[54] Rental agreement between D & A Property Management, Inc., and Reshaun Richardson for an apartment located at 624 Wilker Neal St, River Ridge, LA, dated February 10, 2014.

[55] Rental agreement between D & A Property Management, Inc., and Reshaun Richardson for an apartment located at 624 Wilker Neal St, River Ridge, LA, dated February 10, 2014, and Deposition of Douglas Brown, Landlord of Reshaun Richardson, dated January 26, 2024, pp. 47 - 48.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

c) <u>Jonathan Tate</u>: Resided at 21 Richelle St in Waggaman, LA, during the Relevant Period.[56] When Mr. Tate first moved into the house, he was living with his grandparents.[57] His grandparents have since moved out while Mr. Tate continued to live there. However, the lease is still in his grandparents' name.[58]

42. Given the lack of lease agreements in their names and the month-to-month lease agreement, the above three Trial Plaintiffs could have left the area during the Relevant Period without incurring additional lodging costs. Therefore, damages for the above three Trial Plaintiffs should not include any lodging costs.

43. Additionally, Dienes assumes that each of the Trial Plaintiffs would have moved to an extended stay facility for the entirety of the Relevant Period and calculates lodging costs based on a monthly rate of approximately $1,740 per room[59] as of January 2024.[60] Given the fact that he assumes the Trial Plaintiffs would have left the area for approximately 2.5 years, Dienes should have considered whether the Trial Plaintiffs could have moved to a comparable rental property, rather than an extended stay facility. According to the United States Census Bureau, the median gross rent in Jefferson Parish is only $1,121 per month from 2018 to 2022.[61] Even assuming that Trial Plaintiffs should be paid any amount for lodging costs that they did not incur, Dienes' 2.5 years of lodging costs are overstated because they are based on lodging rates at a higher-priced extended stay facility rather than on the more appropriate comparable rental costs for each Trial

---

[56]   Deposition of Jonathan Tate dated April 4, 2023, p. 40.

[57]   Ibid.

[58]   Deposition of Jonathan Tate dated April 4, 2023, p. 61.

[59]   Dienes assumes that the Gremillion family would occupy three rooms while the Lewis family would occupy two rooms.

[60]   Printouts of daily and monthly rates from extendedstayamerica.com and bookings.com as of January 11, 2024, provided by Dienes in copyroom@mmdcpa.net_20240228_155950.pdf.

[61]   United States Census Bureau QuickFacts: Jefferson Parish, Louisiana. Accessed March 7, 2024: https://www.census.gov/quickfacts/fact/table/jeffersonparishlouisiana/PST045222



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

Plaintiff. Even if all Trial Plaintiffs could be awarded lodging costs based on the cost for an extended stay facility, Dienes incorrectly relies on the cost of the extended stay facility from January 2024 instead of the cost during the Relevant Period.[62] Since the Relevant Period, the average daily rates for extended stay facilities have increased. For example, the average daily rates of Woodspring Suites Domestic System's extended stay facilities increased from $47 per room in 2019 to $58 per room in 2022, an increase of 23 percent.[63] By ignoring the increase in room rates and relying on the higher cost of an extended stay facility from January 2024 instead of the cost during the Relevant Period, Dienes overstates damages.

44.    In summary, Dienes' estimate of damages for lodging costs is calculated incorrectly and overstated because: 1) Dienes fails to consider and account for the number of days each Trial Plaintiff resided away from their homes during the Relevant Period for reasons unrelated to odors, 2) Dienes fails to consider the fact that three of the thirteen Trial Plaintiffs resided in rental properties from which they could have moved out without incurring additional lodging costs, 3) Dienes fails to consider that the Trial Plaintiffs could have moved to a comparable rental property at a lesser cost rather than an "average" extended stay facility, and 4) Dienes fails to consider the cost of the extended stay facility during the Relevant Period and relies on costs from January 2024, which have increased significantly since the Relevant Period.

### B.    Meal Costs

45.    According to Dienes, "[they were] asked to assume that a measure of damages in this case is cost of meals that would have been incurred while using the extended stay

---

62   Printouts of daily and monthly rates from extendedstayamerica.com and bookings.com as of January 11, 2024, provided by Dienes in copyroom@mmdcpa.net_20240228_155950.pdf.

63   Choice Hotels International, Inc.'s Form 10-K, pp. 13 – 15.



**HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY**

lodging."[64] As a result, Dienes estimates total meal costs to be $109,622.[65] Notwithstanding the fact that none of the Trial Plaintiffs actually incurred any of this estimated cost because they did not relocate, the Dienes analysis is necessarily based on the assumption that, but for the odors from JPLF (or any other source), Trial Plaintiffs would not have incurred meal costs, which lacks any reasonable basis in reality.

46. As I explain above, Louisiana courts have stated that compensatory damages encompass those damages "designed to place the plaintiff in the position in which he would have been if the tort had not been committed."[66] [67] Meals are essential for any individual regardless of whether that individual experienced an odor or not, and the costs of such meals are not avoidable. Had the emissions of odor from JPLF (or any other source) not occurred during the Relevant Period, Trial Plaintiffs would have still incurred costs for meals. As a result, these alleged damages should be disregarded in their entirety.[68]

### C.    Storage and Cleaning Costs

47. According to Dienes, "[a]ssuming that the jury were to find that storage costs are an appropriate measure of damages for the exposure of odors suffered by the [Trial]

---

[64]  Dienes Report, p. 6.

[65]  Ibid. Dienes also calculates meal costs of $3,061 for Ms. Winningkoff's husband, even though he is not a Trial Plaintiff. Dienes Report, p. 20.

[66]  Frank L. Maraist Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-1 (Michie 1996).

[67]  Also, *The Comprehensive Guide to Damages* states, "Compensatory damages, commonly known as actual damages, are the damages that are necessary to make a plaintiff whole for harm that it suffered as a result of a defendant's wrongdoing." Fannon, Nancy J., Dunitz, Jonathan M., *The Comprehensive Guide to Economic Damages*, Vol 1, Chapter 24: Franchise and Dealership Litigation Damages, p. 466.

[68]  Additionally, as discussed in sections VII.C, the Dienes Report incorrectly assumes every Trial Plaintiff suffered monetary damages every day during the Relevant Period. To the extent Trial Plaintiffs did not experience an "odor event" on specific days within the Relevant Period, there would be no need to "leave the area" for those specific days, and therefore cost of meals for those specific days should not be included in damages. In addition, if Trial Plaintiffs did not have a chronic condition listed by Dr. Kanter, there would be no need to "leave the area" as recommended by Dr. Kanter, and therefore the cost of meals for those specific days should not be included in damages. Moreover, as discussed in section VII.D.1, Dienes fails to consider and account for the number of days each Trial Plaintiff resided away from his/her home during the Relevant Period. For the days' Trial Plaintiffs did not reside at their home in Jefferson Parish during the Relevant Period, meal costs should not be included in damages.



**HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY**

Plaintiffs, [they have] computed the costs of storage that would have been incurred had the [Trial] Plaintiffs been able to utilize these facilities."[69] As a result, Dienes estimates total storage costs to be $66,960.[70] This is based on a storage facility quote provided by the Trial Plaintiffs' counsel totaling $279 per month for each Trial Plaintiff.[71]

48.   In addition, according to Dienes, "[a]ssuming that the jury were to find that cleaning costs are an appropriate measure of damages related to the exposure of odors suffered by the [Trial] Plaintiffs, [they have] computed the cleaning costs that would have been incurred had the [Trial] Plaintiffs been able to utilize these cleaning services."[72] As a result, Dienes estimates total cleaning costs to be $17,463. This is allegedly based on the instant pricing feature on the Stanley Steemer website.[73]

49.   Dienes' estimates of total storage and cleaning costs is also based on the following assumptions:

   a)   Trial Plaintiffs would have incurred costs to store their furniture and other personal property to keep it from being further affected by the odors; and

   b)   Trial Plaintiffs would have incurred costs to remove odors from their furniture and personal property upon their return to their residences at the end of the Relevant Period.[74]

50.   However, I understand that a Court order filed in this matter states:

---

[69]   Dienes Report, pp. 6-7.

[70]   Ibid.

[71]   Ibid.

[72]   Dienes Report, p. 7.

[73]   Dienes Report, p. 7. Trial Plaintiffs' counsel provided the cleaning estimates to Dienes. Stanley Steemer Instant Pricing Quotes.pdf.

[74]   Dienes Report, p. 5.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

The Plaintiffs have represented they are not pursuing claims for physical property damage and have not submitted expert reports with respect thereto. The Court has determined the Plaintiffs' waiver of their right to pursue claims for physical property damages includes odor-related damages to physical property such as furniture, drapes, and carpet.[75]

51.  Despite the fact that Trial Plaintiffs are not seeking physical property damages including odor-related damages to physical property such as furniture, drapes, and carpet and that the Court has therefore not allowed such claims to continue in this litigation, Dienes incorrectly includes in its damage estimate storage and cleaning costs for Trial Plaintiffs' furniture and personal property. Dienes' estimate of damages for storage and cleaning costs directly contradicts the Court's prior limitation and the Trial Plaintiffs' wavier of damages and therefore should be rejected in its entirety.

52.  Even if Trial Plaintiffs could be awarded storage and cleaning costs, Dienes incorrectly relies on storage and cleaning costs from January 2024 instead of the cost during the Relevant Period.[76] Prices have increased significantly since the Relevant Period. For example, the consumer price index (CPI) has increased by 20 percent from December 2019, the end of the Relevant Period, through January 2024.[77] By ignoring the increase

---

[75]  Elias Jorge "George" Ictech-Bendeck v. Waste Connections Bayou, Inc. et al., Civil Action No. 18-7880, 18-8071, 18-8218, 18-9312 and Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, 19-14512: Court Order, March 23, 2021, p. 1. The court order also states that Dr. Susan Schiffman will be allowed to testify at the Daubert hearing on general causation with respect to her opinion that odors permeating fabrics and textiles within the Plaintiffs' homes caused higher concentrations of odors indoors.

[76]  Emails dated January 30 – February 1, 2024, between Dienes and Trial Plaintiffs' counsel indicate that cleaning costs were developed using Stanley zanett's instant pricing feature on its website. Stanley Steemer Instant Pricing Quotes.pdf. Storage costs were emailed to Dienes by the Trial Plaintiffs' counsel on January 29, 2024. Storage Unit Rental Quote.pdf

[77]  CPI was 258.63 in December 2019 and 309.69 in January 2024, an increase of 20 percent. Consumer Price Index for All Urban Consumers: All Items in U.S. City Average, Index 1982-1984=100, Monthly, Seasonally Adjusted at https://fred.stlouisfed.org.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

in prices and relying on the higher cost of storage and cleaning costs from January 2024 instead of the cost during the Relevant Period, Dienes overstates damages.

## IX. PARADISE MANOR

53.   Paradise Manor Community Club (the "Club") is located in River Ridge, LA and is within the same geographical area that certain Trial Plaintiffs claim have been impacted by odors from JPLF.[78] The Club offers sporting activities and leisure events to its members,[79] which included the Gremillion family.[80] Outdoor activities include tennis and swimming.[81] Members may also hold private events in the Club's facilities.[82]

54.   Based on Trial Plaintiffs' claim that odors in Jefferson Parish have, "caused Petitioners substantial loss of the use and enjoyment of their homes and immovable property, and have caused physical harms...as well as fear, anguish, discomfort and inconvenience,"[83] and that certain Trial Plaintiffs, namely the Gremillion Plaintiffs, have claimed that they could not use this Club due to odors from JPLF,[84] one would expect to see a negative impact on the Club's membership activity during the Relevant Period. Therefore, I analyzed the Club's financial data from 2016 through 2019[85] and determined that the

---

[78]   Deposition of Scott Gremillion dated June 8, 2023, pp. 178 – 179.

[79]   Paradise Manor Community Club Website. Accessed February 26, 2024: http://www.paradisemanor.net/Membership.aspx

[80]   Deposition of Scott Gremillion dated June 8, 2023, p. 61; Wendy Gremillion deposition dated June 7, 2023, p. 27.

[81]   Paradise Manor Community Club Website. Accessed February 26, 2024: http://www.paradisemanor.net/Membership.aspx

[82]   Ibid.

[83]   Second Amended Complaint, p. 2.

[84]   Deposition of Scott Gremillion dated June 8, 2023, p. 69.

[85]   2016 Membership Summary.xls, 2017 Membership Summary.xls, 2018 Membership Summary.xls, 2019 Membership Summary.xls, Events and Programs 12-23 Summary.xls, Guest Fees 12-23 Summary.xls, Rental

**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

Club remained active and generated revenue during the Relevant Period as described below:

a) The Club reported membership revenue of approximately $80,000 in 2016. Each year within the Relevant period revenue exceeded $80,000: $83,000 in 2017, $81,000 in 2018, and $89,000 in 2019;

b) Following 26 rentals in 2016, rental activity during the Relevant Period increased each year. The Club had 29 rentals in 2017, 42 rentals in 2018, and 51 rentals in 2019;

c) Events and programs revenue more than doubled from approximately $11,000 in 2016 to over $22,000 in 2019; and

d) Following a $1,700 decrease in total revenue from 2016 to 2017, the Club's total revenue grew during each year of the Relevant Period, from approximately $129,000 in 2016 to $151,000 in 2019, as shown in the table below.

**Paradise Manor Community Club Activity from 2016 through 2019**

| Metric | | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|
| Members | [1] | 141 | 132 | 140 | 149 |
| Rentals | | 26 | 29 | 42 | 51 |
| | | | | | |
| Membership Revenue | | $ 79,737 | $ 82,894 | $ 80,894 | $ 88,603 |
| Events and Programs Revenue | | 10,651 | 13,591 | 15,148 | 22,399 |
| Rental Income | | 12,482 | 10,102 | 15,688 | 18,100 |
| Other Income | [2] | 25,654 | 20,207 | 22,172 | 22,092 |
| **Total Revenue** | | **$ 128,525** | **$ 126,794** | **$ 133,902** | **$ 151,194** |

Notes:
[1] Includes tennis memberships
[2] Includes guest fee, sponsor, sports, and snack bar income

**Table 5**

---

Income 12-23 Summary.xls, Snack Bar Income 12-23 Summary.xls, Sponsorship 12-23 Summary.xls, and Sports Income 12-23 Summary.xls.



HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY

55. Based on my review of financial data for the Club, I determined that there was no decline in its revenue from 2016, the full year before the Relevant Period, to 2019, the end of the Relevant period, indicating that odors from JPLF or any other source did not have any significant impact on its operations.

## X.   SUMMARY OF FINDINGS

56. I have developed the following opinions regarding the Dienes Report:

a) Dienes relies on inappropriate assumptions that overstate any possible reasonable measure of damages. These assumption errors render the damages analysis unreliable.

1) Dienes incorrectly assumes that monetary damages should be measured by reference to hypothetical costs the Trial Plaintiffs <u>might have incurred</u> had they moved away from their homes despite the fact that they <u>did not incur</u> any such costs.

2) Dienes incorrectly assumes that JPLF is the <u>sole source</u> of the complained of odors and fails to account for or apportion the claimed damages among the other sources of such odors, including the Highway 90 C&D landfill and River Birch landfill.

3) Dienes incorrectly assumes that <u>every Trial Plaintiff</u> suffered monetary damages <u>every day</u> during the Relevant Period and ignores the Trial Plaintiffs' own expert analysis that alleges that the Trial Plaintiffs were, in the worst case, potentially impacted only 16 to 35 percent of the days in the Relevant Period. Additionally, Dienes assumes without any evidence that every Trial Plaintiff experienced chronic conditions such as <u>pulmonary disease, asthma, or COPD</u> and would have to leave the area during the Relevant Period.

b) Even accepting the inappropriate assumptions described above, Dienes overstates any potential damages because they fail to consider a number of relevant facts,



**HIGHLY CONFIDENTIAL
ATTORNEYS' EYES ONLY**

including those described below. These calculation errors render the Dienes analysis unreasonable and unreliable for purposes of estimating potential damages.

1) In calculating lodging costs, Dienes fails to consider and account for the number of days each Trial Plaintiff resided away from their homes for non-odor related reasons during the Relevant Period. This error overstates any potential damages.

2) Also, in their calculation of lodging costs, Dienes fails to consider the fact that, during the Relevant Period, three of the thirteen Trial Plaintiffs resided in rental properties from which they could have moved immediately without incurring additional lodging costs. For these Trial Plaintiffs, the lodging costs should be rejected in their entirety.

3) Also, in their calculation of lodging costs, Dienes fails to consider that Trial Plaintiffs could have moved to a rental property that was less expensive than an extended stay facility (e.g., to a rental property similar to their then-current property). Moreover, Dienes incorrectly relies on the cost of the extended stay facility from January 2024 instead of the cost during the Relevant Period. These errors overstate any potential damages.

4) In their calculation of meal costs, Dienes fails to consider the fact that Trial Plaintiffs would have incurred meal costs regardless of any odors that they were exposed to during the Relevant Period. Therefore, these estimated damages should be rejected in their entirety.[86]

5) Dienes fails to consider the fact that Trial Plaintiffs do not seek physical property damages and that the Court did not allow recovery for any physical property damage in its General Causation decision, including odor-related damages to physical property such as furniture, drapes, and carpets. Therefore, Dienes' estimate of damages for storage and cleaning costs should be rejected in its

---

[86] Dienes also calculates meal costs of $3,061 for Ms. Winningkoff's husband, even though he is not a Trial Plaintiff. Dienes Report, p. 20.



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

entirety. Moreover, Dienes incorrectly relies on the storage and cleaning costs from January 2024 instead of the cost during the Relevant Period. This error overstates any potential damages even if the Trial Plaintiffs could be awarded storage and cleaning costs.

57.  Based on my review of financial data for the Club, located in Jefferson Parish and the alleged impact area, I determined that there was no decline in its revenue from 2016, the full year before the Relevant Period, to 2019, the end of the Relevant Period, indicating that any alleged odors from JPLF or any other source did not have any significant impact on its operations, and thus its members' use of the Club.

Respectfully Submitted,

JOSEPH T. GARDEMAL III
CPA/ABV, CVA, CFE, CDBV
Alvarez & Marsal Disputes and Investigations, LLC
Metropolitan Square, 655 15th Street, N.W.
Washington, D.C. 20005

Dated:  March 8, 2024



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

**APPENDIX A**

**FACTS AND DATA RELIED ON**



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

## FACTS AND DATA RELIED ON

| No. | Documents |
|-----|-----------|
| 1. | Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-CV-11133, 19-CV-14512, Plaintiffs' Second Amended Omnibus Complaint for Damages and Injunctive Relief. |
| 2. | Elias Jorge "George" Ictech-Bendeck v. Waste Connections Bayou, Inc. et al., Civil Action No. 18-7880, 18-8071, 18-8218, 18-9312; Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, 19-14512; Court Order, March 23, 2021. |
| 3. | Elias Jorge "George" Ictech-Bendeck v. Waste Connections Bayou, Inc. et al., Civil Action No. 18-7880, 18-8071, 18-8218, 18-9312; Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, 19-14512; Findings of Fact and Conclusions of Law, November 29, 2022. |
| 4. | Frederick Addison, et al. v. Louisiana Regional Landfill Company, et al., Civil Action No. 19-11133, c/w 19-14512, Plaintiff Jonathan Tate's Objections and Responses to the Waste Connections Defendants Third Supplemental Set of Interrogatories, Response to Interrogatory No. 1. |
| 5. | Contract to Provide Services to Operate, Manage, and Maintain the Jefferson Parish Sanitary Landfill Site between IESI LA Landfill Corporation and The Parish of Jefferson dated May 17, 2012. |
| 6. | Jefferson Parish Press Conference held by Jefferson Parish President Mike Yenni on July 23, 2018. |
| 7. | Expert Report of Dr. Paolo Zannetti dated March 8, 2024 |
| 8. | Expert Report of James Lape dated February 16, 2024 |
| 9. | Expert Report of Malcolm M. Dienes, L.L.C dated February 8, 2024 |
| 10. | Expert Report of Dr. John Kind dated March 8, 2024 |
| 11. | Deposition of Joseph Kanter dated January 25, 2024 |
| 12. | Deposition of Tyrone Thompson dated June 2, 2023 |
| 13. | Deposition of Vernice Lewis dated November 29, 2023 |
| 14. | Deposition of Jonathan Tate dated April 4, 2023 |
| 15. | Deposition of Scott Gremillion dated June 8, 2023 |
| 16. | Deposition of Wendy Gremillion dated June 7, 2023 |
| 17. | Deposition of Stanley Meyers dated April 20, 2023 |
| 18. | Deposition of Stephanie Brooks dated December 4, 2023 |
| 19. | Deposition of Douglas Brown dated January 26, 2024 |



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

| No. | Documents |
|-----|-----------|
| 20. | 2016 Membership Summary.xls; 2017 Membership Summary.xls, 2018 Membership Summary.xls, 2019 Membership Summary.xls |
| 21. | Events and Programs 12-23 Summary.xls |
| 22. | Guest Fees 12-23 Summary.xls |
| 23. | Rental Income 12-23 Summary.xls |
| 24. | Snack Bar Income 12-23 Summary.xls |
| 25. | Sponsorship 12-23 Summary.xls |
| 26. | Sports Income 12-23 Summary.xls |
| 27. | Printouts of daily and monthly rates from extendedstayamerica.com and bookings.com as of January 11, 2024, provided by Dienes in copyroom@mmdcpa.net_20240228_155950.pdf |
| 28. | Stanley Steemer Instant Pricing Quotes.pdf |
| 29. | Storage Unit Rental Quote.pdf |
| 30. | Rental agreement between 1st Lake Properties, Inc., as agent for Sawmill Creek, and Stephanie Brooks for an apartment located at 2100 Sawmill Rd, River Ridge, LA, dated May 9, 2018. |
| 31. | Rental agreement between D & A Property Management, Inc., and Reshaun Richardson for an apartment located at 624 Wilker Neal St, River Ridge, LA, dated February 10, 2014. |
| 32. | Fannon, Nancy J., Dunitz, Jonathan M., The Comprehensive Guide to Economic Damages, Vol 1, Chapter 24: Franchise and Dealership Litigation Damages. |
| 33. | Frank L. Maraist Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-1 (Michie 1996). |
| 34. | Weil, Roman L., Wagner, Michael J., and Frank, Peter B., Litigation Services Handbook, The Role of the Financial Expert, Third Ed., Chapter 5: "Issues Common To Most Damages Studies." |
| 35. | Claar v. Burlington N.R.R., 29 F.3d 499 (9th Cir. 1994). |
| 36. | Greg J. Regan, and Christopher J. Lovrien, J.D., Dunn on Damages, Causation Scenarios for the Damages Expert, Winter 2011. |
| 37. | United States Census Bureau QuickFacts: Jefferson Parish, Louisiana. Accessed March 7, 2024: https://www.census.gov/quickfacts/fact/table/jeffersonparishlouisiana/PST045222 |
| 38. | Choice Hotels International, Inc.'s Form 10-K. |
| 39. | Consumer Price Index for All Urban Consumers: All Items in U.S. City Average, Index 1982-1984=100, Monthly, Seasonally Adjusted at https://fred.stlouisfed.org. |
| 40. | Paradise Manor Community Club Website. Accessed February 26, 2024: http://www.paradisemanor.net/Membership.aspx |
| 40. | Jefferson Parish Profile. Accessed March 7, 2024: https://www.louisiana.gov/local-louisiana/jefferson-parish. |



**HIGHLY CONFIDENTIAL**
**ATTORNEYS' EYES ONLY**

**APPENDIX B**

**CURRICULUM VITAE**



# JOSEPH T. GARDEMAL III
## CPA/ABV, CVA, CDBV, CFE, CGFM
Metropolitan Square, 655 15th Street NW
Washington, D.C. 20005
Office (202) 729-2131 Mobile (202) 378-6973
JGardemal@alvarezandmarsal.com

## CURRICULUM VITAE

## I. EMPLOYMENT

Current   Alvarez & Marsal Disputes and Investigations, LLC
Washington, D.C.
Managing Director, 2006 to Present

History   The CapAnalysis Group, LLC (an affiliate of Howrey, LLP)
Washington, D.C.
Managing Principal, 2002 to 2006

Beers & Cutler, PLLC, Washington, D.C.
Senior Manager, 1998 to 2002

Rebowe & Company, APAC, New Orleans, Louisiana
Manager, 1996 to 1998

Sharp & Company, CPAs, PC, Harvey, Louisiana
Director, 1993 to 1996

Orleans Parish District Attorney's Office, New Orleans, Louisiana
Chief Fiscal Officer, 1991 to 1993

LaPorte, Sehrt, Romig & Hand, CPAs, New Orleans, Louisiana
Senior Accountant, 1988 to 1991

United States Army and Reserve Components
Field Artillery and Psychological Operations 1985 to 2005

## II. CERTIFICATIONS

| | |
|---|---|
| Certified Public Accountant | Louisiana, Virginia, Washington D.C., Maryland |
| Accredited in Business Valuation | American Institute of CPAs |
| Certified Valuation Analyst | National Association of Certified Valuators and Analysts |
| Certified in Distressed Business Valuation | Association of Insolvency and Restructuring Advisors |
| Certified Fraud Examiner | Association of Certified Fraud Examiners |
| Certified Government Financial Manager | Association of Government Accountants |

## III. EDUCATION

Loyola University, New Orleans, Louisiana
Bachelor of Business Administration – Accounting, Presidential Scholar, May 1988

ALVAREZ & MARSAL



## IV. COURT APPOINTMENTS

Securities and Exchange Commission v. GPB Capital Holdings LLC, et al. United States District Court for the Eastern District of New York. Court appointed receiver overseeing private equity enterprise with over $1.8 billion in capital raised from 17,000 investors. December 2023, currently pending appeal.

Securities and Exchange Commission v. GPB Capital Holdings LLC, et al. United States District Court for the Eastern District of New York. Court appointed independent monitor overseeing private equity enterprise with over $1.8 billion in capital raised from 17,000 investors. Owner of the eleventh-largest group of auto dealerships in the U.S. (2020) and numerous other operating companies. March 2021 – December 2023 and December 2023 to present, pending appeal of order appointing receiver.

Brian P. Froelich v. Senior Campus Living, LLC, et al. United States Court of Appeals for the Fourth Circuit (No. 02-2305), appealed from United States District Court for the District of Maryland (L-98-694). Member of appraisal panel appointed by the Court to determine value of minority shareholder's stock under Maryland dissenting shareholder statutes. Co-author of panel's majority opinion upheld by the U.S. 4th Circuit Court of Appeals.

## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

Migdal 1, LLC d/b/a Hyundai of Bedford v. **Hyundai Motor America, Inc. and Genesis Motor America, LLC.** United States District Court for the Northern District of Ohio. Analysis of dealership financial performance and rebuttal of plaintiff's damages analysis related to incentive programs. Reports, deposition.

The Collection LLC d/b/a The Porsche Collection v. Holman North Miami LLC and **Porsche Cars North America, Inc.** State of Florida Division of Administrative Hearings. Analysis of impact of add-point on protesting dealer. Reports, deposition.

In Re the Robert D. Wolfe Living Trust as Amended and Restated, **Susan Zeme, Independent Trustee**. Superior Court for the State of California, County of Marin. Analysis of cash available for distribution under the terms of a trust holding real estate and marketable securities. Rebuttal expert for Trustee. Deposition, trial testimony.

Cardiovascular Research Foundation v. **Willis Towers Watson Southeast, Inc.** United States District Court for the Southern District of New York. Analysis of damages in connection with event cancellation insurance claim. Report, deposition.

Action Nissan, Inc. d/b/a Universal Hyundai v. **Hyundai Motor America, Inc. and Genesis Motor America, LLC**. United States District Court for the Middle District of Florida. Analysis of dealership financial performance and rebuttal of plaintiff's damages analysis related to allocation of vehicles. Reports, deposition.

Elevate Group LLC v. **Amyx, Inc.** United States District Court for the Eastern District of Virginia. Analysis of damages in connection with SEC government contracts dispute. Report, deposition.

Tuscaloosa Hyundai, Inc. v. **Hyundai Motor America, Inc. and Genesis Motor America, LLC**. United States District Court for the Northern District of Alabama. Analysis of damages in connection with manufacturer incentive programs. Report, deposition.

**Hyundai Motor America Corporation** v. EFN West Palm Motor Sales, LLC; G. Khaytin; E. Revuelta; E. Napleton; G. Pelayo; J. Ruiz. United States District Court for the Southern District of Florida. Analysis of dealership financial performance and rebuttal of counterclaim plaintiffs' damages analysis related to allocation of vehicles. Report, deposition, trial testimony.



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

InVeris Training Solutions v. **Oak Grove Technologies, Inc.** American Arbitration Association. Analysis of damages related to weapons training contract for U.S. Department of Defense. Report, arbitration testimony.

Fitzgerald Motors, Inc. v. **Hyundai Motor America Corporation and Genesis Motor America, LLC**. United States District Court for the Middle District of Florida. Analysis of manufacturer incentive programs and purported damages suffered by auto dealer. Report, deposition.

LFO, Inc. d/b/a Fitzgerald's Lake Forest Hyundai and CDOHY, Inc. d/b/a Fitzgerald Hyundai v. **Genesis Motor America, LLC**. United States District Court for the District of Maryland. Analysis of manufacturer incentive programs and purported damages suffered by auto dealer. Report, deposition.

LFO, Inc. d/b/a Fitzgerald's Lake Forest Hyundai and CDOHY, Inc. d/b/a Fitzgerald Hyundai v. **Hyundai Motor America Corporation**. United States District Court for the District of Maryland. Analysis of manufacturer incentive programs and purported damages suffered by auto dealer. Report, deposition.

Paragon Systems Inc. v. **Metropolitan Security Services, Inc. d/b/a Walden Security, et al.** United States District Court for the District of Maryland. Damages analysis in connection with federal government contract for security services. Reports, deposition.

Rahim M. Hassanally v. **General Motors, LLC**. American Arbitration Association. Analysis of valuation, damages, and operational issues in connection with dispute between auto dealer and manufacturer. Reports, deposition.

Gilbane Building Company v. **CRP/GR Republic Square Apartment Owner, LP; CRP/GR Republic Square Hotel Owner, LP**; et al. District Court of Travis County, Texas. Damages analysis in connection with construction of apartment/hotel building in Austin, Texas. Report, deposition.

Deauville Hotel Property, LLC v. **Trane U.S., Inc.; Tirone Electric, Inc.; Edd Helms Air Conditioning, Inc.,** et al. Circuit Court for the Eleventh Judicial Circuit, Miami Dade County, Florida. Damages analysis in connection with business interruption claims at historic hotel property. Report, deposition.

5051 Property, Inc., d/b/a Serra Mazda v. **Mazda Motor of America, Inc.** United States District Court for the Northern District of Alabama. Analysis of financial, valuation, and damages issues in connection with auto dealership dispute. Reports, deposition.

Linda Janssen v. **CheckFree Services Corporation (d/b/a Fiserv)**, et al. Superior Court of New Jersey, Law Division - Morris County. Analysis of damages issues in connection with employment. Report.

K.C. Company, Inc. v. **Pella Corporation**. United States District Court for the District of Maryland. Analysis of valuation and damages issues in connection with distributorship agreement. Report.

Fitzgerald Motors, Inc., d/b/a Fitzgerald's Countryside Chrysler Jeep v. **FCA US LLC**. United States District Court for the Middle District of Florida. Analysis of damages issues related to automotive retail sales incentive programs. Report, deposition.

Savannah Motorcars, LLC, d/b/a Savannah Volkswagen; and Peacock RE, LLC v. **Volkswagen Group of America, Inc.** United States District Court for the Southern District of Georgia. Analysis of valuation and damages issues allegedly resulting from rejection of dealership buy-sell agreement. Reports, deposition.



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

Baker Chrysler Jeep Dodge Inc. v. William McDonagh, Michael Salerno, and/or Raymond Duane, and **FCA US LLC**. Before the New Jersey Motor Vehicle Franchise Committee. Analysis of financial impact of addition of a new dealership on existing dealers. Report.

MGMTL LLC v. **Strategic Technology Institute, Inc.** United States District Court for the Eastern District of Louisiana. Analysis of damages in connection with claims related to breach of contract, copyright, and trade secrets in the government contracting industry. Report, deposition, trial testimony.

In The Matter of Confidential CPA Firm, Accounting and Auditing Enforcement Release No. 4242, August 16, 2021. Expert for **U.S. Securities and Exchange Commission** (SEC) on the duties and responsibilities of independent auditors under the standards of the Public Company Accounting Oversight Board (PCAOB) in connection with audits of an SEC registrant. Report.

Master's Transportation Group, Inc. v. **REV Group, Inc.** United States District Court for the Western District of Missouri. Dealership dispute. Rebuttal of plaintiff's damages claims related to distribution of buses and related vehicles in Texas and California. Reports.

Altomare Auto Group LLC v. **Volkswagen Group of America Inc.; VW Credit, Inc.**; and Park Avenue Union LLC. Superior Court of New Jersey, Union County. Analysis of dealership valuations, operations, accounting, and proposed buy-sell transactions. Reports, deposition.

United States of America v. **Rocket Learning, LLC and Eighteen Individual Defendants**. United States District Court for Puerto Rico. Analysis of transaction data related to after-school tutoring services. Criminal Matter. Report.

**Courtney Foster, et al.** v. City of Albuquerque, New Mexico. United States District Court for the District of New Mexico. Analysis of economic incentives related to civil asset forfeiture activities undertaken by the City of Albuquerque. Reports, depositions.

Alfredo's Foreign Cars, Inc. d/b/a Larchmont Chrysler Jeep Dodge v. **FCA US LLC**. State of New York Department of Motor Vehicles Safety and Business Hearing Bureau. Analysis of financial performance of petitioner and other FCA dealers in New York and adjacent geographies. Report, hearing testimony.

**Mark Vogel** v. David Hillman, 8321 College Park Hotel LLC, The Hotel at UMCP LLC. Circuit Court for Prince George's County Maryland. Calculation of damages in connection development of hotel properties near the University of Maryland. Report, deposition.

**Futrend Technology, Inc.** v. MicroHealth LLC, et al. Circuit Court for Fairfax County, Virginia. Calculation of damages related to trade secrets and breach of contract in connection with U.S. Government contract. Reports, deposition, trial testimony.

SJBR Logistics, Inc. v. **FedEx Ground Package System, Inc**. JAMS arbitration, New York. Analysis of damages and valuation in connection with franchise termination. Report, deposition.

Robert S. Raybon, Gatewood Holdings LLC, and AT Legal LLC v. **CNH Industrial America LLC (Case IH), James E. Walker, and Richard H. Carver**. Superior Court of Fulton County, Georgia. Analysis of damages and valuation of agricultural equipment dealerships and employment agreement. Reports.

Burns Motors Ltd. and Burns Income Properties Ltd. v. **FCA US LLC and Teresa McDaniel**. 93rd Judicial District Court, Hidalgo County, Texas. Analysis of damages and valuation of auto dealership. Report.



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

Phillips Chrysler Jeep Dodge, Inc. and Bill Bryan Chrysler, Dodge, Jeep, Inc. v. **FCA US LLC** and Summerfield Auto Acquisitions, Inc. State of Florida Division of Administrative Hearings. Analysis of financial impact of new dealership on existing dealers. Report, deposition.

In re: **Federation Employment and Guidance Service, Inc. d/b/a FEGS**, debtor. Robert N. Michaelson, Trustee v. Loeb & Troper, LLP. United States Bankruptcy Court, Eastern District of New York. Analysis of application of generally accepted auditing standards and estimation of damages in connection with bankruptcy of nonprofit health care organization. Report, deposition.

Colonial Chevrolet Co., Inc.; Alley's of Kingsport, Inc.; Union Dodge, Inc.; et al. v. **The United States of America**. United States Court of Federal Claims. Rebuttal of plaintiffs' valuation analysis in Fifth Amendment takings case related to the 2009 bankruptcies of Chrysler and General Motors. Report, deposition, trial testimony.

Napleton's Arlington Heights Motors, Inc. and six other Napleton-owned dealers v. **FCA US LLC**. United States District Court for the Northern District of Illinois. Rebuttal of plaintiffs' damages analysis in matter related to restatement of sales figures. Report, deposition, hearing testimony.

Steven B. Barger v. **First Data Corporation, et al.** United States District Court for the Eastern District of New York. Analysis of damages related to employment agreement. Report, deposition.

**Digital Management, LLC** v. Smartronix, Inc. American Arbitration Association, Washington, D.C. Analysis of damages related to U.S. Government (DoD) contract. Report, deposition, arbitration testimony.

Steven Knurr, et al. v. **Orbital ATK, Inc. (Northrop Grumman)**, et al. United States District Court for the Eastern District of Virginia. Rule 30(b)(6) witness for Orbital ATK related to internal investigation leading to restatement of financial statements. Deposition.

**Audi of America, Inc., An Organizational Unit of Volkswagen Group of America, Inc.**, v. Bronsberg & Hughes Pontiac, Inc. d/b/a/ Wyoming Valley Audi. Pennsylvania Department of State, State Board of Vehicle Manufacturers, Dealers, and Salespersons. Analysis of proposed relocation on operations, finances, valuation, and marketability of Audi dealer. Report, hearing testimony.

**American Type Culture Collection** v. Armanino LLP. United States District Court for the Eastern District of Virginia. Analysis of damages related to contract to implement ERP system in the biological materials resource industry. Reports, deposition.

**Peraton, Inc.** v. Raytheon Company. United States District Court for the Eastern District of Virginia. Analysis of damages related to trade secrets in connection with classified U.S. Government contracts. Reports, deposition.

Wide World of Cars, LLC d/b/a Wide World Maserati v. **Maserati North America, Inc.** State of New York Department of Motor Vehicles Safety and Business Hearing Unit. Analysis of financial impact of incentive program on auto dealerships. Report, hearing testimony

Recovery Racing LLC, d/b/a Maserati of Ft. Lauderdale and New Country Motor Cars of Palm Beach LLC, d/b/a Maserati of Palm Beach v. **Maserati North America, Inc.** State of Florida Division of Administrative Hearings. Analysis of financial impact of incentive program on auto dealerships. Report, deposition, hearing testimony.

ALVAREZ & MARSAL



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

**Audi of America, an Organizational Unit of Volkswagen Group of America, Inc.** v. Bronsberg and Hughes Pontiac, Inc. d/b/a Wyoming Valley Audi. United States District Court for the Middle District of Pennsylvania. Analysis of purchase prices and blue sky allocation in multi-dealership transaction. Affidavit, reports, deposition.

**William T. Obeid, directly and derivatively on behalf of Gemini Real Estate Advisors, LLC, et al.** v. Christopher La Mack, Dante Massaro, Bridgeton Holdings LLC, Bridgeton Hotel Management LLC, Bridgeton Acquisitions LLC, Atit Jariwala, and Elevation Real Estate Group LLC. United States District Court for the Southern District of New York. Analysis of damages in connection with real estate investment and development and hospitality management. Report, deposition.

**Arlene Harjo** v. City of Albuquerque, New Mexico. United States District Court for the District of New Mexico. Analysis of economic incentives related to civil asset forfeiture activities undertaken by the City of Albuquerque. Report.

**NWP Services Corporation** v. VAC LLLP, et al. United States District Court for the Eastern District of Virginia. Analysis of damages related to financing of utility management submetering equipment installed in multifamily properties. Report.

Technology and Supply Management, LLC v. **Johnson Controls Building Automation Systems, LLC, Johnson Controls, Inc., and Johnson Controls Federal Systems, Inc.** United States District Court for the Eastern District of Virginia. Analysis of damages related to U.S. Government contract for energy efficient shelters in Kuwait. Rebuttal of plaintiff's damages analysis. Report, deposition, trial testimony.

**STG International, Inc.** v. Millennium Health and Fitness, Inc. American Arbitration Association, Chicago, Illinois. Arizona law applied. Analysis of damages related to U.S. Government contract for Federal Occupational Health services at locations across the United States. Reports, arbitration testimony.

**Government of the District of Columbia, Washington, D.C. Public Schools** v. Individual. Arbitration Proceeding, Washington, D.C. Testimony related to Test Administrator's compliance with DC-CAS State Test Security regulations. Report, hearing testimony.

**United States Securities and Exchange Commission** v. City of Miami and Michael Boudreaux. United States District Court for the Southern District of Florida. Analysis of compliance with generally accepted accounting principles and compliance with financial integrity laws and regulations in connection with securities offerings by the City of Miami. Report, declaration, deposition.

Northwest Hills Chrysler Jeep, LLC; Gengras Chrysler Dodge Jeep, LLC; Crowley Jeep Dodge, Inc.; Papa's Dodge, Inc., Petitioners v. **FCA US LLC**, Respondent; Mitchell Dodge, Inc., Intervenor. Connecticut Department of Motor Vehicles. Analysis of the financial impact of the relocation of a Chrysler Dodge Ram dealer and the addition of the Jeep line on dealers in the statutory relevant market area. Reports, deposition, hearing testimony.

Edward Wisner Donation v. **BP America Production Company; BP p.l.c.**; Transocean Ltd.; Transocean Offshore Deepwater Drilling, Inc.; Transocean Deepwater, Inc.; Transocean Holdings, LLC; Triton Asset Leasing GmbH; Halliburton Energy Services, Inc.; and Sperry Drilling Services, a division of Halliburton Energy Services, Inc. United States District Court for the Eastern District of Louisiana. Analysis of expense claims by Wisner Donation related to the Deepwater Horizon oil spill. Report, deposition.



**V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS**

PSA Financial Center, Inc. et al, v. **Jania Stout**, Chad Wilson, and Fiduciary Plan Consultants LLC. Circuit Court for Baltimore County, Maryland. Analysis of damages in connection with employment contract and restrictive covenants; rebuttal of plaintiff's damages analysis. Report.

McPeek's Dodge of Anaheim v. **Chrysler Group, LLC**, State of California, New Motor Vehicle Board. Analysis of financial statements and valuation of auto dealer. Report.

**Lorean Barrera, On Behalf of Herself and All Others Similarly Situated and the General Public** v. Pharmavite, LLC. United States District Court for the Central District of California. Analysis of class-wide damages related to sales of nutritional supplements. Reports, deposition.

Michael Hayman, M.D. v. Michael Fein, Stephen Saltzstein, RAM Capital Resources LLC, Shelter Island Opportunity, Shelter Island Opportunity Fund LLC, Shelter Island GP LLC, Midway Management Partners LLC, Truk Opportunity Fund LLC, Atoll Asset Management LLC, **EisnerAmper LLP**, and ABC Insurance Company. Civil District Court for the Parish of Orleans, State of Louisiana. Analysis of accounting, auditing, and valuation issues in connection with the implementation of SFAS 157, "Fair Value Measurements." Report.

Priority One Services, Inc. v. **W&T Travel Services LLC**. American Arbitration Association, Washington, D.C. Analysis of damages related to U.S. Government contract for transportation services. Designations, arbitration testimony.

**Jeffrey P. Fine** v. Sun Life Assurance Company of Canada. United States District Court for the Eastern District of Virginia. Analysis of cash flows related to payments on long-term disability insurance contract. Report.

Jeffrey M. Camarda and Kimberly M. Camarda v. **Certified Financial Planner Board of Standards, Inc.** United States District Court for the District of Columbia. Analysis of contract and Lanham Act damages claims related to professional licensing organization. Rebuttal of plaintiffs' damages claims. Reports.

**ETW, LLC** v. Ecology Services, Inc. Circuit Court of Howard County, Maryland. Analysis of contract damages related to U.S. Government contract for waste removal services. Designation, deposition.

**Wyers Products Group and Philip Wyers** v. Cequent Performance Products, Inc. and Cequent Consumer Products, Inc. United States District Court for the District of Colorado. Analysis of patent infringement damages related to automotive accessories. Report, deposition.

**Yao-Hung Huang and Big Time Auto Parts Manufacturing, Inc.** v. Marklyn Group, Inc. United States District Court for the District of Colorado. Analysis of patent infringement damages related to automotive accessories. Reports, trial testimony.

**DHR International, Inc.** v. Debra Pollick and Battalia Winston International, Inc. United States District Court for the District of Colorado. Analysis of intellectual property damages related to trade secrets and employment matter in the executive search industry. Report.

**Sky Angel U.S., LLC** v. Discovery Communications, LLC, et al., United States District Court for the District of Maryland. Analysis of damages related to the loss of Discovery Communications content to Sky Angel, an Internet Protocol Television (IPTV) provider. Reports, deposition, trial testimony.



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

**ReadyLift Suspension, Inc.** v. TAP Worldwide, LLC and TAP Worldwide, LLC v. ReadyLift Suspension, Inc. JAMS Arbitration and Superior Court of the State of California for the County of Los Angeles. Analysis of intellectual property damages related to trade secrets and false advertising. Report.

Scott Hutchison v. John R. Parent and **Thomas S. Danford**. United States District Court for the District of Ohio, Western Division. Analysis of duties and responsibilities of a Certified Public Accountant in the performance of professional services under the standards of the American Institute of CPAs, Internal Revenue Service regulations, and State of Indiana Board of Accountancy regulations. Report.

U.S. Bank National Association, As Successor Trustee for the Holders of Morgan Stanley Capital I, Inc. Commercial Pass-Through Certificates, Series 2007-IQ16 v. **Hilton Worldwide, Inc.; HLT Existing Franchise Holdings, LLC; and Hilton Inns, LLC**. United States District Court for the Eastern District of Louisiana. Analysis of financial results and projections for former Hilton property in New Orleans, Louisiana. Rebuttal of plaintiff's damages analysis. Report.

Pellegrino Chrysler Jeep, Inc. v. **Chrysler Group, LLC**; Charles Foulke, Jr.; and Foulke Management Corporation. Office of Administrative Law, State of New Jersey. Analysis of financial results of Chrysler dealers and the financial impact of a proposed dealership in Sicklerville, New Jersey. Testimony on dealer operations and financials. Report, hearing testimony.

Al-Sarh Al-Kabir Commercial Agencies and General Transport, Limited, et al. v. **Falcon Express, Inc. and Falcon Aviation Group, Limited (Dubai, UAE)**. ICC International Court of Arbitration, Geneva, Switzerland. Analysis of transactions related to development of Iraqi Transportation Network funded through U.S. Government contracts. Review of forensic accounting report prepared by consultants for plaintiffs under International Standards on Related Services. Reports.

Akshay V. Davé v. **Pikeville Energy Group, LLC; Gary J. Richard; and Banner Industries of N.E., Inc.** Circuit Court for the County of Richmond, Virginia. Analysis of transactions and calculation of potential damages related to plaintiff's investment in Kentucky coal mining operation. Report, deposition.

Capital Solutions Bancorp, LLC v. **The Hertz Corporation**. Circuit Court of the 20th Judicial Circuit, Lee County, Florida. Rebuttal of plaintiff's damages analysis and calculation of damages in matter involving factoring of receivables derived from advertising contracts. Report, deposition.

Control Solutions, LLC v. **Oshkosh Corporation**. United States District Court for the Northern District of Illinois. Rebuttal of plaintiff's damages analysis and calculation of damages in matter involving production of Mine Resistant Ambush Protected All-Terrain Vehicle (M-ATV) for United States Department of Defense. Report.

Neeraj Bhagat and Peak State Group, LLC v. **Diamond Information Systems, LLC** v. GR Systems, Inc. Circuit Court for Loudon County, Virginia. Analysis of counterclaim plaintiff's damages in intellectual property matter involving technology services contracts with the U.S. Small Business Administration. Reports, deposition, trial testimony.

In re: Vijay K. Taneja, et al., Debtors. H. Jason Gold, Chapter 11 Trustee v. **JP Morgan Chase Bank, NA; Chase Bankcard Services, Inc.; Chase Home Finance, LLC; Chase Bank USA, NA; Bank One, NA; and EMC Mortgage Corporation**. United States Bankruptcy Court, Eastern District of Virginia. Review of plaintiffs' solvency analysis of debtors in the mortgage lending, real estate development, and entertainment promotion industries. Report, deposition.

ALVAREZ & MARSAL



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

**Prestige Brands, Inc.** v. Law Firm. Superior Court of the District of Columbia. Calculation of damages related to alleged legal malpractice, theft of trade secrets and patented devices, and misuse of intellectual property in connection with sales of dental devices. Reports, depositions.

In Re: Outsidewall Tire Litigation; Tire Engineering and Distribution, LLC, et al. v. **Al Dobowi, Ltd. and Shandong Linglong Tire Company, Ltd.**, et al. United States District Court for the Eastern District of Virginia. Analysis of damages and rebuttal of plaintiffs' intellectual property damages analysis in trade secrets, patent, copyright, and trademark matter involving design, manufacturing, and distribution of specialty tires used in the mining industry. Report, deposition, trial testimony.

Fitzgerald AutoMall, Inc., Colonial Dodge, Lakeforest Chrysler-Jeep, and Wheaton Dodge v. **Chrysler Group, LLC**. American Arbitration Association, Washington, D.C. Analysis of four rejected Washington, D.C.-area Chrysler-Jeep and Dodge dealerships' financial condition and performance in connection with Chrysler's bankruptcy and Section 747 of the Consolidated Appropriations Act of 2010. Disclosure, hearing testimony.

Ganley Chrysler-Jeep, Inc.; Ganley Dodge West, Inc.; and Ganley East, Inc. v. **Chrysler Group, LLC**. American Arbitration Association, Cleveland, Ohio. Analysis of three rejected Cleveland-area Chrysler-Jeep and Dodge dealerships' financial condition and performance in connection with Chrysler's bankruptcy and Section 747 of the Consolidated Appropriations Act of 2010. Disclosure.

Fitzgerald Countryside Motors, Inc. v. **Chrysler Group, LLC**. American Arbitration Association, Orlando, Florida. Analysis of rejected Tampa-area Chrysler-Jeep dealer's financial condition and performance in connection with Chrysler's bankruptcy and Section 747 of the Consolidated Appropriations Act of 2010. Disclosure, hearing testimony.

Burke Brothers, Inc. v. **Chrysler Group, LLC**. American Arbitration Association, Newark, New Jersey. Analysis of rejected New Jersey Chrysler-Jeep dealer's financial condition and performance in connection with Chrysler's bankruptcy and Section 747 of the Consolidated Appropriations Act of 2010. Disclosure.

Joe Kidd Dodge, Inc. v. **Chrysler Group, LLC**. American Arbitration Association, Cleveland, Ohio. Analysis of rejected Cincinnati-area Dodge dealer's financial condition and performance in connection with Chrysler's bankruptcy and Section 747 of the Consolidated Appropriations Act of 2010. Disclosure, hearing testimony.

Haak Motors, LLC v. **Arangio & George, LLP**. United States District Court for the District of Maryland. Assessment of valuation of Chrysler-Dodge-Jeep dealership and rebuttal of plaintiff's damages analysis. Report.

**Manuel V. Fernandez** v. Portals Development Associates Limited Partnership, et al. Superior Court of the District of Columbia. Assessment of amounts due to limited partner in connection with real estate development in Washington, D.C. Declarations, deposition.

Protests of Navistar Defense, LLC and BAE Systems Tactical Vehicle Systems, LP. Intervenor/Awardee, **Oshkosh Corporation**. Department of the Army solicitation for Family of Medium Tactical Vehicles (FMTV). GAO File No. B-401865, et al. Assessment of price/cost analysis conducted by the Army and rebuttal of price/cost-related claims made by protestors related to $3 billion contract award. Declarations.

ALVAREZ & MARSAL



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

In the Matter of Automold Limited (in Liquidation). **A. Peters (The Liquidator of Automold Limited)** v. A. Menzies and N. Tombs (The Former Joint Administrators of Automold Limited). In the High Court of Justice of England and Wales, Chancery Division, Birmingham District Registry, Case 3092 of 2003. Valuation of U.S. subsidiary of U.K.-based auto parts manufacturer, in connection with bankruptcy of parent company. Report.

Protest of **Electronic Data Systems, LLC**. Department of the Treasury solicitation for Information Technology Infrastructure Managed Services. GAO File No. B-401686. Assessment of price evaluation performed by Government in connection with $200 million technology procurement. Declarations.

**Monterey Financial Services, Inc.** v. My Public Info, Inc., et al. United States District Court for the Eastern District of Virginia. Calculation of damages and rebuttal of defendants' counterclaims in connection with receivables factoring arrangement. Report, deposition.

Sonic Automotive, Inc. v. **Mercedes-Benz USA, LLC**. Superior Court of Mecklenburg County, North Carolina. Calculation of damages and valuation of auto dealership in connection with sale. Rebuttal of plaintiff's damages analysis. Report, deposition.

Charlie Earehart, Inc. v. **Chrysler Motors, LLC**, Thomas Cole, and Cole Automotive Group. Circuit Court of Raleigh County, West Virginia. Valuation of auto dealership and calculation of damages in connection with termination of dealership agreement. Report.

Jeff Sachs Chrysler v. **Chrysler Motors, LLC**. United States District Court for the Eastern District of Kentucky. Valuation and calculation of damages related to sale of auto dealership. Report.

**Overlook Systems Technologies, Inc.** v. Joseph P. Lortie, Jr., et al. Circuit Court of Fairfax County, Virginia. Determination of damages resulting from breach of fiduciary duties, theft of trade secrets, and other acts of defendants, in connection with contracts with the Department of Defense. Reports, deposition, trial testimony.

**DaimlerChrysler Financial Services Americas, LLC** v. Woodbridge Dodge, Inc.; Woodbridge Lincoln Mercury, Inc.; D. Adams and M. Adams. United States District Court for New Jersey. Review of dealership valuations and calculation of damages. Report, deposition.

Vision Airlines, Inc. v. **Computer Sciences Corporation**, et al. Circuit Court of Fairfax County, Virginia. Analysis of cost reimbursement applications and assessment of claims related to government contract subject to the False Claims Act. Report.

Optical Air Data Systems, Inc. v. **Argon ST, Inc.** and Gregory Nau. Circuit Court of Prince William County, Virginia. Analysis and rebuttal of plaintiff's $300 million lost profits damages claim in connection with development of laser target designators for the Department of Defense. Report, deposition.

Suffolk Construction, Inc. v. **Silo Point II, LLC (A joint venture of Carlyle Real Estate Partners and Turner Development)**. Circuit Court for Baltimore City, Maryland. Report on analysis of project costs charged by contractor to owner on $100 million real estate development. Report.

Lepetomane XXII, Inc. as Estate Representative of Suburban Dodge of Berwyn, Inc. v. **DaimlerChrysler Motors Company, LLC** and DaimlerChrysler Financial Services Americas, LLC. United States Bankruptcy Court for the Northern District of Illinois, Eastern Division. Analysis and rebuttal of plaintiff's lost profits damages claims in connection with bankruptcy of auto dealership. Report, deposition.



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

TMA Net, Inc. v. **Eagle Alliance (A joint venture of Computer Sciences Corporation and Northrop Grumman)**. United States District Court for the Eastern District of Virginia. Analysis and rebuttal of plaintiff's lost profits damages claims in connection with contract with U.S. Government agency. Report, deposition, trial testimony.

**Lisa, S.A.** v. Leamington Reinsurance Company, Ltd. and Avicola Villalobos, S.A. In the Supreme Court of Bermuda, Civil Division. Determination of damages and indicia of fraud related to money laundering scheme involving Central American conglomerate and offshore captive insurance company. Reports, trial testimony.

Protest of **Praxair, Inc.** National Aeronautics and Space Administration Solicitation No. NNL06153354R. GAO File No. B-298327. Assessment of economic impact of NASA's decision to construct a liquid nitrogen plant at its Langley facility. Affidavit in support of protestor.

**Harris Group, Inc.** v. Luminate, LLC; Michael S. Robinson; Robert D. Courtney; Jon E. Neff; Tanya Cavanaugh; Catherine N. Grover; Richard M. Jones; Dennis P. Lessard; Jay R. Winkelhake. District Court, City and County of Denver, Colorado. Determination of damages resulting from breach of fiduciary duties, theft of trade secrets, and other acts of defendants. Jury award upheld by Colorado Court of Appeals at 209 P.3d 1188 (Colo. App. 2009). Report, deposition, trial testimony.

Casa Orlando Apartments, Ltd.; Jasper Housing Development Company, Relating to Pine View Apartments; Alfred and Jean J. Porkolab; and Alan B. Porkolab, as Trustee of the Porkolab Family Trust No. 1, Relating to Lowell Apartments, Lorain, Ohio v. **Federal National Mortgage Association**. United States District Court for the Eastern District of Texas. Analysis of loss mitigation opportunities available to putative class of plaintiffs related to HUD-insured loans. Report in support of defendant's opposition to class certification.

CIBC Mellon Trust Company and **DaimlerChrysler Canada, Inc.** v. Century Holdings, Ltd.; CIBC Mellon Trust Company and **DaimlerChrysler Canada, Inc.** v. Wolfgang Otto Stolzenberg; and CIBC Mellon Trust Company and **DaimlerChrysler Canada, Inc.** v. Edwin Bänziger. Superior Court of the State of Connecticut, Judicial District of Stamford/Norwalk at Stamford. Analysis of amounts due under default judgments in excess of $1 billion ordered by English High Court of Justice. Affidavits, hearing testimony.

Protest of **Liquidity Services, Inc.** GSA Contract Award to Maximus, Inc.; GAO File No. B-294053. Adversary Proceeding before U.S. General Accounting Office. Assessment of government's evaluation of pricing proposals provided by offerors for surplus property sales contract. Declarations, hearing testimony.

**Dominion Video Satellite, Inc.**. v. EchoStar Corporation, et al. American Arbitration Association, Denver, Colorado. Calculation of damages suffered by Dominion resulting from breach of exclusivity provisions of contract by EchoStar. Report, deposition testimony, hearing testimony. Award affirmed by United States Tenth Circuit Court of Appeals as Dominion Video Satellite, Inc. v. EchoStar Satellite LLC, Nos. 04-1465, 05-1080.

In the Matter of the License of **Ford Motor Company**. Before the Motor Vehicle Board of the Texas Department of Transportation. Assessment of the economic impact of the Lincoln Premier Experience Program on auto dealers, and the financial and tax accounting applied by dealers to payments received under the program. Comparison of Lincoln Premier Experience with incentive programs of other automobile manufacturers. Deposition testimony, hearing testimony.

ALVAREZ & MARSAL



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

Freeman Ford, Inc. v. **Ford Motor Company**. Adversary Proceeding before the Commissioner of Motor Vehicles for the State of North Carolina. Assessment of financial and tax accounting applied by dealer to payments received under Ford Blue Oval Certification. Assessment of economic impact of Blue Oval on the dealership and comparison of Blue Oval with incentive programs of other automobile manufacturers. Deposition testimony, hearing testimony.

Gregory and Dreama Edel v. **Amway Corporation**, et al. JAMS Arbitration, Spokane, Washington. Rebuttal of claimants' damages claim and calculation of damages suffered by claimants as a result of alleged fraud perpetrated by respondents. Arbitration testimony.

**Richard C. Fuisz** v. Walter E. Lynch & Company, et al. Circuit Court for Fairfax County, Virginia. Determination of damages and forensic accounting investigation into operations of construction contractor and related companies. Report, deposition testimony, trial testimony.

**Morris National, Inc. and Very Special Chocolats, Inc.** v. Franz Haas Machinery of America, Inc. American Arbitration Association, Washington, D.C. Assessment of damages suffered by claimants resulting from respondent's misrepresentations and failure to perform under contract. Report on claimant's damages, arbitration testimony.

**George Yearsich and Linda Spanier** v. Randolph Williams, Inc. American Arbitration Association, Fairfax, Virginia. Assessment of fraud risk indicators present in modifications to historical financial records and transfers of assets to insiders, and damage to creditors resulting therefrom in connection with the insolvency of a real estate developer/contractor. Report, arbitration testimony.

Keyvan Rafei and Associates, Inc. v. **Alexandria West**. Circuit Court for Fairfax County, Virginia. Review of business transactions and calculation of debts and lost earnings damages resulting from termination of insurance agency agreement. Report, arbitration testimony.

**Dominion Video Satellite, Inc.** v. EchoStar Corporation, et al. American Arbitration Association, Denver, Colorado. Analysis of contract provisions providing for payments by Dominion, evaluation of EchoStar product pricing methodology, development of theory of damages, testimony regarding relative value of satellite transponders and damages. Report, arbitration testimony.

**Bartlett Construction, Inc.** v. St. Bernard Parish Council and Lynn Dean, 1999-1186 (La. App. 4th Cir. May 31, 2000), 763 So. 2d 94. 34th Judicial District Court, Parish of St. Bernard, State of Louisiana. Calculation of damages resulting from breach of construction contract by Parish government. Report, deposition, trial testimony.

**Carolyn Fox** v. Chadbourne & Parke, LLP. United States District Court for the District of Columbia. Analysis of damages suffered by plaintiff as a result of alleged wrongful termination. Report, deposition testimony.

**Decatur Liquors and Chekole Teshome** v. District of Columbia and Alcoholic Beverage Regulation Administration. United States District Court for the District of Columbia. Analysis of economic impact of alcohol sales restrictions on plaintiffs. Report, deposition testimony.

**Export Management Services, Inc.** v. ISERA Group, LLC. United States District Court for the Eastern District of Virginia. Rebuttal of counterclaimant's damages analysis in connection with development of U.S. Government contracts. Report, deposition testimony. Counterclaimant's damage claim dismissed.



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

SpecPrint, Inc. v. **McLean, Koehler, Sparks & Hammond**. Circuit Court for Baltimore County, Maryland. Opinion on compliance with professional standards by certified public accountant engaged in the provision of acquisition assistance. Opinion on value of acquired business. Report, deposition testimony.

**Poydras Center Associates (Metropolitan Life Insurance Company)** v. Guarisco, Weiler & Cordes. Civil District Court for the Parish of Orleans, State of Louisiana. Analysis of entities formed to avoid lease obligation. Calculation of damages resulting from breach of lease agreement. Report, deposition testimony.

CIBC Mellon Trust Company and **DaimlerChrysler Canada, Inc.** v. Wolfgang Otto Stolzenberg. Superior Court of the State of California for Los Angeles County; Superior Court for the State of Delaware in and for New Castle County. Analysis of amounts due under default judgment ordered by English High Court of Justice. Affidavits.

**Naheed Morrill** v. Clarence Morrill. Circuit Court for Fairfax County, Virginia. Presentation of methodology for allocation of Federal Thrift Savings Plan accounts between plaintiff and defendant, and critique of defendant's proposed methodology. Affidavit.

**Kentucky Bridge & Dam, Inc**. v. United States. United States Court of Federal Claims, 93-744C. Report on calculation of contract costs and related damages claims, and rebuttal of allegations of False Claims Act violations. Mediation consulting regarding costs allowable to contractor under the Federal Acquisition Regulation System and the Defense Federal Acquisition Regulation Supplement. Report.

**Janet C. Mensing** v. IBM Retirement Plan. United States District Court for the Eastern District of Virginia. Report on calculation of damages in claim for benefits under ERISA. Report.

**Erik B. Wulff** v. Colin Halpern, et al. Superior Court for the District of Columbia. Report on valuation and damages issues raised in oppressed shareholder action involving holder of master franchise agreement for Domino's Pizza locations in the United Kingdom and the Republic of Ireland. Reports.

**Brown Lincoln-Mercury, Inc.** v. Chad A. Danielski. Circuit Court for Fairfax County, Virginia. Report on calculation of lost profits suffered by Lincoln-Mercury body shop as a result of tortious acts of defendant. Report.

**McGregor Printing Corporation**, et al. v. Louis Krakower. Circuit Court for Montgomery County, Maryland. Report on conversion of funds and calculation of damages in connection with alleged unauthorized acts of corporate officer. Report.

Krakower v. Louis M. Byron and **McGregor Printing Corporation**. Superior Court of the District of Columbia. Report on post-employment benefits due to officers of corporation. Report.

**Estate of Elvoy Raines** v. Hawthorn. American Arbitration Association. Valuation of ownership interest in closely held public relations firm in connection with buyout of deceased minority owner. Report.

**AB&C Group** v. ManTech Design & Development. American Arbitration Association. Calculation of damages in contract claim related to mass mailing system. Report.

**Pannier**, et al. v. Buckhantz, et al. Circuit Court for Fairfax County, Virginia. Report on transactions in alleged fraudulent asset protection scheme perpetrated by defendants. Report.

ALVAREZ & MARSAL



## V. TRIAL TESTIMONY, HEARING TESTIMONY, DEPOSITIONS, AND REPORTS

**Metairie Venture, LLC and Paul Kapelow** v. Dana Developments, Ltd. Civil District Court for the Parish of Orleans, State of Louisiana. Report on compliance with development and management agreements for multi-family housing projects. Report.

Evelyn Allen, Gloria Braithwaite, et al. v. **The Fair Grounds Corporation**. United States District Court for the Eastern District of Louisiana. Preparation of expert witness report regarding defendant's compliance with the seasonal employee provisions of the Fair Labor Standards Act. Report.

ALVAREZ & MARSAL



## VI. LITIGATION, INVESTIGATIONS, AND RELATED CONSULTING

U.S.-based Manufacturer of Motorsports Vehicles. Analysis of compliance with dealer agreement terms by dealers located in the Mid-Atlantic and Northeast.

Europe-based Auto Manufacturer. Analysis of compliance with dealer agreement terms by dealers located in the Northeast.

Europe-based Manufacturer of Supercars. Analysis of compliance with dealer agreement terms by dealer located in Midwest.

Europe-based Auto Manufacturer. Serve as advisor to company team in the restructuring of dealer financial statements and accounting guidance.

Publicly-traded Defense and Information Technology contractor. Assist counsel to Audit Committee with investigation related to alleged violations of Australian and U.S. laws.

Ministry of Finance, Sovereign State. Prepared analysis of restructuring alternatives for real estate and operating businesses located in the Washington, D.C. area.

Publicly-traded Manufacturer and Distributor of Home Construction and Repair Materials. Assist internal audit in investigation of whistleblower complaints related to operations in China, Vietnam, and Australia, and subsequent remediation of controls.

Publicly-traded Manufacturer of Dental Consumables and Equipment. Assist counsel to the Audit Committee with investigation related to revenue recognition, rights of return, incentives in North America and China.

In The Matter of Confidential CPA Firm, Accounting and Auditing Enforcement Release Nos. 4349 and 4350, September 30, 2002. Expert for **U.S. Securities and Exchange Commission** (SEC) on the duties and responsibilities of independent auditors under the standards of the Public Company Accounting Oversight Board (PCAOB) in connection with audits of an SEC registrant.

Auto Manufacturer. State of California New Motor Vehicle Board. Analysis of warranty claims made by five California dealerships in connection with termination proceedings.

United States of America v. **Individual Defendant**. United States District Court for the Western District of Michigan. Analysis of transactions and real estate development and management company structure in connection with allegations of tax evasion.

**Faraday Future Intelligent Electric, Inc.** Assist counsel to Special Committee of electric vehicle manufacturer with investigation into allegations of inaccurate disclosures, including claims contained in a short seller report issued during October 2021.

Publicly-traded Industrial Printing and Manufacturing Company. Analysis and development of controls remediation plan for European foreign private issuer in connection with investigation by the SEC.

Publicly-traded Recreational Vehicle Manufacturer. Analysis of dealer sales transactions to assess compliance with sales and service agreements.

Publicly-traded Performance Improvement and Training Solutions Company. Analysis of accounting and internal controls issues in connection with revenue recognition investigation by the SEC.

Alvarez & Marsal



## VI. LITIGATION, INVESTIGATIONS, AND RELATED CONSULTING

Publicly-traded Enterprise Benchmarking and Consulting Firm. Analysis of accounting and internal controls issues in response to SEC investigation

**Unsecured Creditors Committee of Westinghouse Electric Company, LLC and affiliates**. Analysis of costs and accounting in connection with multibillion dollar contracts for the construction of nuclear plants in Georgia (Vogtle) and South Carolina (VC Summer).

Publicly-traded Pharmaceutical Company. Analysis of accounting and internal controls issues in response to SEC investigation. Briefings to management, board, and SEC.

Publicly-traded Retailer. Analysis of claims in connection with a dispute with a provider of temporary labor.

**Government of the District of Columbia.** Investigation into compliance with policies and procedures by Metropolitan Police Department, Fire and Emergency Medical Services, and Department of Consumer and Regulatory Affairs, including assessment of remediation and recommendations for changes to standard operating procedures in connection with a fatal fire in August 2019.

Reinsurance Company v. Auto Dealer Group. United States District Court for the District of Kansas. Analysis of valuation and damages in connection with insurance claims related to alleged damage to 1,200 vehicles. Mediation presentation.

Publicly-traded Petrochemical Company. Financial advisor to company's SOX team in connection with internal control deficiencies on $10+ billion chemical plant construction project.

**Orchids Paper Products Company**. U.S. Bankruptcy Court, District of Delaware. Financial Advisor to Official Committee of Unsecured Creditors. Consulting re valuation of debtor.

Private Real Estate Developer. Analysis of design-build costs in connection with guaranteed maximum price contract for development of a condominium project in downtown Austin, Texas.

SEC-Registered Utilities Financing Corporation. Analysis of accounting, valuation, and disclosure issues related to loan accounting and impairment in connection with SEC investigation. Briefings to management and SEC. Investigation closed with no charges.

**Office of the State Superintendent of Education, Government of the District of Columbia**. Investigation into irregularities in graduation rates at District of Columbia Public Schools. 49,000 students, 7,000 staff.

Publicly-traded provider of asset management and business processing solutions for education, healthcare, and government clients at the federal, state, and local levels. Analysis of class certification issues related to bankrupt borrowers of education-related debt.

Private Company that serves as an independent provider of aviation services to customers in more than 100 countries. Assessment of price/cost analysis conducted by the Department of State and rebuttal of price/cost-related claims made by protestors related to $10 billion Worldwide Aviation Support Services (WASS) contract for the Bureau for International Narcotics and Law Enforcement Affairs, Office of Aviation (INL/A).

Publicly-traded biomass aggregator. Led forensic accounting investigation into allegations related to financial reporting, internal controls, and foreign currency transactions raised by employee.



## VI. LITIGATION, INVESTIGATIONS, AND RELATED CONSULTING

**Maryland State Department of Education**. Investigation into alleged irregularities in graduation rates in Prince George's County Public Schools, the second largest school district in Maryland with over 130,000 students and 19,000 employees.

Publicly-traded (103 on the Fortune 500 list) energy procurement, supply, and transaction advisor to commercial and industrial customers, principally in the aviation, marine and land transportation industries. Analysis of claims against U.S. Defense Logistics Agency in connection with the termination of a fuel supply contract in Central Asia.

Publicly-traded Real Estate Investment Trust. Assist counsel and management in performance of forensic accounting investigation related to accounting for net operating income, lease settlement income, common area maintenance, and related components of revenue and expense. Assistance with related SEC and DOJ inquiries. Briefings to management, SEC, DOJ, other government agencies.

Publicly-traded Aerospace and Defense Company. Assist counsel and management in performance of forensic accounting investigation in connection with restatements of financial statements related to accounting for multibillion-dollar long-term contracts and acquired long-term contracts. Contracts relate to manufacture of ammunition for the U.S. Department of Defense and commercial users. Assistance with related SEC inquiry and securities litigation. Briefings to management, board, and SEC.

**State of New Jersey, Newark Public Schools**. Consulting assistance to school system in connection with student census and residency determination.

Coast Buick GMC Cadillac d/b/a Holloway Buick GMC, et al. v. **Mahindra & Mahindra LTD. and Mahindra USA, Inc.** Opposition to class certification and rebuttal of plaintiffs' damages claims.

New York Real Estate Development. On behalf of project owner, led multiple teams auditing contract costs in excess of $1 billion on the largest private real estate development in U.S. history.

Protest of Lockheed Martin Corporation. Intervenor/Awardee, **Oshkosh Defense LLC**. Department of the Army solicitation for Joint Light Tactical Vehicle (JLTV). GAO File No. B-412056, et al. Assessment of price/cost and reliability analysis conducted by the Army and rebuttal of price/cost-related claims made by protestors related to $30 billion contract award.

Manufacturer of Luxury Sports Cars. Investigation into compliance with sales and service agreements by dealers.

Teodoro Maldonado and Steven Maldonado Individually and Derivatively on Behalf of Saratoga Springs Nissan LLC, 2906 RT 9 Realty LLC and Best Brothers v. **Alain Dibre and Patrick Dibre and AP Management Group, Inc.**, Supreme Court, State of New York, County of Saratoga. Analysis of dealership financial statements and valuation in connection with buy-sell dispute.

NYSE-Traded Real Estate Investment Trust. Conducted analysis of expenses submitted to shareholders by hedge fund and real estate firm in connection with proxy fight.

**Commissioner of Administration, State of Louisiana**. Led team analyzing Louisiana Department of Education's application of school funding formula and student counts at the district level, targeting 12 Parishes.

Private Equity Firm. Supervised team providing financial management and accounting services to private equity firm.

ALVAREZ & MARSAL



## VI. LITIGATION, INVESTIGATIONS, AND RELATED CONSULTING

National Bank. Conducted evaluation of audit and accounting procedures performed by external accounting firms and analysis of municipal internal controls in connection with $50 million theft by the Treasurer of the City of Dixon, Illinois.

Medical Device Manufacturer. Engaged to assist company in connection with internal investigation into revenue recognition and other accounting and disclosure-related issues.

Life Support and Security Contractor. Conducted internal controls evaluation related to compliance with U.S. Government procurement regulations for U.S.-based company providing life support and security contracting services to U.S. and foreign clients in conflict regions, including Iraq. Briefings to management and Department of State.

Reinsurance Company. Conducted investigation on behalf of Caribbean-based reinsurer related to claims of underpaid reinsurance premiums and over-ceded reinsurance losses on medical policies issued by insurer based in Abu Dhabi, United Arab Emirates.

Verseidag Seemee US, Inc. v. **Big Image Graphics, Inc.**, et al. United States District Court for the District of New Jersey. Consulting regarding solvency, alleged preference payments, and fraudulent transfers in connection with transactions between companies in the printing industry.

Frank C. Carlucci III v. **Michael S. Han and Envion, Inc.**, United States District Court for the Eastern District of Virginia. Provided forensic accounting analysis of books and records of biofuel company with operations in Washington, D.C. and China, in connection with $32.4 million claim related to convertible note.

Government Agency. Led forensic accounting investigation into allegations related to violations of local and Federal procurement regulations by senior employee of school district. Claims related to E-Rate contracts under the Schools and Libraries Program of the Universal Service Fund, administered by the Universal Service Administrative Company (USAC) under the direction of the Federal Communications Commission (FCC).

**Office of the State Superintendent of Education, Government of the District of Columbia.** Led investigation into test security and potential testing violations at Washington, D.C. Public Schools and Public Charter Schools during the administration of the 2012, 2013, and 2014 D.C. Comprehensive Assessment System and the 2015 Partnership for Assessment of Readiness for College and Careers (PARCC) test.

Super Regional Bank. Led forensic accounting investigation into allegations related to financial reporting, internal controls, valuation of investments, and compliance raised by former officer related to management of investment portfolios.

Hedge Fund Management Company. Consulting related to implementation of U.S. GAAP-compliant accounting systems and management of internal accounting functions; consulting related to valuation and equity transactions.

**Attorney General of the State of Colorado, Colorado Department of Education, Denver Public Schools.** Led investigation into potential testing violations at certain Denver Public Schools during the administration of the 2011 Colorado Student Assessment Program.



## VI. LITIGATION, INVESTIGATIONS, AND RELATED CONSULTING

**Office of the State Superintendent of Education, Government of the District of Columbia.** Led investigation into potential testing violations at Washington, D.C. Public Schools and Public Charter Schools during the administration of the 2011 D.C. Comprehensive Assessment System.

Tenant Association, Washington, D.C. Consulting regarding costs of capital improvements and allowable rent increases under Rental Housing Act of 1985.

Defense Base Act Claim, Washington, D.C. Consulting regarding benefits payable to U.S. Agency for International Development contractor killed in Iraq under the provisions of the Defense Base Act.

Legal Professional Liability Matter, Montgomery County, Maryland. Consulting for defendants in connection with claims against executor and trustee of estate related to investment and real estate development transactions.

Chona Allison; **R-T Specialty of Illinois, LLC**; **R-T Specialty, LLC** v. CRC Insurance Services, Inc. United States District Court for the Northern District of Illinois. Valuation and damages consulting related to the departure of over 100 employees from a wholesale insurance brokerage.

HVAC Distributor, Sao Paolo, Brazil. Valuation consulting in connection with claims that Japanese manufacturer breached exclusive distribution agreement for variable refrigerant volume systems with plaintiff.

Estate Matter, Washington, D.C. Forensic accounting investigation into claims that representative of trust diverted proceeds in a manner not consistent with governing agreements.

Hedge Fund Management Company, Washington, D.C. Consulting related to financial reporting and consolidation of investment funds under U.S. generally accepted accounting principles.

Chimes District of Columbia, Inc. v. **The United States of America**. United States Court of Federal Claims. Consulting regarding payments due under contract with General Services Administration for services at U.S. Government facilities.

Insight Holding Group, LLC v. **Sitnasuak Native Corporation**, et al. United States District Court for the Eastern District of Virginia. Consulting regarding damages and management fees in connection with Department of Defense contracts.

**Pan Am Flight 73 Resolution Trust**. Consulting related to allocation of payments to victims of September 1986 terrorist attack in Karachi, Pakistan.

Protest of Northrop Grumman, et al. **Raytheon Company**, Intervenor. U.S. Army Material Command solicitation for Rapid Response Third Generation (R23G). GAO File No. B-401076. Consulting regarding Government's price evaluation and issues asserted by Protestors in connection with multi-billion dollar, defense-related procurement.

In re Charter Communications, Inc., et al., Case No. 09-11435, United States Bankruptcy Court, Southern District of New York. **Law Debenture Trust Company of New York, Indenture Trustee**, Assisted counsel for bondholders in evaluating reorganization valuation and liquidation analysis in connection with bankruptcy of third-largest U.S. cable television system operator.

**Alvarez & Marsal**



## VI. LITIGATION, INVESTIGATIONS, AND RELATED CONSULTING

In re **Lehman Brothers Holdings, Inc. (LBHI)**, et al., Case No. 08-13555, United States Bankruptcy Court, Southern District of New York. West Bay Development. Engaged by LBHI to conduct an analysis of West Bay Development's project-related costs for development and construction of the Property, including forensic analysis of related-party transactions.

In re **Lehman Brothers Holdings, Inc. (LBHI)**, et al., Case No. 08-13555, United States Bankruptcy Court, Southern District of New York. Driftwood Hospitality Management (DHM). Engaged by LBHI to review transactions related to DHM and eight LBHI properties, including: 1) Crowne Plaza Cleveland; 2) Radisson Worldgate/Vacation Club; 3) Crowne Plaza Minneapolis; 4) Sheraton Jacksonville; 5) Nassau Palm Resort; 6) Houston Holiday Inn; 7) Paradise Island Harbour Resort; and 8) Strathallan Rochester.

In re **Lehman Brothers Holdings, Inc. (LBHI)**, et al., Case No. 08-13555, United States Bankruptcy Court, Southern District of New York. Orlando Radisson Worldgate. Engaged by LBHI to conduct an analysis of Orlando Radisson Worldgate's financial performance. Analyzed the Resort's occupancy rates, revenues, and labor costs and its related Vacations Club's revenues, labor, sales, and marketing-related costs.

Government Contractor. Assisted counsel for Top-5 defense and government contractor with analysis and critique of pricing evaluation performed by U.S. Government agency related to $800 million technology procurement.

World Bank Group, **International Finance Corporation**. Analysis of ranges of recovery on termination of development project in Latin America.

National Bank. Engaged as defendant's consulting expert in putative class action involving allegations of mismanagement of multi-billion dollar portfolio.

Danvers Motor Company, et al. v. **Ford Motor Company**.  Engaged as defendant's damages and accounting consulting expert in putative class action involving the Robinson-Patman Act, the Automobile Dealers' Day in Court Act, and various state franchise law claims.

**London Reinsurance Group, Inc.** Consultant in defense of reinsurer against allegations of noncompliance with risk transfer provisions of FAS 113.

Defense Contractor. Forensic accounting investigation into alleged noncompliance with terms of government contract at a Fortune 150 defense contractor.

Mortgage Loan Servicing Organization. Engaged as defendant's expert with respect to damages in action alleging misconduct on the part of mortgage servicer.

Auto Industry Supplier. Consulting regarding valuation of rejection damages claim and related claims in connection with bankruptcy of Tier 1 supplier.

**Biovail Corporation**. Consulting regarding accounting and financial reporting issues in SEC and Ontario Securities Commission investigations of accounting at pharmaceutical company and related civil litigation.

**7-Eleven, Inc.** v. Philip Morris USA, Inc. U.S. District Court for the Northern District of Texas. Consulting expert for plaintiff with respect to damages and accounting issues in Robinson-Patman Act and breach of contract case, which settled approximately 10 days before trial.

Alvarez & Marsal



## VI. LITIGATION, INVESTIGATIONS, AND RELATED CONSULTING

Westbard Apartments, LLC, et al. v. Westwood Joint Venture, LLC, et al. (**National Electrical Benefit Fund** v. Cohen). Court of Special Appeals of Maryland. Consulting expert for plaintiff regarding damages and valuation issues in connection with rights of first offer and refusal in real estate acquisition and development project including apartments, condominiums, and commercial properties.

**Dana Corporation.** Consulting regarding application of Statement of Financial Accounting Standards No. 5 to certain incurred but not reported asbestos-related liabilities of Tier 1 auto industry supplier.

Telecommunications Companies. Dispute related to $200 million claim for telecommunications services in connection with bankruptcy of client. Analysis of defenses to be asserted by client; analysis of performance activity under multiple related contracts.

**Ashland Specialty Chemical Company.** U.S. Department of Justice investigation of price-fixing in the chemicals industry, and related civil suits. Analysis of list and off-list pricing and margins for subject company.

**Arch Chemicals** v. United States. United States Court of Federal Claims. Analysis of pricing evaluation performed by Defense Energy Support Center in connection with contract to supply hydrazine to the U.S. Government.

**U.S. Pharmacia.** U.S. Department of Health and Human Services OIG investigation of pharmacy acquisitions.

Pharmaceutical Development Company. SEC investigation of financial reporting and disclosure related to revenue recognition for joint ventures of Ireland-based company.

Medical device manufacturer. Analysis of valuation issues related to royalties on patented gene technologies licensed from research university. Development of economic settlement model.

**Raytheon Aircraft Company.** SEC investigation of financial reporting and disclosure related to revenue recognition, valuation of assets, and accounting for leased aircraft.

**Philadelphia Stock Exchange.** SEC investigation of potential trading violations by members of the exchange.

**Louisiana Health Service and Indemnity Company (Blue Cross Blue Shield of Louisiana)** v. Rapides Healthcare System. U.S. District Court for the Middle District of Louisiana. Damages and accounting analyses in litigation      involving health care provider contracts with hospital group.

Europe-Based Clothing Manufacturer. Investigation of fraud committed by corporate officers.

Washington, D.C. Public Charter School. Investigation of fraud by management company.

Intelecom, Inc. v. **Cable & Wireless USA, Inc.** United States District Court for the Southern District of Indiana. Consulting regarding damages theories and calculation of damages in contract claim.

Lake Ozark Sand and Gravel v. **APAC-Missouri, Inc.** United States District Court for the Western District of Missouri. Consulting regarding average variable costs of production for extraction operation in connection with alleged violations of Sherman Antitrust Act.

## VI. LITIGATION, INVESTIGATIONS, AND RELATED CONSULTING

In Re: Dale E. Behan and Linda C. Behan. United States Bankruptcy Court for the Western District of Louisiana. Intercargo Insurance Company v. Dale E. Behan and Linda C. Behan, Adversary Proceeding. Examination of debtor corporate and personal financial records.

In re: Global Crossing, Ltd, Debtor. United States Bankruptcy Court for the Southern District of New York. Consulting regarding generally accepted accounting principles in the United States and United Kingdom related to transactions involving indefeasible rights to use telecommunications network capacity.

In re: Enron Corp., Debtor. United States Bankruptcy Court for the Southern District of New York. Consulting regarding application of Statement of Financial Accounting Standards No. 133, *Accounting for Derivative Instruments and Hedging Activities*.

## VII. PUBLICATIONS AND SPEAKING ENGAGEMENTS

"Master Class – Managing a True Corporate Crisis/Major Internal Investigation," Securities Enforcement Forum Central 2023, Securities Docket, Chicago, September 2003. Panelist.

"CEO Succession Planning and Human Capital Oversight," From Battlefield to Boardroom. National Association of Corporate Directors, June 2022. Moderator.

"Leading with Purpose, From Commanding in a War Zone to Fighting Corporate Corruption," Partnering Leadership Podcast with Mahan Tavakoli, August 2021.

"Current Receiverships: What's Working and What's Not - Monitor v. Receiver," National Association of Federal Equity Receivers, August 2021. Panelist.

"Damages in Litigation – Unreasonable Assumptions Lead to Rejection of Damages," *Insights*, March 2020.

"A Lawyer's Guide to Financial Statements: GAAP and SEC Registrant Filing Requirements," McGuire Woods, October 2018. CLE presentation.

"Municipal Fraud, Noncompliance, and Abuse: Views from the Field," Government Finance Officers Association Annual Summer Meeting, June 2018. Presentation.

"Goal Seeking: The Pursuit of Higher Graduation Rates," with Ingrid Gardiner, *Insights*, April 2018.

Featured in, "Five Virtues of A&M's Veteran Leaders," *Insights*, November 2017.

Faculty Member, American Institute of CPAs Expert Witness Skills Workshop, September 2017.

"Accounting Fraud & SEC Investigations: What Lies Ahead in 2017 & Beyond," with Adoria Lim of The Brattle Group. The Knowledge Group Webcast Series, June 2017. Presentation.

"Financial Consulting in the Washington, D.C. Region and Prospects for Future Growth," Economic Roundtable Series, Greater Washington Board of Trade, June 2017, Presentation.

"Dealer Fraud in the Automotive Industry," with Dan You, *Raising the Bar*, November 2015, Article.

ALVAREZ & MARSAL

## VII. PUBLICATIONS AND SPEAKING ENGAGEMENTS

"Working with CPA Experts in Forensic Accounting Investigations: Views from the Field," with J. Evans Rice of Hogan Lovells and David Benkert of Navigant. Roundtable Series, Commercial and Business Litigation Committee, American Bar Association, July 2015. Presentation.

"Measuring Economic Harm: Lost Profits or Lost Business Value," with Kristopher Boushie of NERA, American Society of Appraisers, May 2015. Presentation.

"Fraud and Forensics: A Review of Today's Accounting Schemes," Beta Alpha Psi, 2015 Atlantic Coast Regional Meeting, March 2015. Presentation.

"Forensic Accounting Investigations: Views from the Field," with Cristal Brun, Maryland Association of CPAs Forensic and Valuation Services Speaker Series, February 2015. Presentation.

"What You Need to Know About Fraudulent Conveyance Law in 2014," with Dion Hayes of McGuireWoods and William Wagner of Pepper Hamilton, The Knowledge Group Webcast Series, August 2014. Presentation.

"Current State of Financial Consulting in the Washington, D.C. Region and Prospects for Future Growth," Economic Roundtable Series, Greater Washington Board of Trade, March 2014, Presentation.

"Damages Measured by Lost Profits or Lost Business Value," with Amita Kancherla, *Raising the Bar*, November 2013, Article.

"Valuation in Fraudulent Transfer Actions: The Balance Sheet Test," with Ed McDonough and Laureen Ryan, *Raising the Bar*, June 2012. Article.

"Determining the Value of Commercial Damages," with Ingrid Christian, *Raising the Bar*, May 2011. Article.

Quoted in, "Corporate Scandals Boost Alvarez & Marsal Unit," *Law360*, January 18, 2008.

"Calculating Discount Rates in Lost Profits Analysis," *Raising the Bar*, January 2009. Article.

"Accounting for Business Interruption Claims," with John S. Wyckoff, *Risk Newsletter: Legal Issues in Insurance Coverage*, Winter 2005. Article.

"Elements of a Winning Commercial Damages Claim: A Case Study," Howrey Simon Arnold & White LLP. Presentation.

"Valuation Issues in Dissenting Shareholder Actions," National Association of Certified Valuation Analysts Maryland/Washington, D.C. Chapter. Presentation.

"Stick to Auditing – Independence Concerns Led to SEC Rule Restricting Services by Accountants," Legal Times, Washington, D.C., March 26, 2001. Article.

"CPAs on Your Side – Use of CPAs as Expert Witnesses," Legal Times, Washington, D.C., March 27, 2000. Article.

"On Your Way to Court, Teamwork is Key," *Insight*, Washington, D.C., Spring 2000. Article.

**ALVAREZ & MARSAL**



## VII. PUBLICATIONS AND SPEAKING ENGAGEMENTS

"Build a Better Estate Plan – Adequate Disclosure of Gifts Equals Valuation Certainty," *Insight* , Washington, D.C., Fall 2000. Article.

"Tax and Business Considerations in Selection of Entity," D.C. Bar Association. Presentation.

"Recent Technical Developments in Accounting and Auditing and Implementation of SAS 82," Society of Louisiana CPAs, Kenner, Louisiana. Presentation.

"Implementation of Governmental Accounting Standards Board Statement No. 31, *Accounting and Financial Reporting for Certain Investments and for External Investment Pools,*" First National Bank of Commerce, Metairie, Louisiana. Presentation.

"Effective Use of Business Valuations in Litigation," various legal firms and associations. Presentation.

"Valuations, Gifting, and Recent IRS Settlements," Tax Management Real Estate Group, Washington, D.C. Presentation.

"Keep the IRS from Inheriting Your Dealership – How to Keep it in Your Family," Washington Area New Auto Dealers Association, Maryland New Car and Truck Dealers Association. Presentation.

Alvarez & Marsal



## IX. PROFESSIONAL AND CIVIC ORGANIZATIONS

American Institute of CPAs, Professional Ethics Executive Committee, Enforcement Subcommittee. Responsible for the investigation of complaints alleging violations of the Code of Professional Conduct relating to independence and behavioral standards as well as complaints alleging violations of the rules of the Code related to members' performance of professional services, 2021-Present.

American Institute of CPAs, Forensic and Valuation Services Section, Washington, D.C. Accredited in Business Valuation Program Champion, 2010-2018.

Inspector General Advisory Group Member, Office of the Inspector General, Montgomery County, Maryland 2012-2017.

Leadership Greater Washington, Treasurer, Finance Committee Chair, Executive Committee Member 2016-2018; Board of Directors 2013-2019; Compensation Committee Chair 2018-2019; Finance Committee 2009-2011 and 2012-2018; Strategic Planning Committee 2020-2021; Class of 2009.

Council for Court Excellence, Washington, D.C., Board of Directors 2000-2002, and 2007-Present, Development Committee Member, 2008-2010, Dinner Committee Member 2013-2015.

National Association of Certified Valuators and Analysts, Exam and Grading Committee 2006-2015, Quality Enhancement Reviewer 2000-2004.

Society of Louisiana CPAs, Peer Review Committee, 1996-1999.

Greater Washington Society of CPAs, Ethics Committee, Former Member.

Executive Committee Member, National Litigation Services, PLLC, 1999-2002.

American Bar Association, Associate Member, Sections of Litigation and Public Contract Law, Expert Witness Committee, White Collar Crime Committee, Intellectual Property Litigation Committee, Products Liability Committee.

Association of Certified Fraud Examiners, Washington, D.C. Chapter, Maryland Chapter.

Association of Government Accountants, Washington, D.C. Chapter.

Association of Insolvency and Restructuring Advisors.

Maryland Association of Certified Public Accountants.

Krewe of Orpheus, Treasurer, Vice President, 1992-1999.

Washington Artillery Association Board of Managers, Treasurer, 1994-1998.

Washington Artillery Veterans Association, Perpetual Member.

United States Field Artillery Association, Lifetime Member.

Psychological Operations Regimental Association, Life Member.

Veterans of Foreign Wars, Life Member.

U.S. Army Veteran (Iraq) Awarded Bronze Star, Iraq Campaign Medal with two Campaign Stars (Liberation of Iraq, Transition of Iraq), Navy Presidential Unit Citation. Served 1985-2005.

ALVAREZ & MARSAL