UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| Plaintiffs | NO. 19-11133, c/w 19-14512 |
| V. | SECTION: "E" (5) |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| Defendants | **JUDGE: Morgan** |
| | **MAGISTRATE JUDGE: North** |
| *Applies to: Both Cases* | |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO
EXCLUDE EXPERT TESTIMONY OF DR. JOHN KIND**

Pursuant to §VI.2 of the Thirteenth Case Management Order, Plaintiffs submit this Brief in support of their motion to exclude the testimony of proposed defense expert, Dr. John Kind. For the reasons stated herein, his testimony should be excluded. A copy of Kind's Report is attached as **Exhibit 1.** Excerpts from his deposition are attached as **Exhibit 2.**

**I.     INTRODUCTION.**

Federal Rule of Evidence 702 ("Rule 702") permits an expert to testify in the form of an opinion *if* (among other factors) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a). (emphasis added). Prior to admitting expert testimony, the Court must make a threshold determination of the admissibility of it. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

Admission of expert testimony "is proper only if all three of the following things are true: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Bella v. Cain*, No. CIV.A. 12-2323, 2015 WL 1311216, at *5 (E.D. La. Mar. 23, 2015) *citing City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

In this Circuit, "the court's *main focus* should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (emphasis added). "Assisting the trier of fact means 'the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.'" *Id.*, *citing Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). *See also In re Air Crash Disaster at New Orleans, Louisiana,* 795 F.2d 1230, 1233 (5th Cir.1986) ("trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury).

On this point, Dr. Kind's testimony fails in its entirety. As set forth in more detail below, Dr. Kind opines that:

> Proof of specific causation requires the plaintiffs to prove specific elements and to consider and exclude all alternate sources (an issue of law), **Exhibit 1, Kind Report at 44-45**;
>
> Proof of specific causation requires the Plaintiffs to prove that they fell within the most sensitive population (an issue of law), **Exhibit 1, Kind Report at 9, 45-46**;
>
> The Court was wrong in its decision on general causation (an issue of law), **Exhibit 1, Kind Report at 45-47**;
>
> Plaintiff's symptoms are common and have multiple causes (an issue of common knowledge) **Exhibit 1, Kind Report at 47-52**; and

2

> Odors from the JPLF could not be a "continuous source of odors" because wind directions change (an issue of common knowledge) **Exhibit 1, Kind Report at 68-79**.

For each of these, Dr. Kind seeks to opine on issues of law (reserved for the Court) or upon issues of common sense and knowledge (reserved for the jury). Although he is a well-spoken witness who speaks in pseudo-scientific terms, his actual opinions are not scientific at all, are of no help to the trier of fact, and will only serve to confuse the jury.

And when an expert has become nothing more than a partisan advocate, he loses his right to be qualified as an expert. *In re Commercial Money Center, Inc*., 737 F. Supp. 2d 815, 844 (N.D. Ohio 2010). Admissible expert opinion needs to be based on something more than pre-conceived conclusions buttressed only by the client's version of the facts. *CR Operating Co., Inc. v. Great American Ins. Co*., No. CIV-12-0715-HE, 2013 WL 12091069, at *5 (W.D. Okla. Sept. 27, 2013).

## II. DR. KIND'S PROPOSED TESTIMONY WILL NOT ASSIST THE JURY AND MUST BE EXCLUDED.

An experienced and professional witness, Dr. Kind was qualified by the Court as an expert in "toxicology; the fate and transport of compounds; and odor science, including fact and transport of odorous compounds, how they impact people, and how they are measured in the field:"[1] R.Doc. 323 at 28. and he thereafter testified in this case at the trial on General Causation. However, his testimony for the upcoming *Addison* trial has been wholly repurposed and is not helpful to the jury in resolving the issues remaining in the case.

---

[1] Notably missing from this list is statistical analysis and mathematics. In his report, Dr. Kind criticizes Dr. Schiffman's calculation of the extremely unlike chance that the Landfill was not the source of the "unique chemical signature" of the samples collected in River Ridge and Waggaman, which was replicated in the samples taken at the Landfill (Report at 81) but offers no basis for his qualifications to render such opinions.

> **A.    If the expert's proposed testimony consists of arguments or observations that can be made by counsel, then the proposed testimony should be excluded.**

If the expert's proposed testimony consists of arguments or observations that can be made by counsel, then the expert's "scientific, technical, or other specialized knowledge" adds nothing the equation, and should be excluded. *See*, *e.g*., *Pugh v. LaQuinta Motor Inns, Inc.*, No. CIV.A. 94-510, 1996 WL 44170, at *2 (E.D. La. Feb. 2, 1996) ("Mr. Trapolin's observations regarding the management's installation and placement of a grab bar and warning sticker can just as easily be made by jurors who have seen pictures of the bathroom at issue. These portions of the expert report do not bring to the jury more than the lawyers can offer in argument.")

In *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. MDL 07-1873, 2009 WL 2169224, at *3 (E.D. La. July 15, 2009), the court excluded testimony that "consists of a cumulative appreciation of other experts' testimony-something the jury can and will do, with the benefit of counsel's arguments to such extent." And in *McNabb v. Graham Gulf, Inc.*, No. CIV.A. 03-2904, 2005 WL 1038024, at *2 (E.D. La. Apr. 27, 2005), the court explained, "Why the plaintiff may have misperceived what happened during an accident which occurred in the matter of seconds is certainly an issue to which members of the jury can relate, and can understand, without expert testimony which clearly does not offer "more than the lawyers can offer in argument."

This is particularly true when the expert undertakes to criticize other experts. For example, in *deWit v. UPS Ground Freight, Inc*., No. 1:16CV36-MW/CAS, 2017 WL 5905575, at *2 (N.D. Fla. July 25, 2017), the court explained,

> Plaintiffs separately contend that Mr. Kuzel's criticism regarding Dr. Booeshaghi's and Mr. Napier's use of "hindsight bias" to reach their opinions is inadmissible. ECF No. 106, at 6–8. This Court agrees. Specifically, Mr. Kuzel opines that "Plaintiffs' experts have applied hindsight to criticize Mr. Stone's performance." ECF No. 106-1, at 10. But when the façade is stripped away, that opinion merely takes a commonsense concept and applies it to a specific field—human factors. But that does not "concern[ ] matters that are beyond the understanding of the average

4

lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (en banc) (*citing United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). Such testimony therefore would not be helpful to the jury and "offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262–63 (citation omitted). That opinion is therefore excluded.

In *Cordoves v. Miami-Dade Cnty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015), the court excluded an expert's critique that "reads less like an expert's opinion and more like a lawyer's *Daubert* motion," and when the expert sought to testify that his counterpart's opinions rested on "pseudo, otherwise non-existent, requirements" that ran afoul of the applicable regulations, the court ruled "that is a legal argument for the lawyers to make, not [this expert]." Id.

### B.     Experts are not permitted to testify on issues of law.

In like measure, "an expert may never render conclusions of law." *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009). *See Snap-Drape, Inc. v. Commissioner of Internal Revnue*, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that [Rule 702] does not allow an expert to render conclusions of law.").

This Court has repeatedly ruled that expert testimony that offers a legal opinion is inadmissible. *Marks v. Smith*, No. CV 15-5454, 2017 WL 988787, at *3 note 39 (E.D. La. Mar. 14, 2017) (Morgan, J.) *citing Estate of Sowell v. United States of America*, 198 F.3d 169, 171 (5th Cir. 1999) and *Askanase v. Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997); *Ratliff v. Seadrill Americas, Inc.*, No. CV 17-11581, 2018 WL 6523479, at *2 (E.D. La. Dec. 12, 2018) (Morgan, J.) (an expert witness "is not permitted to offer conclusions of law"). *See Howard v. Offshore Liftboats, LLC*, No. CV 13-4811, 2016 WL 232238, at *3 (E.D. La. Jan. 19, 2016) (Morgan, J.) ("Whether the Plaintiffs contributed to their injuries and, as a result, were contributorily negligent is a legal issue which must be decided by the jury."); *Spikes v. McVea*, No. CV 17-8164, 2018 WL 6448846, at *2 (E.D. La. Dec. 10, 2018) (Morgan, J.) ("Dr. Ochella's opinion that certain conduct constituted

deliberate indifference is an inadmissible legal conclusion."); *Fick v. Exxon Mobil Corp.*, No. CV 13-6608, 2017 WL 11673924, at *3 (E.D. La. Mar. 14, 2017) (Morgan, J.) ("Mr. Davidson will not be allowed to testify that Exxon agreed to remove the remaining flowlines in the field. This is a legal opinion, which is not allowed."); *Versai Mgmt. Corp. v. Landmark Am. Ins. Corp.*, No. CIV.A. 11-2139, 2013 WL 681902, at *2 (E.D. La. Feb. 22, 2013) (Morgan, J.) ("Whether the Policy is a valued policy within the meaning of the VPL is a question of law for the Court, not a question of fact for the jury.").

When an expert who critiques the work of another expert is actually rendering a legal opinion, the testimony is inadmissible. *In re Heparin Prod. Liab. Litig.*, 803 F. Supp. 2d 712, 751 (N.D. Ohio 2011), *aff'd sub nom. Rodrigues v. Baxter Healthcare Corp.*, 567 F. App'x 359 (6th Cir. 2014) ("Although an expert may critique the methods of another expert, this opinion strays into a legal conclusion. 'An expert opinion on a question of law is inadmissible.'").

These rules are imposed because an expert professing to testify regarding the governing law invades "the province of the court to determine the applicable law and to instruct the jury as to that law." *Willette v. Finn*, 778 F. Supp. 10, 11 (E.D. La. 1991). In addition, "admitting expert legal testimony would pose the risk that jurors would confuse the Court's instructions with the views put forward by the parties' experts." *Id*. As a result, whatever value testimony on legal issues might have (which is usually none), that value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," requiring its exclusion under F.R.Evid. 403, and such testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue," requiring its exclusion under F.R.Evid. 702.[2] *Cf. David v. Signal Int'l,*

---

[2] Although opinions by experts on the ultimate issue in the case are not automatically objectionable, *see* the Advisory Committee Note to FRE 704, those Notes demonstrate that FRE

6

*LLC*, No. CV 13-6219, 2015 WL 14018914, at *2 (E.D. La. Jan. 11, 2015) ("the Court finds testimony regarding the language and applicability of immigration statutes and regulations and whether conduct generally would be consistent or inconsistent with these laws does not amount to a legal conclusion in this case and will be helpful to the jury") (Morgan, J.).

### 1. Dr. Kind's opinions on the requirements to establish general causation are issues of law.

Despite the well-established law, Dr. Kind seeks to instruct the jury on the definition of "specific causation," and in particular upon what evidence the jury may and may not consider in determining whether specific causation has been shown. More specifically, Dr. Kind opines that Plaintiffs must show "an absence of alternate causes that could have resulted in the alleged injuries or diseases." (**Exhibit 1, Kind Report at 44.**) And Dr. Kind asserts that Dr. Schiffman "relies on the court's general causation nuisance standard without objective evidence demonstrating that any of the trial Plaintiffs fall within the most sensitive population, further undermining the reliability of her opinions." (Id. at 9 (summary of opinions).)

However, the question of whether such evidence is required presents a question of law for the court, and not for an expert witness. And, in any event as set forth below, Dr. Kind's analysis runs directly contrary to settled Louisiana law.

### 2. Dr. Kind's legal opinion that Plaintiffs must show an absence of alternative sources is not correct under the governing law.

In this District, under a *Daubert* analysis, "[e]limination of alternative possibilities is one method of arriving at a result reliably, but it is not the only method." *Chisesi Bros. Meat Packing Co. v. Westchester Surplus Lines Ins. Co.*, No. C2IV.A. 09-6523, 2010 WL 3720465, at *4 (E.D.

---

Rules 403 and 702 "stand ready to exclude opinions phrased in terms of inadequately explored legal criteria." F.R.Evid. 704, Advisory Committee Notes 1972.

7

La. Sept. 9, 2010). As the court explained, "It is possible to choose the correct explanation at the outset and have all the collected data support that explanation." Id. [3]

Under Louisiana law, conduct is a cause in fact of harm to another if it was a "substantial factor" in bringing about that harm. *Thomas v. Missouri Pac. R. Co.*, 466 So. 2d 1280, 1285 (La. 1985). And, more specifically to Defendants' argument in this case, "where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident." *Bonin v. Ferrellgas*, Inc., 877 So.2d 89, 94 (La.2004) (*citing Perkins v. Entergy Corp.*, 782 So.2d 606, 611 (La.2001).

Here, Defendants contend (and Dr. Kind opines) that Plaintiffs' health complaints resulted from sources other than the Jefferson Parish Landfill. In such a circumstance, the required determination is whether the odors from the Jefferson Parish were a substantial factor in the resulting harm to the Plaintiffs. Thus, the analysis *presumes* the existence of other potential causes. As a result, Plaintiffs "do not have a burden to exhaustively rule out alternative causes." *Ohio Valley Env't Coal., Inc. v. Fola Coal Co.*, LLC, 82 F. Supp. 3d 673, 684–86 (S.D.W. Va. 2015), *aff'd sub nom. Ohio Valley Env't Coal. v. Fola Coal Co., LLC*, 845 F.3d 133 (4th Cir. 2017). As that court explained, "that is not Plaintiffs' burden because the applicable legal standard is met whether ionic pollution causes or materially contributes to chemical or biological impairment." *Id.* The court explained, "As a matter of plain meaning and common sense, it is possible to identify a factor that is materially contributing to a given condition without conclusively eliminating contributions by additional factors in a dynamic system." *Id.*

---

[3] Even in products liability cases, Louisiana law has long held that proof of causation may be met by circumstantial evidence, and that circumstantial evidence of causation "need not negate all other possible causes." *Bruno v. BRD US, Inc*., 2020-233 (La. App. 3 Cir. 3/17/21), 315 So. 3d 969, 978, *writ denied*, 2021-00900 (La. 10/19/21), 326 So. 3d 262, *citing DeBattista v. Argonaut-Southwest Insurance Company*, 403 So.2d 26 (La. 1981).

Even if he were correct on the law (and Dr. Kind is not), because this is a legal issue, Dr. Kind may not instruct the jury on it.

### 3. Dr. Kind's opinion that specific causation requires a showing that Plaintiffs are in the most sensitive population is an issue of law.

According to Dr. Kind, the World Health Organization has established that "the guidance value of 5 ppb for 30 minutes is the level at which 95% of the population (or a greater) will not experience an annoyance, and those who do, would only be expected to experience annoyance less than 2% of the time. (**Exhibit 1, Kind Report at 13**.) Not surprisingly, the World Health Organization has said no such thing and the Court has already made a contrary factual determination *based upon WHO guidance which Dr. Kind omits.*[4] Dr. Kind's argument is not based upon any "scientific, technical, or other specialized knowledge" and is nothing more than a recitation of the arguments made by defense counsel at the General Causation trial.

Unlike Dr. Kind, the WHO differentiates between "sensory effects" and "health hazards." Sensory effects result from exposure to an odorant, while the health hazards are those that relate to exposure to the chemical. This case involves the "sensory effects"—the odor nuisances, some of which manifest as headaches, nausea, and so forth –and not the harm caused by exposure to the toxicity of the chemical. The WHO has concluded that:

---

[4] At p. 31 of its Findings of Fact (R.Doc. 323), the Court explains: "The question, then, is at what level of exposure are people in the general population able to smell hydrogen sulfide . . . and how long does it take for exposure at such a level to cause a symptom. * * * In the ambient air, the Court finds the exposure *at which people generally* are able to smell hydrogen sulfide and which is capable of causing a reaction in those exposed is an average exposure over at thirty-minute period of at least 5 ppb. The scientific literature and Dr. Schiffman's own studies have shown such a level of exposure 'always is a nuisance' to the individuals exposed," specifically citing the WHO for that finding. Thus, the Court has found that the detection, identification and annoyance level *for people generally* is 5 ppb over a 30-minute period and that such a level of exposure is "always a nuisance" to those exposed. Dr. Kind's contentions to the contrary must be excluded.

9

> Hydrogen sulfide causes odour nuisance at concentrations far below those that cause health hazards. On the basis of the scientific literature, it is not possible to state a specific concentration of hydrogen sulfide at which odour nuisance starts to appear. Half-hour average concentrations exceeding 7 μg/m$^3$ are likely to produce substantial complaints among persons exposed (19,20.)

**Exhibit 3** (WHO Air Quality Guidelines) at 4-5, GC Exhibit 438.) The WHO Guideline states:

> In order to avoid substantial complaints about odour annoyance among the exposed population, hydrogen sulfide concentrations should not be allowed to exceed 7 μg/m$^3$, with a 30-minute averaging period.

(**Id. at 6**.) (7 μg/m$^3$ equates to about 5 parts per billion.) At the General Causation trial, Defendants placed great emphasis on the WHO definition of "nuisance threshold level"—"the concentration at which not more than a small proportion of the population (less than 5%) experiences annoyance for a small part of the time (less than 2%)." (*See* **Exhibit 4** GC Exhibit 42 at 20**.**)[5] The WHO uses this definition to define when a nuisance exists; i.e., it's a nuisance once it affects more than 5% of the population for a small part of the time. Defense counsel then, and Dr. Kind now, interpret this to mean that 95% of population will not be able to smell the odors at the nuisance threshold level. The WHO has nowhere said that. Instead, in the same sentence relied upon by defense counsel and Dr. Kind, the WHO cautions that "since annoyance will be influenced by a number of psychological and socioeconomic factors, a nuisance threshold level cannot be defined on the basis of concentration alone." Id.

Extrapolating beyond his initial misinterpretation of the WHO guideline, Dr. Kind improperly concludes that, if the levels are only 5 ppb, then 95% of the population cannot smell it, and Plaintiffs must prove that they are within the "most sensitive" part of the population who can. Whether the Plaintiffs must provide such proof is an issue of law to which Mr. Kind cannot testify.

---

[5] This was a general definition and not a specific definition for hydrogen sulfide.

C. **Experts may not testify as to matters of common knowledge.**

Expert testimony is inadmissible "as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Conday v. Offshore Drilling Co.*, No. CV 07-0882, 2010 WL 11575031, at *2 (W.D. La. Jan. 5, 2010), *citing Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986). In such situations, courts recognize a risk that evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense. *Id*. Where the issue is one of common knowledge, expert opinion testimony can cause confusion. *Id*. at *5 ("Imposing expert opinion testimony on the common knowledge of the jury on this issue would have no beneficial effect, and would merely cause confusion."). The testimony must aid the trier of fact in making a decision without substituting the expert's judgment for that of the trier of fact. *Richardson v. SEACOR Lifeboats, LLC*, No. CIV.A. 14-1712, 2015 WL 2193907, at *3 (E.D. La. May 11, 2015) (Morgan, J.).

In *Lee v. Offshore Logistical & Transp., LLC*, this Court ruled that expert testimony does not assist the trier of fact if the court finds "the jury adeptly can assess the situation using only their common experience and knowledge." No. CV 15-2528, 2017 WL 6501151, at *3 (E.D. La. Dec. 19, 2017) (cleaned up) *citing Peters v. Fiver Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990). *See also Matherne v. MISR Shipping Co*., No. CIV. A. 88-2261, 1991 WL 99426, at *1 (E.D. La. May 31, 1991) ("Scientific, technical or specialized testimony would not assist the jury in reaching a decision on the vessel's liability in a routine "fall on a vessel" case such as this one and would offer little more than argument.); *Araujo v. Treasure Chest Casino*, No. CIV A. 97-3043, 1999 WL 219771, at *2 (E.D. La. Apr. 14, 1999) (finding opinions "unhelpful because they relate to issues within the common knowledge, experience, and understanding of the average lay

11

juror" and the experts' testimony "would bring to the jury no more than the lawyers can offer in argument and through presentation of fact witnesses").

Dr. Kind next seeks to opine that "Exposure to emissions from the JPLF are more than likely not the cause[,] and certainly not the most likely cause[,] of the trial Plaintiffs' claimed health conditions" because (a) the "health conditions alleged by the trial Plaintiffs are non-specific and occur frequently in the general population in the absence of exposures to odors and (b) the conditions alleged by the trial Plaintiffs are confounded by a multitude of alternate potential causes unrelated to the JPLF, including preexisting conditions and side effects of prescriptions." (translated, lots of things can cause them). (**Exhibit 1 at 9.**)

There is no dispute that headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry occur more or less frequently in the general population. The facts that: (a) the symptoms complained of by Plaintiffs occur, even frequently, in the general population; and (b) lots of things can cause these symptoms are matters of common knowledge and the jury does not need an expert to tell them that. Further, the jury will be entirely able to judge whether the frequency of those effects complained of by the Plaintiffs, as compared to the jury's own experience in the general population, are more likely than not to have been the result of the odors from the JPLF, a point which Dr. Kind ignores.

Indeed, Louisiana courts have held that physical and emotional symptoms like "dehydration, overheating, exhaustion, mental anguish, fear, stress, anxiety, and depression" are "within the common knowledge of an average lay person or trial court to understand," such that medical expert testimony is not required to establish causation for temporary pain and suffering involving such symptoms." *Ainsworth v. Am. Home Assurance Co.*, 2017-0778 (La. App. 4 Cir. 2/21/18), 239 So. 3d 359, 365–66, writ denied, 2018-0582 (La. 6/1/18), 243 So. 3d 1061. *See*

12

*Jones v. Capitol Enterprises, In*c., 2011-0956 (La. App. 4 Cir. 5/9/12), 89 So. 3d 474, 506-7, writ denied, 2012-1634 (La. 10/26/12), 99 So. 3d 651 (medical testimony not required regarding symptoms following exposure to silica from sandblasting).

In *Guidry v. Dow Chem. Co*., No. CV 19-12233, 2021 WL 4460505, at *2 (E.D. La. Sept. 29, 2021), the court explained that "The complaints presented in this case – which include "eyes, nose, or throat irritation, coughing, choking or gagging, or nausea, or headaches, dizziness, trouble breathing, or other respiratory issues," according to the Plaintiffs – are all forms of temporary pain and suffering." In *Stephens v. BP Expl. & Prod. Inc*., No. CV 17-4294, 2022 WL 1642136, at *4 (E.D. La. May 24, 2022), the court explained,

> The remaining medical conditions are nasal congestion, nasal discharge, sore throat, nausea, eye burning, irritation, shortness of breath, cough, wheezing, headaches, dizziness, depression, and anxiety. The Court finds that these types of transient or temporary medical conditions are likely within the common knowledge of lay people, much like the irritant symptoms in Guidry and the dehydration, overheating, exhaustion, mental anguish, fear, stress, anxiety, and depression that Louisiana courts have found within the common knowledge of lay people. Therefore, Plaintiff does not require an expert on specific causation for these particular medical conditions.

*See also Brown v. BP Expl. & Prod., Inc*., No. CV 17-3516, 2023 WL 2526974, at *3 (E.D. La. Mar. 15, 2023) ("headache and sore throat are likely within the knowledge of lay people"); *Turner v. BP Expl. & Prod. Inc*., No. CV 17-4210, 2022 WL 1642142, at *4 (E.D. La. May 24, 2022) (same as Stephens); *Wallace on behalf of Wallace v. BP Expl. & Prod. Inc*., No. CV 13-1039, 2022 WL 1642166, at *4 (E.D. La. May 24, 2022) (same as Stephens).

Dr. Kind's arguments that the symptoms complained of by Plaintiffs are common in the general population and can be the result of multiple causes are matters of common knowledge not a proper subject of expert testimony. Dr. Kind is <u>not</u> opining as to the actual specific cause of any specific instance of any specific symptom of any specific Plaintiff.

**III.   DR. KIND'S TESTIMONY REGARDING POTENTIAL OTHER CAUSES IS NOT RELEVANT BECAUSE DEFENDANTS HAVE NOT DEMONSTRATED ANY OTHER CAUSE CAPABLE OF CAUSING THE INJURIES COMPLAINED OF.**

As set forth in more detail in Plaintiffs' contemporaneously filed Motion In Limine to Exclude "Other Sources" Evidence, to sustain their defense that Plaintiffs' injuries resulted from exposure to some other source, Defendants bear the burden to show that the potential other sources were capable of producing the injuries complained of. Despite having contended for years that the odors plaguing the community came from somewhere other than the Jefferson Parish Landfill, Defendants have been unable to identify even one—other than their belated finger-pointing at the River Birch and Highway 90 landfills.  And even with regard to the River Birch and Highway 90 Landfills, for which Defendants modeled the purported emissions of hydrogen sulfide, Defendants contend that the emissions from those two landfills (and every other source) were insufficient to have created the hundreds and hundreds of odor complaints that occurred in this case.[6]

Dr. Kind undertook to review the medical records of all of the trial plaintiffs and has provided a list of all of the medications "taken" by the Plaintiffs during the relevant time period—whether they were taken just once (or not at all) or for any specific time.  He does not list the dosages, and does not identify the circumstances under which the medications "could cause the alleged injuries."  He has merely explained that the medications have known side effects.  Notably, he did not identify anywhere in the medical records where any of the "known side effects" had actually occurred.  His opinion boils down to the contention that this issue was something that the

---

[6] Contrary to the unrebutted evidence of thousands of odor complaints from residents of East Bank communities, which, based upon Dr. Dalton's testimony, the Court found to be "real" and "credible" (R.Doc. 323. Findings of Fact at 30), Dr. Zannetti opines that odors at 5 ppb for 30-minutes from all three landfills only very rarely reached the East Bank and that odors from the JPLF alone almost never did.  (*See* **Exhibit 5, Zannetti Report, Tables 8-11**.)

Plaintiffs were required to consider in the causation analysis. (*See* **Exhibit 2, Kind Dep. at 128-139.**)

As stated above, whether Plaintiffs' experts were required to consider the medications in their analysis presents an issue of law upon which Dr. Kind cannot testify. And because he can offer no insight into whether any of the medications were the actual cause of the symptoms complained, his speculation about what might be possible has no scientific basis and only serves to confuse the issues.

### IV. THE ARGUMENT THAT PLAINTIFFS ADDED SYMPTOMS AFTER THE FACT DOES NOT REQUIRE SPECIALIZED KNOWLEDGE.

Dr. Kind implies that Plaintiffs claims are made up and imaginary because (he says) the list of symptoms changed after the ruling on general causation (although the ruling was based on claims asserted by Plaintiffs before the ruling). (*See* **Exhibit 1, Kind Report at 24-25.**) However, it takes no special expertise or training to compare answers provided in the plaintiff fact sheets to deposition answers. The lawyers can make that argument with no help from the experts. Permitting expert testimony on that issue is improper because it supplants the role of the jury, and experts are not permitted to testify on issues of credibility. *Nale v. Finley*, 505 F. Supp. 3d 635, 645 (W.D. La. 2020) ("As a general rule, an expert may not opine on another witness's credibility because this testimony does not help the trier of fact, who can make its own credibility determinations."); *Schmidt v. MTD Prod., Inc.*, No. CIV.A. 04-3412, 2006 WL 5127539, at *3 (E.D. La. July 5, 2006) ("Plamper's opinions about the veracity of Plaintiff's testimony are not appropriate expert testimony and should, therefore, be excluded.").

### V. DR. KIND'S ARGUMENT THAT WIND DIRECTIONS CHANGE IS A MATTER OF COMMON KNOWLEDGE AND MUST BE EXCLUDED.

As the Court recognized in its ruling on General Causation, if it were true that the Jefferson Parish Landfill had been a continuous source of odors, every day, 24 hours a day, then it is likely

that residents would have become acclimated to the odors. R.Doc. 323 at 33 ("It is true smelling an odor on a regular basis may cause people to "lose their sensitivity to it.""). As found by the Court, Plaintiffs' injuries in this case rest in part upon the fact that the odors were not continuous, but were intermittent. As the Court concluded, "due to the pressurized bursts characteristic of landfill emissions, the odor emitted from a landfill is intermittent and unpredictable. This is a "stressor" that "increase[s] the poignancy of that stimulus." Id.

No Plaintiff in this case contends that he or she was exposed to odors from the Jefferson Parish Landfill every day, 24 hours a day, for the entire relevant time period. Yet Dr. Kind devoted nearly ten pages of this report to refuting that contention. He provided graphs and charts purporting to show the percentage time that each Plaintiff was "downwind" of the Jefferson Parish Landfill and ten other supposed other sources. And, for each, he concludes that "it is my opinion that the percentage of time downwind of alternate odor sources, in comparison to JPLF does not support the allegation that the JPLF is a substantial cause of the odor impact alleged." (**Exhibit 1, Kind Report at 70-79.**) This non-sensical opinion has no probative value, and must be excluded because it provides no assistance to the jury at all.

First, Plaintiffs' claims are not based upon the percentage of time that their residences were downwind of the Jefferson Parish Landfill. Instead, through their air modeling (the validity of the methodology of which is undisputed now that Dr. Zannetti no longer maintains his criticism of Mr. Lape's CALPUFF model or the meteorological inputs into it), combined with the emission rates from the landfill, Plaintiffs have estimated the number of times Plaintiffs were exposed to landfill emissions that exceeded the established thresholds. By asserting that the percentage of

time the residences were downwind "does not support the allegation that the JPLF is a substantial cause of the odor impact alleged," Dr. Kind is seeking to refute a contention that no one is making.[7]

Second, if a Plaintiff ever said that the odors were smelled every day, that does not mean that odors were continuous throughout every day, for every minute during the day. Dr. Kind ignores the fact that wind directions change during the course of a day and that it is thus possible for each of the residences to have been downwind of the landfill during the course of a day, every day (excluding only those days, if any, where the wind came from a different direction for the entire day).

Third, Dr. Kind has no basis upon which to opine that any of the other supposed other sources of odors actually emitted any smells at all. Neither Dr. Kind nor any of the other defense experts have identified any specific odors, in any concentration, for any duration, at any specific time, for any of the ten supposed alternate sources identified by Dr. Kind in his charts.[8] Nor have they presented any evidence of the thresholds for detecting such odors or whether such odors are even capable of affecting the Plaintiffs.

It is common knowledge that other industrial facilities exist in the area surrounding the Jefferson Parish Landfill and that, from time to time, some of them may emit odors. It requires no special expertise or training to argue that there may be other sources of odors. It is also common knowledge that wind directions change, and that it is not possible for the Plaintiffs' residences to have been downwind of the Jefferson Parish Landfill every moment of every day for two and one-

---

[7] It is undisputed in this case that the CALPUFF model takes into account changes in wind direction, unlike the AERMOD model which Dr. Zannetti used in General Causation.

[8] Dr. Kind offers no opinion regarding emissions from River Birch or the Highway 90 landfill.

half years. It takes no scientific, technical, or other specialized knowledge to reach these conclusions.

Dr. Kind's proposed testimony on these issues should be excluded.

## VI. CONCLUSION.

Dr. Kind's opinions will not help the trier of fact to understand the evidence or to determine a fact in issue. Therefore, the opinions are not admissible under FRE 702 should be excluded.

Respectfully submitted, this 6th day June, 2024.

Respectfully submitted:

　　　**/s/** S. Eliza James　　　
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
FORREST CRESSY & JAMES, LLC
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fcjlaw.com
eliza@fcjlaw.com


　　　/s/ Eric C. Rowe　　　
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Harry S. Johnson (Admitted Pro Hac Vice)
James Jeffcoat (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@wtplaw.com
erowe@wtplaw.com
mchilders@wtplaw.com
*Counsel For Addison Plaintiffs*