UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | CIVIL ACTION |
| Plaintiffs | NO. 19-11133, c/w 19-14512 |
| V. | SECTION: "E" (5) |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| Defendants | JUDGE: Morgan<br>MAGISTRATE JUDGE: North |
| *Applies to: Both Cases* | |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF BARRY KLINE**

Pursuant to §VI.2 of the Thirteenth Case Management Order, Plaintiffs submit this Brief in support of their motion to exclude the testimony of proposed defense expert, Barry Kline. For the reasons stated herein, his testimony should be excluded in its entirety or limited to issues for which expert testimony is actually permissible. His Report is attached as **Exhibit 1.**

I.     **INTRODUCTION.**

Federal Rule of Evidence 702 ("Rule 702") permits an expert to testify in the form of an opinion *if* (among other factors) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a). (emphasis added). Prior to admitting expert testimony, the court must make a threshold determination of the admissibility of it. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

*Daubert* commands that expert testimony be relevant. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). FRE Rule 401 provides that "evidence is relevant if (a) it has any

tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Mr. Kline's opinions and testimony do not bear upon any fact of consequence in this case.

Barry Kline has been hired by Defendant Aptim Corporation to testify that Aptim was not responsible for what happened in this case. Most of his "opinions" consist of testimony regarding facts that occurred—this is not the province of expert testimony. Others involve issues of law, to which experts cannot testify either.

## II.     MR. KLINE CANNOT TESTIFY AS A FACT WITNESS.

Whether a particular fact existed or not depends upon the jury's evaluation of the fact witness, not the testimony of an expert who has no personal knowledge of what happened. While Rule 703, permits an expert "to base an opinion on facts or data that the expert has been made aware of," that does not permit an expert to testify to facts generally. *See Huffman v. Turner Indus. Grp.*, *L.L.C*, No. CIV.A. 12-1061, 2013 WL 2297206, at *1 (E.D. La. May 24, 2013) (precluding expert from discussing study not relied upon).

Indeed, Rule 602 of the Federal Rules of Evidence provides that "A witness may not testify to a matter until evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter." As a result, Mr. Kline cannot be called upon to testify to facts to which Aptim employees could themselves testify and of which he has no personal knowledge. Nevertheless, Kline's Report states as follows:

> **Opinion No. 1:** APTIM was only provided with a partially-installed GCCS to operate in Phase IVA and the timing of its installation and expansion was outside of APTIM's control. (**Exhibit 1, Kline Report at 2**.)

This is testimony is doubly objectionable: first as testimony to a fact - whether the GCCS was partially-installed, and a legal conclusion - that it was outside APTIM's control.

Similarly, the following opinions implicate factual issues to which Aptim's own employees could testify (and to the extent these "opinions" state a legal conclusion, Mr. Kline is precluded from testifying as discussed in the next section).

> **Opinion No. 2:** APTIM was not responsible for the receipt of waste materials, waste placement, waste processing, or waste solidification, including the deposition or use of materials, such as spent lime or fly ash, that may have led to the increased concentrations of hydrogen sulfide (H2S) within the landfill gas being generated. (**Exhibit 1, Kline Report at 2**.)
>
> **Opinion No. 3:** APTIM did not have control over the design of the GCCS in Phase IVA nor did APTIM have control over the timing of installation of various GCCS components, such as gas extraction wells and collection system piping. Additionally, APTIM could only operate the partially-installed GCCS in the condition and configuration provided to it by Jefferson Parish. (**Exhibit 1, Kline Report at 2**.)
>
> **Opinion No. 4:** APTIM did not have control over various limitations placed on the GCCS operation by others, especially when circumstances beyond APTIM's control, such as limited vacuum and vacuum interruptions to the wellfield, further impeded GCCS operation. Such restrictions limited optimization of the GCCS operation and its ability to capture the landfill gas being produced within the landfill by the breakdown of waste materials. (**Exhibit 1, Kline Report at 2**.)
>
> **Opinion No. 6:** APTIM did not have control over the leachate levels in Phase IVA that allegedly impaired the operation of the GCCS. (**Exhibit 1, Kline Report at 3**.)
>
> **Opinion No. 7:** APTIM did not have control over the timing of the purchase and installation of the in-well leachate/condensate pumps in Phase IVA gas wells, or in other phases. APTIM did operate and maintain pneumatic pumps, once installed, in gas wells throughout the landfill. (**Exhibit 1, Kline Report at 3**.)
>
> **Opinion No. 8:** APTIM did not have control over the specification, procurement, inspection, or placement of landfill cover materials. APTIM was not contracted to maintain any cover materials in any of the Phases of the landfill. APTIM only inspected landfill cover materials in conjunction with performing NSPS-required Surface Emissions Monitoring on a quarterly basis. (**Exhibit 1, Kline Report at 3**.)

To the extent that these "opinions" merely state facts, they are not opinions at all, and are not the proper subject of expert testimony because an expert may not be employed simply to present the client's version of the facts. *See U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554,

3

562 (E.D. La. 2022) ("[the expert] simply accepts USAG's version of the facts as true and recites them as his own expert opinion. His opinion is thus unhelpful to the trier of fact."). In *Fetty v. City of Baton Rouge*, 518 F. Supp. 3d 923 (M.D. La. 2021), the court recited that "There is a critical distinction between an expert testifying that a disputed fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not." Id at 933, *quoting Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006). An expert opinion is not needed when it amounts to "nothing that an ordinary factfinder, using common sense and general knowledge, could not also adequately assess." *Angelle v. Spartan Offshore Drilling LLC*, No. CV 17-7707, 2019 WL 3451549, at *3 (E.D. La. July 31, 2019). *See Thibodeaux v. Wellmate*, No. CV 12-1375, 2016 WL 2962822, at *3 (E.D. La. May 23, 2016) ("adequacy of the warning is a factual issue which the jury can handle without expert help from either side.")("Morgan, J.").

Kline's factual testimony should be excluded.

### III.    MR. KLINE MAY NOT OPINE ON ISSUES OF LAW.

In like measure, "an expert may never render conclusions of law." *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009). *See Snap-Drape, Inc. v. Commissioner of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that [Rule 702] does not allow an expert to render conclusions of law.").

At least two of Kline's opinions purport to analyze Aptim contract with the Parish and to explain its legal meaning.  These include:

> **Opinion No. 5:**  APTIM's work at JPLF was limited by Contract/Agreement provisions and language to specific tasks. Additionally, the Contract/Agreement further limited APTIM's efforts by placing restrictions on the amount of time/effort O&M personnel could spend working on the GCCS, including being subject to Jefferson Parish's approval for all non-routine GCCS work and limits on spending

>relative to expenses necessary for the Operation and Maintenance tasks. (**Exhibit 1, Kline Report at 2**.)
>
>**Opinion No. 9:** Ambient and environmental monitoring for odors onsite and offsite was outside the scope of APTIM's contract with Jefferson Parish. Instead, IESI/Waste Connections' Agreement with Jefferson Parish required it to monitor for and control odors. (**Exhibit 1, Kline Report at 3**.)

This Court has repeatedly ruled that expert testimony that offers a legal opinion is inadmissible. *Marks v. Smith*, No. CV 15-5454, 2017 WL 988787, at *3 note 39 (E.D. La. Mar. 14, 2017) (Morgan, J.) *citing Estate of Sowell v. United States of America*, 198 F.3d 169, 171 (5th Cir. 1999) and *Askanase v. Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997); *Ratliff v. Seadrill Americas, Inc*., No. CV 17-11581, 2018 WL 6523479, at *2 (E.D. La. Dec. 12, 2018) (Morgan, J.) (an expert witness "is not permitted to offer conclusions of law"). *See Howard v. Offshore Liftboats*, LLC, No. CV 13-4811, 2016 WL 232238, at *3 (E.D. La. Jan. 19, 2016) (Morgan, J.) ("Whether the Plaintiffs contributed to their injuries and, as a result, were contributorily negligent is a legal issue which must be decided by the jury."); *Spikes v. McVea*, No. CV 17-8164, 2018 WL 6448846, at *2 (E.D. La. Dec. 10, 2018) (Morgan, J.) ("Dr. Ochella's opinion that certain conduct constituted deliberate indifference is an inadmissible legal conclusion."); *Fick v. Exxon Mobil Corp*., No. CV 13-6608, 2017 WL 11673924, at *3 (E.D. La. Mar. 14, 2017) (Morgan, J.) ("Mr. Davidson will not be allowed to testify that Exxon agreed to remove the remaining flowlines in the field. This is a legal opinion, which is not allowed."); *Versai Mgmt. Corp. v. Landmark Am. Ins. Cor*p., No. CIV.A. 11-2139, 2013 WL 681902, at *2 (E.D. La. Feb. 22, 2013) (Morgan, J.) ("Whether the Policy is a valued policy within the meaning of the VPL is a question of law for the Court, not a question of fact for the jury.").

These rules are imposed because an expert professing to testify regarding the governing law invades "the province of the court to determine the applicable law and to instruct the jury as

to that law." *Willette v. Finn*, 778 F. Supp. 10, 11 (E.D. La. 1991).  In addition, "admitting expert legal testimony would pose the risk that jurors would confuse the Court's instructions with the views put forward by the parties' experts." *Id*.  As a result, whatever value testimony on legal issues might have (which is usually none), that value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," requiring its exclusion under FRE 403, and such testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue," requiring its exclusion under FRE 702.   *Cf. David v. Signal Int'l, LLC*, No. CV 13-6219, 2015 WL 14018914, at *2 (E.D. La. Jan. 11, 2015) ("the Court finds testimony regarding the language and applicability of immigration statutes and regulations and whether conduct generally would be consistent or inconsistent with these laws does not amount to a legal conclusion in this case and will be helpful to the jury") (Morgan, J.).

## IV. CONCLUSION.

Mr. Kline's opinions will not help the trier of fact to understand the evidence or to determine a fact in issue. Therefore, the opinions are not admissible under FRE 702 and should be excluded.

Respectfully submitted, this 6th day June, 2024.

        /s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

Harry S. Johnson, (Admitted Pro Hac Vice)

6

James R. Jeffcoat (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636
(410) 347-8700
hjohnson@whitefordlaw.com
jjeffcoat@whitefordlaw.com

FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com
eliza@fcjlaw.com

*Counsel For Addison Plaintiffs*