UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FREDERICK ADDISON, ET AL.,** | * | |
| | * | |
| PLAINTIFF, | * | **CIVIL ACTION NO. 19-11133,** |
| | * | **c/w 19-14512** |
| **VERSUS** | * | |
| | * | |
| **LOUISIANA REGIONAL LANDFILL** | * | |
| **COMPANY, ET AL.,** | * | **JUDGE MORGAN** |
| | * | |
| DEFENDANTS. | * | **MAGISTRATE** |
| | * | **JUDGE NORTH** |
| *APPLIES TO: ALL CASES* | * | |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS CERTAIN CLAIMS <u>FOR LACK OF EVIDENCE OF GENERAL CAUSATION</u>**

1

Plaintiffs are attempting to improperly relitigate issues of general causation by seeking to revive claims of asthma, allergies, death, and other ailments through newly identified experts that were not part of the general causation trial. The Court properly determined that Plaintiffs failed to submit admissible general causation evidence for these claims in the general causation trial. Plaintiffs are also seeking to reopen the door for injuries allegedly suffered outside of the "relevant time period" of July 1, 2017 to December 31, 2019, another issue the Court already resolved as part of the general causation trial.

Plaintiffs had their opportunity to try to prove general causation for all of their claimed injuries during the general causation phase of this litigation, and Plaintiffs chose to rely solely on the opinions of an odor psychologist to prove general causation for all of their injuries. The Court correctly ruled that Dr. Susan Schiffman was not qualified to provide expert opinions on physiological injuries. In the Court's November 29, 2022 general causation decision ("General Causation Order")[1], the Court determined that Plaintiffs had established general causation for specific injuries and symptoms allegedly suffered within the relevant time period determined to be July 1, 2017 to December 31, 2019 – specifically, headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry, a decrease in quality of life, and loss of enjoyment or use of property.  As to other injuries, including all injuries occurring after December 31, 2019, the Court rejected general causation because Plaintiffs failed to introduce admissible expert evidence with respect to those injuries.

Plaintiffs are now attempting to use Dr. Robert DeLorenzo (a toxicologist and medical doctor) to reopen general causation on their already precluded injuries, and they have continued to

---

[1] General Causation Order, No. 18-07889, ECF Doc. #285.

assert a claim for wrongful death in their pleadings. Plaintiffs' actions should not be allowed and their claims of injuries beyond those accepted by the Court during the general causation phase and beyond the relevant time period should be dismissed.

Defendants[2] are entitled to summary judgment dismissing all claims for injuries or symptoms for which the Court did not find general causation, for two reasons: (1) Plaintiffs did not previously establish general causation for the additional injuries, and procedurally it is now too late to do so; and (2) Plaintiffs lack reliable expert testimony on general causation for such injuries.[3]

## I. BACKGROUND

The first of the *Addison* suits was filed on December 13, 2018, alleging various injuries which Plaintiffs attribute to exposure to odors allegedly emitted from the Jefferson Parish Landfill ("JPLF") from July 1, 2017 through December 31, 2019. On November 5, 2019, this Court issued its first Case Management Order ("CMO"). In the first CMO, the Court established a bifurcated litigation schedule under which the issue of general causation would be resolved first, in order to "narrow the focus of the case and the issues at stake."[4] The CMO prioritized discovery related to general causation and contemplated additional later discovery on separate aspects of the case.[5] During the general causation phase, the Court issued seven amended CMOs, but each CMO contained the same language calling for resolution of general causation prior to proceeding to any subsequent phases of the litigation.[6]

---

[2] The Defendants in this matter are Aptim Corp., Jefferson Parish, Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.
[3] *See* Defendant's Motion in Limine to Limit the Opinions of Dr. DeLorenzo, being filed contemporaneous with the present motion.
[4] No. 19-11133, ECF Doc. #80 at 1-2.
[5] *Id*.
[6] No. 19-11133, ECF Doc. #202 at 2; *see also* No. 19-11133, ECF Docs. #80, 95, 110, 116, 122, 174.

3

In January and February of 2022, the Court held an eight-day *Daubert* and general causation trial. On February 2, 2022, at the close of Plaintiffs' case in chief, the Waste Connections Defendants raised a Motion for Judgment on Partial Findings pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.[7] Among other things, the motion sought to limit Plaintiffs' claim for damages to the period of July 1, 2017 through December 31, 2019, since that was the only time period for which Plaintiffs presented general causation evidence. The Court responded by asking Plaintiffs whether they intended to seek damages beyond 2019, and they unequivocally represented to the Court that they did not. The relevant discussion from the Waste Connections Defendants' oral motion is set forth below:

> MR. MIMS: … We're raising this motion on five different bases. The first is the temporal scope of this case. Although the complaint alleges ongoing and continuing torts, the plaintiffs have offered no evidence in the past three days of any injuries beyond the year 2019, despite their burden to do so.
> …
>
> THE COURT: … I do want to ask -- I want the plaintiffs to think about this. I've wondered about this. I just want to know for my own information about what the time period is that they're asking for damages. Maybe they're only asking for them to 2019 because that's what the evidence is.
>
> MR. ROWE: Your Honor, Eric Rowe. **If they had asked us the question, are you asking for damages into 2020, we would have said no.** We've only modeled the years 2017, 2018, and 2019.
>
> THE COURT: Okay. That was my understanding, too. So that is -- you're correct on that. **They're only asking for damages through 2019.**[8]

Further clarifying this issue, on November 28, 2022, the Court wrote to the parties: "The Court requests that Plaintiffs clarify the exact time period for which they are requesting damages during

---

[7] General Causation Transcript at p. 741, attached hereto as Exhibit 1.
[8] *Id.* at pp. 742:2-7, 746:10-22 (emphasis added).

4

2017 to 2019 (month and date)."[9] Apparently on behalf of all Plaintiffs, Jason Landry responded to the Court: "Plaintiffs are seeking damages from July 1, 2017 through December 31, 2019 for Plaintiffs in the JPLF's surrounding areas on the West Bank (Waggaman, Avondale) and across the river (South Kenner, River Ridge, and Harahan)."[10]

On November 29, 2022, the Court issued its General Causation Order, which limited the relevant time period to July 1, 2017 to December 31, 2019 and found that as a matter of law Plaintiffs met their burden of establishing general causation with respect to Plaintiffs' complaints "*during the relevant time period* [July 1, 2017 – December 31, 2019] of headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry, a decrease in quality of life, and a loss of enjoyment or use of property" (hereafter, "Allowed Claims" or "Allowed Injuries").[11] The Court also explicitly ruled that Plaintiffs *failed* to establish general causation for physiological symptoms, including complaints of: "irritation to the eyes, nose, or throat; coughing; trouble breathing; asthma; skin irritation; burning lungs; nose bleeds; neurological issues; and COPD."[12]

The litigation proceeded to the specific causation phase, and on February 16, 2024, Plaintiffs produced their initial expert reports on specific causation. Plaintiffs' two newly identified experts, Robert DeLorenzo, M.D. and Michael K. Spodak, M.D., submitted expert reports opining on various injuries suffered by the 13 *Addison* Plaintiffs who will proceed to trial in August 2024 ("Trial Plaintiffs"). Those reports ignore this Court's determination on the type and duration of injuries that are allowed to proceed in this litigation. Specifically, the reports opine on numerous

---

[9] Email Correspondence Between this Court and Jason Landry dated Nov. 28, 2022, attached hereto as Exhibit 2.
[10] *Id.*
[11] General Causation Order, No. 18-07889, ECF Doc. #285 at 44 (emphasis added).
[12] *Id.* at 42.

5

injuries and symptoms that either fall outside of the relevant time period, or for which Plaintiffs failed to establish general causation regardless of the time period (collectively, "Non-Allowed Claims" or "Non-Allowed Injuries"). The below table sets forth the injuries and symptoms that are referenced in the reports[13] of Drs. DeLorenzo and Spodak[14] for which general causation has not been established:[15]

| DeLorenzo | Spodak |
| --- | --- |
| Eye Irritation and Redness | Cough |
| Exacerbation of Allergies | Nose Burning |
| Coughing | Eyes Burning/Eye Irritation |
| Eye Burning | Lethargy |
| Burning Nose | Concern Regarding Long Term Effects |
| Asthma | Stress |
| Throat Irritation | Decreased Productivity |
| Coughing and Gagging | Burning of Eyes Nose and Throat |
| Stress | Difficulty Breathing |
| Lightheadedness | Asthma |
| Sinusitis | Sad and Overwhelmed |
| Eye Irritation | Consumed by Malodor |
| Allergies | Decrease in Mood; Sex Drive |
| Runny Eyes | Depression |
| Loss of Smell | Allergies |
| Chest Congestion | Sinusitis |
| Rhinitis | Runny Eyes |

---

[13] The reports of Drs. DeLorenzo and Spodak have been marked as "Confidential – Outside Counsel Only" by Plaintiffs, which, under the terms of the Agreed Protective Order (ECF Doc. #79) requires the parties to meet and confer before the documents may be filed with the Court. Defendants have reached out to Plaintiffs to discuss an agreeable method for filing the reports of Drs. DeLorenzo and Spodak. Defendants will continue to coordinate with Plaintiffs on this issue and will supplement this filing with the reports of Drs. DeLorenzo and Spodak as soon as practicable.

[14] While Dr. DeLorenzo purports to offer causation testimony as to the Non-Allowed Injuries, Dr. Spodak does not. Rather, Dr. Spodak speaks only to symptoms that he believes the Trial Plaintiffs suffered from, and/or are continuing to suffer from, but he has left the question of causation to other experts.

[15] For example, *see* excerpt from Dr. Spodak's report regarding Trial Plaintiff JT, attached hereto as Exhibit 3 (opining that JT suffers from odor-related anxiety which "is probably permanent and has adversely affected his employment through the present time."); *see also* DeLorenzo's report regarding Trial Plaintiff MW, attached hereto as Exhibit 4 (opining that JPLF emissions caused MW to suffer, among other injuries, "burning nose, nosebleeds, burning eyes, coughing and breathing difficulty, exacerbation of allergies and asthma.").

| | |
|---|---|
| Nosebleeds | Upset Stomach |
| Sore Throat | Loss of Smell |
| Cold Sweats | Breathing Problems |
| Swelling in Joints | Sinusitis |
| Infection | Rhinitis |
| Stomach Irritation | Sore Throat |
| Stomach Pain | Nosebleeds |
| Nasal Congestion | Decreased Focus |
| Runny Nose | Erectile Dysfunction/Decrease In Sex Drive |
| Sinus Problems | Decrease in Energy Level |
| Earaches | Skin Infection |
| Respiratory Cough | Fainting |
| Phlegm Production | Runny Nose |
| Burning Eyes | Sinus Problems |
| Breathing Difficulty | Earaches |
| Exacerbation of Asthma | Stomach Issues |
| | Upper Body Stiffness |
| | Respiratory Issues |
| | Crying |

At the deposition of Dr. DeLorenzo, he testified that he addressed injuries that were already rejected by the Court, because Plaintiffs' counsel apparently told him those injuries were potentially still at issue in this case:

> Q. You saw where Judge Morgan found general causation for headaches, nausea, vomiting, sleeplessness, fatigue, anxiety and worry; correct?
>
> A. Correct, and also, you know, quality of life issues.
>
> Q. Correct. Is it your understanding that any injuries that don't fit in those categories are no longer a part of this case?
>
> A. ... the attorneys indicated to me, that the judge -- Dr. Schiffman was going to give an opinion on [physiological injuries such as asthma and coughing], but that she was not qualified as a toxicologist to do that...[but] I'm a toxicologist, I can give an opinion on that, and I'm willing to give an opinion on that, and, you

7

>know, the judge will determine, you know, my opinion and is it relevant.
>
>Q. Have you been asked to give that opinion in this case?
>
>A. I put it in my reports.
>
>Q. So that's a yes, you have --
>
>A. Yes, of course.
>
>Q. -- been asked.
>
>A. I wasn't asked to do it. I concluded -- I came up with that by asking the patients...
>
>And my understanding, from asking the attorneys why [Judge Morgan] didn't accept [these injuries]…is that she…wasn't able to put Dr. Schiffman's opinion in because she didn't feel she was qualified as a toxicologist.[16]

In addition to the Non-Allowed Claims asserted by Drs. DeLorenzo and Spodak, Plaintiffs have also pled a wrongful death claim in their Complaint.[17] The Court's General Causation Order did not find general causation as to death, and so it likewise constitutes a Non-Allowed Injury that should be dismissed.

The general causation phase of this litigation ended in 2022. The parties spent more than three years and exorbitant amounts of time and money to bring the issue of general causation to trial, and that trial's entire purpose was to "narrow the focus of the case and the issues at stake."[18] It is too late for Plaintiffs to establish general causation for the Non-Allowed Claims, and thus they are irrelevant to the current proceedings. Additionally, as set out in a separate motion, Plaintiffs lack any reliable expert testimony on general causation for the Non-Allowed Claims, as Dr.

---

[16] Deposition of Dr. DeLorenzo V.I, at pp. 374-376, attached hereto as Exhibit 5.
[17] Plaintiffs' Second Amended Omnibus Complaint For Damages And Injunctive Relief, No. 19-11133, ECF Doc. #431, paras. 51, 52.
[18] No. 19-11133, ECF Doc. #80 at 1-2.

DeLorenzo has conceded that the current state of the science does not support such a finding.[19] For these reasons, all Non-Allowed Claims should be dismissed.

## II.     APPLICABLE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court is authorized to grant a motion for summary judgment "upon all or any part" of a claim. F.R.C.P. 56(a). If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 325.

The burden on the non-moving party is substantial. When a motion for summary judgment is made and supported, an adverse party may not rest on allegations or unsubstantiated arguments, but must "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Summary judgment is mandatory against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011).

---

[19] *See* Defendant's Motion in Limine to Limit the Opinions of Dr. DeLorenzo, being filed contemporaneous with the present motion.

### B. Proof Requirements for Causation in Toxic Tort Cases

This Circuit employs a two-step process in examining the admissibility of causation evidence in toxic tort cases. *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). A plaintiff must *first* establish general causation and *then* – and only then – establish specific causation. *Id; see e.g., Seaman v. Seacor Marine L.L.C.*, 326 F. App'x 721, 724 (5th Cir. 2009) ("First, the district court must determine whether there is general causation. Second, if it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible specific-causation evidence."); *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010) ("Sequence matters: a plaintiff must establish general causation before moving to specific causation. Without the predicate proof of general causation, the tort claim fails."). And evidence of specific causation is only admissible if there is evidence of general causation. *Burst v. Shell Oil Co.*, No. CIV.A. 14-109, 2015 WL 3952677, at *2 (E.D. La. June 29, 2015), *aff'd,* 650 F. App'x 170 (5th Cir. 2016) ("Because plaintiff offers no admissible evidence on general causation, she may not present evidence on specific causation.").

### III. ARGUMENT

Defendants are entitled to summary judgment dismissing all Non-Allowed Claims because: (1) Plaintiffs failed to prove general causation for the Non-Allowed Claims during the general causation phase of the litigation, and procedurally it is too late for Plaintiffs to reopen and try to establish general causation for Non-Allowed Claims; and (2) Plaintiffs lack reliable expert testimony on general causation for Non-Allowed Claims.

**A. Plaintiffs did not satisfy general causation for Non-Allowed Claims and it is now too late for them to do so.**

In this case, it cannot be disputed that Plaintiffs failed to establish general causation for the Non-Allowed Claims. According to this Court's General Causation Order, Plaintiffs only met their burden of establishing general causation with respect to Plaintiffs' complaints "during the relevant time period [July 1, 2017 – December 31, 2019] of headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry, a decrease in quality of life, and a loss of enjoyment or use of property in the general population."[20]

Plaintiffs apparently believe they still have time to establish general causation for the Non-Allowed Claims. Plaintiffs are mistaken. Nothing in the Court's current CMO, or any of the Specific Causation CMOs, calls for any further adjudication of general causation issues. And the Court's General Causation CMOs plainly stated that the purpose of the 2022 General Causation Trial was to "narrow the focus of the case and the issues at stake"[21] – not to provide the first of multiple bites at the apple. This mutual understanding among the parties and the Court was acknowledged repeatedly at the numerous off-the-record status conferences held during the General Causation Phase.[22]

If the Court allows Plaintiffs to relitigate the issue of general causation as to the Non-Allowed Claims – which it should not – Defendants would be severely prejudiced and will have no time to mount an adequate defense.[23] At minimum, allowing the claims to proceed would require a continuance of the August 2024 trial and a complete re-working of the CMO. Defendants

---

[20] General Causation Order, No. 18-07889, ECF Doc. #285 at 44.
[21] No. 19-11133, ECF Doc. #80 at 1-2.
[22] For example, the Court determined that "General causation for damage claims relating to diminution of property values will be determined at a later date." General Causation Order, No. 18-07889, ECF Doc. #285 at 46, note 345. The Court made no such carve-out for any other Non-Allowed Claims, and the parties never discussed or contemplated any such carveout.
[23] *See Tharpe v. Galliano Marine Serv., LLC*, No. CV 15-417, 2016 WL 633663, at *3 (E.D. La. Feb. 17, 2016) (Granting defendant's motion to strike plaintiff's out-of-time expert report concerning new injury and denying plaintiff's motion to continue trial).

have not been put on notice that general causation is still at issue in this case. Basic due process principles require that Defendants be allowed to retain additional experts, conduct further discovery, and prepare a defense on general causation as to Plaintiffs' newly asserted claims[24] – opportunities which have not yet been afforded to Defendants. Rather than venture down this rabbit hole and disrupt the carefully constructed CMO, the Court should grant this motion, deny Plaintiffs a second bite at the apple, and move forward with trial on the Allowed Claims only.

### B. Plaintiffs lack reliable expert testimony on general causation for Non-Allowed Claims.

Defendants are entitled to summary judgment for all Non-Allowed Claims for a second reason – Dr. DeLorenzo has conceded that exposure to 5 ppb of hydrogen sulfide over 30 minutes, under the current state of the science, is *not* known to be capable of causing the injuries which make up the Non-Allowed Claims.[25] For this reason, contemporaneous with the present motion, Defendants have filed a motion in limine to preclude Plaintiffs' experts from offering causation opinions as to the Non-Allowed Claims, which arguments are incorporated herein by reference. Plaintiffs have offered no other expert opinions to establish the general causation threshold for the Non-Allowed Claims.[26] Thus, even if Plaintiffs were not procedurally barred from asserting general causation for the Non-Allowed Claims – which they are – those claims should still be dismissed as there is no reliable[27] expert testimony to establish such causation.

---

[24] *Jimenez v. Tuna Vessel Granada*, 652 F.2d 415, 420 (5th Cir. 1981) ("each party is entitled to know what is being tried, or at least to the means to find out. Notice remains a first-reader element of procedural due process, and trial by ambush is no more favored here than elsewhere.")

[25] *See* Defendant's Motion in Limine to Limit the Opinions of Dr. DeLorenzo, being filed contemporaneous with the present motion. *See also* Exhibit 5 at pp. 389-390, 391-392; Deposition of Dr. DeLorenzo V.II, at pp. 536-538, 543-544, 547-551, attached hereto as Exhibit 6.

[26] Dr. DeLorenzo is Plaintiffs' only causation expert other than Dr. Schiffman. The Court has already held that Dr. Schiffman is not qualified to opine on causation of the Non-Allowed Injuries.

[27] *See* Fed. R. Evid. 702.

## **CONCLUSION**

The general causation phase of this case is over. This Court determined the specific injuries and symptoms for which Plaintiffs have established general causation and defined the relevant time period.[28] Plaintiffs' use of Dr. DeLorenzo to shoehorn injuries allegedly caused by exposure to odors is nothing more than an attempt to relitigate general causation. The Court need not – and should not – allow Plaintiffs to upend the Court's carefully crafted litigation schedule to allow for relitigation of which injuries are at issue in this case. Instead, the Court should hold that the only claims at issue are those specifically accepted by the Court in its General Causation Order.

Accordingly, pursuant to Federal Rule of Civil Procedure 56(a), the Court should grant this motion and enter judgment dismissing all Non-Allowed Claims – i.e., any claims for injuries allegedly suffered outside of the relevant time period (July 1, 2017 through December 31, 2019), and any claims for injuries other than headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry, a decrease in quality of life, and a loss of enjoyment or use of property.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:    /s/ Michael C. Mims
       Michael C. Mims (#33991)
       Michael Cash (#31655)
       Cherrell Simms Taplin (#28227)
       Brady M. Hadden (#37708)
       J. Hunter Curtis (#39150)
       Alec Andrade (#38659)
       701 Poydras Street, Suite 5000
       New Orleans, LA 70139

---

[28] General Causation Order, No. 18-07889, ECF Doc. #285 at 44.

Telephone: (504) 581-7979
Telefax: (504) 556-4108


BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*


CONNICK AND CONNICK, LLC

By: ___/s/ Michael S. Futrell_____
William P. Connick, La. Bar No. 14158
Michael S. Futrell, La. Bar No. 20819
Matthew D. Moghis, La. Bar No. 33994
Anya M. Jones, La. Bar No. 36923
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6658
Facsimile: (504) 838-9903
E-mail: moghis@connicklaw.com

*Counsel for Defendant Jefferson Parish*


GIEGER, LABORDE & LAPEROUSE, L.L.C.

14

By:   /s/ J. Michael DiGiglia
Ernest P. Gieger, Jr. (6154)
John E. W. Baay (22928)
J. Michael DiGiglia (24378)
Nicholas S. Bergeron (37585)
Blaise Chadwick Hill (*pro hac vice*)
Gieger, Laborde & Laperouse, L.L.C.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

*Attorneys for Defendant Aptim Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on June 6, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

By:   /s/ Michael C. Mims