**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>**Plaintiffs**<br><br>**VERSUS**<br><br>**LOUISIANA REGIONAL LANDFILL**<br>**COMPANY, ET AL.,**<br>**Defendants** | **CIVIL ACTION**<br><br>**NO. 19-11133, c/w 19-14512**<br><br>**SECTION: "E" (5)**<br><br>**JUDGE: Morgan**<br>**MAGISTRATE JUDGE: North** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION**
**TO EXCLUDE OPINION TESTIMONY OF JASON SCHELLHAAS**
**PURSUANT TO FEDERAL RULE OF EVIDENCE 702**

## INTRODUCTION

Plaintiffs have retained a damages expert, Jason Schellhaas of Malcolm M. Dienes, LLC,[1] to opine on the estimated "costs that the Plaintiffs would have incurred had they been able to move away from the odors."[2] But no Trial Plaintiff "moved away from the odors" during the relevant time period or even investigated the possibility of doing so, and no Trial Plaintiff incurred any of the estimated costs that are part of Mr. Schellhaas' expert report. Instead, Mr. Schellhaas was instructed by Plaintiffs' counsel to make these assumptions in order to calculate these never-incurred "costs." As purely hypothetical damages, the estimated costs set forth by Mr. Schellhaas are not recoverable compensatory damages, nor is his methodology of calculating relocation costs fit for quantifying Trial Plaintiffs' alleged personal injury – the only damages that Mr. Schellhaas' opinion is directed to – making Mr. Schellhaas' testimony irrelevant.

Even if these hypothetical damages could properly be used as a measure of damages, Mr. Schellhaas' opinions are unreliable and not helpful to the trier of fact. For certain costs, such as estimated lodging and meal costs, Mr. Schellhaas failed to consider the basic factual circumstances applicable to the Trial Plaintiffs during the relevant time period – including that Plaintiffs' own air modeler predicted that they might be impacted by odors at the general causation level of 5 parts per billion ("ppb") less than 2.5% of the time during the relevant time period – rendering the application of his methodology to the facts unreliable.

For storage and cleaning costs, Mr. Schellhaas acted as nothing more than Plaintiffs' calculator: Plaintiffs' counsel provided him with storage and cleaning cost estimates, which he

---

[1] Three individuals from Malcolm M. Dienes, LLC, John W. Theriot, Jonathan A. Stolz, and Jason R. Schellhaas, signed the report. Upon representations of counsel and the deposition testimony of Mr. Schellhaas, Plaintiffs and Mr. Schellhaas confirmed that he was the primary author of the report and the only testifying expert being offered.

[2] Preliminary Analysis, *Frederick Addison v. Louisiana Regional Landfill Company*, Malcolm M. Dienes, L.L.C (Feb. 8, 2024) ("Schellhaas Report") at 5. A copy of the Schellhaas report is attached to the Declaration of Megan R. Brillault ("Brillault Decl."), as Exhibit 1 ("Defs. Ex. 1").

then added up. Mr. Schellhaas did not review or conduct any independent analysis or verification of the storage and cleaning costs, including whether they were appropriate for the circumstances of the Trial Plaintiffs. These flaws render his estimated damages for storage and cleaning costs unreliable and unhelpful to the jury.

Recently amended Federal Rule of Evidence 702 confirms the high burden on Plaintiffs in the upcoming jury trial to establish that their expert relied on sufficient facts or data, is using a reliable methodology, and that the opinions expressed reflect a reliable application of the basis and methodology. Because Mr. Schellhaas' testimony is irrelevant, unreliable, and not helpful to the trier of fact, his testimony on "the potential measure of damages for personal injury as a result of the odors" should be excluded.[3]

## BACKGROUND

Plaintiffs retained Mr. Schellhaas, a certified public accountant, "to conduct a preliminary analysis of . . . the alleged losses sustained by the [Trial Plaintiffs]" as a result of odors emitted from the Jefferson Parish Landfill ("JPLF").[4] For his analysis, Mr. Schellhaas made a number of assumptions as requested by Plaintiffs' counsel. First, he assumed that the Trial Plaintiffs were all impacted by odors emanating from the JPLF and were owed damages as a result.[5] Second, he assumed that a jury would find that a "measure of damages for personal injury as a result of the odors is based on the costs that the [Trial] Plaintiffs would have incurred had they been able to move away from the odors[.]"[6] Notably, Mr. Schellhaas did not consider the impact of other odor sources on each of the Trial Plaintiffs. And none of the Trial Plaintiffs actually moved away from

---

[3] *Id.*
[4] *Id.* at 4.
[5] *Id.* at 5.
[6] *Id.*

their homes during the relevant time period (they did not even investigate the possibility of doing so), and therefore they did not incur any such moving or relocation expenses.

At the request of Plaintiffs' counsel, Mr. Schellhaas assumed the Trial Plaintiffs would have incurred four separate categories of "costs" had they actually moved away from their homes during the relevant time period: (i) lodging costs; (ii) meal costs; (iii) storage costs; and (iv) cleaning costs. The lodging costs provided in his report were based on the cost of extended stay hotels in the metropolitan New Orleans area that were away from the area impacted by the alleged odors.[7] The meal costs were based on the cost of replacement meals that Mr. Schellhaas says the Trial Plaintiffs would have incurred while using extended stay lodging, using the USDA Food Plans: Cost of Food at Home tables—but Mr. Schellhaas does not deduct the meal costs that the Trial Plaintiffs would have incurred in their everyday lives regardless of any odors, and does not explain why preparing meals at an extended stay hotel would be more costly for the Trial Plaintiffs than doing so at their own homes. Mr. Schellhaas reiterates that he is relying on Plaintiffs' counsel for his assumption that meal costs should be included in his calculation.[8]

The storage costs were based on an estimated cost for storing the Trial Plaintiffs' furniture and personal property, which he claims was necessary to keep it from being further affected by the alleged odors (again, based on assumptions provided by Plaintiffs' counsel).[9] Plaintiffs' counsel provided Mr. Schellhaas the storage costs from one local storage facility in the New Orleans area that was located outside of the affected area.[10] Mr. Schellhaas used these storage costs provided

---

[7] *Id.* at 5-6.

[8] *Id.* at 6; Updated Report, *Frederick Addison v. Louisiana Regional Landfill Company*, Malcolm M. Dienes, L.L.C (Mar. 29, 2024) ("Schellhaas Updated Report"), attached as Exhibit 2 to the Brillault Decl. ("Defs. Ex. 2") at 6.

[9] Defs. Ex. 1, Schellhaas Report at 6-7.

[10] *Id.* at 6-7; *see also* Email from Counsel Aaron Oppegard, Storage Unit Rental (Jan. 29, 2024), attached to the Brillault Decl. as Exhibit 3 ("Defs. Ex. 3").

by Plaintiffs' counsel without reviewing storage cost estimates from other facilities in the area.[11] Mr. Schellhaas also did not have information related to the type, amount, or sizing of the furniture and personal property that would hypothetically have been stored and used to determine the size of the storage space needed and, instead, relied on cost estimates provided by Plaintiffs' counsel.

The cleaning costs were based on the costs to remove the odors from the Trial Plaintiffs' furniture and personal property upon their return to their residences at the end of the relevant time period.[12] Similar to the storage costs, Plaintiffs' counsel provided Mr. Schellhaas with estimates of cleaning costs from one company, Stanley Steemer.[13] Mr. Schellhaas added up all of cleaning cost estimates provided by Plaintiffs' counsel without examining estimates from other cleaning companies in the area.[14]

Mr. Schellhaas summarized each of the categories of the costs that were never actually incurred by the Trial Plaintiffs and opined that each individual Trial Plaintiff would have incurred $53,237 in lodging costs (with the two family units incurring $106,475 and $159,712). He also calculated that the Trial Plaintiffs would have incurred between $7,500 and $10,600 in meal costs, $8,370 for storage costs, and between $1,300 to $3,000 in cleaning costs for furniture and related household items for the 2.5 years that comprises the relevant time period.[15] The total costs calculated by Mr. Schellhaas for all four categories ranges between $71,214 and $74,294 for the individual Trial Plaintiffs and $143,109 and $202,332 for the two family units.[16]

---

[11] *See* Defs. Ex. 1, Schellhaas Report at 6-7; Transcript of Deposition of J. Schellhaas (taken Apr. 18, 2024) ("J. Schellhaas Dep. Tr."), attached as Exhibit 4 to the Brillault Decl. ("Defs. Ex. 4") 121:2-6.
[12] Defs. Ex. 1, Schellhaas Report at 5.
[13] *Id.* at 7; *see also* Email from Counsel Aaron Oppegard, Stanley Steemer Quotes (Instant Pricing through Stanley Steemer website) (Feb. 1, 2024), attached to the Brillault Decl. as Exhibit 5 ("Defs. Ex. 5").
[14] Defs. Ex. 1, Schellhaas Report at 7; Defs. Ex. 4, J. Schellhaas Dep. Tr. 127:7-16.
[15] Defs. Ex. 1, Schellhaas Report at 8.
[16] *Id.*

Defendants' Rebuttal Expert, Joseph Gardemal, certified public accountant, certified valuation analyst, and certified fraud examiner, reviewed and analyzed Mr. Schellhaas' opinions in the Schellhaas Report.[17] In his rebuttal report, Mr. Gardemal explained that the Schellhaas Report relied on inappropriate assumptions and was both unreasonable and unreliable for purposes of estimating potential damages.[18] Mr. Gardemal identified flaws with each category of damages in the Schellhaas Report.[19] Mr. Schellhaas submitted a rebuttal report in response, yet the only change in his damages calculations was to adjust certain costs for inflation; he did not address the other errors identified by Mr. Gardemal.[20]

Defendants took Mr. Schellhaas' deposition on April 18, 2024.[21] In his deposition, Mr. Schellhaas explained that his calculations of damages as set forth in his expert report addressed damages for the personal injuries claimed by the Trial Plaintiffs, and he is not opining on damages for loss of use and enjoyment of property.[22] In addition, Mr. Schellhaas confirmed that all of his assumptions were provided by Plaintiffs' counsel, and he did not perform any investigation into whether the assumptions were accurate.[23] Mr. Schellhaas also stated that his calculations would not change even if he disregarded the factual context for the Trial Plaintiffs' claims (i.e., that the Trial Plaintiffs were allegedly impacted by odors), as his opinions only depended on the assumptions of Plaintiffs' counsel about which costs to include in his calculations.[24]

---

[17] Expert Report of Joseph T. Gardemal III CPA/ABV, CVA, CFE, CDBV (Mar. 8, 2024) ("Gardemal Rebuttal Report"), attached as Exhibit 6 to the Brillault Decl. ("Defs Ex. 6").
[18] *Id.* at 4-5; Declaration of Joseph T. Gardemal III ("Gardemal Decl.") ¶ 7.
[19] Defs. Ex. 6, Gardemal Rebuttal Report at 19-28; Gardemal Decl. ¶ 14.
[20] Defs. Ex. 2, Schellhaas Updated Report at 5-7.
[21] *See* Defs. Ex. 4, J. Schellhaas Dep. Tr.
[22] *Id.* 39:4-40:10.
[23] *Id.* 44:2-4; 48:21-24; 52:3-12; 54:6-20.
[24] *Id.* 86:3-88:3.

**LEGAL STANDARD**

Strict application of Rule 702 of the Federal Rules of Evidence is required for this jury trial. Under Rule 702, the expert opinions are inadmissible at trial unless (i) the expert's "specialized knowledge will help the trier of fact, (ii) the testimony is based on sufficient facts or data, (iii) the testimony is the product of reliable principles and methods, and (iv) the expert's opinion reflects a reliable application" of those principles and methods. Fed. R. Evid. 702. The Rule 702 amendments confirm that the party offering the expert testimony bears the burden of establishing its reliability by a preponderance of the evidence and that expert opinions "must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. 702 advisory comm. notes (2023).

District courts act as the gatekeeper in making determinations as to the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). In 2023, Rule 702 was amended to clarify that questionable expert opinions must not go to a jury.[25] This Court, as the gatekeeper, must conduct a two-part inquiry into reliability and relevance. *In re: Taxotere (Docetaxel) Prods. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (Rule 702 is intended "to protect juries from unreliable and irrelevant expert testimony.").

The reliability of an expert's testimony is determined by assessing "whether the reasoning or methodology underlying [it] is valid." *Burst v. Shell Oil Co.*, 104 F. Supp. 3d 773, 776–77, 790 (E.D. La. 2015) (citing *Daubert*, 509 U.S. at 592–93). "The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation." *Shell Offshore, Inc. v. ENI Petroleum US LLC*, No. 16-cv-15537, 2018 WL 1518444, at *1 (E.D. La. Mar. 28, 2018) (Morgan, J.) (internal quotation marks and citations omitted) (excluding expert testimony); *see also Paz v.*

---

[25] *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 345, n.4 (6th Cir. 2024).

*Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) ("Where an expert's opinion is based on insufficient information, the analysis is unreliable.").

A court must also determine whether an expert's testimony is relevant – if it's reasoning or methodology "fits" the facts of the case, and whether it will thereby assist the trier of fact to understand the evidence. *Daubert*, 509 U.S. at 591; *see also Shell Offshore, Inc.*, 2018 WL 1518444, at *2 ("the district court must, at all times, remain 'cognizant of Rule 702's requirement that expert evidence or testimony must assist the trier of fact to understand the evidence or determine a fact in issue . . . .'") (citation omitted). Expert reports that are "nothing more than bare conclusions" are inadmissible because they offer no value to the trier of fact. *U.S. All. Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 561 (E.D. La. 2022) (citing *Slaughter v. S. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990)) (excluding expert report that was "completely unsupported" and simply recited word-for-word plaintiff's version of the facts).

With respect to damages experts, expert testimony should be excluded when the damages expert has failed to conduct a meaningful, independent analysis. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371–72 (5th Cir. 2000) (district court properly excluded expert testimony as the expert did not conduct any independent examination of defendant's gross sales figures, which were provided by plaintiff's attorneys); *Munoz v. Orr*, 200 F.3d 291, 301–02 (5th Cir. 2000) (expert testimony and reports excluded; expert relied on the plaintiffs' compilations of data, which gives rise to a "common-sense skepticism" regarding the expert's evaluation, and expert did not seek to verify the information presented to him) (citation omitted). Further, experts cannot act as mere calculators, performing uncomplicated math calculations that could be performed by a lay person. *See Cardtronics*, 645 F. Supp. 3d at 561–62 (striking expert testimony where expert failed to perform a meaningful independent analysis and only added the numbers on a spreadsheet that

counsel provided); *In re H & M Oil & Gas, LLC*, 511 B.R. 408, 414 n.2, 416 (Bankr. N.D. Tex. 2014) (excluding report and testimony of damages expert who failed to independently verify information in valuation report, and expert's "damage opinion is a simple math equation that anyone could do"); *see also Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, No. 09-cv-1546, 2010 WL 2978289, at *3, 5 (D. Conn. Apr. 9, 2010) (excluded testimony where damages expert only added up invoices and applied interest rates provided by counsel).

## ARGUMENT

### I.  Mr. Schellhaas' estimated costs are inadmissible because they do not calculate actual losses, are irrelevant, and are based on unsupported assumptions.

Mr. Schellhaas is offering opinions on economic damages that the Trial Plaintiffs *might have incurred* had they moved away from their homes, despite the fact that no Trial Plaintiff actually incurred any such costs. The bases for Mr. Schellhaas' damages opinion are two assumptions, both of which were provided by Plaintiffs' counsel: (i) that "the jury will find that a potential measure of damages for personal injury as a result of the odors is based on the costs that the Plaintiffs would have incurred had they been able to move away from the odors;" and (ii) the Trial Plaintiffs were told to leave the area, if they were able to, by Dr. Joseph Kanter.[26] However, Louisiana law does not allow compensatory damages for hypothetical losses that were never incurred by a plaintiff. And even so, Mr. Schellhaas' calculated costs, i.e. economic damages, are irrelevant as they speak to damages that cannot be calculated with mathematical certainty and are not sufficiently tied to the facts of this case. In addition, they are based on the inherently flawed assumption that each Trial Plaintiff had to leave the area – a fact that is wrong and explicitly

---

[26] Defs. Ex. 1, Schellhaas Report at 5.

misleading.[27] As a result, Mr. Schellhaas should be precluded from offering any opinions as to his calculation of the Trial Plaintiffs' alleged damages.

**A.  The calculated costs for hypothetical losses are not proper compensatory damages for the injuries alleged.**

Under La. C.C. art. 2315, if a defendant's fault causes harm to a plaintiff, then the defendant is obligated to compensate the plaintiff for all harm caused. As used in article 2315, "[t]he term damages refers to pecuniary compensation, recompense, or satisfaction for an injury sustained." *McGee v. A C And S, Inc*., 2005-1036 (La. 7/10/06), 933 So. 2d 770, 773 (citation and quotations omitted). Compensatory damages are "designed to place the plaintiff in the position in which he would have been if the tort had not been committed." *Id.* at 774 (citing Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7–1 (Michie 1996)).

In his expert report, Mr. Schellhaas calculated costs for the following types of "losses": (i) lodging; (ii); meals; (iii) storage; and (iv) cleaning.[28] However, none of the Trial Plaintiffs ever incurred these costs – each Trial Plaintiff continued living in their respective homes, eating meals, and using their furniture. Mr. Schellhaas does not explain how awarding these damages would put the Trial Plaintiffs in a position they would have been had they not experienced odors (allegedly) from the JPLF.

Nor is Mr. Schellhaas' approach to calculating "damages" a generally accepted methodology for assessing economic damages.[29] As explained by Mr. Gardemal, the *Comprehensive Guide to Economic Damages* – a generally-accepted publication widely used by economists – provides that "compensatory damages, commonly known as actual damages, are the damages that are necessary to make a plaintiff whole for harm that it suffered as a result of a

---

[27] Defs. Ex. 4, J. Schellhaas Dep. Tr. 48:11-24.
[28] Defs. Ex. 1, Schellhaas Report at 5.
[29] Defs. Ex. 6, Gardemal Rebuttal Report at 10; Gardemal Decl. ¶ 8.

defendant's wrongdoing."[30] Therefore, calculating costs that the Trial Plaintiffs did not actually incur is inconsistent with measuring economic damages. In fact, Mr. Schellhaas, in his report and by his own admission, acknowledged that the only reason he calculated these four costs for each Trial Plaintiff was because Plaintiffs' counsel instructed him to do so.[31] Mr. Schellhaas did not perform any analysis or investigation to determine whether the assumptions provided by counsel were appropriate to rely on for purposes of calculating alleged damages.[32]

The costs calculated by Mr. Schellhaas do not constitute cognizable compensatory damages, *McGee,* 933 So. 2d at 774, as the Trial Plaintiffs would receive compensation for costs not incurred, and Mr. Schellhaas' methodology for calculating damages was therefore flawed.[33] On this basis alone, Mr. Schellhaas' testimony should be precluded.

**B.  Mr. Schellhaas' damages opinions are irrelevant.**

According to Mr. Schellhaas, his calculations were meant to provide a measure of damages to compensate the Trial Plaintiffs for their "personal injuries," which he described as the "physical ailments that were . . . allegedly suffered by the plaintiffs in this case."[34] Damages for the "physical ailments" alleged by the Trial Plaintiffs are considered general damages under Louisiana law, not special damages. *See McGee,* 933 So. 2d at 774. General damages are "those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life-style which cannot really be measured definitively in terms of money," whereas

---

[30] Defs. Ex. 6, Gardemal Rebuttal Report at 10 (citing Fannon, Nancy J., Dunitz, Jonathan M., *The Comprehensive Guide to Economic Damages,* Vol 1, Chapter 24: Franchise and Dealership Litigation Damages, p. 466); Gardemal Decl. ¶ 8.

[31] Defs. Ex. 1, Schellhaas Report at 5; Defs. Ex. 4, J. Schellhaas Dep. Tr. 53:17-54:4.

[32] Defs. Ex. 4, J. Schellhaas Dep. Tr. 54:6-20.

[33] Defs. Ex. 6, Gardemal Rebuttal Report at 10; Gardemal Decl. ¶ 9.

[34] Defs. Ex. 4, J. Schellhaas Dep. Tr. 39:4-8.

special damages are those which "theoretically may be determined with relative certainty, including medical expenses and lost wages." *Id.* (citations omitted).

Mr. Schellhaas' attempt to quantify Trial Plaintiffs' general damages through the calculation of relocation costs are not tethered to the Trial Plaintiffs' alleged pain and suffering injuries – the only injuries that Mr. Schellhaas admittedly sought to address.[35] The lone explanation that Mr. Schellhaas provides for his approach to calculating these alleged damages is that he was instructed by counsel to do so; he has no factual support for why (hypothetical) relocation costs should stand in for the Trial Plaintiffs' claimed pain and suffering damages. Mr. Schellhaas' methodology for determining damages cannot be applied to the injuries he is assessing in this case; therefore, his testimony is not relevant and should be excluded under Rule 702. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) ("Relevance depends upon 'whether [that] reasoning or methodology properly can be applied to the facts in issue.'" (citing *Daubert,* 509 U.S. at 593)); *Pelican Int'l, Inc. v. Hobie Cat Co*., 655 F. Supp. 3d 1002, 1051 (S.D. Cal. 2023) (damages expert excluded; insufficient factual support where expert relied on non-comparable license to opine on royalty rate).

**C.  Mr. Schellhaas relies on counterfactual assumptions.**

Further, Mr. Schellhaas' opinions are based on a false assumption – specifically, the incorrect notion that Dr. Kanter stated at a press conference that residents should leave the area if they are able to.[36] This is not what Dr. Kanter said. Rather, at the press conference, Dr. Kanter stated, "when the odors are at a high level… residents should, if they are able to, leave the area particularly if they have certain chronic conditions that put them at increased risk mainly

---

[35] Defs. Ex. 1, Schellhaas Report at 5; Defs. Ex. 4, J. Schellhaas Dep. Tr. 39:4-40:10.
[36] Defs. Ex. 1, Schellhaas Report at 5; Defs. Ex. 4, J. Schellhaas Dep. Tr. 46:13-25; Gardemal Decl. ¶ 10.

pulmonary disease, asthma, COPD[.]"[37] In addition, prior to the issuance of Mr. Schellhaas'
expert report, Dr. Kanter testified that he "had attempted to communicate there w[ere] certain
people who are predisposed to exacerbations of chronic conditions, usually pulmonary
conditions, asthma and COPD, that can be exacerbated by noxious odors, that those individuals,
when the odors are bad, if they can leave, that's feasible that they should do so."[38] Dr. Kanter's
guidance did not apply to all residents and it did not apply to all instances of odor. Rather, he was
advising on safeguards in the event of extreme odor exposure that could aggravate pulmonary
and respiratory conditions, which for hydrogen sulfide only occurs at concentrations which are
orders of magnitude greater than anything modeled in this case.

 While Mr. Schellhaas had a copy of the transcript of the press conference, he ignored the
full and accurate statement by Dr. Kanter, instead utilizing the version provided by Plaintiffs'
counsel in their assumptions.[39] Relying on statements that are indisputably inaccurate and
ignoring the correct fact, makes one of the key assumptions underpinning Mr. Schellhaas'
calculation of damages in his report a counterfactual assumption. As such, Mr. Schellhaas' expert
opinions do not satisfy Rule 702 because they are not "tied to the facts" and not the product of
reliable principles and methods. *Scardina v. Maersk Line, Ltd.*, No. 00-cv-1512, 2002 WL
1585566, at *3 (E.D. La. July 15, 2002) (excluding expert opinions on projected income that
were based on unsupported assumptions).

---

[37] Defs. Ex. 6, Gardemal Rebuttal Report at 15 (citing Jefferson Parish Press Conference held by Jefferson Parish President Mike Yenni on July 23, 2018); Gardemal Decl. ¶ 11.
[38] Transcript of Deposition of J. Kanter, MD (taken Jan. 25, 2024), attached as Exhibit 7 to the Brillault Decl. ("Defs. Ex. 7") 60:5-18; Gardemal Decl. ¶ 12.
[39] Defs. Ex. 1, Schellhaas Report at 5.

**II. The four categories of costs are not based on sufficient facts, are unreliable, and do not constitute specialized knowledge as required under Rule 702.**

    **A. The lodging and meals cost calculations are inadmissible.**

Mr. Schellhaas' estimated damages for lodging and meal costs should be precluded at trial because he failed to consider relevant, key facts regarding each Trial Plaintiff's circumstances, and he relies on unsupported assumptions provided by Plaintiffs' counsel. An expert's failure to take into account key facts in forming a conclusion weakens the reliability of his opinions. *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 (5th Cir. 1987) (expert testimony unreliable when it was incomplete in a critical area); *McNabney v. Lab. Corp. of Am.*, 153 F. App'x 293, 295-96 (5th Cir. 2005) (expert's failure to consider and exclude other potential causes of injury before offering an opinion rendered his testimony unreliable); *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 806-07 (N.D. Tex. 2018), *aff'd*, No. 11-cv-3296, 2018 WL 2064126 (N.D. Tex. May 2, 2018) (excluding damages expert where assumptions had no factual basis). In addition, Mr. Schellhaas admits that at least for the lodging costs, the trier of fact is able to conduct the same mathematical calculation he performed, revealing that his testimony is not "specialized knowledge" that will help the trier of fact as required under Rule 702.

    **1. Lodging Costs**

In calculating lodging costs, Mr. Schellhaas multiplied the total number of days for the relevant time period by the daily cost for an extended stay facility. This methodology incorrectly assumes that each Trial Plaintiff was impacted by hydrogen sulfide odors at average concentrations of 5 ppb for 30 minutes every single day during the relevant time period. This assumption is contradicted by both undisputed facts and Plaintiffs' own air modeling.

While Defendants do not agree with Mr. Lape's (Plaintiffs' air dispersion expert) modeling results, even those results demonstrate that all Trial Plaintiffs were impacted by odors on

significantly less than half the total days for the relevant time period.[40] For example, according to the modeling results, the Lewis and Thompson family's property had one or more "odor events" on 16% of the days, and Mr. Tate's property (which is closest to the JPLF) had odor events on no more than 35% of the days.[41] However, Mr. Schellhaas ignored Mr. Lape's modeling data for purposes of calculating lodging costs.

In addition, Mr. Schellhaas did not consider and account for the number of days that each Trial Plaintiff already resided away from their homes for non-odor related reasons during the relevant time period.[42] Mr. Gardemal identified several dates where some of the Trial Plaintiffs were away from their homes.[43] For example, Mr. Tate was deployed on numerous occasions during the relevant time period for 1 to 4 weeks at a time, during which time he certainly would not require an extended stay hotel.[44] Similarly, one of the Gremillion children attended a two-week sleep away camp every summer.[45] Even when alerted to these facts, Mr. Schellhaas made no adjustment for these time periods in his Updated Report and instead stated that his errors can be fixed later by the trier of fact.[46] The failure to adjust his damages calculations to account for the time periods that the Trial Plaintiffs were voluntarily away from their homes renders Mr. Schellhaas' testimony inadmissible because it is based on insufficient facts. *Paz,* 555 F.3d at 389.

In addition, Mr. Schellhaas' position that the jury can recalculate lodging costs demonstrates that his testimony is not based on any specialized knowledge that would help the trier of fact. Courts regularly exclude these types of opinions, noting that "it is unnecessary for a proposed 'expert' to perform simple mathematical calculations." *Albarado v. Chouest Offshore,*

---

[40] *See* Defs. Ex. 6, Gardemal Rebuttal Report at 17.
[41] *See id.* Odor event means that a 3- minute period where hydrogen sulfide concentrations were at or above 5 ppb.
[42] Defs. Ex. 6, Gardemal Rebuttal Report 19; Gardemal Decl. ¶ 15.
[43] Defs. Ex. 6, Gardemal Rebuttal Report at 21; Gardemal Decl. ¶ 15.
[44] Defs. Ex. 6, Gardemal Rebuttal Report at 21; Gardemal Decl. ¶ 15.
[45] Defs. Ex. 6, Gardemal Rebuttal Report at 21; Gardemal Decl. ¶ 15.
[46] Defs. Ex. 2, Schellhaas Updated Report at 9.

*LLC*, No. 02-cv-3504, 2003 WL 22204538, at *1 n.1 (E.D. La. Sept. 5, 2003).[47] Here, Mr. Schellhaas relies on a single lodging quote and multiplies it by the number of days and rooms needed for each of the Trial Plaintiffs (or family units) to determine the lodging costs. By his own admission, his calculation lacks the specialized knowledge because the jury would be able to recalculate the costs as needed. *In re Connolly N. Am.*, LLC, 398 B.R. 564, 576 (Bankr. E.D. Mich. 2008) ("Simple addition and division does not qualify as 'scientific, technical, or other specialized knowledge.'") (citation omitted).

Additionally, Mr. Schellhaas only assessed extended stay facilities because that is what Plaintiffs' counsel instructed him to do.[48] He did not independently consider potential costs associated with a move to a less expensive rental property (that was more similar to the Trial Plaintiffs' then-current property) or even whether alternative locations were possible or practicable.[49] Mr. Schellhaas' failure to carefully consider and affirmatively conclude that the assumption is reasonable based on the facts of the case demonstrates that his proposed damages for lodging are unsupported. *See Jacked Up*, 291 F. Supp. 3d at 809-10 (excluding testimony of damages expert whose assumptions were unexplained or unsupported by the record).

---

[47] *See also Martin v. City of Atlanta, Ga.*, 579 F. App'x 819, 826 (11th Cir. 2014) (affirming exclusion of expert because "the jury was entirely capable of looking at the numbers and the racial classifications and making the same mathematical calculations without expert testimony"); *Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc.*, No. 10-cv-437, 2015 WL 5708541, at *7 (D. Conn. Sept. 29, 2015) (holding that plaintiff failed to show how its expert's calculations were "more than simple math that a jury could do without the assistance of an expert"); *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 947 (C.D. Cal. 2014) ("Vasserman does not explain why simple mathematical calculations constitute expert testimony."); *Mooring Capital Fund, LLC v. Phoenix Cent., Inc.*, No. 06-cv-0006, 2009 WL 4263359, at *6 (W.D. Okla. Feb. 12, 2009) ("Expert testimony is not required to present mathematical calculations to a jury and is often unnecessary for that purpose."), aff'd sub nom. *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814 (10th Cir. 2010); *In re Connolly N. Am., LLC*, 398 B.R. 564, 576 (Bankr. E.D. Mich. 2008) ("Simple addition and division does not qualify as 'scientific, technical, or other specialized knowledge.'"); *Short v. Anangel Spirit Compania Naviera, S.A.*, No. 01-cv-1400, 2002 WL 31740707, at *3 (E.D. La. Dec. 4, 2002) (granting motion to exclude economic expert's testimony because the "jury is fully capable of making simple mathematical calculations for any award of past loss earnings").

[48] Defs. Ex. 2, Schellhaas Updated Report at 10.

[49] Defs. Ex. 6, Gardemal Rebuttal Report at 20, 31; Gardemal Decl. ¶ 17. As Mr. Gardemal explained, three of the thirteen Trial Plaintiffs resided in rental properties from which they could have moved immediately (i.e. they had no lease or were on month to month leases) without incurring additional lodging costs. Defs. Ex. 6, Gardemal Rebuttal Report at 31; Gardemal Decl. ¶ 16.

Mr. Schellhaas' cost of lodging calculation is nothing more than a regurgitation of Plaintiffs' counsel's assumptions with a calculation, which, in Mr. Schellhaas' own words, the jury could do. This does not reflect an application of reliable methods or specialized knowledge helpful to the jury. *See In re Connolly N. Am.*, 98 B.R. at 576.

### 2. Meal Costs

Mr. Schellhaas also calculates the costs of meals based on Plaintiffs' counsel's instruction "to assume that a measure of damages in this case is cost of meals that would have been incurred while using the extended stay lodging."[50] His calculation does not meet Rule 702 standards because, like the lodging costs, he assumes the costs would have been incurred without careful consideration as to its reasonableness. *Jacked Up*, 291 F. Supp. 3d at 809-10. Indeed, this assumption is not reasonable, which renders his testimony on damages related to meal costs the product of an unreliable method.

Mr. Schellhaas determined the estimated meal costs for each Trial Plaintiff by relying on the USDA Food Plans: Cost of Food at Home tables and calculating those costs for the entire relevant time period.[51] But as explained above, compensatory damages are "designed to place the plaintiff in the position in which he would have been if the tort had not been committed."[52] Mr. Schellhaas' methodology puts each Trial Plaintiff in a better position than if the tort had not been committed: meals are essential, and each of the Trial Plaintiffs would have incurred costs for meals regardless of whether they experienced an odor or not, and regardless of whether they had to relocate or not.[53] Mr. Schellhaas has not provided any opinions as to whether the costs would have

---

[50] Defs. Ex. 1, Schellhaas Report at 6.
[51] *Id.*
[52] Frank L. Maraist Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-1 (Michie 1996); *Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 304 (5th Cir. 1976).
[53] Defs. Ex. 6, Gardemal Rebuttal Report at 20; Gardemal Decl. ¶ 19.

been higher at the extended stay facility, nor whether there was some factor that would have resulted in any of the Trial Plaintiffs incurring additional costs related to meals that they did not otherwise incur.[54] Nor has Mr. Schellhaas attempted to deduct the costs of meals the Trial Plaintiffs would have incurred during the relevant time period even without odors present.[55] Indeed, for Trial Plaintiff Mary Ann Winningkoff, Mr. Schellhaas included the meal costs for her husband, who is *not* a Trial Plaintiff, because he "was instructed by counsel that it was appropriate to include [her] husband."[56]

Mr. Schellhaas' determination of meal costs is based on unsupported assumptions rather than sufficient facts, making his testimony inadmissible under Rule 702.

### B. Mr. Schellhaas' storage and cleaning costs are unreliable and not helpful to the jury.

The storage and cleaning costs included by Mr. Schellhaas as part of the Trial Plaintiffs' alleged damages are merely a recitation of information provided by Plaintiffs' counsel – he has not undertaken any expert analysis that requires specialized knowledge that will help the trier of fact, nor has he taken any steps to confirm the reasonableness of the assumptions passed along to him by counsel.[57] As a result, his calculations do not satisfy Rule 702 admissibility requirements and should be precluded.

Plaintiffs' counsel instructed Mr. Schellhaas to assume, which he did, the costs to store Trial Plaintiffs' household items and the costs to clean the Trial Plaintiffs' furniture were appropriate measures for damages. Plaintiffs' counsel provided Mr. Schellhaas with quotes for both the storage space and a one-time cleaning appointment, which Mr. Schellhaas used to

---

[54] Defs. Ex. 2, Schellhaas Updated Report at 10; Defs. Ex. 4, J. Schellhaas Dep. Tr. 112:3-17.
[55] Defs. Ex. 6, Gardemal Rebuttal Report at 25; Gardemal Decl. ¶ 19.
[56] Defs. Ex. 4, J. Schellhaas Dep. Tr. 115:12-116:8.
[57] Gardemal Decl. ¶¶ 20, 21.

calculate the total storage costs and cleaning costs per Trial Plaintiff or family unit. But, once again, Mr. Schellhaas did not conduct his own independent damages calculations or confirm the reliability of the information provided. Mr. Schellhaas blindly accepted counsel's determination of storage costs and cleaning costs and used them to determine each Trial Plaintiffs' alleged damages.

### 1. Storage costs

Mr. Schellhaas' calculations with respect to storage costs should be excluded in the first instance because he only performed a simple mathematical calculation, multiplying the monthly quote provided by counsel by the number of months in the relevant time period.[58] *See supra*, section II.A.1 and n.46. Like the lodging costs, Mr. Schellhaas admits that he was just "making a calculation" and that if the jury "determined that it's appropriate to calculate damages for a different period of time" then the calculations could be adjusted by the jury.[59] *Master-Halco*, 2010 WL 2978289, at *5 (excluding expert testimony as unhelpful to the trier of fact where the expert merely added up numbers provided by counsel, applied interested rates provided by counsel and "ignore[d] virtually everything else").

In addition, Mr. Schellhaas failed to independently assess both the assumptions and the reasonableness of the quotes provided to him by counsel for the alleged storage costs. He testified that he did not independently research other storage facilities or investigate Plaintiffs' counsel's storage cost estimates.[60] He also admitted that he did not provide input into the determination of these costs and did not know how counsel obtained the storage facility pricing.[61] And he admitted that he did not perform any investigation into whether the size of the storage unit chosen by

---

[58] Defs. Ex. 1, Schellhaas Report at 6-7.
[59] Defs. Ex. 4, J. Schellhaas Dep. Tr. 110:2-111:14.
[60] *Id.* 121:2-6.
[61] *Id.* 119:3-120:12.

Plaintiffs' counsel for the estimate was needed by or appropriate for each of the Trial Plaintiffs.[62]

Because he did not independently verify the reasonableness of the quote or consider comparable

pricing at other storage facilities in the New Orleans area, Mr. Schellhaas' storage cost estimates

are unreliable and do not satisfy Rule 702. *See Seatrax*, 200 F.3d at 371–72; *see also Ask Chems.,*

*LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (damages expert excluded

when its "wholesale adoption of Plaintiff's estimates, without revealing or apparently even

evaluating the bases for those estimates, goes beyond relying on facts or data and instead cloaks

unexamined assumptions in the authority of expert analysis").

### 2.  Cleaning costs

With respect to the estimated cleaning costs, Mr. Schellhaas used cost estimates that

Plaintiffs' counsel obtained from a single company, Stanley Steemer, without questioning the

accuracy or reliability of the estimate. Mr. Schellhaas testified that he was unaware of any factors

or criteria that counsel considered in selecting Stanley Steemer, nor did he ever see the original

quotes from Stanley Steemer for the alleged cleaning costs.[63] While Mr. Schellhaas testified that

he navigated the Stanley Steemer website to check one or two of the quotes to see if it would come

up with the same answer that counsel provided, he did not independently check all of the quotes.[64]

Nor did Mr. Schellhaas attempt to verify whether the details of Trial Plaintiffs' homes and

furnishings used for the cleaning estimates were accurate.[65] Mr. Schellhaas also did not seek quotes

from any other cleaning companies or compare rates from Stanley Steemer to other companies.[66]

Mr. Schellhaas even admitted at his deposition that a portion of the quoted cleaning costs included

---

[62] *Id.* 122:3-13.
[63] *Id.* 126:4-16, 132:6-18.
[64] *Id.* 126:23-127:6.
[65] *Id.* 134:6-12.
[66] *Id.* 127:7-16.

furniture items that would have also been hypothetically stored for the entire relevant time period—which results in an improper double-counting of costs for those items.[67]

Adopting information wholesale provided by counsel and performing elementary math does not constitute "expert" analysis nor is it helpful to the jury. *See JRL Enters., Inc. v. Procorp Assocs., Inc.*, No. 01-cv-2893, 2003 WL 21284020, at *8 (E.D. La. June 3, 2003) (excluding testimony of accountant damages expert where "plaintiff [presented] its own estimation of damages in the guise of an expert opinion"); *see also supra*, n.47. Mr. Schellhaas merely took the storage and cleaning cost estimates from counsel and added them up to "determine" the alleged damages of the Trial Plaintiffs.[68] There were no expert calculations or computations involved to conclude these two categories of alleged damages. Mr. Schellhaas restated counsel's estimates without offering any expert analysis, and that is not expert testimony that would be helpful to the jury.

## CONCLUSION

Plaintiffs have not met their burden of showing that Mr. Schellhaas' opinions satisfy the requirements of Rule 702. As a threshold issue, Mr. Schellhaas' damages calculations are not tied to the facts of the case and are irrelevant because the Trial Plaintiffs cannot recover costs that they never incurred. Further, Mr. Schellhaas relies on unsubstantiated facts and assumptions from Plaintiffs' counsel in calculating lodging, meal, storage, and cleaning costs—failing to: (i) conduct an independent analysis or verification of those costs and assumptions, and (ii) base his estimates on sufficient facts. Mr. Schellhaas also performs simple mathematical calculations that do not require any specialized knowledge and therefore are not helpful to the trier of fact. The flaws in

---

[67] *Id.* 131:15-19.
[68] Transcript of Deposition of J. Gardemal (taken Apr. 22, 2024), attached as Exhibit 8 to the Brillault Decl. (Defs. Ex. 8") 78:18-79:4 (he "took an analysis and calculations that were performed by counsel and put those into his report and adopted them as his own opinion.").

Mr. Schellhaas' approach to calculating damages and in estimating each type of cost renders his entire damages analysis inadmissible.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:  __/s/ Michael C. Mims_____
      Michael Cash (#31655)
      Cherrell Simms Taplin (#28227)
      Michael C. Mims (#33991)
      Brady M. Hadden (#37708)
      J. Hunter Curtis (#39150)
      Alec Andrade (#38659)
      701 Poydras Street, Suite 5000
      New Orleans, Louisiana  70139
      (504) 581-7979

      BEVERIDGE & DIAMOND, P.C.

      Megan R. Brillault (*pro hac vice*)
      Michael G. Murphy (*pro hac vice*)
      John H. Paul (*pro hac vice*)
      Katelyn E. Ciolino (*pro hac vice*)
      Katrina M. Krebs (*pro hac vice*)
      825 Third Avenue, 16th Floor
      New York, NY 10022
      (212) 702-5400

      James B. Slaughter (*pro hac vice*)
      1900 N Street, NW, Suite 100
      Washington, DC 20036
      (202) 789-6000

      Michael F. Vitris (*pro hac vice*)
      400 W. 15th Street, Suite 1410
      Austin, TX 78701
      (512) 391-8035

      *Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

CONNICK AND CONNICK, LLC

By:    /s/ Michael S. Futrell
          William P. Connick, La. Bar No. 14158
          Michael S. Futrell, La. Bar. No. 20819
          Matthew D. Moghis, La. Bar. No. 33994
          Anya M. Jones, La. Bar. No. 36923
          3421 N. Causeway Blvd., Suite 408
          Metairie, Louisiana 70002
          Telephone: (504) 681-6658
          Facsimile: (504) 838-9903
          E-mail: moghis@connicklaw.com

          *Counsel for Defendant Jefferson Parish*


GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:    /s/ J. Michael DiGiglia
          Ernest P. Gieger, Jr. (6154)
          John E. W. Baay (22928)
          J. Michael DiGiglia (24378)
          Nicholas S. Bergeron (37585)
          Blaise Chadwick Hill (*pro hac vice*)
          Gieger, Laborde & Laperouse, L.L.C.
          Hancock Whitney Center
          701 Poydras Street, Suite 4800
          New Orleans, Louisiana 70139
          Telephone: (504) 561-0400
          Facsimile: (504) 561-1011

          *Attorneys for Defendant Aptim Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed on June 6, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

____/s/ Michael C. Mims_____

OF COUNSEL
