UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** Plaintiffs<br><br>VERSUS<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** Defendants | CIVIL ACTION<br><br>NO. 19-11133, c/w 19-14512<br><br>SECTION: "E" (5)<br><br>JUDGE: Morgan<br>MAGISTRATE JUDGE: North |

## DECLARATION OF JOSEPH T. GARDEMAL III IN SUPPORT OF DEFENDANTS' JOINT MOTION TO EXCLUDE OPINION TESTIMONY OF JASON SCHELLHAAS PURSUANT TO FEDERAL RULE OF EVIDENCE 702

I, Joseph T. Gardemal III, CPA/ABV, CVA, CFE, CDBV, hereby declare as follows:

1. I am a Managing Director with Alvarez & Marsal. Alvarez & Marsal provides a range of analytical, investigative, and financial consulting services to law firms, corporate counsel, and company management and boards involved in complex financial disputes and investigations.

2. I have been retained by Defendants Louisiana Regional Landfill Company ("LRLC"), Waste Connections US, Inc., and Waste Connections Bayou, Inc. (collectively "Waste Connections Defendants") and Defendant Parish of Jefferson ("Parish" and collectively with the Waste Connections Defendants "Defendants") in the above-referenced matters to review, analyze, and respond to the opinions and analysis of Jason Schellhaas (Mr. Schellhaas") contained in the Preliminary Analysis, *Frederick Addison v. Louisiana Regional Landfill Company*, Malcolm M. Dienes, L.L.C (Feb. 8, 2024) ("Schellhaas Report"), attached as Exhibit 1 to the Declaration of Megan. R. Brillault ("Brillault Decl.").

3. This declaration is submitted in support of Defendants' Joint Motion to Exclude Opinion Testimony of Jason Schellhaas Pursuant to Federal Rule of Evidence 702 in the above-referenced matters.

4. The opinions and declarations conveyed in this document are my own, based on my knowledge, my review of relevant documents and other information, and my understanding of the relevant facts.

5. I am a Certified Public Accountant, a Certified Valuation Analyst, a Certified Fraud Examiner, and hold a Certification in Distressed Business Valuation. I am also Accredited in Business Valuation by the American Institute of Certified Public Accountants. In 1988, I received a B.B.A. in Accounting from Loyola University in New Orleans. I am the author of several articles for professional journals and have made numerous presentations on valuation, damages, and accounting-related topics.

6. I have served as an expert in damages, accounting, and valuation in numerous matters. In addition, I have testified before regulatory agencies, arbitration panels, and the courts, both in the United States and abroad, and have submitted several expert reports as more fully described in my curriculum vitae. A true and correct copy is in Appendix B to the Expert Report of Joseph T. Gardemal III CPA/ABV, CVA, CFE, CDBV ("Gardemal Rebuttal Report") (Mar. 8, 2024), attached as Exhibit 6 to the Brillault Decl. In addition, I served as a court-appointed valuation expert in the matter *Froelich v. Senior Campus Living, LLC*, Civ. No. 02-2305, in the United States District Court for the District of Maryland. Since February 2021, I have served as the Court-appointed Independent Monitor over GPB Capital, LLC, in connection with the matter *Securities and Exchange Commission v. GPB Capital LLC, et al.*, No. 21-cv-00583, filed in United States District Court for the Eastern District of New York.

7. For his damages estimations, Mr. Schellhaas relies on inappropriate assumptions, all of which were provided to him by Plaintiffs' counsel, that overstate any reasonable measure of damages, to the extent that any damages exist.

8.       To start, Mr. Schellhaas incorrectly assumes that compensatory damages should include hypothetical costs that the Trial Plaintiffs[1] did not incur. According to the *Comprehensive Guide to Economic Damages,* a generally-accepted and well respected publication within the economic damages community, which combines: (i) the economic expert's knowledge of damages calculations and methods with (ii) legal and case analysis:

> Compensatory damages, commonly known as actual damages, are the damages that are necessary to make a plaintiff whole for harm that it suffered as a result of a defendant's wrongdoing.[2]

Mr. Schellhaas incorrectly assumes that damages may be measured, in part, by the costs that Trial Plaintiffs might have incurred had they moved away from the area during the entire relevant time period. Even if this was the generally accepted method for assessing damages, which it is not, Trial Plaintiffs never incurred any of these costs.

9.       To the extent that the Trial Plaintiffs did not incur any of the costs estimated by Mr. Schellhaas, they have experienced no actual losses and therefore, in accordance with the generally-accepted economic principles for measuring compensatory damages, they have no entitlement to the types of costs calculated by Mr. Schellhaas.

10.      In addition to not applying a generally-accepted method for measuring compensatory damages, Mr. Schellhaas has adopted, wholesale, assumptions that he received from Plaintiffs' counsel, even where such assumptions are counterfactual to the evidence. As a result, he incorrectly assumes that each Trial Plaintiff suffered monetary damages every day during the relevant time period.

---

[1]   "Trial Plaintiffs" refers to the thirteen *Addison* Plaintiffs who are going to trial in August 2024.

[2]   Fannon, Nancy J., Dunitz, Jonathan M., *The Comprehensive Guide to Economic Damages*, Vol 1, Chapter 24: Franchise and Dealership Litigation Damages, p. 466.

11. For example, Mr. Schellhaas incorporated Plaintiffs' counsel's assumption that, "the jury will find that a potential measure of damages for personal injury as a result of the odors is based on the costs that the [Trial] Plaintiffs would have incurred had they been able to move away from the odors." Mr. Schellhaas explained that the assumption was based on a July 2018 recommendation by Dr. Joseph Kanter, then medical director and administrator for Region 1 of the Louisiana Department of Health, that, "residents should, if they are able to, leave the area." But that is not all that Dr. Kanter said. His full statement was, "when the odors are at a high level… residents should, if they are able to, leave the area particularly if they have certain chronic conditions that put them at increased risk mainly pulmonary disease, asthma, COPD..."

12. Dr. Kanter also testified in a deposition in this case, which was available to Mr. Schellhaas before he authored his report. In that deposition, Dr. Kanter further explained his recommendation during the press conference as follows: "To the best of my recollection, what I had attempted to communicate there was that certain people who are predisposed to exacerbations of chronic conditions, usually pulmonary conditions, asthma and COPD, that can be exacerbated by noxious odors, that those individuals, when the odors are bad, if they can leave, that's feasible that they should do so."

13. It is my opinion that because the underlying basis as reported by Mr. Schellhaas for his assumption that the Trial Plaintiffs would be entitled to relocation costs for the entire relevant time period is flawed, Mr. Schellhaas' reliance on the assumption provided by counsel is unreasonable and contradicts the established facts in this case.

14. With respect to Mr. Schellhaas' calculation of the four categories of costs: (i) lodging costs for temporary lodging away from the area impacted by the odors, (ii) replacement costs of meals, (iii) moving and storage costs for furniture and personal property, and (iv) cleaning

costs of their furniture and personal property at the end of the relevant time period, it is my opinion that the calculation of costs for each category is unreliable and is not based on the facts of the case for the purposes of estimating the Trial Plaintiffs' potential damages. In addition, and in part because he is not relying on sufficient facts, Mr. Schellhaas has overstated the potential damages.

15. Regarding the lodging costs, Mr. Schellhaas fails to consider and account for the number of days each Trial Plaintiff resided away from their homes for non-odor related reasons during the relevant time period. For example, Jonathan Tate was deployed away from his home for military duties and training on behalf of the National Guard for one week or more, while others were on week-long cruises or away at summer camp.

16. Additionally, three of the thirteen Trial Plaintiffs rented the property in which they resided and either did not have a lease or were on a month-to-month lease. As a result, these Trial Plaintiffs could have left the area during the relevant period without incurring additional lodging costs.

17. Mr. Schellhaas also assumes that each of the Trial Plaintiffs would have moved to an extended stay facility for the entirety of the relevant time period. He failed to consider whether the Trial Plaintiffs could have moved to a comparable rental property at a lesser cost, rather than the cost of an "average" extended stay facility.

18. Mr. Schellhaas also estimated meal costs that the Trial Plaintiffs would have incurred while using extended stay lodging. Again, Mr. Schellhaas did not take into account key facts, which renders his estimates unreliable in my opinion.

19. For example, Mr. Schellhaas did not account for the fact that the Trial Plaintiffs would have incurred meal costs regardless of any odors that they were exposed to during the relevant time period. Meals are essential for any individual regardless of whether that individual

5

experienced an odor or not, and the costs of such meals are not avoidable. Had the emissions of odor from JPLF (or any other source) not occurred during the Relevant Period, Trial Plaintiffs would have still incurred costs for meals. It is my opinion that these alleged damages should be disregarded in their entirety.

20. Mr. Schellhaas' estimates of storage and cleaning costs are also flawed and based on a methodology that is improper and not generally-accepted in the economic community. For these two categories of costs, Mr. Schellhaas received rates from Plaintiffs' counsel, which he accepted and put into his report and adopted them as his own opinion.

21. Based on my review of his reports and his deposition testimony, Mr. Schellhaas improperly subordinated his judgment to counsel and failed to do any independent review of those estimates, which he used to calculate the Trial Plaintiffs' proposed damages for storage and cleaning.

22. These flaws, in my opinion, reflect a failure to comply with the Integrity and Objectivity Rule and the Independence Rule of the American Institute of CPAs ("AICPA") Code of Professional Conduct. Under the Integrity and Objectivity Rule, "a member shall maintain objectivity and integrity, shall be free of conflicts of interest, and shall not knowingly misrepresent facts or subordinate his or her judgment to others." 1.100.001. Furthermore, the Independence Rule requires members to be, "independent in the performance of professional services." 1.200.001.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of June, 2024.

_____
Joseph T. Gardemal III
CPA/ABV, CVA, CFE, CDBV
Alvarez & Marsal Disputes and Investigations, LLC
Metropolitan Square, 655 15th Street, N.W.
Washington, D.C. 20005