**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

*Related Case:*

| | |
|---|---|
| **FREDERICK ADDISION ET AL.,** | **CIVIL ACTION** |
|      **Plaintiffs,** | |
| | **NO. 19-11133** |
| **VERSUS** | |
| | **SECTION: "E"(5)** |
| **LOUISIANA REGIONAL LANDFILL** | |
| **COMPANY, ET AL.,** | |
|      **Defendants.** | |
| | **JUDGE: Morgan** |
| *Applies to: All Cases* | **MAGISTRATE JUDGE: North** |

**DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE**
**OPINIONS OF PLAINTIFFS' EXPERT, JOSE SANANES**
**ON STANDARDS OF CARE**

**TABLE OF CONTENTS**

I.    Introduction ........................................................................................................... 1

II.   Background ............................................................................................................ 2

    A.    Mr. Sananes' Opinions on Standards of Care ............................................. 2

III.  Federal Rule of Evidence 702 and *Daubert* Requirements ................................... 3

    A.    Application of Rule 702 in Jury Trials ........................................................ 5

IV.   Argument ............................................................................................................... 7

    A.    Mr. Sananes Is Unqualified to Testify as to Standards of Care Applicable to an
          Operating Municipal Solid Waste Landfill ................................................. 7

        1.    Mr. Sananes Is Unqualified to Opine about Standards of Care for Waste
            Acceptance and Management ................................................................ 8

        2.    Mr. Sananes Is Unqualified to Testify as to Operations of an Active Municipal
            Solid Waste Landfill ............................................................................ 11

V.    Request for Oral Argument ................................................................................. 13

VI.   Conclusion ........................................................................................................... 13

## I.       Introduction

All Defendants[1] jointly submit this motion to exclude the opinions of Plaintiffs' proposed landfill engineering expert, Mr. Jose Sananes ("Sananes"), relating to standards of care applicable to landfill owners and operators. Mr. Sananes has never advised the owner or operator of an operating municipal solid waste ("MSW") landfill on waste acceptance practices, compliance with permit terms, best management practices for waste disposal, odor control programs, or a host of other everyday landfill management decisions. Yet in his latest report, Mr. Sananes offers new opinions about standards of care applicable to MSW landfills for the first time in this litigation.[2] Among those proffered opinions, Mr. Sananes claims Defendants breached standards of care by accepting a material called spent lime at the Jefferson Parish Landfill ("Landfill" or "JPLF").[3] Given the chance at deposition to explain the full breadth of his experience, Mr. Sananes instead demonstrated that he is not qualified to offer any opinions as to applicable standards of care, rendering his opinions inadmissible under Federal Rule of Evidence 702 and *Daubert*.[4]

Plaintiffs intend to present Mr. Sananes' opinions on standards of care to the jury despite his lack of qualifications. This Court and many others have recognized that the primary purpose of Rule 702 gatekeeping is to protect a jury, which lacks specialized knowledge, from unreliable

---

[1] Defendants in this matter are Waste Connections US, Inc., Waste Connections Bayou, Inc., and Louisiana Regional Landfill Company (collectively, the "Waste Connections Defendants"), the Parish of Jefferson, and Aptim Corp.

[2] *See* Mr. Sananes' Second Supplemental Expert Report, dated February 16, 2024, appended to the accompanying Declaration of John H. Paul (dated June 6, 2024) ("Paul Dec.") as Exhibit 1 (hereafter "Second Supplemental Report") at §§ 15-16.  *See also* Deposition Transcript of Jose Sananes, taken April 10, 2024, appended to the Paul Dec. as Exhibit 2 (hereafter "Sananes Dep.") at 61:22-25 (confirming his standards of care opinions are new).

[3] Second Supplemental Report at p. 14, § 6.5, ¶ 40(d)(iv).

[4] Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

expert testimony.[5] Opinions unfounded by qualifications lack the support of training and experience in the real world to be "more likely than not" reliable. Mr. Sananes' opinions on standards of care should be excluded.

## II.     Background

Plaintiffs have retained Mr. Sananes as an expert in landfill engineering. Mr. Sananes is an engineer employed by U.S. Ramboll Consulting ("Ramboll"). In expert disclosures prior to the jury trial scheduled in this action, Mr. Sananes offers new opinions about standards of care applicable to the Defendants' operation of the JPLF.[6]

### A.     Mr. Sananes' Opinions on Standards of Care

Mr. Sananes' supplemental expert report for the specific causation phase offers opinions on asserted "Breaches of Standards of Care by Defendants in this Case."[7] Mr. Sananes asserts that Defendants breached the standards of care by:

- failing to ensure that the landfill gas collection and leachate collection systems were properly designed, constructed, operated, and/or maintained in order to prevent the formation and emission of noxious odors or to collect and treat such odors;

- failing to ensure that the landfill gas collection and leachate collection systems were being operated and maintained properly;

---

[5] The Court's general causation opinion noted that the Court's gatekeeping role was "diminished in a bench trial" and that the purpose of *Daubert* is to "ensure that only reliable and relevant expert testimony is presented to the jury." *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, 2021 WL 5177827, at *3 (E.D. La. Nov. 8, 2021) (Morgan, J.). *See also Talley v. U.S.*, 2023 WL 2881293, at *3 (E.D. La. Mar. 16, 2023) (Morgan, J.) (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district court judge sits as the trier of fact in place of a jury."); *Riverkeeper v. Taylor Energy Co. L.L.C.*, 2015 WL 4547611, at *1 (E.D. La. July 23, 2015) (Morgan, J.) (same); *A.R. v. Pohlmann*, 2019 WL 468528, at *5 (E.D. La. Feb. 6, 2019) (Morgan, J.) (same); *Wallis v. Hornbeck Offshore Operators*, 2014 WL 3809743, at *1 (E.D. La. Aug. 1, 2014) (Morgan, J.) (same). *See also Richardson v. SEACOR Lifeboats, LLC*, 2015 WL 2193907, at *2 (E.D. La. May 11, 2015) (Morgan, J.) ("most of the objectives of *Daubert* are not implicated" in a bench trial).

[6] Sananes Dep. At 61:22-25.

[7] Second Supplemental Report at p. 14, § 6.5.

- failing to ensure the improperly designed, maintained, or operated landfill gas collection and leachate collection systems were repaired, replaced or enhanced in a timely manner; and

- accepting waste containing sulfur, "[g]iven that (1) sulfur-containing materials were disposed or processed within the MSW landfill area without waste segregation by physical containment (e.g., isolated cell), (2) the JP Landfill is a municipal landfill containing organic waste, (3) the JP landfill had historical serious problems in controlling leachate levels and (4) there was no gas collection system in place in Phase 4A to collect any landfill gases that were generated prior to the spring of 2019."[8]

Mr. Sananes also asserts that various steps (which he calls Best Management Practices) should have been taken with respect to the acceptance of sulfur-containing waste at the JPLF, citing to documents from the EPA, Massachusetts, New Jersey, and several studies.[9] In deposition, he acknowledged that these steps were simply "tools in the toolbox" rather than requirements or even recommendations by the agencies or the study authors.[10]

## III.   Federal Rule of Evidence 702 and *Daubert* Requirements

Rule 702 of the Federal Rules of Evidence ("FRE") governs the admissibility of expert testimony. The rule permits experts to offer opinions if the proponent demonstrates that it is more likely than not that (a) the expert's specialized knowledge will help the trier of fact, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied those principles and methods. The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). The Supreme Court has provided a five-factor test for gauging the reliability of an expert's methodology:

---

[8] Second Supplemental Report at p. 14, § 6.5.

[9] Second Supplemental Report at p. 53, § 15.3.

[10] Sananes Dep. At 185:22-186:25.

(1) whether the expert's theory can be or has been tested;

(2) whether the theory has been subject to peer review and publication;

(3) the known or potential rate of error of a technique or theory when applied;

(4) the existence and maintenance of standards and controls; and

(5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (*en banc*), *cert. denied*, 526 U.S. 1064 (1999) (citing *Daubert*, 509 U.S. at 593-95). The proponent of the expert bears the burden of establishing these criteria. *Moore*, 151 F.3d at 276.

*Daubert* asks "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. The Court must assess "all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). This Court has recognized that the purpose of *Daubert* is to "ensure that only reliable and relevant expert testimony is presented to the jury."[11]

Expert testimony "must be reliable at each and every step or else it is inadmissible." *Knight*, 482 F.3d at 355. The Fifth Circuit has clarified that "the existence of sufficient facts and a reliable methodology is in all instances mandatory."[12] The expert's testimony "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. This requires "objective, independent validation of the expert's methodology." *Moore*, 151 F.3d at 276. The Supreme Court acknowledged that the application of *Daubert* will prohibit juries from hearing "insights and innovations," propounded in the scientific search for truth, since trials are

---

[11] *Ictech-Bendeck*, 2021 WL 5177827, at *3.

[12] *Hathaway v. Bazany*, 507 F.3d 312, 318-319 (5th Cir. 2007) (excluding expert testimony because it was based on "extrapolation" based on "a number of supposed facts not in the record").

concerned with "the particularized resolution of legal disputes," not the outer boundaries of scientific investigation.[13]

Courts also exclude expert testimony if there is "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). This analysis considers "whether there is an adequate 'fit' between the data and the opinion proffered." *Moore*, 151 F.3d at 276 (citing *Joiner*, 522 U.S. 136). An expert opinion "based on 'insufficient, erroneous information,' fails the reliability standard." *Moore v. Intl. Paint, L.L.C.*, 547 Fed. Appx. 513, 515 (5th Cir. 2013).[14] "Whether an expert's testimony is reliable is a fact-specific inquiry." *Burleson v. Texas Dept. of Crim. J.*, 393 F.3d 577, 584 (5th Cir. 2004).

## A.    Application of Rule 702 in Jury Trials

Stringent application of the *Daubert* standard is required for this jury trial. The Fifth Circuit and the judges of this District have uniformly recognized *Daubert*'s heightened importance in jury trials, as compared to bench trials where it is "diminished."[15] This Court has made that point many

---

[13] *Daubert*, 509 U.S. at 597 ("We recognize that, in practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations. That, nevertheless, is the balance that is struck by Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes."). The Fifth Circuit expressed the same principle. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) ("In sum, the law cannot wait for future scientific investigation and research. We must resolve cases in our courts on the basis of scientific knowledge that is currently available."). As Judge Africk recognized, "the courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it." *Ruffin v. BP Expl. & Prod.*, No. 20-334, 2023 WL 7271087, at *4 (E.D. La. Oct. 31, 2023) (Africk, J.) (quoting *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1203 (11th Cir. 2010).

[14] "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). The Fifth Circuit has clarified that "the existence of sufficient facts and a reliable methodology is in all instances mandatory." *Hathaway v. Bazany*, 507 F.3d 312, 318-319 (5th Cir. 2007).

[15] The Fifth Circuit recognizes that "the importance of the trial court's gatekeeper role is significantly diminished in bench trials, as in this instance, because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. Partn. V. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010). *See also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *A. Specialty Ins. Co. v. Porter, Inc.*, 742 Fed. Appx. 850, n. 4 (5th Cir. 2018); *In*

times,[16] including at the general causation hearing, in which the Court was the trier of fact.[17] Likewise, Judge Vance has explained that the *Daubert* obligation is more "urgent" in jury trials because of the risk of "exposing the jury to confusing and unreliable expert testimony."[18] And Judge Barbier has stated that "the objectives of *Daubert* … are no longer implicated" in a bench trial, but more essential in a jury trial.[19]

In 2023, Federal Rule of Evidence 702 was amended to clarify that a proponent must prove to the Court that it is "more likely than not" that all of the criteria of Rule 702 are satisfied as to the proffered opinions.[20]  The Advisory Committee explained that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology" had often been

---

*re Texas Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 329 (5th Cir. 2013); *In re MBS Mgt. Services, Inc.*, 690 F.3d 352, 358 (5th Cir. 2012).

[16] *Talley v. U.S.*, 2023 WL 2881293, at *3 (E.D. La. Mar. 16, 2023) (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district court judge sits as the trier of fact in place of a jury."); *Riverkeeper v. Taylor Energy Co. L.L.C.*, 2015 WL 4547611, at *1 (E.D. La. July 23, 2015) (Morgan, J.) (same); *A.R. v. Pohlmann*, No. 16-17865, 2019 WL 468528, at *5 (E.D. La. Feb. 6, 2019) (Morgan, J.) (same); *Wallis v. Hornbeck Offshore Operators*, 2014 WL 3809743, at *1 (E.D. La. Aug. 1, 2014) (Morgan, J.) (same). *See also Richardson v. SEACOR Lifeboats, LLC*, 2015 WL 2193907, at *2 (E.D. La. May 11, 2015) (Morgan, J.) ("most of the objectives of *Daubert* are not implicated" in a bench trial).

[17] *Ictech-Bendeck*, 2021 WL 5177827, at *3 ("the Court's 'role as the 'gate-keeper' is diminished in a bench trial,'" since "'the purpose of Daubert motion[s] is 'to ensure that only reliable and relevant expert testimony is presented to the jury.'") (quoting *Kinnerson v. Arean Offshore, LP*, No. 16-720, 2019 WL 2571627, at *2 (E.D. La. June 21, 2019) and *Thompson v. Rowan Cos., Inc.*, No. 06-3218, 2007 WL 724646, at *1 (E.D. La. March 6, 2007) (Barbier, J.)).

[18] *Atlantic Specialty Ins. Co. v. Porter, Inc.*, 2016 WL 6569346, at *3 (E.D. La. Nov. 4, 2016) (Vance, J.), *aff'd*, 742 Fed. Appx. 850 (5th Cir. 2018).

[19] *Deville v. Comar Marine Corp.*, 2009 WL 1870896, at *1 (E.D. La. June 25, 2009) (Barbier, J.). *See also Thompson v. Rowan Companies, Inc.*, 2007 WL 724646, at *1 (E.D. La. Mar. 6, 2007) (Barbier, J.) ("the purpose of *Daubert* motion is 'to ensure that only reliable and relevant expert testimony is presented to the jury'") (quoting *Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999)); *Hebert v. Cannon*, 2005 WL 3533695, at *2 (E.D. La. Oct. 31, 2005) (Barbier, J.) ("the concerns of *Daubert* are largely moot in this case since it is set as a bench trial, and *Daubert* was preoccupied with the courts' gatekeeping function vis-a-vis the jury.").

[20] Fed. R. Evid. 702.

incorrectly applied as questions of weight rather than questions of admissibility.[21] While the Supreme Court recognized in *Daubert* that "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," the amendments to Rule 702 emphasize that the evidence must be admissible under the preponderance standard of Rule 104(a) in the first place.

The Court should not allow Mr. Sananes to offer his opinions on standards of care because Plaintiffs cannot prove by a preponderance that his specialized knowledge, training, or experience will help the trier of fact, (b) his testimony is based on sufficient facts or data, (c) his testimony is the product of reliable principles and methods, and (d) he has reliably applied those principles and methods. Mr. Sananes' proposed opinions fail these criteria, and therefore the opinions must be excluded.

## IV.    ARGUMENT

### A.    Mr. Sananes Is Unqualified to Testify as to Standards of Care Applicable to an Operating Municipal Solid Waste Landfill

A landfill must be operated to attain multiple goals, many of which are in tension. The landfill operator must screen, place, compact, and cover thousands of tons of waste every day. The waste is placed in a cell that is designed under several layers of regulation to contain liquids and gas, and to minimize the potential environmental impacts of all waste disposed by residents and businesses in the area that the landfill serves. Landfill liners and leachate collection systems are highly engineered systems involving complex design and construction. Landfill gas collection

---

[21] The Advisory Committee stated "the rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, Advisory Committee Note, 2023 Amendments. The Committee explained that "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." *Id.*

systems are also highly engineered systems that manage a growing and fluctuating amount of gas, and a gas collection system must be installed, maintained, and replaced across hundreds of acres to operate effectively. Waste must be compacted and placed so it will remain stable as the landfill compresses and waste degrades. Large volumes of cover materials must be excavated, moved, placed, graded, repaired, and replaced, despite the effects of severe weather and a shifting landfill mass.  All of these systems must operate together and return a profit to the operator and owner so that the landfill can continue to provide a vital daily public service.

Without experience in this industry, Mr. Sananes has attempted to substitute his knowledge of the re-use of closed landfills or his temporary work on isolated aspects of a few landfills for the expertise necessary to understand the complex systems at a municipal solid waste landfill. But he lacks education, training, or experience in central areas of expertise that are necessary for an expert to present opinions to a jury on the issues in this case. Mr. Sananes' limited and tangential experience is not translatable to the issues he has been asked by Plaintiffs to address.

> ### 1.     Mr. Sananes Is Unqualified to Opine about Standards of Care for Waste Acceptance and Management

Expert witnesses must be "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Mr. Sananes has no education, training, experience, or skill in recommending or implementing standards of care at active municipal solid waste landfills regarding the acceptance of waste or management of odors. This Court should therefore prevent Mr. Sananes from testifying to the jury regarding standards of care that the Defendants should have followed when accepting special wastes.

In this specific causation phase, Mr. Sananes offers new opinions about standards of care for the first time in this litigation.[22] Among those opinions, Mr. Sananes asserts that the Defendants breached standards of care by accepting spent lime, and particularly by doing so under various operating conditions:

> Given that (1) sulfur-containing materials were disposed or processed within the MSW landfill area without waste segregation by physical containment (e.g., isolated cell), (2) the JP Landfill is a municipal landfill containing organic waste, (3) the JP landfill had historical serious problems in controlling leachate levels and (4) there was no gas collection system in place in Phase 4A to collect any landfill gases that were generated prior to the spring of 2019, the Jefferson Parish and Waste Connections should have refused to allow the disposal of spent lime in the JP Landfill.[23]

There can be little doubt that to understand how to apply these asserted criteria and standards, the jury would require help by an expert with the requisite knowledge, skill, experience, training, or education.  Those qualifications would need to relate to the operations of a municipal solid waste landfill, since Mr. Sananes' opinion relies on commingling with organic waste, which Mr. Sananes asserts is a particular concern at MSW landfills.[24] His opinions also rest on operations of the gas collection system and standards for control of leachate levels, which are systems required primarily for MSW landfills.[25] Yet Mr. Sananes has none of these qualifications.

Mr. Sananes does not have education or training related to operational standards of care at active landfills. He is a geo-environmental engineer.[26] He has a B.S. in Civil & Environmental

---

[22] Sananes Dep. At 61:22-25.

[23] Second Supplemental Report at p. 14, § 6.5, ¶ 40(d)(iv).

[24] Second Supplemental Report at p. 14, § 6.5, ¶ 40(d)(i), (iv).

[25] *Id.*

[26] *See* Second Supplemental Expert Report of Jose Sananes, Appendix A, Curriculum Vitae (hereafter "CV") at 1.

Engineering and M.S. in Environmental Engineering.[27] He has not received any certification or other post-graduate training in landfill operations.[28]

Nor does Mr. Sananes have the experience or practical skills in the operations of active landfills that would be necessary to testify as an expert on operational standards of care. Mr. Sananes has never advised the operator of an active municipal solid waste landfill on the acceptance of any type of waste.[29] Specific to the acceptance of spent lime, Mr. Sananes has never advised the owner or operator of an active municipal solid waste landfill on the acceptance of sulfur-containing materials for disposal.[30] At his deposition, Mr. Sananes knew very little about the decision-making process related to the acceptance of spent lime in this case.[31]

Mr. Sananes' asserted standard of care relates specifically to how an MSW landfill should, in his view, control odors by refusing certain types of waste. This is another area in which Mr. Sananes lacks education, training, experience, or knowledge. Mr. Sananes has never advised the operator of an MSW landfill on compliance with odor control requirements.[32] Nor has he advised an operating MSW landfill on the scope of foreseeable harm due to odors.[33]

---

[27] CV at 1.

[28] *See* "Courses/Certifications" listed in CV at 1.

[29] Sananes Dep. At 179:4-180:8 ("Q. Have you advised the operator of an active municipal solid waste landfill on the acceptance of any type of waste? A. No. Sorry. Other – other than that example that we kept talking about earlier of the Bayonne landfill where we were taking in different types of beneficially used materials? Q. Right. So you, I presume, have not advised the operator of an active municipal solid waste landfill on the acceptance of flue gas desulfurization materials? A. Correct."). Mr. Sananes had previously admitted that the Bayonne project was not an active municipal solid waste landfill. Sananes Dep. At 63:20-64:10.

[30] Sananes Dep. At 213:14-22.

[31] Sananes Dep. At 259:17-260:15.

[32] Sananes Dep. At 63:20-64:10.

[33] Sananes Dep. At 75:19-22.

Mr. Sananes' closest experience was advising the developer of a golf course on top of a former landfill. In doing so, the developer beneficially used recyclable materials (crushed glass, bricks, and construction and demolition (C&D) waste screenings) to raise the elevation of the property.[34] Mr. Sananes advised the developer to stop accepting C&D screenings to reduce odors detected on the property.[35] This isolated experience with an inactive landfill-turned-golf-course is inapplicable to the daily and ongoing operational judgements at an active MSW facility that Mr. Sananes' opinions would implicate.

Mr. Sananes is wholly unqualified to opine that the owner and operator of the JPLF should have refused to accept spent lime or any other material based on operational conditions at the Landfill, and his opinion should be excluded.

> ### 2.    Mr. Sananes Is Unqualified to Testify as to Operations of an Active Municipal Solid Waste Landfill.

As noted above, an expert must be qualified by knowledge, experience, skill, education, or training before presenting opinions to a jury. Mr. Sananes has no education or experience in operations of an active MSW landfill with respect to disposal cell design or operations, nor of operations of its landfill gas collection system or leachate control systems. Mr. Sananes should not be allowed to testify about how Defendants should have operated the landfill gas collection and control system, the leachate management system, or waste disposal cells.

Mr. Sananes' opinion about the acceptance of spent lime is based on several premises that are far beyond his experience. First, despite opining on standards of care for waste segregation, Mr. Sananes has never actually designed cells for specific types of waste to be disposed at a

---

[34] Sananes Dep. At 48:21-49:1.

[35] *Id.*

municipal solid waste landfill.[36] Second, despite opining on standards of care for leachate levels, Mr. Sananes has never advised the operator of an active municipal solid waste landfill as to compliance with rules regarding leachate control systems.[37] Nor has he ever advised a client as to compliance with regulations governing leachate depth at the bottom of the municipal solid waste landfill.[38] Although he claims the Defendants violated a rule regarding pumps installed in gas wells, Mr. Sananes has never actually advised the operator of an active municipal solid waste landfill on compliance with that rule.[39] Third, Mr. Sananes opines about the standards of care for gas collection systems, even though he lacks any experience operating a landfill gas collection system.[40] He has never assisted a municipal solid waste landfill in the preparation of an air permit application.[41] He has never estimated emissions of landfill gas for permitting purposes.[42] Similarly, he has never had any experience designing changes to a landfill gas collection and control system for delivery of gas to a high BTU plant,[43] as happened at the JPLF.[44] And he lacks any experience with the installation of pumps in landfill gas collection wells at a municipal solid waste landfill.[45]

---

[36] Sananes Dep. At 52:6-9.

[37] Sananes Dep. At 153:6-154:3.

[38] Sananes Dep. At 154:17-155:16.

[39] Sananes' report opined that "a significant portion of the leachate collection system equipment, including pumps within the gas wells, was inoperable and need of replacement or repair for extended time periods, thereby not meeting the requirements of LAC 33:VII.711.B.3.e.iii." Second Supplemental Report at p. 52, ¶ 173(c). But he admitted he never advised the operator of an active municipal solid waste landfill on compliance with this rule. *See* Sananes Dep. at 162:11-163:20.

[40] Sananes Dep. at 53:9-12.

[41] Sananes Dep. at 62:1-4. *See also* Transcript from the General Causation Trial, *Ictech-Bendeck v. Waste Connections Bayou, Inc*., No. 18-7889, Day 2, Morning Session (Feb. 1, 2022), appended to the Paul Dec. as Exhibit 3 (hereafter "Trial Transcript") at 304:16-18.

[42] Trial Transcript at 304:13-15.

[43] A High BTU plant recovers landfill gas for energy. See Second Supplemental Rept. at ¶ 93.

[44] Sananes Dep. at 53:5-8.

[45] Sananes Dep. at 53:21-54:4.

Though he asserts that Defendants failed to comply with several regulations of the Louisiana Department of Environmental Quality, he has never advised the operator of an active municipal solid waste landfill in Louisiana regarding the rules he cited for the reception of waste with potential to produce methane, development of an air monitoring plan, control of odors, nonfunctioning leachate pumps, and maintenance of sufficient equipment.[46]

Mr. Sananes also offers opinions on the scope of the Defendants' responsibilities under their contracts for operations of the Landfill.[47] Yet he has never advised the operator of an active municipal solid waste landfill on its responsibilities under a contract for operation of a landfill.[48]

Mr. Sananes' opinions as to Defendants' compliance with standards of care at the JPLF are beyond his education and experience. Without this background, Mr. Sananes is unqualified to testify that the Defendants breached standards of care by, among other things, accepting spent lime.[49]

## V.    REQUEST FOR ORAL ARGUMENT

Defendants request oral argument on their motion to exclude Mr. Sananes' testimony in light of the importance of these issues to the central purposes of Rule 702 as amended and the principles in *Daubert*.

## VI.    CONCLUSION

Mr. Sananes has not had the training or experience in the operation of a municipal solid waste landfill to testify to a jury as to his opinions on proper standards of care for landfill owners

---

[46] Sananes opined about Louisiana regulations for "facility operational standards" regarding these topics.  *See* Second Supplemental Report at p. 51, ¶ 171.  But he admitted he has not advised the operator of an active municipal solid waste landfill in Louisiana or any other state on any of these rules.

[47] Second Supplemental Report § 16.2, at p. 58-59.

[48] Sananes Dep. at 218:1-5.

[49] Second Supplemental Report at p. 14, § 6.5, ¶ 40(d)(iv).

and operators. His opinions as to the proper standards of care have never been formulated or used outside the context of litigation. Rather, his opinions on this topic were developed expressly for the purpose of testifying. These are precisely the types of opinions that Rule 702 and numerous courts, including the Supreme Court in *Daubert*, caution against admitting into evidence. Defendants respectfully request that the Court exclude Mr. Sananes' proposed opinions on applicable standards of care.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:    /s/ Michael C. Mims
        Michael Cash (#31655)
        Cherrell Simms Taplin (#28227)
        Michael C. Mims (#33991)
        Brady M. Hadden (#37708)
        J. Hunter Curtis (#39150)
        Alex Andrade (#38659)
        701 Poydras Street, Suite 5000
        New Orleans, LA 70139
        Telephone: (504) 581-7979
        Telefax: (504) 556-4108

        BEVERIDGE & DIAMOND, P.C.

        Megan R. Brillault (*pro hac vice*)
        Michael G. Murphy (*pro hac vice*)
        John H. Paul (*pro hac vice*)
        Katelyn E. Ciolino (*pro hac vice*)
        Katrina M. Krebs (*pro hac vice*)
        825 Third Avenue, 16th Floor
        New York, NY 10022
        (212) 702-5400

        James B. Slaughter (*pro hac vice*)
        1900 N Street, NW, Suite 100
        Washington, DC 20036
        (202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*


CONNICK AND CONNICK, LLC

By:    /s/ Michael S. Futrell
       William P. Connick, La. Bar No. 14158
       Michael S. Futrell, La. Bar No. 20819
       Matthew D. Moghis, La. Bar No. 33994
       Anya M. Jones, La. Bar No. 36923
       3421 N. Causeway Blvd., Suite 408
       Metairie, Louisiana 70002
       Telephone: (504) 681-6658
       Facsimile: (504) 838-9903
       E-mail: moghis@connicklaw.com

       *Counsel for Defendant Jefferson Parish*


GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:    /s/ J. Michael DiGiglia
       Ernest P. Gieger, Jr. (6154)
       John E. W. Baay (22928)
       J. Michael DiGiglia (24378)
       Nicholas S. Bergeron (37585)
       Blaise Chadwick Hill (*pro hac vice*)
       Gieger, Laborde & Laperouse, L.L.C.
       Hancock Whitney Center
       701 Poydras Street, Suite 4800
       New Orleans, Louisiana 70139
       Telephone: (504) 561-0400
       Facsimile: (504) 561-1011

       *Attorneys for Defendant Aptim Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed on June 6, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Michael C. Mims
Michael C. Mims
