**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| | **NO. 19-11133, c/w 19-14512** |
| **VERSUS** | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>    **Defendants** | |
| | **JUDGE: Morgan**<br>**MAGISTRATE JUDGE: North** |
| *Applies to: All Cases* | |

### *EX PARTE* MOTION FOR LEAVE TO FILE MOTION IN LIMINE AND 29-PAGE MEMORANDUM TO EXCLUDE H₂S EMISSIONS OPINIONS OF JOSE SANANES

Defendants Aptim Corp., Jefferson Parish, Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc. ("Defendants") respectfully request leave to file the attached Motion in Limine to Exclude $H_2S$ Emissions Opinions of Jose Sananes ("Motion in Limine").

The Court has previously indicated that it does not intend to hear motions in limine regarding expert opinions that were presented during the 2022 trial on general causation.[1] Defendants respectfully submit that good cause exists to consider the Motion in Limine – including amendments to Rule 702 specific to jury trials, which were not in place during the general causation phase.

Prior to determining whether to allow Mr. Sananes' opinions on $H_2S$ emissions to reach the jury, the Court should hear the Motion in Limine, for three reasons. First, the specific causation trial will not be a bench trial – it will be a jury trial, which implicates a heightened *Daubert*

---

[1] *See* Minute Entry, ECF Doc. 517, (April 2, 2024).

standard. The Court specifically cited the less rigorous *Daubert* standard for bench trials as a basis for admitting Mr. Sananes' opinions during the general causation trial.[2] Second, a new version of Rule 702 will govern the specific causation trial. The Advisory Committee revised Rule 702 in 2023 to emphasize that the preponderance of the evidence standard applies to the Court's determination of whether proffered expert evidence may be admitted.[3] Third, the Court did not actually adopt Mr. Sananes' analysis or opinions in its general causation opinion, nor that of any expert relying on Mr. Sananes' opinions.[4] Thus, performing a formal *Daubert* analysis of his methodology would not undermine the Courts' prior findings of fact or conclusions of law, and would ensure that the jury is presented with evidence meeting the requirements of FRE 702.

## I.   The Court has not yet addressed the heightened *Daubert* standard that will apply to the upcoming jury trial.

Stringent application of the *Daubert* standard is required for this jury trial. The Fifth Circuit and the judges of this District have uniformly recognized *Daubert*'s heightened importance in jury trials, as compared to bench trials where it is "diminished." *Whitehouse Hotel Ltd. Partn. v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010).[5] This Court has made that point many times in prior decisions. *See, e.g., Talley v. U.S.*, 2023 WL 2881293, at *3 (E.D. La. Mar. 16, 2023) (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district court judge sits as the trier of fact in place of

---

[2] Exhibit A, Transcript of Bench Trial on General Causation, Day 3, Afternoon Session (Feb. 2, 2022) at 746:23-747:3.

[3] Fed. R. Evid. 702, Advisory Committee Note, 2023 Amendments.

[4] *Ictech-Bendeck v. Waste Connections Bayou, Inc*., No. 18-7889, 2022 WL 17324430 (E.D. La. Nov. 29, 2022).

[5] The Fifth Circuit recognizes that "the importance of the trial court's gatekeeper role is significantly diminished in bench trials, as in this instance, because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. Partn. v. C.I.R*., 615 F.3d 321, 330 (5th Cir. 2010). *See also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *A. Specialty Ins. Co. v. Porter, Inc*., 742 Fed. Appx. 850, n. 4 (5th Cir. 2018); *In re Texas Grand Prairie Hotel Realty, L.L.C*., 710 F.3d 324, 329 (5th Cir. 2013); *In re MBS Mgt. Services, Inc*., 690 F.3d 352, 358 (5th Cir. 2012).

a jury.").[6] Indeed, the Court applied that principle in the general causation phase of this case, where the Court was the trier of fact.[7] In addition to noting the less rigorous bench trial standard in its written order, this Court reiterated that principle orally at the general causation trial.

At the close of Plaintiff's case in chief, Defendants raised a Motion for Judgment on Partial Findings pursuant to Rule 52(c), raising, among other issues, the unreliability of Mr. Sananes' $H_2S$ emissions opinions. The Court orally denied the motion and stated:

> With respect to Mr. Sananes, you know, this is a judge hearing, judge trial, and I am perfectly capable of listening to the testimony and deciding what weight to give it based on the things that you brought up. And so I'm denying your *Daubert* motion because that would just go to the weight of the evidence that I give it.[8]

Similarly, Judge Vance has explained that the *Daubert* obligation is more "urgent" in jury trials because of the risk of "exposing the jury to confusing and unreliable expert testimony."[9] And Judge Barbier has stated that "the objectives of *Daubert* … are no longer implicated" in a bench trial, but more essential in a jury trial.[10]

---

[6] *See also Riverkeeper v. Taylor Energy Co. L.L.C.*, 2015 WL 4547611, at *1 (E.D. La. July 23, 2015) (Morgan, J.) (same); *A.R. v. Pohlmann*, No. 16-17865, 2019 WL 468528, at *5 (E.D. La. Feb. 6, 2019) (Morgan, J.) (same); *Wallis v. Hornbeck Offshore Operators*, 2014 WL 3809743, at *1 (E.D. La. Aug. 1, 2014) (Morgan, J.) (same). *See also Richardson v. SEACOR Lifeboats, LLC*, 2015 WL 2193907, at *2 (E.D. La. May 11, 2015) (Morgan, J.) ("most of the objectives of *Daubert* are not implicated" in a bench trial).

[7] *Ictech-Bendeck v. Waste Connections Bayou, Inc*., 2021 WL 5177827, at *3 (E.D. La. Nov. 8, 2021) ("the Court's 'role as the 'gate-keeper' is diminished in a bench trial,'" since "'the purpose of Daubert motion[s] is 'to ensure that only reliable and relevant expert testimony is presented to the jury.'") (quoting *Kinnerson v. Arean Offshore, LP*, No. 16-720, 2019 WL 2571627, at *2 (E.D. La. June 21, 2019) and *Thompson v. Rowan Cos., Inc*., No. 06-3218, 2007 WL 724646, at *1 (E.D. La. March 6, 2007) (Barbier, J.)).

[8] Transcript of Bench Trial on General Causation, Day 3, Afternoon Session (Feb. 2, 2022) at 746:23-747:3, attached hereto as Exhibit A.

[9] *Atlantic Specialty Ins. Co. v. Porter, Inc*., 2016 WL 6569346, at *3 (E.D. La. Nov. 4, 2016) (Vance, J.), *aff'd*, 742 Fed. Appx. 850 (5th Cir. 2018).

[10] *Deville v. Comar Marine Corp*., 2009 WL 1870896, at *1 (E.D. La. June 25, 2009) (Barbier, J.). *See also Thompson v. Rowan Companies, Inc*., 2007 WL 724646, at *1 (E.D. La. Mar. 6, 2007) ("the purpose of *Daubert* motion is 'to ensure that only reliable and relevant expert testimony is presented to the jury'") (quoting *Rushing v. Kansas City Southern Ry. Co*., 185 F.3d 496, 506 (5th Cir. 1999)); *Hebert v. Cannon*, 2005 WL 3533695, at *2 (E.D. La. Oct. 31, 2005) (Barbier, J.) ("the concerns of *Daubert* are largely moot in this case since it is set as a bench trial, and *Daubert* was preoccupied with the courts' gatekeeping function vis-a-vis the jury.").

The Court allowed Mr. Sananes to testify as to his $H_2S$ emissions opinions during the general causation hearing, despite his use of novel and untested methods, because the Court's gatekeeping obligation was "diminished in a bench trial."[11] Now, Plaintiffs intend to present Mr. Sananes' opinions to a jury, who will be unequipped to analyze the reliability of Mr. Sananes' methodology.[12] Compared to the general causation phase, the Court's *Daubert* gatekeeping obligation is therefore more "essential" because the factfinder will be a jury.[13]

## II.   Revisions to Rule 702 require the Court to fulfill its gatekeeping function as to Mr. Sananes.

In 2023, Federal Rule of Evidence 702 was amended to clarify that a proponent must prove to the Court that it is "more likely than not" that all of the criteria of Rule 702 are satisfied as to the proffered opinions.[14] The Advisory Committee explained that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology" had often been incorrectly applied as questions of weight rather than questions of admissibility.[15] While the Supreme Court recognized in *Daubert* that "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," the amendments to Rule 702 emphasize that the evidence must be admissible under the preponderance standard of Rule 104(a) in the first place.

---

[11] *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, 2021 WL 5177827, at *3 (E.D. La. Nov. 8, 2021).

[12] The Fifth Circuit recognizes that the district court's gatekeeper role is essential in jury trials because of the "risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. Partn. v. C.I.R.*, 615 F.3d 321, 330 (5th Cir. 2010). That risk is certainly present here because Mr. Sananes uses methods that are outside the average juror's personal experience.

[13] *Talley v. U.S.*, 2023 WL 2881293, at *3 (E.D. La. Mar. 16, 2023) (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district court judge sits as the trier of fact in place of a jury.").

[14] Fed. R. Evid. 702.

[15] The Advisory Committee stated "the rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, Advisory Committee Note, 2023 Amendments. The Committee explained that "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." *Id.*

The Court's oral reasons during the general causation hearing did not expressly apply the preponderance standard to Mr. Sananes' methodology. The Court determined that Defendants' Rule 702 challenge to the admissibility of his methodology "would just go to the weight of the evidence that [the Court would] give it."[16] Because the Advisory Committee has now revised Rule 702, in this specific causation trial, the Court should perform a formal *Daubert* gatekeeping analysis of Mr. Sananes' methodology.

### III.  The Motion in Limine raises crucial specific causation issues and does not seek to relitigate the Court's general causation findings.

Finally, the Court should grant Defendants leave to file the Motion in Limine, as it raises crucial specific causation issues and does not seek to relitigate the Court's general causation findings. The Court's findings of fact and conclusions of law from the general causation phase did not adopt Mr. Sananes' analysis regarding hydrogen sulfide ($H_2S$) emissions from the Jefferson Parish Landfill ("JPLF"), or even mention his opinions in any fashion.[17] Rather, in addressing whether $H_2S$ escaped JPLF in sufficient quantities to make a finding of general causation, the Court relied entirely on air samples collected by LDEQ in some of the relevant neighborhoods – *not* on any of Mr. Sananes' $H_2S$ estimates or on any modeling performed by Plaintiffs.[18]

The upcoming specific causation trial will hinge, in part, on Plaintiffs' ability to convince the jury that these specific thirteen Trial Plaintiffs were actually exposed to 5 ppb of $H_2S$ from JPLF over 30 minutes. Plaintiffs' only proof of exposures at such concentrations is their air modeling – which in turn relies on Mr. Sananes' $H_2S$ emissions calculations. In other words, Mr. Sananes' $H_2S$ emissions calculations are a crucial piece of *specific causation* evidence that was not addressed in any way by the Court's general causation opinion. Defendants respectfully request

---

[16] Exhibit A, Transcript of Bench Trial on General Causation at 746:23-747:3.
[17] ECF Doc. 323.
[18] ECF Doc. 323, pp. 21-24.

that the Court perform its *Daubert* gatekeeping function on this crucial specific causation evidence, which would in no way result in re-litigation of general causation issues.

**IV.   Defendants respectfully request a modest page extension.**

Finally, in order to fully set forth the five Defendants' positions as to Mr. Sananes, Defendants believe they require a modest extension of the 25-page memorandum limit set forth in Local Rule 7.7. Defendants respectfully request leave to file a 29-page memorandum as to Mr. Sananes. This extension is necessary as Mr. Sananes' testimony is of a highly technical nature and is the key foundation for Plaintiffs' modeling of the $H_2S$ exposures allegedly experienced by the Trial Plaintiffs.

Defendants assert that the filing of the requested memorandum will not cause any undue delay and does not involve any bad faith or dilatory motive. Finally, no undue prejudice will result to Plaintiffs should this Court allow Defendants to file the requested memorandum.

<u>**CONCLUSION**</u>

For the above reasons, the Court should grant Defendants leave to file the attached Motion in Limine to Exclude $H_2S$ Emissions Opinions of Jose Sananes.

Respectfully submitted,

LISKOW & LEWIS, APLC

By: ___/s/ Michael C. Mims_____
        Michael Cash (#31655)
        Cherrell Simms Taplin (#28227)
        Michael C. Mims (#33991)
        Brady M. Hadden (#37708)
        J. Hunter Curtis (#39150)
        Alex Andrade (#38659)
        701 Poydras Street, Suite 5000

New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108


BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional
Landfill Company, Waste Connections
Bayou, Inc., and Waste Connections US, Inc.*


CONNICK AND CONNICK, LLC

By:    /s/ Michael S. Futrell
          William P. Connick, La. Bar No. 14158
          Michael S. Futrell, La. Bar No. 20819
          Matthew D. Moghis, La. Bar No. 33994
          Anya M. Jones, La. Bar No. 36923
          3421 N. Causeway Blvd., Suite 408
          Metairie, Louisiana 70002
          Telephone: (504) 681-6658
          Facsimile: (504) 838-9903
          E-mail: moghis@connicklaw.com

          *Counsel for Defendant Jefferson Parish*

GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:   /s/ J. Michael DiGiglia
        Ernest P. Gieger, Jr. (6154)
        John E. W. Baay (22928)
        J. Michael DiGiglia (24378)
        Nicholas S. Bergeron (37585)
        Blaise Chadwick Hill (*pro hac vice*)
        Gieger, Laborde & Laperouse, L.L.C.
        Hancock Whitney Center
        701 Poydras Street, Suite 4800
        New Orleans, Louisiana 70139
        Telephone: (504) 561-0400
        Facsimile: (504) 561-1011

        *Attorneys for Defendant Aptim Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on June 6, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Michael C. Mims
Michael C. Mims
