**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | **NO. 19-11133, c/w 19-14512** |
| **V.** | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| **Defendants** | **JUDGE: Morgan** |
| | **MAGISTRATE JUDGE: North** |
| *Applies to: Both Cases* | |

**BRIEF IN SUPPORT OF MOTION**
**TO EXCLUDE TESTIMONY OF ALI HASHIMI**

Pursuant to §VI.2 of the Thirteenth Case Management Order, Plaintiffs submit this Brief in support of their motion to limit the testimony of proposed defense expert Ali Hashimi.  For the reasons stated herein, his improper opinions, as set forth below, should be excluded.

**I.      INTRODUCTION.**

Federal Rule of Evidence 702 ("Rule 702") permits an expert to testify in the form of an opinion if, among other factors, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a).  Prior to admitting expert testimony, the court must make a threshold determination of the admissibility of it.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993).

Admission of expert testimony" is proper only if all three of the following things are true: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2)

the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Bella v. Cain,* No. CIV.A. 12-2323, 2015 WL 13111216, at *5 (E.D. La. March 23, 2015) *citing City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

In this Circuit, "the court's *main focus* should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.,* 922 F.3d 285, 293 (5th Cir. 2019) (emphasis added).  "Assisting the trier of fact means 'the trial judge ought to insist that a proffered expert bring to the jury *more than the lawyers can offer in argument.'" Id.,* citing *Salas v. Carpenter,* 980 F.2d. 299, 305 (5th Cir. 1992) (emphasis added).  See also *In re Air Crash Disaster at New Orleans, Louisiana,* 795 F.2d. 1230, 1233 (5th Cir. 1986) ("trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury."

Ali Hashimi is a principal with Weaver Consultants Group, an entity retained "as an expert for litigation support services" by counsel for Louisiana Regional Landfill Company (hereinafter "LRLC" or the Waste Connections defendants). He issued a report dated March 8, 2024 which was prepared for Beveridge & Diamond. (Report referenced hereinafter as "Hashimi Report").  **Exhibit 1.**   In his report, Mr. Hashimi states that "WGC specializes in providing engineering and consulting services with respect to, among other things, solid waste engineering, environmental services, air compliance, oil and gas services, land surveying, and construction material testing." He personally has "been working in the solid waste industry for approximately 34 years since my completion of undergraduate and graduate degrees in engineering.  In connection with that work, I have designed and permitted municipal solid waste landfills

including liner systems, leachate collection systems, landfill gas collection systems, and final cover systems." His experience is in eight states, primarily in the Midwest. Hashimi Report at p. 1. Nowhere in his qualifications does he disclose any legal training or any specialized expertise in the interpretation of contracts.

Despite that lack of expertise, Mr. Hashimi offers fifteen (of thirty-two opinions in his "Summary of Opinions," Hashimi Report at 3, opinions which either seek to give legal interpretations of contractual documents between the defendants, opine on the "responsibility" of Jefferson Parish and/or Aptim Corp. for the harms suffered by the plaintiffs, invading the province of the jury, or are advocacy better presented by counsel. The improper opinions, and the reason why they are improper, are set forth below.

> "Opinion 3.1: Jefferson Parish bore *ultimate* responsibility for control over all aspects of the operation of the facility, including the operation and maintenance of the landfill gas control and collection system (GCCS) at the facility."
>
> Reason for objection: Legal conclusion and invades the province of the jury.
>
> "Opinion 3.2: Jefferson Parish bore the responsibility to be aware of site conditions, how these site conditions may impact the GCCS, and determine when GCCS activities were required to maintain compliance at the facility with the existing permits and regulations."
>
> Reason for objection: Legal conclusion and invades the province of the jury.
>
> "Opinion 3.3: Jefferson Parish bore the responsibility to adequately fund the landfill construction and operation, and to implement process controls and quality assurance procedures despite LRLC being assigned by contract responsibilities to perform those functions and other site operations activities that complemented the Parish's responsibilities to manage landfill gas and odors for the facility."
>
> Reason for objection: Legal conclusion and invades the province of the jury.
>
> "Opinion 3.5: LRLC's responsibilities at the JPLF were defined by the Operating Agreement, which excluded responsibility for the GCCS and for leachate components outside of Phase 4A."
>
> Reason for objection: Legal conclusion and invades the province of the jury.

"Opinion 3.6:  Under the Operating Agreement, Jefferson Parish was responsible for the operation, maintenance, and repair of leachate management components outside of Phase 4A.  This was the Parish's responsibility because the Parish never tendered the rest of the leachate system to LRLC in good working condition."

Reason for objection: Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

"Opinion 3.7:  Jefferson Parish was responsible for the design, installation, operation, and maintenance of the GCCS. Jefferson Parish bore the ultimate responsibility to be aware of site conditions, how these site conditions may impact the GCCS, and determine when GCCS activities were required to maintain compliance at the facility with the existing permits and regulations."

Reason for objection: Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

"Opinion 3.8:  Though Jefferson Parish contracted with another entity to perform O&M on the GCCS, it was Jefferson Parish's responsibility to manage that contractor and to use the information provided by its GCCS contractor."

Reason for objection:  Legal conclusion and invades the province of the jury.

"Opinion 4.3:  As the permit holder and owner of the JPLF, Jefferson Parish was responsible for understanding regulations and its own contract terms governing the requirements for landfill gas control and collection systems.  These terms should have put the Parish on notice that compliance with regulatory and industry standards was critical to the control of landfill gas emissions and management of potential odors."

Reason for objection:  Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

"Opinion 4.4:  Regulations and generally accepted industry standards specify operating standard and limitations for engineering controls that are part of an effective landfill gas collection and control system.  Jefferson Parish should have been on notice of these standards in its design, operation and supervision of the GCCS at JPLF."

Reason for objection: Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

"Opinion 5.8: LRLC relied on the Parish and its GCCS contactors to design, install, operate, repair, and maintain the GCCS.  The Parish controlled the design, installation and operation of the landfill gas collection and control system. LRLC's reliance on the Parish was reasonable."

Reason for objection: Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

"Opinion 6.1:  Jefferson Parish was solely responsible for issues with the landfill gas collection and control system that were identified by LDEQ, Carlson Environmental Consultants, River Birch, and Plaintiffs. LRLC had no responsibility for the landfill gas collection and control system, and based on its assigned duties, LRLC had no ability to improve operations of the system."

Reason for objection: Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

"Opinion 6.2: Jefferson Parish controlled the assignment of work to its contractors and actively supervised the operations of the JPLF.  Jefferson Parish should have been aware of any issues that it was in the best position to address as the permittee and owner, and as the entity with control over the design and installation of the GCCS."

Reason for objection: Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

"Opinion 6.3: Jefferson Parish bore the responsibility to be aware of site conditions, how these site conditions may impact the GCCS, and determine when GCCS activities were required to maintain compliance at the facility with the existing permits and regulations.

Reason for objection: Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

"Opinion 6.5: Based on design, construction, and monitoring of numerous GCCS systems, the numerous conclusions and recommendations provided by CEC indicate that Jefferson Parish did not prioritize O&M of the GCCS."

Reason for objection: Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

"Opinion 7.1: The contract between Jefferson Parish and APTIM did not provide sufficient performance goals and standards to ensure efficient and effective operation and maintenance of the GCCS."

Reason for objection: Legal conclusion, invades the province of the jury, and is advocacy better suited to be addressed by counsel.

Hashimi Report at 3-7. (emphasis added)

The deposition of Ali Hashimi was taken on April 29, 2024.  He was asked the following:

"Q: Sir, do you have any legal training?

A: No.

Q: Have you ever had a job where your title was contract administrator?

A: No.

Q: Does Weaver Consultants have someone responsible for reviewing contracts?

A: Yes.

Q: Is there a legal department there?

A: Yes.

Q: Is that the entity that reviews legal contracts for Weaver Consultants?

A: Yes.

Q: And when I say Weaver Consultants, for purposes of this deposition I'm not going to say every time Group North Central, LLC.  So you understand that's who I'm talking about, the entity you work for.  Not the universal Weaver Consultants.  Can we agree to that?

A: Yes.

Q: So there is a legal department that reviews contracts?

A: Yes.

Q: And do they also review engagements such as your engagement in this case as an expert witness?

A: Yes.

Q: So they reviewed your agreement with Beveridge & Diamond in this case?

A: Yes.

Q: Is it part of your responsibilities at Weaver Consultants to review contracts?

A: Yes.

Q: And what is your responsibility in that regard?

A: One of the services that we're hired for is to prepare contract documents to bid out contracts." Hashimi Deposition, p. 38, line 25-p. 40, line 13.

Later in the deposition, the following discussion occurred, beginning at page 60:

"Q:  So I want to ask you, let's start at Page 3, you say Jefferson Parish bore ultimate responsibility for control over all aspects of the operation of the facility, including the operation and maintenance of the landfill gas control and collection system, GCCS in parens, at the facility.  What do you mean or explain to us what you mean by ultimate responsibility for control?

A: As I described in my report, Jefferson Parish was the owner and still may be, I shouldn't say was, but the owner and the permit holder at the time of these events.

Q: While they were the owner and permit holder, how does that equate to them having ultimate responsibility for control over all aspects of the operation of the facility?

A: As I mentioned in my report, that's defined in the Louisiana regulations.

- 6 -

1 of 12

Q: Can you tell me the specific regulation that you're referring to?

A:  Can I look through?

Q:  Yes sir.  In responding to my question, take whatever time you need to look through your report to respond to my question.

A: So on Page 8, I made references there.

Q: On Page 8 tell me what here, what reference here indicates that Jefferson Parish had ultimate responsibility for control over all aspects of the operation of the facility? I assume you're talking about on Page 8 under Opinion 3.1, is that what you're talking about?

A: Yes.

Q: Okay, tell me where you find something that indicates Jefferson Parish bore ultimate responsibility for control over all aspects of the operation of the facility?

A: Where I say in the first paragraph under the basis of the opinion in the last sentence there where I stated municipalities, parishes and regional commissions are responsible for among other things planning and operating permitted processing and/or disposal facilities while cooperating with the department or other entities to implement regional management systems.

Q: Okay, where in there does it say that municipalities, parishes and regional commissions bore ultimate responsibility?

MR. PAUL: Object to form.

THE WITNESS: That's how I interpreted what this stated here.

BY MR. JOHNSON:

Q: Well, what is the basis for your interpretation of this language?  Is that a legal opinion?

A: No.  I'm not an attorney.

Q: Is that an engineering opinion?

A: That was my understanding of the responsibility structure for who was ultimately responsible for activities.

Q: Assuming that you say that Jefferson Parish bore ultimate responsibility for control, who do they owe that responsibility to?

A: I'm not sure how to answer that question because it sounds like more of a legal question to me." Hashim deposition, p. 60 line 25-p. 63, line 12.

**Exhibit 2**.

## II.     MR. HASHIMI'S OPINIONS AS TO WHO HAD "ULTIMATE RESPONSIBILITY" INVADES THE PROVINCE OF THE JURY, WILL NOT ASSIST THE JURY AND SHOULD BE EXCLUDED

As has been demonstrated in the foregoing examples, Mr. Hashimi seeks to opine on legal issues, which are reserved for the Court, and upon ultimate issues and issues of common sense and knowledge, which are reserved for the jury. While the Plaintiffs agree that Jefferson Parish had a legal duty to Plaintiffs, the purpose of Mr. Hashimi's testimony is to absolve the Waste Connections defendants of any legal responsibility. He seeks to go beyond providing technical scientific knowledge to help educate the jury to providing legal opinions and advocacy. His opinions are not expert testimony but rather legal advocacy better left to counsel when sufficient evidence is adduced to support argument.

### A.     When the expert's proposed testimony consists of arguments or observations that can be made by counsel, then the proposed testimony should be excluded.

As an initial matter, when the proposed expert's testimony strays into the areas of argument or advocacy, that testimony should be excluded. If the expert's proposed testimony consists of arguments or observations that can be made by counsel, then the expert's "scientific, technical, or other specialized knowledge" adds nothing to the equation, and should be excluded. See, *e.g., Pugh v. LaQuinta Motor Inns, Inc.,* No. CIV.A. 94-510, 1996 WL 44170, at *2 (E.D. La. Feb. 2, 1996) ("Mr. Trapolin's observations regarding the management's installation and placement of a grab bar and warning sticker can just as easily be made by jurors who have see pictures of the bathroom at issue. These portions of the expert report to not bring to the jury more than the lawyers can offer in argument.)

In *Cordoves v. Miami-Dade Cnty.,* 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015), the court excluded an expert's critique that "reads less like an expert's opinion and more like a lawyer's

*Daubert* motion," and when the expert sought to testify that his counterpart's opinions rested on "pseudo, otherwise non-existent requirements" that ran afoul of the applicable regulations, the court ruled "that is legal argument for lawyers to make, not [this expert]" Id.

While Mr. Hashimi is not directly contradicting another expert, his opinions with regard to who has responsibility for the harm to Plaintiffs is advocacy better left to counsel.

**B.      Mr. Hashimi is not qualified to render legal opinions, and even if he was, such opinions would be inadmissible**

Mr. Hashimi is an engineer who has no legal training.  He may be qualified by this Court to testify concerning engineering issues concerning landfill operations, but he has no education, training or experience that would allow him to opine as to which of the Defendants bears "ultimate responsibility" for the harms suffered by Plaintiffs.

"An expert may never render conclusions of law." *Goodman v. Harris County,* 571 F.3d 388, 399 (5th Cir. 2009).  See *Snap-Drape, Inc. v. Commissioner of Internal Revenue,* 98 F. 3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that [Rule 702] does not allow an expert to render conclusions of law.").

This Court has ruled that expert testimony that offers a legal opinion is inadmissible. *Marks v. Smith,* No. CV 15-5454, 2017 WL 988787, at *3 note 39 (E.D. La. March 14, 2017) (Morgan, J.), citing *Estate of Sowell v. United States of America,* 198 F.3d 169, 171 (5th Cir. 1999) and *Askanase v, Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997); *Ratliff v. Seadrill Americas, Inc.,* No. CV 17-11581, 2018 WL 6523479, at *2 (E.D. La. Dec. 12, 2018) (Morgan, J.) (an expert witness "is not permitted to offer conclusions of law").  See *Howard v. Offshore Liftboats, LLC,* No. CV 13-4811, 2016 WL 232238, at *3 (E.D. La. Jan. 19, 2016) (Morgan, J.) ("Whether the Plaintiffs contribute to their injuries and, as a result, were contributorily negligent is a legal issue which must be decided by the jury.");

*Spikes v. McVea,* No. CV 17-8164, 2018 WL 6448846, at *2 (E.D. La. Dec. 10, 2018) (Morgan, J.) ("Dr. Ochella's opinion that certain conduct constituted deliberate indifference is an inadmissible legal conclusion."; *Fick v. Exxon Mobil Corp.,* No. CV 13-6608, 2017 WL 11673924, at *3 (E.D. La. March 14, 2017) (Morgan, J.) ("Mr. Davidson will not be allowed to testify that Exxon agreed to remove the remaining flowlines in the field.  This is a legal opinion, which is not allowed."

These rules are imposed because an expert professing to testify regarding the governing law invades "the province of the court to determine the applicable law and to instruct the jury as to that law." *Willette v. Finn,* 788 F. Supp 10, 11 (E.D. La. 1991).  In addition, "admitting expert legal testimony would pose the risk that jurors would confuse the Court's instructions with the views put forward by the parties' experts." *Id.* As a result, whatever value testimony on legal issues might have (which is usually none), that value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," requiring its exclusion under FRE 403, and such testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue," requiring its exclusion under FRE 702. *Cf. David v. Signal Int'l, LLC,* No. CV 13-6219, 2015 WL 14018914, at *2 (E.D. La. Jan. 11, 2015) ("the Court finds testimony regarding the language and applicability of immigration statutes and regulations and whether conduct generally would be consistent or inconsistent with these laws does not amount to a legal conclusion in this case and will be helpful to the jury.") (Morgan, J.)

Mr. Hashimi has admitted that he has no legal training and is not qualified to give legal opinions.  His effort to assign "ultimate responsibility" to Jefferson Parish in order for his clients to evade legal responsibility invades both the province of the jury and the Court.  His claim to

apply unidentified statutes and regulations will only serve to confuse the jury and run the risk of being contrary to the instructions to be delivered by the Court.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this motion in limine be granted as to the objections set forth hereinbefore and that Mr. Hashimi be prohibited from offering opinions that are legal in nature, including, but not limited to, opinions concerning the "ultimate responsibility" between the Defendants in this case, or whether the Waste Connections defendants "reasonably relied" on any actions taken or not taken by Jefferson Parish.

Respectfully submitted, this 6th day of June, 2024

> **/s/** S. Eliza James
> Byron M. Forrest (La. Bar No. 35480)
> Nicholas V. Cressy (La. Bar No. 35725)
> S. Eliza James (La. Bar No. 35182)
> FORREST CRESSY & JAMES, LLC
> 1222 Annunciation Street
> New Orleans, Louisiana 70130
> Tele:(504) 605.0777
> Fax: (504) 322.3884
> Email: byron@fcjlaw.com
> nicholas@fcjlaw.com
> eliza@fcjlaw.com
>
>
> /s/ Eric C. Rowe
> C. Allen Foster (Admitted Pro Hac Vice)
> Eric C. Rowe (Admitted Pro Hac Vice)
> Harry S. Johnson (Admitted Pro Hac Vice)
> James Jeffcoat (Admitted Pro Hac Vice)
> Masten Childers, III (Admitted Pro Hac Vice)
> WHITEFORD, TAYLOR & PRESTON, L.L.P.
> 1800 M Street, NW, Suite 450N
> Washington, DC 20036
> Tele: (202) 659.6800
> Fax: (202) 331.0573
> Email: cafoster@wtplaw.com
> erowe@wtplaw.com

mchilders@wtplaw.com
*Counsel For Addison Plaintiffs*