UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | CIVIL ACTION |
| Plaintiffs | NO. 19-11133, c/w 19-14512 |
| V. | SECTION: "E" (5) |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| Defendants | JUDGE: Morgan |
| | MAGISTRATE JUDGE: North |
| *Applies to: Both Cases* | |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF BALDWIN JUSTICE**

Pursuant to §VI.2 of the Thirteenth Case Management Order, Plaintiffs submit this Brief in support of their motion to exclude the testimony of proposed defense expert, Baldwin Justice. Because no Trial Plaintiff is making a claim for diminution in property value, his testimony is irrelevant. For the reasons stated herein, his testimony should be excluded in its entirety. A copy of Justice's Report is attached as **Exhibit 1.** Excerpts from his deposition are attached as **Exhibit 2.**

**I.   INTRODUCTION.**

Federal Rule of Evidence 702 ("Rule 702") permits an expert to testify in the form of an opinion *if* (among other factors) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a). (emphasis added). Prior to admitting expert testimony, the Court must make a threshold

determination of the admissibility of it. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

*Daubert* commands that expert testimony be relevant. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). FRE Rule 401 provides that "evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Mr. Justice's opinions and testimony do not bear upon any fact of consequence in this case.

## II. MR. JUSTICE'S TESTIMONY IS NOT RELEVANT AND WILL NOT ASSIST THE TRIER OF FACT.

In this case, not one of the Trial Plaintiffs is seeking damages for diminution in property value. Despite the fact that none of the Trial Plaintiffs seek damages asserting that their property has gone down in value, Mr. Justice has submitted a 154-page expert report asserting that none of the Plaintiffs' properties have gone down in value. (**Exhibit 1, Justice Report**.)

In attempting to make his opinions relevant to this case, Mr. Justice has opined that "the loss of the 'right of enjoyment' will result in a limitation to the property and a diminished market value, which can be quantifiably proven via analysis and market data, if it did occur." (**Exhibit 1, Justice Report at 4**.) Mr. Justice did not define what he meant by "loss of enjoyment." But, in its Findings and Conclusions on General Causation, this Court concluded that the odors from the Landfill were capable of causing "a decrease in quality of life, and loss of enjoyment or use of property in the general population," R.Doc. 323 at 56, and said this:

> LDEQ also stated in its January 14, 2019, report concerning the odors at issue in this case that "[l]ong term exposure to odor may effect mood, anxiety, and stress levels," and "it is well established that malodorous odors have a negative impact on quality of life."
>
> The odor complaints by residents are consistent with these findings and show an interference with daily life and loss of use and enjoyment of their property. Examples of how residents altered their daily life include not wanting to go outside;

2

being unable to enjoy outdoor activities like walking the dog, watching sports at the playground, and yard work; feeling trapped in their homes; avoiding inviting people over due to embarrassment; fearing for the health of themselves and their families; having to leave their homes and sleep elsewhere due to the odor; and moving to escape the odor.

R.Doc. 323 at 41-42. Thus, according to Mr. Justice's theory, if residents had altered their daily life, did not want to go outside, were unable to enjoy outdoor activities, felt trapped in their homes, avoided having people over, feared for the health of themselves and others, had to leave their homes and sleep elsewhere because to the odor or moved to escape the odor, then these decisions would have been reflected in a decrease in property values.  According to Mr. Justice, because there was no decrease in property values, none of things could have happened—despite the thousands of odor complaints to Jefferson Parish and the LDEQ, the creation of at least two Facebook groups to record hundreds of additional complaints, the expenditure by the Parish of millions of dollars to correct the inadequate systems at the Landfill which Parish officials identified as a cause of the odors, the admissions and conclusions of public officials regarding odors emanating from the Landfill as being the odors afflicting the neighbors, the testimony of Plaintiffs and witnesses and the extensive press coverage.[1]

Mr. Justice offers no support for his opinion other than his own *ipse dixit* and there is none. He cites no real-world examples, no published studies and no evidence of any kind to support the

---

[1] Mr. Justice's conclusions that the odors could not have caused a loss of enjoyment directly contradicts the Court's ruling that that odors were capable of just that.  As a result, even if it was valid, Mr. Justice's theory should have been presented before the trial on general causation, and is now precluded by the Court's prior decision.  Under the "law of the case" doctrine, "an issue decided at one stage of a case is binding at later stages of the same case." Matter of AKD Invs., 79 F.4th 487, 491 (5th Cir. 2023).  Generally, "when a court decides" an issue, "that decision should continue to govern the same issues in subsequent stages of the same case." *Id.*

At his deposition, Mr. Justice testified that he was not told there had been a trial on general causation, and was not provided with the Court's opinion.  (**Exhibit 2, Justice Dep. at 19-22**.)

basic premise of his argument – that quality of life issues are captured in the market value of housing. *See Sierra v. Dorel Juv. Gr*p., No. CV B: 12-232, 2014 WL 12598325, at *6 (S.D. Tex. Sept. 30, 2014) ("Mr. Madeley has a subjective opinion about how the ladder could have been manufactured to be safer, but has provided no scientific basis for these opinions beyond a nod toward his credentials.") "An expert's opinion must be preceded by facts in evidence and cannot be the basis of speculation or conjecture." *Jeanes v. McBride*, No. CV 16-1259, 2019 WL 13221180, at *3 (W.D. La. June 6, 2019), supplemented, No. CV 16-1259, 2019 WL 2622460 (W.D. La. June 18, 2019):   Plaintiffs do not quarrel with Mr. Justice's general real estate qualifications, but he has no qualifications and no methodological basis to opine that the odors' interference with daily life would manifest itself in reduced property values applicable to every residence owned or rented by the Trial Plaintiffs.

Nor can his opinion be valid with respect to any event or issue in isolation. Mr. Justice has concluded that the real estate prices have increased over time in the New Orleans Metropolitan Area.  As a result, he concludes, they did not *decrease* as a result of odors from the Jefferson Parish Landfill.  But they also did not decrease as a result of any other cause.  Mr. Baldwin's theory, if correct, would mean that no odors from any source could have affected the Plaintiffs or the community at large; nor were property values adversely affected by hurricanes and power outages, the Covid-19 pandemic or anything else.[2]   As a result, there are no conclusions which can be drawn from the fact that the property values increased over time.  Because no Trial Plaintiff is claiming a diminution in property values, Mr. Justice's market study is entirely irrelevant.

---

[2] Notably, Mr. Justice does not opine as to what property values would be if New Orleans was not subject to hurricanes or, more pertinent to this case, what property values would have been without the odors.

4

Simply stated, Mr. Justice theorizes that the lack of a market-wide decrease in property values proves that Plaintiffs could not have smelled odors from the Landfill; that theory is junk science.[3] Neither *Daubert* nor the Federal Rules of Evidence "requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Brandner v. State Farm Mut . Auto. Ins. Co.*, No. CV 18-982, 2019 WL 636423, at *4 (E.D. La. Feb. 14, 2019), *quoting Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (Morgan, J.).

## III. CONCLUSION.

Mr. Justice's opinions will not help the trier of fact to understand the evidence or to determine a fact in issue. Therefore, the opinions are not admissible under FRE 702 and should be excluded.

Respectfully submitted, this 6th day June, 2024.

/s/ S. Eliza James
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
FORREST CRESSY & JAMES, LLC
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fcjlaw.com
eliza@fcjlaw.com

/s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Harry S. Johnson (Admitted Pro Hac Vice)
James Jeffcoat (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036

---

[3] Mr. Justice notes that in 2020 there was a "correction"; i.e., a decrease in the market.

Tele: (202) 659.6800<br>
Fax: (202) 331.0573<br>
Email: cafoster@wtplaw.com<br>
erowe@wtplaw.com<br>
mchilders@wtplaw.com<br>
*Counsel For Addison Plaintiffs*