UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | **NO. 19-11133 c/w 19-14512** |
| *versus* | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | **JUDGE SUSIE MORGAN** |
| | **MAG. JUDGE MICHAEL B. NORTH** |
| **Defendants** | |
| ***APPLIES TO ALL CASES*** | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF BARRY KLINE

**MAY IT PLEASE THE COURT:**

Defendant, Aptim Corp. ("Aptim"), through undersigned counsel, respectfully submits the following Memorandum in Opposition to the Motion to Exclude Expert Testimony of Barry Kline filed by Plaintiffs, Frederick Addison, et al.[1] For the following reasons, Plaintiffs' Motion should be denied.

## INTRODUCTION

Barry Kline, Aptim's landfill gas collection and control expert, is a principal remediation engineer with nearly 30 years of experience as a professional engineer.[2] Kline operates or oversees the operation and maintenance of landfill gas ("LFG") collection and treatment systems and leachate pumping systems, and has designed, operated, and maintained mechanical remediation systems throughout his 32-year career.[3] In connection with this case, Kline, applying his breadth of technical and specialized knowledge and experience in the field, evaluated Aptim's performance

---

[1] *See* R. Doc. 551.
[2] *See* Expert Report of Barry Kline, R. Doc. 543-2 at 5.
[3] *See* R. Doc. 543-2 at 5.

as operator of the Jefferson Parish Landfill ("JPLF") gas collection and control system ("GCCS") during the relevant time period at issue.[4] In the end, Kline offers nine expert opinions underpinning his ultimate expert opinion that Aptim performed competently and professionally at the JPLF relative to the limitations placed on it.[5]

At the outset, Plaintiffs do not challenge the qualifications or methodologies of Barry Kline, Aptim's landfill gas collection and control expert, nor do they challenge the relevance of Kline's expert opinions identified in their Motion. Rather, Plaintiffs argue that Kline's opinions are either (or both) inadmissible "fact" opinions or inadmissible "legal conclusion" opinions. Beyond citing Kline's opinions they argue should be excluded, Plaintiffs provide boilerplate—and, at times, inapplicable—statutory and jurisprudential citations in lieu of a meaningful analysis or application of same to Kline's opinions and, ultimately, in support of exclusion. Ignoring the undisputed complex facts at issue in this consolidated litigation, and the necessity of expert opinion testimony to assist the jury in determining the propriety of the parties' claims and defenses, Plaintiffs' Motion altogether lacks merit. As explained more thoroughly below, all of the opinions cited in Plaintiffs' Motion are admissible expert opinions under Federal Rule of Evidence 702 and Plaintiffs' Motion, therefore, should be denied in its entirety.

## LAW AND ARGUMENT

Plaintiffs contend that several of Kline's expert opinions are "facts to which Aptim employees could themselves testify and of which he has no personal knowledge."[6] In support, Plaintiffs cite Federal Rule of Evidence 602 to advance the curious proposition that Kline's opinions are inadmissible "fact witness" opinions. However, Plaintiffs supply no law that supports

---

[4] July 1, 2017 to December 31, 2019. Aptim operated the JPLF GCCS until May 17, 2019. *See* R. Doc. 543-2 at 5.
[5] *See* R. Doc. 543-2 at 5-7.
[6] *See* R. Doc. 551-1 at 2-3.

2

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

<hr>

the proposition that an expert's opinion, which partially asserts a factual conclusion drawn from information in the possession of lay witnesses, is inadmissible. Indeed, Plaintiffs' reliance on Rule 602 is misguided, notwithstanding Plaintiffs' failure to cite the rule in its entirety, particularly its crucial last sentence:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. ***This rule does not apply to a witness's expert testimony under Rule 703.***

FED. R. EVID. 602 (emphasis added).

The bases of an expert's opinion are addressed in Rule 703:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Plaintiffs fallaciously misconstrue Kline's opinions as offering mere facts, where Kline, operating just as an expert should under the Federal Rules of Evidence, cites facts to support and offer context for his expert opinions offered in a case involving overly technical issues outside the realm of an ordinary juror's knowledge. As the Fifth Circuit has reasoned, in the context of expert opinions offered in a highly technical case:

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

*Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quotation omitted). Thus, "expert testimony should only be excluded on this basis if a court finds that 'the jury could adeptly assess [the] situation using only their common experience and knowledge.'" *Greenup*

*Industries LLC v. Five S Group, LLC*, No. Civ.A 22-2203, 2023 WL 7335235, at *3 (E.D. La. Nov. 7, 2023) (Fallon, J.) (quoting *Peters v. Five Star Marine Serv.*, 898 F.2d 448 (5th Cir. 1990)).

Here, whether a lay witness may independently supply or is capable of independently supplying such facts has no bearing on the admissibility of an expert's opinions, especially where such facts are relied upon, are part of, and are used to contextualize and lay the foundation for the expert opinion in accordance with Rule 703. Moreover, "The fact that opposing parties do not agree with the facts relied upon by the experts or their interpretation of those facts does not render their opinions irrelevant or unreliable; challenges related to the basis of any of the experts' opinions are thus best suited for cross-examination, not exclusion[.]" *Legendre v. La. Ins. Guaranty Ass'n*, No. Civ.A 22-1767, 2024 WL 1802061, at *3 (E.D. La. Apr. 25, 2024) (Fallon, J.) (citations omitted). In this overly technical case involving issues well outside the understanding of a lay juror, Kline's opinions adhere to Rules 702 and 703 and are admissible.

As for the balance of Plaintiffs' Motion geared to mischaracterizing Kline's opinions as inadmissible "legal conclusions," Plaintiffs are correct insofar as they contend that experts may not provide opinions setting forth ultimate or conclusory facts and conclusions of law. *See U.S. Alliance Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp.3d 554, 562 (E.D. La. 2022) (Vance, J.) (quoting *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991)). Plaintiffs, however, are incorrect in their belief that the cited opinions offered by Kline fall within the ambit of such inadmissible legal conclusion opinions. Indeed, "An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(a). Nor is an expert opinion inadmissible merely because it is "calculated to suggest to the jury a particular legal conclusion." *See Haughey v. Am. Wall Bed Co., Inc.*, 2024 WL 1092839, at *15 (E.D. La. Mar. 13, 2024) (Long, J.) (quoting *Singleton v. Fieldwood Energy, LLC*, No. Civ. A 15-5558, 2016 WL

3940279, at *3 (E.D. La. July 21, 2016) (Africk, J.) (internal quotation omitted)). At this stage, the Court cannot predict the circumstances by which Kline may offer such opinions, which forces the Court to do so in a vacuum. *See Haughey*, 2024 WL 1092839, at *15. To the extent the Court agrees with Plaintiffs' contentions, which it should not, the Court should nevertheless forego ruling until it is in a better position at trial to assess whether Kline in fact reaches legal conclusions that are properly the province of the jury, or whether he instead offers admissible opinions "calculated to suggest to the jury a particular legal conclusion"—which is the case here. *Id.*

Operating under the foregoing, Aptim addresses each of the opinions cited in Plaintiffs' Motion in turn:

**Opinion 1:** *APTIM was only provided with a partially-installed GCCS to operate in Phase IVA and the timing of its installation and expansion was outside of APTIM's control.*[7]

**Response:** This opinion is not "doubly objectionable."[8] Instead, it is an explanation of technical data, technical documents, engineering analysis, and air permit compliance, an evaluation of pertinent regulations applicable to Aptim's contract scope of work at the JPLF, and an opinion as to the effect the configuration and the degree of completion of the GCCS had on Aptim's ability to perform its contract scope of work. Such an opinion is within the specialized knowledge and experience of an expert engineer specializing in the field of landfill gas collection and control like Kline and does not invade the province of the jury as a legal conclusion. Rather, such an opinion from a qualified expert engineer with Kline's specialized experience and knowledge is essential for the jury to understand and appreciate the complex workings of a landfill gas collection system and how the players and particular roles each play in completing operations bear upon Plaintiffs' claims and alleged damages. Moreover, with respect to "control," an

---

[7] *See* R. Doc. 551-1 at 2.
[8] *See* R. Doc. 551-1 at 2.

important inquiry in this case is whether, and to what degree, Aptim (as opposed to the other defendants or third-parties) had operational control over the GCCS and landfill components during the pertinent time period.[9] Kline's opinion bears upon this determination and will assist the jury in determining whether operational control existed, such that the jury can decide whether Aptim is liable for Plaintiffs' alleged injuries arising from operations at the JPLF during the pertinent time period.

**Opinion No. 2:** *APTIM was not responsible for the receipt of waste materials, waste placement, waste processing, or waste solidification, including the deposition or use of materials, such as spent lime or fly ash, that may have led to the increased concentrations of hydrogen sulfide (H2S) within the landfill gas being generated.*[10]

**Response:** This opinion is an admissible expert opinion bearing on the scope of Aptim's duties and role at the JPLF. Kline's opinion does not bear upon the degree of fault for Plaintiffs' alleged injuries, but, instead, offers expert analysis of the specific, underlying components of the operations at the JPLF, Aptim's involvement and role with respect to same, and how Aptim's scope of work at the JPLF during the pertinent time period bears upon its degree of fault. Such an opinion from an expert landfill gas collection and control specialist will assist the jury in determining Aptim's fault *via* interpretation of available data, documents, and applicable regulations—all of which is outside the realm of an ordinary juror's knowledge—and Aptim's degree of control over the GCCS and JPLF components from which Plaintiffs contend their damages arise.

**Opinion No. 3:** *APTIM did not have control over the design of the GCCS in Phase IVA nor did APTIM have control over the timing of installation of various GCCS components, such as gas extraction wells and collection system piping. Additionally, APTIM could only operate the*

---

[9] "[F]or purposes of determining operational control, the relevant inquiry becomes whether [the principal] had actual control over the operation of the particular activity during which [the plaintiff] was injuries." *Cormier v. W & T Offshore, Inc.*, No. Civ.A 10-1089, 2013 WL 1567406, at *11 (W.D. La. Apr. 12, 2013) (citation omitted). Operational control only exists if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in its own way. *Id.* (quoting *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)).

[10] *See* R. Doc. 551-1 at 3.

6

*partially-installed GCCS in the condition and configuration provided to it by Jefferson Parish.*[11]

**Response:** Aptim incorporates its responses as to Opinions No. 1 and 2, *supra*, in response hereto as if copied *in extenso*.

**Opinion No. 4:** *APTIM did not have control over various limitations placed on the GCCS operation by others, especially when circumstances beyond APTIM's control, such as limited vacuum and vacuum interruptions to the wellfield, further impeded GCCS operation. Such restrictions limited optimization of the GCCS operation and its ability to capture the landfill gas being produced within the landfill by the breakdown of waste materials.*[12]

**Response:** Aptim incorporates its responses as to Opinions No. 1 and 2, *supra*, in response hereto as if copied *in extenso*.

**Opinion No. 5:** *APTIM's work at JPLF was limited by Contract/Agreement provisions and language to specific tasks. Additionally, the Contract/Agreement further limited APTIM's efforts by placing restrictions on the amount of time/effort O&M personnel could spend working on the GCCS, including being subject to Jefferson Parish's approval for all non-routine GCCS work and limits on spending relative to expenses necessary for the Operation and Maintenance tasks.*[13]

**Response:** Through this opinion, Kline is neither interpreting the provisions of a contract nor asserting a legal conclusion that "merely tell[s] the jury what result to reach." *See Haughey*, 2024 WL 1092839, at *14 (excluding expert's opinion as to what he concluded was "foreseeable" to a party or what that party "knew or should have known"). Instead, Kline is offering an expert opinion on the ***effect*** of the subject contract on Aptim's ability to perform its scope of work at the JPLF, which is squarely at issue in light of the different defendants involved in landfill operations during the pertinent time period. Indeed, an expert's opinion on the contractual responsibilities of a party is appropriate when an expert can "shed light" on contractual terms by citing to customs and usage in the industry, which Kline does in his report.[14] *See Greenup Industries LLC*, 2023 WL 7335235, at *4; *see also Temple v. McCall*, 720 F.3d 301, 305 (5th Cir. 2013). Plaintiffs'

---

[11] *See* R. Doc. 551-1 at 3.
[12] *See* R. Doc. 551-1 at 3.
[13] *See* R. Doc. 551-1 at 4-5.
[14] *See generally* Expert Report of Barry Kline, Exhibit 1 to Plaintiffs' Motion.

arguments—or lack thereof—to the contrary lack merit.

**Opinion No. 6:** *APTIM did not have control over the leachate levels in Phase IVA that allegedly impaired the operation of the GCCS.*[15]

**Response:** Aptim incorporates its responses as to Opinions No. 1 and 2, *supra*, in response hereto as if copied *in extenso*.

**Opinion No. 7:** *APTIM did not have control over the timing of the purchase and installation of the in-well leachate/condensate pumps in Phase IVA gas wells, or in other phases. APTIM did operate and maintain*[16] *pneumatic pumps, once installed, in gas wells throughout the landfill.*[17]

**Response:** Aptim incorporates its responses as to Opinions No. 1 and 2, *supra*, in response hereto as if copied *in extenso*.

**Opinion No. 8:** *APTIM did not have control over the specification, procurement, inspection, or placement of landfill cover materials. APTIM was not contracted to maintain any cover materials in any of the Phases of the landfill. APTIM only inspected the landfill cover materials in conjunction with performing NSPS-required Surface Emissions Monitoring on a quarterly basis.*[18]

**Response:** Aptim incorporates its response as to Opinions No. 1 and 2 in response hereto as if copied *in extenso*.

**Opinion No. 9:** *Ambient and environmental monitoring for odors onsite and offsite was outside the scope of APTIM's contract with Jefferson Parish. Instead, IESI/Waste Connections' Agreement with Jefferson Parish required it to monitor for and control odors.*[19]

**Response:** With respect to the first sentence of this opinion, although Aptim had instruments that it used to test the composition of the landfill gas being collected in each gas well, such instruments lacked the capability to monitor for hydrogen sulfide (H2S), the landfill gas component that Plaintiffs allege caused offsite odors. With respect to the second sentence of this opinion, Aptim concedes that it is an inadmissible legal conclusion.

---

[15] *See* R. Doc. 551-1 at 3.
[16] Aptim notes that Plaintiffs' recitation of this opinion includes the word "not" between "APTIM did" and "operate" where it is not included in Kline's opinion set forth in his expert report. The word is not included here, though its omission is a distinction without a difference for purposes of Plaintiffs' Motion.
[17] *See* R. Doc. 551-1 at 3.
[18] *See* R. Doc. 551-1 at 3.
[19] *See* R. Doc. 551-1 at 5.

**CONCLUSION**

For the above and foregoing reasons, the Court should deny Plaintiffs' Motion.

                    Respectfully submitted,

                    */s/ Nicholas S. Bergeron*
                    Ernest P. Gieger, Jr. (6154)
                    John E. W. Baay (22928)
                    J. Michael DiGiglia (24378)
                    Nicholas S. Bergeron (37585)
                    Blaise Chadwick Hill (*pro hac vice*)
                    GIEGER, LABORDE & LAPEROUSE, L.L.C.
                    Hancock Whitney Center
                    701 Poydras Street, Suite 4800
                    New Orleans, Louisiana 70139
                    Telephone:   (504) 561-0400
                    Facsimile:    (504) 561-1011
                    Email:        egieger@glllaw.com
                                      jbaay@glllaw.com
                                      mdigiglia@glllaw.com
                                      nbergeron@glllaw.com
                                      chill@glllaw.com
                *Attorneys for Aptim Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record via the Court's electronic case management system on this 13th day of June, 2024.

                    */s/ Nicholas S. Bergeron*