UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | CIVIL ACTION |
| Plaintiffs | NO. 19-11133 c/w 19-14512 |
| *versus* | SECTION: "E" (5) |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | JUDGE SUSIE MORGAN |
| Defendants | MAG. JUDGE MICHAEL B. NORTH |
| ***APPLIES TO ALL CASES*** | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
JEFFERSON PARISH'S MOTION *IN LIMINE* TO EXCLUDE
THE REPORT AND TESTIMONY OF BARRY KLINE**

**MAY IT PLEASE THE COURT:**

Defendant, Aptim Corp. ("Aptim"), through undersigned counsel, respectfully submits the following Memorandum in Opposition to the Motion *in Limine* to Exclude the Report and Testimony of Barry Kline filed by Jefferson Parish.[1] For the following reasons, Jefferson Parish's Motion should be denied.

**INTRODUCTION[2]**

Barry Kline, Aptim's landfill gas collection and control expert, is a principal remediation engineer with nearly 30 years of experience as a professional engineer.[3] Kline operates or oversees the operation and maintenance of landfill gas ("LFG") collection and treatment systems and leachate pumping systems, and has designed, operated, and maintained mechanical remediation

---

[1] *See* R. Doc. 543.
[2] Aptim notes that Plaintiffs have filed a similar Motion to Exclude the Testimony of Barry Kline. *See* R. Doc. 551. As evidenced by a review of both Motions, although Plaintiffs' Motion is broader than Jefferson Parish's Motion, Aptim hereby adopts and incorporates by reference its arguments, evidence, law, and facts set forth in its Opposition to Plaintiffs' Motion (R. Doc. 576), as if copied herein *in extenso*, to the extent consistent with Aptim's instant Opposition.
[3] *See* Expert Report of Barry Kline, R. Doc. 543-2 at 5.

systems throughout his 32-year career.[4] In connection with this case, Kline, applying his breadth of technical and specialized knowledge and experience in the field, evaluated Aptim's performance as operator of the Jefferson Parish Landfill ("JPLF") gas collection and control system ("GCCS") during the relevant time period at issue.[5] In the end, Kline offers nine expert opinions underpinning his ultimate expert opinion that Aptim performed competently and professionally at the JPLF relative to the limitations placed on it.[6]

At the outset, Jefferson Parish does not challenge Kline's qualifications or methodologies.[7] Rather, Jefferson Parish challenges the admissibility of certain opinions offered by Kline it claims constitute legal conclusions, and certain opinions it deems will not help the jury.[8] Failing to appreciate the undisputed complex facts at issue in this consolidated litigation, the necessity of expert opinion testimony to assist the jury in determining the propriety of the parties' claims and defenses, and the low helpfulness threshold under Rule 702, Jefferson Parish's Motion is unpersuasive and should be denied.

## LAW AND ARGUMENT

I. **KLINE'S EXPERT OPINIONS CITED BY JEFFERSON PARISH ARE NOT INADMISSIBLE LEGAL CONCLUSIONS**

Admittedly, Jefferson Parish's underlying rationale is sound insofar as it correctly explains experts generally may not provide opinions setting forth ultimate or conclusory facts and conclusions of law. *See U.S. Alliance Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp.3d 554, 562

---

[4] *See* R. Doc. 543-2 at 5.
[5] July 1, 2017 to December 31, 2019. Aptim operated the JPLF GCCS until May 17, 2019. *See* R. Doc. 543-2 at 5.
[6] *See* R. Doc. 543-2 at 5-7.
[7] *See generally* R. Doc. 543.
[8] Aptim notes that Jefferson Parish's Motion is styled as seeking to exclude Kline's report. *See* R. Doc. 543 at 1. However, Jefferson Parish's Memorandum in Support only addresses some, but not all, of the expert opinions borne out in Kline's expert report. To the extent Jefferson Parish seeks to exclude Kline's report in its entirety, its Motion should be denied for failing to address—let alone offer any support for exclusion of—the balance of Kline's expert opinions otherwise omitted from its Motion.

(E.D. La. 2022) (Vance, J.) (quoting *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991)). However, Jefferson Parish is incorrect in its belief that the cited opinions offered by Kline fall within the ambit of such inadmissible legal conclusion opinions. Indeed, "An opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(a). Nor is an expert opinion inadmissible merely because it is "calculated to suggest to the jury a particular legal conclusion." *See Haughey v. Am. Wall Bed Co., Inc.*, 2024 WL 1092839, at *15 (E.D. La. Mar. 13, 2024) (Long, J.) (quoting *Singleton v. Fieldwood Energy, LLC*, No. Civ. A 15-5558, 2016 WL 3940279, at *3 (E.D. La. July 21, 2016) (Africk, J.) (internal quotation omitted)).

At this stage, the Court cannot predict the circumstances by which Kline may offer such opinions, which forces the Court to do so in a vacuum. *See Haughey*, 2024 WL 1092839, at *15. To the extent the Court agrees with Jefferson Parish's contentions, which it should not, the Court should nevertheless forego ruling until it is in a better position at trial to assess whether Kline in fact reaches legal conclusions that are properly the province of the jury, or, such as here, whether he instead offers expert opinions "calculated to suggest to the jury a particular legal conclusion"—which are admissible. *Id.*

Operating under the foregoing, Aptim addresses each of Kline's opinions addressed by Jefferson Parish in turn.

**Opinion 1:** *APTIM was only provided with a partially-installed GCCS to operate in Phase IVA and the timing of its installation and expansion was outside of APTIM's control.*[9]

**Response:** This opinion is not a legal conclusion. It is a synthesized explanation of technical data, technical documents, engineering analysis, and air permit compliance, an evaluation of pertinent regulations applicable to Aptim's contract scope of work at the JPLF, and

---

[9] *See* R. Doc. 543-2 at 6.

an opinion as to the effect the configuration and the degree of completion of the GCCS had on Aptim's ability to perform its contract scope of work. Such an opinion is within the specialized knowledge and experience of an expert engineer specializing in the field of landfill gas collection and control like Kline and does not invade the province of the jury as a legal conclusion. Rather, such an opinion from a qualified expert engineer with Kline's specialized experience and knowledge is essential for the jury to understand and appreciate the complex workings of a landfill gas collection system and how the players and particular roles each play in completing operations bear upon Plaintiffs' claims and alleged damages.

Moreover, with respect to "control," an important inquiry in this case is whether, and to what degree, Aptim (as opposed to the other defendants or third-parties) had operational control over the GCCS and landfill components during the pertinent time period.[10] Kline's opinion bears upon this determination and will assist the jury in determining whether Aptim had operational control—and, if so, to what degree—such that the jury can decide whether Aptim is liable or partially liable for Plaintiffs' alleged injuries arising from operations at the JPLF during the pertinent time period. While such an opinion may be used as a defense to liability, it is not inadmissible. Such an opinion is clearly admissible.

**Opinion No. 3:** *APTIM did not have control over the design of the GCCS in Phase IVA nor did APTIM have control over the timing of installation of various GCCS components, such as gas extraction wells and collection system piping. Additionally, APTIM could only operate the partially-installed GCCS in the condition and configuration provided to it by Jefferson Parish.*[11]

**Response:** Aptim incorporates its response as to Opinion No. 1, *supra*, in response hereto

---

[10] "[F]or purposes of determining operational control, the relevant inquiry becomes whether [the principal] had actual control over the operation of the particular activity during which [the plaintiff] was injured." *Cormier v. W & T Offshore, Inc.*, No. Civ.A 10-1089, 2013 WL 1567406, at *11 (W.D. La. Apr. 12, 2013) (citation omitted). Operational control only exists if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in its own way. *Id.* (quoting *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)).

[11] *See* R. Doc. 543-2 at 6.

4

as if copied *in extenso*. In further responding, this opinion is an admissible expert opinion bearing on the scope of Aptim's duties and role at the JPLF. Kline's opinion does not bear upon the degree of fault for Plaintiffs' alleged injuries, but, instead, offers expert analysis of the specific, underlying components of the operations at the JPLF, Aptim's involvement and role with respect to same, and how Aptim's scope of work at the JPLF during the pertinent time period may bear upon its degree of fault. Such an opinion from an expert landfill gas collection and control specialist will assist the jury in determining Aptim's fault *via* interpretation of available data, documents, and applicable regulations—all of which is outside the realm of an ordinary juror's knowledge—and Aptim's degree of control over the GCCS and JPLF components from which Plaintiffs contend their damages arise.

**Opinion No. 4:** *APTIM did not have control over various limitations placed on the GCCS operation by others, especially when circumstances beyond APTIM's control, such as limited vacuum and vacuum interruptions to the wellfield, further impeded GCCS operation. Such restrictions limited optimization of the GCCS operation and its ability to capture the landfill gas being produced within the landfill by the breakdown of waste materials.*[12]

      **Response:** Aptim incorporates its responses as to Opinions No. 1 and 3, *supra*, in response hereto as if copied *in extenso*.

**Opinion No. 5:** *APTIM's work at JPLF was limited by Contract/Agreement provisions and language to specific tasks. Additionally, the Contract/Agreement further limited APTIM's efforts by placing restrictions on the amount of time/effort O&M personnel could spend working on the GCCS, including being subject to Jefferson Parish's approval for all non-routine GCCS work and limits on spending relative to expenses necessary for the Operation and Maintenance tasks.*[13]

      **Response:** Through this opinion, Kline is neither interpreting the provisions of a contract nor asserting a legal conclusion that "merely tell[s] the jury what result to reach." *See Haughey*, 2024 WL 1092839, at *14 (excluding expert's opinion as to what he concluded was "foreseeable" to a party or what that party "knew or should have known"). Instead, Kline is offering an expert

---

[12] *See* R. Doc. 543-2 at 6.
[13] *See* R. Doc. 543-2 at 6-7.

opinion on the *effect* of the subject contract on Aptim's ability to perform its scope of work at the JPLF, which is squarely at issue in light of the different defendants involved in landfill operations during the pertinent time period. Indeed, an expert's opinion on the contractual responsibilities of a party is appropriate when an expert can "shed light" on contractual terms by citing to customs and usage in the industry, which Kline does in his report.[14] *See Greenup Industries LLC*, 2023 WL 7335235, at *4; *see also Temple v. McCall*, 720 F.3d 301, 305 (5th Cir. 2013). This opinion is admissible.

**Opinion No. 7:** *APTIM did not have control over the timing of the purchase and installation of the in-well leachate/condensate pumps in Phase IVA gas wells, or in other phases. APTIM did operate and maintain pneumatic pumps, once installed, in gas wells throughout the landfill.*[15]

**Response:** Aptim incorporates its responses as to Opinions No. 1 and 3, *supra*, in response hereto as if copied *in extenso*.

**Opinion No. 9:** *Ambient and environmental monitoring for odors onsite and offsite was outside the scope of APTIM's contract with Jefferson Parish. Instead, IESI/Waste Connections' Agreement with Jefferson Parish required it to monitor for and control odors.*[16]

**Response:** With respect to the first sentence of this opinion, although Aptim had instruments that it used to test the composition of the landfill gas being collected in each gas well, such instruments lacked the capability to monitor for hydrogen sulfide (H2S), the landfill gas component that Plaintiffs allege caused offsite odors. Thus, the evidence requires reference to the contract's scope of work between Aptim and Jefferson Parish in order to properly address Aptim's ability to monitor for H2S and frame it in an accurate context for the jury to consider. With respect to the second sentence of this opinion, Aptim concedes that it is an inadmissible legal conclusion.

In sum, none of Kline's expert opinions, even those not subject to Jefferson Parish's

---

[14] *See generally* R. Doc. 543-2.
[15] *See* R. Doc. 543-2 at 7.
[16] *See* R. Doc. 543-2 at 7.

Motion addressed, *supra*, "tell[s] the jury what result to reach." *See U.S. v. Oti*, 872 F.3d 678, 692 (5th Cir. 2017) (quotation omitted) (reasoning that expert opinions that "merely tell the jury what result to reach" are inadmissible legal conclusions). As evident from the above, and despite Jefferson Parish's characterization to the contrary, Kline offers no opinion that Aptim is not responsible, not at fault, or not liable for Plaintiffs' damages.[17] While such opinions may ***relate to or bear upon*** Aptim's ultimate liability, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Nor is an expert opinion inadmissible merely because it is "calculated to suggest to the jury a particular legal conclusion." *See Haughey*, 2024 WL 1092839, at *15. Such is the case here and Jefferson Parish's Motion lacks merit.

## II. KLINE'S EXPERT OPINIONS RELATING TO THE CONTRACT BETWEEN APTIM AND JEFFERSON PARISH OFFERED IN A HIGHLY TECHNICAL CASE ARE NECESSARY, HELPFUL, AND ADMISSIBLE

Given the specialized language of the contract between Aptim and Jefferson Parish, and the complexities underlying its nature and effect on Aptim's contract scope of work at the JPLF, Kline's opinions bearing on an interpretation of the subject contract and its technical scope of work are admissible and will unquestionably aid the jury during trial. Because none of Kline's expert opinions in that regard are legal conclusions, Jefferson Parish's Motion should be denied.

The Fifth Circuit permits experts to opine on contract provisions in light of specialized usage and meaning in its industry. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 279-80 (5th Cir. 1987) (expert testimony admissible to interpret accounting provisions in light of specialized usage and meaning in the oil and gas industry). Indeed, such expert opinions are both

---

[17] *See generally* R. Doc. 543-2 at 5-7.

7

relevant and helpful to the interpretation of a contract. *See Phillips Oil Co.*, 812 F.2d at 281. That is because, as the Fifth Circuit has reasoned in the context of expert opinions offered in a highly technical case:

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

*Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quotation omitted).

Thus, "expert testimony should only be excluded on this basis if a court finds that 'the jury could adeptly assess [the] situation using only their common experience and knowledge.'" *Greenup Industries LLC v. Five S Group, LLC*, No. Civ.A 22-2203, 2023 WL 7335235, at *3 (E.D. La. Nov. 7, 2023) (Fallon, J.) (quoting *Peters v. Five Star Marine Serv.*, 898 F.2d 448 (5th Cir. 1990)). Indeed, the Fifth Circuit has held that the "helpfulness threshold [under Rule 702(a)] is low: ***it is principally a matter of relevance***." *Puga v. RCX Solutions, Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (ellipsis omitted) (emphasis added) (quoting *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 459 n.14 (5th Cir. 2013)).

Certainly, Kline's expert opinions are relevant and, therefore, helpful to the jury. Moreover, as it is undisputed that this case presents overly complicated and complex industry-specific issues outside the realm of any ordinary juror's common knowledge, the jury's determinations without such expert opinions will be subject to scrutiny. Of course, the jury is the proper arbiter of disputes concerning expert opinions and can weigh Kline's opinions accordingly. *See U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.,* 80 F.3d 1074, 1077 (5th Cir. 1996). The Court should accord the proper deference to the jury and deny Jefferson Parish's Motion.

**CONCLUSION**

For the above and foregoing reasons, the Court should deny Jefferson Parish's Motion.

Respectfully submitted,

/s/ Nicholas S. Bergeron
Ernest P. Gieger, Jr. (6154)
John E. W. Baay (22928)
J. Michael DiGiglia (24378)
Nicholas S. Bergeron (37585)
Blaise Chadwick Hill (*pro hac vice*)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone:   (504) 561-0400
Facsimile:    (504) 561-1011
Email:         egieger@glllaw.com
                jbaay@glllaw.com
                mdigiglia@glllaw.com
                nbergeron@glllaw.com
                chill@glllaw.com
*Attorneys for Aptim Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record via the Court's electronic case management system on this 13th day of June, 2024.

/s/ Nicholas S. Bergeron