UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FREDERICK ADDISON, ET AL** | * * * | **CIVIL ACTION NO.** **19-11133 C/W 19-14512** |
| | * | **SECTION "E-5"** |
| **VERSUS** | * * * | |
| | * | **JUDGE SUSIE MORGAN** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL** | * * * | **MAGISTRATE JUDGE NORTH** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE CERTAIN EVIDENCE REGARDING SUSAN SCHIFFMAN

Plaintiffs wish to preclude evidence that goes directly to issues of credibility of their expert Dr. Susan Schiffman. In a federal complaint that was filed last August in the Middle District of North Carolina, the makers of Splenda sued Dr. Schiffman alleging that during interviews with the press while on a media tour she made false and defamatory statements that Splenda contains a chemical at levels that exceed the "threshold of toxicological concern" and published an article (which was the center of the media tour) that also contained "false, misleading, and wholly unsupported" claims about certain sweetener compounds.[1] Plaintiffs argue that Dr. Schiffman's character is not at issue in this lawsuit and that questions concerning the lawsuit would be prejudicial and confusing to the jury. However, the jury will be asked to assess the credibility of each and every witness that takes the stand at trial, and Dr. Schiffman – a key expert witness concerning the Trial Plaintiffs' claims of alleged odor impacts– is no different. Questions regarding

---

[1] See the lawsuit between TC Heartland LLC, v. Schiffman, 1:23-cv-00665-JLW (M.D.N.C. 2023), attached hereto as Exhibit A.

her propensity for truthfulness and her credibility go directly to whether a jury ought to find her testimony reliable in this case.

The Heartland suit alleges that Dr. Schiffman misrepresented facts and knowingly, or recklessly, made false statements regarding Splenda in her published study and in numerous interviews and public statements she made about her study. Dr. Schiffman claimed that a single packet of Splenda contained a chemical compound at levels that exceed the "threshold of toxicological concern," that it breaks "chromosomes in cells," and "causes inflammation and even cancer."[2] The Heartland Complaint explains that Splenda does not contain the chemical that Dr. Schiffman studied and she knew or recklessly disregarded that key fact when she made statements to the contrary in press releases and on television.

The Plaintiffs' Motion in Limine is an attempt to hide from the jurors evidence that relates directly to Dr. Schiffman's credibility and the reliability of her testimony in this case. The Plaintiffs intend to place great importance on the opinions and testimony of Dr. Schiffman in this trial that is currently set to begin on August 12, 2024. As this Court is aware, an expert's prior opinion and testimony are allowed to be delved into on cross-examination. The Heartland case, as it pertains to Dr. Schiffman is no different. As part of their evaluation of Dr. Schiffman's testimony and opinions in this case, Defendants, Aptim Corporation, Louisiana Regional Landfill Company, Waste Connections Bayou Incorporated, Waste Connections US. Inc., and Jefferson Parish should be allowed to cross-examine Dr. Schiffman's ability to accurately and truthfully represent findings in her studies – which is at the heart of the allegations in the Heartland lawsuit. Dr. Schiffman's representations of her odor studies and her prior (unpublished and non-peer-reviewed) experiences that she will be relying on for her expert opinions in this case should be evaluated by a jury with

---

[2] Ex. A at 9.

the benefit of understanding her propensity to describe findings and conclusions she is relying on in a truthful and accurate manner.

The Defendants are seeking to use the Heartland lawsuit to show the jury that Dr. Schiffman takes substantial liberties when discussing her studies and comparing those studies to her conclusions. Should the court find that the Heartland lawsuit itself is not ripe to be presented to the jury, the Defendants must be allowed to question Dr. Schiffman on the substance of her previous studies and the conclusions that she rendered as a result of those studies. This includes the substance of her studies and conclusions rendered in the Heartland lawsuit. This is of significant importance as the jury is asked to evaluate and determine Dr. Schiffman's propensity for truthfulness or untruthfulness especially given her already apparent inconsistent statements on how she has represented odors in this case.

For the foregoing reasons, the Plaintiff's Motion in Limine should be denied and the evidence concerning Dr. Schiffman's current federal lawsuit should be allowed as part of Defendants' cross-examination under Rules 403 and 608.

I. **LAW AND ARGUMENT**

　　A. **Legal Standard**

Federal Rule of Evidence 608 states: "A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." Rule 608 further provides for specific instances of conduct and states the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness.[3] As the Fifth Circuit explains, Rule 608(b) "permit[s] inquiry on cross examination

---

[3] Fed. R. Evid. 608(b).

into specific instances of conduct which may bear on a witness' credibility in order to impeach the credibility of the witness." *United States v. Skelton*, 514 F.3d 433, 443–44 (5th Cir. 2008). The "alleged bad act must have a basis in fact," however "that does not mean that the basis in fact must be proved as a fact before a good faith inquiry can be made. *Id.* (quotations omitted). Evidence offered under Rule 608 is also subject to relevancy rules under Rule 403. *Id*.

Dr. Schiffman is a defendant in a currently pending lawsuit that alleges that she misrepresented facts in her public statements and her published article regarding an ingredient contained in Splenda. The information concerning her alleged misrepresentation of the facts is extremely probative of Dr. Schiffman's ability to provide reliable opinions and testimony in the August trial, particularly given that much of Dr. Schiffman's opinions are based on her own odor studies – including statements that are not found in any peer-reviewed study but based on her experience or conversations she allegedly had with others in her field. The jury should be allowed to assess the credibility of her opinions with respect to odors and their alleged impacts on the Trial Plaintiffs. In the Heartland lawsuit, Dr. Schiffman appears to have taken substantial liberties with the statements she made during interviews about the study's purported findings compared to what the actual findings from the study showed itself. Given the fact that in the present case Dr. Schiffman is relying on her own, non-peer-reviewed studies, questions as to whether she fairly represents the information from studies she relies upon for her opinions on this case is important and relevant information for the jury to be made aware of as it will aid the jury in determining how much weight to give to Dr. Schiffman's testimony and opinions.

### B. The pending suit against Dr. Schiffman relates to her credibility as an expert witness and whether her opinions in this case are reliable.

Defendants should be allowed to cross-examine Dr. Schiffman about the Heartland lawsuit that involves claims of intentional and reckless misrepresentations and false statements – issues

**4** of 12

that directly impact the credibility and reliability of her testimony as an expert witness. Moreover, the information is relevant and is not unduly prejudicial. Allowing the jury to hear about the lawsuit against Dr. Schiffman ensures a fair trial and allows the jury to make an informed decision about the reliability of Dr. Schiffman's expert testimony and proffered opinions in this case. Even if this Court finds that the Heartland lawsuit itself is not admissible, the substance behind the claims should be presented to the jury, as they are imperative for the jury to determine the credibility of Dr. Schiffman.

As set forth in the Heartland Complaint, in May 2023, Dr. Schiffman published an article concerning a study she conducted on a chemical called sucralose-6-acetate. That chemical is different than the sucralose contained in Splenda. Dr. Schiffman's article did not discuss Splenda or the sucralose contained in Splenda.[4] In fact, nowhere in her article (which is also alleged to contain false, misleading, and unsupported claims related to the underlying study) does it mention testing Splenda for the existence of sucralose-6-acetate. Yet, according to the complaint, as part of her press tour, Dr. Schiffman stated that Splenda is "something you should not be eating" as it contains a chemical that is "genotoxic." During a television interview, Dr. Schiffman claimed that "sucralose-6-acetate" which she stated was present in Splenda "can induce genes which are, you know, part of DNA, and it can cause inflammation and even cancer." Dr. Schiffman also stated in that interview that "the amount of sucralose-6-acetate . . . that is in a single packet of Splenda . . . is enough to exceed . . . the threshold of toxicological concern."[5] The lawsuit alleges that Dr. Schiffman's claims about Splenda were false, and that Dr. Schiffman knew it, or at least recklessly disregarded the truth when she made the statements during her press tour, which is demonstrated

---

[4] See Exhibit A.
[5] Ex. A at 9.

by the fact that her paper expressly confirms that the sucralose Dr. Schiffman claimed to have studied was not the sucralose used in Splenda.[6]

In their Motion in Limine, Plaintiffs argue that "the thrust of the Defendants' cross-examination is not Dr. Schiffman's character of truthfulness or untruthfulness, but whether Dr. Schiffman followed proper scientific procedures in her research concerning Splenda."[7] That is not the basis for which Defendants would use the Heartland lawsuit. Rather the Defendants would be using the information to attack Dr. Schiffman's credibility as an expert witness, to demonstrate whether she has a propensity for truthfulness, and to provide the jury with information that relates to the reliability of Dr. Schiffman's opinions in the current action – permissible reasons under Fifth Circuit law.[8]

Allowing the Defendants to ask questions regarding the pending lawsuit against Dr. Schiffman for false and misleading statements is relevant to the reliability of Dr. Schiffman's testimony in this case and her credibility as an expert witness. In the Heartland lawsuit, Dr. Schiffman is alleged to have misrepresented facts and knowingly made false statements during television interviews and in press releases related to her published study.

In the present case, Dr. Schiffman is relying on her published studies as well as representations of her experience with odors that are not part of any published study for her opinions that the Trial Plaintiffs were impacted and injured from the alleged odors from the Jefferson Parish Landfill. For example, Dr. Schiffman has testified in her deposition that:

---

[6] See Exhibit A and See the article written by Susan Schiffman, Schiffman, S. et al., "Toxicological and pharmacokinetic properties of sucralose-6-acetate and its parent sucralose: in vitro screening and assays," J. of Toxicology Environ. Health – Part B, 2023 Aug. 18; 26(6): 307-341, https//doi.org/10.1080/10937404.2023.2213903, attached hereto as Exhibit B.
[7] See Plaintiff's Motion in Limine to Preclude Certain Evidence Regarding Susan Schiffman.
[8] *Skelton,* 514 F.3d at 445 ("Rule 608 permits the impeachment of the general credibility of a witness").

Q: Your opinions in this case rely on plaintiffs providing accurate and truthful accounts of their experiences?[9]

A. Correct.[10]

Q. Did you question the accuracy or truthfulness of any information that was provided by plaintiffs in their discovery responses, their fact sheets, or their deposition testimony?[11]

A. I assume it's correct.[12]

Dr. Schiffman later states as a result of her own experience:

A. See, I don't -- my work as a medical psychologist has taught me to listen to patients… So from my point of view, from reading what I read, I do believe that these people had these types of symptoms. But was I there when they had the symptoms? I wasn't. I'm just saying that it's highly likely that this is the cause.[13]

Dr. Schiffman further states:

A. However, I would also like to say that over the years this is a very common complaint that I've heard, how it ruined intimate relationships. Sexual dysfunction is something I've heard many times, okay? So this is not out of the ordinary of something that I've heard with regard to unpleasant smells coming into the room. And one only needs to look at your local law with all the fragrance places, you know, with -- and sexy photos, how this is perfect for you to know that smell is an important function with regard to intimate relationships.[14]

Q. And in your prior experiences that you were saying that it impacts intimacy in your relationships, was that at a level of 5 parts per 24 billion of hydrogen sulfide?[15]

---

[9] See Exhibit C the Deposition Testimony of Dr. Susan Schiffman, p. 96: 17 to 19.
[10] See Exhibit C p. 96: 20.
[11] See Exhibit C p. 96: 21 to 24.
[12] See Exhibit C p. 96: 25
[13] See Exhibit C p. 102: 23 to 24 and p. 103: 7 to 11.
[14] See Exhibit C p. 124: 7 to 19
[15] See Exhibit C p. 124: 20 to 24

A. If you can smell it, it's a problem.[16]

…

A. The point of the matter is, is that this is a community -- it stems from the original -- my original report. This is a community that has been exposed to malodor -- a malodor assault over a two-and-a-half-year period. It interfered with people's lives, their health, and all kinds of other -- certainly anxiety and worry due to a problem at the landfill. And I consider it Jefferson Landfill because I -- of the reasons that we described. Whether -- with each individual person here, I have not been following them around, okay, with a monitor. So I don't know where they're at, and I also don't know the level in their house, but I know that it could be in their house, okay?[17]

A. …in my own experience, I have measured it in homes many, many, many times, okay.[18]

Q. Again, you didn't measure it in these homes, they didn't measure it in these homes, and you don't know –[19]

A. Correct.[20]

Dr. Schiffman is relying on her own experience as she states in her deposition:

A. … And from my point of view, Mr. Lape did the best he can with what he had, and it's consistent with my own experience of people's complaints and the kinds of times that they -- amount of time that they get exposed to it and how 1many times over, you know, the World Health Organization. You know, it's all consistent with one another. But perfection is never a guarantee with modeling.[21]

…

---

[16] See Exhibit C p. 124: 25
[17] See Exhibit C p. 197: 10 to 24.
[18] See Exhibit C p. 198: 15 to 17.
[19] See Exhibit C p. 198: 18 to 20.
[20] See Exhibit C p. 198: 21.
[21] See Exhibit C p. 219: 9 to 18.

Q. You don't have evidence of what VOCs at what concentration –[22]

A. No.[23]

Q. -- for every particular trial plaintiff, correct?[24]

A. Correct.[25]

Q. So you're just assuming this to be true?[26]

A. I'm assuming it to be true on the basis of 50 years of experience.[27]

Again, Dr. Schiffman highlights how she is relying on her years of experience:

A. … I'm relying on my own experience of having dealt with this for 50 years and on some literature.[28]

Because Dr. Schiffman's public statements concerning Splenda show her propensity for truthfulness or untruthfulness and also show whether she reliably represents findings of her studies, the evidence is relevant to questions concerning her credibility and the reliability of the opinions she will be offering at trial in this case. *See, e.g., United States v. Whitmore,* 359 F.3d 609, 620 (D.C. Cir. 2004) ("While a witness' testimony regarding collateral matters – here an unrelated trial – may not be refuted by calling other witnesses or by production of extrinsic evidence, there is nothing improper in asking questions relating to extrinsic matters in the hope of undermining the witness'[s] credibility." (quoting *Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 63–64 (2d Cir.1969)).

In addition, the probative value of this line of questioning is not substantially outweighed by unfair prejudice. In fact, it would be more prejudicial for the jury to listen to Dr. Schiffman

---

[22] See Exhibit C p. 259: 3 to 4.
[23] See Exhibit C p. 259: 5.
[24] See Exhibit C p. 259: 6 to 7.
[25] See Exhibit C p. 259: 8.
[26] See Exhibit C p. 259: 9.
[27] See Exhibit C p. 259: 10 to 11.
[28] See Exhibit C p. 264: 2 to 4.

give testimony and render her opinions without having this information about a lawsuit where she is alleged to have misrepresented facts about her own study. Without the information of the pending lawsuit the jury cannot adequately perform their role in assessing Dr. Schiffman's credibility to determine how much weight to give to her opinions and testimony. Accordingly, allowing cross-examination with this information is consistent with the limitations of Rule 403.

Dr. Schiffman's alleged misrepresentations are critically important during trial. Failure to allow Dr. Schiffman to be questioned about the allegations alleged in the Heartland lawsuit or at the very least the substance of the Heartland complaint will hinder the defense and affect a jury's ability to adequately assess her credibility during trial as it directly shows her propensity for truthfulness or untruthfulness and goes directly to her credibility.

II.     **CONCLUSION**

For these reasons, Plaintiff's Motion in Limine should be denied and Dr. Schiffman's alleged misrepresentation of facts in the Heartland lawsuit should be presented to the jury so they may be able to fully evaluate the opinions and testimony of Dr. Schiffman in this case.

**WHEREFORE**, the Defendants pray that the Plaintiffs' Motion in Limine is denied as Dr. Schiffman's testimony is necessary for the jury to determine her truthfulness and assess her credibility.

(Signature Block on Following Page)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading was served upon all counsel of record in the parties named herein through the Court's ECF system.

Metairie, Louisiana, this 13th day of June, 2024.

  /s/ *Michael S. Futrell*
  MICHAEL S. FUTRELL

Respectfully submitted,

**CONNICK AND CONNICK, LLC**

  */s/ Michael S. Futrell*
W. PETER CONNICK, LA. BAR NO. 14158
MICHAEL S. FUTRELL, LA. BAR NO. 20819
MATTHEW D. MOGHIS, LA. BAR NO. 33994
ANYA M. JONES, LA. BAR NO. 36923
3421 N. Causeway Boulevard, Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6663
Facsimile: (504) 838-9903
E-mail: *mfutrell@connicklaw.com*
    *moghis@connicklaw.com*

*Counsel for Defendant, Jefferson Parish*

LISKOW & LEWIS, APLC

By: /s/ Michael C. Mims
  Michael C. Mims (#33991)
  Michael Cash (#31655)
  Cherrell Simms Taplin (#28227)
  Brady M. Hadden (#37708)
  J. Hunter Curtis (#39150)
  Alex Andrade (#38659)
  701 Poydras Street, Suite 5000
  New Orleans, LA 70139
  Telephone: (504) 581-7979
  Telefax: (504) 556-4108

  BEVERIDGE & DIAMOND, P.C.

  Megan R. Brillault (*pro hac vice*)
  Michael G. Murphy (*pro hac vice*)
  John H. Paul (*pro hac vice*)
  Katelyn E. Ciolino (*pro hac vice*)
  Katrina M. Krebs (*pro hac vice*)
  825 Third Avenue, 16th Floor

        New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:   /s/ J. Michael DiGiglia
      Ernest P. Gieger, Jr. (6154)
      John E. W. Baay (22928)
      J. Michael DiGiglia (24378)
      Nicholas S. Bergeron (37585)
      Blaise Chadwick Hill (*pro hac vice*)
      Gieger, Laborde & Laperouse, L.L.C.
      Hancock Whitney Center
      701 Poydras Street, Suite 4800
      New Orleans, Louisiana 70139
      Telephone: (504) 561-0400
      Facsimile: (504) 561-1011

*Attorneys for Defendant Aptim Corp.*