UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| Plaintiffs | NO. 19-11133, c/w 19-14512 |
| | SECTION: "E" (5) |
| **VERSUS** | |
| | JUDGE: Morgan |
| | MAGISTRATE JUDGE: North |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| Defendants | |

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. JOHN KIND**

1

**INTRODUCTION**

Dr. John Kind, a renowned toxicologist and odor scientist, intends to present the jury with scientific evidence speaking to all possible causes of the Trial Plaintiffs' injuries, not just those causes which are most convenient or which most closely fit within Plaintiffs' narrative. He offers inconvenient facts, including that the Trial Plaintiffs were only downwind of the JPLF a small fraction of the time, despite many of their complaints of suffering odors all day, every day, for 2.5 years. Plaintiffs do not want the jury to hear this evidence, and seek to exclude Dr. Kind's testimony entirely. They do not question his qualifications or the reliability of his methods – rather, they only complain that his opinions are not helpful to the jury. But they cannot escape that the Fifth Circuit endorses the exact type of approach that Dr. Kind has employed here – one that considers all possible causes of injury and challenges the opposing experts for their failure to do so.

Attempting to keep Dr. Kind away from the jury, Plaintiffs throw a myriad of arguments against the wall, which Defendants[1] attempt to address in turn below. In sum, contrary to Plaintiffs' complaints on relevance, Dr. Kind is offering testimony that easily clears the hurdle of the Federal Rules of Evidence, which requires only that his opinions have a tendency to make a fact at issue less probable.[2] Dr. Kind's testimony on all of the potential causes of Trial Plaintiffs' alleged injuries – and the fact that Plaintiffs' experts wholly failed to analyze them – certainly makes it less probable that such injuries were caused by JPLF emissions, warranting denial of Plaintiffs' motion.

---

[1] "Defendants" refers to Defendant Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US Inc. (collectively the Waste Connections Defendants), Defendant Jefferson Parish, and Defendant APTIM Corp.

[2] Rule 401 of the Federal Rules of Evidence.

**LAW AND ARGUMENT**

1. **Federal Rule of Evidence 702 and *Daubert* Requirements**

Federal Rule of Evidence ("FRE") 702 governs the admissibility of expert testimony. The rule permits experts to offer opinions if (a) the expert's specialized knowledge will help the trier of fact, (b) the testimony is based on sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied those principles and methods. The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). The first factor often referred to as helpfulness. The Fifth Circuit has noted that the "helpfulness threshold is low: it is principally ... a matter of relevance." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (citing *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 459 n.14 (5th Cir. 2013)). The remaining factors are questions of reliability and guided by *Daubert* which held that courts must assess "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid." 509 U.S. at 593-94.

These requirements derive from the nature of expert witnesses and their ability to give testimony that lay witnesses may not. Unlike lay witnesses, experts may offer opinion testimony, including opinions that "embrace an ultimate issue" in the case. Fed. R. Evid. 704. Though experts may not give legal conclusions, delineating between permissible and impermissible testimony is a case specific inquiry.[3]

---

[3] *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one.").

Because Dr. Kind has previously been qualified by this Court as an expert in toxicology, fate and transport, and odor science (including fate and transport of odorous compounds, how they impact people, and how they are measured in the environment), qualifications Plaintiffs largely acknowledge,[4] the initial inquiry is whether his testimony will be helpful to the trier of fact. Helpfulness is primarily a question of relevance.[5] Relevance is broadly defined to include evidence that has "any tendency to make a fact more or less probable" if "the fact is of consequence in determining the action." Fed. R. Evid. 401. The strength of the evidence has no bearing on its relevance. *See New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985) ("[I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue").

FRE 702 dictates that Plaintiffs' motion be denied, and that the Court allow the jury to hear Dr. Kind's testimony. As a highly qualified toxicologist and odor scientist, he is prepared to give credible, reliable testimony that will assist the jury in evaluating Plaintiffs' claims, including on relevant topics such as determining the most likely explanation (or conversely what was not the mostly likely explanation) for the symptoms that Trial Plaintiffs allegedly suffered from 2017-2019.

2. **Dr. Kind Properly Critiques Plaintiffs' Failure To Consider Alternative Causes.**

Plaintiffs first seek to shield the jury from Dr. Kind's testimony by arguing that Defendants have the burden to disprove causation, which is not the law. Dr. Kind has properly critiqued the Plaintiffs' failure to consider any alternative causes of the Trial Plaintiffs' alleged 2017-2019

---

[4] Plaintiffs have confined to a footnote their strained argument on whether an experienced toxicologist with a background in biochemistry is sufficiently qualified in the areas of statistical analysis and mathematics to critique an odor psychologist. Plaintiffs' Motion to Exclude Expert Testimony of Dr. John Kind, R. Doc. 550-1 at 3 n. 1; s*ee also United States v. Wen Chyu Liu,* 716 F.3d 159, 169 (5th Cir. 2013) ("Thus an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight.") (internal citations omitted).

[5] *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019).

4

symptoms – and such testimony is relevant regardless of whether Defendants can definitively prove a specific alternative cause.

The Fifth Circuit has repeatedly rejected a plaintiff's expert's testimony when their specific causation analysis fails to sufficiently address potential alternative causes of injury.[6] Thus, whether Plaintiffs' experts in this case have sufficiently addressed alternative causes is relevant as it speaks to the reliability of their specific causation testimony. Louisiana nuisance law likewise requires evaluation of alternative causes of injury.[7] Thus, courts routinely uphold the admissibility of alternative cause evidence offered by defendants.[8]

Here, having failed to have their experts address any alternative causes, Plaintiffs seem to suggest that Defendants should have but failed to meet their burden of proving an alternative cause was "more likely than not" the source of Plaintiffs' injuries[9] – but Defendants do not bear the burden of proof on causation, Plaintiffs do. Courts in the Fifth Circuit hold that defendants may present alternative cause testimony, even if the alternative cause is a mere *possibility*.[10]

---

[6] *See McGill v. BP Expl. & Prod.*, 830 F. App'x 430 (5th Cir. 2020) (affirming exclusion of plaintiff's expert in part for his failure to rule out other potential causes of the plaintiff's illness on a scientific basis); *McNabney v. Lab. Corp. of Am.*, 153 F. App'x 293, 294 (5th Cir. 2005) (striking medical causation expert because "[h]is failure to consider and exclude other potential causes of [the plaintiff's] injury before offering an opinion renders his testimony unreliable"); *In re Vioxx Products Liab. Litig.,* 401 F. Supp.2d 565, 573 (E.D. La. 2005) (Fallon, J.) (one of the factors a court should consider is "whether the expert has adequately accounted for alternative explanations"); *see also Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1248-49 (11th Cir. 2018) (expert excluded because, although he concluded that the probability of other causes was low, he presented no scientific basis upon which to reasonably rule them out); *Ref. Man.* at 672, n. 103.

[7] *Butler v. Baber*, 529 So. 2d 374, 378 (La. 1988), holding modified by *Inabnet v. Exxon Corp.*, 93-0681 (La. 9/6/94), 642 So. 2d 1243 (holding that for Plaintiff to carry his burden on causation in a nuisance action he must present evidence that "exclude[s] other reasonable hypothesis with a fair amount of certainty, but this does not mean that it must negate all other possible causes.").

[8] *See, e.g., Robinson v. Ethicon Inc.,* No. CV 20-3760, 2022 WL 20689753, at *4 (S.D. Tex. Oct. 5, 2022) ("To the extent that the defense presents convincing alternative theories, the evidence is plainly admissible. To the extent that the defense attempts to make far-fetched alternative causation arguments, the Court is unworried that it would confuse and mislead the jury.").

[9] Plaintiffs' Motion to Exclude Expert Testimony of Dr. John Kind, R. Doc. 550-1 at 15 ("[Dr. Kind] can offer no insight into whether any of the medications ***were the actual cause*** of the symptoms complained…") (emphasis added).

[10] *See Couturier v. Bard Peripheral Vascular, Inc.*, 548 F. Supp. 3d 596, 612 (E.D. La. 2021) (Lemelle, J.) ("Where there is more than one possible cause to a plaintiff's alleged injuries, a defendant is permitted to present evidence as to any potential alternative and/or intervening causes."); *Simon v. United States*, 51 F. Supp. 2d 739, 746 (W.D. La.

5

Dr. Kind has testified on the long list of different medications taken by the Trial Plaintiffs during the relevant time period and their side effects, including those side effects that match the symptoms alleged and allowed in this case (headaches, nausea, etc.).[11] This evidence is plainly relevant under FRE 401, which requires that evidence have a tendency to make a material fact "*less probable*"[12] – not *impossible* and not even *unlikely.* Dr. Kind's testimony that the Trial Plaintiffs were taking medications that had the potential to cause their complained-of symptoms certainly makes it "less probable" that landfill emissions are to blame for the Trial Plaintiffs' symptoms, satisfying FRE 401. How much less probable is a question that Plaintiffs are free to explore on cross-examination, but it is not a basis to exclude an expert's opinion.[13]

Plaintiffs complain that Dr. Kind does not testify that "any of the medications were the actual cause of the symptoms complained," but this is not grounds for exclusion.[14] Defendants' argument that Plaintiffs have not sufficiently ruled out alternative causes is not an affirmative defense, and does not shift the burden to Defendants.[15] Even if it were, it is not an issue to be

---

1999) ("The Defendants must only show that some other particular accident could have caused the injury, not that some other accident actually did cause the injury."); *Robinson v. Ethicon Inc.*, 2022 WL 20689753 at *4 (S. D. Tex. Oct. 5, 2022) (motion in limine to exclude evidence as to fault of plaintiff or nonparties denied).

[11] Plaintiffs' Motion to Exclude Expert Testimony of Dr. John Kind, R. Doc. 550-1 at 14–15.

[12] (emphasis added). The full text of Rule 401 provides: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

[13] *Couturier*, 548 F. Supp. 3d at 612.

[14] *See Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1070 (11th Cir. 2014) (reversing a verdict for the plaintiff where the district court improperly shifted the burden of proof to the defendant to prove that the plaintiff's death was caused by something other than smoking).

[15] *See In re Taxotere (Docetaxel) Prod. Liab. Litig.,* No. 16-17039, 2020 WL 7480626 (E.D. La. Dec. 18, 2020) (Milazzo, J.) (denying summary judgment on affirmative defense concerning alternative causation; because Plaintiffs bears the burden on causation, defenses related to causation are not an affirmative defense).

decided in limine.[16] As in their Motion to Exclude "Other Source" Evidence, Plaintiffs' arguments go to the weight of the evidence and are therefore not proper grounds for exclusion.[17]

### 3. Dr. Kind's Opinions on Alternative Causes Are Not Matters of Common Knowledge

Plaintiffs next argue that Dr. Kind's opinions – those of a toxicologist opining on potential side effects of drugs – are somehow matters of common knowledge.[18] They are wrong and their caselaw does not apply here.

Dr. Kind's opinions on alternative causes are not based on common knowledge, and he is not merely parroting the arguments of the attorneys. Rather, his opinions are based on his own experience and expertise, his consideration of the Trial Plaintiffs' medical records and claims, and his attempt to evaluate the possibility of alternative causes – a methodology favored by the Fifth Circuit.[19] Scientific causation is far outside the province of a lay juror[20] – therefore, this is not a situation where Dr. Kind seeks to impose his observations of common knowledge issues and thereby supplant the role of a juror.

---

[16] *See Reuther v. Realtors*, 2016 WL 4592193 at *2-3 (E.D. La. 2016) (Brown, J.) (motion in limine denied where it was being used to dispose of a party's ability to try their claims rather than asking the court to decide a discrete evidentiary issue); *In re Katrina Canal Breaches Consolidated Litigation*, 2009 WL 982104, *1, 5 (E.D. La. 2009) (Duval, J.) (motion in limine denied where it would necessitate "a finding with regard to causation which would have to be the subject of a motion for summary judgment"); *see also* 21 Fed. Prac. & Proc. Evid. § 5037.18 (Wright & Miller 2d ed.) (motion in limine not intended as a substitute for summary judgment).

[17] *See Dearmond v. Wal-Mart Louisiana LLC,* 335 F. App'x 442, 444 (5th Cir. 2009) ("Cross-examination at trial, however, is the proper forum for discrediting testimony, and credibility determinations are, of course, the province of the jury.").

[18] The Trial Plaintiffs also summarily state that experts may not testify as to legal opinions, but they provide absolutely no explanation as to how Dr. Lutz is offering legal opinions, and indeed he is not.

[19] *See McNabney v. Lab'y Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005) ("[causation expert's] failure to consider and exclude other potential causes of [plaintiff's] injury before offering an opinion renders his testimony unreliable."); *Becnel v. Lamorak Ins. Co*., No. CV 19-14536, 2022 WL 3704028, at *4 (E.D. La. Aug. 26, 2022) (specific causation analysis properly involves "determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." (citing *Johnson v. Arkema, Inc*., 685 F.3d 452, 468 (5th Cir. 2012)).

[20] *See Seaman v. Seacor Marine, LLC*, 326 F. App'x. 721, 723 (5th Cir. 2009) ("A plaintiff in [a toxic tort] case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation").

7

Plaintiffs cite a series of cases all speaking to a plaintiff's burden of proof to defeat summary judgment – which has nothing to do with the relevance of Defendants' proposed expert rebuttal testimony.[21] Those cases stand for the proposition that a plaintiff may survive summary judgment without providing expert testimony on specific causation, where the claimed injuries are the types of temporary or transient injuries that are within the common knowledge of lay persons. They say nothing about precluding a defendant from providing expert opinions on causation and damages to rebut the plaintiff's claims. Certainly, Defendants are allowed to present a defense as to causation and damages, even as to so-called "common sense" injuries, and those cases say nothing to the contrary.

Next, the Trial Plaintiffs cite *Conday v. Offshore Drilling Co.*, No. CV 07-0882, 2010 WL 11575031, at *5 (W.D. La. Jan. 5, 2010), where the court recommended that expert testimony on the proper way to physically lift a "set of slips" with a co-worker should not be permitted and would only cause confusion, because "[j]urors with common sense knowledge of the 'real world' are equipped to make the determination in this case of whether or not the lift required, under the circumstances presented in this case, was unsafe." In contrast to *Conday*, which concerned the proper procedure for safely picking up an object, here, a toxicologist is opining on potential alternative causation in an exposure-related injury case, which is not a question for a lay juror.[22]

---

[21] *See, e.g., Guidry v. Dow Chemical Co.*, No. 19-12233, 2021 WL 4460505, at *2 (E.D. La. Sept. 29, 2021); *Stephens v. BP Expl. & Prod. Inc.*, No. CV 17-4294, 2022 WL 1642136, at *4 (E.D. La. May 24, 2022).

[22] Trial Plaintiffs' other cases cited on this point are similarly unhelpful as they do not speak to issues of causation. *Richardson v. SEACOR Lifeboats, LLC*, No. CIV.A. 14-1712, 2015 WL 2193907, at *2 (E.D. La. May 11, 2015) (holding that an expert's knowledge and expertise on crane operations and personnel basket transfers, his opinions on the reasonable standard of care concerning the same, and whether defendant met that standard of care, would be helpful to the Court); *Lee v. Offshore Logistical & Transp., LLC*, No. CV 15-2528, 2017 WL 6501151, at *4 (E.D. La. Dec. 19, 2017) (excluding expert testimony regarding whether the absence of non-slip paint increases the chances of slipping or twisting a knee).

## 4. Dr. Kind is Not Testifying to Issues of Law

Lacking any proper basis to challenge Dr. Kind's qualifications or his methodology, Plaintiffs next falsely claim that Dr. Kind is offering only observations that can be made by counsel and/or legal opinions. To the contrary, Dr. Kind's opinions are those of a toxicological, fate and transport, and odor science expert on causation, opinions that the Fifth Circuit has specifically cautioned must come from experts.[23] Plaintiffs cite various cases where experts added only observations that could be made by counsel – but those cases bear no resemblance to this case and should be rejected.[24] Plaintiffs further suggest that Dr. Kind is not allowed to critique the methodology of other experts or their reliance materials, which is plainly wrong.[25]

Plaintiffs' arguments that Dr. Kind offers impermissible legal opinions are likewise unavailing. First of all, expert witnesses are specifically allowed to offer opinions that "embrace an ultimate issue" in the case. Fed. R. Evid. 704. Further, Plaintiffs' arguments rely on misrepresentations of Dr. Kind's opinions. Plaintiffs state that "Dr. Kind seeks to instruct the jury on the definition of 'specific causation,'"[26] – which is entirely misleading, as they are referring to a section of Dr. Kind's report where he discusses *the scientific community's* definition of specific causation and its application in this case—an issue that is relevant to whether the Plaintiffs' experts used a generally-accepted methodology for how the scientific community assesses specific

---

[23] *See Seaman v. Seacor Marine, LLC*, 326 F. App'x. 721, 723 (5th Cir. 2009) ("A plaintiff in [a toxic tort] case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation").

[24] Dr. Kind's toxicology opinions are not similar to the placement of a warning sticker like *Pugh,* or mere summaries of the work of other experts. *See Pugh v. LaQuinta Motor Inns, Inc.*, No. CIV.A. 94-510, 1996 WL 44170, at *2 (E.D. La. Feb. 2, 1996) and *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. MDL 07-1873, 2009 WL 2169224, at *3 (E.D. La. July 15, 2009).

[25] *See Navelski v. Int'l Paper Co.,* No. 3:14-cv-445, 2017 WL 1132569, at *13 (N.D. Fla. Mar. 25, 2017) (Rodgers, C.J.) (stating that the entire purpose of certain experts is to "criticize[ ] or rebut[ ] the methodology and opinions of another expert" (collecting cases)).

[26] Plaintiffs' Motion to Exclude Expert Testimony of Dr. John Kind, R. Doc. 550-1 at 7.

causation.[27] Exclusion is not warranted merely because the terminology in an expert's field overlaps with that used by the courts, and Dr. Kind has no intention of encroaching on the Court's role in instructing the jury on the law.

Dr. Kind is not offering legal opinions – rather, he is opining that Plaintiffs' experts are not following a scientifically valid method as they have not considered potential alternative causes. As discussed above, both the Fifth Circuit[28] and Louisiana state courts[29] have upheld the relevance of alternative cause evidence in toxic tort cases. Likewise, the Federal Reference Manual on Scientific Evidence cautions that "The failure … of a toxicologist to pay attention to [plaintiff's medical history] raises questions about competence and leaves open the possibility of competing causes of the disease."[30] While Plaintiffs may dislike that the scientific method requires them to evaluate alternative causes before reaching a specific causation opinion, this does not render it an impermissible legal opinion.

---

[27] *See* Expert Report of Dr. John Kind, R. Doc. 550-2 at 48 (citing sources for definition of specific causation).

[28] *See McGill v. BP Expl. & Prod.*, 830 F. App'x 430 (5th Cir. 2020) (affirming exclusion of plaintiff's expert in part for his failure to rule out other potential causes of the plaintiff's illness on a scientific basis); *McNabney v. Lab. Corp. of Am.*, 153 F. App'x 293, 294 (5th Cir. 2005) (striking medical causation expert because "[h]is failure to consider and exclude other potential causes of [the plaintiff's] injury before offering an opinion renders his testimony unreliable"); *In re Vioxx Products Liab. Litig.,* 401 F. Supp.2d 565, 573 (E.D. La. 2005) (Fallon, J.) (one of the factors a court should consider is "whether the expert has adequately accounted for alternative explanations"); *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1248-49 (11th Cir. 2018) (expert excluded because, although he concluded that the probability of other causes was low, he presented no scientific basis upon which to reasonably rule them out). *See also Ref. Man.* at 672, n. 103.

[29] *Butler v. Baber*, 529 So. 2d 374, 378 (La. 1988), holding modified by *Inabnet v. Exxon Corp.*, 93-0681 (La. 9/6/94), 642 So. 2d 1243 (holding that for Plaintiff to carry his burden on causation in a nuisance action he must present evidence that "exclude[s] other reasonable hypothesis with a fair amount of certainty, but this does not mean that it must negate all other possible causes.").

[30] *See Federal Reference Manual* (3d ed. 2011) at 672–3. The *Reference Manual* is a publication of the Federal Judicial Center, which the Fifth Circuit regularly cites in its causation opinions. *See*, *e.g.*, *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 288 (5th Cir. 1998), *cert. denied*, 526 U.S. 1064 (1999); *LeBlanc v. Chevron USA, Inc.*, 396 Fed. App'x 94, 99 (5th Cir. 2010).

**5. Dr. Kind is properly addressing the *likelihood* that 5 ppb of H$_2$S would cause injuries.**

Likewise, Dr. Kind does not offer legal opinions in his discussion of the World Health Organization European Regional Office ("WHO") odor nuisance guidance value that the Court adopted in its general causation determination, nor does Dr. Kind challenge the Court's adoption of the 5 ppb standard for purposes of general causation.[31] Dr. Kind notes that the WHO guideline was established to minimize annoyance associated with odors by identifying a concentration of hydrogen sulfide—5 ppb for 30 minutes—that would result in annoyance in no more than 5% of the population for less than 2% of the time.[32] He explains that this inevitably means that 95% of the population would not experience annoyance after 30 minutes of exposure to 5 ppb of hydrogen sulfide, and those that do would only experience annoyance for a very short period of time (i.e., less than 2% of the time).[33] Therefore, the 5% of the population that experiences annoyance at the 5 ppb threshold can be considered the "most sensitive" population.[34] Dr. Kind testified that, from a statistical perspective, it is unlikely that any one individual would fall in the bucket of the 5% of the population (the most sensitive population).[35]

While Plaintiffs may disagree with this interpretation of the WHO standard, the appropriate remedy is for Plaintiffs to explore this issue on cross examination. Instead, Plaintiffs seek to shield the jury from any discussion on how likely exposure to 5 ppb of H$_2$S for 30 minutes is to cause the

---

[31] Deposition of Dr. John Kind, attached as Exhibit A to Declaration of Michael Mims ("Mims Decl"), at 106:9-19.

[32] R. Doc. 323 at 31.

[33] Expert Report of Dr. John Kind, R. Doc. 550-2 at 46. Plaintiffs simply contend that the WHO "has said no such thing" (Pls. MOL at 9), but they disregard Dr. Kind's explanation in his report: "Even the most sensitive 5% of the population would not experience odor annoyance at this concentration for at least 98% of the time. **In other words**, 95% of the population would not experience annoyance after 30 minutes of exposure to 5 ppb of hydrogen sulfide, and those that do would only experience annoyance for a very short period of time (i.e., less than 2% of the time)." (emphasis added). Expert Report of Dr. John Kind, R. Doc. 550-2 at 46.

[34] J. Kind Dep. Tr., Ex. A to Mims Decl. at 114:24-115:4.

[35] J. Kind Dep. Tr., Ex. A to Mims Decl. at 156:18-22.

injuries at issue in this case, instead adopting Dr. Schiffman's opinion (which differs from the WHO guidelines) – that exposure at 5 ppb is "always a nuisance" – as binding and applicable to all Plaintiffs for purposes of a specific causation determination. But the Fifth Circuit forbids this sort of "one size fits all" approach to specific causation. *See Bell v. Foster Wheeler Energy Corp.*, No. CV 15-6394, 2017 WL 876983, at *2 (E.D. La. Mar. 6, 2017) (in which Judge Africk noted the Fifth Circuit's disfavor of "specific causation opinions untethered to the decedent himself, based only on generalized studies of the effects that certain exposure levels can have on the population."); *Hill v. GEO Grp., Inc.*, No. 1:18-CV-01363, 2021 WL 6053783, at *7 (W.D. La. Dec. 21, 2021) (finding plaintiff's specific causation opinions unreliable when they consisted of little more than opining that, because plaintiffs were exposed to a known-to-be-toxic level of mold and alleged that symptoms followed, the mold must have caused their symptoms). Moreover, this overstates what Dr. Schiffman actually testified to at the general causation trial, which was only that 5 ppb of $H_2S$ when *combined with* other compounds (for which Plaintiffs lack any evidence of exposure for the Trial Plaintiffs) is always a nuisance "for a lot more than 5% of the population."[36]

Plaintiffs also ignore that their own odor expert, Dr. Susan Schiffman, agrees that the WHO standard represents the level at which "complaints will *start*"[37] – in other words, the level at which

---

[36] General Causation Trial Transcript, attached as Exhibit B to Mims Decl. at 671:14-19 ("A. How do I answer this? I've been doing this for 50 years. I can tell you at 5 ppb in the field **where you have other compounds along with it** always is a nuisance, okay, **for lot more than 5 percent of the population**. So whatever it says in there, it says. There's nothing – I mean, I don't know. That's what it says. Okay.").

[37] *See* General Causation Trial Transcript, Ex. B to Mims Decl. at 723 ("I have read a lot of WHO stuff. It depends on what office it's coming out of, who is writing it. But the one thing that's consistent over the years is that they have always said the **complaints will start** -- definitely start when you have an emission with a 5 ppb hydrogen sulfide level. I have attended many meetings in Europe. I'm on Zoom almost every single Monday morning with people because I'm head of committees for IEEE and setting standards. And I know of nobody, at least on my committees, who would [disagree that] -- **when you start at 5 ppb, you're going to start having trouble. So that's when you start getting your problems.**") (emphasis added).

12

the concentration of H₂S rises above the annoyance threshold of the most sensitive persons, not all persons or the majority of persons.

Similarly, Plaintiffs' experts Dr. Spodak and Dr. DeLorenzo agree that a specific causation analysis must consider an individual plaintiff's personal circumstances, including whether that plaintiff belongs to the set of persons who experience a reaction to the dosage of chemical at issue.[38]

Dr. Kind also offers opinions on data that he believes corroborates his interpretation of the WHO's 5 ppb guidelines – including the many declarations from residents of the alleged odor area who attested that they did not experience any odors during the relevant time period, or if they did, it did not affect their quality of life. Ultimately, Dr. Kind opines that causation cannot be established by merely modeling H₂S exceedances of 5 ppb to each of the Trial Plaintiffs' residences, as the modeling says nothing about whether these 13 Trial Plaintiffs fall within the small percentage of individuals who are likely to be annoyed by H₂S at this low concentration.[39] In offering these opinions, Dr. Kind is speaking as an odor scientist, not a lawyer – and he in no way seeks to tell the jury what the law is.

Plaintiffs seek to mislead the jury by informing them of the Court's general causation standard of 5 ppb without allowing the jury to hear the full context as to where that figure came from and how that impacts the specific causation analysis. The misleading nature of Plaintiffs' approach was highlighted during Dr. Schiffman's recent deposition. There, Dr. Schiffman

---

[38] *See* Michael Spodak Deposition Transcript, attached as Exhibit C to Mims Decl. at 282:19-283:6 (Dr. Spodak acknowledged that the Court has established 5 ppb of H₂S over 30 minutes as "the threshold level, but individual causation has to be case-by-case … That means you have to look at each individual and their specific exposure levels and -- and duration and things like that…"); Robert DeLorenzo Deposition Transcript, attached as Exhibit D to Mims Decl. at 146:23-147:6 (agreeing that "when there is a toxin that only causes symptoms in a small minority of patients, before you can testify that a specific patient did suffer those symptoms caused by exposure to the toxin, you have to determine whether that patient falls within the small minority of patients that are affected.").

[39] Expert Report of Dr. John Kind, R. Doc. 550-2 at 45-47.

acknowledged that, although she and other consultants *want* 5 ppb to be adopted as the standard, no jurisdictions actually *use* the 5 ppb standard, because jurisdictions around the world recognize that "industries which pollute are sometimes necessary."[40] This confession lies in stark contrast to what Dr. Schiffman represented to this Court at the general causation trial, in which she testified that 5 ppb "is the level which is agreed to. People from China, Japan, all over the world."[41]

Neither Defendants nor Dr. Kind intend to dispute the Court's holding that 5 ppb of $H_2S$ over 30 minutes is capable of causing the symptoms recognized by the Court in its general causation decision. However, this specific causation trial will require the jury to decide whether it is more *likely* than not that Plaintiffs' alleged exposures to 5 ppb of $H_2S$ (from the JPLF) did cause their injuries. In making that determination, the jury must be allowed to have the full understanding as to the genesis of the 5 ppb for 30 minutes standard for $H_2S$. Dr. Kind is highly qualified to give expert testimony on the scientific community's understanding of the (low) level of risk involved when persons are exposed to 5 ppb of $H_2S$ over 30 minutes – and this testimony would be helpful to the jury and should not be excluded.

6. **Dr. Kind's testimony on the impact of wind directions is helpful to the jury and is not a matter of common knowledge.**

Finally, Dr. Kind should be allowed to testify on issues of wind direction and meteorology, as he has developed extensive expertise in these areas throughout his career as an odor scientist and expert in fate and transport[42] – and this specialized knowledge will assist the jury. Plaintiffs mischaracterize Dr. Kind's expert analysis as an overly simplistic claim that "wind directions change."[43] Dr. Kind examined the air quality data, wind data, and meteorological conditions from

---

[40] Susan Schiffman Deposition Transcript, attached as Exhibit E to Mims Decl. at 89.

[41] General Causation Trial Transcript, Ex. B to Mims Decl. at 723.

[42] J. Kind Dep. Tr., Ex. A to Mims Decl. at 171:14-24; 172:13-16.

[43] Plaintiffs' Motion to Exclude Expert Testimony of Dr. John Kind, R. Doc. 550-1 at 17.

14

the relevant time period and evaluated the percentage of time the Trial Plaintiffs' residences were downwind of alternative odor sources, in comparison to the time downwind of the JPLF.[44] The jury could not conduct or understand this analysis without Dr. Kind's opinions or testimony.

Attempting to keep this compelling evidence from the jury, Plaintiffs resort to making the blatantly false statement that "[n]o Plaintiff in this case contends that he or she was exposed to odors from the Jefferson Parish Landfill every day, 24 hours a day, for the entire relevant time period."[45] To the contrary, several Trial Plaintiffs unequivocally testified that they were exposed to landfill odors seven days a week, all day, for the entire relevant time period.[46] And some of the Trial Plaintiffs described the odor as continuous.[47] Dr. Kind explains in his report that "it is not physically possible for these individuals to have experienced constant odors attributable to the JPLF over these time periods."[48] Therefore, Dr. Kind evaluated wind direction data to determine what could be the continuous source of odors.[49] He analyzed the percentage of time that each Trial Plaintiff's residential address was downwind of the JPLF compared to alternative odor sources

---

[44] Expert Report of Dr. John Kind, R. Doc. 550-2 at 69.

[45] Plaintiffs' Motion to Exclude Expert Testimony of Dr. John Kind, R. Doc. 550-1 at 16.

[46] *See* G. Green Deposition Transcript, attached as Exhibit F to Mims Decl. at 50:11-52:23 ("2017 to early '20 I experienced those odors constantly daily … all day, all night … morning, noon evening. Whatever you say. It was there all day."); R. Richardson Deposition Transcript, attached as Exhibit G to Mims Decl. at 82:7-24 ("Seven days a week…[a]ll day"); A. Section Deposition Transcript, attached as Exhibit H to Mims Decl. at 63:14-23 ("You smell it seven days a week all in the house … [i]nside, outside. Couldn't' help it."); Tyrone Thompson Deposition Transcript, attached as Exhibit I to Mims Decl. at 94:15-95:11; 101:19-102:8 (testified to smelling odors every day, all day during the relevant time period); V. Lewis Deposition Transcript, attached as Exhibit J to Mims Decl. at 74:3-78:3 (testified to experiencing odors seven days a week for the entire relevant time period); Terrance Thompson Deposition Transcript, attached as Exhibit K to Mims Decl. at 71:12-72:5 (testified to experiencing 10/10 odors for seven days a week for 24 hours a day during the relevant time period).

[47] *See* J. Tate Deposition Transcript, attached as Exhibit L to Mims Decl. at 118:8-10 (Apr. 4, 2023) ("I would say it was continuous"); V. Lewis, Ex. J to Mims Decl. at 77:25-78:9 ("It never changed … to me it never changed.")

[48] Expert Report of Dr. John Kind, R. Doc. 550-2 at 6.

[49] *Id.* At least one of the Trial Plaintiffs testified that the odor depended on the way the wind blew. *See* Expert Report of Dr. John Kind, R. Doc. 550-2 at 41-42; M. Winningkoff Deposition Transcript, attached as Exhibit M to Mims Decl. at 100:14-25 ("If it blew toward my house, I got it. If it blew toward my neighbor's house across the street, she got it. You know? It just depended on the wind.").

during the relevant time period.[50] He explained that because most airborne constituents travel downwind from the point of release, generally, individuals smelling odors would need to be in a downwind path from the actual source to attribute an odor to that source.[51] Dr. Kind concluded that it was more likely that the Trial Plaintiffs were impacted by alternative odor sources because all of the Trial Plaintiffs were located downwind of alternative odor sources more frequently than the JPLF.[52] For example, below is a figure for Trial Plaintiff Geneva Green that Dr. Kind has prepared showing the percentage of time that she was downwind of JPLF versus other known odor-producing facilities. Dr. Kind has prepared charts of this sort for each of the Trial Plaintiffs, showing similar results. Notably, Ms. Green has claimed that, during the relevant time period, "I experienced those odors constantly daily … all day, all night … morning, noon evening. Whatever you say. It was there all day."[53]

**[figure on next page]**

---

[50] Expert Report of Dr. John Kind, R. Doc. 550-2 at 70-79. Plaintiffs' argument that Dr. Kind ignores the fact that wind directions change during the course of a day is pure speculation, not supported by any expert analysis. The wind data already accounts for changing wind directions and the purpose of Dr. Kind's analysis is to show that the Trial Plaintiffs are often more frequently downwind of other sources than the JPLF. Expert Report of Dr. John Kind, R. Doc. 550-2 at 77.

[51] Expert Report of Dr. John Kind, R. Doc. 550-2 at 68.

[52] Expert Report of Dr. John Kind, R. Doc. 550-2 at 70-77. Plaintiffs try to impermissibly shift the burden to Defendants to prove the cause of odors experienced by the Trial Plaintiffs. *See supra* Section 2. Dr. Kind's wind direction analysis demonstrates the importance of considering and ruling out the alternative odor sources, which Plaintiffs' experts have failed to do.

[53] *See* G. Green Dep. Tr., Ex. F to Mims Decl. at 50:11-52:23.

Figure 3. Percentage of Time Geneva Green's Residential Address was Downwind of the JPLF during the Relevant Time Period

| Facility | Percent of Time Plaintiff Downwind of Facility |
|---|---|
| American River Transportation Co. LLC | 21.31% |
| Harahan Sewage Treatment Plant | 7.93% |
| Cargill Inc | 7.52% |
| Wood Resources | 7.46% |
| International-Matex Tank Terminal (Avondale) | 7.17% |
| Cornerstone Chemical Company | 5.46% |
| Dyno Nobel LA Ammonia | 5.46% |
| Evonik Cyro LLC | 5.46% |
| Kemira Chemicals Inc. | 5.46% |
| JPLF | 4.33% |
| ADM Grain River System Inc | 4.17% |

This is compelling testimony, and it is not surprising that Plaintiffs wish to keep it away from the jury. It is also the exact sort of a specific causation analysis that the Fifth Circuit demands from expert witnesses. *See McNabney v. Lab. Corp. of Am.*, 153 F. App'x 293, 294 (5th Cir. 2005) (striking medical causation expert because "[h]is failure to consider and exclude other potential causes of [the plaintiff's] injury before offering an opinion renders his testimony unreliable").

Dr. Kind's testimony will help the jury understand how the wind direction and the location of the Trial Plaintiffs' residences during the relevant time period impact whether they would smell alleged odors from the JPLF or alternative odor sources. Dr. Kind synthesizes the meteorological data during the relevant time period with the locations of the Trial Plaintiffs residences and alternative odor sources in Jefferson Parish.[54] Lay jury members are obviously not capable of constructing such an analysis, contrary to Plaintiffs' outlandish argument.

---

[54] J. Kind Dep. Tr., Ex. A to Mims Decl. at 94:10-15.

Dr. Kind's opinions on his wind direction and meteorology analysis will be helpful to the jury and should not be excluded or limited.

## CONCLUSION

Plaintiffs seek to exclude Dr. Kind's opinions because they do not like them. But Fifth Circuit law endorses the exact type of analysis that he has performed here – a science-driven approach to look at all possible causes of injury, not just those causes which are most convenient or which most closely fit within Plaintiffs' narrative. Plaintiffs' motion does not challenge the reliability of Dr. Kind's opinions; rather, they only seek to exclude his opinion as unhelpful to the jury. But Dr. Kind provides helpful, compelling testimony that will help the jury evaluate the potential that the Trial Plaintiffs' injuries were caused by something other than odors from JPLF. Plaintiffs' motion offers no real basis for excluding or limiting Dr. Kind's testimony; rather their disagreements with Dr. Kind are more appropriate to explore on cross examination. Therefore, Plaintiffs' motion should be denied in its entirety.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:    /s/ Michael C. Mims
       Michael Cash (#31655)
       Cherrell Simms Taplin (#28227)
       Michael C. Mims (#33991)
       Brady M. Hadden (#37708)
       J. Hunter Curtis (#39150)
       Alec Andrade (#38659)
       701 Poydras Street, Suite 5000
       New Orleans, Louisiana 70139
       (504) 581-7979

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

CONNICK AND CONNICK, LLC

By:    /s/ Michael S. Futrell
       William P. Connick, La. Bar No. 14158
       Michael S. Futrell, La. Bar. No. 20819

        Matthew D. Moghis, La. Bar. No. 33994
        Anya M. Jones, La. Bar. No. 36923
        3421 N. Causeway Blvd., Suite 408
        Metairie, Louisiana 70002
        Telephone: (504) 681-6658
        Facsimile: (504) 838-9903
        E-mail: moghis@connicklaw.com

        *Counsel for Defendant Jefferson Parish*


        GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:   /s/ J. Michael DiGiglia
        Ernest P. Gieger, Jr. (6154)
        John E. W. Baay (22928)
        J. Michael DiGiglia (24378)
        Nicholas S. Bergeron (37585)
        Blaise Chadwick Hill (*pro hac vice*)
        Gieger, Laborde & Laperouse, L.L.C.
        Hancock Whitney Center
        701 Poydras Street, Suite 4800
        New Orleans, Louisiana 70139
        Telephone: (504) 561-0400
        Facsimile: (504) 561-1011

        *Attorneys for Defendant Aptim Corp.*


## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on June 13, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                              /s/ Michael C. Mims