UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>Plaintiffs<br><br>**VERSUS**<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>Defendants | **CIVIL ACTION**<br><br>**NO. 19-11133, c/w 19-14512**<br><br>**SECTION: "E" (5)**<br><br>**JUDGE: Morgan**<br>**MAGISTRATE JUDGE: North** |

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY BY DR. PAMELA DALTON**

## INTRODUCTION

Plaintiffs' motion to exclude the testimony of Defendants' well-qualified expert, Dr. Pamela Dalton, is baseless.[1] The linchpin of Plaintiffs' argument is that Dr. Dalton's testimony should be excluded because the Fourth Circuit precluded her testimony about an odor monitoring study and her opinion regarding the lack of odor nuisance emanating from an industrial hog feeding facility in rural North Carolina. *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 962 (4th Cir. 2020). The *McKiver* case has absolutely no bearing on the admissibility of Dr. Dalton's testimony here, as there was no objective nuisance standard in *McKiver*, and it involved its own set of distinct facts. Furthermore, courts do not automatically exclude or limit expert testimony on the basis that the expert's testimony has been limited in other cases.

Dr. Dalton's opinions are helpful to the trier of fact in understanding the different factors that influence odor detection and why the alleged odors from the Jefferson Parish Landfill ("JPLF") were not likely the cause of the Trial Plaintiffs' injuries. That is the purpose of the specific causation inquiry. Dr. Dalton is not relitigating the general causation nuisance threshold opinion (nor are any of Defendants' experts). Rather, Dr. Dalton and others have used the general causation established threshold to assess the likelihood that the thirteen Trial Plaintiffs detected and were annoyed by $H_2S$ from the JPLF at the Court's threshold that only addressed whether that concentration was capable of causing nuisance injuries. Dr. Dalton is a well-qualified odor psychologist who has given both relevant and reliable testimony. Plaintiffs' motion should be denied in its entirety.

---

[1] For purposes of this motion, Defendants are Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., Waste Connections US, Inc. and Jefferson Parish.

**LEGAL STANDARD**

A qualified expert witness "may testify in the form of an opinion or otherwise if ... [his or her] scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The expert's testimony also must be "based on sufficient facts or data" and be "the product of reliable principles and methods." *Id*. 702(b), (c). And the expert's opinion must reflect "a reliable application of the principles and methods to the facts of the case." *Id*. 702(d). Plaintiffs do not dispute Dr. Dalton's qualification or the reliability of her opinions – they only challenge Dr. Dalton's testimony under Fed. R. Evid. 702(a) as unhelpful to the trier of fact.

**ARGUMENT**

**I.  The *McKiver* case has no bearing here.**

Plaintiffs disingenuously represent to the Court that *McKiver* is analogous to the *Addison* case. They even concluded that Dr. Dalton's opinions here are "identical" to those in *McKiver*. These are colossal misrepresentations that the Court should dismiss immediately. The odor nuisance thresholds are different, the underlying facts are different, and Dalton's expert report and proffered testimony are different.

In *McKiver,* Dr. Dalton attempted to define an objective standard – meaning a value that could be measured by an instrument (e.g. a dilution to threshold ratio for odor or a parts per billion concentration for a chemical) – below which any odors could not be considered a nuisance. *McKiver v. Murphy-Brown LLC*, No. 14-cv-180, 2018 WL 1881508, at *1 (E.D.N.C. Apr. 19, 2018). Dr. Dalton proposed a specific number – a 7:1 dilution ratio.[2] *Id.* This testimony was offered as a defense on liability – i.e., whether an unreasonable intrusion occurred – *not* on the issue of

---

[2] The Dilution-to-Threshold ratio is a measure of the number of dilutions needed to make the odorous ambient air non-detectable. *See* https://odourobservatory.org/measuring-odour/field-olfactometry/.

causation of symptoms (in fact, no health symptoms were at issue in the case). *McKiver*, 980 F.3d at 949. The *McKiver* court excluded this testimony based on the particular application of North Carolina law – specifically, because whether odors constitute a nuisance is entirely *subjective* under North Carolina law, making Dr. Dalton's testimony on the use of a measurable standard a poor fit in that jurisdiction.

Here, Dr. Dalton is not proposing a specific number to define the odor nuisance threshold – rather, the Court did so, as the Fifth Circuit requires for the general causation phase. *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198-99 (5th Cir. 1996) (general causation requires knowledge of "the harmful level of exposure to a chemical."). The Court's adoption of 5 ppb of $H_2S$ over 30 minutes represents the dosage at which the Court determined exposure to $H_2S$ is "*capable* of causing" headaches, nausea, vomiting, and other injuries set out by the Court in its General Causation decision (emphasis added).[3]

In their expert reports, Plaintiffs' experts seek to expand on this Court's General Causation holding and have opined that "exposure to hydrogen sulfide at the level of 5 ppb over a 30 minute period… is <u>always</u> a nuisance." (emphasis in original).[4] Thus, it is Plaintiffs who are urging a "one size fits all" approach, not Dr. Dalton. *See Bell v. Foster Wheeler Energy Corp.*, No. 15-cv-6394, 2017 WL 876983, at *2 (E.D. La. Mar. 6, 2017) (in which Judge Africk noted the Fifth Circuit's disfavor of "specific causation opinions untethered to the decedent himself, based only on generalized studies of the effects that certain exposure levels can have on the population.").

Dr. Dalton is entitled to rebut this testimony by Plaintiffs' experts. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to

---

[3] Findings of Fact and Conclusions of Law, General Causation (R. Doc. 323) at 31.
[4] *See* Expert Report of Robert DeLorenzo, M.D., Ph.D., M.P.H. (Feb. 5, 2024) ("DeLorenzo Report") (R. Doc. 562-4) at 12; Expert Report in the Matter of Odor Complaints in Jefferson Parish, New Orleans, LA, Prepared by Susan S. Schiffman, PhD, (Jan. 28, 2024) (R. Doc 563-4) at 5.

explain, repel, counteract or disprove evidence of the adverse party.") (internal citation omitted); Fed. R. Civ. P. 26(a)(2)(D)(ii). Faced with their opinions, and with the Court's adoption of the 5 ppb for 30 minutes *capability* threshold, Dr. Dalton has now opined on the *likelihood* that such a dosage of $H_2S$ would *in fact cause* the injuries of which the Trial Plaintiffs complain. Crucially, unlike the *McKiver* case, she is not testifying as to a dosage below which a nuisance cannot occur. Rather, she is testifying that, contrary to what Plaintiffs' experts would like to tell the jury, exposure to 5 ppb of $H_2S$ over 30 minutes is not "always a nuisance" – instead, whether such a dosage is offensive and actually caused the symptoms in the particular Trial Plaintiff hinges on numerous individual factors and must be analyzed on a case-by-case basis.

In this regard, Dr. Dalton, unlike Plaintiffs' experts, is following the mandates of the Fifth Circuit for conducting a proper specific causation analysis. *See McNabney v. Lab. Corp. of Am.*, 153 F. App'x 293, 295 (5th Cir. 2005) ("[causation expert's] failure to consider and exclude other potential causes of [plaintiff's] injury before offering an opinion renders his testimony unreliable.") (internal citation omitted); *Becnel v. Lamorak Ins. Co.*, No. 19-cv-14536, 2022 WL 3704028, at *4 (E.D. La. Aug. 26, 2022) (Lemelle, J.). In *Becnel*, Judge Lemelle noted that a specific causation analysis may properly involve a differential diagnosis, in other words, "determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Id.* (citing *Johnson v. Arkema, Inc.*, 685 F.3d 452, 468 (5th Cir. 2012)).

Here, looking to the details of the specific thirteen Trial Plaintiffs and their non-odor related stressors, and applying her expertise on $H_2S$'s *likelihood* to cause headaches and related symptoms at a dosage of 5 ppb over 30 minutes, Dr. Dalton has concluded that the alleged exposures were

unlikely to have caused the Trial Plaintiffs' alleged injuries, and were certainly not "always a nuisance."[5] This specific causation approach was not addressed by *McKiver,* and is indeed a favored approach in the Fifth Circuit. *Becnel;* 2022 WL 3704028, at *4; *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 804 (E.D. La. 2011) (Judge Fallon noting that a specific causation analysis may involve ruling out the least plausible causes of injury "until the most likely cause remains.") (internal citations omitted).

In addition, this case and *McKiver* have completely distinct facts – the only similarity is that they can both be described as odor nuisance cases. In *McKiver*, Plaintiffs brought a state law nuisance claim for alleged injuries due to industrial hog farm odors. *McKiver*, 980 F.3d at 946. Plaintiffs alleged loss of enjoyment of their property. Crucially, they did not allege any medical symptoms, and thus, the case did not address questions of causation, either general or specific. In contrast, here, the *Addison* Plaintiffs alleged a long list of medical symptoms allegedly caused by landfill odors, specifically $H_2S$ (when there are several landfills and other industrial sites in the area). Furthermore, Jefferson Parish is a mixed industrial, commercial, and residential area, where the industrial hog farms in *McKiver* were located in rural North Carolina. *Id.* The alleged odors and localities posit different considerations in the two cases.

And in no way are Dr. Dalton's opinions in this case "identical" to those in *McKiver*, as Plaintiffs claim.[6] While some discussion may overlap due to Dr. Dalton's experience and knowledge in human odor perception, she offers completely different testimony in the two cases. Dr. Dalton's opinions in *McKiver* addressed liability, which is vastly different than whether the alleged exposure is the likely explanation of the medical symptoms encountered (specific

---

[5] Expert Report of Pamela Dalton, PhD, MPH (Mar. 8, 2024) ("Dalton Report"), attached as Exhibit 2 to Plaintiffs' Motion to Exclude Testimony by Dr. Pamela Dalton (R. Doc. 542-3) at 4-6.
[6] Pls. Memorandum of Law in Support of Motion to Exclude Testimony of Dr. Pamela Dalton ("Pls. MOL") (R. Doc. 542-1) at 3.

causation at issue here in *Addison*). Unlike her *Addison* specific causation report, Dr. Dalton's opinions in *McKiver* did not need a thorough examination of the plaintiffs' medical history or health conditions, as plaintiffs did not allege any of these injuries.[7] Dr. Dalton explains in her *Addison* specific causation report why she believes the alleged odors were not likely the cause of the Trial Plaintiffs' alleged injuries – that is in no way "identical" to the distinct facts and issue of liability in *McKiver*.[8]

Dr. Dalton is permitted to rebut Plaintiffs' experts and explain the reasons why exposure to 5 ppb of $H_2S$ over 30 minutes is not "always a nuisance," and was not likely the cause of the Trial Plaintiffs' symptoms. There is no basis for the Court to apply *McKiver*, which addressed an entirely different issue and has no application here.

Additionally, just because Dr. Dalton's testimony was limited in a prior case does not automatically mean that her testimony should be excluded or limited here. *See Dyson v. United States*, No. 20-cv-1975, 2021 WL 291284, at *4 (E.D. La. Jan. 28, 2021) (denying motion in limine; "the fact that [the expert] has been excluded in other, unrelated cases has little relevance as to whether his current report and testimony satisfy the requirements of Louisiana law and the Federal Rules of Evidence. Moreover, what limited relevance this fact may have would go to the weight [the expert's] testimony is afforded, and is not a proper reason to exclude his testimony wholesale."); *Siemers v. BNSF Ry. Co.*, No. 17-cv-360, 2018 WL 6421728, at *2 (D. Neb. Dec. 6, 2018) ("there is nothing to suggest that when a [c]ourt determines that an expert is not qualified to

---

[7] *Id.* at 6-9. It is true that the Trial Plaintiffs will all testify regarding their odor experiences. *Id.* at 4-5. But Dr. Dalton's testimony is important for the jury not to just take Trial Plaintiffs' accounts at face value. For example, she explained how Jonathan Tate's sensitivity to odors could be impaired because of some of his health conditions. Transcript of P. Dalton (taken May 13, 2024) ("P. Dalton Dep. Tr."), attached as Exhibit 1 to the Declaration of Megan R. Brillault ("Brillault Decl.") ("Defs. Ex. 1") 187:18-25. He suffers from hypertension which is "very much is associated with deficiencies in the ability to smell." *Id.* 188:3-16. It is appropriate for Dr. Dalton to testify regarding her analysis of the Trial Plaintiffs' odor experiences – as she reviewed all of the Trial Plaintiffs' fact sheets, deposition transcripts, discovery responses, and odor complaints. R. Doc. 542-3, Dalton Report at 20-25.
[8] R. Doc. 542-3, Dalton Report at 11-12.

6

opine on some topics in a particular case, that the expert's opinion is inherently unreliable on every occasion"). As the Court in *Dyson* explained, the limitation of an expert's testimony in other cases should go to the weight of the testimony; it is not a basis for exclusion. Additionally, Plaintiffs cite no legal authority that Dr. Dalton's testimony must be excluded simply because her testimony was limited in part in another case. Plaintiffs cling to *McKiver* (which had nothing to do with specific causation) as a basis to exclude Dr. Dalton, but it has no bearing in this specific causation case.

## II. Dalton's opinions are helpful to the trier of fact.

Plaintiffs only challenge Dr. Dalton's testimony under Rule 702(a) as unhelpful to the trier of fact. However, Dr. Dalton's testimony is relevant and helpful to the jury in understanding how the alleged odors from the JPLF did not likely cause the Trial Plaintiffs' injuries. And Dr. Dalton does not challenge or refute this Court's General Causation decision, as Plaintiffs suggest.

### A. Dr. Dalton may testify regarding the unreliability of self-reported accounts of odors.

Dr. Dalton's testimony is helpful to the trier of fact as she provides crucial expertise on factors which likely clouded the accuracy of the Trial Plaintiffs' self-reported accounts of odors and caused them to misattribute odors to the JPLF. Plaintiffs omit relevant statements from Dr. Dalton's report and deposition testimony to wrongly suggest the Dr. Dalton is "attacking" the credibility of the Trial Plaintiffs. Dr. Dalton testified that she is "not saying that [the Trial Plaintiffs] are not credibly reporting on what [their] experience is. [She is] questioning the accuracy of their attribution."[9] Dr. Dalton explained that while the Trial Plaintiffs might believe what they are saying is true, that is because of the way humans misinterpret and misattribute odors to either the wrong source, or to symptoms they are experiencing that are not actually caused by

---

[9] Defs. Ex. 1, P. Dalton Dep. Tr. 104:2-11.

7

the odors.[10] She ultimately concludes that it is more likely than not based on her experience as an odor psychologist and based on her review of the evidence that the Trial Plaintiffs' complaints are being misattributed to $H_2S$ odors.[11]

Plaintiffs fail to acknowledge that in *McKiver*, the case on which they chiefly rely, the Court permitted Dr. Dalton to testify on the unreliability of self-reports of odor and recognized that this did not invade the jury's province to assess plaintiffs' credibility. *See McKiver*, 980 F.3d at 962 ("the court did allow Dr. Dalton to testify about the unreliability of human self-reports of odor . . ."); *McKiver*, 2018 WL 1881508, at *2 ("her opinion about the unreliability of self-report of odor does not invade the jury's province to assess plaintiffs' credibility, and the court will not exclude this opinion testimony.").

Plaintiffs take issue with Dr. Dalton's Opinion 2 in particular, but Opinion 2 is all about the Trial Plaintiffs' descriptions of their odor experiences – which are self-reported experiences.[12] In Opinion 2, Dr. Dalton notes that "the Trial Plaintiffs' subjective reports about the duration over which strong $H_2S$ odors were experienced are inconsistent with what is known about the rapid adaption that is a defining hallmark of olfactory function."[13] Without Dr. Dalton's testimony, the jury would be improperly shielded from the crucial information that Trial Plaintiffs' self-report of the frequency they experienced odors is not even closely aligned with Dr. Lape's modeling data, nor does it align with the functions of the olfactory system.[14] Dr. Dalton's testimony regarding the Trial Plaintiffs' self-reported odor experiences is valuable and relevant to the issue of specific causation.

---

[10] *Id.* 106:19-107:2; R. Doc. 542-3, Dalton Report at 16.
[11] R. Doc. 542-3, Dalton Report at 13.
[12] *Id.* at 6-10.
[13] *Id.* at 9.
[14] *See* Defs. Ex. 1, P. Dalton Dep. Tr. 189:16-190:6; 193:5-17; R. Doc. 323 at 42.

### B. Dr. Dalton offers key testimony to the issue of specific causation and does not offer opinions that are contrary to the General Causation Findings of Fact and Conclusions of Law.

Despite Plaintiffs' characterization, as part of the upcoming trial, Dr. Dalton is not challenging the Court's General Causation decision.[15] The Waste Connections Defendants retained Dr. Dalton for this trial on specific causation to determine whether the alleged odors from the JPLF more likely than not caused the Trial Plaintiffs' injuries, as "specific causation asks whether exposure to a substance caused a particular plaintiff's injury."[16] It is thus appropriate for Dr. Dalton to testify whether Plaintiffs' symptoms were more likely caused by exposure to 5 ppb of $H_2S$ as opposed to some other cause or set of causes (e.g., medical conditions, side effects of drugs, or other confounding factors).[17] Plaintiffs have no basis to seek to limit Dr. Dalton's opinions with respect to specific causation.

Dr. Dalton explicitly stated in her deposition that she accepts and will not testify to the contrary the Court's General Causation holding that "the exposure at which people generally are able to smell hydrogen sulfide and which *is capable of* causing a reaction in those exposed is an average exposure over a thirty-minute period of at least 5 ppb." (emphasis added).[18] In her report, Dr. Dalton opines that the literature shows and it is her opinion that the likelihood of 5 ppb of $H_2S$

---

[15] *See also* Defendants' Joint Memorandum of Law in Opposition to Plaintiffs' Motion to Exclude Expert Testimony on Issues Litigated and Decided in the General Causation Phase at 15.

[16] As with general causation, Plaintiffs have the burden of proving specific causation. Dr. Dalton is thus correct in stating that "Plaintiffs have not proven that any of the Trial Plaintiffs are able to smell hydrogen sulfide." Pls. MOL at 5. The Trial Plaintiffs described their odor experiences, but they introduced no evidence that they could actually smell $H_2S$ at 5 ppb over 30 minutes.

[17] Defs. Ex. 1, P. Dalton Dep. Tr. 199:25-200:9; *see also Wagoner*, 813 F. Supp. 2d at 804 (noting that a specific causation analysis may involve a physician who "begins by 'ruling in' all scientifically plausible causes of the plaintiff's injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains.") (citing *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001); *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1195 (11th Cir. 2010); *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 178 (6th Cir. 2009)).

[18] R. Doc. 323 at 31; *see also* Defs. Ex. 1, P. Dalton Dep. Tr. 110:17-25 (acknowledging the Court's general causation determination of 5 ppb and working within the judge's framework for her specific causation report).

9

actually causing headaches, nausea, and other injuries is exceedingly low.[19] Because this general causation threshold of 5 ppb is lower than any nuisance threshold for $H_2S$ that has been adopted by any jurisdiction in the world,[20] Dr. Dalton provides valuable context on whether exposures at this low level are the most likely explanation for the Trial Plaintiffs' alleged injuries, as opposed to some other cause. Such context will include a full discussion of the World Health Organization European Regional Office ("WHO") guidelines, not just the portions cherry-picked by Plaintiffs, including WHO's statement that its nuisance thresholds are based on the level at which less than 5% of the population would be annoyed less than 2% of the time.[21] Similarly, Dr. Schiffman has testified that 5 ppb of $H_2S$ is the level at which complaints will *start*[22] – the implication being, that is the level at which the most sensitive portion of the population is bothered.

Plaintiffs seek to shield the jury from any discussion on how likely 5 ppb of $H_2S$ is to cause the injuries at issue in this case, instead adopting Dr. Schiffman's opinion (which differs from the WHO guidelines) – that exposure at 5 ppb is "always a nuisance" – as binding and applicable to all Plaintiffs for purposes of a specific causation determination. But the Fifth Circuit forbids this sort of "one size fits all" approach to specific causation. *See Bell*, 2017 WL 876983, at *2; *Hill v. GEO Grp., Inc.*, No. 18-cv-1363, 2021 WL 6053783, at *7 (W.D. La. Dec. 21, 2021) (finding plaintiff's specific causation opinions unreliable when they consisted of little more than opining that, because plaintiffs were exposed to a known-to-be-toxic level of mold and alleged that symptoms followed, the mold must have caused their symptoms). Moreover, this overstates what Dr. Schiffman actually testified to at the general causation trial, which was only that 5 ppb of $H_2S$

---

[19] R. Doc. 542-3, Dalton Report at 4.
[20] Transcript of Deposition of S. Schiffman (taken Apr. 26, 2024) ("S. Schiffman Dep. Tr."), attached as Exhibit 2 to the Brillault Decl. ("Defs. Ex. 2") 89:22-90:21.
[21] R. Doc. 542-3, Dalton Report at 5.
[22] Transcript of Bench Trial, General Causation/Daubert Hearing (Day 3 Afternoon Session) (Feb. 2, 2022) (R. Doc. 299) at 723:2-13; Defs. Ex. 2, S. Schiffman Dep. Tr. 90:8-12.

when *combined with* other chemicals is always a nuisance "for a lot more than 5% of the population."[23]

Thus, Dr. Dalton is appropriately heeding the Fifth Circuit's guidance that, even after general causation is established, a reliable specific causation analysis must address the *likelihood* that the exposure caused the alleged injuries. These opinions do not relitigate whether an average 30-minute exposure of 5 ppb $H_2S$ is *capable* of causing a nuisance for any one Plaintiff, and instead directly address whether specific causation has been established for, i.e., whether such exposure did in fact cause the alleged injuries of, each of the thirteen Trial Plaintiffs.[24] Simply put, this case did not end with the General Causation decision, and Defendants must be allowed to present a defense on specific causation—and under Fifth Circuit standards, such defense must necessarily include a discussion on the *likelihood* that the alleged exposure caused injuries to the Trial Plaintiffs.

Furthermore, the jury has no way of understanding the reality of the likelihood that the Trial Plaintiffs were able to detect, recognize, and be annoyed when exposed to an average of 5 ppb of $H_2S$ for 30 minutes, or whether an alternative explanation is more likely. Dr. Dalton's opinions based on her years of experience in odor psychology will help the jury in understanding what factors could, and likely did, cause the Trial Plaintiffs' complained of symptoms. Her testimony is therefore relevant and necessary to the issue of specific causation.

---

[23] R. Doc. 299 at 671:14-17 ("5 ppb in the field where you have *other compounds along with it* always is a nuisance okay, for lot more than 5 percent of the population") (emphasis added).
[24] *See* Defs. Ex. 1, P. Dalton Dep. Tr. 86:5-12 (in which Dr. Dalton testified that she is focused here on whether the specific Trial Plaintiffs were impacted at the concentration set forth in the General Causation decision, i.e., 5 ppb for over 30 minutes).

11

## CONCLUSION

There is no denying that Dr. Dalton is an expert in the human perception of odor. Plaintiffs grasp for straws in arguing that her testimony should be excluded here because of another odor nuisance case in another jurisdiction involving different facts and a different legal issue. The case is inapposite and provides no basis for limiting Dr. Dalton's testimony here. Furthermore, Plaintiffs' motion does not challenge the qualifications of Dr. Dalton or reliability of her opinions; rather, they only seek to exclude her opinion as unhelpful to the trier of fact and disingenuously argue she is challenging the Court's general causation opinion. But Dr. Dalton explicitly states she is not challenging the Court's general causation standard for $H_2S$ of 5 ppb and her testimony is extremely useful to the jury in understanding whether alleged odors from the JPLF were the likely cause of any injuries suffered by the Trial Plaintiffs. Plaintiffs' motion offers no real basis for excluding or limiting Dr. Dalton's testimony; rather their alleged issues are more appropriate to explore on cross examination. Therefore, Plaintiffs' motion should be denied in its entirety.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:  /s/ Michael C. Mims
     Michael Cash (#31655)
     Cherrell Simms Taplin (#28227)
     Michael C. Mims (#33991)
     Brady M. Hadden (#37708)
     J. Hunter Curtis (#39150)
     Alec Andrade (#38659)
     701 Poydras Street, Suite 5000
     New Orleans, Louisiana 70139
     (504) 581-7979

          BEVERIDGE & DIAMOND, P.C.

          Megan R. Brillault (*pro hac vice*)
          Michael G. Murphy (*pro hac vice*)
          John H. Paul (*pro hac vice*)
          Katelyn E. Ciolino (*pro hac vice*)
          Katrina M. Krebs (*pro hac vice*)
          825 Third Avenue, 16th Floor
          New York, NY 10022
          (212) 702-5400

          James B. Slaughter (*pro hac vice*)
          1900 N Street, NW, Suite 100
          Washington, DC 20036
          (202) 789-6000

          Michael F. Vitris (*pro hac vice*)
          400 W. 15th Street, Suite 1410
          Austin, TX 78701
          (512) 391-8035

          *Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*


          CONNICK AND CONNICK, LLC

By:    /s/ Michael S. Futrell
          William P. Connick, La. Bar No. 14158
          Michael S. Futrell, La. Bar. No. 20819
          Matthew D. Moghis, La. Bar. No. 33994
          Anya M. Jones, La. Bar. No. 36923
          3421 N. Causeway Blvd., Suite 408
          Metairie, Louisiana 70002
          Telephone: (504) 681-6658
          Facsimile: (504) 838-9903
          E-mail: moghis@connicklaw.com

          *Counsel for Defendant Jefferson Parish*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on June 13, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Michael C. Mims
OF COUNSEL
