**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>**Plaintiffs**<br><br>**VERSUS**<br><br>**LOUISIANA REGIONAL LANDFILL**<br>**COMPANY, ET AL.,**<br>**Defendants** | **CIVIL ACTION**<br><br>**NO. 19-11133, c/w 19-14512**<br><br>**SECTION: "E" (5)**<br><br>**JUDGE: Morgan**<br>**MAGISTRATE JUDGE: North** |

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF JOSEPH T.</u>**
**<u>GARDEMAL III</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

I.     Mr. Gardemal Offers Relevant Expert Rebuttal Testimony. .......................... 4

II.    Mr. Gardemal Does Not Offer Legal Conclusions. ........................................ 9

III.   Plaintiffs Mischaracterize Mr. Gardemal's Opinions Concerning the Paradise
       Manor Community Club. .............................................................................. 10

CONCLUSION .................................................................................................................. 11

## INTRODUCTION

Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., Waste Connections US, Inc., and Jefferson Parish ("Defendants") identified Joseph T. Gardemal III, certified public accountant, certified valuation analyst, and certified fraud examiner, as a rebuttal expert to Plaintiffs' damages expert, Jason Schellhaas,[1] to assess and provide his opinions on Mr. Schellhaas' approach to measuring the Trial Plaintiffs' damages related to their personal injuries. Following the review of Mr. Schellhaas' expert reports and supporting material and his deposition testimony, Mr. Gardemal concluded that Mr. Schellhaas' methodology was not a generally accepted methodology for assessing economic damages because he relied on inappropriate assumptions (all provided by Plaintiffs' attorneys) that overstated any possible reasonable measure of damages, which in Mr. Gardemal's opinion rendered the damages analysis unreliable. Mr. Gardemal also concluded that Mr. Schellhaas' opinions were unreasonable and unreliable because he failed to consider facts relevant to each of the Trial Plaintiffs' individual circumstances. Yet, Plaintiffs are seeking to exclude Mr. Gardemal's opinions—not because he is not qualified as an expert in damages, accounting, and valuation, and not because they claim that he improperly applied any generally recognized methodology—but because they claim that Mr. Gardemal offers only arguments that can be made by counsel and that Mr. Gardemal allegedly opined that "there were no odors." Plaintiffs are wrong on both arguments. And their mischaracterization of Mr. Gardemal's rebuttal opinions and affirmative expert opinion are nothing more than an attempt to mask their need to rewrite Mr. Schellhaas' flawed opinions.

---

[1] Plaintiffs refer to their expert as Mr. Malcolm M. Dienes. The name of Plaintiffs' expert is Jason Schellhaas, who is an employee of Malcolm M. Dienes, LLC, and was one of three signatories on the expert report. As set forth in R. Doc. 564-1, n.1, Mr. Schellhaas was identified as the testifying expert.

Plaintiffs first argue that "the cost of moving to escape the odors is a proxy for some of the general damages suffered by the Plaintiffs because it is representative of the cost of having to put up with the odors."[2] But neither Plaintiffs nor Mr. Schellhaas have previously described this as a basis for Plaintiffs' expert opinion and it is nothing more than a post-hoc explanation to try to save that opinion after Mr. Gardemal pointed out the numerous flaws in Mr. Schellhaas' opinion. Moreover, as Mr. Schellhaas stated in his report and further expounded on during his deposition, the damages measurement he conducted was not a proxy for "general damages" but was his attempt to quantify the damages for "personal injuries" resulting from exposure to odors.[3]

Based on more than 30 years of experience assessing and quantifying damages, Mr. Gardemal opined that the methodology employed by Mr. Schellhaas was inappropriate and overstated any possible reasonable measure of damages. Specifically, Mr. Gardemal explained that Mr. Schellhaas failed to apply a generally-accepted method for measuring compensatory damages, instead adopting, wholesale, assumptions that he received from Plaintiffs' counsel, even where such assumptions were counterfactual to the evidence. Mr. Schellhaas did not cite any guiding methodology in his initial February 8, 2024 report, and readily admitted that he did not perform any independent investigation into the assumptions provided by counsel, nor did he make any effort to determine what the appropriate measure of damages would be in this case.[4] While Plaintiffs attempt to couch Mr. Gardemal's opinion as no more than "legal argument," assessing and ultimately criticizing Mr. Schellhaas' assumptions and application of the facts to a damages analysis is well within the proper subject of a rebuttal expert report, and no affirmative calculation

---

[2] Plaintiffs' Brief in Support of Plaintiffs' Motion Exclude Expert Testimony of Josephy Gardemal ("Mot."), at 2 (R. Doc. 546-1).
[3] Mar. 29, 2024 Rebuttal Report of Jason Schellhaas ("Schellhaas Rebuttal") at 5 (R. Doc. 564-6); April 18, 2024 Deposition of Jason Schellhaas ("Schellhaas Dep.") 39:4-40:10 (R. Doc. 564-8).
[4] Schellhaas Dep. 53:22-54:20.

of damages is necessary for Mr. Gardemal's opinion to constitute admissible rebuttal opinion. Indeed, it is Plaintiffs' own challenges to Mr. Gardemal's rebuttal opinion that are more appropriately made during cross-examination rather than pursuant to a Rule 702 motion.

With respect to Mr. Gardemal's analysis of the financial records for the Paradise Manor Community Club, Plaintiffs' argument seems to be that a certified public accountant is not qualified to assess financial records and provide opinions on the profitability of the business unless the expert had previously operated the identical business. Such an argument is absurd at best. Plaintiffs also wrongly claim that Mr. Gardemal concluded that there were no odors. But that was not Mr. Gardemal's opinion – rather, as a damages expert, and in response to one of the Trial Plaintiffs' claim that she could not use the club due to odors, Mr. Gardemal is providing his expert opinion that based on his review of the financial records for the club, there were no declines in revenue at the Club during the relevant period, "indicating that any alleged odors from JPLF or any other source did not have any significant impact on its operations, and thus its members' use of the Club."[5]

Plaintiffs' motion to exclude Mr. Gardemal's opinions should be denied in its entirety.

## LEGAL STANDARD

A qualified expert witness "may testify in the form of an opinion or otherwise if ... [his or her] scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The expert's testimony also must be "based on sufficient facts or data" and be "the product of reliable principles and methods." *Id*. 702(b), (c). And the expert's opinion must reflect "a reliable application of the principles and methods to the facts of the case." *Id*. 702(d).

---

[5] Mar. 8, 2024 Expert Report of Joseph T. Gardemal ("Gardemal Expert Report") at 32 (R. Doc. 546-2).

A rebuttal expert opinion is that which "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). "The function of rebuttal is to explain, repel, counteract or disprove evidence of the adverse party." *Garris v. Midea USA, Inc.*, No. 10-cv-1569, 2014 WL 12719497, at *1 (E.D. La. Mar. 6, 2014) (quoting *U.S. v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005)). It is indisputable that experts cannot "render conclusions of law" or provide opinions on legal issues. *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). However, "testimony should not be excluded simply because … the testimony will touch on legal topics." *Woodard v. Andrus*, No. 03-cv-2098, 2009 WL 140527, at *2 (W.D. La. Jan. 20, 2009).

## ARGUMENT

### I.   Mr. Gardemal Offers Relevant Expert Rebuttal Testimony.

Plaintiffs are offering Mr. Schellhaas as a damages expert to proffer an opinion on the measurement of damages "for personal injury as a result of the odors . . .  based on the costs that the Plaintiffs would have incurred had they been able to move away from the odors."[6] Defendants retained Mr. Gardemal as a rebuttal expert, who critiqued Mr. Schellhaas' methodology for measuring the Trial Plaintiffs' alleged damages, as well as the (inappropriate) assumptions and the insufficient facts relied upon (or ignored) by Mr. Schellhaas in rendering his opinion on damages. While Defendants have challenged the admissibility of Mr. Schellhaas' opinions on damages, to the extent the Court allows Mr. Schellhaas to testify, Mr. Gardemal's testimony provides a necessary expert rebuttal opinion regarding Mr. Schellhaas' failure to adhere to generally accepted methods of assessing economic damages.[7]

---

[6] Schellhaas Rebuttal at 5.

[7] Importantly, in addition to the rebuttal opinions, Mr. Gardemal offers an affirmative opinion based on his review of Paradise Manor records. So even if his rebuttal opinion is no longer necessary because the Court

Plaintiffs first argument to keep Mr. Gardemal's damning opinions out is that he "offers nothing more than arguments that the lawyers can make."[8] While the Defendants' lawyers can and will cross-examine Mr. Schellhaas on his flawed approach to measuring damages, the purpose of a rebuttal expert like Mr. Gardemal is to provide the jury with testimony from an expert in the same field as to what the appropriate methodology is, whether the opposing expert has applied that methodology in a reliable manner, and whether the expert relied on reasonable facts and assumptions in rendering that opinion. *See Marmo v. Tyson Fresh Meats, Inc*., 457 F.3d 748, 759 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party.") (citation omitted); *McGinley v. Luv n' Care, Ltd.*, No. 17-cv-821, 2023 WL 6284727, at *2 (W.D. La. Sept. 26, 2023) ("offering a different and purportedly better methodology is a proper way to rebut the methodology of" another expert).

And despite Plaintiffs intimation that it was inappropriate for Mr. Gardemal to not proffer an independent opinion as to the proper measurement of damages, a rebuttal expert need only provide opinions that critique Plaintiffs' expert. Indeed, Federal Rule of Civil Procedure 26 speaks directly to the role of rebuttal experts, stating that an expert report qualifies as a rebuttal report if it "is intended solely to contradict or rebut evidence on the same subject matter identified" by the opposing party's expert report. Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1302 (N.D. Fla. 2017) (rebuttal expert "entirely appropriate" where rebuttal expert did not offer stand-alone opinion on damages and where report was limited to a critique of expert's methodology); *Coquina Invs. v. Rothstein,* No. 10-cv-60786, 2011 WL 4949191, at *3, 5 (S.D. Fla. Oct. 18, 2011) ("A rebuttal expert can testify as to the flaws that she believe[s] are

---

excludes Mr. Schellhaas' testimony, his affirmative opinion is still relevant and admissible as discussed below.
[8] Mot. at 3.

5

inherent in another expert's report that implicitly assumes or ignores certain facts.") (citation omitted). Plaintiffs' position would leave the control of a rebuttal expert's approach to the party serving affirmative reports, as the rebuttal expert would then always have to conduct a similar method – a position that is absurd at best. *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834–35 (D. Minn. 2011) (A rebuttal expert witness "may criticize other experts' theories and calculations without offering alternatives.") (citations omitted); *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 285 (E.D.N.Y. 2007) (rebuttal experts "have no burden to produce models or methods of their own; they need only attack those of plaintiffs' experts.").

Plaintiffs' second argument to exclude Mr. Gardemal's expert testimony is nothing more than a post-hoc argument that reframes and mischaracterizes the opinions set forth by Mr. Schellhaas in his report. Plaintiffs argue that "the cost of moving is relevant to refute the defense that Plaintiffs failed to mitigate, and because the cost of escaping the odors stands as a proxy for the general damages in having to put up with them.[9] To the contrary, Mr. Schellhaas testified and stated in his expert report that he was asked to and measured damages that were intended to represent the damages from the personal injuries alleged by the Trial Plaintiffs, yet now Plaintiffs claim that Mr. Schellhaas was actually calculating damages that were intended to measure the cost for Plaintiffs to relocate. These are more akin to loss of use damages, not personal injury damages, and Mr. Schellhaas explicitly stated that he was not calculating damages for any alleged loss of use or enjoyment of property.[10]

Plaintiffs also offer never-before-seen explanations for why Mr. Schellhaas calculated damages for every day of the Relevant Period in the face of Plaintiffs' own experts who determined

---

[9] Mot. at 3-4.
[10] Schellhaas Dep. 39:24-40:5.

that each Plaintiff could only have experienced odors for a fraction of the Relevant Period.[11] Further, despite the undisputable fact that Mr. Schellhaas calculated monetary damages for each Trial Plaintiff based on every single day in the Relevant Period, Plaintiffs argue that "no such assumption" appears in Mr. Schellhaas' report.[12] Yet, Mr. Schellhaas responded to Mr. Gardemal's criticism by stating that he "provided calculations for every day during the relevant period in order to provide the trier of fact with all the appropriate calculations so they can award damages depending upon the evidence that is presented at trial."[13] If Plaintiffs are correct that Mr. Schellhaas did not assume that the Trial Plaintiffs were damaged every day, then either Mr. Schellhaas' opinion is based on unsupported facts (he provides no other explanation for calculating damages for every day of the relevant time period) or he is simply providing a calculation that he seems to believe the jury is also able to determine – either way, Plaintiffs' argument appears to render Mr. Schellhaas' opinion inadmissible.

Plaintiffs further argue that Mr. Schellhaas did not have any obligation to verify whether there was any alternative explanation for alleged damages, and no obligation to apportion damages accordingly.[14] Mr. Gardemal's report cites several well established and generally accepted methods for assessing potential economic damages which emphatically state otherwise, including that, "[i]f a damages analysis includes effects not caused by the defendant, it is a defective

---

[11] Mot. at 4 (justifying this assumption in the Schellhaas report because "it was unknown how long [the odors] would last, and because "the odors were intermittent."; April 22, 2024 Deposition of Joseph Gardemal ("Gardemal Dep.") 67:1-5 ("taking the work that was done by Mr. Schellhaas, applying the work that was done by Mr. Lape to it and demonstrating that Mr. Schellhaas's calculations are unreliable because they don't consider even the analysis performed by plaintiffs' own expert."). A copy of the Gardemal deposition is attached to the Declaration of Megan R. Brillault ("Brillault Decl."), as Exhibit 1 ("Defs. Ex. 1").

[12] Mot. at 4.

[13] Schellhaas Rebuttal at 9.

[14] Mot. at 4.

analysis."[15] An expert in damages is required to perform an independent investigation and account for obvious alternative explanations for the alleged harm. As demonstrated by Mr. Gardemal, Mr. Schellhaas entirely failed to consider both the opinions of other experts in this case, and the facts of the case, such as the Jule 23, 2018 press conference, where Councilman Paul Johnson stated that there are "other odors around the area that are causing problems."[16] Mr. Schellhaas testified that he did not perform any investigation into the accuracy of the assumption that JPLF was the sole cause of these hypothetical damages.[17] Without any citation to facts, Mr. Schellhaas' opinion is unreliable and it is the proper duty of the rebuttal expert to make this clear to the trier of fact. *McGinley*, 2023 WL 6284727, at *2; *Navelski,* 244 F. Supp. 3d at 1302.

In fact, the cases cited by Plaintiffs actually support the admissibility of Mr. Gardemal's opinions. For example, in *Pugh v. LaQuinta Motor Inns, Inc.*, No. 94-cv-510, 1996 WL 44170, at *2 (E.D. La. Feb. 2, 1996), the court did not bar the expert report in its entirety, excluding only testimony that offered a layman's opinion explaining something to which each juror had knowledge—what a photograph of a bathroom looked like. No such photograph or other commonly understood subject is the basis of Mr. Gardemal's opinions. Similarly, in *deWit v. UPS Ground Freight, Inc.*, Nos. 16-cv-36, 16-cv-56, 2017 WL 5905575, at *2 (N.D. Fla. July 25, 2017), after concluding that criticizing the methodology of the plaintiff's expert was the proper subject of rebuttal expert testimony, the court excluded only a small portion of the rebuttal expert's report which criticized the plaintiffs' experts for using "hindsight bias" to reach their conclusions

---

[15] Gardemal Expert Report at 11, citing *Litigation Services Handbook, the Role of the Financial Expert.*
[16] Gardemal Expert Report at 12, Jefferson Parish Press Conference held by Jefferson Parish President Mike Yenni on July 23, 2018.
[17] April 18, 2024 Deposition of Jason Schellhaas, attached as Exhibit 2 to the Brillault Decl., 44:2-4; 45:12-23 (despite reading Jefferson Parish press conference transcript that "did make a comment that there are other business entities or operations that could … potentially impact or produce odors or smells," Schellhaas did not take that into account in his damages calculation.)

regarding a driver's reaction to street signs. Mr. Gardemal is not making any such commonsense critique – he applies economic damages methodology to the facts of the case, rather than accepting the unsupported and unexamined assumptions of counsel, and his criticisms of Mr. Schellhaas, like the expert in *deWit*, are proper expert rebuttal testimony.

## II.   Mr. Gardemal Does Not Offer Legal Conclusions.

Plaintiffs argue that Mr. Gardemal testifies as to issues of law, "even citing cases in his report."[18] Plaintiffs do not attempt to explain what legal conclusion Mr. Gardemal reached, because he emphatically did not reach any. Mr. Gardemal cites a court decision, along with generally accepted treatises, to establish, among other baseline principles of proper economic damages analysis, that "when determining whether expert testimony is sufficiently reliable, courts have also found that the trier of fact should consider whether the expert has adequately accounted for obvious alternative explanations for the alleged harm."[19] In other words, Mr. Gardemal is relying on the court decisions and treatises so that he understands what rules apply in order to properly assess damages in Louisiana: "[I]t is common in my world to look to the standards against which damages are measured. And so we would have looked to that document [Louisiana tort law section 7-1] to guide us in understanding … appropriate remedies … under Louisiana law."[20]

Instead of identifying the supposed legal conclusion, Plaintiffs offer a page-long string cite of cases that only support the unassailable principle that experts cannot make legal conclusions.

---

[18] Mot. at 8.

[19] Gardemal Expert Report at 11.

[20] Gardemal Dep. 24:2-8; *see also* Gardemal Expert Report at 10; *S10 Entm't & Media LLC v. Samsung Elecs. Co., Ltd.,* No. 21-cv-2443, 2023 WL 2090703, at *5 (C.D. Cal. Feb. 14, 2023) (allowing expert to testify utilizing methodology found in *The Comprehensive Guide to Economic Damages*); *cf Romac Envtl. Servs. LLC v. WildCat Fluids LLC*, No. 20-cv-581, 2022 WL 4389504, at *4 (W.D. La. Sept. 22, 2022) (finding damages expert not qualified where "he did not consult any of the relevant literature or other treatises.").

Simply citing to a case that reiterates the principles laid out in generally accepted treatises and which provide a framework for the expert's analysis is not a legal conclusion. "Testimony should not be excluded simply because … the testimony will touch on legal topics." *Woodard*, 2009 WL 140527, at *2. It is necessary for an expert to understand what kinds of damages are available and how they can be calculated under the law. The fact that Mr. Gardemal gained an understanding of the law related to damages in Louisiana is not the same as rendering a legal conclusion and Plaintiffs arguments are without merit.

## III.   Plaintiffs Mischaracterize Mr. Gardemal's Opinions Concerning the Paradise Manor Community Club.

Mr. Gardemal offers an affirmative opinion with respect to the impact of any alleged odors on the Paradise Manor Community Club. Mr. Gardemal reviewed the financial data for the Club and determined there was no decline in its revenue from 2016 through 2019. Based on this conclusion, it is Mr. Gardemal's expert opinion that the lack of any decline in the Club's revenue indicates that any alleged odors from JPLF or any other source did not have any significant impact on its operations, and thus its members' use of the Club. This issue is relevant because the Gremillion Plaintiffs testified that they could not use the Club due to odors from JPLF.[21]

To test the credibility of this allegation, Mr. Gardemal applied these alleged facts to the complex financial data of Paradise Manor, analyzed whether there was any explanation for any potential change in revenue, and made the conclusion that the odors did not have any significant impact on its operations because there was no discernable impact on Club revenue. Mr. Gardemal's analysis is not the subject of lay testimony, rather it is a well-qualified certified public account applying well established methodology and drawing a conclusion that will assist the trier of fact

---

[21] June 8, 2023 Deposition of Scott Gremillion, attached as Exhibit 3 to the Brillault Decl., 64:23-69:18; June 7, 2023 Deposition of Wendy Gremillion, attached as Exhibit 4 to the Brillault Decl., 33:9-21.

in understanding whether the allegations of loss of use and enjoyment have manifested themselves in any measurable way.

Plaintiffs blatantly misstate the opinion of Mr. Gardemal with respect to his opinion that the alleged odors had no clear impact on the operations of Paradise Manor Community Club, claiming that Mr. Gardemal concluded that "there were no odors."[22] Mr. Gardemal drew no such conclusion. Mr. Gardemal opined, after examining the revenues of the Club, that "odors from JPLF or any other source did not have any significant impact on [the Club's] operations."[23] In other words, Mr. Gardemal is speaking to the existence of damages from odors, not the existence of any odors themselves.

Finally, the fact that Mr. Gardemal has no particular expertise in "the operation of community clubs" is of no consequence.[24] Mr. Gardemal is an expert in damages, accounting, and valuation, and thus is qualified to testify as to financial impacts (or lack thereof) to a community club or any type of business. *VeroBlue Farms USA Inc. v. Wulf*, No. 19-cv-764, 2023 WL 348963, at *14 (N.D. Tex. Jan. 20, 2023) (damages expert qualified to testify as to financial issues in aquaculture industry in which they had no particular expertise).

## CONCLUSION

Mr. Gardemal is indisputably qualified to render an expert opinion on the calculation of damages. Plaintiffs' arguments related to his rebuttal opinions, which are informed by well-established methods for calculating damages, fail to establish that his rebuttal opinions are merely arguments that can be made by lawyers and have no merit. Furthermore, Mr. Gardemal's affirmative opinion with respect to the Paradise Manor Community Club is helpful to the trier of

---

[22] Mot. at 6-7.
[23] Gardemal Expert Report at 29-30.
[24] Mot. at 7.

fact in understanding whether the odors alleged in this case have manifested themselves in ways alleged by the Plaintiffs. Plaintiffs' motion should be denied in its entirety.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:    /s/ Michael C. Mims
        Michael Cash (#31655)
        Cherrell Simms Taplin (#28227)
        Michael C. Mims (#33991)
        Brady M. Hadden (#37708)
        J. Hunter Curtis (#39150)
        Alec Andrade (#38659)
        701 Poydras Street, Suite 5000
        New Orleans, Louisiana  70139
        (504) 581-7979


        BEVERIDGE & DIAMOND, P.C.

        Megan R. Brillault (*pro hac vice*)
        Michael G. Murphy (*pro hac vice*)
        John H. Paul (*pro hac vice*)
        Katelyn E. Ciolino (*pro hac vice*)
        Katrina M. Krebs (*pro hac vice*)
        825 Third Avenue, 16th Floor
        New York, NY 10022
        (212) 702-5400

        James B. Slaughter (*pro hac vice*)
        1900 N Street, NW, Suite 100
        Washington, DC 20036
        (202) 789-6000

        Michael F. Vitris (*pro hac vice*)
        400 W. 15th Street, Suite 1410
        Austin, TX 78701
        (512) 391-8035

        *Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

12

CONNICK AND CONNICK, LLC

By: ___/s/ Michael S. Futrell_____
      William P. Connick, La. Bar No. 14158
      Michael S. Futrell, La. Bar. No. 20819
      Matthew D. Moghis, La. Bar. No. 33994
      Anya M. Jones, La. Bar. No. 36923
      3421 N. Causeway Blvd., Suite 408
      Metairie, Louisiana 70002
      Telephone: (504) 681-6658
      Facsimile: (504) 838-9903
      E-mail: moghis@connicklaw.com

      *Counsel for Defendant Jefferson Parish*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing was electronically filed on June 13, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/ Michael C. Mims_____

OF COUNSEL

14