1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF LOUISIANA

3

4

ELIAS JORGE "GEORGE"            CIVIL ACTION
5  ICTECH-BENDECK                  NO. 18-7889 C/W 18-8071,
                                   18-8218, 18-9312
6

VERSUS                          SECTION E (5)
7

WASTE CONNECTIONS BAYOU,
8  INC., ET AL

9                RELATED CASE:

10

FREDERICK ADDISON, ET AL     CIVIL ACTION
11
VERSUS                       NO. 19-11133 C/W 19-14512
12
LOUISIANA REGIONAL LANDFILL
13  COMPANY (LRLC), ET AL        SECTION E (5)

14

15

16

VIDEOTAPED DEPOSITION OF JOHN KIND, PHD, CIH, CSP,
17  TAKEN IN THE LAW OFFICES OF LISKOW & LEWIS, 50TH
FLOOR, 701 POYDRAS STREET, NEW ORLEANS, LOUISIANA, ON
18  THE 1ST DAY OF MAY, 2024, COMMENCING AT 9:02 A.M. AND
CONCLUDING AT 6:24 P.M.

19

20

21

22  REPORTED BY:

23

              RUBY M. WALLEN
24            CERTIFIED COURT REPORTER

25



1   odors, that health conditions cannot be attributed to

2   the odors.  Right?

3        A.      You have to do the analysis and

4   eliminate the other potential causes of their

5   complaints before you can come to that conclusion.

6        Q.      Right.  But you agree, right, that the

7   mere fact that these commonly occur in the absence of

8   odors, does not by itself allow you to conclude that

9   the health conditions cannot be attributed to the

10  odorous emissions from the Jefferson Parish Landfill?

11       A.      In the abstract, it does not.

12       Q.      Okay.  All right.  And then we talk

13  about the confounders.  And let's look on Page 53.

14  Because you start, after this section you start

15  talking about some of the individuals.  Okay.  See

16  how, if you look on Page 53, you see a chart there of

17  the medication taken by   REDACTED   during the

18  relevant time period?

19       A.      Yes.

20       Q.      Okay.  And then you've got the alleged

21  injuries, anxiety, headaches, insomnia, vomiting and

22  nausea.  Do you see that?

23       A.      Yes.

24       Q.      And then you got medication taken by

25    REDACTED    that can cause the alleged injuries.



1    So, for example, under headaches you've got, you

2    know, you listed a number of medications here that

3    you say can cause headaches.

4          A.     Yes.

5          Q.     Okay.  How much and for how long do

6    you have to take any of these medications in order

7    for them to cause headaches?

8          A.     Well, that again is going to depend

9    upon the medication and the individual.

10         Q.     Okay.  Because one of the medications

11   that you listed here is Ibuprofen.

12         A.     Yes.

13         Q.     How does Ibuprofen cause headaches?

14         A.     Well, it is a known, it is a known

15   side effect of Ibuprofen dosing.

16         Q.     Right.  And if you take too much of it

17   and then you stop taking it, it can cause some

18   reactions.  Right?

19         A.     I don't know about that specifically.

20         Q.     Okay.  Now, the mere fact that there

21   are known doesn't mean that this actually caused the

22   headache in  REDACTED , does it?

23         A.     Again, that does not.  These are

24   things that should be considered in the analysis that

25   I was pointing out here.



1    Q.    So is it your opinion, then, that you

2  should, before you can determine that whether or not

3   REDACTED   headaches came from the Jefferson Parish

4  Landfill, we would have to figure out how many times

5  and how much Ibuprofen she took during the entire

6  relevant period?

7    A.    I think that is something that you

8  would want to consider as part of that analysis.

9    Q.    Okay.  So every time that she took

10  Ibuprofen because she had a headache, you would want

11  to do that before you could figure out if you think

12  she was actually smelling odors from the Jefferson

13  Parish Landfill?

14    A.    Well, you kind of changed the frame

15  there.  Whether she takes Ibuprofen has nothing to do

16  with whether or not she is smelling odors from the

17  landfill.

18    Q.    Right.  And it's your, as I understand

19  what you are trying to say, is that before you can

20  determine that the odors were coming from the

21  Jefferson Parish Landfill or the headaches were being

22  caused by the odors coming from the Jefferson Parish

23  Landfill, we'd have to figure out if the headaches

24  were actually being caused by every one of these

25  medications.  Is that right?



```
 1          A.      What I'm saying is you should consider
 2   these medications as potential causes of those
 3   headaches.
 4          Q.      Okay.  And who is it that should
 5   consider this?
 6          A.      That would be the people reaching
 7   specific causation opinions about that.
 8          Q.      Or the people who are saying, no, it
 9   is something else?
10          MS. BRILLAULT:
11               Object to form.
12          THE WITNESS:
13               I don't know how that --
14   BY MR. ROWE:
15          Q.      Okay.  Well, if the, if the plaintiff
16   in the case says, you know, I'm smelling these odors
17   from the landfill and, you know, and they are causing
18   me headaches.  And for the headaches I'm taking
19   Ibuprofen.  And we talked, and we don't have any
20   reason to suspect that it is the Ibuprofen that is
21   causing the headaches.  Okay.  That is what is being
22   taken for the remedy for the headaches.
23               Why would, why would the plaintiff in
24   the case have to put on evidence to say it is coming
25   from the landfill and I smelled it, and I smelled it
```



 1 | all the time, and I smelled it here and I smelled it
 2 | there.  Here is what happened to me.  But, you know,
 3 | I took, and I took Ibuprofen, you know, 25 times.
 4 | And here is my doctor who says that the Ibuprofen did
 5 | not cause my headaches.  Do you really have to go
 6 | that far?  Is that what your testimony is?
 7 |         MS. BRILLAULT:
 8 |                 Object to form.
 9 |         THE WITNESS:
10 |                 Again, my testimony would be that in
11 | order to come to a specific causation conclusion, you
12 | need to rule out and eliminate confounding causes of
13 | that condition.
14 | BY MR. ROWE:
15 |         Q.     Okay.  And when you reviewed the
16 | medical records, how often did  REDACTED  take
17 | Ibuprofen?  Could you tell from the medical record?
18 |         A.     I don't have a specific for that.
19 |         Q.     What about some of these other, you
20 | know, there is Baclofen, there is Bupropion, there is
21 | Celebrex?  Do you know how long she took any of those
22 | things?
23 |         A.     I don't have it summarized here.  I
24 | couldn't tell you off the top my head.
25 |         Q.     But you didn't undertake to look at



 1   any of those to see if there was an actual basis to

 2   conclude that any of these might actually be an

 3   alternate cause.  Right?

 4        A.      Well, again, the basis would be that

 5   she took the medications and those are known side

 6   effects of these medications.

 7        Q.      Right.  And did you, did anybody ask

 8   her, when you took Ibuprofen, did you have any side

 9   effects from it?  Do you know?

10        A.      I have not seen that information.

11        Q.      Okay.  And but you know that your

12   clients had IMEs done of all these people.  Right?

13        A.      They did.  Yes.

14        Q.      Did you advise them to ask about all

15   these medications and see if they had encountered any

16   of these side effects that you say might be there?

17        A.      I didn't speak with the IME doctors.

18        Q.      Okay.  Do you know if anybody did?

19        A.      I don't know.

20        Q.      Okay.  And is there, is there anywhere

21   in your report where you identify what it is, you

22   know, under what conditions these known side effects

23   of all these drugs exist?

24        A.      I did not get into that level of

25   detail.



```
1          Q.     Okay.  And so all you're, all you are
2   doing here is just listing things that are on the
3   known side effects list.  Right?
4          MS. BRILLAULT:
5                 Object to form.
6          THE WITNESS:
7                 This is a listing of the known side
8   effects of the drugs that they were taking at the
9   time.
10  BY MR. ROWE:
11         Q.     Okay.  And so you have no way of
12  knowing if  REDACTED  or anybody else of the
13  plaintiffs actually suffered from any of the side
14  effects from any of these drugs.  Right?
15         A.     Again, that was not part of my
16  analysis.  That was part of the analysis that should
17  be done in reaching a specific causation conclusion.
18         Q.     Okay.  Now, are you aware of any case,
19  in your entire experience, where a plaintiff had to
20  go through and eliminate every single known side
21  effect of every medication that they took in order to
22  establish general, specific causation relating to an
23  exposure?
24         MS. BRILLAULT:
25                Object to form.
```



```
1   BY MR. ROWE:
2        Q.      Are you aware of any case where that
3   happened?
4        A.      You know, evaluating potential side
5   effects from drugs and other lifestyle activities is
6   part of this analysis.
7        Q.      Well, my question was, are you aware
8   of any case in which anyone has actually done that?
9        A.      I've seen it addressed before.  Yes.
10       Q.      Okay.  When?  What case?
11       A.      I've seen it done multiple times over
12   the years.
13       Q.      Okay.  So what you are saying here is,
14   you know, we've got this list of 30 some medications,
15   all of which have known side effects.  You have no
16   way of knowing if any of the individual plaintiffs
17   actually suffered from the side effects.
18               And, but you are saying that the
19   plaintiffs should have gone through and eliminated
20   every potential side effect from every medication.
21   Is that right?
22       MS. BRILLAULT:
23               Object to form.
24       THE WITNESS:
25               Again, if you are going to conduct and
```



```
1   come up with an analysis and come up with those
2   opinions, you should consider the side effects from
3   the medications.
4   BY MR. ROWE:
5        Q.     And my question was, are you aware of
6   any case in which you have actually done that?
7        A.     You didn't ask if I had actually done
8   it.
9        Q.     Yeah.  I know.
10       A.     Others.
11       Q.     I know.  And I'm rephrasing my
12  question.  Is there any case in which you have
13  actually done that, where you have gone through the
14  list of medications and known side effects of every
15  single plaintiff to figure out if any of these other
16  things actually caused the injury?
17       A.     In other cases I've certainly done
18  what I've done here and pointed out medications and
19  side effects related to those.
20       Q.     Right.  And what you've done, all
21  you've done here, as I can tell, is listed drugs and
22  listed the potential side effects.  And my question
23  was whether you have ever gone the next step to see
24  if the plaintiff actually suffered from the side
25  effects, so that you can actually rule in or rule out
```



 1  these medications as an alternate source?

 2         MS. BRILLAULT:

 3              Object to form.

 4         THE WITNESS:

 5              Again, this is something that I've

 6  done in past cases, addressing the drugs and side

 7  effects.  I remember one in the past where somebody

 8  was taking ACE inhibitors and complaining of a

 9  persistent cough.  And that is a side effect of an

10  ACE inhibitor, for example.  Some of these are common

11  parts of this type of analysis.

12  BY  MR. ROWE:

13         Q.    Okay.  But you have listed not just

14  one, but dozens here.

15         A.    Well, it just depends on what they had

16  taken during that time.

17         Q.    Okay.  Did you in your analysis go

18  through and figure out, you know, if they took it for

19  a lengthy period of time, they took it one time?

20  They started and stopped, or they took it early on in

21  their treatment?  And, I mean, did you look at any of

22  that?

23         A.    I don't have that level of detail here

24  in this summary.  This, again, is just looking at

25  drugs that were taken during that time period.



1          Q.     Okay.  And so based on, on this, we
2     can't even really tell if any of these things are
3     actually confounders, to use your word, or not.
4     Right?
5          MS. BRILLAULT:
6               Object to form.
7          THE WITNESS:
8               Again, this is a list of potential
9     confounders during that time.
10    BY MR. ROWE:
11         Q.     Okay.  Is there anywhere where you
12    have identified actual confounders?
13         A.     I have not, again, taken this to that
14    next step, because that is not part of the analysis
15    that I did here.
16         Q.     Okay.  So all you are doing is
17    speculating on things that might be.  Right?
18         MS. BRILLAULT:
19               Object to form.
20         THE WITNESS:
21               I wouldn't call it speculation.  As
22    you know --
23    BY MR. ROWE:
24         Q.     Well, what is it?
25         A.     Again, it's listing the potential



1  confounders based upon what is known about these

2  medications.  It is not guessing that, you know,

3  headache can be part of a side effect from Ibuprofen.

4  That is a known side effect.

5       Q.     Okay.  But don't you need to know in

6  order to decide whether a particular other source can

7  be ruled in or ruled out, particularly ruled in, in

8  your case, that that actually happened?

9       A.     Again, my analysis was not to rule

10  these in. That is something that falls on the burden

11  of the, of your experts in this case.

12       Q.     Okay.  And what is your basis for

13  saying that?  You know, you said that a number of

14  times, that this burden is on the plaintiffs.  What

15  is your basis for saying that?

16       A.     Well, it is my understanding that it

17  is the plaintiffs' burden to establish that the

18  exposures from the landfill caused their complaints.

19  And this would be part, again, of that analysis.

20       Q.     Okay.  So is it your opinion that in

21  order to prevail in this case, the plaintiffs have to

22  eliminate every possible source, no matter how

23  speculative?

24       MS. BRILLAULT:

25            Object to form.

