UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>　　**Plaintiffs**<br><br>**VERSUS**<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br><br>　　**Defendants** | **CIVIL ACTION**<br><br>**NO. 19-11133, c/w 19-14512**<br><br>**SECTION: "E" (5)**<br><br>**JUDGE: Morgan**<br>**MAGISTRATE JUDGE: North** |

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PAOLO ZANNETTI**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

LEGAL STANDARD ...................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

   I. Dr. Zannetti's reliance on emission rate from Matthew Stutz is not a basis for exclusion. ................................................................................................................................... 2

   II. Plaintiffs' arguments go to the weight of Dr. Zannetti's opinions and not their admissibility. ............................................................................................................................. 5

CONCLUSION ................................................................................................................................ 7

**INTRODUCTION**

Plaintiffs' motion to exclude the expert testimony of Defendants' air dispersion modeling expert Dr. Paolo Zannetti constitutes a premature attempt to argue the weight of Dr. Zannetti's expert opinions disguised as a concern over reliability.[1] Plaintiffs' motion does not cite a single legal authority and selectively cites or misrepresents Dr. Zannetti's opinions and testimony in an attempt to manufacture a basis for exclusion that does not exist. Plaintiffs criticize Dr. Zannetti for relying on an emission rate input from defense expert Matthew Stutz—yet that is the exact approach adopted by Plaintiffs' air dispersion modeling expert James Lape in relying on an emissions input from Ramboll. The remainder of Plaintiffs' arguments are veiled challenges to Mr. Stutz's emission rate estimates or go to the weight of Dr. Zannetti's opinions, which are appropriately the subject of cross-examination and do not meet the Federal Rule of Evidence 702 standards to challenge admissibility. Plaintiffs' motion is premature and should be denied.[2]

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides that if an expert's technical knowledge will assist the trier of fact in understanding the evidence or determining a fact at issue, a qualified expert "may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002) (citing Fed. R. Evid. 702). "[T]he rejection of

---

[1] "Defendants" refers to Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US Inc. (the "Waste Connections Defendants"), Jefferson Parish, and Aptim.

[2] Plaintiffs are incorrect that "Dr. Zannetti based everything on Mr. Stutz." Pls. Br. at 2 (R. Doc. 559-1). Dr. Zannetti's Opinions 3, 4, and 5 rely on the emission inputs from Mr. Stutz. Dr. Zannetti's remaining opinions—Opinions 1, 2, and 6–10—are made independent of the emission rate input and are therefore not the subject of Plaintiffs' motion to exclude. In any event, a similar argument could be made for Mr. Lape that if the jury does not accept Ramboll's emission rates then Mr. Lape's modeling also falls.

expert testimony is the exception rather than the rule" and the court's position as gatekeeper should not substitute the role of the traditional adversary system or that of the jury. Fed. R. Evid. 702 advisory comm. notes (2000); *see also Scordill v. Louisville Ladder Grp., LLC*, No. 02-cv-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.). Additionally, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077-78 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Courts should not [be] lured by arguments disguised as *Daubert* challenges that actually attack the weight of the expert testimony, not its admissibility." *In re Katrina Canal Breaches Consol. Litig.*, Nos. 05-cv-4182, 10-cv-866, 2012 WL 4328354, *1 (E.D. La. Sept. 20, 2012) (Duval, J.).

## ARGUMENT

### I. Dr. Zannetti's reliance on emission rate from Matthew Stutz is not a basis for exclusion.

Plaintiffs do not challenge Dr. Zannetti's qualifications or methods, choosing instead to attack his testimony collaterally through a weight of the evidence argument. Dr. Zannetti is an atmospheric scientist with over fifty years of experience. He has authored well over 300 publications, including the first comprehensive book on air pollution modeling and a continually updated book series on air quality modeling. Throughout his career, Dr. Zannetti has been involved in over 100 complex legal disputes, including many class actions requiring him to simulate the ambient concentrations of chemical emissions. Dr. Zannetti has also presented and taught his studies in the United States and internationally.

Plaintiffs' attack on the emission rate inputs Dr. Zannetti used goes to the weight of the expert's opinion—it does not provide a basis for exclusion. *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 393 (5th Cir. 2002) (challenge to reliability of underlying data was an issue for cross-

examination); *Bailey v. Comcast of La./Miss./Tex., LLC*, 671 F. Supp. 3d 730, 734 (S.D. Miss. 2023) (denying a motion to exclude and holding, in part, that testimony is not subject to exclusion "solely because the expert did not personally participate in generating the report or personally . . . verify the underlying data"). The "facts or data" underlying an expert's opinion appropriately include the reliable opinions of other experts. Fed. R. Evid. 702 advisory comm. notes (2000).

The sole difference between the air dispersion modeling performed by experts for Plaintiffs (Mr. Lape) and Defendants (Dr. Zannetti) was the emission rate input used in their CALPUFF air dispersion models. Deposition Transcript of James Lape, taken April 22, 2024, appended to the accompanying Declaration of Michael C. Mims (dated June 13, 2024) ("Mims Decl.") as Exhibit 1 (hereafter "Lape Tr.") 49:24-50:11 (Mr. Lape agreed with Dr. Zannetti's CALPUFF modeling method, with the only difference being their emission rate). Neither Mr. Lape nor Dr. Zannetti have the expertise to calculate an emission rate from an area source like a landfill, and for that reason they each relied on other experts to provide them with the emissions input into their models.[3] Dr. Zannetti therefore relied on Mr. Stutz to provide emission rates for each of the three landfills for his modeling.[4]

It is well accepted that "an expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion." *Trinity Med. Servs., LLC v. Merge Healthcare Sols., Inc.*, No. 17-cv-592, 2020 WL 1309892, *8 (M.D. La. Mar. 19, 2020) (expert's reliance on data provided by other experts without independent verification not a basis for exclusion) (citation omitted). There is no

---

[3] *See* Lape Tr. 25:8-19 (Mr. Lape does not plan to testify about bases for Ramboll's emission rate estimate because he is not an expert in that area), 32:10-33:14 (Mr. Lape did not peer review Ramboll's emission rate estimate).

[4] Dr. Zannetti modeled emissions for all three landfills. Mr. Lape only modeled emissions from the JPLF.

basis under Rule 702 to exclude an expert with Dr. Zannetti's knowledge and experience for adopting an emission rate calculated by another expert, which is a widely accepted practice[5]—particularly when Plaintiffs' expert Mr. Lape has taken the same approach in relying on Ramboll's emission rate.

Plaintiffs also falsely assert that Dr. Zannetti "did nothing to verify" Mr. Stutz's emission rate. Pls. Br. at 2 (R. Doc. 559-1). Dr. Zannetti in fact conducted a partial validation of Mr. Stutz's emission rate estimates against the continuous air monitoring data collected at LDEQ's Waggaman Station in 2020. Deposition Transcript of Paolo Zannetti, taken April 25, 2024, appended to the Mims Decl. as Exhibit 2 (hereafter "Zannetti Tr.") 232:23-233:5; Zannetti Report § 9 (R. Doc. 559-2).[6] Plaintiffs selectively cited his testimony to omit that discussion. Dr. Zannetti further testified that the odor complaint analysis he performed in his 2021 report supported his assessment as to the reliability Mr. Stutz's results. Zannetti Tr. 108:14-109:2; 150:14-151:3.

Plaintiffs' arguments regarding Dr. Zannetti's reliance on Mr. Stutz's emissions are ill-placed in a *Daubert* motion and should be addressed on cross-examination.

---

[5] *See e.g.*, *Trinity*, 2020 WL 1309892 at *8-9 (denying the defendant's *Daubert* motion that argued, in part, that the expert "blindly" relied on the "unreliable" opinions of the plaintiffs' other experts and failed to independently verify the data provided by plaintiffs and their experts); *Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, No. 03-cv-189, 2004 WL 5495590, at *4-5 (W.D. Tex. Oct. 21, 2004) (denying *Daubert* motion and finding an expert's "unverified reliance" on another expert's data was proper and did not provide a basis for exclusion); *Legier & Matherne, Apac v. Great Plains Software, Inc.*, No. 03-cv-278, 2004 WL 1488597, at *2 (E.D. La. June 30, 2004) (Duval, J.) (denying a *Daubert* motion and disagreeing with the defendant's argument that an expert cannot satisfy Daubert's reliability requirement if he or she does not independently verify his or her reliance data). *See also* Zannetti Tr, 181:21-182:2, 183:3-184:10.

[6] Mr. Lape attempted a similar approach, albeit inadequate, in comparing his modeling results to LDEQ's MAML data from April 2018. Lape Tr. 32:10-33:14.

## II. Plaintiffs' arguments go to the weight of Dr. Zannetti's opinions and not their admissibility.

Plaintiffs' motion is otherwise directed at the weight to be accorded the facts and data Dr. Zannetti relied on in reaching his expert opinions. *See Trinity*, 2020 WL 1309892, at *5-6 (finding methodological objections were "really complaining about the sufficiency of the facts and data utilized and relied upon by" the expert, which went to weight and not admissibility) (citation omitted). Plaintiffs dash off a litany of conclusory arguments concerning Dr. Zannetti's emission rate input and circumstantial evidence to argue that Dr. Zannetti's opinions are not based on reliable data. Pls. Br. at 2-3 (R. Doc. 559-1). Plaintiffs can address each of these issues on cross-examination and their arguments as to weight are premature.

Plaintiffs falsely assert that Dr. Zannetti did not verify Mr. Stutz's emission rates. As discussed above, Dr. Zannetti performed a partial verification of Mr. Stutz's emission rates using off-site data, which Mr. Lape also attempted to do. While Plaintiffs criticize Dr. Zannetti's partial verification because it was made by comparison to data in 2020, Dr. Zannetti testified as to why this approach is reliable and the jury can judge the weight of this testimony. *See* Zannetti Tr. 226:24-227:25.[7] The Court has previously rejected Plaintiffs' argument that 2020 air modeling data has no relevance. *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-cv-7889, 2021 WL 5177827, at *4 (E.D. La. Nov. 8, 2021) (Morgan, J.) (denying motion to exclude Dr. Yocke's air modeling for months after the relevant time period and after alleged landfill improvements).

---

[7] The 2020 Waggaman measurements are relevant as they are the only continuous measurements of $H_2S$ taken in a residential community near the Jefferson Parish Landfill. Zannetti Report § 9. The measurements allow for an apples-to-apples comparison of modeled and actual $H_2S$ concentrations for the year 2020, confirming Dr. Zannetti's modeling approach is methodologically correct and providing a partial validation of Mr. Stutz's emission rates. *Id.* While the data comparison is made for 2020, it informs earlier periods due to similar meteorology and the combined emissions from the three landfills are almost constant between 2017 and 2020. *Id.* § 5; Zannetti Tr. 141:4-142:4, 238:24-239:11; *see also* Zannetti Tr. 240:7-19 (emissions from the three landfills must be considered together when comparing to Waggaman measurements).

Moreover, Dr. Zannetti did verify Mr. Stutz's emission rates even after Mr. Stutz corrected the rate of emissions from the Highway 90 C&D Landfill. Zannetti Report §§ 7, 9 (R. Doc. 559-2).

Plaintiffs suggest that Dr. Zannetti should have used or considered emission rates derived by other experts at the General Causation phase, none of which the Court adopted in its decision after the General Causation hearing. Plaintiffs will have the opportunity to question Dr. Zannetti at trial on the emission rates he used during specific causation compared to earlier phases of the case and to question Mr. Stutz on his methodology in calculating emissions from each of the three landfills. *See U.S. ex rel. Mitchell v. CIT Bank, N.A.*, 14-cv-833, 2022 WL 1226968, at *7 (E.D. Tex. April 26, 2022) (expert's amended opinions and error corrections do not justify exclusion and can be addressed on cross-examination). The jury can assess the weight of those other emission rates, but they do not present any flaw in Dr. Zannetti's opinions.

Plaintiffs next claim that Dr. Zannetti ignored circumstantial evidence such as statements made by LDEQ, improvements made at the Landfill, and odor complaints they claim undermine the reliability of his opinions. Plaintiffs do not specify how this information would impact the reliability of Dr. Zannetti's opinions, but once again many of their representations are false. For example, Plaintiffs assert that Dr. Zannetti "did not pay any attention" to improvements at the JPLF in 2019 and 2020. Pls. Br. at 3 (R. Doc. 559-1). In fact, Dr. Zannetti testified in response to Plaintiffs' questions that he "noticed a strong decrease in emission rates calculated by Stutz from 2019 to 2020" that he believes reflect work done at the Landfill. Zannetti Tr. 91:6-25; 105:2-15; 106:8-16. Plaintiffs assert that Dr. Zannetti's pollution roses should have included times with light or variable winds, but Dr. Zannetti explained at deposition that he did not include hours with light and variable winds in his pollution roses because that would not be a scientifically acceptable approach to plotting the pollution rose. *Id.* 120:17-122:2. Dr. Zannetti also repeatedly reminded

6

Plaintiffs that he had considered odor complaints and that he had in fact correlated odor complaints to the wind direction at the time of each complaint. *See, e.g., id*. 108:14-109:2, 244:5-14. Dr. Zannetti is the only expert in this case to have done so (*id*.), though Plaintiffs' experts rely extensively on the odor complaints as circumstantial evidence.

To the extent Dr. Zannetti did not address any of the specific evidence identified by Plaintiffs, this does not support the exclusion of his testimony, but goes to its weight. *See Gen. Elec. Cap. Bus. Asset Funding Corp.*, 2004 WL 5495590, at *6 (citing *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1307 (5th Cir. 1991) (denying a *Daubert* motion and finding that, although the expert had failed to account for additional expenditures in assessing damages and that his report was clearly incomplete, there was insufficient basis to exclude his testimony).

## CONCLUSION

Plaintiffs have failed to present a single argument regarding the reliability of Dr. Zannetti's methodology and data—rather they seek to usurp the role of the jury and have this Court prematurely determine the weight of his testimony. Due to Plaintiffs' failure to present any evidence of unreliability, their motion to exclude the testimony of Dr. Zannetti must be denied.

Respectfully submitted,

LISKOW & LEWIS, APLC

By: /s/ Michael C. Mims
Michael Cash (#31655)
Cherrell Simms Taplin (#28227)
Michael C. Mims (#33991)
Brady M. Hadden (#37708)
J. Hunter Curtis (#39150)
Alec Andrade (#38659)
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139
(504) 581-7979

7

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

CONNICK AND CONNICK, LLC

By:    /s/ Michael S. Futrell
       William P. Connick, La. Bar No. 14158
       Michael S. Futrell, La. Bar. No. 20819
       Matthew D. Moghis, La. Bar. No. 33994
       Anya M. Jones, La. Bar. No. 36923
       3421 N. Causeway Blvd., Suite 408
       Metairie, Louisiana 70002
       Telephone: (504) 681-6658
       Facsimile: (504) 838-9903
       E-mail: moghis@connicklaw.com

       *Counsel for Defendant Jefferson Parish*

8

9

        GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:   /s/ J. Michael DiGiglia
      Ernest P. Gieger, Jr. (6154)
      John E. W. Baay (22928)
      J. Michael DiGiglia (24378)
      Nicholas S. Bergeron (37585)
      Blaise Chadwick Hill (*pro hac vice*)
      Gieger, Laborde & Laperouse, L.L.C.
      Hancock Whitney Center
      701 Poydras Street, Suite 4800
      New Orleans, Louisiana 70139
      Telephone: (504) 561-0400
      Facsimile: (504) 561-1011

      *Attorneys for Defendant Aptim Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on June 13, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Michael C. Mims  
OF COUNSEL

10