# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | **NO. 19-11133, c/w 19-14512** |
| **VERSUS** | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| **Defendants** | **JUDGE: Morgan** |
| | **MAGISTRATE JUDGE: North** |
| *Applies to: All Cases* | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE OF OTHER SOURCES

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Argument ...................................................................................................................... 3

   I. Plaintiffs carry the burden on specific causation. ................................................. 3

      A. Plaintiffs are required to prove the JPLF was the cause-in-fact of Plaintiffs'
         injuries. ...................................................................................................... 4

      B. Evidence of other sources rebuts Plaintiffs' causation arguments. ........................... 5

      C. Potential odor sources within Plaintiffs' homes are relevant to the causation
         inquiry. ...................................................................................................... 7

      D. Affirmative defenses cannot be disposed of on a motion in limine. ......................... 7

   II. Evidence of other sources is for the jury to weigh. .............................................. 9

      A. Defendants have presented admissible evidence concerning other odor
         sources. ...................................................................................................... 9

      B. Defendants' rebuttal of damages claims is not inconsistent with the existence
         of other odor sources. ............................................................................... 11

      C. Other reports and statements highlight relevance of inquiry concerning
         alternative causes. ................................................................................... 13

      D. The Waste Connections Defendants discovery responses concerning other
         sources are sufficient. ............................................................................... 14

Conclusion ................................................................................................................. 16

## INTRODUCTION

In an attempt to bypass their burden on specific causation, Plaintiffs bring a procedurally improper motion seeking to exclude evidence of other odor sources in the Jefferson Parish region. Plaintiffs argue in circles admitting that other odor sources exist but arguing Defendants[1] have presented insufficient evidence concerning these sources—while at the same time trying to deprive Defendants of the opportunity to present any evidence on other sources at the upcoming trial. It is Plaintiffs' burden to prove that emissions from the Jefferson Parish Landfill ("JPLF") caused each of the Trial Plaintiffs' injuries and that they have adequately ruled out other potential causes. Defendants' evidence of multiple potential odor sources is directly relevant to this causation analysis and will be used at trial to challenge the purported link between JPLF emissions and Plaintiffs' injuries. The parties' competing evidence is for the jury to weigh; exclusion of evidence on other sources at this juncture would be an extraordinary step that would deprive the Defendants from presenting a defense on a critical element of Plaintiffs' case.

During the general causation phase, the Court limited evidence concerning whether other sources of odors contributed to Plaintiffs' injuries—finding that other sources were only relevant to the specific causation inquiry of "*did* the emissions from the Jefferson Parish Landfill cause the injuries individual Plaintiffs" allegedly suffered. (R. Doc. 97 at 8-10) (emphasis in original). The parties are now preparing to adjudicate specific causation for the first thirteen *Addison* Plaintiffs and a multitude of evidence in the case, including the evidence cited in Plaintiffs' motion, points to potential alternative causes of Plaintiffs' alleged odor impacts. Plaintiffs' largely factual

---

[1] "Defendants" refers to Defendant Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US Inc. (collectively, the Waste Connections Defendants), Defendant Jefferson Parish, and Defendant APTIM Corp.

arguments on this motion only serve to highlight that their objections are based on the weight to be afforded this evidence—and have no bearing on its admissibility.

Jefferson Parish is a densely populated region where residential areas are interspersed with industry. This includes active and closed landfills, including the two active landfills immediately adjacent to the JPLF, chemical plants, wastewater treatment plants, and grain loading and unloading operations along the river. At trial, Defendants will present evidence of these numerous non-landfill odor sources, including the types of emissions coming from their respective operations, the weather and wind conditions that placed the Trial Plaintiffs downwind of these sources during the relevant time period, and the proximity of these sources to the Trial Plaintiffs' residences (most of which are much closer than the JPLF). Defendants will also present emissions data and air modeling for potential impacts to each of the Trial Plaintiffs from the two immediately adjacent landfills—River Birch Landfill and Highway 90 C&D Landfill ("Hwy-90 Landfill"). This information and the nature of Defendants' contentions in this regard were disclosed during discovery and it will be the role of the jury to weigh this evidence at trial.

Plaintiffs argue that Defendants should be precluded from offering evidence of the other potential odor sources because they have not shown any specific alternative source is the cause-in-fact of Plaintiffs' injuries. But it is Plaintiffs that bear the burden of proving by admissible evidence that JPLF was more likely than not the source of their alleged exposures and injuries and to eliminate other potential causes as part of that analysis—something their experts made no attempt to do. Defendants are entitled to present relevant evidence to the jury bearing on whether Plaintiffs have met their burden. Weighing such evidence is the exclusive province of the jury. By seeking to preclude any evidence on these sources on the (improper) basis that Defendants have

not shown actual cause-in-fact, Plaintiffs in effect seek dispositive relief that is improperly raised on a motion in limine—and that involves an issue that is ultimately for the jury to decide.

It is inappropriate and prejudicial to remove the alternative causation question from the jury. It would ignore Plaintiffs' failure to meet their affirmative burden on causation and ignore the significant evidence demonstrating the multiple sources of odors impacting this region during the relevant time period. Plaintiffs have provided no evidentiary basis to warrant exclusion of this evidence and their motion should be denied.

## ARGUMENT

### I.  Plaintiffs carry the burden on specific causation.

In cases such as this one where there are multiple sources of odorous emissions in the Jefferson Parish region that, more likely than not, have impacted Plaintiffs, other odor sources are directly relevant to whether Plaintiffs have satisfied their burden to prove specific causation. It is not Defendants' burden to prove cause-in-fact for each of these alternative sources. Defendants have presented extensive fact and expert evidence to challenge the causal link between JPLF emissions and Plaintiffs' alleged harm. It would be highly prejudicial to preclude Defendants from challenging Plaintiffs' causation arguments or presenting alternative causes of Plaintiffs' injuries. It is the jury's role to weigh the parties' competing evidence and reach a verdict. *Scordill v. Louisville Ladder Grp., LLC*, No. 02-cv-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (court's "role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system"); *see also U.S. v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007) (exclusion of relevant evidence under Fed. R. Evid. 403 should be used "cautious and sparing").

### A. Plaintiffs are required to prove the JPLF was the cause-in-fact of Plaintiffs' injuries.

Evidence of both general and specific causation are the "minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Allen v. Pennsylvania Engr. Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) (citing *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105, 1107 (8th Cir.1996)). The general causation phase of this proceeding evaluated whether (i) odors and gases were emitted by the JPLF during relevant time period; and (ii) whether any such odors and gases were capable of causing the types of injuries alleged by Plaintiffs. However, during specific causation, Plaintiffs have the burden to prove the second causal step—whether odors and emissions from the JPLF were in fact the cause of the injuries complained of by each Trial Plaintiff. *Pick v. American Medical Systems, Inc.*, 958 F. Supp. 1151, 1164, 1173 (E.D. La. 1997) (Berrigan, J.) (summary judgment dismissal granted where Plaintiffs' admissible evidence failed to prove causation). Whether Plaintiffs have met their burden to prove this causal connection by a preponderance of the evidence is a factual question that must be resolved by the jury. *Laurent v. Jolly-Wright*, 2005-1499 (La. App. 4 Cir. 1/10/07), 950 So. 2d 47, 49.

The law on causation in Louisiana is clear: Plaintiffs' burden of causation requires "exclu[sion of] other reasonable hypothe[ses] with a fair amount of certainty, but this does not mean that it must negate all other possible causes." *Butler v. Baber*, 529 So. 2d 374, 378 (La. 1988), holding modified by *Inabnet v. Exxon Corp.*, 93-0681 (La. 9/6/94), 642 So. 2d 1243. As part of the causation inquiry, Plaintiffs are therefore required to rule out other potential causes of their injuries. *See Laurent*, 950 So. 2d 47, 49 ("the plaintiff has the burden of proving that his injuries were not the result of separate, independent and intervening causes").

**B.  Evidence of other sources rebuts Plaintiffs' causation arguments.**

Plaintiffs characterize Defendants' alternative source arguments as "affirmative defenses" and in effect request premature dispositive relief by seeking to preclude Defendants from offering any evidence on these sources.[2] In doing so, Plaintiffs misstate the law and confuse the parties' respective burdens. Plaintiffs bear the burden on causation, and defenses that challenge Plaintiffs' ability to make their *prima facie* case on causation are not affirmative defenses. *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, No. 16-cv-17039, 2020 WL 7480626, *2 (E.D. La. Dec. 18, 2020) (Milazzo, J.) ("because a plaintiff bears the burden of proof on causation, defenses relating to causation are not affirmative defenses"); *Couturier v. Bard Peripheral Vascular, Inc.*, 548 F. Supp. 3d 596, 612 (E.D. La. 2021) (Lemelle, J.) ("Where there is more than one possible cause to a plaintiff's alleged injuries, a defendant is permitted to present evidence as to any potential alternative and/or intervening causes").[3]

The Supreme Court of Louisiana has ruled that questions of "whether and to what extent a property was impacted by … an emission by one of the defendants or another source" are fundamentally questions "of causation and liability." *Price v. Martin*, 2011-0853 (La. 12/6/11), 79 So. 3d 960, 973 (citing *Ford v. Murphy Oil U.S.A., Inc.*, 96-2913 (La.9/9/97), 703 So. 2d 542, 549). "[P]otential alternative theories of causation" are inevitably probative of the key issue— plaintiff's ability to show that their injuries were "actually caused by the defendants." *Robinson v. Ethicon Inc.*, No. 20-cv-3760, 2022 WL 20689753 at *4 (S. D. Tex. Oct. 5, 2022) (motion in limine to exclude evidence as to fault of plaintiff or nonparties denied); *see also* Fed. R. Evid. 401

---

[2] To seek dispositive relief, Plaintiffs would need to make a more demanding showing than what they have presented here.

[3] This is reflected under the Louisiana Code of Civil Procedure where there is no "alternative cause" affirmative defense. *See* La. Code Civ. P. art. 1005. Rule 8 of the Federal Rules of Civil Procedure similarly does not list "alternative causes" as an affirmative defense. Fed. R. Civ. P. 8(c).

(evidence is relevant if it has any tendency to prove or disprove a fact of consequence in the case); Fed. R. Evid. 402 (there is a presumption that all relevant evidence is admissible absent specific exceptions).

To rebut Plaintiffs' causation evidence, Defendants are only required to show that some other source could have caused the injury—not that it actually did cause the injury. *Simon v. United States*, 51 F. Supp. 2d 739, 746 (W.D. La. 1999) (credibility determinative factor in jury's weighing of causation evidence). While Defendants have presented detailed fact and expert evidence regarding alternative sources, their ability to present evidence of alternative causes is not altered by Plaintiffs' claim that it does not prove cause-in-fact. *See Robinson*, 2022 WL 20689753, at *4 ("To the extent that the defense presents convincing alternative theories, the evidence is plainly admissible. To the extent that the defense attempts to make far-fetched alternative causation arguments, the Court is unworried that it would confuse and mislead the jury; rather, to the extent that the defense proffers preposterous alternative causes of the plaintiff's present injuries, they would only prejudice the jury against them."). Evidence of other sources is also relevant to the inquiry of whether Plaintiffs sufficiently ruled out other reasonable causes of their alleged harms. *See Butler v. Baber*, 529 So. 2d 374, 378 (La. 1988); *see also* Deposition Transcript of Susan Schiffman, taken April 26, 2024, appended to the accompanying Declaration of Michael C. Mims (dated June 13, 2024) ("Mims Decl.") as Exhibit 1 (hereafter "Schiffman Tr.") 74:6-17 (Plaintiffs' expert Dr. Schiffman did not review other potential odor sources because she was not asked to do so).

Plaintiffs cannot be allowed to rectify their experts' failure to sufficiently evaluate alternative sources by precluding the Defense from discussing it with the jury. While it is Plaintiffs' position that there is insufficient evidence that other causes contributed to their alleged injuries,

that is not a legally cognizable basis for wholesale exclusion of such evidence. Plaintiffs will be allowed to present their case on causation to the jury just as the Defendants will.

### C.  Potential odor sources within Plaintiffs' homes are relevant to the causation inquiry.

In addition to alternative odor sources within the community, there is also evidence that issues or conditions within Plaintiffs' homes may have contributed to the individual Plaintiffs' alleged harms.[4] Such evidence is directly relevant to the causation inquiry. *See Robinson*, 2022 WL 20689753, at *4 (motion in limine to exclude evidence that plaintiff or non-parties were negligent denied because alternative theories of causation went to plaintiff's burden of proof). It is not "victim blaming" to point to alternate theories of causation. *See* Pls. Br. at 16 (R. Doc. 553-1). Relevant evidence is admissible unless "its probative value is substantially outweighed by . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Ev. 402, 403. Plaintiffs have not established even one of these elements. Defendants are entitled to present this evidence to rebut Plaintiffs' case-in-chief and exclusion of such evidence would be tantamount to a grant of summary judgment for Plaintiffs.

### D.  Affirmative defenses cannot be disposed of on a motion in limine.

Defendants' affirmative defenses concerning intervening cause and allocation of fault also cannot be disposed of on a motion in limine—which Plaintiffs in effect seek to do by precluding evidence relevant to these issues. Courts throughout the Fifth Circuit have condemned the use of

---

[4] Defendants do not contend that odors generated inside individual Plaintiffs' homes were responsible for all odor complaints throughout the community, as Plaintiffs suggest. Pls. Br. at 16 (R. Doc. 553-1); *see also* Waste Connections Defendants Second Supplemental Interrogatory Responses, dated March 8, 2024, at 11 (R. Doc. 553-18) (identifying facts supporting contention that Plaintiffs contributed to their injuries). But surely information related to potential indoor sources are relevant to defending arguments that outdoor sources intruded, lingered, and accumulated inside the Trial Plaintiffs' homes. *See, e.g.,* Schiffman Report at 22 (R. Doc. 563-4).

motions in limine as a substitute for a motion for summary judgment. *Reuther v. Realtors*, No. 15-2850, 2016 WL 4592193 at \*2–3 (E.D. La. 2016) (Brown, J.) (motion in limine denied where it was being used to dispose of a party's ability to try their claims rather than asking the court to decide a discrete evidentiary issue); *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-cv-4182, 2009 WL 982104, \*1, 5 (E.D. La. 2009) (Duval, J.) (motion in limine denied where it would necessitate "a finding with regard to causation which would have to be the subject of a motion for summary judgment"); *see also* 21 Fed. Prac. & Proc. Evid. § 5037.18 (Wright & Miller 2d ed.) (motion in limine not intended as a substitute for summary judgment).

Plaintiffs cite to numerous cases to argue that Defendants' evidence of other sources is not relevant to the defenses of "intervening cause" and "allocation of fault," but the sufficiency of the evidence on these defenses is for the jury to decide. None of the authorities Plaintiffs cite involve motions in limine. All but one involve appeals from final judgment or judgment notwithstanding the verdict only after the jury had weighed the evidence and determined the parties' respective liability and fault. *See Adams v. Rhodia, Inc.*, 2007-2110 (La. 5/21/08), 983 So. 2d 798, 803 (appeal from jury verdict challenging allocation of fault based on jury's weighing of evidence); *Turner v. Nationwide Ins. Co.*, (La. Ct. App. 1987), 503 So. 2d 734, 735 (appeal of jury's damage award in auto accident case); *Lancon v. State Farm Mut. Ins. Co.*, 94-256 (La. App. 3 Cir. 10/5/94), 645 So. 2d 692, 693 (appeal of jury's allocation of fault in auto accident case); *Menard v. Federated Mut. Ins. Co.*, 2005-85 (La. App. 3 Cir. 6/22/05), 906 So. 2d 746, 748 (appeal of jury's apportionment of fault and damages award in auto accident case); *Willis v. Noble Drilling (US), Inc.*, 11-598 (La. App. 5 Cir. 11/13/12), 105 So. 3d 828, 834 (appeal of jury verdict; no evidence of third-party fault presented); *Granger v. United Home Health Care*, 2013-0910 (La. App. 1 Cir. 6/19/14), 145 So. 3d 1071, 1073 (appeal of judgment notwithstanding the verdict in medical malpractice cases

involving extensive weighing of the evidence); *Blake v. City of Port Allen*, 2014-0528 (La. App. 1 Cir. 11/20/14), 167 So. 3d 781, 787 (appeal of judgment in water damage case and analyzing bases for fact-finder's determination); *Landry v. Doe*, 2019-0880 (La. App. 1 Cir. 6/26/20), 307 So. 3d 1064, 1071 (appeal of judgment in medical malpractice action); *Bradbury v. Thomas,* 98-1678 (La. App. 1 Cir. 9/24/99), 757 So. 2d 666, 669 (appeal of jury verdict in medical malpractice action). Plaintiffs' remaining citation is to a motion for summary judgment on comparative fault, which motion was denied and the issue sent to the jury. *Osgood v. Branam Enterprises*, No. 97-cv-3713, 2000 WL 1789982 (E.D. La. 2000) (Vance, J.).

## II.  Evidence of other sources is for the jury to weigh.

In the absence of a legal argument to warrant exclusion of highly probative evidence on other sources, Plaintiffs' brief focuses almost entirely on factual arguments about the weight of the evidence. *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir.1996) (conflicting opinions about the bases and sources of an expert's opinion affect the weight of the opinion rather than its admissibility "and should be left for the jury's consideration") (citations omitted). Plaintiffs' in-depth review of the evidence addressed in their motion only serves to highlight the credibility and weight of the evidence determinations that are within the province of the jury—and confirms the relevance of evidence of other sources, including Plaintiffs' failure to consider the same, rather than supporting its exclusion. Plaintiffs otherwise oversimplify and mischaracterize Defendants' defenses concerning other odor sources.

### A.  Defendants have presented admissible evidence concerning other odor sources.

Plaintiffs first argue that Defendants have not demonstrated that Plaintiffs were "actually exposed" to odors from any of the potential sources. While Defendants need not prove cause-in-fact, Defendants have presented significant evidence of other potential odor sources that fit within

the Trial Plaintiffs' claims of odors that are more frequent than even Plaintiffs' own modeling predicts.

For example, Dr. Zannetti modeled predicted $H_2S$ concentrations from the River Birch Landfill and Hwy-90 Landfill. Zannetti Report at 49-52 (R. Doc. 559-2). Dr. Zannetti's modeling shows that $H_2S$ emissions from Hwy-90 Landfill are predicted to be three times higher than those from the other two landfills. Dr. Zannetti presented results for each of the Trial Plaintiffs, such as Plaintiff Green who was predicted to have experienced 161 thirty-minute periods above the 5 ppb reference level from Hwy-90 Landfill in 2017, 338 periods in 2018, and 264 periods in 2019. *Id*. at 52, Table 11 (R. Doc. 559-2).

Air modeling results are also the same type of evidence Plaintiffs intend to use to prove that $H_2S$ emissions from the JPLF were the cause-in-fact of the Trial Plaintiffs' claimed injuries. Plaintiffs' air dispersion modeling expert James Lape admits that air modeling only *predicts* $H_2S$ levels outdoors at a particular location—it does not show *actual* exposures. Deposition Transcript of James Lape, taken April 22, 2024, appended to the accompanying Declaration of Michael C. Mims (dated June 13, 2024) ("Mims Decl.") as Exhibit 2 (hereafter "Lape Tr.") 34:16-25, 156:10-21 (opinions based on predicted exposures and not on any person's actual experience).

Defendants have also presented expert evidence from defense experts Michael Corn (environmental engineering and fate and transport expert) and John Kind (toxicology, odor science, and fate and transport expert) who identified numerous non-landfill industrial and municipal facilities in and near Jefferson Parish that more likely than not impacted the Trial Plaintiffs at their homes. Mr. Corn provided a detailed analysis of 15 non-landfill sources, the chemicals released, the physical and chemical characteristics of those emissions and their potential for impacts consistent with Plaintiffs' alleged injuries, discussion of known permitted,

unpermitted, and non-regulated releases from those facilities, and the influence of distance, wind direction and wind speed on the likely transport of those emissions to Trial Plaintiffs' homes. Corn Report at 11, 27-30, 32-119.[5] Dr. Kind further presented an in-depth analysis of Plaintiffs' testimony, weather data, and other potential confounding factors, among other fact and expert evidence to opine on the likelihood that Plaintiffs' reported odors were attributable to the JPLF as opposed to other potentials sources and causes. Kind Report (R. Doc. 550-2). Both experts opined that the odors alleged by Plaintiffs were more likely than not from numerous sources and not solely the JPLF on a Plaintiffs-specific basis. Corn Report at 10 (Ex. A); Kind Report at 9 (R. Doc. 550-2).[6]

### B.  Defendants' rebuttal of damages claims is not inconsistent with the existence of other odor sources.

Plaintiffs next argue that Defendants are claiming that Plaintiffs did not suffer any injury from any source, and therefore evidence of other odor sources is inapposite. Pls. Br. at 2-3 (R. Doc. 553-1). This is wrong. Defendants' medical and damages experts are not opining as to whether or not any odor existed; they are instead opining as to whether or not damages exist; that is, whether in their opinions, there is sufficient evidence that Plaintiffs have suffered damages as a result of exposure to alleged odors emanating from the JPLF. Plaintiffs claim that these positions are mutually exclusive, but only because Plaintiffs presuppose that Plaintiffs have suffered a cognizable injury in the first instance—an issue Plaintiffs will have the burden to prove at trial.

---

[5] The Corn Report is attached to the accompanying declaration of Michael C. Mims as Exhibit 3.

[6] Plaintiffs selectively cite to deposition testimony of the defense experts to argue that none of the experts could offer insight into which emission sources were alleged to have caused Plaintiffs' alleged injuries. Pls. Br. at 11 (R. Doc. 553-1). Defendants will not engage with each misstatement, however Plaintiffs' characterization misconstrues the experts' testimony, at times represented questioning on topics outside the experts' area of expertise, and overlooks the significant fact and expert evidence Defendants have presented on alternative causes of Plaintiffs' alleged injuries—evidence that is for the jury to weigh.

*See id.* Plaintiffs otherwise misrepresent the evidence and repeat many of the arguments they make in their motions to exclude each of the Defendants' experts.

Plaintiffs blatantly misstate the opinion of Mr. Gardemal with respect to his opinion that the alleged odors had no clear impact on the operations of Paradise Manor Community Club, claiming that Mr. Gardemal concluded that "there were no odors." Pls. Br. at 3 (R. Doc. 553-1). As explained in response to Plaintiffs' motion to exclude the opinions of Mr. Gardemal, Mr. Gardemal drew no such conclusion. Mr. Gardemal concluded, after examining the revenues of the Paradise Manor, that "odors from JPLF or any other source did not have any significant impact on its operations." Gardemal Report at 6 (R. Doc. 546-2). In other words, Mr. Gardemal is speaking to the impact of any odors, not the existence of any odors.

Likewise, Dr. Brobson Lutz's analysis looks at which Plaintiffs were suffering medical symptoms, and whether in his opinion, it was more likely not from an odor-related cause; he does not opine on whether any Trial Plaintiff was exposed to odors. Lutz Report at 5-8.[7] Defense expert Baldwin Justice's opinion that the market data does not show that there was a materially *worse* or *new* odor that presented itself during the relevant time period that affected enjoyment of property, i.e., whether there was objective proof of damages, similarly does not mean there were no odors or other sources of odors. *See* Justice Report at 12-55 (R. Doc. 549-2). It simply means that any odors were not materially different from what residents were already accustomed to, or any such new odors did not materially affect the enjoyment of the property. *Id.*

---

[7] R. Doc. 554-4.

12

### C.  Other reports and statements highlight relevance of inquiry concerning alternative causes.

Plaintiffs also cite to several documents and public statements to argue that they prove that there are no sources of odors that are the cause of the Trial Plaintiffs' injuries other than JPLF. Plaintiffs' cherry-picked documents and mischaracterizations do not provide the full story, but in any event, Plaintiffs' argument is nothing more than a weight of the evidence issue that should be made to the jury and has no bearing on admissibility. As briefly described below, each of these pieces of "evidence" undermine Plaintiffs' causal link.

For example, at the July 23, 2018 press conference Parish officials stated that they did not believe all odors were coming from the JPLF and that for the JPLF to cause the symptoms complained of on the East Bank you would expect a "death zone" at or near the Landfill. Pl's Ex. 1 at 11, 27-28 (R. Doc. 553-2). The Louisiana Department of Health's October 2018 draft report refers to odors from "the landfills," does not distinguish the JPLF from the two adjoining landfills, and includes discussions of other sources contributing to odors in the neighborhoods. Pl's Ex. 12 at 16 (R. Doc. 553-13). And LDEQ Secretary Chuck Carr Brown's December 2018 presentation to the Jefferson Parish Council stated that LDEQ's sampling had only detected "low concentrations" of $H_2S$ and that the JPLF was not necessarily the only source of odors in the area. Pl's Ex. 13 at 2-3 (R. Doc. 553-14). Large portions of Secretary Brown's statements were also focused on particulates and emissions from midstream loading and grain operations along the river and other odor sources. *Id.*

Plaintiffs next raise multiple drafts of the Jefferson Parish Landfill Site Evaluation with Respect to Odors prepared by SCS Engineers ("SCS") and a related press release. Pls. Br. at 6-7 (R. Doc. 553-1). However, SCS's report took $H_2S$ measurements downwind of potential odor sources, identifying multiple specific alternative sources based on measured data and noting that

the highest concentrations measured during its study were downwind of the Hwy-90 Landfill. Pl's Ex. 10 at 12-23 (R. Doc. 553-11). Plaintiffs also raise a draft technical memorandum prepared for Louisiana Regional Landfill Company by NCM Odor Control. Pls. Br. at 5 (R. Doc. 553-1). This 11-page draft of a preliminary analysis based on observations during a four-day site visit to the region was never completed and Defendants do not intend to rely on the draft memorandum at trial (it has never even been on their potential trial exhibit list). The draft was originally withheld as privileged and only produced to Plaintiffs while reserving all objections to avoid burdening the Court with additional discovery disputes, it but in any event describes odors from the other non-JPLF sources.

### D. The Waste Connections Defendants discovery responses concerning other sources are sufficient.

The Waste Connections Defendants' evidence and contentions with respect to alternative odor sources were disclosed during discovery, including in the Waste Connections Defendants' interrogatory responses.[8] Plaintiffs accuse the Waste Connections Defendants of providing interrogatory responses that were untruthful or insufficient. Not only are these accusations unfounded, premised on Plaintiffs' erroneous interpretation of Louisiana law and the parties' respective burdens in this case, but the arguments have no place in a motion in limine.[9] Once again, Plaintiffs are seeking to shift the burden of proving causation because their experts have failed to assess and rule out other alternative causes of odors.

---

[8] The operative interrogatory responses concerning other sources are the Waste Connections Defendants March 15, 2024 responses. (R. Doc. 553-19).

[9] Plaintiffs' accusations of false swearing by the Waste Connections Defendants are baseless, inappropriately raised on a motion in limine, and should be stricken from the record. *See* Pls. Br. at 12, n.9 (R. Doc. 553-1).

Plaintiffs' Interrogatory #1 requested that the Waste Connections Defendants "identify each and every 'other source' of gases and emissions to which You contend the Plaintiffs were exposed in this case." (R. Doc. 553-19 at 5). The Waste Connections Defendants responded with a citation to supporting expert reports and a list of specific sources (with addresses) that "have emitted odors, gases, dust, or particulates into areas within Jefferson Parish" and stated that "it is more likely than not that Plaintiffs were exposed to odors, gases, dust, and particulates from one or more" of those sources. *Id.* at 6. Plaintiffs contend that the Waste Connections Defendants' response does not identify any sources of odors to which Plaintiffs were "actually exposed." While the Waste Connections Defendants maintain that their response is sufficient, proving "cause-in-fact" is not Defendants' burden and in any event is not what Plaintiffs requested in the interrogatory.[10] *See Who Dat Yat Chat, LLC v. Who Dat, Inc.*, No. 10-cv-1333, 2011 WL 6937509, at *3 (E.D. La. Dec. 28, 2011) (Roby, J.) (motion to compel denied where it was an attempt to modify the actual interrogatory propounded).

Plaintiffs' Interrogatory #2 requested that "With respect to each emission from each 'other source' that you contend caused the injuries complained of by Plaintiffs instead of, or in addition to, emissions from the Jefferson Parish Landfill, please state: (a) The chemical substance that you contend caused the injury; (b) The dates, times, durations and concentrations of each emission; and (c) The contact information of persons with knowledge of the emissions." (R. Doc. 553-19 at 7). The Waste Connections Defendants provided a detailed, six-page response to the interrogatory identifying the Waste Connections Defendants' contention with respect to each subpart of the

---

[10] The Waste Connections Defendants objected to Interrogatory #1 on multiple grounds, including that the phrases "'other sources' of gases and emissions" and "Plaintiffs were exposed" are overbroad, vague, ambiguous, and contain undefined terms, including "Plaintiffs" and "emissions." (R. Doc. 553-19 at 5). The Waste Connections Defendants could not object to the term "actually exposed" because it was not propounded in the interrogatory.

request and identifying supporting evidence. *See Pea v. City of Ponchatoula*, No. 13-cv-0542, 2014 WL 458071, at *4 (E.D. La. Feb. 4, 2014) (Roby, M.J.) (interrogatory response identifying document containing information responsive to request sufficient). Plaintiffs' claim that the response is insufficient is again based on a misstatement of Defendants' expert arguments and their misunderstanding of the applicable law.

## CONCLUSION

Plaintiffs' motion to exclude evidence of other sources is premised on the false assertion that Defendants must prove "cause-in-fact" in order to present evidence of alternative causes of Plaintiffs' alleged injuries at trial. Plaintiffs' motion is nothing more than an attempt to shirk Plaintiffs' own burden of proof on causation and seek procedurally improper dispositive relief. Evidence of other sources is highly probative to the issue of whether Plaintiffs have met their burden of proof on causation and Plaintiffs' arguments only serve to highlight the relevance of the evidence and the importance that it is presented to the jury. It will be the role of the jury to weigh the parties' competing evidence at trial and to prematurely preclude such evidence would result in grave prejudice and deprive Defendants of the ability to present a defense in this case.

Respectfully submitted,

LISKOW & LEWIS, APLC

By: /s/ Michael C. Mims
     Michael Cash (#31655)
     Cherrell Simms Taplin (#28227)
     Michael C. Mims (#33991)
     Brady M. Hadden (#37708)
     J. Hunter Curtis (#39150)
     Alec Andrade (#38659)
     701 Poydras Street, Suite 5000
     New Orleans, Louisiana  70139
     (504) 581-7979

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc*

CONNICK AND CONNICK, LLC

By: /s/ Michael S. Futrell
William P. Connick, La. Bar No. 14158
Michael S. Futrell, La. Bar No. 20819
Matthew D. Moghis, La. Bar. No. 33994
Anya M. Jones, La. Bar. No. 36923
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6658
Facsimile: (504) 838-9903
E-mail: moghis@connicklaw.com

*Counsel for Defendant Jefferson Parish*

GIEGER, LABORDE & LAPEROUSE, L.L.C.

By: /s/ J. Michael DiGiglia
Ernest P. Gieger, Jr. (6154)
John E. W. Baay (22928)
J. Michael DiGiglia (24378)
Nicholas S. Bergeron (37585)
Blaise Chadwick Hill (*pro hac vice*)
Gieger, Laborde & Laperouse, L.L.C.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

*Attorneys for Defendant Aptim Corp.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing was electronically filed on June 13, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

 /s/ Michael C. Mims
OF COUNSEL

19