UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**  Plaintiffs  V.  **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**  Defendants  *Applies to: Both Cases* | CIVIL ACTION  NO. 19-11133, c/w 19-14512  SECTION: "E" (5)  JUDGE: Morgan  MAGISTRATE JUDGE: North |

### PLAINTIFFS' RESPONSE TO DEFENDANT STATEMENT OF MATERIAL FACTS RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON NEGLIGENCE CLAIMS

Plaintiffs respond as follows to Defendants' statement of material facts. None are sufficient to sustain a motion for summary judgment.

**DEFENDANTS' FACT #1.** Plaintiffs assert nuisance claims and traditional negligence claims for the alleged annoyance and medical symptoms that they attribute to exposure to odors and gases allegedly emitted from the Jefferson Parish Landfill ("JPLF") from 2017 through 2019.[fn]

[fn]Plaintiffs' Second Amended Omnibus Complaint For Damages And Injunctive Relief, R. Doc. 431, para. 35

**PLAINTIFF'S RESPONSE:** Apart from the fact that the annoyance and medical symptoms in fact occurred and odors and gases in fact were emitted (facts not germane to Defendants' motion), to the extent this refers to the claims asserted (and the footnote refers to the Complaint), this is not disputed.

**DEFENDANTS' FACT #2.** Plaintiffs retained Jose Sananes, PE ("Mr. Sananes") as their sole liability expert to testify as to alleged breaches of duty by the Defendants.

**PLAINTIFF'S RESPONSE:** Plaintiffs object to the reference to "sole liability expert." As explained in Plaintiffs' opposition, expert testimony is not required on every issue bearing upon the liability of the Defendants. Plaintiffs do not dispute that they retained Mr. Sananes as an expert and that Mr. Sananes, along with other witnesses, will testify to the Defendants' breach of duty in this case.

**DEFENDANTS' FACT #3.** In his report, Mr. Sananes opines on the duties and standards of care allegedly applicable to landfill owners and operators and the alleged breaches of those duties by the Defendants in this case, but does not opine on the issue of to whom those duties are owed or the foreseeability of any of the harm allegedly suffered by the Trial Plaintiffs.[fn] [fn]See the February 16, 2024 Expert Report of Jose Sananes, attached [to Defendants Statement as Exhibit A at 50-65.

**PLAINTIFF'S RESPONSE: Disputed.** Plaintiffs object to this purported fact as being entirely irrelevant because the issue of to whom duties are owed present an issue of law on which experts cannot opine. Plaintiffs agree that Mr. Sananes has opined on the duties and standards of care allegedly applicable to landfill owners and operators and the alleged breaches of those duties by the Defendants in this case. Plaintiffs do ***not*** agree that Mr. Sananes "does not opine on the issue of to whom those duties are owed or the foreseeability of any of the harm allegedly suffered by the Trial Plaintiffs." Mr. Sananes' report mentions foreseeability no less than 12 times, and discusses the foreseeable harm to "neighboring individuals" (i.e., the parties to whom duties are owed). *See* Report Section 6.5 beginning on page 14-15 ("Jefferson Parish failed to ensure that Waste Connections,

2

its landfill operator, operated and maintained the landfill gas collection and leachate collection systems so as to prevent noxious odors from escaping from the landfill, *foreseeably affecting neighboring individuals…* This failure resulted in adverse impacts to the gas collection system, which in turn caused noxious odors to escape from the landfill, *foreseeably affecting neighboring individuals*. …(Page 15) Aptim, the operator of the landfill gas collection system, failed to ensure that it was operated and maintained so as to prevent noxious odors from escaping from the landfill, *foreseeably affecting neighboring persons…* Jefferson Parish and Waste Connections co-disposed sulfur-containing materials, such as spent lime, with MSW, *which have the well-known reasonably foreseeable potential to generate noxious odors that would escape the landfill and affect neighboring individuals…* (Page 58) In general, a landfill owner or operator must exercise reasonable care to prevent noxious odors from escaping its property and/or landfill and *foreseeably affecting neighboring individuals….* (Page 60) ("[They] failed to take corrective action, thereby, *foreseeably causing noxious odors to escape the landfill and harm neighboring individual*s… Jefferson Parish failed to ensure that Waste Connections, its landfill operator, or Aptim, its landfill has collection system operator, operated and maintained the landfill gas collection and leachate collection systems so as to prevent noxious odors from escaping from the landfill, *foreseeably harming neighboring individuals….* This failure resulted in adverse impacts to the gas collection system, which in turn caused noxious odors to escape from the landfill*, foreseeably harming neighboring individuals…* Furthermore, given the deficiencies in the leachate and gas collection systems, Waste Connections did not undertake other odor control measures to ensure that noxious odors did not escape from the landfill, *foreseeably harming neighboring*

3

*individuals*…Aptim, the operator of the landfill gas collection system, failed to ensure that it was operated and maintained to prevent noxious odors from escaping from the landfill, *foreseeably harming neighboring persons*.   (Page 62) "Jefferson Parish and Waste Connections disposed of sulfur-containing materials, such as spent lime or fly ash, with MSW, which have the *reasonably foreseeable potential to generate noxious odors that could escape the landfill and affect neighboring individuals*.").

Defendants asked Mr. Sananes about these statements in his deposition, beginning on page 71:

> Q In paragraph 40(b)i, you note that Jefferson Parish failed to ensure that Waste Collections, its landfill operator, operated and maintained the landfill gas collection and leachate collection systems so as to prevent noxious odors from escaping from the landfill, foreseeably affecting neighboring individuals."
> Do you see that?
> A Yep.
> Q First of all, in the -- in paragraph a), you note -- you say -- you conclude your paragraph by saying "thereby causing noxious odors to escape the landfill and harm the neighboring individuals," and then in (b)i you say "foreseeably affecting the neighboring individuals." Do you see those two words? A Yeah. Q Do you mean different things by those two words?
> A I don't believe so.
> Q That was an elegant variation?
> A I don't know if it's elegant, but a variation I guess.
> Q How do you define "neighboring individuals"?
> A Neighboring individuals are -- in the case of -- in the case of gas is anybody that can perceive the odors of that gas from the landfill is -- is a neighbor. You know, it doesn't have to be your immediate, you know, adjoining property owners. As you know, gas travels, and anybody that perceives it could be affected -- an affected individual.
> Q So you're using the word "neighbor" here differently than you might use the word "neighbor" to describe people who live near you?
> A In the way -- I think the "neighborhood" definition is just a little bit broader. So the people that are adjacent to you are still your neighbors, it doesn't take that away, but in the context of landfill gas, if -- if that neighborhood -- that neighborhood extends beyond your immediate property owner because the gas doesn't stop, gas doesn't know who owns what lot, it's just going to move.

Defendants then asked Mr. Sananes in his deposition, **page 73,** "How far away from a landfill is harm foreseeable to the municipal solid waste landfill?" He answered "Well, certainly your adjoining properties. To the extent that there's any complaints that are received, you know, the record shows that there's plenty of concerns that are emanating from all throughout the area, *those would be foreseeable neighbors*, at least gives you warning that something may be happening that people are complaining about operations." The Report and the Deposition are attached Exhibits 13 and 21 to Plaintiffs' Opposition.

**DEFENDANTS' FACT #4:** Mr. Sananes confirmed in deposition that he has not formed an opinion as to whether the harm to any individual Trial Plaintiff was foreseeable.[3] [3]See transcript of April 10, 2024 deposition of Jose Sananes, attached hereto as Exhibit B at 75:19-76:1.

**PLAINTIFF'S RESPONSE: Disputed.** Mr. Sananes was not asked in his deposition whether he had formed an opinion as to whether the harm to any individual Trial Plaintiff was foreseeable. What he was actually asked and what Mr. Sananes actually said in the quoted portion of the transcript was this:

> Page 75
> 19 Q Have you ever advised an operating a
> 20 municipal solid waste landfill on the scope of
> 21 foreseeable harm due to odors?
> 22 A No.
> 23 Q Do you plan to testify in this case as
> 24 to a specific distance from the landfill within which
> 25 harm is foreseeable?
> Page 76
> 1 A No.

**DEFENDANTS' FACT #5:** In February 2024, the Court issued its Thirteenth Case Management Order providing that all expert discovery must be completed by April 30, 2024, and all expert depositions have been completed.[5]

**PLAINTIFFS' RESPONSE.** Not disputed.

5

**DEFENDANTS' FACT #6:** Plaintiffs have produced no expert evidence regarding the scope of the Defendants' duty and the foreseeability of the Plaintiffs' harm.

**PLAINTIFFS' RESPONSE. Disputed** Plaintiff object to the purported fact because, even if true, it is not relevant. As explained in Plaintiff's Opposition Brief, expert testimony is not required to establish either the scope of the duty or foreseeability. Moreover, this case involves a landfill, and landfills emit odors. It is entirely foreseeable that residents in neighboring communities will be able to smell the odors and be affected by them—that's why the duty to prevent and control odors exists to begin with. This common-sense conclusion is within the experience of everyday people.

Experts for both sides have calculated historical wind data and used it to model the dispersion of the odors into surrounding communities. See Reports of James Lape and Dr. Paolo Zannett, and Defendants themselves contend that each of the Plaintiffs was downwind of the Landfill for a certain percentage of the time. See Expert Report of Dr. John Kind.

In 2006, the Parish commissioned the engineering firm of Camp, Dresser & McKee (CDM) to prepare and Odor Control Management Program. **Exhibit 16.** The CDM Report recommendations included having a proactive system to respond to complaints, including a hotline, "Daily odor monitoring in surrounding areas and neighborhoods," and an outreach program. Id. at *036. And during the time Waste Connections was the operator, they set up an odor hot line, organized and conducted odor patrols, created odor reports and attended community meetings. *See*, *e.g*., Exhibit 17 Dawn Thibodaux email history of the hotline (WC_JPLF_00413912); Exhibit 18 (minutes of meeting of Waggaman Civic Association with Parish and Progressive Waste in attendance, six months before the spent

6

lime was accepted), Exhibit 19 (2015 Annual Odor Report); Exhibit 20, Odor Control Plan from Waste Connections 2012 contract. Defendants certainly knew that odors could affect the community. If it were not foreseeable that odors could leave the Landfill and affect the communities, there be no need for any of this.

The LDEQ Regulations define "landfill" as "a facility for the disposal of solid waste … in a manner that protects human health and the environment." 33 LA ADC Pt. VII § 115. Landfills like the Jefferson Parish Landfill are required to have an "area master plan" that includes "the location of the closest population centers," 33 LA ADC Pt. VII § 709.A.1.e., and are required to provide information to LDEQ regarding .the percentage existing land use in a three-mile radius including land-use for residential, health care facilities, schools, and recreational activities. Id. at § 709.A.5. *See id.*, § 709.A.9 ("A statement of the estimated population, the source of the estimation, and the population density, within a 3-mile radius of the facility boundary is required for all facilities."). These regulations, likewise, would be unnecessary if the escape of odors into the community could not be foreseen.

Respectfully submitted, this 13th of June. 2024.

        /s/ S. Eliza James
FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com

eliza@fcjlaw.com

    /s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

Harry S. Johnson, (Admitted Pro Hac Vice)
James R. Jeffcoat (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636
(410) 347-8700
hjohnson@whitefordlaw.com
jjeffcoat@whitefordlaw.com
*Counsel For Addison Plaintiffs*