05/25/2012 08:57:29 AM JEFF PAR 3245157 row $518.00
11223564 MORTGAGE BOOK 4531 PAGE 319

## CONTRACT TO PROVIDE SERVICES
## TO OPERATE, MANAGE, AND MAINTAIN
## THE JEFFERSON PARISH SANITARY LANDFILL SITE

### BETWEEN

### IESI LA LANDFILL CORPORATION

### AND

### THE PARISH OF JEFFERSON

THIS AGREEMENT (the "Agreement"), made and entered on this *17ᵗʰ* day of *May*, 20*12*, by and between the Parish of Jefferson, herein represented by its Council Chairman, Elton M. Lagasse, hereinafter referred to as "Parish", duly authorized to act by Resolution No. 118553, adopted on the 7ᵗʰ day of March, 2012 and Resolution No. 118783, adopted on the 18ᵗʰ day of April, 2012 and IESI LA Landfill Corporation, a Delaware corporation authorized to do and doing business in the State of Louisiana, represented herein by Phillip L. Smith, its Vice President, duly authorized (hereinafter referred to as "IESI"). Parish and IESI may be referred to herein as "Party", individually, and "Parties" collectively.

### RECITALS

A. **WHEREAS,** the Parish solicited proposals for the operation, management, and maintenance of its landfill site, also known as the JEFFERSON PARISH SANITARY LANDFILL SITE, located on the West Bank of Jefferson Parish on U.S. Highway 90 near South Kenner Road between Waggaman and Avondale, Louisiana, hereinafter referred to as "Landfill" in compliance with LSA-R.S. 33:4169.1A(3) The site entrance is approximately 5-1/2 miles west of the intersection of U.S. Highway 90 and the West Bank Expressway. The total site encompasses approximately 760 acres. Site access is through a gate located on U.S. Highway 90.

B. **WHEREAS,** IESI possesses the necessary License required by Louisiana Licensing Law, LSA-R.S. 37:2151, et seq., together with all other licenses required by Louisiana law to operate, manage, and maintain the Expansion Area as defined herein and maintain Phases I, II and III of the Landfill.

C. **WHEREAS,** IESI has demonstrated the capabilities of providing construction, operation, management, and maintenance of the Expansion Area and maintenance of Phases I, II and III of the Landfill.

D. **WHEREAS,** IESI has inspected and evaluated the Expansion Area and has agreed to operate, manage, and maintain the Expansion Area, and to maintain Phases I, II, and III of the Landfill according to the Contract Documents, Permit, Rules, and Regulations issued by the Louisiana Department of Environmental Quality, (Standard Type I and II Permit, Jefferson Parish Sanitary Landfill, D-051-0090/P-0297R1) hereinafter referred to as "LDEQ Permit," Jefferson Parish Resolution 113646 and the terms and conditions set forth herein.

E. **WHEREAS,** the Parish wishes to engage the services of IESI to operate, manage, and maintain the Expansion Area, and to maintain Landfill Phases I, II and III, according to this Agreement, the Contract Documents and the Permit Documents.

### DEFINITIONS

1. *Change Order* – A written order to IESI signed by the Parish and authorized by the Jefferson Parish Council authorizing an addition, deletion or revision in the services to be provided, or an adjustment in the Term issued after the effective date of the Agreement.

2. *Commercial Solid Waste* - All non-hazardous Solid Waste generated by a Producer at a Commercial Unit.

**Exhibit**

**1131**

JP_JPLF_00032310

3. *Commercial Unit* – Any place of business including, but not limited to, offices, grocery stores, service stations, restaurants, lounges, amusement centers, etc.

4. *Compaction of Solid Waste* - Compaction of solid waste at the Landfill is defined as a minimal of 2 passes with a Caterpillar 836 steel wheel compactor (or equal).

5. *Construction Debris* – Building materials waste resulting from construction, remodeling, repair or demolition operations, including concrete, wood, sheetrock, metal, etc.

6. *Contract Documents* - The Request for Proposals No. 0227, IESI's Proposal dated the 4th of May 2011, General Specifications and Conditions (Resolution No. 113646), Technical Specifications, Contract Performance Bond, Labor and Material Payment Bonds, the foregoing of which are attached hereto as Attachment No. 1, this Agreement and the Permit Documents under LDEQ Permit No. D-051-0090/P-0297R1.

7. *Dead Animals* - Animals or portions thereof that have expired from any cause, except those slaughtered or killed for human use.

8. *East Bank of Jefferson Parish* – That area of the Parish which is adjacent to the left descending bank of the Mississippi River. It is bounded by the Mississippi River, Lake Pontchartrain, Orleans Parish and St. Charles Parish.

9. *Engineer* – The Jefferson Parish Landfill Engineer or his designee.

10. *Existing Landfill Units* – Phases I, II and III of the Jefferson Parish Landfill

11. *Expansion Area* – Phase IV-A of the Jefferson Parish Landfill, comprising Cells 20 – 25 of Phase IV-A, consisting of approximately fifty-five (55) acres with an estimated total volume capacity of 5.7 million cubic yards of Landfill expansion area to be developed, operated and maintained by IESI pursuant to this Agreement and referenced in the Contract Documents as "Phase IV-A".

12. *Force Account* – A detailed record of the Service/Work performed on a time and material basis. The detailed record shall include labor hours and hourly rates, equipment used with rates, dates and hours, invoices of products or materials used with quantities and costs, and any subcontractor's invoices used in the performance of the Service/Work.

13. *Garbage* – Any and all accumulation of waste (animal, vegetable and/or other matter) that results from the preparation, processing, consumption, dealing in, handling, packing, canning, storage, transportation, decay or decomposition of meats, fish, fowl, birds, fruits, grains, or other animal or vegetable matter, including all putrescible or easily decomposable waste, animal or vegetable matter which is likely to attract flies or rodents.

14. *Hazardous and/or Toxic Waste* - Any chemical, compound, mixture, substance or article which is designated by the United States Environmental Protection Agency or appropriate agency of the State to be "hazardous" or "toxic" as that term is defined by or pursuant to Federal, State, or Parish Legislation and regulations.

15. *IESI* - IESI LA Landfill Corporation, a Delaware corporation authorized to do and doing business in the State of Louisiana. For the purposes of this Agreement IESI LA Landfill Corporation shall be referred to as "IESI"

16. *Industrial Solid Waste*- Non-hazardous Solid Waste generated by a manufacturing, industrial, or mining process, or which is contaminated by Solid Waste generated by such a process. Such Industrial Solid Waste may include, but is not limited to, waste resulting from the following manufacturing processes; electric power generation; fertilizer/agricultural chemicals; food and related products; by-products; inorganic chemicals; iron and steel manufacturing; leather and leather products; nonferrous metals manufacturing/foundries; organic chemicals; plastics and resins manufacturing; pulp and paper industry; rubber and miscellaneous plastic products; stone, glass, clay, and concrete products; textile manufacturing; and transportation equipment. Industrial Solid Waste

2

JP_JPLF_00032311

does not include exploration and production waste (E & P), such as oil-contaminated soil; hazardous waste regulated under the Louisiana Hazardous Waste Regulations or under federal law; or waste which is subject to regulation under the Office of Conservation's Statewide Order No. 29-B or by other agencies.

17. *Jefferson Parish Municipalities* – All incorporated municipalities located within Jefferson Parish, excluding the Town of Jean Lafitte.

18. *Landfill* – The Jefferson Parish Sanitary Landfill Site, located on the West Bank of Jefferson Parish on U.S. Highway 90 near South Kenner Road between Waggaman and Avondale, Louisiana, hereinafter referred to as "Landfill" in compliance with LSA-R.S. 33:4169.1A(3) The site entrance is approximately 5-1/2 miles west of the intersection of U.S. Highway 90 and the West Bank Expressway.   The total site encompasses approximately 760 acres.  Site access is through a gate located on U.S. Highway 90.

19. *LDEQ* – Louisiana Department of Environmental Quality or its successor.

20. *Municipal Wastewater Treatment Plant Sludge* - Municipal Wastewater Treatment Plant Sludge shall consist of dewatered sludge material delivered by Jefferson Parish Department of Sewerage and/or private haulers on the Parish's behalf, from Wastewater Treatment Plants in Unincorporated Jefferson Parish or from Jefferson Parish Municipalities.   This term shall not include sewerage sludge generated outside of Jefferson Parish by any privately owned or publicly owned waste water treatment facilities.

21. *Parish* - Parish of Jefferson, State of Louisiana, including specifically, but in no way limited to the Consolidated Garbage District No. 1; Consolidated Sewer District No. 1; Consolidated Drainage District No. 2; Consolidated Waterworks District No. 1; Eastbank Consolidated Special Services Fire Protection District; Consolidated Jefferson Recreation and Community and Playground District; Jefferson Parish Consolidated Road Lighting District; Road Lighting District No. 1 of the Parish of Jefferson; and Consolidated Road District A of the Parish of Jefferson.

22. *Permit Documents* - All documents related to Landfill Phases I, II, III and IV-A of the Landfill, including the solid waste permits, all permit modifications and Louisiana Solid Waste Regulations, as amended.    More particularly, Louisiana Department of Environmental Quality Permit No. D-051-0090/P-0297R1, hereinafter sometimes also referred to as "LDEQ Permit".

23. *Phases I & II* – Areas of the Landfill which have been developed, operated and maintained by Waste Management.

24. *Phase III* – the 149-acre portion of the Landfill which is under the current development, operation and maintenance by Waste Management, comprised of "Phase III-A" consisting of and 88-acre portion of the Landfill Phase III, and "Phase III-B" consisting of a 61-acre portion of the Landfill as defined in the Contract Documents.

25. *POTW* – Publically Owned Treatment Works (Jefferson Parish Wastewater Treatment Plant).

26. *Producer* – An entity which generates Residential, Commercial or Industrial Solid Waste; also known as a Generator.

27. *Project Representative* - The authorized representative of the Parish who is assigned to oversee the construction and development of Phase IV-A.

28. *Residential Solid Waste* - All Solid Waste generated by a Producer in a Residential Unit.

29. *Residential Unit* – A dwelling within the limits of the Parish occupied by a person or group of persons.

30. *Scavenging* - Uncontrolled removal of Solid Waste materials from a disposal site.

JP_JPLF_00032312

31. *Schedule of Values* - Schedule that lists the installed value of the component parts, as defined in Contract documents.

32. *Service/Work* – The service or work to be performed by IESI under the terms of the Contract Documents and as defined in Section II of the Agreement.

33. *Solid Waste* - As defined by the EPA under 40 C.F.R. § 261.2(a)(1), or by the State of Louisiana under Title 33 Environmental Regulatory Code, Part VII, subpart 1, § 115, whether such waste is mixed with or constitutes recyclable materials.

34. *State* - The State of Louisiana.

35. *Specifications & Drawings* – Those drawings and specifications for the construction and design of Phase IV-A of the Landfill, as attached to Jefferson Parish RFP No. 0227.

36. *Term* – The effective dates of this Agreement, measured from the date of full execution by the parties hereto, until such date as final cover has been installed on the Expansion Area.

37. *Third Party* – Any person, individual or entity, other than the Parish or IESI.

38. *Tipping Fee* – Twenty Dollars and 47/100 dollars ($20.47) per ton of Residential Solid Waste from Unincorporated Jefferson Parish, Municipal Wastewater Treatment Plant Sludge from Unincorporated Jefferson Parish, and Solid Waste from Jefferson Parish owned offices and facilities, disposed of at the Expansion Area during the first year in which IESI accepts same pursuant to this Agreement; the Tipping Fee shall be subject to the Escalation and De-Escalation provisions set forth in this Agreement.

39. *Unincorporated Jefferson Parish* – All of the land in Jefferson Parish, excluding the Jefferson Parish Municipalities.

40. *Waste Management* – Waste Management of Louisiana, LLC d/b/a Waste Management of New Orleans.

41. *West Bank of Jefferson Parish* - That portion of the Parish adjacent to the right descending bank of the Mississippi River. It is bounded by the Mississippi River, the Gulf of Mexico, Orleans Parish, Plaquemines Parish, and St. Charles Parish.

42. *Yard Waste* – All waste wood, wood products, Christmas trees, tree trimmings, grass, cuttings, dead plants, weeds, leaves, dead trees or branches thereof, chips, shavings, sawdust and straw.

**NOW, THEREFORE**, in and for the consideration of the mutual promises and covenants herein contained, Parish and IESI for themselves and their successors and assigns, hereby agree as follows:

## AGREEMENT

### I. CONTRACT TERM

The Term of the services to be performed pursuant to this Agreement shall be for a period commencing from the date of signing of this Agreement and ending upon the closure of the currently permitted area in Phase IV-A as shown in Attachment No. 1. Parties agree that in accordance with LSA-R.S. 33:4169.1, the Term of the Agreement shall not exceed twenty-five (25) years.

### II. SCOPE OF SERVICES

Work/Service Scope - Subject to Force Majeure; litigation or injunctive relief filed by or on behalf of Waste Management in a court of competent jurisdiction; and delays in approval

4

JP_JPLF_00032313

occasioned by the Parish, IESI shall provide all necessary personnel, equipment, and funds to: (a) complete construction of the Expansion Area, in compliance with the Permit Documents (LDEQ Solid Waste Permit No. D-051-0090/P-0297R1 issued to Jefferson Parish on January 22, 2010), and in accordance with rules, laws and legal mandates promulgated by the United States Environmental Protection Agency (USEPA), made a part hereof; and (b) manage all tasks of the operation, management and maintenance of the Landfill Expansion Area and all Existing Landfill units (i.e. both the active and closed portions of the Landfill comprised of Phases I, II, and III), for the continuous uninterrupted receipt and disposal of all Solid Waste and Municipal Wastewater Treatment Plant Sludge generated in Jefferson Parish, Louisiana for the duration of this Agreement and all extensions thereto, (hereinafter, the "Work/Service"). The Parish reserves the right to require IESI to provide additional refuse disposal services deemed necessary by the Parish at Parish's sole option, in order to insure efficiency of governmental operations at the costs specified herein. These additional services shall be defined to include, but in no manner be limited to, extraordinary debris disposal during the Mardi Gras Seasons and natural or man-made disasters.

Any expansion of the acceptable types of wastes requested by IESI must be presented to Jefferson Parish in writing, in the form of a proposed amendment to this Agreement, which shall be subject to approval and ratification by the Jefferson Parish Council prior to implementation.

Parish shall retain overall control of the Expansion Area at all times, as owner of the Landfill and as the LDEQ Permit holder.

## A. CONSTRUCTION

1. PHASE IV-A PLANS & DRAWINGS – Upon full execution of this Agreement, IESI shall prepare legally compliant construction plans and scaled construction drawings for the Phase IV-A Expansion Area in accordance with the Permit Documents, and in accordance with the Specifications and Drawings. Said construction drawings shall include a detailed schedule of tasks with corresponding start and estimated completion dates for each task in the construction and completion of the Cells 20 and 21 of the Phase IV-A Expansion Area; shall be prepared, signed and sealed by a licensed and registered professional engineer in the State of Louisiana; and delivered to Parish for approval within sixty (60) days following the full execution hereof. Parish shall have fifteen (15) days to accept or reject said plans and scaled drawings for Phase IV-A. Failure by the Parish to reject said plans and construction drawings in writing shall be construed as tacit acceptance thereto of IESI's submitted plans and specifications.

   PHASE IV-A CELL DEMOLITION & PREPARATION - Immediately upon the full execution of this agreement, IESI may submit a plan for preparatory work including mobilization, clearing, draining and excavation of the Phase IV-A area, and may begin such preparatory work upon approval of the plan by the Landfill Engineer. Upon the Parish's written or tacit acceptance of IESI's construction plans and scaled drawings. IESI shall, as soon as reasonably possible, commence construction of the Phase IV-A Expansion Area in accordance with the approved plans and Specifications and Drawings and Permit Documents. IESI's services hereunder shall include but not be limited to: (i) demolition of any existing facilities or structures and removal of existing trees, water service lines, vales, valve boxes, stormwater drainage pipes, existing electrical, telephone, cable lines and associated utility poles and equipment, asphalt roadways, concrete paving, and structure foundations in the Phase IV-A Expansion Area (if applicable); (ii) excavation and rough grading of all of the Cells comprising the Phase IV-A Expansion Area (if applicable); (iii) acquisition, delivery, screening, testing and installation of sand underdrain (if needed) and recompacted clay layers for all the Cells comprising the Phase IV-A Expansion Area (if applicable); (iv) acquisition, delivery testing and installation of leachate collection pipes, pumps, pump controls and manifolds for the leachate collection systems for Phase IV-A Expansion Area, including installation of piping stubouts for connection to each Landfill Cell and the forcemain (if applicable); (v) Construction of Cells 20, 21, 22, 23, 25 and 25 of the Phase IV-A Expansion Area, including subgrade, subbase, recompacted clay liner, geosynthetic clay liner, geomembrane liner, geocomposites, geonets, in-cell piping, pipe penetrations and quality assurance testing (if applicable); (vi) stripping out of the final and/or intermediate cover on the side slopes of Phase III-A where tying into the Phase IV-A Expansion Area and stock pile for reuse (if applicable); (vii) coordination with landfill gas collection system

5

contractor to extend existing gas wells on the side slopes of Phases III-A and III-B as the fill progresses to reach final elevations (if applicable); (viii) construction of drainage structures for the Phase IV-A Expansion Area including storm water perimeter ditch, sodding and related work (if applicable); (ix) improvements to all existing culverts for the overall Landfill storm water system (if applicable); (x) relocation of the existing 4" HDPE leachate forcemain traversing the Phase IV-A Expansion Area as specified in the Specifications and Drawings, and Permit Documents; complete work, in place, tested, and ready for continuous service, including the performance of repairs, replacement and restoration required as a result of the Phase IV-A construction herein (if applicable). IESI shall provide a Construction Quality Assurance/Quality Control Certification Report, signed by a Louisiana licensed Professional Engineer, for review by Jefferson Parish and subsequent submittal and review by LDEQ.

During grading operations where traffic is being permitted to pass through construction, IESI shall provide a smooth, even surface that will provide a satisfactory passageway for use of traffic. The road bed shall be sprinkled with water if necessary to prevent a dust nuisance, provided the dust nuisance is a result of the Service/Work. Fire hydrants shall be accessible at all times to the Fire Department. No material or other obstructions shall be placed closer to a fire hydrant than permitted by ordinances, rules, or regulations or within fifteen (15') feet of a fire hydrant, in the absence of such ordinances, rules, or regulations.

Storage of Materials: Materials and equipment stored on the right of way or project site shall be so placed and the Service/Work at all times shall be so conducted as to insure no danger and obstruction to the traveling public. Location for materials storage shall be subject to prior written approval from the Landfill Engineer, in his reasonable discretion.

2. PHASE IV-A INITIAL CONSTRUCTION, CELLS 20 & 21 - IESI shall first develop, construct and install Phase IV-A, Cells 20 and 21 and related support facilities in accordance with the approved plans and Specifications and Drawings and applicable Permit Documents. Subject to Force Majeure; litigation or injunctive relief filed by or on behalf of Waste Management in a court of competent jurisdiction; and delays in approval occasioned solely by the Parish, Phase IV-A, Cells 20 and 21 shall be complete, lined and ready to accept Solid Waste on or before January 31, 2013. Within thirty (30) days following the completion of construction of Cells 20 and 21, IESI shall provide Parish with a Construction Quality Assurance/Quality Control Certification Report, signed and sealed by a Louisiana licensed professional engineer, for submission and approval by the LDEQ. This report shall be submitted within two weeks of verification of final grades by a registered land surveyor, such that LDEQ will review and approve the report and issue a letter permitting use of the Landfill cells for Solid Waste disposal before Phase III-B is filled to capacity.

3. PHASE IV-A, CELLS 22, 23, 24 & 25 – Upon completion of Cells 20 and 21, IESI shall thereafter continue the long-term construction of Phase IV-A Cells 22, 23, 24, & 25 for the management, operation and maintenance of the Landfill in conformity with the approved plans, Specifications and Drawings, and applicable Permit Documents. IESI shall issue final design drawings and complete construction and installation of lined landfill cells in the remainder Phase IV-A, (Cells 22, 23, 24, and 25), and related support facilities, to maintain uninterrupted disposal servicing for Jefferson Parish Solid Waste. Said long-term construction shall include any and all necessary physical landfill components for the operation of the Phase IV-A, and any other related components and incidentals required. Within thirty (30) days following the completion of construction of Cells 22, 23, 24, and 25 of Phase IV-A, IESI shall provide Parish with a Construction Quality Assurance/Quality Control Certification Report, signed and sealed by a professional engineer, for submission and approval by the LDEQ. This report shall be submitted within two weeks of verification of final grades by a registered land surveyor, such that LDEQ will review and approve the report and issue a letter permitting use of the respective Landfill cells for Solid Waste disposal use before each previously completed and Permitted Cell has been filled to operating capacity. The Parish shall be solely responsible for relocating the Waggaman canal prior to IESI beginning construction on Cells 24 and 25.

JP_JPLF_00032315

4. <u>WASTE MANAGEMENT</u> - During construction of Phase IV-A, the Parish's current contractor for Landfill operations. Waste Management, will continue to operate, maintain and manage the Existing Landfill Units until such time as Phase III-B capacity is reached. Beginning on July 1, 2012, the Parish will begin sending IESI monthly reports of the Phase III-B remaining capacity, tonnage received, and the anticipated start date for Phase IV. Once Phase III-B capacity is reached, IESI shall assume all operation, maintenance and management functions of Landfill operations for Existing Landfill Units and the Phase IV-A Expansion Area in accordance with Section B, below. Accordingly, Waste Management personnel shall have access to soil borrow areas in Phase IV-A only until such time as Phase IV-B is available, and thereafter Phase IV-B for cover material excavation until Phase III-B has reached full capacity, and until final cover is installed. The Parish shall use commercially reasonable efforts to permit and clear Phase IV-B for use as a soil borrow area and stockpile/staging area prior to IESI's construction of Phase IV-A. However, to the extent that Parish is unable to complete the permitting and clearing of Phase IV-B prior to IESI's commencement of Phase IV-A construction, IESI acknowledges and agrees that Waste Management shall have limited access to Phase IV-A soil borrow areas until such time as the Parish has completed the permitting and clearing of Phase IV-B. Accordingly, IESI acknowledges and agrees that it shall in good-faith, fully cooperate with the Parish and Waste Management, during construction of Phase IV-A Cells 20, 21, 22, 23, 24 and 25 and until such time as Phase III-B reaches capacity and final cover thereof is installed. Prior to the beginning of construction for Phase IV-A (Cell 20), the Parish shall be responsible for making sure that none of the roads used for waste hauling are located within the Phase IV-A construction boundary or tie-in area of Phase IV-A/Phase III-B. The Parish shall require Waste Management to remove and relocate any such roads used for hauling waste prior to the commencement of construction for Phase IV-A.

5. <u>PERMITS AND COMPLIANCE</u> - IESI shall at all times comply with the Specifications and Drawings, Permit Documents, and all applicable solid waste laws, rules, regulations. Any Permit modification(s) requested by IESI for its convenience or preference shall be prepared at IESI's sole expense and, upon review and written approval by Jefferson Parish, shall be jointly submitted to the LDEQ. The Parish and IESI shall submit a permit modification for alternative daily cover to be used instead of wet soil prior to the placement of waste in Phase IV-A.

6. <u>WEEKLY DEVELOPMENTAL MEETINGS</u> - Conferences between the Parish's Engineer, IESI, subcontractor, and other interested parties will be held weekly for the development of the Phase IV-A Expansion Area, and for the remainder of the term of this Agreement, at the time and place as selected by the Parish's Engineer. IESI's representative, as well as a person in authority to make decisions, must be present as well as authorized and accredited representatives of the various subcontractors and other persons and parties of interest.

7. <u>INITIAL & INTERIM INSPECTIONS</u> - Duly authorized representatives or inspectors will be assigned by the Parish's Engineer to supervise the Service/Work. Their duties will be to see that proper materials are used and that the Service/Work is done in accordance with this Agreement and Contract Documents. The right of final condemnation or acceptance of the Service/Work shall not be waived by the Parish's Engineer at any time during the progress of the Service/Work or after its completion.

IESI shall notify the Parish's Engineer of the exact date that it shall begin Cell construction so the Parish's Engineer may provide for inspection of all materials, excavations, equipment, etc. and any part of the Service/Work and the preparation or manufacture of materials to be used within the limits of the Service/Work.

The Parish's Engineer or its representatives shall have free access to all parts of the Landfill and to all places where any part of the materials to be used are procured, manufactured, or prepared subject to the provisions contained in Section IV(J) hereof. IESI shall furnish the Parish Engineers all information relating to the Service/Work and the materials therefore, which may be deemed necessary or pertinent, and with such samples of materials as may be required. IESI, at its own expense, shall supply such

JP_JPLF_00032316

labor and assistance as may be necessary in the handling of materials for proper inspection or for inspection of any Service/Work done by him.

The Engineer's representative shall have authority to reject defective materials and equipment and to suspend any Service/Work that is being improperly done, subject to the final decision of the Parish's Engineer.

8.  FINAL INSPECTION OF INITIAL CELL DEVELOPMENT - When, in the good-faith opinion of IESI, the Service/Work provided for and contemplated by this Agreement and the Contract Documents with respect to Cells 20 and 21 has been substantially completed, IESI shall notify the Parish's Engineer in writing that the Service/Work is substantially complete and request a final inspection.  The Parish's Engineer shall proceed to perform such final inspection in company with IESI's designated representative.  Any and all Service/Work found by this inspection to be defective or otherwise not in accordance with the LDEQ Permit and the terms and conditions of this Agreement shall be punch-listed and thereafter corrected to the full satisfaction of the Parish and at the expense of IESI, provided that IESI shall not be responsible for anything relating to the Existing Landfill Units if it can prove to the reasonable satisfaction of the Parish that Waste Management failed to construct, close, operate or maintain such Existing Landfill Units in accordance with all applicable laws. In such event, Parish shall be obligated to undertake those remedial measures to bring the Existing Landfill Units into compliance with all applicable laws.  Thereafter, IESI shall assume the management and maintenance of the Existing Landfill Units in accordance with this Agreement.  At such time that the Parish and its Engineer determine that the Service/Work is complete and acceptable in all respects, the Parish will issue a written acceptance of the Service/Work to IESI who will immediately thereafter file same with the Clerk of Court and Ex-Officio Recorder of Mortgages for the Parish of Jefferson, and this shall be the only form of acceptance binding upon any party or parties to these operations.  IESI warrants and guarantees that title to all Service/Work, material, and equipment, provided during Initial Cell Development, will pass to the Parish free and clear of all liens, claims, security interests and encumbrances.

Until final written acceptance of the Service/Work by the Parish, the Service/Work shall be in the custody and under the charge and care of IESI and IESI shall take every necessary precaution against injury or damage to any part thereof by the action of the elements or from any other cause, whether arising from execution or from the non-execution of the Service/Work; unless otherwise provided elsewhere in this Agreement or Contract Documents and, provided that IESI shall not be responsible for anything relating to the Existing Landfill Units if it can show to the reasonable satisfaction of the Parish that Waste Management failed to construct, close, operate, or maintain such Existing Landfill Units in accordance with all applicable laws.  In such event, Parish shall be obligated to undertake those remedial measures to bring the Existing Landfill Units into compliance with all applicable laws.  In the event that injury has already occurred and IESI has established such proof described above, it shall be the responsibility of the Parish to make IESI or the injured party whole.  Thereafter, IESI shall assume the management and maintenance of the Existing Landfill Units in accordance with this Agreement.  IESI shall rebuild, repair, restore, and make good, without extra compensation, all injuries or damages to any portion of the Service/Work occasioned by any of the above causes before its completion and acceptance, and shall bear the expenses thereof.  In case of suspension of the Service/Work from any cause whatever, IESI shall be responsible for all materials and shall properly store them if necessary, and shall provide suitable shelter from damage and shall erect structures where necessary.

If, in the reasonable opinion of the Parish's Engineer or Project Representative any Service/Work or materials shall have been damaged or injured by reason or failure on the part of IESI or any of its subcontractors to so protect its Service/Work, such materials shall be removed and replaced at the expense of IESI.

Further, IESI shall maintain one (1) copy of all records drawings and specifications, including revisions, addenda, details, and shop drawings on the service/work in good

JP_JPLF_00032317

order, available to the Parish Landfill Engineer or his representative at the Jefferson Parish Landfill.

**B. OPERATION MANAGEMENT AND MAINTENANCE OF LANDFILL**

1. <u>TRANSITION – TIMING & COMPLIANCE</u> – Excepting as where specifically provided herein, within sixty (60) days following receipt of written notice from the Parish that Phase III-B is approaching maximum capacity, IESI shall assume the operation management and maintenance of the Phase IV-A Expansion Area and Existing Landfill Units as defined, previously performed by Waste Management. Not later than ten (10) days following receipt of the Parish's sixty (60) day notice defined above, IESI shall submit to Parish's Landfill Engineer for approval, a comprehensive disaster recovery plan for the Landfill. Parish shall have thirty (30) days from the date of receipt of the disaster recovery plan to provide comments and/or request changes to the draft disaster recovery plan. Within ten (10) days receipt of the Parish's comments or requested changes, IESI shall in good-faith incorporate those reasonable change requests, or in the alternative, provide reasonable justification of rejection of those requested changes. Failure of the Parish or IESI to comply with the time limitations prescribed herein shall be deemed an approval to the submitted materials and/or changes. Once finalized, the comprehensive disaster recovery plan for the Landfill shall become part of the Contract Documents.

   IESI shall be solely responsible for the acquisition of any and all necessary LDEQ approval(s) prior to accepting Solid Waste. IESI shall solely be responsible for providing any and all labor, equipment and incidentals necessary to perform landfill operation management and maintenance of the Expansion Area Phase IV-A and Existing Landfill Units. All operation, management and maintenance of the Landfill shall be in strict compliance and conformity with all Federal, State and local laws, ordinances and regulations, including the rules and regulations of the USEPA, LDEQ and all State of Louisiana agencies, and in accordance with the Permit Documents.

2. <u>WASTE MANAGEMENT - COORDINATION</u> – IESI acknowledges and agrees that Parish's current contractor for landfill operations, Waste Management will continue its operations to install final cover to Phase III-B until such time as final cover is completed and approved by the Parish and the LDEQ. Until such time as Phase III-B final cover completion and approval, IESI shall permit Waste Management personnel access to Landfill soil borrow areas for final cover material excavation, and IESI shall, in good faith, fully cooperate with the Parish and Waste Management to facilitate the final cover installation.

3. <u>OPERATION HOURS</u> - IESI shall open the Landfill (at a minimum) to the public as follows:
   - Daylight Savings Time - Monday through Saturday 6 a.m. to 6 p.m.

     Sunday 6:00 a.m. - 12:00 noon
   - Standard Time - Monday through Saturday 6 a.m. to 5 p.m.

     Sunday 6:00 a.m. - 12:00 noon

   At a minimum, the working hours for the landfill personnel shall begin one half (1/2) hour earlier than the opening time, and end one half (1/2) hour past the closing time of the facility. In the event of a natural or man-made disaster, the Parish may require extended hours of operation to accommodate excess debris disposal at no additional cost to Jefferson Parish.

   All holidays must be requested by IESI in writing not less than thirty (30) days prior to the desired holiday. The Parish shall approve or deny the holiday request in writing within 7 days receipt of the request. Failure of the Parish to respond within the timeframe as specified herein shall be deemed approved. Standard nationally recognized holidays including but not limited to New Year's Day, Thanksgiving Day, and Christmas Day shall be treated as holidays hereunder, unless extenuating circumstances shall result

JP_JPLF_00032318

in Parish hardship due to lack of available garbage disposal. In such event, the parties agree that those nationally recognized holidays shall be treated as an operations day.

4. <u>WASTE ACCEPTED AT LANDFILL</u> - IESI acknowledges and agrees that the Landfill is the primary site for disposal of Residential Solid Waste from Unincorporated Jefferson Parish (Consolidated Garbage District No. 1). IESI shall accept and dispose of all Residential Solid Waste from Unincorporated Jefferson Parish and all Residential Solid Waste collected through the Parish's collection contracts. The Parish makes no assurances or representations that the Jefferson Parish Municipalities will bring their waste to the Jefferson Parish Landfill. The waste to be disposed at the Landfill shall be limited to Acceptable Waste (as defined below). IESI acknowledges and agrees that the volume of Residential Solid Waste may vary. The total volume may increase or decrease due to changes in population, recycling, composting, waste reduction strategies, emergency situations, other waste management practices or other forces which could impact waste volumes. The volume may also vary seasonally due to increased Yard Waste in the summer, events such as Mardi Gras, storms, and other factors. Parish makes no representations, warranties or guarantees of any kind whatsoever regarding the Residential Solid Waste, Commercial Solid Waste, or Industrial Solid Waste quantities which may be delivered to the Landfill. Market conditions will dictate the waste quantities from private sources. IESI acknowledges they have reviewed and analyzed the Commercial Solid Waste market in the area as well as the records of Commercial Solid Waste accepted in the past at the Landfill

<u>Acceptable Waste</u> - Solid Waste that may be disposed of under this Agreement is as follows:

- Residential Solid Waste from Unincorporated Jefferson Parish,
- Solid Waste from Jefferson Parish Offices,
- Municipal Wastewater Treatment Plant Sludge generated in Jefferson Parish (not accepted after 3:30 pm weekdays and 2:00 pm weekends),
- Solid Waste from the Jefferson Parish Administrative Departments,
- Industrial Solid Waste (generated within Jefferson Parish),
- Commercial Solid Waste (generated within Jefferson Parish),
- Industrial Solid Waste and Commercial Solid Waste generated outside of Jefferson Parish may be disposed of at the Expansion Area with prior written approval of Jefferson Parish in conformity with Section 16-14 of the Jefferson Parish Code of Ordinances, in which case, it shall be limited to a maximum of 109,500 tons per calendar year.

Subject to 30 day notification, IESI shall dispose of Solid Waste (including Municipal Wastewater Treatment Plant Sludge) generated by the Jefferson Parish Municipalities, if the municipality requests such services, at the same rates as unincorporated Jefferson Parish, plus the applicable royalty to the Parish.

<u>Inspection Obligations</u> - IESI shall inspect Industrial Solid Waste, which will be tested, and if acceptable to IESI and the Parish, approve as specified in the Waste Acceptance QA/QC Plan, which is attached hereto by reference as if fully stated in its entirety herein. IESI gate attendant or scale house personnel shall question drivers of incoming loads to determine type and source of waste and acceptability. IESI shall install a radiation detection monitor at the inbound scales to scan for radioactive materials, which are not permitted. Landfill equipment operators will visually inspect all loads for acceptability and evidence of hot or burning waste.

<u>Commercial and Industrial Solid Waste Within Jefferson Parish</u> - IESI may accept Solid Waste generated within Jefferson Parish from commercial, private and industrial haulers at the Landfill. All commercial and industrial waste haulers shall have approval by the Parish to dispose of waste at the Expansion Area. IESI must give the Parish a monthly report on this Commercial and Industrial Solid Waste. This report shall include the following:

    (1)    Hauler's name
    (2)    Type of Waste,
    (3)    Date of Disposal,
    (4)    Place of Origin of Waste,

JP_JPLF_00032319

(5)    Amount of Waste,
(6)    Generator's Name,
(7)    Customer's Name,
(8)    Waste Profile Number (if applicable).

Commercial and Industrial Solid Waste Outside Jefferson Parish - IESI may accept each calendar year up to a maximum 109,500 tons of Commercial and Industrial Waste generated outside of Jefferson Parish from commercial, private, or industrial haulers at the Expansion Area. All such haulers shall have approval by the Parish to dispose of waste at the Expansion Area. IESI must give the Parish a monthly report on all outside Commercial and Industrial Solid Waste. This report shall include the following:

(1)    Hauler's name
(2)    Type of Waste,
(3)    Date of Disposal,
(4)    Place of Origin of Waste
(5)    Amount of Waste,
(6)    Generator's Name,
(7)    Customer's Name
(8)    Waste Profile Number (if applicable).

Pre-Approval – Prior to their disposing of Solid Waste in the Expansion Area, IESI shall obtain approval from the Parish for all commercial and industrial waste haulers, whose primary business is waste hauling, regardless of whether the Commercial and Industrial Solid Waste is generated inside or outside of Jefferson Parish. Each hauler must request and receive approval, in writing, from the Landfill Engineer. The request shall contain the company name, address, phone number, contact person, the names and addresses of the waste sources, estimated total tons per month to be accepted at the Expansion Area, and the haul trucks identification numbers. Failure of a hauler to comply with any of these requirements shall result in the termination of the hauler's ability to use the Expansion Area for disposal. Only waste compatible with the LDEQ Permit is acceptable.

Parish shall provide IESI with a list of all approved Commercial and Industrial Solid Waste haulers which currently use the Landfill not later than thirty (30) days prior to the date that IESI shall assume landfill management and operations as provided in Section II.B. hereof. Excepting those approved Commercial and Industrial Solid Waste haulers listed by Parish, IESI shall not accept waste from any such hauler who has not been approved in writing by the Parish. Within ninety (90) days after the date that IESI shall assume such landfill management and operations in accordance with Section II.B. hereof, IESI shall provide the Parish Landfill Engineer with a comprehensive list of Commercial and Industrial haulers which use the Landfill for disposal services. IESI shall provide the Landfill Engineer quarterly updates to said list of Commercial and Industrial haulers, and at any and all times during the Term of this Agreement, upon written request to do so.

Unless requested by the Parish, private waste haulers such as residents and small businesses self-hauling small, incidental, non-routine waste loads, that pay IESI for disposal upon arrival at the Expansion Area and private citizens that reside within Jefferson Parish, will not be required to comply with preapproval requirements provided that the type of waste and amount are within the prescribed limits as established by the Parish. The maximum amount of waste permitted without prior written approval is 10 tons per month.

Commercial and Industrial Solid Waste Rates - The rates established by IESI for Commercial and Industrial Solid Waste disposal are attached hereto and made part herewith as Attachment A.

A royalty will be forwarded by IESI to the Parish on all Commercial and Industrial Solid Waste disposed of by persons or entities other than the Parish in the Expansion Area, in accordance with this Agreement. The royalties to be paid by IESI for Commercial and Industrial Solid Waste are included in and are a part of rather than in addition to the disposal rates. The royalties to be paid by IESI hereunder are defined in Attachment A.

11

In accordance with Section IV(X), Compensation, royalties due the Parish from IESI shall be deducted from the Parish's monthly invoice.

Approval of Industrial Solid Waste Profiles and Accounts - Each profile for Industrial Solid Waste must be submitted to the Landfill Engineer for approval. A decision on approval, or denial with reason for denial, will be made within 3 working days. If no decision is provided by the Landfill Engineer within 3 working days, then IESI may consider the profile to be approved. Any Industrial Waste account for which IESI proposes to offer a discount or surcharge must be approved by the Landfill Engineer or Director of Environmental Affairs. IESI shall submit any such proposed accounts to the Landfill Engineer or Director of Environmental Affairs and any supporting documentation or justification for the discount or surcharge. A decision on approval, or denial with reason for denial, will be made within 3 working days. If no decision is provided by the Landfill Engineer within 3 working days, then IESI may consider the account to be approved.

5.   PHASE IV-A OPERATIONS – As of the date that IESI assumes operation management and maintenance of the Expansion Area and Existing Landfill Units, IESI shall provide all labor, equipment, materials, and incidentals to assume all daily operations of the Landfill.

A.    Expansion Area - IESI shall operate manage and maintain the Expansion Area in accordance with and in compliance with the current LDEQ Permit until the Phase IV-A Expansion Area is filled and closed. The Service/Work to be performed by IESI under this portion of the Agreement shall include the supply of all labor, materials, equipment and incidentals related to the long-term management, operation and maintenance of the Phase IV-A Expansion Area, including but not limited to the following: (i) purchase of all necessary landfill operating equipment; (ii) provide full time staff for complete operations and maintenance of the Expansion Area; (iii) daily operations of and maintenance of the scale house and citizens drop-off center; (iv) waste screening; (v) receiving waste; (vi) disposing of waste (placement and compaction with a working face measuring approximately 150 feet by 150 feet and with side slopes no steeper than 2H:1V); (vii) furnishing and installation of daily, interim, and final cover in accordance with the Permit Documents; (viii) final design and installation of additional landfill cells and other ancillary facilities comprising the Phase IV-A Expansion Area; (ix) final design and installation of leachate collection and transmission systems for the Phase IV-A Expansion Area; (x) final design and installation of drainage improvements in the Phase IV-A Expansion Area, including realignment of canals and ditches; (xi) operation and maintenance of leachate collection and treatment systems; (xii) operation and maintenance of groundwater monitoring wells for the Phase IV-A Expansion Area; (xiii) design, installation, operation and maintenance of storm water management system in the Phase IV-A Expansion Area, including storm water ponds, culverts, out falls and ditches (xiv) maintenance of roadways and access streets and parking areas in the Phase IV-A Expansion Area; (xv) erosion prevention and sediment control; (xvi) maintenance of on-site structures, equipment, utilities, in and servicing the Phase IV-A Expansion Area; maintenance of buffer areas and appurtenances of the Phase IV-A Expansion Area; (xvii) installation of groundwater monitoring wells for the Phase IV-A Expansion Area; (xviii) reporting, billing and record keeping; (xix) payment of royalties, as set forth elsewhere in this Agreement; (xx) environmental monitoring in accordance with Section II(B)(5)(J) and II(B)(5)(H) hereof; (xxii) maintenance or replacement of equipment and materials; (xxiii) installation of final landfill cap system, in the Phase IV-A Expansion Area; and (xxiv) other incidental duties and responsibilities to ensure proper operation of the Landfill in compliance with the Contract Documents and LDEQ Permit.

B.    Aerial Photographing Requirement - In addition to the foregoing, IESI shall conduct an annual aerial photograph and photogrammetric mapping and topographic survey of the Landfill property from Highway 90 to Live Oak Boulevard, each year and submit a report documenting volume capacity analysis to the Parish. The aerial surveys shall be performed during the winter each year prior to emergence of spring vegetation. The map shall be to a scale of 1" = 50'

12

JP_JPLF_00032321

with a two-foot contour interval. The contour map shall be 24" x 36" and submitted on a CD-ROM in AutoCAD file format and on Mylar.

C.  <u>Existing Landfill Unit Maintenance</u> - Additionally, IESI shall operate, manage and maintain the Existing Landfill Units and appurtenances thereto in accordance with and in compliance with the current LDEQ Permit until the Phase IV-A Expansion Area is filled and closed. The services to be performed by IESI under this portion of the Agreement shall include the supply of all labor, materials, equipment and incidentals related to the long-term management, operation, maintenance, repair and replacement needs of the Existing Landfill Units, including but not limited to the following: (i) grass mowing, erosion control and maintaining drainage structures to ensure proper operation of the storm water management system for the Landfill. The Existing Landfill Units shall at a minimum be inspected weekly for erosion and settlement, and leachate seeps. Repairs thereto shall be made as required; (ii) maintenance of the final cover system to insure proper drainage, and repair cracking, erosions and depressions thereto; (iii) maintenance of the vegetative cover, including mowing of the Existing Landfill Units and buffer areas, said mowing to be completed at least monthly or as needed in the growing season; (iv) repair to any damage occasioned to the Landfill gas collection wells, piping, valves or appurtenances caused by IESI's mowing or maintenance activities; (v) maintain or replace hard-scape and soft-scape materials at the Landfill entrance; (vi) maintain on-site Landfill structures, Parish provided equipment, materials, utilities, existing fencing, gates, posts, and provide the necessary replacements at an equal or greater quality; (vii) inspect, lubricate, adjust repair and maintain all systems including but not limited to plumbing, electrical, power, water supply, fire protection, buildings, pumps, motors, controls, piping, aerators, computers, scales, flow meters, etc., excepting the Landfill gas collection and control system. Items lost, stolen damaged and deteriorated beyond use shall be replaced with new items of equal or better quality; (viii) operation and maintenance of the equipment maintenance building; (ix) maintenance of groundwater monitoring wells, including inspection for damage, mowing, maintenance of slabs and guard posts; (x) IESI shall conduct, at a minimum twice weekly, litter clean-up on U.S. Highway 90, westward to South Kenner Road and eastward for one (1) mile from the Landfill site entrance; (xi) any other items mentioned in the Permit Documents not specified in this Section or Agreement, but required for management and operation of the Landfill in accordance with the Permit Documents and Solid Waste regulations. IESI shall take responsibility for maintaining the vegetative cover of Phase III-B upon sixty (60) days prior written notice and after acceptance by the Parish of the final cover installation.

The Parish shall be solely responsible for making sure that the Existing Landfill Units have been operated, maintained, constructed and closed in accordance with all applicable laws, and excepting leachate riser pumps, which the Parish shall warrant for the first thirty (30) days of IESI's management and operation of the Existing Landfill Units, all equipment, materials, utilities, etc. listed above relating to the Existing Landfill Units are in good working order and have been properly maintained prior to handing over such operation and maintenance responsibilities to IESI. Upon such inspection of the Existing Landfill Units and the corresponding equipment, the Parish shall repair or replace any such equipment that is not in good working order prior to IESI taking responsibility for the operation and maintenance of such items and shall hold IESI harmless for any defects in construction or legally improper maintenance, operation or closure of the Existing Landfill Units in accordance with Section IV(N) hereof.

IESI shall lock the Landfill access gate during non-business hours as provided herein. Uncontrolled access and dumping of any material during non-business hours shall be prevented, precluded and prohibited. IESI shall also maintain in good condition and repair, and enforce the existing posted signs along the perimeter of the Landfill.

JP_JPLF_00032322

IESI shall provide Class ABC fire extinguishers on all equipment at the Jefferson Parish Landfill. A minimum of 750 cubic yards of soil shall be stockpiled near the working face for use in the event of a fire. A water truck with hose shall be available on-site at all times. Smoking shall be prohibited near the working face.

D.   Roads & Roadway Maintenance - Access roads and parking lots pertinent to operations, including the Landfill entrance road and all roads within the Landfill (haul road or service roads) shall be all-weather roads capable of accommodating large volumes of vehicular traffic during inclement weather. All roadways must be maintained free of potholes and depressions at all times, and IESI shall ensure clear and safe access to the Service/Working face at all times. Truck tires shall be checked and if necessary, cleaned prior to leaving the site to ensure that the roadways are kept clean. Any buildup of dirt on the roadways leading to or from the Landfill site shall be cleaned immediately by IESI using a street sweeper or water truck.

E.   Fencing - IESI shall erect temporary or permanent fencing or other measures to control the blowing of paper and other litter in the Existing Landfill Units and Phase IV-A Expansion Area. Litter which is scattered around the site or which travels off-site on into the buffer zones shall be collected on a daily basis and disposed of properly.

F.   Reports & Records - IESI shall provide Parish monthly estimates (based on final elevations) of the remaining capacity of the Phase IV-A Expansion Area. The monthly report shall also include calculations of the tonnage of solid waste deposited each month, the estimated waste density expressed in pounds per cubic yard, the amount of daily and final cover used in cubic yards, and an estimate of the remaining Phase IV-A lifespan expressed in cubic yards, tons and months. All calculations and assumptions shall be included.

IESI shall develop a record keeping data-based system which shall record and report the source, type and quantity of waste entering the Landfill. Records shall be maintained on site with duplicates sent to the Parish on a monthly basis. The daily records of Solid Waste shall at a minimum include (i) the total daily tonnage, (ii) total estimated cubic yards, and (iii) number of tons and yards, reported by waste source/type; and (iv) individual tickets issued and all related data. Monthly summaries of the daily records shall be submitted to the Parish along with monthly invoicing as provided herein. If requested by the Parish, daily computerized logs shall also be submitted with the monthly billings. At a minimum, the daily and monthly reports shall include the following waste source/type:

West Jefferson Residential (including the Town of Jean Lafitte)
East Jefferson Residential
Jefferson Parish Offices and Facilities
Jefferson Parish Departments listed separately
Jefferson Parish Industrial Waste
Jefferson Parish Residential Cars and Pickups – no charge
Cash Commercial
IESI Commercial
Other Commercial listed by customer
Industrial Waste (Listed by Type)
Unincorporated Jefferson Parish Sludge (Department of Sewerage)
Incorporated Jefferson Parish Residential (Listed by Municipality, excluding Lafitte)
Incorporated Jefferson Parish Residential Sewerage Sludge (Listed by Municipality, excluding Jean Lafitte)

G.   Administrative Building and Scale House Operation –

(i)   Scales - IESI shall operate and maintain the administration building, and shall maintain two (2) offices in the administration building for the Parish's use and records storage. Additionally, IESI shall operate the existing three (3) scales owned by the Parish, weighing and tracking waste quantities, waste

14

categories, and providing record keeping and customer billing services. IESI shall continuously operate and maintain the three (3) scales, each of which shall be calibrated a minimum once every six (6) months. Certification of calibration shall be adequately supported by documentation, which shall be submitted to the Parish within thirty (30) days following the date of calibration. IESI shall be responsible for maintaining the scales and collection of all Tipping Fees for disposal of Solid Waste in the Expansion Area.

(ii)   Parish Option - The Parish may at any time during the term of this Agreement, elect to provide personnel to operate the scale house; however, to the extent that Parish fails such election, IESI shall be solely responsible to provide an operator for the Scale House during operational hours as provided herein. IESI shall provide a trained scale operator for the full time operation of the Scale House. Should the Parish elect to provide a scale house operator, the Parish shall provide IESI sixty (60) days prior written notification of such election. IESI may observe and verify the information input into the computer by Parish personnel.

(iii)   Cleanliness Standards - IESI shall at all times keep the premises (except for the Landfill cells) free from accumulation of waste material and other debris caused by its employees or Service/Work, and at the completion of the Service/Work, it shall remove all rubbish from and about the project site, and all its tools, scaffolding, and surplus materials, including excess excavation, and shall leave the work "broom clean" or its equivalent, unless otherwise specified. The working face of the Landfill will be kept to a minimum area, typically 100 feet wide by 150 feet long, with side slopes no steeper than 2H:1V, sufficient to accommodate waste disposal activities. IESI site personnel will patrol the site to collect litter in the vicinity of the facility. Portable screens or litter fences will be used near the active face. IESI will collect litter at least twice weekly along the north side of U.S. Hwy. 90, approximately one mile to the east and to South Kenner Road to the west of the site entrance. All incoming loads will be required to be fully enclosed or have covers/tarps to prevent waste from blowing out of vehicles.

(iv)   Data Management - IESI shall provide all labor, material equipment and incidentals required for the development and implementation of a data management system at the scale house, in which data can be entered and retrieved from the system. The computerized data system shall be used in conjunction with vehicle registration, vehicle weighing, customer billing and other reporting and record keeping required hereunder. The system will be capable of tracking and reporting the net weight, number of transactions, price per transaction which will be classified by Account Number, Waste Identification Number and Vehicle Identification Number. The system shall include a database function capable of sorting, processing and reporting data using any data field recorded on landfill disposal tickets.

(v)   Vehicle Registration – All Municipal and Commercial vehicles entering the Landfill for disposal of Waste shall be assigned a unique identification number by IESI. To expedite the vehicle weighing process, the following vehicle registration information shall be compiled and stored in the IESI developed and implemented Landfill data management system: Account Number, Vehicle Identification Number, Transporter Solid Waste Identification Number, Vehicle Tare Weight, Vehicle Cubic Yard Capacity and Approved Waste Type (Waste Identification Number). Up to 22 characters of data may be entered in to the data management system for each field. The Waste Identification Number shall correspond to the Waste Identification number used by the State for the particular type of solid waste.

(vi)   Private Vehicle Registration – All private vehicles owned residents of unincorporated Jefferson Parish and any municipality currently disposing of municipal solid waste at the Jefferson Parish Landfill entering the Landfill

15

JP_JPLF_00032324

for disposal of Waste shall be registered, which shall contain the type of vehicle, date of entry, name and address of the citizen and the measured weight of Waste. IESI shall verify the residences of citizens using the facility by checking driver's licenses or other acceptable identification to verify that they are citizens of Jefferson Parish. Acceptable forms of identification include a valid Louisiana Driver's License with photo, or other photo identification with a water bill showing a corresponding Jefferson Parish address.

(vii)  <u>Weighing</u> – All municipal, commercial and private vehicles entering the Landfill shall be weighed at the scale house prior to disposing of Solid Waste. After weighing, the scale house personnel shall enter the identifying data into the Jefferson Parish Database system, and the vehicle registration information shall automatically be displayed along with the vehicle's gross weight. Upon completion of the weighing process, each vehicle shall receive a receipt containing the following information at a minimum: Customer Name and Account Number, Date and Time of Entry, Vehicle Identification Number, Waste Origin, Vehicle's Tare, Net and Gross Weights, Estimated Net Cubic Yards, Sequential Transaction Number, Waste Identification Number and Waste Type/Source, Unit Cost for Disposal and Total Cost of the Transaction.

(viii) <u>Parish Access</u> – Jefferson Parish shall have access to the Landfill data management software and database at all times. The system shall be capable of retrieving daily and monthly reports, billing information and any other information stored on the data management system. At the end of the term of this Agreement, IESI shall give to the Parish the same rights that it has to the data management system, including all stored data.

(ix)   <u>Annual Reporting Requirements</u> – IESI shall prepare and submit the Disposer Annual Report and other reports in accordance with the mandates of the LDEQ, and Permit Documents. All reports and records shall be maintained on-site as mandated by Louisiana Solid Waste Regulations. IESI shall also prepare and submit annually the Sewerage Sludge and Biosolids Use or Disposal Reporting Form for Receivers of Sewerage Sludge from Outside Sources in compliance with LAC 33: IX Chapter 73.

(x)    <u>Customer Billing</u> – IESI shall bill all customers and collect all Tipping Fees for the disposal of Residential, Commercial and Industrial Solid Waste, and municipal sludge at the Landfill. The computerized daily receipts shall be used to prepare all customer invoicing.

(xi)   <u>Visitor Logs</u> – IESI shall maintain a log of all visitors to the Landfill. These records shall include the name, company or agency, date, time and purpose of the visit, and results of any inspections or environmental monitoring at the site.

(xii)  <u>Customer Service Line & Call Logs</u> – IESI shall maintain during operational hours a dedicated customer service phone line which shall be posted prominently on signage at the entrance of the Landfill. Said phone line shall be manned by a live person during all hours of operation, and IESI shall maintain daily customer service call logs, which shall enter and track the following information at a minimum: (a) name, address and phone number of caller; (b) nature of complaint; (c) proposed resolution; (d) date and time complaint logged. IESI shall compile monthly reports of call log information that shall be provided to Parish. In addition, IESI shall, upon twenty-four (24) hours written and noticed request by Parish, provide a representative who shall be available to attend civic association meetings of the surrounding Avondale and Waggaman communities abutting the Landfill to address any questions or issues that shall be paneled for discussion.

16

H.   Odor Monitoring & Control Activities -- IESI shall implement a comprehensive odor control plan that includes both operational best management practices and odor control systems. IESI shall perform odor monitoring and control activities and services as required by the existing Jefferson Parish Landfill Odor Management Plan, and any amendments thereto resulting from local, federal or state regulations adopted and imposed on landfill operations, which are attached hereto and incorporated herein by reference as if fully stated in its entirety, including providing personnel, equipment, odor neutralizing chemicals and incidentals necessary to comply and execute odor monitoring and control activities. The amount of waste exposed to the atmosphere will be minimized by limiting the size of the active face during normal operations. All deposited waste will be covered with an approved alternate daily cover or 6 inches of daily cover materials at the end of each working day. Any waste exhibiting strong odors will be covered immediately upon delivery with soil materials. Municipal Wastewater Treatment Plant Sludge will not be accepted after 3:30 p.m. on weekdays or 2:00 p.m. on weekends, ensuring that such Municipal Wastewater Treatment Plant Sludge will be covered each day. Waste disposal areas that have been filled to final grade will be covered with compacted interim cover or final cover.

I.   Bird Monitoring & Control Activities -- IESI shall perform bird monitoring and control activities as required by the existing Jefferson Parish Landfill Bird Control Manual, and any amendments thereto resulting from local, federal or state regulations adopted and imposed on landfill operations, which are attached hereto and incorporated herein by reference as if fully stated in its entirety herein. IESI's obligations hereunder shall include providing all personnel, equipment and incidentals necessary to comply with and execute bird monitoring control services.

J.   Environmental Monitoring & Reporting - IESI shall provide the labor, materials equipment and incidentals to perform any and all environmental monitoring and reporting.   IESI's obligations hereunder include but are not limited to: (a) performing groundwater, surface water, and leachate monitoring and reporting to LDEQ as required by the Permit Documents; (b) compliance with any and all requirements contained in the Louisiana Water Discharge Permit System (LWDPS) for the Landfill; (c) performing any and all monitoring and reporting mandated by the Wastewater Discharge Authorization (Sewerage) for the leachate discharge to the Jefferson Parish Wastewater Treatment Plant; (d) compliance with all requirements contained in the existing Storm Water Pollution Prevention Plan (SWPPP), which is incorporated herein by reference as if fully stated herein in its entirety; (e) compliance with all requirements contained in the Spill Prevention Control Countermeasures Plan (SPCCP), which is incorporated herein by reference as if fully stated herein in its entirety; and (f) compliance with all requirements for asbestos-containing materials in the Permit Documents and NESHAPS, which is incorporated herein by reference as if fully stated herein in its entirety, including proper handling, filing and returning Asbestos Disposal Verification Forms (ADVF) to LDEQ.

K.   Leachate System Maintenance - IESI has familiarized itself with the existing and planned leachate system infrastructure. IESI shall ensure that leachate is managed according to the provisions of LDEQ Permit. The lined leachate treatment pond is available for treatment/pretreatment of leachate. When waste disposal operations begin in Phase IV-A all compliance testing and monitoring for discharge of treated leachate shall be the responsibility of IESI. Any compliance orders, fines, penalties, and corrective action orders related to the operation of the on-site leachate management facilities caused by the actions or inactions of IESI shall be the sole responsibility of IESI.

Subject to the Parish's warranty regarding leachate riser pumps, pursuant to Section II(B)(5)(C), IESI shall provide any and all labor, materials, equipment and incidentals incumbent for the maintenance of the leachate collection and pump systems, including (a) any and all leachate collection sumps and sump pumps in the Expansion Area and Existing Landfill Units; (b) any and all pumps, controls

17

and the force-main in the Expansion Area and Existing Landfill Units; (c) any and all oxidation pond(s), whether existing as of the date of execution hereof, or later installed; and (d) the weir and leachate pump stations. IESI shall repair or replace all pumps and controls as needed at no cost to Jefferson Parish. All costs of leachate treatment at the Jefferson Parish Wastewater Treatment Plant shall be paid by Jefferson Parish. IESI shall submit an application for Wastewater Discharge Authorization (Sewerage) to the Jefferson Parish Department of Environmental Affairs for discharge of any leachate into the Jefferson Parish Sanitary Sewer. IESI shall operate the leachate collection and discharge in compliance with the terms of the permit, and shall perform and report all sampling; testing and monitoring required to comply with the permit.

L.  Installation of Final Cover – Expansion Area – IESI shall at its sole cost and expense, prepare construction drawings for closure of completed outside slopes for Phase IV-A, and detail the tie-in to the slopes of Phases III-A and III-B areas, and submit to the Parish for review and written approval prior to commencing closure activities. Upon the Parish's written approval, IESI shall furnish all labor materials, equipment and incidentals required to construct and install the final cover of the Phase IV-A cells, which shall include but not be limited to: (i) initial grading and re-grading of all areas comprising the Phase IV-A Expansion Area. This work may entail the movement of some Solid Waste inside the Expansion Area, and no cost will be charged to IESI for disposal of excavated waste from the Expansion Area cells; (ii) fine grading shall be 6:1 from the bottom to the slope break on the side slopes and five (5%) percent from the slope break to the center crest on the top area; (iii) compacted clay layering, including any necessary excavation, delivery, cleaning, screening, testing and installation of the compacted clay layer; (iv) installation of a geosynthetic cap on the Expansion Area, including a vegetative erosion control layer, Low Density Polyethylene (LLDPE) geo-synthetic liner, compacted clay over the solid waste, with tie-in to the cell liner, (v) delivery screening testing and installation of the vegetative erosion control layer; (vi) storm water control, including the installation of terrace drains, down drains, toe drains, energy dissipaters, and riprap lining at pipe outlets; (vii) and full sodding of the final cover of the Expansion Area and newly graded and constructed ditches.

M.  Drop Off Center – During operating hours, IESI shall manage and maintain the on-site citizen drop-off center. The Drop-Off Center shall be used to accept Solid Waste from Jefferson Parish residents in private vehicles and smaller commercial vehicles which are unloaded manually. After weighing, Jefferson Parish citizens in private and smaller commercial vehicles shall be directed to the Drop-Off Center. IESI shall provide appropriately sized containers for the drop-off center service as necessary. Said containers shall be of leak-proof, roll-off variety. No leachate shall be allowed to drain into or onto the surface draining system. Any and all unloading of vehicles shall be performed under the supervision of IESI personnel. The drop off center and all appurtenances thereto shall be maintained by IESI in good and orderly condition, and shall be swept clean on a daily basis, or as needed in the reasonable discretion of the Parish.

N.  Additional Services – For an additional $0.25 per ton (added to the Tipping Fee), IESI shall sponsor an annual household hazardous waste collection event in coordination with the Department of Environmental Affairs. At no additional cost to the Parish, IESI shall fund fifteen (15) annual $1,000.00 scholarships for Jefferson Parish high school graduates pursuing an environmental degree at an accredited university. Preference for available scholarships shall be given to Jefferson Parish high school graduates that are within a five-mile radius of the Landfill, and thereafter to other qualifying Jefferson Parish high school graduates meeting said requirements.

## III.   SPECIAL TERMS AND CONDITIONS

Subsurface Conditions – Prior to entering into this Agreement, IESI acknowledges that it visited the Expansion Area, reviewed the Phase IV drawings in the RFP and Permit and

JP_JPLF_00032327

the geotechnical analysis given to IESI by the Parish, and has fully acquainted itself with all surface and subsurface conditions as they may exist so that it may fully understand the facilities, difficulties, and restrictions attending to the execution of the Service/Work under this Agreement through the review of such documentation. IESI also acknowledges and agrees that it has thoroughly examined and is familiar with the Contract Documents. The failure or omission of IESI to receive or examine any form, instrument, drawing, or document or to visit the site and acquaint itself with the conditions there existing, shall in no way relieve IESI from any obligation with respect to this Agreement. Signing of this Agreement shall be considered prima facie evidence that IESI has made such examination and is satisfied as to the conditions to be encountered in performing the services and Service/Work and as to requirements of the Contract Documents.

Any test and boring data in connection with subsurface conditions which have been completed by the Parish or its engineers and furnished to IESI shall not be considered as fully representative of subsurface conditions existing throughout the area tested, it being understood that said data is furnished to IESI for its convenience only and IESI shall be solely responsible for conducting its own boring explorations which it deems necessary in connection with the execution of this Agreement. The Parish acknowledges that IESI has relied on such data provided by the Parish in connection with the execution of this Agreement.

No claims shall be made against the Parish for additional compensation due to unforeseen subsurface conditions arising during the progress of the Service/Work and which might be in variance with the Parish's boring data.

In the event that IESI comes into contact with unforeseen subsurface conditions upon the execution of the Service/Work, IESI reserves the right to negotiate with the Parish regarding the method in which to proceed and the change in design and/or method while also maintaining the same amount of airspace in order to continue the Service/Work. IESI acknowledges and agrees that any such variance in the methods or design shall be completed by IESI at no additional cost to the Parish.

Private Property - IESI shall not enter upon private property for any purpose without first obtaining permission from the owners and lessees. IESI shall use every precaution necessary for the preservation of all public and private property, monuments, highway signs, telephone lines, other utilities, etc., along and adjacent to the Service/Work; shall use every precaution necessary to prevent damage to pipes, conduits, and other underground structures; and shall protect carefully from disturbance or damage all land monuments and property marks until the private property owner or his authorized agent has witnessed or otherwise referenced their location and shall not remove them until directed.

Utilities - IESI must obtain all necessary information in regard to existing utilities, and shall give notice in writing to the owners or the proper authorities in charge of streets, gas, water, pipes, electric, sewers, and other underground structures, including conduits, railways, poles and pile lines, manholes, catch basins, fixtures, appurtenances, and all other property that may be affected by IESI's operations, at least forty-eight (48) hours before its operations will affect such property. IESI shall not hinder or interfere with any person in the protection of such Service/Work or with the operation of utilities, at any time. When property or the operation of railways, telephone lines, telegraph lines, or other public utilities are endangered, IESI, shall, at its own expense, maintain flagmen or watchmen and other necessary precautions to avoid interruption of service or damage to life or property, and it shall promptly repair, restore, or make good any injury or damaged caused by its negligent operations in an acceptable manner. IESI must also obtain all necessary information in regard to the installation of new cables, conduits, and transformers, and make proper provision and give proper notifications, so that these can be installed at the proper time without delay to IESI or necessary inconvenience to the Parish or other party.

Parish Option - In the event IESI fails or refuses to supply any of the above services defined in the Scope of Services, then in that event the Parish may purchase or obtain the

JP_JPLF_00032328

materials or services from another available source.  The difference in price will be charged against IESI.  Evidence of purchases and prices will be provided.

Origin of Materials - IESI, when requested by Parish, shall furnish a statement of the origin, composition, and manufacture of materials to be used in providing services and/or construction of the Service/Work together with samples, which samples may be subjected to the tests provided for in the project specifications to determine their quality and fitness for the Service/Work.

Grant Funding – To the extent applicable, should any of the services underlying this agreement be subject to federal or state funding grants or revenue sharing allocations, IESI acknowledges and agrees that it shall comply with all legal requirements incumbent with said funding or allocation.

Materials & Supplies - The Service/Work to be done under this Agreement shall consist of the complete final design, installation, development and operation of Phase IV-A, in accordance with this Agreement, the Permit Documents, and the technical specifications, together with all authorized alterations.  IESI shall furnish, unless definitely and expressively provided to the contrary in the Contract Documents, all materials, implements, machinery, equipment, tools, supplies, transportation, and labor necessary to the prosecution and completion of the Service/Work.

IESI shall provide at a minimum, the equipment listed in Attachment B during operation of the Phase IV-A.  If at any time during the operation of Phase IV-A, any of the equipment listed in Attachment B is out of service for more than 48 hours and impairs the operation of the Landfill, replacement equipment shall be provided by IESI through a temporary rental or transfer from another IESI facility.

Discrepancies - Should any discrepancy exist between the LDEQ Permit and any of the Contract Documents, excepting this Agreement, or should any parts of the technical specifications be ambiguous or doubtful, the Parish's Engineer and/or Consulting Engineer shall decide as to the true intent and meaning.  Any Service/Work necessary to be performed to fulfill the scope of Service/Work described in this Agreement after regular service/working hours, on Sundays, or legal holidays, shall be performed without additional expense to the Parish.  Any discrepancies in the site conditions or any errors or omissions in the Permit Documents or Specifications and Drawings shall be immediately reported to the Parish's Engineer who shall promptly correct such error or omission in writing.  Any Service/Work done by IESI without Parish approval, after its discovery of such discrepancies, errors, or omissions shall be done at IESI's risk.

Plan & Drawings Submission - If requested by the Parish's Engineer, IESI shall submit with such promptness as to cause no delay in its own Service/Work or that of any other contractor at the Landfill, at least five (5) copies of all design, shop or setting drawings and schedules required for the Service/Work of the various trades, including piping, reinforcing steel, stone, masonry and tile, plumbing and heating, and mechanical and electrical Services/Work.  These plans shall be submitted to the Parish's Engineer in sufficient time to allow discussion and review prior to beginning the Service/Work they cover, and any delay in the services/service/work occasioned by the non-approval of the plans shall not be cause for any extension of approved contract dates or times.  The Parish's Engineer shall review the plans with reasonable promptness, and three (3) copies will be returned approved or corrected.  When requested by the Parish's Engineer, IESI shall re-submit five (5) corrected record copies, and furnish such other copies that may be needed.  The Parish's Engineer's approval of such drawings or schedules shall not relieve IESI from responsibility for deviation from these Contract Documents unless it has, in writing, called the Engineer's attention to such deviation at the time of submission, nor shall it relieve IESI from responsibility for errors of any sort in shop drawings or schedules.

The all-inclusive Tipping Fee as set forth in this Agreement shall cover the cost of furnishing all design or shop drawings, and IESI will be allowed no extra compensation for such drawings.

20

JP_JPLF_00032329

Amendments to Plans & Specifications - IESI shall keep an accurate record, in a manner approved by the Parish's Engineer, of all changes in the Contract Documents during installation and development. In Service/Work concerning underground utilities, IESI shall keep an accurate record in a manner approved by the Parish's Engineer of all valves, fittings, etc. Before the Service/Work is accepted by the Parish, and said acceptance is recorded, IESI shall furnish the Parish's Engineer a copy of this record.

Timing -- Subject to Force Majeure; litigation or injunctive relief filed by or on behalf of Waste Management in a court of competent jurisdiction by or on behalf of Waste Management; and delays in approval caused by the Parish, IESI shall conduct the Service/Work in such a manner and with sufficient materials, equipment and labor as is considered necessary to insure its completion within the time limit specified. Should IESI fail to start the Service/Work within the time limit specified herein or at any time fail to provide a sufficiency of skilled service/workmen, materials, and equipment, or should the Parish's Engineer in his reasonable discretion at any time determine that the Service/Work will not be completed within the time specified due to a verifiable failure on the part of IESI to perform the Service/Work, or should IESI become bankrupt or insolvent, or fail to remedy or correct defects or deficiencies within reasonable time, IESI shall be deemed to have violated the provisions of this Agreement, and the Parish may then proceed to terminate this Agreement as herein elsewhere provided.

Self-Help – Excepting emergency situations such that the Parish shall have immediate self-help rights, and the immediate assessment of Liquidated Stipulated Damages contained in Section IV (M) hereof, Parish shall provide twenty-four (24) hours written notice to IESI of any failure to comply with any term, provision or condition stated herein. Upon failure of IESI to correct any deficiency or to comply with any notice given in accordance with the provisions hereof, the Parish shall have the alternative right, instead of assuming charge of the entire Service/Work, to place additional forces, tools, equipment, and materials on parts of the Service/Work. The cost incurred by the Parish in carrying on such parts of the Service/Work shall be payable by IESI; such Service/Work shall be deemed to be carried on by the Parish on account of IESI. The Parish may retain the amount of the cost of such Service/Work from any sum or sums due, or to become due IESI under this Agreement.

Additional Contracts - The Parish may award other contracts for work or services, and IESI shall fully cooperate with any such contractors performing such work or services. Accordingly, IESI shall carefully fit its own Service/Work to that provided under other contracts as may be directed by the Parish. IESI shall not commit or permit any act which will interfere with the performance of the Service/Work by any other contractors.

Whenever other work or services that are being done by the Parish's forces or by other contractors are contiguous to Service/Work covered by this Agreement, the respective rights of the various interests involved shall be established and prioritized by the Parish's Engineer.

Regulatory Compliance - IESI shall comply with all applicable regulatory requirements. IESI shall perform or procure, at no cost to the Parish, all inspections required by permits, regulations, or the Agreement. IESI shall, at no cost to the Parish, accommodate inspections and tests by the Parish, State or other regulatory agencies to verify compliance with permits, laws, regulations or this Agreement.

Safety Standards – IESI shall provide and maintain the Landfill in a neat, sanitary condition and shall provide accommodations for the use of its employees as may be necessary to comply with the rules and regulations of the State Board of Health or of the other authorities having jurisdiction, and shall permit no public nuisance.

Injury to Plant Materials - IESI shall assume the responsibility of replanting those landscaped areas of the Existing Landfill Units which shall be watered, fertilized, and cultivated until they are in a growing condition for which it is responsible for maintaining in accordance with the Contract Documents. All such restorations contemplated under this Section shall be completed in an acceptable manner, and at IESI's sole cost and expense, unless otherwise agreed herein.

JP_JPLF_00032330

Signage - Wherever traffic is maintained through or over any part of the project, IESI shall clearly mark all traffic hazards.

Rights of Way - The Parish will furnish IESI with all necessary rights of way for the prosecution of the Service/Work. The rights of way herein referred to shall be taken to mean only permission to use or pass through the location or space in any street, highway, or public or private property in which IESI is to prosecute the Service/Work.

Parish Access - The Parish shall have the right to access and inspect at any time, any and all portions of the Service/Work, provided such rights granted herein do not hamper IESI or prevent its efficient completion of this Agreement. Such access and inspection will not in any manner violate any part of this Agreement, or be construed as constituting an acceptance of any part of the Service/Work in variance to the terms, conditions and covenants provided herein and shall occur in accordance with Section IV(J) hereof.

Accessibility for Private Waste Haulers - IESI acknowledges that, subject to the limitations of the Permit and LDEQ regulations, private licensed waste haulers have access to the Jefferson Parish Landfill. As a publicly-owned facility, IESI shall not utilize its position as Landfill Operator to unfair advantage over competing private waste hauling companies. Any quotes for disposal services requested by private companies for any Request for Quotes or Bids requested by a Third Party shall be equal to any disposal quotes provided by IESI to the same Third Party and/or provided by IESI to any other private company at the request of such Third Party. IESI shall not exclude any private waste hauler from a potential bid by not providing a quote for disposal services in a timely fashion; provided, however, that IESI may refuse to provide any such quote in the event that such private waste hauler is not in good payment standing with IESI. IESI shall disclose the tipping fee, discounts or surcharges, hauling fees, rental of containers, containers storage fees, or any other fees for any quotes to private waste hauling companies or other Third Party waste generators or customers at the request of Jefferson Parish. IESI reserves the right to refuse access to the Landfill to any private waste hauling company that is not in good payment standing.

Lab Testing - The Parish Engineer shall approve and IESI shall pay for the services of a competent testing laboratory of recognized standing for all testing as specified in the Contract Documents.

Acceptance & Defects -- No provision in the Contract Documents nor partial or entire use of the Service/Work by the Parish shall constitute acceptance of Service/Work not in accordance with the LDEQ Permit and Contract Documents, nor shall it relieve IESI of liability in respect to any express warranties or responsibilities for faulty materials or service/workmanship. IESI shall remedy any defects in the Service/Work and pay for any damage to other Service/Work resulting therefrom which shall appear within a period of three (3) years from the date of final recorded acceptance unless a longer period is specified herein. The Parish will give notice of observed defects within three (3) business days after inspection and discovery of said defects.

## IV. GENERAL CONDITIONS

(A) REQUIREMENTS OF IESI – IESI agrees that it shall: (i) maintain a permanent place of business in Jefferson Parish where operational records will be kept; (ii) Obtain and maintain adequate equipment to perform the Scope of Work properly and expeditiously; (iii) have suitable financial status to meet the obligations of this Agreement; (iv) have necessary contractor licenses and experience on appropriate waste disposal projects of similar character and magnitude; and (v) provide sufficient numbers and levels of LDEQ – Certified Landfill Operators on-site during all Hours of Operation as provided herein and shall comply with the provisions of LAC 46:XXIII.

(B) LEGAL COMPLIANCE – IESI shall comply with the Permit Documents and any rules and regulations issued by the LDEQ unless superseded by the promulgations of

22

JP_JPLF_00032331

the LDEQ. Compliance with the above referenced documents will ensure that the Landfill is constructed, managed, operated, closed and maintained in accordance with LDEQ standards, for a TYPE I/II Landfill and in accordance with the LDEQ Permit. Should IESI desire to amend the Permit Documents for its convenience, the modification thereof shall be performed at the sole cost of IESI, with the written approval of the Parish. IESI shall be responsible for complying with the provisions of all applicable NPDES permits, the wastewater discharge permits, the air quality permits, in addition to the LDEQ permits. IESI shall be solely responsible for adhering to all licenses, permits and regulations required, and shall obtain and maintain all necessary permits, certificates and licenses required to perform the Service/Work and fulfill the requirements of this Agreement. IESI shall further comply with all laws, rules, and ordinances governing the underlying services to be provided hereunder. IESI shall not exclude form participation in, deny the benefits of, or subject to discrimination under any program or activity, any person in the United States on grounds of race, color, national origin, or sex; nor discriminate on the basis of age under the Age Discrimination Act of 1975, or with respect to an otherwise qualified handicapped individual as provided in Section 504 of the Rehabilitation Act of 1973, or on the basis of religion, except that any exemption from such prohibition against discrimination on the basis of religion as provided in the Civil Rights Act of 1964, or Title VII of the Act of April 11, 1968, shall also apply.

(C) <u>MATERIALS & EQUIPMENT</u> -- Except as specifically provided herein, IESI shall provide all materials and equipment necessary to perform under this Agreement. All equipment and materials shall be as shown in Attachment B. Samples of materials where furnished under this Agreement shall be submitted for reasonable approval to the Parish's Engineer in advance of purchase, and shall not be unreasonably withheld, conditioned or delayed. Whenever a material or article required hereunder is specified by the Contract Documents by using the name of a proprietary product or a particular manufacturer or vendor, any material or article which shall perform adequately the duties imposed by the general design will be considered equal and satisfactory substitutes, provided the material or article shall be of equal or better quality, form and function, and such proposed substitution shall be pre-approved by the Parish's Engineer. The Parish's Engineer or his designee shall have the exclusive authority to decide any questions which may arise regarding quality or acceptability of materials furnished, Service/Work performed, provided that such determination is made in his reasonable discretion. All material to be provided by IESI shall meet the permit specifications, and if materials are incorporated in the work or services underlying this Agreement and do not meet the permit specifications, the Parish's Engineer shall order the same to be removed forthwith, and in case of the neglect or refusal of IESI or those employed by IESI to remove such materials, the Parish Engineer shall cause the same to be removed at the expense of IESI and the expenses for removal and other incidental expenses thereto shall be reimbursed to Parish within thirty (30) days receipt of invoices accompanied by supporting documentation.

Materials shall be stored so as to insure the preservation of their quality and fitness for service or work, and in a manner that leaves the material accessible to inspection prior to utilization. Materials or equipment may not be stored on the site in a manner which will interfere with the continued operation of the Expansion Area or maintenance of the Existing Landfill Units or the future relocation of the Waggaman Canal.

(D) <u>STAFFING</u> - IESI shall hire and provide adequate trained, skilled and professional personnel at the Landfill to comply with LDEQ regulations, and to complete the Service/Work subject of this Agreement. IESI acknowledges and agrees that all quantities provided in this Agreement are estimates, and the Parish reserves the right to increase or decrease stated quantities, and such increase or diminution of estimated values shall in no way vitiate this Agreement. IESI shall employ and keep at the Landfill at all hours of operation a qualified and competent landfill manager or foreman as its representative. All service/workmen employed in the performance of this Agreement shall be skilled in their particular trades. Any foreman, or

23

service/workman employed pursuant to this Agreement who disregards orders or instructions, does not perform his/her service or work in a proper and skillful manner, or is otherwise objectionable to the Parish in the Parish's reasonable judgment, shall be removed from service or work hereunder and shall be replaced by a suitable foreman or service/workman, with equal or greater skills, expertise and training. Any and all subcontractors hired by IESI to perform any of the services as provided herein shall be adequately supervised, and it shall IESI's responsibility to insure that any such subcontracted work/service shall be performed and completed in a proper and workmanlike manner, in accordance with scheduled times and with due and proper coordination. IESI shall provide the personnel listed in Attachment C at all times during Landfill operating hours. Failure of IESI to maintain the necessary qualified personnel on the service/work shall be considered cause for termination of this Agreement by the Parish.

(E)  CONTRACT ADMINISTRATOR - The Parish Director of Environmental Affairs is designated as the Parish Contract Administrator under this Agreement. The Contract Administrator shall designate in writing one or more persons who shall act as project managers, who shall be the key points of contact between the Parish and IESI.

(F)  PARISH'S LANDFILL ENGINEER – The Parish's Engineer, or his authorized representative, shall decide any and all questions which may arise as to the quality or acceptability of materials furnished in accordance with the permit specifications and services/service/work performed, and as to the manner of performance and rate of progress of the services/work, and shall decide all questions which may arise as to the interpretation of the Contract Documents, and all questions as to the acceptable completion of this Agreement in his reasonable and good-faith opinion. The Parish's Engineer or its authorized representative shall have authority to suspend operations at any time when the Service/Work, in his good-faith and reasonable opinion, is not being carried out in conformity with the Contract Documents and all permits.

The Parish's Engineer shall have the right to make alterations in the line, grade, plans, form, or dimensions of the Service/Work herein contemplated. Should it become necessary, for the best interest of the Parish, to make changes in excess of the Service/Work required by the Contract Documents, the same shall be covered by supplemental agreement either before or after the commencement of the Service/Work and without notice to the sureties. If such alteration diminishes the quantity of Service/Work to be done, they shall not constitute a claim for damages for anticipated profits for the Service/Work dispensed with, but when the reduction in amount is a substantial and material part of the Service/Work contemplated, IESI shall be entitled to compensation as determined mutually by IESI and the Parish's Engineer for overhead and equipment charges which IESI may have incurred in expectation of the quantity of Service/Work originally estimated, unless specifically otherwise provided herein; said mutual determination shall be reduced to written supplemental agreement or amendment hereto, which shall be subject to Parish Council approval. Conversely, if the alterations materially and substantially increase the amount of Service/Work, the parties shall in good-faith negotiate a supplemental agreement or amendment hereto, which shall be subject of Parish Council approval.

Without invalidating this Agreement, the Parish's Engineer with the prior approval of the Parish Council via resolution duly adopted may order extra Service/Work or make non-material changes by altering, adding to, or deducting from the Service/Work, and the consent of the surety being first obtained when necessary or desirable. All the service/work of the kind agreed upon shall be paid subject to the Compensation provided for in Section IV (X) hereto, and no claims for any extra Service/Work or materials shall be allowed except as where provided herein.

Where such price or sum cannot be agreed upon by both parties, or where this method of payment is impracticable, the Parish may order IESI to do such services/service/work on a Force Account Basis.

1.  For any equipment used that is owned by IESI, IESI shall be allowed a monthly rental based upon the latest prevailing rental price, but not to

24

exceed a monthly rental price as determined by the Associated Equipment Distributors (A.E.D. Green Book).

2.    IESI shall also be paid the actual costs of transportation for any equipment which it owns and which it has to transport to the project for the extra Service/Work.

3.    If IESI is required to rent equipment for extra Service/Work, but not required for contract items, it will be paid the actual cost of rental and transportation of such equipment, to which zero (0) percent shall be added. The basis upon which rental costs are to be charged shall be agreed upon in writing before the Service/Work is started.   Actual rental and transportation costs shall be obtained from receipted invoices and freight bills.   Rental price shall not exceed the monthly rental prices as determined by the A.E.D. Green Book.

4.    No compensation for equipment expenses incurred in executing extra Service/Work, other than herein specifically mentioned, will be allowed.

A record of extra Service/Work done on Force Account basis shall be submitted to the Parish's Engineer on the day following the execution of the Service/Work, and no less than three copies of such record shall be made on suitable forms and signed by both the Parish's Engineer's representative on the project and IESI.

Payment for extra Service/Work of any kind will not be allowed unless the same has been ordered in writing by the Parish's Engineer.

(G)  <u>PROJECT REPRESENTATIVE</u> – The Parish's Project Representative will be authorized to inspect all service/work done and materials furnished.  Such inspections may extend to all or to any part of the Service/Work and to the preparation or manufacture of the materials to be used.  He may be stationed on the Service/Work to report to the Parish's Engineer as to the progress of the Service/Work and the manner in which it is being performed, to call attention whenever it appears that materials furnished or Service/Work performed fails to fulfill requirements of the Contract Documents.  The Project Representative will have authority to reject materials or to suspend services/service/work until the question at issue can be referred to and settled by the Parish's Engineer.   The Project Representative will not be authorized to revoke, alter, enlarge, or release any requirements of the Contract Documents, nor to approve or accept any portion of the services/service/work, nor will he be authorized to issue instructions contrary to this Agreement.  He will in no case act as foreman, nor will he interfere with management of the services/service/work.

(H)  <u>WEEKLY INSPECTIONS</u> - The Parish Landfill Engineer, the Project Representative and/or the Parish's designated consultant shall conduct (at a minimum) weekly inspections of the entire Landfill to ensure compliance with the Contract Documents, including such items as operations, maintenance, and administrative requirements. IESI's landfill operator shall accompany the Parish or its representative on the inspections of the site.  Any deficiencies or potential problems encountered during the inspections shall be repaired or corrected by IESI.

(I)  <u>CORRESPONDENCE REPORTING</u> – IESI throughout the term of this Agreement shall immediately inform the Landfill Engineer verbally, via telephone, or email, and promptly within one (1) day of receipt, send copies of all correspondence sent or delivered and received from any agency of the State or Federal Government to the Landfill Engineer or Director of the Jefferson Parish Department of Environmental Affairs.  In addition, any verbal citation or violation by any agency, including any verbal indication of citation or violation by any agency shall be verbally transmitted to the Landfill Engineer or Director of the Jefferson Parish Department of Environmental Affairs via telephone, or email immediately and which shall be followed by written explanation within two (2) days receipt of said verbal citation.

(J)  <u>PARISH ACCESS</u> - The Parish, and its duly authorized representatives, including consultants, shall have access to the Landfill at all times at their sole risk when they enter the Landfill after hours or when there are no IESI personnel present.

25

(K) PAYMENT AND PERFORMANCE BOND – To insure the faithful performance of each and every condition, stipulation, and requirement of this Agreement and to indemnify and save harmless the Parish from any and all damages, either directly or indirectly, arising out of any failure to perform same, IESI shall procure three (3) separate performance bonds in accordance with this Section IV.K. to cover the cost of the construction of the cells, final cover of the Expansion Area, and the operation and maintenance of the Landfill.

Construction Bond: Immediately upon the execution of this Agreement or one (1) year prior to beginning each cell construction project, IESI shall furnish a surety bond in the amount of $6,000,000.00 representing the total estimated construction cost for two cells of Phase IV-A. This Agreement shall not be in force or binding upon the Parish until such a satisfactory bond in the amount of $6,000,000.00 has been provided. Each "cell construction project" shall cover the construction of two (2) cells. After each cell construction project is completed, the corresponding surety bond shall be terminated.

Final Cover Bond: Beginning on January 30, 2014 and on each January 30 thereafter during the term of this Agreement, IESI shall furnish a bond for the final cover construction cost in proportion to the volume of Phase IV-A which was filled during the preceding year. The Parish and IESI agree that the total volume of Phase IV-A is 5,700,000 cubic yards and that the total estimated construction cost of the Phase IV-A final cover is $6,960,000.00. By January 15 of each year, IESI shall present a report to Jefferson Parish documenting the volume of Phase IV-A filled during the preceding year and a calculation of the corresponding proportion of final cover construction cost. In the event that the Parish disagrees with IESI's calculation of the volume consumed, Jefferson Parish shall submit a letter accepting the calculations or presenting any data to support a different calculation by January 30. If accepted by Jefferson Parish, IESI shall submit a bond in the amount of the calculated prorated final cover construction cost with 15 working days of acceptance of the volume consumed calculation. The formula for amount of the final cover bond shall be $6,900,000.00 x (volume consumed/total volume).

Landfill Maintenance and Operation Bond: IESI shall also provide an annual payment and performance surety bond in the amount of at least $5,424,550.00, which shall be the Tipping Fee multiplied by 265,000 tons, or the maximum tonnage as agreed upon by the Parties in accordance with Section IV.X. hereof. The annual surety bond will be provided not later than thirty days prior to the date on which IESI first accepts Solid Waste for disposal at the Expansion Area. The annual payment and performance bond shall be renewed annually on January 30 and the amount increased or decreased as the tipping fee escalates or de-escalates as provided in this Agreement.

The Surety shall be selected by IESI, subject to the approval of the Parish, and the cost of the bond(s) shall be paid for by IESI.

The surety bond(s) shall be written by a surety or insurance entity currently on the U.S. Department of Treasury Financial Management Service list of approved bonding companies which is published annually in the Federal Register, or by a Louisiana domiciled insurance company with at least an A rating in the latest printing of the A.M. Best's Key Rating Guide to write individual bonds up to ten percent of policyholder's surplus as shown in the A.M. Best's Key Rating Guide or by a surety company that complies with the requirements of LSA-R.S. 38:2219.

No surety company will be accepted as bondsman which has not a permanent agent or representative in the State upon whom notices referred to in this Agreement may be served; the bond(s) shall be countersigned by a person who is contracted with the surety company or bond insurer, and who is licensed as an insurance agent in Louisiana, and who is residing in this State. Service of said notice on said agent or representative in the State shall be equal to service of notice on the president of the surety company, or such other officer as may be concerned.

JP_JPLF_00032335

Should IESI's Surety, even though approved and accepted by the Parish, subsequently remove its agency or representative from the State or residency or license in this State or become insolvent, bankrupt, or otherwise fail, IESI shall furnish a new bond(s) from another company approved by the Parish, at no additional cost to the Parish. The new bond(s) shall be executed under the same terms and conditions as the original bond.

IESI's bondsman shall obligate himself to all the terms and covenants of this Agreement and of documents covering the services executed hereunder. The Parish reserves the right to order extra Service/Work or make changes by altering, adding to, or deducting from the Service/Work under the conditions and in the manner hereinbefore described without notice to IESI's surety and without in any manner affecting the liability of bondsman or releasing him from any of his obligations hereunder.

The bond(s) shall also secure for the Parish the faithful performance of this Agreement in strict accordance with the LDEQ Permit. It shall protect the Parish against all lien laws of the State and shall provide for payment of reasonable attorney's fees for enforcement of this Agreement and institution of concursus proceedings, if such proceedings become necessary. Likewise, it shall provide that if the Parish or its Engineer is put to labor or expense by enforcement of contract and institution of concursus proceedings or through delinquency or insolvency of IESI, they shall be equitably paid for such extra expenses and services involved.

The surety of IESI shall be and does hereby declare and acknowledge himself by acceptance to be bound to the Parish as guarantor, jointly and in solido with IESI, for fulfillment of terms of the foregoing conditions.

(L) SUBCONTRACTORS - IESI shall not award any Service/Work to any subcontractor without prior written approval of the Parish, which approval will not be given until IESI submits to the Parish a written statement concerning the proposed award to the subcontractor, which statement shall contain such information as the Parish may require.

If such consent is given, IESI will be permitted to sublet a portion of the Service/Work, but shall perform with his own organization Service/Work amounting to at least 50 percent of the total contract cost. Any items designated in the contract as "specialty items" may be performed by subcontract and the costs of such may be deducted from the total cost before computing the amount of Service/Work required to be performed by IESI with its own organization.

Except with the express written approval of the Parish, an approved subcontractor shall not subcontract any portion of his authorized Service/Work.

If IESI shall sublet any part of this Agreement, IESI shall be as fully responsible to the Parish for the acts and omissions of his subcontractor, and of any persons either directly or indirectly employed by this subcontractor, as it is for the acts and omissions of persons directly employed by IESI.

IESI shall include, in any subcontract, the provisions contained in this Agreement IESI further agrees to guarantee and be liable to the Parish for all services performed under any such contract.

IESI agrees not to subcontract any part of the services specified in this Agreement to other state agencies, political subdivisions, or any employee of a state agency or political subdivision.

(M) LIQUIDATED ("STIPULATED") DAMAGES - It is hereby understood and mutually agreed, by and between IESI and the Parish, that the time of completion is an essential condition of the Agreement; and it is further mutually understood and agreed that if IESI shall subject to Force Majeure, litigation or injunctive relief filed by or on behalf of Waste Management in a court of competent jurisdiction; and delays in approval occasioned by the Parish, neglect, fail, or refuse to complete the

JP_JPLF_00032336

Service/Work within the time specified, or any proper extension thereof granted by the Parish, then IESI does hereby agree, as a part consideration for the awarding of the Agreement, to pay to the Parish as liquidated ("stipulated") damages for delay (but not as a penalty) the tipping fees times 1,000 tons for each and every calendar day Phase IV-A is not ready for receipt of waste.

It is understood and agreed that time is of the essence to the Agreement, and the above sum shall be payable as liquidated damages, and not as a penalty, the said sum being specifically herein agreed upon in advance as the measure of damages to the Parish on account of such delay in the completion of the Service/Work.

As such a breach would cause serious and substantial damage to the Parish and its occupants, and the nature of the Agreement would render it impracticable or extremely difficult to fix the actual damage sustained by the Parish for such breach, it is agreed that in the case of such breach, the Parish may elect to collect liquidated damages or take action to correct the deficiencies. Any action to seek such remedies shall not be construed as a waiver of any legal rights the Parish may have as to any subsequent breach under this Agreement.

If IESI fails to provide the Solid Waste disposal services required by the Agreement for a period in excess of three consecutive, scheduled, service/working days, the Parish may take the following actions:

    (a)    Employ such means as it may deem advisable and appropriate to continue service/work until such matter is resolved, and the proposer is able to carry out his operations under the Agreement.

    (b)    Deduct any and all operating expenses incurred by the Parish from any money due or to become due to IESI and collect the amount due, either from IESI or surety.

IESI shall be responsible for compliance with all applicable Federal, State and local regulations, laws, and ordinances in the performance of its Service/Work. IESI shall be responsible for all fines and penalties resulting from its actions or Service/Work associated with the operation of the Landfill and maintenance of the Landfill. The Parish shall notify IESI, in writing, of its intent to assess penalties. IESI shall have ten (10) days within which to respond, in writing, to this notification.  The following shall be assessed as Liquidated Damages and not penalties for the following defined violations:

    1.    Failure to provide 6 inches of daily cover or other approved alternative daily cover in accordance with LDEQ Permit, within 24 hours of notification by the Parish or State.
    $3,000.00 per day until corrected

    2.    Failure to provide 12 inches of interim cover in accordance with LDEQ Permit, within 24 hours of notification by Parish or State.
    $3,000.00 per day until corrected

    3.    Failure to maintain serviceable all-weather access road, within 2 days of notification by Parish or State.
    $3,000.00 per day until corrected

    4.    Failure to enforce salvaging and/ or scavenging prohibitions, within 24 hours of notification by the Parish or State.
    $1,000.00 per occurrence

    5.    Failure to police and pick-up litter in accordance with this RFP, within 24 hours of notification by Parish.
    $1,000.00 per day until corrected

    6.    Failure to maintain proper drainage for contaminated and non-contaminated water, within 24 hours of notification by the Parish or State.

JP_JPLF_00032337

$3,000.00 per day until corrected

7.     Failure to submit to the Parish copies of documents or correspondence from regulatory agencies within 24 hours of receipt.
$5,000.00 per day until corrected

8.     Failure to maintain control of landfill odors, when detected off-site by Jefferson Parish Environmental Affairs personnel or authorized contractors, and verified to the reasonable determination of the Landfill Engineer to emanate from the Landfill.
$3,000.00 per day until corrected

9.     Failure to conduct an annual aerial photograph and photogrammetric mapping and topographic survey each year and submit a report documenting volume capacity analysis to the Parish.
$5,000.00 per occurrence

10.    Failure to provide continuous estimates, on a monthly basis, the remaining capacity of the Phase 4A Area (in cubic yards and tons of solid waste), and the in-place compacted density achieved (in pounds per cubic yards), amount of daily and final cover used (in cubic yards), and an estimate of the remaining Phase 4A lifespan (in months).
$1,000.00 per occurrence

11.    Failure to provide documentation on the certification/calibration of the scales within 30 days after the event.
$5,000.00 per occurrence

12.    Failure to provide monthly waste disposal reports and out-of-Parish waste disposal report.
$5,000.00 per occurrence

13.    Failure to perform odor monitoring and control activities as required by the existing Landfill Odor Management Plan.
$5,000.00 per day until corrected

14.    Failure to perform bird control activities as required by the existing Bird Control Manual for the Jefferson Parish Landfill.
$5,000.00 per day until corrected

15.    Failure to comply with environmental permits and related plans including but not limited to the solid waste permit, LPDES permit, air emissions permit, SWPPP, SPCC Plan, groundwater monitoring plan, or Wastewater Discharge Authorization (Sewerage).
$5,000.00 per occurrence

If IESI fails to perform the above responsibilities within the time period listed, the Parish may elect to assess Liquidated (Stipulated) Damages in the amount specified. Such damages have been stipulated for mere delay.  It is further agreed that expiration of the action period or corrective period referenced in Items 1-15 above shall, ipso facto, constitute an event of default and a putting in default, and the Parish need not formally place IESI in default, IESI expressly waiving any and all notice(s) of default hereunder.  The Parish may extend the time period for compliance due to weather conditions and other events beyond IESI's control.  Liquidated (Stipulated) Damages will not be assessed if IESI corrects the deficiencies within the time specified.  However, should the Parish be assessed a fine or penalty by a Federal, or State agency resulting from the proposer's operation and maintenance of the Landfill, the proposer shall reimburse such amount to the Parish as Liquidated (Stipulated) Damages under the Agreement. Such Liquidated (Stipulated) Damages that the Parish elects to collect shall be deducted from the monthly payment due under this Agreement.  If the Parish is assessed a fine or penalty by a Federal, or State agency

JP_JPLF_00032338

resulting from IESI's operation and maintenance of the Landfill, IESI shall reimburse such amount to the Parish as Liquidated (Stipulated) Damages under this Agreement.

(N) <u>INDEMNITY</u> – IESI shall indemnify, defend and hold Parish harmless from and against any liability, fines, penalties, or other obligations caused by IESI's failure to comply with Federal, State, or Local Regulations covering or pertaining to the Service/Work covered by this Agreement; provided, however, that IESI shall not be liable for and IESI's indemnification obligations shall not apply to any liability, fines, penalties or other obligations relating to IESI's failure to comply with Federal, State or Local Regulations covering or pertaining to the Existing Landfill Units, except as provided in Section II(B)(5)(C) hereof.

Except as provided in Section II(B)(5)(C) hereof, IESI shall indemnify and save harmless the Parish from any and all suits, costs, penalties, or claims for infringement by reason of IESI's use or installation of any patented design, device, material, or process, or any trademark or copyright in connection with the Service/Work agreed to be performed under this Agreement, and shall indemnify and save harmless the Parish for any costs, expenses, and damages which it may be obliged to pay by reason of any such infringement at any time during the prosecution or after completion of the Service/Work.

To the fullest extent permitted by law and except as provided in Section II(B)(5)(C) hereof, IESI agrees to protect, defend, indemnify, and save the Parish, its agents, officials, employees, servants, including volunteers, harmless from and against any and all claims, demands, loss or destruction of property, actions, and cause of action of every kind and character, including but not limited to claims based on negligence, strict liability, and absolute liability which may arise in favor of any person or persons on account of illness, disease, loss of property, services, wages, death or personal injuries to the extent they are caused by IESI's negligence or willful misconduct in the performance or non-performance under this Agreement, except any and all claims, demands, loss or destruction of property, actions, and cause of action of every kind and character, including but not limited to claims based on negligence, strict liability, and absolute liability which may arise in favor of any person or persons on account of illness, disease, loss of property, services, wages, death or personal injuries to the extent they are caused by the negligence or willful misconduct of the Parish, its employees or agents or Waste Management, its employees or agents.

Further, IESI hereby agrees to indemnify, the Parish for all reasonable expenses and attorneys' fees incurred by or imposed upon the Parish in connection therewith for any loss, damage, injury or other casualty. IESI further agrees to pay all reasonable expenses and attorneys' fees incurred by the Parish in establishing the right to indemnify pursuant to the provisions of this section. IESI agrees to investigate, handle, respond to, provide defense for and defend any such claims, demand, or suit at its sole expense and agrees to bear all other costs and expenses related thereto, even if such are groundless, false or fraudulent, except for any such claims, demands or suits to the extent they are caused by the Parish or Waste Management.

To the fullest extent permitted by law and as provided in Section II(B)(5)(C) hereof, the Parish agrees to protect, defend, indemnify, and save IESI, its agents, officials, employees, servants, including volunteers, harmless from and against any and all claims, demands, loss or destruction of property, actions, and cause of action of every kind and character, including but not limited to claims based on negligence, strict liability, and absolute liability which may arise in favor of any person or persons on account of illness, disease, loss of property, services, wages, death or personal injuries to the extent they are caused by (i) the Parish's negligence or willful misconduct in the performance or non-performance under this Agreement or (ii) Waste Management's failure to operate, maintain, construct and/or close the Existing Landfill Units in accordance with the LDEQ Permit and applicable law, except any and all claims, demands, loss or destruction of property, actions, and cause of action of every kind and character, including but not limited to claims based on negligence, strict liability, and absolute liability which may arise in favor of any person or persons on account of illness, disease, loss of property, services, wages, death or

30

personal injuries to the extent they are caused by the negligence or willful misconduct of IESI, its employees or agents.

Further, the Parish hereby agrees to indemnify, IESI for all reasonable expenses and attorneys' fees incurred by or imposed upon IESI in connection therewith for any loss, damage, injury or other casualty. The Parish further agrees to pay all reasonable expenses and attorneys' fees incurred by IESI in establishing the right to indemnify pursuant to the provisions of this section. The Parish agrees to investigate, handle, respond to, provide defense for and defend any such claims, demand, or suit at its sole expense and agrees to bear all other costs and expenses related thereto, even if such are groundless, false or fraudulent, except for any such claims, demands or suit that are caused by IESI.

(O) <u>DAMAGE TO PROPERTY</u> - IESI shall be held alone responsible for all injuries to persons and for all damages to the property of the Parish or others caused by or resulting from the negligent of IESI, its employees or its agents, during the progress of or in connection with the prosecution of the services/service/work, whether within the limits of the services/service/work or elsewhere and whether under this Agreement proper or as extra services/service/work.

IESI must protect and support all water and gas pipes or other conduits and buildings, walls, fences, or other properties which are liable to be damaged during the execution of Service/Work. It shall take all reasonable and proper precautions to protect persons, animals, and vehicles of the public from injury, and wherever necessary. It must, as far as practicable and consistent with good management, permit access to private and public property and leave fire hydrants, catch basins, streets, etc., free from encumbrances. It must restore at its own expense, all injured property caused by any negligent act of omission or commission on its part or on the part of its agent, including sidewalks, curbing, sodding, pipes, conduits, sewers, buildings, fences, bridges, retaining walls, tanks, power lines, or any other building or private property to a condition as good as it was when he entered upon the Service/Work.

In case of failure on the part of IESI to restore such property or make good such damage, the Parish may upon forty-eight (48) hours notice proceed to repair, rebuild, or otherwise restore such property as may be deemed necessary, and the cost thereof will be deducted from any monies due or which may become due under this Agreement. Except for anything that the Parish Engineer does in accordance with Section IV(F) hereof, IESI shall indemnify and save harmless the Parish, or the Engineers acting in behalf of the Parish, from all suits and actions that may be brought against it by reason of any injury, or alleged injury, to the person or property of another resulting from negligence or carelessness of IESI in the execution of the Service/Work, or on account of any negligent act or omission, or from improper methods or means of installation, development and management on the part of IESI, its representatives, or employees. Except for anything that the Parish Engineer does in accordance with Section IV(F) hereof, IESI shall have the sole responsibility of determining the best and proper method or means of installation, management, operation, and maintenance and the Parish, and the Engineer acting on behalf of the Parish, shall not be held responsible for determining or suggesting a method or means of installation, management, operation, or maintenance except as expressly indicated in this Agreement and/or the Attachments and/or the Contract Documents.

IESI shall re-execute any services/service/work that fails to conform to the requirements of this Agreement and other defective Service/Work that appears during the progress of the Service/Work, and shall remedy any defects due to faulty materials or Service/Work which appear within a period of three (3) years from the date of completion of this Agreement. The provisions of this article apply to Service/Work done by direct employees of IESI, and by subcontractors as well.

(P) <u>INSURANCE</u> - IESI, prior to commencing Service/Work, shall provide and maintain, for the duration of the Agreement, at its own expense, proof of the following insurance coverage by insurance companies authorized to do business in the State of Louisiana. Insurance is to be placed with insurers with an A.M. Best

JP_JPLF_00032340

rating of no less than A-VII. This requirement will be waived for service/worker's compensation coverage placed with companies who participate in the State of Louisiana Worker's Compensation Assigned Risk Pool or the Louisiana Worker's Compensation Corporation.

1.  Worker's Compensation Insurance:
    As required by Louisiana State Statute exception, employer's liability shall be $1,000,000.00 per occurrence when Service/Work is to be over water and involves maritime exposures, otherwise this limit shall be no less than $500,000.00 per occurrence.

2.  Commercial General Liability Insurance with a Combined Single Limit of $5,000,000.00 per Occurrence for bodily injury and property damage. This insurance shall include coverage for bodily injury and property damage, and indicate on the certificate of insurance the following:
    (a)  Premises -- operations;
    (b)  Broad form contractual liability;
    (c)  Products and completed operations;
    (d)  Use of contractors and sub-contractors;
    (e)  Personal Injury;
    (f)  Broad form property damage;
    (g)  Exposure, collapse and underground [XCU] coverage;
    (h)  Contractual Liability

NOTE: On the certificate of insurance the following wording is required: "The aggregate loss limit applies to each project or a copy of ISO Form CG 25 03 [ed. 11-85 or latest form] shall be submitted."

3.  Business Automobile Insurance with a Combined Single Limit of $1,000,000.00 per Occurrence for bodily injury and property damage, unless otherwise indicated. This insurance shall include for bodily injury and property damage the following coverage:
    (1)  Any automobiles;
    (2)  Owned automobiles;
    (3)  Hired automobiles;
    (4)  Non-owned automobiles;

4.  An umbrella policy or excess may be used to meet minimum requirements for all policies required herein.

All policies of insurance shall be approved by the Parish of Jefferson prior to the commencing of any Service/Work. The Parish of Jefferson has the right but not the duty to approve all insurance policies prior to commencing of any Service/Work.

Other insurance required is as follows:

5.  Environmental Impairment Liability: IESI shall take out and maintain a policy of Environmental Impairment Liability Insurance for third party bodily and/or property damage for not less than $5,000,000.00 per claim with $5,000,000.00 in aggregate. The cost of this coverage is at IESI's expense.

If at any time any of the said policies are in variance to the minimum requirements stated herein as to form or substance, upon notice and request by Parish, IESI shall promptly obtain a new policy or policies evidencing compliance hereto, and shall submit the same to the Parish of Jefferson for approval, along with a certificate thereof as provided above.

Upon failure of IESI to furnish, to deliver and maintain such insurance as above provided, this Agreement, at the election of the Parish of Jefferson,

32

may be forthwith declared suspended, discontinued or terminated. Failure of IESI to take out and/or to maintain insurance shall not relieve IESI from any liability under the contract, nor shall the insurance requirements be construed to conflict with the obligation of IESI concerning indemnification.

Any self-insured retentions must be declared to and approved by the Parish. At any time the Parish may request, that the insurer shall reduce or eliminate such self-insured retentions as such respects the Parish, its officers, officials, employees, or volunteers.

IESI shall be responsible for setting all insurance requirements and levels of coverage for any subcontractor, but in no event will such Commercial General Liability Insurance coverage be less than $1,000,000.

(Q) <u>TAXES</u> – All Federal, State and local taxes due or payable during the term of this Agreement on materials, equipment, labor or transportation in connection with this Service/Work shall be paid by IESI and shall be paid to proper authorities prior to Parish acceptance.

(R) <u>JURISDICTION</u> - This Agreement and the performance thereof shall be governed, interpreted and regulated by the laws of the State of Louisiana and the parties hereto submit to the exclusive jurisdiction and venue of the 24th Judicial District Court for Parish of Jefferson, State of Louisiana, and the parties hereby waiving any and all exceptions regarding lack of jurisdiction or improper venue.

IESI does not waive any right to remove such suit to federal court or to file suits under this Agreement in federal court based on diversity jurisdiction.

(S) <u>INDEPENDENT CONTRACTOR</u> - Parish hereby engages IESI as an independent contractor to render time contract services to and/or on behalf of Parish and IESI hereby accepts such engagement, effective upon execution of this Agreement. It is understood and agreed by the Parties hereby that IESI is entering into this Agreement in the capacity of an independent contractor and that nothing contained in this Agreement is intended to be construed as creating any other relationship between Parish and IESI.

The Parties hereto acknowledge and agree that Parish shall not:
(1)     withhold federal or state income taxes;
(2)     withhold federal social security tax (FICA);
(3)     pay federal or state unemployment taxes for the account of IESI; or
(4)     pay workman's compensation insurance premiums for coverage IESI;
(5)     be obliged to any person, IESI or corporation for any obligations of IESI arising under this Agreement.

IESI agrees to be responsible for and to pay all applicable federal income taxes, federal social security tax (for self-employment tax in lieu thereof) and any other applicable federal or state unemployment taxes.

Provided that the Parish complies with all federal, state and local laws relating to independent contractors, IESI agrees to indemnify and hold Parish harmless from any and all federal and/or state income tax liability, including taxes, interest and penalties, resulting from Parish's treatment of IESI as an independent contractor. IESI further agrees to reimburse Parish for any and all cost it incurs, including, but not limited to, accounting fees and legal fees, in defending itself against any such liability.

(T) <u>ANNUAL APPROPRIATION DEPENDENCY</u> - The continuation of this Agreement is contingent upon the appropriation of funds by the Jefferson Parish Council for the continued operation and maintenance of the Expansion Area. If the Council fails to appropriate sufficient monies to provide for the continuation of this Agreement, the Agreement shall terminate on the last day of the fiscal year for which funds were appropriated. Such termination shall be without penalty or expense to the Parish except

33

JP_JPLF_00032342

for payments which have been earned prior to the termination date. Termination of this Agreement by the Parish under the provision of this section shall not constitute an event of default. The decision to fund or not to fund this Agreement for the next fiscal year will be made by the Parish Council in its unfettered discretion based upon what the Parish Council believes to be in the best interests of the Parish. The Parish Council may in its discretion opt not to fund this Agreement for a subsequent fiscal year or years for reasons which include but are not limited to: (1) insufficiency of funding available to fund the Agreement in whole or in part for the next fiscal year; (2) more economical disposal of residential and/or commercial and industrial solid waste becomes available through alternate methods such as incineration and other developing technologies; (3) additional state or federal regulations are adopted or imposed which increase the cost or liability exposure to the Parish of owning a landfill.

(U) TERMINATION – In addition to termination for Council's failure to appropriate funds, this Agreement may be terminated for the following reasons, to wit:

    a. By the Parish if IESI should file for bankruptcy, or IESI should make a general assignment for the benefit of its creditors, or if a receiver should be appointed on account of IESI's insolvency;

    b. By the Parish should IESI persistently or repeatedly refuse or should fail (except in cases for which extension of time is provided) to supply enough properly skilled service/workmen or proper materials, or if it should fail to make prompt payment to subcontractors or for material or labor, or persistently disregards laws, ordinances, or the instructions of the Engineer, or otherwise be guilty of a substantial violation of any provision of this Agreement, then the Parish, upon the certificate of the Parish's Engineer that sufficient cause exists to justify such action, the Parish may without prejudice to any other right or remedy and after giving IESI ten (10) days written notice, terminate the employment of IESI and finish the Service/Work by whatever method it may deem expedient;

    c. By the Parish should IESI fail subject to Force Majeure, litigation or injunctive relief filed by or on behalf of Waste Management in a court of competent jurisdiction; and delays in approval occasioned by the Parish to start the Service/Work within the time limit specified herein or substantial evidence that the progress being made by IESI is insufficient to complete the Service/Work within the specified time. Before this Agreement is terminated hereunder, IESI and its surety will first be notified in writing by the Parish of the conditions which make termination of this Agreement imminent. IESI and its surety shall have ten (10) days from the receipt of notice hereunder to correct the conditions. Absent such correction, the Parish may declare this Agreement terminated and notify IESI and it surety accordingly, said termination to be effective retroactive to the date of the original notice of termination.

    d. By IESI should the Parish fail to pay IESI as specified herein after notice, and the passage of thirty (30) days from receipt of said notice of failure, without cure by Parish; or for any other breach by the Parish of its obligations under this Agreement after notice, and the passage of forty-five (45) days from receipt of said notice of failure, without cure by Parish. For non-monetary defaults by Parish, if default is of such a nature that more than forty-five (45) days shall be required to cure such default, then IESI agrees to grant Parish such reasonable additional cure time to cure said non-monetary default.

    e. By the Parish upon one hundred eighty (180) days written notice. Upon the expiration of said one hundred eighty (180) days from notice of termination, or earlier as mutually agreed by the parties, IESI shall immediately discontinue all operations. The Parish may thereafter assume the Service/Work in any lawful manner that it may elect until it is finally completed.

In case of termination, all expenses incident to ascertaining and collecting losses under the bond, including engineering and legal services, shall be assessed against the bond(s), and the Parish's sole remedy shall be collection under the bond(s).

In the event this Agreement is terminated under the provisions of paragraphs (a) – (e) above, IESI shall be entitled to compensation for services performed by IESI prior to

JP_JPLF_00032343

the effective date of termination. Neither party shall be relieved of liability and/or responsibility, to the other party for damages sustained by the non-breaching party by virtue of any breach of the Agreement by the breaching party.

In the event this Agreement is terminated under the provisions of paragraph (e) above, the Parties agree that IESI shall be entitled to compensation for the cost of its capital investment

In the event of early termination of this Agreement, all finished or unfinished document, data, studies, surveys, drawings, maps, models, photographs, and reports or other material prepared by IESI under this Agreement shall become the property of the Parish, and IESI shall be entitled to receive just and equitable compensation for any satisfactory service/work completed on such documents and other materials.

Upon early termination of this Agreement, the Parish shall be relieved of its obligations under this Agreement except for payment of service/work already performed up to and including the date of termination, and IESI shall be relieved of its obligations to maintain and operate the Landfill as provided hereunder.

(V) OWNERSHIP OF MATERIALS - All plans and drawings of the Landfill shall be the property of the Parish and all Permanent structures and improvements installed on Landfill shall become property of the Parish upon completion of development period and completion of installation. Upon completion or termination of this Agreement, all data collected by IESI and all documents, notes, drawings, tracings and files collected or prepared in connection with these services/Service/Work, except IESI's personnel, financial and administrative files, shall become and be the property of the Parish, and the Parish shall not be restricted in any way whatever in its use of such material. No other person shall have a property interest therein. In addition, at any time during the term of this Agreement, the Parish shall have the right to require IESI to furnish copies of any or all data and all documents, notes and files collected or prepared by IESI specifically in connection with this Agreement.

(W) NOTICES - Any communications to be given hereunder by either Party to the other shall be deemed to be duly given if set forth in writing and personally delivered via nationally recognized overnight courier service with tracking capabilities, or sent by mail, registered or certified, postage prepaid with return receipt requested, as follows:

| **IESI:** | IESI LA Landfill Corporation |
| | 2301 Eagle Parkway, Suite 200 |
| | Fort Worth, TX 76177 |
| | Attn: Phil Smith, Vice President |
| | |
| **COPY TO:** | IESI Corporation |
| | 2301 Eagle Parkway, Suite 200 |
| | Fort Worth, TX 76177 |
| | Attn: Thomas J. Fowler, General Counsel |
| | |
| **JEFFERSON PARISH:** | Director, Department of Environmental Affairs |
| | Jefferson Parish Public Works Facility |
| | 4901 Jefferson Highway, Suite E |
| | Jefferson, Louisiana 70121 |
| | |
| **COPY TO:** | Parish Attorney |
| | Office of the Parish Attorney |
| | 200 Derbigny, Suite 5200 |
| | Gretna, Louisiana 70053 |

Written notices hereunder delivered personally shall be deemed communicated as of actual receipt; mailed notices shall be deemed communicated five (5) days after deposit in the mail in accordance with this Paragraph.

35

JP_JPLF_00032344

(X) COMPENSATION – The only compensation to be paid by the Parish to IESI for the Services/Work performed by IESI pursuant to this Agreement, including but not limited to construction of Phase IV-A Expansion Area and the long term management, operation and maintenance of the Expansion Area and the Existing Landfill Units during the Term of this Agreement shall be the Tipping Fee incurred by the Parish based on the actual measured tons of Solid Waste disposed of by the Parish or its approved contractors multiplied by the then applicable per ton rate as set forth in this Agreement. For each fiscal year that this Agreement is in effect the maximum amount of compensation paid by the Parish to IESI hereunder shall not exceed the then applicable Tipping Fee multiplied by 265,000 tons, except for when IESI accepts more than 265,000 tons in any given fiscal year due to a disaster event. In any given fiscal year the maximum amount of compensation shall not be exceeded by a factor or more than ten (10%) percent, unless the Parish Council shall first authorize an amendment to this Agreement to increase the maximum amount of compensation for the fiscal year in accordance with the requirements of Section 2-933.2 of the Jefferson Parish Code of Ordinances, except for when IESI accepts more than 265,000 tons in any given fiscal year due to a disaster event. The Parties mutually agree to adjust the maximum amount of compensation (based on tonnage) on an annual basis in response to residential growth in Unincorporated Jefferson Parish.

The foregoing compensation shall be the sole compensation to IESI for the scope of work as defined herein, which shall include the construction of Phase IV-A Expansion Area, and the long-term management, operation and maintenance of the Expansion Area and Existing Landfill Units, including Phases I, II, and III of the Landfill, and the installation of final cover on Phase IV-A.

Payment of the Tipping Fee to IESI shall be made monthly for each ton of Solid Waste disposed of at the Expansion Area from the following sources:

- Unincorporated Jefferson Parish Residential Solid Waste collected by the Parish contractor.
- Jefferson Parish offices and facilities collected by the Parish contractor.
- Jefferson Parish Department vehicles.
- Industrial and Commercial Solid Waste generated by Jefferson Parish.
- Municipal Wastewater Treatment Plant Sludge generated in Unincorporated Jefferson Parish.

Incorporated cities of Gretna, Westwego, Grand Isle, Kenner and Harahan Residential Solid Waste (if the service is requested by the municipality), shall be invoiced by IESI separately under the same terms and conditions as herein specified in Section II.B.4.

Incorporated cities of Gretna, Westwego, Grand Isle, Kenner and Harahan wastewater treatment sludge (if the service is requested by municipality), shall be invoiced separately under the same terms and conditions as herein specified in Section II.B.4.

Solid Waste received from Jefferson Parish residents in private automobiles, vans and pick-up trucks and small trailers shall be disposed of at no charge to the resident or the Parish. IESI shall not receive payment on a per ton basis for Solid Waste delivered by residents and generated at their private residence. Abuse of this privilege shall be reported to the Parish.

Payment hereunder shall fully compensate IESI for any other Service/Work not specified or shown, but evidently required to complete the Services/Work.

Escalation and De-Escalation: The fees or compensation payable to IESI for the second and subsequent years of the term hereof shall be adjusted upward or downward to reflect changes in the cost of doing business. The adjustment to the rate shall be based on the net percentage change in the Non-Seasonally Adjusted Consumer Price Index for All Urban Consumers – All Items Index (CPI-U) published

JP_JPLF_00032345

by the U.S. Department of Labor, Bureau of Labor Statistics. At the start of the second year of the Agreement, and every year thereafter, the Tipping Fee shall be adjusted based on the net percentage change for the preceding twelve (12) month period for the CPI, or five percent (5%), whichever is less. The adjustment for the first year of operation will be equal to the percentage change in the CPI-U from the month that IESI begins operation to the end of that calendar year. Subsequent adjustments shall be equal to the percentage change in the CPI-U from January through December of the calendar year.

Billings to Parish: IESI shall bill the Jefferson Parish Department of Environmental Affairs and the Department of Sewerage for the services rendered within ten (10) days following the end of each month. The Parish shall pay IESI thirty (30) days from the receipt of a valid, correct invoice. Such billing and payment shall be based on the Tipping Fee.

IESI shall submit one (1) invoice listing for each department separately (except the Department of Sewerage) for disposal of solid Waste, sludge and Industrial Solid Waste at the Expansion Area.

IESI shall invoice the Department of Environmental Affairs for the disposal of Residential Solid Waste from the unincorporated areas of the Parish, waste from Parish offices, and other Departments (except sewerage) based on the then current Tipping Fee. The Department of Sewerage shall be invoiced directly for the disposal of sewerage sludge. The monthly volume of Industrial and Commercial Solid Waste shall be listed separately with the amount of royalty paid for each and the Tipping Fee for each waste stream disposed. Royalties collected by IESI in association with the incorporated municipalities, and Commercial Solid Waste and Industrial Solid Waste shall be deducted from the Department of Citizen's Service's monthly invoice. No royalty shall be charged for Industrial Solid Waste generated by the Parish of Jefferson.

In the event that the monthly royalties described herein exceed the amounts due from the Parish, IESI shall remit the amount of such excess, if any, to the Parish with the monthly invoice.

Deduction for Optional Services: The Parish expressly reserves the option and right to elect to deduct Optional Services, as listed below, from the Contractor's Scope of Services and begin providing those services with Parish personnel or with another contractor. In order to exercise this option, the Parish shall provide written notice to the Contractor at least 60 days prior to deducting the service from the Contractor's Scope of Services. The Parish shall begin providing the service on the first day of the month at least 60 days after providing written notice to the Contractor. In the event that the Parish begins to provide any such services with Parish personnel or another contractor and later decides that it does not desire to be responsible for such services any longer, IESI shall have the option, in its sole discretion, as to whether or not it will once again become responsible for providing such services.

The Tipping Fee shall be reduced by the amounts listed for the Optional Services described below beginning on the first day of the month that the Parish begins providing the service:

II. Scope of Services; B. Operation and Maintenance of the Landfill; 5. Phase IV-A Operations;

G. Administration Building/Scale House Operation (includes all costs associated with such operation, including but not limited to, utilities, maintenance, office supplies) - $0.52/ton

H. Odor Monitoring and Control - $0.28/ton

I. Bird Monitoring and Control - $0.05/ton

37

JP_JPLF_00032346

J. Environmental Monitoring and Reporting - $0.42/ton

The deductive costs listed herein shall be subject to Escalation or De-Escalation as provided above.

(Y) <u>PARISH OBLIGATIONS</u> - The Parish shall furnish IESI, free of charge, two (2) copies of the technical specifications contained in the Contract Documents for the execution of the Service/Work. Theses technical specifications shall remain the property of the Parish, and shall be returned to the Parish Engineer, or destroyed at IESI's option, once they have served the intended purpose for which they were supplied to IESI. The Parish shall also furnish IESI, free of charge, the digital files for all Landfill drawings on Autocadd, a word document of all Landfill permits, and topographic maps of the Landfill on Autocadd.

Parish shall in good-faith provide personnel at reasonable times during the term of this Agreement to assist IESI in the performance of the service/work hereunder: (a) appropriate personnel for consultation, as required; (b) personnel to promptly review any and all shop drawings and test reports; (c) access to relevant material required for the performance of Service/Work.

(Z) <u>MISCELLANEOUS PROVISIONS</u> -
1.  <u>Entire Agreement</u>:   This Agreement contains all of the oral and written agreements and all of the representations and arrangements between the Parties hereto, and any rights which the Parties may have had under any previous Agreements or oral arrangements are hereby cancelled and terminated, and no representation or warranties are made or implied other than those expressly set forth herein.  This Agreement shall only be modified by a written agreement signed by or on behalf of all Parties hereto.

2.  <u>Arbitration</u>:  It is agreed and understood that the Parish of Jefferson does not submit to arbitration and any provision to the contrary shall be null and void.

3.  <u>Assignability</u>:   This Agreement may not be sold, subleased, assigned or transferred at anytime by either party without the prior written approval of the other party, which shall not be unreasonably withheld; provided, however, that IESI may assign this Agreement to any direct or indirect affiliate or subsidiary of IESI or to any person or entity succeeding to all or substantially all of IESI's assets (whether by operation of law, merger, consolidation or otherwise) without the Parish's consent, effective upon written notice to Parish as provided herein. Except as otherwise provided herein, IESI shall not assign any interest in this Agreement, and shall not transfer any interest in the same (whether by assignment or novation), nor shall IESI assign any monies due or to become due to it under this Agreement without the prior written consent of the Parish thereto, nor without the consent of the surety unless the surety has waived its right to notice of assignment.

4.  <u>Successors and Assigns</u>:  This Agreement shall extend to and bind the successors and assigns of the parties hereto.

5.  <u>Claims for Liens</u>:  IESI shall be solely liable for and shall hold the Parish harmless from any and all claims or liens for labor, services or material furnished to IESI in connection with the performance of its obligations under this Agreement.

6.  <u>Tax Responsibility</u>:  IESI hereby agrees that the responsibility for payment of taxes from the funds received under this Agreement shall be IESI's obligation and shall be identified under Tax Identification Number 52-2274680.

7.  <u>Covenant Against Contingent Fees</u>:  IESI warrants that it has not employed or retained any company or person, other than a bona fide employee service/working solely for IESI, to solicit or secure this Agreement, and that it has not paid or agreed to pay any company or person, other than a bona fide employee

JP_JPLF_00032347

service/working solely for IESI, any fee, commission, percentage, brokerage fee, gifts, or any other consideration, contingent upon or resulting from the award or making of this agreement. For breach or violation of this warranty, the Parish shall have the right to annul this agreement without liability, or in its discretion to deduct from the Agreement price or consideration, or otherwise recover, the full amount of such fee, commission, percentage, brokerage fee, gift or contingent fee.

8.   Cost Records:  The Parish shall upon ten (10) days written notice be entitled to audit the books, documents, papers and records of IESI and any subcontractors which are reasonably related to this Agreement.

IESI and its subcontractors shall maintain all books, documents, papers, accounting records and other evidence pertaining to costs incurred and shall make such materials available at their respective offices at all reasonable times during the Agreement period and for three years from date of final payment under this Agreement, for inspection by the Parish, and copies thereof shall be furnished if requested.

9.   Force Majeure:  Notwithstanding anything to the contrary in this Agreement, IESI's time for achieving compliance under this Agreement shall be extended if any delay results directly from the inability of IESI to complete a task timely in accordance herein, and such delay is beyond IESI's reasonable control, being caused by conditions including, but not limited to, acts of God, flood, hurricane, explosion, riot, war, sabotage, fire, acts of terrorists, lack of adequate fuel, judicial or governmental laws or regulations, Parish approvals, or litigation not commenced by IESI. The Parties acknowledge and agree that unusually severe weather shall not be a Force Majeure, except when there is an immediate peril to life or property and such peril necessitates governmental intervention.

Within sixty (60) days prior to the date that IESI shall assume those portions of the Service/Work pertaining to the management and operations of the Landfill Expansion Area and Existing Landfill Units, IESI shall prepare and submit to the Landfill Engineer for his reasonable approval, IESI's comprehensive Emergency Plan for the Landfill. Within thirty (30) days after receipt of same, the Landfill Engineer shall provide comments and reasonable recommended changes thereto, and IESI shall in good-faith incorporate Landfill Engineer's reasonable recommendations and agreed upon changes into the final version of the Landfill Emergency Plan to be approved by the Landfill Engineer. Upon final approval by IESI and the Landfill Engineer, IESI shall comply with said Emergency Plan, which shall thereafter become part of this Agreement.

10.   Non-Waiver:  The failure of either Party hereto at any time to require performance by the Party hereto of any provisions hereof, and/or the waiver by either Party of any breach of any term, condition, covenant or provision herein contained, shall not be deemed a waiver of any other term, condition, covenant or of any subsequent breach of the same or any other term, condition, covenant or provision hereof.

11.   Time is of the Essence:  Time shall be deemed to be of the essence of this Agreement whenever time limits are imposed herein for the performance of any obligations by any of the Parties hereto, or whenever the accrual of any rights to either of the Parties hereto depends on the passage of time.

12.   Severability:  If any provision of this Agreement is held invalid by a court of competent jurisdiction, such provision will be deemed amended in a manner which renders it valid, or if it cannot be so amended it will be deemed to be deleted. Such amendment or deletion will not affect the validity of any other provision of this Agreement.

13.   Amendments:  No amendment shall be effective unless it is in writing, signed by duly authorized representatives of both parties, and approved by the Jefferson Parish Council.

JP_JPLF_00032348

14.   <u>Construction and Interpretation</u> - This Agreement shall, to the extent possible, be construed to give effect to all provisions contained therein; however, where provisions conflict, the intent of the parties shall give first priority to the LDEQ Permit, second priority to the provisions of this Agreement, including the Attachments, and excluding the request for proposal and its amendments and the Proposal; third priority to the provisions of the request for proposal and its amendments; and fourth priority to the provisions of the Proposal.

15.   <u>Recordation</u> - One copy of the executed Agreement with all documents forming a part thereof shall be filed at the expense of IESI, with the Recorder of Mortgages in Jefferson Parish.

16.   <u>Exclusivity</u> – IESI acknowledges and agrees that the rights and obligations conferred and contained herein shall be non-exclusive in nature, and the Parish makes no warranties or representations to the contrary.

**[Signatures on following page]**

40

JP_JPLF_00032349

THE PARISH OF JEFFERSON AND IESI REPRESENT THAT THIS AGREEMENT SUPERSEDES ALL PROPOSALS, ORAL AND WRITTEN, ALL PREVIOUS CONTRACTS, AGREEMENTS, NEGOTIATIONS AND ALL OTHER COMMUNICATIONS BETWEEN THE PARTIES WITH RESPECTS TO THE SUBJECT MATTER HEREOF.

IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed by their respective officers thereunto duly authorized as of the day and year first above written.

Signed, sealed and delivered in the presence of:

WITNESSES:                          PARISH OF JEFFERSON

BY: _____
Elton M. Lagasse
Council Chairman

WITNESSES:                          IESI LA LANDFILL
                                    CORPORATION

BY: _____
Phillip L. Smith, Vice President

41

JP_JPLF_00032350

**General Performance Bond**                    Bond No:854795

KNOW ALL MEN BY THESE PRESENTS, that we IESI LA Landfill Corporation, 500 Bridge City Avenue, Bridge City, LA 70094

the principal, and Evergreen National Indemnity Company, 6140 Parkland Blvd., Suite 321, Mayfield Heights, OH 44124, the Surety,

are held and firmly bound unto Jefferson Parish, Purchasing Dept., 200 Derbigny street, Ste. 4400, Gretna, LA 70053, the Obligee, in

the penal sum of _____ SIX MILLION AND 00/100 _____ ($6,000,000.00)
for the payment of which we bind ourselves, our heirs, administrators, executors, successors, and assigns, jointly and severally, firmly
by these presents.

WHEREAS, the Principal has entered into a certain written Contract with the Obligee, covering RFP #227 CONSTRUCTION OF TWO
(2) CELLS AT THE JEFFERSON PARISH SANITARY LANDFILL PHASE IV-A, which contract is hereby incorporated herein as if fully
rewritten;

NOW, THEREFORE, the condition of the above obligation is such that if the Principal shall promptly and faithfully perform this Contract,
then this obligation shall be null and void; subject, however, to the following conditions:

1.    If there is no breach or default on the part of the Obligee, then the Surety's performance obligation under the bond shall arise
      after:
      a.    The Owner has notified the Principal and the Surety in writing at their respective addresses of the alleged breach,
            and has requested and attempted to arrange a conference with the Principal and the Surety to be held not later than
            fifteen (15) days after receipt of such notice to discuss methods of performing the Contract; and has made available
            during notice period all books, records, and accounts relevant to the Contract which may be requested by the
            Principal or Surety.  If the Obligee, Principal and Surety agree, the Principal shall be allowed a reasonable time to
            perform the Contract; but such an agreement shall not waive the Obligee's right, if any subsequently to declare a
            Principal default;
      b.    The Owner has declared the Principal in default and formally terminated the Principal's right to complete the Contract,
            provided, however, that such default shall not be declared earlier than twenty (20) days after the Principal and the
            Surety have received the notice as provided in "a" above; and
      c.    The Obligee has agreed to pay the balance of the Contract price to the Surety in accordance with the terms of the
            Contract or to the such contractor as may be tendered by the Surety to the Obligee.

2.    The Obligee shall notify the Surety immediately of any change orders approved by the Obligee, any changes to the scope of
      work or to the duration of the Contract, or any increases to the Contract price.

3.    Any suit under this bond by or for the benefit of the Obligee must be instituted before the expiration of two (2) years from the
      date on which the Principal ceased work on the Contract.

4.    In no event shall the liability of the Surety hereunder exceed the penal sum hereof.

Signed, sealed and executed this 17th day of May 2012.

**IESI LA LANDFILL CORPORATION**              **EVERGREEN NATIONAL INDEMNITY COMPANY**
              Principal                                            Surety

By:_____                   By:_____
    Thomas J. Fowler, VP          Title            Kathleen P. Price, Attorney-in-Fact

Witness:_____                   Witness:_____
        Gina Engler                                    Sandra Cikraji

JP_JPLF_00032351

# EVERGREEN NATIONAL INDEMNITY COMPANY
## MAYFIELD HEIGHTS, OH
## POWER OF ATTORNEY

Bond No. **854795**

KNOW ALL MEN BY THESE PRESENTS:  That the Evergreen National Indemnity Company, a corporation in the State of Ohio does hereby nominate, constitute and appoint:   **Kathleen P. Price**

its true and lawful Attorney(s)-In-Fact to make, execute, attest, seal and deliver for and on its behalf, as Surety, and as its act and deed, where required, any and all bonds, undertakings, recognizances and written obligations in the nature thereof, PROVIDED, however, that the obligation of the Company under this Power of Attorney shall not exceed **SIX MILLION AND 00/100 DOLLARS ($6,000,000.00)**

This Power of Attorney is granted and is signed by facsimile pursuant to the following Resolution adopted by its Board of Directors on the 23rd day of July, 2004:

"RESOLVED, That any two officers of the Company have the authority to make, execute and deliver a Power of Attorney constituting as Attorney(s)-in-fact such persons, firms, or corporations as may be selected from time to time.
FURTHER RESOLVED, that the signatures of such officers and the Seal of the Company may be affixed to any such Power of Attorney or any certificate relating thereto by facsimile; and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Company; and any such powers so executed and certified by facsimile signatures and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached."

IN WITNESS WHEREOF, the Evergreen National Indemnity Company has caused its corporate seal to be affixed hereunto, and these presents to be signed by its duly authorized officers this 1st day of June, 2009.

EVERGREEN NATIONAL INDEMNITY COMPANY

By: _____
Charles D. Hamm Jr , President

By _____
David A. Canzone, CFO

Notary Public)
State of Ohio)                 SS:

On this 1st day of June, 2009, before the subscriber, a Notary for the State of Ohio, duly commissioned and qualified, personally came Charles D. Hamm, Jr. and David A. Canzone of the Evergreen National Indemnity Company, to me personally known to be the individuals and officers described herein, and who executed the preceding instrument and acknowledged the execution of the same and being by me duly sworn, deposed and said that they are the officers of said Company aforesaid, and that the seal affixed to the preceding instrument is the Corporate Seal of said Company, and the said Corporate Seal and signatures as officers were duly affixed and subscribed to the said instrument by the authority and direction of said Corporation, and that the resolution of said Company, referred to in the preceding instrument, is now in force.
IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at Columbus, Ohio, the day and year above written.

PENNY M. BURNS
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
April 04, 2012

_____
Penny M. Burns, Notary Public
My Commission Expires April 4, 2012

State of Ohio )                 SS:

I, the undersigned, Secretary of the Evergreen National Indemnity Company, a stock corporation of the State of Ohio, DO HEREBY CERTIFY that the foregoing Power of Attorney remains in full force and has not been revoked; and furthermore that the Resolution of the Board of Directors, set forth herein above, is now in force.

Signed and sealed in Mayfield Hts, Ohio this 17th day of May 2012.

_____
Wan C. Collier, Secretary



# Evergreen National Indemnity Company
### Certificate
### 2011

The following financial information was excerpted from the Statutory Annual Statement
filed by Evergreen National Indemnity Company with the Ohio Department of Insurance.

## STATEMENT OF INCOME

| | |
|---|---:|
| Direct Written Premium | $ 32,580,612 |
| Reinsurance Assumed | 3,160,705 |
| Reinsurance Ceded | (24,931,981) |
| Net Written Premium | 10,809,336 |
| Change in Unearned | 661,296 |
| Net Earned Premium | 11,470,632 |
| Loses & LAE Incurred | (44,824) |
| Net Commission Expense | 4,773,797 |
| Other Expenses | 3,215,475 |
| Underwriting Gain/ (Loss) | 3,526,184 |
| Net Investment Income | 2,006,744 |
| Net Realized Capital Gains (Loss) | 361,044 |
| Other Income/ (Expense) | 167 |
| Income Before FIT | 5,894,139 |
| Federal Income Tax | 1,479,666 |
| Net Income | 4,414,473 |

## BALANCE SHEET

### Assets

| | |
|---|---:|
| Invested Assets | 47,879,998 |
| Agent's Balances (net of Reins.) | 1,863,537 |
| Reinsurance Recoverable | 285,323 |
| Other Assets | 730,182 |
| **Total Assets** | **50,759,040** |

### Liabilities & Surplus

| | |
|---|---:|
| Unearned Premium Reserve | 4,256,991 |
| Loss & LAE Reserves | 4,005,177 |
| Ceded Reinsurance Payable | 3,410,400 |
| Other Liabilities | 5,317,202 |
| **Total Liabilities** | **16,989,770** |
| Surplus | 33,769,270 |
| **Total Liabilities & Surplus** | **50,759,040** |

I hereby certify that the above information is that contained in the Statutory Annual Statement filed
by Evergreen National Indemnity Company with the Ohio Department of Insurance for the year ending
December 31, 2011.

David A. Canzone, Treasurer



## State of Louisiana

### J. ROBERT WOOLEY

*ACTING COMMISSIONER OF INSURANCE*

## CERTIFICATE OF AUTHORITY

Whereas, the ___Evergreen National Indemnity Company___

Located at ___Ohio___

has applied for a certificate of authority and made the filings required of such Insurer.

Therefore, I, J. Robert Wooley, the undersigned Acting Commissioner of Insurance, do hereby certify that

the said ___Evergreen National Indemnity Company___

Is authorized to transact its appropriate business of

| | |
|---|---|
| Liability | Workmen's Compensation |
| Burglary and Forgery | Fidelity and Surety |
| Steam Boiler and Sprinkler Leakage | Fire and Extended Coverage |

Insurance in this State, in accordance with the laws thereof. This certificate shall remain in effect until

cancelled, suspended, revoked or the renewal thereof refused.

Amended C of A – Original Issued 07-23-1985



In Testimony Whereof, I hereunto subscribe my name, and affix

the seal of my office at Baton Rouge this ___25th___

day of ___September___ A.D. 2002

J. Robert Wooley
Acting Commissioner of Insurance

# ATTACHMENT A

## PROPOSED TIPPING FEES:

| Proposed Tipping Fees for Phase 4A Waste Receipts | First Year of Operation in $/Ton (all-in costs) |
|---|---|
| A. Unincorporated Jefferson Parish and Town of Jean Lafitte Residential and Parish Department MSW[1] | **$20.47** |
| B. Incorporated Municipalities Residential and Municipal Department MSW[1,2] | **$26.83**<br>**($6.36/ton Royalty due to Parish)** |
| **Proposed Tipping Fees for Phase 4A Waste Receipts** | **First Year of Operation in $/Ton (all-in costs)** |
| C. Commercial; In-Parish Solid Waste<br>(Explain conditions and/or price variation by waste type). | **$27.58**<br>**($6.36/ton* Royalty due to Parish)**<br><br>*Note: or 25% of the commercial tipping fee under this section C., whichever is greater<br><br>Note: All commercial pricing may be competitively bid in accordance with fair business practices. Prices may be subject to discounts due to significant volumes, and long term agreements. Additional surcharges may apply for unloading fees, high odor material, and any special handling. |
| D. Industrial; In-Parish, Out-of-Parish Solid Waste<br><br>(Explain conditions and/or price variation by waste type). | **$27.58**<br>**($6.36/ton* Royalty due to Parish)**<br><br>*Note: or 25% of the industrial tipping fee under this section D., whichever is greater<br><br>55 gallon container/drums - $40 each<br><br>Asbestos - $40 per cubic yard<br><br>Note: All industrial pricing may be competitively bid in accordance with fair business practices. Prices may be subject to discounts due to significant volumes, and long term agreements. Additional surcharges may apply for unloading fees, high odor material, and any special handling. |
| E. Optional Additional Service: Annual Household Hazardous Waste Collection Event | **$0.25/ton**<br>**(added to the residential tipping fee under section A. above)** |

[1] Tipping Fee for Unincorporated Jefferson Parish Residential and Parish Department MSW shall be subject to adjustment by the Consumer Price Index, All Urban Consumers – All Items (CPI-U).
[2] Tipping Fee for Incorporated Municipalities Residential and Municipal Department MSW shall be the same as for Jefferson Parish plus $6.36 per Ton.

JP_JPLF_00032355

# ATTACHMENT B

| EQUIPMENT LIST | | | |
|---|---|---|---|
| Quantity | Equipment Description | Make & Model | Year |
| 1 | Landfill compactor | Cat 836H | 2011 (new) |
| 1 | Landfill compactor (for back-up) | Cat 836 | 2000 – 2009 (used) |
| 1 | Dozer | Cat D6T | 2011 (new) |
| 1 | Dozer (for back-up) | Cat D6T | 2000-2009 (used) |
| 1 | Excavator | Cat 329D | 2000 2009 (used) |
| 2 | Articulated dump truck | Volvo A30E | 2000 2009 (used) |
| 1 | Water truck | Miscellaneous | Used |
| 1 | Motor grader | Miscellaneous | Used |
| 1 | Backhoe loader | Cat 426 | Used |
| 1 | Service truck | Miscellaneous | Used |

Any non-backup heavy equipment that is out of service for more than 48 hours, IESI will use a temporary rental or transfer similar equipment from another IESI facility.

# ATTACHMENT C

| TABLE 2. PERSONNEL | | |
|---|---|---|
| Position | Number | Est. Hours/Week/Employee |
| Landfill Manager | 1 | 60 |
| Foremen/Lead Operator | 1 | 60 |
| Equipment Operators | 6 | 40 – 60 |
| Mechanics | As Needed | As Needed |
| Laborers | 2 | 40 – 50 |
| Management Personnel | Regional Personnel | Periodic Site Visits |
| Clerical/Office | 2 | 45 |
| Other (List) | (none) | (none) |

The landfill manager will be SWANA MOLO certified.   IESI reserves the right to make adjustments to the proposed staffing levels based on seasonal fluctuations in operations, changes in operating hours, and adjustments in other conditions that may increase or decrease the need for personnel at any given time. IESI will notify the Parish of any long-term changes in staffing to be implemented during the contract term.

On motion of **Mr. Lagasse**, seconded by **Mr. Roberts**, the following resolution was offered as amended:

### RESOLUTION NO. 118553

A resolution ratifying an Agreement between Jefferson Parish and **IESI LA Corporation** to provide landfill operation, management, and maintenance services for the Jefferson Parish Sanitary Landfill under RFP No. 227 for the Department of Environmental Affairs for a contract cap not to exceed Six Million Two Hundred Thousand Dollars ($6,200,000.00). (Parishwide)

**WHEREAS**, pursuant to Resolution No. 115645, adopted on November 3, 2010, the Jefferson Parish Council authorized the Jefferson Parish Purchasing Department to solicit proposals from qualified companies to provide landfill operation, management, and maintenance services for the Jefferson Parish Sanitary Landfill; and

**WHEREAS**, pursuant to Resolution No. 117202, adopted on August 10, 2011, the Jefferson Parish Council selected IESI LA Corporation under RFP No. 0227 to provide landfill operation, management, and maintenance services for the Jefferson Parish Sanitary Landfill.

**NOW THEREFORE, BE IT RESOLVED** by the Jefferson Parish Council of Jefferson Parish, State of Louisiana:

**SECTION 1.** That the attached Agreement between Jefferson Parish and IESI LA Corporation to provide landfill operation, management, and maintenance services for the Jefferson Parish Sanitary Landfill under RFP No. 227 for the Department of Environmental Affairs is hereby ratified.

**SECTION 2.** That the annual contract cap for the Agreement is Six Million Two Hundred Thousand Dollars ($6,200,000.00).

**SECTION 3.** That the cost associated with this Agreement shall be charged to Account No. 22390-3500-7342.5.

**SECTION 4.** This contract shall begin on March 1st, 2013.

**SECTION 5.** That the Chairman of the Jefferson Parish Council, or in his absence the Vice-Chairman, be and they are, hereby authorized to execute any and all documents necessary to give full force and effect to this resolution.

The resolution having been submitted to a vote, the vote thereon was as follows:

**YEAS: 7**           **NAYS: None**           **ABSENT: None**

The resolution was declared to be adopted on this the 7th **day of March, 2012.**

THE FOREGOING IS CERTIFIED
TO BE A TRUE & CORRECT COPY

*Eula A. Lopez*

EULA A. LOPEZ
PARISH CLERK
JEFFERSON PARISH COUNCIL

JP_JPLF_00032358

On joint motion of all Councilmembers present, the following resolution was offered as amended:

### RESOLUTION NO.118783

A resolution amending Resolution No. 118553, adopted March 7, 2012, to attach and ratify the correct and final version of the Agreement between Jefferson Parish and IESI LA Corporation to provide landfill operation, management, and maintenance services for the Jefferson Parish Sanitary Landfill under RFP No. 227 for the Department of Environmental Affairs for a contract cap not to exceed Six Million Two Hundred Thousand Dollars ($6,200,000.00), as an incorrect draft of the agreement was originally attached. (Parishwide)

WHEREAS pursuant to Resolution No. 115645, adopted on November 3, 2010, the Jefferson Parish Council authorized the Jefferson Parish Purchasing Department to solicit proposals from qualified companies to provide landfill operation, management, and maintenance services for the Jefferson Parish Sanitary Landfill; and

WHEREAS, pursuant to Resolution No. 117202, adopted on August 10, 2011, the Jefferson Parish Council selected IESI LA Corporation under RFP No. 0227 to provide landfill operation, management, and maintenance services for the Jefferson Parish Sanitary Landfill; and

WHEREAS, Resolution No. 118553, adopted March 7, 2012 ratified an incorrect draft of the Agreement between Jefferson Parish and IESI LA Corporation to provide landfill operation, management, and maintenance services for the Jefferson Parish Sanitary Landfill under RFP No. 227 for the Department of Environmental Affairs for a contract cap not to exceed Six Million Two Hundred Thousand Dollars ($6,200,000.00); and

WHEREAS, after the passage of Resolution No. 118553, it was realized an improper draft of the Agreement between Jefferson Parish and IESI LA Corporation had been attached to the Agenda; and

WHEREAS, the incorrect draft of the Agreement has not been executed; and

WHEREAS, it is in the best interest of Jefferson Parish to amend Resolution No. 118553, removing the attachment of the improper draft and ratifying the attached correct and final version of the Agreement.

NOW THEREFORE, BE IT RESOLVED by the Jefferson Parish Council of Jefferson Parish, State of Louisiana:

SECTION 1.   Resolution No. 118553, adopted March 7, 2012, is hereby amended, removing the attachment of the improper draft, and ratifying the correct and final Agreement between Jefferson Parish and IESI LA Corporation to provide landfill operation, management, and maintenance services for the Jefferson Parish Sanitary Landfill under RFP No. 227 for the Department of Environmental Affairs.

SECTION 2.   That the annual contract cap for the Agreement is Six Million Two Hundred Thousand Dollars ($6,200,000.00).

SECTION 3.   That the cost associated with this Agreement shall be charged to Account No. 22390-3500-7342.5.

SECTION 4.   This contract shall begin on March 1, 2013.

SECTION 5.   That the Chairman of the Jefferson Parish Council, or in his absence the Vice-Chairman, be and they are, hereby authorized to execute any and all documents necessary to give full force and effect to this resolution.

The resolution having been submitted to a vote, the vote thereon was as follows:

YEAS:        7        NAYS: None        ABSENT: None

The resolution was declared to be adopted on this the **18th day of April, 2012.**

THE FOREGOING IS CERTIFIED
TO BE A TRUE & CORRECT COPY

EULA A. LOPEZ
PARISH CLERK
JEFFERSON PARISH COUNCIL

JP_JPLF_00032359

**Campaign Contribution**
**AFFIDAVIT**

STATE OF ___TEXAS___

~~PARISH~~/COUNTY OF ___DENTON___

BEFORE ME, the undersigned authority, personally came and appeared:

___Phil Smith___, (Affiant) who after being by me duly sworn, deposed and said that

he/she is the fully authorized ___Vice President___ of

___IESI LA Landfill Corporation___ (Entity), the party who submitted a

Proposal/Contract/Bid/RFP/SOQ No. ___RFP-0227___ (the Matter), to the Parish of Jefferson.

(Choose one of the following):

___X___ Attached hereto is a list of all campaign contributions, including the date and amount of each contribution, made to the current or former members of the Jefferson Parish Council or the Jefferson Parish President by Entity, Affiant, and/or officers, directors and owners, including employees, owning 25% or more of the Entity during the two-year period immediately preceding the date of this affidavit. Further, Entity, Affiant, and/or Entity Owners have not made any contributions to or in support of the current or former members of the Jefferson Parish Council or the Jefferson Parish President through or in the name of another person or legal entity, either directly or indirectly.

.............. Affiant, Entity, and/or officers, directors and owners, including employees, owning 25% or more of the Entity, have made no campaign contributions made to the current or former members of the Jefferson Parish Council or the Jefferson Parish President during the two-year period preceding the date of this affidavit. Further, Entity, Affiant, and/or Entity Owners have not made any contributions to or in support of the current or former members of the Jefferson Parish Council or the Jefferson Parish President through or in the name of another person or legal entity, either directly or indirectly.

Affiant further stated, that Affiant will submit a new affidavit if any additional campaign contributions are made after the execution of this affidavit, but prior to the time the Jefferson Parish Council acts on the Matter.

_____
Signature of Affiant

SWORN AND SUBSCRIBED TO BEFORE ME

ON THE __2nd__ DAY OF __March__, 20_12_.

_____
Notary Public

```
LORI A. JOYCE
Notary Public, State of Texas
My Commission Expires
October 16, 2015
```

Updated: 2.20.12
Code of Ord., Jeff. Parish LA § 2-923-923.1
1 of 3

Jefferson Parish Code of Ordinance

Sec. 2-923. - Disclosure and approval of all subcontractors and persons receiving payments for all non-bid contracts.

(a) All persons or firms who are under contract awarded on a non-bid basis with Jefferson Parish or with any of its agencies, divisions or special districts or who submit responses to any request for submittals to contract on a non-bid basis with Jefferson Parish or with any of its agencies, divisions or special districts must identify all subcontractors and persons, excluding full time employees of the firm, who would assist in providing services or materials under the contract or who would share in any fees, commissions or other remuneration under the contract. Each such subcontractor or person shall submit all documents and information required by this section. Substitutions or subsequent addition of subcontractors or other persons to the contract must be ratified by council resolution. The person or firm under contract shall provide to the council detailed justification of the need for any such additional subcontractor or person. With each invoice submitted, the person or firm holding said non-bid contract shall acknowledge that no subcontractors or other persons have been added to the contract without prior council approval by resolution. Failure to comply with this section shall result in penalties imposed upon the person or firm under contract as set forth in section 2-935.1 for professional service providers.

(b) In addition, the person or firm contracting or proposing to contract with Jefferson Parish or with any of its agencies, divisions or special districts on a non-bid basis must submit prior to the ratification by the council of the contract or contract amendment:

  (1) An affidavit attesting:

    a. That the affiant has not and will not employ any person either directly or indirectly to secure the public contract under which he is to receive payment, other than persons regularly employed by the affiant whose service in connection with the provision or procuring of insurance under the contract or in securing the public contract are in the regular course of their duties for the affiant; and

    b. That no part of the contract price was paid or will be paid to any person for soliciting the contract other than the payment of normal compensation to persons regularly employed by the affiant whose services with the project are in the regular course of their duties for the affiant; and

  (2) An affidavit attesting to:

    a. Any and all campaign contributions that the affiant has made to elected officials of the parish, whether still holding office at the time of the affidavit or not, during the two-year period immediately preceding the date the affidavit is signed, listing the date and amount of each contribution made to a Jefferson Parish Council member or Parish President; if any additional campaign contributions are made after the affidavit is executed, but prior to the time the council acts on the matter, an updated affidavit is required; for the purposes of this requirement, if the affidavit is submitted on behalf of a corporation, LLC or any other legal entity, then the affidavit must additionally report contributions made by officers, directors and owners, including employees, owning twenty-five (25) percent or more of the company; and

    b. Any and all debts owed by the affiant to any elected or appointed official of the parish, and any and all debts owed by any elected or appointed official of the parish to the affiant; and attesting:

    c. That the affiant has not made any contribution to or in support of elected officials of the parish through or in the name of another person or firm either directly or indirectly.

  (3) Any affidavit required under state law.

(c) For purposes of this Section, the terms "non-bid contract(s)", "contract(s) awarded on a non-bid basis" or "contract(s) on a non-bid basis" shall not include group purchasing contracts. For purposes of this section, "subcontractors" in contracts with insurance agents of record or for the provision of insurance for Jefferson Parish or for any of its agencies, divisions or special districts, including, but not limited to Jefferson Parish Hospital Service District No. 1 and Jefferson Parish Hospital Service District No. 2, shall include any person or firm who would assist in providing insurance under the contract or who would share in the commissions generated by the placement of insurance under the contract, excluding full time employees of the primary firm under contract. Notwithstanding any provision of this section to the contrary, however, nothing herein shall prohibit an insurance producer of record or agent from using the services of a wholesale broker for the placement of insurance coverage without prior approval of the use of said wholesale broker by the council, provided that the name of the wholesale broker and the amount of the broker's fee is disclosed on the invoice for

Updated: 2.20.12

Code of Ord., Jeff. Parish LA § 2-923-923.1

2 of 3

JP_JPLF_00032361

the placement of any insurance using the broker's services and that the risk management department provides a copy of said invoice to each member of the council within five (5) days of the department's receipt of the invoice.

(d) Notwithstanding any other provision of this section to the contrary, submissions of subcontractor affidavits as required by this section for all non-bid contracts with Jefferson Parish Hospital Service District No. 1 and/or Jefferson Parish Hospital Service District No. 2 which are not subject to ratification or approval by the Jefferson Parish Council under applicable regulations and procedures shall be made to the hospital board or hospital administration or other appropriate agency which is authorized to approve the prime contract related to the proposed subcontract, and said agency shall be the proper and final authority to approve any such subcontract. In addition, for those contracts with the parish's hospital service districts which are not subject to ratification or approval by the Jefferson Parish Council, contractors shall not be required to acknowledge with the invoices submitted under such contracts that no subcontractors or other persons have been added to the contract without prior council approval by resolution.

Sec. 2-923.1. - Disclosure and approval of all subcontractors and persons receiving payments for bid contracts.

(a) All non-collusion affidavits, affidavits of fee disposition and campaign disclosure forms or other similar attachment, required to be provided with any bid, request for proposal, or statement of qualification, if not elsewhere required to be provided earlier, must be provided to the parish at least nine (9) days before the Jefferson Parish Council meeting at which the matter triggering the requirement of the submittal is to be considered by the council, unless a council member approves the resolution or ordinance for the addendum agenda, in which case the required attachments must be with the posting to the addendum agenda.

(b) The parish department which initiated the request for such submittal shall be responsible for reviewing the submittals and coordinating with the parish EIS department to have the non-collusion affidavits, affidavits of fee disposition, campaign disclosure forms, or other similar attachment, posted on the parish web site at a link no later than the Monday before the council meeting at which the matter is to be considered by the council, unless a council member approves the resolution for the addendum agenda, in which case the required attachments must be with the posting to the addendum agenda.

(c) In order to facilitate this, all required affidavits and disclosures must be attached to any legislation which is routed for approval to be included on the council agenda. For the purposes of this routing requirement as it applies to RFP's, all affidavits received must be attached; the fact that some may have not been provided by the proposer will be reported to the council by the evaluation committee.

Updated: 2.20.12
Code of Ord., Jeff. Parish LA § 2-923-923.1
3 of 3

IESI LA LANDFILL CORPORATION
CAMPAIGN CONTRIBUTION AFFIDAVIT

Chris Roberts:
2011   $5,000.00
2012   $500.00

Elton Lagasse:
2011   $1,000.00

L. Congemi:
2010   $1,000.00

Thomas Capella:
2010   $1,000.00

Ben Zahn:
2011   $1,000.00

Ricky Templet:
2010   $1,000.00
2011   $250.00

Paul Johnson:
2010   $100.00

JP_JPLF_00032363

**Non-Collusion**
**AFFIDAVIT**

STATE OF ___TEXAS___

~~PARISH~~/COUNTY OF ___DENTON___

    BEFORE ME, the undersigned authority, personally came and appeared,

_____Phil Smith_____, (Affiant) who after being duly sworn, deposed and said that

he/she is the fully authorized ___Vice President___ of ___IESI LA Landfill Corporation___

(Entity), the party who submitted a Proposal/Contract/Bid/RFP/SOQ No. ___RFP-0227___,

to Jefferson Parish.

Affiant further said:

(1) That Affiant has not and will not employ any person, either directly or indirectly, to secure the public contract under which he/she is to receive payment, other than persons regularly employed by the Affiant whose services, in connection with the project or in securing the public contract, are in the regular course of their duties for the Affiant; and

(2) That no part of the contract price was paid or will be paid to any person for soliciting the contract, other than the payment of normal compensation to persons regularly employed by the Affiant whose services with the project are in the regular course of their duties for the Affiant.

_____
Signature of Affiant

SWORN TO AND SUBSCRIBED
BEFORE ME ON THIS ___2nd___
DAY OF ___March___, ___2012___.

_____
NOTARY/PUBLIC

LORI A. JOYCE
Notary Public, State of Texas
My Commission Expires
October 16, 2015

Updated: 2.8.2012
LA-RS § 38:2224(2011)
Code of Ord., Jeff. Parish, LA § 2-923-923.2

JP_JPLF_00032364

**Employment Status Verification**
**AFFIDAVIT**

STATE OF ____TEXAS____

~~PARISH~~/COUNTY OF ___DENTON___

BEFORE ME, the undersigned authority, personally came and appeared,

_____Phil Smith_____, (Affiant) who after being duly sworn, deposed and said that

he/she is the fully authorized ___Vice President___ of _IESI LA Landfill Corporation_

(Entity), the party who submitted a Proposal/Contract/Bid/RFP/SOQ No. ___RFP-0227___,

to Jefferson Parish. (Choose one of the following):

___X___   Affiant further said:

    (1) Entity is registered and participates in a status verification system to verify that all employees in the State of Louisiana are legal citizens of the United States or are legal aliens.

    (2) Entity shall continue, during the term of the contract, to utilize a status verification system to verify the legal status of all new employees in the State of Louisiana.

    (3) Entity shall require all subcontractors to submit to the Entity a sworn affidavit verifying compliance with statements (1) and (2).

_____   Affiant further said that neither Entity nor subcontractors of Entity have any employees in the State of Louisiana.

_____
Signature of Affiant

SWORN TO AND SUBSCRIBED
BEFORE ME ON THIS ___2nd___
DAY OF _____March_____, 20_12_.

_____
NOTARY PUBLIC

LORI A. JOYCE
Notary Public, State of Texas
My Commission Expires
October 16, 2015

Updated: 2/17/2012
LA-RS § 38:2212.10(2011)
Code of Ord., Jeff. Parish, LA § 2-890

**Subcontractor**
**AFFIDAVIT**

STATE OF ___TEXAS___

~~PARISH~~/COUNTY OF ___DENTON___

  BEFORE ME, the undersigned authority, personally came and appeared, _Phil Smith_

(Affiant) who after being duly sworn, deposed and said that he/she are the fully authorized

__Vice President__ of _IESI LA Landfill Corporation_ (Entity), the party who submitted a

proposal to Jefferson Parish for RFP No. ___RFP-0227___ or an SOQ to
_Landfill Operation, Management,_
_& Maintenance Services for the_ (describe the project). (Choose one of the following):
_Jefferson Parish Landfill._

_____ Affiant further said that Entity will use no subcontractors to assist in providing
   professional services for the aforementioned SOQ/RFP.

__X__ Affiant further said that attached is a listing of all subcontractors, excluding full time
   employees, who may assist in providing professional services for the aforementioned
   SOQ/RFP.

              Signature of Affiant

SWORN TO AND SUBSCRIBED
BEFORE ME ON THIS ___2nd___
DAY OF ___March___, 20_12_ .

           LORI A. JOYCE
         Notary Public, State of Texas
NOTARY PUBLIC     My Commission Expires
          October 16, 2015

*[Do not fill out this section until making a pay request.]*

A copy of this affidavit must be attached to each and every pay requests.

_____ Check here if no additions or substitutions of subcontractors have been made under this
contract or contract amendment.

Signature             Date

Any change of subcontractors, excluding full time employees, who assist in providing services
for the project, requires Jefferson Parish Council approval and submission of a new affidavit.

             Updated: 2.8.2012
             Code of Ord., Jeff. Parish, LA § 2-923

JP_JPLF_00032366

IESI LA LANDFILL CORPORATION
SUBCONTRACTORS


AGRU America
Aquaterra Engineering
Beard Construction Group
CETCO
COMANCO
Dallas Arial Survey
Engineering Associates
ESI Inc.
Frisco Construction
ICON
James Construction Group
Monceaux Buller & Associates
Pace Analytical Services
Providence
Reich Company Inc.
RPH and Associates Inc.
SFC Contract Services
Shaw Environmental
Sigma Consulting Group
SKAPS Industries
Terracon
Turner Industries

JP_JPLF_00032367

Client#: 18927                                                      IESI

**ACORD**  **CERTIFICATE OF LIABILITY INSURANCE**    DATE (MM/DD/YYYY)
4/03/2012

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Margie Blackmon | |
|---|---|---|
| HUB International Ins Svcs Inc | PHONE (A/C, No, Ext): 505 828 4000 | FAX (A/C, No): 866 487 3972 |
| P O Box 90756 | E-MAIL ADDRESS: margie.blackmon@hubinternational.com | |
| Albuquerque, NM 87199-0756 | | |
| 800-800-5661 / CA Lic# 0757776 | INSURER(S) AFFORDING COVERAGE | NAIC # |
| | INSURER A: Greenwich Insurance Company | 22322 |
| INSURED | INSURER B: Catlin Specialty Insurance Co | 15989 |
| IESI Corporation and its Subsidiaries | INSURER C: Endurance American Specialty | 41718 |
| 2301 Eagle Pkwy Suite 200 | INSURER D: Great American Assurance Co | 26344 |
| Fort Worth, TX 76177 | INSURER E: Arch Insurance Company | 11150 |
| | INSURER F: | |

COVERAGES        CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY | | | GEC002511805 | 12/31/2011 | 12/31/2012 | EACH OCCURRENCE | $1,000,000 |
| | X COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | CLAIMS-MADE X OCCUR | | | | | | MED EXP (Any one person) | $5,000 |
| | X ContractualLiability | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | POLICY X PROJECT LOC | | | | | | | |
| E | AUTOMOBILE LIABILITY | | | 41CAB4928006 | 12/31/2011 | 12/31/2012 | COMBINED SINGLE LIMIT (Ea accident) | $2,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | X MCS-90 ENDT | | | | | | | $ |
| B | UMBRELLA LIAB X OCCUR | | | UMC936341212 | 12/31/2011 | 12/31/2012 | EACH OCCURRENCE | $25,000,000 |
| C | EXCESS LIAB CLAIMS-MADE | | | EXC10002917700 | 12/31/2011 | 12/31/2012 | AGGREGATE | $25,000,000 |
| D | DED RETENTION $ | | | EXC2100650 | 12/31/2011 | 12/31/2012 | | |
| E | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N | | | 41WCI4927806 | 12/31/2011 | 12/31/2012 | X WC STATUTORY LIMITS OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
For informational purposes only
UMBRELLA - 1ST LAYER - $4,000,000
2ND LAYER 11,000,000
3RD LAYER $10,000,000

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| UNICORPORATED EAST AND WEST BANK OF JEFFERSON PARISH LOUISIANA 1221 ELMOOD PARK BLVD HARAHAN, LA 70123 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |
| | Robert A. Machock |

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)   1 of 1     The ACORD name and logo are registered marks of ACORD        MB01
#S1624392/M1457514

JP_JPLF_00032368

**ACORD®** ## CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 04/29/2011 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Bill Buchanan | | |
|---|---|---|---|---|
| Marsh Canada Limited<br>70 University Avenue, Suite 800<br>Toronto, Ontario M5J 2M4 | PHONE (A/C, No, Ext): | 416-349-4468 | FAX (A/C, No): | |
| | EMAIL ADDRESS: | Bill.Buchanan@marsh.com | | |
| | **INSURER(S) AFFORDING COVERAGE** | | | NAIC # |
| | INSURER A: | Indian Harbor Insurance Company | | 36940 |
| INSURED | INSURER B: | | | |
| IESI Corporation and its Subsidiaries<br>2301 Eagle Parkway, Suite 200<br>Fort Worth, Texas 76177 | INSURER C: | | | |
| | INSURER D: | | | |
| | INSURER E: | | | |
| | INSURER F: | | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | ☐ | | | | | | PERSONAL & ADV INJURY | $ |
| | ☐ | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N | | | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (MANDATORY IN NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Pollution Legal Liability<br>(Site Specific)<br>Contingent Transportation Coverage | | | PEC002487401 | 12/01/10 | 12/01/13 | Limit of Liability - Each loss, remediation expense or legal defense expense | $20,000,000 |
| | | | | | | | Total for all losses, remediation expense, legal defense expense | $50,000,000 |
| | | | | | | | Self-Insured Retention | $100,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Placement was made by the Marsh Commercial Business Center, a Service of Seabury & Smith, Inc., 9838 Colonnade Blvd., #400, San Antonio, TX, 78230. Marsh Canada Limited, 70 University Avenue, #800, Toronto, Canada has only acted in the role of a consultant to the client with respect to this placement. Indian Harbor Insurance Co., Policy # PEC002487401 which is indicated here for your convenience.

Re: Operations at Jefferson Parish Landfill, 5300 Highway 90, Avondale, LA 70094.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|

JP_JPLF_00032369

| Jefferson Parish<br>Purchasing Department<br>200 Derbigny Street, Suite 4400<br>Gretna, LA 70054 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>*K. Selim* |
|---|---|

© 1988-2010 ACORD CORPORATION. All rights reserved.

ACORD 25 (2010/05)                    The ACORD name and logo are registered marks of ACORD

JP_JPLF_00032370