UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br><br>    Plaintiffs<br><br>V.<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br><br>    Defendants<br><br><br>*Applies to: Both Cases* | CIVIL ACTION<br><br>NO. 19-11133, c/w 19-14512<br><br>SECTION: "E" (5)<br><br><br>JUDGE: Morgan<br>MAGISTRATE JUDGE: North |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS
CERTAIN CLAIMS FOR LACK OF EVIDENCE OF GENERAL CAUSATION**

Plaintiffs oppose Defendants' Motion for Partial Summary Judgment to Dismiss Certain Claims for Lack of Evidence of General Causation (the "GC MPSJ"). For the reasons set forth below, a genuine issue of material fact exists and Defendants' Motion should be denied. Further, should the Court be inclined to grant the Defendants' motion, the Court should limit any ruling on to the *Addison* Trial Plaintiffs, as discovery and litigation relating to the remaining *Addison* Plaintiffs is stayed. Plaintiffs further object to the filing of this Motion to the extent that it applies to any Plaintiff who is not an *Addison* Trial Plaintiff. To rule otherwise would be unfairly prejudicial to the remaining *Addison* Plaintiffs and premature at this juncture.

**I.    LEGAL STANDARD.**

When a party moves for summary judgment for "lack of evidence," that party bears an initial burden of showing that evidence is in fact lacking. *Adickes v. S. H. Kress & Co.*, 398 U.S.

1

144, 160 (1970) ("As the moving party, respondent had the burden of showing the absence of a genuine issue as to any material fact."). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Lozano v. Collier*, 98 F.4th 614, 620 (5th Cir. 2024) *See* F.R.Civ.P, Rule 56 Advisory Committee note, subdivision e ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."). Here, the motion fails from the outset.

II. **ARGUMENT.**

A. **Any Ruling on the GC MPSJ should be Expressly Limited to the *Addison* Trial Plaintiffs**

Defendants do not make clear in the GC MPSJ whether they seek a ruling that applies to all 500+ *Addison* Plaintiffs, or only to the *Addison* Trial Plaintiffs. Because discovery with respect to medical conditions suffered by the entire *Addison* Plaintiff group was stayed except as to the *Addison* Trial Plaintiffs (R.Doc. 498, at 5, ¶ III.B.4), it would be extremely unfair to rule at this juncture that those plaintiffs whose medical conditions have not yet been the subject of discovery are nevertheless forever foreclosed from presenting evidence that their particular ailments were caused by the H2S emitted from the JPLF. Moreover, Plaintiffs' experts, like Dr. Robert DeLorenzo, M.D., P.h.D., M.P.H., and Dr. Michael Spodak, M.D. only examined, interviewed, and rendered opinions relating to the 13 Trial Plaintiffs, as their claims are set for trial in August. Given that odor is inherently subjective and injuries to odor in this action are mostly self-reported, a blanket ruling foreclosing all claims would be unfairly prejudicial to the remaining Addison plaintiffs whose cases will be tried at a later date.

B. **Reliable expert testimony exists to prove general causation for all claims alleged by the *Addison* Trial Plaintiffs.**

Defendants assert that Plaintiffs lack reliable expert testimony on claims that fall outside the enumerated conditions included in the Court's Findings of Fact and Conclusions of Law. Rec. Doc 323 at 44. In their memorandum, Defendants include a chart of "non-allowed" conditions included in the reports of Plaintiffs experts, Dr. Robert DeLorenzo and Dr. Michael Spodak. Rec. Doc. 561-1 at 6-7.[1]

Looking at the chart in Defendants' memorandum of "non-allowed" injuries one can immediately see that many conditions are already encompassed by the "allowed claims": gagging, stomach irritation, stomach pain, are "GI issues" that is intertwined with nausea and vomiting;[2] skin infections, feeling sad, overwhelmed, stressed, concern over long-term effects is encompassed by anxiety and worry;[3] lightheadedness is synonymous with dizziness;[4] decrease in productivity is consistent with fatigue. Defendants attempted to use the same chart while deposing Dr. DeLorenzo on the issue of general causation as to these conditions. And in doing so, when provided with opinions that 5 ppb could cause these conditions, defense counsel agreed to "take that off the list" (presumably, the same chart on page 6 of their memorandum). However, despite providing a general causation opinion on those conditions, the conditions are incorporated into Defendants' motion and in fact, are argued to the Court as claims which general causation testimony is not established:

> Q: I'm going to give you the list of injuries that you've opined on in your report.

---

[1] It is worth noting that the chart that appears in Defendants' Motion for Partial Summary Judgment is different than the chart that was incorporated into the Motion in Limine to Exclude Testimony of Dr. DeLorenzo. *See* Rec. Doc. 562-1 at4.
[2] *See* Exhibit 1- DeLorenzo Dep vol. 1 at 387:17-24 (May 3, 2024).
[3] *Id* at 386:24-25, 387:1-2.
[4] It is important to note that most of Plaintiffs' injuries were self-reported, which raises issues of vocabulary and one's ability to communicate their symptoms. One example of this is Trial Plaintiff Vernice Lewis who testified during her deposition that to her, "vomiting" felt like "food was about ready to come up" but food did not leave her stomach and come out her mouth. In this context, Ms. Lewis' symptoms would be medically described as "gagging" and not "vomiting". Ex. X- Lewis Dep. at 112:11-25, 113:1-6. Dr. DeLorenzo engages in a similar discussion during this deposition, where Defendants' counsel provides him a list of "non-allowed" injuries, and DeLorenzo testifies that they are, in fact, encompassed in the Court's ruling but are presented under a different name on the chart.

> *A. Okay.*
> *Q. And I'm going to ask you, as to all of 3 them, whether you have any literature to support that opinion .Do you have -- Have you ever seen any literature stating that exposure to 5 parts per billion of H2S over 30 minutes can cause exacerbation of allergies, cough, decreased productivity, burning of eyes, nose and throat?*
> *A. Productivity?*
> *Q. Yes, sir.*
> *A. Well, that's fatigue, so that's the same thing.*
> *Q. Okay. So let's scratch decreased productivity from my list[5]*

In sum, Plaintiffs' claims should not be limited due to semantics and challenges of self-reporting of health symptoms. Defendants are well aware of this after deposing scores of plaintiffs during the discovery period. For example, Trial Plaintiff Vernice Lewis testified during her deposition that to her, "vomiting" felt like "food was about ready to come up" but food did not leave her stomach and come out her mouth. In this context, Ms. Lewis' symptoms would be medically described as "gagging" and not "vomiting".[6]

The *Addison* plaintiffs, as a whole, are a diverse group of individuals that range in their education level, and ability to communicate their experiences and injuries. Qualified health providers such as Drs. DeLorenzo and Spodak, are trained to work with the community to obtain reliable information about medical conditions and injuries. This is further reason why- if granted- summary judgment should only be extended to the 13 Trial Plaintiffs. It is unfair and patently prejudicial to the remaining universe of Plaintiffs to have their cases adjudicated on their Plaintiff Fact Sheet alone- which, at this juncture, is one of the only sources of information on specific injuries claimed in this suit.

It must be noted that, as a medical doctor, public health professional, and toxicologist, Dr. DeLorenzo is qualified to provide both general and specific causation opinions as to all injuries

---

[5] *See* Exhibit 1 at 380:21-25, 381:1-15.
[6] *See* Exhibit 2 - Lewis Dep. at 112:11-25, 113:1-6.

described in his report. Defendants' cherry-picking testimony as a basis for undermining Dr. DeLorenzo's opinions as to whether exposure to hydrogen sulfide at 5ppb could cause conditions outside of the scope of the Court's general causation order. Dr. DeLorenzo's report makes clear that even at normal background levels, VOCs, when combined with hydrogen sulfide in landfill gas, irritates mucus membranes causing symptoms like eye irritation, irritated bronchi (and therefore coughing, and exacerbation of asthma and other breathing difficulties.)[7]

As a procedural matter, Plaintiffs filed an Offer of Proof relating to certain claims as a part of their post-trial briefing. Rec. Doc. 291-1. The Court limited Dr. Schiffman's testimony in the general causation phase on certain conditions due to her lack of a medical or toxicology degree, over objections from the Plaintiffs. Dr. DeLorenzo is able to opine on both topics- and conducted examinations on all Trial Plaintiffs and authored his report to show the full breadth of each Plaintiff's injuries. In the event that the Court does not permit Dr. DeLorenzo to testify as to general and specific causation of the full universe of injuries that the Trial Plaintiffs allege, Plaintiffs plan to submit an offer of proof as to these issues to preserve all rights on appeal. Therefore, having all such issues included in his extensive review of Plaintiffs' medical records, examinations, and ultimately his report, were vital, and Defendants were provided sufficient notice of his opinions to prepare for trial accordingly.

C.  **Plaintiffs have established general causation for ongoing conditions.**

Defendants' argument that Plaintiffs have not established general causation relating to conditions that continue after the relevant time period is without merit. Defendants here conflate a finding general causation as to the mechanism of injury- i.e. the emissions from the JPLF- which the Court did find to could case the underlying conditions alleged by specific Trial Plaintiffs- with

---

[7] *See* Rec. Doc. 561, Exhibit 1 at 16. *See also Id* at fn. 17 and 18.

the temporal element of impact of the injury. Both Drs. DeLorenzo and Schiffman cite ample authority in their supplemental reports that supports the idea that hydrogen sulfide exposure can cause long lasting clinical effects due to learned odor aversion.[8] Therefore, there is reliable expert testimony as to general and specific causation for injuries that continued after the relevant time period, and summary judgment on this issue is improper.

III. **CONCLUSION.**

For the foregoing reasons, this Court should deny Defendants' Motion for Partial Summary Judgment. In the alternative, should the Court grant any relief requested, such ruling should be limited to the Addison Trial Plaintiffs only.

Respectfully submitted, this 13th day of June, 2024.

/s/ S. Eliza James
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
FORREST CRESSY & JAMES, LLC
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:   (504) 605.0777
Fax:    (504) 322.3884
Email: byron@fcjlaw.com
           nicholas@fcjlaw.com
           eliza@fcjlaw.com


/s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Harry S. Johnson (Admitted Pro Hac Vice)
James Jeffcoat (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele:   (202) 659.6800

---

[8] *See* Rec. Doc. 561, Exhibit 2, Rebuttal Report of Robert DeLorenzo, M.D. *See also* Exhibit 3- Schiffman Rebuttal Report (April 26, 2024).

6

Fax: (202) 331.0573  
Email: cafoster@whitefordlaw.com  
erowe@whitefordlaw.com  
hjohnson@whitefordlaw.com  
jjeffcoat@whitefordlaw.com  
mchilders@whitefordlaw.com  
*Counsel for Addison Plaintiffs*