UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | CIVIL ACTION |
| Plaintiffs | NO. 19-11133, c/w 19-14512 |
| V. | SECTION: "E" (5) |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| Defendants | JUDGE: Morgan<br>MAGISTRATE JUDGE: North |
| *Applies to: Both Cases* | |

### PLAINTIFF'S RESPONSES TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Plaintiffs respond as follows to Defendants Statement of Material Facts.

**DEFENDANTS' STATEMENT OF FACT #1.** Plaintiffs have alleged annoyance and medical symptoms that they attribute to exposure to odors and gases allegedly emitted from the Jefferson Parish Landfill ("JPLF") from July 1, 2017 through December 31, 2019.

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #2.** On November 5, 2019, this Court issued its first Case Management Order ("CMO"), where it established a bifurcated litigation schedule under which the issue of general causation would be resolved first, to "narrow the focus of the case and the issues at stake."

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #3.** In January and February of 2022, this Court held an eight-day Daubert and general causation trial.

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #4.** On November 29, 2022, the Court issued its General Causation Order, which limited the relevant time period to July 1, 2017 to December 31, 2019 and found that as a matter of law Plaintiffs met their burden of establishing general causation with respect to Plaintiffs' complaints "during the relevant time period [July 1, 2017 – December 31, 2019] of **headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry, a decrease in quality of life, and a loss of enjoyment or use of property**."

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #5** This Court ruled that Plaintiffs failed to establish general causation for physiological symptoms, including complaints of: "irritation to the eyes, nose, or throat; coughing; trouble breathing; asthma; skin irritation; burning lungs; nose bleeds; neurological issues; and COPD."

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #6.** The general causation phase of the litigation is over. The litigation is currently in the specific causation phase.

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #7.** Robert DeLorenzo, M.D. (hereinafter "Dr. DeLorenzo") submitted an expert report on medical causation dated February 5, 2024.

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #8.** In his report, Dr. DeLorenzo opines that exposure to hydrogen sulfide and VOC emissions from the Jefferson Parish Landfill were a

substantial cause of the health complaints reported by the trial plaintiffs during the relevant time period.

**PLAINTIFFS' RESPONSE:** Not disputed, although the report goes significantly beyond that.

**DEFENDANTS' STATEMENT OF FACT #8.** Dr. DeLorenzo's report does not identify a harmful dose at which "VOCs" can cause Plaintiffs' specific health issues.

**PLAINTIFFS' RESPONSE:** Disputed. This asserted fact is not relevant, and Defendants have not shown any other facts that make it relevant.

**DEFENDANTS' STATEMENT OF FACT #9.** Dr. DeLorenzo's report does not identify a harmful dose at which "VOCs" can cause Plaintiffs' specific health issues.

**PLAINTIFFS' RESPONSE:** Disputed. This asserted fact is not relevant, and Defendants have not shown any other facts that make it relevant.

**DEFENDANTS' STATEMENT OF FACT #10** Dr. DeLorenzo's report does not identify a specific dose of VOCs that any individual Plaintiff was exposed to.

**PLAINTIFFS' RESPONSE.** Disputed. This asserted fact is not relevant, and Defendants have not shown any other facts that make it relevant. There is no contention in this case that any Plaintiffs was injured by exposure to VOC's in isolation.

**DEFENDANTS' STATEMENT OF FACT #11** Dr. DeLorenzo's report does not contain any modeling or data analysis regarding VOCs.

**PLAINTIFFS' RESPONSE.** Not disputed that modeling of VOC's is not contained, disputed on the data point. This asserted fact is not relevant, and Defendants have not shown any

3

other facts that make it relevant. There is no contention in this case that any Plaintiffs was injured by exposure to VOC's in isolation.

**DEFENDANTS' STATEMENT OF FACT #12.** Plaintiffs' expert, James F. Lape, Jr. submitted an expert report on the fate and gas transport of gases allegedly generated by the Jefferson Parish Landfill from July 2017 through December 2019.

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #13.** Dr. Lape's report focuses on hydrogen sulfide (H2S), a component of landfill gas.

**PLAINTIFFS' RESPONSE:** Not disputed. Hydrogen sulfide was used by all parties in the case as a marker for landfill gas (and landfill gas typically contains VOC's.)

**DEFENDANTS' STATEMENT OF FACT #14.** Dr. Lape's report does not discuss volatile organic compounds (VOCs) in relation to the alleged emissions from the JPLF during the relevant time period or any individual Plaintiffs.

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #15.** No expert in this litigation has performed any monitoring, modeling, or other data analysis regarding the thirteen Trial Plaintiffs' exposures to VOCs.

**PLAINTIFFS' RESPONSE:** Not disputed. Defendants have not shown that it is even possible to measure the emission of VOC's overtime, unlike hydrogen sulfide for which the generation potential can be calculated.

**DEFENDANTS' STATEMENT OF FACT #16.** Dr. DeLorenzo was deposed on May 3 and 4, 2024.

**PLAINTIFFS' RESPONSE:** Not disputed.

**DEFENDANTS' STATEMENT OF FACT #17.** At deposition, Dr. DeLorenzo conceded that exposure to 5 ppb of hydrogen sulfide over 30 minutes (the exposure threshold at issue in this case), under the current state of the science, is not known to be capable of causing exacerbation of allergies, cough, concern for long-term effects, burning of eyes, nose and throat, red eyes, eye dryness, eye scratchiness, difficulty breathing, asthma, light-headedness, loss of smell, sinusitis, rhinitis, chest congestion, nose bleeds, decreased focus, cold sweats, or joint swelling.

**PLAINTIFFS' RESPONSE.** Disputed. Plaintiffs object to the attempt by Defendants to relitigate general causation. Dr. DeLorenzo conceded no such thing. The quoted testimony of Dr. DeLorenzo nowhere says that exposure to "5 ppb of hydrogen sulfide over 30 minutes …under the current state of the science, *is not known to be capable* of causing exacerbation of [any of the listed symptoms]."

**DEFENDANTS' STATEMENT OF FACT #18**. At deposition, Dr. DeLorenzo conceded that exposure to 5 ppb of hydrogen sulfide over 30 minutes (the exposure threshold at issue in this case), under the current state of the science, is not known to be capable of causing chronic or permanent injuries.

**PLAINTIFFS' RESPONSE.** Disputed. Dr. DeLorenzo did not say this, either, or anything close to it. Defendants cite pages 536-538 of the deposition. On page 536, he was asked about symptoms that "postdate the exposure period,: and on page 537, he was asked whether there "exist any authorities which establish that exposure to 5 parts per billion of H2S over 30 minutes

5

is capable of causing those symptoms beyond the time of the exposure?" This was not a question about chronic or permanent injuries. Instead of conceding the issue as Defendants contend, Dr. DeLorenzo explained, page 538:

> So this is a situation where someone has problem based on exposure to hydrogen sulfide, at a dose that we know causes that symptom, and they have that symptom. The hydrogen sulfide goes away, but the symptom doesn't go away. Okay. So the question is why doesn't it go away.
>
> Well, I've given you some evidence to why it doesn't go away. There's a scientific literature that supports that there may be a sensitization of the systems involved. Okay. And the point is, is that what else would be doing this. I would say that it's more likely than not that those headaches that continued were related to the exposure.

Mr. Mims used the word "chronic" in question on page, asking about "chronic conditions that postdate the exposure period. Again, Dr. DeLorenzo did not concede the point. "

> But you're trying to say there's nothing that exists in the world that says there's persistence afterwards, and I'm telling you there are.

DeLorenzo Dep at 545(Defendants omitted pages 545-546 from the citation).

**DEFENDANTS' STATEMENT OF FACT #19** At deposition, Dr. DeLorenzo admitted that specific causation cannot be established for VOCs without evidence of a specific dosage to which each Trial Plaintiff was exposed.

**PLAINTIFFS' RESPONSE. Disputed.** Defendants cite to pages 237-40 of the DeLorenzo Deposition. The words "specific causation nowhere appear." Moreover, Defendants improperly equate an exposure to a toxin (which requires a specific dosage) to exposure to an odor, which does not, as established by the testimony of Waste Connecitons' expert Pamala Dalton at the General Causation trial. In any event, what is required to prove specific causation is an issue for the Court, not experts.

**DEFENDANTS' STATEMENT OF FACT #20.** Dr. DeLorenzo admitted that he lacks any evidence, either measured or estimated, that any of the Trial Plaintiffs were exposed to VOCs, much less the concentration or duration of such exposure.

**PLAINTIFFS' RESPONSE. Disputed.** Defendants cite to the deposition transcript, which says not such thing. To the contrary, Dr. DeLorenzo's report discusses the effects of VOC's at normal background levels when combined with hydrogen sulfide,

> In addition to causing irritation on its own, low levels of hydrogen sulfide gas in combination with other VOCs will cause irritation to the eyes, nose, throat and respiratory tract. As recognized by Judge Morgan, the plaintiffs in the area around the Jefferson Parish Landfill were exposed to a variety of VOCs during the relevant time period, in combination with hydrogen sulfide. Even though the VOCs detected during the relevant time period may have been at normal background levels, the combination of hydrogen sulfide with normal-level VOCs irritates the mucus membranes resulting in irritated eyes, irritated nasal passages, irritated throats, and irritated bronchi, which, in turn, causes eye tearing, runny noses, coughing, and exacerbates asthma and other pre-existing breathing difficulties.

Report at 16 (footnotes omitted).

Respectfully submitted, this 13th day June, 2024.

                                         /s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

Harry S. Johnson, (Admitted Pro Hac Vice)
James R. Jeffcoat (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636

(410) 347-8700
hjohnson@whitefordlaw.com
jjeffcoat@whitefordlaw.com

FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com
eliza@fcjlaw.com

*Counsel For Addison Plaintiffs*