Page 1

1                UNITED STATES DISTRICT COURT

                 EASTERN DISTRICT OF LOUISIANA

2

3    ********************************************************

4     FREDERICK ADDISON, et al.,

5                      Plaintiffs,        CIVIL ACTION NO.

     vs.                                  19-11133,

6                                         c/w 19-14512

     LOUISIANA REGIONAL LANDFILL

7     COMPANY, et al.,

8                      Defendants.

     ********************************************************

9

10

                           VOLUME I

11

12              VIDEOTAPED DEPOSITION OF

13         ROBERT DeLORENZO, M.D., Ph.D., M.P.H.

14                    May 3, 2024

15               10:06 a.m. to 6:45 p.m.

16                 Richmond, Virginia

17

18

19

20

21

22

23

24

25    Reported by:  Leslie D. Etheredge, RMR, CCR

1             MR. FOSTER:  Objection to form.

2      A.      -- that only 20 percent of somebody has

3   the symptoms.  I'm not doing that.  I mean you're

4   saying that, not me.

5      Q.      Okay.  All right.  We're going to talk

6   about the Bentley case some more, and we're going to

7   stick on this topic about causation and whether the

8   patient is in the majority or not; but, before we get

9   there, I want to talk about this 20 percent number.

10             Do you have an understanding of what

11   percentage of the population experiences a reaction

12   when exposed to 5 parts per billion of H2S over

13   30 minutes?

14      A.      Not specifically, no.  I'm not aware of a

15   study that clearly says that, but there may be.

16      Q.      If Dr. Kind and Dr. Dalton have testified

17   that their interpretation of the World Health

18   Organization literature is that 5 parts per billion

19   of H2S over 30 minutes is the level at which

20   5 percent of the population experiences annoyance, do

21   you have any reason to disagree with that?

22             MR. FOSTER:  Objection to form.

23      A.      I'm not sure I agree with that, but that

24   seems to be low.  I didn't see that in the WHO

25   report, so I don't know where they're getting that

1    they can testify reliably to this point.  But Drs.

2    Betz and DeLorenzo cannot say why or when certain

3    patients fall into the small minority who actually

4    suffer these side effects or when these drugs

5    will have "synergistic" effects, let alone effects

6    substantial enough to deprive someone of independent

7    judgment.  And, most importantly, they cannot

8    reliably count Bentley among the apparent minority of

9    side-effect sufferers with no clinical

10   indications other than her own self-serving

11   testimony.

12                Did I read that correctly?

13        A.    Correct.

14        Q.    You agree with that?

15        A.    I -- again, it's the judge's opinion, I

16   agree.

17        Q.    And then just finally, it says Dr. Betz

18   and Dr. DeLorenzo therefore cannot reliably opine

19   that Bentley's medications actually caused her to

20   lack the mental capacity necessary to sign PBH's

21   release.

22        A.    Correct.

23        Q.    All right.  So would you agree with me

24   that when there is a toxin that only causes symptoms

25   in a small minority of patients, before you can

1    testify that a specific patient did suffer those

2    symptoms caused by exposure to the toxin, you have to

3    determine whether that patient falls within the small

4    minority of patients that are affected?

5                MR. FOSTER:  Objection to the form.

6         A.    Yes.

7         Q.    Okay.  Did you do that in this case?

8         A.    Yes.

9         Q.    How did you do that?

10        A.    By my evaluation, my history taking, my

11   looking at their depositions, their medical records,

12   using my expertise, and I did that to formulate my

13   opinions.

14        Q.    Looking again at the Bentley opinion, by

15   the judge there, you would agree that when

16   determining whether the patient belongs in that small

17   minority of patients who suffer those symptoms, you

18   have to rely on clinical indications other than the

19   patient's own self-serving testimony.  Right?

20                MR. FOSTER:  Objection to the form.

21        A.    Correct.

22        Q.    What did you rely on in this case other

23   than the plaintiffs' subjective complaints and

24   testimony to determine that they fall within the

25   small minority of persons who are bothered by 5 parts

**Page 394**

1   COMMONWEALTH OF VIRGINIA, AT LARGE, to wit:

2

3        I, LESLIE D. ETHEREDGE, a Registered Merit

4   Reporter, Certified Court Reporter and Notary Public

5   for the State of Virginia at Large, do hereby certify

6   that ROBERT DeLORENZO, M.D., Ph.D., M.P.H. appeared

7   before me, was sworn by me and was thereupon examined

8   by counsel; and that the foregoing is a true, correct

9   and full transcript of the testimony adduced, to the

10  best of my ability.

11        I further certify that I am neither related to

12  nor associated with any counsel or party to this

13  proceeding, nor otherwise interested in the event

14  thereof.

15       Given under my hand in Chesterfield, Virginia,

16  this 7th day of May, 2024.

17

18

19  _____

20               LESLIE D. ETHEREDGE

             Registered Merit Reporter, Certified

21           Court Reporter and Notary Public for the

             State of Virginia at Large

22

23  My commission expires:

24  February 28, 2027

25  Notary Registration No:  116406