1

2              UNITED STATES DISTRICT COURT

3           EASTERN DISTRICT OF LOUISIANA

4

5                                    )Civil Action
      ELIAS JORGE "GEORGE"           )No. 18-7889
6     ICTECH-BENDECK,                )c/w 18-8071,
              Plaintiff,             )18-8218,
7              vs.                    )18-9312
      WASTE CONNECTIONS BAYOU,       )
8     INC., ET AL.,                  )Section: "E"
                                     )(5)
9            Defendants.             )
                                     )
10    Related Case:                  )
                                     )Civil Action
11    FREDERICK ADDISON, ET AL.,     )
              Plaintiffs,            )NO. 19-11133,
12             vs.                   )c/w 19-14512
      LOUISIANA REGIONAL LANDFILL    )
13    COMPANY, ET AL.,               )Section: "E"
                                     )(5)
14           Defendants.             )
                                     )
15    Applies to:  Both Cases.       )
      ------------------------------)

16

17

18         HYBRID VIDEOTAPED DEPOSITION OF

19     EXPERT WITNESS PAMELA DALTON, PhD, MPH

20              New York, New York

21             Monday, May 13, 2024

22

23

24    Reported by:
      TAMI H. TAKAHASHI, RPR, CSR
25    JOB NO. J11168217



1

2                       May 13, 2024

3                       10:15 a.m.

4

5          Hybrid Videotaped Deposition of

6    Expert Witness PAMELA DALTON, PhD, MPH, held

7    at the offices of Beveridge & Diamond PC, 825

8    Third Avenue, 16th Floor, New York, New York,

9    pursuant to Notice, before TAMI H. TAKAHASHI,

10   a Registered Professional Reporter and Notary

11   Public of the State of New York.

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
 1                        P. Dalton
 2    retained?
 3              MS. KREBS:  Object to form.
 4         A.   Has the scope of what I'm doing
 5    changed or --
 6    BY MS. JAMES:
 7         Q.   Yes, has the scope of your
 8    engagement at this specific causation phase
 9    of the litigation changed from the scope that
10    you told me about when you were hired for
11    general causation?
12              MS. KREBS:  And are you referring
13         in Addison?
14              MS. JAMES:  In Addison, yes.
15         A.   Well, it's narrowed --
16    BY MS. JAMES:
17         Q.   Okay.
18         A.   -- to look at the likelihood that
19    these specific trial plaintiffs experienced
20    injuries in odor -- odor issues from the
21    Jefferson Parish Landfill.
22         Q.   Okay.  All right.  In your
23    litigation work, have you ever been involved
24    in a case that -- and provided opinions on
25    hydrogen sulfide emissions from the
```



```
 1                        P. Dalton
 2    what do you mean by that?
 3         A.   The Court found that this
 4    concentration of hydrogen sulfide was capable
 5    of causing a reaction in the general
 6    population.
 7         Q.   Okay.  So, based on that, we can
 8    assume that the exposure level of 5 parts per
 9    billion for 30 minutes, the judge has already
10    found that it can cause injury to the general
11    population, right?
12              MS. KREBS:  Object to form.
13         A.   The judge has determined in their
14    opinion that this is the concentration that
15    is capable of causing a reaction or the
16    injuries that are alleged by the plaintiffs
17    in the general population.
18    BY MS. JAMES:
19         Q.   Okay.  And you're not offering any
20    opinions that would be contrary to that,
21    right?
22              MS. KREBS:  Object to form.
23         A.   Well, I'm not disputing that it is
24    capable of causing that in some individuals
25    in the general population.
```



```
 1                         P. Dalton
 2              MS. KREBS:  Object to form.
 3         A.   No, I'm not saying they're not part
 4    of a general population.  I'm saying that
 5    that was a general causation finding.  And
 6    now I'm looking at specific causation, did it
 7    cause, did exposure at 5 parts per billion or
 8    any concentration cause these annoyances or
 9    injuries.
10    BY MS. JAMES:
11         Q.   Okay.  And let's go through each
12    plaintiff.  So let's start with Geneva Green.
13    What about Geneva Green makes her -- what
14    about -- what criteria do you evaluate when
15    deciding who is part of the general
16    population category and who is not?
17              MS. KREBS:  Object to form.
18         A.   I don't believe I'm evaluating who
19    is part of a general population or not.
20    BY MS. JAMES:
21         Q.   Okay.  Well, I guess who is
22    included in the universe of the Court's
23    ruling?  Because the Court has said that
24    5 ppb is the exposure at which it's capable
25    of causing injuries in the general
```



```
 1                      P. Dalton
 2   increases the poignancy of that stimulus.  Do
 3   you agree with that?
 4              MS. KREBS:  Object to form.
 5        A.   Under some circumstances,
 6   experiencing an odor can be a stressor, yes.
 7   BY MS. JAMES:
 8        Q.   Okay.  And is that --
 9        A.   I don't know that it increases the
10   poignancy of the stimulus.  That's an opinion
11   of Dr. Schiffman.
12        Q.   Okay.  Is it your understanding
13   that opinions of Dr. Schiffman's that were
14   incorporated into the finding of fact and
15   conclusions of law are able to be rebutted in
16   the specific causation phase of this case?
17              MS. KREBS:  Object to form.
18        A.   To the extent that they don't apply
19   to these specific trial plaintiffs, yes.
20   BY MS. JAMES:
21        Q.   Okay.  And -- okay.  Then it goes
22   on to say, A stressor that increases the
23   poignancy of stimulus -- and Dr. Schiffman
24   explained that the intermittent nature of
25   odors is related to the issues of
```



```
 1                    P. Dalton

 2        Q.   Um-hum.  Okay.  Okay.  Do you

 3   disagree -- after having read part of the

 4   Court's opinion, do you disagree that the

 5   Court has made a finding that the -- the

 6   pressurized burst characterized -- which can

 7   characterized landfill gas made the landfill

 8   gas exposure intermittent and -- let's see --

 9   let me actually withdraw that.

10             Do you agree that the intermittent

11   and unpredictability nature of landfill odors

12   factors into whether or not an individual

13   will become desensitized to it?

14             MS. KREBS:  Object to form.

15        A.   Not universally, no.  During that

16   period of exposure, desensitization will

17   occur.

18   BY MS. JAMES:

19        Q.   Okay.  So you would disagree with

20   that conclusion?

21             MS. KREBS:  Object to form.

22        A.   In a general and universal sense,

23   yes.

24   BY MS. JAMES:

25        Q.   Okay.  Well, how -- do you disagree
```



```
 1                      P. Dalton

 2   with it as it relates to the 13 trial

 3   plaintiffs?

 4            MS. KREBS:  Object to form.

 5        A.   Yes, because almost all of them

 6   report what they smelled odors continuously,

 7   not intermittently and unexpectedly.  So if

 8   they're smelling these odors continuously

 9   over entire days and nights, that's not

10   consistent with intermittent odors.

11   BY MS. JAMES:

12        Q.   Okay.  And do you dispute the

13   Court's finding that the odor from the

14   landfill also lingered due to hydrogen

15   sulfide's ability to accumulate in homes?

16            MS. KREBS:  Object to form.

17        A.   Again, I'm not opining on that.

18   But that's inconsistent with the -- you know,

19   they're either smelling it all the time or

20   they're not smelling it all the time.  I

21   mean, there's -- you know, it's not

22   intermittent if it's lingering, right?

23   BY MS. JAMES:

24        Q.   And earlier you said that you are

25   not able to testify on whether or not
```



1                        P. Dalton

2      that I've seen in the published peer-reviewed

3      literature.

4      BY MS. JAMES:

5           Q.   Okay.  So you would disagree with

6      the findings in Subsection E?

7                MS. KREBS:  Object to form.

8           A.   I'm talking about what people are

9      saying -- what the plaintiffs are claiming is

10     their experience.  And that seems to be

11     different than what the Court is addressing

12     here.

13     BY MS. JAMES:

14          Q.   Okay.  So do you dispute that the

15     Court has made a finding that malodors of

16     hydrogen sulfide at 5 ppb over 30 minutes is

17     capable of causing sleep disruption?

18                MS. KREBS:  Object.

19     BY MS. JAMES:

20          Q.   Do you dispute that?

21                MS. KREBS:  Object to form.

22          A.   I'm not disputing what the sentence

23     says.  But the basis for that sentence seems

24     to imply that it's -- that the sleep

25     disturbance is caused by another effect of a



1                          P. Dalton

2    malodor such as headache.  That doesn't say

3    that the odors themselves, which is what the

4    plaintiffs are reporting, are waking them.

5    BY MS. JAMES:

6         Q.   Okay.  Do you dispute that sleep

7    disorders are a type of somatic symptom

8    associated with exposure to malodors?

9              MS. KREBS:  Object to form.

10        A.   Again, that is a finding in a study

11   where people who are chemically sensitive and

12   really very -- very responsive to all odors

13   also report sleep disturbances.  But they're

14   not talking about odors waking them up.

15   BY MS. JAMES:

16        Q.   Okay.

17        A.   It's an association.  It's not a

18   causal link.

19        Q.   Did you review any of the Facebook

20   posts with regards to your Opinion Number 3

21   that:  Exposures to odors is not likely to

22   cause sleep disturbance?

23              MS. KREBS:  Object to form.

24        A.   I have seen references to the same

25   things that the plaintiffs are reporting



```
 1                      P. Dalton
 2    BY MS. JAMES:
 3         Q.   Okay.  Well, we can go through it
 4    together.  And what do you mean by "unsure"?
 5    Can you be more specific about what you're
 6    unsure about?
 7         A.   Well, Dr. Schiffman opined that
 8    trigeminal activation was -- that the
 9    concentration of H2S was capable of
10    activating the trigeminal nerve.  But she did
11    so when she said it was combined with other
12    VOCs.  And that's -- that statement or that
13    opinion is not supported by any analysis that
14    she's done, to my knowledge.
15         Q.   Okay.  So you would disagree with
16    that opinion by Dr. Schiffman, correct?
17         A.   I do.
18         Q.   Okay.  And you're going to offer
19    opinions to rebut that in -- at the trial,
20    correct?
21              MS. KREBS:  Object to form.
22         A.   That's my Opinion 4, yes.
23    BY MS. JAMES:
24         Q.   Okay.  All right.  So if you look
25    at the fourth paragraph on page 12 of your
```



1                      P. Dalton

2   report, you state:  In my opinion, it is

3   simply not credible to conclude that H2S in

4   the environment at 5 ppb, or even in the

5   range of 100 ppb, in combination with other

6   unspecified chemicals at low ppb

7   concentrations can produce health effects

8   that only begin to appear at 10,000 ppb for

9   H2S alone.  Is that correct?

10         A.    That is what it says, yes.

11         Q.    And what health conditions are you

12   claiming occur only at 10,000 ppb of H2S?

13         A.    Eye irritation.

14         Q.    Eye irritation, okay.

15               And do you know whether or not the

16   Court made a general causation finding as to

17   eye irritation?

18               MS. KREBS:  Object to form.

19         A.    I don't recall the specific

20   wording, but I know that the Court decision

21   in general causation said that -- that H2S in

22   combination with VOC mixtures could cause

23   trigeminal activation.

24   BY MS. JAMES:

25         Q.    Okay.  So let's say for a moment



```
 1                         P. Dalton
 2        Q.    So you -- you would -- you
 3   anticipate on providing testimony at the
 4   August trial that 5 ppb over the period of 30
 5   minutes or more does not activate the
 6   trigeminal nerve, correct?
 7              MS. KREBS:  Object to form.
 8        A.    I am providing that opinion.  And
 9   that's not what the Court found.  The Court
10   found that this was in combination with other
11   VOCs.
12   BY MS. JAMES:
13        Q.    Okay.  So in terms of your opinion,
14   do you disagree with the finding that 5 ppb
15   over a period of 30 minutes in addition to
16   unspecified VOCs causes or can cause
17   trigeminal nerve activation?
18              MS. KREBS:  Object to form.
19        A.    What I'm saying is there's no
20   evidence of what those other VOCs were or the
21   concentration that they were at any of the
22   plaintiff -- any of the trial plaintiffs'
23   residences.  So I can't conclude that they
24   did cause it.
25              I'm not saying that I'm disagreeing
```



1

2                  C E R T I F I C A T E

3   STATE OF NEW YORK      )

4                               : ss.

5   COUNTY OF NEW YORK     )

6

7            I, TAMI H. TAKAHASHI, a Notary

8        Public within and for the State of New

9        York, do hereby certify:

10           That PAMELA DALTON, PhD, MPH, the

11       witness whose deposition is hereinbefore

12       set forth, was duly sworn by me and that

13       such deposition is a true record of the

14       testimony given by the witness.

15           I further certify that I am not

16       related to any of the parties to this

17       action by blood or marriage, and that I

18       am in no way interested in the outcome

19       of this matter.

20           IN WITNESS WHEREOF, I have hereunto

21       set my hand this 15th day of May 2024.

22

23

24       _____

25                TAMI H. TAKAHASHI

