UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FREDERICK ADDISON, ET AL** | * * * | **CIVIL ACTION NO.** **19-11133 C/W 19-14512** |
| | * | |
| **VERSUS** | * * | **SECTION "E-5"** |
| | * | **JUDGE SUSIE MORGAN** |
| | * | |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL** | * * * | **MAGISTRATE JUDGE NORTH** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*     \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**JEFFERSON PARISH'S REPLY MEMORANDUM TO WASTE CONNECTIONS DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO JEFFERSON PARISH'S MOTION TO EXCLUDE TESTIMONY OF ALI HASHIMI, P.E.**

**MAY IT PLEASE THE COURT:**

Defendant, Jefferson Parish through undersigned counsel, respectfully submits the following Reply Memorandum to the Waste Connections Defendants' Memorandum of Law in Opposition to Jefferson Parish's Motion to Exclude the Testimony of Ali Hashimi ("Reply"). For the following reasons, Jefferson Parish's Motion should be granted.

**INTRODUCTION**

Ali Hashimi rendered a report in this case and intends to offer testimony to support the opinion that Jefferson Parish bore the sole responsibility for alleged deficiencies at the Jefferson Parish Landfill. In his report, Mr. Hashimi reaches the ultimate legal conclusion that Jefferson Parish and not the Waste Connections Defendants were responsible for alleged inadequacies of the Landfill that led to the Plaintiff's alleged damages.

Ali Hashimi seeks to offer testimony that will render legal conclusions as to the responsibility and fault of Jefferson Parish, and concerning the interpretation of the contract

between Waste Connections and Jefferson Parish, both of which would invade the province of the jury. Ali Hashimi cannot render legal opinions nor offer testimony which interprets the contract. This testimony seeks to allocate fault in an effort to tell the jury the result to reach as it pertains to the ultimate issue in this case.

Ali Hashimi is not permitted to interpret the contract, nor is he permitted to render legal conclusions. Jefferson Parish's Motion is persuasive as it outlines how Waste Connections' expert, Ali Hashimi, is attempting to usurp the role of the factfinder by allocating fault and by interpreting the contract. Therefore, it should be granted.

**LAW AND ARGUMENT**

I.  **ALI HASHIMI'S EXPERT TESTIMONY RENDERS LEGAL CONCLUSIONS AND IS INADMISSABLE**

Ali Hashimi intends to offer testimony that renders inadmissible legal conclusion opinions. "Accordingly, experts are not allowed to offer inadmissible opinions 'calculated to suggest to the jury a particular legal conclusion.[1] In *Waste Mgmt. of Louisiana, L.L.C. v. Par.*, the court found that an expert **could not** testify as to matters of contract interpretations or legal conclusions.[2]

Defendants contend in their opposition that, "Mr. Hashimi's opinions cover regulatory and technical issues in addition to language of the contracts." This clearly states Waste Connections' intention to have Ali Hashimi testify as to his interpretation of the contract. Defendant, Waste Connections, argues that the contract "sweeps in broad ranges of regulations as part of its assignment of duties." However, despite that assertion, it is clear that Ali Hashimi does not wish to testify to regulations, rather he intends to offer opinions as to the responsibility and liability of

---

[1] *Haughey v. Am. Wall Bed Co., Inc.*, CV 23-865, 2024 WL 1092839, at *15 (E.D. La. Mar. 13, 2024) *Singleton v. Fieldwood Energy, LLC*, No. 15-CV-5558, 2016 WL 3940279, at *3 (E.D. La. July 21, 2016) (Africk, J.) (quoting *Shell Offshore, Inc.*, 2015 WL 5714622, at *5.
[2] *Waste Mgmt. of Louisiana, L.L.C. v. Par.*, CIV.A. 13-6764, 2015 WL 5798029, at *3 and *14 (E.D. La. Oct. 5, 2015).

the parties.

*Opinion 3.1 Text:* "**Jefferson Parish bore ultimate responsibility** *for control over all aspects of the operation of the facility, including the operation and maintenance of the landfill gas control and collection system (GCCS) at the facility.*"[3]

Response: This is clearly an interpretation of the contract with Ali Hashimi's opinion as to who was responsible for operation and maintenance of the GCCS. This is a legal conclusion as to Jefferson Parish's responsibilities at the Landfill, in an attempt to tell the jury the inadequacy of the GCCS was the fault of Jefferson Parish.

*Opinion 3.2 Text:* "**Jefferson Parish bore the responsibility** *to be aware of site conditions, how these site conditions may impact the GCCS, and determine when GCCS activities were required to maintain compliance at the facility with the existing permits and regulations.*"[4]

Response: This is clearly an interpretation of the contract regarding Jefferson Parish being responsible for the site conditions, and a legal conclusion as to Jefferson Parish's responsibilities at the Landfill.

*Opinion 3.3 Text:* "**Jefferson Parish bore the responsibility** *to adequately fund the landfill construction and operation, and to implement process controls and quality assurance procedures despite LRLC being assigned by contract responsibilities to perform those functions and other site operations activities that complemented the Parish's responsibilities to manage landfill gas and odors for the facility.*"[5]

Response: This is clearly an interpretation of the contract and a legal conclusion as to Jefferson Parish's responsibilities at the Landfill.

*Opinion 3.5 Text:* "**LRLC's responsibilities at the JPLF were defined by the Operating Agreement**, *which excluded responsibility for the GCCS and for leachate components outside of Phase 4A.*"[6]

Response: This is clearly an interpretation of the contract and a legal conclusion as to Jefferson Parish's responsibilities at the Landfill. Further, the jury will view this operating agreement, other testimony, and evidence, and must make their own interpretations as to Waste Connections' responsibilities.

*Opinion 3.6 Text:* "*Under the Operating Agreement,* **Jefferson Parish was responsible** *for the operation, maintenance, and repair of leachate management components outside of Phase 4A. This was the Parish's responsibility because the Parish never tendered the rest of the leachate system to LRLC in good working condition*".[7]

Response: This is clearly an interpretation of the contract and a legal conclusion as to Jefferson Parish's responsibilities at the Landfill, which the jury must determine when considering the contract, testimony, and evidence presented at trial.

---

[3] *See* Expert Report of Ali Hashimi attached to Jefferson Parish Motion in Limine to Exclude the Expert Testimony and Report of Ali Hashimi (DOC. 544-2 p. 3).
[4] See DOC. 544-2 p. 3.
[5] See DOC. 544-2 p. 3.
[6] See DOC. 544-2 p. 3.
[7] See DOC. 544-2 p. 3.

*Opinion 3.7 Text:* "**Jefferson Parish was responsible** for the design, installation, operation, and maintenance of the GCCS. Jefferson Parish bore the responsibility to be aware of site conditions, how these site conditions may impact the GCCS, and determine when GCCS activities were required to maintain compliance at the facility with the existing permits and regulations."[8]

Response: This is clearly an interpretation of the contract and a legal conclusion as to Jefferson Parish's responsibilities at the Landfill.

*Opinion 3.8 Text:* "Though Jefferson Parish contracted with another entity to perform O&M on the GCCS, it was **Jefferson Parish's responsibility** to manage that contractor and to use the information provided by its GCCS contractor."[9]

Response: This is a legal conclusion as to Jefferson Parish's responsibilities at the Landfill, which the jury must determine after a consideration of all of the evidence.

*Opinion 4.3 Text:* "As the permit holder and owner of the JPLF, **Jefferson Parish was responsible** for understanding regulations and its own contract terms governing the requirements for landfill gas control and collection systems. These terms should have put the Parish on notice that compliance with regulatory and industry standards was critical to the control of landfill gas emissions and management of potential odors."[10]

Response: This is clearly a legal conclusion as to Jefferson Parish's responsibilities at the Landfill.

*Opinion 4.4 Text:* "Regulations and generally accepted industry standards specify operating standards and limitations for engineering controls that are part of an effective landfill gas collection and control system. **Jefferson Parish should have been on notice of these standards in its design, operation, and supervision of the GCCS at JPLF.**"[11]

Response: This is clearly a legal conclusion as to what Jefferson Parish should have been on notice of concerning the GCCS as well as a legal conclusion as to Jefferson Parish's responsibilities at the Landfill.

*Opinion 5.8 Text:* "**LRLC relied on the Parish** and its GCCS contractors to design, install, operate, repair, and maintain the GCCS. **The Parish controlled the design, installation, and operation of the landfill gas collection and control system**. LRLC's reliance on the Parish was reasonable."[12]

Response: This is clearly a legal conclusion that instructs the jury that Waste Connections is not responsible, therefore allocating fault to the Parish.

*Opinion 6.1 Text:* "**Jefferson Parish was solely responsible** for issues with the landfill gas collection and control system that were identified by LDEQ, Carlson Environmental Consultants, River Birch, and Plaintiffs. LRLC had no responsibility for the landfill gas collection and control system, and based on its assigned duties, LRLC had no ability to improve operations of the

---

[8] See DOC. 544-2 p. 4.
[9] See DOC. 544-2 p. 4.
[10] See DOC. 544-2 p. 4.
[11] See DOC. 544-2 B p. 4.
[12] See DOC. 544-2 p. 5.

*system.*"[13]

Response: This is clearly an interpretation of the contract and a legal conclusion as to Jefferson Parish's responsibilities at the Landfill.

*Opinion 6.2 Text:* "**Jefferson Parish controlled the assignment of work to its contractors and actively supervised the operations at the JPLF**. *Jefferson Parish should have been aware of any issues that it was in the best position to address as the permittee and owner, and as the entity with control over the design and installation of the GCCS.*"[14]

Response: This is clearly an interpretation of the contract and a legal conclusion as to Jefferson Parish's responsibilities at the Landfill.

*Opinion 6.3 Text:* "**Jefferson Parish bore the responsibility** *to be aware of site conditions, how these site conditions may impact the GCCS, and determine when GCCS activities were required to maintain compliance at the facility with the existing permits and regulations.*"[15]

Response: This is clearly an interpretation of the contract and a legal conclusion as to Jefferson Parish's responsibilities at the Landfill.

*Opinion 7.1 Text:* "**The contract between Jefferson Parish and APTIM did not provide sufficient performance goals and standards** *to ensure efficient and effective operation and maintenance of the GCCS.*"[16]

Response: This is clearly an interpretation of the contract between Jefferson Parish and Aptim. This is a legal conclusion as to Jefferson Parish's responsibilities at the Landfill.

Webster's Dictionary defines "responsibility" as the quality or state of being responsible, such as a moral, legal, or mental accountability; something for which one is responsible: burden. It's apparent from the above that by repeatedly using the term "responsible," Waste Connections wishes for Ali Hashimi to tell the jury that Jefferson Parish, and not Waste Connections, was responsible for the alleged deficiencies at the JPLF.

## II. ALI HASHIMI'S INTERPRETATIONS OF THE CONTRACT ARE INADMISSIBLE AND HIS OPINIONS ARE NOT NECESSARY FOR THE JURY TO UNDERSTAND THE CONTRACT

Ali Hashimi intends to offer testimony that is unnecessary and will mirror the testimony of other fact witnesses. Ali Hashimi cannot testify to his interpretation of the contract. In *Waste Mgmt.*

---

[13] See DOC. 544-2 p. 6.
[14] See DOC. 544-2 p. 6.
[15] See DOC. 544-2 p. 6.
[16] See DOC. 544-2 p. 7.

*of Louisiana, L.L.C. v. Par.*, the court found that an expert **could not** testify as to matters of contract interpretations or legal conclusions. [17] The court has previously held that an expert is not needed to explain the terms of a contract to the jury.[18] The court has stated, "<u>Expert testimony on matters which a jury is capable of understanding and deciding without the expert's help should be excluded. Expert testimony that does nothing more than **"mirror" testimony offered by fact witnesses should also be excluded**. Finally, the expert witness must "bring to the jury more than the lawyers can offer in argument."</u>[19] The Court has held that experts cannot offer opinions on contractual interpretations.[20] While Waste Connections argues that Ali Hashimi's testimony is needed to define the technical terms, such a "leachate collection and transmission systems." Other witnesses can and will define these terms. This Court is well aware from the General Causation phase of trial, as well as from the witness lists filed to date that there will be no shortage of fact witnesses who have the ability and knowledge to define these terms, not to mention the ability and knowledge of other experts to do so as well. Ali Hashimi's testimony is an attempt by Waste Connections to allocate fault by interpreting the contract and stating what the responsibilities were of each party under the contract.

Further, Waste Connections states that Ali Hashimi will explain how the Contract was structured. First, Ali Hashimi did not partake in the structuring of the contract, so he cannot give his interpretation or opine on the structuring of the contract. Second, Waste Connections states Ali Hashimi will help the jury understand, "LRLC was not responsible for the GCCS system." Aside from yet another attempt to interpret the contract and render a legal opinion, Ali Hashimi is not to

---

[17] *Waste Mgmt. of Louisiana, L.L.C. v. Par.*, CIV.A. 13-6764, 2015 WL 5798029, at *3 and *14 (E.D. La. Oct. 5, 2015).
[18] *See In re Tasch, Inc*., 97-15901 JAB, 1999 WL 596261, at *1 (E.D. La. Aug. 5, 1999).
[19] See *Id.* at *2.
[20] *See Waste Mgmt. of Louisiana, L.L.C. v. Par.*, CIV.A. 13-6764, 2015 WL 5798029, at *3 and *14 (E.D. La. Oct. 5, 2015).

testify to this assertion; not only can the jury read this contract and reach its own conclusions, but again other witnesses are available to testify.

As noted in its Motion in Limine, the Parish does not agree that Ali Hashimi has the qualifications to opine on contractual interpretations as he is not an expert in interpreting contracts.

### III. ALI HASHIMI SUBMITTED AN AFFIDAVIT ON JUNE 13, 2024, WHERE HE INDICATED THAT HE IS QUALIFIED TO INTERPRET CONTRACTS.

While Ali Hashimi may be qualified to discuss terms, he cannot interpret the contract for the jury. Courts have held as indicated in cases cited in Jefferson Parish' Motion in Limine filed on June 6, 2024, and in this reply that experts cannot interpret contracts for the jury.[21] While experts may be able to lend guidance on the meaning of terminology, if necessary, but Ali Hashimi is not permitted to testify as to his interpretation of the contract. The affidavit submitted by Ali Hashimi to justify his experience in contracts can only be viewed as a failed attempt to bolster his curriculum vitae, which should have been included as part of his expert report months ago. In his affidavit Ali Hashimi contends, "the scope of the Parish's responsibility is not clear from the face of the contract."[22] This statement illustrates the purpose that Waste Connections seeks to use Ali Hashimi to render opinions regarding the responsibility of Jefferson Parish. The jury, and not Ali Hashimi, must determine the role of the Parish and all parties in this matter.

### CONCLUSION

For the above and foregoing reasons, the Court should grant Jefferson Parish's Motion.

---

[21] See Affidavit of Ali Hashimi attached to DOC 585-3, and see *Waste Mgmt. of Louisiana, L.L.C. v. Par.*, CIV.A. 13-6764, 2015 WL 5798029, at *3 and *14 (E.D. La. Oct. 5, 2015). See *In re Tasch, Inc*., 97-15901 JAB, 1999 WL 596261, at *1 (E.D. La. Aug. 5, 1999).
[22] See Affidavit of Ali Hashimi attached to DOC 585-3.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading was served upon all counsel of record in the parties named herein through the Court's ECF system.

Metairie, Louisiana, this 18th day of June 2024.

      /s/ *Michael S. Futrell*
      MICHAEL S. FUTRELL

Respectfully submitted,

**CONNICK AND CONNICK, LLC**

    */s/ Michael S. Futrell*
W. PETER CONNICK, LA. BAR NO. 14158
MICHAEL S. FUTRELL, LA. BAR NO. 20819
MATTHEW D. MOGHIS, LA. BAR NO. 33994
ANYA M. JONES, LA. BAR NO. 36923
3421 N. Causeway Boulevard, Suite 408
Metairie, Louisiana 70002
Telephone:   (504) 681-6663
Facsimile:   (504) 838-9903
E-mail:   *mfutrell@connicklaw.com*
               *moghis@connicklaw.com*

*Counsel for Defendant, Jefferson Parish*