UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FREDERICK ADDISON, ET AL** | * * * | **CIVIL ACTION NO.** **19-11133 C/W 19-14512** |
| **VERSUS** | * * * | **SECTION "E-5"** **JUDGE SUSIE MORGAN** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL** | * * * | **MAGISTRATE JUDGE NORTH** |

* * * * * * * * * * * * * * * *  *  * * * * * * * * * * * * * * * *

**JEFFERSON PARISH'S REPLY MEMORANDUM TO APTIM'S MEMORANDUM IN OPPOSITION TO JEFFERSON PARISH'S MOTION *IN LIMINE* TO EXCLUDE THE REPORT AND TESTIMONY OF BARRY KLINE**

**MAY IT PLEASE THE COURT:**

Defendant, Jefferson Parish through undersigned counsel, respectfully submits the following Reply Memorandum to Aptim's Memorandum in Opposition to the Motion *in Limine* to Exclude the Report and Testimony of Barry Kline ("Reply"). For the following reasons, Jefferson Parish's Motion should be granted.

**INTRODUCTION**

Barry Kline, a remediation engineer, was employed by Aptim to evaluate Aptim's performance as the operator of the Gas Collection and Control System (GCCS) at the Jefferson Parish Landfill (JPLF).[1] Barry Kline rendered a report in this case and intends to offer testimony to support the nine expert opinions underpinning his ultimate opinion that Aptim performed competently and professionally at the Jefferson Parish Landfill. In these opinions, Barry Kline renders legal conclusions which are impermissible as the jury must make their own decision as to

---

[1] See Barry Kline's Expert Report from March 4, 2024 (Doc. 543-2 p. 1.)

whether Aptim performed competently and professionally at the JPLF. Barry Kline cannot offer testimony which interprets the contract between Aptim and Jefferson Parish. This testimony seeks to allocate fault in an effort to tell the jury the result to reach as it pertains to the ultimate issue in this case.

Aptim, in their opposition, states that Barry Kline's testimony will aid the jury in understanding the complex facts at issue in this consolidated litigation. However, everything that Barry Kline wishes to testify to concerning the landfill that will supposedly aid the jury will be testified to by lay witnesses and other experts.

Barry Kline is not permitted to interpret the contract and he is not permitted to render legal conclusions as to Aptim's lack of responsibility at the JPLF, in an attempt to tell the jury that Aptim had no role in the alleged deficiencies at the Landfill. Jefferson Parish's Motion is persuasive as it outlines how Aptim's expert is attempting to usurp the role of the factfinder by allocating fault to other parties involved with the JPLF and therefore it should be granted.

## LAW AND ARGUMENT

I. **BARRY KLINE'S EXPERT OPINIONS ARE INADMISSIBLE LEGAL CONCLUSIONS**

Barry Kline intends to offer testimony that renders inadmissible legal conclusion opinions. "Accordingly, experts are not allowed to offer inadmissible opinions 'calculated to suggest to the jury a particular legal conclusion.'"[2] In *Waste Mgmt. of Louisiana, L.L.C. v. Par.*, the court found that an expert **could not** testify as to matters of contract interpretations or legal conclusions.[3]

In this case, the expert testimony that Barry Kline seeks to explain to the jury will be given

---

[2] *Haughey v. Am. Wall Bed Co., Inc.*, CV 23-865, 2024 WL 1092839, at *15 (E.D. La. Mar. 13, 2024) *Singleton v. Fieldwood Energy, LLC*, No. 15-CV-5558, 2016 WL 3940279, at *3 (E.D. La. July 21, 2016) (Africk, J.) (quoting *Shell Offshore, Inc.*, 2015 WL 5714622, at *5.

[3] *Waste Mgmt. of Louisiana, L.L.C. v. Par.*, CIV.A. 13-6764, 2015 WL 5798029, at *3 and *14 (E.D. La. Oct. 5, 2015).

by other fact witnesses including but not limited to Aptim's own employees and representatives as it relates to the JPLF and their duties and responsibilities at the JPLF. Barry Kline's testimony is inadmissible as it will simply mirror testimony that fact witness will give. Further, Barry Kline's testimony offers legal conclusions on the interpretation of a contract, and this contractual interpretation is not admissible, regardless of the expert's years of experience in contractual interpretations.

Operating under the foregoing, Jefferson Parish addresses the expert opinions by Aptim in their opposition memorandum. It should be noted that Aptim did not address opinion 2, opinion 6, and opinion 8, which are clearly legal conclusions as to the responsibilities of Aptim.

**Opinion No. 2**: APTIM **was not responsible** *for the receipt of waste materials, waste placement, waste processing, or waste solidification, including the deposition or use of materials, such as spent lime or fly ash, that may have led to the increased concentrations of hydrogen sulfide (H2S) within the landfill gas being generated.*[4]

**Response:** This opinion is clearly an attempt to interpret the contract and state that Aptim was not responsible for deficiencies that may have led to increased concentrations of H2S at the Landfill. This is a legal opinion that states Aptim was not responsible for increased levels of H2S. This opinion is inadmissible, as the jury must determine from the facts and evidence who was responsible for any alleged increased concentrations of H2S.

**Opinion No. 6**: *APTIM did not have control over the leachate levels in Phase IVA that allegedly impaired the operation of the GCCS.*[5]

**Response:** This opinion is clearly an attempt to interpret the contract as Barry Kline's opinion states, "did not have control over." What Aptim controlled is either contained within the contract or it is not. The jury must determine if Aptim had control over the leachate levels in Phase IVA.

---

[4] See Barry Kline's Expert Report from March 4, 2024 (Doc. 543-2 p. 2).
[5] See Doc. 543-2 p. 3.

***Opinion No. 8***: APTIM did not have control over the specification, procurement, inspection, or placement of landfill cover materials. APTIM ***was not contracted*** to maintain any cover materials in any of the Phases of the landfill. APTIM only inspected landfill cover materials in conjunction with performing NSPS-required Surface Emissions Monitoring on a quarterly basis.[6]

**Response:** This opinion is clearly an attempt to interpret the contract as Barry Kline's opinion states, "Aptim was not contracted." The jury can determine what Aptim was or was not contracted to do from their evaluation of the contract during trial.

Aptim contends that the following opinions: 1, 3, 4, and 7 are not legal conclusions but instead a synthesized explanation and an "evaluation or pertinent regulations applicable to Aptim's contractual scope of work." Aptim further contends that Barry Kline's testimony relating to the following opinions will assist the jury in deciding whether Aptim is liable or partially liable for Plaintiff's alleged injuries arising from operations at the JPLF. **These are all "legal conclusions that render an opinion as to the ultimate issue of liability and are impermissible. Further, Barry Kline cannot render opinions that interpret for the jury Aptim's scope of work with reference to the contract. The jury must determine Aptim's scope of work from reviewing the contract, testimony, and evidence during trial and make their own determination as to the responsibility of the parties and who, if anyone, is liable for the alleged damages to the Plaintiffs.**

***Opinion No 1***: APTIM was only provided with a partially-installed GCCS to operate in Phase IVA and the timing of its installation and expansion ***was outside of APTIM's control***.[7]

**Response**: This opinion clearly implies to the jury that Aptim was not able to properly perform their responsibilities when it came to the GCCS because installation and explanation was

---

[6] See Doc. 543-2 p. 3.
[7] See Doc. 543-2 p. 2.

outside of Aptim's control; this tells the jury that Aptim is not responsible and therefore not liable. This opinion interprets the contract and renders a legal opinion as to Aptim's lack of responsibility.

**Opinion No. 3**: APTIM **did not have control** over the design of the GCCS in Phase IVA nor did APTIM **have control** over the timing of installation of various GCCS components, such as gas extraction wells and collection system piping. Additionally, APTIM could only operate the partially-installed GCCS in the condition and configuration provided to it by Jefferson Parish.[8]

**Response**: This opinion implies the same issues as opinion 1, and also places fault on the part of Jefferson Parish, which is inadmissible.

**Opinion No. 4:** APTIM **did not have control** over various limitations placed on the GCCS operation by others, especially when circumstances beyond APTIM's control, such as limited vacuum and vacuum interruptions to the wellfield, further impeded GCCS operation. Such restrictions limited optimization of the GCCS operation and its ability to capture the landfill gas being produced within the landfill by the breakdown of waste materials.[9]

**Response**: This opinion implies the same issues as opinion 1 and 3.

**Opinion No. 7**: APTIM **did not have control** over the timing of the purchase and installation of the in-well leachate/condensate pumps in Phase IVA gas wells, or in other phases. APTIM did operate and maintain pneumatic pumps, once installed, in gas wells throughout the landfill.[10]

**Response**: This opinion implies the same issues as opinion 1, 3, and 4.

**Opinion No. 5**: APTIM's work at JPLF was **limited by Contract/Agreement** provisions and language to specific tasks. Additionally, the **Contract/Agreement further limited** APTIM's efforts by placing restrictions on the amount of time/effort O&M personnel could spend working on the GCCS, including being subject to Jefferson Parish's approval for all non-routine GCCS work and limits on spending relative to expenses necessary for the Operation and Maintenance tasks.[11]

**Response**: This opinion clearly seeks to interpret the contract, which is the role of the jury.

**Opinion No. 9**: Ambient and environmental monitoring for odors onsite and offsite was outside the scope of APTIM's contract with Jefferson Parish. Instead, IESI/Waste Connections' Agreement with Jefferson Parish required it to monitor for and control odors.[12]

---

[8] See Doc. 543-2 p. 2.
[9] See Doc. 543-2 p. 2.
[10] See Doc. 543-2 p. 3.
[11] See Doc. 543-2 p. 2.
[12] See Doc. 543-2 p. 3.

**Response**: Aptim concedes that the second sentence of this opinion is a legal conclusion. However, the first sentence of this opinion is a contractual interpretation and also a legal conclusion. If Aptim concedes that the second sentence is a legal conclusion, the same must hold true for the first sentence of this opinion.

All of Barry Kline's opinions seek to tell the jury what result to reach. Essentially that Aptim was not responsible for any alleged deficiencies at the JPLF and therefore not liable, which is the ultimate issue of liability and fault that the jury must determine. These opinions do not simply embrace an ultimate issue, these opinions are calculated to suggest to the jury a particular legal conclusion.

## II. BARRY KLINE'S INTERPRETATIONS OF THE CONTRACT ARE INADMISSIBLE AND HIS OPINIONS ARE NOT HIGHLIY TECHNICAL, NECESSARY, OR HELPFUL.

The Court has held that experts cannot offer opinions on contractual interpretations.[13] The court stated, "Expert testimony on matters which a jury is capable of understanding and deciding without the expert's help should be excluded. Expert testimony that does nothing more than "mirror" testimony offered by fact witnesses should also be excluded. Finally, the expert witness must "bring to the jury more than the lawyers can offer in argument."[14] While Aptim argues that Barry Kline's testimony presents overly complicated and complex industry-specific issues outside the realm of an ordinary juror's common knowledge they fail to provide any examples of such issues. What Aptim truly seeks is for Barry Kline to render legal opinions on information that will mirror testimony that is being offered by other fact witnesses.

---

[13] *See Waste Mgmt. of Louisiana, L.L.C. v. Par.*, CIV.A. 13-6764, 2015 WL 5798029, at *3 and *14 (E.D. La. Oct. 5, 2015).
[14] *See In re Tasch, Inc.*, 97-15901 JAB, 1999 WL 596261, at *1, *2 (E.D. La. Aug. 5, 1999).

Simply put, Aptim's responsibilities at the JPLF will be explained in the contract and through the testimony of fact witnesses. The jury must make their own decision as to what Aptim was responsible for and if Aptim lived up to those responsibilities in their work at the JPLF.

## CONCLUSION

For the above and foregoing reasons, the Court should grant Jefferson Parish's Motion.

| | |
|---|---|
| **CERTIFICATE OF SERVICE** | Respectfully submitted, |
| I HEREBY CERTIFY that a copy of the foregoing pleading was served upon all counsel of record in the parties named herein through the Court's ECF system. | **CONNICK AND CONNICK, LLC**<br><br>       /s/ *Michael S. Futrell*       <br>W. PETER CONNICK, LA. BAR NO. 14158<br>MICHAEL S. FUTRELL, LA. BAR NO. 20819<br>MATTHEW D. MOGHIS, LA. BAR NO. 33994<br>ANYA M. JONES, LA. BAR NO. 36923<br>3421 N. Causeway Boulevard, Suite 408<br>Metairie, Louisiana 70002<br>Telephone:   (504) 681-6663<br>Facsimile:    (504) 838-9903<br>E-mail:    *mfutrell@connicklaw.com*<br>              *moghis@connicklaw.com*<br><br>*Counsel for Defendant, Jefferson Parish* |
| Metairie, Louisiana, this 18th day of June, 2024.<br><br>       /s/ *Michael S. Futrell*       <br>MICHAEL S. FUTRELL | |