UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | CIVIL ACTION |
| Plaintiffs | NO. 19-11133, c/w 19-14512 |
| V. | SECTION: "E" (5) |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| Defendants | JUDGE: Morgan<br>MAGISTRATE JUDGE: North |
| *Applies to: Both Cases* | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PAMELA DALTON**

Plaintiffs submit the following Reply Brief in support of their Motion in Limine to Exclude Testimony of Pamela Dalton, and in response to arguments made in Defendants' Opposition brief. For the reasons below as well as those stated in Plaintiffs' original memorandum, Plaintiffs' Motion to Exclude testimony of Pamela Dalton should be granted.

**I.   Argument**

   **a. Dalton opines about the odor threshold established in General Causation.**

Defendants' argument that Dalton is not undermining the Court's ruling concerning the exposure rate established in General Causation is patently false. As Defendants' state in their own brief, Dalton opines on "the likelihood that such a dosage of H2S would in fact cause the injuries of which the Trial Plaintiffs complain…[and] whether such a dosage is offensive…"[1]   While

---

[1] Rec. Doc. 583 at 5. This opinion also contradicts the Court's finding that "such a level of exposure 'always is a nuisance' to the individuals exposed." Id. at 31.

Defendants' are desperate to try to differentiate this case from *McKiver*, as conceded in their original brief, the cases are essentially identical in the opinions Dalton provides. In *McKiver*, Dalton was offering <u>blanket opinions</u> as to each Plaintiff and their property in stating that "to a reasonable degree of scientific certainty ... the normal operating activities at the farm do not produce odors that travel offsite at an intensity, frequency or duration that would be considered a nuisance level at the [Appellees'] properties."[2] As noted above, this opinion is virtually identical to the opinion she wants to give in this case. The Fourth Circuit specifically took issue with the fact that Dr. Dalton was "purporting to provide objective evidence as to whether Kinler Farms was giving off odors that constituted a nuisance and asserted that odors below a particular threshold were *not considered objectionable*."[3] Dalton is doing the same thing here by making universal opinion for every Plaintiff - which means that she is, in fact, trying to assert her position that 5ppb over 30 mins is not objectionable or a nuisance. ("Accordingly, it is my opinion to a reasonable degree of scientific certainty that the Trial Plaintiffs exposure to 5ppb of hydrogen sulfide for 30 minutes was not always a nuisance *or likely ever a nuisance to them*.")[4] Thus, Dr. Dalton explicitly contradicts the Court's General Causation finding that "such a level of exposure 'always is a nuisance' to the persons exposed." Rec. Doc. 323 at 31. Put another way, once the Plaintiffs prove, through experts Pietari, Sananes and Lape, that the Trial Plaintiffs were repeatedly exposed to H2S at an average of 5 ppb over 30-minutes, Plaintiffs have established specific causation for nuisance as diminution of quality of life and use and enjoyment of their property.

Therefore, Dalton *is* offering an opinion as to an odor threshold for the general population, and, while it is not strictly stated, it is in excess of the Court's established threshold.

---

[2] *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 961 (4th Cir. 2020).
[3] *Id*. (Emphasis added).
[4] *See* Rec. Doc. 542-2, Expert Report of Pamela Dalton at 6 (March 8, 2024).

**b. Dalton should be excluded from testifying that the Plaintiffs are unable to perceive hydrogen sulfide at the threshold established by the Court.**

Defendants' opposition does not address Plaintiffs' objection to the blanket opinion that Plaintiffs have not shown that any of the Trial Plaintiffs can smell hydrogen sulfide. Dalton provides no scientific basis for that assertion – and, even more curiously, it is made without distinction as to each Trial Plaintiff, who vary in age, sex, and proximity to the landfill. Defendants' contention that Dr. Dalton will only offer opinions that causation of symptoms "hinges on numerous individual factors and must be analyzes on a case-by-case basis" is disingenuous. Dr. Dalton did not do an individual analysis of each Plaintiff in rendering her opinions. During Dalton's deposition, *Addison* counsel asked her about each Plaintiff specifically, and what traits or factors specific to that Plaintiff supported her opinion that they were "outside the general population." Dalton provided the same answer as to each Plaintiff - that she does not have evidence that establishes that the Plaintiff can smell hydrogen sulfide, and that their description of duration and frequency of the odor would have caused them to become desensitized to the odor:

> Q. Okay. And Vernice Lewis, let's talk about Ms. Vernice. Similar to what we've done with these other plaintiffs, what information do you have to support your opinion that threshold of 5 ppb over 30 minutes of hydrogen sulfide was not likely to have caused the injuries that Ms. Lewis complains of?
>
> A. Similar to the other plaintiffs -- well, except -- her age. She was older at the time during the relevant period. And the same other factors, that I have no information about what levels she could have become aware of. And she would have – if her self-reports are believed, then she would have desensitized to the odor.
> …
> Q. Do you have any opinions about whether or not any of Ms. Lewis's health conditions during the relevant time period made her less likely to have suffered damage as a result of the exposure?
>
> A. Just overall, that individuals -- there's very strong associations and correlations between individuals with a number of health conditions and their ability to smell.

> Q. Okay. Let's go back to Mr. Section, Andrew Section. What information do you have to support your opinion that the injuries alleged by Mr. Section were not likely to have been caused by exposure at 5 ppb for 30 minutes of hydrogen sulfide?
>
> A. Again, the same factors that I'm reporting for the other trial plaintiffs.
>
> Q. Okay. And just so the record is clear, those would be rapid desensitization, right?
>
> A. Yes. Lack of awareness of his ability to become aware of hydrogen sulfide at that concentration. *See* Dalton Dep. 239:12-25, 240-241:1-4 (May 3, 2024.)

This is odd position considering that Defendants cite case law to support their contention that specific causation must be done on a case-by-case basis.[5] To be clear, Plaintiffs are not arguing that *every* individual *everywhere* would find 5ppb over 30 minutes annoying. However, it is objectively obvious that each Trial Plaintiff can perceive hydrogen sulfide and found it exceedingly annoying. Each Trial Plaintiff has executed a Plaintiff Fact Sheet, answered detailed discovery, participated in (at least one) deposition, and voluntarily sat for a defense medical examination. In each of these fora, Plaintiffs have used the FIDO (frequency, intensity, duration, and offensiveness) to describe the odors. They also testified about the effects of the odor on them, their quality of life and the use and enjoyment of their property. And, three Plaintiffs made contemporaneous reports or had engagement with local government about the odors while they were occurring (Mary Ann Winningkoff, Wendy Gremillion - on behalf of herself and her family of three other Plaintiffs - and Stanley Meyers.)[6] As found by the Fourth Circuit Court of Appeals in *McKiver*, Dalton's testimony about an objective threshold for odor where the Plaintiffs

---

[5] *See* Rec. Doc. 583-1 at 11.
[6] Stanley Meyers stated that, during the relevant time period, he attended a community meeting about the odors at John Curtis High School. Meyers Dep. 90:25, 91:1-7 (April 20, 2023).

themselves will testify about their experience with the odor, will not be helpful to the jury and should be excluded.[7]

Plaintiffs aver that their Motion should be granted as prayed.

Respectfully submitted, this 18th day of June, 2024.

        /s/ S. Eliza James
FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com
eliza@fcjlaw.com

        /s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

Harry S. Johnson, (Admitted Pro Hac Vice)
James R. Jeffcoat (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street

---

[7] *See McKiver* at 962. "Given that North Carolina has not adopted an objective measurement for nuisance odors, and that Plaintiffs themselves would be testifying about their experiences relative to the nuisance at their respective properties, the district court's judgment that Dr. Dalton's testimony would not be helpful and would in fact confuse the jury was not an abuse of discretion."

Baltimore, Maryland 21202-1636
(410) 347-8700
hjohnson@whitefordlaw.com
jjeffcoat@whitefordlaw.com

*Counsel For Addison Plaintiffs*