UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**     Plaintiffs  V.  **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**     Defendants  *Applies to: Both Cases* | CIVIL ACTION  NO. 19-11133, c/w 19-14512  SECTION: "E" (5)  JUDGE: Morgan  MAGISTRATE JUDGE: North |

### PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE EVIDENCE OF OTHER SOURCES

Plaintiffs submit the following Reply Brief in support of their Motion To Exclude Evidence of Other Sources.

First, Defendants themselves believe that "other sources" is an affirmative defense: they pled it as an affirmative defense. *See* Waste Connections Affirmative Defenses to Plaintiffs' Second Amended Complaint, ¶¶ 9 (intervening or superseding cause) and 10 (damages due to comparative fault of third parties not under the control of Waste Connections Defendants); Jefferson Parish Answer to Plaintiffs' Second Amended Complaint SIXTH DEFENSE (damages due to fault of third parties for whom the Parish is not responsible); Aptim Answer to Plaintiffs' Complaint R.Doc. 111, page 14, Sixth Defense. With respect to both their affirmative defenses and any claim of allocation of fault to the other sources, Defendants have not provided evidence on the required elements, with the result that the relevance of the other sources evidence cannot be predicated on either the affirmative defense or any claim that fault should be allocated to the purported other sources.

Second, Defendants miscite the law. While Defendants cite *Simon v. United States,* 51 F.Supp. 2d 739 (W.D. La. 1999), they do not quote it because the actual holding eviscerates their argument. Consistent with the argument in Plaintiffs' Motion, what the *Simon* court required was that "Defendants . . . show that some *other particular accident* could have caused the accident." *Id.* at 746 (emphasis added)[1] Thus, the issue is not whether "some other source" could have caused the injury but whether "some other *particular* source" could have caused the injury. Defendants' extensive list of potential other sources (other than the River Birch or Hy 90 landfills – see below) does not even attempt to demonstrate that a *particular* other source emitted H2S (or any other gas or odor) in such quantities that it "could have been a source" of Plaintiffs' injuries.

Put another way, "Speculation does not create a realistic alternative cause." *Arceneaux v. Howard,* 633 So. 2d 207, 211 (La. Ct. App. 1993), writ denied, 634 So. 2d 833 (La. 1994); *McCarter v. Sanchez,* No. 98-20012, 2003 WL 24063640, at *2 (La. Civil D. Ct. Feb. 12, 2003, *aff'd,* 2003-0935 (La. App. 4 Cir. 4/28/04), 874 So. 2d 918 ("The record in this case shows a disc which manifests itself subsequent to an accident without any intervening cause save speculation."); *Henerson v. Gregory,* 47,068 (La. App. 2 Cir. 6/20/12), 93 So. 3d 818, 824, writ denied, 2012-1695 (La. 11/2/12), 99 So. 3d 671 ("the record does not support a finding that the punching incident could have caused the injury"). In other words, a contention that another cause was the source of

---

[1] As the Court well knows, in *Simon,* the Court was applying a long-standing rule in accident cases established by *Housley v. Cerise,* 579 So. 2d 973 (La. 1991) that, once the plaintiff shows that the accident was capable of causing injury, if the defendant contends it is something else, he has to explain what it could be and why. Defendants have offered no evidence as to what other particular source could be the cause of Plaintiffs' injuries and why, both of which would require identification of the particular emission from a particular source, which Defendants do not do. Similarly fatally, Defendants have not even attempted to model these unnamed emissions from these "other sources" to determine whether they reached Plaintiffs' homes and, therefore, their contentions are mere speculation prohibited by *Arceneaux v. Howard,* 633 So. 2d. 207, 211 (La. Ct. App. 1993), writ denied, 634 So. 2d 833 (La. 1994) ("Speculation does not create a realistic alternative cause") and other cases cited in Plaintiffs' Motion.

the injury must be shown by evidence of another particular cause which is capable of causing the injury complained of, not just speculation that some undifferentiated cause could have produced the injury. *Simon v. United States,* 51 F. Supp. 2d 739, 746 (W.D. La. 1999) ("The Defendants must only show that *some other particular accident could have caused the injury,* not that some other accident actually did cause the injury.") (emphasis added). Even though the Defendants do not have to show specific causation, they do have to prove general causation that a particular source was capable of causing the injury – in this case, emissions at an intensity and frequency at least equal to the reference level at which injury can be caused, in the affected community.

Third, Defendants' expert, Dr. Paolo Zannetti, concedes that the background level of H2S in the affected communities was approximately 1%.[2] Zannetti Revised Report, "Section Summary" at 37 ("These measurements show relatively low H2S concentrations coming from practically all wind directions, with an apparent background of 1 ppb"); *see also* Zannetti Revised Report Figure 17 at 27 and f.n. 30; and, Zannetti Dep. at 92, l. 21 – p. 93, l. 13 and p. 109, l. 16-20. As a result, Defendants are necessarily conceding that all the alleged other sources (except the River Birch and Hy 90 landfills) do not produce enough H2S *in the aggregate* to be even a possible cause of harm to the Plaintiffs. Therefore, Defendants have no evidence to show that these alleged other sources "could have caused the injury," which, even they say, is the *de minimis* test.[3] Opposition at 6.

---

[2] Indeed, Dr. Zannetti concedes that his pollution roses do not "point the finger in one particular direction," *i.e.*, any other particular source of emissions which could have affected the Plaintiffs, and Dr. Zannetti admits that he cannot tell "what any of those other sources might be." Zannetti Dep. at 80, l. 24 – p. 81, l. 24.

[3] In his deposition, despite initially denying that he had considered any emission source other than the three landfills (Zannetti Dep. p. 30, l. 19 – p. 31, l. 15), when specifically asked about Cornerstone Chemical, Dr. Zannetti then conceded that he had been provided with data concerning ammonia emissions from Cornerstone (Zannetti Dep. p. 31, l. 16 – 32, l. 16) and had done some modeling based on that data (he could hardly deny the work because it was reflected

3

As a result, testimony about these alleged "other sources" is irrelevant, unduly prejudicial and would only confuse the jury and should be excluded.

Fourth, as to the River Birch landfill being another source of H2S, Defendants' expert Dr. Zannetti's model contends that emissions from the River Birch landfill *could not ever equal or exceed 5 ppb over 30-minutes for any Trial Plaintiff during the entire Relevant Period. See* Zannetti Report Table 10 (*see* Ex. A). Therefore, by Defendants' own theory of their defense, emissions from the River Birch landfill could not have been an "other source" of the Plaintiffs' injuries. As a result, any such testimony would be irrelevant, unduly prejudicial and would only confuse the jury and should be excluded.

As to the Hy 90 landfill being another source of H2S, all of Defendants' evidence is so flawed (see Motion to Exclude Stutz) that there is actually no admissible evidence that Hy 90 "could be another source" of Plaintiffs' injuries. As a result, any testimony that H2S emissions from the Hy 90 landfill would be irrelevant, unduly prejudicial and would only confuse the jury and it should be excluded.

Fifth, regarding Waste Connections' discovery responses, as to Interrogatory #1, Defendants' Opposition confirms that, with exception of emissions of hydrogen sulfide from the River Birch and Hwy 90 Landfills, there are no other sources of odors to which Waste Connections (or any of the Defendants) even contend the Plaintiffs were actually exposed. As to Interrogatory #2, Defendants assert that Waste Connections "provided a detailed, six-page response" but nowhere recited where that response set out the "chemical substance that you contend caused the

---

in his invoices. *See* Zannetti Dep. at 36, l. 1 – p. 38, l. 19; p. 44, l. 10-20). Even though Defendants repeatedly cite emissions of chemicals other than H2S as potential causes of Plaintiffs' injuries, Dr. Zannetti did not provide any of his evaluation of Cornerstone ammonia emissions "because the focus of my report was H2S." *Id.* The Court can certainly infer that the Cornerstone ammonia emissions were not even a potential cause of Plaintiffs' injuries.

4

injury or the dates, times, durations and concentrations of each emission," which is what the interrogatory asked for.  The complete absence of even a contention that the Plaintiffs were actually exposed to emissions from any of the other sources underscores the fact the Defendants have engaged in nothing more than rank speculation, which has no bearing on any issue, if permitted to be presented to the jury would do nothing other than to confuse the issues.

Finally, the 2018 NCM Odor Report and cover email, cited in Plaintiff's Motion, and discussed in Defendants' Opposition, is attached hereto as Exhibit C**.**  Pursuant to the Agreed Protective Order in this case, Waste Connections has given permission for it to be placed in the public record, notwithstanding its designation as "Confidential-Outside Counsel Only."

Respectfully submitted, this 18th day of June, 2024.

/s/ S. Eliza James
FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com
eliza@fcjlaw.com

/s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

Harry S. Johnson, (Admitted Pro Hac Vice)
James R. Jeffcoat (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636
(410) 347-8700
hjohnson@whitefordlaw.com
jjeffcoat@whitefordlaw.com

*Counsel For Addison Plaintiffs*
