UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** <br><br>     **Plaintiffs** <br><br> **V.** <br><br> **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** <br><br>     **Defendants** <br><br> *Applies to: Both Cases* | **CIVIL ACTION** <br><br> **NO. 19-11133, c/w 19-14512** <br><br> **SECTION: "E" (5)** <br><br><br> **JUDGE: Morgan** <br> **MAGISTRATE JUDGE: North** |

### PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PAOLO ZANNETTI

Plaintiffs submit the following Reply Brief in support of their Motion To Exclude Expert Testimony of Paolo Zannetti.

It is refreshing to find a point of agreement with the Defendants: "The sole difference between the air dispersion modeling performed by experts for Plaintiffs (Mr. Lape) and Defendants (Dr. Zannetti) was the emission rate input used in their CALPUFF air dispersion models."[1] As a result, if Mr. Stutz's emission rate input used by Dr. Zannetti is wrong (as it

---

[1] Similarly, Plaintiffs agree with that portion of Dr. Zannetti's Opinion 2 that the dispersion models which both he and Mr. Lape used represent the best available science and differ *solely* as to the emission rate inputs. Opposition at 3. That being agreed, Dr. Zannetti's Opinion 9 must fall because Dr. Zannetti concedes that, if he used the same inputs as Mr. Lape did with regard to the JPLF, he would produce the same dispersion results as Mr. Lape. Zannetti Dep. at 19, l. 22 – 20, l. 18; p. 28, l. 11; p. 103, l. 6 – p. 104, l. 6; p. 130, l. 3-17; p. 142, l. 15-23 (attached as Exhibit B). So, Mr. Lape's comparison of his dispersion results to the MAML measurements must be precisely the same comparison which Dr. Zannetti's model would produce. Because, Dr. Zannetti concedes that his and Mr. Lape's models are "based on the based available science," he cannot attack the comparison of Mr. Lape's results to the MAML measurements and Opinion 9 cannot be reliable.

most certainly is for the reasons stated in Plaintiffs' Motion to Exclude Opinions, Reports, and Testimony by Matthew Stutz), Dr. Zannetti's resulting air dispersion model is wrong and should be excluded.[2]

Defendants concede that Dr. Zannetti's Opinions 3, 4 and 5 are based on inputs from Mr. Stutz and would fail if Stutz's inputs are excluded. But, in fact, so does Opinion 1, which relates to Dr. Zannetti's pollution roses which themselves depend upon "plumes of the River Birch Landfill and/or Highway 90 Landfill" which only exist because Mr. Stutz has provided Dr. Zannetti with the inputs for them. Likewise, Opinion 8 depends upon the "complexity of the combined emissions from the three landfills" which, itself, is dependent upon Mr. Stutz's inputs. Therefore, when Mr. Stutz's emission inputs fail, so do these opinions of Dr. Zannetti.

Opinion 6 is a criticism of the Court's 5 ppb for 30-minutes reference level and should be excluded for the reasons set forth in Plaintiffs' Motion to Exclude Expert Testimony on Issues Litigated and Decided in the General Causation Phase.

Dr. Zannetti cites his being "an atmospheric scientist with over fifty years of experience"[3] to criticize Mr. Lape for not "comment[ing] on the suitability of" the Court's 5 ppb for 30-minutes reference level: "As an atmospheric and physical scientist with over 50 years of experience, I believe that Lape should have addressed the issue of the suitability of the H2S reference levels he was provided." Zannetti Revised Report at p. 81 (attached hereto as Exhibit A). When an expert with such self-described qualifications does not "address the suitability" of the emissions inputs he receives from another expert (Mr. Stutz) – despite the fact that Dr.

---

[2] Similarly, all of his opinions concerning modeling of emissions from the River Birch and Hy 90 landfills fail because they all depend upon the relative amounts of those emissions *as compared to the emissions from the JPLF*.

[3] And, Defendants extoll Dr. Zannetti's qualifications in the same terms. Opposition at 2.

2

Zannetti has previously espoused an emission rate 10,000 times less than the one Mr. Stutz now provides[4] – his opinion cannot be based upon reliable principles and methodologies and should be excluded.[5] Indeed, Dr. Zannetti concedes that he has never, in his 50 years as a gas dispersion scientist, "had a case where [he was] relying on one expert's emission rate estimate to conduct [his] work and then changed and used an emission rate estimate that was at least a thousand times higher." Zannetti Dep. at 184, l. 14-19 (*see* Ex. B). As a result, he admits that he has not "employ[ed] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," as required by *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999); *see also, Knight v. Kirby Inland Marine, Inc.,* 482 F.3d 347, 355 (5th Cir. 2007) ("[T]he expert's testimony must be reliable at each and every step or else it is inadmissible.")

Defendants do not deny that Dr. Zannetti did not include times with light or variable winds in his pollution roses (Opposition at 6) but claim that he explained why he did not do so (he basically says that he "did not trust" the data).[6] Dr. Zannetti's unscientific and subjective feelings about the data does not cure the scientific unreliability of a pollution rose which does not

---

[4] Indeed, Dr. Zannetti previously described Dr. Abichou's emission rates with encomiums such as "absolutely sure that Dr. Abichou's estimates are the most reliable [he, Dr. Zannetti] could have," Zannetti Dep. at 187, l. 16 – p. 188, l. 20 (*see* Ex. B).

[5] Dr. Zannetti struggled to explain why he had abandoned his earlier acceptance of Dr. Abichou's emission rate for Mr. Stutz current rates and, in a lengthy discussion, could only say that Mr. Stutz's current calculations of rates were the "most recent." Zannetti Dep. at pp. 169, l. 9 – p. 192, l. 19 (*see* Ex. B). Mere recency is not a scientific principle (and Dr. Zannetti admitted that, as to his reliance upon the most recent emissions estimates, "there is some speculation here, of course," Zannetti Dep. at 192, l. 2-19) (*see* Ex. B) and, thus, Dr. Zannetti's opinions are excludable on that ground.

[6] Dr. Zannetti said that he "didn't like to use data if I don't trust them." Zannetti Dep. at 121, l. 22 – p. 122, l. 1 (*see* Ex. B). But, the very reason for using data derived from the CALPUFF model is that it more accurately predicts dispersion in low wind speed conditions. Lape Report at 7.4, a point with which Dr. Zannetti does not disagree. In sum, Dr. Zannetti's so-called explanation is nothing more than "because I say so."

include data from time periods *which the expert concedes are the most likely times to produce the H2S concentrations at issue in the case.* This is not fodder for cross-examination; it is a methodological fallacy which was obviously designed to force the data into producing pollution roses which the expert wanted, thus making the pollution roses misleading and unreliable.[7]

Respectfully submitted, this 18th day of June, 2024.

      /s/ S. Eliza James
FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com
eliza@fcjlaw.com

      /s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

---

[7] Obviously, the proper scientific method would have been to produce the pollution roses with and without the low wind speed conditions and evaluate whether there was a significant difference and, if so, whether the pollution roses without low wind speed conditions were reliable. While Dr. Zannetti does not deny that this is proper scientific methodology, he just says, "I don't like to use data if I don't trust them. And, wind direction measurement cannot really be trusted when the wind speed is so low," even though that is the time when the meteorological conditions will produce the highest H2S concentration numbers. Zannetti Dep. at 121, l. 22 – p. 122, l. 6 (*see* Ex. B). It is obvious that what Dr. Zannetti really doesn't trust is that using data in low wind speed conditions will give the result he wants.

Harry S. Johnson, (Admitted Pro Hac Vice)
James R. Jeffcoat (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636
(410) 347-8700
hjohnson@whitefordlaw.com
jjeffcoat@whitefordlaw.com

*Counsel For Addison Plaintiff*