# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FREDERICK ADDISON, ET AL.,** | * | |
| | * | |
| **PLAINTIFF,** | * | **CIVIL ACTION NO. 19-11133,** |
| | * | **c/w 19-14512** |
| **VERSUS** | * | |
| | * | |
| **LOUISIANA REGIONAL LANDFILL** | * | |
| **COMPANY, ET AL.,** | * | **JUDGE MORGAN** |
| | * | |
| **DEFENDANTS.** | * | **MAGISTRATE** |
| | * | **JUDGE NORTH** |
| *APPLIES TO: ALL CASES* | * | |
| | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS CERTAIN CLAIMS <u>FOR LACK OF EVIDENCE OF GENERAL CAUSATION</u>

Plaintiffs have doubled down on their position that they are free to relitigate which injuries are at issue in this case. Likewise, they believe they should be allowed to renege on their unequivocal representation to the Court, in response to a direct question from the Court, that they are "only asking for damages through 2019."[1] The Court need not, and should not, tolerate Plaintiffs' attempts to skirt the Court's general causation holdings and their prior representations to the Court.[2] Plaintiffs have not raised any material disputed facts, and the Court should dismiss any claims which do not comport with the list of injuries and the damages period which the Court has already determined will govern this case.

**A. This Court's ruling on Defendants' Motion should not be limited.**

Plaintiffs contend that any ruling on Defendants'[3] Motion should be limited to the thirteen Trial Plaintiffs, ignoring that the basis for Defendants' Motion is the Court's *general* causation ruling, applicable to *all* Plaintiffs (including unnamed putative class plaintiffs). In the General Causation order, the Court defined "*Addison* Plaintiffs" as the "over 500 individual Plaintiffs" named in the consolidated *Addison* action.[4] Further, the Court defined "Plaintiffs" as "[b]oth the *Ictech-Beckeck* Plaintiffs and the *Addison* Plaintiffs"[5] and stated that "[t]he parties agree resolution of the issue of 'general causation' will help narrow the focus of this case and the issues at stake."[6]

---

[1] ECF Doc. #561-5, General Causation Transcript at p. 746:16-22; ECF Doc. #561-6, Email Correspondence Between this Court and Jason Landry dated Nov. 28, 2022 ("Plaintiffs are seeking damages from July 1, 2017 through December 31, 2019.").

[2] The parties are engaged in briefing on the scope of the Court's General Causation order. *See* ECF Docs. 554, 598. But the General Causation Order plainly states that Plaintiffs have only established general causation as to "headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry, a decrease in quality of life, and loss of enjoyment or use of property." ECF Doc. #323 at p. 46.

[3] The Defendants in this matter are Aptim Corp., Jefferson Parish, Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.

[4] ECF Doc. #323, General Causation Order at p. 2.

[5] *Id.*

[6] *Id.*

Ultimately, the Court rendered a holding on the list of injuries and the damages period at issue in this case, and that holding was applicable to all "Plaintiffs."[7] The Court's general causation holding was not limited to Plaintiffs selected for trial – in fact, there were no such trial Plaintiffs during the general causation phase.

Now, Plaintiffs argue that discovery on individual Plaintiffs must be conducted before determining which injuries they should be allowed to pursue – but that issue was already determined in general causation. The Case Management Orders ("CMO") for the general causation phase called for the completion of all general causation discovery, and all such discovery was completed long ago. Whether general causation exists as to all Plaintiffs' alleged injuries has already been decided and is not subject to revision based on additional *specific* causation discovery.[8]

This result is demanded not only by the CMOs for this case, but also Fifth Circuit law which holds that general causation is *not* plaintiff specific. Rather, "[g]eneral causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). There is no need for plaintiff-specific discovery to determine the issue of general causation in this, or any, matter. Accordingly, this Court's ruling should not be limited to the thirteen Trial Plaintiffs and should apply with equal force to all Plaintiffs.

---

[7] ECF Doc. 323, General Causation Order at p. 46.

[8] *See, e.g., Coleman v. BP Exploration & Prod., Inc.*, 609 F.Supp.3d 485, 503 (Vance, J.) (holding that because general causation was not met, "the Court need not reach the question of specific causation.") (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)).

**B.  The list of Allowed Injuries is not confusing and should be enforced.**

Next, Plaintiffs argue that the Court's list of Allowed Injuries cannot be enforced because the meanings of "headache," "nausea," and the other Allowed Injuries, are too confusing. This argument fails as *Plaintiffs* had the burden of proving general causation as to the specific injuries they allegedly suffered, and the Court spelled out the list of injuries for which Plaintiffs satisfied their burden: "headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety, and worry, a decrease in quality of life, and loss of enjoyment or use of property."[9] Defendants now seek only to clarify that these are the only injuries at issue in this case and that all others are dismissed.

If Plaintiffs believe they have suffered an injury for which the Court has already found general causation, then it is their burden to demonstrate it. For example, if a Trial Plaintiff has complained of "GI issues,"[10] then it is Plaintiffs' burden to demonstrate that the Trial Plaintiff is referring to nausea (an Allowed Injury), as opposed to something else like diarrhea (a Non-Allowed Injury). To the extent any close calls exist, they can be dealt with during objections at trial – but any alleged ambiguity in the Court's list of injuries (there is none) does not justify denying summary judgment and allowing Plaintiffs free reign to present any injuries of their choosing to the jury, as Plaintiffs seem to propose.

As to injuries which are not close calls – for example, death, or those injuries explicitly rejected by the Court[11] – those plainly are not encompassed by the Court's list of Allowed Injuries, should not survive summary judgment, and should not be allowed within earshot of the jury.

---

[9] ECF Doc. #323, General Causation Order at p. 46.

[10] ECF Doc. #597, Plaintiffs' Opposition to MPSJ at p. 3.

[11] The Court explicitly ruled that Plaintiffs failed to establish general causation for physiological symptoms, including complaints of: "irritation to the eyes, nose, or throat; coughing; trouble breathing; asthma; skin irritation; burning lungs; nose bleeds; neurological issues; and COPD." ECF Doc. #323, General Causation Order at p. 42.

**C. The Court did not find General Causation as to post-2019 injuries.**

Additionally, the Trial Plaintiffs falsely assert that they have established general causation for conditions that persisted beyond 2019 and/or that are persisting to this day. This too is a misrepresentation of the General Causation Order. The Court found that as a matter of law, "Plaintiffs have met their burden of establishing general causation with respect to those Plaintiffs who have complained during the relevant time period of headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety, and worry, a decrease in quality of life, and loss of enjoyment or use of property." The Court made no finding of general causation as to any ongoing, chronic, or future injuries.[12]

Further, the Court's holding specifically defined the relevant time period as July 1, 2017-December 31, 2019, and this holding was premised on Plaintiffs' multiple representations to the Court, in direct response to questions posed by the Court, that Plaintiffs were "*seeking damages from July 1, 2017 through December 31, 2019.*"[13] Plaintiffs now seek to renege on this representation – the Court need not and should not allow it.

Plaintiffs also ignore that, according to their own expert, any symptoms persisting beyond the exposure date could only be caused by a neurological injury – and the Court has explicitly rejected claims for "neurological issues."[14] On alleged odor-related injuries that persist beyond the date of the odor exposure, Plaintiffs offer evidence on the mechanism of the injury from Dr. DeLorenzo, who has testified that such an injury would be caused by a change to the patient's

---

[12] ECF Doc. #323, General Causation Order at 44.

[13] ECF Doc. #561-5, General Causation Transcript at p. 746:16-22; ECF Doc. 561-6, Email Correspondence Between this Court and Jason Landry dated Nov. 28, 2022 (emphasis added).

[14] ECF Doc. #323, General Causation Transcript at p. 42.

nervous system – i.e., a neurological injury.[15] The Court has already held that Plaintiffs have failed to prove general causation as to such neurological injuries, and Plaintiffs should not be allowed to relitigate that issue.

### D.  The Trial Plaintiffs lack reliable expert testimony to establish general causation.

Finally, as set out in Defendants' separate *Daubert* motion challenging the expert opinions of Dr. Robert DeLorenzo, if this Court allows Plaintiffs to submit testimony on general causation in contravention of its own CMO – which it should not – Plaintiffs will still come up short.[16] Rather than rehash the arguments made in the *Daubert* motion regarding Dr. DeLorenzo's unreliable and inadmissible opinions here, Defendants incorporate those arguments herein. In short, Dr. DeLorenzo conceded that exposure to 5 ppb of hydrogen sulfide over 30 minutes, under the current state of science, is not known to be capable of causing the injuries or symptoms which make up the Non-Allowed Injuries nor any injuries claimed beyond the relevant time period that are listed in his rebuttal report.[17]

The Court's ruling on the Defendants' *Daubert* motion will be determinative on this issue, and will confirm that Plaintiffs lack any reliable expert testimony to support the Non-Allowed Claims, which is an independent basis for granting summary judgment as to such claims.

---

[15] Excerpts of Deposition of Dr. DeLorenzo V.II, at p. 516:9-12, attached hereto as <u>Exhibit 1</u> ("The headaches continued after the exposure period and have become a long-term neurological condition caused by the exposure to hydrogen sulfide and VOCs"); *Id*. at 525:1-526:13 ("And the question you're asking is, well, what is the evidence that this [odor related symptoms from sensitization of the nervous system] is continuing… Now we know when that 5 parts per billion goes away, that person's nervous system is changed based on that, and now he can experience headaches without being exposed to the hydrogen sulfide."); *Id*. at 530:6-8 (recurring symptoms can occur through potentiation, which means "the nervous system has been changed").

[16] ECF Doc. #562, Defendants' Motion in Limine to Exclude Testimony of Dr. DeLorenzo.

[17] *Id*.

## **CONCLUSION**

The Court has resolved the issue of general causation and explicitly determined specific injuries and symptoms for which the Trial Plaintiffs, and all other Plaintiffs, have established general causation. The Trial Plaintiffs are procedurally barred from asserting claims that fall outside this Court's General Causation Order, and regardless, have failed to submit admissible or reliable evidence to prove causation for those claims.[18] Defendants respectfully request that this Court grant their motion for partial summary judgment and dismiss all Non-Allowed Claims with prejudice.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:    /s/ Michael C. Mims
        Michael Cash (#31655)
        Cherrell Simms Taplin (#28227)
        Michael C. Mims (#33991)
        Brady M. Hadden (#37708)
        Alec N. Andrade (#38659)
        J. Hunter Curtis (#39150)
        701 Poydras Street, Suite 5000
        New Orleans, LA 70139
        Telephone: (504) 581-7979
        Telefax: (504) 556-4108


BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

---

[18] *See* ECF Doc. #562, Defendants' Motion in Limine to Exclude Testimony of Dr. DeLorenzo.

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

CONNICK AND CONNICK, LLC

By:   /s/ Michael S. Futrell
      William P. Connick, La. Bar No. 14158
      Michael S. Futrell, La. Bar No. 20819
      Matthew D. Moghis, La. Bar No. 33994
      Anya M. Jones, La. Bar No. 36923
      3421 N. Causeway Blvd., Suite 408
      Metairie, Louisiana 70002
      Telephone: (504) 681-6658
      Facsimile: (504) 838-9903
      E-mail: moghis@connicklaw.com

*Counsel for Defendant Jefferson Parish*

GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:   /s/ J. Michael DiGiglia
      Ernest P. Gieger, Jr. (6154)
      John E. W. Baay (22928)
      J. Michael DiGiglia (24378)
      Nicholas S. Bergeron (37585)
      Blaise Chadwick Hill (*pro hac vice*)
      Gieger, Laborde & Laperouse, L.L.C.
      Hancock Whitney Center
      701 Poydras Street, Suite 4800
      New Orleans, Louisiana 70139
      Telephone: (504) 561-0400
      Facsimile: (504) 561-1011

*Attorneys for Defendant Aptim Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed on June 18, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

By:     /s/ Michael C. Mims