## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | **NO.  19-11133 c/w 19-14512** |
| *versus* | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | **JUDGE SUSIE MORGAN** |
| | **MAG. JUDGE MICHAEL B. NORTH** |
| **Defendants** | |
| ***APPLIES TO ALL CASES*** | |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE H₂S EMISSIONS OPINIONS OF JOSE SANANES

## TABLE OF CONTENTS

I.      The Court's General Causation ruling is not dispositive, and was expressly
        limited to the bench trial context ........................................................................2

II.     The Court has not ruled on Mr. Sananes' opinions ............................................5

III.    Mr. Sananes' Opinions on $H_2S$ generation & emissions are inadmissible .........................7

CONCLUSION...................................................................................................................7

i

Plaintiffs must demonstrate that at each and every step, Mr. Sananes' opinions are more likely than not reliable before he can present his opinions to a jury. Defendants have shown compelling proof that Mr. Sananes' opinions are based on methods developed for the purpose of testifying in this action, and that they are based on insufficient – not merely shaky – information. Yet Plaintiffs' Opposition to Defendants' Motion *In Limine* to Exclude the $H_2S$ Emissions Opinions of Jose Sananes (R. Doc. 592) ("Plaintiffs' Opp.") does not attempt to defend Mr. Sananes opinions, methods, or bases. Plaintiffs argue instead that Defendants' motion is not permitted because the Court's prior rulings at the general causation *bench* trial are dispositive and that the Court has already adopted Mr. Sananes' opinions. Plaintiffs' position is wrong for at least two reasons.

First, the Court's decision on the admissibility of Mr. Sananes' opinions at the general causation stage was expressly limited to the bench trial context and not subject to the heightened standards for admissibility under *Daubert* and Rule 702 for jury trials. Second, this motion raises crucial specific causation issues not addressed or determined by the Court in its general causation ruling, which neither referenced nor relied on Mr. Sananes' testimony or opinions. Plaintiffs' opposition does not address any of Defendants' arguments or rebut the deficiencies the Defendants have raised. Plaintiffs have wholly failed to meet their burden and have not shown Mr. Sananes' opinions are "more likely than not" reliable. Mr. Sananes' testimony fails the requirements of Rule 702 and should be excluded.

## I.   The Court's General Causation ruling is not dispositive, and was expressly limited to the bench trial context.

Mr. Sananes' opinions on hydrogen sulfide ("$H_2S$") emissions are the result of unreliable methodologies that should not reach the jury. Plaintiffs' Opposition does not dispute that Mr. Sananes' opinions are based on methods that have not been tested, peer reviewed, or accepted by

regulatory agencies or the solid waste industry. Instead, Plaintiffs cling to the Court's previous general causation ruling, stating the Court admitted Mr. Sananes' opinions then so it must admit them now.

Defendants addressed Plaintiffs' argument in their motion for leave (R. Doc. 566 at 2-4).[1] The Court's previous ruling on the admissibility of Mr. Sananes' testimony was expressly limited to the bench trial context, as the Court held that its gatekeeping obligation was "diminished in a bench trial."[2] Because the specific causation trial will be a jury trial, a more rigorous Rule 702 standard applies to the Court's analysis of Mr. Sananes' opinions and methodology, and basis.

Plaintiffs label as "specious" Defendants' argument regarding the distinction under Rule 702 and *Daubert* between bench and jury trials. But this motion lies at the heart of a principle the Fifth Circuit, the judges of this District, and this Court have long and uniformly recognized. *See Whitehouse Hotel Ltd. Partn. v. Comm'r of Internal Revenue*, 615 F.3d 321, 330 (5th Cir. 2010) ("the importance of the trial court's gatekeeper role is significantly diminished in bench trials, as in this instance, because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence."); *Talley v. United States*, No. 21-1509, 2023 WL 2881293, at *3 (E.D. La. Mar. 16, 2023) (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district court judge sits as the trier of fact in place of a jury."). Indeed, the Court acknowledged it was applying a less rigorous standard in the general causation phase of this case, where the Court was the trier

---

[1] In their motion for leave, Defendants argued the instant motion *in limine* did not regard opinions resolved during the trial on general causation for three reasons: (1) the specific causation trial is a jury trial and not a bench trial; (2) the 2023 amendments to Fed. R. Civ. P. 702 provided new guidance on admissibility standards; and (3) the Court did not adopt Mr. Sananes' analysis or opinions in its general causation opinion. *See* R. Doc. 566 at 1-2. The Court granted leave to file the instant motion. *See* R. Doc. 571.

[2] Exhibit A, Transcript of Bench Trial on General Causation at 746:23-747:3.

of fact. *See Ictech-Bendeck v. Waste Connections Bayou, Inc*., Nos. 18-7889, 19-11133, 2021 WL 5177827, at *3 (E.D. La. Nov. 8, 2021) ("the Court's 'role as the 'gate-keeper' is diminished in a bench trial,'" since "the purpose of *Daubert* motion[s] is 'to ensure that only reliable and relevant expert testimony is presented to the jury.'") (quoting *Kinnerson v. Arena Offshore, LP*, No. 16-720, 2019 WL 2571627, at *2 (E.D. La. June 21, 2019)).

Judge Vance has explained that the *Daubert* obligation is more "urgent" in jury trials because of the risk of "exposing the jury to confusing and unreliable expert testimony." *Atlantic Specialty Ins. Co. v. Porter, Inc*., No. 15-570, 2016 WL 6569346, at *3 (E.D. La. Nov. 4, 2016), *aff'd*, 742 Fed. App'x 850 (5th Cir. 2018). And Judge Barbier has stated that "the objectives of *Daubert* … are no longer implicated" in a bench trial, but more essential in a jury trial. *See Deville v. Comar Marine Corp*., No. 08-4104, 2009 WL 1870896, at *1 (E.D. La. June 25, 2009).[3] Compared to the general causation phase, the Court's *Daubert* gatekeeping obligation is therefore more "essential" because the factfinder will be a jury.

Plaintiffs wave aside this long-standing distinction in Rule 702 jurisprudence without any analysis, asserting without a single reference to authority that Defendants abandoned all rights under Rule 702 and *Daubert* by consenting to a bench trial on general causation. Plaintiffs' Opp. at 5. And contrary to Plaintiffs' argument, Defendants are not requesting a "do-over" *Daubert* analysis only because Rule 702 was recently amended. Defendants discussed the 2023 amendments to Rule 702 because the rule's advisory committee directly addressed the importance

---

[3] *See also Thompson v. Rowan Co., Inc*., No. 06-3218, 2007 WL 724646, at *1 (E.D. La. Mar. 6, 2007) (Barbier, J.) ("the purpose of *Daubert* motion is 'to ensure that only reliable and relevant expert testimony is presented to the jury'") (quoting *Rushing v. Kansas City Southern Ry. Co*., 185 F.3d 496, 506 (5th Cir. 1999)); *Hebert v. Cannon*, No. Civ. A 04-1076, 2005 WL 3533695, at *2 (E.D. La. Oct. 31, 2005) (Barbier, J.) ("the concerns of *Daubert* are largely moot in this case since it is set as a bench trial, and *Daubert* was preoccupied with the courts' gatekeeping function vis-a-vis the jury.").

of "the sufficiency of an expert's basis, and the application of the expert's methodology," as "critical" to the admissibility analysis. As Defendants' motion discusses in detail, Mr. Sananes' invention of several methods for this case and his exclusion of important data and information implicate the very issues the advisory committee chose to emphasize.

As Defendants also stated in the motion for leave (R. Doc. 566 at 4-5), Rule 702 was amended to clarify that a proponent of an expert must prove to the Court that "it is more likely than not" that all of the criteria of Rule 702 are satisfied as to the proffered opinions. Fed. R. Civ. P. 702. In response to Defendants' motion for judgment on partial findings during the general causation hearing, the Court's oral reasons did not expressly apply the preponderance standard to Mr. Sananes' methodology. The Court determined that Defendants' Rule 702 challenge to the admissibility of his methodology "would just go to the weight of the evidence that [the Court would] give it" because "this is a judge hearing."[4]

In this specific causation trial before a jury, Defendants respectfully request that the Court apply *Daubert*'s full gatekeeping analysis to Mr. Sananes' methodology and bases, in conformance with long-standing principles of the Fifth Circuit and with the benefit of the Rule 702 advisory committee's recent guidance.

## II.   The Court has not ruled on Mr. Sananes' opinions.

Plaintiffs also argue that Mr. Sananes' methodology can no longer be at issue because the Court concluded in the General Causation ruling, "[t]he Plaintiffs have proven by a preponderance of the evidence that gases and odors were emitted from phase 4A of the Landfill." R. Doc. 592 at 5 (quoting R. Doc. 323 at 5-26). Plaintiffs state if Mr. Sananes' opinions were "so unreliable that emissions could not have been proven, then [the Court] would have ruled for Defendants." *Id*.

---

[4] Exhibit A, Transcript of Bench Trial on General Causation at 746:23-747:3.

Plaintiffs give credit to Mr. Sananes where it is not due, and insert conclusions into the Court's ruling that are not there.

The Court's decision on General Causation did not rely on or adopt any of Mr. Sananes' testimony whatsoever. In fact, the Court's ruling does not even mention Mr. Sananes apart from his inclusion in the list of witnesses who testified at the hearing.[5] In addressing whether $H_2S$ escaped the Jefferson Parish Landfill in sufficient quantities to make a finding of general causation, the Court relied entirely on air samples collected by the Louisiana Department of Environmental Quality ("LDEQ") – not on any of Mr. Sananes' $H_2S$ estimates or on any modeling performed by Plaintiffs. Defendants likewise presented modeling of emissions from the JPLF, which the Court did not rely on or adopt. Simply put, the Court made no findings or rulings related to Mr. Sananes.[6]

The upcoming specific causation trial will hinge, in part, on Plaintiffs' ability to convince the jury that the thirteen Trial Plaintiffs were actually exposed to an average of 5 parts per billion of $H_2S$ from the JPLF for 30 minutes. Plaintiffs' only proof of exposures from JPLF at such concentrations is their air modeling – which in turn relies on Mr. Sananes' $H_2S$ emissions estimates. In other words, Mr. Sananes' $H_2S$ emissions calculations are a crucial piece of *specific causation* evidence that was not addressed in any way by the Court's general causation opinion. Defendants respectfully request that the Court perform its Rule 702 gatekeeping analysis with respect to this crucial specific causation evidence, which in no way has been previously adopted or relied on by the Court.

---

[5] *See* R. Doc. 323 at 3.

[6] *See id*. at 21-24.

**III.     Mr. Sananes' Opinions on H2S generation & emissions are inadmissible.**

It is Plaintiffs' burden to demonstrate by a preponderance of the evidence that Mr. Sananes' testimony is reliable. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*), *cert. denied*, 526 U.S. 1064 (1999). Mr. Sananes' "testimony must be reliable at each and every step or else it is inadmissible." *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 355 (5th Cir. 2007). As detailed in Defendants' moving brief, Mr. Sananes' opinions are the result of methods made up specifically for this matter and they have not been tested, peer reviewed, or accepted by regulatory agencies or the solid waste industry. He knowingly ignored data and information directly relevant to his estimates. Mr. Sananes' methods were developed "expressly for purposes of testifying," he has not "adequately accounted for obvious alternative explanations," and he "made his calculations in a vacuum without any attempt to validate his results against reality." *See Burst v. Shell Oil Co*., 104 F. Supp. 3d 773, 777, 781 (E.D. La. 2015) (Vance, J.).

Plaintiffs' opposition chose not to address any of Defendants' arguments or to rebut the deficiencies the Defendants have raised. Plaintiffs favored instead a procedural attack based on a facially incorrect reading of the Court's general causation decision and a disdain for one of the core protections of the jury trial process.

## CONCLUSION

The Court's previous ruling regarding Mr. Sananes is not dispositive as it did not apply the more stringent *Daubert* standard required for jury trials and made no findings regarding Mr. Sananes' H2S estimates. When analyzing Mr. Sananes' opinions under the correct *Daubert* standard, it is clear his opinions are unreliable and should be excluded. Plaintiffs' opposition does nothing to dispute this fact.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:   */s/ Michael C. Mims*
      Michael Cash (#31655)
      Cherrell Simms Taplin (#28227)
      Michael C. Mims (#33991)
      Brady M. Hadden (#37708)
      J. Hunter Curtis (#39150)
      Alec Andrade (#38659)
      701 Poydras Street, Suite 5000
      New Orleans, LA 70139
      Telephone: (504) 581-7979
      Telefax: (504) 556-4108


      BEVERIDGE & DIAMOND, P.C.
      Megan R. Brillault (*pro hac vice*)
      Michael G. Murphy (*pro hac vice*)
      John H. Paul (*pro hac vice*)
      Katelyn E. Ciolino (*pro hac vice*)
      Katrina M. Krebs (*pro hac vice*)
      825 Third Avenue, 16th Floor
      New York, NY 10022
      (212) 702-5400

      James B. Slaughter (*pro hac vice*)
      1900 N Street, NW, Suite 100
      Washington, DC 20036
      (202) 789-6000

      Michael F. Vitris (*pro hac vice*)
      400 W. 15th Street, Suite 1410
      Austin, TX 78701
      (512) 391-8035

      *Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

      CONNICK AND CONNICK, LLC

By:   */s/ Michael S. Futrell*
      William P. Connick, La. Bar No. 14158
      Michael S. Futrell, La. Bar No. 20819

8

Matthew D. Moghis, La. Bar No. 33994
Anya M. Jones, La. Bar No. 36923
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6658
Facsimile: (504) 838-9903
E-mail: moghis@connicklaw.com

*Counsel for Defendant Jefferson Parish*

By:   */s/ Nicholas S. Bergeron*
       Ernest P. Gieger, Jr. (6154)
       John E. W. Baay (22928)
       J. Michael DiGiglia (24378)
       Nicholas S. Bergeron (37585)
       Blaise Chadwick Hill (*pro hac vice*)
       GIEGER, LABORDE & LAPEROUSE, L.L.C.
       Hancock Whitney Center
       701 Poydras Street, Suite 4800
       New Orleans, Louisiana 70139
       Telephone: (504) 561-0400
       Facsimile: (504) 561-1011
       Email: egieger@glllaw.com
            jbaay@glllaw.com
            mdigiglia@glllaw.com
            nbergeron@glllaw.com
            chill@glllaw.com

*Attorneys for Aptim Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record via the Court's electronic case management system on this 18th day of June, 2024.

*/s/ Michael C. Mims*