UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | **NO. 19-11133 c/w 19-14512** |
| *versus* | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | **JUDGE SUSIE MORGAN** |
| **Defendants** | **MAG. JUDGE MICHAEL B. NORTH** |
| *\*APPLIES TO ALL CASES\** | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERT, JOSE SANANES, <u>ON STANDARDS OF CARE</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................2

II. ARGUMENT .........................................................................................................................3

    A. Mr. Sananes is not qualified to opine on standards of care, or breaches of applicable standards, for landfill operators ...........................................................3

        1. Defendants seek to exclude Mr. Sananes' opinions on standards of care ...................................................................................................................3

        2. Plaintiffs do not defend Mr. Sananes' qualifications ...............................5

        3. Mr. Sananes' qualifications to testify about his estimates of landfill gas emissions are distinct from the qualifications needed to opine as to operational standards of care .........................................................7

    B. The Court should reject Plaintiffs' effort to sidestep Mr. Sananes' lack of qualifications ...............................................................................................................8

III. CONCLUSION .....................................................................................................................9

I.     INTRODUCTION

Plaintiffs' opposition does not defend Mr. Sananes' qualifications to opine on standards of care for landfill owners or operators. Instead, they try to obscure his lack of qualifications with a game of "gotcha" and an appeal to the Court to disregard Rule 702's requirement that an expert be qualified before presenting opinions to a jury. Mr. Sananes is not qualified "by knowledge, skill, experience, training, or education" to tell a jury how a reasonable landfill operator or owner would apply his or her professional judgment under the circumstances, and his opinions on standards of care should be excluded.

As to Mr. Sananes' qualifications, Plaintiffs suggest that he has obtained knowledge of landfill operational standards somehow other than through education, training, experience, or other skills. But Plaintiffs point only to one project that Mr. Sananes started in 2023 at an undisclosed landfill in an undisclosed state, in which he leads the sampling of landfill gas and condensate to assess variability in different areas of that landfill. Mr. Sananes admitted that he is not assisting with any operations, regulatory compliance, waste acceptance, or any recommendations to the landfill operator.

Plaintiffs also argue that because Defendants have not objected to Mr. Sananes' qualifications to render opinions on modeling of gas emissions, that he must be qualified to also opine as to standards of care of a landfill operator or owner. But the two areas are completely different, and Mr. Sananes himself has never suggested that his modeling experience is a substitute for operational experience.

Lacking a defense of Mr. Sananes' qualifications, Plaintiffs try to bar Defendants' motion by claiming that because Defendants did not cite "§ 6.4" of Mr. Sananes' report, this motion is limited to Mr. Sananes' opinions on "breaches" of standards of care, rather than his opinions on standards of care themselves. That is a strained reading of Defendants' motion, which explicitly

2

argues that Mr. Sananes is not qualified to opine to a jury about standards of care applicable to landfill operators.

Finally, Plaintiffs indulge in an unsupported recitation of facts and assumed standards of care that they claim are "undisputed." Plaintiffs' implication is that Mr. Sananes needs no special qualifications, contrary to a plain reading of Rule 702. That implication is meritless, and numerous core facts and assumed standards of care in Plaintiffs' self-serving narrative are disputed.

## II.   ARGUMENT

### A.   Mr. Sananes is not qualified to opine on standards of care, or breaches of applicable standards, for landfill operators.

Expert witnesses must be "qualified as an expert by knowledge, skill, experience, training, or education" to present opinion testimony to a jury. Fed. R. Evid. 702. Mr. Sananes does not have any of these qualifications to testify to the jury about standards of care applicable to landfill operators or owners, which depends on how a reasonable landfill operator or owner would apply their professional judgment under the circumstances. The Court should protect the jury from standard-of-care opinions made up for this case by an engineer whose closest experience is in the redevelopment of a closed landfill as a golf course.[1]

#### 1.   Defendants seek to exclude Mr. Sananes' opinions on standards of care.

Defendants' motion cited and provided voluminous record support, fairly explaining Mr. Sananes' lack of qualifications to opine on standards of care. Plaintiffs do not seriously defend his qualifications, arguing instead that Defendants can only challenge Mr. Sananes' qualifications to testify about "breaches" of standards of care because Defendants failed to cite "§ 6.4" of Mr. Sananes' expert report. But Defendants repeatedly argued in substance that "Mr. Sananes'

---

[1] See Defendants' Brief in support of Daubert Motion to Exclude Opinions of Plaintiffs' Expert, Jose Sananes on Standards of Care (June 6, 2024) (R. Doc. No. 565-1) ("Defendants' brief") § IV.A.1.

3

opinions on standards of care should be excluded,"[2] clearly challenging Mr. Sananes' qualifications to testify about either standards or breaches. The Court should disregard Plaintiffs' attempted "gotcha" argument.

Defendants' motion unequivocally challenges Mr. Sananes' qualifications to opine on standards of care. To cite two arguments from Defendants' brief:

- "Mr. Sananes does not have education or training related to operational standards of care at active landfills."

- "Nor does Mr. Sananes have the experience or practical skills in the operations of active landfills that would be necessary to testify as an expert on operational standards of care."[3]

Defendants also specifically cited Mr. Sananes' opinions on what he calls "Best Management Practices" in Section 15.3 of his Second Supplemental Report,[4] which is a discussion of standards asserted in the Section 6.4 that Plaintiffs claim Defendants overlooked. Defendants' brief details Mr. Sananes' lack of qualifications in operational standards of care with ample citations to the record. To avoid any question, Defendants affirm that this motion challenges Mr. Sananes' qualifications to testify about standards of care applicable to municipal solid waste ("MSW") landfill operators or owners, as well as his qualifications to testify about breaches of those asserted standards.

There is no good-faith basis for Plaintiffs to argue that Defendants "have made no challenge to Mr. Sananes' qualifications to present the opinions in § 6.4" of his report. Defendants respectfully request that the Court disregard Plaintiffs' argument.

---

[2] Defendants' brief § 1 at p. 4 of 18.

[3] Defendants' brief at 9-10.

[4] Defendants' brief at 3.

4

## 2. Plaintiffs do not defend Mr. Sananes' qualifications.

Expert testimony would be required to establish appropriate standards of care applicable to the Defendants' operations of various aspects of the JPLF.[5] Mr. Sananes has never advised the owner or operator of an operating MSW landfill on waste acceptance practices, compliance with permit terms, best management practices for waste disposal, odor control programs, compliance with rules regarding leachate control systems, operation of a landfill gas collection system, regulatory compliance, or a host of other everyday landfill management decisions.[6] Plaintiffs do not meaningfully argue or present any evidence that he is qualified in these or any similar areas, and he should not be allowed to testify on these issues.

Mr. Sananes' recent addition to his CV does not qualify him as an expert in operational standards of care. In response to Defendants' motion, Plaintiffs note that Mr. Sananes' CV lists a project in which, starting in 2023, he led the collection of samples of gas and condensate from gas wells to support an analysis of gas system design, operation, and maintenance at an operating municipal solid waste landfill.[7] Mr. Sananes could not give specifics about that project, including the name of the landfill or what state it's in.[8] But he admitted that work does **not** involve: assessment of wastes being accepted at the landfill; assessments of the sufficiency or application of cover; specifics of design of the gas or leachate systems; assessment of the depth of leachate; estimates of gas generation or emissions; the use or installation of pumps in gas wells; any

---

[5] *Crane-McNab, LLC v. Cnty. of Merced*, No. CV-F-081218 LJO SMS, 2010 WL 4024936, at *16 (E.D. Cal. Oct. 13, 2010) ("Because the operation of a landfill is a specialized area, the standard of care in operating the Highway 59 Landfill requires expert testimony."); *see also Brantley v. Int'l Paper Co.*, No. 09-230-DCR, 2017 WL 2292767, at *12 (M.D. Ala. May 24, 2017) (expert testimony was required on industry standards applicable to paper mills' duties to control odors).

[6] *See* Defendants' brief § IV.A.

[7] Plaintiffs' Opposition to Defendants' Motion in Limine to Exclude Opinions of Plaintiffs' Exert, Jose Sananes on Standards of Care (R. Doc. 594) ("Plaintiffs' Opp.") § III at 4.

[8] Exhibit 1, Transcript of Jose Sananes' Deposition, taken on Apr. 10, 2024 ("Sananes Dep.") at 12:13-18.

regulatory compliance; or any operational recommendations.[9] While Mr. Sananes testified that this experience "relates" somehow to an assessment of "the standard of care, you know, what is normally expected and done, versus what we are observing is done at the landfill," Mr. Sananes does not make any recommendations as part of that work, nor does it relate to the operational decisions at the heart of his proposed testimony.[10]

Plaintiffs also argue that Mr. Sananes' lack of practical experience or hands-on experience can be compensated by "suitable training or education or [otherwise gaining] the requisite knowledge or skill." Plaintiffs' Opp. at 5. Plaintiffs cite *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 176 (5th Cir. 1990) and *Maes v. Lowe's Home Centers LLC*, No. EP-17-CV-00107-FM, 2018 WL 3603114, at *3 (W.D. Tex. May 25, 2018). In *Lavespere,* the Fifth Circuit affirmed the qualification of an expert to testify about the design of safeguards for a machine, where the expert had "impressive" academic credentials in mechanical engineering, had ancillary hands-on experience, and had been previously admitted as an expert on topics relevant to his proposed testimony. *Lavespere*, 910 F.2d at 176. In *Maes*, the expert was qualified to testify about traumatic brain injury caused by falling tools because he "regularly" testifies as an expert about "human-injury impact analysis," including physical and computer modeling of injuries, and he had a mechanical engineering degree, which the court found was ancillary to the biomechanical topics at issue. *Maes,* 2018 WL 3603114, at *3.

Plaintiffs admit that Mr. Sananes does not have hands-on experience in operational standards of care at an operating MSW landfill, and they do not point to any ancillary hands-on experience other than the gas and condensate sampling he started last year at an undisclosed

---

[9] Sananes Dep. at 14:2 - 22:6; 30:25 - 31:9; 31:18-21.

[10] Sananes Dep. at 21:23-25.

6

landfill. Plaintiffs' Opp. at 4. Nor do they contend that his education in civil and environmental engineering or certifications in property remediation qualify him to opine on standards of care for landfill operators or owners. *Id*. Mr. Sananes has never been qualified as an expert on standards of care for landfill operators or owners.[11] Mr. Sananes has none of the ancillary or educational experience that qualified the experts in *Lavespere* or *Maes*. Thus there is nothing in the record to show that Mr. Sananes has gained expertise in operational standards of care at MSW landfills by any of Rule 702's criteria of "knowledge, skill, experience, training, or education."

        **3.    Mr. Sananes' qualifications to testify about his estimates of landfill gas emissions are distinct from the qualifications needed to opine as to operational standards of care.**

Plaintiffs assert without any explanation that because Defendants did not object to Mr. Sananes' qualifications to testify as to estimates of landfill gas generation and emissions, Mr. Sananes must be qualified to testify about how a landfill operator or owner should run a MSW landfill under applicable standards of care. Plaintiffs' Opp. at 1-2. The two sets of qualifications are completely different. Plaintiffs' argument is another attempt to obscure Mr. Sananes' lack of qualifications on standards of care, and Defendants respectfully request that the Court disregard it.

Mr. Sananes is an engineer, and he has estimated landfill gas generation and emissions at other landfills, using LandGEM and similar models.[12] Though he made up unreliable methods and ignored relevant data to estimate emissions from the JPLF in this case, he was qualified to follow accepted practices and to use relevant data if he had chosen to do so.

---

[11] Sananes Dep. at 52:10-12; Exhibit 2, Transcript of Jose Sananes' Deposition, taken on Jan. 21, 2022 at 9:2-5.

[12] See Curriculum Vitae of Jose Sananes, Appendix A to Second Supplemental Report (R. Doc. 592-1 p. 92 of 98).

7

In contrast, industry standards are based on industry knowledge, as it exists at a given point in time, regarding what a reasonable industry actor would do under similar circumstances and based on application of his or her judgment.[13] The question is what is reasonable, not what is perfect, and therefore the answer is not a simple translation from other skills – rather, it relies on the opinion of someone with experience in the given industry who understands the many factors that weigh into each operational decision.

Here, Mr. Sananes has never advised the owner or operator of an operating MSW landfill on the operation of a landfill gas collection system, operation of a leachate management system, compliance with permit terms, waste acceptance practices, best management practices for waste disposal, odor control programs, or a host of other everyday landfill management decisions. Nor does he have experience or education in those areas.[14] His qualifications to run an engineering calculation of landfill emissions in no way proves his knowledge of landfill industry standards. Plaintiffs' attempt to conflate the two areas of expertise should be rejected.

### B. The Court should reject Plaintiffs' effort to sidestep Mr. Sananes' lack of qualifications.

Plaintiffs do not seriously rebut Mr. Sananes' lack of qualifications to opine on standards of care for landfill operators or owners. Instead, they ask the Court to disregard his lack of qualifications by asserting that it shouldn't matter: "the facts that establish the breach are not in dispute." They then list, with only one citation to the record, numerous incorrect or irrelevant facts and technical conclusions that are certainly disputed, and they assume numerous standards of care that are likewise incorrect or irrelevant. The Court should disregard all of Plaintiffs' factual assertions that are not supported by record citations.

---

[13] *Nicholson & Loup, Inc. v. Carl E. Woodward, Inc.*, 596 So. 2d 374, 381 (La. App. 4th Cir. 1992).

[14] *See* Defendants' brief § IV.A at 7-13.

Further, Plaintiffs' argument that the leachate system in Phase 4A had an effect on liquids in the gas system is disputed. When the landfill gas collection system was installed in 2018, it actually collected gas as recorded by the Parish's consultant, Mr. Carlson. Gas wells can collect landfill gas effectively even when liquids accumulate in them, which is common.

When spent lime was accepted as a liquid waste solidification agent, plans were in progress to install the landfill gas collection system within regulatory timeframes and according to a design that LDEQ approved. All waste in an MSW landfill can generate odors, and as a matter of physics substantial amounts of waste must be accepted before a gas system can be installed. The acceptance of spent lime and other industrial wastes was permitted and acceptable at the JPLF; LDEQ's lead inspector, whose inspections led to the issuance of compliance orders, testified: "That wasn't the issue that [JPLF was] taking improper waste."[15]

In short, the operation of JPLF involved application of professional judgment, including engineering judgment and experience in the relevant industry. Plaintiffs' paint-by-numbers view and their failure to understand the relevance of key disputes demonstrates the value of a qualified expert. If Plaintiffs want to present to the jury the standards of care implicit in their representations to this Court, they must do so through an expert qualified by "knowledge, skill, experience, training, or education." Mr. Sananes does not satisfy any of those criteria.

### III.   CONCLUSION

Plaintiffs have asked Mr. Sananes to step beyond his qualifications and offer opinions to the jury as to how a reasonable landfill operator or owner would apply his or her professional judgment under the circumstances of this case. Plaintiffs have not shown that Mr. Sananes has any relevant experience or education in that area, despite the clear requirements of Rule 702.

---

[15] Exhibit 3, Transcript of Wayne Desselle's Deposition, taken on Dec. 20, 2023 at 120:20 – 121:9.

9

Defendants respectfully request that the Court exclude Mr. Sananes' opinions as to standards of care applicable to landfill owners and operators, as well as his opinions as to breaches of his asserted standards.

Respectfully submitted,

LISKOW & LEWIS, APLC

By: */s/ Michael C. Mims*
Michael Cash (#31655)
Cherrell Simms Taplin (#28227)
Michael C. Mims (#33991)
Brady M. Hadden (#37708)
J. Hunter Curtis (#39150)
Alec Andrade (#38659)
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

BEVERIDGE & DIAMOND, P.C.
Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

CONNICK AND CONNICK, LLC

By: */s/ Michael S. Futrell*
William P. Connick, La. Bar No. 14158
Michael S. Futrell, La. Bar No. 20819
Matthew D. Moghis, La. Bar No. 33994
Anya M. Jones, La. Bar No. 36923
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6658
Facsimile: (504) 838-9903
E-mail: moghis@connicklaw.com

*Counsel for Defendant Jefferson Parish*

GIEGER, LABORDE & LAPEROUSE, L.L.C.

By: */s/ Nicholas S. Bergeron*
Ernest P. Gieger, Jr. (6154)
John E. W. Baay (22928)
J. Michael DiGiglia (24378)
Nicholas S. Bergeron (37585)
Blaise Chadwick Hill (*pro hac vice*)
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone:    (504) 561-0400
Facsimile:     (504) 561-1011
Email: egieger@glllaw.com
          jbaay@glllaw.com
          mdigiglia@glllaw.com
          nbergeron@glllaw.com
          chill@glllaw.com

*Attorneys for Aptim Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record via the Court's electronic case management system on this 18th day of June, 2024.

<u>*/s/ Michael C. Mims*</u>