UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>Plaintiffs<br><br>VERSUS<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>Defendants<br><br>*Applies to: All Cases* | CIVIL ACTION<br><br>NO. 19-11133, c/w 19-14512<br><br>SECTION: "E" (5)<br><br>JUDGE: Morgan<br>MAGISTRATE JUDGE: North |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE OPINION TESTIMONY OF SUSAN SCHIFFMAN <u>PURSUANT TO FEDERAL RULE OF EVIDENCE 702</u>**

**INTRODUCTION**

Plaintiffs falsely claim that the general causation CMO somehow bars this specific causation Rule 702 challenge to Dr. Susan Schiffman, arguing that her opinions are not "new opinions" and therefore Defendants are not allowed to file a motion *in limine*. But the prior opinions of Dr. Schiffman, Plaintiffs' odor psychologist, related to the sole issue before the Court then, general causation; Dr. Schiffman did not – and could not – previously opine on specific causation as to any specific plaintiff, let alone the thirteen Trial Plaintiffs. If Plaintiffs are correct that Dr. Schiffman's opinions are not new, then her opinions necessarily only address issues of general causation and are not relevant to the new issue of specific causation for the thirteen Trial Plaintiffs. Her opinions should be excluded for this reason alone. If Dr. Schiffman's opinions are deemed relevant to the issue of specific causation, they are necessarily new opinions and Defendant's motion is appropriate under the Court's April 2023 minute entry.

However, even couched as specific causation opinions, Dr. Schiffman's testimony should be precluded because she has not conducted any specific causation analysis, much less a reliable one. Plaintiffs' opposition has not overcome her admissions that she is only testifying as to "whether the people could have suffered the complaints that they have" not whether they actually did suffer injuries from JPLF odors.[1] Dr. Schiffman also admits she did not opine on whether $H_2S$ *actually* lingered in any Trial Plaintiff's home or whether VOCs *actually* enhanced odors at any Trial Plaintiff location. Nor did she provide any opinions as to which specific VOCs each of the Trial Plaintiffs were likely exposed to and at what concentrations, durations, and frequencies. Dr. Schiffman's opinions that simply reiterate her general causation opinions should be excluded.

---

[1] Schiffman Tr. 101:24-102:3 (R. Doc. 563-5).

1

Finally, despite Dr. Schiffman testifying that she will be "staying in [her] lane" of expertise as an odor psychologist and not offering opinions outside of sensations of smell and responses to odor perception at the upcoming merits trial, Plaintiffs try to broaden her "lane" by claiming that she is also qualified to opine on the generation of odors from co-disposal of certain waste.[2] Her testimony and experience, which speak to the existence, not generation, of odors, demonstrate otherwise. Additionally, Plaintiffs do not (and cannot) contest that Dr. Schiffman has not conducted any air modeling inside any Trial Plaintiffs' homes (nor has any expert), and that she is not being offered as an expert in air dispersion modeling. Therefore, she is not qualified to render specific causation opinions on the concentration of $H_2S$ inside each of the Trial Plaintiffs' homes. Her opinions veer outside of her "lane" of odor psychology and should be excluded.

## ARGUMENT

**I.  Dr. Schiffman's opinions are nothing more than general causation opinions and are therefore irrelevant to specific causation.**

Dr. Schiffman is not qualified to present opinions to a jury that $H_2S$ accumulated in the Trial Plaintiffs' homes, and she has no evidence to support those opinions in any event. Dr. Schiffman further lacks any evidence that any Trial Plaintiff was actually exposed to VOCs. In response to Defendants' motion to exclude Dr. Schiffman's opinions on these bases, Plaintiffs *falsely* claim that the general causation CMO somehow bars their specific causation Rule 702 challenge.[3] While Defendants do not agree that their motion is improper, Plaintiffs position essentially concedes that Dr. Schiffman's opinions are not relevant to the issues for the upcoming August 2024 specific causation merits trial.[4]

---

[2] Schiffman Tr. 177:2-6 (R. Doc. 563-5).
[3] R. Doc. 595 at 1-2.
[4] A fuller discussion of general versus specific causation is set out in Defendants' Opposition to Plaintiffs' Motion to Exclude Expert Testimony on Issues Litigated and Decided in the General Causation Phase. R. Doc. 598 at 2-13.

General causation examines whether a substance is *capable* of causing a particular injury or condition in the *general population*. The only questions at issue in the general causation hearing were "the determination of whether odors and gases were being emitted by the Jefferson Parish Landfill during the relevant time period and whether any such odors and gases were capable of producing the injuries claimed by any one or more of the Plaintiffs."[5] For the general causation phase, Dr. Shiffman provided expert opinions and the Court issued a decision as to what level of $H_2S$ was capable of causing annoyance and other nuisance-type injuries in the general population. Dr. Schiffman also opined that $H_2S$, when mixed with VOCs, was capable of increasing the odor intensity to the general population.[6]

However, specific causation, which will be decided by the jury in August, addresses whether a substance more likely than not *caused* a *particular individual*'s injury.[7] At the August trial, Plaintiffs must present new evidence to prove the distinct legal issue of whether odors or emissions from the JPLF more likely than not did in fact cause the particular Trial Plaintiffs' injuries based on the individual circumstance of each Trial Plaintiff. That issue was not addressed by Dr. Schiffman in the prior phase – nor could it have been, because the thirteen Trial Plaintiffs had not been identified yet.

If Plaintiffs are correct and Dr. Schiffman's opinions are not "new," then her opinions necessarily only address issues of general causation, which are irrelevant to specific causation. Indeed, Defendants agree that Dr. Schiffman's opinions are better characterized as general causation opinions rather than specific causation opinions. As Defendants explained in section IV of their moving brief and address briefly below, Dr. Schiffman testified that her opinions addressed

---

[5] R. Doc. 323 at 4.
[6] *Id*. at 35.
[7] *See Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007); *Johnson v. Arkema*, Inc., 685 F.3d 452, 472 (5th Cir. 2012).

3

only what *could* happen to members of the general population when exposed to odors – not whether the Trial Plaintiffs, based on their individual circumstances, more likely than not did, in fact, suffer injuries from JPLF odors.[8]

However, if the Court determines that Dr. Schiffman's opinions fall within the scope of a specific causation analysis, then those opinions are necessarily "new," and Defendants' motion is not affected by the Court's April 2023 minute entry order. Simply put, there is no basis in law, logic, or basic notions of fairness for a *general causation* CMO to serve as the foundation for barring a challenge to an expert's *specific causation* opinions – and therefore this argument should be rejected.

## II.     Plaintiffs cannot fill in the gap of Dr. Schiffman's failure to conduct a proper specific causation analysis.

To the extent that Dr. Schiffman's opinions are intended to address issues of specific causation, they do not meet the rigorous standards the Fifth Circuit demands.[9] Plaintiffs attempt to save Dr. Schiffman's opinions by claiming they "[flow] from findings already made by the Court."[10] But Dr. Schiffman's parroting of the general causation decision and Mr. Lape's modeling, which only predicts exposure of $H_2S$ concentrations outside Plaintiffs' homes, falls short of reliable and admissible specific causation evidence.

It is undisputed that Dr. Schiffman did not examine any of the Trial Plaintiffs, did not review their medical records or consider their medical history, did not examine or consider the attributes of their individual residences, and did not consider any other potential cause of their

---

[8] R. Doc. 563-1 at 15-18; Schiffman Tr. 101:24-102:3 (R. Doc. 563-5) ("Odor and whether the people could have suffered the complaints that they have").
[9] R. Doc. 563-1 at 15-18; *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 587 (5th Cir. 2004); *Moore v. Int'l Paint, L.L.C.,* 547 Fed. Appx. 513, 516 (5th Cir. 2013).
[10] Plaintiffs also argue that specific causation testimony is unnecessary for the Trial Plaintiffs' injuries. R. Doc. 595 at 10. If Plaintiffs' injuries do not require expert evidence, then Dr. Schiffman's testimony is not helpful to the jury and must be excluded for this additional reason.

4

alleged injury—steps that are necessary for a specific causation opinion to be admissible.[11] *See, e.g., Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 804 (E.D. La. 2011) (Fallon, J.) ("if an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony.") (citation and quotations omitted).

Dr. Schiffman's VOC analysis is also unreliable and unhelpful for this phase of the case, as it is wholly untethered to any analysis of what occurred to any of the specific Trial Plaintiffs based on their individual circumstances. In her VOC analysis, Dr. Schiffman does nothing more than observe that certain VOCs were detected by LDEQ at various locations within Jefferson Parish. But none of the samples were taken at any of the Trial Plaintiffs' homes. And Dr. Schiffman does not have any sampling or modeling data to demonstrate that any of the Trial Plaintiffs were actually exposed to VOCs at their homes.

Simply put, while Dr. Schiffman previously testified during general causation that one or more Plaintiffs could have been exposed to VOCs, for her specific causation analysis, Dr. Schiffman does not have any evidence, direct or otherwise, of which particular VOC each Trial Plaintiff was exposed to (if any), and at what concentrations, durations, and frequencies.[12] Nor has Dr. Schiffman even provided the particular combinations and concentrations of VOCs that, when mixed with $H_2S$, more likely than not caused each of the Plaintiffs' particular injuries.[13]

---

[11] Schiffman Tr. 279:9-14 (R. Doc. 563-5) ("Q. [B]ecause you didn't state that you ruled out alternative causes or do a specific analysis of the concentration of VOCs [and] H2S, you didn't state that in the report, so you didn't do it? A. Did not do it. Nobody did it.").

[12] Dr. Schiffman also did not even provide the particular combination and concentrations of VOCs and $H_2S$ that could have caused their symptoms.

[13] *See, e.g.,* Schiffman Tr. 274:5-8 (R. Doc. 595-3) ("Q. Did you determine a particular combination – combination and concentration of VOC and H2S exposure that caused their headaches? A. It's not in the report, so I didn't do it."); 276:6-15 (R. Doc. 563-5) ("Q. ... 'volatile emissions can stimulate trigeminal nerve endings' - - A. That's correct. Q. It's a 'can' it's not actually a 'did' here; is that accurate? A. I can't - - I can't say that's what happened with an individual person.").

Dr. Schiffman's mistaken assertion that modeled exposure to $H_2S$ can also reliably predict exposure to specific VOCs and the concentrations of such exposures, if it were correct, would be an issue for Plaintiffs' modeling expert (Mr. Lape) to address. He did not, and Dr. Schiffman (a psychologist) cannot fill in those gaps. Thus, Plaintiffs' baseless claim that "logic" requires a finding based on Mr. Lape's modeling of $H_2S$ (*see* R. Doc. 595 at 8) is not only wrong on the science, but wrong on the law. *See Williams v. BP Expl. & Prod., Inc*., No. 18-cv-9753, 2019 WL 6615504, at *9 (E.D. La. Dec. 5, 2019) (Morgan, J.) (expert excluded; "Where an expert's opinion is based on insufficient information, the analysis is unreliable.") (citation and quotations omitted).

Dr. Schiffman did not conduct a reliable specific causation analysis to determine whether odors from the JPLF, either as $H_2S$ alone or combined with VOCs, more likely than not caused each of the Trial Plaintiffs injuries. Her opinions are inadmissible under Rule 702 and Fifth Circuit precedent regarding causation opinions.[14]

**III.     Dr. Schiffman is not qualified to testify outside of odor psychology and impacts of odors.**

Dr. Schiffman has offered an empty promise that she is "staying in [her] lane" and that she is offering opinions only as to "the odor and where did it come from."[15] But Plaintiffs will be the ones asking Dr. Schiffman questions at trial, and they have indicated they will offer Dr. Schiffman as an expert on waste disposal at landfills, areas that that are well beyond her expertise as an odor psychologist. Therefore, the Court should preclude such opinions.

Plaintiffs admit that Dr. Schiffman is not an expert in contracts or landfill management. And Dr. Schiffman admits that she has never operated a landfill, never operated any of the

---

[14] *See Allen v. Pa. Eng'g Corp*., 102 F.3d 194, 199 (5th Cir. 1996); *Williams*, 2019 WL 6615504, at *8; *Comardelle v. Pa. Gen. Ins. Co*., 76 F. Supp. 3d 628, 635 (E.D. La. 2015) (expert opinion on specific causation excluded; expert's general causation proposition that exposure increases risk not sufficient to render opinion that exposure was in fact the cause); *Wagoner*, 813 F. Supp. 2d at 804.
[15] Schiffman Tr. 177:2-6 (R. Doc. 563-5). Defendants do not concede that Dr. Schiffman is qualified to offer opinions in this case as to where the odors came from or that any of her opinions on this issue are reliable or admissible.

6

component systems of a landfill, and has no knowledge of the Louisiana regulations governing landfills. Plaintiffs misrepresent Dr. Schiffman's testimony and experience on best practices for disposal of spent lime – which is based on simply reading some general "printouts" about landfills and the type of waste accepted.[16] Moreover, Dr. Schiffman admitted that she was not being offered as an expert in the disposal of spent lime; rather only as an expert in odor impacts, and that her limited landfill experience relates to her measuring odors in the ambient air.[17] Dr. Schiffman's testimony should be limited to her areas of expertise – odor psychology.[18]

Lastly, Plaintiffs have not adequately rebutted Defendants' argument that Dr. Schiffman is not qualified to render specific causation opinions with respect to indoor air concentrations for each of the Trial Plaintiffs' homes. Plaintiffs latch on to the Court's recitation of Dr. Schiffman's general causation testimony that $H_2S$ is generally capable of accumulating in low-laying and enclosed areas, but neither the Court nor Dr. Schiffman determined whether that was occurring in any of the thirteen Trial Plaintiffs' homes while taking into account the particular circumstances of their residences.[19] For purposes of rendering an opinion as to whether the indoor accumulation actually occurred, Dr. Schiffman admits that she has never "been in [any of the thirteen Trial Plaintiffs'] houses" and could only testify as to "what *can* happen[.]"[20] While Mr. Lape may have agreed that Dr. Schiffman conducted prior studies on indoor air,[21] that does not render her an air dispersion expert in this case, a point that Mr. Lape and Dr. Schiffman agreed with.[22]

---

[16] R. Doc. 595 at 8; Schiffman Tr. 52-3-53:16 (R. Doc. 595-3).
[17] Schiffman Tr. 78:16-20, 99:3-100:5 (R. Doc. 563-5).
[18] Even if Dr. Schiffman could speak to landfill waste disposal practices and odor generation, Plaintiffs already have identified two other experts that they are offering in these areas: Mr. Sananes and Dr. Pietari. As a result, any testimony related to best management practices and odor generation from waste disposal would be duplicative of their testimony.
[19] Dr. Schiffman concedes that she did not determine what the levels were in any of the Trial Plaintiffs homes and that even assuming $H_2S$ entered a home, she could not even determine whether the level would be above the 5-ppb level or whether it would accumulate inside. Schiffman Tr. 196:13-197:8 (R. Doc. 595-3).
[20] Schiffman Tr. 184:8-12 (R. Doc. 563-5) (emphasis added).
[21] R. Doc. 595 at 7.
[22] Lape Tr. 15:1-8 (R. Doc. 563-7); Schiffman Tr. 177:2-6 (R. Doc. 563-5).

Regardless of her credentials, she certainly cannot testify as to what sort of air dispersion likely occurred in each of the Trial Plaintiffs' homes without considering their individual circumstances, as she concedes that $H_2S$'s ability to linger in homes depends on factors such as a home's ventilation and whether it features low-lying and enclosed areas.[23] As in other areas of her testimony, Dr. Schiffman simply has not conducted a specific causation analysis tethered to the Trial Plaintiffs and their individual circumstances – therefore her testimony is unreliable and unhelpful for the upcoming specific causation trial.

## CONCLUSION

The general causation CMO does not preclude Defendants from bringing this Rule 702 challenge to Dr. Schiffman's specific causation opinions. To the extent the challenged opinions are not "new," they are irrelevant as they only address general causation issues and not the specific causation questions to be addressed in the August trial. Dr. Schiffman also is not qualified to testify on topics outside of her expertise of odor psychology, such as best practices related to landfill operations and disposal of waste, or the concentrations of $H_2S$ inside Plaintiffs' homes. Dr. Schiffman's specific causation opinions are not reliable as she admittedly failed to conduct any specific analysis (let alone a reliable one) related to the thirteen Trial Plaintiffs and can only testify as to "what can happen" (general causation), which is no longer relevant in the upcoming specific causation trial. Her testimony must be excluded.

---

[23] Schiffman Tr. 183:13-84:20.

        Respectfully submitted,

        LISKOW & LEWIS, APLC

By:   /s/ Michael C. Mims
        Michael Cash (#31655)
        Cherrell Simms Taplin (#28227)
        Michael C. Mims (#33991)
        Brady M. Hadden (#37708)
        J. Hunter Curtis (#39150)
        Alec Andrade (#38659)
        701 Poydras Street, Suite 5000
        New Orleans, Louisiana 70139
        (504) 581-7979

        BEVERIDGE & DIAMOND, P.C.

        Megan R. Brillault (*pro hac vice*)
        Michael G. Murphy (*pro hac vice*)
        John H. Paul (*pro hac vice*)
        Katelyn E. Ciolino (*pro hac vice*)
        Katrina M. Krebs (*pro hac vice*)
        825 Third Avenue, 16th Floor
        New York, NY 10022
        (212) 702-5400

        James B. Slaughter (*pro hac vice*)
        1900 N Street, NW, Suite 100
        Washington, DC 20036
        (202) 789-6000

        Michael F. Vitris (*pro hac vice*)
        400 W. 15th Street, Suite 1410
        Austin, TX 78701
        (512) 391-8035

        *Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

CONNICK AND CONNICK, LLC

By:  /s/ Michael S. Futrell
William P. Connick, La. Bar No. 14158
Michael S. Futrell, La. Bar. No. 20819
Matthew D. Moghis, La. Bar. No. 33994
Anya M. Jones, La. Bar. No. 36923
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6658
Facsimile: (504) 838-9903
E-mail: moghis@connicklaw.com

*Counsel for Defendant Jefferson Parish*


GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:  /s/ J. Michael DiGiglia
Ernest P. Gieger, Jr. (6154)
John E. W. Baay (22928)
J. Michael DiGiglia (24378)
Nicholas S. Bergeron (37585)
Blaise Chadwick Hill (*pro hac vice*)
Gieger, Laborde & Laperouse, L.L.C.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

*Attorneys for Defendant Aptim Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on June 18, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ Michael C. Mims
OF COUNSEL
