## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK E. ADDISON, SR., ET AL.,**<br>    **Plaintiffs** | **CIVIL DOCKET** |
| **VERSUS** | **NO.  19-11133**<br>    **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL**<br>**COMPANY, ET AL.,**<br>    **Defendants** | **SECTION: "E" (5)** |

***Applies to: Both Cases***

### ORDER AND REASONS

Before the Court is Defendants' motion for partial summary judgment on Plaintiffs' claims for certain injuries (the "Motion for Summary Judgment").[1] Plaintiffs filed a memorandum in opposition.[2] Defendants filed a reply.[3]

### BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill in Waggaman, Louisiana (the "Landfill"), and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019 (the "relevant time period").[4] Plaintiffs, who are Jefferson Parish residents, filed several individual lawsuits that were consolidated into a mass action, *Addison v. Louisiana Regional Landfill Co.*, which includes over 500 individual Plaintiffs (the "*Addison* Action").[5] Plaintiffs assert negligence and nuisance claims under Louisiana state law[6] against Defendants: Jefferson Parish, which owns and contracts with

---

[1] R. Doc. 561.
[2] R. Doc. 597.
[3] R. Doc. 620.
[4] *See* R. Doc. 561-2 at ¶ 1; R. Doc. 597-1 at ¶ 1.
[5] *See generally* Second Amended Complaint, R. Doc. 431.
[6] *See* Second Amended Complaint, R. Doc. 431 at p. 64.

others to operate the Landfill; Aptim Corporation, which managed the gas and leachate collection systems of the Landfill from July 2017 to May 2019; and three entities that operated the Landfill from May 2013 to December 2020: Louisiana Regional Landfill Company;[7] Waste Connections Bayou, Inc.;[8] and Waste Connections US, Inc. (collectively, the "Defendants").[9] Jefferson Parish residents also filed several related class actions, which were consolidated into one case, *Ictech-Bendeck v. Waste Connections Bayou, Inc.* (the "Class Action").[10]

On November 5, 2019, the Court issued the first Case Management Order ("CMO"), proposed by the parties, which established a bifurcated litigation schedule under which the issue of general causation would be resolved first by the judge in the *Addison* and Class Actions.[11] The first CMO and CMOs issued subsequently define the issue of "general causation" as "the determination of whether odors and gases were being emitted by [the Landfill] during the relevant time period and whether any such odors and gases were capable of producing the injuries claimed by any one or more of the Plaintiffs in this case."[12] This definition incorporates three elements: (1) whether odors and gases were emitted by the Landfill; (2) whether the gases and odors were emitted during the relevant time period; and (3) whether the emitted odors and gases were capable of producing the injuries claimed by any one or more of the Plaintiffs.[13] The parties consented to the Court serving as trier of fact on the issue of general causation for the *Addison* and Class Actions,

---

[7] Louisiana Regional Landfill Company is formerly known as IESI LA Landfill Corporation.
[8] Waste Connections Bayou, Inc. is formerly known as Progressive Waste Solutions of LA, Inc.
[9] Second Amended Complaint, R. Doc. 431 at pp. 52-53.
[10] *See* R. Doc. 48 (18-7889).
[11] R. Doc. 80 at pp. 1-2. *See also* R. Doc. 561-2 at ¶ 2 (citing R. Doc. 80 at pp. 1-2); R. Doc. 597-1 at ¶ 2.
[12] *See, e.g.*, R. Doc. 80 at p. 2 (First Case Management Order); R. Doc. 202 (Seventh Case Management Order).
[13] *See* R. Doc. 323 at p. 4.

and agreed resolution of the issue would "help narrow the focus of the case and the issues."[14]

The Court held a trial on general causation in both the *Addison* and Class Actions in early 2022.[15] On November 29, 2022, the Court issued its Findings of Fact and Conclusions of Law as to General Causation (the "General Causation Order"),[16] determining that:[17] (1) odors and gases were emitted by the Landfill;[18] (2) the emissions of gases and odors from the Landfill occurred during the relevant time period;[19] and (3) exposure to the odors and gases emitted by the Landfill at a level of five parts per billion ("ppb") for thirty minutes "is sufficient by itself for individuals generally to be able to smell hydrogen sulfide and for the exposure to cause a reaction."[20] The Court found that Plaintiffs established general causation during the relevant time period for certain injuries, including: headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry, a decrease in quality of life, and loss of enjoyment or use of property in the general population.[21] As Plaintiffs argue, these are general categories that encompass certain other symptoms suffered by the Plaintiffs.[22] The Court finds the following categories of injuries encompass by "necessary implication"[23] certain injuries referenced in the Defendants' Motion for Summary Judgment:[24]

- "Nausea" encompasses "stomach irritation," "stomach pain," "upset stomach," and "stomach issues";

---

[14] R. Doc. 202 at pp. 2, 8.
[15] R. Docs. 274-278, 286-289. *See also* R. Doc. 561-2 at ¶ 3; R. Doc. 597-1 at ¶ 3.
[16] R. Doc. 323.
[17] The parties do not dispute that the General Causation Order was limited to the relevant time period. *See* R. Doc. 561-2 at ¶ 4 (citing General Causation Order, R. Doc. 323 at p. 44); R. Doc. 597-1 at ¶ 4.
[18] R. Doc. 323 at p. 5.
[19] *Id.* at p. 26.
[20] *Id.* at p. 27.
[21] *Id.* at pp. 44, 46.
[22] R. Doc. 597 at pp. 3-4.
[23] *See Alpha/Omega Ins. Servs. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001).
[24] *See* R. Doc. 561-1 at pp. 6-7.

- "Vomiting" encompasses "gagging";

- "Dizziness" encompasses "lightheadedness";

- "Fatigue" encompasses "lethargy," and "decrease in energy level";

- "Anxiety and worry" encompasses "stress," "concern regarding long term effects," "decreased focus," and "crying"; and

- "A decrease in quality of life" encompasses "decreased productivity," "sad and overwhelmed," "decrease in mood," and "depression."

The list of categories of injuries for which the Court found general causation during the relevant time period, as enumerated in the Court's General Causation Order, and those additional injuries identified as being encompassed by the categories of injuries, are collectively referred to as the "Allowed Injuries":[25]

- Headaches;

- Nausea;

- Vomiting;

- Gagging;

- Loss of appetite;

- Sleep disruption;

- Dizziness;

- Lightheadedness;

- Fatigue;

- Lethargy;

- A decrease in energy level;

---

[25] This list of Allowed Injuries also applies to the Class Action.

- Anxiety and worry;

- Stress;

- Concern regarding long term effects;

- Decreased focus;

- Crying;

- A decrease in quality of life;

- Decreased productivity;

- Feeling sad and overwhelmed;

- A decrease in mood;

- Depression; and

- A loss of enjoyment or use of property in the general population.

The Court ordered that a trial be conducted with a select number of *Addison* Plaintiffs (the "Trial Plaintiffs").[26] The first *Addison* trial was set to begin on September 5, 2023,[27] and has since been continued to begin on August 12, 2024 (the "First Addison Trial").[28] In February 2024, the Court issued a Thirteenth CMO, which required the parties to file all non-evidentiary pretrial motions in the First *Addison* Trial by June 6, 2024.[29] The Defendants timely filed their Motion for Summary Judgment seeking to dismiss Plaintiffs' claims for any injuries not included in the Allowed Injuries or for damages outside the relevant time period.[30]

---

[26] R. Doc. 323 at pp. 44, 46.
[27] R. Doc. 340.
[28] R. Doc. 495.
[29] R. Doc. 498 at p. 6.
[30] R. Doc. 561.

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] "An issue is material if its resolution could affect the outcome of the action."[32] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[33] All reasonable inferences are drawn in favor of the nonmoving party.[34] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[35]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[36] If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[37] To satisfy the burden of production under Rule 56, the moving party must do one of two things: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's

---

[31] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[32] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[33] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[34] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[35] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[36] *Celotex*, 477 U.S. at 323.

[37] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

claim," or (2) "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[38]

When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[39] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[40] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[41] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[42] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of

---

[38] *Celotex*, 477 U.S. at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322–24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FED. PRAC. AND PRO. § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[39] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[40] *Celotex*, 477 U.S. at 332–33.
[41] *Id.*
[42] *Id.* at 332–33, 333 n.3.

these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[43]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[44]

## LAW AND ANALYSIS

I.   **Under the law-of-the-case doctrine, the Court's General Causation Order governs issues of general causation in the *Addison* Action and the Class Action.**

"The law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case."[45] The doctrine "is based on the salutary and sound public policy that litigation should come to an end."[46] "Despite its importance, the doctrine 'is an amorphous concept' with no 'precise requirements,'"[47] and may be applied at the court's discretion.[48] Generally, when a court decides an issue, "that decision should continue to govern the same issues in subsequent stages of the same case."[49] Nevertheless, the doctrine "applies

---

[43] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[44] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[45] *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (quoting *United States v. Castillo*, 179 F.3d 321, 326 (5th Cir. 1999), *rev'd on other grounds by Castillo v. United States*, 530 U.S. 120 (2000)) (internal quotation marks omitted).
[46] *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967).
[47] *Arizona v. California*, 460 U.S. 605, 618 (1983).
[48] *See United States v. Garza*, 624 F. App'x 208, 211 (5th Cir. 2015) (*United States v. Agofsky,* 516 F.3d 280, 283 (5th Cir. 2008)).
[49] *Id.*

only to issues that were *actually decided*, rather than all questions in the case that might have been decided but were not."[50] However, "the issues need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication.'"[51]

As expressed in the General Causation Order, the Court determined that, for both the *Addison* and Class Actions, during the relevant time period,[52] odors and gases were emitted by the Landfill;[53] the emissions of gases and odors from the Landfill occurred during the relevant time period;[54] and exposure to the odors and gases emitted by the Landfill at a level of five parts per billion for thirty minutes "is sufficient by itself for individuals generally to be able to smell hydrogen sulfide and for the exposure to cause" any of the Allowed Injuries.[55]

The parties consented to the Court serving as trier of fact on the issue of general causation[56] and do not dispute that the General Causation Order concluded the general causation phase of the litigation in both the *Addison* and Class Actions.[57] The Court finds that the issue of general causation was "*actually decided*"[58] by the Court's General Causation Order and will not revisit its findings of fact and conclusions of law expressed therein.[59]

---

[50] *Alpha/Omega Ins. Servs.*, 272 F.3d at 279 (emphasis added).

[51] *Id.* (quoting *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001)).

[52] The parties do not dispute that the General Causation Order was limited to the relevant time period. *See* R. Doc. 561-2 at ¶ 4 (citing General Causation Order, R. Doc. 323 at p. 44); R. Doc. 597-1 at ¶ 4.

[53] R. Doc. 323 at p. 5.

[54] *Id.* at p. 26.

[55] *Id.* at p. 27.

[56] R. Doc. 202 at p. 8.

[57] R. Doc. 561-2 at ¶ 6; R. Doc. 597-1 at ¶ 6.

[58] *See Alpha/Omega Ins. Servs.*, 272 F.3d at 279.

[59] *See* R. Doc. 323.

II.     **The Defendants are entitled to summary judgment in the *Addison* Action on Plaintiffs' claims for damages for injuries that are not included in the Allowed Injuries.**

Relevant to the instant Motion for Summary Judgment, the Court determined general causation existed as a matter of law only for the Allowed Injuries.[60] As required by the Twelfth CMO,[61] Plaintiffs timely filed their Second Amended Complaint on November 10, 2023, almost one year after the Court issued its General Causation Order.[62] In the Second Amended Complaint, Plaintiffs restate several allegations contained in their original state court petition[63] and First Amended Complaint,[64] including allegations that Defendants' negligent acts and omissions caused Plaintiffs to suffer the Allowed Injuries, as well as some physical injuries for which the Court did not find general causation (the "Non-Allowed Injuries").[65]

In any personal injury suit arising under Louisiana law, the plaintiff bears the burden of proving by a preponderance of the evidence that "the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries."[66] "The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff

---

[60] *See id.* at pp. 44, 46. The Court deferred a determination of general causation only for damage claims relating to diminution of property values. *Id.* at p. 46 n.345. *See also* R. Doc. 561-2 at ¶ 4 (quoting *Id.* at p. 44); R. Doc. 597-1 at ¶ 4. As expressed in the Court's General Causation Order, the Court found that the Plaintiffs failed to establish general causation for certain injuries and symptoms, including: "irritation to the eyes, nose, or throat; coughing; trouble breathing; asthma; skin irritation; burning lungs; nose bleeds; neurological issues"; and chronic obstructive pulmonary disease ("COPD"). R. Doc. 323 at p. 42. This material fact is undisputed by the parties. R. Doc. 561-2 at ¶ 5 (quoting *Id.*); R. Doc. 597-1 at ¶ 5.
[61] R. Doc. 429.
[62] R. Doc. 431.
[63] R. Doc. 1-10 at pp. 16-17.
[64] R. Doc. 109 at pp. 1-2.
[65] *Compare* Second Amended Complaint, R. Doc. 431 at pp. 2, 59-61 (list of injuries alleged by Plaintiffs, including Non-Allowed Injuries: difficulties breathing; coughing; burning eyes, ears, noses, and throats; and exacerbated symptoms related to previously diagnosed medical conditions including asthma, polymyostitis, chronic bronchitis, and COPD), *with* General Causation Order, R. Doc. 323 at pp. 42, 44, & 46 (list of Allowed Injuries).
[66] *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. Oct. 15, 2014), 171 So. 3d 851, 855; *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603, at p 3 (La. Feb. 20, 1995), 650 So. 2d 757, 759.

proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident."[67] "In toxic tort cases, proof of causation has two components, general and specific."[68] The issue of "general causation" is defined as "whether a substance is capable of causing a particular injury or condition in the general population," whereas the issue of "specific causation" is defined as "whether a substance caused a particular individual's injury."[69] "Evidence of specific causation is admissible only if there is evidence of general causation."[70]

In their Motion for Summary Judgment, Defendants seek to dismiss Plaintiffs' claims for the Non-Allowed Injuries in the *Addison* Action, arguing Plaintiffs cannot prove specific causation as a matter of law for those claims because they fall outside of the relevant time period or are injuries for which the Court did not find general causation.[71] Defendants claim it is "procedurally [] too late for Plaintiffs to reopen and try to establish general causation"[72]  for those claims, and thus seek to preclude Plaintiffs from "improperly relitigat[ing] issues of general causation" related to their claims for Non-Allowed Injuries, which were disposed by the Court's General Causation Order.[73]

---

[67] *Maranto*, 94-2603, at p. 3, 650 So. 2d at 759.

[68] *Aaron v. McGowan Working Partners*, 16-696 (La. App. 5 Cir. June 15, 2017), 223 So. 3d 714, 735 (citing *Pick v. Am. Med. Systems, Inc.*, 958 F. Supp. 1151, 1164 (E.D. La. 1997)); *Bradford v. CITGO Petroleum Corp.*, 2017-296, at p. 6 (La. App. 3 Cir. Jan. 10, 2018), 237 So. 3d 648, 660. *See also Burst v. Shell Oil Co.*, 14-109, 2015 WL 3952677, at *2 (E.D. La. June 29, 2015), *aff'd*, 650 F. App'x 170 (5th Cir. 2016) ("In a toxic tort suit, the plaintiff must present admissible expert testimony to establish general causation and specific causation."); *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 723 (5th Cir. 2009) ("A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation.").

[69] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).

[70] *Burst*, 2015 WL 3952677, at *2 (citing *Knight*, 482 F.3d at 351).

[71] *See* R. Doc. 561-1 at p. 3.

[72] *Id.* at p. 10. Defendants also argue Plaintiffs lack reliable expert testimony on general causation for the Non-Allowed Injuries, but because the Court finds the General Causation Order precludes a finding of general causation on Plaintiffs' Non-Allowed Injuries, the Court will refrain from analyzing the reliability of expert testimony on the issue.

[73] In their Motion for Summary Judgment, Defendants claim "Plaintiffs are attempting to improperly relitigate issues of general causation." *Id.* at p. 2.

In response, rather than identifying a genuine dispute as to any material fact, Plaintiffs urge the Court to limit the scope of its ruling on general causation.[74] Plaintiffs argue that summary judgment on "ongoing conditions" is improper because "reliable expert testimony exists to prove general causation" for all injuries,[75] and, specifically, for "injuries that continued after the relevant time period."[76] However, it is an undisputed fact that Plaintiffs in the *Addison* Action only seek damages for injury suffered during the relevant time period of July 1, 2017 to December 31, 2019.[77] Plaintiffs further request that the Court expressly limit any ruling on general causation to the Trial Plaintiffs because "a blanket ruling foreclosing all claims would be unfairly prejudicial" to the Plaintiffs whose cases will be tried at a later date.[78] Counsel for all Plaintiffs in the *Addison* Addison, not just the First *Addison* Trial Plaintiffs, and counsel for the class representatives in the Class Action consented to the Court serving as trier of fact on the issue of general causation for

---

[74] *See* R. Doc. 597.

[75] *Id.* at p. 2.

[76] *Id.* at p. 5.

[77] The undisputed fact that the *Addison* Plaintiffs only seek damages incurred within the relevant time period is further supported by the representations of Plaintiffs' counsel Eric Rowe to the Court, as recorded in the transcript of the general causation trial:

> The Court: [W]hat [is] the time period [] that they're asking for damages[?]
>
> [Eric] Rowe: . . . If they had asked us the question, are you asking for damages into 2020, we would have said no. We've only modeled the years 2017, 2018, and 2019.
>
> The Court: Okay. That was my understanding, too. So that is – you're correct on that. They're only asking for damages through 2019.

*See* Gen. Causation Tr., R. Doc. 229 at 756:6-22. Further, after the general causation trial, the Court requested via email that the Plaintiffs "clarify the exact time period for which they are requesting damages during 2017 to 2019 (month and date)." R. Doc. 561-6 at p. 2. In response, Plaintiffs' counsel in the Class Action, Jason Landry, confirmed that "Plaintiffs are seeking damages from July 1, 2017 through December 31, 2019 for Plaintiffs in the [Landfill's] surrounding areas on the West Bank (Waggaman, Avondale) and across the river (South Kenner, River Ridge, and Harahan)." *Id.*

[78] R. Doc. 597 at p. 2.

all claimants,[79] and do not dispute that the General Causation Order concluded the general causation phase of the litigation.[80]

Plaintiffs in the *Addison* Action must prove general causation as to each injury claimed.[81] As a matter of law, the Court's General Causation Order concluded that Plaintiffs met their burden of establishing general causation for only the Allowed Injuries.[82] The material underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw the conclusion that Plaintiffs could establish general causation on the Non-Allowed Injuries. Defendants are therefore entitled to summary judgment as a matter of law on Plaintiffs' claims in the *Addison* Action for the Non-Allowed Injuries.

Accordingly, in the *Addison* Action, judgment will be granted against Plaintiffs and in favor of the Defendants on all of the Plaintiffs' claims for Non-Allowed Injuries. At trial, Plaintiffs only may assert claims for the Allowed Injuries and seek recovery only for damages suffered during the relevant time period.

At the general causation trial, Plaintiffs made a proffer as to the qualifications and opinions of Plaintiffs' expert Susan Schiffman, Ph.D., concerning potential physical impacts of the Landfill emissions on the Plaintiffs.[83] At the pretrial conference in the First *Addison* Trial, Plaintiffs' counsel represented that they wish to preserve for appeal their objection to the Court's finding of no general causation on the Non-Allowed Injuries and the restriction of the recovery of damages to the relevant time period. Plaintiffs' counsel

---

[79] R. Doc. 202 at p. 8.
[80] R. Doc. 561-2 at ¶ 6; R. Doc. 597-1 at ¶ 6.
[81] *See Knight*, 482 F.3d at 351.
[82] R. Doc. 323 at pp. 44, 46.
[83] *See Addison* Plaintiffs' Offer of Proof, R. Doc. 291-1.

also notified the Court that they may seek to make a proffer at the First *Addison* Trial. The

Plaintiffs' objection is preserved.

## <u>CONCLUSION</u>

For the foregoing reasons;

**IT IS ORDERED** that Defendants' Motion for Summary Judgment in the

*Addison* Action is **GRANTED**.[84] Defendants are granted summary judgment on

Plaintiffs' claims for injuries not included in the Allowed Injuries or for damages as a

result of those Allowed Injuries outside the relevant time period of July 1, 2017 through

December 31, 2019.[85]

**New Orleans, Louisiana, this 3rd day of July, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[84] R. Doc. 561. Defendants request for oral argument is **DENIED**.
[85] *See supra* pp. 4-5.