UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | **NO. 19-11133, c/w 19-14512** |
| **V.** | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| **Defendants** | **JUDGE: Morgan**<br>**MAGISTRATE JUDGE: North** |
| *Applies to: Both Cases* | |

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
EXPERT TESTIMONY OF DR. BROBSON LUTZ

Pursuant to §VI.2 of the Thirteenth Case Management Order, Plaintiffs submit this Brief

in support of their motion to exclude the testimony of proposed defense expert, Dr. Brobson Lutz.

For the reasons stated herein, his testimony should be excluded in its entirety.  A copy of his Report

is attached as **Exhibit 1.**  Excerpts from his deposition are attached as **Exhibit 2.**

I.      INTRODUCTION.

Federal Rule of Evidence 702 ("Rule 702") permits an expert to testify in the form of an

opinion *if* (among other factors) "the expert's scientific, technical, or other specialized knowledge

will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a).

(emphasis added). Prior to admitting expert testimony, the court must make a threshold

determination of the admissibility of it. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S.

579, 597 (1993).

Daubert commands that expert testimony be relevant. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).   FRE Rule 401 provides that "evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Mr. Lutz' opinions and testimony do not bear upon any fact of consequence in this case.

Dr. Lutz's proposed testimony must be excluded in its entirety because Dr. Lutz has entirely missed the point of what this case is about.

This case is about exposure to malodors; i.e., the effect of the stench coming from the Jefferson Parish Landfill upon the lives of people in the community. As the Court ruled following the trial on General Causation, the reaction to an adverse odor "leads to symptoms caused by the odor itself." R.Doc. 323 at 29 (internal quotes and footnote omitted). The Court quoted from the findings of the Louisiana Department of Health in its report dated January 14, 2019: "The presence of persistent noxious odors themselves may result in discomfort, nausea and headache." R.Doc. 323 at 29-30.[1] The Court quoted and relied upon testimony of experts Dr. Pamela Dalton (for Defendants) and Dr. Susan Schiffman (for Plaintiffs), who explained the mechanism by which the reaction to odors occurs Id. The Court noted that Dr. Dalton "corroborated Dr. Schiffman's testimony about the way in which the olfactory nerve and trigeminal nerve generate the perception of odor." Id at 30.

The Court also found that "Effects from malodors occur at levels much lower than the level required to experience effects from toxic chemicals," id. 29, as did the Louisiana Department of Health. "Landfill odors are noticeable at low concentrations below the levels that cause toxic

---

[1] The Court incorrectly referred to this as a report from the LDEQ. R.Doc. 323 at 29.

effects from the chemical." Id. at 30. The Court stated that "Dr. Dalton also testified that malodors can cause direct effects at low levels of concentration, below toxic levels."

The findings of the Court, the testimony at the General Causation Trial, and the available literature all agree that there is a difference between the physical reaction to an odor and an injury resulting from exposure to the toxic effect of the chemical. Yet, as described below, Dr. Lutz paid no attention at all to this issue, had not reviewed the testimony or reports of Drs. Dalton and Schiffman, and had no knowledge at all about the trigeminal nerve and how it works. The failure of Dr. Lutz to consider that all of the symptoms complained of by Plaintiffs can be caused by exposure to odors, as opposed to the toxic effect of the chemical, renders his opinions inadmissible.

Moreover, Plaintiffs are not seeking damages in this case just because they had headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry. Such symptoms are common, and it is common knowledge that there may be multiple causes of them, including exposure odors, as this Court has already ruled. Instead, Plaintiffs are seeking damages because, over a period of two and one-half years, their lives were disrupted by the horrible stench of the Jefferson Parish Landfill. That disruption included alteration of their daily lives, which disruption included headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry. [2]

## II.    DR. LUTZ'S TESTIMONY IS NOT RELEVANT.

The two principal issues for trial are (1) did the Plaintiffs smell the odors from the Landfill, and (2) how did it affect them? Dr. Lutz's proposed testimony is not relevant to either issue.

---

[2] Defendants' strategy in this case has been to exaggerate the Plaintiffs' claims and then to attack the exaggerated claim. Dr. Lutz relies largely upon the opinions of Dr. Kind, a toxicologist who opines that the exposure levels in this case are insufficient to cause a toxic effect—even though Plaintiffs claims are not based upon the toxic effect of the chemical, but on the effects of the odors which occur at exposure levels lower by orders of magnitude.

Dr. Lutz freely concedes that he is NOT opining that the odors that affected the Plaintiffs were not a nuisance. (**Exhibit 2, Lutz Dep. at 33**.) ("I have no opinion as to whether it decreased quality of life or whatever.") Nor does he conclude that the Plaintiffs could not smell the odors from the Landfill. (**Id.** ("Q. But you're not saying that there weren't any odors? A. No sir.").) Instead, he argues that he could not find references to odors in any of the 41,000-plus pages of medical records that he reviewed, for time periods before, during and after the Relevant Time Period here. Therefore, he concludes, the odors could not have been bad enough to cause headaches, nausea, or any of the other adverse health effects suffered by the Plaintiffs.

For his purposes, Dr. Lutz defined "adverse health effect" as "a physical or mental damage that would have been sufficient enough to be documented in medical records" and "of the person would have sought attention for it more likely than not." (**Exhibit 2, Lutz Dep. at 34-35** (whatever the last part means).) He agreed that most people do not go to the doctor every time they have a headache. (**Id. at 38**.) The same is true with regard to each of the other common ailments, all of which are within the common knowledge and experience of ordinary people. Dr. Lutz agreed the over-the-counter medications are available. (**Id. at 38-39**.) And these would not be reflected in the medical records.

No special expertise is required to give the testimony that complaints about odors are not reflected in the medical records. But that fact does not prove or disprove that there were odors. Nor does it prove or disprove that the odors triggered headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry. These symptoms, when they result from odors, are transitory, meaning they go away when the odor goes away.

**A.      Lutz did not review the testimony or reports of Drs. Dalton and Schiffman.**

Dr. Lutz freely concedes that he has no knowledge at all about the mechanisms by which odors cause people to have headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry—the actual issues in this case.

During the course of his deposition, Dr. Lutz testified that he did not review the expert reports or testimony of Drs. Dalton and Schiffman and did not even know who they were. (**Exhibit 2, Lutz Dep. at 16;** *see id. at* **74-75, 243-244**.) Their reports were not provided to him. (**Id. at 16-17**.) He could not explain the mechanism by which the human body reacted to odors, and when asked what he knew about the trigeminal nerve, he responded; "I have read in Dr. DeLorenzo's report about sensitization of the trigeminal nerve, but that's nothing I know anything about that. They didn't teach me that in medical school 50 years ago." (**Id. at 74**.)

Nevertheless, for what he called "nuisance odors," Dr. Lutz agreed that bad odors <u>could</u> cause the symptoms complained of:

> Q. … [D]o you understand that there are reactions to odors?
> A.  Yes.
> Q.  And there are reactions to odors can include things like headache and worry and stress and anxiety and nausea, all that?
> A.  Yes.
> Q. Just from smelling it.
> A.  All dependent on concentration and duration. Yes, sir.

(**Id. at 73-74**.)

> Q.  And so when you smell something that's, you know, that causes that kind of a reaction, it tells you don't eat this, don't go in there, you know, things like that, right?
> > MR. MIMS: Object to form.
> > THE WITNESS: Well, not always. I mean, there's some foods that have terrible odors that people like. There's some kind of Swedish canned food that's supposed to be the worst smell of food in the world. But if you were raised on it, even though it smells bad, you like the taste, you eat it.
> > BY MR. ROWE:
> Q.  Right, some people like it and other people it makes them sick, right?

A.  May make them nauseated, yes.

Q.  Yeah. And that's something that comes from the smell even though there's no real health effect. You understand that, right?

MR. MIMS: Object to form.

THE WITNESS: Yes. **It's a nuisance smell**.

BY MR. ROWE:

Q.  Right. And so and that kind of nausea sometimes can trigger vomiting too, right?

A.  Yes, sir.

Q.  And if you have an adverse or the smells is effecting [sic] you adversely, it can cause you to lose your appetite too, right?

A.  Yes, sir.

Q.  It can wake you up at night sometimes if you smell a bad smell?

A.  Yes, sir.

Q.  Bad smells can make you feel dizzy sometimes?

A.  I guess anything's possible. I haven't had patients come to me and say I smelled something and I got dizzy. But I guess anything's possible.

Q.  What about fatigue, is that possible too?

A.  From nausea?

Q.  Well, you know, from smelling a bad smell. If it happens, you know, lots of times.

A.  I've never had a patient with that complaint.

Q.  What about anxiety and worry, if you're smelling a bad smell and you don't know where it's coming from, you're anxious about that, can that cause anxiety?

MR. MIMS: Object to form.

THE WITNESS: Yes.

(**Id. at 44-46**.) Dr. Lutz explained that he was not asked to address whether there existed nuisance odors. (**Id. at 30** (Where [sic] they nuisance odors without health conditions? I didn't address, I wasn't asked to address that.").)

Dr. Lutz testified that he agreed with the statements in Department of Health report that "noxious odors from landfills are detected by human nose at levels well below those that would cause health effects" **Exhibit 2, Lutz Dep. at 66-67**, and that "the odor threshold of many sulfur-containing compounds is well below the level that would cause toxic effects." (**Id. at 67**.)

Dr. Lutz conceded that he could not say that in every case the headache nausea or symptom was more likely caused by something other than the odors. (**Exhibit 2, Lutz Dep. at 95** ("I can't say that").) Nevertheless, when he opined that a differential diagnosis was required to determine

the cause of each of the Plaintiffs' symptoms, exposure to odors was not among the list of possible causes to be considered.  (**Exhibit 1, Lutz Report at 5-6**.)

### III.    DR. LUTZ'S PROPOSED TESTIMONY WILL NOT ASSIST THE JURY AND MUST BE EXCLUDED.

Dr. Lutz's opinions will not assist the jury in this case.

#### A.    If the expert's proposed testimony consists of arguments or observations that can be made by counsel, then the proposed testimony should be excluded.

If the expert's proposed testimony consists of arguments or observations that can be made by counsel, then the expert's "scientific, technical, or other specialized knowledge" adds nothing the equation, then the proposed testimony should be excluded. *See*, *e.g.*, *Pugh v. LaQuinta Motor Inns, Inc.*, No. CIV.A. 94-510, 1996 WL 44170, at *2 (E.D. La. Feb. 2, 1996) ("Mr. Trapolin's observations regarding the management's installation and placement of a grab bar and warning sticker can just as easily be made by jurors who have seen pictures of the bathroom at issue. These portions of the expert report do not bring to the jury more than the lawyers can offer in argument.")

In *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. MDL 07-1873, 2009 WL 2169224, at *3 (E.D. La. July 15, 2009), the court excluded testimony that "consists of a cumulative appreciation of other experts' testimony-something the jury can and will do, with the benefit of counsel's arguments to such extent." And in *McNabb v. Graham Gulf, Inc.*, No. CIV.A. 03-2904, 2005 WL 1038024, at *2 (E.D. La. Apr. 27, 2005), the court explained, "Why the plaintiff may have misperceived what happened during an accident which occurred in the matter of seconds is certainly an issue to which members of the jury can relate, and can understand, without expert testimony which clearly does not offer "more than the lawyers can offer in argument."

#### B.    Experts are not permitted to testify on issues of law.

In like measure, "an expert may never render conclusions of law." *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009). *See Snap-Drape, Inc. v. Commissioner of Internal*

*Revnue*, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that [Rule 702] does not allow an expert to render conclusions of law.").

This Court has repeatedly ruled that expert testimony that offers a legal opinion is inadmissible. *Marks v. Smith*, No. CV 15-5454, 2017 WL 988787, at *3 note 39 (E.D. La. Mar. 14, 2017) (Morgan, J.) *citing Estate of Sowell v. United States of America*, 198 F.3d 169, 171 (5th Cir. 1999) and *Askanase v. Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997); *Ratliff v. Seadrill Americas, Inc.*, No. CV 17-11581, 2018 WL 6523479, at *2 (E.D. La. Dec. 12, 2018) (Morgan, J.) (an expert witness "is not permitted to offer conclusions of law"). *See Howard v. Offshore Liftboats, LLC*, No. CV 13-4811, 2016 WL 232238, at *3 (E.D. La. Jan. 19, 2016) (Morgan, J.) ("Whether the Plaintiffs contributed to their injuries and, as a result, were contributorily negligent is a legal issue which must be decided by the jury."); *Spikes v. McVea*, No. CV 17-8164, 2018 WL 6448846, at *2 (E.D. La. Dec. 10, 2018) (Morgan, J.) ("Dr. Ochella's opinion that certain conduct constituted deliberate indifference is an inadmissible legal conclusion."); *Fick v. Exxon Mobil Corp.*, No. CV 13-6608, 2017 WL 11673924, at *3 (E.D. La. Mar. 14, 2017) (Morgan, J.) ("Mr. Davidson will not be allowed to testify that Exxon agreed to remove the remaining flowlines in the field. This is a legal opinion, which is not allowed."); *Versai Mgmt. Corp. v. Landmark Am. Ins. Corp.*, No. CIV.A. 11-2139, 2013 WL 681902, at *2 (E.D. La. Feb. 22, 2013) (Morgan, J.) ("Whether the Policy is a valued policy within the meaning of the VPL is a question of law for the Court, not a question of fact for the jury.").

When an expert who critiques the work of another expert is actually rendering a legal opinion, the testimony is inadmissible. *In re Heparin Prod. Liab. Litig.*, 803 F. Supp. 2d 712, 751 (N.D. Ohio 2011), *aff'd sub nom. Rodrigues v. Baxter Healthcare Corp.*, 567 F. App'x 359 (6th

Cir. 2014) ("Although an expert may critique the methods of another expert, this opinion strays into a legal conclusion. 'An expert opinion on a question of law is inadmissible.'").

These rules are imposed because an expert professing to testify regarding the governing law invades "the province of the court to determine the applicable law and to instruct the jury as to that law." *Willette v. Finn*, 778 F. Supp. 10, 11 (E.D. La. 1991). In addition, "admitting expert legal testimony would pose the risk that jurors would confuse the Court's instructions with the views put forward by the parties' experts." *Id*. As a result, whatever value testimony on legal issues might have (which is usually none), that value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," requiring its exclusion under FRE 403, and such testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue," requiring its exclusion under FRE 702.[3]  *Cf. David v. Signal Int'l, LLC*, No. CV 13-6219, 2015 WL 14018914, at *2 (E.D. La. Jan. 11, 2015) ("the Court finds testimony regarding the language and applicability of immigration statutes and regulations and whether conduct generally would be consistent or inconsistent with these laws does not amount to a legal conclusion in this case and will be helpful to the jury") (Morgan, J.).

### C.    Experts may not testify as to matters of common knowledge.

Expert testimony is inadmissible "as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Conday v. Offshore Drilling Co*., No. CV 07-0882, 2010 WL 11575031, at *2 (W.D. La. Jan. 5, 2010), *citing Scott v. Sears, Roebuck & Co*., 789 F.2d 1052, 1055 (4th Cir. 1986). In such

---

[3] As noted in the Advisory Committee Notes to FRE 704, under which opinions by experts on the ultimate issue in the case are not automatically objectionable, FRE Rules 403 and 702 "stand ready to exclude opinions phrased in terms of inadequately explored legal criteria." F.R.Evid. 704, Advisory Committee Notes 1972.

situations, courts recognize a risk that evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense. *Id*. Where the issue is one of common knowledge, expert opinion testimony can cause confusion. *Id*. at *5 ("Imposing expert opinion testimony on the common knowledge of the jury on this issue would have no beneficial effect, and would merely cause confusion."). The testimony must aid the trier of fact in making a decision without substituting the expert's judgment for that of the trier of fact. *Richardson v. SEACOR Lifeboats, LLC*, No. CIV.A. 14-1712, 2015 WL 2193907, at *3 (E.D. La. May 11, 2015) (Morgan, J.).

In *Lee v. Offshore Logistical & Transp., LLC*, this Court ruled that expert testimony does not assist the trier of fact if the court finds "the jury adeptly can assess the situation using only their common experience and knowledge." No. CV 15-2528, 2017 WL 6501151, at *3 (E.D. La. Dec. 19, 2017) (cleaned up) *citing Peters v. Fiver Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990). *See also Matherne v. MISR Shipping Co*., No. CIV. A. 88-2261, 1991 WL 99426, at *1 (E.D. La. May 31, 1991) ("Scientific, technical or specialized testimony would not assist the jury in reaching a decision on the vessel's liability in a routine "fall on a vessel" case such as this one and would offer little more than argument.); *Araujo v. Treasure Chest Casino*, No. CIV A. 97-3043, 1999 WL 219771, at *2 (E.D. La. Apr. 14, 1999) (finding opinions "unhelpful because they relate to issues within the common knowledge, experience, and understanding of the average lay juror" and the experts' testimony "would bring to the jury no more than the lawyers can offer in argument and through presentation of fact witnesses").

Dr. Lutz seeks to opine that something other than odors was the cause of Plaintiffs' symptoms.  However, there is no dispute that headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry occur frequently in the general population.  The

facts that: (a) the symptoms complained of by Plaintiffs occur, even frequently, in the general population; and (b) lots of things can cause these symptoms are matters of common knowledge and the jury does not need an expert to tell them that.  Further, the jury will be entirely able to judge whether the frequency of those effects complained of by the Plaintiffs, as compared to the jury's own experience in the general population, are more likely than not to have been the result of the odors from the JPLF, a point which Dr. Lutz ignores.

Indeed, Louisiana courts have held that physical and emotional symptoms like "dehydration, overheating, exhaustion, mental anguish, fear, stress, anxiety, and depression" are "within the common knowledge of an average lay person or trial court to understand," such that medical expert testimony is not required to establish causation for temporary pain and suffering involving such symptoms." *Ainsworth v. Am. Home Assurance Co*., 2017-0778 (La. App. 4 Cir. 2/21/18), 239 So. 3d 359, 365–66, writ denied, 2018-0582 (La. 6/1/18), 243 So. 3d 1061. *See Jones v. Capitol Enterprises, In*c., 2011-0956 (La. App. 4 Cir. 5/9/12), 89 So. 3d 474, 506-7, writ denied, 2012-1634 (La. 10/26/12), 99 So. 3d 651 (medical testimony not required regarding symptoms following exposure to silica from sandblasting).

In *Guidry v. Dow Chem. Co*., No. CV 19-12233, 2021 WL 4460505, at *2 (E.D. La. Sept. 29, 2021), the court explained that "The complaints presented in this case – which include "eyes, nose, or throat irritation, coughing, choking or gagging, or nausea, or headaches, dizziness, trouble breathing, or other respiratory issues," according to the Plaintiffs – are all forms of temporary pain and suffering." In *Stephens v. BP Expl. & Prod. Inc*., No. CV 17-4294, 2022 WL 1642136, at *4 (E.D. La. May 24, 2022), the court explained,

> The remaining medical conditions are nasal congestion, nasal discharge, sore throat, nausea, eye burning, irritation, shortness of breath, cough, wheezing, headaches, dizziness, depression, and anxiety. The Court finds that these types of transient or temporary medical conditions are likely within the common knowledge

of lay people, much like the irritant symptoms in Guidry and the dehydration, overheating, exhaustion, mental anguish, fear, stress, anxiety, and depression that Louisiana courts have found within the common knowledge of lay people. Therefore, Plaintiff does not require an expert on specific causation for these particular medical conditions.

*See also Brown v. BP Expl. & Prod., Inc*., No. CV 17-3516, 2023 WL 2526974, at \*3 (E.D. La. Mar. 15, 2023) ("headache and sore throat are likely within the knowledge of lay people"); *Turner v. BP Expl. & Prod. Inc*., No. CV 17-4210, 2022 WL 1642142, at \*4 (E.D. La. May 24, 2022) (same as Stephens); *Wallace on behalf of Wallace v. BP Expl. & Prod. Inc*., No. CV 13-1039, 2022 WL 1642166, at \*4 (E.D. La. May 24, 2022) (same as Stephens).

Dr. Lutz's arguments that the symptoms complained of by Plaintiffs are common in the general population and can be the result of multiple cause are matters of common knowledge not a proper subject of expert testimony.

Dr. Lutz is <u>not</u> opining as to the actual specific cause of any specific instance of any specific symptom of any specific Plaintiff.

## IV.   THE ARGUMENT THAT PLAINTIFFS ADDED SYMPTOMS AFTER THE FACT DOES NOT REQUIRE SPECIALIZED KNOWLEDGE.

Dr. Lutz implies that Plaintiffs claims are made up and imaginary because (he says) the list of symptoms changed after the ruling on general causation (although the ruling was based on claims asserted by Plaintiffs before the ruling). However, it takes no special expertise or training to compare answers provided in the plaintiff fact sheets to deposition answers. The lawyers can make that argument with no help from the experts. Permitting expert testimony on that issue is improper because it supplants the role of the jury, and experts are not permitted to testify on issues of credibility. *Nale v. Finley*, 505 F. Supp. 3d 635, 645 (W.D. La. 2020) ("As a general rule, an expert may not opine on another witness's credibility because this testimony does not help the trier of fact, who can make its own credibility determinations."); *Schmidt v. MTD Prod., Inc*., No.

CIV.A. 04-3412, 2006 WL 5127539, at *3 (E.D. La. July 5, 2006) ("Plamper's opinions about the veracity of Plaintiff's testimony are not appropriate expert testimony and should, therefore, be excluded.").

Dr. Lutz agreed.  He said he found it "amazing" that Plaintiffs' reported symptoms changed after the Court's ruling in General Causation.  (**Exhibit 2, Lutz Dep. at 92-93**.)  When he was asked "do you have to be a doctor with your training in order to reach that conclusion?", he replied, "I think that takes more common sense than medical training to reach that conclusion.  (**Id. at 93**.)

Dr. Lutz opinion on this issue must be excluded.

## V.    DR. LUTZ' OPINIONS RE INDIVIDUAL PLAINTIFFS DO NOT ASSIST THE JURY.

Dr. Lutz did not personally examine any of the individual Trial Plaintiffs.  (**Exhibit 2, Lutz Dep. at 81-82**.)  His opinions are based upon his review of the medical records and the independent medical examinations performed by other doctors hired by the Defendants. (**Id**.)  He asked no follow-up questions and did not even undertake to ask the Plaintiffs how they associated any medical issues with the odors.[4]  (**Id. at 82** ("If I had thought that would have made a difference, I would have a asked to examine them.:).)   As a result, although he purports to have done a differential diagnosis, he excluded from the start some of the most important information.  Dr. Lutz agreed that "it's important to know as many facts as you can" and "the more information you have the better."  (**Exhibit 2, Lutz Dep. at 98-98**.)

---

[4] Dr. Lutz says that he reviewed the Plaintiff Fact Sheets, but the question of how the Plaintiffs associated the symptoms with the odors or believed the symptoms were caused by the odors was not asked.  Such information could include, for example, that they feel sick or get a headache when they smell the odors and feel better when the odors go away.

Notably, for at least nine of the Trial Plaintiffs, the doctors conducting the IME were unable

[5] **Exhibit 3, Lutz Dep. Ex. 4, Rabon IME of** REDACTED, ("I cannot determine with any degree of medical certainty whether or not her symptoms were caused by an odor exposure"); **Exhibit 4, Lutz Dep. Ex. 5, Rabon IME of minor** REDACTED **at 3** ("I cannot determine with any degree of medical certainty whether or not her symptoms were caused by an odor exposure"); **Exhibit 5, Lutz Dep. Ex. 6, Rabon IME of minor** REDACTED **at 3** ("I cannot determine with any degree of medical certainty whether or not his symptoms were caused by an odor exposure"); **Exhibit 6, Lutz Dep. Ex. 8, Rabon IME of** REDACTED **at 4** ("I cannot determine with any degree of medical certainty whether or not her symptoms were caused by an odor exposure" and "I cannot rule out any particular stressor as a contributing factor to her anxiety"); **Exhibit 7, Lutz Dep. Ex. 9, Rabon IME of** REDACTED "I cannot say with any degree of medical certainty that her symptoms were caused by odors"); **Exhibit 8, Lutz Dep. Ex. 11** REDACTED **at 6** ("I cannot determine with any degree of medical certainty whether or not her symptoms were caused by an odor exposure");[6] **Exhibit 9, Lutz Dep. Ex. 12, Rabon IME of** REDACTED ("I cannot say with any degree of reasonable medical certainty that his symptoms were caused by odors" and "Given the multifactorial nature of these illnesses, I cannot completely rule out any particular stressor as a contributing factor") **Exhibit 10, Lutz Dep. Ex 13, Santos IME of** REDACTED **at 5** ("I cannot determine with any degree of reasonable medical certainty that the odor caused his complaints, but I also cannot rule it out"); **Exhibit 11, Lutz Dep. Ex. 14,**

---

[5] Because the IME Reports contain private and detailed medical information, the have been designated as "Confidential Outside Counsel Only' under the Agreed Protective Order in this case (R.Doc 79), and have been submitted separately and under seal.

[6] Dr. Rabon also noted that "Odors can certainly exacerbate headache syndromes." **Exhibit 8, Lutz Dep. Ex. 11 at 6**. Dr. Santos stated that "Tension type headaches can have many triggers, including odors."

**Rabon IME of** REDACTED ("I cannot say with any degree of medical certainty that his symptoms were caused by odors or any underlying condition was or was not not [sic]exacerbated by noxious odors").  *See also* **Exhibit 12, Lutz Dep. Ex. 16, Santos IME of** REDACTED **at 6** REDACTED ("If it is determined that her headaches are caused by the odors, her headaches would be more consistent with and exacerbation of a chronic issue rather than a de novo diagnosis because of odors").)

Because these doctors could not reach any conclusion, their reports could not permit Dr. Lutz to reach any conclusion either.  *Kirschner v. Broadhead*, 671 F.2d 1034, 1039 (7th Cir. 1982) (the mere possibility of a causal relationship, without more, was insufficient to qualify as an admissible expert opinion).  The existence of sufficient facts and a reliable methodology is in all instances mandatory.  *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).  And the Fifth Circuit has long held that that "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."  *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 537 (5th Cir. 2013).

Similarly, exaggerating the Plaintiffs' complaints, Dr. Lutz seeks to refute claims that Plaintiffs are not making. While a number of Plaintiffs in this case (as well as others in the community) have complained that they were awakened by the stench, none of the Plaintiffs are contending that the odors caused a "sleep disorder."  As a result, opinions regarding sleep disorders are entirely irrelevant to this case.  (*See* **Exhibit 13, Lutz Dep. Ex. 15 Santos IME of** REDACTED **at 6** ("insomnia is considered a disorder only when it causes significant amount of distress or anxiety").)

Similarly, while many of the Plaintiffs complained of anxiety and worry, none of the Plaintiffs are contending that the offensive odors from the Landfill caused them to suffer from an

"anxiety disorder."  As a result, opinions regarding "anxiety disorder" are irrelevant to this case. (*See* **Exhibit 1, Lutz Report at 14** ("It is my opinion, based on my experience, expertise, and review of the relevant records, that REDACTED did not in the past, and does not today, meet criteria for referral to a mental health specialist for alleged mental health injuries related to landfill odors."); **Exhibit 12, Lutz Dep. Ex. 16, Santos IME of   REDACTED   at 6** ("Based on the historical nature of the complaints, limits in the patient's recollection, and lack of associated medical report, I would be unable to diagnose her with any sort of anxiety disorder based on the evaluation in the clinic today.").)

For 12 of the 13 Trial Plaintiffs, Dr. Lutz concludes in identical language that "the medical records do not support the claim that [the Plaintiff] suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Period.[7]  But so what?  There are lots of events in life

---

[7] REDACTED – **Exhibit 1, Lutz Report at 14** ("REDACTED medical records do not support the claim that she suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Period."
REDACTE – **Exhibit 1, Lutz Report at 17** ("REDACTED medical records do not support the claim that she suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Peri-od").
REDACTE – **Exhibit 1, Lutz Report at 21** (REDACTED medical records do not support the claim that he suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Peri-od.").
REDACTED –**Exhibit 1, Lutz Report at 24** (" REDACTED  medical records do not support the claim that he suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Period.")
REDACTED  – **Exhibit 1, Lutz Report at 29** (" REDACTED  medical records do not support the claim that she suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Period.")
REDACTED – **Exhibit 1, Lutz Report at 33** ("REDACTED medical records do not support the claim that she suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Peri-od.")
REDACTED  - **Exhibit 1, Lutz Report at 43** (" REDACTED  medical records do not support the claim that she suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Period.")
REDACTED – **Exhibit 1, Lutz Report at 46** ("REDACTED medical records do not support the claim that he suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Peri-od..")

that do <u>not</u> support the Plaintiffs claims in this case and unless there is some contention that the events do support the claims, the fact they do not is not relevant. Plaintiffs are not offering medical records as evidence of the disruption of their lives.

**VI.   CONCLUSION.**

At the end of the day, Dr. Lutz's opinions boil down to a simple proposition—the medical records do not mention odors. That fact does not require expert testimony. Inferences to be drawn from the fact that the medical records do not mention odors, if any, are all arguments that can be made by counsel in this case.

It is not disputed that headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry are all common ailments that can have different causes. Because these are issues of common knowledge, the jury does not need Dr. Lutz to explain that.

Dr. Lutz's opinions will not help the trier of fact to understand the evidence or to determine a fact in issue. Therefore, the opinions are not admissible under FRE 702 should be excluded.

Respectfully submitted, this 6th day June, 2024.

_____/s/ Eric C. Rowe_____
C. Allen Foster (Admitted Pro Hac Vice)

---

REDACTED – **Exhibit 1, Lutz Report at 53** ("REDACTED medical records do not support the claim that he suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Period.")

REDACTED – **Exhibit 1, Lutz Report at 55-56** ("His medical records do not support the claim that he suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Period.")

REDACTED – **Exhibit 1, Lutz Report at 59** ("his medical records do not support the claim that he suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Period.")

REDACTED - **Exhibit 1, Lutz Report at 62** ("her medical records do not support the claim that she suffered injuries caused by exposure to hydrogen sulfide during the Relevant Time Period.")

Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

Harry S. Johnson, (Admitted Pro Hac Vice)
James R. Jeffcoat (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636
(410) 347-8700
hjohnson@whitefordlaw.com
jjeffcoat@whitefordlaw.com

FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com
eliza@fcjlaw.com

*Counsel For Addison Plaintiffs*