UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br><br>  Plaintiffs<br><br>V.<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br><br>  Defendants<br><br>*Applies to: Both Cases* | CIVIL ACTION<br><br>NO. 19-11133, c/w 19-14512<br><br>SECTION: "E" (5)<br><br><br>JUDGE: Morgan<br>MAGISTRATE JUDGE: North |

**PLAINTIFFS' OPPOSITION TO APTIM CORP.'S MOTION TO FIX
TRIAL TIME, OR IN THE ALTERNATIVE, TO CONTINUE THE TRIAL**

Plaintiffs oppose Aptim Corp.'s Motion To Fix Trial Time, Or In The Alternative, To Continue The Trial. (R.Doc. 637).

**I.  FACTS AND INTRODUCTION.**

The Thirteenth Case Management Order in this case, entered on February 15, 2024, provides that "Trial will commence on Monday, August 12, 2024, and is expected to last fifteen business days." R.Doc. 498, page 9, § 7. The fifteenth business day is Friday, August 30, 2024.

At the pretrial conference on July 1, 2024, the Court advised the parties that because court would not be held on August 22 and 23, the fifteen-day period would extend into the next week, the first week of September. The Court further allowed two additional trial days in the first week of September.

In response, Aptim has moved to modify the Case Management Order to shorten the length of the trial from 15 days to 13 days, so that the trial could be completed by August 30, 2024, or, in the alternative, to continue the trial altogether to some future date. This relief is necessary, Aptim

says, because Aptim's "lead trial counsel" had (on December 31, 2023) purchased non-refundable airline tickets to fly to Spain on Saturday, August 31, 2024.

Aptim forgets, however, that the 13th CMO does not provide a specific <u>end</u> date for the trial. Nor could it. The upcoming trial is a jury trial. Jury deliberations come after the closing arguments and the final instructions to the jury that occur on the last day of trial. Neither the Parties nor the Court can control or dictate the length of the jury deliberations. If the case was given to the jury on Friday, August 30, 2024, then it has always been entirely possible that jury deliberations could continue into the following week. In addition, any post-verdict motions would not occur until after the verdict was rendered. As a result, despite the statement in the CMO that the trial was "expected" to last fifteen business days, the CMO provided no guarantee that all of the trial activities would actually be done by the close of business on August 30, 2024.

These facts were known, or should have been known, to Aptim on January 31, 2024 (R.Doc. 495, Minute Entry setting the August 12 trial date) and February 15, 2024, the date the 13th CMO was entered. Yet Aptim raised no argument on either date (or on any date between then and July 1, 2024) that its "lead trial counsel" was planning to leave the country on August 31, 2024, and might not actually be present when the trial finally concluded.

These facts, along with the prejudice to the Plaintiffs, require denial of Aptim's Motion.

II.  **STANDARD.**

Federal Rule of Civil Procedure 16(b) allows scheduling orders to "be modified only for good cause and with the judge's consent." F.R.Civ.P, Rule 16(b)(4). *Disedare v. Brumfield*, No. CV 22-2680, 2024 WL 1514195, at *2 (E.D. La. Apr. 8, 2024) (Morgan, J.). Good cause requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Soule v. RSC Equip. Rental, Inc.*, No. CIV.A. 11-2022, 2012 WL 2579319,

at *1 (E.D. La. July 3, 2012) (Morgan, J.), *citing S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir.2003).

Aptim's Memorandum does not mention "good cause" (or any other standard) and Aptim has not established good cause.

**III.   ARGUMENT.**

Aptim's Motion demonstrates concisely why Aptim is and remains a Defendant in this case. Hired by Jefferson Parish as an expert in the field to operate and maintain the gas collection system at the Jefferson Parish Landfill, Aptim sought to discharge the obligations of its contract by using a single employee, who worked at the site only part-time. Despite its obligation to identify and perform needed repairs, and to remove leachate that accumulated in the gas extraction wells so that they could actually extract gas, Aptim could not have cared less about its responsibilities. Placing its personal interests ahead of its obligation to perform the work it was supposed to do, Aptim refused to devote adequate resources to its work and adopted a Band-Aid approach to maintenance. This led to operational failures that contributed to the overall failure of the gas collection system and the resulting stench throughout the community.

The litigation has been no different. Aptim complains about being a Defendant, and yet has done nothing towards resolving the case against it short of trial, and Aptim done nothing to assist in narrowing the issues for trial. Instead, Aptim hitched its wagon to the Waste Connections Defendants, and has been a full-throated participant in the collective defense effort to litigate (and re-litigate) every possible issue. These include the defense effort to re-litigate general causation— an issue that directly affects the number of witnesses, the amount of evidence, and the projected length of the upcoming trial—an effort to which Aptim now asks the Court to shorten Plaintiffs' ability to respond.

3

As demonstrated by Waste Connections' response to Aptim's Motion (R.Doc. 639). Aptim's current Motion departs from the defense's party line about what and was and was not decided in the general causation phase. But that departure comes too late and only begs the question as to what Aptim's real position is. After Plaintiffs moved to exclude expert testimony on issues litigated and decided in the general causation phase (R.Doc. 554), Aptim was a signatory to the Joint Response. R.Doc. 598. Most of the defense experts who were tendered to challenge the Court's decisions on general causation were co-designated by Aptim. R.Doc. 420 (Aptim expert designation of Dr. John Kind, Matthew Stutz, and Dr. Paolo Zannetti); R.Doc. 421 (Aptim designation of Dr. Brobson Lutz).[1]

After the Court issued its Findings and Conclusions on General Causation (R.Doc. 323), Aptim joined in the motion to certify that order for immediate appeal (R.Doc. 324), the motion to adopt Defendants' proposed case management order (R.Doc. 330), and the motion to bifurcate trial (R.Doc. 338). Aptim also participated in the petition to the Fifth Circuit for a writ of mandamus, and the motion in the Fifth Circuit to stay all proceedings in the case, and to postpone all trials of *Addison* Plaintiffs for the indefinite future.  All of these filings, and others, sent the message that the Defendants, including Aptim, intended to relitigate the Court's Findings and Conclusions on General Causation—reneging upon their earlier agreement that the decision on general causation would assist in narrowing the issues for trial.

---

[1] These experts were also designated by Waste Connections (R.Docs. 418 and 423) and the Parish (R.Docs. 419 and 422). There can be no question that this expert testimony was offered as part an effort to re-litigate the entirety of the Court's ruling on general causation. *See, e.g.*, R.Doc. 554-3 at page 13 of 163 (for example, Kind March 8, 2024, Report, opinion 2, "There is insufficient scientific basis for the trial Plaintiffs' claims that airborne exposure to 5 ppb hydrogen sulfide for 30 minutes is capable of causing their claimed nuisance health effects.").

When the trial date was moved from August 5 to August 12, Aptim joined in that request. Aptim also joined in the motion to depose the Gremillion children, which resulted in two additional witnesses being called at trial. R.Doc. 432. Absent this demand from the Defendants, the Gremillion children would not have been called as witnesses at trial. Nevertheless, despite having known since January of the overlap of the trial schedule with the travel plans of its "lead trial counsel," Aptim waited for months to raise it, and only did so at the pretrial conference.

Now Aptim seeks to shorten the trial, or continue it altogether, ostensibly to suit the personal needs of its "lead trial counsel." But Aptim's "lead trial counsel" is deserving of no special treatment, and Aptim's disregard of the competing interests of the other parties should not be rewarded. All of the attorneys in this case have families, and all of them (for the Plaintiffs at least) have had to forego or adjust vacation time and family time as a result of the demands of this case. Having waited for months to raise the issue, Aptim cannot show good cause.

Aptim's request to shorten the trial to 13 trial days does not even solve the problem for Aptim's "lead trial counsel" because jury deliberations and post verdict motions could still extend into the following week. Moreover, such a result is unduly prejudicial to the Plaintiffs, as Aptim contends the Plaintiffs should have less time to address issues Aptim has sought to make more complex. As a result, the only real relief Aptim is seeking is an indefinite continuance. Good cause does not exist for that, either.

Plaintiffs have long been wary of accepting representations of defense counsel at face value and the current motion is no different. As the Court will recall, prior to the general causation trial, Aptim requested a similar accommodation on the trail schedule so that its "lead trial counsel" could attend a different trial that overlapped part of the general causation trial. The Court granted the request, which resulted in the general causation trial being split into two parts, and which increased

5

the expenses of all of the other parties. Despite that accommodation, Aptim's "lead trial counsel" did not show up for the general causation trial at all.

If Aptim seeks to avoid the trial so that its "lead trial counsel" can take his trip to Spain, then it is well within Aptim's power to resolve this matter prior to trial. To date, however, Aptim has chosen to proceed to trial. It must live with that choice.

Otherwise, Aptim had made no showing that it has been diligent and cannot meet the trial deadlines despite that diligence. Good cause has not been shown.

The Motion should be denied.

Respectfully submitted, this 5th day of July, 2024.

/s/ S. Eliza James
FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com
eliza@fcjlaw.com

/s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

Harry S. Johnson, (Admitted Pro Hac Vice)

        James R. Jeffcoat (Admitted Pro Hac Vice)
        WHITEFORD, TAYLOR & PRESTON L.L.P.
        Seven Saint Paul Street
        Baltimore, Maryland 21202-1636
        (410) 347-8700
        hjohnson@whitefordlaw.com
        jjeffcoat@whitefordlaw.com

        *Counsel For Addison Plaintiffs*