UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK E. ADDISON, SR., ET AL.,**     **Plaintiffs** | **CIVIL DOCKET** |
| **VERSUS** | **NO.  19-11133**     **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**     **Defendants** | **SECTION: "E" (5)** |

*Applies to: Both Cases*

<u>**ORDER AND REASONS**</u>

Before the Court are two contested Motions in Limine filed by Plaintiffs[1] and Defendant Jefferson Parish[2] (collectively, the "Movants"), both seeking to exclude testimony of Ali Hashimi, P.E., a purported expert in landfill design, engineering, management, and operations,[3] retained by Louisiana Regional Landfill Company ("LRLC"),[4] Waste Connections Bayou, Inc.,[5] and Waste Connections US, Inc. (collectively, the "Waste Connections Defendants"). The Waste Connections Defendants filed memoranda in opposition.[6] The Movants filed reply memoranda in support of their respective Motions in Limine.[7]

---

[1] R. Doc. 573.
[2] R. Doc. 544.
[3] Waste Connections Defendants' Expert Witness List, R. Doc. 418 at p. 4.
[4] LRLC is formerly known as IESI LA Landfill Corporation.
[5] Waste Connections Bayou, Inc. is formerly known as Progressive Waste Solutions of LA, Inc.
[6] R. Doc. 593 (opposing Plaintiffs' motion); R. Doc. 585 (opposing Jefferson Parish's motion). As exhibits to their oppositions, the Waste Connections Defendants attached an affidavit of Mr. Hashimi, which "supplements his April 4, 2024 report and does not offer any new opinions." R. Doc. 585 at p. 14 (citing R. Doc. 585-3); R. Doc. 593-3 at p. 3. The Court declines to decide whether Mr. Hashimi's affidavit is a permissible supplement to his expert report under Rule 26(e), as even if so, it would not change the result.
[7] R. Doc. 609 (Plaintiffs' reply); R. Doc. 629 (Jefferson Parish's reply).

## BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill in Waggaman, Louisiana (the "Landfill"), and the resulting odors emitted from the Landfill between July 1, 2017, and December 31, 2019 (the "relevant time period"). Plaintiffs, who are Jefferson Parish residents, filed several individual lawsuits that were consolidated into a mass action, *Addison v. Louisiana Regional Landfill Co.*, which contains over 500 individual Plaintiffs.[8] Plaintiffs assert negligence and nuisance claims under Louisiana state law[9] against Defendants: Jefferson Parish, which owns and contracts with others to operate the Landfill; Aptim Corporation, which managed the gas and leachate collection systems of the Landfill from July 2017 to May 2019; and the Waste Connections Defendants, which operated the Landfill from May 2013 to December 2020.[10]

On November 5, 2019, the Court issued the first Case Management Order ("CMO"), which established a bifurcated litigation schedule under which the issue of general causation would be resolved first.[11] The Court held a trial on general causation in early 2022.[12] On November 29, 2022, the Court issued its Findings of Fact and Conclusions of Law as to General Causation (the "General Causation Order"),[13] determining that, during the relevant time period: (1) odors and gases were emitted by the Landfill;[14] (2) the emissions of gases and odors from the Landfill occurred during the relevant time period;[15] and (3) exposure to the odors and gases emitted by the Landfill at a level of five parts per

---

[8] *See generally* Second Amended Complaint, R. Doc. 431. Jefferson Parish residents also filed several related class actions, which were consolidated into one case, *Ictech-Bendeck v. Waste Connections Bayou, Inc. See* R. Doc. 48 (18-7889).

[9] *See* Second Amended Complaint, R. Doc. 431 at p. 64.

[10] *Id.* at pp. 52-53.

[11] R. Doc. 80 at pp. 1-2.

[12] R. Docs. 274-278, 286-289.

[13] R. Doc. 323.

[14] *Id.* at p. 5.

[15] *Id.* at p. 26.

billion for thirty minutes "is sufficient by itself for individuals generally to be able to smell hydrogen sulfide and for the exposure to cause a reaction."[16] Having found that Plaintiffs established general causation for certain Allowed Injuries, the Court ordered that a trial be conducted with a select number of *Addison* Plaintiffs (the "Trial Plaintiffs").[17] The first *Addison* trial was set to begin on September 5, 2023,[18] and has since been continued to begin on August 12, 2024 (the "first *Addison* Trial").[19]

Relevant to the instant Motions in Limine, on May 12, 2012, Jefferson Parish contracted with LRLC predecessor IESI LA Landfill Corporation to provide services for the operation, management, and maintenance of the Landfill (the "2012 Contract").[20] Pursuant to the 2012 Contract, the Waste Connections Defendants operated portions of the Landfill from May 2013 through December 31, 2020.[21] The Waste Connections Defendants engaged expert Ali Hashimi, P.E., represented to be an expert in landfill design, engineering, management, and operations, to testify "about the operation and maintenance of [the Landfill] and its control systems by each of the Defendants," and to "rebut the opinions and testimony of the experts offered by Plaintiffs and Defendants Jefferson Parish and Aptim Corporation relating to the Waste Connections Defendants' responsibility for the generation and emissions of landfill gas or odors."[22] Mr. Hashimi expressed 32 opinions in his expert report (the "Hashimi Report") related to the

---

[16] *Id.* at p. 27.
[17] *Id.* at pp. 44, 46. *See also* R. Doc. 642 (defining the Allowed Injuries).
[18] R. Doc. 340.
[19] R. Doc. 495.
[20] 2012 Contract, R. Doc. 544-1.
[21] Mem. in Supp. of Jefferson Parish's Mot. in Lim., R. Doc. 544-6 at p. 2.
[22] Waste Connections Defendants' Expert Witness List, R. Doc. 418 at p. 4.

Defendants' contractual responsibilities for tasks related to the "management of [the Landfill] and its environmental control systems."[23]

In February 2024, the Court issued the Thirteenth CMO, which required the parties to file all motions in limine regarding expert testimony in the first *Addison* trial by June 6, 2024.[24] The Movants timely filed their Motions in Limine seeking to preclude Mr. Hashimi from offering testimony related to certain opinions expressed in the Hashimi Report under Federal Rules of Evidence 702 and 704.[25]

## LEGAL STANDARD

### I.    Motion in Limine Standard

"It is well settled that motions in limine are disfavored."[26] "[T]he purpose of a motion in limine is to prohibit opposing counsel 'from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' mind.'"[27] "Evidence is relevant" if "it has *any* tendency to make a fact . . . of consequence in determining the action" "more or less probable than it would be without the evidence."[28] "Evidence which is not relevant is not admissible."[29] Under Federal Rule of Evidence 403, the Court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."[30] "'Unfair prejudice' . . . means an undue

---

[23] Hashimi Rep., R. Doc. 573-2 at p. 5.
[24] R. Doc. 498 at p. 6.
[25] Jefferson Parish's Mot. in Lim., R. Doc. 544; Pls.' Mot. in Lim., R. Doc. 573.
[26] *Auenson v. Lewis*, 94-2734, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996) (citing *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)).
[27] *MGMTL, LLC v. Strategic Tech.*, 20-2138, 2022 WL 594894, at *2 (E.D. La. Feb. 28, 2022).
[28] FED. R. EVID. 401 (emphasis added).
[29] FED. R. EVID. 402.
[30] FED. R. EVID. 403.

tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[31]

"An order in limine excludes only clearly inadmissible evidence; therefore evidence should not be excluded before trial unless it is clearly inadmissible on *all* potential grounds."[32] Instead, courts should reserve evidentiary rulings until trial so that questions as to the evidence "may be resolved in the proper context."[33] "When ruling on motions in limine, the Court 'maintains great discretion [as to] evidentiary determinations.'"[34] If the evidence is not clearly inadmissible on all grounds, it is better for the court to decline to rule in advance of trial so that it will have the opportunity to resolve issues in context.

## II.   Federal Rule of Evidence 702 Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[35]

---

[31] *Old Chief v. United States*, 519 U.S. 172, 180 (1997).
[32] *Rivera v. Robinson*, 464 F. Supp. 3d 847, 853 (E.D. La. 2020) (quoting *Auenson*, 1996 WL 457258, at *1)).
[33] *Auenson*, 1996 WL 457258, at *1.
[34] *Jackson v. State Farm Fire & Cas. Co.*, 656 F. Supp. 3d 676 (W.D. La. 2023) (quoting *Parker v. John W. Stone Oil Distributors, L.L.C.*, 18-3666, 2019 WL 5212285, at *2 (E.D. La. Oct. 16, 2019)).
[35] FED. R. EVID. 702.

Testimony from a *qualified* expert is admissible only if it is both relevant and reliable.[36] Thus, the threshold inquiry is whether the expert witness possesses the requisite qualifications to render an opinion on particular subject matter.[37]

If the expert's qualifications are found to be sufficient, the court must then examine whether the expert's opinions are reliable and relevant.[38] The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[39] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. "Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid,'"[40] and of whether that reasoning or methodology "can be reliably applied to the facts of the case."[41] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[42]

"[E]xpert testimony proffered" must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[43] This is essentially a relevance requirement—relevant evidence, including relevant expert testimony, is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

---

[36] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

[37] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011). *See also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").

[38] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

[39] 509 U.S. 579 (1993).

[40] *See Pipitone*, 288 F.3d at 243–44 (quoting *Daubert*, 509 U.S. at 592–93).

[41] *Valencia*, 600 F.3d at 423–24; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).

[42] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

[43] *Denley v. Hartford Ins. Co. of Midwest*, 07-4015, 2008 WL 2951926, at *3 (E.D. La. July 29, 2008) (citing *Daubert*, 509 U.S. at 591).

evidence."[44] With respect to the proper scope of expert testimony, Rule 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[45] Nevertheless, "[i]f the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded."[46]

"[A]n expert may never render conclusions of law,"[47] as that "would constitute an invasion of 'the province of the court to determine the applicable law and to instruct the jury as to that law.'"[48] Allowing such expert testimony in a jury trial is both unhelpful and harmful because

> the jury would be very susceptible to adopting the expert's conclusion rather making its own decision. There is a certain mystique about the word 'expert' and once the jury hears of the [expert]'s experience and expertise, it might think the witness even more reliable than the judge. If an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury.[49]

Accordingly, expert testimony that offers a legal opinion is inadmissible.[50] Moreover, "expert testimony on matters which a jury is capable of understanding and deciding

---

[44] *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D. Tex. Nov. 15, 2002).

[45] FED. R. EVID. 704.

[46] *Sudo Properties, Inc. v. Terrebone Parish Consol. Gov't*, 04-2559, 2008 WL 2623000, at *8 (E.D. La. July 2, 2008).

[47] *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).

[48] *Willette v. Finn*, 778 F. Supp. 10, 11 (E.D. La. 1991) (quoting *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988)); *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996); *Goodman*, 571 F.3d at 399.

[49] *Cefalu v. Edwards*, 2013 WL 5592947, at *1 (quoting *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)); *see also Jarrow v. Cupit*, 99-3539, 2000 WL 1537989, at *2 (E.D. La. Oct. 17, 2000) ("[I]t is the Court's role, not that of one party's expert witness, to instruct the jury on the law of this case. The law 'requires only one spokesperson . . . who of course is the judge.'" (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988))).

[50] *Estate of Sowell v. United States of America*, 198 F.3d 169 (5th Cir. 1999); *Askanase*, 130 F.3d at 669.

without an expert's help should be excluded,"[51] because expert testimony is appropriate only when it will assist the trier of fact.[52]

## LAW AND ANALYSIS

The Waste Connections Defendants offer Ali Hashimi, P.E., as their expert in landfill design, engineering, management, and operations.[53] According to his Report, Mr. Hashimi is a principal with a firm that provides engineering and consulting services with respect to solid waste engineering.[54] Mr. Hashimi has experience designing and permitting municipal solid waste ("MSW") landfills, leachate collection systems, landfill gas control and collection systems ("GCCS"), and final cover systems; providing operations support to MSW landfills; and acting as a project manager on GCCS construction projects.[55] The Waste Connections Defendants engaged Mr. Hashimi to assess the Defendants' responsibilities for tasks under the 2012 Contract and the responsibilities of Jefferson Parish and Aptim Corporation under a 2015 contract between them (the "2015 Contract"),[56] related to the "management of [the Landfill] and its environmental control systems."[57] Mr. Hashimi ultimately expressed 32 opinions in his Report.[58] The Movants seek to exclude Mr. Hashimi's testimony on the following 16 opinions expressed therein (the "contested opinions"):

> Opinion 3.1:  Jefferson Parish bore ultimate responsibility for control over all aspects of the operation of the facility, including the operation and maintenance [("O&M")] of [the GCCS] at the facility.

---

[51] *Jarrow*, 2000 WL 1537989, at *2.
[52] *Id.* Rule 702 requires the expert's knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a).
[53] Waste Connections Defendants' Expert Witness List, R. Doc. 418 at p. 4.
[54] Hashimi Rep., R. Doc. 573-2 at p. 5.
[55] *Id.*
[56] R. Doc. 593 at p. 8. *See also* R. Doc. 543-1 (2015 Contract between Jefferson Parish and Aptim Corporation to provide operation and maintenance services for the Landfill's GCCS).
[57] Hashimi Rep., R. Doc. 573-2 at p. 5.
[58] *Id.* at pp. 7-11.

Opinion 3.2: Jefferson Parish bore the responsibility to be aware of site conditions, how these site conditions may impact the GCCS, and determine when GCCS activities were required to maintain compliance at the facility with the existing permits and regulations.

Opinion 3.3: Jefferson Parish bore the responsibility to adequately fund the landfill construction and operation, and to implement process controls and quality assurance procedures despite LRLC being assigned by contract responsibilities to perform those functions and other site operations activities that complemented the Parish's responsibilities to manage landfill gas and odors for the facility.

Opinion 3.5: LRLC's responsibilities at [the Landfill] were defined by the Operating Agreement, which excluded responsibility for the GCCS and for leachate components outside of Phase 4A.

Opinion 3.6: Under the Operating Agreement, Jefferson Parish was responsible for the operation, maintenance, and repair of leachate management components outside of Phase 4A. This was the Parish's responsibility because the Parish never tendered the rest of the leachate system to LRLC in good working condition.

Opinion 3.7: Jefferson Parish was responsible for the design, installation, operation, and maintenance of the GCCS. Jefferson Parish bore the responsibility to be aware of site conditions, how these site conditions may impact the GCCS, and determine when GCCS activities were required to maintain compliance at the facility with the existing permits and regulations.

Opinion 3.8: Though Jefferson Parish contracted with another entity to perform O&M on the GCCS, it was Jefferson Parish's responsibility to manage that contractor and to use the information provided by its GCCS contractor.

Opinion 4.3: As the permit holder and owner of [the Landfill], Jefferson Parish was responsible for understanding regulations and its own contract terms governing the requirements for landfill [GCCS]. These terms should have put the Parish on notice that compliance with regulatory and industry standards was critical to the control of landfill gas emissions and management of potential odors.

Opinion 4.4: Regulations and generally accepted industry standards specify operating standards and limitations for engineering controls that are part of an effective landfill [GCCS]. Jefferson Parish should have been on notice of these standards in its design, operation, and supervision of the GCCS at [the Landfill].

Opinion 5.8:  LRLC relied on the Parish and its GCCS contractors to design, install, operate, repair, and maintain the GCCS. The Parish controlled the design, installation, and operation of the landfill [GCCS]. LRLC's reliance on the Parish was reasonable.

Opinion 6.1:  Jefferson Parish was solely responsible for issues with [the GCCS] that were identified by LDEQ, Carlson Environmental Consultants, River Birch, and Plaintiffs. LRLC had no responsibility for [the GCCS], and based on its assigned duties, LRLC had no ability to improve operations of the system.

Opinion 6.2: Jefferson Parish controlled the assignment of work to its contractors and actively supervised the operations at the JPLF. Jefferson Parish should have been aware of any issues that it was in the best position to address as the permittee and owner, and as the entity with control over the design and installation of the GCCS.

Opinion 6.3: Jefferson Parish bore the responsibility to be aware of site conditions, how these site conditions may impact the GCCS, and determine when GCCS activities were required to maintain compliance at the facility with the existing permits and regulations.

Opinion 6.5:  Based on design, construction, and monitoring of numerous GCCS systems, the numerous conclusions and recommendations provided by CEC indicate that Jefferson Parish did not prioritize O&M of the GCCS.

Opinion 6.8: Jefferson Parish did not enhance the leachate management system to meet the facility's disposal needs in a proactive manner. Jefferson Parish was responsible for the upgrade of the perimeter leachate management system which provides additional capacity to remove leachate and GCCS liquid from the waste mass. Furthermore, the GCCS liquid removal system forcemain piping was determined to be undersized and not capable of transferring GCCS liquid from LFG extraction wells at the rate needed to maintain LFG well extraction efficiency.

Opinion 7.1:  The contract between Jefferson Parish and APTIM did not provide sufficient performance goals and standards to ensure efficient and effective operation and maintenance of the GCCS.[59]

The Movants do not challenge Mr. Hashimi's qualifications, the reliability of his methods, or the relevance of his testimony.[60] Instead, the Movants seek to exclude Mr.

---

[59] *Id.*

[60] *See* Mem. in Supp. of Pls.' Mot. in Lim., R. Doc. 573-1; Mem. in Supp. of Jefferson Parish's Mot. in Lim., R. Doc. 544-6. The Movants argue Mr. Hashimi "is an engineer who has no legal training," and is thus not qualified to "opine as to which of the Defendants bears 'ultimate responsibility' for the harms suffered by

Hashimi's testimony on the contested opinions under Rules 702 and 704, insofar as those opinions improperly include legal conclusions based on Mr. Hashimi's interpretation of the 2012 and 2015 Contracts, and parrot facts that "mirror the testimony of multiple fact witnesses," which will not otherwise assist the trier of fact.[61]

### I.    Mr. Hashimi may not offer testimony on the contested opinions, which mirror facts and express legal conclusions on the parties' contractual responsibilities based on his interpretation of the 2012 and 2015 Contracts.

The Movants argue the contested opinions are inadmissible because they "mirror the testimony of multiple fact witnesses," "seek to give legal interpretations of contractual documents," invade the province of the jury by opining on the "responsibility" of the each defendant for the harms suffered by the Plaintiffs, and/or "consist[] of arguments or observations" more suitable for argument by counsel.[62] Specifically, the Movants claim the contested opinions express inadmissible legal conclusions that "go[] to the ultimate issue [of liability], which is for the jury to decide."[63] The Movants contend Mr. Hashimi's testimony on the contested opinions is unnecessary because the 2012 and 2015 Contracts explicitly define relevant terms and, to the extent the words of the contracts are overly technical, they "will be testified to by fact witnesses throughout the course of the trial."[64] Thus, the Movants argue, expert testimony interpreting the contracts "will not aid the trier of fact to understand the evidence."[65] In opposition, the Waste Connections

---

Plaintiffs." R. Doc. 573-1 at p. 9; R. Doc. 544-6 at pp. 8-9. The Movants seek to exclude certain opinions that express legal conclusions and expert testimony as to legal conclusions on contractual obligations, which is clearly inadmissible under Rule 702. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).

[61] *See* Mem. in Supp. of Jefferson Parish's Mot. in Lim., R. Doc. 544-6 at pp. 1-3 (arguing Mr. Hashimi's opinions mirror facts and express legal conclusions that attempt to tell "the jury the result to reach as it pertains to the ultimate issue in this case"); *see also* Mem. in Supp. of Pls.' Mot. in Lim., R. Doc. 573-1.

[62] R. Doc. 544-6 at pp. 1-2, 6; R. Doc. 573-1 at pp. 3-5, 8.

[63] R. Doc. R. Doc. 629, pp. 2-5; R. Doc. 573-1 at pp. 3-5.

[64] R. Doc. 544-6 at p. 13.

[65] *Id.* at pp. 1, 9, 11-12.

Defendants argue the Hashimi Report offers admissible expert testimony that applies Mr. Hashimi's "specialized knowledge of landfill operations, structures and equipment, [and] industry standards," which "will assist the jury to understand the complicated allocation of work and responsibility created by Jefferson Parish's various contracts for operations at [the Landfill]."[66]

"Interpretation of a contract is the determination of the common intent of the parties."[67] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[68] "The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."[69] "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."[70] "A doubtful provision must be interpreted in light of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."[71]

Under Louisiana law, "[i]nterpretation of an unambiguous contract is a question of law, while interpretation of an ambiguous contract is a question of fact."[72] "[A]n expert may never render conclusions of law,"[73] and accordingly, may not offer legal conclusions based on the interpretation of an unambiguous contract.[74] Expert testimony is

---

[66] R. Doc. 593 at pp. 3, 16-23
[67] LA. CIV. CODE art. 2045.
[68] LA. CIV. CODE art. 2046.
[69] LA. CIV. CODE art. 2047.
[70] LA. CIV. CODE art. 2049.
[71] LA. CIV. CODE art. 2053.
[72] *RSUI Indem. Co. v. American States Inc. Co.*, 127 F. Supp. 3d 649, 658 (E.D. La. 2015).
[73] *Goodman*, 571 F.3d at 399.
[74] *See RSUI Indem. Co.*, 127 F. Supp. 3d at 658.

appropriate, however, when "a phrase in a contract is ambiguous and a court seeks to determine 'whether there is a received usage in the trade which would shed light on its meaning.'"[75] Courts in the Fifth Circuit often rely on "individuals experienced in a particular field for the purposes of obtaining explanation of the technical meaning of terms used in the industry."[76] Indeed, "[i]n construing a specific contractual term, [the court] must give consideration to the meaning attributed to that term in the industry."[77] Thus, expert testimony may be admissible to "provide context on an industry practice and interpret contractual provisions specific to such an industry," at the district court's discretion, but only when the explanation will assist the jury in "more accurately comprehend[ing] the meaning of technical terms used within that industry or trade."[78]

For example, in *Greenup Industries LLC v. Five S Group, LLC*, a recent case arising out of a construction contract dispute between a contractor and subcontractor, Judge Eldon E. Fallon considered a motion to exclude the expert testimony of a civil and environmental engineer, which the movant claimed included inadmissible expert opinions that "sp[oke] to factual questions of contractual interpretation."[79] The relevant opinions expressed by the expert in that case were: (1) that a subcontract at issue incorporated the defendant's bid proposal and that the defendant was entitled to standby time compensation; and (2) that "the primary reason for low productivity and schedule slippage was [the Plaintiff's] inability to provide the required amount of trucks on a

[75] *Temple v. McCall*, 720 F.3d 301, 305 (5th Cir. 2013) (quoting *Jefferson Disposal Co. v. Jefferson Parish*, 459 So. 2d 639, 642 (La. Ct. App. 1984)).
[76] *Kona Tech. Corp. v. So. Pac. Transp. Co.*, 225 F.3d 595, 611 (5th Cir. 2000).
[77] *Personal Preference Video, Inc. v. HBO*, 986 F.2d 110, 114 (5th Cir. 1993).
[78] *Dickson v. Sklarco L.L.C.*, 11-352, 2014 WL 4443423, at *3 (citing *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 281 (5th Cir. 1987)).
[79] 22-2203, 2023 WL 7335235, at *2 (E.D. La. Nov. 7, 2023).

consistent basis."[80] Acknowledging the expert was qualified to testify to issues that would help the jury resolve factual questions in the civil and environmental engineering fields, the *Greenup* court found the expert "stepped outside his area of expertise to opine on the contractual responsibilities of the parties."[81] The court reasoned that, although expert testimony "is appropriate when the expert can 'shed light' on contractual terms by citing customs and usage in the industry," the expert's report did not "explain how industry customs support any of his [opinions] regarding the contractual responsibilities of the parties," and ultimately the court precluded the engineer expert from offering "any legal conclusions on the contractual responsibilities of the parties."[82]

In this case, the Waste Connections Defendants argue the contested opinions[83] do not express legal conclusions and are necessary to assist the jury in "determin[ing] whether any systems or operations at the Landfill could have contributed to any Plaintiff's injury, and how the [2012 Contract] and applicable regulations assigned responsibility for those systems and operations."[84] In effect, the Waste Connections Defendants concede Mr. Hashimi bases the contested opinions on his interpretation of the 2012 and 2015 Contracts, but contend his contractual interpretation does not render inadmissible legal conclusions because the 2012 Contract "is replete with provisions that are beyond the experience of people unfamiliar with operations and regulation of a landfill."[85] For support, the Waste Connections Defendants identify several contractual terms for which

---

[80] *Id.* at *3.
[81] *Id.* at *4.
[82] *Id.* at *4-5.
[83] The Waste Connections Defendants do not assert any opposition to Jefferson Parish's argument to exclude Opinion No. 6.8. *See* R. Doc. 544-6 at p. 6.
[84] R. Doc. 593 at p. 12-13. "[A] review of Mr. Hashimi's actual opinions in light of the actual issues to be tried shows that Mr. Hashimi does not render any legal conclusions." R. Doc. 585 at p. 3.
[85] R. Doc. 593 at p. 12-13.

they claim "[i]t is highly unlikely a layman could reliably understand,"[86] but neither party to the 2012 Contract contends any specific term relevant to the contested opinions is ambiguous.

A review of the Hashimi Report reveals that each of the contested opinions purports to interpret the scope of the parties' obligations under the 2012 and 2015 Contracts. Specifically, Opinion Nos. 3.1, 3.2, 3.3, 3.6, 3.7, 3.8, 4.3, 4.4, 5.8, 6.1, 6.2, 6.3, 6.8, and 7.1 express Mr. Hashimi's opinions concerning contractual obligations for which "Jefferson Parish bore the responsibility" or "was responsible";[87] Opinion Nos. 3.5, 5.8, and 6.1 express Mr. Hashimi's opinions concerning "LRLC's responsibilities" and the reasonableness of LRLC's reliance on Jefferson Parish;[88] and Opinion No. 6.5 expresses Mr. Hashimi's legal conclusion that "Jefferson Parish did not prioritize O&M of the GCCS."[89]

To the extent the contested opinions go beyond legal conclusions, the Court finds those portions of the opinions merely parrot the testimony of fact witnesses. While "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact,"[90] "[e]xpert testimony that does nothing more than 'mirror' testimony offered by fact witnesses should [] be excluded."[91] When determining whether an expert may opine on technical issues, courts evaluate "the common sense inquiry whether the untrained

---

[86] R. Doc. 585 at p. 13.
[87] Hashimi Rep., R. Doc. 573-2 at pp. 7-11.
[88] *Id.*
[89] *Id.* at p. 10.
[90] FED. R. EVID. 704.
[91] *In re Tasch, Inc.*, 97-15901, 1999 WL 596261, at *2 (E.D. La. Aug. 5, 1999). *See also Sudo Properties, Inc.*, 2008 WL 2623000, at *8 ("If the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded.").

layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."[92] The portions of the contested opinions that mirror fact testimony "embrace an ultimate issue to be decided by the trier of fact" that "the untrained layman would be qualified to determine intelligently" without Mr. Hashimi's testimony.[93]

The Court finds most of the contested opinions are legal conclusions based on Mr. Hashimi's interpretation of the 2012 and 2015 Contracts and, to the extent the contested opinions go beyond legal conclusions, the opinions do nothing more than mirror testimony offered by fact witnesses and are "well within the common sense understanding of jurors."[94] The parties' contractual obligations arising under the 2012 and 2015 Contracts are issues about which fact witnesses will testify and lawyers will argue rather than matters suitable for expert testimony. Accordingly, Mr. Hashimi's testimony mirroring facts and providing legal conclusions on the contractual responsibilities of the parties to the 2012 and 2015 Contracts, as expressed in the contested opinions, will be excluded.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiffs' Motion in Limine is **GRANTED**.[95]

**IT IS FURTHER ORDERED** that Jefferson Parish's Motion in Limine is **GRANTED**.[96]

---

[92] *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (citing FED. R. EVID. 702, Advisory Committee Note).
[93] *See id.*; FED. R. EVID. 704.
[94] *Vogler*, 352 F.3d at 155; *see also In re Tasch*, 1999 WL 596261, at *2.
[95] R. Doc. 573.
[96] R. Doc. 544.

Mr. Hashimi may not offer testimony on Opinion Nos. 3.1, 3.2, 3.3, 3.5, 3.6, 3.7, 3.8, 4.3, 4.4, 5.8, 6.1, 6.2, 6.3, 6.5, 6.8, and 7.1 because they mirror facts or express legal conclusions on the parties' contractual duties based on his interpretation of the 2012 and 2015 Contracts.

**New Orleans, Louisiana, this 16th day of July, 2024.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**