No. 23-30243

# United States Court of Appeals for the Fifth Circuit

In re Jefferson Parish, *et al.*

Petitioners

On Petition for Writ of Mandamus to the United States District Court
for the Eastern District of Louisiana

Case No. 18-cv-7889
consolidated with 18-cv-8071,
18-cv-8218, and 18-cv-9312
and
Case No. 19-cv-11133
Consolidated with 19-cv-14512

## *ADDISON* PLAINTIFFS' OPPOSITION TO PETITION FOR WRIT OF MANDAMUS

Sara Eliza James (La. Bar No. 35182)
FORREST CRESSY
AND JAMES, LLC
1222 Annunciation Street
New Orleans, Louisiana 70130
Fax: 504-322-3884
Email: Eliza@fcjlaw.com

C. Allen Foster (Admitted *Pro Hac Vice*)
Eric C. Rowe (Admitted *Pro Hac Vice*)
WHITEFORD TAYLOR &
PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659-6800
Fax: (202) 331-0573
Email: cafoster@wtplaw.com
          erowe@wtplaw.com

*Counsel for Addison Plaintiffs*

i

EXHIBIT 1

# TABLE OF CONTENTS

TABLE OF CASES AND AUTHORITIES............................................................. iii

I.   INTRODUCTION.................................................................................................1

II.  BACKGROUND FACTS AND PROCEEDINGS BELOW..............................2

   A. Petitioners caused the Landfill to emit a rotten-egg stench, injuring the
      residents of the Parish, which at first they readily admitted. ...........................2

   B. In the proceedings below, Petitioners themselves adopted a legal strategy to
      postpone the motion to certify the class in *Ictech-Bendeck.* ..........................4

   C. The real issue involved here was fully within the discretion of the District
      Court. .................................................................................................................13

      1. If the class certification decision in *Ictech-Bendeck* is required occur before
         any trial in *Addison*, then there will be no trial in *Addison* for the
         foreseeable future. .......................................................................................14

      2. A trial in *Addison* provides a path for resolution in the short term. ............15

III. STANDARD FOR ISSUANCE OF WRIT OF MANDAMUS........................16

IV.  PETITIONERS DO NOT HAVE A CLEAR AND INDISPUTABLE RIGHT
     TO CLASS CERTIFICATION IN *ICTECH-BENDECK* BEFORE THE TRIAL
     IN *ADDISON*.......................................................................................................17

   A. Rule 23 does not apply in *Addison.* .................................................................17

   B. No possibility of one-way intervention exists in this case.............................19

   C. Petitioners waived any argument of one-way intervention by pursuing a
      judgment on the merits on their dispositive defense........................................23

V.   THE POSSIBILITY OF THE APPLICATION OF COLLATERAL ESTOPPEL
     IN SOME FUTURE CASE DOES NOT GIVE PETITIONERS A CLEAR
     AND INDISPUTABLE RIGHT TO POSTPONE THE *ADDISON* TRIAL. ....25

EXHIBIT 1

VI. PETITIONERS DO NOT HAVE A CLEAR AND INDISPUTABLE RIGHT
TO A STAY OF DISCOVERY IN *ADDISON* UNTIL AFTER CLASS
CERTIFICATION IS DECIDED IN *ICTECH-BENDECK*. .............................26

VII. THERE IS NO IRREPARABLE HARM. .........................................................27

   A. The tolling of the prescription period resulted from Petitioners' own litigation
strategy. ........................................................................................................27

   B. Class certification in *Ictech-Bendeck* has no bearing upon the completion of
discovery in *Addison.* ..................................................................................28

   C. A trial in *Addison* neither frustrates appellate review nor irreparably
undermines Petitioners' due process rights. ..................................................29

   D. Conducting a trial in *Addison* in no way "frustrates the prospect of any fair
settlement prospect." .....................................................................................30

VIII.    CONCLUSION. ........................................................................................31

EXHIBIT 1

# TABLE OF CASES AND AUTHORITIES

*Alig v. Quicken Loans Inc.*,
  No. 5:12-CV-114, 2016 WL 10490288 (N.D.W. Va. Aug. 25, 2016)..........24

*Alonzo v. State ex rel. Department of Natural Resources*,
  2002-0527 (La. App. 4 Cir. 9/8/04), 884 So. 2d 634 ....................................25

*American Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974) ...........................................................................18,19,27

*Byerson v. Equifax Information Servs.*, LLC,
  No. 6:07-CV-00005-GRA, 2009 WL 82497 (D.S.C. Jan. 9, 2009).............22

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ...............................................................................15,16

*Cohen v. Office Depot, Inc.*,
  204 F.3d 1069 (11th Cir. 2000).....................................................................18

*Curtin v. United Airlines, Inc.*,
  275 F.3d 88, 93 (D.C. Cir. 2001) ..................................................................24

*Danny B. ex rel. Elliott v. Raimondo*,
  784 F.3d 825 (1st Cir. 2015) .........................................................................17

*Hamm v. Mercedes-Benz USA, LLC*,
  No. 5:16-CV-03370-EJD, 2019 WL 4751911 (N.D. Cal. Sept. 30, 2019)...23

*Ictech-Bendeck v. Waste Connections Bayou, Inc.*,
  No. CV 18-7889, 2020 WL 2037185 (E.D. La. Apr. 28, 2020) .....................8

*In re Chevron USA, Inc.*,
  109 F.3d 1016 (5th Cir. 1997)........................................................................11

*In re Citizens Bank, N.A.*,
  15 F.4th 607 (3d Cir. 2021).....................................................................17,21

*In re Corrugated Container Antitrust Litig.*,
  756 F.2d 411 (5th Cir. 1985).........................................................................21

*In re Depuy Orthopaedics, Inc.*,
  870 F.3d 345 (5th Cir. 2017).........................................................................16

iv

**EXHIBIT 1**

*In re Fibreboard Corp.*,
    893 F.2d 706 (5th Cir. 1990)........................................................................22

*In re Lloyd's Register North America, Inc.*,
    780 F.3d 283 (5th Cir. 2015)........................................................................16

*In re Paxton*,
    60 F.4th 252 (5th Cir. 2023)........................................................................16

*In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*,
    157 Fed. Cl. 189 (2021) ........................................................................17,18

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    No. 2:18-MD-2836, 2021 WL 9870367 (E.D. Va. May 7, 2021) ...............22

*Lore v. Lone Pine Corp.*,
    1986 WL 637507, No. L–33606–85 (N.J.Super.Ct.1986) ............................6

*Mendez v. The Radec Corp.*, 2
    60 F.R.D. 38 (W.D.N.Y. 2009).....................................................................23

*Nance v. Union Carbide Corp. Consumer Prod. Div.*,
    540 F.2d 718 (4th Cir. 1976), *vacated*, 431 U.S. 952 (1977) .......................18

*Paxton v. Union Nat. Bank*,
    688 F.2d 552 (8th Cir. 1982)........................................................................19

*Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*,
    214 F.3d 132 (2d Cir. 2000)........................................................................17

*Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*,
    583 F.3d 348 (5th Cir. 2009)........................................................................25

*Rodriguez v. GC Pizza LLC*,
    No. 4:20-CV-3106, 2022 WL 4368353 (D. Neb. Sept. 21, 2022)................23

*Welch v. Crown Zellerbach Corp.*,
    359 So. 2d 154 (La. 1978)............................................................................25

*Will v. Calvert Fire Ins. Co.*,
    437 U.S. 655 (1978) ....................................................................................16

La. Stat. Ann. 13:4231................................................................................25

EXHIBIT 1

310 Mass. Code Regs. 19.017 ....................................................................2

Environmental Protection Agency Publication EPA/600/R-14/039 "Best Management Practices to Prevent and Control Hydrogen Sulfide and Reduced Sulfur Compound Emissions at Landfills that Dispose of Gypsum Drywall," (August 2014),................................................................................................3

Federal Rule of Civil Procedure 23 ...................................................17,18,19,27,28

Federal Rule of Civil Procedure 54(b) ...................................................29

Local Rule 23.1, Eastern District of Louisiana .........................................5

EXHIBIT 1

# I.  INTRODUCTION.

All Plaintiffs in *Addison v. Louisiana Regional Landfill Company, et al*. case no. 19-cv-1113 (consolidated with 10-cv-14512) ("*Addison*") oppose Petitioners' Petition for Writ of Mandamus ("the Petition").  *Addison* is a separate case from *Ictech-Bendeck v. Louisiana Regional Landfill Company, et. al.* case no 18-7889 ("*Ictech-Bendeck*").

For reasons stated below, Petitioners' contention that no trial involving any *Addison* Plaintiff can go forward until after class certification has been decided in *Ictech-Bendeck* has no support in fact or law.  *Ictech-Bendeck* was brought as a class action. *Addison* was not.

The rule in class action cases that class certification must occur before trial does not apply to *Addison.* And even if that rule did apply, Petitioners waived any such argument through their conduct—they themselves created the very delay in class certification in *Ictech-Bendeck* that they now complain of.  Bragging to the Plaintiffs that they have a "bigger war chest", Petitioners have set out to litigate and re-litigate every possible issue. The current Petition has no purpose other than delay.

Both of the questions presented by the Petitioners must be answered in the negative, and the Petition should be summarily denied.

EXHIBIT 1

## II.   BACKGROUND FACTS AND PROCEEDINGS BELOW.

A writ of mandamus is an extraordinary remedy.  The factual background and proceedings below establish that it is not warranted here.

### A.   Petitioners caused the Landfill to emit a rotten-egg stench, injuring the residents of the Parish, which at first they readily admitted.

This litigation arose because Petitioners decided, in 2016, to allow "spent lime" to be buried in the Jefferson Parish Landfill (the "Landfill"). *See* Pet.App. 114[1] (District Court findings on General Causation).  An industrial byproduct created when an industry uses lime-based materials to reduce the amount of sulfur dioxide in air emissions, spent lime consists in large part of calcium sulfate dihydrate, a compound also known as gypsum, the substance used in the manufacture of drywall. Pet.App. 114-115.

By 2016, it had long been known in the industry that co-disposal of gypsum in a municipal solid waste ("MSW") landfill can result in the creation of large quantities of hydrogen sulfide gas, because of the presence of water, organic materials and sulfur eating bacteria in such landfills. For this reason, some jurisdictions had banned gypsum from MSW landfills.[2] And even where not entirely

---

[1] References to Petitioners' Appendix are "Pet.App.xxx".  References to Respondent *Addison*'s Appendix are "Addison.Appx.xxx".

[2] *See*, *e.g.*, 310 Mass. Code Regs. 19.017 (noting gypsum wallboard was banned from landfills effective July 1, 2011). In most places, gypsum-containing

EXHIBIT 1

banned, best practices dictated that sulfur-containing materials like spent lime be avoided altogether, or, at the very least, segregated from organic waste and that active measures be taken to capture and collect any gas generated.[3]

Ignoring the known risk to the health and safety of the community, between October 2016 and July 2018 (when the Parish finally put a stop to it), Petitioners accepted more than 2,300 tons (46,000,000 pounds) of spent lime into the Landfill, mixed it with other waste and liquids, and then buried it. Pet.App. 115. Petitioners knew at the time they made the business decision to accept the spent lime into the Landfill that excess water in the Landfill was a real problem, and they knew at the time that there was no way to control or collect any gas generated, *because the gas collection system in that section of the Landfill had yet to be installed*.[4]

---

drywall, if not recycled, is placed in dedicated "construction and demolition" landfills.

[3] *See* **Exh. Y (Addison.Appx.221)** Environmental Protection Agency Publication EPA/600/R-14/039 "Best Management Practices to Prevent and Control Hydrogen Sulfide and Reduced Sulfur Compound Emissions at Landfills that Dispose of Gypsum Drywall," (August 2014), at 23-30. None of these best management practices discussed by the EPA were implemented at the Jefferson Parish Landfill to control the hydrogen sulfide generated by the gypsum buried there. The first of the best management practices was "diversion;" i.e., put it somewhere else. Id. at 23.

[4] Waste Connections own expert in the case estimated that this amount of spent lime had the potential of generating up to 934 tons of hydrogen sulfide gas. **Exh. Z (Addison.Appx.231).**

**EXHIBIT 1**

Predictably, by the summer of 2017, the offensive rotten-egg smell of hydrogen sulfide was invading neighborhoods and homes as far away as River Ridge, Louisiana. Residents did not want to go outside; and were unable to enjoy outdoor activities like walking the dog, watching sports at the playground, and backyard crawfish boils. *See* Pet.App. 150-151. Some felt trapped in their homes. Id. Some avoided inviting people over due to embarrassment. Id. Many feared for the health of themselves and their families. Id Others had to leave their homes and sleep elsewhere due to the odor, and some moved away entirely to escape the odor. Id. As residents began to complain about the stench, community groups began to become vocal. Id at 135-136. By the summer of 2018, the complaints had reached a fever pitch. By July 2018, the Parish and Waste Connections were publicly blaming each other in press conferences and statements to the media. *See* **Exh. A (Addison.Appx.001)**

### B. In the proceedings below, Petitioners themselves adopted a legal strategy to postpone the motion to certify the class in *Ictech-Bendeck.*

The first of four class action lawsuits was filed in Louisiana state court on July 25, 2018. **Exh. B (Addison.Appx.003).** Petitioner Waste Connections removed all four to federal court, beginning on August 17, 2018 (*Ictech-Bendeck*), August 23,

4

**EXHIBIT 1**

2018 (*Thompson*), August 29, 2018 (*Bernard*), and October 5, 2018 (*Boudreaux*),[5] where they were later consolidated into *Ictech-Bendeck* (on April 5, 2019). **Exhs. C-F (Addison.Appx.011-034)**

At the time each of these cases was removed, the District Court's Local Rule 23.1 required the Plaintiffs in each case to move for class certification within 91 days of the notice of removal.[6] Instead of insisting upon compliance with the local rule, Petitioners initially proposed that any motion for class certification would be due 91 days after the Court's ruling on the Petitioners' motion to dismiss. **Exh H, Addison.Appx.053.** Petitioners moved to dismiss the action, and to strike the class allegations, on April 24, 2019. **Exh. I, Addison.Appx.055.**

Meanwhile, Waste Connections[7] had commissioned a report from an "independent" engineering firm that concluded, based on snapshot measurements at the perimeter of the Landfill, that the odors were not coming from the Landfill after all, but must have come from some other source. Based on the so-called independent report, but knowing full well that the spent lime it had buried in the Landfill was

---

[5] The District Court denied *Ictech-Bendeck* 's motion to remand to state court on March 14, 2019. **Exh. G (Addison.Appx.036).**

[6] LR 23.1 was amended on March 1, 2022, to provide that the class certification order was due on the date specified in a case management or scheduling order.

[7] Petitioners Waste Connections US, Inc., Waste Connections Bayou, Inc., and Louisiana Regional Landfill Company are referred to herein collectively as "Waste Connections").

**EXHIBIT 1**

responsible for the noxious emissions, Waste Connections undertook an extensive public relations campaign to convince the public that the Jefferson Parish Landfill was not emitting any odors that were capable of causing any injury to anybody. *See* **Exh. J, Addison.Appx.059.**[8]

The District Court denied the motion to dismiss and to strike class allegations on August 29, 2019. **Exh. K, Addison.Appx.065.** However, Petitioners did not insist upon the certification motion in 91 days as proposed previously. Instead, on September 9, 2019, Petitioners proposed an all-new schedule, and submitted an initial case management order in *Ictech-Bendeck* that required extensive discovery on the merits of the claims of the *Ictech-Bendeck* Plaintiffs (all of which discovery was directed to Waste Connections' public defense that there were no emissions capable of causing any harm to anybody) and provided that the motion for class certification would be due 13 months after issuance of the case management order,

---

[8] Even as they were taking this public position that there was nothing harmful, safety measures were in place to protect personnel on site. **Exh. AA, Addison.Appx.270** (September 1, 2018, complaining about "a****le neighbors" who were reporting the Landfill to the LDEQ, and after report of an inspector feeling sick from the fumes, "He needs to have his meter and a second person with him. They need to be extremely careful of the h2s." (This particular document was withheld from discovery during the General Causation phase.)

**EXHIBIT 1**

with a three-month briefing schedule, and a hearing after that. **Exh. L, Addison.Appx.079-084.**[9]

Thus, of the "five years without class certification" complained of by Petitioners, the first year resulted from Petitioners' own litigation strategy to remove the cases to federal court and to seek dismissal and striking of the class allegations. Then, Petitioners own proposed schedule did not provide for a decision on class certification until approximately 18 months later.

Meanwhile, the first of the *Addison* cases, which consisted of several separate actions and more than 900 individual Plaintiffs, was filed in state court on December 13, 2018. **Exh. M  Addison.Appx.092.** After the state court consolidated the then-pending state actions, Waste Connections removed *Addison* to federal court on June 10, 2019. **Exh. N, Addison.Appx.113.** The District Court denied the *Addison* motion to remand on August 9, 2019. **Exh. O, Addison.Appx.126.** .

Although both *Ictech-Bendeck* and *Addison* were assigned to Judge Susie Morgan, Petitioners did <u>not</u> demand that the proceedings in *Addison* be stayed until

---

[9] Petitioners proposed a "*Lone Pine*" order, fashioned on *Lore v. Lone Pine Corp.*, 1986 WL 637507, No. L–33606–85 (N.J.Super.Ct.1986), that essentially required each Plaintiff to present the entirety of his or her liability case, supported by expert testimony, as the first event in the litigation. **Exh. L, Addison.Appx.080.** Defendants' letter at 2 ("it seems to the Defendants that the rationale for requiring *Lone Pine*-type evidence in the *Addison* matter is also applicable in the *Ictech-Bendeck* matter").

**EXHIBIT 1**

after class certification had occurred in *Ictech-Bendeck.* And they did <u>not</u> demand that discovery in *Addison* proceed separately. To the contrary, they proposed that discovery be <u>coordinated</u> in the two cases, in their words, "to avoid duplication and to allow matters to move forward in an efficient and cost-effective manner." **Exh. L Addison.Appx.080.**

Petitioners' well-publicized defense that the Landfill was not emitting any odors or gases that were capable of causing any injury to anybody, if proven, was a complete defense to both the *Ictech-Bendeck* and *Addison* cases. Following a conference with the District Court on September 10, 2019, involving all of the parties in both *Ictech-Bendeck* and *Addison*, it was decided that this issue would be tried first, and it was called "General Causation." **Exh. P, Addison.Appx.139.** *See Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. CV 18-7889, 2020 WL 2037185, at *2 (E.D. La. Apr. 28, 2020) (recounting the history of the case). On November 5, 2019, the District Court issued its first Case Management Order ("CMO"), which defined "General Causation" as "the determination of whether odors and gases were being emitted by the Jefferson Parish Landfill during the relevant time period and whether any such odors and gases were capable of producing the injuries claimed by any one more of the Plaintiffs in this case." **Exh. Q, Addison.Appx.143-144.**

**EXHIBIT 1**

A ruling by the District Court in favor of the Petitioners on this dispositive issue, (i.e., that there were no emissions from the Landfill capable of causing any injury to anybody), could effectively end all of the pending cases, rendering moot any motion for class certification.  At the same time, Petitioners were well aware that, if the District Court ruled in favor of the Plaintiffs on General Causation, then the motion for class certification would necessarily come later. The trial on General Causation was initially set to occur on April 12, 2021. **Exh. Q, Addison.Appx.152. Doc 80 at 10.**

Thus, Petitioners knew on November 5, 2019, that because their "dispositive" defense was being tried first, class certification in *Ictech-Bendeck* would not occur, at the earliest, for at least two more years.

Prior to the entry of the First CMO, Petitioners did <u>not</u> contend that a ruling on class certification had to come before the trial on General Causation. They made <u>no</u> contention that a ruling on their dispositive defense would essentially allow "one-way intervention" such that putative class members could wait and see whether to remain in the class or opt out and bring their own suit. And they made <u>no</u> contention that the ruling on General Causation might be used against them in further cases through application of collateral estoppel. Essentially, all of the arguments that Petitioners now assert in the Mandamus Petition were available to the Petitioners in the fall of 2019 and yet they raised none of them.

**EXHIBIT 1**

Several months into the General Causation discovery period, on June 25, 2020, as the parties discussed the schedule, the effect of the Covid-19 pandemic, and the Third CMO, "counsel for Defendants represented they wish to include a date for a status conference with the Court for the parties to begin discussing the selection of plaintiffs for bellwether trials." **Exh. R, Addison.Appx.185.** Doc. 103 (Minute Entry), at 3. Petitioners did not at that time contend that such trials in *Addison* could occur only after class certification in *Ictech-Bendeck.* The Third CMO reset the trial of General Causation to occur in October 2021 and ordered submissions on the bellwether case issue in advance of the status conference set for April 15, 2021. **Exh. S, Addison.Appx.197-198.**

Trial was then delayed again because of Hurricane Ida, and then again due to one of Plaintiffs' counsel contracting Covid-19. Trial finally occurred in February 2022, and the District Court issued its ruling on General Causation on November 29, 2022. App. 110-155.

At no time between the entry of the First CMO on November 5, 2019, and the ruling on General Causation on November 29, 2022, did the Petitioners complain that their rights were being violated by the lack of a prompt hearing on class certification in *Ictech-Bendeck*. Of the "five years without class certification," Petitioners, through their chosen litigation strategy, had agreed to all of it.

**EXHIBIT 1**

In their Petition for Mandamus, Petitioners now claim that because each of the *Addison* Plaintiffs is a member of the putative *Ictech-Bendeck* class, it is somehow prejudicial to the Petitioners to have the *Addison* Plaintiffs' claims adjudicated on the merits prior to class certification. But Petitioners themselves asked for exactly that relief as well.

Between the entry of the First CMO and the trial on General Causation, Petitioners insisted that that each of the *Addison* Plaintiffs must complete a detailed Plaintiff Fact Sheet ("PFS"), which the Petitioners demanded (and the District Court ordered) be treated as interrogatories under Rule 33. The *Addison* Plaintiffs were required to provide authorizations to the Petitioners to obtain medical records, and information about social media. The detailed fact sheets and medical records were necessary, Petitioners contended, for a statistical analysis so that "bellwether" plaintiffs could be selected for trial in *Addison*.[10]

Petitioners then used this discovery to argue for dismissal of the *Addison* claims on the merits. After Covid-19 affected the nation in full force in March 2020, a large number of the *Addison* plaintiffs were unable to complete the fact sheets by the deadlines demanded by the Petitioners. On December 24, 2020 (Christmas Eve),

---

[10] The "bellwether" cases could not be used to decide the outcome for other plaintiffs, because there is an insufficient number of cases to permit a statistical analysis that would satisfy due process to permit such a result under *In re Chevron USA, Inc.*, 109 F.3d 1016 (5th Cir. 1997).

EXHIBIT 1

Petitioners moved to dismiss the claims of 372 of the *Addison* Plaintiffs with prejudice for failure to complete a PFS, **Exh. T, Addison.Appx.199-224,** and on March 16, 2021, the District Court granted the motion in part, dismissing 265 of the *Addison* Plaintiffs with prejudice. **Exh. U, Addison.Appx.243.** Doc. 157.

Just two weeks later, on April 1, 2021, Petitioners wrote to the Court again, this time advising that the PFS, which they themselves had drafted for the purpose of selecting "bellwether" cases, did not provide enough information for them actually to make that determination, and that they needed even more detailed discovery. **Exh. V, Addison.Appx.244-248.** Defendants' April 1, 2021 Letter to Court re Bellwether Trials. Petitioners noted that their position on bellwether trials "applies only to the *Addison* action" and that *"the use of bellwether trials for the Ictech action is not appropriate because it is a putative class action involving five named plaintiffs." Id., at fn. 1. Plaintiffs'* Responses to this letter are attached as **Exh. W and X, Addison.Appx.249-256.**

More recently, and after the ruling on General Causation, Petitioners moved for summary judgment with respect to 23 of the *Addison* Plaintiffs. The District Court granted that motion in part, as well, dismissing three of them with prejudice. Pet.App. 553-558.

In *Addison*, even as they were seeking judgments on the merits against some of the *Addison* Plaintiffs, Petitioners never once took the position that any issue in

EXHIBIT 1

*Addison* was dependent upon class certification in *Ictech-Bendeck*; at least, not until it was clear the first set of *Addison* Plaintiffs would be set for trial.

In *Ictech-Bendeck*, Petitioners' motion to strike the class allegations, their proposal to postpone the class certification motion beyond the 91-day limit in the local rules, their efforts to try first their dispositive "no-odors-from-this-Landfill-could-harm-anyone" defense, and their efforts to conduct merits discovery, all demonstrate that the Petitioners themselves adopted a strategy to seek resolution of the case on the merits before having to litigate class certification.

Now Petitioners seek a rescue from their own strategy.

### C.     The real issue involved here was fully within the discretion of the District Court.

The real issue presented by the Petitioners to the District Court was this: following the ruling on General Causation, what comes next?  The next step in *Addison* was the completion of discovery and trial, while the next step in *Ictech-Bendeck* was class certification.  But Petitioners objected to proceeding ahead in both cases and insisted on one before the other, with result that Petitioners again created the very problem they are complaining about. This scheduling issue was a matter of discretion for the trial court. (The District Court has since directed Petitioners to discuss a schedule for class certification with the *Ictech-Bendeck* Plaintiffs.  *See* Ninth CMO, **Exh. BB, Addison.Appx.281, ¶ X**).

13

EXHIBIT 1

1.   **If the class certification decision in *Ictech-Bendeck* is required occur before any trial in *Addison*, then there will be no trial in *Addison* for the foreseeable future.**

As to class certification, Petitioners, of course, can propose a class and seek certification of a class themselves. Or Petitioners can agree to a class to be certified. If Petitioners were truly interested in settling these cases, then they would do one or both of these things because a certification order would help define the universe of the claimants and would also provide an injunction against further litigation. But both of those options deprive Petitioners of the ability to challenge the class certification in this Court.

But Petitioners actually oppose class certification and they have made no secret of their intention to appeal any class certification order. As a result, if the District Court grants the motion to certify the class, then Petitioners will appeal and will undoubtedly contend (as they do now) that no trial in *Addison* should proceed until class certification is finally decided on appeal in *Ictech-Bendeck.*

If Petitioners are correct, and no class can be properly certified ever in *Ictech-Bendeck*, then the end result will be that injured persons, like the *Addison* Plaintiffs, must bring their own individual actions, like the *Addison* Plaintiffs have already done. Under Rule 23, if class certification is denied, then a notice will go out to all potential class members, which will likely be followed by a number of additional individual lawsuits. At that point, without any doubt, Petitioners will contend that

**EXHIBIT 1**

no trials can occur in *Addison* until appropriate "representative" plaintiffs can be chosen from the larger group of all plaintiffs (that is their current contention).[11]

So if class certification is required to be finally decided in *Ictech-Bendeck* before any trial occurs in *Addison*, then no trial on the merits in *Addison* will occur for the foreseeable future.

### 2.     A trial in *Addison* provides a path for resolution in the short term.

At the same time, there is no justifiable reason to require the *Addison* Plaintiffs to wait. Class certification in *Ictech-Bendeck* has no bearing on any issue in *Addison*, particularly where Petitioners are themselves demanding that all of the persons they injured must proceed in individual actions and not as a class.

So if one must come before the other (which is what Petitioners said they wanted), then the trial in *Addison* should be next. A trial involving representative plaintiffs from the pool of *Addison* Plaintiffs has the added benefit of helping to inform the Parties of their positions regarding settlement, which is something the Petitioners also said they wanted (but they really do not).

These facts demonstrate that the District Court acted fully within its discretion.

---

[11] Petitioners complain about the scheduled trial will consist of "hand-picked" plaintiffs but did not inform the Court half of the Plaintiffs selected for trial were selected by them.

EXHIBIT 1

## III.    STANDARD FOR ISSUANCE OF WRIT OF MANDAMUS.

The writ of mandamus is an extraordinary remedy used to correct "a judicial usurpation of power" or a "clear abuse of discretion." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380, (2004). Before the writ can issue, three conditions must be met: (1) the petitioner must show his right to the writ is clear and indisputable; (2) the petitioner must have no other adequate means of obtaining relief; and (3) the issuing court must be satisfied in its own discretion that the writ is appropriate under the circumstances. *Cheney*, 542 U.S. at 380–81; *see In re Paxton*, 60 F.4th 252, 256 (5th Cir. 2023).

Where a matter is committed to the discretion of a district court, it cannot be said that a litigant's right to a particular result is "clear and indisputable." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665–66 (1978) (plurality opinion). As a result, showing a clear and indisputable right to the writ requires "more than showing that the court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *In re Lloyd's Register North America, Inc.*, 780 F.3d 283, 290 (5th Cir. 2015). Where a matter is committed to a district court's discretion, review is available "only for clear abuses of discretion that produce patently erroneous results." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017).

16

EXHIBIT 1

## IV.  PETITIONERS DO NOT HAVE A CLEAR AND INDISPUTABLE RIGHT TO CLASS CERTIFICATION IN *ICTECH-BENDECK* BEFORE THE TRIAL IN *ADDISON*.

*Addison* and *Ictech-Bendeck* are separate cases, with separate plaintiffs. There are no class allegations asserted in *Addison.* Although pending before the same judge, *Addison* and *Ictech-Bendeck* have not been consolidated for all purposes, and have not been consolidated for trial.

Petitioners assert that the District Court was wrong to schedule a trial in *Addison* before class certification occurs in *Ictech-Bendeck*, and that it was so plainly wrong that this Court must issue a writ of mandamus to vacate the trial setting in *Addison*. But Petitioners have no "clear and indisputable right" to that relief. There is no rule of procedure and there is no rule of law that requires the class certification in *Ictech-Bendeck* to occur before any trial in *Addison.*

### A.  Rule 23 does not apply in *Addison*.

Petitioners first point to Rule 23, but *Addison* is not a class action, Rule 23's requirement of class certification "at an early practicable time" has no application to any *Addison* Plaintiff.

Petitioners have cited <u>no</u> case in which the trial in one action was required to be postponed because of an unresolved class allegation in a separate case. Instead, Petitioners rely upon cases involving merits trials of class representatives in the class

EXHIBIT 1

action cases themselves, which is not the case here,[12] or on cases that do not involve class certification at all.[13] None of the *Ictech-Bendeck* class representatives are among the cases set for trial.

Rule 23 provides no authority for postponing the trial in *Addison* until after class certification in *Ictech-Bendeck.*

---

[12] *Danny B. ex rel. Elliott v. Raimondo*, 784 F.3d 825 (1st Cir. 2015) (plaintiffs in the case demanded certification; court stated, in dicta, that it was aware of no precedent permitting a court to conduct a full-blown trial without pausing to take up class certification, but remanded with advice to the district court to permit the parties to file dispositive motions and to decide class certification if the case survives summary judgment; this result, a merits decision before class certification, is the opposite of what Petitioners advocate here); *Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*, 214 F.3d 132 (2d Cir. 2000) (trial of class plaintiff); *In re Citizens Bank, N.A.*, 15 F.4th 607, 610–11 (3d Cir. 2021) (single complaint alleging FLSA collective action and state law claim class action); *Paxton v. Union Nat. Bank*, 688 F.2d 552, 559 (8th Cir. 1982) (district court denied certification after trial; circuit court ruled certification should have been granted, "one-way intervention" issue not presented because class was mandatory non-opt out class under Rule 23(b)(2)); *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 157 Fed. Cl. 189, 193 (2021) (motion to certify in pending case).

[13] *Nance v. Union Carbide Corp. Consumer Prod. Div.*, 540 F.2d 718, 723 (4th Cir. 1976), *vacated*, 431 U.S. 952 (1977) (the actual holding in the case was that plaintiff in the case had not brought a class action and the district court had erred by granting class relief; the passage quoted by Petitioners was not a holding in the case); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1083 (11th Cir. 2000) (issue in the case was the jurisdictional amount);

EXHIBIT 1

**B.      No possibility of one-way intervention exists in this case.**

Petitioners next assert that permitting a trial in *Addison* before class certification in *Ictech-Bendeck* allows "one-way intervention" in *Ictech-Bendeck.* That is nonsense.

In any case containing class allegations, it would seem quite obvious that, if there is to be a trial of the claims belonging to the plaintiff who is also suing on behalf of class, then the determination of whether the jury's verdict in that case will apply to just him, or to the class as a whole, should be made before trial. Indeed, Rule 23 was amended in 1966 (57 years ago) to require exactly that. In 1974, in *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), the Court explained that, prior to the 1966 amendments to Rule 23, there was no mechanism for determining in advance of final judgment who was in the class and who was not, which permitted some plaintiffs to wait and see what the verdict was before deciding to join and to become bound by the judgment. Id at 547. Referring to this potential as "one-way intervention," the Court explained, that "[t]he 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments." *Id.*  The 1966 amendment to Rule 23 required class certification to be decided "as soon as practicable" after

EXHIBIT 1

commencement of the action, and was further amended in 2003 to the current rule, to say "at an early practicable time."

As a result of these changes to Rule 23, and under current practice, once an order is entered in *Ictech-Bendeck* certifying the class under Rule 23(b)(3),[14] then a notice will be sent to all potential class members, notifying them of the suit and providing a time for each of them to decide whether to stay in the class or opt out. F.R.Civ.P. 23(c)(2)(B)(v) and (vi). Because class certification (and the decision whether to opt out) will occur before the trial in *Ictech-Bendeck,* it is not possible for the verdict in *Ictech-Bendeck* to create even a possibility of one-way intervention.

So to bring themselves within the rule, the Petitioners insist that the verdict in the first trial of <u>*Addison*</u> Plaintiffs will result in one-way intervention in *Ictech-Bendeck*. But it cannot. The verdict in *Addison* will not be binding on anyone in *Ictech-Bendeck* and it will have no practical effect on anyone's decision as to whether to stay in or opt out of *Ictech-Bendeck.*

Petitioners' argument is not even logical. Even with a sizeable plaintiffs' verdict, it is more likely that members will stay in the class, and will not opt out to

---

[14] If the class in *Ictech-Bendeck* were to be certified under Rules 23(b)(1) or (b)(2) opting out is not permitted, so there is no circumstance where any member of the class could wait and see what a particular ruling is before deciding to opt out. *See Paxton v. Union Nat. Bank*, 688 F.2d 552, 558–59 (8th Cir. 1982) ("Rule 23(b)(2) suits … which class members cannot "opt-out," do not present the [one-way intervention] problem.").

EXHIBIT 1

bring their own suit with the attendant expenditures of time and money to hire experts, begin a whole new lawsuit, conduct discovery and try the case separately. (Defendants say that such a verdict would "unjustly incentivize class member to remain in the class." Petition at 19.) Similarly, if the first *Addison* trial results in a defense verdict, or a verdict with minimal damages, then it is likewise unlikely that the class members will opt out of *Ictech-Bendeck*, hire their own lawyers and experts and then bring their own claims, because any incentive to undertake the time and expense of hiring lawyers and experts to pursue a failing case would be diminished.

The *Ictech-Bendeck* putative class members would never be bound by the result in *Addison* in the first instance, and the trial in *Ictech-Bendeck* is yet to come. Yet Petitioners nonsensically argue that if they prevail in *Addison* trial, the "the putative class members would not be bound by that decision and are more likely to opt out and bring individual serial actions in search of a more favorable (but presumptively inaccurate result) result."). Petition at 19.  For this proposition, Petitioners cite *In re Corrugated Container Antitrust Litig.*, 756 F.2d 411, 418–19 (5th Cir. 1985) quoting the statement "A class action judgment cannot be used to collaterally estop an opt-out plaintiffs' action against a defendant in a separate action." The next two sentences in the court's opinion explained why: "An opt-out plaintiff is not a party to the class action and is not bound by the class action judgment. The doctrine of collateral estoppel cannot bind a person who was neither

EXHIBIT 1

a party nor privy to a prior suit." Id. For this same reason, the *Ictech-Bendeck* class members are not and never will be bound by the judgment in *Addison.* Nothing in *Corrugated Container* suggests that a loss by the Plaintiffs in *Addison* would result in opt-outs in *Ictech-Bendeck.*

To get around the fact that *Addison* and *Ictech-Bendeck* are separate cases, Petitioners assert that the "bar on trial before certification fully applies to closely related individual actions." Petition at 18, citing four cases. But none of the cases they cite actually involved that issue. In the first, the plaintiffs "filed a single complaint bringing a collective action under the Fair Labor Standards Act … and parallel state-law claims that they wished to pursue as a class action under Rule 23." *In re Citizens Bank, N.A.*, 15 F.4th 607, 610–11 (3d Cir. 2021). *Citizens Bank* was one case, not separate individual cases. The second case, *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990) did not involve the issue of trial coming before class certification at all (the court ruled in that case that a class could not be certified for trial, id. at 712). In the third case, the court dismissed a suit that the plaintiffs had decided not to prosecute. *Byerson v. Equifax Information Servs.*, LLC, No. 6:07-CV-00005-GRA, 2009 WL 82497, at *2 (D.S.C. Jan. 9, 2009). That case involved no issue as to whether the trial had to await the certification of a class in a separate case. To the contrary, the plaintiffs were not members of the class in the other case, and had just decided wait to see what happened in the other case before devoting money

EXHIBIT 1

to their own case. If anything, the holding in *Byerson* supports the conclusion that *Addison* should proceed, regardless of the procedural posture of *Ictech-Bendeck*. *See id.* at *2. Finally, in the fourth case, the court concluded that class certification should be addressed before ruling on dispositive summary judgment motions in the class action case. *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-MD-2836, 2021 WL 9870367, at *9 (E.D. Va. May 7, 2021). The case presented no issue that the required certification in the class action case affected the trial date of a separate non-class action case.

As a result, the so-called concern about one-way intervention has no application to *Addison* and has no support in either fact or law.

### C. Petitioners waived any argument of one-way intervention by pursuing a judgment on the merits on their dispositive defense.

Although it is true that, in general, issues relating to class certification should be decided before a decision on the merits is rendered in a class action case, it is also true that the defendant can waive this right. *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 45 (W.D.N.Y. 2009). Here, in addition to seeking judgments in their favor against several hundred *Addison* Plaintiffs, the Petitioners participated in the adjudication of General Causation (their publicly advertised dispositive defense), over the course of three years, including discovery, motion practice and trial, all without uttering the words "one-way intervention" even once.

EXHIBIT 1

Because the General Causation trial involved a dispositive defense, the Petitioners' failure to raise one-way intervention was a waiver. *Rodriguez v. GC Pizza LLC*, No. 4:20-CV-3106, 2022 WL 4368353, at *7 (D. Neb. Sept. 21, 2022) ("The defendant cannot pick and choose when it is protected from one-way intervention. By making arguments about the reasonableness of the IRS rate in Nebraska, the defendant argued the merits of the case and waived its Rule 23(c) protection."). *See Hamm v. Mercedes-Benz USA, LLC*, No. 5:16-CV-03370-EJD, 2019 WL 4751911, at *9 (N.D. Cal. Sept. 30, 2019) ("[W]hen a defendant proceeds with a motion for summary judgment, the defendant proceeds at its peril, knowing that it may, in the absence of class certification, face the onrush of litigants who will not be bound by the summary judgment ruling. Therefore, the rationale for a one-way intervention rule disappears when the defendant moves for summary judgment before class certification. ").[15] In this case, there was a full-blown trial on Petitioners' supposedly dispositive defense, and Petitioners made no complaint about one-way intervention until after the court decided. *See also Alig v. Quicken Loans Inc*., No.

---

[15] Because Petitioners considered this issue dispositive, it was not an abuse of discretion for the District Court in this case to resolve General Causation first. *Curtin v. United Airlines, Inc*., 275 F.3d 88, 93 (D.C. Cir. 2001) ("where the merits of the plaintiffs' claims can be readily resolved on summary judgment, where the defendant seeks an early disposition of those claims, and where the plaintiffs are not prejudiced thereby, a district court does not abuse its discretion by resolving the merits before considering the question of class certification.")

EXHIBIT 1

5:12-CV-114, 2016 WL 10490288, at *9 (N.D.W. Va. Aug. 25, 2016) ("the defendants' late crying about the one-way intervention rule is simply a tactical ploy").

As a result, even if the one-way intervention argument applied to a non-class action case, Petitioners waived the argument long ago.

## V. THE POSSIBILITY OF THE APPLICATION OF COLLATERAL ESTOPPEL IN SOME FUTURE CASE DOES NOT GIVE PETITIONERS A CLEAR AND INDISPUTABLE RIGHT TO POSTPONE THE *ADDISON* TRIAL.

Petitioners next protest that they will be subject to claims of collateral estoppel in future cases (thus recognizing their ultimate liability). But that does not create a clear and indisputable right to postpone the *Addison* trial until after class certification in *Ictech-Bendeck.* One issue has no bearing on the other.[16]

---

[16] Like other issues, this is also an issue of Defendants' own making. These cases originated in Louisiana state court, and Louisiana law does not recognize the doctrine of collateral estoppel, *Welch v. Crown Zellerbach Corp.*, 359 So. 2d 154, 156 (La. 1978) ("Collateral estoppel is a doctrine of issue preclusion alien to Louisiana law."). If Defendants had not removed the cases from state court, Defendants would not have to fear collateral estoppel. For example, in *Alonzo v. State ex rel. Department of Natural Resources*, 2002-0527 (La. App. 4 Cir. 9/8/04), 884 So. 2d 634, 639, a group of plaintiffs did exactly what the Defendants here say they are afraid of—they brought a class action suit and moved for summary judgment based upon a prior judgment against the same defendants in a different case involving essentially the same facts. The court ruled that collateral estoppel could not be applied because Louisiana law does not recognize it. And res judicata could not apply because although "we have the same defendants in both cases, the plaintiffs in the respective cases are not the same." *See* La. Stat. Ann. § 13:4231 (res judicata requires "a valid and final judgment is conclusive between the same

EXHIBIT 1

To the contrary, the potential that collateral estoppel might be invoked at some point in the future, after multiple trials involving the same issue and the same defendants have all reached the same result, is a circumstance that faces all defendants whose conduct has injured multiple parties. It is just a feature of litigation in the federal courts. The time has not yet come to determine whether any of the judgments at the upcoming trials can be used in that manner in future cases. [17]

## VI. PETITIONERS DO NOT HAVE A CLEAR AND INDISPUTABLE RIGHT TO A STAY OF DISCOVERY IN *ADDISON* UNTIL AFTER CLASS CERTIFICATION IS DECIDED IN *ICTECH-BENDECK*.

Petitioners next contend that the *Addison* Plaintiffs should not be allowed to conduct discovery on merits issues until after class certification is decided in *Ictech-Bendeck* (and reviewed on appeal in this Court). There is no rule of procedure and no rule established in the case law requiring this result. Petitioners cannot establish a clear and indisputable right to this relief.

---

parties"). In federal court, by contrast, the collateral estoppel effect of a federal judgment is determined by federal common law. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009). Petitioners knew from the start that the litigation involved injuries to multiple people, and have contended from the start that they must all bring individual claims and not as a class. If they were so worried about collateral estoppel, they should have stayed in state court.

[17] Petitioners breathlessly assert that one-way invention is being allowed for "hundreds of thousands of potential class members." Petition at 17. Like most of their overheated rhetoric, Petitioners assertions are exaggerated.

EXHIBIT 1

To the contrary, the discovery complained of that relates to the merits of their liability will be required in both cases, whether or not a class is certified in *Ictech-Bendeck*. The District Court acted within its discretion to permit consolidated discovery in both cases, sooner rather than later.

## VII.   THERE IS NO IRREPARABLE HARM.

Petitioners assert that a trial in *Addison* before class certification in *Ictech-Bendeck* creates irreparable harm because of (1) indefinite tolling of the prescriptive period, (2) free-ranging merit discovery (3) frustration of appellate review and (4) the undermining of Petitioners due process and Seventh Amendment rights. None of this is correct.

### A.   The tolling of the prescription period resulted from Petitioners' own litigation strategy.

Petitioners have only themselves to blame for the extension of the prescriptive period. The rule that the filing of a class action lawsuit tolls limitations periods has been the law in this country for at least half a century. *See American Pipe*, *supra*. With full knowledge of the rule, Petitioners waived the requirement of a prompt motion to certify in the District Court's local rules and adopted a litigation strategy that postponed the decision on class certification for more than four years. Choosing to seek to defeat both *Addison* and *Ictech-Bendeck* on the merits with their

27

EXHIBIT 1

dispositive defense on General Causation, Petitioners treated class certification as a non-issue until after the District Court rejected its dispositive defense.

### B. Class certification in *Ictech-Bendeck* has no bearing upon the completion of discovery in *Addison.*

Petitioners assert that permitting merits discovery "prior to class certification is premature, violates Rule 23's limitation on the district court's inquiries before certification, and prejudices Petitioners from airing the evidence pertaining to liability before the putative class members know whether a class will be certified." Petition at 24. There are no class allegations in *Addison* and thus there are no limitations on discovery before certification imposed by Rule 23 in *Addison.* Because merits discovery will occur in *Addison*, and will occur sooner or later in *Ictech-Bendeck*, and because the facts establishing the liability of the Defendants is the same in both, it makes economic sense to the have the discovery on the liability issues conducted on a consolidated basis. This benefits the Petitioners. Documents have to be gathered and produced just once. Interrogatories have to be answered just once. Witnesses have to be deposed just once. So under the current CMO that Petitioners want vacated, common issue discovery (liability) is being conducted on a consolidated basis. **Pet.App.571.**

**EXHIBIT 1**

Petitioners fully participated in discovery in the General Causation phase, making no argument that its rights were somehow being violated. Having to respond in discovery is certainly not an irreparable harm, if indeed it is a harm at all.

### C. A trial in *Addison* neither frustrates appellate review nor irreparably undermines Petitioners' due process rights.

Petitioners contend that conducting a trial in *Addison* before class certification in *Ictech-Bendeck* "eviscerates" their "due process and Seventh Amendment protections" However, the certification (or not) of a class in *Ictech-Bendeck* cannot possibly have any effect upon the trial in *Addison.* The Seventh Amendment guarantees a right to trial by jury, and the upcoming trial in *Addison* is a jury trial. Petitioners have not identified any due process concern regarding the trial in *Addison.* In *Addison*, Petitioners will be entitled to seek Rule 54(b) certification and to appeal from the judgment. So it is not the "due process and Seventh Amendment protections" in *Addison* that Petitioners complain about.

Petitioners instead complain that somehow the verdict in *Addison* will affect their right to appeal the class certification order in *Ictech-Bendeck.* But appellate review of a certification order in *Ictech-Bendeck* will not be affected in any manner by the results of the trial in *Addison.* In other words, not only is there no irreparable harm, there is no harm at all resulting from conducting a trial in *Addison* before class certification occurs in *Ictech-Bendeck.*

EXHIBIT 1

And this is particularly true, when the delay in class certification in *Ictech-Bendeck* was sought, advocated for and agreed to by the Petitioners themselves.

> **D.      Conducting a trial in *Addison* in no way "frustrates the prospect of any fair settlement prospect."**

Despite having repeatedly recited the mantra that a trial of representative plaintiffs is a necessary prerequisite to settlement, as soon as Judge Morgan announced that a trial would occur this year, the Petitioners began objecting. Despite the fact that Petitioners themselves were fully involved in the process of selecting Plaintiffs whose cases are to be tried (they were entitled to select half of them), in this Court they condemn their own selections as "hand-picked" and non-representative. Despite having insisted upon detailed PFSs three years ago, Petitioners contend that that the PFSs that they prepared for the purpose of selecting "bellwether" plaintiffs are wholly insufficient.

Although Petitioners now use phrases like "blackmail settlements" and "judicial blackmail," Petitioners own conduct demonstrates that all the noise about needing "representative" cases for settlement is merely a pretense. In the five years that the litigation has been pending, Petitioners have yet to make any offer to any Plaintiff, and have not even suggested a framework for settlement. When they say that the prerequisite to a settlement offer is a trial, they utter in the same breath that

EXHIBIT 1

the prerequisite to a trial is the completion of everything else that can possibly occur in litigation.

Petitioners, of course, have the right to litigate the case to a judgment, and if that is their intention, then they should say so. Judge Morgan took the Petitioners at their word that they needed a trial of representative plaintiffs in order to evaluate their settlement position, and she scheduled just such a trial. Her reward was a Petition to this Court that there should be no trial at all. This Court should not be so persuaded. Because Petitioners have no actual interest in a negotiated resolution, it should not matter to them which Plaintiffs go first.

The *Addison* cases should proceed to trial.

## VIII. CONCLUSION.

For the foregoing reasons, the Petition should be denied.

Dated: April 26, 2023

Respectfully submitted,

        S. Eliza James
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
FORREST CRESSEY & JAMES, LLC
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com

EXHIBIT 1

nicholas@fcjlaw.com
eliza@fcjlaw.com

_____/s/ Eric C. Rowe_____
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Erik D. Bolog (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@wtplaw.com
erowe@wtplaw.com
ebolog@wtplaw.com
mchilders@wtplaw.com

*Counsel For Addison Plaintiffs*

## CERTIFICATION OF COMPLIANCE

1. This document complies with the type-volume limit of Rule 21(d) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), the document contains 7,530 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has this document has been prepared in a proportionally spaced typeface using Microsoft Word in a 14 point Times New Roman Font.

_____/s/ S. Eliza James_____

**EXHIBIT 1**

EXHIBIT 1

## CERTIFICATE OF SERVICE

I certify that the foregoing document was served on counsel for the Petitioners by filing the same through the Court's electronic filings system, and by electronic mail as follows:

David J. Schenck
Christopher D. Kratovil
DYKEMA GOSSETT PLLC
1717 Main Street, Suite 4200
Dallas, TX 75201

Michael C. Mims (#33991)
LISKOW & LEWIS, APLC
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139

Megan R. Brillault
John H. Paul
BEVERIDGE & DIAMOND, P.C.
825 Third Ave, 16th Floor
New York, NY 10022

James B. Slaughter
BEVERIDGE & DIAMOND, P.C.
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000
*Attorneys for Petitioners Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

Michael S. Futrell
Matthew D. Moghis
CONNICK AND CONNICK, LLC
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
E-mail: moghis@connicklaw.com
*Attorneys for Jefferson Parish*

Ernest P. Gieger, Jr.
John E. W. Baay
J. Michael DiGiglia
Nicholas S. Bergeron
GIEGER, LABORDE &
LAPEROUSE,
L.L.C.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*Attorneys for Petitioner Aptim Corp.*

_____/s/ S. Eliza James_____

34

**EXHIBIT 1**