## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FREDERICK ADDISON, ET AL.,** | * | |
| | * | |
| **PLAINTIFF,** | * | **CIVIL ACTION NO. 19-11133,** |
| | * | **c/w 19-14512** |
| **VERSUS** | * | |
| | * | |
| **LOUISIANA REGIONAL LANDFILL** | * | |
| **COMPANY, ET AL.,** | * | **JUDGE MORGAN** |
| | * | |
| **DEFENDANTS.** | * | **MAGISTRATE** |
| | * | **JUDGE NORTH** |
| *APPLIES TO: ALL CASES* | * | |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO EXCLUDE IMPROPER OPINION AND HEARSAY EVIDENCE

Defendants Aptim Corp., Jefferson Parish, Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc. (collectively, "Defendants"), respectfully submit this memorandum in support of their motion seeking exclusion of improper opinion and hearsay evidence that Plaintiffs intend to offer at trial.

Among other issues, Plaintiffs intend to present the jury with improper opinion and hearsay evidence regarding the opinions of individuals within the Louisiana Department of Environmental Quality ("LDEQ") about the source of odors experienced in Jefferson Parish. Plaintiffs have retained experts to testify on these issues, and should not be allowed to duplicate their expert testimony with the opinions of LDEQ individuals, because it would constitute hearsay, improper opinion testimony from witnesses not disclosed as experts, and would confuse the jury and lead them to believe that a state agency has already resolved one of the key issues to be litigated at trial.

## I.   <u>Fact Witnesses Cannot Give Scientific Opinion Testimony.</u>

Plaintiffs should be precluded from eliciting scientific or technical opinion testimony from anyone other than those persons they have disclosed as expert witnesses. Plaintiffs' will-call witness list includes several *fact* witnesses from whom, Defendants anticipate, Plaintiffs will seek to elicit scientific or technical opinion testimony, despite these witnesses having never authored an expert report and never having appeared on an expert witness list. Such witnesses include, but are not limited to, the following:

1. Dr. Chuck Carr Brown (former Secretary of the LDEQ)

2. Mike Algero (former Southeast Regional Office Manager for the LDEQ)

3. Holly Hermann (environmental scientist at LDEQ)

4. Wayne Desselle (environmental scientist at LDEQ)

5. Rick Buller (former landfill engineer at the Jefferson Parish Landfill ("JPLF"))

6. Brian DeJean (landfill engineer at the River Birch Landfill)

7. Kris Carlson (former environmental consultant to Jefferson Parish and current landfill engineer at JPLF)

8. Vic Culpepper (environmental scientist)

9. Joseph Kanter, M.D. (former chief health officer, medical director, and regional medical director of the Louisiana Department of Health)

10. Dale L. Steib (environmental engineer)

11. Dr. Mark Yocke (environmental scientist who served as a Rule 26 testifying expert for the Waste Connections Defendants at the general causation phase, but who appears on no party's expert witness list for the specific causation phase)

12. Dr. Jeffrey Marshall (environmental engineer who served as a Rule 26 testifying expert for the Waste Connections Defendants at the general causation phase, but who appears on no party's expert witness list for the specific causation phase)

(hereinafter, "Credentialed Lay Witnesses").

Two prominent examples are Dr. Brown and Mr. Algero. Defendants anticipate that Plaintiffs will attempt to elicit scientific opinions from Dr. Brown and Mr. Algero regarding the source of odors in Jefferson Parish during the relevant time period. Plaintiffs' proposed exhibits include an October 2018 letter in which Dr. Brown writes: "[A] significant source of odors originated from Jefferson Parish Landfill although there may be other contributors," and "[t]he odor issues appear to be attributable to sulfur compounds, which are associated with the natural decomposition of wastes at municipal solid waste landfills."[1] Plaintiffs' proposed exhibits also include a transcript and video of Dr. Brown making similar statements at a December 2018 Jefferson Parish Council meeting, where he stated "[R]ight now, there's no doubt in my mind . . . that the major source [of the odors] is the Jefferson Parish Landfill."[2] Mr. Algero echoed Dr. Brown's statements to the New Orleans Advocate, where he opined: "The reason we believe Jefferson Parish('s landfill) is a significant source of the odors is because of the significant amount of non-compliance associated with that facility."[3]

As discussed further below, these statements are textbook inadmissible hearsay – but even if Dr. Brown or Mr. Algero testify live at trial, they must not be allowed to give the above opinions, as Plaintiffs have not disclosed these witnesses, or any of the Credentialed Lay Witnesses, as expert witnesses as required by the federal rules. *See* Fed. R. Civ. P. 26(a)(2)(A) ("a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."); *Hamburger v. State Farm Mut. Auto. Ins.*

---

[1] *See* October 31, 2018 Letter from Dr. Brown to Sen. Appel at p. 3, attached hereto as Exhibit 1.

[2] *See* Transcript of LDEQ's Statements at December 5, 2018 Parish Council Meeting at pp. 5-6, attached hereto as Exhibit 2.

[3] Chad Calder, *Contractor at Jefferson Parish Landfill accuses DEQ of bias in blaming odors on the Landfill*, NEW ORLEANS ADVOCATE (Dec. 21, 2018), attached hereto as Exhibit 3. An online version of the article is also available at the following url:  https://www.nola.com/news/contractor-at-jefferson-parish-landfill-accuses-deq-of-bias-in-blaming-odors-on-the-landfill/article_754743da-9a4b-5106-a819-b465a9db8830.html.

*Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (trial court properly excluded treating physician's opinion that car accident caused plaintiff's herniated disc, as physician was never disclosed as an expert witness).

Crucially, FRCP 26's requirement to disclose all experts does not merely apply to retained experts of the sort who must author reports[4] – it applies to *all* witnesses who will offer scientific or technical opinions, even those who were personally involved in the facts at issue. *Hamburger*, 361 F.3d at 884. This includes treating physicians, *see Hamburger supra,* or as relevant here, regulators, engineers, and scientists, Fed. R. Civ. P. Rule 26(A)(2)(a) ("a party must disclose to the other parties the identity of *any witness* it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." (emphasis added)). When a party has no justification for its failure to timely disclose an expert witness, exclusion of the expert testimony is proper. *Hamburger*, 361 F.3d at 884; *Palmisano, LLC v. N. Am. Capacity Ins. Co.*, No. 19-12755, 2021 WL 2073515, at *6 (E.D. La. Apr. 29, 2021) (Milazzo, J.) (prohibiting witnesses who were not disclosed as experts under FRCP 26 from testifying as expert witnesses).

Because the Credentialed Lay Witnesses have never been disclosed as expert witnesses, at most they should be allowed to testify to facts within their knowledge and perhaps certain personal non-scientific perceptions which are helpful to the jury. *See* Fed. R. Evid. 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

---

[4] FRCP Rule 26(A)(2)(B) requires an expert to author a report if the expert was "retained or specially employed to provide expert testimony." The advisory committee notes identify treating physicians as an example of a witness who is not required to produce an expert report – however, disclosure as an expert witness is required for *all* witnesses who intend to offer scientific or technical testimony, even if a report is not required. *See Hamburger,* 361 F.3d at 884.

> **(c) not based on scientific, technical, or other specialized**
> **knowledge within the scope of Rule 702.**

(emphasis added); *see also U.S. Xpress, Inc. v. Am. Field Serv. Corp.*, No. 3:07CV13-SA, 2008 WL 2714635, at *4 (N.D. Miss. June 26, 2008) (lay witness permitted to testify as to facts within his knowledge but prohibited from offering opinion testimony requiring specialized or technical knowledge). Whether opinion testimony rests on scientific, technical, or other specialized knowledge turns on "whether the testimony falls within the realm of knowledge of the average lay person." *United States v. Caldwell*, 586 F.3d 338, 348 (5th Cir. 2009). Said differently, a person may testify as a lay witness *only* if his "opinions or inferences ... could be reached by any ordinary person." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996) (quoting *Brady v. Chemical Constr. Corp.*, 740 F.2d 195, 200 (2d Cir. 1984)).

As to Dr. Brown and Mr. Algero, their opinions on the source of odors were purportedly reached through the collection of air samples, analysis of wind direction, and "extrapolations" conducted by the LDEQ[5] – although the actual data that LDEQ relied on in making these statements remains unclear, as the conclusion that JPLF was "the primary source" was never published in any formal analysis or finding of fact by LDEQ. Regardless, these are not lay opinions. Instead, they are "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). To the extent any of the Credentialed Lay Witnesses are asked to testify on matters of a scientific or technical nature, such testimony would also constitute expert testimony under FRE 702 which must not be allowed given Plaintiffs' failure to disclose them as experts as required by FRCP 26.

---

[5] *See* Exhibit 2 at p. 5.

Here, all parties have retained experts who were disclosed pursuant to FRCP 26, authored reports, and have been subjected to *Daubert* scrutiny. If Plaintiffs wanted to elicit scientific or technical opinions from Dr. Brown or Mr. Algero (or any of the other Credentialed Lay Witnesses), they should have complied with FRCP 26 and, at the very least, listed them as expert witnesses.[6] Plaintiffs failed to do so for any of the Credentialed Lay Witnesses, and therefore they must not be allowed to give testimony based on scientific, technical, or other specialized knowledge.

## II.   **LDEQ's Prior Statements Are Inadmissible Hearsay.**

Defendants also respectfully request that various statements of LDEQ be excluded as hearsay, including the following:

- Interviews given by LDEQ representatives to the media[7];

- Unsworn statements given by LDEQ representatives to the Jefferson Parish Council[8];

- October 31, 2018 letter from Dr. Brown to Senator Appel;[9] and

- November 8, 2018 e-mail from LDEQ representative Bijan Sharafkhani to Keith Conley.[10]

As set forth below, the above evidence is inadmissible hearsay and should be excluded from trial.

### A.  **LDEQ's interviews given to the media are hearsay.**

Plaintiffs' exhibit list includes numerous media reports, all of which should be excluded as textbook inadmissible hearsay.  *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005).

---

[6] Plaintiffs' failure to disclose the Credentialed Lay Witnesses as expert witnesses alone justifies exclusion of any of their scientific or technical opinions. The Court need not determine whether the Credentialed Lay Witnesses are the sorts of witnesses from whom expert reports were required as a prerequisite to offering expert opinions. *See Hamburger,* 361 F.3d at 884 (although expert report was arguably not required from treating physician, plaintiff's failure to list the witness as an expert warranted exclusion of any scientific or technical opinions).

[7] Exhibit 3.

[8] Exhibit 2.

[9] Exhibit 1.

[10] *See* November 8, 2018 email from Bijan Sharafkhani to Kevin Conley, attached hereto as Exhibit 4.

For example, Plaintiffs intend to introduce a December 21, 2018 article from the New Orleans Advocate, "Contractor at Jefferson Parish landfill accuses DEQ of bias in blaming odors on the landfill."[11] The article contains out-of-court statements of journalist Chad Calder, including quotes attributed to Mr. Algero. The article quotes Mr. Algero as stating: "The reason we believe Jefferson Parish('s landfill) is a significant source of the odors is because of the significant amount of non-compliance associated with that facility."[12]

Rule 801 defines hearsay as an out-of-court statement introduced to prove the truth of the matter asserted. Hearsay statements generally are inadmissible. Fed. R. Evid. 802. The Fifth Circuit has explicitly held that newspaper articles are "classic, inadmissible hearsay" not proper for introduction into evidence. *Roberts,* 397 F.3d at 295.

Defendants anticipate that, in violation of FRE 801 and 802, Plaintiffs will offer these out-of-court media statements to prove that JPLF was a significant source of odors and the truth of other matters asserted therein. Absent a showing of an applicable hearsay exception – and none apply here – all of the media reports offered by Plaintiffs should be excluded, including the aforementioned December 21, 2018 article.

### B. Dr. Brown's letter to Senator Appel is hearsay.

Next, the Court should exclude as hearsay the October 31, 2018 letter from Dr. Brown to Senator Appel.[13] The letter contains Dr. Brown's out-of-court statements giving his opinion that the JPLF is a "significant" source of the odor complaints in Jefferson Parish. Defendants anticipate that the Trial Plaintiffs will offer those out-of-court statements to prove the truth of the matter asserted, namely that the JPLF indeed was the source of the odors. Thus, Dr. Brown's written

---

[11] Exhibit 3.

[12] *Id*.

[13] *See* Exhibit 1.

statements contained in the October 31, 2018 letter to Senator Appel should be excluded from trial as inadmissible hearsay.

### C. LDEQ's unsworn statements to the Jefferson Parish Council are hearsay.

Third, the Court should exclude evidence of unsworn statements given by LDEQ at Jefferson Parish Council meetings, including the statements made on December 5, 2018 by Dr. Brown and Mr. Algero, which appear on Plaintiffs' exhibit list.[14] As explained above, Dr. Brown and Mr. Algero gave multiple opinions on the source of the odors, including Dr. Brown's statement that "there's no doubt in my mind . . . that the major source [of the odors] is the Jefferson Parish Landfill."[15] These are out-of-court statements that Plaintiffs will offer to prove the truth of the matter asserted, making them inadmissible hearsay under FRE 801 and 802.

### D. LDEQ's e-mail correspondence is hearsay.

Fourth, the Court should exclude as hearsay the November 8, 2018 e-mail from LDEQ representative Bijan Sharafkhani to Keith Conley, which contains opinions about operations of the JPLF and his opinion that JPLF is "*the* significant source of odor" in Jefferson Parish.[16] Like the letter written by Dr. Brown, this email contains out-of-court statements from LDEQ representative Mr. Sharafkhani regarding his opinion that the JPLF was a "significant source" of odor complaints.[17] Defendants anticipate that these out-of-court statements will be offered to prove the truth of the matter asserted in those statements, making them inadmissible hearsay.

---

[14] *See* Exhibit 2.

[15] Exhibit 2 at pp. 5-6.

[16] *See* Exhibit 4 (emphasis added).

[17] *See id.*

### E.  LDEQ's statements are more prejudicial than probative.

Even if a hearsay exception applies as to LDEQ's "source of the odors" statements discussed above – which none do – they should be excluded because any probative value in LDEQ's statements would be substantially outweighed by their potential to cause unfair prejudice under FRE 403. *See* Fed. R. Evid. 403 (a court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, [and/or] misleading the jury . . .").

Given their role as public officials, the statements of LDEQ representatives will necessarily cause the jury to give their statements inordinate weight regarding critical issues in this trial. Despite the credentials of these LDEQ representatives, they are not expert witnesses in this case. The parties have instead retained expert witnesses to opine on the source of the odors and other scientific issues. The opinions of the parties' expert witnesses have been the subject of expert reports and depositions and have been subjected to scrutiny under FRE 702 and *Daubert* principles. Those efforts will be for naught if the jury is allowed to review LDEQ statements on these same "source of the odor" issues – especially since the opinions of these LDEQ representatives were not subjected to FRCP 26 disclosures, were not set out in an expert report, and were not subjected to FRE 702 scrutiny.

The Fifth Circuit has recognized that, "[a]t the heart of the hearsay rule is the policy against depriving a party of his right to cross-examine a witness." *United States v. Black*, 436 F.2d 838, 840 (5th Cir. 1971). To this day, LDEQ has never clarified what data supports the conclusion that JPLF was "the major" source of the odors complained of in Jefferson Parish – a conclusion that LDEQ has only ever expressed in unsworn verbal statements and informal correspondence, but never in a formal report or other finding of fact. Defendants would be substantially prejudiced if Plaintiffs' experts were allowed to parrot sweeping, generalized statements from LDEQ

officials, without Defendants having the opportunity to cross examine those officials as to what data they relied on in reaching their conclusions. Such prejudice would substantially outweigh any probative value of LDEQ's "source of the odors" opinions, as Plaintiffs already have experts to speak on this issue – and therefore the evidence should be excluded under FRE 403.

**F.  Plaintiffs cannot use their experts to sneak in hearsay evidence.**

Finally, Plaintiffs have previewed that they intend to use their expert witnesses to introduce evidence of the LDEQ statements discussed above[18] – but federal law does not allow litigants to use their experts to sneak in hearsay evidence.

Expert opinions may be based on facts or data of a type reasonably relied upon by experts in their field, even if those sources are not admissible evidence. *United States v. Gresham*, 118 F.3d 258, 266 (5th Cir. 1997) (citing Fed. R. Evid. 703). Thus, in some circumstances, an expert witness may rely on inadmissible hearsay evidence to develop her opinion. *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996) (citing *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1309 (5th Cir. 1991)). An expert's reliance on inadmissible hearsay, however, *does not* render the hearsay itself admissible. "Rule 703 was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) (internal marks and citations omitted). The rule "was never intended to allow oblique evasions of the hearsay rule." *Id.*

---

[18] *See, e.g.,* ECF Doc. 568-2 (expert report of Dr. DeLorenzo), in which Dr. DeLorenzo explained that he relied on, among other things, the statements of LDEQ "confirming the landfill as the primary source of emissions," in reaching his conclusion that "the Jefferson Parish Landfill was the source of a substantial portion of the hydrogen sulfide and VOC exposures experienced by the trial plaintiffs" (citing Jefferson Parish Council meeting of 12/15/2018, testimony of LDEQ Secretary Chuck Carr Brown). Other Plaintiff experts have made similar statements in both their expert reports and their depositions.

Rather, an expert may only disclose otherwise inadmissible facts or data on which she relies "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703; *Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co*., No. CV 17-5109, 2018 WL 947660, at *2 (E.D. La. Feb. 16, 2018) (precluding expert from testifying as to hearsay evidence).[19]

The Trial Plaintiffs cannot show that the probative value of the inadmissible evidence that their experts relied on substantially outweighs the prejudicial effect. Instead, the opposite is true. *See supra* Section II.E. In light of such prejudice, FRE 703 requires that such hearsay be excluded, even if Plaintiffs' experts relied on it.

## CONCLUSION

Based on the above and foregoing, Defendants respectfully request that this Court grant their Motion *in Limine* as to the matters set forth herein.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:   /s/ Michael C. Mims
         Michael Cash (#31655)
         Cherrell Simms Taplin (#28227)
         Michael C. Mims (#33991)
         Brady M. Hadden (#37708)
         Alec N. Andrade (#38659)
         J. Hunter Curtis (#39150)
         701 Poydras Street, Suite 5000
         New Orleans, LA 70139
         Telephone: (504) 581-7979
         Telefax: (504) 556-4108

---

[19] Crucially, although this language is reminiscent of FRE 403, the burden is flipped. *See* FRE 403 (a court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of … unfair prejudice . . ."). In contrast, under FRE 703, the proponent of the evidence must show that the probative value "substantially outweighs [the] prejudicial effect." *See Associated Terminals of St. Bernard, LLC v. Potential Shipping HK Co.*, No. CV 17-5109, 2018 WL 947660, at *2 (E.D. La. Feb. 16, 2018) ("Ford has not demonstrated, or even argued, that the probative value of the objected-to statement in the email in assisting the Court evaluate his liability expert's opinion substantially outweighs its prejudicial effect.").

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

CONNICK AND CONNICK, LLC

By:    /s/ Michael S. Futrell
       William P. Connick, La. Bar No. 14158
       Michael S. Futrell, La. Bar No. 20819
       Matthew D. Moghis, La. Bar No. 33994
       Anya M. Jones, La. Bar No. 36923
       3421 N. Causeway Blvd., Suite 408
       Metairie, Louisiana 70002
       Telephone: (504) 681-6658
       Facsimile: (504) 838-9903
       E-mail: moghis@connicklaw.com

*Counsel for Defendant Jefferson Parish*

GIEGER, LABORDE & LAPEROUSE, L.L.C.

By:    /s/ J. Michael DiGiglia
       Ernest P. Gieger, Jr. (6154)
       John E. W. Baay (22928)
       J. Michael DiGiglia (24378)

Nicholas S. Bergeron (37585)
Blaise Chadwick Hill (*pro hac vice*)
Gieger, Laborde & Laperouse, L.L.C.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

*Attorneys for Defendant Aptim Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on July 17, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

By:   /s/ Michael C. Mims