UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FREDERICK ADDISON, ET AL | * | CIVIL ACTION |
|    Plaintiffs | * | |
| | * | NO. 19-11133 c/w 19-14512 |
| VERSUS | * | |
| | * | SECTION "E" (5) |
| LOUISIANA REGIONAL LANDFILL COMPANY, ET AL | * | |
| | * | JUDGE: MORGAN |
| | * | |
| | * | MAGISTRATE: NORTH |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO EXCLUDE INTRODUCTION OF THE COMPLIANCE ORDERS ISSUED BY THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY</u>**

Plaintiffs intend to offer into evidence in this matter that the Louisiana Department of Environmental Quality ("LDEQ") issued compliance orders regarding the Jefferson Parish Landfill on June 22, 2018, September 18, 2018, and March 11, 2019. Such evidence is inadmissible under Federal Rules of Evidence 403 and 802. As shown herein, such evidence and testimony is more prejudicial than probative as the compliance orders come from an official governmental agency, do not concern a complete investigation, require a separate adjudication process, and seek to give an opinion as to the ultimate issue in this case by offering a legal conclusion, which is the sacred role of the jury. For the reasons set forth, Defendants' Motion in Limine to Exclude Introduction of the Compliance Orders issued by the LDEQ should be granted.

**I.  The compliance orders rendered by the Louisiana Department of Environmental Quality are more prejudicial than probative and are not admissible under Federal Rule of Evidence 403.**

As it pertains to the instant matter, LDEQ issued compliance orders on June 22, 2018, September 18, 2018, and March 11, 2019, which delineate various alleged deviations from regulation at the JPLF. While these compliance orders may arguably be relevant under Federal

1

Rules of Evidence 401 and 402, this evidence should be excluded under Federal Rule of Evidence 403 on the grounds that issuance of these compliance orders is significantly more prejudicial than probative.

Federal Rule of Evidence 403 states, "Although relevant, evidence may be excluded if its **probative value is substantially outweighed by the danger of unfair prejudice**, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

Louisiana courts have held that when evidence is presented by an agency that has an official nature, it has the capability to be more prejudicial than probative because a jury places great weight on the evidence coming from an official agency. No doubt, the Plaintiffs intend to present this evidence in an effort to convince the jury either directly or by inference that this governmental regulatory agency has already determined that violations occurred at the JPLF. Impermissibly suggesting adoption of the agency's incomplete findings creates a risk of high prejudice significantly outweighing any purported probative value and, therefore, such evidence is inadmissible.

In *Curtis v. M&S Petroleum, Inc.,* the plaintiffs sought to introduce Mississippi Department of Environmental Quality (MDEQ) reports concerning violations of environmental regulations as evidence of the defendants' negligence or negligence per se.[1] The district court in *Curtis*, excluded this evidence under Federal Rule of Evidence 403 because the probative value of the evidence was outweighed by its potential prejudice.[2] The court found that the MDEQ evidence was cumulative and had very little probative value; therefore, the risk of admitting the evidence outweighed the beneficial effects.[3] The plaintiffs sought to introduce the MDEQ records to show that the refinery

---

[1] *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 672 (5th Cir.1999),
[2] *Id.* at 672-73
[3] *Id.* at 673.

2

was not equipped to process certain substances and that the refinery did not have the proper permits.[4] The plaintiffs introduced other evidence of the refinery's deficiencies in its ability to process certain substances and that the refinery lacked the proper permits.[5] Further, the district court concluded that the MDEQ reports of likely violations of environmental regulations would have been unduly prejudicial due to MDEQ having an **apparent official nature**.[6] The Fifth Circuit Court of Appeals concluded that the district court did not abuse its discretion in excluding the MDEQ reports.[7]

This is the exact premise as to why the LDEQ compliance orders must be excluded at trial in this case. The LDEQ is a governmental agency with an apparent official nature. Plaintiffs seek to introduce the compliance orders to show that an official agency, which Plaintiffs will argue should be afforded deference, has determined alleged deficiencies exist at the JPLF. Further, these compliance orders are cumulative and offer little probative value compared to the balance of other evidence Plaintiffs will seek to introduce during trial, all of which will be presented to the jury in connection with witness testimony that bear upon the alleged violations at the JPLF. Nevertheless, *Carter* is not the only example of supporting jurisprudence on this issue.

In *Sprankle v. Bower Ammonia & Chem. Co.*, the defendant filed a motion asking the district court to exclude evidence that included Occupational Safety and Health Administration (OSHA) regulations governing the handling of substances, and the sanctions imposed by OSHA for violating OSHA regulations.[8] The district court excluded the OSHA regulations, but allowed the plaintiff's expert to use the OSHA standard and violations as underlying data for his opinion.[9] The

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Sprankle v. Bower Ammonia & Chem. Co.*, 824 F.2d 409, 416 (5th Cir.1987).
[9] *Id.*

3

district court concluded the jury would undoubtedly place great weight upon the fact that OSHA is a governmental agency which follows governmental regulations. Thus, the district court held, the danger of the jury placing undue emphasis on the OSHA regulations substantially outweighed their probative value and warranted exclusion, pursuant to Federal Rule of Evidence 403.[10] The Fifth Circuit affirmed, reasoning that, "The district court acted within its discretion in determining it would be unfairly prejudicial and misleading to allow Sprankle to use the OSHA regulations."[11]

Additionally, in *Fowler v. Firestone Tire & Rubber Co.*, the plaintiff sought to introduce reports prepared by the National Highway Traffic Safety Administration.[12] The district court, held that the reports were promulgated by agencies of the United States government, and their apparent "official" nature is likely to cause a jury to give the evidence inordinate weight, and for this reason, any probative value the evidence might have would be far outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.[13] The reports prepared by the governmental agency in Fowler, therefore, were deemed inadmissible under Rule 403.[14]

Like in all these cases, allowing Plaintiffs in this case to present to the jury the LDEQ compliance orders would be, at least, cumulative and, at worst, significantly prejudicial to Defendants. Plaintiffs seek to use the compliance orders to establish that there existed issues with leachate, inadequate cover, etc., which caused Plaintiffs' alleged damages. However, the fact that compliance orders were issued by the LDEQ is duplicative of the testimony that fact witnesses will present during trial bearing upon Plaintiffs' allegations of inadequate coverage and other alleged issues at the JPLF. Further, the compliance orders only name Jefferson Parish, due to it

---

[10] *Id.*
[11] *Id.* at 417.
[12] *Fowler v. Firestone Tire & Rubber Co.*, 92 F.R.D. 1 (N.D. Miss.1980).
[13] *Id.* at 2.
[14] *Id.* at 2.

4

being the permit holder, as the party responsible for the issues when there were other parties allegedly involved with the alleged deficiencies associated with the JPLF. Certainly, Plaintiffs will present evidence that there were alleged deficiencies at the JPLF. But to allow the presentation of the LDEQ compliance orders is cumulative, unnecessary, and highly prejudicial to the Defendants—especially given the apparent official nature of the LDEQ as a government agency and the resultant undue deference the jury will afford the LDEQ as to the issues identified in these compliance orders unnecessarily viewed as a per se violation of environmental regulations on the part of the Defendants. This evidence is unduly prejudicial and therefore should be excluded.

Like in *Sprankle*, Plaintiffs can use the information obtained from the reports concerning the alleged deficiencies at the JPLF, but they should not be allowed to introduce the compliance orders from an official government agency setting forth the violations and the punishment imposed for the violations. Additionally, like in *Fowler*, the jury is likely to give the compliance orders an inordinate amount of weight because they come from an agency with an "official nature." The risk of undue prejudice is high and the Court should exclude the LDEQ compliance orders from trial pursuant to Rule 403.

II. **The compliance orders from the Louisiana Department of Environmental Quality are classified as hearsay under Federal Rule of Evidence 802 and the compliance orders should be inadmissible because they lack trustworthiness, which is required to be an exception to hearsay under Rule 803(8).**

These documents should also be excluded from trial insofar as they constitute inadmissible hearsay under Federal Rule of Evidence 802. To the extent that the Plaintiffs contend that these documents are somehow excepted from the rule against hearsay under Federal Rule of Evidence 803(8) as a public record, that argument does not apply here. Federal Rule of Evidence 803(8) excepts the following from the rule against hearsay:

A record or statement of a public office if:

(A) it sets out:
    (i)      the office's activities;
    (ii)     a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
    (iii)    In a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
(B) the opponent does not show that the source of information or other circumstances indicate a lack of **trustworthiness.**

In this case, the LDEQ's compliance orders lack trustworthiness and therefore should not be admissible under the hearsay exception for Public Records. In determining trustworthiness, courts look to "(1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivational problems."[15]

In *Lacey v. Arkema, Inc.*, the plaintiff filed a Motion in Limine to prohibit certain OSHA reports containing citations from being presented to the jury.[16] The court determined that the OSHA Citation is not a public record within the meaning of Rule 803(8). The court had concerns regarding the trustworthiness of the information that was contained in the citations.[17] Although the court accepted OSHA as a trustworthy "source of information," it identified other circumstances indicating a lack of trustworthiness.[18] The court stated,

> Issuance of this Citation does ***not*** constitute a finding that a violation of the Act has occurred *unless* there is a failure to contest as provided for in the Act *or,* if contested, *unless* this Citation is affirmed by the Review Commission or a court… You have the right to *contest* this Citation and Notification of Penalty... they suggest that the "official" that issued the citation is not assumed to have "special skill or expertise" because the citation is subject to further administrative and/or judicial review; second, they indicate that "a hearing was [not] held," at any level; and, third, they suggest a sensitivity to "possible motivational problems"—such as bias on the part of the inspector—by providing for due process through further, independent review.[19]

---

[15] *Moss v. Ole S. Real Est., Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991); see also *Lacey v. Arkema Inc.*, 2014 WL 1327792, at *5 (M.D. La. Mar. 31, 2014).
[16] *Lacey v. Arkema Inc.*, 2014 WL 1327792, at *5 (M.D. La. Mar. 31, 2014).
[17] *Id.*
[18] *Id.*
[19] *Id.*

Based on the foregoing reasoning, the court held that the OSHA Citation was not admissible under Rule 803(8) because it lacked trustworthiness.[20]

Additionally, in *Mays v. Chevron Pipe Line Co.*, the plaintiff moved to exclude the OSHA citation issued to the plaintiff's employer on the ground that the citation was inadmissible hearsay.[21] The Court held that the OSHA citation at issue did not fall under the public record exception because the citation was **non-final**, and it contained no "factual findings."[22] The court further stated that even if the citation contained factual findings, it would nevertheless conclude that the citation is not admissible because it had reason to question the trustworthiness of the information in the citation.[23] The motion to exclude the OSHA citation was granted.[24]

The issue of trustworthiness is readily apparent in the LDEQ's compliance orders. Indeed, the compliance orders issued on June 22, 2018, September 18, 2018, and March 11, 2019, provide "the investigation by the Department is not yet complete,"[25] and provides that the Parish has "a right to an adjudicatory hearing."[26] Given the fact that the compliance orders clearly indicate a lack of finality in the investigation and the ultimate adjudication of the alleged violations, they constitute inadmissible hearsay outside the benefit of the public record exception to the hearsay rule and, therefore, should be excluded.

---

[20] *Id.*
[21] *Mays v. Chevron Pipe Line Co.*, CV 14-03098-BAJ-CBW, 2019 WL 244327, at *1 (W.D. La. Jan. 16, 2019).
[22] *Id.* at 1.
[23] *Id.*
[24] *Id.*
[25] See Compliance Order from September 18, 2018, attached hereto as Exhibit "A," See Compliance Order from June 22, 2018, attached hereto as Exhibit "B," and See Compliance Order from March 11, 2019, attached hereto as Exhibit "C."
[26] See Exhibit "A," Exhibit "B," and Exhibit "C."

**III.     The compliance orders from the Louisiana Department of Environmental Quality render a legal conclusion as to the ultimate issue in the case and therefore invade the province of the jury.**

The role of the jury in any trial is sacred. The jury in a civil case is the finder of fact and the Court is the keeper of the law. [27] Rule 704(a) provides: "Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact." [28] "However, Fifth Circuit case law is clear that Rule 704(a) 'does not allow a witness to give legal conclusions.'"[29] In this case, LDEQ's Compliance Orders give legal conclusions as to the ultimate issue in this case, (*i.e.,* whether Defendants are negligent based on alleged violations of industry and/or regulatory standards in connection with operations at the JPLF), which is for the jury to determine. Therefore, the Compliance Orders should be excluded.

In *In re Midland Enterprises, Inc.*, an expert report set forth various opinions regarding safety issues and ultimately that the defendants failed to observe the OSHA practices, which represented a breach of the standard of care.[30] When evaluating the expert opinion, the court recognized that the proposed expert testimony indicated that such violations constitute unseaworthiness and negligence, which are impermissible legal conclusions.[31] The court held that testimony that offers a legal opinion is inadmissible.[32] The expert testimony at issue was consequently restricted by the court because an expert cannot render a legal conclusion, which is the ultimate issue the jury must decide.[33]

---

[27] See, *Prestenbach v. Chios Challenge Shipping & Trading* S.A., 2005 WL 517445, at *7 n.19 (E. D La. Feb. 24, 2005).
[28] Fed. R. Evid. 704.
[29] *Shawler v. Ergon Asphalt & Emulsions, Inc.,* No. 15-2599, 2016 WL 1019121, at *10 (E.D. La. Mar. 15, 2016).
[30] *In re Midland Enterprises, Inc.*, CIV.A. 00-3750, 2002 WL 31780156, at *1 (E.D. La. Dec. 11, 2002).
[31] *Id.* at 3.
[32] *Id.*
[33] See *Id.*

8

Similarly, by using the compliance orders issued by the LDEQ, Plaintiffs seek to circumvent the role of the fact finder and present legal conclusions couched in governmental agency documents. Notwithstanding the risk of prejudice resulting from unavoidable deference to official agency acts, allowing the jury to view these compliance orders will encourage a presumption of fault against Defendants—because the LDEQ determined that Defendants were at fault for failure to comply, so will we. No matter, the LDEQ compliance orders render legal conclusions as to the alleged deficiencies at the JPLF and resultant regulatory violations for same. They should, therefore, be excluded from trial.[34]

**IV.    The use of evidence from the LDEQ's investigation including settlement negotiations or settlement to prove the validity of a disputed claim is prohibited by Federal Rule of Evidence 408.**

Communications between parties concerning settlement discussions is inadmissible during trial as that information could tend to establish liability, which is for the factfinder to determine. Using information from settlement negotiations would not foster open communication with fear that such a discussion of settlement could be used against a party during litigation. According to Federal Rule of Evidence 408:

(a) Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim…[35]

---

[34] Although in a slightly different, though arguably persuasive, context, numerous courts, particularly this Court, have precluded admission of expert opinions as to a party's violation of applicable standards and regulations. *See, e.g., Douglas v. Chem Carriers Towing, LLC*, 431 F. Supp.3d 830, 838 (E.D. La. 2019) (Vance, J.) (excluding expert's opinion that defendant violated federal law); *U.S. Alliance Grp., Inc. v. Cardtronics USA, Inc.*, 645 F. Supp. 3d 554, 562 (E.D. La. 2022) (Vance, J.) (excluding expert's opinion on, *inter alia*, whether a party violated California law).
[35] Fed. R. Evid. 408.

The rule as reported makes evidence of settlement or attempted settlement of a disputed claim inadmissible when offered as an admission of liability, as the purpose of this rule is to encourage settlements which would be discouraged if such evidence were admissible.[36]

In *Lyondell Chem. Co. v. Occidental Chem. Corp.,* the Fifth Circuit found error in the district court's admissions of settlement communications.[37] In *Lyondell*, a disposal company was transporting waste to a dumping site known as Turtle Bayou, the EPA began an investigation into contamination at this dumping site, and a suit was brought seeking to compel clean-up of the dumping area.[38] Reports were generated in an effort to resolve issues of relative responsibility and contained information that was made during settlement negotiations.[39] The district court admitted the reports into evidence, but the Fifth Circuit reversed, holding that,

> [T]he offering of settlement evidence arising out of a shared factual nexus and bearing directly on present issues of liability between many of the same parties falls within Rule 408's prohibition. Effective dispute resolution requires frank and full discussion of relevant evidence. Making the content of such a discussion available for use in related litigation would invite the very situation that Rule 408 is designed to avoid, and worse… reduce the likelihood that responsible parties would volunteer to right their environmental wrongs."[40]

In this case, the LDEQ compliance orders may contain information pertaining to settlement, and the law is clear that settlement evidence is inadmissible as it would not promote the public policy favoring an attempt to settle disputes or correcting environmental wrongs. Any documents and evidence pertaining to settlement discussions should excluded

---

[36] Fed. R. Evid. 408 Comments.

[37] *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 288 (5th Cir. 2010).

[38] *Id.* at 296.

[39] *Id.* at 288.

[40] *Id.* at 299.

## CONCLUSION

For these reasons, Plaintiffs should be prohibited from offering the LDEQ compliance orders at trial because they are significantly more prejudicial than probative, constitute hearsay and lack trustworthiness necessary to fall under an exception to the hearsay rule, and render legal conclusions which invades the province of the jury. The LDEQ compliance orders of June 22, 2018, September 18, 2018, and March 11, 2019, should, therefore, be excluded from evidence.

| | |
|---|---|
| **CERTIFICATE OF SERVICE** | Respectfully submitted, |
| I HEREBY CERTIFY that a copy of the foregoing pleading was served upon all counsel of record in the parties named herein through the Court's ECF system. | **CONNICK AND CONNICK, LLC** |
| | _____/s/ Michael S. Futrell_____ |
| | W. PETER CONNICK, LA. BAR NO. 14158 |
| | MICHAEL S. FUTRELL, LA. BAR NO. 20819 |
| Metairie, Louisiana, this 17th day of July 2024. | MATTHEW D. MOGHIS, LA. BAR NO. 33994 |
| | ANYA M. JONES, LA. BAR NO. 36923 |
| | 3421 N. Causeway Boulevard, Suite 408 |
| | Metairie, Louisiana 70002 |
| | Telephone:   (504) 681-6663 |
| _____/s/ *Michael S. Futrell*_____ | Facsimile:    (504) 838-9903 |
| MICHAEL S. FUTRELL | E-mail:   *mfutrell@connicklaw.com* |
| | *moghis@connicklaw.com* |
| | *Counsel for Defendant, Jefferson Parish* |

**GIEGER, LABORDE & LAPEROUSE, L.L.C.**

By:   /s/ Nicholas S. Bergeron
      Ernest P. Gieger, Jr. (6154)
      John E. W. Baay (22928)
      J. Michael DiGiglia (24378)
      Nicholas S. Bergeron (37585)
      Blaise Chadwick Hill (*pro hac vice*)
      Gieger, Laborde & Laperouse, L.L.C.
      Hancock Whitney Center
      701 Poydras Street, Suite 4800
      New Orleans, Louisiana 70139
      Telephone: (504) 561-0400
      Facsimile: (504) 561-1011
      *Attorneys for Defendant Aptim Corp.*