

JOHN BEL EDWARDS
GOVERNOR

CHUCK CARR BROWN, PH.D.
SECRETARY

# State of Louisiana
### DEPARTMENT OF ENVIRONMENTAL QUALITY
### OFFICE OF ENVIRONMENTAL COMPLIANCE

September 18, 2018

CERTIFIED MAIL (7012 2210 0001 1915 8381)
RETURN RECEIPT REQUESTED

**JEFFERSON PARISH GOVERNMENT**
c/o The Honorable Michael S. Yenni, Parish President
1221 Elmwood Park Blvd., Suite 1002
Jefferson, LA 70123

RE: **CONSOLIDATED COMPLIANCE ORDER
& NOTICE OF POTENTIAL PENALTY
ENFORCEMENT TRACKING NO. MM-CN-18-00614
AGENCY INTEREST NO. 6961**

Dear Sir:

Pursuant to the Louisiana Environmental Quality Act (La. R.S. 30:2001, et seq.), the attached **CONSOLIDATED COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY** is hereby served on **JEFFERSON PARISH GOVERNMENT (RESPONDENT)** for the violation(s) described therein.

Compliance is expected within the maximum time period established by each part of the **COMPLIANCE ORDER**. The violation(s) cited in the **CONSOLIDATED COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY** could result in the issuance of a civil penalty or other appropriate legal actions.

Any questions concerning this action should be directed to Antoinette Cobb at (225) 219-3072.

Sincerely,

Celena J. Cage
Administrator
Enforcement Division

CJC/AFC/KAO/BKB
Alt ID Nos. 1340-00140; D-051-0090; P-0297R1-M7; & LAR05M138
Attachment

**EXHIBIT A**

Post Office Box 4312 • Baton Rouge, Louisiana 70821-4312 • Phone 225-219-3715 • Fax 225-219-3708
www.deq.louisiana.gov

c:  Jefferson Parish Department of Environmental Affairs
c/o Mr. Michael Lockwood, MSPH, Director
834 S. Clearview Parkway
Harahan, LA 70123

WC_JPLF_00163803

STATE OF LOUISIANA
DEPARTMENT OF ENVIRONMENTAL QUALITY

OFFICE OF ENVIRONMENTAL COMPLIANCE

| | |
|---|---|
| IN THE MATTER OF | |
| JEFFERSON PARISH GOVERNMENT | ENFORCEMENT TRACKING NO. |
| JEFFERSON PARISH | |
| ALT ID NOS. 1340-00140; D-051-0090; | MM-CN-18-00614 |
| P-0297R1-M7; & LAR05M138 | |
| | AGENCY INTEREST NO. |
| PROCEEDINGS UNDER THE LOUISIANA | |
| ENVIRONMENTAL QUALITY ACT, | 6961 |
| La. R.S. 30:2001, ET SEQ. | |

## CONSOLIDATED

## COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY

The following **CONSOLIDATED COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY** is issued to **JEFFERSON PARISH GOVERNMENT (RESPONDENT)** by the Louisiana Department of Environmental Quality (the Department), under the authority granted by the Louisiana Environmental Quality Act (the Act), La. R.S. 30:2001, et seq., and particularly by La. R.S. 30:2025(C), 30:2050.2 and 30:2050.3(B).

### FINDINGS OF FACT

I.

The Respondent owns and/or operates a landfill known as the Jefferson Parish Sanitary Landfill located at 5800 Highway 90 West in Avondale, Jefferson Parish, Louisiana. The facility is a Type I/II landfill permitted to accept municipal solid waste, commercial solid waste, non-hazardous industrial waste, trash, construction debris, vegetative waste, dewatered municipal wastewater sludge, and compatible non-hazardous industrial waste. The landfill is currently operating under Solid Waste Standard Permit P-0297R1. The Respondent was granted coverage under Louisiana Pollutant Discharge Elimination System (LPDES) Multi-Sector General Permit (MSGP) for Storm Water Discharges Associated with Industrial Activities LAR050000 on May 27, 2011, and was specifically assigned permit number LAR05M138. LPDES MSGP LAR05M138 expired on May 3, 2016, and was administratively continued. LPDES MSGP LAR05M138 was reissued to the Respondent on September 6, 2016, with an

expiration date of May 8, 2021. Under the terms and conditions of LPDES MSGP LAR05M138, the Respondent is authorized to discharge storm water associated with industrial activities into waters of the state. Louisiana Regional Landfill Company f/k/a IESI LA Landfill Corporation (Operator) operates the facility. The facility operates or has operated under the authority of the following Title V Air Permits:

| UNIT | PERMIT | ISSUE DATE | PERMIT EXPIRATION DATE |
|---|---|---|---|
| Facility | 1340-00140-V7 | 07/15/2016 | 06/23/2020 |
| | 1340-00140-V6 | 06/23/2015 | 06/23/2020 |
| | 1340-00140-V5 | 12/29/2014 | 08/17/2015 |
| | 1340-00140-V4 | 08/17/2010 | 08/17/2015 |

II.

**COMPLIANCE ORDER SE-C-18-00372** was issued to the Respondent on or about June 22, 2018, for violations noted during inspections conducted on or about April 27, 2018, and April 30, 2018. The Respondent received **COMPLIANCE ORDER SE-C-18-00372** on or about July 9, 2018, and requested an adjudicatory hearing on or about July 27, 2018. The Department and the Respondent entered into informal dispute resolution discussions on August 29, 2018.

III.

The Department conducted inspections on or about July 31, 2018 and August 7, 2018 at the above referenced facility, and conducted a subsequent file review on or about September 13, 2018, to determine the degree of compliance with the Act and the Solid Waste Regulations. While the investigation by the Department is not yet complete, the following violations were noted during the course of the inspections and file review:

A. The Respondent failed to properly operate the leachate collection system, in accordance with Part II, Sections 521.C.2.b and 521.G.2.a of the Solid Waste Permit Application, in violation of Conditions 7 & 8 of Standard Permit P-0297R1, and LAC 33:VII.901.A. Specifically, representatives of the Respondent stated at the time of the August 7, 2018 inspection that approximately thirty (30) percent of the facility's leachate pumps were not operational. Additionally, representatives of the Respondent stated that leachate pump motors are continuously burning out due to backpressure caused by the inadequate size of the force main. According to the Landfill Gas System Assessment for the Jefferson Parish Landfill prepared by Carlson Environmental Consultants (CEC), the Respondent's third party engineering

WC_JPLF_00163805

consultant, dated August 15, 2018, only sixteen (16) out of thirty-four (34) leachate riser pumps were in operation at the time of the CEC inspection.

B. The Respondent failed to maintain the leachate head in a pumped-down condition such that not more than one (1) foot of head exists above the lowest elevation of the leachate collection lines, in accordance with Part II, Section 521.E.3.f and 521.G.2.a of the Solid Waste Permit Application, in violation of Conditions 7 & 8 of Standard Permit P-0297R1, and LAC 33:VII.901.A. Specifically, according to the Solid Waste Permit Application, leachate levels are maintained through the use of leachate pumps containing integral level controls calibrated to maintain less than one (1) foot of head within the leachate sumps which are inspected on a monthly basis to ensure proper operation. According to the CEC report, only sixteen (16) out of thirty-four (34) leachate riser pumps were in operation at the time of the CEC inspection which is a less than fifty (50) percent rate of pump availability.

C. The Respondent failed to maintain on-site and provide records of the results of the quarterly gas emission monitoring, in accordance with Part II, Sections 521.E.5 and 521.F.1.a of the Solid Waste Permit Application, in violation of Conditions 7 & 8 of Standard Permit P-0297R1, LAC 33:VII.711.D.3.a.v, and LAC 33:VII.901.A. Specifically, during the August 7, 2018 inspection, the Respondent did not provide records of the results of the quarterly gas emission monitoring.

IV.

The Department conducted inspections on or about August 2, 2018 and August 10, 2018 at the above referenced facility, and conducted a subsequent file review on or about August 28, 2018, to determine the degree of compliance with the Act and the Water Quality Regulations. While the investigation by the Department is not yet complete, the following violations were noted during the course of the inspections and file review:

A. The Respondent caused and/or allowed the discharge of leachate into the Waggaman Canal, waters of the state, through storm water Outfall 011 on December 27, 2017. The leachate seep originated several hundred feet uphill from Outfall 011 at the transition between Phase 3B and Phase 4A. Phase 3B has final cover installed. Phase 4A is an active landfill area and has interim cover installed. The transition between the phases has a two (2) to three (3) foot elevation difference over a very small distance. The rainfall runoff channeled along the interface and gradually eroded the interim cover allowing leachate to begin seeping. The unauthorized discharge of leachate is a violation of La. R.S. 30:2075.

WC_JPLF_00163806

B. The August 28, 2018 file review revealed that the Respondent exceeded effluent limitations. These effluent limitation exceedances, as reported by the Respondent on annual Discharge Monitoring Reports (DMRs) and a Non-Compliance Report (NCR), are summarized in the following table:

| Monitoring Period | Outfall | Parameter | Permit Limit | Reported Value |
|---|---|---|---|---|
| 2017 | 003-Y | TSS (Monthly Avg.) - mg/L | 27 | 35 |
| | 007-Y | TSS (Monthly Avg.) - mg/L | 27 | 311.5 |
| | | TSS (Daily Max.) - mg/L | 88 | 326 |
| | 007A-Y | TSS (Monthly Avg.) - mg/L | 27 | 104 |
| | | TSS (Daily Max.) - mg/L | 88 | 148 |

Each effluent limitation exceedance is a violation of LPDES MSGP LAR05M138 (Best Management Practices, Limitations, and Monitoring Requirements, Table 3, Sector L, Pages 36-37 of 122; and Standard Permit Conditions for LPDES Permits, Section A.2), La. R.S. 30:2076(A)(3), and LAC 33:IX.501.A.

C. The August 28, 2018 file review revealed the Respondent failed to conduct benchmark sampling for the first, second, and third quarters of 2017 for Outfalls 002, 003, 006, 007, 007A, 008, 009, 010, 011, and 012 in accordance with LPDES MSGP LAR05M138. Specifically, the Respondent is required by LPDES MSGP LAR05M138 to sample once per quarter for Total Suspended Solids and Total Iron for each outfall. Each failure to sample is a violation of (Best Management Practices, Limitations, and Monitoring Requirements, Table 3, Sector L, Pages 36-37 of 122; and Standard Permit Conditions for LPDES Permits, Section A.2), La. R.S. 30:2076 (A)(3), and LAC 33:IX.501.A.

D. The August 10, 2018 inspection revealed that the Respondent had an inadequate Storm Water Pollution Prevention Plan (SWPPP). Specifically, the Respondent failed to establish corrective actions for Total Suspended Solids and Total Iron benchmark effluent exceedances for the fourth quarter of 2017. The Respondent was using natural background concentrations for these two (2) parameters to offset the benchmark effluent exceedances; however, the Respondent did not meet the criteria of the permit for establishing natural background locations. Specifically, LPDES MSGP LAR05M138 requires that the natural background samples must be collected from a non-human impacted reference site upstream of the facility or a non-human impacted reference site in a comparable stream within the same watershed. The reference sample sites used by the Respondent were clustered around the facility and could have been influenced by the facility storm water outfalls and an adjacent landfill's storm water outfalls.

4

The exceedances could not be attributed solely to natural background pollutant levels; therefore, corrective actions were required to be taken and the SWPPP updated accordingly. The failure to implement an adequate SWPPP is a violation of LPDES MSGP LAR05M138 Best Management Practices, Limitations, and Monitoring Requirements, Section 3.4; and Standard Permit Conditions for LPDES Permits, Section A.2), La. R.S. 30:2076(A)(3), and LAC 33:IX.501.A.

E. The August 28, 2018 file review revealed that the Respondent failed to submit annual DMRs for Outfalls 002, 003, 006, 007, 007A, 008, 009, 010, 011, and 012 for 2015, and for Outfall 012 for 2016. Each failure to submit a DMR is a violation of LPDES MSGP LAR05M138 (Sections 7.1 and 9.1 prior to September 6, 2016; Evaluations, Record Keeping, and Reporting, Section 5.5 and Standard Permit Conditions for LPDES Permits, Section A.2 after September 6, 2016), La. R.S. 30:2076 (A)(3), and LAC 33:IX.2701.L.4.a.

V.

The Department conducted inspections on or about November 14, 2013 and August 28, 2018 at the above referenced facility, and conducted a subsequent file review on or about August 29, 2018, to determine the degree of compliance with the Act, the Air Quality Regulations, and all applicable permits. While the investigation by the Department is not yet complete, the following violations were noted during the course of the inspections and file review:

A. The Respondent operated the 11 engines listed in the table below prior to submitting a permit application and receiving authorization from the Department.

| FACILITY ENGINE DESCRIPTION | LOCATION | ENGINE HP | FUEL | ACTUAL HOURS OF OPERATION |
|---|---|---|---|---|
| 6" Pump 1 | Phase 4A | 67-74 | Diesel | 310 |
| 6" Pump 2 | Phase 4A | 67-74 | Diesel | 150 |
| 6" Pump 3 | Phase 4A | 67-74 | Diesel | 150 |
| 3" Pump 1* | Phase 4A | 8.5 | Gas | 25 |
| 3" Pump 2* | Phase 4A | 8.5 | Gas | 30 |
| 3" Pump 3* | Phase 4A | 8.5 | Gas | 25 |
| 3" Pump 4* | Phase 4A | 8.5 | Gas | 25 |
| Pressure Washer* | Maintenance Shop | 23 | Gas | 30 |
| Generator 1 | In Front of Office | 31.5 | Diesel | 25 |
| Generator 2* | Phase 4A | 5.5 | Gas | 50 |
| Light Plant* | Phase 4A | 11.7-13.1 | Diesel | 350 |

Failure to submit a permit application to the permitting authority prior to the construction, reconstruction, or modification is a violation of LAC 33:III.501.C.1 and

5

La. R.S. 30:2057(A)(2). The unauthorized operation of each engine is a violation of LAC 33:III.501.C.2, and La. R.S. 30:2057(A)(1) and 30:2057(A)(2). The Respondent submitted a permit application dated February 18, 2014, requesting a permit modification, which included, but was not limited to adding the above engines to the permit. The Respondent submitted a revised permit application dated April 2, 2014. In the revised application, the Respondent noted the application was revised as the result of an initial review and discussions with the Department. Several of the engines were determined to be "non-road" engines, not emissions sources (denoted with an asterisk) and therefore, were not required to be permitted. Title V Permit No. 1340-00140-V5 was issued on December 29, 2014.

B. The Respondent failed to submit the Title V 2016 First Semiannual Monitoring Report by the September 30, 2016 due date. The report was postmarked April 6, 2018. The Respondent is required to submit a semiannual report by September 30th for the preceding period encompassing January through July. Failure to comply with the reporting requirement is a violation of Specific Requirement 121 of Title V Permit No. 1340-00140-V6, LAC 33:III.535, LAC 33:III.501.C.4, and La. R.S. 30:2057(A)(2).

C. The Respondent failed to submit the Title V 2017 Second Semiannual Monitoring Report. The Respondent is required to submit a semiannual report by March 31st for the preceding period encompassing July through December. The report was due by March 31, 2018. Failure to comply with the reporting requirement is a violation of Specific Requirement 141 of Title V Permit No. 1340-00140-V7, LAC 33:III.535, LAC 33:III.501.C.4, and La. R.S. 30:2057(A)(2).

D. The Respondent failed to submit the Title V 2017 Annual Compliance Certification. The Respondent is required to submit a compliance certification to the Department by March 31st for the preceding calendar year. The report was due by March 31, 2018. Failure to comply with the reporting requirement is a violation of Specific Requirement 141 of Title V Permit No. 1340-00140-V7, LAC 33:III.535, LAC 33:III.501.C.4, and La. R.S. 30:2057(A)(2).

E. The Respondent failed to diligently maintain control equipment. Specifically, during the August 28, 2018 inspection, emissions were detected from the flange on Leachate Riser #20-N with a FLIR infrared (IR) camera. The MultiRAE Model PGM-6208 gas detector was used to monitor the emissions escaping from the flange detected $H_2S$ emissions of 13.6 ppm and a 99% Lower Explosive Limit (LEL). This is a violation of LAC 33:III.905.A.

F. The Respondent failed to diligently maintain control equipment. Specifically, during the August 28, 2018 inspection, Leachate Riser #20-S was open-ended with the cap located on the

6

ground beneath the riser. The IR camera detected emissions escaping from the opening of the riser. The MultiRAE Model PGM-6208 gas detector detected $H_2S$ emissions in excess of 20 ppm and a 99% LEL. This is a violation of LAC 33:III.905.A.

VI.

New Source Performance Standards (NSPS) for Municipal Solid Waste (MSW) Landfills, 40 CFR 60, Subpart WWW mandates operational standards for collection and control systems. In addition to a temperature standard, 40 CFR 60.753(c) requires each interior wellhead in the collection system to be operated with a nitrogen level less than twenty (20) percent or an oxygen level less than five (5) percent unless a higher level is established by the owner or operator. 40 CFR 60.755(a)(5) requires the owner or operator to monitor each well monthly for temperature and nitrogen or oxygen. If a well exceeds one of the operating parameters, action must be initiated within five (5) calendar days to correct the exceedance. If the exceedance cannot be corrected within fifteen (15) calendar days of the first measurement, the gas collection system shall be expanded to correct the exceedance within 120 days of the initial exceedance. The aforementioned federal regulation allows the owner or operator to submit an alternative timeline for correcting the exceedance for approval. The table below lists the Respondent's alternative timeline submissions to correct oxygen exceedances:

| DATE OF ALTERNATIVE TIMELINE REQUEST | WELL ID | DATE OF INITIAL EXCEEDANCE | 120-DAY COMPLIANCE DEADLINE | ALTERNATIVE DEADLINE REQUESTED | DATE OF DEPARTMENT APPROVAL | APPROVED DEADLINE |
|---|---|---|---|---|---|---|
| 03/13/2014 | 304 | 07/30/2013 | 11/27/2013* | 90 days from 03/13/2014 | 05/24/2014 | 90 days from 04/01/2014 [06/30/2014] |
|  | 348 | 07/30/2013 | 11/27/2013* |  |  |  |
|  | 349 | 07/30/2013 | 11/27/2013* |  |  |  |
|  | 358 | 07/29/2013 | 11/26/2013* |  |  |  |
| 12/19/2014 | 305 | 06/19/2014 | 10/17/2014 | 150 days from 12/19/2014 | 01/14/2015 | 120 days the approval date, 05/14/2015 |
| 06/23/2015 | 137 | 02/24/2015 | 06/24/2015 | 150 days from 06/23/2015 | 07/27/2015 | 120 days from the approval date, 11/24/2015 |
|  | 146 |  |  |  |  |  |
|  | 148 |  |  |  |  |  |
|  | 151 |  |  |  |  |  |
|  | 362 |  |  |  |  |  |
| 01/21/2016 | 393 | 10/15/2015 | 02/12/2016 | 150 days from 01/21/2016 | N/A | N/A |
|  | 397 |  |  |  |  |  |
|  | 399 | 11/06/2015 | 03/05/2016 |  |  |  |
|  | 423 |  |  |  |  |  |
|  | 424 |  |  |  |  |  |
| 04/15/2016 | 348 | 12/28/2015 | 04/26/2016 | 150 days from 04/15/2016 | N/A | N/A |
|  | 362 | 12/28/2015 | 04/26/2016 |  |  |  |
|  | 416 | 12/31/2015 | 04/29/2016 |  |  |  |
| 10/11/2016 | 135 | 06/23/2016 | 10/21/2016 | 150 days from 10/11/2016 | N/A | N/A |

WC_JPLF_00163810

| DATE OF ALTERNATIVE TIMELINE REQUEST | WELL ID. | DATE OF INITIAL EXCEEDANCE | 120-DAY COMPLIANCE DEADLINE | ALTERNATIVE DEADLINE REQUESTED | DATE OF DEPARTMENT APPROVAL | APPROVED DEADLINE |
|---|---|---|---|---|---|---|
| 12/08/2016 | 362 | 08/31/2016 | 12/29/2016 | 150 days from 12/08/2016 | N/A | N/A |
|  | 374 |  |  |  |  |  |
|  | 423 |  |  |  |  |  |
| 04/25/2017 | 362 | 08/31/2016 | 12/29/2016** | 120 days from 04/25/2017 | 06/09/2017 | 120 days from the date of the request |
| 05/11/2017 | 323 | 01/30-31/2017 | 05/30-31/2017 | 150 days from 05/11/2017 | 06/09/2017 | 150 days from the date of the request |
|  | 348 |  |  |  |  |  |
| 07/05/2017 | 135 | 04/27/2017 | 08/25/2017 | 90 days from 08/25/2017 | 08/04/2017 | 90 days |
| 08/28/2017 | 362 | *** | *** | 180 days | 11/07/2017 | 180 days from the expiration date of the previously approved timeline (08/23/2017) |
| 12/21/2017 | 396 | 09/28/2017 | 01/26/2018 | 05/20/2018 | 02/14/2018 | 05/20/2018 |
|  | 136 | 09/29/2017 | 01/27/2018 |  |  |  |
|  | 145 | 09/29/2017 | 01/27/2018 |  |  |  |
|  | 304 | 09/29/2017 | 01/27/2018 |  |  |  |
|  | 348 | 09/29/2017 | 01/27/2018 |  |  |  |
|  | 349 | 09/29/2017 | 01/27/2018 |  |  |  |
|  | 412 | 09/29/2017 | 01/27/2018 |  |  |  |
|  | 416 | 09/29/2017 | 01/27/2018 |  |  |  |
|  | 421 | 09/29/2017 | 01/27/2018 |  |  |  |
|  | 422 | 09/29/2017 | 01/27/2018 |  |  |  |
|  | 321 | 10/17/2017 | 02/14/2018 |  |  |  |
|  | 420 | 10/19/2017 | 02/16/2018 |  |  |  |
| 02/08/2018 | 423 | 11/21/2017 | 03/21/2018 | 120 days from 02/08/2018 [07/08/2018] | 06/05/2018 | 07/08/2018 |
|  | 427 | 11/21/2017 | 03/21/2018 |  |  |  |
|  | 104 | 12/22/2017 | 04/21/2018 |  |  |  |
|  | 119 | 12/22/2017 | 04/21/2018 |  |  |  |
|  | 206 | 12/27/2017 | 04/26/2018 |  |  |  |
|  | 374 | 12/27/2017 | 04/26/2018 |  |  |  |
|  | 393 | 12/27/2017 | 04/26/2018 |  |  |  |
|  | 417 | 12/29/2017 | 04/28/2018 |  |  |  |

\* Requests for alternative timelines to correct the exceedances were submitted to the Department on or about November 7, 2013, and November 25, 2013

\*\* Initial request for an alternative timeline to correct the exceedance was sent to the Department on or about on December 8, 2016

\*\*\* Alternative approved timeline expired August 23, 2017.

VII.

In correspondences dated May 18, 2018, and July 2, 2018, the Respondent requested alternative timelines to address exceedances of the oxygen concentration at five (5) wells listed in the table below:

| WELL ID | OPERATING PARAMETER | INITIAL EXCEEDANCE DATE | REPORTED CAUSE |
|---|---|---|---|
| 412 | Collection System (interior wellhead): Nitrogen <20% or Oxygen <5% | 09/29/2017* | Oxygen concentration >5%. Exceedance attributed to the well being watered-in with leachate. As a result, the perforation on the well casing was blocked and limited gas flow. |

8

| WELL ID | OPERATING PARAMETER | INITIAL EXCEEDANCE DATE | REPORTED CAUSE |
|---|---|---|---|
| 421 | Collection System (Interior wellhead): Nitrogen <20% or Oxygen <5% | 09/29/2017* | Oxygen concentration >5%. Well 421 was watered-in with leachate. As a result, the perforations on the well casing were blocked and limited gas flow. |
| 422 | Collection System (Interior wellhead): Nitrogen <20% or Oxygen <5% | 09/29/2017* | Oxygen concentration >5%. Exceedance attributed to the well being watered-in with leachate. As a result, the perforation on the well casing was blocked and limited gas flow. |
| 420 | Collection System (Interior wellhead): Nitrogen <20% or Oxygen <5% | 10/19/2017* | Oxygen concentration >5%. Exceedance attributed to the well being watered-in with leachate. As a result, the perforation on the well casing was blocked and limited gas flow. |
| 427 | Collection System (Interior wellhead): Nitrogen <20% or Oxygen <5% | 11/21/2017** | Oxygen concentration >5%. Exceedance attributed to the well being watered-in with leachate. As a result, the perforation on the well casing was blocked and limited gas flow. |
| 154 | Collection System (Interior wellhead): Nitrogen <20% or Oxygen <5% | 03/27/2018 | Oxygen concentration >5%. Well 154 was watered-in with leachate. As a result, the perforation on the well casing was blocked and limited gas flow. |
| 155 | Collection System (Interior wellhead): Nitrogen <20% or Oxygen <5% | 03/27/2018 | Oxygen concentration >5%. Well 155 was watered-in with leachate. As a result, the perforation on the well casing was blocked and limited gas flow. |
| 156 | Collection System (Interior wellhead): Nitrogen <20% or Oxygen <5% | 03/27/2018 | Oxygen concentration >5%. Well 156 was watered-in with leachate. As a result, the perforation on the well casing was blocked and limited gas flow. |
| 321 | Collection System (Interior wellhead): Nitrogen <20% or Oxygen <5% | 03/27/2018 | Oxygen concentration >5%. Well 321 was watered-in with leachate. As a result, the perforation on the well casing was blocked and limited gas flow. |

\* The Respondent submitted an initial alternative timeline request to the Department dated December 21, 2017. The Department approved the alternative timeline on February 14, 2018.
\*\* The Respondent submitted an initial alternative timeline request to the Department dated February 8, 2018. The Department approved the alternative timeline on June 5, 2018.

The Respondent requested an alternative timeline for Wells 412, 420, 421, 422 and other wells exhibiting oxygen levels greater than five (5) percent in correspondence dated December 21, 2017. The Respondent requested an additional 150 days to continue corrective actions. The Department approved the request on February 14, 2018, granting a May 20, 2018 deadline. The Respondent requested an alternative timeline for Well 427 and other wells exhibiting oxygen levels greater than five (5) percent in

9

correspondence dated February 8, 2018. The Department approved the request on June 14, 2018, granting an additional 150 days from the date of the request, February 8, 2018. The Respondent submitted a subsequent alternative timeline request dated May 18, 2018 to the Department requesting an additional 150 days until October 15, 2018 to continue corrective action for Wells 412, 420, 422, and 427. In correspondence dated July 2, 2018, the Respondent reported that Well 421 was excluded from the May 18, 2018 request and reported that an additional assessment of the well is scheduled for August-September 2018.

In the July 2, 2018 correspondence, the Respondent reported corrective actions were initiated within five (5) days of the initial exceedance date for Wells 154, 155, 156 and 321 by adjusting the throttle valves on the wellhead. In addition to adjusting the throttle valves on the wellhead, the Respondent reported that the watered in well(s) were pumped down on several occasions to aid in decreasing the oxygen content; subsequent re-monitoring still detected oxygen levels greater than five (5) percent. However, the exceedance could not be corrected within fifteen (15) days of the initial exceedance. The Respondent further reported that it believes expanding the gas collection system will not correct the exceedances at Wells 154, 155, 156, and 321. Additionally, and in the July 2, 2018 correspondence, the Respondent reported that additional assessment of the wells is scheduled for July-September 2018. The Respondent requested the deadline to address the exceedances be extended to November 29, 2018. In correspondence dated September 12, 2018, the Department denied the Respondent's May 18, 2018, and July 2, 2018 requests for alternative timelines to address the oxygen exceedances. Each failure to comply with the permitted operating parameters is a violation of 40 CFR 60.753(c), Specific Requirement 86 of Title V Permit No. 1340-00140-V7, LAC 33:III.501.C.4, and La. R.S. 30:2057(A)(2). Each failure to complete the corrective actions within 120 days of the initial exceedance and/or within the alternative timeline approved by the Department is a violation of 40 CFR 60.755(a)(5), Specific Requirement 91 of Title V Permit No. 1340-00140-V7, LAC 33:III.501.C.4, and La. R.S. 30:2057(A)(2)

## COMPLIANCE ORDER

Based on the foregoing, the Respondent is **hereby ordered:**

I.

To take, immediately upon receipt of this **COMPLIANCE ORDER**, any and all steps necessary to meet and maintain compliance with the Solid Waste Regulations and Standard Permit P-0297R1.

WC_JPLF_00163813

II.

To submit, within thirty (30) days after receipt of this **COMPLIANCE ORDER**, a comprehensive plan for the Department's approval addressing the repair and maintenance of the leachate collection system, including procedures to ensure the leachate levels are maintained less than one (1) foot above the lowest elevation of the leachate collection lines, and for the entire gas collection system. Such plan shall include specific corrective actions to be taken, and a critical path schedule for the achievement of compliance within the shortest time possible. The plan shall be submitted to the Office of Environmental Services, Waste Permits Division, Post Office Box 4313, Baton Rouge, Louisiana, 70821, Attention: Estuardo Silva, Administrator. The Respondent shall immediately implement the plan upon the Department's approval. The Respondent shall also submit a copy of the plan to the Enforcement Division.

III.

To institute procedures, immediately upon receipt of this **COMPLIANCE ORDER**, to ensure all records cited in **FINDINGS OF FACT** Paragraph III.C are maintained on-site, in accordance with Part II, Section 521.F.1.a of the Solid Waste Permit Application.

IV.

To immediately take, upon receipt of this **COMPLIANCE ORDER**, any and all steps necessary to achieve and maintain compliance with LPDES permit LAR05M138 and the Water Quality Regulations including, but not limited to, ceasing all unauthorized discharges, complying with all effluent limitations, sampling in accordance with permit requirements, implementing an adequate SWPPP, and submitting DMRs.

V.

To submit to the Department, within thirty (30) days after receipt of this **COMPLIANCE ORDER**, an adequate SWPPP following the requirements outlined in the LPDES MSGP LAR05M138 with regards to establishing natural background locations for adequate background sampling and/or establishing corrective actions.

VI.

To take, immediately upon receipt of this **COMPLIANCE ORDER**, any and all steps necessary to meet and maintain compliance with the Air Quality Regulations and all applicable permits.

WC_JPLF_00163814

VII.

To submit to the Enforcement Division, within thirty (30) days after receipt of this **COMPLIANCE ORDER**, the Title V 2017 2nd Semiannual Report and Title V 2017 Annual Compliance Certification as cited in Paragraph V.B-C of the **FINDINGS OF FACT** portion of this action.

VIII.

To submit to the Enforcement Division, within thirty (30) days after receipt of this **COMPLIANCE ORDER**, a written report identifying the date of completion for all corrective activities approved via alternative timeline as listed in Paragraph VI of the **FINDINGS OF FACT** portion of this action.

IX.

To submit to the Enforcement Division, within thirty (30) days after receipt of this **COMPLIANCE ORDER**, a written report that includes a detailed description of the circumstances surrounding the cited violation(s) and actions taken or to be taken to achieve compliance with the Order Portion of this **COMPLIANCE ORDER**. This report and all other reports or information required to be submitted to the Enforcement Division by this **COMPLIANCE ORDER** shall be submitted to:

> Office of Environmental Compliance
> Post Office Box 4312
> Baton Rouge, Louisiana 70821-4312
> **Attn: Antoinette Cobb**
> **Re: Enforcement Tracking No. MM-CN-18-00614**
> **Agency Interest No. 6961**

**THE RESPONDENT SHALL FURTHER BE ON NOTICE THAT:**

I.

The Respondent has a right to an adjudicatory hearing on a disputed issue of material fact or of law arising from this **COMPLIANCE ORDER**. This right may be exercised by filing a written request with the Secretary no later than thirty (30) days after receipt of this **COMPLIANCE ORDER**.

II.

The request for an adjudicatory hearing shall specify the provisions of the **COMPLIANCE ORDER** on which the hearing is requested and shall briefly describe the basis for the request. This request should reference the Enforcement Tracking Number and Agency Interest Number, which are located in the upper right-hand corner of the first page of this document and should be directed to the following:

WC_JPLF_00163815

Department of Environmental Quality
Office of the Secretary
Post Office Box 4302
Baton Rouge, Louisiana 70821-4302
**Attn: Hearings Clerk, Legal Division**
**Re: Enforcement Tracking No. MM-CN-18-00614**
   **Agency Interest No. 6961**

III.

Upon the Respondent's timely filing a request for a hearing, a hearing on the disputed issue of material fact or of law regarding this **COMPLIANCE ORDER** may be scheduled by the Secretary of the Department. The hearing shall be governed by the Act, the Administrative Procedure Act (La. R.S. 49:950, et seq.), and the Division of Administrative Law (DAL) Procedural Rules. The Department may amend or supplement this **COMPLIANCE ORDER** prior to the hearing, after providing sufficient notice and an opportunity for the preparation of a defense for the hearing.

IV.

This **COMPLIANCE ORDER** shall become a final enforcement action unless the request for hearing is timely filed. Failure to timely request a hearing constitutes a waiver of the Respondent's right to a hearing on a disputed issue of material fact or of law under Section 2050.4 of the Act for the violation(s) described herein.

V.

The Respondent's failure to request a hearing or to file an appeal or the Respondent's withdrawal of a request for hearing on this **COMPLIANCE ORDER** shall not preclude the Respondent from contesting the findings of facts in any subsequent penalty action addressing the same violation(s), although the Respondent is estopped from objecting to this **COMPLIANCE ORDER** becoming a permanent part of its compliance history.

VI.

Civil penalties of not more than twenty-seven thousand five hundred dollars ($27,500) for each day of violation for the violation(s) described herein may be assessed. For violations which occurred on August 15, 2004, or after, civil penalties of not more than thirty-two thousand five hundred dollars ($32,500) may be assessed for each day of violation. The Respondent's failure or refusal to comply with this **COMPLIANCE ORDER** and the provisions herein will subject the Respondent to possible enforcement procedures under La. R.S. 30:2025, which could result in the assessment of a civil penalty in an amount of not more than fifty thousand dollars ($50,000) for each day of continued violation or noncompliance.

WC_JPLF_00163816

VII.

For each violation described herein, the Department reserves the right to seek civil penalties in any manner allowed by law, and nothing herein shall be construed to preclude the right to seek such penalties.

## NOTICE OF POTENTIAL PENALTY

I.

Pursuant to La. R.S. 30:2050.3(B), you are hereby notified that the issuance of a penalty assessment is being considered for the violation(s) described herein. Written comments may be filed regarding the violation(s) and the contemplated penalty. If you elect to submit comments, it is requested that they be submitted within ten (10) days of receipt of this notice.

II.

Prior to the issuance of additional appropriate enforcement action(s), you may request a meeting with the Department to present any mitigating circumstances concerning the violation(s). If you would like to have such a meeting, please contact Antoinette Cobb at (225) 219-3072 within ten (10) days of receipt of this **NOTICE OF POTENTIAL PENALTY.**

III.

The Department is required by La. R.S. 30:2025(E)(3)(a) to consider the gross revenues of the Respondent and the monetary benefits of noncompliance to determine whether a penalty will be assessed and the amount of such penalty. Please forward the Respondent's most current annual gross revenue statement along with a statement of the monetary benefits of noncompliance for the cited violation(s) to the above named contact person within ten (10) days of receipt of this **NOTICE OF POTENTIAL PENALTY.** Include with your statement of monetary benefits the method(s) you utilized to arrive at the sum. If you assert that no monetary benefits have been gained, you are to fully justify that statement. If the Respondent chooses not to submit the requested most current annual gross revenues statement within ten (10) days, it will be viewed by the Department as an admission that the Respondent has the ability to pay the statutory maximum penalty as outlined in La. R.S. 30:2025.

IV.

The Department assesses civil penalties based on LAC 33:I.Subpart1.Chapter7. To expedite closure of this **NOTICE OF POTENTIAL PENALTY** portion, the Respondent may offer a settlement amount to resolve any claim for civil penalties for the violation(s) described herein. The Respondent may offer a settlement amount, but the Department is under no obligation to enter into settlement negotiations. The decision to proceed with a settlement is at the discretion of the Department. The settlement offer

WC_JPLF_00163817

amount may be entered on the attached **"CONSOLIDATED COMPLIANCE ORDER AND NOTICE OF POTENTIAL PENALTY REQUEST TO CLOSE"** form. The Respondent must include a justification of the offer. **DO NOT** submit payment of the offer amount with the form. The Department will review the settlement offer and notify the Respondent as to whether the offer is or is not accepted.

V.

This **CONSOLIDATED COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY** is effective upon receipt.

Baton Rouge, Louisiana, this _18th_ day of _September_, 2018.

Lourdes Iturralde
Assistant Secretary
Office of Environmental Compliance


Copies of a request for a hearing and/or related correspondence should be sent to:

Louisiana Department of Environmental Quality
Office of Environmental Compliance
Enforcement Division
P.O. Box 4312
Baton Rouge, LA  70821-4312
Attention:  Antoinette Cobb

15

| LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY<br>OFFICE OF ENVIRONMENTAL COMPLIANCE<br>ENFORCEMENT DIVISION     CONSOLIDATED COMPLIANCE ORDER &<br>POST OFFICE BOX 4312              NOTICE OF POTENTIAL PENALTY<br>BATON ROUGE, LOUISIANA 70821-4312          REQUEST TO CLOSE |||| DEQ LOUISIANA |
|---|---|---|---|
| Enforcement Tracking No. | MM-CN-18-00614 | Contact Name | Antoinette Cobb |
| Agency Interest (AI) No. | 6961 | Contact Phone No. | (225) 219-3072 |
| Alternate ID Nos. | 1340-00140; D-051-0090; P-0297R1-M7; & LAR05M138 | | |
| Respondent: | **JEFFERSON PARISH GOVERNMENT** | Facility Name: | Jefferson Parish Sanitary Landfill |
| | c/o The Honorable Michael S. Yenni, Parish President | Physical Location: | 5800 Highway 90 West |
| | Agent for Service of Process | | |
| | 1221 Elmwood Park Blvd., Suite 1002 | City, State, Zip: | Avondale, LA 70094 |
| | Jefferson, LA 70123 | Parish: | Jefferson |

### STATEMENT OF COMPLIANCE

| STATEMENT OF COMPLIANCE | Date Completed | Copy Attached? |
|---|---|---|
| A written report was submitted in accordance with Paragraph IX of the "Order" portion of the COMPLIANCE ORDER. | | |
| All necessary documents were submitted to the Department within 30 days of receipt of the COMPLIANCE ORDER in accordance with Paragraphs II, V, VII, and VIII of the "Order" portion of the COMPLIANCE ORDER. | | |
| All items in the "Findings of Fact" portion of the COMPLIANCE ORDER were addressed and the facility is being operated to meet and maintain the requirements of the "Order" portion of the COMPLIANCE ORDER. Final compliance was achieved as of: | | |

### SETTLEMENT OFFER *(OPTIONAL)*

*(check the applicable option)*

| | |
|---|---|
| ____ | The Respondent is not interested in entering into settlement negotiations with the Department with the understanding that the Department has the right to assess civil penalties based on LAC 33:I.Subpart1.Chapter7. |
| ____ | In order to resolve any claim for civil penalties for the violations in NOTICE OF POTENTIAL PENALTY (MM-CN-18-00614), the Respondent is interested in entering into settlement negotiations with the Department and would like to set up a meeting to discuss settlement procedures. |
| ____ | In order to resolve any claim for civil penalties for the violations in NOTICE OF POTENTIAL PENALTY (MM-CN-18-00614), the Respondent is interested in entering into settlement negotiations with the Department and offers to pay $_____ which shall include LDEQ enforcement costs and any monetary benefit of non-compliance.<br>• Monetary component =                                                     $_____<br>• Beneficial Environmental Project (BEP)component (optional)=    $_____<br>• *DO NOT SUBMIT PAYMENT OF THE OFFER WITH THIS FORM- the Department will review the settlement offer and notify the Respondent as to whether the offer is or is not accepted.* |
| | The Respondent has reviewed the violations noted in NOTICE OF POTENTIAL PENALTY (MM-CN-18-00614) and has attached a justification of its offer and a description of any BEPs if included in settlement offer. |

### CERTIFICATION STATEMENT

*I certify, under provisions in Louisiana and United States law that provide criminal penalties for false statements, that based on information and belief formed after reasonable inquiry, the statements and information attached and the compliance statement above, are true, accurate, and complete. I also certify that I do not owe outstanding fees or penalties to the Department for this facility or any other facility I own or operate. I further certify that I am either the Respondent or an authorized representative of the Respondent.*

WC_JPLF_00163819

| Respondent's Signature | Respondent's Printed Name | | Respondent's Title |
|---|---|---|---|
| Respondent's Physical Address | | Respondent's Phone # | Date |
| MAIL COMPLETED DOCUMENT TO THE ADDRESS BELOW: | | | |
| Louisiana Department of Environmental Quality<br>Office of Environmental Compliance<br>Enforcement Division<br>P.O. Box 4312<br>Baton Rouge, LA 70821<br>Attn: Antoinette Cobb | | | |

WC_JPLF_00163820