John Bel Edwards
GOVERNOR



Chuck Carr Brown, Ph.D.
SECRETARY

## State of Louisiana
### DEPARTMENT OF ENVIRONMENTAL QUALITY
### OFFICE OF ENVIRONMENTAL COMPLIANCE


RECEIVED
MAR 18 2019

March 11, 2019

CERTIFIED MAIL (7012 2210 0001 1915 8558)
RETURN RECEIPT REQUESTED

JEFFERSON PARISH GOVERNMENT
c/o The Honorable Michael S. Yenni, Parish President
1221 Elmwood Park Blvd., Suite 1002
Jefferson, LA 70123

RE: **CONSOLIDATED COMPLIANCE ORDER
& NOTICE OF POTENTIAL PENALTY**
ENFORCEMENT TRACKING NO. MM-CN-19-00026
AGENCY INTEREST NO. 6961

Dear Sir:

Pursuant to the Louisiana Environmental Quality Act (La. R.S. 30:2001, et seq.), the attached **CONSOLIDATED COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY** is hereby served on **JEFFERSON PARISH GOVERNMENT (RESPONDENT)** for the violation(s) described therein.

Compliance is expected within the maximum time period established by each part of the **COMPLIANCE ORDER**. The violation(s) cited in the **CONSOLIDATED COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY** could result in the issuance of a civil penalty or other appropriate legal actions.

Any questions concerning this action should be directed to Antoinette Cobb at (225) 219-3072 or via email at antoinette.cobb@la.gov.

Sincerely,

Celena J. Cage
Administrator
Enforcement Division

CJC/AFC/KAO/BKB
Alt ID Nos. 1340-00140; D-051-0090; P-0297R1-M7; & LAR05M138
Attachment

EXHIBIT C

Post Office Box 4312 • Baton Rouge, Louisiana 70821-4312 • Phone 225-219-3715 • Fax 225-219-3708
www.deq.louisiana.gov

WC_JPLF_00197057

c:    Jefferson Parish Department of Environmental Affairs
c/o Mr. Michael Lockwood, MSPH, Director
834 S. Clearview Parkway
Harahan, LA 70123

WC_JPLF_00197058

STATE OF LOUISIANA
DEPARTMENT OF ENVIRONMENTAL QUALITY

OFFICE OF ENVIRONMENTAL COMPLIANCE

| | |
|---|---|
| IN THE MATTER OF | * |
| | * |
| JEFFERSON PARISH GOVERNMENT | * ENFORCEMENT TRACKING NO. |
| JEFFERSON PARISH | * |
| ALT ID NO. 1340-00140;D-051-0090; | * MM-CN-19-00026 |
| P-0297R1-M7; & LAR05M138 | * |
| | * AGENCY INTEREST NO. |
| PROCEEDINGS UNDER THE LOUISIANA | * |
| ENVIRONMENTAL QUALITY ACT, | * 6961 |
| La. R.S. 30:2001, ET SEQ. | * |

## CONSOLIDATED
## COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY

The following **CONSOLIDATED COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY** is issued to **JEFFERSON PARISH GOVERNMENT (RESPONDENT)** by the Louisiana Department of Environmental Quality (the Department), under the authority granted by the Louisiana Environmental Quality Act (the Act), La. R.S. 30:2001, et seq., and particularly by La. R.S. 30:2025(C), 30:2050.2 and 30:2050.3(B).

### FINDINGS OF FACT

I.

The Respondent owns and/or operates a landfill known as the Jefferson Parish Sanitary Landfill (facility) located at 5800 Highway 90 West in Avondale, Jefferson Parish, Louisiana. The facility is a Type I/II landfill. The facility is currently operating under Solid Waste Standard Permit P-0297R1M8. The Respondent was granted coverage under Louisiana Pollutant Discharge Elimination System (LPDES) Multi-Sector General Permit (MSGP) for Storm Water Discharges Associated with Industrial Activities LAR050000 on September 6, 2016, and was specifically assigned permit number LAR05M138. LPDES MSGP LAR05M138 will expire on May 8, 2021. Under the terms and conditions of LPDES MSGP LAR05M138, the Respondent is authorized to discharge storm water associated with industrial activities into waters of the state. Louisiana Regional Landfill Company f/k/a IESI LA Landfill Corporation is an

operator at the facility. The facility currently operates under the authority of Title V Air Permit No. 1340-00140-V7 issued on July 15, 2016.

II.

On June 22, 2018, Compliance Order (CO), Enforcement Tracking No. SE-C-18-00372, was issued to the Respondent, for violations noted during inspections conducted on or about April 27, 2018, and April 30, 2018. The Respondent received the CO on or about July 9, 2018, and requested an adjudicatory hearing on or about July 27, 2018. The Department and the Respondent entered into informal dispute resolution discussions on August 29, 2018. The adjudicatory hearing was granted on November 26, 2018.

III.

On September 18, 2018, the Department issued Consolidated Compliance Order & Notice of Potential Penalty (CONOPP), Enforcement Tracking No. MM-CN-18-00614, to the Respondent for violations noted during inspections conducted on or about July 13, 2018, August 2, 2018, August 7, 2018, August 10, 2018, and August 28, 2018 or during subsequent file reviews conducted to determine the Respondent's degree of compliance with the Air Quality Regulations, Solid Waste Regulations, and Water Quality Regulations. The CONOPP was hand delivered to the Respondent on September 27, 2018. The Respondent submitted a request for an adjudicatory hearing dated October 26, 2018. The adjudicatory hearing was granted on November 26, 2018.

IV.

On November 19, 2018, the Department issued Notice of Potential Penalty (NOPP), Enforcement Tracking No. SE-PP-18-00875, to the Respondent for a violation noted during an inspection conducted on or about October 10, 2018. The Respondent received the NOPP on or about December 12, 2018.

V.

The Department conducted multimedia (Air, Solid Waste, and Water) assessment inspections at the facility from October 1, 2018, through November 30, 2018, to determine the degree of compliance with the Air Quality Regulations, Solid Waste Regulations, Water Quality Regulations, and all applicable permits. While the investigation by the Department is not yet complete, the following violation(s) were noted during the course of the assessments:

  A. The Respondent failed to properly operate the leachate collection system, in accordance with Part II, Sections 521.C.2.b and 521.G.2.a of the Solid Waste Permit Application, in violation of Conditions 7 & 8 of Standard Permit P-0297R1, and LAC 33:VII.901.A. Specifically, leachate breakouts were noted during assessment inspections conducted on or about October 29, 2018, October 31, 2018 and November 8, 2018. During the October 29, 2018

WC_JPLF_00197060

assessment inspection, a leachate breakout was observed on the south slope of cell 13S. During the October 31, 2018 and November 8, 2018 assessment inspections, leachate breakouts were observed on the north slope of the landfill at the boundary of Phases IIIB and IVA. An assessment inspection conducted on or about November 9, 2018, revealed the leachate breakout previously observed on the north slope of the landfill at the boundary of Phases IIIB and IVA was covered with clay. Additionally, there are a total of seventy-seven (77) leachate risers at the landfill. At least twenty-three (23) leachate risers were not in service each day between October 2, 2018 and November 30, 2018, according to the Department's daily assessment inspection reports. On October 15, 2018, thirty-eight (38) leachate risers were not in service and on November 30, 2018, twenty-six (26) leachate risers were not in service.

B. The Respondent failed to maintain the leachate head in a pumped-down condition such that not more than one (1) foot of head exists above the lowest elevation of the leachate collection lines, in accordance with Part II, Section 521.E.3.f and 521.G.2.a. of the Solid Waste Permit Application, in violation of Conditions 7 & 8 of Standard Permit P-0297R1, and LAC 33:VII.901.A. Specifically, on October 26, 2018, the Respondent self-reported to the Department that there was greater than twelve (12) inches of contact storm water in cell 23N due to heavy rains. The sump area on the north side of cell 23N was filled with contact storm water/leachate. According to the Department's daily assessment inspection reports, water was ponded on the north side of the cell where the leachate riser sump is located from October 26, 2018 through November 7, 2018. The contact storm water/leachate was being pumped from Cell 23N to a frack tank and hauled by a vacuum truck to lift station #2. During the November 8, 2018 daily assessment inspection by the Department, no standing water was observed in the sump area on the north side of Cell 23N. Additionally, according to the Solid Waste Permit Application, leachate levels are maintained through the use of leachate pumps containing integral level controls calibrated to maintain less than one (1) foot of head within the leachate sumps which are inspected on a monthly basis to ensure proper operation. At least twenty-three (23) of seventy-seven (77) leachate risers were not in service each day between October 2, 2018 and November 30, 2018, according to daily inspection reports. During the October 15, 2018 daily assessment inspection by the Department, thirty-eight (38) leachate risers were not in service, and during the November 30, 2018 daily assessment inspection by the Department, twenty-six (26) leachate risers were not in service.

C. The Respondent failed to implement erosion control measures on slopes on which interim cover was applied, in accordance with Part II, Section 521.E.4.b of the Solid Waste Permit Application, in violation of Conditions 7 & 8 of Standard Permit P-0297R, in violation of LAC 33:VII.711.B.2.e. and LAC 33:VII.711.B.2.f. Specifically, interim cover had been placed on cells 22N and 22S since waste is no longer being disposed of in these cells. During the November 26, 2018 assessment inspection, an erosion channel with exposed waste and leachate seeps was noted on the east side of the diversion berm located on the northwest corner of cell 22N. Additionally, on the west slope of cell 22S, multiple erosion channels with exposed waste and leachate seeps were observed. Water was pooled against a diversion berm on the west toe of cell 22S, and landfill gas was bubbling in pools of standing leachate and ponded storm water/leachate. The November 30, 2018 assessment inspection noted additional cover was applied on the erosion channel on the east side of the diversion berm on the northwest

WC_JPLF_00197061

corner of cell 22N, and on the west slope of cell 22S. The November 30, 2018 assessment inspection noted all areas of previously exposed waste were covered.

D. The following unauthorized discharges into waters of the state were noted during the course of the assessment inspections:
   i. On October 29, 2018, a leachate breakout was observed on the south slope of cell 13S. Storm water contaminated with leachate from this area drains into the ditch located along the South Access Road, thence into the Waggaman Canal via Outfalls 006 and 009, thence into Lake Cataouatche.
   ii. On October 31, 2018, a leachate breakout was observed on the north access road at the boundary of Phases IIIB and IVA. Storm water contaminated with leachate from this area drains into the ditch located along the North Access Road on the north side of Phases IIIB and IVA, thence into the Waggaman Canal via Outfalls 011 and 012, thence into Lake Cataouatche.
   iii. On November 5, 2018, exposed waste was observed on the north slope between cells 20N and 22N. Storm water that contacts exposed waste from this area drains into the ditch located along the North Access Road on the north side of Phases IIIB and IVA, thence into the Waggaman Canal via Outfalls 011 and 012, thence into Lake Cataouatche.
   iv. On November 8, 2018, leachate breakout was observed on the north slope of the landfill at the boundary of Phases IIIB and IVA. Storm water contaminated with leachate from this area drains into the ditch located along the North Access Road on the north side of Phases IIIB and IVA, thence into the Waggaman Canal via Outfalls 011 and 012, thence into Lake Cataouatche.
   v. On November 26, 2018, exposed waste and several leachate seeps were observed in an erosion channel on the east side of the diversion berm located on the northwest corner of cell 22N. The diversion berm prevents water from the west side of cell 22N from flowing into cell 23N. Storm water contaminated by leachate and exposed waste drains into a ditch located along the North Access Road on the north side of Phases IIIB and IVA, thence into the Waggaman Canal via Outfalls 011 and 012, thence into Lake Cataouatche.

Each unauthorized discharge of storm water contaminated by leachate and exposed waste is a violation of La. R.S. 30:2075.

E. The Respondent failed to control emissions as noted in the table below:

| ASSESSMENT DATE | LOCATION | DESCRIPTION | READINGS |
|---|---|---|---|
| 10/22/2018 | Leachate Riser 14N | Landfill gas leak where the force main penetrates the 16" casing. MultiRAE readings were taken at the site of the leak. | $O_2$= 6.6 ppm<br>$SO_2$= 14 ppm<br>LEL= 99%<br>$H_2S$= 15.9 ppm |
| 10/22/2018 | Leachate Riser 20N | Landfill gas leak where the force main penetrates the 16" casing. MultiRAE readings were taken at the site of the leak. | $O_2$= 1.0 ppm<br>LEL= 99%<br>$H_2S$= 41 ppm |

4

| ASSESSMENT DATE | LOCATION | DESCRIPTION | READINGS |
|---|---|---|---|
| 10/29/2018 | Leachate Riser 14N | Landfill gas emissions at leachate force main penetration into 16" leachate riser casing. | $O_2$= 20.9%<br>LEL= 99%<br>$H_2S$= 0.8 ppm |
| 10/29/2018 | Leachate Riser 20N | Landfill gas emissions at leachate force main penetration into 16" leachate riser casing, 16" leachate riser casing end cap and the cleanout pipe. | $O_2$= 20.9%<br>LEL= 99%<br>$H_2S$= 6.0 ppm |
| 11/26/2018 | Leachate Riser 20N | Landfill gas emissions at leachate force main penetration into 16" leachate riser casing and the cleanout pipe. MultiRAE readings were taken at the end of the cleanout pipe. | $O_2$= 10.6 ppm<br>LEL= 99%<br>$H_2S$= 13.1 ppm<br>VOC= 1.0 ppm<br>CO= 0.0 ppm |
| 11/26/2018 | Leachate Riser 21N | Landfill gas emissions at leachate force main penetration into 16" leachate riser casing the flange on the 16" leachate riser casing. Landfill gas being released from the flange was hissing loudly and could be heard 20-25 feet away from the flange. MultiRAE readings were taken at the end of the cleanout pipe. | $O_2$= 12.4 ppm<br>LEL= 99%<br>$H_2S$= 20.1 ppm<br>VOC= 1.0 ppm<br>CO= 0.0 ppm |
| 10/30/2018 | Manhole #3 | Landfill gas was being emitted from the lid on manhole #3 which was not closed properly. The Jerome meter reading was taken at the open manhole | $H_2S$= 44 ppm |

Each failure to operate control equipment which is defined as any device or contrivance, operating procedure or abatement scheme to prevent or reduce air pollution, in the proper manner is a violation of LAC 33:III.905.A and La. R.S. 30:2057(A)(1) and 30:2057(A)(2).

VI.

A file review conducted on or about February 19, 2019 revealed the Respondent failed to ensure contaminated surface runoff from operating areas or areas that have not received interim compacted cover or final cover is separated from noncontaminated surface runoff, in violation of LAC 33:VII.711.A.5. Specifically, the Respondent submitted a report to the Department on or about January 9, 2018, detailing the interim compacted cover thickness for cells 20-22 based on an investigation conducted by the Respondent on or about November 27, 2018. Samples taken in cells 20-22 revealed multiple areas do not have two (2) feet of interim compacted cover. Rainfall data from the meteorological station at the landfill indicated numerous periods of rain from October 5, 2018 to November 27, 2018.

WC_JPLF_00197063

VII.

A file review conducted by the Department on or about February 13, 2019, revealed that the Respondent exceeded effluent limitations. These effluent limitation exceedances, as reported by the Respondent on the annual summary Discharge Monitoring Report (DMR) and sampling reports submitted to the Department, are summarized in the following table:

| Monitoring Period | Outfall | Parameter | Permit Limit | Reported Value |
|---|---|---|---|---|
| 2018 | 001-Y/003-Y | TSS (Monthly Avg.) - mg/L | 27 | 32 |
| | 001-Y/006-Y | TSS (Monthly Avg.) - mg/L – January 2018 | 27 | 148 |
| | | TSS (Daily Max.) - mg/L | 88 | 148 |
| | | TSS (Monthly Avg.) - mg/L – February 2018 | 27 | 30 |
| | | Nitrogen, Ammonia Total - (Monthly Avg.) - mg/L | 4.9 | 10.2 |
| | | Nitrogen, Ammonia Total - (Daily Max.) - mg/L | 10 | 10.2 |
| | 001-Y/008-Y | TSS (Monthly Avg.) - mg/L | 27 | 86 |
| | 001-Y/009-Y | TSS (Monthly Avg.) - mg/L | 27 | 48 |
| | 001-Y/011-Y | TSS (Monthly Avg.) - mg/L | 27 | 28 |

Each effluent limitation exceedance is a violation of LPDES MSGP LAR05M138 (Best Management Practices, Limitations, and Monitoring Requirements, Table 3, Sector L, Pages 36-37 of 122; and Standard Permit Conditions for LPDES Permits, Section A.2), La. R.S. 30:2076(A)(3), and LAC 33:IX.501.A.

VIII.

A file review conducted by the Department on or about February 13, 2018, revealed that the Respondent had an inadequate Storm Water Pollution Prevention Plan (SWPPP) as evidenced by the benchmark monitoring effluent limitation exceedances. The benchmark monitoring effluent limitation exceedances, as reported by the Respondent on the summary quarterly DMRs and sampling reports submitted to the Department, are summarized below:

| Monitoring Period | Outfall | Parameter | Permit Limit | Reported Value |
|---|---|---|---|---|
| 1st Qtr. 2018 | 001-Q/003-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 1.41 |
| | 001-Q/006-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 4.30 |
| | | TSS (Daily Max.) - mg/L | 100 | 148 |
| | 001-Q/007-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 1.12 |
| | 001-Q/008-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 2.88 |
| | 001-Q/009-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 3.60 |
| | 001-Q/010-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 1.54 |
| | 001-Q/012-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 1.10 |
| 2nd Qtr. 2018 | 001-Q/003-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 4.46 |
| | | TSS (Daily Max.) - mg/L | 100 | 116 |
| | 001-Q/006-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 2.75 |

6

| Monitoring Period | Outfall | Parameter | Permit Limit | Reported Value |
|---|---|---|---|---|
| 2nd Qtr. 2018 | 001-Q/007-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 3.03 |
| | 001-Q/008-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 4.66 |
| | | TSS (Daily Max.) - mg/L | 100 | 175 |
| | 001-Q/009-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 7.79 |
| | | TSS (Daily Max.) - mg/L | 100 | 225 |
| | 001-Q/010-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 3.00 |
| | 001-Q/012-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 2.61 |
| 3rd Qtr. 2018 | 001-Q/003-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 5.08 |
| | | TSS (Daily Max.) - mg/L | 100 | 147 |
| | 001-Q/006-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 11.20 |
| | | TSS (Daily Max.) - mg/L | 100 | 377 |
| | 001-Q/007-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 3.36 |
| | | TSS (Daily Max.) - mg/L | 100 | 110 |
| | 001-Q/008-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 3.41 |
| | | TSS (Daily Max.) - mg/L | 100 | 104 |
| | 001-Q/009-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 5.84 |
| | | TSS (Daily Max.) - mg/L | 100 | 154 |
| | 001-Q/010-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 5.78 |
| | | TSS (Daily Max.) - mg/L | 100 | 204 |
| | 001-Q/011-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 1.32 |
| | 001-Q/012-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 1.21 |
| 4th Qtr. 2018 | 001-Q/002-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 10.60 |
| | | TSS (Daily Max.) - mg/L | 100 | 350 |
| | 001-Q/003-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 13.00 |
| | | TSS (Daily Max.) - mg/L | 100 | 402 |
| | 001-Q/006-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 34.80 |
| | | TSS (Daily Max.) - mg/L | 100 | 1280 |
| | 001-Q/007-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 4.36 |
| | | TSS (Daily Max.) - mg/L | 100 | 176 |
| | 001-Q/008-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 1.96 |
| | 001-Q/009-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 23.30 |
| | | TSS (Daily Max.) - mg/L | 100 | 530 |
| | 001-Q/010-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 11.30 |
| | | TSS (Daily Max.) - mg/L | 100 | 675 |
| | 001-Q/011-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 1.84 |
| | 001-Q/012-Q | Total Iron (Daily Max.) - mg/L | 1.0 | 2.98 |

Benchmark monitoring is primarily for the Respondent to use in determining the overall effectiveness of the facility's SWPPP controls related to the protection of water quality. The failure to implement an adequate SWPPP is a violation of LPDES MSGP LAR05M138 Best Management Practices, Limitations, and Monitoring Requirements, Section 3.3; and Standard Permit Conditions for LPDES Permits, Section A.2), La. R.S. 30:2076(A)(3), and LAC 33:IX.501.A.

7

WC_JPLF_00197065

IX.

An inspection conducted by the Department on or about October 17, 2018, and a subsequent file review conducted on or about February 21, 2019, revealed the Respondent failed to submit a written notification report within seven (7) calendar days after an incident, in violation of LAC 33:I.3925.A. Specifically, on or about October 12, 2018, the Respondent self-reported a fire at the landfill via the Single Point of Contact (SPOC) on the Department's public webpage. According to a representative of the Respondent, operators noticed smoke and a small area of the working face smoldering after applying nightly cover due to smoldering paper disposed of in the landfill. Clay was used to smother the fire. During the October 17, 2018 assessment inspection, no smoke, fire, or ash was noted. As of March 7, 2019, the Respondent has not submitted a seven (7) day written notification report.

X.

An inspection conducted by the Department on or about February 21, 2019, revealed the Respondent failed to provide sufficient daily cover to the entire open working face, in accordance with Part II, Section 521.E.4.a of the Solid Waste Permit Application and LAC 33:VII.711.B.2.a, in violation of Conditions 7 & 8 of Standard Permit P-0297R1, LAC 33:VII.711.B.2.f and LAC 33:VII.901.A. Specifically, prior to being uncovered for the day, exposed waste was observed in the northwest corner of the working face that was not covered with tarps.

## COMPLIANCE ORDER

Based on the foregoing, the Respondent is **hereby ordered**:

I.

To take, immediately upon receipt of this **COMPLIANCE ORDER**, any and all steps necessary to meet and maintain compliance with the Air Quality Regulations, Solid Waste Regulations, Water Quality Regulations, and all related permits including, but not limited to, ceasing all unauthorized discharges, complying with all effluent limitations, and implementing an adequate SWPPP.

II.

To complete application of two (2) feet of interim compacted cover to all areas of the landfill that contain solid waste and have not yet received interim compacted cover or final cover by March 31, 2019 so that contaminated and noncontaminated surface runoff are not allowed to mix.

8

III.

To submit, within seven (7) days after receipt of this **COMPLIANCE ORDER**, a seven (7) day written notification report regarding the incident noted in Findings of Fact paragraph IX, in accordance with LAC 33:I.3925.

IV.

To submit to the Enforcement Division, within thirty (30) days after receipt of this **COMPLIANCE ORDER**, a written report that includes a detailed description of the circumstances surrounding the cited violation(s) and actions taken or to be taken to achieve compliance with the Order Portion of this **COMPLIANCE ORDER**. This report and all other reports or information required to be submitted to the Enforcement Division by this **COMPLIANCE ORDER** shall be submitted to:

    Office of Environmental Compliance
    Post Office Box 4312
    Baton Rouge, Louisiana 70821-4312
    **Attn: Antoinette Cobb**
    **Re:**   **Enforcement Tracking No. MM-CN-19-00026**
          **Agency Interest No. 6961**

**THE RESPONDENT SHALL FURTHER BE ON NOTICE THAT:**

I.

The Respondent has a right to an adjudicatory hearing on a disputed issue of material fact or of law arising from this **COMPLIANCE ORDER**. This right may be exercised by filing a written request with the Secretary no later than thirty (30) days after receipt of this **COMPLIANCE ORDER**.

II.

The request for an adjudicatory hearing shall specify the provisions of the **COMPLIANCE ORDER** on which the hearing is requested and shall briefly describe the basis for the request. This request should reference the Enforcement Tracking Number and Agency Interest Number, which are located in the upper right-hand corner of the first page of this document and should be directed to the following:

    Department of Environmental Quality
    Office of the Secretary
    Post Office Box 4302
    Baton Rouge, Louisiana 70821-4302
    **Attn: Hearings Clerk, Legal Division**
    **Re:**   **Enforcement Tracking No. MM-CN-19-00026**
          **Agency Interest No. 6961**

WC_JPLF_00197067

III.

Upon the Respondent's timely filing a request for a hearing, a hearing on the disputed issue of material fact or of law regarding this **COMPLIANCE ORDER** may be scheduled by the Secretary of the Department. The hearing shall be governed by the Act, the Administrative Procedure Act (La. R.S. 49:950, et seq.), and the Division of Administrative Law (DAL) Procedural Rules. The Department may amend or supplement this **COMPLIANCE ORDER** prior to the hearing, after providing sufficient notice and an opportunity for the preparation of a defense for the hearing.

IV.

This **COMPLIANCE ORDER** shall become a final enforcement action unless the request for hearing is timely filed. Failure to timely request a hearing constitutes a waiver of the Respondent's right to a hearing on a disputed issue of material fact or of law under Section 2050.4 of the Act for the violation(s) described herein.

V.

The Respondent's failure to request a hearing or to file an appeal or the Respondent's withdrawal of a request for hearing on this **COMPLIANCE ORDER** shall not preclude the Respondent from contesting the findings of facts in any subsequent penalty action addressing the same violation(s), although the Respondent is estopped from objecting to this **COMPLIANCE ORDER** becoming a permanent part of its compliance history.

VI.

Civil penalties of not more than twenty-seven thousand five hundred dollars ($27,500) for each day of violation for the violation(s) described herein may be assessed. For violations which occurred on August 15, 2004, or after, civil penalties of not more than thirty-two thousand five hundred dollars ($32,500) may be assessed for each day of violation. The Respondent's failure or refusal to comply with this **COMPLIANCE ORDER** and the provisions herein will subject the Respondent to possible enforcement procedures under La. R.S. 30:2025, which could result in the assessment of a civil penalty in an amount of not more than fifty thousand dollars ($50,000) for each day of continued violation or noncompliance.

VII.

For each violation described herein, the Department reserves the right to seek civil penalties in any manner allowed by law, and nothing herein shall be construed to preclude the right to seek such penalties.

WC_JPLF_00197068

## NOTICE OF POTENTIAL PENALTY

I.

Pursuant to La. R.S. 30:2050.3(B), you are hereby notified that the issuance of a penalty assessment is being considered for the violation(s) described herein. Written comments may be filed regarding the violation(s) and the contemplated penalty. If you elect to submit comments, it is requested that they be submitted within ten (10) days of receipt of this notice.

II.

Prior to the issuance of additional appropriate enforcement action(s), you may request a meeting with the Department to present any mitigating circumstances concerning the violation(s). If you would like to have such a meeting, please contact Antoinette Cobb at (225) 219-3072 within ten (10) days of receipt of this **NOTICE OF POTENTIAL PENALTY**.

III.

The Department is required by La. R.S. 30:2025(E)(3)(a) to consider the gross revenues of the Respondent and the monetary benefits of noncompliance to determine whether a penalty will be assessed and the amount of such penalty. Please forward the Respondent's most current annual gross revenue statement along with a statement of the monetary benefits of noncompliance for the cited violation(s) to the above named contact person within ten (10) days of receipt of this **NOTICE OF POTENTIAL PENALTY**. Include with your statement of monetary benefits the method(s) you utilized to arrive at the sum. If you assert that no monetary benefits have been gained, you are to fully justify that statement. If the Respondent chooses not to submit the requested most current annual gross revenues statement within ten (10) days, it will be viewed by the Department as an admission that the Respondent has the ability to pay the statutory maximum penalty as outlined in La. R.S. 30:2025.

IV.

The Department assesses civil penalties based on LAC 33:I.Subpart1.Chapter7. To expedite closure of this **NOTICE OF POTENTIAL PENALTY** portion, the Respondent may offer a settlement amount to resolve any claim for civil penalties for the violation(s) described herein. The Respondent may offer a settlement amount, but the Department is under no obligation to enter into settlement negotiations. The decision to proceed with a settlement is at the discretion of the Department. The settlement offer amount may be entered on the attached **"CONSOLIDATED COMPLIANCE ORDER AND NOTICE OF POTENTIAL PENALTY REQUEST TO CLOSE"** form. The Respondent must include a

11

WC_JPLF_00197069

justification of the offer. **DO NOT** submit payment of the offer amount with the form. The Department will review the settlement offer and notify the Respondent as to whether the offer is or is not accepted.

V.

This **CONSOLIDATED COMPLIANCE ORDER & NOTICE OF POTENTIAL PENALTY** is effective upon receipt.

Baton Rouge, Louisiana, this 11th day of March, 2019.

Lourdes Iturralde
Assistant Secretary
Office of Environmental Compliance

Copies of a request for a hearing and/or related correspondence should be sent to:

Louisiana Department of Environmental Quality
Office of Environmental Compliance
Enforcement Division
P.O. Box 4312
Baton Rouge, LA 70821-4312
Attention: Antoinette Cobb

12

WC_JPLF_00197070

| LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY<br>OFFICE OF ENVIRONMENTAL COMPLIANCE<br>ENFORCEMENT DIVISION     CONSOLIDATED COMPLIANCE ORDER &<br>POST OFFICE BOX 4312     NOTICE OF POTENTIAL PENALTY<br>BATON ROUGE, LOUISIANA 70821-4312     REQUEST TO CLOSE |||| DEQ LOUISIANA |
|---|---|---|---|
| Enforcement Tracking No. | MM-CN-18-00026 | Contact Name | Antoinette Cobb |
| Agency Interest (AI) No. | 6961 | Contact Phone No. | (225) 219-3072 |
| Alternate ID Nos. | 1340-00140; D-051-0090; P-0297R1-M7; & LAR05M138 | | |
| Respondent: | **JEFFERSON PARISH GOVERNMENT** | Facility Name: | Jefferson Parish Sanitary Landfill |
| | c/o The Honorable Michael S. Yenni, Parish President | Physical Location: | 5800 Highway 90 West |
| | Agent for Service of Process | | |
| | 1221 Elmwood Park Blvd., Suite 1002 | City, State, Zip: | Avondale, LA 70094 |
| | Jefferson, LA 70123 | Parish: | Jefferson |

## STATEMENT OF COMPLIANCE

| STATEMENT OF COMPLIANCE | Date Completed | Copy Attached? |
|---|---|---|
| A written report was submitted in accordance with Paragraph IV of the "Order" portion of the COMPLIANCE ORDER. | | |
| All necessary documents were submitted to the Department within 30 days of receipt of the COMPLIANCE ORDER in accordance with Paragraph III of the "Order" portion of the COMPLIANCE ORDER. | | |
| All items in the "Findings of Fact" portion of the COMPLIANCE ORDER were addressed and the facility is being operated to meet and maintain the requirements of the "Order" portion of the COMPLIANCE ORDER. Final compliance was achieved as of: | | |

## SETTLEMENT OFFER *(OPTIONAL)*

*(check the applicable option)*

| | |
|---|---|
| ___ | The Respondent is not interested in entering into settlement negotiations with the Department with the understanding that the Department has the right to assess civil penalties based on LAC 33:I.Subpart1.Chapter7. |
| ___ | In order to resolve any claim for civil penalties for the violations in NOTICE OF POTENTIAL PENALTY (MM-CN-19-00026), the Respondent is interested in entering into settlement negotiations with the Department and would like to set up a meeting to discuss settlement procedures. |
| ___ | In order to resolve any claim for civil penalties for the violations in NOTICE OF POTENTIAL PENALTY (MM-CN-19-00026), the Respondent is interested in entering into settlement negotiations with the Department and offers to pay $_____ which shall include LDEQ enforcement costs and any monetary benefit of non-compliance.<br>• Monetary component = $_____<br>• Beneficial Environmental Project (BEP)component (optional)= $_____<br>• *DO NOT SUBMIT PAYMENT OF THE OFFER WITH THIS FORM- the Department will review the settlement offer and notify the Respondent as to whether the offer is or is not accepted.* |
| | The Respondent has reviewed the violations noted in NOTICE OF POTENTIAL PENALTY (MM-CN-19-00026) and has attached a justification of its offer and a description of any BEPs if included in settlement offer. |

## CERTIFICATION STATEMENT

*I certify, under provisions in Louisiana and United States law that provide criminal penalties for false statements, that based on information and belief formed after reasonable inquiry, the statements and information attached and the compliance statement above, are true, accurate, and complete. I also certify that I do not owe outstanding fees or penalties to the Department for this facility or any other facility I own or operate. I further certify that I am either the Respondent or an authorized representative of the Respondent.*

13

|  |  |  |
|---|---|---|
| Respondent's Signature | Respondent's Printed Name | Respondent's Title |
|  |  |  |
| Respondent's Physical Address | Respondent's Phone # | Date |
| **MAIL COMPLETED DOCUMENT TO THE ADDRESS BELOW:** | | |
| Louisiana Department of Environmental Quality<br>Office of Environmental Compliance<br>Enforcement Division<br>P.O. Box 4312<br>Baton Rouge, LA 70821<br>Attn: Antoinette Cobb | | |

14

WC_JPLF_00197072