**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>Plaintiffs<br><br>**VERSUS**<br><br>**LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**<br>Defendants | **CIVIL ACTION**<br><br>**NO. 19-11133, c/w 19-14512**<br><br>**SECTION: "E" (5)**<br><br>**JUDGE: Morgan<br>MAGISTRATE JUDGE: North** |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE INTRODUCTION
OF NEWS REPORTS AND TRANSCRIPTS AND
<u>VIDEOS OF PRESS CONFERENCES AND COUNCIL MEETINGS</u>**

Defendants Aptim Corp., Jefferson Parish, Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc. (collectively, "Defendants"), respectfully submit this memorandum in support of their motion seeking exclusion of improper hearsay evidence that Plaintiffs intend to offer at trial in the form of news articles and transcripts and videos of news reports, press conferences, and Jefferson Parish Council meetings.

## INTRODUCTION

As early as the filing of the Complaint[1] and during depositions in this matter, Plaintiffs have used and relied on news articles and other media reports and public statements to support their allegations of odor impacts from the Jefferson Parish Landfill ("JPLF"). Written and recorded news articles and reports are quintessential examples of hearsay, as they contain out-of-court statements by journalists offered for the truth of the matter asserted. The reports further contain misstatements or sensationalized representations of facts, and opinions, concerning the JPLF that are inaccurate and likely to mislead the jury and unfairly prejudice Defendants. Transcripts and videos of press conferences and Parish Council meetings further contain inadmissible hearsay and opinion testimony, the prejudice of which outweighs any potential probative value. The parties will be presenting detailed expert testimony at trial concerning JPLF operations, and each of the Trial Plaintiffs will testify as to the nature of their claims. There is no place for these hearsay statements, the only purpose of which could be to inflame the jury and distort the truth. The Court should exclude this evidence so there is no risk that the jury places improper, significant weight on these exhibits.

---

[1] R. Doc. 1-5 at 13-15; *see also* R. Doc. 431 at 55-56.

**ARGUMENT**

**I. News stories must be excluded as inadmissible hearsay and unfairly prejudicial.**

Defendants move to exclude Plaintiffs' designated exhibits that are news reports, whether written or video-recorded, because they are hearsay and unfairly prejudicial. Rule 801 defines hearsay as an out-of-court statement introduced to prove the truth of the matter asserted. Fed. R. Evid. 801. Hearsay statements generally are inadmissible. Fed. R. Evid. 802. The Fifth Circuit has explicitly held that newspaper articles are "classic, inadmissible hearsay" and not proper for introduction into evidence. *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (newspaper articles are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay); *Painter v. Suire*, 650 F. App'x 219, 225 (5th Cir. 2016) (video recordings of local news stories about defendants were inadmissible hearsay, as they contained statements made by out-of-court declarants); *Greene v. Scott*, 637 F. App'x 749, 751–52 (4th Cir. 2016) (affirming exclusion based on hearsay of news article publishing mayor's statement).

Plaintiffs' exhibit list includes numerous media reports, all of which should be excluded as textbook inadmissible hearsay. This includes but is not limited to the following articles and reports:[2]

- **Jefferson Parish Residents Say Mystery Odor is Making Them Sick, WWLTV (July 13, 2018) (Exhibit A)**[3]

---

[2] Plaintiffs made their own transcriptions of several of the video recordings.

[3] Trial Exhibit No. 2017, VID_JPLF_000300. Plaintiffs have designated additional copies of this exhibit in other formats, including Trial Exhibit No. 2016, VID_JPLF_000140; Trial Exhibit No. 2017, VID_JPLF_000141, VID_JPLF_000289, VID_JPLF_000307, VID_JPLF_000319, VID_JPLF_000368.

2

- **Jefferson Parish Odor Landfill Protest, NOLA.com (Aug. 17, 2018)[4]**

- **Jefferson Parish Landfill Still Stinks, WDSU News (Jan. 3, 2019)[5]**

- **Jefferson Parish Residents Alarmed by Odors, Emissions, NOLA.com (Jan. 16, 2019)[6]**

- **Anatomy of the Jefferson Parish Landfill, Jeff Parish TV (June 10, 2019)[7]**

- **Jefferson Parish Postpones Address on Mysterious Odor Until Next Week, WWLTV (July 19, 2018)[8]**

- **Odor from Jefferson Parish Landfill is Going to Get Worse Before it Gets Better, WWLTV (Nov. 6, 2019) (Exhibit B)[9]**

- **Stench of Failure Part 1, WWLTV (Nov. 15, 2019) (Exhibit C)[10]**

- **Stench of Failure Part 2, WWLTV (Nov. 18, 2019) (Exhibit D)[11]**

Defendants anticipate that, in violation of FRE 801 and 802, Plaintiffs will offer these out-of-court media statements to prove that JPLF was a significant source of odors and the truth of

---

[4] Trial Exhibit No. 2021, VID_JPLF_000146. This video news report is available at https://www.youtube.com/watch?v=omM3uiT_nQQ.

[5] Trial Exhibit No. 2003, VID_JPLF_000002. This video news report is available at https://www.youtube.com/watch?v=B6WiEScshEs&t=3s.

[6] Trial Exhibit No. 2002, VID_JPLF_000001. This video media report is available at https://www.youtube.com/watch?v=3qJG1aHDNsY.

[7] Trial Exhibit No. 2015, VID_JPLF_000139. This video news report is available at https://www.youtube.com/watch?v=iaAbsCYDJBY.

[8] Trial Exhibit No. 2018, VID_JPLF_000142. This video news report is available at https://www.youtube.com/watch?v=LDAGqnmqYfg.

[9] Trial Exhibit No. 2012, VID_JPLF_000273. Plaintiffs have designated additional copies of this exhibit in other formats, including Trial Exhibit No. 2011, VID_JPLF_000034; Trial Exhibit No. 2012, VID_JPLF_000035, VID_JPLF_000264, VID_JPLF_000279.

[10] Trial Exhibit No. 2007, VID_JPLF_000005. Plaintiffs have designated an additional copy of this exhibit in another format, at Trial Exhibit No. 2008, VID_JPLF_000018.

[11] Trial Exhibit No. 2009, VID_JPLF_000019. Plaintiffs have designated an additional copy of this exhibit in another format, at Trial Exhibit No. 2010, VID_JPLF_000033.

other matters asserted therein. There is no indication that the reporters will be cross-examined regarding the veracity or accuracy of the statements in each article or video.[12] Several of the news reports also contain hearsay within hearsay, including statements from journalists or residents of Jefferson Parish. *See, e.g.* Trial Exhibit No. 2021, VID_JPLF_000146 (news report interview with Jefferson Parish residents). Absent a showing of an applicable hearsay exception, all of the media reports offered by Plaintiffs should be excluded. Defendants also seek to exclude any additional news reports that Plaintiffs may designate as trial exhibits, including but not limited to deposition exhibits or exhibits Plaintiffs have not yet produced.

For example, in the November 15 and 18, 2019 WWLTV recordings titled the "Stench of Failure Parts 1 and 2" featuring the reporter David Hammer, Mr. Hammer provides misleading descriptions of the internal workings of a landfill, including waste decomposition, leachate generation, and landfill emissions, uses imaging without proper foundation, opines on health impacts from exposure to landfill emissions, and summarizes or solicits comments from community residents and a prior landfill employee that constitute inadmissible hearsay.[13] The parties will be presenting extensive expert evidence concerning landfill operations and Plaintiffs' nuisance and negligence claims at trial. Mr. Hammer's nonexpert "technical" opinions on landfill operations and causation are not only irrelevant and inadmissible hearsay but are highly prejudicial as they are misleading and being presented out of context without the opportunity for Defendants to cross-examine the proponent. Plaintiffs do not intend to call Mr. Hammer or the other authors

---

[12] The rationale behind excluding hearsay is that hearsay statements made out of court cannot be tested through cross-examination and are therefore not sufficiently reliable. *United States v. Black*, 436 F.2d 838, 840, n.2 (5th Cir. 1971) ("At the heart of the hearsay rule is the policy against depriving a party of his right to cross-examine a witness.").

[13] *See, e.g.*, Exhibit C, Trial Exhibit No. 2007 (VID_JPLF_000005) and Exhibit D, Trial Exhibit No. 2009 (VID_JPLF_000019).

4

of these reports and articles at trial—and even if they did, they would not be permitted to testify to the statements and opinions contained in the news reports. *See U.S. Xpress, Inc. v. Am. Field Serv. Corp.*, No. 07-cv-13, 2008 WL 2714635, at *4 (N.D. Miss. June 26, 2008) (lay witness permitted to testify as to facts within his knowledge but prohibited from offering opinion testimony requiring specialized or technical knowledge).

While some of the news reports may contain quotations from representatives of the Defendants, even if a statement would typically be admissible as a statement of a party-opponent (Fed. R. Evid. 801(d)(2) hearsay exclusion), the news report containing the statement does not fall within that exclusion or under any hearsay exception since the declarant is the journalist, rather than the party-opponent making the statement. *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010) (excluding newspaper article reporting statement of Department of Corrections spokeswoman as inadmissible hearsay; even if the statement in the article was admissible as a statement of a party opponent, the newspaper article itself did not fall under any hearsay exception).

Any negligible probative value of this evidence is also far outweighed by the danger of unfair prejudice to Defendants. The reports contain sensationalized comments intended to appeal to viewers and present out-of-context technical information that could easily be misunderstood by a lay person. *See*, *e.g.*, Exhibit B, Trial Exhibit No. 2012 (VID_JPLF_000273) (containing sensationalized statements concerning "potentially dangerous hydrogen sulfide and methane that's been escaping in recent years") and Exhibit C, Trial Exhibit No. 2007 at 6:3-23 (VID_JPLF_000005) (discussing measurements inside the gas wells and comparing to "instant death"). Moreover, many of the statements in interviews, press conferences, and articles are devoid of any even attempted showing of a foundation, much less any that would satisfy the gatekeeping function of this Court's inquiry. The parties—including Plaintiffs—have conducted years of

discovery and expert work to present procedurally vetted information on the same subject matter to the triers of fact. These interviews, press conferences, and articles—many of which have been contradicted by record evidence—should not be allowed for presentation to the jury.

Such evidence can only be intended to inflame the jury. All parties have retained experts who were disclosed pursuant to Federal Rule of Civil Procedure 26, authored reports, and have been subjected to *Daubert* scrutiny. Plaintiffs will rely on their experts to opine on the bases for their nuisance and negligence claims and should not be permitted to offer these out-of-court media statements to prove that JPLF was a significant source of odors and the truth of other matters asserted therein. Absent a showing of an applicable hearsay exception, none of which apply, all of the media reports offered by Plaintiffs should be excluded.

## II.  Transcripts and videos of press conferences and council meetings must be excluded as inadmissible hearsay and unfairly prejudicial.

Plaintiffs also seek to introduce recordings and transcriptions of press conferences and Parish Council meetings where issues related to the JPLF were discussed. These recordings and unofficial transcripts of press conferences and government meetings lack foundation, are inadmissible hearsay, and are unfairly prejudicial under Federal Rule of Evidence 403.

Plaintiffs have designated video recording and transcripts of the July 23, 2018 Jefferson Parish Press conference, and multiple Parish Council meetings in 2018 and 2019. This includes, but is not limited to:

- **Jefferson Parish Landfill Press Conference (July 23, 2018) (Exhibit E)**[14]

---

[14] Trial Exhibit No. 2017, VID_JPLF_000368. Plaintiffs have designated additional copies of this exhibit in other formats, including Trial Exhibit No. 2017, VID_JPLF_000319; Trial Exhibit No. 2019, VID_JPLF_000143; Trial Exhibit No. 2020, VID_JPLF_000144, VID_JPLF_00039.

6

- **Jefferson Parish Council Meeting Update on the Landfill (Aug. 7, 2018) (Exhibit F)[15]**

- **Jefferson Parish Council Meeting Update on the Landfill (Aug. 29, 2018) (Exhibit G)[16]**

- **Jefferson Parish Council Meeting Update on the Landfill (Sept. 19, 2018) (Exhibit H)[17]**

- **Jefferson Parish Council Meeting Update on the Landfill (November 6, 2019) (Exhibit I)[18]**

These videos and transcripts are nothing but out-of-court statements—many made by residents or other non-parties—and none of them were made while under oath. *See, e.g.*, Exhibit F, Trial Exhibit No. 2025, VID_JPLF_000693 (including discussion from local Jefferson Parish residents); Exhibit E, Trial Exhibit No. 2017, VID_JPLF_000368 (Dr. Kanter speaking at local press conference). And similar to the news articles, Defendants anticipate that Plaintiffs will use these videos and transcripts to prove that odors and emissions from the JPLF caused Plaintiffs' injuries—indeed, Plaintiffs cite directly to the July 23, 2018 press conference in their Second Amended Complaint. Because the statements are made out of court and will be offered for the truth of the matter, they are inadmissible hearsay statements and should be excluded.

---

[15] Trial Exhibit No. 2025, VID_JPLF_000693. Plaintiffs have designated additional copies of this exhibit in other formats, including Trial Exhibit No. 2024, VID_JPLF_000149; Trial Exhibit No. 2025, VID_JPLF_000150, VID_JPLF_000576, VID_JPLF_000747.

[16] Trial Exhibit No. 2023, VID_JPLF_000500. Plaintiffs have designated additional copies of this exhibit in other formats, including Trial Exhibit No. 2022, VID_JPLF_000147; Trial Exhibit No. 2023, VID_JPLF_000148, VID_JPLF_000459, VID_JPLF_000520.

[17] Trial Exhibit No. 2028, VID_JPLF_000966. Plaintiffs have designated additional copies of this exhibit in other formats, including Trial Exhibit Nos. 2026, 2027, VID_JPLF_000151; Trial Exhibit No. 2028, VID_JPLF_000152, VID_JPLF_000917, VID_JPLF_000990.

[18] Trial Exhibit No. 2006, VID_JPLF_000192. Plaintiffs have designated additional copies of this exhibit in other formats, including Trial Exhibit No. 2004, VID_JPLF_000003; Trial Exhibit Nos. 2005, 2006, VID_JPLF_000004, VID_JPLF_000153, VID_JPLF_000212.

The source and reliability of these documents is also in question. The July 23, 2018 Press Conference video and all but one of the Parish Council meeting videos was taken from a Facebook page, the Jefferson Parish Air Quality Facebook Group, which is operated and maintained by Jefferson Parish residents. The source, accuracy, and completeness of the materials are therefore in question, compounding the unreliability and risk of prejudice associated with the exhibits.

To the extent that any of the statements made at the various meetings may not constitute hearsay, for example, if Plaintiffs argue that they are not being used for the truth or if some of the statements were made by Parish employees, the entire video and transcript of the various meetings and press conferences should still be excluded before trial under Rule 403 because the prejudicial value of the videos and transcripts outweigh any probative value and they will cause jury confusion. First, to the extent that Plaintiffs are not offering them for the truth of the matter asserted, then there is little to no probative value to statements made at press conferences or during Parish Council meetings. Moreover, including any statements made in response to questions or responding to other statements made by non-parties would be endlessly confusing and out of context. Finally, several of the individuals that made statements at the press conference or during Council meetings are on Plaintiffs' will call witness list for the upcoming trial. *See* R. Doc. 647 (listing Dr. Joseph Kanter, Chuck Carr Brown, Michael Algero, and Keith Conley).

The probative value of the videos and the corresponding transcripts are substantially outweighed by its potential for unfair prejudice. And the inclusion of these opinion-heavy and conclusory statements that have not been appropriately vetted within the parameters of the Rules of Civil Procedure will certainly confuse and prejudice Defendants. This is particularly the case when considering that the parties to this lawsuit were not present for many of the aforementioned

8

interviews, press conferences, and articles, and did not have any procedural avenue to cross-examine the veracity of same.

## CONCLUSION

The news stories, press conferences, and Parish Council meetings transcripts and recordings identified above must be excluded as inadmissible hearsay as out-of-court statements offered for the truth of the matter asserted. In cases where they contain mixed hearsay and exceptions may apply, they should be redacted in part. The jury should weigh reliable expert evidence and the testimony of the witnesses that will appear at trial—and not sensationalized news stories and other hearsay statements that have a high potential to confuse and mislead the jury and where Defendants will be deprived of the ability to cross-examine the proponents of such statements. The probative value of these exhibits is outweighed by the unfair prejudice and must be excluded under Federal Rule of Evidence 403.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:   /s/ Michael C. Mims
     Michael Cash (#31655)
     Cherrell Simms Taplin (#28227)
     Michael C. Mims (#33991)
     Brady M. Hadden (#37708)
     J. Hunter Curtis (#39150)
     Alec Andrade (#38659)
     701 Poydras Street, Suite 5000
     New Orleans, Louisiana 70139
     (504) 581-7979

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*


CONNICK AND CONNICK, LLC

By:     /s/ Michael S. Futrell
        William P. Connick, La. Bar No. 14158
        Michael S. Futrell, La. Bar No. 20819
        Matthew D. Moghis, La. Bar No. 33994
        Anya M. Jones, La. Bar No. 36923
        3421 N. Causeway Blvd., Suite 408
        Metairie, Louisiana 70002
        Telephone: (504) 681-6658
        Facsimile: (504) 838-9903
        E-mail: moghis@connicklaw.com

        *Counsel for Defendant Jefferson Parish*

GIEGER, LABORDE & LAPEROUSE, L.L.C.

By: /s/ J. Michael DiGiglia
Ernest P. Gieger, Jr. (6154)
John E. W. Baay (22928)
J. Michael DiGiglia (24378)
Nicholas S. Bergeron (37585)
Blaise Chadwick Hill (*pro hac vice*)
Gieger, Laborde & Laperouse, L.L.C.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011

*Attorneys for Defendant Aptim Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on July 17, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        /s/ Michael C. Mims
        OF COUNSEL