UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | **NO. 19-11133, c/w 19-14512** |
| **V.** | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | |
| **Defendants** | **JUDGE: Morgan** |
| | **MAGISTRATE JUDGE: North** |
| *Applies to: Both Cases* | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE INTRODUCTION OF NEWS REPORTS AND VIDEOS OF PRESS CONFERENCES AND COUNCIL MEETINGS

Plaintiffs submit the following Opposition to the Motion in Limine to Exclude Introduction of News Reports and Videos of Press Conferences and Council Meetings. (R.Doc. 670).

The motion should be denied.

### I.    INTRODUCTION.

As this Court ruled, in this case, just last week, "[i]t is well settled that motions in limine are disfavored." R.Doc. 671 at 3. "[T]he purpose of a motion in limine is to prohibit opposing counsel 'from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' mind.'" *Id.* at 3-4. Because an order in limine "excludes only clearly inadmissible evidence; evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds." *Id.* at 4. As a result, "[i]f the evidence is not clearly inadmissible on all grounds, it is

better for the court to decline to rule in advance of trial so that it will have the opportunity to resolve issues in context." This ruling requires denial of this Motion in Limine.

## II.   NEWS REPORTS MAY BE OFFERED FOR REASONS OTHER THAN PROOF OF THE MATTER ASSERTED, AND IN THAT CONTEXT ARE NOT HEARSAY.

Defense expert Pamela Dalton has opined in this case that Plaintiffs' complaints about odors came about not because they actually smelled them, but because Plaintiffs saw news stories about the odors from the Landfill and incorporated them into their memories.   R.Doc. 542-3, Dalton Report at 14.  Defense expert John Kind also discussed news reports, asserting that some residents "heard the news reports about the Jefferson Parish landfill and did not believe it was a source of odors in the area," R.Doc. 550-2 (Kind Report) at 47, while others did.  He quoted Plaintiff Geneva Green "I heard it on the news from the Parish president first," *Id.* at 15, and asserted that Plaintiff Reshaun Richardson "testified she became aware that a landfill was producing an odor after Mike Yenni announced it on the news." *Id.* at 29.  Similarly, Dr. Brobson Lutz has opined that Plaintiffs are influenced by "compensation neurosis."  R.Doc. 552-2 at 7, -8 (under seal).

If Defendants are going to contend that the Plaintiffs were influenced by news reports, they can hardly complain when their experts are asked if specific news reports and news accounts, in their opinion, improperly influenced the Plaintiffs into smelling odors that were actually (according to the Defendants) not there. In this context, the Defendants themselves have opened the door to the introduction of the news reports.

Similarly, Defendants appear to assert that the odors from the landfill were no big deal. But the fact that landfill odors were a topic of intense discussion (whether true or not) proves otherwise.  In that circumstance, likewise, the Defendants have opened the door.

As Defendants recognize, many of the news stories contain statements of the Parish or Waste Connections.  Several include interviewed statements of both Kris Carlson and Brian DeJean, whose companies were hired to fix the problems at the landfill.  Both were agents of Jefferson Parish, speaking on matters within the scope of the relationship, and were persons authorized by Jefferson Parish to make a statement on the subject.  As a result, their statements are not hearsay, as provided in Rule 801(d)(2).

Similarly, the November 6, 2019, news story entitled "Odor From Jefferson Parish Is Going To Get Worse Before It Gets Better," was a warning from Jefferson Parish that upcoming construction activities were going to increase the odors—the kind of news story Defendants should have promoted, to inform the public of the nature and source of the odors so they could be assured that the odors would not hurt them.  These statements, likewise, as statements of an opposing party, are not hearsay.[1]

Similarly, the video series "Stench of Failure" that aired two weeks later includes an extended interview with Mr. Rick Buller, the former Landfill Engineer in charge of the Jefferson Parish Landfill.  In the interview, Mr. Buller takes full blame for the odors, explaining that he approved the spent lime being allowed into the Landfill, which ultimately generated the hydrogen sulfide gas.  Although by the time of the interview, Mr. Buller no longer worked for the Parish, so Rule 801(d)(2) does not apply, the interview is very plainly a statement against Mr. Buller's own proprietary or pecuniary interest.  Accordingly, should Mr. Buller become unavailable as a witness, the statement is admissible under Rule 804(3).

---

[1] To the extent that a statement is admitted as non-hearsay as to one party, the other parties can request a limiting instruction under Rule 105.

Because the admissibility of the news stories depends upon the context in which they are offered at trial, their admissibility should be decided at trial, and not in a motion limine predicated on hypotheticals and conjecture.

## III.   TRANSCRIPTS AND VIDEOS OF PRESS CONFERENCES AND COUNCIL MEETINGS MAY BE OFFERED FOR REASONS OTHER THAN PROOF OF THE MATTER ASSERTED, AND IN THAT CONTEXT ARE NOT HEARSAY

A similar conclusion should obtain regarding the press statements and videos.  At the press conference convened on July 23, 2018, Parish President Mike Yenni announced that "[t]oday, I am announcing corrective actions to dramatically reduce and outright eliminate noxious odors that are emanating from the parish landfill in Waggaman."  R.Doc. 670-7 at 1.  This was, of course, an admission by the Parish that the odors which were being complained of were emanating from the Landfill.  On behalf of the Parish, President Yenni announced that the complaints of recurring odors in Harahan, River Ridge and Waggaman led him, along with others "to assemble a strike team to uncover a contributing source or sources of the smell."  *Id.* at 3.  He explained that the strike team consisted of, among others, the Department of DEQ,[2] the administration, Councilmen Spears and Johnston, emergency management, [and], IESI management," along with others.  *Id.* at 3-4.  While recognizing that there might be other sources as well, Councilman Johnston still stated that "we know the landfill's causing problems, [and] we know it's a big source of problems."[3]

___

[2] This appears to refer to the Parish Department of Environmental Affairs.  However, if the reference is to the Louisiana Department of Environmental Quality (LDEQ), then the Parish's enlistment of the LDEQ into the Parish's strike force makes the LDEQ an agent of the Parish, thereby rendering statements of the LDEQ to be statements of the Parish under Rule 801(d)(2).

[3] Defendants made a half-hearted attempt to question the validity of the videos.  Jefferson Parish maintains a website called Jefferson Parish Television, (www.jeffparish.tv) at which videos of Council meetings and press conferences can be viewed and downloaded.  Federal courts consider records from government websites to be self-authenticating under Rule 902(5). *Riverkeeper v. Taylor Energy Co., LLC*, 113 F. Supp. 3d 870, 881 (E.D. La. 2015) (Morgan, J.).

As against the Parish, none of this is hearsay, and to the extent the other Defendants are aggrieved by the Parish's admission of fault, they can request a limiting instruction under Rule 105.

To be sure, there may be statements of attendees at the press conference that are not made by the Parish and that would otherwise be excluded by the hearsay rule. Given that the upcoming trial is a timed trial, Plaintiffs do not propose to play the entire video of the press conference or the entire video of any of the Council meeting.

The November 6, 2019, Council Meeting included a presentation by Mr. Kris Carlson, who the Parish had hired to oversee completion of remediation and repairs to the Landfill. As against the Parish, his statements are not hearsay under Rule 801(d)(2).

The December 5, 2018, Council Meeting included a presentation by the LDEQ to the Parish in which the LDEQ explained the findings of its investigation. As discussed in other responses to Defendants motion in limine, this presentation is admissible under Rule 803(8) as an exception to the hearsay rule.

Because of these issues, there can be no blanket order excluding the press conference and council meeting videos and the motion in limine should be denied.

## IV. DEFENDANTS HAVE NOT SHOWN UNFAIR PREJUDICE TO PERMIT EXCLUSION OF THE EVIDENCE UNDER RULE 403.

As this Court recognized in *Thibodeaux v. WellMate,* No. CIV.A. 12-1375, 2014 WL 1329802, at *4 (E.D. La. Mar. 31, 2014) (Morgan, J.), "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Thibodeaux* at *4. When the Parish publicly

---

If there is any legitimate question, Plaintiffs will be happy to obtain the official versions for presentation at trial.

admits fault, informing the jury of that fact does not unfairly prejudice the Parish.  Perhaps Waste

Connections or Aptim might claim prejudice, but a limiting instruction cures that.  And, at the

time, Waste Connections responded to the Parish's statement by admitting that the leachate and

gas collection systems did not work properly, and having taken that public position, Waste

Connections can hardly claim prejudice now.

Respectfully submitted, this 24th day of July, 2024.

/s/ S. Eliza James

FORREST CRESSY & JAMES, LLC
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele:(504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
nicholas@fdjlaw.com
eliza@fcjlaw.com

/s/ Eric C. Rowe

C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whiteforlaw.com
erowe@whitefordlaw.com
mchilders@whitefordlaw.com

Harry S. Johnson, (Admitted Pro Hac Vice)
James R. Jeffcoat (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636
(410) 347-8700
hjohnson@whitefordlaw.com

6

jjeffcoat@whitefordlaw.com

*Counsel For Addison Plaintiffs*