UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** <br><br> Plaintiffs <br><br> V. <br><br> **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** <br><br> Defendants <br><br> *Applies to: Both Cases* | CIVIL ACTION <br><br> NO. 19-11133, c/w 19-14512 <br><br> SECTION: "E" (5) <br><br><br> **JUDGE: Morgan** <br> **MAGISTRATE JUDGE: North** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXLUDE EVIDENCE RELATED TO POTENTIAL CLAIMANTS NOT PROCEEDING AT TRIAL

Plaintiffs oppose the Defendants' Motion in Limine to Exclude Evidence Related to Potential Claimants Not Proceeding at Trial (Rec. Doc. 663). Defendants' Motion focuses on three broad areas of complaint. (1) that evidence of other Plaintiffs' claims is prejudicial to the defense; (2) "Hearsay" statements about odor experiences should be excluded; and (3) that Trial Plaintiff Mary Ann Winningkoff should be precluded from testifying certain damages at trial. For the foregoing reasons, Defendants' Motion should be denied as to all relief requested.

As a threshold matter, it must be stated that Plaintiffs are not seeking damages or putting on evidence related to claims for individuals other than then 13 named Trial Plaintiffs.

**A. Plaintiff Mary Ann Winningkoff should be allowed to testify about her observations, perception, and experiences with the odors from the JPLF, which includes caring husband prior to his death.**

Mary Ann Winningkoff is an 80 year old woman and resident of Harahan for almost two decades. She shared her home on Donelon Drive with her husband, Adam Winningkoff, who tragically passed away from pulmonary fibrosis in May 2018. Neither Adam Winningkoff (prior to his passing) or Mr. Winningkoff's estate are named Plaintiffs in the *Addison* case. Mrs. Winningkoff is a Plaintiff in her individual capacity only. Defendants' Motion seek to limit testimony critical aspects of Mrs. Winningkoff's claim; specifically, her observations, perception, and experience with the odors during her husband's final year of life.

Rule 701 governs opinion testimony by a lay witness by outlining a three factor test; lay opinion testimony must be (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[1] Further, Rule 701 requires that "a lay opinion must be based on personal perception, must 'be one that a normal person would form from those perceptions,' and must be helpful to the jury."[2] In their Motion, Defendants claim make blanket assertions that such testimony is "speculative, irrelevant, unfairly prejudicial, and constituting hearsay."[3] [4] Defendants, who have the burden on their Motion, do not state *why* Mrs. Winningkoff's anticipated testimony runs afoul of Rule 701. There is no question that testimony relating to her experience with the odors in her home in 2017-2018 is both based on her own experience and helpful to understanding a fact at issue (namely, whether the odors

---

[1] *See* FRE Rule 701.
[2] *See United States v. Riddle,* 103 F.3d 423, 428 (5th Cir.1997) (quoting *Soden v. Freightliner Corp.,* 714 F.2d 498, 511 (5th Cir.1983)); *see also Robinson v. Bump,* 894 F.2d 758, 763 (5th Cir.1990).
[3] Defendants' memorandum makes callous and derogatory conclusions regarding Mrs. Winningkoff's testimony broadly characterizing it as "widow's musings" and "preying upon the jury's sympathies." *See* Rec. Doc. 663-1 at 6 and 4.
[4] *See* Rec. Doc. 663-1 at 4.

were present, and whether she suffered damages caused by those odors.) Moreover, this testimony is clearly relevant. As Mr. Winningkoff's primary caregiver, Mrs. Winningkoff has personal knowledge of his condition while the odors were present in their home. In Defendants attempts to exclude unfavorable testimony, they overlook that Mrs. Winningkoff is entitled to testify relating to *her* damages - central to which are the sadness, worry, decrease in quality of life and enjoyment of her property by watching her husband decline in a home overrun with unabated noxious odors, with little ability to leave the property due to the care her husband required and his reliance on oxygen at the end of his life. The Court has already found that general causation exists for these injuries.[5]

Moreover, this testimony is critical to rebutting Defendants' contention, through Dr. Dalton, that the Plaintiffs are engaged in "memory reconstruction," i.e., incorporating in their recollection what they heard and read about others' reaction to the odors (a nice way of saying that Plaintiffs are lying). In fact, Mrs. Winningkoff was very vocal *contemporaneously* about her worry and anxiety regarding the odor's effect on her husband's health. Mrs. Winningkoff was a prolific poster on social media about the odors and made numerous official complaints to the Parish and LDEQ, specifically referencing her husband's condition and her observations with how the odors affected his health as well as her own.[6] All this testimony will rebut the unfounded and derogatory accusations of defense experts Dr. Dalton and Dr. Lutz.

Plaintiffs are neither putting on evidence of medical causation relating to Mr. Winningkoff's death, nor suggesting that his underlying condition was caused by the odors

---

[5] *See* Rec. Doc. 323.
[6] *See* Exhibit 1, LDEQ Complaints by Mary Ann Winningkoff.

emanating from the Jefferson Parish Landfill ("JPLF").[7] However, it is completely logical for a lay person to conclude that an individual in a compromised health state would be affected negatively by the odors and that this belief caused her anxiety and worry. Mrs. Winningkoff is surely able to offer this testimony and should not be precluded from doing so.

### B. Witnesses should not be barred from mentioning claims of other Plaintiffs.

Prior to filing this opposition, Plaintiffs reach out to Defendants to resolve this particular issue, suggesting a stipulation or instruction from the Court that would be read to the jury that states that this case is only about the 13 Trial Plaintiffs and that is all the jury is here to decide. This offer was rejected by Defendants, who stated that Defendants would only entertain an agreement to resolve their motion (and give them essentially the relief they requested) if Plaintiffs would agree that they could put on evidence "that the alleged odors were not offensive to people of ordinary sensibilities, including evidence that other citizens continued to enjoy the allegedly affected areas and were not bothered by any alleged odors." This very issue is a topic of one of Plaintiffs' pending Motions in Limine which argues that such evidence has no relevance to the claims, causation, and damages alleged by the Trial Plaintiffs.

In further opposition, Defendants' Motion is unclear as to what specific relief it is requesting. Defendants cite case law excluding presentation of evidence relating to lawsuits and related class actions against the Defendants. However, they go on to say argue that the "Trial Plaintiffs should not be permitted to discuss the existence of more than 540 *Addison* Plaintiffs…".[8] As a threshold matter, Plaintiffs are not attempting to seek damages for any individual other than

---

[7] As Defendants' memorandum states, Mr. Winningkoff was diagnosed with pulmonary fibrosis prior to the relevant time period. *See* Rec. Doc. 663-3 at 5. Plaintiffs do not dispute the date of Mr. Winningkoff's diagnosis.
[8] *See* Rec. Doc. 663-1 at 3.

4

the 13 Trial Plaintiffs in the August trial. In fact, Plaintiffs do not intend to call *any* named *Addison* Plaintiff other than the 13 Trial Plaintiffs as witnesses. Defendants, on the other hand, have served trial subpoenas on four *Addison* Plaintiffs (who are *not* Trial Plaintiffs) to appear as witnesses in the August trial.[9] Defendants also seek to put on testimony as to other community members' experience or lack of experience with the odors to establish (without foundation) that a "person of ordinary sensibilities" i.e.- these intentionally and purposefully selected individuals (including one defense lawyer's father-in-law) were unbothered by the odors, and that Plaintiffs and the other 3,000+ complainants are nothing more than hypersensitive at best and, at worst, are driven by greed of receiving compensation (so-called "compensation neurosis") in a lawsuit.

While this challenge may be styled as an attempt to limit the jury's knowledge of the breadth of litigants involved in this and the consolidated class actions, the practical effect would be highly prejudicial to the Trial Plaintiffs. For example, Trial Plaintiff Jonathan Tate is the husband of Breana Tate and their minor child, J.T. Both J.T. and Mrs. Tate resided with Mr. Tate during the relevant time period and are named Plaintiffs in the *Addison* action. Much like Mrs. Winningkoff, Mr. Tate will testify about his experience with the odors, which includes concern about his newborn son and frustration he felt when the odors prevented J.T., who suffered from jaundice as an infant, from getting natural light outdoors. Under the scenario posed by the Defendants, the jury would incorrectly be led to conclude that Mr. Tate was alleging his own claims without consideration of the claims of his son and wife. Moreover, one of Defendants defenses is that the odors were not present or only caused minimal impacts. By barring the Trial

---

[9] *See* Rec. Doc. 649 listing Stephanie Brooks, Curtis "Lee" Adams, Janet McKeel, and Breana Tate as witnesses for the Waste Connections Defendants. Stephanie Brooks is the former girlfriend of Stanley Meyers. Curtis "Lee" Adams is a friend of the Gremillion Family. Janet McKeel is the longtime partner of Plaintiff Andrew Section. Breana Tate is the wife of Jonathan Tate and mother of the couple's minor child, J.T.

Plaintiffs or other Addison witnesses from discussing their observations of family and community members' experience with the odors would bolster this position by casting that Trial Plaintiff as highly sensitive to odors or more litigious than his peers. And, even more importantly, the result Defendants are seeking is extremely one-sided and prejudicial. Defendants are seeking the ability to put on evidence of other individual's experience with the odors while simultaneously seeking to bar Plaintiffs from just that. This request is therefore unfounded, and should be denied.

### C. Testimony of other's experience of odors may not always be hearsay, and a blanket prohibition against such testimony is not proper.

Defendants' Motion seeks to exclude *all* testimony relating to a non-Trial Plaintiff's experience with odor as impermissible hearsay under FRE Rule 801. With the exception of one statement by Mrs. Winningkoff, Defendants fail to cite what specific statements are hearsay and are sought to be excluded by this Motion. Defendants broadly assert that the only way a witness could learn about another individual's experience with the odor is to be told about. This is simply untrue.

Rule 801 prohibits out of court statements but does not prohibit a witness's own observations, perception, or belief. Furthermore, Rule 801 is ripe with exceptions to the rule against hearsay that may be applicable, depending on the statement and the circumstances of its creating,, including Rule 803(1) (presence sense impression), 803(2) (excited utterance), 803(4) (recorded recollection), 803(6) (records of regularly conducted activity) and 803(8) (public records) and Rule 807 (the residual exception). Defendants are free to object to any statement that they perceive is hearsay at trial and the court can rule accordingly on the circumstances and contents of that particular statement.

For the foregoing reasons, the Motion should be denied.

Respectfully submitted, this 24th day of July, 2024.

        /**s**/ S. Eliza James
Byron M. Forrest (La. Bar No. 35480)
Nicholas V. Cressy (La. Bar No. 35725)
S. Eliza James (La. Bar No. 35182)
FORREST CRESSY & JAMES, LLC
1222 Annunciation Street
New Orleans, Louisiana 70130
Tele: (504) 605.0777
Fax: (504) 322.3884
Email: byron@fcjlaw.com
    nicholas@fcjlaw.com
    eliza@fcjlaw.com

        /s/ Eric C. Rowe
C. Allen Foster (Admitted Pro Hac Vice)
Eric C. Rowe (Admitted Pro Hac Vice)
Harry S. Johnson (Admitted Pro Hac Vice)
James Jeffcoat (Admitted Pro Hac Vice)
Masten Childers, III (Admitted Pro Hac Vice)
WHITEFORD, TAYLOR & PRESTON, L.L.P.
1800 M Street, NW, Suite 450N
Washington, DC 20036
Tele: (202) 659.6800
Fax: (202) 331.0573
Email: cafoster@whitefordlaw.com
    erowe@whitefordlaw.com
    hjohnson@whitefordlaw.com
    jjeffcoat@whitefordlaw.com
    mchilders@whitefordlaw.com

*Counsel for Addison Plaintiffs*

7