**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** | **CIVIL ACTION** |
| **Plaintiffs** | **NO. 19-11133 c/w 19-14512** |
| ***versus*** | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** | **JUDGE SUSIE MORGAN** |
| **Defendants** | **MAG. JUDGE MICHAEL B. NORTH** |
| ****APPLIES TO ALL CASES**** | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION IN LIMINE**

All Defendants[1] respectfully submit the following memorandum in opposition to Plaintiffs' Omnibus Motion To Exclude Certain Prejudicial Evidence, Argument, Or Examination At Trial ("Motion").[2]

At least four categories of evidence targeted by the Motion are plainly relevant and admissible, including (1) expert testimony that various medications used by Trial Plaintiffs likely caused or contributed to their alleged injuries; (2) Trial Plaintiffs' own statements that motor vehicle accidents or other incidents caused headaches and other Allowed Injuries during the relevant time period; (3) testimony of other citizens who continued to enjoy the allegedly affected areas and were not bothered by any alleged odors; and (4) evidence and testimony from *one of the Trial Plaintiffs' supporting witnesses* tending to rebut the existence of odor problems at Paradise Manor Community Club, where certain Trial Plaintiffs claim they were affected by odors.

[1] Defendants are Aptim Corp., Jefferson Parish, Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.

[2] ECF. Doc. 669.

The other categories of evidence cited by Plaintiffs may or may not prove to be relevant at trial depending on the Trial Plaintiffs' testimony and whether they open the door to certain issues, making the Motion premature at this stage.

For the reasons set forth further below, Plaintiffs' Motion should be denied.

## I. APPLICABLE LAW

Evidence is relevant if "it has any tendency to make a fact more probable or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."[3] Relevant evidence is generally admissible.[4]

Under Federal Rule of Evidence ("FRE") 403, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Courts have broad discretion in balancing the probative value of evidence against its potential to create unfair prejudice.[5] The federal rules do not disfavor prejudicial evidence – in fact, parties typically only choose to offer evidence when it is prejudicial to their opponent.[6] Rather, FRE 403 speaks only to *unfair* prejudice, and even then, only calls for exclusion when unfair prejudice *substantially outweighs* the evidence's probative value. "[U]nfair prejudice results from an aspect of the evidence other than its tendency to make the existence of a material fact more or less

[3] Fed. Rule Evid. 401.

[4] Fed. Rule Evid. 402.

[5] *U.S. v. Adcock*, 651 F.2d 338, 343 (5th Cir. 1981).

[6] *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1155 (5th Cir. 1981) ("As this court has consistently held, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'").

probable, *e.g.*, that aspect of the evidence which makes [a favorable verdict] more likely because it provokes an emotional response in the jury."[7]

In conducting a balancing test under FRE 403, courts should not weigh the credibility of the evidence – rather, Fifth Circuit law dictates that courts should presume that the evidence is indeed probative for the reasons asserted by the offering party, and weigh that purported probative value against the alleged risk of unfair prejudice.[8]

## II. ARGUMENT

At least four categories of evidence targeted by Plaintiffs' Motion have probative value which, when accepted as credible, certainly outweighs the alleged risk of unfair prejudice. The remaining categories of evidence which Plaintiffs seek to exclude may or may not prove to be relevant at trial depending on the Trial Plaintiffs' testimony. The Motion should be denied.

### A. Defendants must be allowed to rebut causation with alternative cause testimony, including evidence of medications contributing to Trial Plaintiffs' alleged injuries.

Defendants have offered expert testimony, which at this stage must be accepted as credible,[9] that multiple Trial Plaintiffs were regularly taking medications that likely caused or contributed to nausea, vomiting, and other Allowed Injuries during the relevant time period.[10] Such evidence must be allowed under FRE 403, as the Fifth Circuit demands that specific causation experts consider potential alternative causes of the alleged injury.[11]

---

[7] *U.S. v. Bailleaux*, 685 F.2d 1105 (9th Cir. 1982).

[8] *Ballou,* 656 F.2d at 1154 (reversing trial court's exclusion of prejudicial blood alcohol evidence).

[9] *Id*.

[10] Plaintiffs seek to exclude this evidence. *See* Motion pp. 6-7.

[11] *See McNabney v. Lab'y Corp. of Am*., 153 F. App'x 293, 295 (5th Cir. 2005) ("[causation expert's] failure to consider and exclude other potential causes of [plaintiff's] injury before offering an opinion renders his testimony unreliable."); *Viterbo v. Dow Chem. Co*., 826 F.2d 420, 423-24 (5th Cir. 1987) (excluding expert where "blood tests did reveal a high level of another chemical, dieldrin, which can cause depression; Dr. Johnson recognized that the level was high but ignored this chemical as a cause of Viterbo's symptoms… The significance of the lack of objective evidence linking Tordon 10K to Viterbo's ailments is heightened by Dr. Johnson's admission that the symptoms could have a number of causes."); *McGill v. BP Expl. & Prod*., 830 Fed. Appx. 430, 433 (5th Cir. 2020) ("Dr. Stogner's conclusions

For example, one Trial Plaintiff complains that she suffered, among other injuries, *daily* nausea for the entire 2017-2019 time period.[12] Plaintiffs' expert Robert DeLorenzo, M.D. has opined that her alleged 2017-2019 exposure to landfill emissions is the most likely cause of her daily nausea.[13] In rebuttal, Defendants' expert Brobson Lutz, M.D. noted that this Trial Plaintiff chronically used opiate medication for many years, including during the relevant time period, and that "Daily nausea as reported by [Trial Plaintiff] was far more likely related to her chronic opiate medications than to low level concentrations of hydrogen sulfide from a landfill."[14] In support, Dr. Lutz explains that the Trial Plaintiff was taking a *daily* regimen of extremely high dosages of hydrocodone, 2-3 times per day, and that hydrocodone is known to cause nausea in at least 44% of patients.[15]

Defendants' expert testimony that there are alternative causes to Plaintiffs' alleged 2017-2019 symptoms – such as frequently used medications – is plainly relevant and necessary to allow Defendants an opportunity to rebut specific causation. Applying this same rationale, courts routinely allow the introduction of allegedly prejudicial testimony, including evidence of prior drug use, when the evidence is relevant to rebutting the plaintiff's version of the events.[16] Simply

---

do not appear to be the product of reliable principles, and there is a notable analytical gap between the facts he relies on and the conclusions he reaches. Dr. Stogner's deposition fails to address other potential causes of McGill's illness and the method by which he rules them out."); *Osmer v. BP Expl. & Prod*., No. 19-10331, 2021 WL 4206950, at *1 (E.D. La. Sept. 16, 2021) (excluding causation expert who failed to "rule out other potential causes of plaintiff's medical condition on a scientific basis.") (citing *McGill*, 830 Fed. Appx. 430).

[12] Defendants' Exhibit 2 to ECF Doc. #562, DeLorenzo Rebuttal Report at p. 40

[13] *Id*.

[14] Trial Plaintiffs' Exhibit 1 to ECF Doc. #552, Dr. Lutz's Expert Report at p. 31. Defendants' toxicology expert Dr. John Kind has also offered expert opinions that certain medications taken by the Trial Plaintiffs caused or contributed to headaches, nausea, vomiting, and other Allowed Injuries they allege in this case. Dr. Kind's report was attached to Plaintiffs' motion to seal at ECF Doc. 586.

[15] *Id*. at 32.

[16] *Ballou*, 656 F.2d 1147 (trial court committed reversible error in excluding blood alcohol data); *Baker v. Dalkon Shield Claimants Tr*., 156 F.3d 248, 254 (1st Cir. 1998) (trial court committed reversible error in excluding evidence of plaintiff's chlamydia, which defendant offered as an alternative cause of plaintiff's pelvic inflammatory disease in products liability lawsuit regarding IUD); *Wright v. Nat'l Interstate Ins. Co*., No. CV 16-16214, 2017 WL 3686562,

put, Plaintiffs cannot impede Defendants' right to rebut specific causation, or to provide the jury with evidence of potential alternative causes, simply because they find the evidence to be prejudicial.

**B. Specific causation also requires consideration of other injuries sustained during the relevant time period, including car accidents that led to litigation.**

Defendants must be allowed to rebut specific causation by pointing to other injuries sustained by Trial Plaintiffs during the relevant time period, including car accidents that led to litigation,[17] particularly when Trial Plaintiffs themselves have blamed these non-odor events for headaches and other Allowed Injuries.

For example, Trial Plaintiff Stanley Meyers was involved in a motor vehicle accident in November 2018, and brought a lawsuit for various injuries – including pain, suffering, mental anguish, emotional suffering, and loss of enjoyment of life.[18] During his independent medical examination conducted in this litigation, he complained of worsening headaches in 2018 due to the motor vehicle accident, which he says left his spine "messed up" and caused him to develop a "foot drop."[19] In this litigation, Mr. Meyers alleges that landfill odors caused headaches from 2017-

at *1 (E.D. La. Aug. 25, 2017) (Fallon, J.) (allowing introduction of plaintiff's allegedly prejudicial medical records which were relevant to causation); *Reyes v. Wal-Mart Stores, Inc., No*. CIV. A. 98-3626, 1999 WL 562721, at *1 (E.D. La. July 29, 1999) (Duval, J.) (same); *Graham v. Hamilton*, 872 F. Supp. 2d 529, 539 (W.D. La. 2012) (evidence of plaintiff's marijuana use was relevant to contributory negligence and not outweighed by risk of unfair prejudice); *Harris v. Kubota Tractor Corp*., No. CIV.04-2490, 2006 WL 2734460, at *3 (W.D. La. Sept. 22, 2006) ("Evidence of [plaintiff's] use of cocaine and marijuana during the week of his accident is relevant because it may, in the mind of the jury, tend to establish that [plaintiff] was impaired at the time of the accident, an issue in this case."); *Evans v. Toyota Motor Corp*., No. CIV.A. V-03-09, 2005 WL 3844071, at *5 (S.D. Tex. Sept. 2, 2005) (evidence of marijuana and prescription drug use was relevant to contributory negligence and not outweighed by risk of unfair prejudice); *Solis-Marrufo v. Bd. of Comm'rs for Cnty. of Bernalillo*, No. CIV 11-0107 JB/KBM, 2013 WL 1658203, at *1 (D.N.M. Mar. 28, 2013) (evidence of plaintiff's cocaine use was relevant as alternative source of plaintiff's emotional distress); *Fletcher v. City of New York*, 54 F. Supp. 2d 328, 333–34 (S.D.N.Y. 1999) (evidence of plaintiff's marijuana and alcohol use was relevant as alternative source of plaintiff's emotional distress).

[17] Plaintiffs seek to exclude this evidence. *See* Motion pp. 5-6.

[18] Stanley Meyer's State Court Petition for Damages, attached hereto as Exhibit A.

[19] Redacted Excerpts of IME report for Stanley Meyers, attached hereto as Exhibit B. Although Plaintiffs have not designated the IME report as confidential, Defendants have submitted a redacted version. If the Court wishes to view

2019. Defendants must be allowed to cross examine Mr. Meyers about the fact that he himself has pointed to non-odor related causes of his headaches during this time period, as a means of defeating causation or at least to defend against the exorbitant damages being claimed herein. If Mr. Meyers denies that the 2018 motor vehicle accident was a source of Allowed Injuries during the relevant time period, then Defendants must be allowed to impeach him with his lawsuit in which he has claimed otherwise.

For the same reasons discussed in Section II.A *supra*, and under the case law cited therein, Defendants must be allowed to rebut specific causation by pointing to alternative causes of the Trial Plaintiffs' alleged injuries, including those alternative causes that the Trial Plaintiffs themselves have pointed to in other lawsuits.[20]

**C. Defendants must be allowed to rebut Trial Plaintiffs' claims of debilitating odors through testimony of unaffected neighbors.**

Defendants must be allowed to rebut Trial Plaintiffs' claims of debilitating odors by presenting the testimony of unaffected neighbors and other citizens of the allegedly affected area,[21] which Louisiana courts routinely recognize as a valid and necessary method of defending against nuisance claims.

As this Court has recognized, to establish a nuisance under Louisiana law, Trial Plaintiffs

---

a copy of the unredacted IME report, Defendants will happily confer with Plaintiffs to determine whether a motion to seal or *in camera* review is appropriate.

[20] Similarly, to the extent Trial Plaintiffs have claimed disability due to symptoms during the relevant time period that overlap with the Allowed Injuries, Defendants must be allowed to introduce evidence of the disability and the claimed symptoms as an alternative cause of Trial Plaintiffs' injuries. Defendants will not offer evidence of disability as a means of labeling Trial Plaintiffs with a "possible negative stereotype," as Plaintiffs claim. *See* Motion, p. 4.

[21] Plaintiffs' motion primarily seeks the exclusion of written declarations from unaffected neighbors. *See* Motion pp. 7-8. To the extent Plaintiffs also seek exclusion of live testimony from the unaffected neighbors, the Motion should be denied for the reasons set forth above. As for the written declarations, some of Defendants' experts relied on them in reaching their opinions, which is appropriate under FRE 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."). Plaintiffs have offered no basis for excluding expert opinions which relied on the written declarations, and none exists.

must prove they were exposed to odors which were "excessive [and] unreasonable in degree, and of such character as to produce actual, physical discomfort and annoyance to a person of ordinary sensibilities."[22] Similarly, Louisiana law holds that jurors should consider the "sensitivity of the one complaining," and should not find a nuisance based on what bothers "the most sensitive neighbor."[23] Further, the jury will be charged with determining whether the alleged odors caused "real damage or mere inconvenience," and in doing so they must consider "the reasonableness of the conduct in light of the circumstances[,] the character of the neighborhood, the degree of the intrusion and the effect of the activity on the health and safety of the neighbors."[24]

To allow jurors to weigh the above factors, Louisiana courts routinely hold that nuisance defendants are entitled to present testimony from unaffected residents of the neighborhood.[25] Such testimony is allowed as a means "[t]o refute the evidence on nuisance."[26] Here, Defendants are entitled to put up a defense on these issues, including testimony from Jefferson Parish citizens who will testify as to their observations of the alleged odors in the Trial Plaintiffs' neighborhoods and whether they caused real damage, mere inconvenience, or went unnoticed altogether. Excluding such testimony would infringe on Defendants' right to rebut Plaintiffs' claims of nuisance. The

---

[22] *Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc*., No. CV 18-7889, 2019 WL 4111681, at *4 (E.D. La. Aug. 29, 2019) (citing *Meyer v. Kemper Ice Co*., 180 La. 1037, 1044, 158 So. 378, 380).

[23] *Jones v. Capitol Enterprises, Inc*., 2011-0956 (La. App. 4 Cir. 5/9/12), 89 So. 3d 474, 509.

[24] *Rodrigue v. Copeland*, 475 So. 2d 1071, 1077–78 (La. 1985).

[25] *See, e.g., Rodrigue,* 475 So. 2d at 1074 ("Defendant called five residents of the neighborhood who testified that the display was not unpleasant and the traffic situation was much improved since institution of the sheriff's plan."); *Badke v. USA Speedway, LLC*, 49,060 (La. App. 2 Cir. 5/14/14), 139 So. 3d 1117, 1128 (in damages trial involving loud racetrack, defendants called several witnesses who lived near the racetrack and testified that they were not bothered by the noises); *James v. Witherington*, 47,461 (La. App. 2 Cir. 9/26/12), 106 So. 3d 582, 585 (defendant called her brother as a witness who lived nearby and testified that he could not hear the dogs barking from inside his house and it was common to hear dogs barking in the neighborhood because there were so many); *A to Z Paper Co., Inc. v. Carlo Ditta, Inc*., 1999-1189 (La. App. 4 Cir. 10/4/00), 775 So. 2d 42, 47-48 (defendant called a witness who lived in the neighborhood and testified that "he had experienced no new dust, noise, vibration, or flooding problems attributable to the Ditta facility"); *Hernandez v. Richard*, 2000-471 (La. App. 3 Cir. 12/6/00), 772 So. 2d 994, 999 (defendant called her neighbor as a witness who testified that the barking dogs "did not bother her").

[26] *A to Z Paper Co., Inc*., 775 So. 2d at 48.

jury must be allowed to hear evidence of whether the Trial Plaintiffs' neighbors were bothered by the alleged odors.

**D. Defendants must be allowed to rebut Trial Plaintiffs' claims that odors prevented them from enjoying the Paradise Manor Community Club.**

Defendants must be allowed to rebut Plaintiffs' story that they couldn't use community recreation areas because of overwhelming odors – false allegations to which Defendants must be allowed to respond. Multiple Trial Plaintiffs have echoed similar claims, including the Gremillion family, who have alleged that their children could not attend swim practice at Paradise Manor Community Club ("PMCC") and that the family was generally prevented from enjoying the club. Defendants intend to rebut these claims with testimony and evidence from a witness identified *by Plaintiffs* as a supporting witness.[27]

In their May 19, 2023 witness list, Plaintiffs listed Curtis "Lee" Adams as a supporting witness.[28] Wendy Gremillion testified at her deposition that Mr. Adams was a neighbor they met through PMCC, and that Mr. Adams could testify as to the ways in which the Gremillion family was affected by odors.[29] From 2017-2020, Mr. Adams was the president of PMCC and responsible for overall management of the club.[30] Wendy and Scott Gremillion have both testified that their quality of life was impacted because the alleged odors prevented them from enjoying PMCC and caused their children to miss swim practices at the club.[31]

At his deposition, Mr. Adams confirmed that, for the relevant time period, PMCC has no

[27] Plaintiffs now seek to exclude this evidence. Plaintiffs' Motion, pp. 8-9.

[28] ECF Doc. 396.

[29] Deposition of Wendy Gremillion at pp. 27:1-29:22, attached hereto as Exhibit D.

[30] Deposition of Curtis "Lee" Adams at p. 19:12-19, attached hereto as Exhibit E.

[31] Deposition of Scott Gremillion at pp. 59:15-22, 69:10-15, 178:24-179:7, attached hereto as Exhibit F; Exhibit D, at pp. 57:9-15, 138:24-139:15.

documentation that odors were present at the club, or that the club was ever closed due to odors, or that any practices or other events were ever cancelled due to odors.[32] Additionally, Mr. Adams produced financial data for the relevant time period setting out PMCC's income from memberships, food and beverage sales, event hosting, and equipment and facility rentals.[33] The financial data indicate that PMCC was thriving during the summer of 2018 (the season that Plaintiffs paint as the alleged peak of the odors at issue in this case). Food and drink revenues were up; facility rentals were up; and the club broke records for revenue from "events and programs" (swim and tennis events)[34] hosted at the club (a record which was again broken in 2019).[35] Such evidence is plainly relevant, as it would tend to make "less probable" the notion that odors were so bad at PMCC that persons of "ordinary sensibilities" were prevented from enjoying the club.[36] Likewise, it will rebut the broader theme that Plaintiffs intend to present to the jury that landfill odors during the relevant time period were of such intensity that community events were routinely being cancelled due to odors.[37]

Plaintiffs recently removed Lee Adams from their witness list, apparently realizing that his

---

[32] Exhibit E, at pp. 40:6-42:5.

[33] *Id.* at pp. 42-51. Although the Court has excluded Defendants' expert Joseph Gardemal, including his testimony on the PMCC financial data, the basis of the Court's decision was that his opinion "goes beyond the permissible bounds of [] a [rebuttal] report and enters the territory of an unsanctioned supplemental report." ECF 643, p. 8. That rationale does not preclude Defendants from questioning Mr. Adams at trial about the PMCC financial data. Plaintiffs themselves designated Mr. Adams as a witness, the PMCC data was timely produced, and he was deposed extensively on the PMCC data. There is no basis for Plaintiffs to claim surprise or prejudice by Defendants' questioning Mr. Adams at trial regarding the PMCC data.

[34] Exhibit E, at pp. 46:6-7.

[35] Financial data of PMCC produced by Lee Adams, attached hereto as Exhibit G. Defendants will provide a copy of this document in its native format to the Court if requested.

[36] Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); *Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc*., No. 18-7889, 2019 WL 4111681, at *4 (E.D. La. Aug. 29, 2019) (Morgan, J.) (to constitute a nuisance, odors must be "excessive [and] unreasonable in degree, and of such character as to produce actual, physical discomfort and annoyance to a person of ordinary sensibilities.").

[37] Exhibit C, deposition of Jonathan Tate at 35:20-36:20 (claiming that about 50% of softball practices at Waggaman Playground in the years 2017, 2018, and 2019 were cancelled due to odors).

testimony does them little good. But Plaintiffs cannot prevent Defendants from rebutting injuries that Plaintiffs themselves have put at issue – including the Gremillions' claim that their swim club was so odorous that they were prevented from attending swim practice or otherwise enjoying the club. The jury must be allowed to hear the whole story, not just the self-serving version offered by Plaintiffs.

**E. The remainder of Plaintiffs' Motion is premature and hinges on the Trial Plaintiffs' trial testimony.**

The remaining categories of evidence which Plaintiffs seek to exclude may or may not prove to be relevant at trial depending on the Trial Plaintiffs' testimony. Presently, Defendants do not intend to introduce argument or testimony about the Trial Plaintiffs' welfare benefits, tax returns, or criminal history. Of course, if the Trial Plaintiffs put these facts at issue or testify contrary to the truth, then Defendants should be allowed to explore any areas for which Plaintiffs have "opened the door." This Court is well-equipped to adjudicate such issues as they arise at trial.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion should be denied.

Respectfully submitted,

LISKOW & LEWIS, APLC

By: /s/ Michael C. Mims
Michael Cash (#31655)
Cherrell Simms Taplin (#28227)
Michael C. Mims (#33991)
Brady M. Hadden (#37708)
J. Hunter Curtis (#39150)
Alec Andrade (#38659)
701 Poydras Street, Suite 5000
New Orleans, LA 70139
Telephone: (504) 581-7979
Telefax: (504) 556-4108

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.*

CONNICK AND CONNICK, LLC

By: /s/ Michael S. Futrell
William P. Connick, La. Bar No. 14158
Michael S. Futrell, La. Bar No. 20819
Matthew D. Moghis, La. Bar No. 33994
Anya M. Jones, La. Bar No. 36923
3421 N. Causeway Blvd., Suite 408
Metairie, Louisiana 70002
Telephone: (504) 681-6658
Facsimile: (504) 838-9903
E-mail: moghis@connicklaw.com

*Counsel for Defendant Jefferson Parish*

/s/ Nicholas S. Bergeron
Ernest P. Gieger, Jr. (6154)
John E. W. Baay (22928)

J. Michael DiGiglia (24378)
Nicholas S. Bergeron (37585)
Blaise Chadwick Hill (*pro hac vice*)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
Email: egieger@glllaw.com
jbaay@glllaw.com
mdigiglia@glllaw.com
nbergeron@glllaw.com
chill@glllaw.com

*Attorneys for Aptim Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record via the Court's electronic case management system on July 24, 2024.

*/s/ Michael C. Mims*