**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,** **Plaintiffs** | **CIVIL ACTION** |
| | **NO. 19-11133, c/w 19-14512** |
| **VERSUS** | **SECTION: "E" (5)** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,** **Defendants** | **JUDGE: Morgan** **MAGISTRATE JUDGE: North** |
| *Applies to: Both Cases* | |

**MEMORANDUM IN SUPPORT OF WASTE CONNECTIONS DEFENDANTS'
OBJECTIONS TO CERTAIN DEPOSITION TESTIMONY DESIGNATED BY
PLAINTIFFS TO BE USED AT TRIAL**

## INTRODUCTION

The Waste Connections Defendants[1] submit this memorandum pursuant to the Thirteenth Case Management Order (R. Doc. 498) and July 1, 2024 Minute Entry (R. Doc. 643) in support of their objections to the admission of certain deposition testimony designated by Plaintiffs to be used at trial. The designated testimony constitutes hearsay, elicited opinion testimony where the witness lacked personal knowledge, assumed facts not in evidence, mischaracterized the document or earlier testimony, contained statements by counsel, not questions (therefore assuming facts not in evidence), or called for an expert opinion, among other objections. A listing of the parties' respective deposition designations, objections, and counter-designations has been submitted on July 29, 2024 (R. Doc. 690) and copies of the deposition transcripts will be delivered to the Court in accordance with this Court's Pre-Trial Notice (R. Doc. 643-1).

## ARGUMENT

### I. Testimony concerning hearsay statements and statements made without personal knowledge should be excluded from evidence.

Hearsay statements or statements as to which the witness had no personal knowledge should not be presented to a jury. Plaintiffs have designated testimony in which they failed to establish the requisite foundation or that the witness had personal knowledge, questioned witnesses on inadmissible hearsay statements intended to prove the truth of the facts therein, or solicited opinion testimony with no relevance to the issues in this proceeding. Because the introduction of such designations will contravene the Federal Rules of Evidence and confuse the jury, they should not be presented at trial.

---

[1] "The Waste Connections Defendants" refers to Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc.

Hearsay—meaning an out-of-court statement offered for the truth of the matter asserted—is generally inadmissible unless it satisfies an exception that cures the inherent untrustworthiness of hearsay. Fed. R. Evid. 801(c), 802; *Adams v. Eagle, Inc.*, No. 21-cv-694, 2022 WL 3903642, at *1 (E.D. La. Aug. 30, 2022) (Morgan, J.) (testimony excluded as inadmissible hearsay). Testimony where a witness merely repeats what he was told or read, without more, should be excluded as hearsay. *United States v. El-Mezain*, 664 F.3d 467, 494–95 (5th Cir. 2011), *as revised* (Dec. 27, 2011) (affirming testimony where evidence showed witness had personal knowledge, but finding error in admission of testimony where witness had no personal knowledge).

Further, a lay witness may only testify to a matter of which they have personal knowledge, and sufficient evidence must be introduced to support a finding of this knowledge. Fed. R. Evid. 602; *see also* Fed. R. Evid. 701(a) (non-expert witness may only testify to opinion based on their perception); *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008) (affidavit from special agent describing traffic stop inadmissible where he was not present during stop). Rule 602 prohibits a witness "'from testifying to the subject matter of [a] hearsay statement, as he has no personal knowledge of it.'" *United States v. Crinel*, No. 15-cr-61, 2016 WL 6441249, at *6 (E.D. La. Nov. 1, 2016) (Morgan, J.) (quoting *United States v. Quezada*, 754 F.2d 1190, 1195 (5th Cir. 1985)).

Plaintiffs intend to introduce testimony from witnesses questioning them on the contents of out-of-court statements to prove the facts asserted therein. For example, Plaintiffs deposed Bruce Emley, the division vice president for Waste Connections Bayou, Inc. Plaintiffs seek to designate testimony from Mr. Emley where they had him read from an email by Rickie Falgoust[2] and asked Mr. Emley to confirm the contents of the email. Plaintiffs questioned Mr. Emley on

---

[2] A copy of the document being discussed is annexed hereto as Exhibit A (WC_JPLF_00270238).

hearsay statements and elicited testimony in which they asked him to opine on Mr. Falgoust's state

of mind and opinions. Plaintiffs further elicited speculative testimony asking Mr. Emley's opinions

as to what Mr. Falgoust did and did not mean, as further set forth below.

> Q   These are all items that Mr. Falgoust is
>       writing about that pertain to odor issues
>       from landfills, correct?
> A   Quite frankly, I don't know if they have
>       anything to do with the odor issues or not.[3]
>
> *       *       *
>
> Q   Do you see anything in this email chain and
>       the one we just reviewed where anyone from
>       Waste Connections is disputing whether the
>       Jefferson Parish Landfill was emitting odors
>       that were traveling off site and affecting
>       surrounding citizens?
> A   I didn't read anything in there about that.
> BY MR. LANDRY:
> Q   Me either, Mr. Emley.  And as I see this, Mr.
>       Falgoust's email saying the parish needs to
>       be up front about the odors because it
>       appears in Mr. Falgoust's and Mr.
>       Richardson's opinion that the odor issues are
>       the parish's fault, right?
> BY MR. LANDRY:
> Q   Is that how you read it, Mr. Emley?
> A   No.  I think it's Rickie's opinion when he
>       says the parish is responsible for supplying
>       the pumps.  That's what he's referring to
>       here.
> Q   Yeah.  He's saying their responsibility to
>       supply the pumps that dewater the wells.
>       (Reading):
>             There are so many wells with
>             positive pressure that we are
>             constantly battling gas outbreaks
>             that cause leachate outbreaks.
>       Right?
> A   That is what the email says.  That doesn't --

---

[3] Bruce Emley Deposition Transcript, Jan. 19, 2024 ("Emley Tr."), 157:11-157:17. Copies of the Emley deposition excerpts are attached hereto as Exhibit B. Counsel objections have been omitted from deposition testimony quoted within this memorandum.

> Q   Can this reasonably be read to not be
>      speaking to odors being created and emitted
>      at the Jefferson Parish Landfill?
> A   I don't read it, Mr. Landry, that way,
>      leachate outbreaks, to me -- and again, to
>      this, to me, that's really not an odor issue.
>      To me, it's more of aesthetics issue.[4]

Plaintiffs did not establish any foundation for Mr. Emley's testimony and pressed him to testify as to matters on which he lacked personal knowledge.[5] They did not establish he had personal knowledge with respect to the day-to-day operations of the landfill or technical aspects of landfill operations, and in fact, Mr. Emley distinguished his role from that of the environmental teams, engineering group, and local site managers.[6] Mr. Emley's "confirmation" that Plaintiffs have accurately quoted Mr. Falgout's email is simply Plaintiffs' effort to launder hearsay, and is plainly irrelevant. Mr. Falgout is a witness designated for trial, so it is unnecessary to designate testimony concerning Mr. Emley's speculation about what Mr. Falgout may or may not have meant.

Plaintiffs also asked witnesses to opine on topics for which they had no personal knowledge. For example, Chelsey Armstrong began working with the environmental compliance team for an affiliate of the Waste Connections Defendants in January 2018. However, Ms. Armstrong did not transition to working with Louisiana landfills such as the Jefferson Parish Landfill until 2020, well after the Jefferson Parish Landfill stopped accepting industrial waste in July 2018.[7] Ms. Armstrong was therefore not involved in the review of any special waste profiles for the Jefferson Parish Landfill, including Rain Carbon's spent lime profile, yet Plaintiffs seek to

---

[4] Emley Tr. 157:19-159:15.
[5] Mr. Emley testified that he was responsible for hiring district managers and is responsible for high level strategic decisions and business planning. *See* Emley Tr. 15:10-16:5.
[6] Emley Tr. 18:7-21.
[7] Chelsey Armstrong Deposition Transcript, October 18, 2023 ("Amstrong Tr.") 15:5-8; 16:10-17:1; 21:1-17. A copy of excerpts from Ms. Armstrong's deposition are attached hereto as Exhibit C.

designate testimony they elicited about the timing of her knowledge of spent lime's chemical composition.

> Q.  Okay.  But you do know that spent lime can potentially contain calcium sulfate, correct?
> A.  I believe it can contain it, yes.
> Q.  Okay.  When did you first learn that?
> A.  I first learned that in 2018.
> Q.  This is around the time of your Google searches?
> A.  Yes.
> Q.  So how did you learn that spent lime can contain calcium sulfate?
> A.  Through those Google searches.
> Q.  Just the Google searches?
> A.  Yeah.  Yes, sir.[8]

Ms. Armstrong's knowledge or lack thereof regarding spent lime has no bearing on the profile review process utilized at the Jefferson Parish Landfill for that waste stream. Such testimony will only serve to mislead the jury, will be cumulative of the testimony of other witnesses, and will unfairly prejudice Defendants if allowed into evidence.

The Waste Connections Defendants' objections to these and similar designations are attached hereto as Exhibit D.

## II.  Testimony where Plaintiffs failed to distinguish the specific Defendant should be excluded from evidence.

A plaintiffs' failure to identify allegations specific to each named defendant impedes the defendants' right to respond to the allegations made against them, deprives them of basic due process rights, and leads to an unfair trial. Plaintiffs impermissibly seek to introduce statements by a number of witnesses where Plaintiffs failed to elicit which specific entity the witness was referring to. Plaintiffs named three distinct legal entities in their pleadings, and despite their burden to present evidence of alleged wrongdoing by each Defendant, have instead generally referred to

---

[8] Armstrong Tr. 79:7-79:18.

"Waste Connections" throughout this proceeding. The name 'Waste Connections' is a brand used by the Waste Connections Defendants and other affiliates. There is no legal entity named "Waste Connections," and the fact that some witnesses use or accept the term "Waste Connections" colloquially does not waive the corporate independence of the specific entities involved. The three Waste Connections Defendants are separate legal entities, and at all relevant times have adhered to the corporate formalities required by law. Only one—Louisiana Regional Landfill Company— had an active role at the Jefferson Parish Landfill as a contractor to Jefferson Parish. Any attempt by Plaintiffs to represent or introduce deposition testimony to the jury that movants are a single entity known as "Waste Connections," would be false, misleading, and would violate the Waste Connections Defendants' due process rights to a fair trial.

Under Louisiana law, to carry the burden of its claim against a corporate defendant, the plaintiff must present evidence of wrongdoing by the named corporate defendant, not its affiliates, unless the plaintiff establishes that formally separate entities operated as a single business enterprise. *See, e.g., Khoobehi Properties, LLC v. Baronne Dev. No. 2, L.L.C.,* 16-506, p. 12 (La. App. 5 Cir. 3/29/17), 216 So. 3d 287, 298 (dismissal appropriate; "The fact that Mr. Kailas is a part owner of each of these corporations and is the managing member who handles the business and affairs of the corporations does not establish that the corporations are a single business enterprise."). Because each corporation is a distinct legal entity, separate from its shareholders, parent companies, and affiliates, the law requires evidence that is specific to each particular legal entity. *See Foster v. Globalsantafe Offshore Serv. & Transocean Offshore Deepwater Drilling Inc.*, No. 13-cv-65, 2015 WL 12555971, at *4 (E.D. La. May 21, 2015) (Berrigan, J.) (plaintiff required to prove employment as to both defendants where affidavits showed separate business operations, and plaintiff failed to prove one entity exercised "total dominion" over the other for

purposes of applying single business enterprise doctrine); *Town of Haynesville, Inc. v. Entergy Corp.,* 42,019, pp. 6-10 (La. App. 2 Cir. 5/2/07); 956 So. 2d 192, 196-98 (reversing district court and holding that single business enterprise doctrine did not apply, despite multiple affiliates all identifying under the name "Entergy"); *Keaty v. RPM Int'l, Inc.,* 51,019, pp. 5-6 (La. App. 2 Cir. 10/21/16); 208 So.3d 507, 510.

Plaintiffs repeatedly elicited testimony from witnesses about "Waste Connections" without defining the term or asking the witness to specify which entity they were referring to—Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., Waste Connections US, Inc., or some nonparty entity. For example, during the deposition of Mr. Emley, Plaintiffs repeatedly used terminology such as the "Corporate" or "the Woodlands" with no further definition.

> Q   Focusing on special waste.  That was --
> that's a corporate-wide strategy for Waste
> Connections, correct?
>    MR. MIMS:
>       Object to form.
> A   Don't really know how to answer that.
> Strategy?
> BY MR. LANDRY:
> Q   It's a way to generate revenue, right?
> A   Of course, yes.
> Q   Sure.  And that has been a corporate-wide
> aspect of the business plans for the
> landfills under Waste Connections since
> you've been there since 2016, right.
> A   Yes.[9]

*       *       *

> Q   Do you see any Waste Connections personnel
> local to the Jefferson Parish Landfill who
> are involved in this media outreach effort?

---

[9] Emley Tr. 25:6-25:22.

> A   No.
> Q   Being controlled by corporate folks at The Woodlands, right?
> A   This response -- this particular response was, yes.[10]

Plaintiffs thereby elicited vague testimony where it was not clear the witness understood what entity they were testifying to—testimony that would be confusing and misleading to the jury. In particular, Plaintiffs' vague references to "corporate"–whose identity is wholly ambiguous–creates an unfair risk that the jury will attribute alleged wrongdoing to Waste Connections Bayou, Inc. and/or Waste Connections US, Inc., regardless of whether *any* Defendants were involved in the conduct at issue. That would impede Defendants' right to respond to the allegations made against them, deprive them of basic due process rights, and lead to an unfair trial. *See Jimenez v. Tuna Vessel Granada,* 652 F.2d 415, 420 (5th Cir. 1981) ("each party is entitled to know what is being tried, or at least to the means to find out. Notice remains a first-reader element of procedural due process, and trial by ambush is no more favored here than elsewhere.").

Plaintiffs never asked the Waste Connections Defendants to break down the roles of Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., and Waste Connections US, Inc. in either written discovery or at the Waste Connections Defendants' Rule 30(b)(6) deposition.[11] Plaintiffs instead chose to wait to ask vague and misleading questions to unsuspecting

---

[10] Emley Tr. 233:20-234:2.

[11] The Waste Connections Defendants objected to Plaintiffs' generic references to "Waste Connections" during discovery and indicated in prior submissions that entities such as WCUS did not operate at the Landfill. *See, e.g.*, Plaintiffs' First Set of Interrogatories to the Waste Connections Defendants, dated February 16, 2023 (R. Doc. 390-4); Waste Connections Defendants' Responses to Addison Plaintiffs First Set of Interrogatories, dated March 20, 2023, at 4 (objecting to term "Defendants") (attached hereto as Exhibit F); Plaintiffs' Second Set of Requests for Production, dated February 16, 2023 (R. Doc. 390-5); Waste Connections Defendants Third Supplemental Responses to Plaintiffs' Second RFPs, dated March 8, 2024, at 8 (objecting to term "Defendants") (annexed hereto as Exhibit G); Waste Connections Defendants Objections to Plaintiffs' Rule 30(b)(6) Notice, dated March 13, 2023 (R. Doc. 390-6); *see also* Declaration of John M. Perkey, dated April 24, 2023, ¶ 4 ("There is no legal entity known as 'Waste Connections'" and "Waste Connections US, Inc. does not own any landfills, it does not manage or operate any landfills, and it does not maintain operational records for any of the Affiliate Landfills.") (R. Doc. 383-11).

fact witnesses that lacked personal knowledge regarding corporate structure, and now use the ambiguity created by such testimony to argue they do not need to meet their burden to establish their claims against each of the Waste Connections Defendants.

The Waste Connections Defendants' objections to this and similar designations are attached hereto as Exhibit D.

## III.  Topics that called for expert testimony should be excluded

Plaintiffs seek to designate testimony from multiple fact witnesses on topics that called for an expert opinion. A non-expert witness may testify only to opinions that are (1) based on his perception; (2) helpful to clearly understand his testimony or to determine a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701(a)–(c); *see also U.S. Xpress, Inc. v. Am. Field Serv. Corp.*, No. 07-cv-13, 2008 WL 2714635, at *4 (N.D. Miss. June 26, 2008) (lay witness permitted to testify as to facts within his knowledge, but prohibited from offering opinion testimony requiring specialized or technical knowledge). If the proffered lay opinion testimony does not "fall[] within the realm of knowledge of the average lay person," or if the opinion could not be reached by any ordinary person, then it may not be offered at trial. *United States v. Caldwell*, 586 F.3d 338, 348 (5th Cir. 2009); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996) (no abuse of discretion in striking testimony because it was "rather doubtful" that absent specialized training or experience, an ordinary person could have personal knowledge about the toxicity of chemicals or substances).

For example, Plaintiffs attempted to elicit expert opinion testimony from Mr. Laubenstein concerning the chemical composition of different waste streams.

> Q.  And wouldn't the best practices of disposing of those CCR residuals also apply to the same CCR residuals regardless of how they were generated?

A.  I'm not aware.  I couldn't answer that.[12]

*        *        *

Q.  You knew that flue gas desulfurization
materials can be calcium sulfite, magnesium sulfite or
calcium sulfate, among others, right?
A.  No.
Q.  Okay.  Did you know that those compounds of
sulfur are highly soluble?
A.  No.[13]

Plaintiffs questioned numerous witnesses on technical areas concerning the chemical composition of waste and other topics that extended far beyond fact testimony and in effect sought opinion testimony from the witness. Regardless of these witnesses professional experience, they may only testify as to facts and not opinions in accordance with Rule 701. *StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, No. 17-cv-303, 2019 WL 9899919, at *4 (E.D. Tex. June 28, 2019) (non-expert employee may not testify to general industry or business knowledge about which he lacks information or experience) (citations omitted). Plaintiffs have designated experts on the relevant topics, and to introduce "pseudo-expert" testimony from such lay witnesses would only confuse the jury.

**IV.  Oher bases for exclusion of designated testimony.**

Many of Plaintiffs' deposition designations suffer from additional evidentiary defects that prevent their admission into evidence.

Plaintiffs designated extensive testimony where they asked witnesses to recount conversations with third parties—eliciting inadmissible hearsay testimony. Fed. R. Evid. 801. Hearsay statements are inadmissible at trial. *Id.*; *Innovention Toys, LLC v. MGA Entm't., Inc.*, No.

---

[12]  Deposition of Joe Laubenstein, January 8, 2024 ("Laubenstein Tr.") 18:16-18:19.  The cited excerpts of the Laubenstein transcript are annexed hereto as Exhibit E.
[13]  Laubenstein Tr. 144:19-144:25.

07-cv-6510, 2011 WL 13203133, at *6 (E.D. La. Feb. 3, 2011) (Feldman, J.) (documents inadmissible where offered for the truth of the matter asserted and evidence insufficient to show business records or party-opponent exceptions applied). While the Federal Rules of Evidence provide certain hearsay exceptions, the testimony that Plaintiffs have designated is not excepted under any of these categories and is otherwise more prejudicial than probative, and therefore cannot be offered at trial.

Plaintiffs designated testimony that improperly included arguments by counsel. During questions, counsel is prohibited from testifying by making a statement instead of asking a question. *See* Rule of Professional Conduct 3.4(e). A question in admissible testimony may not seek to impose a point of view on a witness under the guise of asking a question, or ask a witness to draw conclusions or otherwise comment about evidence or other matters in a manner that is reserved for counsels' closing arguments. *See, e.g.*, *Smith v. Estelle*, 602 F.2d 694, 700 n. 7 (5th Cir. 1979), *aff'd*, 451 U.S. 454 (1981) (counsel asked argumentative questions when he stated on cross-examination "Dr. Grigson, you're kind of the hatchet man down here for the District Attorney's Office, aren't you?" and "Did you ever meet a person you didn't think was a sociopath?")); *United States v. Killian*, 541 F.2d 1156, 1161 (5th Cir. 1976) (trial court properly sustained objection to cross-examination by defense counsel in which he improperly asserted to prosecution witness that witness was attempting to frame defendant; "The proper time to present this alternative theory was in argument to the jury . . .."); Fed. R. Evid. 611(a).

Counsel's questions in the designated testimony also assume facts not in evidence. Questions by counsel that assume facts not in evidence are prohibited. *United States v. Smith*, 354 F.3d 390, 396 (5th Cir. 2003) (objection to compound question assuming facts not in evidence should have been sustained); *United States v. Medel*, 592 F.2d 1305, 1314 (5th Cir. 1979)

(objection properly sustained where defense counsel asked witness where money "siphoned off" should have been reported where no evidence of siphoning money had been introduced). The witness deserves a fair opportunity to affirm or deny each fact, and should not be required to sort out multiple questions disguised as one. *United States v. Smith*, 354 F.3d at 396 n.5 (citing McCormick on Evidence § 7 (5th ed.1999)).

Plaintiffs' designated testimony often elicited testimony that called for a legal conclusion, including on issues of contract interpretation.  Witnesses, whether lay or expert, cannot testify as to legal conclusions. *See, e.g., El-Mezain*, 664 F.3d at 511 (5th Cir. 2011) (holding that it is generally prohibited for a lay witness to give legal opinions); *C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001) (holding that neither Federal Rules of Evidence 702 nor 704(a) permits expert witnesses to offer conclusions of law); Fed. R. Evid. 602, 702.

Plaintiffs further designated testimony where they asked vague and misleading questions and used ambiguous terms such as "odor problems."  These designations should be excluded under Rules 403 and 611(a), as there is a danger that an unclear or misleading question will result in confusing the issues or misleading the jury. Fed. R. Evid. 403 (trial judge may exclude relevant evidence where there is a danger evidence will confuse issues or mislead jury); Fed. R. Evid. 611(a) (granting trial judge discretion to control the examination of witnesses); Larsen, Navigating the Federal Trial § 3:17 (2024 ed.) (collecting cases).

The objected-to designations should additionally be excluded under Rules 403, which prohibits the introduction of testimony that is more prejudicial than probative. Fed. R. Evid. 403 (trial judge may exclude relevant evidence where evidence is more prejudicial than probative); *Guy v. Crown Equip. Corp.,* 394 F.3d 320, 328 (5th Cir. 2004) ("unfairly prejudicial" evidence properly excluded); *Garcia v. Green*, 17-cv-8126, 2019 WL 8972809, at *2 (E.D. La. Jan. 14,

2019) (Vance, J.) (Rule 403 objection sustained as to documents putting defendant on administrative leave, taking disciplinary action, and terminating employment; evidence was more prejudicial than probative); *see also* Fed. R. Evid. 103(c) (should not suggest inadmissible evidence to jury).

The Waste Connections Defendants' objections on these grounds are attached hereto as Exhibit D.

## CONCLUSION

Plaintiffs' deposition designations suffer from numerous evidentiary defects as identified herein. The objectionable testimony is unduly prejudicial to Defendants and will only serve to confuse the jury and delay the trial. The Waste Connections Defendants respectfully request the Court exclude the objectionable testimony.

Respectfully submitted,

LISKOW & LEWIS, APLC

By:    */s/ Michael C. Mims*
      Michael Cash (#31655)
      Cherrell Simms Taplin (#28227)
      Michael C. Mims (#33991)
      Brady M. Hadden (#37708)
      J. Hunter Curtis (#39150)
      Alec Andrade (#38659)
      701 Poydras Street, Suite 5000
      New Orleans, Louisiana  70139
      (504) 581-7979

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor

13

New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional
Landfill Company, Waste Connections
Bayou, Inc., and Waste Connections US, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on July 29, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Michael C. Mims*
OF COUNSEL
