UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FREDERICK E. ADDISON, SR., ET AL.,**      **Plaintiffs** | **CIVIL DOCKET** |
| **VERSUS** | **NO. 19-11133**      **c/w 19-14512** |
| **LOUISIANA REGIONAL LANDFILL COMPANY, ET AL.,**      **Defendants** | **SECTION: "E" (5)** |

*Applies to: Both Cases*

### ORDER AND REASONS

Before the Court is Plaintiffs' Motion in Limine to exclude testimony of the Defendants' witness John Kind, Ph.D., CIH, CSP, a purported expert in toxicology, the fate, transport, and interaction of compounds, and odor science.[1] The Defendants filed a joint memorandum in opposition.[2] Plaintiffs filed a reply.[3]

### BACKGROUND

This case concerns the operation of the Jefferson Parish Landfill in Waggaman, Louisiana (the "JPLF"), and the resulting odors emitted from the JPLF between July 1, 2017, and December 31, 2019 (the "relevant time period"). Plaintiffs, who are Jefferson Parish residents, filed several individual lawsuits that were consolidated into a mass action, *Addison v. Louisiana Regional Landfill Co.*, which contains over 500 individual Plaintiffs.[4] In their Second Amended Complaint, Plaintiffs assert negligence and nuisance

---

[1] R. Doc. 550.
[2] R. Doc. 582.
[3] R. Doc. 612.
[4] *See generally* Second Amended Complaint, R. Doc. 431. Jefferson Parish residents also filed several related class actions, which were consolidated into one case, *Ictech-Bendeck v. Waste Connections Bayou, Inc. See* R. Doc. 48 (18-7889).

1

claims under Louisiana state law[5] against Defendants: Jefferson Parish, which owns and contracts with others to operate the JPLF; Aptim Corporation, which managed the gas and leachate collection systems of the JPLF from July 2017 to May 2019; and three entities that operated the JPLF from May 2013 to December 2020: Louisiana Regional Landfill Company;[6] Waste Connections Bayou, Inc.;[7] and Waste Connections US, Inc. (collectively, the "Defendants").[8]

On November 5, 2019, the Court issued the first Case Management Order, which established a bifurcated litigation schedule under which the issue of general causation would be resolved first.[9] The Court held a trial on general causation in early 2022.[10] On November 29, 2022, the Court issued its Findings of Fact and Conclusions of Law as to General Causation (the "General Causation Order"),[11] determining that: (1) odors and gases were emitted by the JPLF;[12] (2) the emissions of gases and odors from the JPLF occurred during the relevant time period;[13] and (3) exposure to the odors and gases emitted by the JPLF at a level of five parts per billion ("ppb") for thirty minutes "is sufficient by itself for individuals generally to be able to smell hydrogen sulfide and for the exposure to cause a reaction,"[14] "in the general population."[15] Having found that Plaintiffs established general causation for certain Allowed Injuries, the Court ordered that a trial be conducted with a select number of *Addison* Plaintiffs (the "Trial

---

[5] *See* Second Amended Complaint, R. Doc. 431 at p. 64.
[6] Louisiana Regional Landfill Company is formerly known as IESI LA Landfill Corporation.
[7] Waste Connections Bayou, Inc. is formerly known as Progressive Waste Solutions of LA, Inc.
[8] Second Amended Complaint, R. Doc. 431 at pp. 52-53.
[9] R. Doc. 80 at pp. 1-2.
[10] R. Docs. 274-278, 286-289.
[11] R. Doc. 323.
[12] *Id.* at p. 5.
[13] *Id.* at p. 26.
[14] *Id.* at p. 27.
[15] *Id.* at pp. 35-44.

Plaintiffs").[16] The first *Addison* trial was set to begin on September 5, 2023,[17] and has since been continued to begin on August 12, 2024 (the "first *Addison* Trial").[18]

Relevant to the instant Motion in Limine, the Defendants assert several "alternative source arguments,"[19] including that: (1) Plaintiffs' alleged damages were sustained in whole or in part as a result of intervening or superseding causes, including noxious odors originating from sources other than the JPLF; and (2) Plaintiffs' claims are barred or diminished to the extent their injuries were caused by their own comparative fault or the comparative fault of third parties or sources of odors for which the Defendants are not responsible.[20] The Defendants engaged John Kind, Ph.D., CIH, CSP—represented to be an expert in "toxicology, the fate, transport, and interaction of compounds, and odor science"—to offer opinions on: (1) "the potential toxicological and other effects" of the Trial Plaintiffs' "alleged exposure to odors and emissions from the [JPLF] and other sources"; (2) the interaction between chemicals; (3) "his evaluation of the [] Trial Plaintiffs' conditions, alleged physical impacts, risk factors, comorbidities[,] and confounders"; and (4) "the fate and transport of odors and gases from the [JPLF] and other sources, including their potential to accumulate in homes or adsorb to household

---

[16] *Id.* at pp. 44, 46. *See also* R. Doc. 642 (defining the Allowed Injuries).
[17] R. Doc. 340.
[18] R. Doc. 495.
[19] *See* R. Doc. 671 at p. 10 (denying Plaintiffs' motion to exclude evidence related to Defendants' "alternative source arguments" and ruling that "evidence related to Defendants' alternative source arguments is relevant under Rule 401, as 'any potential alternative theories of causation go directly toward a key underlying issue' in this case").
[20] Waste Connections Defendants' Affirmative Defenses and Answer to Plaintiffs' Second Amended Complaint, R. Doc. 502 at p. 2; Jefferson Parish's Answer to Plaintiffs' Second Amended Complaint, R. Doc. 504 at pp. 20-21; Aptim's Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint, R. Doc. 111 at pp. 14-15. Aptim's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint incorporated by reference the affirmative defenses asserted in Aptim's Answer and Affirmative Defenses to Plaintiffs' First Amended Complaint. R. Doc. 447 at p. 1.

3

items."[21] Dr. Kind is also offered as a rebuttal expert to rebut opinions offered by Plaintiffs' experts Dr. Susan Schiffman and Dr. Michael DeLorenzo.[22]

Plaintiffs timely filed their Motion in Limine seeking to exclude Dr. Kind's testimony under the law-of-the-case doctrine and Federal Rule of Evidence 702.[23]

## **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[24]

"A district court has considerable discretion to admit or exclude expert testimony under Rule 702."[25] Testimony from a *qualified* expert is admissible only if it is both relevant and reliable.[26] Thus, the threshold inquiry is whether the expert witness possesses the requisite qualifications to render an opinion on particular subject matter.[27] The trial court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'"[28]

---

[21] Waste Connections Defendants' List of Experts, R. Doc. 418 at p. 2; Defendant Jefferson Parish's List of Experts, R. Doc. 419 at p. 2; Defendant Aptim Corporation's List of Experts, R. Doc. 420 at pp. 1-2.
[22] Waste Connections Defendants' List of Experts, R. Doc. 418 at p. 2; Defendant Jefferson Parish's List of Experts, R. Doc. 419 at p. 2; Defendant Aptim Corporation's List of Experts, R. Doc. 420 at pp. 1-2.
[23] *See* R. Doc. 550-1.
[24] FED. R. EVID. 702.
[25] *In re Pool Products Distribution Market Antitrust Litig.*, 166 F. Supp. 3d 654, 661 (E.D. La. 2016) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997)).
[26] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).
[27] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011). *See also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").
[28] *Wilson*, 163 F.3d at 937 (quoting FED. R. EVID. 702).

4

If the expert's qualifications are found to be sufficient, the court must then examine whether the expert's opinions are reliable and relevant.[29] The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[30] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. "Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid,'"[31] and of whether that reasoning or methodology "can be reliably applied to the facts of the case."[32] The proponent of expert testimony "need not prove to the judge that the expert's testimony is correct, but [] must prove by a preponderance of the evidence that the testimony is [relevant and] reliable."[33]

"[E]xpert testimony proffered" must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[34] This is essentially a relevance requirement—relevant evidence, including relevant expert testimony, is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[35] With respect to the proper scope of expert testimony, Rule 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[36]

---

[29] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).
[30] 509 U.S. 579 (1993).
[31] *See Pipitone*, 288 F.3d at 243–44 (quoting *Daubert*, 509 U.S. at 592–93).
[32] *Valencia*, 600 F.3d at 423–24; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[33] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[34] *Denley v. Hartford Ins. Co. of Midwest*, 07-4015, 2008 WL 2951926, at *3 (E.D. La. July 29, 2008) (citing *Daubert*, 509 U.S. at 591).
[35] *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D. Tex. Nov. 15, 2002).
[36] FED. R. EVID. 704.

Nevertheless, "[i]f the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded."[37]

"[A]n expert may never render conclusions of law,"[38] as that invades "'the province of the court to determine the applicable law and to instruct the jury as to that law.'"[39] Allowing such expert testimony in a jury trial is both unhelpful and harmful because:

> [T]he jury would be very susceptible to adopting the expert's conclusion rather making its own decision. There is a certain mystique about the word 'expert' and once the jury hears of the [expert]'s experience and expertise, it might think the witness even more reliable than the judge. If an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury.[40]

Accordingly, expert testimony that offers a legal opinion is inadmissible.[41] Moreover, "expert testimony on matters which a jury is capable of understanding and deciding without an expert's help should be excluded," because expert testimony is appropriate only when it will assist the trier of fact.[42]

As part of its "gatekeeping function," "the trial court must probe the reliability . . . of expert testimony any time 'such testimony's factual basis, data, principles, methods, or their application are sufficiently called into question.'"[43] "While 'principles' refers to the theories an expert employs to explain observed facts, 'methods'

---

[37] *Sudo Properties, Inc. v. Terrebone Parish Consol. Gov't*, 04-2559, 2008 WL 2623000, at *8 (E.D. La. July 2, 2008).
[38] *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009).
[39] *Willette v. Finn*, 778 F. Supp. 10, 11 (E.D. La. 1991) (quoting *United States v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988)); *Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996); *Goodman*, 571 F.3d at 399.
[40] *Cefalu v. Edwards*, 2013 WL 5592947, at *1 (quoting *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)); *see also Jarrow v. Cupit*, 99-3539, 2000 WL 1537989, at *2 (E.D. La. Oct. 17, 2000) ("[I]t is the Court's role, not that of one party's expert witness, to instruct the jury on the law of this case. The law 'requires only one spokesperson . . . who of course is the judge." (quoting *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988))).
[41] *Estate of Sowell v. United States of America*, 198 F.3d 169 (5th Cir. 1999); *Askanase*, 130 F.3d at 669.
[42] *Jarrow*, 2000 WL 1537989, at *2. Rule 702 requires the expert's knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a).
[43] *EEOC v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)).

refers to *how* the expert collects data and derives theories or opinions from them."[44] "The reliability inquiry requires the Court to assess whether the reasoning or methodology underlying the expert's testimony is valid."[45] Expert testimony offering "an inference or assertion" on scientific matters is reliable only if the expert's data and theories are "derived by the scientific method" and "rest[] on a reliable foundation."[46] In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony.[47] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[48] The Supreme Court has cautioned the reliability analysis must remain flexible—the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[49] "[N]ot every *Daubert* factor will be applicable in every situation," thus district courts are offered broad latitude in making expert testimony determinations and may "consider other factors it deems relevant."[50]

The trial court is offered "broad latitude" in deciding whether to admit or exclude expert testimony and in deciding "*how* to determine reliability . . . in respect to its

---

[44] 29 FED. PRAC. & PROC. EVID. § 6268.1 (2d ed.) (2024).
[45] *In re Pool Products*, 166 F. Supp. 3d at 661 (citing *Daubert*, 509 U.S. at 592-93).
[46] *Daubert*, 509 U.S. at 590, 597.
[47] *Id.* at 592–96.
[48] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[49] *Kumho Tire*, 526 U.S. at 150.
[50] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004); *Kumho Tire*, 526 U.S. at 151–53.

ultimate reliability determination."[51] While "[t]rained experts commonly extrapolate from existing data," expert opinions that represent an unfounded extrapolation from the underlying data should be excluded.[52] Indeed, "[t]he reliability prong mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'"[53] Trial courts routinely exclude expert testimony as unreliable under Rule 702 when opinions offered: fail to "adequately account[] for obvious alternative explanations";[54] are "speculative or conjectural";[55] or are based on "unrealistic and contradictory" assumptions[56] or "vague allusions to [the expert's] 'experience.'"[57] In cases requiring scientific expertise, the Fifth Circuit has advised: "To make precise estimates, precise data are required."[58]

Under Rule 703, an expert witness may base opinions on facts or data that the expert "has been made aware of or personally observed," including otherwise inadmissible facts or data if "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."[59] The district court is "best

---

[51] *Kumho Tire*, 526 U.S. at 142.

[52] "Several post-*Daubert* cases have cautioned about leaping from an accepted scientific premise to an unsupported one. To support a conclusion based on such reasoning, the extrapolation or leap . . . must be reasonable and scientifically valid." *Moore*, 151 F.3d at 279 (citations omitted). *See also Joiner*, 522 U.S. at 146 ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

[53] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).

[54] *In re Pool Products*, 166 F. Supp. 3d at 662 (citing *Daubert*, 509 U.S. at 596).

[55] *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).

[56] *Id.*

[57] *See, e.g., Ramos v. Banner Health*, 1 F.4th 769, 780 (10th Cir. 2021) (affirming trial court order excluding expert testimony on damages for breach of fiduciary duty as unreliable under Rule 702 when the expert could only invoke vague allusions to his experience when pressed on how he extrapolated from factors on which he relied to reach conclusions regarding damages).

[58] *Gulf South Insulation v. U.S. Consumer Product Safety Com'n*, 701 F.2d 1137, 1147 (5th Cir. 1983); *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009) ("Where the expert's opinion is based on insufficient information, the analysis is unreliable.").

[59] FED. R. EVID. 703.

placed to evaluate" the reasonableness of an expert's reliance on facts or data,[60] and may exclude expert testimony when it is "based on insufficient, erroneous information."[61] When the soundness of the underlying expert opinion is at issue, one expert cannot be used as "a device for getting unreliable[] results" of the underlying expert into Court.[62]

"A district court's gatekeeper function does not replace the traditional adversary system or the role of the jury within this system."[63] "Although the jury ultimately decides the 'weight' of the evidence, the judge ensures there is sufficient probative value . . . to justify submitting the issue in the first instance."[64] Rule 403 also allows the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[65] "'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[66] Because "Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance," "the application of Rule 403 must be cautious and sparing."[67] Indeed, as the Fifth Circuit has proclaimed, the "major function" of Rule 403 "is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."[68]

"Vigorous cross-examination, presentation of contrary evidence, and careful

---

[60] *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 526 (5th Cir. 2013).
[61] *Paz*, 555 F.3d at 389.
[62] *See Eveler v. Ford Motor Co.*, 16-14776, 2017 WL 3382460, at *9 (E.D. La. Aug. 7, 2017).
[63] *In re Pool Products*, 166 F. Supp. 3d at 661 (citations omitted).
[64] Daniel D. Blinka, *Expert Testimony and the Relevancy Rule in the Age of* Daubert, 90 MARQ. L. REV. 173, 191 (2006).
[65] FED. R. EVID. 403.
[66] *Old Chief v. United States*, 519 U.S. 172, 180 (1997).
[67] *United States v. Thevis*, 665 F.2d 616, 633 (5th Cir. 1982).
[68] *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[69] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [factfinder's] consideration."[70] It is "the role of the adversarial system, not the court, to highlight weak evidence."[71] "Courts break from this general rule in exceptional circumstances, such as when an expert's testimony relies on 'completely unsubstantiated factual assertions.'"[72]

## LAW AND ANALYSIS

The Defendants offer John Kind, Ph.D., CIH, CSP, as their expert in "toxicology, the fate, transport, and interaction of compounds, and odor science."[73] According to his Report, Dr. Kind is a toxicologist and industrial hygienist specializing in risk assessment, exposure assessment, toxicity evaluations, the evaluation of experimental design and methodologies, and the assessment of causal relationships between chemical exposure and disease.[74] Dr. Kind represents: he has "extensive experience addressing hydrogen sulfide and odors in a multitude of situations," including in relation to indoor air quality, at manufacturing facilities, and at landfills; he has led air monitoring teams in relation to odor concerns; and he has directed multiple odor investigations using field olfactometry.[75] After evaluating the Trial Plaintiffs' potential hydrogen sulfide ("H2S") exposures, risk factors and confounders documented in medical records, and the

---

[69] *Daubert*, 509 U.S. at 596; *see also United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert*, 509 U.S. at 596).
[70] *14.38 Acres of Land*, 80 F.3d at 1077.
[71] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004).
[72] *McCrary v. John W. Stone Oil Distrib., L.L.C.*, 14-880, 2016 WL 760744, at *3 (E.D. La. Feb. 26, 2016) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 n.4 (5th Cir. 2007)).
[73] Waste Connections Defendants' List of Experts, R. Doc. 418 at p. 2; Defendant Jefferson Parish's List of Experts, R. Doc. 419 at p. 2; Defendant Aptim Corporation's List of Experts, R. Doc. 420 at pp. 1-2.
[74] Kind Rep., R. Doc. 550-2 at p. 5.
[75] *Id*. at p. 6.

10

potential contribution of alternative sources of odor to the Trial Plaintiffs' complaints, Dr. Kind expressed seven opinions in his Report (the "Kind Report").[76] The Plaintiffs seek to exclude Dr. Kind's testimony on the following three opinions expressed therein:

> 2. There is insufficient scientific basis for the [Trial Plaintiffs'] claims that airborne exposure to 5 ppb [H2S] for 30 minutes is capable of causing their claimed nuisance health effects.
>
> 3. Exposure to emissions from the JPLF are more than likely not the cause and certainly not the most likely cause of the [Trial Plaintiffs'] claimed health conditions.
>
>> a. The health conditions alleged by the [Trial Plaintiffs] are non-specific and occur frequently in the general population in the absence of exposures to odors.
>>
>> b. The conditions alleged by the [Trial Plaintiffs] are confounded by a multitude of alternate potential causes unrelated to the JPLF, including preexisting conditions and side effects of prescriptions.
>
> 4. Emissions and fate and transport data do not support the [Trial Plaintiffs'] allegation that the JPLF is a substantial factor contributing to the cause of the nuisance impacts claimed by the [Trial Plaintiffs].[77]

The Plaintiffs do not challenge Dr. Kind's qualifications.[78] Instead, the Plaintiffs seek to exclude Dr. Kind's testimony under Rule 702 and the law-of-the-case doctrine,

---

[76] *Id.* at pp. 6-7 (in considering the potential contribution of alternative odor sources, Dr. Kind also reviewed the reports of defense experts Michael Corn and Paolo Zannetti).

[77] *Id.* at p. 13. The Plaintiffs also seek to exclude Opinion No. 1—"[t]he scientific causation methodology must be followed when attributing an adverse condition to exposure to a chemical, such as [H2S]"—which they argue should be excluded because it improperly expresses an opinion on specific causation, which is an issue of law. R. Doc. 550-1 at p. 2 (quoting Kind Rep., R. Doc. 550-2 at p. 13). In opposition, the Defendants contend Opinion No. 1 "discusses the scientific community's definition of specific causation and its application in this case—an issue that is relevant to whether the Plaintiffs' experts used a generally-accepted methodology for how the scientific community assesses specific causation." R. Doc. 582 at pp. 9-10. Having reviewed the Kind Report, the Court finds the assertions purported to be opinion in Opinion No. 1 actually express the methodology underlying Dr. Kind's substantive opinions and rebuttal of Plaintiffs' experts' opinions. *See* Kind. Rep., R. Doc. 550-2 at pp. 47-49. Dr. Kind will not be allowed to testify with respect to the Court's finding of general causation. *See* General Causation Order, R. Doc. 323.

[78] *See* R. Doc. 550-1. At the general causation trial, the Court found Dr. Kind qualified to testify as an expert in: "toxicology; the fate and transport of compounds; and odor science, including fact and transport of odorous compounds, how they impact people, and how they are measured in the field." General Causation Order, R. Doc. 323 at p. 28.

insofar as the Kind Report improperly expresses opinions on legal issues and on issues adjudicated in the Court's General Causation Order.[79]

> **I.  Dr. Kind may not offer testimony related to his opinion that an average exposure to 5 ppb of H2S over thirty minutes may cause injury to only the most sensitive portion of the population, including his assertion that the Trial Plaintiffs must demonstrate they are particularly sensitive with respect to olfactory sensing.**

Plaintiffs argue Opinion No. 2 constitutes an improper opinion on an issue of law that is excludable under Rule 702 because the opinion concludes "[t]here is insufficient scientific basis for the [Trial Plaintiffs'] claims that airborne exposure to 5 ppb hydrogen sulfide for 30 minutes is capable of causing their" alleged injuries.[80] Plaintiffs contend the assertion underlying Opinion No. 2 instructs the jury that "[p]roof of specific causation requires the Plaintiffs to prove that they fell within the most sensitive population," which contradicts the findings expressed in the Court's General Causation Order and renders the opinion excludable under the law-of-the-case doctrine.[81] In opposition, the Defendants argue Dr. Kind does not dispute the Court's finding that 5 ppb of H2S over 30 minutes is *capable* of causing the Allowed Injuries, as expressed in the General Causation Order.[82] Rather, the Defendants claim Opinion No. 2 challenges the *likelihood* of whether Plaintiffs' alleged exposures to 5 ppb of H2S over a 30 minute period did cause the Allowed Injuries.[83]

As affirmed in the Court's Order and Reasons issued on July 3, 2024, "the issue of general causation was '*actually decided*' by the Court's General Causation Order"[84] and

---

[79] *See* R. Doc. 550-1 at p. 2.
[80] *See* Kind Rep., R. Doc. 550-2 at p. 13.
[81] R. Doc. 550-1 at p. 2 (citing Kind Rep., R. Doc. 550-2 at pp. 9, 49-51).
[82] R. Doc. 582 at p. 14.
[83] *Id.* at p. 14.
[84] *See* General Causation Order, R. Doc. 323.

12

"findings of fact and conclusions of law expressed therein" will not be revisited.[85] Having reviewed the Kind Report, the Court finds that Opinion No. 2 expresses an opinion that challenges the Court's General Causation Order. Specifically, Dr. Kind opines:

> Without evidence that each [of the Trial Plaintiffs] fell within the most sensitive portion of the population when it comes to olfactory sensing, I cannot assume that any of the 13 [Trial Plaintiffs] would in fact be impacted by exposure to [H2S] at the concentration established for general causation in this case.[86]

As expressed in the General Causation Order, the Court found that, "an average exposure to 5 ppb of [H2S] over thirty minutes is capable of producing" certain Allowed Injuries[87] "in the general population."[88] Dr. Kind's Opinion No. 2, however, expresses his opinion that an average exposure to 5 ppb of H2S over thirty minutes may cause injury to only "the most sensitive portion of the population when it comes to olfactory sensing,"[89] *directly* contradicting the Court's finding that such an exposure may cause injury "in the *general* population."[90] Because Opinion No. 2 contravenes the law-of-the-case with respect to the Court's General Causation Order, Dr. Kind's testimony related to that opinion will be excluded under the law-of-the-case doctrine.[91]

Dr. Kind may not offer testimony related to his opinion that an average exposure to 5 ppb of H2S over thirty minutes may cause injury to only the most sensitive portion

---

[85] R. Doc. 642 at p. 9 (quoting *Alpha/Omega Ins. Servs. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001)).
[86] Kind Rep., R. Doc. 550-2 at p. 51.
[87] *See* R. Doc. 642 (defining the Allowed Injuries).
[88] R. Doc. 323 at p. 35 (finding 5 ppb of H2S over thirty minutes is capable of causing headaches in the general population); *id.* at p. 36 (same for nausea); *id.* at p. 37 (same for loss of appetite, sleep disruption, and dizziness); *id.* at p. 39 (same for fatigue and anxiety and worry); *id.* at p. 40 (same for decrease in quality of life).
[89] Kind Rep., R. Doc. 550-2 at p. 51.
[90] R. Doc. 323 at p. 44.
[91] Although not raised in Plaintiffs' Motion in Limine, Opinion No. 6 also will be excluded on the same grounds, to the extent that Dr. Kind opines: Plaintiffs' expert Dr. Susan Schiffman "relies on the [C]ourt's general causation nuisance standard without objective evidence demonstrating that any of the [Trial Plaintiffs] fall within the most sensitive population, further undermining the reliability of her opinions." Kind Rep., R. Doc. 550-2 at p. 13.

13

of the population, including his finding that "[t]here is insufficient scientific basis for the [Trial Plaintiffs'] claims that airborne exposure to 5 ppb [H2S] for 30 minutes is capable of causing their claimed nuisance health effects."[92]

### II. Dr. Kind will be allowed to offer testimony related to Opinion No. 3, with respect to his findings that symptoms of particular Trial Plaintiffs are confounded by potential alternate causes unrelated to the JPLF.

Plaintiffs seek to exclude two portions of Opinion No. 3 under Rule 702. Plaintiffs argue the first portion of Opinion No. 3, which expresses Dr. Kind's finding that the Trial Plaintiffs' alleged health conditions are "non-specific and occur frequently in the general population in the absence of exposures to odors,"[93] is a matter of common knowledge that is "not a proper subject of expert testimony."[94] Plaintiffs contend the jury does not need an expert to opine "the symptoms complained of by Plaintiffs occur, even frequently, in the general population," and that "lots of things can cause these symptoms."[95] Plaintiffs claim "medical expert testimony is not required to establish causation for temporary pain and suffering involving" symptoms "within the common knowledge of an average lay person or trial court."[96] Plaintiffs argue the second portion of Opinion No. 3, which expresses Dr. Kind's opinion that the Trial Plaintiffs' purported health conditions are "confounded by a multitude of alternate potential causes unrelated to the JPLF, including preexisting conditions and side effects of prescriptions,"[97] is irrelevant.[98] Plaintiffs contend Dr. Kind "merely explain[s] that the medications have known side effects," but

---

[92] *See id.*
[93] *Id.* at pp. 13, 51-56.
[94] R. Doc. 550-1 at p. 13.
[95] *Id.* at p. 12.
[96] *Id.* (citing *Ainsworth v. Am. Home Assurance Co.*, 2017-0778 (La. App. 4 Cir. 2/21/18), 239 So. 3d 359).
[97] Kind Rep., R. Doc. 550-2 at p. 13.
[98] R. Doc. 550-1 at p. 14.

14

"d[oes] not identify anywhere in the medical records where any of the 'known side effects' had actually occurred."[99] Thus, Plaintiffs argue "because he can offer no insight into whether any of the medications were the actual cause" of Plaintiffs' symptoms, "his speculation about what might be possible has no scientific basis and only serves to confuse the issues."[100]

In opposition, the Defendants assert Opinion No. 3 is relevant and expresses opinions on matters beyond common knowledge.[101] The Defendants contend Dr. Kind's findings on "the Trial Plaintiffs' medical records and claims, and his attempt to evaluate the possibility of alternative causes," pertain to scientific causation, an issue "far outside the province of a lay juror."[102] The Defendants further assert "expert opinions on causation and damages" are necessary to rebut the Trial Plaintiffs' claims, even though their purported symptoms are within the common knowledge of a lay juror.[103]

Having reviewed the Kind Report, the Court finds Opinion No. 3 relates to relevant issues that are beyond "the common sense" and general knowledge of an "untrained layman."[104] Whether the confounders discussed by Dr. Kind, including side effects of prescription medications and preexisting conditions, caused the Trial Plaintiffs' alleged injuries is directly relevant to the specific causation element of each of the Trial Plaintiffs' claims, as well as the Defendants' comparative fault defense. Because Opinion No. 3 concerns matters which a jury would have difficulty "adeptly assess[ing] [] using only their common experience and knowledge,"[105] the Court finds that Dr. Kind's "specialized

---

[99] *Id.*
[100] *Id.* at p. 15.
[101] R. Doc. 582 at p. 7.
[102] *Id.*
[103] *Id.* at p. 8.
[104] FED. R. EVID. 704; *In re Tasch, Inc.*, 19-15901, 1999 WL 596261, at *2 (E.D. La. Aug. 5, 1999).
[105] *Greenup Indus., LLC v. Five S Group, LLC*, 22-2203, 2023 WL 7335235, at *3 (E.D. La. Nov. 7, 2023).

15

understanding of the subject [matter]"[106] is likely to "help the trier of fact to understand the evidence or determine a fact in issue."[107]

Accordingly, Dr. Kind's testimony related to Opinion No. 3 will not be excluded under Rule 702. Dr. Kind may not testify about side effects of medications in general without establishing that a particular Trial Plaintiff used the medication during the relevant time period. Dr. Kind may testify to Opinion No. 3 but only with respect to confounders established for any particular Trial Plaintiff. Dr. Kind may not provide a lengthy discourse on the causes of symptoms such as headaches because the various causes of headaches are matters of common knowledge.[108]

### III. Dr. Kind's testimony related to the percentage of time the Trial Plaintiffs' residences were downwind of the "alternative sources of odors" will be excluded under Rule 702. Dr. Kind will be allowed to offer the portion of Opinion No. 4, in which he opines on the percentage of time the Trial Plaintiffs' residences were downwind of the JPLF.

Plaintiffs urge the Court to exclude Opinion No. 4, which provides "[e]mission and transport data do not support the [Trial Plaintiffs'] allegation that the JPLF is a substantial factor contributing" to their alleged injuries.[109] The Kind Report represents Opinion No. 4 is based on the general principle that, for an individual plaintiff to attribute an odor to a particular source, the plaintiff must be downwind from the source.[110] With that principle in mind, and considering wind direction data from the Louis Armstrong New Orleans International Airport, Dr. Kind represents he evaluated the percentage of

---

[106] *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003).
[107] FED. R. EVID. 702(a).
[108] Because many of the Trial Plaintiffs' symptoms are "transient or temporary medical conditions . . . likely within the common knowledge of lay people," Dr. Kind is not needed to testify generally to the general etiology of these symptoms beyond the context of discussing a particular Trial Plaintiff. *See Wallace on behalf of Wallace v. BP Expl. & Prod. Inc.*, 13-1039, 2022 WL 1642166, *4 (E.D. La. May 24, 2022).
[109] Kind Rep., R. Doc. 550-2 at p. 72.
[110] *Id.*

16

time during the relevant time period that each Trial Plaintiffs' residence was downwind of the JPLF versus several "alternative sources of odors," as depicted in Figures 3 through 10 of the Kind Report.[111] For each of the Trial Plaintiffs, Dr. Kind concluded "the percentage of time downwind of alternat[iv]e odor sources, in comparison to the JPLF does not support the allegation that the JPLF is a substantial cause" of the Plaintiffs' alleged odor-related injuries.[112]

Plaintiffs argue Opinion No. 4 "provides no assistance to the jury," as "[i]t is common knowledge that other industrial facilities exist in the area surrounding the [JPLF] . . . [and] that wind directions change."[113] Plaintiffs further contend "Dr. Kind has no basis upon which to opine that any of the other supposed [alternative] sources of odors actually emitted any [odors]," whatsoever.[114] In opposition, the Defendants argue the Plaintiffs "mischaracterize Dr. Kind's expert analysis as [] overly simplistic," when Dr. Kind's testimony will actually aid the jury in understanding "how the wind direction and the location of the Trial Plaintiffs' residences during the relevant time period impact whether they would smell alleged odors from the JPLF or alternative sources."[115] The Defendants claim Dr. Kind "evaluated wind direction data to determine what could be [a] continuous source of odors" and "concluded it was more likely that the Trial Plaintiffs were impacted by alternative odor sources because all of the Trial Plaintiffs were located downwind of alternative odor sources more frequently than the JPLF."[116]

---

[111] *Id.* at p. 73. As depicted in Figures 3 through 10 of the Kind Report, the alternative sources that Dr. Kind considered are: American River Transportation Co. LLC, the Harahan Sewage Treatment Plant, Cargill Inc., Wood Resources, International-Matex Tank Terminal (Avondale), Cornerstone Chemical Company, Dyno Nobel LA Ammonia, Evonik Cyro LLC, Kemira Chemicals Inc., the JPLF, and ADM Grain River System Inc. *Id.* at pp. 74-81.
[112] *Id.* at p. 74
[113] R. Doc. 550-1 at pp. 16-17.
[114] *Id.* at p. 17.
[115] R. Doc. 582 at pp. 14, 17.
[116] *Id.* at pp. 15-16.

17

"There is nothing inherently wrong about one expert relying on another expert's opinions and/or data."[117] "Not only does Rule 703 explicitly contemplate such reliance, but also, as a practical matter, it happens in nearly every case."[118] "Nonetheless, it can be problematic in certain situations."[119] For example, when the soundness of the underlying expert opinion is at issue, one expert cannot be used as "a device for getting unreliable[] results" of the underlying expert into Court.[120]

A review of the Kind Report reveals Dr. Kind offers no basis for a key assumption underlying Opinion No. 4—that the evaluated "alternative odor sources" *actually* emitted odors during the relevant time period. Instead, Dr. Kind represents he relied on defense expert Michael Corn's report in preparing his own opinions,[121] thus the Court presumes Dr. Kind relied on the Corn Report to identify alternative sources to inform the evaluation discussed in his Opinion No. 4. Each alternative source considered by Dr. Kind is discussed at length in the Court's Order and Reasons issued on July 30, 2024 (the "July 30 Order").[122] In the July 30 Order, the Court granted the Plaintiffs' motion to exclude testimony of defense expert Mr. Corn after finding "Mr. Corn's rank conjecture concerning the types and quantities of pollutants emitted by the alternative sources" render his opinion—that those sources generated odors likely perceived by the Trial Plaintiffs during the relevant time period—unreliable under Rule 702.[123]

---

[117] *Eveler*, 2017 WL 3382460, at *6.
[118] *Id.*
[119] *Id.*
[120] *See id.* at *9.
[121] Kind Rep., R. Doc. 550-2 at pp. 7, 9-10 ("Engineering expert Michael Corn examined fifteen non-landfill facilities in and around Jefferson Parish as potential alternative odor sources. Mr. Corn concluded that there are many known and potential odor sources in and around Jefferson Parish that likely contribute to odors that the trial Plaintiffs may perceive.").
[122] *See* R. Doc. 697.
[123] *Id.* at p. 49.

Dr. Kind relied exclusively on Mr. Corn's inadmissible findings in reaching his conclusion that "the percentage of time downwind of alternat[iv]e odor sources, in comparison to the JPLF does not support the allegation that the JPLF is a substantial cause" of the Plaintiffs' alleged odor-related injuries.[124] Dr. Kind assumes as fact the alternative sources evaluated by Mr. Corn did emit odors during the relevant time period.[125]

Because the Court excluded Mr. Corn's testimony regarding the alternative sources' emission of odors or odor-causing pollutants during the relevant time period, the Court will exclude Dr. Kind's testimony based on Mr. Corn's report as unreliable.[126]

Because it is known that the JPLF emitted odors during the relevant time period,[127] Dr. Kind will be allowed to offer the portion of Opinion No. 4, in which he opines on the percentage of time the Trial Plaintiffs' residences were downwind of the JPLF.[128] In the event Dr. Kind intends to use at trial depictions of the percentage of time each of the Trial Plaintiffs' residences was downwind of the JPLF during the relevant time period, those

---

[124] Kind Rep., R. Doc. 550-2 at p. 74
[125] The Fifth Circuit recently cautioned, when underlying "inadmissible evidence (1) is from a witness testifying at the same trial, (2) is critical to the expert's testimony, and (3) is not independently verified by the expert—the expert's testimony relying on that inadmissible evidence does not pass muster under Rules 702 and 703." *In re Taxotere (Docetaxel) Products Liability Litig.*, 26 F.4th 256, 269 n.10 (5th Cir. 2022); *see also Legier and Matherne, Apac v. Great Plains Software, Inc.*, 03-278, 2004 WL 1488597, at *3 (E.D. La. June 30, 2004) (Rule 703 "is not satisfied when the expert fails to demonstrate 'any basis for concluding that concluding that another individual's opinion on a subjective financial prediction was reliable.'" (quoting *JRL Enterprises, Inc. v. ProCorp Assocs., Inc.*, 01-2893, 2003 WL 21284020, at *7 (E.D. La. 2003))). Notwithstanding a relying expert's independent verification of underlying evidence, "unanswered questions regarding [the] methods by which data was obtained may render opinions regarding that data unreliable." Indeed, "[a]n expert's opinion must be preceded by facts in evidence." *Lewis v. Par. of Terrebonne*, 894 F.2d 142, 146 (5th Cir. 1990). To the extent *In re Taxotere* is instructive, Dr. Kind did not "independently verify" the inadmissible findings of Mr. Corn concerning the alternative sources, thus Dr. Kind's opinion relying on the inadmissible evidence "does not pass muster under Rules 702 and 703." *See In re Taxotere*, 26 F.4th at 269 n.10.
[126] Dr. Kind may not testify as to Opinion No. 4 that express findings related to the alternative sources, nor may he testify as to the portions of his other opinions that express findings premised on the assumption that the other sources emit odors or odor-causing pollutants.
[127] *See* R. Doc. 323 at p. 5.
[128] Kind Rep., R. Doc. 550-2 at pp. 72-81.

depictions must be revised. Dr. Kind may use revised depictions provided they are given to Plaintiffs' counsel on or before August 12, 2024.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that the Plaintiffs' motion to exclude expert testimony of Dr. John Kind is **GRANTED IN PART AND DENIED IN PART**.[129] Dr. Kind may offer testimony related to Opinion No. 3 with respect to confounders established for any particular Trial Plaintiff.[130] Dr. Kind may offer limited testimony related to Opinion No. 4, insofar as it relates only to the JPLF. Dr. Kind may not offer testimony related to Opinion No. 2 and the portion of Opinion No. 4 based on Mr. Corn's findings regarding the alternative sources of odors. In the event Dr. Kind intends to use at trial depictions of the percentage of time each of the Trial Plaintiffs' residences was downwind of the JPLF during the relevant time period, those depictions must be revised. Dr. Kind may use revised depictions provided they are given to Plaintiffs' counsel on or before August 12, 2024.

**New Orleans, Louisiana, this 4th day of August, 2024.**

                                                *Susie Morgan*
                                              **SUSIE MORGAN**
                                    **UNITED STATES DISTRICT JUDGE**

---

[129] R. Doc. 550.
[130] Dr. Kind may not testify about side effects of medications in general without establishing that a particular Trial Plaintiff used the medication during the relevant time period.