**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **FREDERICK ADDISON, ET AL.,**<br>**Plaintiffs**<br><br>**VERSUS**<br><br>**LOUISIANA REGIONAL LANDFILL**<br>**COMPANY, ET AL.,**<br>**Defendants** | **CIVIL ACTION**<br><br>**NO. 19-11133, c/w 19-14512**<br><br>**SECTION: "E" (5)**<br><br>**JUDGE: Morgan**<br>**MAGISTRATE JUDGE: North** |

**MEMORANDUM OF LAW IN SUPPORT OF WASTE CONNECTIONS**
**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc., Waste Connections US, Inc. (collectively, the "Waste Connections Defendants") oppose Plaintiffs' Motion for Reconsideration (R. Doc. 730) and accompanying memorandum in support (R. Doc. 730-1) of the Order sustaining Waste Connections Defendants' Objections to the Deposition Designations of Joseph Laubenstein (R. Doc. 725), and respectfully request that the Court deny the motion.

**INTRODUCTION**

Plaintiffs have failed to meet the demanding standard for reconsideration and their speculation and misconstruction of Mr. Joseph Laubenstein's testimony does not constitute new law or facts to warrant a different outcome. Plaintiffs' attempt to introduce the deposition testimony of Mr. Laubenstein—former Director of CCR Disposal for Waste Connections US, Inc.— is improper, where the testimony lacks the requisite foundation, contains hearsay, and would only serve to confuse the jury. In a misguided attempt to sidestep these evidentiary defects, Plaintiffs grossly misrepresent Mr. Laubenstein's role and the knowledge he possesses, despite Mr. Laubenstein's direct testimony and the testimony of other witnesses that contradicts Plaintiffs' misleading claims. Plaintiffs cannot fabricate foundation where it does not exist. Plaintiffs' motion

1

makes clear their only intended use of Mr. Laubenstein's testimony is to elicit speculative testimony—an endeavor that will only confuse the jury.

## ARGUMENT

## I.  PLAINTIFFS DO NOT MEET THE STANDARD FOR RECONSIDERATION

To prevail on a motion for reconsideration, a movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence …." *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (citations omitted) (internal quotation marks omitted).[1] Plaintiffs do not demonstrate, nor even argue that the Court's Order sustaining the objections to the deposition designations of Mr. Laubenstein is based on an error in law or fact. Plaintiffs, likewise, do not present any new evidence. Plaintiffs had the opportunity to respond to the Waste Connections Defendants' objections to the designations and raised these arguments;[2] and the Court appropriately ruled to grant the objections to the deposition designations of Mr. Laubenstein. Therefore, because it well established that a motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of the order[,]"[3] the Court should deny Plaintiffs' motion for this reason alone.

## II.  PLAINTIFFS' DESIGNATIONS ARE OTHERWISE INADMISSIBLE

The Waste Connections Defendants reaffirm and resubmit their objections to the relevant testimony.[4] In sum, the testimony constitutes hearsay, calls for opinion or expert testimony, assumes facts not in evidence, calls for speculation, contains vague terminology, and/or lacks

---

[1] R. Doc. 492 at 3.
[2] Plaintiffs' Response to the Waste Connections Defendants' Objections to Deposition Designations, R. Doc. 707 and 707-1 at 59-83.
[3] Rule 59(e); *Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F.Supp.2d 548, 565 (E.D. La. 2013) (Brown, J.) ("It is well settled that motions for reconsideration should not be used to re-urge matters already advanced by a party.").
[4] *See* R. Doc. 692.

relevance or proper foundation. Due to the inadmissible nature of these designations, the Court should affirm its sustained objections.

As a preliminary matter, all of the properly excluded testimony calls for expert opinion testimony on standards of care. Mr. Laubenstein is a fact witness and was not involved with landfill operations. To the extent Plaintiffs seek to use Mr. Laubenstein testimony to establish a standard of care, they must do so through their own expert testimony. [5] *McDowell v. Atlantic Sounding Co., Inc.*, No. 11–1879, 2012 WL 1656262, at *2 (E.D. La. May 10, 2012) (Morgan, J.) (permitting an expert to testify as to provide testimony on safety as the industry standards of the plaintiff's operation were not "common sense issues with which the [fact finder was] readily familiar," thus requiring the specialized knowledge and experience of an expert).

Mr. Laubenstein does not possess, and has never claimed to possess, knowledge regarding waste disposal or management or odor control techniques of coal combustion residuals (CCRs). Mr. Laubenstein's role focuses on the sale and marketing of CCRs—an area wholly unrelated to the day-to-day management and maintenance of a landfill.[6] Mr. Laubenstein's position does not require him to possess knowledge regarding the unique features and characteristics of a landfill or CCR's odor potential or control.[7] Simply put, Plaintiffs seek to impute a sales director's knowledge, or lack thereof, to multiple corporate defendants—an argument that this Court should not permit.[8] Mr. Laubenstein testified numerous times during his deposition that it is not his job to

---

[5] *C.f. America Can! v. Arch Ins. Co.*, 597 F.Supp.3d 1038, 1047 (N.D. Tex. 2022) ("Qualified experts are permitted to offer opinion testimony as to industry standards or norms and whether or not they were followed in a particular case, as long as such opinions involve questions of fact rather than purely legal matters").

[6] Laubenstein Tr. at 13:21-14:21; 17:14-24; 18:10-15.

[7] Laubenstein Tr. at 106:11-25.

[8] *See generally U.S. v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 374-75 (5th Cir. 2017) ("To be clear, the precise question being asked is whether a person, i.e., a corporation, itself has knowledge, not merely whether one of its agents has knowledge. . . . Answering which agent's knowledge is the corporation's knowledge is the linchpin. This analysis will usually involve developing the evidence, both factual and expert, regarding the employees' job titles, their actual responsibilities, and their overall place within the company. . . . The goal is to determine whether an employee's knowledge may be fairly imputed to the corporation. Where the level of responsibility begins must be

be knowledgeable regarding the odors and disposal of CCRs or best disposal practices outside of power plants.[9]

### A.  Testimony concerning alleged industry standards and best practices

**Concerns sustained objections to 116:23–117:17; 118:2–11; 119:8–120:17; 125:14–19; 126:11–22; 127:12; 127:18–128:11.**

**SCS Engineers Blog Post.** The Court should uphold its ruling sustaining Waste Connections' objections to a random blog post by SCS Engineers from 2017 and related testimony by Mr. Laubenstein. Mr. Laubenstein is a fact witness—not an expert—and Plaintiffs did not establish any foundation that Mr. Laubenstein had ever seen this blog post. Plaintiffs also questioned Mr. Laubenstein about Jeffrey Marshall (whose paper is described in the blog post), but again, Mr. Laubenstein testified that he did not know who Mr. Marshall is.[10] The blog post (and all related testimony) should also be excluded as inadmissible hearsay—and references to the paper within the blog post are double hearsay. During this exchange, Plaintiffs also asked Mr. Laubenstein about various organizations and industry publications without establishing any foundation or relevance.[11]

Plaintiffs also asked entirely speculative and irrelevant questions for a fact witness, such as whether he thought that various symposiums would be good sources of best practices for managing odors.[12] Mr. Laubenstein is not an expert witness and testified unequivocally that he had no involvement in landfill operations.[13] Mr. Laubenstein's thoughts on a random blog post he had never seen before lack any foundation and are irrelevant. Likewise, Plaintiffs' claim that the blog

---

discerned from the circumstances of each case. . . . Although we do not adopt wholesale the managing agent test from the LLA, its focus on the agent's authority over the sphere of activities in question is helpful.") (citations omitted; quotation omitted).

[9] Laubenstein Tr. 19:5-19; 21:15-20.

[10] Laubenstein Tr. 119:8-9.

[11] Laubenstein Tr. 120:1-9; 123:14-18

[12] Laubenstein Tr.116:23-117:17; 127:18-128:11.

[13] Laubenstein Tr. 19:85-8.

post or paper described therein establish the "fact" of an "industry standard" is unsupported. Any standard of care should be established through qualified expert testimony—not an internet blog post or conference paper introduced through the testimony of a fact witness without personal knowledge. And without any explanation or citations to the record or legal authority, Plaintiffs claim that "the statements in the paper referred to in the blog and presented at the conference are largely stipulated in this case *as true*." (emphasis in original). The Court should disregard this unsupported assertion.

Plaintiffs' argument that the blog and related testimony are not hearsay because they are admissions by an agent of the Waste Connections Defendants also fails.[14] Plaintiffs cite to no support for this assertion. Plaintiffs' claim that Mr. Marshall's paper was "ultimately adopted by the parties"[15] as part of the "Decision to discontinue acceptance of industrial waste and solidification with spent lime"[16] also has no relation to Mr. Laubenstein. Who did not have any involvement at the Jefferson Parish Landfill or in the Parish's decision to impose a moratorium on industrial waste.

Plaintiffs argue that blog and paper should be admitted to establish that the Waste Connections Defendants were on notice about the contents of those materials. But Plaintiffs failed to establish that Mr. Laubenstein had ever reviewed these documents. Likewise, Mr. Laubenstein denying knowledge of industry materials Plaintiffs' lawyers presented him has no probative value. It was Rick Buller that testified that the Parish's decision to discontinue the use of spent lime and

---

[14] The statements contained in the documents, which Plaintiffs attempt to attribute to the Waste Connections Defendants through an expert retained well after the cited article was published, does not constitute an agent admission. *See* Advisory Committee Notes to Fed. R. Civ. P. 801(d)(2)(D) (recognizing a trend to admit "*statements related to a matter within the scope of the agency* or employment") (emphasis added). The statements contained in the paper, which by Plaintiffs own admission are *merely referred to* in a blog, were written in 2017—well before Mr. Marshall was retained by outside counsel in this case in connection with the general causation hearing.
[15] R. Doc. 730-1, at 3 n.1.
[16] R. Doc. 730-1, at 4.

the acceptance of industrial waste was based in part on his review of the 2017 article.[17] Plaintiffs have are calling Mr. Buller as a trial witness, and should direct questions as to the role this article played in this decision to him—not Mr. Laubenstein.

**Agenda for Coal Ash Management Forum.** For the very same reasons, the Court should uphold its exclusion of a program agenda for a Coal Ash Management Forum meeting. The program and all related testimony are hearsay and Plaintiffs never established any foundation that Mr. Laubenstein had attended this program or seen this agenda in the first place. Plaintiffs again ask speculative and irrelevant questions about whether this program is the type of material Mr. Laubenstein would review to determine best practices.[18] This line of questioning is irrelevant and improper for a fact witness—especially one with no involvement in landfill operations.

**B. Testimony concerning a powerpoint**

**Concerns sustained objections to 129:1–12; 130:1–132:2; 133:20–25; 134:9–138:17; 144:1–145:22; 146:5–147:25; 150:1–5**

Plaintiffs questioned Mr. Laubenstein extensively at his deposition about a PowerPoint presentation received from an acquaintance at Tetra Tech, whom he met at a conference, and the Court appropriately sustained objections to Plaintiffs' deposition designations on this topic and their introduction of the PowerPoint presentation.[19] Relying on conjecture and inferences, Plaintiffs ask the Court to reconsider that decision.[20] But this deposition testimony remains objectionable because it calls for expert opinion on industrial standards, which Mr. Laubenstein cannot give, and constitutes inadmissible hearsay.

---

[17] Buller Tr. 49:2-11.
[18] Laubenstein Tr. 127:18-128:11
[19] Laubenstein Tr. 130:1-8; R. Doc. 725.
[20] R. Doc. 730-1 at 6-7.

Plaintiffs are wrong that the excluded testimony and PowerPoint presentation are permissible because they are "evidence of *the fact* of industry knowledge and standards."[21] Mr. Laubenstein is in marketing and sales and works with coal burning power plants.[22] Contrary to Plaintiffs' assertion, it was not Mr. Laubenstein's responsibility to track, or make others aware of, purported industry standards. The fact that Mr. Laubenstein asked for a PowerPoint presentation from someone he met at a conference, who he thought could provide "sales opportunities," does not change this.[23] Nor does Plaintiffs' speculation about Mr. Laubenstein reviewing the PowerPoint or a conversation that Mr. O'Connor has testified he does not recall.[24] Plaintiffs also try to elevate the importance of Mr. Laubenstein sharing information with the Tetra Tech acquaintance; but Mr. Laubenstein did not recall what information he provided and that information had not been incorporated into the presentation yet (if at all).[25] Plaintiffs cannot avoid their burden on establishing expert evidence on industry practices by designating testimony of Mr. Laubenstein, a lay witness without specialized or technical knowledge in this field.[26]

Plaintiffs' argument that the PowerPoint presentation is not hearsay also has no basis. However, even if part of the email arguably falls within a hearsay exception, the fact that Mr. Laubenstein obtained the presentation from an external party and forwarded it to Mr. O'Connor does not demonstrate that he adopted the third party's statement (in the email or the attached presentation) or that he has authority to speak on the subject matter on behalf of any of the

---

[21] R. Doc. 730-1 at 6 (emphasis in original).
[22] Laubenstein Tr. 13:21-14:21, 17:11-18:15, 133:2-5.
[23] Laubenstein Tr. 132:20-133:5.
[24] O'Connor Tr. 132:3-10; 132:19-133:25.
[25] Laubenstein Tr. 133:6-12.
[26] *See U.S. Xpress, Inc. v. Am. Field Serv. Corp.,* No. 07-cv-13, 2008 WL 2714635, at *4 (N.D. Miss. June 26, 2008) (lay witness permitted to testify as to facts within his knowledge but prohibited from offering opinion testimony requiring specialized or technical knowledge).

Defendants. That Mr. Laubenstein was in marketing and sales and worked with coal burning power plants does not change the hearsay nature of the third-party's PowerPoint presentation.

The presentation is therefore not a statement of an opposing party under Federal Rule of Evidence 801(d)(2)(c).[27] Fed. R. Evid. 801(d)(2) ("The statement must be considered but does not by itself establish the declarant's authority under (C)."); *see Thomas v. Atmos Energy Corp.*, 223 Fed. App'x 369, 374 (5th Cir. 2007) (evidence was inadmissible hearsay absent evidence of an employee's authority to speak); *Villarreal v. Family Dollar Stores of Texas, LLC*, 2018 WL 3586575, at *1 (S.D. Tex. Mar. 13, 2018) (evidence not statement of party opponent because there was no showing that employee was authorized to speak on behalf of defendant). Because the presentation and Mr. Laubenstein's deposition testimony about it are hearsay, and Plaintiffs seek expert testimony through the designations, the Court should not reconsider its decision.

### C.  Testimony concerning an email from Jim Little.

**Concerns sustained objections to 215:19 – 222:23; 223:11 – 226:4; 226:15 – 228:20**

Plaintiffs fail to establish the requisite foundation or that the Mr. Laubenstein had personal knowledge of the email at issue. Plaintiffs acknowledge that Mr. Laubenstein denied any knowledge of nature of the email.[28] In fact, Mr. Laubenstein informed Plaintiffs that his role had no involvement with the best practices for leachate or gas management practices.[29] Specifically, in his deposition, Mr. Laubenstein informed Plaintiffs that his role with the company is to "develop business opportunities" and that he does not have any responsibilities in operations of the landfill.[30] Accordingly, all of this testimony lacks foundation and is irrelevant.

---

[27] Federal Rule of Evidence 801 excludes statements "offered against an opposing party" that "was made by a person *whom the party authorized to make a statement on the subject*." Fed. R. Evid. 801(d)(2)(C) (emphasis added).
[28] R. Doc. 730-1, at 9 fn. 6.
[29] J. Laubenstein Tr. 13:21-14:9; 42:9-11.
[30] *Id.*

Moreover, even if Mr. Laubenstein did possess the knowledge on the subject of the email, Plaintiffs acknowledge that there are several other individuals included in that email,[31] some of whom have been designated as trial witnesses or provided testimony via deposition designations or stipulations, making any testimony on this subject by Mr. Laubenstein cumulative.

Plaintiffs ignore Mr. Laubenstein's explicit testimony and refer to Mr. Laubenstein's testimony as "evasive" simply because he denies knowledge on issues of leachate management and gas collection and odors,[32] and "disingenuous" because he denies knowledge of the nature of the email.[33] Plaintiffs misconstruction of Mr. Laubenstein's testimony[34] further demonstrates Plaintiffs' intent to misuse and mislead the jury about Mr. Laubenstein's role at trial, which is unduly prejudice and will confuse the jury.

Plaintiffs also incorrectly cite to *Shoemake v. Rental Service Corp.*, No. 106-cv-426, 2008 WL 345498, at *1 (S.D. Miss. Jan. 30, 2008), *Tringali Bros. v. U.S.*, 630 F.2d 1089, 1093 (5th Cir. 1980), and *Gordon v. Southtrust Bank*, 108 Fed. Appx. 837, 842 (5th Cir. 2004) for the proposition that failure to adhere to company-established standards are admissible as evidence of negligence.[35] But these cases are distinguishable because they involve company's official internal policies and procedures, not an email. *Shoemake*, 2008 U.S. Dist. LEXIS 112335, at *2 (Defendants' internal policies and procedures); *Tringali Bros.*, 630 F.2d at 1093 (Coast Guard Aids to Navigation Manual, Coast Guard Publication 222.1, an internal manual written for the benefit of employees of this agency); *Gordon*, 108 Fed. Appx. at 842 (bank internal policies). Plaintiffs misconstrue this

---

[31] R. Doc. 730-1, at 8 & fn. 4.
[32] R. Doc. 730-1, at 8.
[33] R. Doc. 730-1, at 9 fn. 6.
[34] Plaintiffs also make the misleading statement that Mr. Laubenstein asked "does Jefferson Parish Landfill have leachate problems" in Trial Exhibit 3576, R. Doc. 730-1, p. 8, as this is not plainly true by the text of the document. *See* Trial Exhibit 3576.
[35] R. Doc. 730-1, at 8-9.

email to be "official communication" and therefore, admissible as a business record.[36] But Plaintiffs do not cite any authority to support this assertion. Regardless of whether the email is an "official communication," which it is not, Mr. Laubenstein's testimony as to the email remains irrelevant because he was not involved in operations. And his testimony on the subject also remains hearsay because Plaintiffs have also failed to satisfy each of the business record hearsay exceptions. *See, e.g.*, *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2012 WL 85447, at *3 (E.D. La. Jan. 11, 2012) ("[T]here is no across-the-board rule that all emails are admissible as business records.").

## CONCLUSION

Plaintiffs attempt to use their motion for reconsideration to rehash evidence, legal theories, and arguments without presenting a manifest error of law or newly discovered facts. As such, the Court should affirm its previous decision to sustain the Waste Connections Defendants' objections and deny the motion for reconsideration. Alternatively, if the Court finds Plaintiffs have met the standard for reconsideration, the Court should nevertheless affirm its objections as the designated testimony generally constitute hearsay, requires opinion or expert testimony, assumes facts not in evidence, calls for speculation, contains vague terminology, and/or lacks relevance or proper foundation, and would be prejudicial and mislead the jury.

---

[36] R. Doc. 730-1, at 10.

Respectfully submitted,

LISKOW & LEWIS, APLC

By: ___/s/ Michael C. Mims_____
   Michael Cash (#31655)
   Cherrell Simms Taplin (#28227)
Michael C. Mims (#33991)
Kelly B. Becker (#27375)
Kathryn Z. Gonski (#33442)
Brady M. Hadden (#37708)
Alec Andrade (#38659)
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139
(504) 581-7979

BEVERIDGE & DIAMOND, P.C.

Megan R. Brillault (*pro hac vice*)
Michael G. Murphy (*pro hac vice*)
John H. Paul (*pro hac vice*)
Katelyn E. Ciolino (*pro hac vice*)
Katrina M. Krebs (*pro hac vice*)
825 Third Avenue, 16th Floor
New York, NY 10022
(212) 702-5400

James B. Slaughter (*pro hac vice*)
1900 N Street, NW, Suite 100
Washington, DC 20036
(202) 789-6000

Michael F. Vitris (*pro hac vice*)
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035

*Counsel for Defendants Louisiana Regional
Landfill Company, Waste Connections Bayou, Inc.,
and Waste Connections US, Inc.*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on August 9, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    /s/ Michael C. Mims      
OF COUNSEL
