**APPENDIX C TO THE JOINT PRETRIAL ORDER**

**LIST OF CONTESTED ISSUES OF LAW**

I. **Plaintiffs' List of Contested Issues of Law**

   A. Are the Defendants liable to the Trial Plaintiff under Article 667 of the Louisiana Civil Code?

   B. Did the Defendants owe a duty to conform its conduct to a specific standard under Article 2315 of the Louisiana Civil Code?

   C. Was the Defendant's substandard conduct a legal cause of the Trial Plaintiff's injuries?

II. **Defendants' Joint List of Contested Issues of Law**

   A. **Whether certain proposed opinions and testimony of Plaintiffs' experts should be excluded under Federal Rule of Evidence 702 and *Daubert* on the grounds set forth in the various motions in limine.**

   1. Whether Plaintiffs' expert Jose Sananes should be precluded from offering opinions and testimony as to the amount of hydrogen sulfide ("H$_2$S") emitted from the Jefferson Parish Landfill ("JPLF") because his methods have not been tested or peer reviewed and are not accepted by the landfill industry or regulatory agencies, and he cannot quantify the rate of error?

   2. Whether Plaintiffs' expert Jose Sananes should be precluded from offering opinions and testimony as to the standards of care applicable to landfill owners and operators because he is not sufficiently qualified to offer any such testimony?

   3. Whether Plaintiffs' expert Dr. Susan Schiffman should be precluded from offering opinions and testimony as to issues outside her qualifications or for which she has not done the work—including (1) whether H$_2$S accumulated or lingered inside the Trial Plaintiffs' homes and absorbed to textiles, (2) whether Defendants adhered to best management practices in operating the JPLF and accepting certain types of waste; (3) contractual issues, (4) whether exposure to volatile organic compounds ("VOCs") contributed to each of the Trial Plaintiffs' injuries without evidence of actual exposure to VOCs, or identification of the specific types of VOCs to which they were allegedly exposed and the concentration, duration, and frequency of exposure, and (5) whether specific causation exists for each of the Trial Plaintiffs despite Dr. Schiffman's admission that she only conducted a general causation analysis?

   4. Whether Plaintiffs' expert Dr. Robert DeLorenzo should be precluded from offering opinions and testimony as to (1) general or specific causation for the Non-Allowed Claims (as defined in R. Doc. 562); and (2) the Trial Plaintiffs'

1

alleged exposure to VOCs, as he lacks any reliable methodology to support such testimony?

5. Whether Plaintiffs' expert Jason Schellhaas of Malcolm M. Dienes, LLC should be precluded from offering opinions and testimony because (1) Mr. Schellhaas' method for calculating relocation costs is not fit for quantifying Trial Plaintiffs' alleged personal injuries, (2) his assumptions were unreliable and unsupported, and (3) even if his opinions could be construed to be quantifying quality of life damages, those are general damages—making expert evidence on them inadmissible?

B. **Whether Defendants' motions for summary judgment should be granted.**

1. Whether Defendants are entitled to summary judgment dismissing any claims for injuries allegedly suffered outside of the relevant time period (July 1, 2017 through December 31, 2019), and any claims for injuries other than headaches, nausea, vomiting, loss of appetite, sleep disruption, dizziness, fatigue, anxiety and worry, a decrease in quality of life, and a loss of enjoyment or use of property, because Plaintiffs did not establish general causation for these claims and lack reliable expert testimony on general causation for these claims?

2. Whether Defendants are entitled to summary judgment dismissal of Plaintiffs' negligence claim because Plaintiffs lack any evidence on the scope of any duty owed by the Defendants, a necessary element of the claim and because it will assist the Court and the jury by allowing them to focus on one set of legal standards, i.e., those governing Plaintiffs' article 667 nuisance claims?

C. **Whether Plaintiffs have met their burden to warrant exclusion of certain proposed opinions and testimony of Defendants' experts under the Federal Rules of Evidence on the grounds set forth in their various motions in limine.**

1. Whether Plaintiffs have established the bases for excluding specified opinions and testimony of defense expert Michael Corn under Federal Rules of Evidence 401, 403, and 702, where Mr. Corn's analyses and opinions concern non-landfill emission sources in and near Jefferson Parish, including whether and to what extent odors from those sources likely impacted the Trial Plaintiffs during the relevant time period, which are probative of whether Plaintiffs can prove cause-in-fact for each of the Trial Plaintiffs and otherwise pertain to issues that go to the weight of the evidence and not its admissibility?

2. Whether Plaintiffs have established the bases for excluding specified opinions and testimony of defense expert Dr. Pamela Dalton under Federal Rules of Evidence 401, 403, and 702, based on (i) the Fourth Circuit's decision in *McKiver v. Murphy-Brown, LLC,* 980 F.3d 937, 962 (4th Cir. 2020) that is distinguishable and has no bearing on the admissibility of Dr. Dalton's expert

opinions in this case, and (ii) claims that Dr. Dalton is relitigating issues of general causation where she is not?

3. Whether Plaintiffs have established the bases for excluding specified opinions and testimony of defense expert Joseph T. Gardemal, III under Federal Rules of Evidence 401, 403, and 702, based on their incorrect claims that his opinions rebutting Plaintiffs' expert Mr. Schellhaas could be made by attorneys and that he does not have the expertise for his financial analysis of the Paradise Manor Community Club?

4. Whether Plaintiffs have established the bases for excluding expert opinions and testimony that they allege attempt to relitigate issues decided in the General Causation Order (R. Doc. 323) under Federal Rules of Evidence 401, 403, and 702, where Defendants' expert evidence does not challenge the Court's Emissions and Capability holdings (as defined in R. Doc. 598) but instead addresses issues pertaining to specific causation that were not decided in the General Causation Order?

5. Whether Plaintiffs have established the bases for excluding specified opinions and testimony of defense expert Baldwin Justice under Federal Rules of Evidence 401, 403, and 702, where Mr. Justice's opinions are based on a reliable and accepted methodology and relate to the character of the neighborhoods where the Trial Plaintiffs' properties are located—an element of Plaintiffs' nuisance claim under Article 667-669—and elements of the Trial Plaintiffs' alleged damages, and Plaintiffs' additional arguments for exclusion go to weight rather than admissibility?

6. Whether Plaintiffs have established the bases for excluding specified opinions of defense expert Dr. John Kind under Federal Rules of Evidence 401, 403, and 702, where Dr. Kind presented scientific evidence regarding potential causes of the Trial Plaintiffs' injuries and whether those causes were considered by Plaintiffs' experts, among other opinions that are directly relevant to Plaintiffs' ability to meet their burden of proof and are outside the knowledge of a lay person?

7. Whether Plaintiffs have established the bases for excluding specified opinions of defense expert Dr. Brobson Lutz under Federal Rules of Evidence 401, 403, and 702, where Dr. Lutz's opinions and testimony as to whether each Trial Plaintiff's medical symptoms were more likely than not caused by exposure to low levels of $H_2S$ or some other cause are relevant, based on well-accepted and valid scientific principles and methods, and will assist the jury in assessing the crucial issues of specific causation and damages at trial?

8. Whether Plaintiffs, in a procedurally improper motion, have established the bases for excluding expert opinions and testimony concerning other sources of odors where evidence of alternative sources is directly relevant to specific causation—including whether Plaintiffs' experts have adequately ruled out

      other potential causes of the Trial Plaintiffs' injuries and whether Plaintiffs have met their burden to prove a causal link between JPLF emissions and each Trial Plaintiff's injuries—and Plaintiffs' additional arguments for exclusion go to weight rather than admissibility?

9. Whether Plaintiffs have established the bases for excluding evidence concerning the federal complaint filed in the Middle District of North Carolina by the makers of Splenda alleging that Dr. Susan Schiffman (Plaintiffs' expert in this case) made false and defamatory statements and published an article with false and misleading claims about the sweetener compound, where that information goes directly to the jury's assessment of Dr. Schiffman's credibility and the reliability of her testimony?

10. Whether Plaintiffs have established the bases for excluding specific opinions and testimony of defense expert Matthew Stutz under Federal Rules of Evidence 702 where the arguments are made by counsel, not a qualified expert, and go to weight rather than admissibility?

11. Whether Plaintiffs have established the bases for excluding specified opinions and testimony of defense expert Dr. Paolo Zannetti under Federal Rules of Evidence 401, 403, and 702, where Plaintiffs' arguments regarding the bases of Dr. Zannetti's expert opinions go to weight rather than admissibility?

### III. Waste Connections Defendants' List of Contested Issues of Law[1]

**A. Whether Plaintiffs have established their burden on specific causation and other elements of their claims by a preponderance of the evidence.**

    1. **Nuisance under Articles 667–669**

        a. Whether each Trial Plaintiff has proven by a preponderance of the evidence that each of the Waste Connections Defendants was a proprietor whose activities at the JPLF caused "real damage" to its neighbors under Articles 667–669?

        b. Whether each Trial Plaintiff has proven by a preponderance of the evidence that each of the Waste Connections Defendants knew or, in the exercise of reasonable care, should have known that its conduct could cause damage?

        c. Whether each Trial Plaintiff has proven by a preponderance of the evidence that the damage could have been prevented by the exercise of reasonable care, and that each of the Waste Connections Defendants failed to exercise such reasonable care?

---

[1] The "Waste Connections Defendants" refer to Defendants Louisiana Regional Landfill Company, Waste Connections Bayou, Inc. and Waste Connections US, Inc.

    d. Whether each Trial Plaintiff has proven by a preponderance of the evidence that they were in fact exposed to $H_2S$ at such a concentration, frequency, and duration that they suffered a legally cognizable nuisance under Articles 667–669 and that said exposure has been proven to be a substantial factor in causing Plaintiff's injury?

    e. Whether each Trial Plaintiff has, on a scientific basis, reasonably excluded other potential sources of the Trial Plaintiffs' injuries under Articles 667–669 with a fair amount of certainty such that it is more likely than not that said injuries were the result of exposure to $H_2S$ from the JPLF?

    f. Whether each Trial Plaintiff has some type of ownership interest in immovable property to recover under Article 667?

    g. Whether each Trial Plaintiff was a "neighbor" of each of the Waste Connections Defendants under Article 667?

    h. Whether each Trial Plaintiff was exposed to $H_2S$ at such a concentration, frequency, and duration that such exposure in fact caused real damage or substantial interference with the enjoyment of property to each Trial Plaintiff, considering factors such as the character of the neighborhood, the degree of the intrusion and the effect of the activity on the health and safety of the neighbor and whether the alleged nuisance produces such a condition as, in the judgment of reasonable persons, would naturally produce actual physical discomfort to normal persons or ordinary sensibilities, tastes and habits?

    i. Whether any other person, entity, or party (including Plaintiffs), even if not named in the lawsuit, was at fault and whether their fault was the legal cause of the Trial Plaintiffs' damages under Articles 667–669?

    j. The percentage of fault attributable to each person or party whose conduct contributed to each Trial Plaintiff's claimed injuries, considering (1) whether the harmful conduct resulted from inadvertence or involved an awareness of danger; (2) the greatness of the risk created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might have required the actor to proceed in haste, without proper thought?

2. **Negligence under Articles 2315, 2316, or 2317.1**

    a. Whether each Trial Plaintiff has proven by a preponderance of the evidence that each of the Waste Connections Defendants owed a duty to each of the Trial Plaintiffs to conform their conduct to a specific standard of care?

  b. Whether each Trial Plaintiff has proven by a preponderance of the evidence that each of the Waste Connections Defendants failed to conform their conduct to the appropriate standard of care?

  c. Whether each Trial Plaintiff has proven by a preponderance of the evidence that they were in fact exposed to $H_2S$ at such a concentration, frequency, and duration that they suffered an injury under Articles 2315, 2316, or 2317.1 and said odors and gases have been proven to be a substantial factor in causing Plaintiff's injuries?

  d. Whether each Trial Plaintiff has, on a scientific basis, reasonably excluded other potential sources of Plaintiffs' injuries under Articles 2315, 2316, or 2317.1 with a fair amount of certainty such that it is more likely than not that said injuries were the result of exposure to $H_2S$ from the JPLF?

  e. Whether each Trial Plaintiff has proven by a preponderance of the evidence that the risk and harm caused was within the scope of protection afforded by the duty breached?

  f. Whether each Trial Plaintiff has proven by a preponderance of the evidence that they suffered a legally cognizable injury (i.e., actual damages) under Articles 2315, 2316, or 2317.1?

  g. Whether each Trial Plaintiff has reasonably excluded other known potential causes of their injuries under Articles 2315, 2316, or 2317.1 with a fair amount of certainty?

  h. Whether any other person, entity, or party (including Plaintiffs), even if not named in the lawsuit, was at fault and whether their fault was the legal cause of the Trial Plaintiffs' damages under Articles 2315, 2316, or 2317.1?

  i. The percentage of fault attributable to each person or party whose conduct contributed to each Trial Plaintiff's claimed injuries, considering (1) whether the harmful conduct resulted from inadvertence or involved an awareness of danger; (2) the greatness of the risk created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might have required the actor to proceed in haste, without proper thought?

B. **Whether Plaintiffs and the Parish have met their burden to warrant exclusion of certain proposed opinions and testimony of the Waste Connections Defendants' expert Ali Hashimi, P.E., under Federal Rule of Evidence 702 on the grounds set forth in their motions in limine**

    1. Whether Plaintiffs have established lack of relevance and qualifications to warrant exclusion of specified opinions and testimony of the Waste Connections Defendants' expert Ali Hashimi, P.E. under Federal Rule of Evidence 702, where Mr. Hashimi's opinions pertain to industry standards and technical and regulatory aspects of the JPLF's operations that are beyond the common sense of a jury or the experience of lay people and are necessary facts for the jury's assessment of liability and allocation of fault?

    2. Whether Defendant Jefferson Parish has established the bases for excluding the specified opinions and testimony of Waste Connections Defendants' expert Ali Hashimi, P.E. under Federal Rule of Evidence 702, where Mr. Hashimi's opinions pertain to industry standards and technical and regulatory aspects of the JPLF's operations that are beyond the common sense of a jury or the experience of lay people and are necessary facts for the jury's assessment of liability and allocation of fault?

### C. Other Issues

    1. Whether the Waste Connections Defendants have properly designated Dr. Bishow Shaha as a testifying expert witness on hydrogen sulfide generation, where the Waste Connections Defendants' prior expert, Mr. Jeffrey Marshall, is unavailable for medical reasons and Dr. Shaha's opinions are substantively similar to Mr. Marshall's?

## IV. Defendant Jefferson Parish's Contested Issues of Law

**A.** All those inherent as they relate to the contested issues of fact;

**B.** The proximate and/or legal cause of any damages claimed by Plaintiff herein;

**C.** The fault, if any, of any party and/or non-party in this matter;

**D.** Causation of the alleged damages sustained by Plaintiffs in this matter;

**E.** Whether or not Plaintiffs have failed to mitigate or minimize the damages; and

**F.** Any other fact or legal issue which arises during discovery which is continuing in this matter.

## V. Aptim's List of Contested Issues of Law

**A. Aptim adopts Waste Connections Defendants' contested Issues of law in their sections A.1 and A.2.**

**B. Aptim adopts Jefferson Parish's contested Issues of law in its sections A through F.**

**C. Whether Plaintiffs and the Parish have met their burden to warrant exclusion of certain proposed opinions and testimony of Aptim's expert Barry Kline, P.E., under Federal Rule of Evidence 702 on the grounds set forth in their motions in limine**

1. Whether Plaintiffs have established the bases for excluding the specified opinions and testimony of Aptim's expert Barry Kline, P.E. under Federal Rule of Evidence 702, where Mr. Kline's opinions pertain to industry standards and technical and regulatory aspects of Aptim's obligations under its contract with Jefferson Parish for the operation and maintenance of the landfill gas system at the JPLF that are beyond the common sense of a jury or the experience of lay people and are necessary facts for the jury's assessment of liability and allocation of fault?

2. Whether Defendant Jefferson Parish has established the bases for excluding the specified opinions and testimony of Aptim's expert Barry Kline, P.E. under Federal Rule of Evidence 702, where Mr. Kline's opinions pertain to industry standards and technical and regulatory aspects of Aptim's obligations under its contract with Jefferson Parish for the operation and maintenance of the landfill gas system at the JPLF that are beyond the common sense of a jury or the experience of lay people and are necessary facts for the jury's assessment of liability and allocation of fault?